# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| JESSICA JONES et al.,<br><br>　　　　　　Plaintiffs,<br>　　v.<br><br>VARSITY BRANDS, LLC et al.,<br><br>　　　　　　Defendants. | Civ. Action No. 2:20-cv-02892 |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO STRIKE CLASS ALLEGATIONS

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................ 1

FACTUAL BACKGROUND .............................................................................. 2

ARGUMENT ....................................................................................................... 3

   I.   Where the Complaint on Its Face Reveals No Class Can Be Certified, the Class Allegations Should Be Stricken ............................................................... 3

   II.   The Proposed Classes Cannot Be Certified Because of Myriad Internal Class Conflicts and Because Harm Cannot Be Shown Through Common Proof ...................... 4

     A.   The Proposed Classes Are Rife with Disabling Internal Conflicts ...................... 5

     B.   Because Harm Cannot Be Shown by Common Proof, Individual Issues of Fact Predominate ............................................................................................. 7

        1.   Plaintiffs' Proposed Classes Are Too Sprawling to Be Certified ...................... 7

        2.   That the Proposed Classes Are "Indirect" Purchasers Exacerbates the Lack of Ability to Prove Harm by Common Proof ............................................. 11

     C.   The Proposed Nationwide Damages Class Fails as a Matter of Law ................ 13

     D.   Individualized Issues Predominate the Purported State Law Damages Class, Which Would Require Analysis of Dozens of State Laws ............................................. 15

   III.   Plaintiffs' Complaint Negates Any Injunctive Relief Class Under Rule 23(b)(2) .. 16

   IV.   The Proposed Classes Have Many Members Who Lack Standing ....................... 17

CONCLUSION ................................................................................................... 18

# TABLE OF AUTHORITIES

**Federal Cases**

*Bell Atl. Corp. v. AT&T Corp.*,
    339 F.3d 294 (5th Cir. 2003) .......................................................................... 7

*Bieneman v. City of Chicago*,
    864 F.2d 463 (7th Cir. 1988) .......................................................................... 6

*Brown v. Allstate Ins. Co.*,
    17 F. Supp. 2d 1134 (S.D. Cal. 1998) ........................................................... 16

*Comcast Corp. v. Behrend*,
    569 U.S. 27 (2013) ......................................................................................... 9

*In re American Medical Systems, Inc.*,
    75 F.3d 1069 (6th Cir. 1996) ......................................................................... 15

*In re Bridgestone/Firestone, Inc.*,
    288 F.3d 1012 (7th Cir. 2002) ....................................................................... 14

*In re Class 8 Transmission Indirect Purchaser Litigation*,
    679 F. App'x 135 (3d Cir. 2017) ............................................................... 11-12

*In re Graphics Processing Units Antitrust Litigation*,
    253 F.R.D. 478 (N.D. Cal. 2008) ................................................................... 13

*In re Hydrogen Peroxide Antitrust Litig.*,
    552 F.3d 305 (3d Cir. 2008) ............................................................................ 7

*In re Relafen Antitrust Litigation*,
    221 F.R.D. 260 (D. Mass. 2004) ............................................................... 15-16

*In re Skelaxin (Metaxalone) Antitrust Litig.*,
    299 F.R.D. 555 (E.D. Tenn. 2014) ............................................................ 13-15

*Loreto v. Procter & Gamble Co.*,
    No. 09-cv-815, 2013 WL 6055401 (S.D. Ohio Nov. 15, 2013) ................... 4-5, 18

*Martinez v. Nash Finch Co.*,
    886 F. Supp. 2d 1212 (D. Colo. Aug. 13, 2012) ............................................ 16

*Pilgrim v. Universal Health Card, LLC*,
    660 F.3d 943 (6th Cir. 2011) .......................................................................................3, 15

*Rikos v. Procter & Gamble Co.*,
    799 F.3d 497 (6th Cir. 2015) ............................................................................................ 7

*Rikos v. Procter & Gamble Co.*,
    No. 11-cv-226, 2012 WL 641946 (S.D. Ohio Feb. 28, 2012) ............................................ 4

*Romberio v. Unumprovident Corp.*,
    385 F. App'x 423 (6th Cir. 2009) .................................................................................... 17

*Sanders v. Apple Inc.*,
    672 F. Supp. 2d 978 (N.D. Cal. 2009).............................................................................. 4

*Schumacher v. State Auto. Mut. Ins. Co.*,
    No. 13-cv-00232, 2015 WL 421688 (S.D. Ohio Feb. 2, 2015) ......................................... 3

*Sheet Metal Workers Local 441 Health & Welfare Plan v. GlaxoSmithKline, PLC*,
    No. 04-05898, 2010 WL 3855552 (E.D. Pa. Sept. 30, 2010)...........................................11, 14

*Stout v. J.D. Byrider*,
    228 F.3d 709 (6th Cir. 2000) .............................................................................................5, 9

*Sutton v. St. Jude Med. S.C., Inc.*,
    419 F.3d 568 (6th Cir. 2005) .......................................................................................... 17

*Swan ex rel. v. Bd. of Educ. of City of Chicago*, No. 13 C 3623, 2013 WL 4047734 (N.D.
    Ill. Aug. 9, 2013) ............................................................................................................ 17

*Valley Drug Co. v. Geneva Pharm., Inc.*,
    350 F.3d 1181 (11th Cir. 2003) ........................................................................................ 5

**State Cases**

*Pomerantz v. Microsoft Corp.*,
    50 P.3d 929 (Colo. App. 2002)....................................................................................... 16

**State Statutes**

A.C.A. § 4-75-315.................................................................................................................. 16

Cal. Bus. & Prof. Code § 17203 ............................................................................................ 16

Colo. Rev. Stat. § 6-1-113...................................................................................................... 16

Mont. Code Ann. § 30-14-133(1) ............................................................................................. 16

Tenn. Code Ann. § 47-18-109(g) ............................................................................................. 16

**Other Authorities**

Fed. R. Civ. Pro. 23 ...................................................................................................*passim*

Defendants Varsity Brands, LLC ("Varsity Brands"); Varsity Spirit, LLC ("Varsity Spirit"); and Varsity Spirit Fashions & Supplies, LLC[1] ("Varsity Fashions," and, with Varsity Brands and Varsity Spirit, "Varsity"); U.S. All Star Federation ("USASF"); Charlesbank Capital Partners, LLC; Bain Capital Private Equity, LP;[2] and Jeff Webb (collectively, "Defendants") respectfully submit this memorandum of law in support of their motion to strike Plaintiffs' class allegations.

## INTRODUCTION

Where the allegations in the complaint demonstrate that a proposed class is incapable of being certified, courts do not have to wait for a motion for class certification. In such circumstances, courts can, should, and, with increasing frequency, do strike the class allegations in the complaint.

That is precisely what should happen here. Even more so than in the *Fusion Elite* case, the classes that Plaintiffs propose are far too disjointed and wide-ranging to satisfy the requirements for certification and have inherent and irreconcilable conflicts within them. Plaintiffs seek to lump into single classes a hodgepodge of "all persons and entities in the United States" that only have in common that since December 10, 2016 they paid a third party for a product or service provided by Varsity or by USASF or, in the case of "accommodations," were provided by others. This includes such disparate items as the registration fees that All Star gyms pay to have their teams participate in All Star competitions, apparel worn at such competitions, cheer camp registrations, backpacks, spectator tickets, and USASF membership dues. As is self-evident, such a broad combination of products and services cannot be encompassed within a

---

[1] Referred to as "Varsity Spirit Fashion & Supplies, LLC" in Plaintiffs' Complaint.
[2] Referred to as "Bain Capital Private Equity" in Plaintiffs' Complaint.

single class, especially an indirect purchaser class where assorted combinations of the various products and services are bundled by intermediaries with their own products and services before being sold as bundles to putative class members.

## FACTUAL BACKGROUND

Plaintiffs are three individuals who are residents of Kansas, California, and Colorado. They allege that they are the parents of current or former Competitive Cheer Athletes who financially supported their respective child's participation in Competitive Cheer.  (Compl. ¶¶ 13-15.)  One of the Plaintiffs (the "All Star Plaintiff") is allegedly a parent of two individuals who were "members of All-Star Gyms."  (*Id.* ¶ 13.)  The other two Plaintiffs (the "School Team Plaintiffs") are allegedly parents of two individuals who were members "of a school team."  (*Id.* ¶¶ 14-15.)

Plaintiffs assert various antitrust and related state-law claims regarding three separate alleged relevant markets, the so-called "Cheer Competitions," "Cheer Apparel," and "Cheer Camps" markets, as well as claims of unfair methods of competition in those markets.  (Compl. ¶¶ 231-56.)  Unlike in *Fusion Elite*, here Plaintiffs lump scholastic cheer in with All Star cheerleading, even though, as discussed in the Varsity Defendants' motion to dismiss, the two forms of cheerleading do not belong in the same market.

Mindful of the bar on indirect purchasers suing for damages under the federal antitrust laws, Plaintiffs identify a so-called "Injunctive Relief Class" and a "Nationwide Damages Class."  (Compl. ¶¶ 29-30.)  Both of these proposed classes include "all natural persons and entities in the United States that indirectly paid Varsity or any Varsity subsidiary or affiliate . . . for:  (a) registration, entrance, or other fees and expenses associated with participation in one or more Varsity Cheer Competitions, including registration fees to USASF; (b) Varsity Cheer

Apparel; (c) Varsity Cheer Camp Fees; or (d) accommodations at one or more Varsity Cheer Competitions."  (*Id.* ¶¶ 29-30.)  Further mindful of the fact that the Tennessee antitrust statute does not reach transactions into which the parties have entered outside the State of Tennessee, which would include all of Plaintiffs' relevant transactions and a large portion of the relevant transactions of the members of Plaintiffs' "Nationwide Damages Class," Plaintiffs state that "[i]n the alternative," they seek to represent a "State Law Damages Class."  This "alternative" class is the same as the "Nationwide Damages Class" but only includes "natural persons or entities" in "Alabama, Alaska, Arizona, Arkansas, California, Colorado, Connecticut, the District of Columbia, Florida, Hawaii, Idaho, Illinois, Iowa, Kansas, Maine, Massachusetts, Maryland, Michigan, Minnesota, Mississippi, Missouri, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, North Dakota, Oregon, Rhode Island, South Dakota, Tennessee, Utah, Vermont, Washington, West Virginia, and Wisconsin."  (*Id.* ¶¶ 31.)

## ARGUMENT

I. **Where the Complaint on Its Face Reveals No Class Can Be Certified, the Class Allegations Should Be Stricken**

"Rule 23(c)(1)(A) says that the district court should decide whether to certify a class '[a]t an early practicable time' in the litigation, and nothing in the rules says that the court must await a motion by the plaintiffs."  *Pilgrim v. Universal Health Card, LLC*, 660 F.3d 943, 949 (6th Cir. 2011) (affirming striking of class allegations).  "'Given the huge amount of judicial resources expended by class actions, particular care in their issuance is required.'"  *Schumacher v. State Auto. Mut. Ins. Co.*, No. 13-cv-00232, 2015 WL 421688, at *2 (S.D. Ohio Feb. 2, 2015) (striking class allegations) (quoting *Pipefitters Loc. 636 Ins. Fund v. Blue Cross Blue Shield of Mich.*, 654 F.3d 618, 630 (6th Cir. 2011)).

3

Where it is clear that Rule 23's requirements cannot be met, the class allegations should be stricken, and the case should proceed as an individual action.  *See, e.g.*, *Loreto v. Procter & Gamble Co.*, No. 09-cv-815, 2013 WL 6055401, at *2-3 (S.D. Ohio Nov. 15, 2013) (striking class allegations where the proposed class lacked Article III standing was overbroad, and was predominated by individual issues because "further discovery and briefing on the certification issue would simply postpone the inevitable conclusion that the putative class cannot be certified"); *Rikos v. Procter & Gamble Co.*, No. 11-cv-226, 2012 WL 641946, at *3 (S.D. Ohio Feb. 28, 2012) ("Either party may freely move for resolution of the class-certification question at any stage of the proceedings, and the class action allegations may be stricken prior to a motion for class certification where the complaint itself demonstrates that the requirements for maintaining a class action cannot be met."); *Sanders v. Apple Inc.*, 672 F. Supp. 2d 978, 991 (N.D. Cal. 2009) (striking class allegations where other courts had denied class certification motions as to similar types of claims).

## II.     The Proposed Classes Cannot Be Certified Because of Myriad Internal Class Conflicts and Because Harm Cannot Be Shown Through Common Proof

Plaintiffs request that a class be certified under Rules 23(a), 23(b)(2) and (b)(3) (Compl. Prayers for Relief), but their allegations fail at several points under those very rules.  The obvious conflicts that run rife throughout the proposed classes make it impossible for the claims of the representative parties to be "typical of the claims … of the class," Fed. R. Civ. Pro. 23(a)(3) or that the proposed representatives "will fairly and adequately protect the interests of the class."  Fed. R. Civ. Pro. 23(a)(4).

These conflicts include conflicts among those class members that took advantage of Varsity's discount plans, received fully-paid or discounted bids, or ever attended higher-level competitions and those that did not.  Similarly, because some members of the proposed classes

4

benefitted from the actions about which Plaintiffs are complaining and many others were not even subject to them, Plaintiffs cannot show harm by common proof, which under settled precedent means that "questions of law or fact common to class members" do not "predominate over any questions affecting only individual members." Fed R. Civ. Pro. 23(b)(3). For similar reasons, Defendants have not "acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. Pro. 23(b)(2). Indeed, were Plaintiffs to succeed in ending Varsity's discount and sponsorship programs, as is their aim, many cheerleading competitors—members of the proposed classes—would be worse off, not better off.

Because the class allegations on the face of the Complaint do not meet the requirements of Rule 23 and there is no prospect that discovery aimed at proving the allegations in the Complaint will remedy the defects in Plaintiffs' proposed class, no reason exists to delay class determination. Plaintiffs' class allegations should be stricken at the outset before expensive and time-consuming discovery. *See, e.g.*, *Loreto*, 2013 WL 6055401, at *2 ("A court may properly strike class allegations prior to discovery where discovery would not have alter[ed] the central defect in th[e] class claim.") (internal quotations omitted).

### A. The Proposed Classes Are Rife with Disabling Internal Conflicts

A class with internal conflicts of interest among class members cannot be certified. *See, e.g.*, *Stout v. J.D. Byrider*, 228 F.3d 709, 717 (6th Cir. 2000) (affirming denial of class certification because putative class members had interests that are "antagonistic to one another"). "[N]o circuit has approved of class certification where some class members derive a net economic benefit from the very same conduct alleged to be wrongful by the named representatives of the class." *Valley Drug Co. v. Geneva Pharm., Inc.*, 350 F.3d 1181, 1190 (11th Cir. 2003) (vacating district court's certification of a class because some members of the

class benefitted from defendants' allegedly anticompetitive conduct); *see also Bieneman v. City of Chicago*, 864 F.2d 463, 465 (7th Cir. 1988) (denying class certification because some members of the alleged class "undoubtedly derive[d] great benefit" from the challenged conduct).

Conflicts of this nature are inherent in the proposed classes. For example, one of Plaintiffs' core allegations of anticompetitive conduct relates to Varsity's rebate and discount programs, the Network Agreement and Family Plan. Under Network Agreements, the "largest and most prominent All-Star Gyms" receive "increasing rebate percentages" based on the amount they spend on Varsity events. (Compl. ¶¶ 143-44.) The Family Plan also provides rebates for participating gyms that commit to doing a significant amount of business with Varsity. (*Id.* ¶¶ 147, 185.) Somewhat similarly, through its IMPACT Program, Varsity allegedly offers schools that "agree to purchase their uniforms, apparel, and equipment from Varsity and to compete in Varsity Cheer Competitions" branding services, including "creating a sports identity and logo for the schools and supplying wall murals, window branding, mascot costumes, banners, flags, and signs displaying the school's identity and logo." (*Id.* ¶ 151.)

Customers of gyms that received discounts and students at schools that received free services under these plans benefitted from them and have antagonistic interests to putative class members that did not. They therefore cannot be in the same class. Similarly, Plaintiffs allege that some gyms received fully paid trips to the higher-level All Star competitions (*id.* ¶ 125), which means that some members of the proposed classes received this benefit, while others did not. Customers of gyms that received the benefit have antagonistic interests to those of gyms that did not, and they cannot be represented by individuals who would seek through this action to establish the illegality of the practice. Likewise, some gyms and schools had teams that went to

the higher-level meets, which Plaintiffs suggest is a primary goal of All Star cheerleading (*id.* ¶ 184), but other gyms and schools did not.  Members of teams that received the benefits of attending a higher-level competition benefitted from the system that Plaintiffs seek to attack, and their interests are therefore antagonistic to Plaintiffs and those teams that did not reap such benefits.

### B.   Because Harm Cannot Be Shown by Common Proof, Individual Issues of Fact Predominate

### 1.   Plaintiffs' Proposed Classes Are Too Sprawling to Be Certified

Plaintiffs' proposed classes also cannot be certified because the fact of injury to each member of the proposed class—an essential element of any antitrust claim—cannot be shown by common proof.  *See, e.g.*, *Rikos v. Procter & Gamble Co.*, 799 F.3d 497, 522 (6th Cir. 2015) (concluding that plaintiffs must "show at the class-certification stage 'that they *can prove*, through common evidence, that all class members were in fact injured by the alleged conspiracy'") (quoting *In re Rail Freight Fuel Surcharge Antitrust Litig.*, 725 F.3d 244, 252 (D.C. Cir. 2013)); *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 311-12 (3d Cir. 2008) ("[T]he task for plaintiffs at class certification is to demonstrate that the element of antitrust impact is capable of proof at trial through evidence that is common to the class rather than individual to its members."); *Bell Atl. Corp. v. AT&T Corp.*, 339 F.3d 294, 302 (5th Cir. 2003) ("[W]e have repeatedly held that where fact of damage cannot be established for every class member through proof common to the class, the need to establish antitrust liability for individual class members defeats Rule 23(b)(3) predominance.").  Courts reject such classes because "questions of law or fact common to class members" do not "predominate over any questions affecting only individual members" as required by Fed. R. Civ. Pro. 23(b)(3).

This problem is even more acute here than in *Fusion Elite* because Plaintiffs seek to sweep scholastic cheerleading and cheerleading camps into the classes. Showing harm to all indirect purchasers of all of the products and services in All Star cheerleading alone would be impossible; doing so with respect to all of the products and services in "competitive cheerleading" in its entirety would be all the more so.

For this reason, although Plaintiffs assert in conclusory fashion that "[c]ommon questions of law and fact exist as to all members of the Classes" (Compl. ¶ 36), their actual allegations demonstrate the opposite. Thus, even if discovery were to corroborate their factual allegations, no classes could be certified.

Unlike in garden-variety price fixing cases, where all purchasers will have paid more as a result of the price fixing, the heart of Plaintiffs' antitrust claims is their allegation that Varsity *gave discounts* to some class members' gyms but not to others and had a system of bids to prestigious events that *were awarded* to some class members' gyms and teams but not to others. (*Id.* ¶¶ 124-25, 143-44, 147.) Moreover, this case involves numerous products and services that some class members may have purchased or utilized while many others did not. Plaintiffs also call into question many acquisitions, few if any of which had to do with scholastic cheer competitions. (*Id.* ¶¶ 88-92.)

Plaintiffs' class is so sprawling—drawing in any person or entity that indirectly paid Varsity for "(a) registration, entrance, or other fees and expenses associated with participation in one or more Varsity Cheer Competitions, including registration fees to USASF; (b) Varsity Cheer Apparel; (c) Varsity Cheer Camp Fees; or (d) accommodations at one or more Varsity Cheer Competitions" (Compl. ¶¶ 29-31)—that common proof of harm will be impossible. For example, one member of the proposed classes (for example, a parent of a 12 year-old who is a

member of her junior high school's cheerleading team) may have purchased a single uniform from the school, while another (for example, a parent of a 17 year-old who has competed with an elite All Star team for the last four years and attended dozens of competitions during that time) may have paid thousands of dollars to his or her gym for team memberships. Some of the class members indirectly purchased apparel or indirectly paid for cheer camps, some did not. Some acquired certain types of apparel but not others. Meanwhile, some gyms and schools source apparel from Varsity; some only attend its competitions and/or its camps and source apparel from other suppliers. Some programs pay for travel; some do not. Varsity's camps are geared toward scholastic teams, and they are seldom attended by All Star teams. Each class member would have a different interest in pursuing and emphasizing each issue, making class certification impossible. *See also Stout*, 228 F.3d at 718 (concluding that class certification was inappropriate because, among other things, "the named Plaintiffs' claims arise from different transactions and alleged injury, therefore causing absent class members to potentially lose the benefit of having the facts of their separate cases adequately presented"). And, for each class member, specific purchases would need to be assessed to see if the member has been harmed as a result of any particular conduct that is deemed to violate the antitrust laws. Moreover, in order to prevail on behalf of the classes, Plaintiffs would at a minimum be required to prove that all of the acts they say were illegal were actually illegal or demonstrate which members of the classes were injured by which allegedly illegal acts and to what extent, so that any such act judged not to be illegal does not contribute to any class damage award. *See Comcast Corp. v. Behrend*, 569 U.S. 27, 34-38 (2013). That would be virtually impossible given the diversity of the proposed classes, which include both gym participants and school participants, parents and participants, apparel buyers and competition attendees, and others, and the equally broad set of allegations,

9

some of which are specific to some products and services and allegedly impact some types of class members but not others. This is another reason to dispense with the classes now rather than pursue an exercise that is inevitably doomed to fail.

Plaintiffs' allegations about Varsity's All Star and scholastic loyalty programs further demonstrate that harm cannot be shown by common proof. Plaintiffs label these agreements as exclusionary and as contributing to Varsity's alleged monopoly power. Nowhere do Plaintiffs allege that participation in these programs is anything but voluntary. Members of the proposed classes whose gyms or schools chose to participate in those programs self-evidently benefitted from doing so, and taking them away would harm those members. The effect that these discounts have on whether a particular class member has been harmed therefore will require an individualized inquiry.

Plaintiffs' allegations about bids to high-level All Star competitions similarly establish that harm cannot be established through common proof. Plaintiffs make much of Varsity's alleged ability to determine which competitions can award "bids" to "championship" events, and its practice of awarding bids to *its own* end-of-season events at its summer camps. (Compl. ¶¶ 121-28, 214.) But within the proposed classes, some teams (and thus their members) were awarded bids, and some were not. Those class members that were on teams awarded bids, something Plaintiff alleges was of great value (*see id.* ¶ 124, 214), are in a very different position than those who were on teams that were not. Insofar as participation in these events is, in Plaintiffs' estimation, one of the very purposes (if not the very purpose) of All Star cheerleading in the first place (*see id.* ¶ 184), those that participated received the benefit of doing so, which meant they were not harmed by the conduct that allegedly prevented others from doing so. Moreover, some of the harm that Plaintiffs allege—namely required travel package purchases—

relates to participation in these higher-level meets or in other higher-level meets. However, only a very small percentage of class members actually participated in these events and paid these expenses. Individualized determinations must therefore be made in assessing the impact of the alleged conduct on different class members.

### 2.   That the Proposed Classes Are "Indirect" Purchasers Exacerbates the Lack of Ability to Prove Harm by Common Proof

The fatal problems discussed above are all the more acute because this is an indirect purchaser case where Plaintiffs seek to recover for purchases from third parties, not from Defendants themselves. To establish a claim, Plaintiffs need to show two sets of facts: first, the price charged for the particular product or service (among the hundreds of products and services at issue in this case) to the direct purchaser (for example, the gym) was illegal under the antitrust laws; and second, some or all of that "overcharge" was passed on in the form of higher prices to the downstream indirect purchaser class member, who in this case almost invariably purchased a "package" of goods and services in the form of membership on a competitive cheerleading team. *See, e.g.*, *In re Class 8 Transmission Indirect Purchaser Litigation*, 679 F. App'x 135, 139-40 (3d Cir. 2017) (holding that "Rule 23(b)(3)'s predominance element required that Appellants demonstrate that common evidence could prove: (1) [the alleged monopolist] overcharged the truck manufacturers for [the monopolized product]; (2) the truck manufacturers pass on this overcharge to direct purchasers; and (3) direct purchases passed on the overcharge to Appellants").

To do all of this with proof common to all members of the class is essentially impossible in cases like this, where the products or services that allegedly were monopolized passed through a complex chain of distribution, with additional products or services added and combined along the way and then sold to members of the putative class. *See, e.g.*, *Sheet Metal Workers Local*

*441 Health & Welfare Plan v. GlaxoSmithKline, PLC*, No. 04-05898, 2010 WL 3855552 (E.D. Pa. Sept. 30, 2010) ("Even assuming the plaintiffs can show on a basic level that prices for both generic and branded buproprion SR increased as a result of GSK's allegedly anti-competitive conduct, they must also demonstrate that all the end-payor purchasers made a purchase at a supra-competitive price. If some direct purchasers absorbed any GSK price increase, there would be no pass through injury to certain indirect purchasers. If only some end-payors paid increased prices, this would suggest the plaintiffs will have to prove economic impact customer-by-customer.").

Courts have denied class certification based on these sorts of inherent issues with classes like the ones Plaintiffs propose. For example, in *In re Class 8 Transmission Indirect Purchaser Litigation*, 679 F. App'x at 138, as is alleged here in respect of gyms and schools, "the truck manufacturers received lucrative loyalty rebates … if they purchased … transmissions" exclusively or nearly exclusively from the Plaintiffs. The Third Circuit upheld the denial of class certification because, among other things, "the complex distribution system frustrates the process of determining the amount of pass-through on a transmission based on the price of a truck." *Id.* at 140. These issues are even more pronounced here than they were in *Class 8*. Plaintiffs assert monopolization of dozens if not hundreds of apparel products, cheer competitions, and cheer camps, all of which are alleged to be distributed through gym and school intermediaries as part of packages. These packages include other products and services (such as coaching and gym time for the "multiple hours a week, all year long" (Compl. ¶ 46) that cheerleaders practice) that are not alleged to have been monopolized. As part of the package, gyms arrange for their teams to participate in competitions, which in any given situation may or may not be hosted by Varsity, and provide apparel, which may or may not be sourced from Varsity.

No class like this could ever be certified.  To determine whether a particular class member was "overcharged," first it would have to be determined which gym was involved. Then it would have to be determined which products and services were provided by that gym in the "package."  Then it would have to be determined where the gym sourced those particular products and services.  Then it would have to be determined whether the gym was "overcharged" for a particular product or service and by how much.  And finally it would have to be determined whether the gym "absorbed" the overcharge or "passed it on," and if so, then in what proportion or amount.  Such a determination simply cannot be done on a class-wide basis but rather will need to be done on an individualized basis.  *See also In re Graphics Processing Units Antitrust Litigation*, 253 F.R.D. 478, 505 (N.D. Cal. 2008) (denying class certification to indirect purchaser class because "the only way to fully assess pass-through in this action would be to conduct a wholesaler-by-wholesaler and re-seller-by-re-seller investigation, which would essentially result in thousands of mini-trials, rendering this case unmanageable and unsuitable for class action treatment") (internal quotation marks omitted).

Similar issues exist with the scholastic part of the proposed class.  Each school has its own way of paying for cheerleading teams.  Some may not even charge parents at all.  Those that do may or may not charge based on cost (for example, the charge may be a set athletic activity fee that all athletes pay).  All of these details will need to be assessed for each member of the proposed class, negating any possibility of proving harm by common proof.

### C.  The Proposed Nationwide Damages Class Fails as a Matter of Law

Plaintiffs' Nationwide Damages Class improperly depends on the applicability of Tennessee law to transactions outside the state, which is incorrect as a matter of law and is another reason why that proposed class cannot be certified.  *See, e.g.*, *In re Skelaxin (Metaxalone) Antitrust Litig.*, 299 F.R.D. 555, 586 (E.D. Tenn. 2014) (denying class certification

13

of nationwide indirect purchaser class based on Tennessee law). This is particularly apt in indirect purchaser actions because, while the purpose of antitrust law is generally to protect a state's trade or commerce affected by the anticompetitive conduct, the purpose of allowing an *indirect purchaser* to sue is to protect and afford a remedy to consumers in the particular state. *Id.* at 587. Because the state where the consumer was injured has the strongest interest in protecting the consumer and affording a remedy, that state's laws govern indirect purchaser actions. *See id.*

The lack of a remedy under the Tennessee antitrust laws creates two insurmountable problems for the Plaintiffs. First, any transaction that occurred outside of Tennessee cannot be adjudicated under the Tennessee antitrust statute. Common proof will accordingly not exist. Second, the vast majority of putative class members, who reside outside of Tennessee and generally made no transactions in Tennessee, should not be in the class. *See, e.g.*, *Sheet Metal Workers*, 2010 WL 3855552, at *26-28 (denying class certification because many putative members had no claim). Plaintiffs seek to shoehorn indirect purchasers from across the country into a single class based on a single state's law is an attempt to create commonality where there is none.

That Varsity and USASF are located in Tennessee is of no moment. Applying the law of a defendant's domicile to "wholly out-of-state transactions would be at best a novelty, and at worst a violation of constitutional limitations." *In re Skelaxin*, 299 F.R.D. at 587 (internal quotation marks and citations omitted); *see also In re Bridgestone/Firestone, Inc.,* 288 F.3d 1012, 1017 (7th Cir. 2002) (describing the district court's decision that "one state's law would apply to claims by consumers throughout the country" as a "novelty" before overturning it). Courts, therefore, do not certify indirect purchaser classes where putative class members who

were injured in various states all attempt to bring an antitrust action under the law of the state where the defendant is domiciled.  *See In re Skelaxin*, 299 F.R.D. at 588 (concluding that the court "must apply the law of the state where the injury occurred, not Tennessee's").  It would be particularly inappropriate for certain defendants' domiciles to control here, where there are multiple defendants located in separate states, "diluting the interest of any one state in regulating the source of harm." *Pilgrim*, 660 F.3d at 946-47; *In re Skelaxin*, 299 F.R.D. at 588.  In these circumstances, the nationwide class allegations should be struck.  *See Pilgrim*, 660 F.3d at 946-50 (affirming striking of similar class allegations for this reason).

### D.  Individualized Issues Predominate the Purported State Law Damages Class, Which Would Require Analysis of Dozens of State Laws

Plaintiffs also cannot show harm to their proposed alternative State Law Damages Class by common proof.  Plaintiffs propose a single class of indirect purchasers "seeking damages for violations of various state antitrust and consumer protection laws" in thirty six states and the District of Columbia.  (Compl. ¶ 31.)  The need to apply the laws of many states renders a class unmanageable.  *See In re Skelaxin*, 299 F.R.D. at 588 ("Applying the law of forty-nine states likely renders this class simply unmanageable.").  "[T]he district judge would face an impossible task of instructing a jury on the relevant law . . . and class certification would not be the appropriate course of action."  *In re American Medical Systems, Inc.*, 75 F.3d 1069 (6th Cir. 1996).

That task would be impossible here.  *See, e.g.*, *In re Skelaxin*, 299 F.R.D. at 588 (noting that variation among state laws counsels against class certification); *In re Relafen Antitrust Litigation,* 221 F.R.D. 260, 284 (D. Mass. 2004) (declining to certify a proposed class even when the governing law was limited to twelve states with similar antitrust laws).  As a threshold matter, only some antitrust statutes under which Plaintiffs seek to recover even allow indirect

15

purchasers to bring antitrust actions.[3]  Arkansas does not even have a private right of action for antitrust violations.[4]  Further, although it is essentially impossible to state a claim under a state antitrust law without stating a claim under the federal antitrust laws, some states do not even recognize antitrust claims based on unilateral conduct.  *See In re Relafen*, 221 F.R.D. at 282-83 (noting that in several states, such as California, "the antitrust statutes . . . extend only to concerted conduct, not to unilateral conduct of the sort alleged here").

States' consumer protection laws also differ markedly. Count Four of the complaint raises various state consumer protection acts—including Tennessee's, Montana's, and Colorado's—which do not even permit class actions.[5]  Other state consumer protection acts have restrictions on who can serve as a class representative and the type of relief that can be recovered.[6]  The need to evaluate class claims on a state-by-state basis not only renders the State Law Damages Class unwieldly, it causes individualized issues to predominate.

### III.    Plaintiffs' Complaint Negates Any Injunctive Relief Class Under Rule 23(b)(2)

Plaintiffs' allegations likewise undermine any possibility of an injunctive relief class under Rule 23(b)(2).  Plaintiffs seek "equitable and injunctive relief . . . to correct for the anticompetitive market effects caused by Varsity's unlawful conduct, and to assure that similar

---

[3] *See, e.g.*, *Pomerantz v. Microsoft Corp.*, 50 P.3d 929 (Colo. App. 2002).

[4] A.C.A. § 4-75-315 (stating that only the Attorney General of Arkansas may bring a civil action for violation of Arkansas' antitrust laws).

[5] Tenn. Code Ann. § 47-18-109(g) ("No class action lawsuit may be brought to recover damages for an unfair or deceptive act or practice declared to be unlawful by this part."); *Martinez v. Nash Finch Co.*, 886 F. Supp. 2d 1212, 1218-19 (D. Colo. Aug. 13, 2012) (holding that there is no ability to recover damages on behalf of a class under Colo. Rev. Stat. § 6-1-113); Mont. Code Ann. § 30-14-133(1) ("A consumer . . . may bring an individual but not a class action . . . .").

[6] *See, e.g.*, Cal. Bus. & Prof. Code § 17203 (with respect to injunctive relief, "[a]ny person may pursue representative claims or relief on behalf of others only if the claimant meets the standing requirements of Section 17204 and complies with Section 382 of the Code of Civil Procedure"); *Brown v. Allstate Ins. Co.*, 17 F. Supp. 2d 1134, 1140 (S.D. Cal. 1998) ("Private individuals cannot seek damages for unfair business practices under this statute.").

anticompetitive conduct and effects do not continue or reoccur in the future." (Compl. ¶ 238) Plaintiffs contend, however, that it is unlawful to provide discounts to certain gyms and benefits to certain schools but not others, award bids to certain teams but not others, and in some cases pay for certain teams to attend certain competitions but not others. As explained above, Defendants' various alleged actions, including providing fully and partially paid bids and discounting and rebate programs, benefitted many members of the proposed classes, and an injunction prohibiting those programs would harm them. Similarly, Plaintiffs themselves assert that some of the conduct that they allege is anticompetitive is also beneficial to cheer participants. For example, Plaintiffs allege that Varsity creates barriers to entry in the cheer camp market by offering bids to its end-of-season events at its camps and giving teams access to coaching by Varsity judges. (*Id.* ¶¶ 214-15.) However, certain teams benefit from these practices, namely those who earn bids or have the "opportunity to showcase new routines and receive feedback from [Varsity] judges," which Plaintiffs assert is desirable to teams. (*Id.* ¶ 216.) Injunctive relief on a class-wide basis would harm those teams and therefore would not be appropriate. *See, e.g.*, *Swan ex rel. v. Bd. of Educ. of City of Chicago*, No. 13 C 3623, 2013 WL 4047734, at *13 (N.D. Ill. Aug. 9, 2013) (denying class certification under Rule 23(b)(2) because the injunctive relief sought would not "provide relief that would benefit the entire putative class," and because "whether their requested relief would benefit or harm each putative class member would require an individualized determination").

### IV.   The Proposed Classes Have Many Members Who Lack Standing

"The Article III standing requirements apply equally to class actions." *Sutton v. St. Jude Med. S.C., Inc.*, 419 F.3d 568, 570 (6th Cir. 2005); *see also Romberio v. Unumprovident Corp.*, 385 F. App'x 423, 431 (6th Cir. 2009) ("Where a class definition encompasses many individuals who have no claim at all to the relief requested … the typicality premise is lacking"). "[A] class

cannot be certified if any members in the class would lack Article III standing." *Loreto*, 2013 WL 6055401, at *3 (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 612-13 (1997)). "An individual has Article III standing only if he suffered an injury-in-fact that is causally connected to a defendant's alleged wrongdoing." *Id.* (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)).

As the discussion in the previous sections demonstrate, there are many members of the proposed classes that did not suffer any injury-in-fact and in fact benefitted from the discounting, rebating and paid-bid programs that Varsity employed.  Furthermore, many members of the proposed classes did not purchase a product in one or more of the three relevant markets alleged, and therefore would not have been damaged through conduct related to that market.  A class cannot be certified with unharmed members.  *Loreto*, 2013 WL 6055401, at *3.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court strike Plaintiffs' class allegations (specifically, paragraphs 29-39 and that portion of Plaintiffs' claims for relief that relates to the putative classes).

March 12, 2021                          Respectfully submitted,

By: /s Matthew S. Mulqueen

George S. Cary*
Mark W. Nelson*
Alexis Collins*
Steven J. Kaiser*
CLEARY GOTTLIEB STEEN & HAMILTON LLP
2112 Pennsylvania Avenue, NW
Washington, DC 20037
Phone:  (202) 974-1500
Fax:  (202) 974-1999
gcary@cgsh.com

mnelson@cgsh.com
alcollins@cgsh.com
skaiser@cgsh.com

* Admitted *pro hac vice*

Matthew S. Mulqueen (TN #28418)
Adam S. Baldridge (TN #23488)
BAKER, DONELSON, BEARMAN, CALDWELL &
BERKOWITZ
165 Madison Avenue, Suite 2000
Memphis, TN 38103
Phone: (901) 526-2000
Fax: (901) 577-0866
mmulqueen@bakerdonelson.com
abaldridge@bakerdonelson.com

*Attorneys for Varsity Brands, LLC*; *Varsity Spirit, LLC*; *Varsity Spirit Fashions & Supplies, LLC; Charlesbank Capital Partners, LLC*; *and Bain Capital Private Equity, LP*

By: /s Nicole D. Berkowitz _____

Grady Garrison (TN #008097)
Nicole D. Berkowitz (TN #35046)
BAKER, DONELSON, BEARMAN, CALDWELL &
BERKOWITZ
165 Madison Avenue, Suite 2000
Memphis, TN 38103
Phone: (901) 526-2000
Fax: (901) 577-0866
ggarrison@bakerdonelson.com
nberkowitz@bakerdonelson.com

*Attorneys for U.S. All Star Federation, Inc.*

By: /s Paul Coggins _____

Paul Coggins*
Brendan Gaffney*
LOCKE LORD LLP
2200 Ross Avenue, Suite 2800
Dallas, TX 75201
Phone: (214) 740-8000
Fax: (214) 740-8800

pcoggins@lockelord.com
bgaffney@lockelord.com

* Admitted *pro hac vice*

Edward L. Stanton III (TN Bar #018904)
BUTLER SNOW LLP
6075 Poplar Avenue, Suite 500
Memphis, Tennessee 38119
Telephone: (901) 680-7336
Facsimile: (901) 680-7201
Edward.Stanton@butlersnow.com

*Attorneys for Jeff Webb*