**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TENNESSEE**

| | |
|---|---|
| JESSICA JONES, MICHELLE VELOTTA, and CHRISTINA LORENZEN, on behalf of themselves and all others similarly situated<br><br>     Plaintiffs,<br>  v.<br><br>VARSITY BRANDS, LLC, VARSITY SPIRIT, LLC, VARSITY SPIRIT FASHION & SUPPLIES, LLC, U.S. ALL STAR FEDERATION, INC., JEFF WEBB, CHARLESBANK CAPITAL PARTNERS LLC, and BAIN CAPITAL PRIVATE EQUITY<br><br>     Defendants. | **Civ. Action No. 2:20-cv-02892-SHL** |

**MEMORANDUM IN SUPPORT OF U.S. ALL STAR FEDERATION, INC.'S MOTION TO DISMISS**

## INTRODUCTION

This is the third of three cases that are before this Court involving alleged antitrust violations of Varsity and USASF,[1] among other parties, in the cheerleading industry. This case differs from the first two cases in that it purports to bring claims on behalf of "indirect purchasers" of Varsity products and services. Nevertheless, the allegations contained in this Complaint—particularly as they relate to USASF—largely copy those contained in the complaint in *Fusion Elite*. As a result, this Complaint suffers from many of the same pleading deficiencies as the *Fusion Elite* complaint. Specifically, the Complaint fails to plausibly plead the relevant markets, fails to allege anticompetitive conduct, fails to allege any agreement in restraint of trade, and runs afoul of the *Copperweld* doctrine. In addition, Counts Three to Six, as well as the Section 2 allegations contained in Count One, do not even appear to be pleaded against USASF and, accordingly, fail to state a plausible claim for relief against USASF. Further, Plaintiffs cannot state a plausible claim for relief under the Tennessee Trade Practices Act, which does not apply to intangible services or to transactions that lack a substantial relationship to Tennessee. Having failed to state a plausible claim against USASF, Plaintiffs' Complaint against this Defendant must be dismissed pursuant to Rule 12(b)(6).

## STATEMENT OF FACTS

USASF is a Tennessee non-profit corporation that promulgates and enforces rules governing All Star Cheer throughout the United States. (Compl. ¶ 19). It is not alleged (nor could it be) that USASF governs "School Cheer," the name that Plaintiffs assign to cheer competitions in the high school and collegiate markets. (*See* Compl. ¶¶ 52-58 (discussing the "School Cheer"

---

[1] As used herein, "Varsity" refers to Defendants Varsity Brands, LLC, Varsity Spirit, LLC, and Varsity Spirit Fashions & Supplies, LLC. Defendant United States All Star Federation is referred to as USASF.

division without reference to USASF). Within All Star Cheer, USASF "set[s] the rules and regulations for Cheer Competitions, including rules about the apparel athletes can wear in Cheer Competitions." (Compl. ¶ 2). According to Plaintiffs, these types of apparel rules include a requirement that athletes wear "[s]oft-soled shoes," "inseam guidelines" for skirts, briefs, and shorts, a rule against exposed midriffs for certain age groups, a requirement that tops "be secured over at least one shoulder," a prohibition against bows of "excessive size" and jewelry, and a requirement that makeup be "uniform and appropriate." (Compl. ¶ 59). Further, according to the Complaint, "Varsity controlled USASF from its inception." (Compl. ¶ 105).

Plaintiffs purport to represent classes of indirect purchasers of Varsity products and services and bring six claims for relief, although it is not clear whether all claims are intended to apply to USASF. First, Plaintiffs seek injunctive relief, alleging that USASF acted in concert with Varsity to foreclose competition in the Cheer Competitions, Cheer Apparel, and Cheer Camps markets in the United States, in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1. Second, Plaintiffs seek damages on behalf of a nationwide class based on an allegation that all Defendants, including USASF, conspired to restrain trade in violation of Tennessee Code § 47-25-101 *et seq.* The remaining counts, as well as the Section 2 violations contained in Count One, do not even appear to be pleaded against USASF.

Nevertheless, as to at least part of Count One and as to Count Two, Plaintiffs allege that USASF conspired with Varsity to restrain trade in the Cheer Competitions, Cheer Apparel, and Cheer Camps markets in the United States. The claims against USASF are largely based on Plaintiffs' conclusory assertions that "USASF and Varsity have conspired to limit the number of Cheer Competitions that can award these Bids" to championship competitions, to prevent non-member event productions "from having access to is rules," and promulgating "rules to allow the

type of apparel Varsity manufactures and sells." (Compl. ¶¶ 183, 184, 200). More specifically, as to USASF, Plaintiffs allege that USASF conspired with Varsity to monopolize the cheerleading competition, apparel, and camp markets based on the following conduct: (1) USASF has a copyright registration for its competition rules and enforces its intellectual property rights (Compl. ¶ 138), (2) USASF rules governing apparel—which require athletes to wear soft-soled shoes, refrain from wearing overly revealing clothing, and prohibit certain accessories that present a safety risk—are somehow drafted in favor of Varsity apparel (Compl. ¶ 59), and (3) USASF limits the number of bids to Worlds (Compl. ¶ 126).

## LAW AND ARGUMENT

As a threshold matter, Defendant USASF incorporates and adopts herein by reference the entirety of Varsity's and Jeff Webb's Memoranda of Law in Support of their respective Motions to Dismiss. Of particular relevance to USASF are the arguments that Plaintiffs fail to state a plausible claim because they do not explain which conduct violated what statutes, they fail to allege plausible relevant markets of "cheer apparel," "cheer competitions," and "cheer camps," they fail to allege anticompetitive conduct, they fail to allege any agreement in restraint of trade, and Plaintiffs' declaratory judgment claim is superfluous. Additionally, because Plaintiffs fail to state a claim for monopolization, Plaintiffs have no basis to allege a conspiracy in restraint of trade against USASF. Moreover, because the Section 2 claim in Count One and the entirety of Counts Three, Four, Five, and Six fail to even make clear whether they are intended to apply to USASF, these claims cannot possibly withstand scrutiny at the motion to dismiss stage. USASF submits this Memorandum in further support of these arguments.

## I.      Legal Standard

4810-8848-8414v6
- 03/12/2021

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 558-59, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* "Determining whether a complaint states a plausible claim for relief [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

The Sixth Circuit has instructed that courts are to be "'reasonably aggressive' in weeding out meritless antitrust claims at the pleading stage," where the costs of discovery are excessive. *NicSand, Inc. v. 3M Co.*, 507 F.3d 442, 450 (6th Cir. 2007) (quoting *Valley Prods. Co. v. Landmark*, 128 F.3d 398, 403 (6th Cir. 1997); *see also Twombly*, 550 U.S. at 546 ("It is one thing to be cautious before dismissing an antitrust claim in advance of discovery, but quite another to forget that proceeding to antitrust discovery can be expensive" "with the right to do so representing an in terrorem increment of the settlement value."). If the claims against USASF are permitted to proceed, USASF—a Tennessee nonprofit organization—expects to be subjected to massive and expensive discovery. In light of the admonitions of the Supreme Court and Sixth Circuit, Plaintiffs should not be permitted to proceed with "a largely groundless claim" against USASF.

## II.   Plaintiffs Fail to Plead a Section 2 Claim in Count One or Any Claim in Counts Three, Four, Five, or Six Against USASF.

In Count One, Plaintiffs seek injunctive relief based on an allegation that "Varsity, acting in concert with USASF" violated Section 1 of the Sherman Act. (Compl. ¶ 234). However, Plaintiffs also seek injunctive relief based on their allegation that "Varsity engaged in a continuing Exclusionary scheme" in violation of Section 2 of the Sherman Act. (Compl. ¶ 235). There is no reference to USASF in connection with the alleged Section 2 violation, and accordingly, USASF

4

does not perceive this allegation as applying to USASF.  Nevertheless, to the extent Plaintiffs do intend to seek injunctive relief against USASF for a Section 2 violation, they do not give notice of this to USASF and fall far short of the *Twombly-Iqbal* pleading standard.  *See, e.g.*, *Roberts v. Kalamazoo Cty. Gov't*, 2018 WL 7628664, at *1 (W.D. Mich. Dec. 14, 2018) ("A complaint may be dismissed for failure to state a claim if it fails to give the defendants a fair notice of the claim and the grounds upon which it rests.").

Counts Three through Five also focus on alleged wrongful conduct by Varsity and do not appear to apply to USASF.   For example, the only allegations of wrongdoing contained in Count Three are that "In addition to violating Sections 1 and 2 of the Sherman Act and Section 16 of the Clayton Act, **Varsity** intentionally and wrongfully maintained monopoly power in the Relevant Markets through its ongoing exclusionary scheme" and "By engaging in the foregoing conduct, **Varsity** intentionally and wrongfully engaged in conduct, a combination, or conspiracy in restraint of trade in violation of the following state antitrust laws . . . ."  (Compl. ¶¶ 247, 248 (emphasis added)).  Although Plaintiffs include blanket references to "purchases of Defendants' products and services" in the sub-paragraphs of Paragraph 248 and claim to be "injured by reason of Defendants' antitrust violations alleged in this claim," the only antitrust violations alleged in the claim are those by Varsity.  Accordingly, Plaintiffs do not state a claim against USASF in Count Three.

Similarly, in Count Four, Plaintiffs allege only that "**Varsity** engaged in unlawful and unfair acts and practices to willfully and wrongfully obtain, enhance, and maintain its monopoly in the markets for Cheer Competitions, Cheer Apparel, and Cheer Camps" and that they suffered injuries "[a]s a direct and proximate result of **Varsity's** unlawful and unfair business practices."  (Compl. ¶¶ 252, 253 (emphasis added)).  Again, Plaintiffs include vague assertions about "[t]he gravity of harm from Defendants' wrongful conduct" and claim that "[b]y engaging in such conduct,

Defendants violated" certain consumer protection laws, but "such conduct" could not refer to any conduct by USASF, which is not alleged in this Count. Accordingly, it is USASF's understanding that Plaintiffs do not intend Count Four to apply to USASF, and if it was Plaintiffs' intent to do so, they have failed to properly plead such a claim under Rule 8.

Count Five likewise focuses on "[t]he [alleged] financial benefits that **Varsity** derived" and requests that "**Varsity** should be compelled to disgorge." (Compl. ¶¶ 263, 265). It does not appear that this Count is intended to seek relief from USASF, as USASF is not referenced in this Count and Plaintiffs do not request that USASF be required to "disgorge" any funds. To the extent Plaintiffs intend Count Five to apply to USASF, they have failed to adequately state such a claim.

Count Six is similarly abstruse, seeking declaratory judgment that the singular "Defendant's" conduct violates Section 2 of the Sherman Act. (Compl. ¶ 268). Based on Plaintiffs' use of the singular word "Defendant" and the fact that Plaintiffs limited Count One to allege only that Varsity violated Section 2 of the Sherman Act, it appears that this Count is not intended to apply to USASF. To the extent this is not the case, Plaintiffs fail to provide proper notice to USASF and fail to satisfy Rule 8.

Rule 8(a)(2) requires a plaintiff "to 'give the defendant fair notice of what the . . . claim **is** and the grounds upon which it rests.'" *Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957) (emphasis added). The Complaint does not provide USASF with notice that Plaintiffs intend to seek relief for a Section 2 Claim in Count One or for Any Claim in Counts Three, Four, Five, or Six against USASF. A plain reading of the Complaint demonstrates that these claims are intended to apply only to Varsity. To the extent Plaintiffs intend otherwise, they fail to provide notice of what their claim **is** as it relates to USASF and, accordingly, fail to

satisfy Rule 8 of the Federal Rules of Civil Procedure. These claims should be dismissed to make clear that they are not being pursued against USASF.[2]

### III.     Plaintiffs Fail to State a Plausible Antitrust Claim Under 15 U.S.C. § 1.

Section 1 of the Sherman Act provides that "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal." 15 U.S.C. § 1. In order to state a claim under this Section, the Complaint must plead: "(1) an agreement between two or more economic entities, (2) an unreasonable restraint of trade, and (3) that the conspiracy caused . . . injury." *Downing v. Ford Motor Co.*, 2018 WL 4621955, at \*2 (6th Cir. Sept. 24, 2018). In applying the Rule 8 pleading standards to a Section 1 claim, "such a claim requires a complaint with enough factual matter (taken as true) to suggest that an agreement was made." *Twombly*, 550 U.S. at 556. "Without more, parallel conduct [by the allegedly conspiring entities] does not suggest conspiracy, and a conclusory allegation at some identified point does not supply facts adequate to show illegality." *Downing*, 2018 WL 4621955, at \*2 (quoting *Twombly*, 550 U.S. at 556-57).

#### A.     Plaintiffs Fail To Properly Define the Relevant Markets.

"A plaintiff must first define the relevant market in order to state a claim under the antitrust statutes." *Cupp v. Alberto-Culver USA, Inc.*, 310 F. Supp. 2d 963, 969 (W.D. Tenn. 2004); *see also United States v. Grinnell Corp.*, 384 U.S. 563, 570-71 (1966); *Conwood Co., L.P. v. U.S. Tobacco Co.*, 290 F.3d 768, 782 (6th Cir. 2002) ("The first step in any action brought under § 2 of the

---

[2] In an abundance of caution, USASF adopts and incorporates by reference all arguments contained in the Motions to Dismiss and Memoranda in Support filed by Varsity and Jeff Webb as to these Counts (as well as all other Counts) and in the Defendants' Motion to Strike and Memorandum in Support. Further, USASF submits that the failure to include any allegations in these Counts connecting them to any conduct allegedly engaged in by USASF, is also fatal and indicative of Plaintiffs' failure to plead a plausible claim for relief against USASF as to these claims.

Sherman Act is for the plaintiff to define the relevant product and geographic markets in which it competes with the alleged monopolizer . . . .").  "Determining the relevant market enables the court to assess whether the defendant has monopoly power in that market, what the area of competition is, and whether the allegedly unlawful acts have anticompetitive effects in that market."  *Cupp*, 310 F. Supp. 2d at 969.

Relevant markets have a product and geographic dimension.  As the Sixth Circuit has recognized, "[t]he essential test for ascertaining the relevant product market" is the "reasonably interchangeability standard."  *Kentucky Speedway, LLC v. National Ass'n of Stock Car Auto Racing, Inc.*, 588 F.3d 908, 917 (6th Cir. 2009) (internal quotation marks omitted).  "Reasonable interchangeability is assessed by considering (1) the product uses (whether the substitute products or services can perform the same function), and/or (2) consumer response (also known as 'cross-elasticity'); defined as consumer sensitivity to price levels at which they elect substitutes for the defendant's product or service."  *Id.* (internal quotation marks omitted).  "The court determines the geographic market by assessing the market area in which the seller operates and to which the buyer can practicably turn for supplies."  *Cupp*, 310 F. Supp. 2d at 970.

"Where the plaintiff fails to define its proposed relevant market with reference to the rule of reasonable interchangeability and cross-elasticity of demand, or alleges a proposed relevant market that clearly does not encompass all interchangeable substitute products even when all factual inferences are granted in plaintiff's favor, the relevant market is legally insufficient and a motion to dismiss may be granted."  *Queen City Pizza, Inc. v. Domino's Pizza, Inc.*, 124 F.3d 430, 436 (3d Cir. 1997) (affirming dismissal on this basis); *see also TV Commc'ns Network v. Turner Network*, 964 F.2d 1022, 1025 (10th Cir. 1992) (same).

Plaintiffs allege three markets: (1) "cheer apparel," (2) "cheer competitions," and (3) "cheer camps." (Compl. ¶ 117). These markets are not limited to "All Star Cheer," but rather extend to scholastic cheer as well, which is not subject to USASF's rules and requirements. Varsity's Memorandum in Support of its Motion to Dismiss, incorporated herein by reference, addresses the defects in Plaintiffs' market definitions at length, *see* Varsity Mem. in Support of Mot. to Dismiss, Part III.A, and USASF likewise addresses the glaring issues associated with these definitions.

### 1.    *The Proposed Cheer Apparel Market is Invalid.*

First, as to "cheer apparel," Plaintiffs fail to define this market with reference to the rule of reasonable interchangeability and cross-elasticity of demand. *See Queen City Pizza*, 124 F.3d at 436. This market is alleged to include "uniforms, warm-up outfits, team jerseys, and practice gear, and specialized accessories such as hair bows and headbands; and specialized equipment such as backpacks and shoes." (Compl. ¶ 189.) As alleged, this market includes products that are not reasonably interchangeable with each other (*e.g.*, pom poms and shoes), while creating an artificial distinction between apparel, such as warm-up gear, used by competitive cheer teams, and the functionally identical apparel used for other athletic endeavors. Plaintiffs also fail to plausibly plead why this market is the entire United States and, indeed, their allegation that "[a]pparel is also sold online" suggests that it is international, and not nationwide, in scope. (*See* Compl. ¶ 191.)

### 2.    *The Proposed Cheer Competitions Market is Invalid.*

Second, as to "cheer competitions," Plaintiffs allege that this market includes both All Star competitions, which involve teams of club athletes, from scholastic competitions, which involve school teams. (Compl. ¶ 165.) There are no allegations that an All Star team would consider a scholastic competition to be a substitute for an All Star competition or vice versa, or even that an All Star team would even be allowed to enter a scholastic competition or vice versa. *See, e.g.*,

*Queen City Pizza*, 124 F.3d at 437 (holding that products not alleged to be reasonably interchangeable are not in the same product market). Of course, USASF's involvement in the cheerleading industry, including in the bid process for Worlds, is limited to All Star competitions, and the inclusion of scholastic competitions is illogical.

Further, this definition fails to properly account for reasonable interchangeability and cross-elasticity of demand. Plaintiffs themselves distinguish between various USASF-sanctioned competitions that they allege are not substitutes for one another. Specifically, Plaintiffs allege that there are certain championship events, and the chance to vie for a championship title "is a primary goal of Competitive Cheer Teams. (Compl. ¶ 124). Thus, all other competitions are at some lower echelon. (*See id.*). If these allegations are taken as true, Plaintiffs are pleading that the proposed relevant market is comprised of various cheer competitions that are not reasonable substitutes for one another. *See, e.g.*, *Queen City Pizza*, 124 F.3d at 437 (holding that products not alleged to be reasonably interchangeable are not in the same product market).

The geographic limitation Plaintiffs place on this market also makes no sense. Plaintiffs do not allege that price differences between competitions in different areas of the country would attract teams from outside an area where lower prices prevail. Without such allegations, there is no basis to credit Plaintiffs' nationwide geographic market for competitions. *See, e.g.*, *Concord Assoc., L.P. v. Ent. Props. Trust*, 817 F.3d 46, 53 (2d Cir. 2016) (affirming dismissal of Section 2 case because the plaintiffs' geographic market was implausible). Moreover, Plaintiffs allege that international competitions are not substitutes for competitions in the United States because of the "expense of international travel." (Compl. ¶ 174.) Of course, domestic travel can also be expensive and it may be less expensive to travel internationally in some instances, for example, it is cheaper to drive from Upstate New York to Canada than to travel from Upstate New York to

Alabama. It makes no sense to exclude international events on the basis of travel costs while disregarding domestic travel costs in defining the geographic market. *See, e.g., Nicolosi Distrib., Inc. v. Finishmaster, Inc.*, No. 18-CV-03587, 2019 WL 1560460, at *3-4 (N.D. Cal. Apr. 10, 2019) (rejecting geographic market definition on motion to dismiss).

### 3. *The Proposed Cheer Camps Market is Invalid.*

There are no allegations in the Complaint that connect USASF to the proposed cheer camp market. Nevertheless, out of an abundance of caution, USASF submits that this market, too, is wrought with issues and is not plausibly pleaded. Plaintiffs' allegations indicate that there are cheer camps for each "level" of cheer, including school, all-star, youth and rec. (*See* Compl. ¶¶ 62, 65, 202). Plaintiffs' allegations also indicate that they are both single-day and overnight camps up to four days in length. (Compl. ¶ 158). Again, the proposed market contains camps that are not reasonably interchangeable with each other, as camps at one level (or for one age group) cannot be substitutes for camps at another level (or another age group) and one-day camps are not substitutes with overnight camps that run for four days.

As to the geographic market for "cheer camps," Plaintiffs again fail to plausibly plead that the geographic market is the United States. The focus of this inquiry is both "the market area in which the seller operates" *and* "to which the purchaser can practicably turn for supplies." *See, e.g., United States v. Phila. Nat'l Bank*, 374 U.S. 321, 359 (1963). Here, Plaintiffs plead that "there may be a regional sense of camps" that athletes and teams might reasonably attend, i.e. to which the purchaser can practicably turn to attend camps. (Compl. ¶ 205). In other words, the Complaint fails to plead—and in fact, contradicts—the existence of a nationwide market for cheer camps.

### B. Plaintiffs Fail to Plead USASF's Involvement in an Alleged "Conspiracy" Based on a *Per Se* Violation.

As the Sixth Circuit has noted "[t]he *per se* standard recognizes that there are some methods of restraint that are so inherently and facially anti-competitive that an elaborate and burdensome inquiry into a demonstrable economic impact on competition in a relevant market is not required." *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross and Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008). There is no allegation that USASF is a competitor of Varsity engaged in a horizontal agreement to restrain competition. Accordingly, Plaintiffs cannot state a *per se* violation of Section 1 as a matter of law. *See id.* at 434-36 (acknowledging the requirement that a *per se* violation requires agreements between competitors).

### C.    Plaintiffs Fail to Plead USASF's Involvement in an Alleged "Conspiracy" Under the Rule of Reason Test.

"The rule-of-reason test requires the court to analyze the actual effect on competition in a relevant market to determine whether the conduct unreasonably restrains trade." *Total Benefits*, 552 F.3d at 436. "To state a claim under this test, a plaintiff must include in the complaint allegations demonstrating: (1) the defendants 'contracted, combined or conspired among each other'; (2) 'the combination or conspiracy produced adverse, anticompetitive effects within relevant product and geographic markets'; (3) 'the objects of and conduct pursuant to that contract or conspiracy were illegal'; and (4) 'the plaintiff was injured as a proximate result of that conspiracy.'" *Id.* (quoting *Crane & Shovel Sales Corp. v. Bucyrus-Erie Co.*, 854 F.2d 802, 805 (6th Cir. 1988)). The Sixth Circuit has instructed that "[t]he first element requires a plaintiff to allege the existence of the conspiracy in more than 'vague and conclusory' terms." *Id.*

Plaintiffs have made just a handful of assertions about actions taken by USASF, and none of them plausibly suggest that USASF entered into a conspiracy with Varsity to restrain trade. For example, Plaintiffs allege that "[t]he access of any [Independent Event Producer] to All-Star Gyms is further restricted by the USASF-preferred insurer, K&K, which charges All-Star Gyms

12

thousands of dollars in insurance premiums if All-Star Gyms attend non-USASF events.  In addition, K&K requires covered All-Star Gyms to be USASF members.  The rates for USASF member All-Star Gyms are between $19 and $24.55 per Cheer Athlete, but they increase to $34 per Cheer Athlete if the All-Star Gym enters its Competitive Cheer Team in even a single competition that is not sanctioned by USASF." (Compl. ¶ 135).  Plaintiffs do *not* allege, however, that USASF controls K&K, requires USASF members to have K&K insurance, or sets the rates that K&K charges to K&K's insureds.  Further, Plaintiffs do not explain how anything about this could possibly suggest a conspiracy between USASF and Varsity.  Even if K&K (which is an independent entity not alleged to be part of any conspiracy) encourages its insured to be USASF members and participate in sanctioned events, there is not even an allegation that K&K requires those insureds to participate only in Varsity events.  Presumably, based on the allegations in the Complaint, K&K insureds could participate in any sanctioned event put on by any event producer.  This is an extraordinary red herring.

Plaintiffs also complain about other USASF policies. None of these policies, however, suggest that USASF conspired with Varsity or otherwise give rise to an antitrust violation. *See NCAA v. Bd. of Regents*, 468 U.S. 85, 117 (1984) (recognizing "most of the regulatory controls of the NCAA are justifiable means of fostering competition among amateur athletic teams and therefore procompetitive because they enhance public interest in intercollegiate athletics").

By way of example, Plaintiffs allege that "the USASF will not permit a Cheer Competition producer to hold a Bid-qualifying Cheer Competition within 500 miles of another Bid-qualifying competition.  This makes it difficult—if not impossible—for an IEP to expand and compete further with Varsity." (Compl. ¶ 136).  Again, Plaintiffs do not explain how this rule—which only applies to bid-qualifying events *on the same weekend* and which applies equally to all event producers,

including Varsity—suggests a conspiracy between USASF and Varsity.  Plaintiffs do not explain why an "independent event producer" in a particular geography could not simply hold a bid-qualifying event on a different weekend.  Plaintiffs also do not allege that USASF adopted this rule for the purpose of advancing Varsity's interests.  As alleged in the Complaint, this rule would also prevent Varsity from holding bid-qualifying events in the same geography and on the same weekend as other event producers, protecting those event producers from competition by Varsity.

Plaintiffs complain about how Varsity and USASF award bids to "Worlds."  The allegations specifically relating to USASF are fairly bare-bones, but as best understood, Plaintiffs allege that USASF has a system of "fully paid," "partially paid," and "at-large" bids, which teams earn from competing at 42 bid-qualifying events.  (Compl. ¶¶ 123-126).  There are separate events—The Summit and the U.S. Finals—for which only Varsity is alleged to control the bid system.  (Compl. ¶ 127).  Not every USASF member will like every rule promulgated and enforced.  Regardless, USASF must have some mechanism to award bids to "Worlds," the highest-level All Star cheerleading competition to maintain its stature and competitiveness.  In other words, there must be a mechanism to determine what teams qualify to those meets, and competitions must have rules. *Accord National Hockey Players Ass'n v. Plymouth Whalers Hockey Club*, 419 F.3d 462, 474 (6th Cir. 2005) (affirming that rule allegedly restraining athletic competition among hockey leagues did not support a cognizable claim under the Sherman Act); *Brookins v. Int'l Motor Contest Ass'n*, 219 F.3d 849, 853 (8th Cir. 2000) (noting that rules will necessarily involve exclusions which are an "incidental and inevitable byproduct of defining the game").  As alleged in the Complaint, the bid-qualifying system is the same for all USASF members, regardless of whether they are part of a Varsity gym or team, and there are numerous opportunities to earn bids at competitions put on by

other non-Varsity event producers.  The existence of this legitimate mechanism does not suggest in any way that USASF has conspired with Varsity to restrain trade in the cheerleading industry.

Even more preposterous, Plaintiffs complain about USASF's uniform rules.  (Compl. ¶ 59). Yet even Plaintiffs cannot identify any particular uniform rule that requires some Varsity-specific article of clothing.  To the contrary, as pleaded, USASF's rules are remarkably generic, requiring only that athletes wear soft-soled shoes, not wear overly revealing clothing, and not wear accessories and use props that impact safety.  (*Id.*).  Plaintiffs do not explain how these generic rules favor Varsity or suggest the existence of a conspiracy between Varsity and USASF.  Plaintiffs' complaints about USASF rules do not involve any anticompetitive conduct and fail to establish USASF's involvement in any alleged conspiracy.  *See, e.g.*, *Brookins*, 219 F.3d at 854 ("So long as IMCA made game-defining rules decisions based upon its purposes as a sports organization, an antitrust court need not be concerned with the rationality or fairness of those decisions.").

Further, it is glaring that Plaintiffs' allegations relating to "Cheer Camps" (Compl. ¶¶ 62-69, 206-216) and "School Cheer" (Compl. ¶¶ 52-58, 113, 128, 141, 151, 186, 208) do not involve USASF at all.  The "Competitive Cheer" market that Plaintiffs identify consists of both All Star Cheer and School Cheer.  (Compl. ¶ 48).  Given that there are *no* allegations tying USASF to the School Cheer portion of this market, it is implausible that USASF conspired with Varsity to restrain trade in this market.  There are no allegations as to why USASF would do so, how it could have done so since USASF does not govern high school or collegiate cheer, or what actions USASF took to do so.  Similarly, there are *no* allegations tying USASF to Cheer Camps.  Nowhere in the Complaint do Plaintiffs allege why or how USASF conspired to restrain trade in this market.

Even taking all of the allegations in the Complaint as true and viewing them in the light most favorable to Plaintiffs, there is no conduct alleged from which the Court could reasonably infer that USASF was involved in a conspiracy to restrain trade to support a Section 1 claim.

**D.     Plaintiffs Fail To Plead A Viable Conspiracy Between Varsity and USASF Under _Copperweld_ and the Intracorporate Conspiracy Doctrine.**

Taking the allegations in the Complaint as true, Varsity and USASF, are essentially one and the same.  As a result, these entities are legally incapable of conspiring with each other under Section 2 of the Sherman Act.  _See Copperweld Corp. v. Indep. Tube Corp._, 467 U.S. 752, 769, 771 (1984) (finding that a wholly-owned subsidiary could not form a conspiracy with its parent corporations because such agreements "do not suddenly bring together economic power that was previously pursuing divergent goals" and are not within the concern of the antitrust conspiracy statutes); _see also Nurse Midwifery Assocs. v. Hibbett_, 918 F.2d 605, 612 (6th Cir. 1990) (noting that "a corporation cannot ordinarily conspire with its agents or employees" in violation of the Sherman Act); _Boulevard Souvenirs v. Elvis Presley Enters., Inc._, 2007 WL 9705982, at *3-4 (W.D. Tenn. Oct. 2, 2007) (intracorporate conspiracy doctrine barred § 1 and § 2 Sherman Act claims).

Among other things, Plaintiffs allege that Varsity "create[d] the USASF" (Compl. ¶ 104); that "Varsity controlled USASF from its inception" (_id._ ¶ 105); that "Varsity provided initial capital to USASF in the form of a $1.8 million interest free loan" (_id._ ¶ 104); that "USASF was the cat's paw of Varsity" (_id._ ¶ 108); Varsity "controls the USASF Board of Directors" (_id._ ¶ 110); that "the USASF employees shared offices with Varsity at Varsity's headquarters in Tennessee for many years" (_id._ ¶ 108); that "Varsity paid USASF employees" (_id._); that "Varsity submitted the original trademark application for the marks 'U.S. All Star Federation' and 'USASF,' listing itself as owner" (_id._ ¶ 105); that "[f]or at least the first 15 years of its existence, the USASF's offices were located at Varsity's corporate address, a Varsity representative answered the phone for USASF,

16

USASF employees were paid directly by Varsity, and Varsity cashed checks to the USASF" (*id.*); and that Varsity owns USASF's website URL (*id.* ¶ 112).

According to Plaintiffs, USASF has no independent decision-making or economic purpose and is completely beholden to Varsity. In other words, as in *Copperweld*, taking Plaintiffs' allegations as true, USASF and Varsity are not "separate economic actors pursuing separate economic interests" and, therefore, "agreements among them do not suddenly bring together economic power that was previously pursuing divergent goals." *Copperweld*, 467 U.S. at 769; *see also Am. Council of Certified Podiatric Physicians and Surgeons v. Am. Bd. of Podiatric Surgery, Inc.*, 185 F.3d 606, 620 (6th Cir. 1999) (holding that defendant corporation could not conspire with its members for purpose of Sherman Act § 2 claim); *Nurse Midwifery Assocs.*, 918 F.2d at 614 (holding that intracorporate conspiracy doctrine precluded claim under the Sherman Act that hospital defendants had conspired with their staff and physician agents); *Century Oil v. Prod. Specialties*, 737 F.2d 1316, 1317 (5th Cir. 1984) (holding that *Copperweld* applied to corporations under common control as "a contract between them [would] not join formerly distinct economic units" because, "[i]n reality they have always had a unity of purpose or a common design").

In *Jack Russell Terrier Network of Northern Ca. v. Am. Kennel Club*, the Ninth Circuit rejected a similar theory that the Jack Russell Terrier Club of America conspired with its regional affiliates. 407 F.3d 1027, 1035 & n.15 (9th Cir. 2005). The court determined that the plaintiffs had "not alleged sufficient facts to support a claim that the JRTCA and its affiliates are separate entities pursuing different economic goals, capable of conspiring for Sherman Act purposes." *Id.* at 1035. Because the court was bound to "assume the truth of the facts alleged in the complaint," it could not "assume any facts necessary to the [plaintiffs'] claim that they have not alleged." *Id.* In *Jack Russell*, the complaint alleged that the national club and its affiliates shared a common

goal and economic interests, the affiliates were extensions of the national club, and the affiliates did not compete with the national club. *Id.* The Court of Appeals thus applied the *Copperweld* rule and found that the plaintiffs could not state a viable antitrust claim. *Id.*

As in *Jack Russell*, the Complaint here does not allege that USASF and Varsity are separate actors pursuing independent economic interests. Rather, the Complaint alleges that USASF is an extension of Varsity, i.e. "the cat's paw." (Compl. ¶ 108). There is no suggestion—nor could there be—that USASF competes with Varsity. Following the logic of the Ninth Circuit in *Jack Russell*, this Court should similarly find that based on the allegations in the Complaint, the relationship between USASF and Varsity cannot, as a matter of law, constitute a conspiracy to monopolize under *Copperweld*. *See Jack Russell*, 407 F.3d at 1035 & n.15 (holding that *Copperweld* applied to national breed club and dog registry and its regional affiliates that, although not under common ownership, had an "identical economic interest"); *Century Oil Tool Co.*, 737 F.2d 1317 (holding that two corporations were incapable of conspiring because they were under the "common ownership and control" of three individuals).

## IV.    Plaintiffs Fail to State a Plausible Antitrust Claim Under Any State Antitrust and Consumer Protection Laws.

Count Two alleges that USASF conspired with Varsity to violate Tennessee Code Ann. § 47-25-101 *et seq.*, the Tennessee Trade Practices Act ("TTPA"). This statute, however applies only to tangible goods, not intangible services. *See, e.g.*, *Bennett v. Visa U.S.A. Inc.*, 198 S.W.3d 747, 751 (Tenn. Ct. App. 2006) ("The law is well settled that the TTPA applies only to tangible goods, not intangible services.") (citing *McAdoo Contractors, Inc. v. Harris*, 439 S.W.2d 594 (1969)). As a result, as a threshold matter, this claim cannot apply to the alleged Cheer Competitions and Cheer Camps markets, which are intangible services.

Even as to the alleged Cheer Apparel market, Plaintiffs' claim under the TTPA fails to state

a plausible claim for relief. "The Tennessee antitrust statute pertains to transactions that are predominantly intrastate in character." *Valley Prods. Co., Inc. v. Landmark*, 877 F. Supp. 1087, 1094 (W.D. Tenn. 1994). While the transactions need not be exclusively intrastate, "the alleged anticompetitive conduct [must] affect[] Tennessee trade or commerce to a substantial degree." *Freeman Indus., LLC v. Eastman Chem. Co.*, 172 S.W.3d 512, 523 (Tenn. 2005). "The focus under the substantial effects standard . . . is not on the anticompetitive conduct itself but on the *effects* of the conduct on Tennessee commerce." *Id.* at 524. As a result, the Tennessee Supreme Court has instructed that it is not sufficient that a defendant is alleged to be located in Tennessee or to have implemented pricing in Tennessee. *Id.*

As in *Freeman Industries*, the allegations that the Defendants are based in Tennessee and "conceived and implemented" their alleged scheme in Tennessee is insufficient. None of the Plaintiffs reside in Tennessee or are alleged to have purchased any products in Tennessee. There is no allegation that Defendants' conduct had a substantial effect on Tennessee commerce. Of course, such an allegation would be implausible, not only to the named Plaintiffs who reside in Kansas, California, and Colorado, but also as to a proposed nationwide class of numerous non-Tennessee consumers. Indeed, Plaintiffs allege that the market for Cheer Apparel is the entire United States, and that "[a]pparel is also sold online, thus emphasizing this market as a nation-wide one, since no location depends exclusively on having a brick and mortar store to purchase apparel." (Compl. ¶ 192). The TTPA is simply not designed or intended to be a vehicle to bring nationwide classes and is limited to conduct that substantially affects commerce in Tennessee. Plaintiffs have not pleaded a plausible claim for relief under the TTPA.

Count Three alleges violations of 31 state antitrust laws. To the extent this claim is even brought against USASF, this claim fails to state a plausible claim as a matter of law. Plaintiffs

have not identified the specific provisions of the various state antitrust acts cited, and it is facially

implausible that the three plaintiffs from Kansas, California, and Colorado have standing to bring

claims under 31 different state antitrust acts.  Several of the state laws cited lack a private right of

action.  (*See* Webb's Mem. in Support of Motion to Dismiss, Part III.C.2).

Count Four alleges violations of 31 state consumer protection acts.  While it does not

appear that this claim is intended to be brought against USASF, it nonetheless fails to state a

plausible claim against any Defendant.  Plaintiffs have not identified the specific provisions at

issue of the state consumer protection acts.  For example, Plaintiffs fail to allege the commission

of any act prohibited by Tenn. Code Ann. § 47-18-104.  And again, it is facially implausible that

named plaintiffs from Kansas, California, and Colorado have standing to bring claims, let alone

the ability to adequately represent a class of persons, under 31 different state consumer protection

acts.  Plaintiffs cannot even bring a class action under some of the cited state laws.  *See* Tenn. Code

Ann. § 47-18-109(g) ("No class action lawsuit may be brought to recover damages for an unfair

or deceptive act or practice declared to be unlawful by this part."); *Martinez v. Nash Finch Co.*,

886 F. Supp. 2d 1212, 1218-19 (D. Colo. Aug. 13, 2012) (no ability to recover damages on behalf

of a class under Colo. Rev. Stat. § 6-1-113); *see also* Webb Mem. in Support, Part IV.[3]

## CONCLUSION

For the foregoing reasons, Defendant USASF respectfully requests that the Court dismiss

all claims against USASF with prejudice.

---

[3] USASF also notes that several of these statutes provide for the imposition of fees against the plaintiff where the cause of action is frivolous, groundless, in bad faith, or brought for the purpose of harassment.  *See, e.g.*, Tenn. Code Ann. § 47-18-109(e)(2); Colo. Rev. Stat. § 6-1-113(3).  Given that Plaintiffs here raise 31 different state statutes, fail to identify the specific provisions of those statutes that USASF (or any Defendant) is alleged to have violated, and fail to allege the conduct that they claim constitutes a violation, USASF respectfully submits that it is entitled to an award of its fees for bringing this Motion to Dismiss.

March 12, 2021                          Respectfully submitted,

                                        */s/ Nicole D. Berkowitz*
                                        Grady Garrison (TN #008097)
                                        Nicole D. Berkowitz (TN #35046)
                                        BAKER, DONELSON, BEARMAN, CALDWELL &
                                        BERKOWITZ
                                        165 Madison Avenue, Suite 2000
                                        Memphis, TN 38103
                                        Phone: (901) 526-2000
                                        Fax: (901) 577-0866
                                        ggarrison@bakerdonelson.com
                                        nberkowitz@bakerdonelson.com

                                        *Attorneys for U.S. All Star Federation, Inc.*


## CERTIFICATE OF SERVICE

I hereby certify that on this 12th day of March, 2021, the foregoing was served on the Plaintiffs via the Court's Electronic Filing System and/or by emailing a true and exact copy to the following counsel of record:

Joseph R. Saveri, Esq.
Elissa Amlin Buchanan, Esq.
Kevin Rayhill, Esq.
Steven N. Williams, Esq.
Anne-Patrice Harris, Esq.
JOSEPH SAVERI LAW FIRM, INC.
601 California St., Suite 1000
San Francisco, CA 94108
Email: jsaveri@saverilawfirm.com
Email: eabuchanan@saverilawfirm.com
Email: krayhill@saverilawfirm.com
Email: swilliams@saverilawfirm.com
Email: aharris@saverilawfirm.com

Richard Paul, III
Sean R. Cooper
PAUL LLP
601 Walnut Street, Suite 300
Kansas City, MO 64106
Email: Rick@paulllp.com
Email: sean@paulllp.com

Van Davis Turner, Jr., Esq.
BRUCE TURNER, PLLC
2650 Thousand Oaks Boulevard Suite 2325
Memphis, TN 38118
Email: vturner@bruceturnerlaw.net

4810-8848-8414v6
- 03/12/2021

*Counsel for Plaintiffs*

George Cary, Esq.
Steven Kaiser, Esq.
Alexis Collins, Esq.
Mark W. Nelson, Esq.
CLEARY GOTTLIEB STEEN &
HAMILTON LLP
2112 Pennsylvania Avenue, NW Suite 1000
Washington, DC 20037
Email: gcary@cgsh.com
Email: skaiser@cgsh.com
Email: alcollins@cgsh.com
Email: mnelson@cgsh.com

Adam S. Baldridge, Esq.
Matthew S. Mulqueen, Esq.
BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, P.C.
165 Madison Avenue, Suite 2000
Memphis, TN 38103
Email: abaldridge@bakerdonelson.com
Email: mmulqueen@bakerdonelson.com

*Counsel for Defendants Varsity Brands, LLC,*
*Varsity Spirit, LLC, Varsity Spirit Fashions &*
*Supplies, LLC, Charlesbank Capital Partners*
*LLC and Bain Capital Private Equity*

Paul Coggins, Esq.
Brendan Patrick Gaffney, Esq.
LOCKE LORD LLP
2200 Ross Avenue, Suite 2800
Dallas, TX 75201
Email: pcoggins@lockelord.com
Email: bgaffney@lockelord.com

*Counsel for Defendant Jeff Webb*

*/s/ Nicole D. Berkowitz*

22