## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
## WESTERN DIVISION

| | |
|---|---|
| **JESSICA JONES, MICHELLE VELOTTA**, and **CHRISTINA LORENZEN** on Behalf of Themselves and All Others Similarly Situated, | Case No. 2:20-cv-02892-SHL-cgc |
| **Plaintiffs,** | **JURY DEMAND** |
| v. | |
| **VARSITY BRANDS, LLC; VARSITY SPIRIT, LLC; VARSITY SPIRIT FASHION & SUPPLIES, LLC; U.S. ALL STAR FEDERATION, INC.; JEFF WEBB; CHARLESBANK CAPITAL PARTNERS LLC; and BAIN CAPITAL PRIVATE EQUITY,** | |
| **Defendants.** | |

### PLAINTIFFS' OPPOSITION TO DEFENDANTS BAIN CAPITAL PRIVATE EQUITY AND CHARLESBANK CAPITAL PARTNERS' MOTION TO DISMISS

## **TABLE OF CONTENTS**

I.     INTRODUCTION AND  SUMMARY OF ALLEGATIONS .................................................1

II.    LEGAL STANDARD...................................................................................................................1

III.   ARGUMENT ................................................................................................................................2

     A.     Charlesbank and Bain Participated in the Anticompetitive Scheme. .........................3

     B.     Under *Copperweld*, Defendants Charlesbank, Bain, and Their Subsidiary, Varsity, Are Treated As A Single Entity for Antitrust Purposes. ..............................4

     C.     Varsity is an Agent of Bain and Charlesbank. ............................................................8

     D.     Charlesbank and Bain Caused Plaintiffs' Antitrust Injuries within the Statute of Limitations...........................................................................................................11

     E.     Plaintiffs' Complaint Establishes the Plausible Inference of Successor Liability.....................................................................................................................13

IV.    CONCLUSION..........................................................................................................................14

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                        **Page(s)**

*Alvord-Polk Inc. v. F. Schumacher Co.*,
  37 F.3d 996 (3d Cir. 1994)..................................................................................................8, 9

*Am. Soc'y. of Mech. Eng'rs Inc. v. Hydrolevel Corp.*,
  456 U.S. 556 (1982).................................................................................................8, 9, 10, 11

*Arandell Corp. v. Centerpoint Energy Servs., Inc.*,
  900 F.3d 623 (9th Cir. 2018) ......................................................................... *passim*

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)............................................................................................................2

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007)............................................................................................................1

*Bialek v. Delvista Towers Condo. Ass'n, Inc.*,
  994 F. Supp. 2d 1277 (S.D. Fla. 2014) .............................................................................2

*Carpet Grp. Intl .v. Oriental Rug Importers Ass'n Inc.*,
  256 F. Supp. 2d 249 (D.N.J. 2003) ...............................................................................8, 9

*Coast Cities Truck Sales, Inc. v. Navistar Int'l Transp. Co.*,
  912 F.Supp. 747 (D.N.J. 1995) ........................................................................................7

*Conley v. Gibson*,
  355 U.S. 41 (1957)............................................................................................................14

*Cont'l Ore Co. v. Union Carbide & Carbon Corp.*,
  370 U.S. 690 (1962)........................................................................................................7, 8

*Copperweld Corp. v. Indep. Tube Corp.*,
  467 U.S. 752 (1984)...............................................................................................4, 5, 7, 8

*DXS, Inc. v. Siemens Med. Sys., Inc.*,
  100 F.3d 462 (6th Cir. 1996) ...........................................................................................12

*EEOC v. G–K–G, Inc.*,
  39 F.3d 740 (7th Cir. 1994) .............................................................................................14

*Esco Corp. v. United States*,
  340 F.2d 1000 (9th Cir. 1965) .........................................................................................11

*Flake v. Schrader-Bridgeport Int'l, Inc.*,
  538 Fed. Appx. 604 (6th Cir. 2013)..................................................................................13

*Freeman v. San Diego Ass'n of Realtors*,
  322 F.3d 1133 (9th Cir. 2003) .................................................................5

*Hanover Shoe, Inc. v. United Shoe Mach. Corp.*,
  392 U.S. 481 (1968).............................................................................12

*In re Fine Paper Antitrust Litig.*
  685 F.2d 810 (3d Cir. 1982)....................................................................7

*In re Polyurethane Foam Antitrust Litig.*,
  314 F.R.D. 226 (N.D. Ohio 2014) ............................................................2

*In re Se. Milk. Antitrust Litig.*,
  555 F. Supp. 2d 934 (E.D. Tenn. 2008)...................................................12

*In re Skelaxin (Metaxalone) Antitrust Litig.*,
  No. 1:12–md–2343, 2013 WL 2181185 (E.D. Tenn. May 20, 2013).....................8

*Japan Petroleum Co. (Nigeria) v. Ashland Oil Inc.*,
  456 F.Supp. 831 (D. Del. 1978)..............................................................10

*Leatherman v. Tarrant Cty. Narcotics Intelligence & Coordination Unit*,
  507 U.S. 163 (1993)...............................................................................1

*Lenox MacLaren Surgical Corp. v. Medtronic, Inc.*,
  847 F.3d 1221 (10th Cir. 2017) ...............................................................6

*Magluta v. Samples*,
  256 F.3d 1282 (11th Cir. 2001) ...............................................................2

*Meijer, Inc. v. 3M*,
  No. 04-5871, 2005 WL 1660188 (E.D. Pa. July 13, 2005) ...........................12

*Michaels Bldg. Co. v. Ameritrust Co.*,
  848 F.2d 674 (6th Cir. 1988) ..................................................................2

*Novatel Commc'ns, Inc. v. Cellular Tel. Supply, Inc.*,
  No. Civ. A. C85-2674A, 1986 WL 798475 (N.D. Ga. Dec. 23, 1986) ................7

*Ohio Willow Wood Co. v. Alps S. LLC*,
  No. 2:05-CV-1039, 2011 WL 1237582 (S.D. Ohio Mar. 29, 2011)..................2

*Patin v. Thoroughbred Power Boats, Inc.*,
  294 F.3d 640 (5th Cir. 2002) .................................................................14

*PNC Multifamily Cap. Institutional Fund XXVI Ltd. P'ship v. Bluff City Cmty.*
  *Dev. Corp.*,
  387 S.W.3d 525 (Tenn. Ct. App. 2012) ....................................................2

PLAINTIFFS' OPPOSITION TO DEFENDANTS BAIN CAPITAL PRIVATE EQUITY AND CHARLESBANK
CAPITAL PARTNERS' MOTION TO DISMISS

*Rohlfing v. Manor Care, Inc.*,
 172 F.R.D. 330 (N.D. Ill. 1997)................................................................7

*Texas Indus. Inc. v. Radcliff Materials, Inc.*,
 451 U.S. 630 (1981)................................................................................10

*Trau-Med of Am., Inc. v. Allstate Ins. Co.*,
 71 S.W.3d 691 (Tenn. 2002)....................................................................7

*United States v. Bailey*,
 444 U.S. 404-05 (1980) ............................................................................6

*United States v. Foster*,
 985 F.2d 466 (9th Cir. 1993) ....................................................................8

*United States v. U.S. Gypsum Co.*,
 438 U.S. 422 (1978)..................................................................................6

*Varsity Brands, Inc. v. Star Athletica, L.L.C.*,
 No. 2:10-cv-02508, 2011 WL 13097063 (W.D. Tenn. Oct. 31, 2011)....................................14

*Wells Fargo & Co. v. Wells Fargo Exp. Co.*,
 556 F.2d 406 (9th Cir. 1977) ..................................................................10

*Z Techs. Corp. v. Lubrizol Corp.*,
 753 F.3d 594 (6th Cir. 2014) ................................................................11, 12, 13

**Statutes**

Sherman Act, 15 U.S.C.
 § 1..............................................................................................4, 6
 § 2............................................................................................12, 14
 § 15..............................................................................................11

Fed. R. Civ. P.
 8....................................................................................................1
 12................................................................................................1, 2

**Other Authorities**

2 James W. Moore, Moore's Federal Practice, § 12.34[1] (3d ed.1997)......................................14

## I.      INTRODUCTION AND  SUMMARY OF ALLEGATIONS

Defendants Charlesbank Capital Partners LLC ("Charlesbank") and Bain Capital Private

Equity's ("Bain") motion to dismiss misstates Plaintiffs' complaint and misapplies the relevant

law. A correct application of all relevant facts and law shows that both Charlesbank and Bain are

directly liable for the illegal conspiracy and monopolization efforts alleged in this case.

Plaintiffs allege that Charlesbank and Bain, acting in concert with U.S. All Star

Federation, Inc. ("USASF") and others, conspired to raise, fix, and stabilize the prices associated

with Competitive Cheer. Compl. ¶ 1. This was done by forming a scheme to create an illegal

monopoly in order to dominate Competitive Cheer in the United States. *Id.* As a result, cheer

athletes and their parents, friends, and family have indirectly paid higher prices for Cheer

Competitions, Cheer Apparel, and Cheer Camps than they would have paid in a competitive

marketplace absent the anticompetitive exclusionary scheme. *Id.* ¶ 227.[1]

## II.      LEGAL STANDARD

To withstand a Rule 12(b)(6) motion to dismiss, a plaintiff must only allege "enough

facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550

U.S. 544, 570 (2007). No special pleading standards apply to antitrust claims. *Leatherman v.*

*Tarrant Cty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993) (courts may

not apply a heightened pleading standard "more stringent than the usual pleading requirements of

Rule 8(a)"). Pleading an antitrust conspiracy only "requires a complaint with enough factual

matter (taken as true) to suggest that an agreement was made," and "to raise a reasonable

expectation that discovery will reveal evidence of illegal agreement." *Twombly*, 550 U.S. at 556–

---

[1] For the sake of efficiency, Plaintiffs provide this brief summary of their allegations and
expressly incorporate the more comprehensive summaries in Plaintiffs' Opposition to Varsity's
Motion to Dismiss.

57. Non-conclusory allegations are taken as true. If the allegations directly satisfy an element of the claim, no inference is necessary. If an inference is necessary, the inference must be plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). Motions to dismiss a complaint are not favored and are rarely granted in light of the liberal pleading standards contained in the rules of civil procedure. Rules Civ.Proc., Rule 12.02(6). *PNC Multifamily Cap. Institutional Fund XXVI Ltd. P'ship v. Bluff City Cmty. Dev. Corp.*, 387 S.W.3d 525 (Tenn. Ct. App. 2012).

"In an antitrust case, 'where the proof is largely in the hands of the alleged conspirators, dismissals prior to giving the plaintiff ample opportunity for discovery should be granted very sparingly.'" *Michaels Bldg. Co. v. Ameritrust Co.*, 848 F.2d 674, 681 (6th Cir. 1988) ("Michaels Bldg. Co.") (internal citations omitted) (quoting *Hosp. Bldg. Co. v. Trustees of Rex Hosp.*, 425 U.S. 738, 746 (1976)).[2] *Accord Ohio Willow Wood Co. v. Alps S. LLC*, No. 2:05-CV-1039, 2011 WL 1237582, at *4 (S.D. Ohio Mar. 29, 2011). When analyzing allegations of conspiracy, "[D]efendants may not recast plaintiffs' allegations regarding the nature of the conspiracy." *In re Polyurethane Foam Antitrust Litig*., 314 F.R.D. 226, 257 (N.D. Ohio 2014) (quoting *In re TFT-LCD (Flat Panel) Antitrust Litig.,* 267 F.R.D. 583, 607 (N.D. Cal. 2010)).

## III.   ARGUMENT

Defendants' unlawful anticompetitive conduct has been ongoing since before 2014 and continues to the present. Charlesbank owned defendant Varsity Brands, LLC ("Varsity") from 2014 to 2018. *Id.* ¶21. Bain purchased Varsity from Charlesbank in 2018 and still owns it today.

---

[2] Defendants cite to *Magluta v. Samples*, 256 F.3d 1282, 1284 (11th Cir. 2001) in support of their contention that Plaintiffs do not sufficiently detail their claims against them. *Magluta* is inapposite. The plaintiff in *Magluta* was a prisoner proceeding pro se. His complaint named 14 different defendants and, as the Court found, was factually impossible. *See Bialek v. Delvista Towers Condo. Ass'n, Inc.*, 994 F. Supp. 2d 1277, 1280 (S.D. Fla. 2014) (declining to follow *Magluta*). Further, as discussed in this Opposition, as well as the Opposition of Varsity and USASF and incorporated herein by reference, Plaintiffs have adequately pled their antitrust claims against all defendants in copious detail.

*Id.* ¶ 22. Because the Defendants' anticompetitive scheme to monopolize the relevant cheer markets persisted throughout Charlesbank and Bain's ownership and continues to the present, both Charlesbank and Bain must remain as parties to this lawsuit.

Defendants Charlesbank and Bain try to use their corporate forms in directly contradictory ways. First, they argue that Charlesbank and Bain, as distinct corporate parents to Varsity, are not liable for the acts of their subsidiaries. At the same time, Defendants argue that, because Charlesbank (and then Bain) owned Varsity as a wholly-owned subsidiary, the parent and its subsidiary are actually one and the same and are incapable of conspiring with each other. Charlesbank and Bain Motion to Dismiss ("CBMD") at 3-4. In other words, Bain and Charlesbank argue that they are simultaneously distinct yet inseparable from their Varsity subsidiary. Setting aside this contradiction, each of these arguments ignores allegations that overcome Defendants' defenses.

Defendants' statute of limitations argument is equally misplaced because Plaintiffs' allegations of anticompetitive conduct invoke the continuing violations doctrine within the statute of limitations.

### A.   Charlesbank and Bain Participated in the Anticompetitive Scheme.

As alleged in the Complaint, Charlesbank and Bain actively participated and profited from Defendants' anticompetitive scheme to monopolize cheer markets. Compl. ¶¶ 21-22, 119-20. The anticompetitive scheme has continued over the past 15 years. Compl. ¶ 117. Charlesbank has been involved in the scheme since at least 2014, and Bain has been involved in the scheme since at least 2018. Compl. ¶¶ 119-20. Defendants continue to reap rewards from their conduct today. Compl. ¶ 117. As Plaintiffs explained in their Complaint, Charlesbank and Bain have never been merely owners. Instead, Charlesbank was an integral part of the scheme, providing the financial resources necessary to acquire rivals. As alleged, Charlesbank was a crucial

participant, "provid[ing] funding to enhance, extend, and ensure Varsity Brands' monopoly power" as Varsity "acquired [its] biggest rivals." Compl. ¶ 21. Indeed, after Charlesbank's sale to Bain in 2018, Charlesbank continued its participation, directing the affairs of Varsity. Charlesbank "maintains a seat of Varsity's Board of Directors and continues to be actively involved in the alleged anticompetitive scheme through this position of power." Compl. ¶119. Similarly, Bain has seats on Varsity's Board of Directors, Compl. ¶ 120, and provided funding for the acquisition of rivals, Compl. ¶ 111, along with other aspects of the exclusionary scheme, including maintaining control of USASF and other rule making bodies. Compl. ¶ 114.

### B.   Under *Copperweld*, Defendants Charlesbank, Bain, and Their Subsidiary, Varsity, Are Treated As A Single Entity for Antitrust Purposes.

Defendants' base their motion on the Supreme Court's decision in *Copperweld*. But they get the decision exactly backwards. Under *Copperweld*, a parent corporation and its wholly owned subsidiary are treated as a single unit. *Copperweld Corp. v. Indep. Tube Corp.*, 467 U.S. 752, 771 (1984). This crucial error destroys their motion. As alleged, "[e]ach defendant, and its respective subsidiaries, affiliates and agents operated as a single unified entity." Compl. ¶ 25. The members of that entity share antitrust liability.

In *Copperweld*, the Supreme Court rejected the "intra-enterprise conspiracy" doctrine. 467 U.S. at 759. The Court held that "the coordinated activity of a parent and its wholly owned subsidiary must be viewed as that of a single enterprise for purposes of [Section] 1 of the Sherman Act." *Id.* at 771. The Court based its conclusion on the grounds that, as a matter of law, a "parent and its wholly owned subsidiary have a complete unity of interest." *Id.* In other words, *Copperweld* establishes "where there is substantial common ownership . . . individual firms function as an economic unit and are generally treated as a single entity." *See Arandell Corp. v. Centerpoint Energy Servs., Inc.*, 900 F.3d 623, 630 (9th Cir. 2018) (quoting *Freeman v. San*

*Diego Ass'n of Realtors*, 322 F.3d 1133, 1148 (9th Cir. 2003)). The logical corollary of the principle that a parent cannot conspire with its subsidiary because they are one unit is that they are considered as one unit for purposes of liability under antitrust law.

The Ninth Circuit addressed this situation explicitly in *Arandell*, holding the parent and the subsidiary function as one unit and to be treated as one for purposes of antitrust law. In *Arandell*, the Ninth Circuit applied *Copperweld* and rejected the argument Defendants make here. 900 F.3d 623. There, plaintiffs had sued several natural gas conglomerates–including parent companies and their subsidiaries–alleging they colluded to fix retail natural gas prices. *Id.* at 628. One entity—CES—within one of the defendant corporate families—Reliant—moved for summary judgment on the basis that CES had not engaged "in any anticompetitive activity or other wrongdoing in or directed at Wisconsin [the forum] . . . but it was only alleged to have been affiliated with RES and to have sold gas to Wisconsin consumers." *Id.* The Ninth Circuit rejected the argument, relying extensively on *Copperweld* and *Freeman.* The Ninth Circuit held that **a parent and its wholly owned subsidiary "always have a 'unity of purpose or a common design.'"** *Id.* at 630 (emphasis added) (quoting *Copperweld,* 467 U.S. at 771). Moreover, "[t]hey share a common purpose whether or not the parent keeps a tight rein over the subsidiary." *Id.*; *see also Freeman*, 322 F.3d at 1147-48. The Ninth Circuit stated:

> The Supreme Court could have hardly made this point more explicit:
>
> The coordinated activity of a parent and its wholly owned subsidiary must be viewed as that of a single enterprise for purposes of § 1 of the Sherman Act. A parent and its wholly owned subsidiary have a complete unity of interest. Their objectives are common, not disparate; their general corporate actions are guided or determined not by two separate corporate consciousnesses, but one. They are not unlike a multiple team of horses drawing a vehicle under the control of a single driver. With or without a formal "agreement," the subsidiary acts for the benefit of the parent, its sole shareholder

PLAINTIFFS' OPPOSITION TO DEFENDANTS BAIN CAPITAL PRIVATE EQUITY AND CHARLESBANK
CAPITAL PARTNERS' MOTION TO DISMISS

> . . . [I]n reality a parent and a wholly owned subsidiary always have a "unity of purpose or a common design." They share a common purpose whether or not the parent keeps a tight rein over the subsidiary; the parent may assert full control at any moment if the subsidiary fails to act in the parent's best interests.

*Arandell*, 900 F.3d at 630 (quoting *Copperweld*, 467 U.S. at 771-72). Therefore, the Ninth Circuit reasoned that, if a parent and subsidiary always "have a complete unity of purposes or common design" when they engage in coordinated activity, then a subsidiary such as CES "as a matter of law cannot innocently advance an anticompetitive scheme" by selling the price-fixed product while its parent or affiliated companies have participated in illegal anticompetitive activities. *Id*. at 630-31 (emphasis in original); *see also Lenox MacLaren Surgical Corp. v. Medtronic, Inc.,* 847 F.3d 1221 (10th Cir. 2017).[3] The same analysis applies here. Varsity and USASF advanced the anticompetitive scheme as challenged by Plaintiffs' complaint. Compl. ¶¶ 103-12, 116, 121-29.

Defendants' assertions that merely holding an interest in Varsity does not create antitrust liability are misplaced. CBMD at 4. Varsity is acting in the interest of Charlesbank and Bain. After the four-year period that Charlesbank owned Varsity, it made a $1 billion profit when it sold Varsity to Bain. Compl. ¶¶ 85, 119. During that four-year period, Varsity and Charlesbank advanced the exclusionary scheme by acquiring apparel and competition competitors, Compl. ¶¶ 87-102, increasing Varsity's hold on Cheer governing bodies, Compl. ¶ 114, and entering into exclusive agreements with All Star Gyms and schools ¶¶ 143, 147, 151. The anticompetive

---

[3] Proof of "anticompetitive purpose can sustain liability under the Sherman Act with or without an additional finding of 'knowledge." *Arandell*, 900 F.3d at 632; *see United States v. Bailey,* 444 U.S. 404-05 (1980); *United States v. U.S. Gypsum Co*., 438 U.S. 422, 446 (1978) (proof of both knowledge and purpose under Section 1 is "unnecessarily cumulative.").

scheme has been maintained and continued since Bain acquired the controlling interest in

Varsity. Compl. ¶ 122.

Other decisions are in accord. *See also Trau-Med of Am., Inc. v. Allstate Ins. Co.*, 71

S.W.3d 691, 705 (Tenn. 2002) (citing *Copperweld*, 467 U.S. at 770-71 n.6); *Novatel Commc'ns,*

*Inc. v. Cellular Tel. Supply, Inc.*, No. Civ. A. C85-2674A, 1986 WL 798475 (N.D. Ga. Dec. 23,

1986) (a company and its 51 percent-owned subsidiary considered to be a single-entity under

*Copperweld*); *Rohlfing v. Manor Care, Inc.,* 172 F.R.D. 330, 344 (N.D. Ill. 1997) ("[M]ajority

ownership with its centralized power to control, whether or not apparently exercised in detail on

a day-to-day basis, presumptively creates a single entity for antitrust purposes.") (quoting 7

PHILLIP E. AREEDA, ANTITRUST LAW ¶ 1467a (1986)); *Coast Cities Truck Sales, Inc. v. Navistar*

*Int'l Transp. Co.,* 912 F.Supp. 747, 765 (D.N.J. 1995) (Even though the subsidiaries had a

president running their day-to-day operations, which gave them "[s]ome modicum of

independence," this did not change the fact that the parent "owned at all relevant times enough of

the voting shares in each [subsidiary] to dictate the objectives and actions of each [subsidiary].").

Defendants' assertions regarding observance of corporate formalities do not allow them

to avoid liability when they act as a unit. Nor can they evade liability by establishing their

corporate structure. First, it is inconsistent with the hornbook rule that participation in

anticompetitive conduct must be examined as a whole. *See, e.g., Cont'l Ore Co. v. Union*

*Carbide & Carbon Corp.*, 370 U.S. 690, 699 (1962) (emphasizing that "the character and effect

of a conspiracy are not to be judged by dismembering it and viewing its separate parts, but

[rather] by looking at it as a whole."); *In re Fine Paper Antitrust Litig.* 685 F.2d 810, 822 (3d

Cir. 1982) (district court should not "compartmentalize" a conspiracy claim by conducting "a

seriatim examination of the claims against each of five conspiracy defendants as if they were

separate lawsuits."); *In re Skelaxin (Metaxalone) Antitrust Litig.,* No. 1:12–md–2343, 2013 WL 2181185, at *12 (E.D. Tenn. May 20, 2013) (following *Cont'l Ore Co.* and finding that a court can consider factual allegations in aggregate pertaining to a conspiracy or anticompetitive scheme).

Second, once a conspiracy is established (or that proof of one is in dispute), plaintiffs need only show a "slight connection" to the conspiracy for a co-conspirator to be jointly and severally liable for the acts of its co-conspirators. "Once there is proof of a conspiracy, "evidence of only a slight connection to the conspiracy' is sufficient to convict for participation in the conspiracy." *United States v. Foster*, 985 F.2d 466, 469 (9th Cir. 1993) (quoting *United States v. Taylor*, 802 F.2d 1108, 1116 (9th Cir. 1986)). The evidence shows more than a slight connection. As noted, both Charlesbank and Bain funded the acquisitions of rivals and provided other funding employed by Varsity to implement and maintain the anticompetitive scheme. Compl. ¶¶ 87-102, 114, 122, 143, 147, 151.

Third, under *Copperweld ,* "in a single-enterprise situation, it is the affiliated corporations' collective conduct—i.e., the conduct of the enterprise they jointly compose—that matters" *Arandell* 900 F.3d at 631 (quoting *Lenox*, 847 F.2d at 1236).

### C.    Varsity is an Agent of Bain and Charlesbank.

Defendants also completely ignore the well-pleaded allegations of agency, which are settled principles of antitrust law that impose civil liability on entities for violations committed by agents acting with apparent authority. *See, e.g., Am. Soc'y. of Mech. Eng'rs Inc. v. Hydrolevel Corp.*, 456 U.S. 556 (1982) ("*Hydrolevel*") (under the Sherman Act a company can be liable for the acts of its agents acting under the company's apparent authority); *Alvord-Polk Inc. v. F. Schumacher Co.,* 37 F.3d 996, 1009 (3d Cir. 1994) ("a principal will be liable for an antitrust violation if an agent acting with apparent authority violates the antitrust laws"); *Carpet Grp. Intl*

*.v. Oriental Rug Importers Ass'n Inc.,* 256 F. Supp. 2d 249 (D.N.J. 2003) (following

*Hydrolevel).*[4]

      Under agency principles, Defendants cannot evade liability based on corporate

formalities or lack of knowledge. *See Hydrolevel,* 456 U.S. at 572-73. A principal who sends his

agent out into the world should be held to account for the actions that the agent executed under

the guise of the principal's authority. It is also settled that entities can be found to violate the

Sherman Act based on acts committed by their agents. *See, e.g., Hydrolevel,* 456 U.S. at 565;

*Alvord-Polk Inc.,* 37 F.3d at 996; *Carpet Group Intern.,* 256 F. Supp. 2d at 249.

      In *Hydrolevel,* a manufacturer, Hydrolevel, sued the American Society of Mechanical

Engineers ("ASME"), a trade association, for conspiring with two of AMSE's member

companies with respect to various anticompetitive practices, the purpose and effect of which was

to damage Hydrolevel's business. 456 U.S. at 558-64. Two volunteers of ASME wrote letters to

customers and took other steps in furtherance of the conspiracy. *Id.* at 560-62. The Supreme

Court reversed with respect to jury instructions regarding the scope of agency liability and ruled

that a company can be liable for the acts of its agents acting under the company's apparent

authority.[5] 456 U.S. at 577. In so ruling, the Supreme Court looked to common law principles

---

[4] Defendants also ignore general agency principles from outside the antitrust context that hold
that a corporate parent can be liable for the wrongful acts of its subsidiary acting as an agent of the
parent.

[5] The Court expressly refused to adopt the trial court's view that ASME could only be held liable
if had ratified its agents' conduct or if the agents had acted in pursuit of ASME's interests, even
though the jury found ASME liable under this standard. *Hydrolevel*, 456 U.S. at 573. The Court
rejected such a requirement specifically because such a requirement would effectively insulate
the defendant from liability to the extent that it remained ignorant of its agents' conduct. *Id*.
Instead, the Supreme Court held that a principal "may be held liable [under the antitrust laws] for
the acts of [its] agents even though the organization never ratified, authorized or derived any
benefit whatsoever from the fraudulent activity of the agent and even though the agent acted
solely for his private employer's gain." *Id*. (J. Powell, dissenting).

and confirmed that the Sherman Act may be supplemented by common law agency theories. *See Texas Indus. Inc. v. Radcliff Materials, Inc.*, 451 U.S. 630, 647 (1981). The Court concluded it was well established that "principals are liable when their agents act with apparent authority," *Hydrolevel*, 456 U.S. at 565-66, and, in keeping with the broad purposes of the Sherman Act, "the apparent authority theory is consistent with the congressional intent to encourage competition." *Id.* at 570. Applying the common law is consistent with those principles. The Court specifically did not require any proof that plaintiffs relied on the apparent authority of the agents or had any contact with them. Plaintiffs did not rely on representations of ASME and were not aware of them or their wrongful acts at the time of anticompetitive conduct or consequent injury. "[W]hether an agency relationship exists between a parent corporation and its subsidiary is normally a question of fact." *Japan Petroleum Co. (Nigeria) v. Ashland Oil Inc*., 456 F.Supp. 831, 840 (D. Del. 1978)); *see Wells Fargo & Co. v. Wells Fargo Exp. Co.,* 556 F.2d 406, 423 (9th Cir. 1977) (whether the agent was a subsidiary of the principal or independently owned is irrelevant). Indeed, as alleged, Charlesbank possessed controlling interests in Varsity and sat—and sits—on Varsity's board of Directors, thus directing Varsity's activities. Compl. ¶ 119.

Plaintiffs allege with specificity that the anticompetitive acts were committed while Charlesbank and Bain were actively engaged in the management, direction or control of Varsity's business and affairs. Further, Varsity did so under "the explicit and apparent authority of their principals." While under Charlesbank management, Varsity acquired apparel and competition competitors, Compl. ¶¶ 87-102; increased its hold on Cheer governing bodies, Compl. ¶ 114; and entered into exclusive agreements with All Star Gyms and schools Compl. ¶¶ 143, 147, 151, whereby increasing Varsity's market value by $1 billion. Compl. ¶ 119.

*Hydrolevel*, 456 U.S. at 566 (conduct of those agents will be attributed to the principal in order to establish Sherman Act liability.) Under Bain's management this anticompetitive scheme has been maintained. Compl. ¶ 122.

### D.   Charlesbank and Bain Caused Plaintiffs' Antitrust Injuries within the Statute of Limitations.

The Sherman Act statute of limitations allows antitrust actions to be brought when the alleged unlawful conduct occurred "within four years after the cause of action accrued." 15 U.S.C. § 15(b). This action commenced on December 10, 2020. Thus, the statute of limitations reaches back four years, to at least December 10, 2016. Charlesbank owned Varsity from 2014 until 2018 when it sold the company to Bain. Bain's liability is well within the statute of limitations because its entry into this conspiracy happened in 2018, two years before this action commenced.[6] Compl. ¶¶119-20.

Defendants further contend that the statute of limitations cuts off their liability because many of Varsity's acquisitions happened before Charlesbank's entry into the conspiracy in 2014. CBMD at 4. This argument is misplaced. Plaintiffs allege that the anticompetitive scheme is a continuing violation, with many overt acts predating the statutory damage period. Compl. ¶¶ 29-31.

Indeed, as the cases Defendants cite acknowledge, the Sixth Circuit recognizes the continuous violation doctrine in monopolization claims when a party already possesses a monopoly and takes action to preserve the monopoly within the limitations period. *Z Techs.*

---

[6] Once one joins a conspiracy, one is liable for each act of the conspiracy before or after one joins, regardless of which conspirator committed it. It is settled that a participant may not "join a continuing conspiracy long after others have commenced it, or partially carried it out, and thereby claim immunity either for his actions, or of those other taking place before or after his active participation, as long as he remains an active participant." *Esco Corp. v. United States*, 340 F.2d 1000, 1006 (9th Cir. 1965); *Arandell* 900 F.3d at 634 (quoting *Esco*, 340 F.2d at 1006).

*Corp. v. Lubrizol Corp.*, 753 F.3d 594, 599 (6th Cir. 2014).[7] Courts commonly hold that "a purchaser suing a monopolist for overcharges paid within the previous four years may satisfy the conduct prerequisite to recovery by pointing to anticompetitive actions taken before the limitations period." *Meijer, Inc. v. 3M*, No. 04-5871, 2005 WL 1660188, at *3-4 (E.D. Pa. July 13, 2005) (quoting *Berkey Photo v. Eastman Kodak Co.*, 603 F.2d 263, 294 (2d Cir. 1979)); *see also In re Se. Milk. Antitrust Litig.*, 555 F. Supp. 2d 934, 947 (E.D. Tenn. 2008) (denying dismissal based on statute of limitations concerns and finding a continuing violations antitrust action was properly pled); *Hanover Shoe, Inc. v. United Shoe Mach. Corp.*, 392 U.S. 481, 502, n.15 (1968) (affirming the continuing violations doctrine where Sherman Act § 2 monopolization action was filed 43 years after the monopoly began).

According to *Z Techs.*, when a plaintiff alleges a continuing violation, there must be an overt act by the defendant that continues the antitrust violation to restart the statute of limitation and the statute runs from the last violation. *Id.* at 598. An overt act "(1) must be a new and independent act that is not merely a reaffirmation of a previous act; and (2) must inflict a new and accumulating injury on the plaintiff." *DXS, Inc. v. Siemens Med. Sys., Inc.*, 100 F.3d 462, 467 (6th Cir. 1996). Unlike *Z Techs.*, Plaintiffs do not rely on a single corporate acquisition and a

---

[7] Defendants rely on *Z Techs. Corp. v. Lubrizol Corp.*, 753 F.3d 594, 599 (6th Cir. 2014), however, it is inapposite of this case. It involved a single acquisition where a manufacturer allegedly obtained a monopoly by acquiring a rival company and then subsequently raised prices five years before the plaintiff filed their complaint. *Id.* at 596. The court granted the motion to dismiss holding that the continuing violations doctrine does not apply to price increases following a merger-acquisition. The court reasoned that in a merger-acquisition, the cause of the harm is the merger itself and subsequent price increases do not "further the monopoly because the company already has one." *Id.* at 598-99. The court also found that price increases were not an overt act in the merger-monopolization context because it was a reaffirmation of the merger and did not "inflict a new and accumulating injury." *Id.* However, Plaintiffs do not allege only an acquisition, but instead multiple acquisitions and continuing overt acts past the initial acquisitions.

price increase flowing from it. 753 F.3d at 596. Here, Plaintiffs allege conduct beginning before the limitatations and continuing throughout it, including multiple acquisitions together with exclusive contracts and other conduct to exclude revials and raise prices, all with the purpose and intent of foreclosing competition and raising prices. Compl. ¶117. During Charlesbank's ownership, Varsity acquired at least four competitors in the Cheer Competitions Market and piled anticompetitive conduct on top of these acquisitions. Compl. ¶ 97. Aspects of Varsity's anticompetitive scheme—including most of the types specified in the Complaint—took place during the time Varsity was owned by Charlesbank and Bain. Varsity excluded potential competitors by funneling athletes to their cheer and dance championships via a bidding process that included attending their competitions or camps; employing exclusive agreements with gyms and schools; restricting access to cheer apparel manufacturers by prohibiting them from Varsity events; and sabotaging event producers by scheduling competitions that conflict with competitions scheduled by competitors. Compl. ¶¶ 117-64. The ongoing proliferation of the scheme during Charlesbank and Bain's ownership periods directly inculpates both Charlesbank and Bain with antitrust liability.

### E.   Plaintiffs' Complaint Establishes the Plausible Inference of Successor Liability.

Tennessee courts have recognized successor liability in cases of express or implied assumption of liability and under a continuing of enterprise theory. *Flake v. Schrader-Bridgeport Int'l, Inc.*, 538 Fed. Appx. 604, 620 (6th Cir. 2013). As alleged within Plaintiffs' Complaint, Charlesbank acquired Varsity in 2014 and sold it to Bain in 2018. Compl. ¶ 119. The conditions and warranties of those sales, specifically whether the acquisition included an express or implied assumption of liability, are wholly outside the knowledge of Plaintiffs and held by Defendants. It is plausible that Defendants either implicitly or expressly assumed liabilities for their successors

and Plaintiffs are entitled to discovery on this issue. As such, Plaintiffs' claims are plausibly pled and Defendants have not demonstrated that they are entitled to relief on a motion to dismiss. *Conley v. Gibson*, 355 U.S. 41, 45-46, (1957). *See generally* 2 JAMES W. MOORE, MOORE'S FEDERAL PRACTICE § 12.34[1] (3d ed. 1997).

Similarly, whether a purchaser is a mere continuation of the selling corporation is a question of fact. *Patin v. Thoroughbred Power Boats, Inc.*, 294 F.3d 640, 649 (5th Cir. 2002). Under federal common law, successor liability can be applied if the successor had notice of the potential claim before the acquisition and there is substantial continuity in the operation of the business before and after the sale. *EEOC v. G–K–G, Inc.*, 39 F.3d 740, 748 (7th Cir. 1994). This "substantial continuity in the operation of the business" exists if "before and after the sale ... no major changes are made in ... operation." *Id.* Plaintiffs' allegations that the exclusionary scheme and Varsity's dominance in the Cheer industry has been in existence since prior to Charlesbank's and Bain's acquisitions are sufficient for this purpose. Furthermore, as Varsity was sued for Sherman Act Section 2 violations in connection with its Cheer Apparel in 2011, it is more than plausible that Defendants had notice of potential antitrust claims prior to their acquisition. *Varsity Brands, Inc. v. Star Athletica, L.L.C.*, No. 2:10-cv-02508, 2011 WL 13097063, at *1 (W.D. Tenn. Oct. 31, 2011). Accordingly, Plaintiffs' Complaint raises a plausible inference of successor liability and their claims should not be dismissed.

## IV.    CONCLUSION

For the foregoing reasons, the Court should deny Defendants' motion to dismiss. Alternatively, should the Court find any claim to be insufficiently pled at this juncture, Plaintiffs respectfully request leave to amend. *See, e.g.,* Fed. R. Civ. P. 15(a)(2) (leave to amend should be freely given "where justice so requires."); *Rikos v. Procter & Gamble Co.*, No. 11-cv-226, 2012

WL 641946, at *3 (S.D. Ohio Feb. 28, 2012) (granting leave to amend); *Sanders v. Apple Inc.*,

672 F. Supp. 2d 978, 991 (N.D. Cal. 2009) (same).

Dated: April 15, 2021

By: _____ */s/ Joseph R. Saveri* _____
Joseph R. Saveri

Joseph R. Saveri*
Steven N. Williams*
Kevin E. Rayhill*
Elissa A. Buchanan*
Anna-Patrice Harris*
**JOSEPH SAVERI LAW FIRM, LLP**
601 California Street, Suite 1000
San Francisco, California 94108
Telephone: (415) 500-6800
Facsimile:  (415) 395-9940
Email:  jsaveri@saverilawfirm.com
       swilliams@saverilawfirm.com
       krayhill@saverilawfirm.com
       eabuchanan@saverilawfirm.com
       aharris@saverilawfirm.com

Van Turner (TN Bar No. 22603)
**BRUCE TURNER, PLLC**
2650 Thousand Oaks Blvd., Suite 2325
Memphis, Tennessee 38118
Telephone: (901) 290-6610
Facsimile: (901) 290-6611
Email: vturner@bruceturnerlaw.net

Daniel E. Gustafson
Daniel C. Hedlund
Daniel J. Nordin
Ling S. Wang
**GUSTAFSON GLUEK PLLC**
Canadian Pacific Plaza
120 South Sixth Street, Suite 2600
Minneapolis, MN 55402
Telephone: (612) 333-8844
Facsimile: (612) 339-6622
Email: dgustafson@gustafsongluek.com
       dhedlund@gustafsongluek.com
       dnordin@gustafsongluek.com
       lwang@gustafsongluek.com

PLAINTIFFS' OPPOSITION TO DEFENDANTS BAIN CAPITAL PRIVATE EQUITY AND CHARLESBANK
CAPITAL PARTNERS' MOTION TO DISMISS

Richard M. Paul III*
Sean R. Cooper*
**PAUL LLP**
601 Walnut, Suite 300
Kansas City, Missouri 64106
Telephone: (816) 984-8100
Email: rick@paulllp.com
        sean@paulllp.com

*Admitted pro hac vice*

*Attorneys for Individual and Representative Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on April 15, 2021, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all attorneys of record.


Dated: April 15, 2021                    By: _____*/s/ Joseph R. Saveri*_____
                                               Joseph R. Saveri