## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
## WESTERN DIVISION

| | |
|---|---|
| **JESSICA JONES**, **MICHELLE VELOTTA**, and **CHRISTINA LORENZEN** on Behalf of Themselves and All Others Similarly Situated, | Case No. 2:20-cv-02892-SHL-cgc |
| **Plaintiffs,** | **JURY DEMAND** |
| v. | |
| **VARSITY BRANDS, LLC; VARSITY SPIRIT, LLC; VARSITY SPIRIT FASHION & SUPPLIES, LLC; U.S. ALL STAR FEDERATION, INC.; JEFF WEBB; CHARLESBANK CAPITAL PARTNERS LLC; and BAIN CAPITAL PRIVATE EQUITY,** | |
| **Defendants.** | |

## OPPOSITION TO U.S. ALL STAR FEDERATION, INC.'S MOTION TO DISMISS

# TABLE OF CONTENTS

I.    INTRODUCTION AND SUMMARY OF ALLEGATIONS ...................................................1

II.   LEGAL STANDARD...............................................................................................................2

III.  ARGUMENT .............................................................................................................................2

    A.   Plaintiffs Properly Plead A Section 2 Claim in Count One and The Claims in
        Counts Three, Four, Five And Six Against USASF. .................................................2

        1.   Counts One and Six State A Claim Against USASF. ....................................2

        2.   Counts Three Through Five State A Claim Against USASF. ........................4

    B.   Plaintiffs Properly Plead an Illegal Antitrust Agreement With Respect to
        USASF. .....................................................................................................................5

        1.   Plaintiffs' Have Properly Defined Plausible Relevant Markets. ...................5

            i.   Plaintiffs' Cheer Apparel Market Is Properly Defined. .........................5

            ii.  Plaintiffs' Cheer Competitions Market Is Properly Defined. ................7

            iii. Plaintiffs' Cheer Camps Market Is Properly Defined...........................8

        2.   Plaintiffs Properly Plead an Illegal Antitrust Agreement Under
            Either the Per Se or Rule of Reason Analysis...............................................9

        3.   *Copperweld* and the Intracorporate Conspiracy Doctrine Do Not
            Preclude Plaintiffs' Claims. ........................................................................12

    C.   Plaintiffs Properly Plead Claims Under State Antitrust and Consumer
        Protection Laws. ......................................................................................................14

        1.   Second Claim for Relief (Violation of Tennessee Antitrust Law). ..............14

        2.   Third Claim for Relief (Violation of State Antitrust Laws). ........................16

        3.   Fourth Claim for Relief (Unfair Methods of Competition and Unfair
            and Deceptive Acts in Violation of State Consumer Protection Law). ........19

IV.   CONCLUSION...........................................................................................................20

# TABLE OF AUTHORITIES

**Cases**                                                                                                   **Page(s)**

*A.G. Spalding & Bros, Inc. v. F.T.C.*,
   301 F.2d 585 (3d Cir. 1962)................................................................................7

*Am. Council of Certified Podiatric Physicians and Surgeons v. Am. Bd. of*
   *Podiatric Surgery, Inc.*,
   185 F.3d 606 (6th Cir. 1999) .........................................................................14

*Am. Soc'y of Mech. Eng'rs v. Hydrolevel*,
   456 U.S. 556 (1982).......................................................................................13

*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 591 (1997).......................................................................................18

*Arandell Corp. v. Centerpoint Energy Servs., Inc.*,
   900 F.3d 623 (9th Cir. 2018) .........................................................................13

*Arizona v. Maricopa Cnty. Med. Soc'y*,
   457 U.S. 332 (1982).........................................................................................9

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007).......................................................................................17

*Bovee v. Coopers & Lybrand C.P.A.*,
   272 F.3d 356 (6th Cir. 2001) ...........................................................................2

*Brookins v. Int'l Motor Contest Ass'n*,
   219 F.3d 849 (8th Cir. 2000) .........................................................................11

*California v. ARC Am. Corp.*,
   490 U.S. 93 (1989).........................................................................................18

*Carver v. Bunch*,
   946 F.2d 451 (6th Cir. 1991) ...........................................................................2

*Century Oil v. Prod. Specialties*,
   737 F.2d 1316 (5th Cir. 1984) .......................................................................14

*Clarett v. Nat'l Football League*,
   306 F. Supp. 2d 379 (S.D.N.Y. 2004)..............................................................7

*Copperweld Corp. v. Indep. Tube Corp.*,
   467 U.S. 752 (1984).................................................................................13, 14

OPPOSITION TO U.S. ALL STAR FEDERATION, INC.'S MOTION TO DISMISS

*Directv, Inc. v. Treesh*,
  487 F.3d 471 (6th Cir. 2007) ................................................................................2

*F.T.C. v. Staples, Inc.*,
  970 F. Supp. 1066 (D.D.C. 1997) .........................................................................6

*Freeman Industries, LLC v. Eastman Chemical Co.*,
  172 S.W.3d 512 (Tenn. 2005) .........................................................................15, 16

*Freeman v. San Diego Ass'n of Realtors*,
  322 F.3d 1133 (9th Cir. 2003) .........................................................................15, 16

*General Indus. Corp. v. Hartz Mountain Corp.*,
  810 F.2d 795 (8th Cir. 1987) ...............................................................................6

*Illinois Brick Co. v. Illinois*,
  431 U.S. 720 (1977)........................................................................................17, 18

*Image Technical Servs. v. Eastman Kodak Co.*,
  125 F.3d 1195 (9th Cir. 1997) ..............................................................................6

*In re Automotive Parts Antitrust Litig.*,
  29 F. Supp. 3d 982 (E.D. Mich. 2014)................................................................18

*In re Cast Iron Soil Pipe & Fittings Antitrust Litig.*,
  No. 1:14-MD-2508, 2015 WL 5166014 (E.D. Tenn. June 24, 2015)....................15

*In re High-Tech Employee Antitrust Litig.*,
  856 F. Supp. 2d 1103 (N.D. Cal. 2012) ................................................................9

*In re Polyurethane Foam Antitrust Litig.*,
  799 F. Supp. 2d 777 (N.D. Ohio 2011)................................................................18

*In re Relafen Antitrust Litig.*,
  221 F.R.D. 260 (D. Mass. 2004)..........................................................................18

*In re Se. Milk Antitrust Litig.*,
  555 F. Supp. 2d 934 (E.D. Tenn. 2008)...............................................................11

*In re Se. Milk Antitrust Litig.*,
  739 F.3d 262 (6th Cir. 2014) .....................................................................5, 10, 11

*In re Wellbutrin XL Antitrust Litig.*,
  260 F.R.D. 143 (E.D. Pa. 2009)....................................................................15, 16

*Int'l Boxing Club of N.Y., Inc. v. U.S.*,
  358 U.S. 242 (1959)...............................................................................................7

*JBL Enters., Inc. v. Jhirmack Enters., Inc.*,
   698 F. 2d 1011 (9th Cir. 1983) ........................................................................6

*Johnson & Johnson v. Actavis Grp. HF*,
   No. 06 CIV. 8209 (DLC), 2008 WL 228061 (S.D.N.Y. Feb. 21, 2008) ...............17

*Langan v. Johnson & Johnson Consumer Companies, Inc.*,
   897 F.3d 88 (2d Cir. 2018) ...............................................................................18

*Los Angeles Mem. Coliseum Comm'n v. Nat'l Football League*,
   726 F.2d 1381 (9th Cir. 1984) .........................................................................12

*McNeil v. Nat'l Football League*,
   790 F. Supp. 871 (D. Minn. 1992) ...................................................................14

*Minnesota Made Hockey, Inc. v. Minnesota Hockey, Inc.*,
   789 F. Supp. 2d 1133 (D. Minn. 2011) ..............................................................7

*National Hockey League Players Ass'n v. Plymouth Whalers Hockey Club*,
   419 F.3d 462 (6th Cir. 2005) ...........................................................................11

*NCAA v. Bd. of Regents*,
   468 U.S. 85 (1984) ...........................................................................................11

*Nicolosi Distrib., Inc. v. Finishmaster, Inc.*,
   No. 18-CV-03587, 2019 WL 1560460 (N.D. Cal. Apr. 10, 2019) ........................8

*NicSand, Inc. v. 3M Co.*,
   507 F.3d 442 (6th Cir. 2007) .............................................................................2

*O'Bannon v. Nat'l Collegiate Athletic Ass'n*,
   7 F. Supp. 3d 955 (N.D. Cal. 2014) ...................................................................7

*on Jack Russell Terrier Network of Northern Ca. v. Am. Kennel Club*
   407 F.3d 1027 (9th Cir. 2005) .........................................................................14

*Ortiz v. Fibreboard Corp.*,
   527 U.S. 815 (1999) .........................................................................................18

*Philadelphia World Hockey Club, Inc. v. Philadelphia Hockey Club, Inc.*,
   351 F. Supp. 462 (E.D. Pa. 1972) ......................................................................7

*Piazza v. Major League Baseball*,
   831 F. Supp. 420 (E.D. Pa. 1993) ....................................................................12

*Queen City Pizza, Inc. v. Domino's Pizza, Inc.*,
   124 F.3d 430 (3d Cir. 1997) ..............................................................................8

*Ricco v. Potter*,
377 F.3d 599 (6th Cir. 2004) ........................................................................2

*Rock v. Nat'l Collegiate Athletic Ass'n*,
2013 WL 4479815 (S.D. Ind. Aug. 16, 2013) ....................................................7, 8

*Simonton v. Runyon*,
232 F.3d 33 (2d Cir. 2000)..........................................................................17

*Smith v. Pro Football*,
420 F. Supp. 738 (D.C. Cir. 1978)................................................................9

*Taylor v. Lew*,
No. 2:08-2735-SHM-CGC, 2015 WL 5918387 (W.D. Tenn. Sept. 23, 2015 ...........3

*Tondas v. Amateur Hockey Ass'n of U.S.*,
438 F. Supp. 310 (W.D.N.Y. 1977) ..............................................................12

*TYR Sport Inc. v. Warnaco Swimwear Inc.*,
679 F. Supp. 2d 1120 (2009) .......................................................................9

*United States v. E. I. Du Pont de Nemours & Co.*,
353 U.S. 586 (1957).....................................................................................6

*United States v. Phillipsburg Nat'l Bank & Trust Co.*,
399 U.S. 350 (1970).....................................................................................6

*Weiss v. York Hosp.*,
745 F.2d 786 (3rd Cir. 1984) .......................................................................6

*Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Fin. Servs., Inc.*,
536 F.3d 663 (7th Cir. 2008) ......................................................................19

*Wynder v. McMahon*,
360 F.3d 73 (2d Cir. 2004).........................................................................17

**Statutes**

Clayton Act Section 16, 15 U.S.C. § 26 ...........................................................2

Fed. R. Civ. P.
8................................................................................................17, 19
12.....................................................................................................2
23...........................................................................................18, 19, 20

Sherman Act, 15 U.S.C.
    § 1.............................................................................................................. *passim*
    § 2..............................................................................................2, 3, 12, 18
    § 3.............................................................................................................. *passim*

Tennessee Trade Practices Act, Tenn. Code Ann. §§ 47-25-101 .......................................1, 14, 16

## I.      INTRODUCTION AND SUMMARY OF ALLEGATIONS

Plaintiffs are indirect purchasers of various products and services of Defendants Varsity Brands, LLC, Varsity Spirit, LLC, and Varsity Fashions & Supplies, LLC (collectively, "Varsity"). Plaintiffs allege antitrust violations in the competitive cheerleading sport industry by Defendants Varsity, United States All Star Federation ("USASF"), Jeff Webb, Charlesbank Capital Partners LLC, and Bain Capital Private Equity. Defendants conspired to raise, fix and stabilize the prices charged associated with Competitive Cheer. Compl. ¶ 1. Defendants did so by creating an illegal monopoly in order to dominate competitive cheer in the United States. *Id*. Plaintiffs assert a claim for injunctive relief under the federal antitrust laws, Compl. ¶¶ 231-38; claims for damages and other monetary relief under the Tennessee Trade Practices Act, Tenn. Code Ann. §§ 47-25-101, *et seq*. ("TTPA"), Compl. ¶¶ 239-45, state antitrust law, Compl. ¶¶ 246-50; state consumer protection law, Compl. ¶¶ 251-56; and unjust enrichment under Tennessee Law; Compl. ¶¶ 257-66. Plaintiffs also request declaratory relief. Compl. ¶¶ 267-68.

The Complaint sets forth extensive allegations regarding the role of USASF in the Exclusionary Scheme. As alleged, and as conceded by Defendants, USASF was directed and controlled by Varsity and Varsity leadership, including Jeff Webb. Compl. ¶ 3; Defendant's Motion to Dismiss "UMTD" at 19. With USASF, Varsity introduced the Bid system and other rules funneling athletes to Varsity controlled events and foreclosing rivals a result. *See* Compl. ¶¶ 121-29. With USASF, Varsity also created competition rules  foreclosing rivals from the market. Compl. ¶¶ 130-40.

USASF now seeks to avoid liability for its central involvement in the anticompetitive scheme with Varsity and other Defendants. Because Plaintiffs have properly asserted claims against USASF under federal law, state antitrust statutes, and state consumer protection statutes, USASF's motion to dismiss must be denied.

## II.      LEGAL STANDARD

"[A] Rule 12(b)(6) motion should not be granted unless it appears beyond doubt that the

plaintiff can prove no set of facts in support of his claim which would entitle him to relief."

*Ricco v. Potter,* 377 F.3d 599, 602 (6th Cir. 2004) (quotation omitted). In evaluating a motion to

dismiss, the Court should accept Plaintiffs' allegations as true, draw all reasonable inferences in

Plaintiffs' favor, and determine whether the allegations plausibly state a claim for relief. *Directv,*

*Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). The defendant has the burden of showing that

the plaintiff has failed to state a claim for relief. *Carver v. Bunch,* 946 F.2d 451, 454–55 (6th Cir.

1991).[1]

## III.      ARGUMENT

### A.      Plaintiffs Properly Plead A Section 2 Claim in Count One and The Claims in Counts Three, Four, Five And Six Against USASF.

#### 1.      Counts One and Six State A Claim Against USASF.

USASF inaccurately asserts that Plaintiffs have not alleged a Section 2 violation against

USASF. Plaintiffs' First Claim for Relief is a claim under Section 16 of the Clayton Act for

violations of Sections 1, 2, and 3 of the Sherman Act, 15 U.S.C. §§ 1, 2, 3. USASF's  argument

ignores the plain language of Plaintiffs' Complaint. At the motion to dismiss stage, "[t]he court

must construe the complaint in the light most favorable to the plaintiff, accept all the factual

allegations as true, and determine whether the plaintiff can prove a set of facts in support of its

claims that would entitle it to relief." *Bovee v. Coopers & Lybrand C.P.A.*, 272 F.3d 356, 360

---

[1] The pleading standard is discussed more fully in Plaintiffs' Opposition to Varsity's Motion to
Dismiss Section II, which is incorporated by reference. USASF cites to *NicSand, Inc. v. 3M Co.*,
507 F.3d 442, 450 (6th Cir. 2007) for the proposition that this Court should dismiss Plaintiffs'
claims against USASF because discovery in this case may become expensive. That is not the
correct standard to evaluate a motion to dismiss, as set forth above. Regardless, the Court's
concern in *NicSand* is inapplicable here where, as explained in greater detail below, Plaintiffs
have satisfied the pleading standards and do not assert meritless claims against USASF.

(6th Cir. 2001). "Specific facts are not necessary," and the complaint need only give the defendant fair notice of the claim and the grounds upon which it is based. *Taylor v. Lew*, No. 2:08-2735-SHM-CGC, 2015 WL 5918387, at *2 (W.D. Tenn. Sept. 23, 2015), *report and recommendation adopted*, No. 08-2735-SHM-CGC, 2015 WL 5918379 (W.D. Tenn. Oct. 9, 2015) (citing *Erickson v. Pardus*, 551 U.S. 89, 93 (2007)).

With respect to a Section 2 claim, the Sherman Act makes it unlawful to "monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States, or with foreign nations . . . ." 15 U.S.C. § 2. The Complaint alleges, in plain language, that USASF combined or conspired with Varsity to create an illegal monopoly. Compl. ¶¶ 1, 19, 117. In addition to extensive particularized pleading of the facts regarding the anticompetitive scheme, the Complaint sets forth USASF's role and involvement in Varsity's scheme to monopolize the relevant markets. *See, e.g.*, Compl. ¶¶ 51, 59, 60, 75, 107-10, 116, 123-29, 134-40, 155, 183, 184, 200. With respect to the First Claim for Relief, Plaintiffs allege that "Varsity, acting in concert with USASF, has obtained, enhanced, and maintained monopoly power in the Relevant Markets through the Exclusionary Scheme alleged herein . . . ." Compl. ¶ 234. These allegations in the Complaint are more than sufficient to put USASF on notice of Plaintiffs' Section 2 claim and the grounds upon which that claim rests.

USASF makes the same incorrect argument as to the Sixth Claim for Relief, which seeks declaratory relief for the violations of Sections 1, 2, and 3 of the Sherman Act, as alleged in the

First Claim for Relief. Likewise, the Sixth Claim for Relief asserts a claim against both USASF and Varsity—and the other named Defendants—for declaratory relief.[2]

### 2.   Counts Three Through Five State A Claim Against USASF.

USASF misreads the Complaint with respect to the Third Claim for Relief, the Fourth Claim for Relief and the Fifth Claim for Relief.   As discussed above, the Complaint plainly and in copious detail alleges USASF's unlawful role and participation in furtherance of the Exclusionary Scheme with Varsity. *See* Compl. ¶¶ 121-40.  With respect to the Third Claim for Relief, USASF ignores allegations regarding "Defendants' antitrust violations alleged in this Claim," that Plaintiffs paid higher prices "than they would have paid in the absence of Defendants' conduct," and that Plaintiffs seek redress for "their injuries by Defendants' violation of the aforementioned statutes." Compl. ¶¶ 249-50. In the Fourth Claim for Relief, Plaintiffs allege that USASF created rules that unfairly favored Varsity by giving Varsity exclusive bid power, Compl. ¶ 252, and that Plaintiffs could not have reasonably avoided the injury from Defendants' unlawful conduct, Compl. ¶ 254. In the Fifth Claim for Relief, Plaintiffs plead that the Defendants have been unjustly enriched by their scheme to monopolize the Relevant Markets. Compl. ¶ 259. The Fifth Claim for Relief is not limited to Varsity, and indeed seeks relief with respect to USASF and the other Defendants. *See* Compl. ¶¶ 260-61.

---

[2] USASF seizes on the fact that the Complaint uses the singular possessive "Defendant's" in Count Six, Compl. ¶ 268, to argue that Count Six is not intended to apply to USASF. USASF is incorrect on this point. To the extent the Complaint erroneously uses a singular instead of the plural, Plaintiffs respectfully request leave to amend the Complaint to correct the typographical error.

**B.     Plaintiffs Properly Plead an Illegal Antitrust Agreement With Respect to USASF.**

**1.     Plaintiffs' Have Properly Defined Plausible Relevant Markets.**

Defendants wrongly claim that Plaintiffs' allegations with respect to the illegal antitrust agreement fail because the "Cheer Apparel," "Cheer Competitions," and "Cheer Camps" markets are invalid or not properly defined. Market definition is a question of fact for the jury to decide. *In re Se. Milk Antitrust Litig.* ("*Milk 2*"), 739 F.3d 262, 282-83 (6th Cir. 2014) ("Multiple courts of appeal have held that market definition is a question of fact . . . [that] is better left for a jury to decide.") (internal citations omitted).

Plaintiffs' Opposition to Defendant Varsity's Motion to Dismiss, incorporated here by reference, addresses these objections to Plaintiffs' market definitions in detail. *See* Plaintiff's Opposition to Varsity's Motion to Dismiss, Section III. A. Plaintiffs address USASF's erroneous arguments here, too.

**i.     Plaintiffs' Cheer Apparel Market Is Properly Defined.**

Plaintiffs' Cheer Apparel Market is properly defined as the "clothing, shoes, accessories like bows, and equipment (such as backpacks, pom poms, and megaphones) specifically intended for Cheer Athletes to wear and use at practice and in competitions." Compl. ¶ 73. Thus, the Cheer Apparel Market is defined to consist of products with a single use—apparel items intended for wear and use at cheer practices and competitions. Plaintiffs allege that competitive cheer athletes are required to wear this specialized apparel and use this specialized equipment in order to compete in Cheer Competitions, for practices, and for team membership. Compl. ¶ 187-88. This market is limited to the reasonably interchangeable specialized clothing, accessories, and equipment, which Plaintiffs allege cannot be traded out for more generic athletic apparel in response to price increases. *See* Compl. ¶ 189. Plaintiffs further allege that the Cheer Apparel

Market is nationwide in scope, because "all of the targeted customers for Cheer Apparel reside in the United States," and is sold online to those customers. Compl. ¶ 191.

Markets defined to include related products—here, uniforms and equipment—which are used by the same type of consumer and distributed through the same channels are routinely upheld as plausibly defined markets. *See United States v. E. I. Du Pont de Nemours & Co*., 353 U.S. 586, 595 (1957) (upholding relevant market consisting of automotive finishes and fabrics); *Image Technical Servs. v. Eastman Kodak Co.,* 125 F.3d 1195, 1202-07 (9th Cir. 1997) (finding relevant market in photocopier parts and rejecting argument that each part is its own market because it is not interchangeable in use with any other party); *General Indus. Corp. v. Hartz Mountain Corp.*, 810 F.2d 795, 805-06 (8th Cir. 1987) (affirming relevant market of "pet supplies," consisting of non-interchangeable goods, as "pragmatic and realistic description of the level at which [antitrust defendant's products and plaintiff's products] were in competition"); *Weiss v. York Hosp*., 745 F.2d 786, 826-27 (3rd Cir. 1984) (finding relevant market in health care services); *F.T.C. v. Staples, Inc.*, 970 F. Supp. 1066, 1075-76 (D.D.C. 1997) (relevant market in consumable office supplies, notwithstanding lack of interchangeability between, e.g., paper clips and print cartridges). Courts have routinely found relevant markets consisting of clusters of products or products grouped together for distribution, just as the Cheer Apparel Market consists of clusters of apparel, accessories, and equipment grouped together for distribution. *See United States v. Phillipsburg Nat'l Bank & Trust Co.*, 399 U.S. 350, 360 (1970) (holding that "it is the cluster of products and services that full-service banks offer that as a matter of trade reality makes commercial banking a distinct line of commerce"); *JBL Enters., Inc. v. Jhirmack Enters., Inc.,* 698 F. 2d 1011, 1016-17 (9th Cir. 1983) (affirming relevant market as "beauty products;" noting "the fact that face creams and shampoos do not have the

same use for the consumer is not as relevant as whether a 'cluster' or 'product line' of one manufacturer is reasonably interchangeable for that of another by the salon that is making the purchase"); *A.G. Spalding & Bros, Inc. v. F.T.C.,* 301 F.2d 585, 603-05 (3d Cir. 1962) (relevant market was "athletic goods industry;" finding that the products were "grouped together for distribution" by manufacturers which "integrated . . . products for promotion by way of national advertising, adoption contracts and endorsements by prominent figures in the athletic world resulting in competitive interrelationships between the product lines of commerce"). Plaintiffs' Cheer Apparel Market is a properly defined, plausible market.

### ii.     Plaintiffs' Cheer Competitions Market Is Properly Defined.

The Cheer Competitions Market is defined as a single, nationwide market for which there are no substitutes. Compl. ¶¶ 165-72. USASF's argument that the inclusion of various levels or types of cheer competitions renders the market implausible lacks any merit. In antitrust cases involving sports, courts have routinely held that relevant markets may be defined as a single sport, or to particular leagues, divisions, or groupings within a sport. *Int'l Boxing Club of N.Y., Inc. v. U.S.*, 358 U.S. 242, 250-52 (1959) (market limited to "championship" boxing contests); *Rock v. Nat'l Collegiate Athletic Ass'n*, 2013 WL 4479815, at *10-13 (S.D. Ind. Aug. 16, 2013) (distinguishing Division I football from Division II and Division III); *O'Bannon v. Nat'l Collegiate Athletic Ass'n*, 7 F. Supp. 3d 955, 966-68 (N.D. Cal. 2014) (top division college football and basketball are separate markets from lower divisions), *aff'd in part, vacated in part*, 802 F.3d 1049 (9th Cir. 2015); *Minnesota Made Hockey, Inc. v. Minnesota Hockey, Inc.*, 789 F. Supp. 2d 1133, 1145 (D. Minn. 2011) (relevant product market found to be youth hockey "league play programming."); *Clarett v. Nat'l Football League*, 306 F. Supp. 2d 379, 383-84, 403 (S.D.N.Y. 2004) (NFL is separate market from other professional football leagues, such as Arena Football), *rev'd on other grounds*, 369 F.3d 124 (2d Cir. 2004); *Philadelphia World*

*Hockey Club, Inc. v. Philadelphia Hockey Club, Inc*., 351 F. Supp. 462, 501 (E.D. Pa. 1972) (NHL is separate market from semi-professional and amateur hockey leagues).

USASF's objections to the geographic scope of the Cheer Competitions Market also fail. The Cheer Competitions Market is nationwide in scope because teams compete nationwide to receive bids to attend championships. Compl. ¶ 173. Plaintiffs have alleged that international competitions are not reasonably interchangeable because international competitions are subject to different rules than U.S. competitions, U.S. All-Star Gyms do not regularly send teams to international competitions, and because an increase in the price of U.S. Cheer Competitions would not cause participants to switch over to international competitions. Compl. ¶¶ 173-75. USASF's arguments regarding domestic travel costs and regional price differences ignore the practical reality of an athletic sport consisting of nationwide competitions.[3] *See Rock*, 2013 WL 4479815, at *10-13 (holding nationwide market for Division I football sufficient because all participating teams were in the U.S.). In contrast, none of the cases cited by USASF in support of its arguments involve the operation of a nationwide athletic sport. Plaintiffs' Cheer Competitions Market is a properly defined, plausible market.

### iii.    Plaintiffs' Cheer Camps Market Is Properly Defined.

The Cheer Camps Market is defined as including both All-Star and School Cheer Camps. Compl. ¶ 202. USASF argues that this market definition fails the test of reasonable

---

[3] USASF cites to the not-reported out of circuit decision, *Nicolosi Distrib., Inc. v. Finishmaster, Inc*., No. 18-CV-03587, 2019 WL 1560460, at *3-4 (N.D. Cal. Apr. 10, 2019) as an example of a court rejecting a complaint's geographic definition on a motion to dismiss. This case is consistent with the well-established rule that in the vast majority of cases proper market definition can only be determined after an extensive factual inquiry and dismissal is only appropriate in the limited circumstance wherein the proper standard is not referenced or alleges a proposed relevant market that clearly does not encompass all interchangeable product substitutes, which has not been shown here. *See Queen City Pizza, Inc. v. Domino's Pizza, Inc.*, 124 F.3d 430, 436 (3d Cir. 1997).

interchangeability because it includes camps of varying durations and age group levels. USASF's argument ignores the reality that cheer athletes attend these cheer camps for a singular purpose—to learn skills, techniques, and routines which are necessary for competition. Compl. ¶¶ 202, 204. Any variation in the age group level or the duration of the camp does not change the purpose or use of the camp such that the camps are no longer reasonably interchangeable.

USASF also argues that the Cheer Camps Market is not plausibly nationwide in scope. As discussed above, the United States is the relevant geographic market because the sport of Cheer, and therefore Cheer Camps, are operated nationwide. Courts have routinely upheld nationwide geographic markets in antitrust cases involving athletic sports. *Smith v. Pro Football*, 420 F. Supp. 738, 741 n.1 (D.C. Cir. 1978) (upholding trial judgment that "the relevant market for this action is professional major league football in the United States;" finding that employment in the Canadian Football League was not reasonably interchangeable with the NFL); *TYR Sport Inc. v. Warnaco Swimwear Inc.*, 679 F. Supp. 2d 1120, 1130 (2009) (approving U.S. market where "industry participants . . . recognize the United States as a distinct geographic market for competitive swimwear"). Plaintiffs' Cheer Camps Market is a properly defined, plausible market.

### 2. Plaintiffs Properly Plead an Illegal Antitrust Agreement Under Either the Per Se or Rule of Reason Analysis.

First, it is premature for the Court to determine whether the anticompetitive activity is to be adjudged under a *per se* or rule of reason analysis. *Arizona v. Maricopa Cnty. Med. Soc'y*, 457 U.S. 332, 343 (1982); *In re High-Tech Employee Antitrust Litig.*, 856 F. Supp. 2d 1103, 1115 n.9, 1122 (N.D. Cal. 2012) ("the Court need not decide now whether per se or rule of reason analysis applies. Indeed, that decision is more appropriate on a motion for summary judgment.").

Such a determination would require adjudication of disputed facts, such as Defendants' purported justifications for the agreement.

Even so, Plaintiffs sufficiently pleaded an illegal antitrust Sherman Act Section 1 claim against USASF regardless of whether a *per se* or rule of reason analysis is applied. Under a *per se* analysis, the concerted actitivty alleged is "so inherently anticompetitive that each is illegal *per se* without inquiry into the harm it has actually caused." *Milk 2*, 739 F.3d at 271 (like horizontal agreements, market allocation is inherently anticompetitive and therefore *per se* illegal). Plaintiffs have alleged this type of restriction. USASF, together with the other Defendants, conspired to raise, fix and stabilize the prices charged associated with Competitive Cheer through their anticompetitive scheme.  Compl. ¶ 1.

Under the rule of reason analysis, a plaintiff must first establish a prima facie case by showing five elements: (1) a conspiracy (2) that produced anticompetitive effects; (3) that the scheme "affected relevant product and geographic markets"; (4) that the conspiracy's goal and related conduct was illegal; (5) and that the restraint was the proximate cause of the plaintiff's antitrust injury. *Milk 2*, 739 F.3d at 271. Plaintiffs have alleged with particularity these prima facie elements in their Complaint. First, Plaintiffs have alleged a conspiracy by USASF and Varsity, among others. Compl. ¶¶ 1, 87-112, 117-64. Second, Plaintiffs have pleaded that this conspiracy produced anticompetitive effects. Compl. ¶¶ 217-30. Plaintiffs have also alleged that the scheme affected relevant product and geographic markets. Compl. ¶¶ 183-86, 199-201, 214-16. Fourth, the Complaint alleges that the conspiracy's goal and related conduct was illegal. Compl. ¶ 76. Fifth, Plaintiffs plead that the restraint was the proximate cause of Plaintiffs'

antitrust injury. Compl. ¶ 217. Plaintiffs have satisfied all elements of a prima facie case under the rule of reason.[4]

If a plaintiff satisfies the prima facie case, then the burden shifts to the defendant to show that the restraint has procompetitive effects to justify otherwise anticompetitive injuries. *Milk 2*, 739 F.3d at 271. USASF cannot show any procompetitive benefits to overcome Plaintiffs' prima facie case and has not even attempted to set forth any claimed procompetitive benefits in support of its motion to dismiss. USASF has not met its burden to overcome Plaintiffs' prima facie case, and Plaintiffs have properly pleaded a claim under the rule of reason.

USASF attempts to isolate specific actions to argue that USASF and Varsity did not conspire to restrain trade. This is not the proper way to evaluate Plaintiffs' allegations. "While viewing each of these factual allegations in isolation may lead one to the conclusion . . . that there is a legitimate business justification for each of the acts, a view of the complaint as a whole, which this Court must take, and accepting all of the factual allegations as true, does support a plausible inference of a conspiracy or agreement." *In re Se. Milk Antitrust Litig.*, 555 F. Supp. 2d 934, 943 (E.D. Tenn. 2008). Courts have routinely found that the antitrust laws apply to

---

[4] Defendant's citation to *NCAA v. Bd. of Regents*, 468 U.S. 85, 117 (1984) in support of their contention that regulatory agencies are beyond the reach of antitrust law is a blatant mischaracterization of the Court's ruling. UMTD at 13. The recognition of regulatory measures being often justifiable was the Court's reasoning as to why the rule of reason analysis was applicable and a per se analysis was not. 468 U.S. at 117. Indeed, the Court specifically noted that although maintaining a competitive balance among athletes is legitimate that does not mean that the same is true for the challenged regulations. *Id.* "Petitioner argues that the interest in maintaining a competitive balance among amateur athletic teams is legitimate and important and that it justifies the regulations challenged in this case. **We agree with the first part of the argument but not the second**." *Id.* (emphasis added). *Brookins v. Int'l Motor Contest Ass'n*, 219 F.3d 849, 854 (8th Cir. 2000) stands for the same. Similarly, *National Hockey League Players Ass'n v. Plymouth Whalers Hockey Club*, 419 F.3d 462, 473-74 (6th Cir. 2005) did not rule that regulatory rules were immune from antitrust claims but that plaintiffs failed to allege anticompetitive effects.

a sport league's rules, policies, or procedures that are used to effect anticompetitive goals. *See Los Angeles Mem. Coliseum Comm'n v. Nat'l Football League*, 726 F.2d 1381, 1398 (9th Cir. 1984) (upholding jury determination that NFL and its member teams combined to unreasonably restrain trade through rule requiring unanimous approval of NFL teams for franchises seeking to relocate in the home territory of another team); *Piazza v. Major League Baseball*, 831 F. Supp. 420, 441 (E.D. Pa. 1993) (denying motion to dismiss complaint against MLB and individual baseball teams under Sections 1 and 2 of the Sherman Act); *Tondas v. Amateur Hockey Ass'n of U.S.*, 438 F. Supp. 310, 313 (W.D.N.Y. 1977) (citing *Amateur Softball Ass'n of Am. v. United States*, 467 F.2d 312 (10th Cir. 1972)) ("Even though an amateur athletic association's primary purpose is non-commercial, its subsequent actions in carrying out its laudable objectives could trigger the applicability of the Sherman Act if such conduct restrained interstate trade or commerce in an unreasonable manner. Thus, a non-profit athletic association formed for the purpose of promoting amateur athletics. . . may be found to be engaging in conduct which results in an unreasonable restraint of trade or commerce."). Plaintiffs' have alleged, in specific detail, the mechanisms of USASF's concerted action with Varsity. *See* Compl. ¶¶ 117-64. These allegations viewed as a whole, as the Court must at this procedural stage, establish USASF's involvement in the anticompetitive conspiracy. USASF's attempt to frame these allegations as individually justifiable actions runs counter to the Court's obligation and must be rejected. Plaintiff has properly pleaded a claim against USASF under Section 1 of the Sherman Act.

3.    ***Copperweld* and the Intracorporate Conspiracy Doctrine Do Not Preclude Plaintiffs' Claims.**

Contrary to USASF's assertion, neither the intracorporate conspiracy doctrine nor

*Copperweld Corp. v. Indep. Tube Corp.*, 467 U.S. 752 (1984), are applicable to the relationship

between Varsity and USASF.[5]

In *Copperweld*, the Supreme Court rejected the "intra-enterprise conspiracy" doctrine. *Id.*

at 759. The Court held that "the coordinated activity of a parent and its wholly owned subsidiary

must be viewed as that of a single enterprise for purposes of § 1 of the Sherman Act." *Id.* at 771.

The Court based its conclusion on the grounds that, as a matter of law, a "parent and its wholly

owned subsidiary have a complete unity of interest." *Id.* In other words, *Copperweld* establishes

"where there is a substantial common ownership . . . individual firms function as an economic

unit and are generally treated as a single entity." *Arandell Corp. v. Centerpoint Energy Servs.,*

*Inc.*, 900 F.3d 623, 630 (9th Cir. 2018) (quoting *Freeman v. San Diego Ass'n of Realtors*, 322

F.3d 1133, 1147–48 (9th Cir. 2003)).[6]

USASF misconstrues the allegations in the Complaint. As alleged, USASF was created

jointly by promoters and Varsity, not by Varsity alone. Compl. ¶ 104. USASF is a separate legal

entity. Compl. ¶ 108. It does not appear to be owned by Varsity or other Defendants, and

---

[5] USASF does not address-and therefore concedes-the sufficiency of the allegations with respect to liability under agency principles. *See* Compl. ¶¶ 23-27; *Am. Soc'y of Mech. Eng'rs v. Hydrolevel*, 456 U.S. 556, 558-59 (1982) (holding a nonprofit organization liable for anticompetitive activity applying agency theories of liability).

[6] The logical corollary of the principle that a parent cannot conspire with its subsidiary because they are one unit is that they are considered as one unit for purposes of liability under the antitrust law. Where there is a unity of interest, the entity is considered a single unit for purposes of the antitrust law and therefore share antitrust liability. *Arandell,* 900 F.3d. at 630 (a parent and its wholly owned subsidiary "always have a 'unity of purpose or a common design.'") (quoting *Copperweld,* 467 U.S. at 771). The liability of a corporate parent together with its wholly owned or controlled subsidiary is addressed in Plaintiffs' Opposition to Charlesbank and Varsity's Motion to Dismiss which is incorporated by reference.

---

Defendants do not contend to the contrary.[7] The USASF Board of Directors includes members

who are Cheer Competition producers and program owners outside of Varsity. Compl. ¶ 110.[8]

USASF is not an intracorporate unit or wholly owned subsidiary of Varsity.[9] Because Plaintiffs

do not allege that USASF is a corporate division or a wholly owned subsidiary, *Copperweld* does

not apply.[10]

### C. Plaintiffs Properly Plead Claims Under State Antitrust and Consumer Protection Laws.

#### 1. Second Claim for Relief (Violation of Tennessee Antitrust Law).

Count Two of the Complaint alleges a violation of the Tennessee Trade Practices Act

("TTPA"), Tennessee Code Ann. §§ 47-25-101, *et seq.*[11] USASF does not dispute that the TTPA

---

[7] USASF has filed articles of incorporation under the Tennessee Nonprofit Corporate Act. *See* https://usasfmain.s3.amazonaws.com/About/docs/usasf_charter.pdf. It does not disclose ownership by Varsity.

[8] The USASF Bylaws state "The Board of Directors is made up of representatives from Competition Event Producers, gym owners/coaches, and the USASF. (Approved by the USASF Board of Directors on September 1, 2005.  *See* https://www.usasf.net/about.

[9] *McNeil v. Nat'l Football League,* 790 F. Supp. 871 (D. Minn. 1992) is instructive. In *McNeil*, the court noted some cooperation between entities was necessary for the operation of the sport of football, but that cooperation did "not preclude application of § 1 of the Sherman Act to the agreements by which such cooperation was allegedly effected." *Id.* at 879-80. Similarly, here, some level of cooperation between Varsity and USASF is required for the operation of the sport of cheerleading, but that cooperation does not change the fact that Varsity and USASF are two independent firms acting in concert. Therefore, USASF and Varsity are not a single actor.

[10] Defendant's cases are easily distinguishable from the matter at hand for the same reasons. Defendant relies heavily *on Jack Russell Terrier Network of Northern Ca. v. Am. Kennel Club* 407 F.3d 1027, 1035 & n.15 (9th Cir. 2005). Defendant's argument however is based on the demonstrably false statement that the "Complaint here does not allege that USASF and Varsity are separate actors pursuing independent economic interests." As noted in Plaintiffs' Opposition to Varsity's Motion to Dismiss an incorporated herein by reference, Plaintiffs' Complaint does indeed allege that Varsity and USASF are distinct legal entities with distinct and independent legal interest. The remaining of Defendant's cases cited, *Am. Council of Certified Podiatric Physicians and Surgeons v. Am. Bd. of Podiatric Surgery, Inc.*, 185 F.3d 606, 620 (6th Cir. 1999) and *Century Oil v. Prod. Specialties*, 737 F.2d 1316, 1317 (5th Cir. 1984) are distinguishable on the same grounds.

[11] Tennessee Code §§47-25-101 prohibits "[a]ll arrangements, contracts, agreements, trusts, or combinations between persons or corporations made with a view to lessen, or which tend to lessen, full and free competition. . . ."

---

applies to the Cheer Apparel Market, and thus Count Two will proceed against USASF as to that market.

Despite USASF's assertions to the contrary, Plaintiffs have properly pleaded conduct having substantial effect on the Tennessee economy under *Freeman Industries, LLC v. Eastman Chemical Co.*, 172 S.W.3d 512, 523 (Tenn. 2005). *Freeman* stated that "[t]he focus under the substantial effects standard . . . is not on the anticompetitive conduct itself but on the effects of the conduct on Tennessee commerce." *Id.* at 524. "The anticompetitive conduct, however, need not threaten the demise of Tennessee business or affect market prices to substantially affect intrastate commerce." *In re Wellbutrin XL Antitrust Litig.*, 260 F.R.D. 143, 166 (E.D. Pa. 2009). At the motion to dismiss stage, a complaint need only contain "facts that 'raise a reasonable expectation that discovery will reveal evidence of' a substantial effect on the Tennessee economy sufficient to prove a claim under that state's antitrust law." *In re Wellbutrin XL Antitrust Litig.*, 260 F.R.D. at 166 (quoting *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1965 (2007)).

The *Freeman* substantial effect standard is satisfied where (1) the defendant had its corporate headquarters and principal place of business in Tennessee; (2) the plaintiffs paid substantial overcharges and the defendant likely received a significant portion of the sales; (3) a substantial portion of the overcharges likely flowed back to Tennessee; and (4) at least some of the money used to further the anticompetitive scheme deprived the state of Tennessee of additional funds. *In re Cast Iron Soil Pipe & Fittings Antitrust Litig.*, No. 1:14-MD-2508, 2015 WL 5166014, at *39 (E.D. Tenn. June 24, 2015) (citing *In re Skelaxin (Metaxalone) Antitrust Litig.*, No. 1:12-MD-2343, 2013 WL 2181185 (E.D. Tenn. May 20, 2013)).

Here, Plaintiffs have properly alleged facts sufficient to show a substantial effect on the Tennessee economy. Plaintiffs have alleged they purchased products from Defendants who are residents of Tennessee, are Tennessee corporations, and have their principal place of business in Tennessee. The anticompetitive scheme was directed, maintained and implemented in Tennessee. Compl. ¶ 241. Plaintiffs have paid substantial overcharges to Defendants as a result of the conspiracy. Compl. ¶ 243. These allegations, viewed in the light most favorable to Plaintiffs, "raise a reasonable expectation that discovery will reveal evidence of a substantial effect on the Tennessee economy sufficient to prove a claim under that state's antitrust law." *In re Wellbutrin XL Antitrust Litig.*, 260 F.R.D. at 166 (internal quotations omitted).

The present case is distinguishable from *Freeman*, where the Court held that Tennessee commerce was not substantially affected by the alleged conduct. 172 S.W.3d at 524. *Freeman* involved a defendant sorbate producer with its place of business in Tennessee participating in a price-fixing conspiracy with a number of entities outside Tennessee. The consumer plaintiff purchased food products containing sorbates at a supermarket in New York. *Id.* at 516. The plaintiff in *Freeman* did not allege that it did business with any defendant with ties to Tennessee, or even that it purchased items containing sorbates manufactured by the Tennessee-based defendant, as opposed to any other sorbate producer. *Id.* at 524. As detailed above, the present case involves a much stronger connection to and effect on Tennessee commerce due to the Defendants' location in Tennessee and direct connection to the products at issue. Plaintiffs have pleaded a plausible claim for relief under the TTPA.

## 2. Third Claim for Relief (Violation of State Antitrust Laws).

The Third Claim for Relief asserts claims under the antitrust laws of 31 states. Compl. ¶¶ 246-250. USASF argues that Count Three must be dismissed because Plaintiffs have not identified the specific provisions of the state antitrust acts cited, it is "implausible" that Plaintiffs

have standing to bring claims under 31 different state's laws, and that several states lack a private right of action. Each of USASF's arguments fails and should be rejected by the Court.

First, USASF states, without any explanation, that Count Three must fail because Plaintiffs have not identified the specific provisions of the various state antitrust acts cited. USASF fails to explain how this perceived deficiency fails to satisfy the pleading standard. In order to survive a motion to dismiss, the complaint need only "raise a right to relief above the speculative level," in order to give the defendant fair notice of the claim. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Plaintiffs have pleaded facts demonstrating a right to relief under the 31 state antitrust statutes above a speculative level, and the Complaint gives USASF notice of the claims against it and the grounds for those claims. By pleading the legal theory supporting their claim, Plaintiffs more than meet the requirements of Rule 8. *See Johnson & Johnson v. Actavis Grp. HF*, No. 06 CIV. 8209 (DLC), 2008 WL 228061, at *4 n.5 (S.D.N.Y. Feb. 21, 2008) ("'[F]ederal pleading is by statement of claim, not by legal theory'." (quoting *Wynder v. McMahon*, 360 F.3d 73, 77 (2d Cir. 2004))); *Simonton v. Runyon*, 232 F.3d 33, 36-37 (2d Cir. 2000) ("[A] complaint that gives full notice of the circumstances giving rise to the plaintiff's claim for relief need not also correctly plead the legal theory or theories . . . supporting the claim.").[12]

USASF's argument that the Third Claim must be dismissed because Plaintiffs do not have standing to assert claims under 31 different state antitrust laws is unsupported by law. Under the Supreme Court's decision in *Illinois Brick Co. v. Illinois*, 431 U.S. 720, 746-47 (1977) indirect purchasers may not obtain damages for violations of federal antitrust law. In the wake of

---

[12] Citing to the statute giving rise to a claim is not even required at the pleading stage. *See Wynder*, 360 F.3d at 77 ("Rule 8's 'liberal pleading principles' do not permit dismissal for 'failure in a complaint to cite a statute, or to cite the correct one . . . .'" (quoting *Northrop v. Hoffman of Simsbury, Inc.*, 134 F.3d 41, 46 (2d Cir. 1997))).

*Illinois Brick,* numerous states passed repealer statutes, permitting indirect purchasers to pursue

such damage claims. *See In re Automotive Parts Antitrust Litig.*, 29 F. Supp. 3d 982, 1001 (E.D.

Mich. 2014). Over 30 years ago, the United States Supreme Court held that, although the

Sherman Act provides standing for direct purchases, indirect purchasers may recover damages

under state antitrust statutes that allow such claims. *California v. ARC Am. Corp.,* 490 U.S. 93,

101–02 (1989). The jurisdictions whose laws Plaintiffs invoke elected to provide standing for

indirect purchasers. These claims "are consistent with the broad purposes of the federal antitrust

laws: deterring anticompetitive conduct and ensuring the compensation of victims of that

conduct." *Id.* at 102.[13]

Further, this argument improperly conflates Article III standing with Rule 23's class

certification requirements. "[A]s long as the named plaintiffs have standing to sue the named

defendants, any concern about whether it is proper for a class to include out-of-state, nonparty

class members with claims subject to different state laws is a question of predominance under

Rule 23(b)(3), not a question of adjudicatory competence under Article III." *Langan v. Johnson

& Johnson Consumer Companies, Inc.*, 897 F.3d 88, 93 (2d Cir. 2018) (quotations and citations

omitted). There is no dispute that Plaintiffs have standing to sue USASF. Therefore, USASF's

arguments regarding out-of-state nonparty class members are not appropriate at this juncture. *In

re Polyurethane Foam Antitrust Litig.*, 799 F. Supp. 2d 777, 805–06 (N.D. Ohio 2011) (denying

motion to dismiss based on Article III standing, explaining that the complaint "contains a

---

[13] *See also Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 612 (1997); *Ortiz v. Fibreboard
Corp.,* 527 U.S. 815, 831 (1999). In *Amchem* and *Ortiz*, the Supreme Court directed lower courts
to defer standing questions concerning putative class members who are not class representatives
until after class certification when class certification is "logically antecedent" to standing. *See
Amchem*, 521 U.S. at 612; *Ortiz*, 527 U.S. at 831. The *Amchem* and Ortiz cases "created an
exception to ordinary jurisdictional principles for circumstances in which class certification is
'logically antecedent to Article III concerns' and therefore 'should be treated first.'" *In re
Relafen Antitrust Litig.*, 221 F.R.D. 260, 268 (D. Mass. 2004).

mixture of state-law claims only because the Indirect Purchaser Plaintiffs bring this suit as a proposed class action" under Rule 23).

USASF claims that several of the state laws cited lack a private right of action. Plaintiffs' Opposition to Defendant Webb's Motion to Dismiss, incorporated here by reference, addresses these objections to Count Three at length. *See* Plaintiffs' Opposition to Jeff Webb's Motion to Dismiss, Section III. D.

3. **Fourth Claim for Relief (Unfair Methods of Competition and Unfair and Deceptive Acts in Violation of State Consumer Protection Law).**

The Fourth Claim for Relief asserts claims under the consumer protection statutes of 31 states. USASF incorrectly states, without explanation, that this claim is not asserted against USASF. As explained above, Plaintiffs assert the Fourth Claim of Relief against USASF and other Defendants. *See supra* Section III. A.

USASF further claims, without any supporting authority, that Plaintiffs' claims under the Fourth Claim for Relief must fail because they have not identified the specific provisions of the state statutes which Defendants violated. Rule 8(a)'s pleading standard applies to Plaintiff's consumer protection claims. *See Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Fin. Servs., Inc.*, 536 F.3d 663, 670 (7th Cir. 2008). The Fourth Claim for Relief meets the pleading standard under Rule 8(a) by "providing allegations that raise a right to relief above the speculative level." *Id.* at 668 (quoting *Tamayo v. Blagojevich*, 526 F.3d 1074, 1084 (7th Cir. 2008)).

Again, USASF's argument that Plaintiffs do not have standing to assert claims under 31 different state consumer protection laws is unsupported by law and easily disposed with. Each of the Plaintiffs is a consumer who indirectly paid for one or more of Varsity's goods or services. Compl. ¶ 6.  The marketing and sale of such goods and services is plainly the subject of state

consumer protection law. Unquestionably, each class member has standing to pursue claims under consumer protection law in connection with those purchases. Moreover, as noted above Defendant's argument improperly conflates Article III standing with Rule 23's class certification requirements. *See supra* Section III. C.[14]

## IV.    CONCLUSION

For the reasons discussed herein, Plaintiffs respectfully request that the Court deny USASF's motion to dismiss. Alternatively, should the Court find any claim to be insufficiently pled at this juncture, Plaintiffs respectfully request leave to amend. See, e.g., Fed. R. Civ. P. 15(a)(2) (leave to amend should be freely given "where justice so requires."); Rikos v. Procter & Gamble Co., No. 11-cv-226, 2012 WL 641946, at *3 (S.D. Ohio Feb. 28, 2012) (granting leave to amend); Sanders v. Apple Inc., 672 F. Supp. 2d 978, 991 (N.D. Cal. 2009) (same).


Dated: April 15, 2021                                        By:         */s/ Joseph R. Saveri*
                                                                                    Joseph R. Saveri

                                                                Joseph R. Saveri*
                                                                Steven N. Williams*
                                                                Kevin E. Rayhill*
                                                                Elissa A. Buchanan*
                                                                Anna-Patrice Harris*
                                                                **JOSEPH SAVERI LAW FIRM, LLP**
                                                                601 California Street, Suite 1000
                                                                San Francisco, California 94108
                                                                Telephone: (415) 500-6800
                                                                Facsimile:  (415) 395-9940
                                                                Email:  jsaveri@saverilawfirm.com
                                                                            swilliams@saverilawfirm.com
                                                                            krayhill@saverilawfirm.com
                                                                            eabuchanan@saverilawfirm.com
                                                                            aharris@saverilawfirm.com

---

[14] USASF claims that Plaintiffs are precluded from bringing a class action under some of the state laws in the Fourth Claim for Relief. Plaintiffs' Opposition to Defendant Webb's Motion to Dismiss, incorporated here by reference, addresses these objections to Count Four at length. See Pls.' Opp. to Webb Mot. to Dismiss, Section IV.

Van Turner (TN Bar No. 22603)
**BRUCE TURNER, PLLC**
2650 Thousand Oaks Blvd., Suite 2325
Memphis, Tennessee 38118
Telephone: (901) 290-6610
Facsimile: (901) 290-6611
Email: vturner@bruceturnerlaw.net

Daniel E. Gustafson
Daniel C. Hedlund
Daniel J. Nordin
Ling S. Wang
**GUSTAFSON GLUEK PLLC**
Canadian Pacific Plaza
120 South Sixth Street, Suite 2600
Minneapolis, MN 55402
Telephone: (612) 333-8844
Facsimile: (612) 339-6622
Email: dgustafson@gustafsongluek.com
        dhedlund@gustafsongluek.com
        dnordin@gustafsongluek.com
        lwang@gustafsongluek.com

Richard M. Paul III*
Sean R. Cooper*
**PAUL LLP**
601 Walnut, Suite 300
Kansas City, Missouri 64106
Telephone: (816) 984-8100
Email: rick@paulllp.com
        sean@paulllp.com

*\* Admitted pro hac vice*

*Attorneys for Individual and Representative Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on April 15, 2021, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all attorneys of record.


Dated: April 15, 2021                    By: _____ */s/ Joseph R. Saveri* _____

                                                  Joseph R. Saveri