IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| **JESSICA JONES**, **MICHELLE VELOTTA**, and **CHRISTINA LORENZEN** on Behalf of Themselves and All Others Similarly Situated, | Case No. 2:20-cv-02892-SHL-cgc |
| **Plaintiffs,** | **JURY DEMAND** |
| v. | |
| **VARSITY BRANDS, LLC; VARSITY SPIRIT, LLC; VARSITY SPIRIT FASHION & SUPPLIES, LLC; U.S. ALL STAR FEDERATION, INC.; JEFF WEBB; CHARLESBANK CAPITAL PARTNERS LLC; and BAIN CAPITAL PRIVATE EQUITY,** | |
| **Defendants.** | |

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO STRIKE CLASS ALLEGATIONS**

## <u>TABLE OF CONTENTS</u>

I.     INTRODUCTION AND SUMMARY OF ALLEGATIONS ...........................................1

II.    RELEVANT FACTS ....................................................................................................2

III.   ARGUMENT ...............................................................................................................3

     A.    Striking Class Allegations Prior to Discovery and a Motion for Class Certification is Premature and a "Drastic" Remedy......................................................3

     B.    Plaintiffs Have Plausibly Pleaded Rule 23 Requirements and Discovery is Needed Before Certification. .......................................................................................5

         1. Plaintiffs Properly Alleged Adequacy of Representation....................................5

         2. Plaintiffs Sufficiently Alleged that Harm Can be Shown by Common Proof........................................................................................................................8

         3. Plaintiffs Properly Alleged a Nationwide Damages Class Under Tennessee Law. ......................................................................................................15

         4. Having an Alternative State Law Damages Class Does Not Defeat Predominance..........................................................................................................18

     C.    Plaintiffs Properly Alleged a Fed. R. Civ. P. 23(b)(2) Class. ...................................18

     D.    Plaintiffs Have Article III Standing to Seek Relief on Behalf of the Proposed Classes....................................................................................................................19

     E.    The Class Definitions Can Later Be Amended by Plaintiffs and the Court. .............19

IV.   CONCLUSION..........................................................................................................20

## **TABLE OF AUTHORITIES**

**Cases**                                                                                          **Page(s)**

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*,
   568 U.S. 455 (2013)..................................................................................................9, 12

*Avio, Inc. v. Alfoccino, Inc.*,
   311 F.R.D. 434 (E.D. Mich. 2015) ........................................................................8

*Bieneman v. City of Chicago*,
   864 F.2d 463 (7th Cir. 1988) .............................................................................7, 8

*Bigelow v. RKO Radio Pictures, Inc.*,
   327 U.S. 251 (1946).............................................................................................10

*Bridging Communities Inc. v. Top Flite Fin. Inc.*,
   843 F.3d 1119 (6th Cir. 2016) ..............................................................................8

*Butler v. Sears, Roebuck & Co.*,
   727 F.3d 796 (7th Cir. 2013) ................................................................................8

*Comcast Corp. v. Behrend*,
   569 U.S. 27 (2013)................................................................................................4

*Eggleston v. Chicago Journeyman Plumbers' Local Union No. 130, U.A.*,
   657 F.2d 890 (7th Cir. 1981) ................................................................................5

*Fallick v. Nationwide Mut. Ins. Co.*,
   162 F.3d 410 (6th Cir. 1998) ..............................................................................19

*Fishon v. Mars Petcare US, Inc.*,
   No. 3:19-CV-00816, 2020 WL 6826733 (M.D. Tenn. Nov. 20, 2020).......................4, 17, 18

*Freeman Indus., LLC v. Eastman Chem. Co.*,
   172 S.W.3d 512 (Tenn. 2005)..............................................................................15

*Hanover Shoe, Inc. v. United Shoe Mach. Corp.*,
   392 U.S. 481 (1968)..............................................................................................9

*Hataway v. McKinley*,
   830 S.W.2d 53 (Tenn. 1992)...............................................................................15

*Hospital Auth. of Metro. Gov't of Nashville & Davidson Cty. v. Momenta
    Pharms.*,
   333 F.R.D. 390 (M.D. Tenn. 2019) ....................................................................18

*In re Air Cargo Ship. Services Antitrust Litig.*,
   No. 06-MD-1175, 2014 WL 7882100 (E.D.N.Y. Oct. 15, 2014)..........................10

PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO STRIKE
CLASS ALLEGATIONS

*In re Cast Iron Soil Pipe And Fittings Antitrust Litig.*,
   No. 1:14–md–2508, 2015 WL 5166014 (E.D. Tenn. June 24, 2015).......................................4

*In re Flonase Antitrust Litig.*,
   284 F.R.D. 207 (E.D. Pa. 2012)..................................................................................11, 14

*In re Lidoderm Antitrust Litig.*,
   No. 14-md-2521-WHO, 2017 WL 679367 (N.D. Cal. Feb. 21, 2017)............................11, 12

*In re Nexium Antitrust Litig.*,
   777 F.3d 9 (1st Cir. 2015) .............................................................................................11, 14

*In re Optical Disk Drive Antitrust Litig.*,
   No. 3:10-md-2143, 2016 WL 467444 (N.D. Cal. Feb. 8, 2016)............................................10

*In re Pharm. Indus. Average Wholesale Price Litig.*,
   233 F.R.D. 229 (D. Mass. 2006) ........................................................................................15

*In re Pharm. Indus. Average Wholesale Price Litig.*,
   582 F.3d 156 (1st Cir. 2009)..............................................................................................11

*In re Polyurethane Foam Antitrust Litig.*,
   314 F.R.D. 226 (N.D. Ohio 2014) ...................................................................................7, 10

*In re Restasis (Cyclosporine Ophthalmic Emulsion) Antitrust Litig.*,
   335 F.R.D. 1 (E.D.N.Y. 2020) .........................................................................................4, 13

*In re Scrap Metal Antitrust Litig*,
   527 F.3d 517 (6th Cir. 2008) ..............................................................................................10

*In re Scrap Metal Antitrust Litig.*,
   No. 1:02 CV 0844, 2006 WL 2850453 (N.D. Ohio, Sept. 30, 2006) ...................................10

*In re Skelaxin (Metaxalone) Antitrust Litig.*,
   299 FRD 555 (E.D. Tenn. 2014)............................................................................15, 16, 17

*In re Wellbutrin XL Antitrust Litig.*,
   282 F.R.D. 126 (E.D. Pa. 2011).....................................................................................11, 14

*In re Whirlpool Corp. Front-Loading WasherProds. Liab. Litig.*,
   678 F.3d 409 (6th Cir. 2012) ..............................................................................................13

*Kleen Prods. LLC v. International Paper Co.*,
   831 F.3d 919 (7th Cir. 2016) ..............................................................................................12

*Operating Engineers Local 324 Health Care Plan v. G & W Const. Co.*,
   783 F.3d 1045 (6th Cir. 2015) ..............................................................................................3

PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO STRIKE
CLASS ALLEGATIONS

*Phillips Petroleum Co. v. Shutts*,
    472 U.S. 797 (1985).......................................................................................16

*Pilgrim v. Universal Health Card, LLC*,
    660 F.3d 943 (6th Cir. 2011) ......................................................................17

*Powers v. Hamilton Cnty. Pub. Defender Comm'n*,
    501 F.3d 592 (6th Cir. 2007) .......................................................................20

*Rikos v. Procter & Gamble Co.*,
    799 F.3d 497 (6th Cir. 2015) ...................................................................8, 14

*Rikos v. Procter & Gamble Co.*,
    No. 11-cv-226, 2012 WL 641946 (S.D. Ohio Feb. 28, 2012) .............................20

*Ruiz Torres v. Mercer Canyons Inc.*,
    835 F.3d 1125 (9th Cir. 2016) ......................................................................13

*Sanders v. Apple Inc.*,
    672 F. Supp. 2d 978 (N.D. Cal. 2009) ..........................................................20

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*,
    559 U.S. 393 (2010).......................................................................................3

*South-East Coal Co. v. Consol. Coal Co.*,
    434 F.2d 767 (6th Cir. 1970) .......................................................................10

*Stout v. J.D. Byrider*,
    228 F.3d 709 (6th Cir. 2000) ......................................................................5, 7

*Valley Drug Co. v. Geneva Pharm., Inc.*,
    350 F.3d 1181 (11th Cir. 2003) .....................................................................7

*Waste Mgt. Holdings*, *Inc. v. Mowbray*,
    208 F.3d 288 (1st Cir. 2000).........................................................................9

*Williams v. E. I. du Pont de Nemours & Co., Inc.*,
    No. 2:15-cv-02111, 2016 WL 7192173 (W.D. Tenn. Dec. 12, 2016).....................4

**Statutes**

28 U.S.C. § 2201 ...............................................................................................2

Clayton Act Section 16, 15 U.S.C. § 26 ...........................................................2

Fed. R. Civ. P.
    12.....................................................................................................................3
    15...................................................................................................................20
    23 .......................................................................................................... *passim*

PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO STRIKE
CLASS ALLEGATIONS

Sherman Act, 15 U.S.C.
   § 1................................................................................................................2
   § 2................................................................................................................2
   § 3.............................................................................................................2, 6

Tennessee Trade Practices Act, Tenn. Code Ann. §§ 47-25-101 .............................................2, 15

PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO STRIKE
CLASS ALLEGATIONS

## I.   INTRODUCTION AND SUMMARY OF ALLEGATIONS

The Court should deny the Motion to Strike filed by Varsity Brands, LLC; Varsity Spirit, LLC; Varsity Spirit Fashions & Supplies, LLC (collectively, "Varsity"); U.S. All Star Federation ("USASF"); Charlesbank Capital Partners, LLC; Bain Capital Private Equity, LP; and Jeff Webb (altogether, "Defendants"). It is premature. It attempts to litigate class certification before discovery, a class certification motion, and even an answer to Plaintiffs' Complaint. Many circuits, including the Sixth Circuit, and courts in this District have consistently held that motions to strike class allegations before there is a chance for discovery are disfavored, especially if Plaintiffs show that discovery is likely to produce information substantiating class allegations.

Defendants' burden is high; they must accept all of Plaintiffs' allegations as true and still show that there is no possibility of class certification. Defendants do not meet that burden. This indirect purchaser case is of the type routinely certified in federal courts across the United States. Here, Plaintiffs have plausibly alleged facts showing that the requirements of Rule 23 are satisfied. Defendants' scattershot arguments that Plaintiffs have not met Rule 23(a) requirements fail because they ignore the well-pleaded allegations and applicable law and are instead based on Defendants' own speculations without factual support and off-base legal arguments. Thus, Defendants do not come close to satisfying their burden of demonstrating from the face of the complaint that it will be *impossible* to certify the class as alleged, and Plaintiffs' Complaint is certainly not the extraordinary case where the complaint makes clear that class treatment is inappropriate.

Defendants' challenges to Plaintiffs' class allegation at this early phase also ignores Rule 23's flexibility, including the discretion given to this Court to later modify and mold a class that meets Rule 23's requirements after the evidence has been developed. Plaintiffs should be

provided the opportunity to conduct discovery and to demonstrate that class treatment is

appropriate on a full factual record. Accordingly, the court should deny Defendants' request to

strike Plaintiffs' class allegations.

## II.    RELEVANT FACTS

Plaintiffs assert various claims for injunctive relief, declaratory relief, and damages for

Defendants' violation of federal and state laws via Defendants' scheme to create an illegal

monopoly in order to dominate the Cheer Competitions market in the United States, through

which it has also been able to acquire and maintain its monopoly in the Cheer Apparel and Cheer

Camp markets. *See, e.g.*, Compl. ¶¶ 1-6, 231-268. Specifically, Plaintiffs seek injunctive relief

under Section 16 of the Clayton Act and declaratory relief under 28 U.S.C. § 2201 for violations

of Sections 1, 2, and 3 of the Sherman Act, 15 U.S.C. 15 U.S.C. §§ 1-3 on behalf of an

Injunctive Relief Class defined as:

> All natural persons and entities in the United States that indirectly paid
> Varsity or any Varsity subsidiary or affiliate, from December 10, 2016,
> until the continuing Exclusionary Scheme alleged herein ends (the
> "Class Period") for: (a) registration, entrance, or other fees and expenses
> associated with participation in one or more Varsity Cheer
> Competitions, including registration fees to USASF; (b) Varsity Cheer
> Apparel; (c) Varsity Cheer Camp Fees; or (d) accommodations at one or
> more Varsity Cheer Competitions, including registration fees to
> USASF; (b) Varsity Cheer Apparel; or (c) Varsity Cheer Camp Fees.

Compl. ¶¶ 29, 231-238, 267-268. Plaintiffs also bring claims for unjust enrichment under

Tennessee law and under the Tennessee Trade Practices Act, Tenn. Code Ann. §§ 47-25-101, *et*

*seq.* ("TTPA"), on behalf of a Nationwide Damages Class defined as:

> All natural persons and entities in the United States that indirectly paid
> Varsity or any Varsity subsidiary or affiliate, from December 10, 2016,
> until the continuing Exclusionary Scheme alleged herein ends (the
> "Class Period") for: (a) registration, entrance, or other fees and expenses
> associated with participation in one or more Varsity Cheer
> Competitions; (b) Varsity Cheer Apparel; (c) Varsity Cheer Camp Fees;
> or (d) accommodations at one or more Varsity Cheer Competitions.

Compl. ¶¶ 30, 239-245, 257-266.  In the alternative, Plaintiffs brings claims for violations of various state antitrust and consumer protection laws, on behalf of a State Law Damages Class defined as:

> All natural persons and entities in the United States that indirectly paid Varsity or any Varsity subsidiary or affiliate, from December 10, 2016, until the continuing Exclusionary Scheme alleged herein ends (the "Class Period") for: (a) registration, entrance, or other fees and expenses associated with participation in one or more Varsity Cheer Competitions; (b) Varsity Cheer Apparel; (c) Varsity Cheer Camp Fees; or (d) accommodations at one or more Varsity Cheer Competitions, in Alabama, Alaska, Arizona, Arkansas, California, Colorado, Connecticut, the District of Columbia, Florida, Hawaii, Idaho, Illinois, Iowa, Kansas, Maine, Massachusetts, Maryland, Michigan, Minnesota, Mississippi, Missouri, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, North Dakota, Oregon, Rhode Island, South Dakota, Tennessee, Utah, Vermont, Washington, West Virginia, and Wisconsin.

Compl. ¶¶ 31, 246-250, 251-256. Federal Rule of Civil Procedure 23 governs with respect to class certification of claims under state law. *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393 (2010).

## III.   ARGUMENT

### A.   Striking Class Allegations Prior to Discovery and a Motion for Class Certification is Premature and a "Drastic" Remedy.

Rule 12 permits a court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Nonetheless "[m]otions to strike are viewed with disfavor and are not frequently granted." *Operating Engineers Local 324 Health Care Plan v. G & W Const. Co.*, 783 F.3d 1045, 1050 (6th Cir. 2015) (citations omitted). Rule 23 sets forth the rules with respect to class certification. Plaintiffs bear the burden of establishing each of the relevant requirements. Rules 23(d)(1)(D) and 23(c)(1)(A), read together with Rule 12(f), grant the Court authority to strike class allegations prior to discovery only if the complaint demonstrates that a class action cannot be maintained.

*Fishon v. Mars Petcare US, Inc.*, No. 3:19-CV-00816, 2020 WL 6826733, at *13 (M.D. Tenn. Nov. 20, 2020) (citations omitted). On a motion to strike, the burden is high and shifts to Defendants. They must demonstrate that "it will be impossible to certify the class as alleged, regardless of the facts plaintiffs may be able to prove." *Id.* If the existing record is inadequate for resolving the issues, the court "should defer decision on certification pending discovery." *Id.* (citing *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1086 (6th Cir. 1996)). Under Supreme Court precedent, the determination of whether Plaintiffs have satisfied Rule 23 should be conducted on a well-developed record, considering the nature of Plaintiffs' claims and the relevant facts. *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013) ("Repeatedly, we have emphasized that it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question. . . .") (citations and internal quotations omitted). Because of the presence of numerous overwhelming common questions, antitrust cases are well-suited for class action treatment. *In re Restasis (Cyclosporine Ophthalmic Emulsion) Antitrust Litig.*, 335 F.R.D. 1 (E.D.N.Y. 2020) ("Predominance is a test readily met in certain cases alleging . . . violations of the antitrust laws.").

Defendants seek to short-circuit and foreclose the rigorous analysis to be applied. In similar situations, courts in this District—and others throughout the United States—rarely grant motions to strike class allegations from the pleadings. *See, e.g.*, *Fishon*, 2020 WL 6826733, at *14 (denying motion to strike); *Williams v. E. I. du Pont de Nemours & Co., Inc.*, No. 2:15-cv-02111, 2016 WL 7192173, at *2 (W.D. Tenn. Dec. 12, 2016) (same); *In re Cast Iron Soil Pipe And Fittings Antitrust Litig.,* No. 1:14–md–2508, 2015 WL 5166014, at *42 (E.D. Tenn. June 24, 2015) ("While it is possible that the . . . [p]laintiffs will be unable to meet the class certification requirements, the Court is unwilling to deem it an impossibility based on the pleadings alone.

Rather, the Court finds that class discovery will clarify whether Plaintiffs are able to meet the requirements identified in Federal Rule of Civil Procedure 23(b).").

### B.    Plaintiffs Have Plausibly Pleaded Rule 23 Requirements and Discovery is Needed Before Certification.

Plaintiffs have adequately pleaded facts establishing Rule 23(a) requirements of numerosity, commonality, typicality, and adequacy of representation, Rule 23(b)(2)'s cohesiveness requirement, and Rule 23(b)(3)'s predominance requirement. *See, e.g.*, Compl. ¶¶ 29-39; *see also* Fed. R. Civ. P. 23(a), (b)(2), (b)(3). Defendants' arguments to the contrary are unpersuasive. Defendants' entire motion rests on conclusory assertions—devoid of an evidentiary record or factual basis—of purported internal class conflicts and Plaintiffs' supposed inability to demonstrate classwide impact and harm. Defendants ask the Court to reach these conclusions preemptively without discovery and expert analysis that is typical in antitrust cases such as this. Accordingly, Defendants' Motion should be denied.

### 1. Plaintiffs Properly Alleged Adequacy of Representation.

Defendants challenge the adequacy of representation based on their conclusion that the proposed classes are "rife" with conflicts of interest. Defendants' Brief in Support of Motion to Strike ("MTS") at 5-6. Under Fed. R. Civ. P. 23(a)(4), a plaintiff seeking to represent the class must demonstrate that he or she will fairly and adequately represent and protect the interests of the class. *Stout v. J.D. Byrider*, 228 F.3d 709, 717 (6th Cir. 2000) (citation omitted). On a briefed motion, "[t]he court reviews the adequacy of class representation to determine whether class counsel are qualified, experienced and generally able to conduct the litigation, and to consider whether the class members have interests that are not antagonistic to one another." *Id.* "Interests are antagonistic when there is **evidence** that the representative plaintiffs appear unable to 'vigorously prosecute the interests of the class.'" *Id.* (emphasis added); *see also Eggleston v.*

*Chicago Journeyman Plumbers' Local Union No. 130, U.A.*, 657 F.2d 890, 905 (7th Cir. 1981) (defendant's attack on adequacy of representation "is a bit like permitting a fox, although with pious countenance, to take charge of the chicken house").

There is no such evidence here. Plaintiffs have a common interest in seeking redress as a result of Defendants' illegal conduct. They have a common interest in recovering damages or restitution, as well as obtaining injunctive relief in the form of structural or declaratory relief to prevent the illegal conduct in the future. Plaintiffs are indirect purchasers. Plaintiffs sit at the end of the chain distribution, ultimately paying the price for anticompetitive conduct in the form of higher prices, decreased innovation, and lower quality products. All Plaintiffs and class members assert the same facts, the same anticompetitive conduct and the same injuries. *See* Compl. ¶¶ 117-164.

Defendants do not, and cannot, contest the adequacy of Plaintiffs' counsel. Instead, they offer their own anticompetitive conduct with respect to rebate and discount programs as the source of the alleged conflict. Defendants claim, without any factual basis, that gym customers who received discounts and students at schools that received free services benefitted from them and are therefore antagonistic to those who may have not. MTS at 6.

First, Defendants do not explain—or demonstrate—the nature of the alleged "benefit." Rebates are just one aspect of the anticompetitive scheme, which includes but is not limited to, acquisitions, exclusive contracts, and control of USASF, the regulatory rule-making body.[1] As alleged in more than sufficient detail, the purpose and effect of these practices—when taken together—was to secure monopoly power, exclude rivals and to raise prices. Compl. ¶ 235. Each

---

[1] Defendants' scheme is discussed in detail within Plaintiffs' Opposition to Varsity's Motion to Dismiss Section III. C and D and incorporated herein by reference.

class member has a common interest in proving these allegations, presenting overwhelming common issues. *See In re Polyurethane Foam Antitrust Litig.,* 314 F.R.D. 226, 238-41 (N.D. Ohio 2014) ("to forestall class certification the intra-class conflict must be so substantial as to overbalance the common interests of the class members as a whole.") (quoting *Matamoros v. Starbucks Corp.*, 699 F.3d 129, 138 (1st Cir. 2012)); *e.g.*, Compl. ¶¶ 141, 152. Plaintiffs have sufficiently alleged that via this conduct, as part of Defendants' scheme, Plaintiffs and class members have suffered antitrust injury by indirectly paying artificially inflated prices for goods and services that they purchased indirectly from Varsity, through All-Star Gyms and schools. *See* Compl. ¶¶ 217-230.

Second, the anticompetitive nature or effect of the conduct is not lessened because some gyms may have received rebates under Network Agreements or the Family Plan, or because Varsity offered schools inducements to sign exclusivity agreements, or because some gyms received paid trips to All-Star competitions or attended high-level meets. That this occurred does not mean that class members "benefitted" from this conduct—which excluded rivals and served to eliminate competition and raise prices. Defendants therefore offer zero support from the record supporting the contention that some class members benefitted from Defendants' exclusionary conduct.[2] Taking Plaintiffs' allegations as true, as the Court must as this stage,

---

[2] The cases cited by Defendants in support of their assertions reflect the prematurity of their arguments and are factually inapposite. These cases grant or deny motions for class certification **following** discovery. *See Stout*, 228 F.3d at 712 (plaintiffs appealed from the district court's denial of their motion for class certification following discovery). *Stout* was a fraud case where plaintiffs were required to prove individual reliance. *Id.* at 718. No such individualized proof is required here. Further, the class representative in *Stout* had voluntary dismissed their individual action in state court, thus preserving his right to pursue that suit should the class action be dismissed. *Id.* at 717. *See also Valley Drug Co. v. Geneva Pharm., Inc.*, 350 F.3d 1181, 1190 (11th Cir. 2003) (defendants appealed from the district court's granting of class certification following discovery; plaintiffs did not dispute defendants' detailed allegations that the majority of the class had experienced a net gain); *Bieneman v. City of Chicago*, 864 F.2d 463, 465 (7th

whether certain class members benefitted from the anticompetitive conduct is a question that will

be resolved based on common, classwide evidence. *See* Compl. ¶ 36(l).

### 2. Plaintiffs Sufficiently Alleged that Harm Can be Shown by Common Proof.

#### i. Plaintiffs' Proposed Classes Satisfy Rule 23(b)(3)'s Predominance Requirement.

Defendants claim that the proposed classes cannot be certified because Plaintiffs' injuries

cannot be shown by common proof. Not only is this argument premature like the others. It also

flies in the face of decades of jurisprudence. "The Rule 23(b)(3) predominance inquiry can be

thought of as a second step to Rule 23(a)'s commonality inquiry. As the Sixth Circuit has

explained, '[t]he commonality requirement is satisfied if there is a single factual or legal question

common to the entire class. The predominance requirement is met if this common question is at

the heart of the litigation.'" *Avio, Inc. v. Alfoccino, Inc.*, 311 F.R.D. 434, 445–46 (E.D. Mich.

2015) (citing *Powers v. Hamilton Cnty. Pub. Defender Comm'n*, 501 F.3d 592, 619 (6th Cir.

2007)). The Sixth Circuit has also "emphasized that the predominance inquiry must focus on

common questions that *can be proved* through evidence common to the class. . . . In other words,

named plaintiffs must show that they **will be able to prove** injury through common evidence, not

that they have in fact proved that common injury." *Rikos v. Procter & Gamble Co.*, 799 F.3d

497, 521 (6th Cir. 2015) (emphasis added) (citations and internal quotations omitted). The

predominance analysis is not "bean counting." *Butler v. Sears, Roebuck & Co.*, 727 F.3d 796,

801 (7th Cir. 2013); *see Bridging Communities Inc. v. Top Flite Fin. Inc.*, 843 F.3d 1119, 1124

(6th Cir. 2016) (plaintiffs need not prove that each element of a claim can be established by

---

Cir. 1988) (plaintiff appealed district court's denial of his motion for class certification). *Bieneman* is also inapposite because it involved claims related to airport noise for which "courts routinely decline to certify classes." *Id.* at 465.

classwide proof; the rule only requires that common questions *predominate* over any questions affecting only individual class members).

Here, Plaintiffs have identified a host of common issues arising out of Defendants' conduct including but not limited to: whether Defendants engaged in a conspiracy in violation of the antitrust laws; whether the Cheer Competitions, Cheer Apparel, and Cheer Camps are appropriate relevant markets; whether Defendants' Exclusionary Scheme maintained or enhanced Varsity's monopoly power in the Relevant Markets; whether Defendants' actions alleged herein caused injury to Plaintiffs and the class members by causing them to pay artificially inflated prices in the Relevant Markets during the Class Period; and the appropriate measure of damages. Compl. ¶ 36. All these questions, and many derivative common factual questions relevant to each of these issues, will be subject to the same common discovery and proof that can and will eventually provide more detailed and definite answers applicable to Plaintiffs and class members.[3]

Antitrust impact is a predominance issue. It concerns the factual question of whether the class has been injured. For class certification purposes, the question is whether antitrust impact can be proved by classwide proof. Proof of impact does not require quantification of damages. Instead, evidence tending to show any financial injury is sufficient. *Hanover Shoe, Inc. v. United Shoe Mach. Corp.*, 392 U.S. 481, 488-89 (1968). Impact is established on a class-wide basis when the evidence, as here, is capable of showing that the defendant's conduct caused injury that is widespread, even if not universal, across class members. At the class certification stage, plaintiffs do not need to **prove** class-wide harm. *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*,

---

[3] *See also Waste Mgt. Holdings*, *Inc. v. Mowbray*, 208 F.3d 288, 296-97 (1st Cir. 2000) ("As long as a sufficient constellation of common issues binds class members together, variations in the sources and application of statutes of limitations will not automatically foreclose class certification under Rule 23(b)(3)").

PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO STRIKE CLASS ALLEGATIONS

568 U.S. 455, 459 (2013); *In re Air Cargo Ship. Services Antitrust Litig.*, No. 06-MD-1175, 2014 WL 7882100, at *41 (E.D.N.Y. Oct. 15, 2014), *report and recommendation adopted*, 2015 WL 5093503 (E.D.N.Y. July 10, 2015) ("[T]he question is 'whether the method by which plaintiffs propose to prove class-wide impact c*ould* prove such impact not whether plaintiffs in fact *can* prove class-wide impact.").

Proof of damages is no impediment to predominance either. There are numerous well-established methodologies for calculating classwide damages in an indirect purchaser antitrust case. *See In re Polyurethane Foam Antitrust Litig.*, 314 F.R.D. 226, 286–88 (N.D. Ohio 2014) (discussing method of calculating passthrough damages for indirect purchasers); *In re Optical Disk Drive Antitrust Litig.*, No. 3:10-md-2143, 2016 WL 467444, at *5-10 (N.D. Cal. Feb. 8, 2016) (same). "It has long been settled that Rule 23(b)(3) does not require common proof of damages in order for class certification to be appropriate." *Air Cargo*, 2014 WL 7882100, at *59. Because of the uncertainty created by an antitrust defendant's conduct, "[t]he most elementary conceptions of justice and public policy require that the wrongdoer shall bear the risk of the uncertainty which his own wrong has created." *Bigelow v. RKO Radio Pictures, Inc.*, 327 U.S. 251, 265 (1946). "[T]he antitrust cases are legion which reiterate the proposition that, if the fact of damages is proven, the actual computation of damages may suffer from minor imperfections." *South-East Coal Co. v. Consol. Coal Co.*, 434 F.2d 767, 794 (6th Cir. 1970); *see In re Scrap Metal Antitrust Litig.*, No. 1:02 CV 0844, 2006 WL 2850453, at *24 (N.D. Ohio, Sept. 30, 2006) ("the Sixth Circuit has recognized that Plaintiffs need not establish their damages in a concrete fashion, reasonable estimations are permitted . . . .").

Here, classwide damages will be calculated on aggregate basis, as is common in a case of this type. *In re Scrap Metal Antitrust Litig*, 527 F.3d 517, 534 (6th Cir. 2008) (quoting *In re*

*NASDAQ Mkt.-Makers Antitrust Litig.*, 169 F.R.D. 493, 526 (S.D.N.Y. 1996)) ("Damages in an antitrust class action may be determined on a classwide, or aggregate, basis, . . . where the [evidence] . . . provide[s] a means to distribute damages to injured class members in the amount of their respective damages."). "The use of aggregate damages calculations is well established in federal court and implied by the very existence of the class action mechanism itself." *In re Pharm. Indus. Average Wholesale Price Litig.,* 582 F.3d 156, 197–98 (1st Cir. 2009).[4]

For all of these reasons, certification of indirect purchaser cases is common *See, e.g.*, *In re Nexium Antitrust Litig.*, 777 F.3d 9, 14 (1st Cir. 2015) (affirming certification of a nationwide class of indirect purchasers pursuing claims "under the antitrust and consumer protection laws of 24 states and the District of Columbia"); *In re Flonase Antitrust Litig.*, 284 F.R.D. 207, 216 (E.D. Pa. 2012) (certifying a class of indirect purchasers and noting "[a]lthough Indirect Purchasers assert [four different] state law claims of monopolization, [unfair and deceptive trade practices], and unjust enrichment, proof of the essential elements of these claims will be common across the class and focused on [defendant's] behavior, not that of the individual class members"); *In re Wellbutrin XL Antitrust Litig.*, 282 F.R.D. 126, 137 (E.D. Pa. 2011) (certifying an indirect purchaser class which asserted claims "under the law of six different states").

Defendants preview arguments that they will make in response to the class certification motion yet to be filed. None are persuasive. Defendants' assertions of market complexity ring hollow. Courts have certified antitrust class action cases even where the markets at issue are far more complex, the products more varied, with pricing processing that were far more convoluted

---

[4] Even where there is "a need to conduct individualized analysis to determine which plaintiffs were injured and how much in damages they should receive, [it] does not negate the significant common and predominant legal and factual questions that will have been resolved". *In re Lidoderm Antitrust Litig.*, No. 14-md-2521-WHO, 2017 WL 679367, at *1 (N.D. Cal. Feb. 21, 2017).

than those prevailing here. *See, e.g.*, *Lidoderm*, 2017 WL 679367, at *16-18 (certifying indirect purchaser class in case also involving rebates and rejecting defendant's argument that the amount of overcharge damages needed to be proportioned between third party payors and consumers); *Kleen Prods. LLC v. International Paper Co.*, 831 F.3d 919, 925 (7th Cir. 2016) (individual customer negotiations do not preclude class certification or common impact); *aff'd sub nom*, 831 F.3d at 928-29 ("Even for transactions where prices were negotiated individually or a longer term contract existed, the district court found, reasonably, that the starting point for those negotiations would be higher if the market price for the product was artificially inflated.").

Defendants' argument that Plaintiffs' inclusion of scholastic cheerleading and cheerleading camps somehow renders common impact and harm impossible is also unpersuasive. Plaintiffs alleged that the Cheer Competitions Market is a single, nationwide market as Varsity competitions host frequently host both All-Star and School Cheer teams. Compl. ¶ 165. Whether a class member indirectly purchased Varsity products and services through a school or All-Star gym is irrelevant as they are essentially different vendors of products in the same markets. *See* Compl. ¶ 166. Similarly, neither potential differences in the combinations or quantities purchased or utilized by class members nor the exact mechanisms by which they indirectly paid for these products or services is relevant to the validity of the class. Plaintiffs alleged all indirect payors of all the products and services included in the Relevant Markets (and thus purchased by class members) are affected due to Defendants' common scheme. Defendants' speculations ignore controlling precedent that Rule 23(b)(3) does not require that each member of a class suffer exactly the same injury as the named class representative, only that the proposed class is "sufficiently cohesive to warrant adjudication by representation." *Amgen Inc.*, 568 U.S. at 469.

Defendants miss the point when they argue that the fact that some class members participate in Varsity's All-Star and scholastic loyalty programs means that they received some type of benefit. As alleged, these programs create barriers to entry and reduce competition, in conjunction with other aspects of the scheme. Compl. ¶¶ 183-88, 199-01, 214-16. That some may not participate in these programs does not eliminate their anticompetitive effects. The anticompetitive nature of these practices is itself a common question and will likely be the subject of factual and expert witness testimony. Moreover, the fact that a class member participated in these programs, or cheer itself, is no more relevant than whether an indirect purchaser purchases a price-fixed product. If the price of that product is higher than it would have been but for the anticompetitive conduct, the plaintiffs have been injured and are entitled to redress for the injury. Their choice to purchase the product does not justify the anticompetitive acts nor ameliorate the damages incurred. Defendants' conclusory statements that members of the proposed classes whose gyms or schools chose to participate in those programs "benefitted from doing so" are not only vague but completely lacking in factual support, and contrary to Plaintiffs' allegations.[5] Defendants assert impossibility of class certification of indirect payors based on Varsity's system of bids because some supposedly "received the benefit of participating" in events are likewise unavailing. Defendants' repetition of these bald assertions

---

[5] It is "widely recognized" that "a class will often include persons who have not been injured . . . ." *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 678 F.3d 409, 420 (6th Cir. 2012) ("[e]ven if some class members have not been injured by the challenged practice, a class may nevertheless be appropriate") (citation and internal quotation marks omitted), *vacated*, 133 S. Ct. 1722 (2013), *reinstated*, 722 F.3d 838 (6th Cir. 2013), *cert. denied*, 134 S. Ct. 1277 (2014); *see Ruiz Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1136 (9th Cir. 2016) ("even a well-defined class may inevitably contain some individuals who have suffered no harm as a result of a defendant's unlawful conduct"); *In re Restasis (Cyclosporine Ophthalmic Emulsion) Antitrust Litig.*, 335 F.R.D. 1, 16 (E.D.N.Y. 2020) ("Circuit Courts in other circuits have also accepted that class certification does not require proof that all class members are injured.").

with no support from the factual record does not satisfy Defendants' burden to show that Plaintiff will be unable to demonstrate Plaintiffs' position nor that proposed class definitions are legally impermissible.

Furthermore, all the cases Defendants cite in support of their position were decided with the benefit of a fully briefed motion for class certification unlike here. *See* MTS at 7.[6] Accordingly, Defendants' attacks on predominance are best analyzed on a full record, after Plaintiffs have had an opportunity to conduct discovery, including expert discovery.

     **ii.**     **Plaintiffs Being Indirect Purchasers Does Not Render Harm by Common Proof Legally Impossible.**

Given the nature of the claims asserted, certification of indirect purchaser cases is common. In all of such cases, goods or services were passed through a chain of distribution before being sold to consumers, the indirect purchasers. Because the focus is on the proof of Defendants' wrongful conduct, and the common nature of that proof, the fact that the claims arise under state law is of no moment. *See, e.g., In re Nexium Antitrust Litig.*, 777 F.3d 9, 14 (1st Cir. 2015) (affirming certification of a nationwide class of indirect purchasers pursuing claims "under the antitrust and consumer protection laws of 24 states and the District of Columbia"); *In re Flonase Antitrust Litig.*, 284 F.R.D. 207, 216 (E.D. Pa. 2012) (certifying a class of indirect purchasers and noting "[a]lthough Indirect Purchasers assert [four different] state law claims of monopolization, [unfair and deceptive trade practices], and unjust enrichment, proof of the essential elements of these claims will be common across the class and focused on [defendant's] behavior, not that of the individual class members"); *In re Wellbutrin XL Antitrust Litig.*, 282 F.R.D. 126, 137 (E.D. Pa. 2011) (certifying an indirect purchaser class which asserted claims

---

[6] *Rikos v. Procter & Gamble Co.*, 799 F.3d 497, 524 (6th Cir. 2015) reflects the need for consideration of class certification on a fully developed record as it includes a discussion of plaintiffs' proposed damages model.

"under the law of six different states"); *In re Pharm. Indus. Average Wholesale Price Litig.*, 233 F.R.D. 229, 230-31 (D. Mass. 2006) (certifying four subclasses of end-payors, where each subclass brought claims against a different defendant for violation of consumer protection laws of 41 states).

### 3. Plaintiffs Properly Alleged a Nationwide Damages Class Under Tennessee Law.

Plaintiffs bring claims under the Tennessee Trade Practices Act ("TTPA"), on behalf of a Nationwide Damages Class. [7] Compl. ¶¶ 30, 239-245, 257-266. Defendants claim Tennessee law cannot be applied to transactions outside the state as a matter of law. Not so. In *Freeman Indus., LLC v. Eastman Chem. Co.,* 172 S.W.3d 512, 517 (Tenn. 2005), the Tennessee Supreme Court held the statute did not "prohibit recovery to indirect purchasers who are non-residents of Tennessee." Under *Freeman*, the Court is to apply the "substantial effects" test under which the court "must decide whether the alleged anticompetitive conduct affects Tennessee trade or commerce to a substantial degree." *Id.* at 523. The law of Tennessee can be applied with respect to claims for purchases outside of Tennessee where the claims emanated from wrongdoing in Tennessee. *See In re Skelaxin (Metaxalone) Antitrust Litig.,* 299 FRD 555, 586 (E.D. Tenn. 2014) ("Tennessee had the most significant relationship with the case regardless of where the injury occurred."); *Hataway v. McKinley*, 830 S.W.2d 53, 60 (Tenn. 1992) (applying Tennessee law even though the injury occurred in Arkansas). What is more, "[t]he place of domicile of the parties and the place where the conduct occurred is relevant, to be sure." *See Skelaxin,* 299 FRD at 587.

---

[7] TTPA prohibits "arrangements, contracts, or agreements, by and between its agents and subagents, which tend to lessen full and free competition in the sale of all such articles manufactured and imported into the state." Tenn. Code § 47-25-101.

Here, as Plaintiffs have alleged, each of the Varsity Defendants, as well as USASF, have their principal place of business in Memphis, Tennessee, where they also organized, operated, and managed cheer competitions and camps and manufactured and sold cheer apparel. Compl. ¶¶ 16-19. Defendant Webb, former CEO of Varsity, is also a resident of Memphis, Tennessee. Compl. ¶ 20. Plaintiffs further alleged that Tennessee is where Defendants' illegal scheme and conspiracy was conceived and implemented, and where Defendants have committed overt acts in furtherance of their scheme. Compl. ¶¶ 241, 243. Thus, Tennessee—of all the States—has the most significant relationship with the case. It is also the state with the most significant aggregation of contacts to the claims at issue. Tennessee clearly has a compelling interest in the enforcement of its laws with respect to companies and individuals who are residents and citizens of the State. *Id.*

It is settled that the law of a single state can be applied to a nationwide class. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 814 (1985) (approving nationwide class under state law where choice of law comports with due process requirements of notice and the right to opt out) (c*iting Allstate Insurance Co. v. Hague*, 449 U.S. 302, 312-13 (1981) (application of law of forum state is permissible where there is "a significant contact or significant aggregation of contacts, creating state interests, such that [the] choice . . . is neither arbitrary nor fundamentally unfair.")). Plaintiffs' allegations of fact are not only sufficient to set forth Defendants' anticompetitive scheme but also link the factual basis of the complaint directly and fundamentally with the State of Tennessee.

*Skelaxin* denied the application of Tennessee law under the Tennessee choice of law on a fully briefed motion for class certification. 299 F.R.D. 555 at 585–88. As the *Skelaxin* court recognized, the application of the choice of law rules depends on the facts and circumstances of

PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO STRIKE
CLASS ALLEGATIONS

the case. *Id.* at 585. Here, in contrast, there is an even stronger argument for the application of Tennessee law given the number of Defendants based in the forum and the fact that the anti-competitive conduct was conducted in Tennessee. *Skelaxin* is also distinguishable because of the class definition. The proposed class in *Skelaxin*, unlike here, was "defined specifically to exclude any plaintiffs who operated a business in Tennessee; the only state the Indirect Purchasers do not represent is Tennessee" which was also inconsistent with the indirect purchasers' argument. Also, only one of the alleged conspirators was headquartered in Tennessee unlike here where most conspirators are. *Id.* [8]

Plaintiffs' allegations of Defendants' scheme also demonstrate "considerable factual overlap" regardless of the state that class members share with respect to resolution of Defendants' liability. *See Pilgrim*, 660 F.3d at 947. Defendants' conduct was generally nationwide in scope and did not differentiate on the basis of residency. What happened in Tennessee happened everywhere. Their anticompetitive conduct would operate the same way in every state, obviating the need to engage in the sort of state-by-state analysis that would have been required in *Pilgrim*. *Id.* Tennessee district courts have denied motions to strike on this same basis. *See, e.g.*, *Fishon*, 2020 WL 6826733, at *14 (finding *Pilgrim* not controlling "because the

---

[8] *Pilgrim v. Universal Health Card, LLC*, 660 F.3d 943 (6th Cir. 2011) is likewise inapposite. The plaintiffs there purported to represent a nationwide class that was injured because of false advertising in violation of the Ohio Consumer Sales Practices Act and common law unjust enrichment. *Id.* at 945. The Sixth Circuit affirmed the striking of class allegations on the basis that it would be impossible to establish predominance. *Id.* at 946-48. The court noted that there was evidence that the program at issue satisfied fifteen percent of consumers and rested on the fact that the program did not operate the same way in every state and the plaintiffs suffered distinct injuries as a result. *Id.* at 948-49. Here, the anticompetitive conduct emanated from Tennessee and applied throughout the United States without geographic distinction.

potential class members here allegedly suffered the same overpayment injury regardless of where they may have purchased" the product).[9]

### 4. Having an Alternative State Law Damages Class Does Not Defeat Predominance.

Plaintiffs' claims in the alternative provide proper notice to Defendants that Plaintiffs *may* move for class certification under the laws of other states is of no moment. Indeed, courts routinely certify class alleging antitrust violations under the laws of individual states. Each of the state antitrust statutes invoked by Plaintiffs mirrors the federal antitrust laws, contains a federal harmonization provision, or has been interpreted in harmony with federal law. *See* Appendix No. 1 attached hereto. The same elements that would determine whether Defendants are ultimately liable for their anticompetitive conduct under federal law is the same under state law.[10]

### C.   Plaintiffs Properly Alleged a Fed. R. Civ. P. 23(b)(2) Class.

Rule of Civil Procedure 23(b)(2) states that a class action may be maintained if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." As discussed above, Defendants' conduct alleged here to have harmed Plaintiffs' and class members can be evaluated without reference to individual circumstances because, taking the Plaintiffs' allegations as true, Defendants did not make individualized inquiries into which

---

[9] The *Fishon* court denied defendants' motion to strike plaintiffs' nationwide class allegations as premature, also noting that "[i]n any event, given the 'under no set of circumstances' standard for striking class allegations at the pleading stage, the Court finds that the viability of Plaintiffs' proposed nationwide class is better addressed in the context of a motion to certify under Rule 23 after discovery is completed." *Id.*

[10] Class representatives are not required for every state. *See, e.g.*, *Hospital Auth. of Metro. Gov't of Nashville & Davidson Cty. v. Momenta Pharms.,* 333 F.R.D. 390, 414 (M.D. Tenn. 2019) (rejecting the contention that class representatives were required for every state where indirect purchaser claims were asserted and finding that state class representatives could adequately protect absent class members in those states because the antitrust claims were similar).

discounts, rebates, or bids were provided to some and not others and instead conducted their scheme systematically on Plaintiffs and class members as a whole.

### D.  Plaintiffs Have Article III Standing to Seek Relief on Behalf of the Proposed Classes.

Defendants' claim that the proposed classes have "many members" who lack standing is misguided. MTS at 17-18. First, as alleged, each of the named plaintiffs indirectly paid Varsity for various Cheer competitions and camps and paid for apparel and suffered economic harm as a result. *See* Compl. ¶¶ 13-15. Plaintiffs further allege that Defendants' scheme is continuing, as are the injuries and damages suffered by class members. Compl. ¶¶ 29-31, 163, 217, 234-36. This is prototypical antitrust injury and sufficient to establish standing under Article III of the Constitution. As the Sixth Circuit has made clear, "once an individual has alleged a distinct and palpable injury to himself, he has standing to challenge a practice even if the injury is of a sort shared by a large class of possible litigants. Once his standing has been established, whether a plaintiff will be able to represent the putative class, including absent class members, depends solely on whether he is able to meet the additional criteria encompassed in Rule 23 of the Federal Rules of Civil Procedure." *Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410, 423 (6th Cir. 1998).

### E.  The Class Definitions Can Later Be Amended by Plaintiffs and the Court.

Granting Defendants' motion to strike would surely prejudice Plaintiffs and absent class members because discovery is just beginning, the parties have not conducted any depositions, and Plaintiffs have not been afforded the opportunity to present expert testimony on many key issues. Plaintiffs have not had the opportunity to develop the factual record and present a thorough class certification motion.

Defendants' attacks on class allegations at this early stage also overlook Rule 23's flexibility, including the discretion provided this Court to later modify and mold a class that meets Rule 23's requirements, and to conform it to the evidence. *See, e.g.*, *Powers v. Hamilton Cty. Pub. Def. Comm'n*, 501 F.3d 592, 619 (6th Cir. 2007) (district courts have broad discretion to modify class definitions, so the district courts' multiple amendments merely showed that the court took seriously its obligation to make appropriate adjustments to the class definition as the litigation progressed.").

## IV.   CONCLUSION

For the foregoing reasons, Plaintiffs request that the Court deny Defendants' motion to strike Plaintiffs' class allegations in its entirety. Alternatively, should the Court find any claim to be insufficiently pled at this juncture, Plaintiffs respectfully request leave to amend. *See, e.g.,* Fed. R. Civ. P. 15(a)(2) (leave to amend should be freely given "where justice so requires."); *Rikos v. Procter & Gamble Co*., No. 11-cv-226, 2012 WL 641946, at *3 (S.D. Ohio Feb. 28, 2012) (granting leave to amend); *Sanders v. Apple Inc*., 672 F. Supp. 2d 978, 991 (N.D. Cal. 2009) (same).

Dated: April 15, 2021                    By:_____/s/ Joseph R. Saveri_____
                                              Joseph R. Saveri

                                         Joseph R. Saveri*
                                         Steven N. Williams*
                                         Kevin E. Rayhill*
                                         Elissa A. Buchanan*
                                         Anna-Patrice Harris*
                                         **JOSEPH SAVERI LAW FIRM, LLP**
                                         601 California Street, Suite 1000
                                         San Francisco, California 94108
                                         Telephone: (415) 500-6800
                                         Facsimile:  (415) 395-9940
                                         Email:  jsaveri@saverilawfirm.com
                                                  swilliams@saverilawfirm.com
                                                  krayhill@saverilawfirm.com
                                                  eabuchanan@saverilawfirm.com
                                                  aharris@saverilawfirm.com

                                         Van Turner (TN Bar No. 22603)
                                         **BRUCE TURNER, PLLC**
                                         2650 Thousand Oaks Blvd., Suite 2325
                                         Memphis, Tennessee 38118
                                         Telephone: (901) 290-6610
                                         Facsimile: (901) 290-6611
                                         Email: vturner@bruceturnerlaw.net

                                         Daniel E. Gustafson
                                         Daniel C. Hedlund
                                         Daniel J. Nordin
                                         Ling S. Wang
                                         **GUSTAFSON GLUEK PLLC**
                                         Canadian Pacific Plaza
                                         120 South Sixth Street, Suite 2600
                                         Minneapolis, MN 55402
                                         Telephone: (612) 333-8844
                                         Facsimile: (612) 339-6622
                                         Email: dgustafson@gustafsongluek.com
                                                  dhedlund@gustafsongluek.com
                                                  dnordin@gustafsongluek.com
                                                  lwang@gustafsongluek.com

PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO STRIKE
CLASS ALLEGATIONS

Richard M. Paul III*
Sean R. Cooper*
**PAUL LLP**
601 Walnut, Suite 300
Kansas City, Missouri 64106
Telephone: (816) 984-8100
Email: rick@paulllp.com
       sean@paulllp.com

*Admitted pro hac vice*

*Attorneys for Individual and Representative
Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on April 15, 2021, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all attorneys of record.

Dated: April 15, 2021                     By: _____*/s/ Joseph R. Saveri*_____
                                                          Joseph R. Saveri