**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

| | |
|---|---|
| **JESSICA JONES**, **MICHELLE VELOTTA**, and **CHRISTINA LORENZEN** on Behalf of Themselves and All Others Similarly Situated, | Case No. 2:20-cv-02892-SHL-cgc |
| **Plaintiffs,** | **JURY DEMAND** |
| v. | |
| **VARSITY BRANDS, LLC; VARSITY SPIRIT, LLC; VARSITY SPIRIT FASHION & SUPPLIES, LLC; U.S. ALL STAR FEDERATION, INC.; JEFF WEBB; CHARLESBANK CAPITAL PARTNERS LLC; and BAIN CAPITAL PRIVATE EQUITY,** | |
| **Defendants.** | |

**PLAINTIFFS' OPPOSITION TO DEFENDANT JEFF WEBB'S MOTION TO DISMISS**

# TABLE OF CONTENTS

I.      INTRODUCTION AND SUMMARY OF ALLEGATIONS ..............................................1

II.     LEGAL STANDARD ..........................................................................................................1

III.    ARGUMENT ........................................................................................................................2

        A.      Plaintiffs Have Sufficiently Pled Claims Under Federal Antitrust Law and
                Under State Law. .......................................................................................................2

        B.      Webb is Personally Liable for His Participation in the Exclusionary
                Scheme.......................................................................................................................4

        C.      Plaintiffs Sufficiently Plead a Claim Under Tennessee State Law.........................7

        D.      Plaintiffs' Sufficiently Allege State Antitrust Claims. ............................................8

                1.      Plaintiffs' Complaint Alleges Intrastate Effects. ..........................................9

                2.      Plaintiffs' Claims Under Arkansas, Illinois, and Utah Antitrust
                        Laws Prevail Because Plaintiffs May Bring Causes of Action in
                        Federal Court Under the State Statutes.......................................................11

        E.      Plaintiffs Successfully Allege State Consumer Protection Claims........................14

        F.      Plaintiffs' Unjust Enrichment Claims are Pled with Sufficient Facts...................17

        G.      Plaintiffs' Adequately Plead a Claim for Declaratory and Injunctive
                Relief.......................................................................................................................19

IV.     CONCLUSION...................................................................................................................20

# TABLE OF AUTHORITIES

**Cases**                                                                      **Page(s)**

*Abriq v. Hall*,
   295 F. Supp. 3d 874 (M.D. Tenn. 2018)....................................................................18, 19

*Am. Steel Co. v. Am. Steel & Wire Co.*,
   244 F. 300 (D. Mass. 1916) ..................................................................................................4

*Arandell Corp. v. Centerpoint Energy Servs., Inc.*,
   900 F.3d 623 (9th Cir. 2018) ................................................................................................6

*Arthur S. Langenderfer, Inc. v. S.E. Johnson Co.*,
   917 F.2d 1413 (6th Cir. 1990) ..............................................................................................3

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)..............................................................................................................5

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007)..............................................................................................................5

*Carpet Grp. Int'l v. Oriental Rug Importers Ass'n, Inc*,
   256 F. Supp. 2d 249 (D.N.J. 2003) ......................................................................................7

*Carver v. Bunch*,
   946 F.2d 451 (6th Cir. 1991) ................................................................................................2

*Chase Manhattan Bank, N.A. v. CVE, Inc.*,
   206 F. Supp. 2d 900 (M.D. Tenn. 2002)........................................................................18, 19

*Conergy AG v. MEMC Elec. Materials, Inc.*,
   651 F. Supp. 2d 51 (S.D.N.Y. 2009)..................................................................................10

*Copperweld Corp. v. Independence Tube Corp.*,
   467 U.S. 752 (1984)..............................................................................................................6

*Deaktor v. Fox Grocery Co.*,
   332 F. Supp. 536 (W.D. Pa.1971)........................................................................................4

*Deutscher Tennis Bund v. ATP Tour, Inc.*,
   610 F.3d 820 (3d Cir. 2010)..................................................................................................5

*Directv, Inc. v. Treesh*,
   487 F.3d 471 (6th Cir. 2007) ................................................................................................1

*ES Dev., Inc. v. RWM Enterprises, Inc.*,
   939 F.2d 547 (8th Cir. 1991) ................................................................................................7

*Freeman Indus., LLC v. Eastman Chem. Co.*,
   172 S.W.3d 512 (Tenn. 2005) *(*Tennessee act "prohibits arrangements that
   decrease competition or affect the prices of goods even if those goods arrived
   in Tennessee through interstate commerce."*)* ................................................................. 10, 18

*FTC v. Cement Inst.*,
   333 U.S. 683 (1948) ........................................................................................................... 14

*FTC v. Indiana Fed'n of Dentists*,
   476 U.S. 447 (1986) ........................................................................................................... 14

*Gean v. Hattaway*,
   330 F.3d 758 (6th Cir. 2003) ............................................................................................ 15

*Griffiths v. Blue Cross and Blue Shield of Alabama*,
   *147 F. Supp. 2d 1203 (N.D. Ala. 2001)* ............................................................................. 9

*Higbie v. Kopy-Kat, Inc.*,
   391 F. Supp. 808 (E.D. Pa. 1975) ...................................................................................... 4

*Hospital Authority of Metropolitan Government of Nashville v. Momenta
      Pharmaceuticals, Inc.*,
   *353 F. Supp. 3d 678 (M.D. Tenn. 2018)* ..................................................................... 10, 18

*Illinois Brick Co. v. Illinois*,
   431 U.S. 720 (1977) ............................................................................................................. 4

*In re Asacol Antitrust Litig.*,
   *2016 WL 4083333 (D. Mass. July 20, 2016)* .................................................................. 10

*In re Auto. Parts Antitrust Litig., No. 12–md–02311*,
   *2013 WL 2456612 (E.D. Mich. June 6, 2013)* ........................................................ 10, 12, 15

*In re Automotive Parts Antitrust Litig.*,
   50 F. Supp. 3d 836 (E.D. Mich. 2014) ....................................................................... 12, 17

*In re Brand Name Prescription Drug Antitrust Litig.*,
   123 F.3d 599 (7th Cir. 1997) .............................................................................................. 9

*In re Brocade Communications Sys., Inc. Derivative Litig.*,
   615 F. Supp. 2d 1018 (N.D. Cal. 2009) ............................................................................ 17

*In re Broiler Chicken Antitrust Litig.*,
   *2017 WL 5574376 (N.D. Ill. Nov. 20, 2017)* ............................................................ 9, 10, 11

*In re Broiler Chicken Antitrust Litig.*,
   290 F. Supp. 3d 772 (N.D. Ill. 2017) ................................................................................ 13

*In re Cardizem CD Antitrust Litig.*,
   105 F. Supp. 2d 618 (E.D. Mich. 2000) ........................................................................9, 10

*In re Cast Iron Soil Pipe And Fittings Antitrust Litig.*,
   No. 1:14–md–2508, 2015 WL 5166014 (E.D. Tenn. June 24, 2015) ......................................18

*In re Chocolate Confectionary Antitrust Litig.*,
   602 F. Supp. 2d 538 (M.D. Pa. 2009) ...........................................................................12, 15

*In re Dairy Farmers of America, Inc. v. Cheese Antitrust Litig.*,
   767 F. Supp. 2d 880 (N.D. Ill. Feb. 4, 2011) .........................................................................5

*In re DDAVP Indirect Purchaser Antitrust Litig.*,
   *903 F. Supp. 2d 198 (S.D.N.Y. 2012)* ...................................................................................10

*In re Dig. Music Antitrust Litig.*,
   *812 F. Supp. 2d 390 (S.D.N.Y. 2011)* ...................................................................................10

*In re EpiPen*,
   336 F. Supp. 3d at 1311-12 .........................................................................................13, 17

*In re Flash Memory Antitrust Litig.*,
   643 F. Supp. 2d 1133 (N.D. Cal. 2009) ................................................................................15

*In re Generic Pharmaceutical Pricing Antitrust Litig.*,
   368 F. Supp. 3d 814 (E.D. Penn. 2019) ...............................................................................14

*In re Intel Corp. Microprocessor Antitrust Litig.*,
   *496 F. Supp. 2d 404 (D. Del. 2007)* ....................................................................................10

*In re K-Dur Antitrust Litig.*,
   338 F. Supp. 2d 517 (D.N.J. 2004) .....................................................................................17

*In re Liquid Aluminum Sulfate Antitrust Litig., No.: 16-md-2687*,
   *2017 WL 3131977 (D.N.J. July 20, 2017)* ...............................................................10, 13, 15

*In re Lithium Ion Batteries Antitrust Litig.*,
   No. 13-MD-2420 YGR, 2014 WL 4955377 (N.D. Cal. Oct. 2, 2014) ....................................12

*In re New Motor Vehicles Canadian Exp. Antitrust Litig.*,
   350 F. Supp. 2d 160 .........................................................................................................12

*In re Opana ER Antitrust Litig.*,
   162 F. Supp. 3d 704 (N.D. Ill. 2016) ...................................................................................13

*In re Plavix Indirect Purchaser Antitrust Litig.*,
   No. 1:06-cv-226, 2011 WL 335034 (S.D. Ohio Jan. 31, 2011) .......................................15, 16

*In re Processed Egg Prods. Antitrust Litig.*,
  851 F. Supp. 2d 867 (E.D. Pa. 2012)..............................................................................10, 15

*In re Se. Milk Antitrust Litig.*,
  555 F. Supp. 2d 934 (E.D. Tenn. 2008) ............................................................................4, 12

*In re Solodyn (Minocycline Hydrochloride) Antitrust Litig., No. 14–md–02503,*
  2015 WL 5458570 (D. Mass. Sept. 16, 2015) ..................................................................10, 15

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
  586 F. Supp. 2d 1109 (N.D. Cal. 2008) ...............................................................................15

*Ky.- Tenn. Light & Power Co. v. Nashville Coal Co.*,
  37 F. Supp. 728 (W.D. Ky. 1941), *aff'd sub nom. Fitch v. Ky.-Tenn. Light &*
  *Power Co.*, 136 F.2d 12 (6th Cir. 1943) ..................................................................................4

*Lisk v. Lumber One Wood Preserving, LLC*,
  792 F.3d1331 (11th Cir. 2015) (Alabama class action bar does not "abridge
  enlarge or modify" substantive rights and must yield to Rule 23, which does
  not impose comparable limitations on the use of class actions) ...............................................13

*Meyers v. Bayer AG*,
  735 N.W.2d 448 (Wis. 2007) ...............................................................................................11

*Monarch Marking Sys. v. Duncan Parking Meter Maintenance Co.*,
  No. 82 C 2599, 1986 WL 3625 (N.D. Ill. Mar. 13, 1986) .........................................................5

*Murphy Tugboat Co. v. Shipowners & Merchants Towboat Co.*,
  467 F. Supp. 841 (N.D. Cal. 1979) .........................................................................................5

*Nelson v. Monroe Reg'l Med. Ctr.*,
  925 F.2d 1555 (7th Cir. 1991) ................................................................................................3

*Olstad v. Microsoft Corp.*,
  284 Wis. 2d 224 (2005) ........................................................................................................11

*PNC Multifamily Cap. Institutional Fund XXVI Ltd. P'ship v. Bluff City Cmty.*
  *Dev. Corp.*,
  387 S.W.3d 525 (Tenn. Ct. App. 2012) .................................................................................20

*Quinn–Hunt v. Bennett Enters.*,
  122 Fed. App'x 205 (6th Cir. 2005) ......................................................................................15

*Ricco v. Potter*,
  377 F.3d 599 (6th Cir. 2004) ...................................................................................................1

*Rikos v. Procter & Gamble Co.*,
  No. 11-cv-226, 2012 WL 641946 (S.D. Ohio Feb. 28, 2012) ..................................................20

*Sanders v. Apple Inc.*,
   672 F. Supp. 2d 978 (N.D. Cal. 2009) ...................................................................20

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*,
   559 U.S. 393 (2010)..............................................................................................11

*Sheet Metal Workers Local 441 Health and Welfare Plan v. GlaxoSmithKline PLC*,
   737 F. Supp. 2d 380 (E.D. Pa. 2010) ....................................................9, 10, 12, 15

*Smith v. N. Michigan Hospitals, Inc.*,
   703 F.2d 942 (6th Cir. 1983) ...................................................................................6

*Spahr v. Leegin Creative Leather Prods.*,
   No. 2:07-CV-187, 2008 WL 3914461 (E.D. Tenn. Aug. 20, 2008) ..........................8

*Tampa Elec. Co. v. Nashville Coal Co.*,
   365 U.S. 320 (1961)................................................................................................4

*Trau-Med of Am., Inc. v. Allstate Ins. Co.*,
   71 S.W.3d 691 (Tenn. 2002)....................................................................................6

*United States v. Gypsum*
   438 U.S. 422 (1978)................................................................................................5

*United States v. Syufy Enters.*,
   903 F.2d 659 (9th Cir. 1990) ...................................................................................3

*Yakubek v. Rex*,
   No. 91–3541, 1992 WL 107064 (6th Cir. May 15, 1992) .........................................8

## Statutes

Arkansas Deceptive Trade Practices Act, Ark. Code Ann. §§ 4-88-101.......................12

Fed. R. Civ. P.
   8...........................................................................................................................8
   12.....................................................................................................................1, 20
   15.........................................................................................................................20
   23.....................................................................................................................11, 13

Sherman Act, 15 U.S.C. § 2 ............................................................................... *passim*

Tennessee Trade Practices Act, Tenn. Code Ann. §§ 47-25-101 ............................8, 14

Utah Code Ann. § 76-10-3109(1)(a)..........................................................................13

## I.      INTRODUCTION AND SUMMARY OF ALLEGATIONS

Jeff Webb's ("Webb") motion to dismiss misstates Plaintiffs' Complaint and misapplies the relevant law. Under correct legal standard, the Complaint is more than sufficient to state claims against Webb arising from his central role in the anticompetitive conduct Plaintiffs allege.

Plaintiffs allege that Webb, acting in concert with USASF and others, conspired to raise, fix, and stabilize the prices associated with Competitive Cheer. Plaintiffs' Complaint "Compl." ¶ 1. This was done by forming a scheme to create an illegal monopoly in order to dominate Competitive Cheer in the United States. *Id.* As a result, cheer athletes and their parents, friends, and family have indirectly paid higher prices for Cheer Competitions, Cheer Apparel, and Cheer Camps than they would have paid in a competitive marketplace absent the anticompetitive Exclusionary Scheme. *Id.* ¶ 227.

The Complaint sets forth extensive allegations regarding the role of Webb in the Scheme. Webb was founder, president, and Chairman of Varsity's Board of Directors. Compl. ¶ 20. In particular, during that time, Varsity under the direction of Webb: acquired rival event, camp, and apparel producers, Compl. ¶¶ 67- 69, 81, 88-92, 98, 99; entered into exclusive agreements with All Star Gyms and schools, Compl. ¶¶58, 60 142-52, 58, 60; and controlled and directed USASF and other rule-making organizations, Compl. ¶¶ 104-116.

## II.     LEGAL STANDARD

"[A] Rule 12(b)(6) motion should not be granted unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Ricco v. Potter,* 377 F.3d 599, 602 (6th Cir. 2004) (quotation omitted). In evaluating a motion to dismiss, the Court should accept Plaintiffs' allegations as true, draw all reasonable inferences in Plaintiffs' favor, and determine whether the allegations plausibly state a claim for relief. *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). Webb has the burden of

showing that Plaintiffs failed to state a claim for relief. *Carver v. Bunch,* 946 F.2d 451, 454–55

(6th Cir. 1991).[1]

## III.  ARGUMENT

### A.  Plaintiffs Have Sufficiently Pled Claims Under Federal Antitrust Law and Under State Law.

Webb asserts with minimal discussion and zero evidence that Plaintiffs have failed to

allege facts in support of claims under the Sherman Act. Jeff Webb Motion to Dismiss

("WMTD") at 6. Webb bases this argument on many of the same arguments that were raised in

Varsity's Motion to Dismiss. In their Complaint, Plaintiffs allege that Defendants conspired to

raise, fix, and stabilize the prices charged associated with Competitive Cheer. Defendants did so

by creating an illegal monopoly and dominating competitive cheer in the United States.

Complaint ¶ 1. Plaintiffs assert a claim for injunctive relief under the federal antitrust laws.

Complaint ¶¶ 231-38. Plaintiffs seek claims for damages and other monetary relief under state

law, including state antitrust law, state consumer protection law, the law of Tennessee and under

equitable principles of unjust enrichment. Complaint, ¶¶ 239-268. As discussed in Plaintiffs'

Opposition to Varsity's Motion to Dismiss ("MTD") and incorporated herein by reference,

Plaintiffs have sufficiently pled each element of the violations of the antitrust claims, including

the elements of the anticompetitive scheme, antitrust impact, and damages.

Webb argues that Plaintiffs have failed to plead adequately the anticompetitive conduct

and relevant markets. This is incorrect. Plaintiffs' Complaint plausibly alleges facts regarding the

relevant markets in which Varsity acquired and maintains monopoly power. Plaintiffs'

Opposition to Varsity's MTD Sections II.A-B. Plaintiffs further allege the nature of the

---

[1] The pleading standard is discussed more fully in the Opposition to Varsity's Motion to Dismiss, Section II., which is incorporated by reference.

anticompetitive Exclusionary Scheme, the purpose and effect of which was to raise prices and to exclude competition. Plaintiff's Opposition to Varsity's MTD Sections II.C-D.

Webb's repeated attempt to recharacterize and isolate Varsity's acquisitions and illegal discounting—which he directed in his role as Chief Executive Officer—as not constituting anticompetitive conduct fails. Plaintiffs allege that Defendants, including Webb, pursued a scheme of acquiring and impairing their competitors and rivals within the Cheer Competition and Related Cheer Camp and Cheer Apparel Markets. Compl. ¶¶ 87-102. This part of the scheme had the purpose and effect of higher prices and eliminating actual and potential rivals. Compl. ¶¶ 41, 228. Such allegations are sufficient to establish the anticompetitive conduct necessary to support a claim under the Sherman Act. *See Arthur S. Langenderfer, Inc. v. S.E. Johnson Co*., 917 F.2d 1413, 1439-40 (6th Cir. 1990) ("acquisitions by defendant of quarry sites coupled with the use of lengthy non-competition agreements and other circumstances did foreclose production and efficient use of such quarries and limestone by [plaintiff] and others as competitors of defendant"); *Nelson v. Monroe Reg'l Med. Ctr.*, 925 F.2d 1555, 1565 (7th Cir. 1991) ("a marketplace rendered non-competitive by its merger with a competitor is an injury that can be said to be directly caused by an absence of competition, the kind of injury the antitrust laws were intended to prevent and redress").[2] Furthermore, despite Webb's attempts to mischaracterize, Plaintiffs' claims are not an illegally bundled discounting claim.[3] Rather, Plaintiffs allege that the

---

[2] Webb cites to *United States v. Syufy Enters*., 903 F.2d 659, 673 (9th Cir. 1990) in support of their position that the alleged acquisitions were not anticompetitive. WMTD at 9. This case is inapposite to the case at hand as the court in *Syufy* held that defendant's actions did not injure competition because as conceded by plaintiff, there were no barriers to entry and defendant did not have the power to control prices or exclude competition. That is not the case here. Plaintiffs' Complaint details significant barriers of entry both natural and imposed by Defendants' scheme as well as the power to control or exclude competition. Compl. ¶¶ 179-86, 195-201, 212-16.
[3] The fact that some of the conduct might not be anticompetitive in other circumstances or justified as matters of business tactics is of no moment in considering the sufficiency of the

rebates, combined with the other elements of the scheme, had the practical effect of securing an exclusive contractual arrangement, and thereby excluding competitors and qualifying as exclusive dealing. *See Tampa Elec. Co. v. Nashville Coal Co.*, 365 U.S. 320, 326 (1961).

### B.   Webb is Personally Liable for His Participation in the Exclusionary Scheme.

It is long-settled that individuals may be held personally liable in private actions brought under the antitrust laws. *See, e.g., Higbie v. Kopy-Kat, Inc.*, 391 F. Supp. 808, 810 (E.D. Pa. 1975) (officer personally liable for participation in antitrust violation or for ratification of violation committed by others); *Deaktor v. Fox Grocery Co.,* 332 F. Supp. 536, 542 (W.D. Pa.1971), *aff'd*, 475 F.2d 1112 (3d Cir. 1973) (where antitrust conspiracy asserted by plaintiffs was among several entities and persons, individual defendant who was officer and director of defendant corporation could be held individually liable). This rule rests upon longstanding principles of tort liability and agency law. *See Ky.- Tenn. Light & Power Co. v. Nashville Coal Co.,* 37 F. Supp. 728, 738 (W.D. Ky. 1941) ("it is a well-established rule of principal and agent that an agent is liable for his own tortious acts even though performed within the scope of his employment"), *aff'd sub nom. Fitch v. Ky.-Tenn. Light & Power Co.*, 136 F.2d 12 (6th Cir. 1943); *Am. Steel Co. v. Am. Steel & Wire Co.*, 244 F. 300, 302 (D. Mass. 1916) (officer who joined attempt to monopolize is liable for any injury that results from that tortious act).[4]

---

totality of the allegations. *In re Se. Milk Antitrust Litig.,* 555 F. Supp. 2d 934, 943 (E.D. Tenn. 2008) (allegations viewed in isolation may appear to have legitimate business justification, but allegations viewed as a whole support plausible inference of conspiracy).

[4] Liability of corporate officers is consistent with the purposes of the antitrust laws to deter anticompetitive conduct, to deprive violators of their unlawfully obtained gains, and to compensate those injured by the antitrust violation. *See Illinois Brick Co. v. Illinois*, 431 U.S. 720, 746 (1977); *see* Gregory Walker, *The Personal Liability of Corporate Officers in Private Actions Under the Sherman Act: Murphy Tugboat in Distress*, 55 FORDHAM L. REV. 909, 910, 912-13 & nn. 16, 17 (1987) ("Walker").

Pleading an antitrust violation only "requires a complaint with enough factual matter (taken as true) to suggest that an agreement was made," and "to raise a reasonable expectation that discovery will reveal evidence of illegal agreement." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556–57 (2007). If the allegations directly satisfy an element of the claim, no inference is necessary. If an inference is necessary, the inference must be plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).

A corporate officer is liable whenever she orders, authorizes, or knowingly participates in effecting the illegal contract, combination, or conspiracy. *Monarch Marking Sys. v. Duncan Parking Meter Maintenance Co.*, No. 82 C 2599, 1986 WL 3625, at *2 (N.D. Ill. Mar. 13, 1986) (quoting *United States v. Wise*, 370 U.S. 405, 416 (1962)). In other words, liability is imposed on "all officers who have a responsible share in the proscribed transaction." *Id.* (quoting *Wise*, 370 U.S. at 409). As the long time CEO of Varsity, Webb was not only responsible for but directed the conduct of Varsity, including its participation in the alleged anticompetitive scheme.[5] Webb had "a responsible share" in the prohibited conduct. *Id.*

Plaintiffs' Complaint alleges Webb's personal participation in the anticompetitive conduct. Webb was actively involved in decisions to acquire rival event producers, apparel

---

[5] *Murphy Tugboat Co. v. Shipowners & Merchants Towboat Co.*, 467 F. Supp. 841, 853 (N.D. Cal. 1979), held that individuals are individually liable if the evidence shows that the individual participated in acts that are "inherently wrongful," which Plaintiffs allege. To the extent *Murphy Tugboat* requires proof of specific intent for officers, this is inconsistent with prior antitrust law which requires no such *mens rea*. It would also appear to require a higher level of intent than required to prove a criminal violation of the antitrust law. *See United States v. Gypsum* 438 U.S. 422 (1978); *Deutscher Tennis Bund v. ATP Tour, Inc.*, 610 F.3d 820, 833 n.8 (3d Cir. 2010) (questioning the persuasive value of *Murphy Tugboat* and pointing instead to the decision in *Monarch Mktg.*); *In re Dairy Farmers of America, Inc. v. Cheese Antitrust Litig.*, 767 F. Supp. 2d 880, 908 (N.D. Ill. Feb. 4, 2011) (noting *Monarch Mktg.* expressly rejected the *Murphy Tugboat* standard). *See* Walker, *supra* note 4, at 921-22. Moreover, because the anticompetitive conduct is per se unlawful, Webb's participation is "inherently wrongful." *Murphy Tugboat*, 467 F. Supp. at 853.

manufacturers, and camp providers. He was an early investor in cheer governing bodies and played an integral role in setting the policies for cheerleading. Webb has always presented himself as the face of Varsity Brands. Compl. ¶ 118. Webb admitted that the part of the scheme was to "become an extracurricular partner to the schools so that we not only sell products . . .." Compl. ¶ 56. Webb committed overt acts in furtherance of the scheme. Compl. ¶107 ("In 2005, USASF acquired the NACCC. Under the agreement, NACCC was to become the 'rules committee' of USASF in perpetuity. The meeting was run by Jeff Webb in his boardroom in Memphis with no other USASF board members present."). Webb directed the acquisition strategy against rivals. Compl. ¶ 98 ("[b]asically [Webb] wanted me out the market.").

The assertion that Webb is incapable of conspiring with Varsity misconstrues Plaintiffs' Complaint and is without merit. *Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752 (1984), applies to corporate parents and subsidiaries. If it were to apply to a corporation and its officers—and there is no authority for that—the logical corollary of that doctrine would apply, rendering the company and its officer a single unit for purposes of antitrust law. *See Arandell Corp. v. Centerpoint Energy Servs., Inc.,* 900 F.3d 623, 630 (9th Cir. 2018) ("where there is a substantial common ownership . . . individual firms function as an economic unit and are generally treated as a single entity"). *See also Trau-Med of Am., Inc. v. Allstate Ins. Co.*, 71 S.W.3d 691, 705 (Tenn. 2002) (citing *Copperweld*, 467 U.S. at 770-71 n.6) (dismissing plaintiff's claim of intracorporate civil conspiracy for failure to satisfy the plurality requirement necessary to establish an actionable conspiracy claim.). *See also* Plaintiff's Opposition to Charlesbank and Bain's Motion to Dismiss, Section III.B, and incorporated herein by reference.[6]

---

[6]Webb's citation to *Smith v. N. Michigan Hospitals, Inc.*, 703 F.2d 942, 951 (6th Cir. 1983) is of no consequence as Plaintiffs do not allege a conspiracy between employees.

Further, the authority Webb cites does not support his claims. Webb cites to *ES Dev., Inc. v. RWM Enterprises, Inc.*, 939 F.2d 547, 554 (8th Cir. 1991) for the proposition that "[T]he Sherman Act does not impart liability for actions by an individual, regardless of their anticompetitive motive or effect, unless **the individual possess monopoly power**". WMTD at 11. There is a glaring omission from the key language Webb quotes. In truth, the court stated, "Appellants also contend that the members of the Alliance did no more than independently exercise individual legal rights. It is true that the Sherman Act does not impart liability for actions by an individual, regardless of their anticompetitive motive or effect, unless **the individual entity possesses monopoly power**." *Id.* (emphasis added) (citing *Pumps & Power Co. v. Southern States Indus., Inc.*, 787 F.2d 1252, 1256 (1986)). Because, like here, the entity—Varsity—possessed market power, the court found for plaintiffs and determined that individuals could be held liable. *Id.* at 555-60. Moreover, despite Plaintiffs' contentions, *Carpet Grp. Int'l v. Oriental Rug Importers Ass'n, Inc.* expressly permits individual liability in conspiracy claims stating, "individuals who are incapable themselves of monopolizing a market, may be found liable for intentionally joining others to do so." 256 F. Supp. 2d 249, 283 (D.N.J. 2003).

### C.   Plaintiffs Sufficiently Plead a Claim Under Tennessee State Law.

Webb asserts that Plaintiffs' claim under the Tennessee Trade Practices Act, Tenn. Code Ann. §§ 47-25-101, *et seq.* ("TTPA") fails because Plaintiffs have not alleged that Tennessee trade or commerce has been effected to a substantial degree. WMTD at 12. This claim is without merit. As discussed in Plaintiffs' Opposition to Defendants' Motion to Strike, Section II.C, and incorporated herein by reference, Plaintiffs allege that the anticompetitive scheme of the company Webb oversaw was conceived and implemented in Tennessee, where Varsity and USASF were and are headquartered. Webb was and is a resident of Tennessee. Compl. ¶¶ 16-20. Further, Plaintiffs allege overt acts in furtherance of their scheme were committed in Tennessee;

where Varsity organized, operated, and managed cheer competitions and camps and manufactured cheer apparel. Compl. ¶¶ 241,243. These are more than sufficient to establish sufficient Tennessee contacts and effects to state a claim under TTPA.

Webb's citation to *Spahr v. Leegin Creative Leather Prods*., No. 2:07-CV-187, 2008 WL 3914461, 14 (E.D. Tenn. Aug. 20, 2008) is misplaced. In that case, the court dismissed plaintiffs' claim because they failed to analyze resale price maintenance agreements under the rule of reason and therefore their failure to allege relevant markets and anticompetitive effects was fatal to their claims. *Id.* Here, on the other hand, Plaintiffs have adequately pled facts showing monopoly power in the relevant markets, as discussed in Plaintiffs' Opposition to Varsity's Motion to Dismiss, Sections III.B-C., and incorporated herein by reference.

### D.   Plaintiffs' Sufficiently Allege State Antitrust Claims.[7]

Webb's assertion that Plaintiffs' omplaint does not comply with Rule 8(a) is misplaced. Plaintiffs' allegations provide Webb "with a fair share" of what Plaintiffs are complaining about and allow Webb to determine whether there is a legal basis for recovery. Plaintiffs meet Rule 8(a)'s requirements by setting forth the facts underlying their antitrust claim and identifying the state statutes that provide the remedy sought.[8] Webb does not contest Plaintiffs' allegations that a nexus exists between the antitrust violations except as those allegations relate to Plaintiffs' claims under the laws of Alabama, Arizona, the District of Columbia, Mississippi, Nevada, New York, North Carolina, South Dakota, West Virginia, and Wisconsin. Webb also only identifies Alaska, Arkansas, Colorado, Illinois, and Utah as states where the antitrust laws would allegedly

---

[7] Plaintiffs note that Charlesbank Capital Partners and Bain Capital Private Equity do not challenge the state law claims in this case and thus concede to the sufficiency of these claims.
[8] By pleading the legal theory supporting their claim, Plaintiffs more than meet the requirements of Rule 8. *See Yakubek v. Rex*, No. 91–3541, 1992 WL 107064, at *2 (6th Cir. May 15, 1992) ("Federal pleading is by statement of claim, not by legal theory.").

fail due to limitations on the private right to action. Thus, Webb concedes that Plaintiffs properly plead claims under the laws of the remaining states: California, Hawaii, Idaho, Iowa, Kansas, Maine, Maryland, Michigan, Minnesota, Nebraska, New Hampshire, New Mexico, North Dakota, Oregon, and Rhode Island.

### 1. Plaintiffs' Complaint Alleges Intrastate Effects.

It is well-settled that allegations of a nationwide antitrust violation satisfy "intrastate" statutory requirements when combined with allegations that the impact of the conduct was felt within each state.[9] The anticompetitive **conduct** (*e.g.*, the unlawful agreements or *monopolization*) need not occur within each state so long as the adverse **effects** are felt within each state. Moreover, the alleged effects need not occur entirely or even predominately within a state to meet the requirement.[10] Here, Plaintiffs allege that Webb's anticompetitive conduct: (i) deprived the class members in each identified state of the benefits of competition from less expensive competitions, apparel, equipment, camps, insurance and accommodations, and (ii) caused class members in each identified state to pay artificially inflated supracompetitive prices. Compl. ¶¶ 31, 34. These allegations satisfy the statutory requirements of each of the states referenced in Webb's motion.

**Alabama:** *Griffiths v. Blue Cross and Blue Shield of Alabama, 147 F. Supp. 2d 1203, 1220-21 (N.D. Ala. 2001).*

---

[9] *See, e.g., Broiler Chicken,* 2017 WL 5574376, at *29 ("In light of the obvious fact that Broilers are purchased in substantial numbers throughout the United States, these allegations plausibly establish "substantial" intra state effects[.]"); *Sheet Metal Workers Local 441 Health and Welfare Plan v. GlaxoSmithKline PLC*, 737 F. Supp. 2d 380, 393- 402 (E.D. Pa. 2010).

[10] *See In re Brand Name Prescription Drug Antitrust Litig.*, 123 F.3d 599, 613 (7th Cir. 1997) (noting that there are "virtually no sales" anywhere in the United States that are wholly intrastate); *In re Cardizem CD Antitrust Litig.*, 105 F. Supp. 2d 618, 665-70 (E.D. Mich. 2000) (rejecting argument that state antitrust statutes only apply to conduct that is "wholly or predominately intrastate in character"); *Aggrenox,* 94 F. Supp. 3d at 253.

**Arizona:** *See Sheet Metal Workers Local 441 Health & Welfare Plan v. GlaxoSmithKline, PLC,* 737 F.Supp.2d 380, 403 (E.D. Pa. 2010); *Hospital Authority of Metropolitan Government of Nashville v. Momenta Pharmaceuticals, Inc.,* 353 F. Supp. 3d 678, 695 (M.D. Tenn. 2018).

**District of Columbia:** *See In re Broiler Chicken Antitrust Litig.,* 2017 WL 5574376, at *29 (N.D. Ill. Nov. 20, 2017); *In re Solodyn (Minocycline Hydrochloride) Antitrust Litig.,* No. 14–md–02503, 2015 WL 5458570, at *16 (D. Mass. Sept. 16, 2015); *In re Auto. Parts Antitrust Litig.,* No. 12–md–02311, 2013 WL 2456612, at *20 (E.D. Mich. June 6, 2013) ("*Auto Parts I*"); *In re Intel Corp. Microprocessor Antitrust Litig.,* 496 F. Supp. 2d 404, 412 (D. Del. 2007) ("*Microprocessors*").

**Mississippi:** *See, e.g., Aggrenox,* 94 F. Supp. 3d at 253; *Solodyn,* 2015 WL 5458570, at *16. *See also Auto Parts I,* 2013 WL 2456612, at *20-21; *Microprocessor,* 496 F. Supp. 2d at 411-14; *In re Processed Egg Prods. Antitrust Litig.,* 851 F. Supp. 2d 867, 887-891 (E.D. Pa. 2012).

**Nevada:** *See Solodyn,* 2015 WL 5458570, at *16; *In re Asacol Antitrust Litig.,* 2016 WL 4083333, at *13-14 (D. Mass. July 20, 2016); *In re Liquid Aluminum Sulfate Antitrust Litig.,* No.: 16-md-2687, 2017 WL 3131977, at *24–25 (D.N.J. July 20, 2017).

**New York:** *See Aggrenox,* 94 F. Supp. 3d at 253; *Solodyn,* 2015 WL 5458570, at *16; *Auto Parts I,* 2013 WL 2456612, at *20; *Asacol,* 2016 WL 4083333, at *13-14; *Liquid Aluminum,* 2017 WL 3131977, at *24-25. In *Conergy AG v. MEMC Elec. Materials, Inc.,* 651 F. Supp. 2d 51, 61-62 (S.D.N.Y. 2009), unlike here, the plaintiff failed to make any allegations of impact on New York commerce or sales to New York customers.

**North Carolina:** *See Auto Parts I,* 2013 WL 2456612, at *20; *In re DDAVP Indirect Purchaser Antitrust Litig.,* 903 F. Supp. 2d 198, 231 (S.D.N.Y. 2012); *Wellbutrin,* 737 F. Supp. 2d at 400; *Liquid Aluminum,* 2017 WL 3131977, at *24-25.

**South Dakota:** *See Auto Parts I,* 2013 WL 2456612, at *20; *Microprocessors,* 496 F. Supp. 2d at 414; *In re Dig. Music Antitrust Litig.,* 812 F. Supp. 2d 390, 407–08 (S.D.N.Y. 2011) ("*Digital Music*"); *Liquid Aluminum,* 2017 WL 3131977, at *24-25.

**Tennessee:** *See In re Cardizem CD Antitrust Litig.,* 105 F. Supp. 2d 618, 666-67 (E.D. Mich. 2000); *Auto Parts I,* 2013 WL 2456612, at *20; *Liquid Aluminum,* 2017 WL 3131977, at *24-25. Webb's cited case agrees that allegations of intrastate effects are sufficient to state a claim. *See Freeman Indus., LLC v. Eastman Chem. Co.,* 172 S.W.3d 512, 522-24 (Tenn. 2005) (Tennessee act "prohibits arrangements that decrease competition or affect the prices of goods even if those goods arrived in Tennessee through interstate commerce.").

**West Virginia:** *See Solodyn,* 2015 WL 5458570, at *16; *Auto Parts I,* 2013 WL 2456612, at *20; *Microprocessors,* 496 F. Supp. 2d at 414; *Wellbutrin,* 737 F. Supp. 2d at 397; *Asacol,* 2016 WL 4083333, at *13-14; *Liquid Aluminum,* 2017 WL 3131977, at *24-25.

*Wisconsin: See Olstad v. Microsoft Corp.*, 284 Wis. 2d 224, 262 (2005) (conduct that "substantially affects" Wisconsin and "has impacts in this state" establishes a claim under the statute, "even if the illegal activity resulting in those impacts occurred predominantly or exclusively outside this state."). *See also Meyers v. Bayer AG*, 735 N.W.2d 448, 456-65 (Wis. 2007); *Broiler Chicken*, 2017 WL 5574376, at *29; *Aggrenox*, 94 F. Supp. 3d at 253.

### 2. Plaintiffs' Claims Under Arkansas, Illinois, and Utah Antitrust Laws Prevail Because Plaintiffs May Bring Causes of Action in Federal Court Under the State Statutes.

Webb contends that the antitrust laws of Alaska, Arkansas, Colorado, Illinois and Utah limit the ability of plaintiffs to bring private causes of action under the state statutes[11] However, the statutory language of Arkansas, Illinois, and Utah is consistent with *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 408 (2010). In that case, in his plurality opinion, Justice Scalia explained that in diversity actions, federal procedural rules control over conflicting state rules. Thus, state class action bars, such as the New York rule at issue in that case, must yield to Fed. R. Civ. P. 23, which does not impose comparable limitations. *Id.*

Rule 23 controls here even under the reasoning set forth in Justice Stevens' *Shady Grove* concurrence, in which he agreed that Rule 23 should govern over the New York rule, but carved out an exception under which a state rule would be preserved in federal court if it is "part of a State's framework of substantive rights or remedies." *Shady Grove*, 559 U.S. at 4419 (Stevens, J., concurring). As discussed in further detail below, indirect purchasers have the right to seek damages under the Arkansas, Illinois and Utah antitrust statutes. *See Aggrenox*, 2016 WL 4204478, at *6 ("any indirect purchaser procedurally blocked from participation in a class action would still have the same remedy in an individual action"). The state class action bar does not alter that *substantive* right; rather, it limits the procedural mechanisms indirect purchasers may employ to seek damages in state court. *Id.*

---

[11] Plaintiffs do not dispute Webb's assertions as to Alaska and Colorado.

### a. Arkansas

Plaintiffs allege that Webb's anticompetitive conduct violates Arkansas state antitrust laws. Comp. ¶ 248.D. Arkansas's antitrust statute does not provide a private right of action, but the law is clear that indirect purchasers may plead antitrust claims under the Arkansas Deceptive Trade Practices Act, Ark. Code Ann. §§ 4-88-101, et seq. ("ADTPA"). *See, e.g., Sheet Metal Workers Local 441 Health & Welfare Plan v. GlaxoSmithKline, PLC*, 737 F. Supp. 2d 380, 405 (E.D. Pa. 2010) ("[The] allegation that GSK engaged in a scheme designed to maintain its monopoly over the Wellbutrin SR market and prevent generic manufacturers from entering the market does fall under the catch all provision in [Ark. Code Ann. § 4-88-107] subsection [(a)](10)."); *see also In re Lithium Ion Batteries Antitrust Litig.*, No. 13-MD-2420 YGR, 2014 WL 4955377, at *22 (N.D. Cal. Oct. 2, 2014) (ADTPA's prohibition of "unconscionable trade practices" includes antitrust harm).[12]

### b. Illinois

Indirect purchasers have the right to seek damages under Illinois' antitrust statute. 740 Ill. Comp. Stat. 10/7(2). *See also Aggrenox,* 2016 WL 4204478, at *6 ("any indirect purchaser procedurally blocked from participation in a class action would still have the same remedy in an individual action"). The state class action bar does not prevent plaintiffs from bringing class action claims, but instead only limits the procedural mechanisms they may employ to seek damages in state court. *See In re Lithium Ion Batteries Antitrust Litig.*, No.: 13–MD–2420, 2014

---

[12] The following cases also upheld ADTPA indirect purchaser antitrust claims: *In re Auto. Parts Antitrust Litig.*, 50 F. Supp. 3d 836, 859 (E.D. Mich. 2014); *In re Aftermarket Filters Antitrust Litig.*, No. 08 C 4883, 2009 WL 3754041, at *9 (N.D. Ill. Nov. 5, 2009); *In re Chocolate Confectionary Antitrust Litig.*, 602 F. Supp. 2d 538, 583 (M.D. Pa. 2009) (accord); *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, 516 F. Supp. 2d 1072, 1109 (N.D. Cal. 2007); *In re New Motor Vehicles Canadian Exp. Antitrust Litig.*, 350 F. Supp. 2d 160, 178 (D. Me. 2004).

WL 4955377, at *21 (N.D. Cal. Oct. 2, 2014) (Illinois' class action bans "are procedural, not substantive, and… application of Rule 23 to them would not modify any substantive right."); *In re EpiPen*, 336 F. Supp. 3d at 1311-12 (same); *In re Broiler Chicken Antitrust Litig.*, 290 F. Supp. 3d 772, 817 (N.D. Ill. 2017) (same); *Liquid Aluminum,* 2017 WL 3131977, at *25 (same). Accordingly, Rule 23 governs here. *See Lisk v. Lumber One Wood Preserving, LLC*, 792 F.3d1331, 1336 (11th Cir. 2015) (Alabama class action bar does not "abridge enlarge or modify" substantive rights and must yield to Rule 23, which does not impose comparable limitations on the use of class actions).

### c. Utah

Utah's antitrust statute allows "[a] person who is a citizen of this state or a resident of this state" and who has been injured to bring claims. Utah Code Ann. § 76-10-3109(1)(a). Here, the class definition encompasses indirect purchasers who indirectly paid Varsity. Compl. ¶ 31. Thus, "members of the putative class presumably include Utah citizens and residents," satisfying the statutory standing requirement. *See Liquid Aluminum*, 2017 WL 3131977, at *28 (quoting *Asacol*, 2016 WL 4083333, at *13) (named plaintiffs who are not Utah citizens or residents may assert claims on behalf of absent class members who are).

Webb cites to *In re Opana ER Antitrust Litig.*, 162 F. Supp. 3d 704 (N.D. Ill. 2016) to argue for dismissal of Plaintiffs' claims under the Utah antitrust statute. In *Opana*, the court found that failing to include named plaintiffs who were residents of Utah prevented indirect purchasers from bringing claims under Utah antitrust laws. *In re Opana,* 162 F. Supp. 3d at 725. However, in that case, the plaintiffs asserted claims on behalf of residents of Utah, whereas here Plaintiffs bring claims on behalf of Utah "Class members and/or residents." *Id.*; Compl. ¶ 248.

As such, the class definition included in Plaintiffs' Complaint includes indirect purchasers in Utah who directly purchased goods and services from Varsity.

###### E.      Plaintiffs Successfully Allege State Consumer Protection Claims

In their Fourth Claim for Relief, Plaintiffs assert claims for unfair methods of competition and unfair and deceptive acts in violation of state consumer protection law. Complaint ¶¶ 251-256. Plaintiffs are entitled to assert alternative theories of relief deriving from the same operative facts. *See In re Generic Pharmaceutical Pricing Antitrust Litig.*, 368 F. Supp. 3d 814, 840 (E.D. Penn. 2019) (finding that "repackaging" consumer protection claims as antitrust claims did not warrant dismissal and that indirect purchasers could bring consumer protection claims "so long as their allegations are enough to plead the relevant consumer protection violation"). Here, the anticompetitive scheme gives rise to claims not only under state antitrust law but also consumer protection law as well. The acts alleged were unfair, unconscionable and deceptive: exactly the type of conduct that state unfair business practices or consumer protection statutes were designed to prevent. Webb asserts that Plaintiffs fail to plead facts supporting their consumer protection claims and simply recast their antitrust claims. These arguments misread Plaintiffs' Complaint and are premised on a fundamental misconception of the scope of state consumer protection laws.

Many states' consumer protection statutes are modeled on the Federal Trade Commission ("FTC") Act, which encompasses claims based on antitrust violations, and include "harmonization" provisions requiring that the state statutes be interpreted in accordance with the FTC Act. Since the FTC Act prohibits anticompetitive conduct, so too do the state statutes that follow it. *See FTC v. Cement Inst.*, 333 U.S. 683, 694 (1948) ("[A]ll conduct violative of the Sherman Act may likewise come within the unfair trade practice prohibitions of the Trade Commission Act."); *FTC v. Indiana Fed'n of Dentists,* 476 U.S. 447, 454 (1986) ("unfairness" in

the FTC Act encompasses "practices that violate the Sherman Act and the other antitrust laws"). Moreover, state consumer protection statutes typically are interpreted broadly to encompass a wide variety of unlawful conduct, including, inter alia, unfair or unconscionable or deceptive conduct, in the disjunctive. *See, e.g., Auto. Parts*, 2013 WL 2456612, at \*23; *Processed Egg Prods*., 851 F. Supp. 2d at 894; *Wellbutrin*, 737 F. Supp. 2d 380, 406 (E.D. Pa. 2010). Traditional elements of deception-based claims, such as reliance, do not apply to—and, logically, would be a poor fit for—claims that are premised on unfair or unconscionable conduct. Accordingly, Webb's attempt to limit the scope of these statutes to deceptive conduct relied on by consumers should be rejected.[13]

Webb asserts that Plaintiffs have made no effort to plead how the facts alleged in the Complaint give rise to claims under those statutes. Not so. Plaintiffs allege with particularity the unlawful facts. These include unfair rebating provisions, concealing the exclusionary agreements and thereby fraudulently concealing the extent of the scheme, exploiting USASF to unfairly favor Varsity, and acts of unfair counter programming. Complaint, ¶ 252. Plaintiffs then specify the statutes violated.[14]

Webb relies on two distinguishable cases. In *In re Plavix Indirect Purchaser Antitrust Litig.*, a generic drug delayed entry case, the plaintiffs' injury was hypothetical and the result of

---

[13] *See In re TFT-LCD (Flat Panel) Antitrust Litig.,* 586 F. Supp. 2d 1109, 1125-26 (N.D. Cal. 2008); *Auto Parts I,* 2013 WL 2456612, at \*25; *Processed Eggs Prods.,* 851 F. Supp. 2d at 898; *In re Chocolate Confectionary Antitrust Litig.*, 602 F. Supp. 2d 538, 583 (M.D. Pa. 2009); *Liquid Aluminum,* 2017 WL 3131977, at \*25; *In re Flash Memory Antitrust Litig*., 643 F. Supp. 2d 1133, 1156-57 (N.D. Cal. 2009); *Solodyn,* 2015 WL 5458570, at \*17 (D. Mass. Sept. 16, 2015).
[14] Citing to the statute giving rise to a claim is not even required at the pleading stage. *See Gean v. Hattaway,* 330 F.3d 758, 765 (6th Cir. 2003) ("[t]he form of the complaint is not significant if it alleges facts on which relief can be granted, even if it fails to categorize correctly the legal theory giving rise to the claim"); *see also Quinn–Hunt v. Bennett Enters.*, 122 Fed. App'x 205, 207 (6th Cir. 2005) ("The failure in a complaint to cite a statute, or to cite the correct one, in no way affects the merits of a claim.").

the generic company's lack of access to the valid patent and subsequent injunctions. No. 1:06-cv-226, 2011 WL 335034, at *5 (S.D. Ohio Jan. 31, 2011). As a result, the court determined that because the alleged injury was from a lawful patent and the generic company's lack of access to it, this injury was not the type of injury the antitrust laws were designed to prevent. *Id.* The court therefore dismissed the federal and state antitrust claims. Unlike *Plavix*, however, the Plaintiffs' injury in the case at hand is not hypothetical. Plaintiffs sufficiently allege an injury directly resulting from the anticompetitive scheme alleged. Moreover, the consumer protection claims, while sharing the same facts as the antitrust claims, stand independently in their allegations against Webb.

For similar reasons, Webb's reliance on *In re Tamoxifen Antitrust Litig.* is also unpersuasive. In *In re Tamoxifen Antitrust Litig.*, the defendants' settlement of a patent infringement claim included an agreement by one of the defendants not to commercially market its generic drug product in order to prevent triggering an exclusivity period. 277 F. Supp. 2d 121, 125 (E.D.N.Y. 2003). The plaintiffs alleged their injury arose from this settlement agreement and the fact that the exclusivity period—and thus a more competitive market—would have been triggered but for the settlement. *Id.* at 127. The court ultimately determined there was no injury because no manufacturer ever received approval to market the drug at issue. *Id.* at 136. As in *Plavix*, the plaintiffs' injury claims were hypothetical and caused not by anticompetitive actions, but by the inability of the generic companies to design around the relevant patent. *Id.* at 137.[15]

---

[15] *Aggrenox* is inapposite because plaintiffs in Aggrenox listed the statutes and failed to make any effort to allege how the acts giving rise to the antitrust claims also violated state consumer protection or unfair business practice laws.

**F.      Plaintiffs' Unjust Enrichment Claims are Pled with Sufficient Facts**

Webb does not dispute that Plaintiffs have pleaded claims for unjust enrichment under Tennessee law. Instead, Webb asserts the Plaintiffs have failed to allege sufficient facts to state a claim as to him.

Webb misconstrues the law. Generally, "unjust enrichment" is the characterization of the result or effect of a failure to make restitution of or for the property or benefits received under such circumstances as to give rise to a legal or equitable obligation to account for the benefit received.[16] *In re Automotive Parts Antitrust Litig.*, 50 F. Supp. 3d 836, 862 (E.D. Mich. 2014) ("when stripped to its essence, a claim of unjust enrichment requires IPPs to allege sufficient facts to show that Defendants received a benefit, and under the circumstances of the case, retention of the benefit would be unjust"). The obligation to do justice in these circumstances rests upon all persons, natural and artificial. If one obtains the money or property of others without authority, the law will compel restitution. *Id.* ("An unjust enrichment claim is used to prevent a defendant from 'profit[ing] by his own wrong.'" (citing Restatement (Third) of Restitution & Unjust Enrichment § 3)).

At the pleading stage, Plaintiffs are not required to allege specific facts regarding the amount of benefit Webb ultimately received or how much he was unjustly enriched. *In re Brocade Communications Sys., Inc. Derivative Litig.*, 615 F. Supp. 2d 1018, 1049 (N.D. Cal. 2009) (finding that specific facts as to how much profit the defendant—an individual and former CEO of a defendant company—received "were not necessary at the pleading stage and are issues

---

[16] *See also In re EpiPen*, 336 F. Supp. 3d at 1345 ("[G]enerally, an unjust enrichment claim requires a plaintiff to allege that (1) he or she conferred a benefit on defendant, and (2) defendant's retention of the benefit under the circumstances is unjust."). Federal courts routinely sustain indirect purchaser claims for unjust enrichment. *See, e.g., Auto Parts II*, 29 F. Supp. 3d 982 (sustaining indirect purchasers' unjust enrichment claims in the District of Columbia and 28 states); *see also In re K-Dur Antitrust Litig.*, 338 F. Supp. 2d 517, 544 (D.N.J. 2004).

to be resolved after discovery.") (quoting *In re Zoran Corp. Derivative Litig.*, 511 F. Supp. 2d 986, 1018 (N.D.Cal.2007)); *In re Cast Iron Soil Pipe And Fittings Antitrust Litig.*, No. 1:14–md–2508, 2015 WL 5166014, at *35 (E.D. Tenn. June 24, 2015) (denying dismissal of unjust enrichment claims on the ground that they were conclusory). Additionally, courts have declined dismissal of unjust enrichment claims in indirect purchaser antitrust actions "where the claims arise out of the alleged antitrust violations that resulted in overpayment." *Hospital Auth. of Metro. Gov't. of Nashville v. Momenta Pharm.*, 353 F. Supp. 3d 678, 696 (M.D. Tenn. 2018).

Plaintiffs adequately allege Webb's key executive and management position at Varsity, his control over the company, and ways his actions allowed Varsity to carry out anticompetitive behavior. As the Complaint alleges, Webb was the founder and Chairman of the board of Directors of Varsity Brands, LLC, as well as Varsity's president. Compl. ¶ 20. The Complaint makes clear that during the relevant time period, he exercised control over all decisions about: (a) acquisitions of rival cheerleading event producers, apparel manufacturers and cheer camp providers; (b) pricing and policies for Cheer Competitions, Cheer Apparel, and Cheer Camps; and (c) investing in and conspiring with Cheer Competition rule-making organizations. Compl. ¶ 20. Webb's position at Varsity, and the roles he played in effectuating major financial decisions for Varsity as part of those positions, allowed him to obtain substantial benefits from the anticompetitive scheme Plaintiffs allege.

Additionally, the cases on which Webb relies are inapposite. In each, the defendants were not individuals. *See Freeman Indus., LLC v. Eastman Chemical Co.*, 172 S.W.3d 512, 516 (Tenn. 2005) (defendants were corporations); *Abriq v. Hall*, 295 F. Supp. 3d 874, 877 (M.D. Tenn. 2018) (defendant was a local government entity); *Chase Manhattan Bank, N.A. v. CVE, Inc.*, 206 F. Supp. 2d 900, 903 (M.D. Tenn. 2002) (defendant was a corporation).

To support the argument that the connection between Plaintiffs and Webb is "too remote," Webb relies on *Abriq v. Hall*, an immigration case wherein the plaintiff alleged the defendant, a local government entity and contractor, received funds from the federal government to house immigration detainees. 295 F. Supp. 3d at 882. The court found that plaintiff could not state an unjust enrichment claim because plaintiff did not confer a benefit on the contractor. *Id.* These facts in *Abria* could not be more different from the facts alleged here. The *Abria* plaintiff presents a confusing legal argument stating he conferred a benefit on the jail where he was detained, whereas here, Plaintiffs have alleged a clear benefit by presenting facts showing they indirectly paid Varsity as part of Varsity's anticompetitive scheme and are now seeking restitution of those ill-gotten payments.

Webb further relies on *Chase* to assert that Plaintiffs' claim should be dismissed because Plaintiffs do not allege claims supporting the assessment of a benefit unjustly held by Webb. The *Chase* case arose from an inadvertent sale of company shares by plaintiff to defendant, and the defendant's subsequent refusal to return the shares. *Chase*, 206 F. Supp. 2d 904. The court declined to find unjust enrichment and stated that even if all the elements had been satisfied, the damages assessment would be "highly speculative" because there was no market for the shares involved and thus no discernable value. *Id.* at 910 n.4. Here, the unjust enrichment does not derive from any inadvertence; indeed, it was the foreseeable and intended consequence of the illegal conduct.

### G. Plaintiffs' Adequately Plead a Claim for Declaratory and Injunctive Relief.

As discussed within Plaintiffs' Opposition to Varsity's Motion to Dismiss, Section III.G and incorporated herein by reference, declaratory relief is proper to prevent future violations as the Scheme is continuing. Similarly, Webb's request to dismiss Plaintiffs' injunctive relief claim against Webb is likewise without merit as Plaintiffs' allege that Webb continues to actively

participate in the Exclusionary Scheme despite no longer holding the position as CEO. Compl. ¶¶ 20, 117-18. Webb's citation to a press release allegedly reflecting Jeff Webb's retirement is irrelevant as it not alleged in Plaintiffs' Complaint. See *PNC Multifamily Cap. Institutional Fund XXVI Ltd. P'ship v. Bluff City Cmty. Dev. Corp.*, 387 S.W.3d 525 (Tenn. Ct. App. 2012) (Motions to dismiss a complaint for failure to state a claim upon which relief can be granted are not favored and are rarely granted in light of the liberal pleading standards contained in the rules of civil procedure. Rules Civ. Proc., Rule 12.02(6).). Indeed, Webb did not request judicial notice. Accordingly, Webb's allegations of retirement must be disregarded.

## IV. CONCLUSION

For the reasons discussed herein, Plaintiffs respectfully request that the Court deny Webb's motion to dismiss. Alternatively, should the Court find any claim to be insufficiently pled at this juncture, Plaintiffs respectfully request leave to amend. *See, e.g.,* Fed. R. Civ. P. 15(a)(2) (leave to amend should be freely given "where justice so requires."); *Rikos v. Procter & Gamble Co.*, No. 11-cv-226, 2012 WL 641946, at *3 (S.D. Ohio Feb. 28, 2012) (granting leave to amend); *Sanders v. Apple Inc.*, 672 F. Supp. 2d 978, 991 (N.D. Cal. 2009) (same).

Dated: April 15, 2021                    By:     */s/ Joseph R. Saveri*
                                      Joseph R. Saveri

Joseph R. Saveri*
Steven N. Williams*
Kevin E. Rayhill*
Elissa A. Buchanan*
Anna-Patrice Harris*
**JOSEPH SAVERI LAW FIRM, LLP**
601 California Street, Suite 1000
San Francisco, California 94108
Telephone: (415) 500-6800
Facsimile:  (415) 395-9940
Email:  jsaveri@saverilawfirm.com
        swilliams@saverilawfirm.com
        krayhill@saverilawfirm.com
        eabuchanan@saverilawfirm.com
        aharris@saverilawfirm.com

Van Turner (TN Bar No. 22603)
**BRUCE TURNER, PLLC**
2650 Thousand Oaks Blvd., Suite 2325
Memphis, Tennessee 38118
Telephone: (901) 290-6610
Facsimile: (901) 290-6611
Email: vturner@bruceturnerlaw.net

Daniel E. Gustafson
Daniel C. Hedlund
Daniel J. Nordin
Ling S. Wang
**GUSTAFSON GLUEK PLLC**
Canadian Pacific Plaza
120 South Sixth Street, Suite 2600
Minneapolis, MN 55402
Telephone: (612) 333-8844
Facsimile: (612) 339-6622
Email: dgustafson@gustafsongluek.com
        dhedlund@gustafsongluek.com
        dnordin@gustafsongluek.com
        lwang@gustafsongluek.com

Richard M. Paul III*
Sean R. Cooper*
**PAUL LLP**
601 Walnut, Suite 300
Kansas City, Missouri 64106
Telephone: (816) 984-8100
Email: rick@paulllp.com
          sean@paulllp.com

*Admitted pro hac vice*

*Attorneys for Individual and Representative
Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on April 15, 2021, I electronically filed the foregoing document with

the Clerk of the Court using the CM/ECF system, which will send notification of such filing to

all attorneys of record.


Dated: April 15, 2021                    By:_____ */s/ Joseph R. Saveri*_____
                                              Joseph R. Saveri