UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE

JESSICA JONES et al.,

        Plaintiffs,

  v.

VARSITY BRANDS, LLC et al.,

        Defendants.

Civ. Action No. 2:20-cv-02892

**REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS OF DEFENDANTS CHARLESBANK CAPITAL PARTNERS, LLC, AND BAIN CAPITAL PRIVATE EQUITY, LP**

# **TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................................1

ARGUMENT ..........................................................................................................................1

I.      Plaintiffs Cite No Allegations to Pierce the Corporate Veil and Make Bain or Charlesbank Vicariously Liable for the Acts of Varsity........................................................................1

II.     *Copperweld* Does Not Create Unlimited Antitrust Liability for a Corporate Parent...........3

III.    There Are No Non-Conclusory Allegations from Which Agency Could Plausibly Be Inferred..................................................................................................................................5

IV.    Successor Liability Theories Are Inapplicable .....................................................................7

V.     Plaintiffs' Reliance on the "Continuing Violation Doctrine" Is Misplaced .........................9

CONCLUSION......................................................................................................................10

# TABLE OF AUTHORITIES

**Federal Cases**

*Alvord-Polk, Inc. v. F. Schumacher & Co.*,
　37 F. 3d 996 (3d Cir. 1994) ................................................................................................6

*Am. Soc'y. of Mech. Eng'rs, Inc. v. Hydrolevel Corp.*,
　456 U.S. 556 (1982) ........................................................................................................6-7

*Arandell v. Centerpoint Energy Services*,
　900 F.3d 623 (9th Cir. 2018) ...........................................................................................3-4

*Ashcroft v. Iqbal*,
　556 U.S. 662 (2009) ...........................................................................................................5

*Baker's Carpet Gallery, Inc. v. Mohawk Indus., Inc.*,
　942 F. Supp. 1464 (N.D. Ga. 1996) ....................................................................................8

*Bell Atl. v. Twombly*,
　550 U.S. 544 (2007) ...........................................................................................................5

*Bud Antle, Inc. v. Eastern Foods, Inc.*,
　758 F.2d 1451 (11th Cir. 1985) ..........................................................................................7

*Coast Cities Truck Sales, Inc. v. Navistar Int'l Transp. Co.*,
　912 F. Supp. 747 (D.N.J. 1995) ..........................................................................................5

*Concord Boat Corp. v. Brunswick Corp.*,
　207 F.3d 1039 (8th Cir. 2000) ..........................................................................................10

*Copperweld Corp. v. Indep. Tube Corp.*,
　467 U.S. 752 (1984) ........................................................................................................3-4

*Corrigan v. U.S. Steel Corp.*,
　478 F.3d 718 (6th Cir. 2007) ..............................................................................................2

*Cupp v. Alberto-Culver USA, Inc.*,
　310 F. Supp. 2d 963 (W.D. Tenn. 2004) .............................................................................2

*EEOC v. G–K–G, Inc.*,
　39 F.3d 740 (7th Cir. 1994) ............................................................................................8-9

*Flake v. Schrader-Bridgeport International, Inc.*,
   538 F. App'x 604 (6th Cir. 2013) .................................................................................... 7-8

*Fletcher v. Atex, Inc.*,
   68 F.3d 1451 (2d Cir. 1995) ............................................................................................ 3

*Garcia v. Kashi Co.*,
   43 F. Supp. 3d 1359 (S.D. Fla. 2014) .............................................................................. 2

*Great Lakes Chem. Corp. v. Monsanto Co.*,
   96 F. Supp. 2d 376 (D. Del. 2000) .................................................................................. 3

*In re Fresh and Process Potatoes Antitrust Litig.*,
   834 F. Supp. 2d 1141 (D. Idaho 2011) ........................................................................ 5, 7

*In re Ins. Brokerage Antitrust Litig.*,
   618 F.3d 300 (3d Cir. 2010) ............................................................................................ 4

*In re Pa. Title Ins. Antitrust Litig.*,
   648 F. Supp. 2d 663 (E.D. Pa. 2009) .............................................................................. 2

*In re Title Ins. Antitrust Cases*,
   702 F. Supp. 2d 840 (N.D. Ohio 2010) ........................................................................... 2

*Lenox MacLaren Surgical Corp. v. Medtronic*,
   847 F.3d 1221 (10th Cir. 2017) ...................................................................................... 4

*Midwestern Mach. Co., Inc. v. Nw. Airlines, Inc.*,
   392 F.3d 265 (8th Cir. 2004) ......................................................................................... 10

*Novatel Commc'ns, Inc. v. Cellular Tel. Supply, Inc.*,
   No. Civ. A. C85-2674A, 1986 WL 798475 (N.D. Ga. Dec. 23, 1986) .......................... 4

*Patin v. Thoroughbred Power Boats Inc.*,
   294 F.3d 640 (5th Cir. 2002) ........................................................................................... 8

*Rohlfing v. Manor Care, Inc.*,
   172 F.R.D. 330 (N.D. Ill. 1997) ...................................................................................... 5

*United States v. Bestfoods*,
   524 U.S. 51 (1998) ........................................................................................................... 2

*Varsity Brands, Inc. v. Star Athletica, L.L.C.*,
   No. 2:10-cv-025808-BBD-cgc, 2011 WL 13097063 (W.D. Tenn. Oct. 31, 2011) ......... 9

*Z Techs. Corp. v. Lubrizol Corp.*,
   753 F.3d 594 (6th Cir. 2014) .............................................................................................. 10

**State Cases**

*Trau-Med of Am., Inc. v. Allstate Ins. Co.*,
   71 S.W.3d 691 (Tenn. 2002) ................................................................................................ 4

# INTRODUCTION

Plaintiffs' response to the motion to dismiss of Charlesbank and Bain confirms two things: (1) the claims as pled against those entities should be dismissed without further delay; (2) Plaintiffs cannot replead to save these claims and the dismissal should be with prejudice.

Plaintiffs concede—as they must—that the only facts alleged about Charlesbank and Bain are that they indirectly owned Varsity at different times and that one or more of their employees are board members of the indirect owners of the actual Varsity entities that Plaintiffs say violated the antitrust laws. This is simply not enough to make Charlesbank or Bain liable for the actions of the downstream Varsity subsidiaries. Presumably sensing this, Plaintiffs argue for a new rule of liability in antitrust cases to the effect that a corporate parent, simply by virtue of ownership, is vicariously liable for the allegedly anticompetitive actions of its downstream subsidiaries. In fact, the cases Plaintiffs cite say exactly the opposite, dooming their opposition.

# ARGUMENT

The essence of Plaintiffs' theory is that an owner is automatically liable for the antitrust violations of the entities it owns, which, if correct, would mean that corporate separation does not exist for antitrust claims. Moreover, to the extent Charlesbank's liability would extend past its sale of a majority interest in the entity that indirectly owned Varsity to Bain while maintaining a seat on that entity's board, a necessary corollary of Plaintiffs' argument is that a director or minority owner of a corporation is automatically liable for an antitrust violation committed by the indirect subsidiaries of that corporation. That is likewise not the law.

I.      **Plaintiffs Cite No Allegations to Pierce the Corporate Veil and Make Bain or Charlesbank Vicariously Liable for the Acts of Varsity**

Plaintiffs' basic argument is that because Charlesbank and then Bain owned Varsity and "profited" from that ownership, they are liable for Varsity's actions. They cite no case that

1

supports that proposition, nor do they respond to the myriad cases that Charlesbank and Bain cited in their opening brief that hold the opposite. *See, e.g.*, *In re Title Ins. Antitrust Cases*, 702 F. Supp. 2d 840, 908 (N.D. Ohio 2010) ("Even viewing Plaintiffs' allegations of 'approval and assent' and 'ownership and control' in a light most favorable to Plaintiffs, as the Court must for the purposes of the pending motion, these allegations amount to nothing more than conduct typical of any parent and subsidiary.") (quotation marks omitted); *In re Pa. Title Ins. Antitrust Litig.*, 648 F. Supp. 2d 663, 687-89 (E.D. Pa. 2009) (dismissing such claims against corporate parent); *see also United States v. Bestfoods*, 524 U.S. 51, 61 (1998) ("It is a general principle of corporate law deeply ingrained in our economic and legal systems that a parent corporation (so-called because of control through ownership of another corporation's stock) is not liable for the acts of its subsidiaries."); *Corrigan v. U.S. Steel Corp.*, 478 F.3d 718, 724-26 (6th Cir. 2007) (same). Where a claim is based on ownership and typical involvement of a parent in a subsidiary, as here, it is dismissed. *See, e.g.*, *Cupp v. Alberto-Culver USA, Inc.*, 310 F. Supp. 2d 963, 973 (W.D. Tenn. 2004) (dismissing claims against corporate parent because "[t]he Court declines to presume that a parent company participates in every decision or action of its subsidiary"); *Garcia v. Kashi Co.*, 43 F. Supp. 3d 1359, 1394-95 (S.D. Fla. 2014) (dismissing claims against corporate parent that were based on actions of subsidiary). Otherwise, the concept of corporate separation would not exist.

      Plaintiffs try to avoid the force of this authority with the comment that "Charlesbank and Bain have never been merely owners." (Pls.' Br. at 3.) In support of that statement, they point to the conclusory allegation in their Complaint that Charlesbank "funded" Varsity's acquisition of rivals. (*Id.*) Nothing in that allegation provides any basis to infer that Charlesbank's "funding" of such acquisitions was any different than any corporate parent's "funding" of the operations of

2

a subsidiary.  Nor do they provide any basis to sweep the financier of an acquisition into an antitrust claim regarding the acquisition.  As to Bain, Plaintiffs point to similar conclusory allegations, but do not address the fact that it would have been impossible for Bain to have "funded" any allegedly anticompetitive acquisition that Varsity made because no such acquisitions are alleged since Bain acquired Varsity in 2018.  (*See* Defs.' Br. at 5.)

Otherwise Plaintiffs merely point to the fact that Charlesbank and Bain have seats on Varsity's parent company's board of directors.  But, again, if that were sufficient to establish vicarious liability for Varsity's actions, corporate separation would be eviscerated.  *See, e.g.*, *Fletcher v. Atex, Inc.*, 68 F.3d 1451, 1460 (2d Cir. 1995) (declining to pierce corporate veil where "a number of [parent's] employees have sat on the [subsidiary] board," parent's approval was required for subsidiary's significant transactions, and funding for subsidiary's operations was managed by parent); *see also Great Lakes Chem. Corp. v. Monsanto Co.*, 96 F. Supp. 2d 376, 391-92 (D. Del. 2000) ("[A] member in an LLC [can] be an active participant in management and still . . . retain limited liability.").  Nor can pointing to Varsity's alleged conduct (*see, e.g.*, Pls.' Br. at 4, citing Compl. ¶ 114) provide a basis for making Charlesbank or Bain liable for it.

**II.** *Copperweld* **Does Not Create Unlimited Antitrust Liability for a Corporate Parent**

Presumably because there are no allegations from which vicarious liability could be established under traditional principles, Plaintiffs ask this Court to create a new rule that a corporate parent is automatically liable for the anticompetitive actions of its subsidiaries.

Plaintiffs assert that the Supreme Court's decision in *Copperweld Corp. v. Indep. Tube Corp.*, 467 U.S. 752, 771 (1984), mandates such unlimited liability, an argument that has been roundly rejected, including by the cases that Plaintiffs themselves cite.  For example, in *Arandell v. Centerpoint Energy Services*, 900 F.3d 623, 633 (9th Cir. 2018), the case on which Plaintiffs principally rely, the Ninth Circuit expressly *rejected* the Plaintiffs' argument, holding that

3

*Copperweld* "does not supply a theory of unbounded vicarious liability for the acts of legally distinct entities." *See also id.* ("*Copperweld* does not support holding a subsidiary liable for the parent's independent conduct.") A plaintiff is "still required to come forward with evidence that each defendant independently participated in the enterprise's scheme, to justify holding that defendant liable as part of the enterprise." *Id.* (quoting *Lenox MacLaren Surgical Corp. v. Medtronic*, 847 F.3d 1221, 1237 (10th Cir. 2017)).

Plaintiffs cite a portion of *Arandell* that related to whether a parent could have a different purpose, intent, or design than its subsidiary (Pls.' Br at 4-6, citing *Arandell*, 900 F.3d at 628-633), which is not at issue here. Plaintiffs ignore the portion of the opinion that addressed what is at issue here: whether an entity is necessarily liable for the allegedly anticompetitive acts of a "commonly-owned-but-legally-distinct" entity despite the bedrock principle of corporate separation, *see id.* at 633. Another case on which Plaintiff relies, *Lenox*, held likewise: "Nothing in our prior discussion [(i.e., the portion of the opinion on which Plaintiffs rely)] should be read to suggest that a corporation can be held liable under § 2 for the anticompetitive conduct of one or more related entities, merely by virtue of its place in the same corporate family." *Lenox*, 847 F.3d at 1237; *see also In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 341 n. 44 (3d Cir. 2010) ("Contrary to plaintiffs' suggestion, however, it does not follow from *Copperweld* that subsidiary entities are automatically liable under § 1 for any agreements to which the parent is a party. As a matter of well-settled common law, a subsidiary is a distinct legal entity and is not liable for the actions of its parent or sister corporations simply by dint of the corporate relationship.").[1]

---

[1] Plaintiffs' other cases are inapposite for similar or other reasons. In *Trau-Med of Am., Inc. v. Allstate Ins. Co.*, 71 S.W.3d 691, 705 (Tenn. 2002), the question was whether attorneys had acted as agents of an insurance company, not whether one corporation was liable for the actions of another. *Novatel Commc'ns, Inc. v. Cellular Tel. Supply, Inc.*, No. Civ. A. C85-2674A, 1986 WL 798475 (N.D. Ga. Dec. 23, 1986) held that a 51-percent-owned subsidiary could not conspire

4

To the extent *Arandell* and cases like it have any relevance here at all, it is to confirm that a plaintiff must allege and ultimately prove involvement in more than just the typical indicia of ownership. Plaintiffs must allege and ultimately prove concerted anticompetitive action with Varsity. Plaintiffs fail to do that, and provide no indication they could if allowed to replead.

## III. There Are No Non-Conclusory Allegations from Which Agency Could Plausibly Be Inferred

Plaintiffs' agency argument likewise fails. As an initial matter, there are no allegations in the Complaint that could possibly make Varsity an "agent" of Charlesbank prior to 2014, when Charlesbank acquired Varsity's upstream parent. Nor are there allegations that could possibly have made Varsity an "agent" of Bain prior to 2018, when Bain acquired Varsity's parent.

Putting that issue aside, the Complaint contains no allegation in support of agency other than wholly conclusory statements to the effect that everyone and everything was an agent of everyone and everything else. (*See* Compl. ¶¶ 23-28.) Such conclusory and generalized assertions are disregarded in assessing whether a complaint states a claim. *See, e.g.*, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'") (quoting *Bell Atl. v. Twombly*, 550 U.S. 544, 557 (2007)). Indeed, Courts routinely dismiss claims based on agency without such allegations. *See, e.g.*, *In re Fresh and Process Potatoes Antitrust Litig.*, 834 F. Supp. 2d 1141, 1167 (D. Idaho 2011) (dismissing claim based on bare agency allegation, unsupported by actual facts tending to show that alleged principal "invested [the alleged agents] with actual or apparent authority to act

---

with its owner, not that one was liable for the acts of the other. *Rohlfing v. Manor Care, Inc.*, 172 F.R.D. 330, 344 (N.D. Ill. 1997) (same as to non-wholly owned entities); *accord Coast Cities Truck Sales, Inc. v. Navistar Int'l Transp. Co.*, 912 F. Supp. 747, 763 (D.N.J. 1995) (dismissing conspiracy claim against three corporations under common 100% ownership and not addressing whether one corporation was liable for the actions of the others).

5

on the [principal's] behalf").

Plaintiffs cite a number of cases that hold that a principal can be liable for the actions of its agents that are committed within its apparent authority. None of these cases support Plaintiffs' argument that an entity necessarily acts as an agent for its owner simply based on the ownership relationship. Rather, they all involved employees of an entity violating the antitrust laws, and the issue was whether the entity could be liable for its employees' actions. For example, in *Am. Soc'y. of Mech. Eng'rs, Inc. v. Hydrolevel Corp.*, 456 U.S. 556 (1982), upon which Plaintiffs principally rely, the American Society of Mechanical Engineers ("ASME") was accused of preventing competition in low-water fuel cutoffs in boilers. *Id.* at 559-60. The issue was whether ASME could be held liable for the actions of the chairman of its relevant subcommittee and the secretary of its relevant committee, which included drafting an "unofficial" response, on ASME stationary and consistent with ASME procedural rules, to an inquiry made to ASME about the safety of a particular low-water fuel cutoff technology. *Id.* at 560-64. The Supreme Court held that ASME could be liable in this circumstance because it created the appearance that the individuals were acting on ASME's behalf by "entrust[ing] the interpretation of one of its codes" to one employee "without any meaningful safeguards," particularly given ASME's "great power in the Nation's economy" and the fact that it had "cloaked its subcommittee officials with the authority of its reputation." *Id.* at 570, 572. There are no remotely similar or analogous allegations here.

Ultimately, although it may be true that "a principal will be liable for an antitrust violation if an agent acting with apparent authority violates the antitrust laws," (Pls. Br. at 8, quoting *Alvord-Polk, Inc. v. F. Schumacher & Co.*, 37 F. 3d 996, 1009 (3d Cir. 1994)), there are no such allegations of "apparent authority" here. At a minimum, Plaintiffs would have to state

6

specific facts to raise a plausible inference that Charlesbank and then Bain had clothed the Varsity defendants with apparent authority—visible and known to third parties—to act on Charlesbank's and Bain's behalf.  *See, e.g.*, *Hydrolevel*, 456 U.S. at 556 n.5 (defining "apparent authority" as the "power [of the putative agent] to affect the legal relations of another person by transactions with third persons . . . arising from and in accordance with the [putative principals'] manifestations to such third persons"); *Potatoes Antitrust Litig.*, 834 F. Supp. at 1167-68 ("Apparent authority focuses on third parties.  It arises when a third party reasonably believes that the putative agent had authority to act on behalf of the principal and that belief can be traced to the principal's own manifestations.").  If anything, the Complaint, in its near-exclusive emphasis on Varsity, establishes the contrary.  There are no allegations of any kind that Plaintiffs or anyone else viewed Charlesbank or Bain as Varsity's principal or that Varsity was an agent for Bain and Charlesbank or that Charlesbank or Bain did anything to induce such beliefs.

## IV.     Successor Liability Theories Are Inapplicable

Plaintiffs' final vicarious liability argument—that Bain is somehow liable for Charlesbank's nonexistent liability under a theory of successor liability—is perhaps the most curious of all.  Successor liability relates to liability that the purchaser of all of the assets of an ongoing business concern can, in very limited circumstances, succeed to the liabilities of that business.  *See, e.g.*, *Bud Antle, Inc. v. Eastern Foods, Inc.*, 758 F.2d 1451, 1457 (11th Cir. 1985) ("a transfer of assets" is "require[d]" to establish successor liability).  Here, Charlesbank is not alleged to have acquired the assets of Bain or of Varsity, but rather it acquired the equity of an entity that indirectly owned Varsity.  Likewise, Bain is not alleged to have acquired the assets of Charlesbank or Varsity, but rather to have acquired the equity of an entity that indirectly owned Varsity.  There is no successor liability in such circumstances.

The cases Plaintiffs cite all confirm this.  Plaintiffs' lead case is *Flake v. Schrader-*

*Bridgeport International, Inc.*, 538 F. App'x 604 (6th Cir. 2013), in which the Sixth Circuit affirmed the district court's holding that there was no successor liability between the seller of a spin-off company and either the spin-off company itself or its subsequent owners. Like here, successor liability was not applicable in *Flake* because the seller "continued to operate as a viable entity after the sale" and "a successor company will not be held liable for the torts of its predecessor when that predecessor corporation remains active and constitutes a viable source of recovery." *Id.* at 604. Likewise, in *Patin v. Thoroughbred Power Boats Inc.*, 294 F.3d 640, 650 (5th Cir. 2002), another case on which Plaintiffs rely, the Fifth Circuit held that under Florida law, successor liability could exist where the purchaser and seller companies were under common ownership, had common board membership, had a common address and telephone number, shared office space, and had many common employees. Nothing of the sort is alleged here as between Bain and Charlesbank.

The standard for successor liability stated in Plaintiffs' other case, *EEOC v. G–K–G, Inc.*, 39 F.3d 740 (7th Cir. 1994), is applicable mainly to certain labor disputes. *Id.* at 748; *see Baker's Carpet Gallery, Inc. v. Mohawk Indus., Inc.*, 942 F. Supp. 1464, 1474 (N.D. Ga. 1996) (declining to apply the "substantial continuity" exception in an antitrust case). Plaintiffs do not point to any case applying that standard to antitrust cases, but even if the standard did apply, it would not be satisfied here. In *G–K–G*, the Seventh Circuit observed that two conditions must be satisfied to establish a "substantial continuity" theory of successor liability. The first was that "there be a substantial continuity in the operation of the business before and after the sale." 39 F.3d at 748. But here there was no sale of Charlesbank to Bain, much less a sale where the "operations" of Charlesbank were "substantially continued" by Bain.

There are likewise no allegations that the second condition—that the acquiring entity

8

"had notice of the claim before the acquisition"—is satisfied. *Id.* Plaintiffs do not allege such notice in their Complaint. In their brief, Plaintiffs refer to a different claim that was brought against Varsity in 2011. Even if that were part of the Complaint, one could not infer "notice" of Plaintiffs' claims brought nine years later. First, as the very reference that Plaintiff puts forth establishes, the antitrust claims that Plaintiffs contend put Bain on "notice" of Plaintiffs' claims here *were dismissed* in 2011 on a motion to dismiss under Rule 12(b)(6), a full seven years before Bain acquired the Varsity Defendants' parent company from Charlesbank. *See Varsity Brands, Inc. v. Star Athletica, L.L.C.*, No. 2:10-cv-025808-BBD-cgc, 2011 WL 13097063, at *4-5 (W.D. Tenn. Oct. 31, 2011) (dismissing antitrust counterclaim against Varsity for failure to state a claim). Second, the claims asserted in *Star Athletica* related to the purported misuse of copyrights and, indeed, were brought by a particular apparel manufacturer, not a downstream indirect purchaser. Plaintiffs point to no authority for the proposition that a party is on notice of an unasserted claim simply because years earlier someone else filed a complaint that was quickly dismissed for *failing* to state a claim.

## V.  Plaintiffs' Reliance on the "Continuing Violation Doctrine" Is Misplaced

Plaintiffs argue that the claims against Bain and Charlesbank are not barred by the statute of limitations because of the "continuing violation doctrine." Insofar as Bain did not acquire Varsity's indirect holding company until 2018, there certainly can be no claims against it relating to anything that happened before then, and in that sense the statute of limitations is not an issue.

As to Charlesbank, as discussed above, the only things Charlesbank is alleged to have done are to have owned Varsity's indirect holding company from 2014 to 2018 and to have "financed" Varsity's acquisitions of certain entities during that period. Plaintiffs cannot, however, base a claim against Charlesbank on acquisitions prior to December 10, 2016 for the additional reason that any such claim would be barred by the statute of limitations. Plaintiffs

9

apparently seek to avoid that bar by invoking the "continuing violation doctrine," but the Sixth Circuit and other courts have held that the doctrine does not apply to claims that mergers or acquisitions were anticompetitive, even when they led to effects such as price increases within the statutory period. *Z Techs. Corp. v. Lubrizol Corp.*, 753 F.3d 594, 599 (6th Cir. 2014) (affirming dismissal on pleadings of antitrust claims under Section 2 of the Sherman Act and Section 7 of the Clayton Act as to acquisition consummated more than four years prior to the commencement of the action because acquisition occurred outside the statute of limitations); *see also Midwestern Mach. Co., Inc. v. Nw. Airlines, Inc.*, 392 F.3d 265, 271 (8th Cir. 2004) ("Applying th[e] rationale [of continuing violation] to mergers makes no sense. . . . Once the merger is completed, the plan to merge is completed, and no overt acts can be undertaken to further that plan."); *Concord Boat Corp. v. Brunswick Corp.*, 207 F.3d 1039, 1052 (8th Cir. 2000) (reversing jury verdict and holding that continuing violation theory does not apply to antitrust claim based on acquisitions).[2] Because the "continuing violation" argument is foreclosed by this precedent, whether there were "in period" "overt acts" or not is irrelevant. And, in any event, the only "in period" "overt acts" that Plaintiffs identify are acts of Varsity, which simply doubles down on Plaintiffs' failed arguments that Charlesbank or Bain are vicariously liable for those acts.

## CONCLUSION

Bain and Charlesbank respectfully request that the Court dismiss the Complaint against them in its entirety.

---

[2] Unlike the on-point and controlling authority of *Z Techs.*, none of the cases Plaintiffs cite (see Pls.' Br. at 11-13) addressed the statute of limitations pertaining to mergers or acquisitions undertaken outside the limitations period. The Sixth Circuit likewise rejected the argument that a claim based on an out-of-period acquisition could be resurrected by citing in-period allegedly anticompetitive activity. 753 F.3d at 605.

| | |
|---|---|
| Dated: April 29, 2021 | Respectfully submitted, |

s/ Matthew S. Mulqueen

George S. Cary*
Alexis Collins*
Steven J. Kaiser*
CLEARY GOTTLIEB STEEN & HAMILTON LLP
2112 Pennsylvania Avenue, NW
Washington, DC 20037
Phone: (202) 974-1500
Fax: (202) 974-1999
gcary@cgsh.com
alcollins@cgsh.com
skaiser@cgsh.com

* Admitted *pro hac vice*

Matthew S. Mulqueen (TN #28418)
Adam S. Baldridge (TN #23488)
BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ
165 Madison Avenue, Suite 2000
Memphis, TN 38103
Phone: (901) 526-2000
Fax: (901) 577-0866
mmulqueen@bakerdonelson.com
abaldridge@bakerdonelson.com

*Attorneys for Charlesbank Capital Partners, LLC and Bain Capital Private Equity, LP*

11