UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| JESSICA JONES et al., <br><br> Plaintiffs, <br> v. <br><br> VARSITY BRANDS, LLC et al., <br><br> Defendants. | Civ. Action No. 2:20-cv-02892 |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF
VARSITY DEFENDANTS' MOTION TO DISMISS**

**TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................................1

ARGUMENT ................................................................................................................................1

I. Plaintiffs' Fail to Rehabilitate Their Antitrust Claims .......................................................1

    A. Market Definition...................................................................................................1

        1. All Cheer Apparel and Accessories Are Not in the Same Market ...................2

        2. All "Competitive Cheer Competitions" Are Not in the Same Market ..............3

        3. All Cheerleading Camps Throughout the United States Are Not in the Same Product and Geographic Market...........................................................5

    B. Plaintiffs Do Not Have Direct Allegations of Monopoly Power............................6

    C. The Alleged Conduct Is Not Anticompetitive as a Matter of Law .........................6

        1. Plaintiffs Do Not Allege Actionable Exclusive Dealing .................................7

        2. Holding Competitions Is Not Anticompetitive .................................................8

        3. Plaintiffs Do Not Allege Illegal Acquisitions ...................................................8

        4. Plaintiffs Do Not Allege Illegal Activity Involving USASF ............................9

II. Plaintiffs Misapprehend the Availability of Declaratory Relief......................................10

III. Plaintiffs' State Law Claims Cannot Be Sustained .........................................................10

CONCLUSION.............................................................................................................................10

# TABLE OF AUTHORITIES

**Federal Cases**

*American Tobacco Co. v. United States*,
   147 F.2d 93 (6th Cir. 1944) ............................................................................................. 6-7

*Arandell v. Centerpoint Energy Servs.*,
   900 F.3d 623 (9th Cir. 2018) ................................................................................................9

*Arthur S. Langenderfer, Inc. v. S.E. Johnson Co.*,
   917 F.2d 1413 (6th Cir. 1990) ..............................................................................................9

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ..............................................................................................................1

*Cascade Health Sols. v. PeaceHealth*,
   515 F.3d 883 (9th Cir. 2008) ................................................................................................7

*Clarett v. Nat'l Football League*,
   306 F. Supp. 2d 379 (S.D.N.Y. 2004), *rev'd on other grounds*, 369 F.3d 124 (2d Cir.
   2004) .....................................................................................................................................5

*Collins Inkjet Corp. v. Eastman Kodak Co.*,
   781 F.3d 264 (6th Cir. 2015) ................................................................................................7

*Concord Boat Corp. v. Brunswick Corp.*,
   207 F.3d 1039 (8th Cir. 2000) ..............................................................................................9

*Continental Ore Co. v. Union Carbide & Carbon Corp.*,
   370 U.S. 690 (1962) ......................................................................................................... 6-7

*Dolgencorp, LLC v. Nat'l Union Fire Ins. Co. of Pittsburgh Pennsylvania*,
   No. 18-CV-0529, 2018 WL 3753157 (M.D. Tenn. Aug. 8, 2018) ......................................10

*Int'l Boxing Club of N.Y., Inc. v. U.S.*,
   358 U.S. 242 (1959) ..............................................................................................................5

*LePage's, Inc. v. 3M*,
   324 F.3d 141 (3d Cir. 2003) ...............................................................................................10

*Midwestern Mach. Co., Inc. v. Nw. Airlines, Inc.*,
 392 F.3d 265 (8th Cir. 2004)......................................................................................9

*NicSand, Inc. v. 3M Co.*,
 507 F.3d 442 (6th Cir. 2007) ....................................................................................8

*O'Bannon v. Nat'l Collegiate Athletic Ass'n*,
 7 F. Supp. 3d 955 (N.D. Cal. 2014), *aff'd in part, vacated in part*, 802 F.3d 1049 (9th
 Cir. 2015) ..................................................................................................................5

*Phila. World Hockey Club, Inc. v. Phila. Hockey Club, Inc.*,
 351 F. Supp. 462 (E.D. Pa. 1972).............................................................................5

*Rock v. Nat'l Collegiate Athletic Ass'n*,
 No. 12–cv–1019, 2013 WL 4479815 (S.D. Ind. Aug. 16, 2013) ..........................3, 5

*Smith v. Pro-Football*,
 593 F.2d 1173 (D.C. Cir. 1978)................................................................................5

*Z Techs. Corp. v. Lubrizol Corp.*,
 753 F.3d 594 (6th Cir. 2014)....................................................................................8

# INTRODUCTION

The indirect purchaser Plaintiffs offer the same weak tea response to Varsity's motion to dismiss as the *Fusion Elite* and *American Spirit* plaintiffs did. But, even beyond that, Plaintiffs do not even attempt to explain how the fair broader markets they posit here could possibly be valid as a matter of law. Instead, Plaintiffs time and again fall back on the trope that Varsity is arguing "facts." But, to the contrary, Varsity has simply pointed to the *allegations* in Plaintiffs' own Complaint, as well as the *lack of* critical allegations that courts have repeatedly held are essential for claims of the kind Plaintiffs seek to pursue to go forward. In response, Plaintiffs point to conclusory assertions and incantations of antitrust buzzwords as talismans to avoid the consequences of the implications of the facts alleged and those lacking. As this Court is well aware, at least since the Supreme Court's decisions in *Twombly* and *Iqbal*, that does not suffice.

As the Supreme Court has emphasized, the district court's gate-keeping role is particularly critical in antitrust cases, where the costs of discovery are so high. *See, e.g., Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 546 (2007) (allowing groundless antitrust claims to proceed to discovery adds an "in terrorem increment of the settlement value"). Discovery in this and the related case has already cost Varsity millions of dollars, and depositions have not even begun. Costs at this level can cripple a relatively small business such as Varsity, which has revenues well below the billions of most companies accused of being a "monopolist," and faces the existential threat of COVID-19. Varsity urges the Court to grant its motion so as to avoid further strain on its limited and diminishing resources.

# ARGUMENT

## I. Plaintiffs' Fail to Rehabilitate Their Antitrust Claims

### A. Market Definition

Plaintiffs' brief confirms that they have no response to the fatal flaws in their alleged

1

markets. Plaintiffs concede that their product market allegations cannot go forward unless they have plausibly alleged that the various good and services that they include within the particular market are reasonably interchangeable. (Pl.'s Br. at 5.) The allegations they point to, however, establish the opposite. Plaintiffs' brief also confirms that the so-called "anticompetitive conduct" was almost entirely in relation to All Star cheerleading. The fact that the conduct is separate as between All-Star and School Cheer confirms that they are not in the same market.

### 1. All Cheer Apparel and Accessories Are Not in the Same Market

Plaintiffs offer no basis to conclude that the myriad products in their "Cheer Apparel Market" are reasonably interchangeable, which is not surprising, as they define that "market" to include numerous products that are obviously not usable for the same purpose. In particular "uniforms, warm-up outfits, team jerseys and practice gear; and specialized accessories such as hair bows and headbands; and specialized equipment such as backpacks and shoes" (Compl. ¶ 189) are not substitutable for each other in end use. Hair bows are no substitute for shoes, backpacks are not substitutes for team jerseys, and practice apparel is not a substitute for competition uniforms.

Plaintiffs first articulate and acknowledge that a market is based on reasonable interchangeability of use (Pls.' Br. at 5), but then pivot to the same "cluster market" argument that the *Fusion Elite* Plaintiffs raised, which fails here as well. As demonstrated there (*see* Varsity Reply Br. in Fusion Elite, at 2-4), the mere fact that products are purchased or used together does not put them in the same market. The inapplicability of the cluster-market concept is even more pronounced here, however, because Plaintiffs include the separate products used for All-Star Cheer and for School Cheer in their alleged market. Whatever "package" of products are sold together does not include products sold to schools and to All-Star participants, which are separate customer groups buying products tailored to their needs. Put another way, the products

2

are not even purchased or used together. Moreover, Plaintiffs' allegations that the USASF regulates what apparel is worn at All-Star (but not School Cheer) competitions and that *Gyms* (not schools) require certain "specialized apparel and equipment for practice" and for "membership on their Competitive Cheer Teams" (*see* Pls.' Br. at 8) further illustrates this point.[1]

Plaintiffs say virtually nothing about the geographic market for apparel, other than "nearly all of the targeted customers for Cheer Apparel reside in the United States." (*See* Pls.' Br. at 10.) This argument fails for the same reason as the *Fusion Elite* Plaintiffs' identical argument failed—it does not speak to the relevant issue of the location of suppliers to which a customer can turn for supply. (*See* Varsity Reply Br. in Fusion Elite, at 5.)

## 2. All "Competitive Cheer Competitions" Are Not in the Same Market

Plaintiffs argue that markets in the sports context are "limited not only to a single sport but to particular divisions and other groupings within sports such as 'majors' and 'minors.'" (Pls.' Br. at 7-8.) Yet they ask this Court to allow their claims to go forward on the basis of a market that *includes* All-Star Competitions *and* other Competitive Cheer Competitions, which is the very sort of separate "divisions" that *Plaintiffs* say are separate markets. Not even their fellow Plaintiffs in *Fusion Elite* support them on this; those Plaintiffs argue that the market for competitions is limited to All-Star Competitions. It is also at odds with the cases Plaintiffs here cite. For example, in *Rock v. Nat'l Collegiate Athletic Ass'n*, No. 12–cv–1019, 2013 WL 4479815, at *12 (S.D. Ind. Aug. 16, 2013), the Court held that lower divisions of college

---

[1] Plaintiffs say in their brief that "in reality, athletes and their families are required to purchase entire uniforms from their school or All-Star gym such that the commercial reality does not permit piecemeal purchase of the required apparel." (Pls.' Br. at 9.) Even if that were true and were alleged in the Complaint, it misses the point—the fact that intermediaries choose to group various products into a package is not a reason for inferring that the market in which Varsity participates is a cluster market.

football—analogous to Scholastic Competitions—were not in the same market as Division I college football—analogous to All-Star Competitions, because among other things they provide a "higher quality of competition."

Plaintiffs other argument—which is not in the Complaint and in any event is entirely implausible—is that an All Star Cheerleader would switch to School Cheer in the face of a small price increase for All Star competitions. (*See* Pl.'s Br. at 8.) That is analogous to the readily-dismissible contention that a consumer would forego an NBA game in favor of a local high school game if the price of NBA tickets slightly increased. Meanwhile, Plaintiffs dismiss that lower-level club cheerleading (*i.e.*, recreational cheer competitions) are in the same market, because "[i]t does not operate on the same level of competition or have the same prestige as All-Star or School Competitions." (Pl.'s Br. at 7.) But nowhere do Plaintiffs allege that School Competitions operate "on the same level of competition or have the same prestige" as All-Star Competitions; quite the contrary, which further confirms they should not be in the same market.

Plaintiffs likewise provide no basis to conclude that the market for all cheerleading competitions is nationwide. Plaintiffs do not dispute that there are no allegations in the Complaint regarding substitutability to cheer teams and gyms of competitions in one part of the country for those in another part of the country. Such allegations would make no sense because they would require one to conclude, for example, that a competition in Seattle is a viable substitute for one in Atlanta for a gym in northern Georgia. Plaintiffs rely on a case involving the NFL and a case involving the relevant geographic market for competition swimwear, which are hardly analogies for assessing the geographic market for a youth sports activity, given the

4

costs and disruption of travel.[2]  Without proper allegations from which a valid geographic market could be inferred, Plaintiffs claims must be dismissed.  (*See* Varsity Br. at 8.)

### 3. All Cheerleading Camps Throughout the United States Are Not in the Same Product and Geographic Market

Plaintiffs' effort to save their "all Cheerleading Camps" market fails as well.  Plaintiffs assert for the first time that it is "perfectly plausible that a [small price increase] in overnight Cheer Camps would cause enough families to switch from overnight Cheer Camps to day Cheer Camps to make such a price increase unprofitable." (Pl.'s Br. at 8.)  This new factual allegation, not in the Complaint, is implausible on its face—an overnight camp is obviously an entirely different commitment than a day camp, with concomitant differences in economics.

Plaintiffs' effort to save their "nationwide" geographic market for cheerleading camps against all logic to the contrary is even more implausible.  There they say that the market is nationwide because attendance at Varsity's cheer camps allegedly is "often a prerequisite to competing in certain Championship and thus [increases] the chance to compete at the National level." (Pls.' Br. at 10.)  That argument, and the assertion that "[a]ll Cheer Camps are held within the United States" and that "customers, particularly those who strive to compete at the National level, reside in the United States" (*id.*), says nothing as to whether, for example, a cheer

---

[2] In *Smith v. Pro-Football*, 593 F.2d 1173 (D.C. Cir. 1978) the issue was whether the NFL competed against the CFL for football players, not whether all youth competitions in a sport were in the same geographic market.  Plaintiffs other cases likewise did not involve youth competitions or for the most part geographic markets at all.  *See Int'l Boxing Club of N.Y., Inc. v. U.S.*, 358 U.S. 242, 250-52 (1959) (geographic market not contested); *Rock v. Nat'l Collegiate Athletic Ass'n*, 2013 WL 4479815, at *10-13 (same); *O'Bannon v. Nat'l Collegiate Athletic Ass'n*, 7 F. Supp. 3d 955, 966-68 (N.D. Cal. 2014) (same), *aff'd in part, vacated in part*, 802 F.3d 1049 (9th Cir. 2015); *Clarett v. Nat'l Football League*, 306 F. Supp. 2d 379, 383-84, 403 (S.D.N.Y. 2004) (same), *rev'd on other grounds*, 369 F.3d 124 (2d Cir. 2004); *Phila. World Hockey Club, Inc. v. Phila. Hockey Club, Inc.*, 351 F. Supp. 462, 502 (E.D. Pa. 1972) (market for major league hockey players is the United States and Canada).

5

camp in Memphis competes with one in Seattle. Certainly all day camps are not in a "national" market, given the practical limitations on daily travel. (*See also* Varsity Br. at 8-9.)

### B. Plaintiffs Do Not Have Direct Allegations of Monopoly Power

Plaintiffs assert that they have alleged "that Varsity had monopoly power as evidenced by prices raised above competitive levels and by excluding competition." (Pls.' Br. at 4.) But the paragraphs in the Complaint that Plaintiffs cite contain no factual allegations at all, but merely make conclusory statements and examples of what Plaintiffs call high prices and, unrelated to pricing, make conclusory statements about safety. (*See* Compl. ¶¶ 1, 6, 217-25.) There is nothing from which the Court could distinguish these assertions from generalized complaints about pricing, and therefore provide no basis to infer monopoly power. If allegations that a company controls the prices *it* charges sufficed, every company would be a monopoly. Plaintiffs likewise point to no allegations relating to the "power to exclude competitors."

### C. The Alleged Conduct Is Not Anticompetitive as a Matter of Law

Plaintiffs concede that acquisition or maintenance of monopoly power resulting from "growth or development resulting from superior product, business acumen, or historical accident" is not actionable. (Pls.' Br. at 8; *see also* Varsity Br. at 9-10.) Yet, like the plaintiffs in *Fusion Elite*, Plaintiffs here improperly seek to elevate their criticisms of Varsity's success and the way it runs its business to allegations of anticompetitive conduct. Plaintiffs also rely on the incorrect premise that actions that are not anticompetitive, in combination with other things that are not anticompetitive, can give rise to an antitrust claim on some sort of "combination" theory, which is not the law.[3]

---

[3] On this point, Plaintiffs misconstrue *Continental Ore Co. v. Union Carbide & Carbon Corp.*, 370 U.S. 690 (1962), and *American Tobacco Co. v. United States*, 147 F.2d 93 (6th Cir. 1944). In *Continental Ore*, the Supreme Court simply noted that the entirety of anticompetitive conduct needed to be considered, not that non-predatory pricing could be deemed anticompetitive by

6

### 1.     Plaintiffs Do Not Allege Actionable Exclusive Dealing

Plaintiffs do not contend that Varsity's Family Plan is actually "exclusive" in that anyone has agreed under the Family Plan to refrain from dealing with Varsity's competitors. Rather, Plaintiffs allege that under the Family Plan, gyms receive *rebates*. As discussed in Varsity's opening brief (*see* Varsity Br. at 10-12), discounts and rebates are not exclusionary under the antitrust laws, unless at a minimum the discount causes the charged price to fall below the supplier's cost. *See Collins Inkjet Corp. v. Eastman Kodak Co.,* 781 F.3d 264, 272-74 (6th Cir. 2015); *Cascade Health Sols. v. PeaceHealth*, 515 F.3d 883, 903 (9th Cir. 2008). Plaintiffs offer no response at all to the controlling authority of *Collins*, or to *PeaceHealth*.

Plaintiffs also offer nothing to satisfy the requirement of pleading substantial foreclosure. Plaintiffs do not argue that Varsity's Network Agreements, under which a small number of gyms allegedly agree to purchase exclusively from Varsity, constitute such a substantial portion. Rather, they lump the Network Agreements and the Family Plans together. This fails because, as discussed above, the Family Plans are not exclusive or even "exclusionary" as a matter of law.

These same flaws doom Plaintiffs' theory that Varsity's Impact and VIP Branding Programs are anticompetitive. Plaintiffs assert that under these programs, Varsity "helps the schools develop a sports identity by 'bring[ing] professional design and products to school campuses,' creating a sports identity and logo for the schools and supplying wall murals, window branding, mascot costumes, banners, flags, and signs displaying the school's identity and logo." (Pls.' Br. at 15.) Even if it were the case that schools agreed to exclusively source from Varsity in exchange for these services (in fact, Plaintiffs' allegations are off base on this point), Plaintiffs'

---

reference to other conduct. 370 U.S. at 699. In *American Tobacco*, the Sixth Circuit simply observed that if the evidence taken as a whole demonstrated a conspiracy, the fact that one or more pieces of evidence did not in themselves do so was not dispositive. *See* 147 F.3d at 106-07.

failure to offer any basis to conclude that the deals cover any particular, much less substantial, portion of the many thousands of schools in the United States or any allegation of below-cost pricing dooms any assertion that they are anticompetitive. (*See* Varsity Br. at 10-12.) Nor can Plaintiffs avoid their lack of "foreclosure" allegations by pointing to market share allegations (*see* Pls.' Br. at 15 n.9), because the two are different things.

### 2.     Holding Competitions Is Not Anticompetitive

Plaintiffs similarly fail to provide any basis for their bizarre assertion that Varsity's alleged practice of offering competing events is anticompetitive. (*See* Pls.' Br. at 17.) Plaintiffs suggest that the antitrust laws somehow protect Varsity's competitors from such competitors, which is exactly the opposite of what the antitrust laws provide. *See, e.g.*, *NicSand, Inc. v. 3M Co.*, 507 F.3d 442, 451 (6th Cir. 2007) ("the antitrust laws . . . protect[] . . . *competition* not *competitors*") (internal quotation marks omitted). (*See also* Varsity Br. at 14-15.)

### 3.     Plaintiffs Do Not Allege Illegal Acquisitions

Plaintiffs do not argue that they allege any anticompetitive acquisitions within the four-year statute of limitations, which is fatal to any claim based on such acquisitions. (*See* Varsity Br. at 18.) They seek to bring older acquisitions into play by arguing that the statute of limitations does not apply on the basis of the "continuing violation theory" that is sometimes applied to ongoing price-fixing conspiracies. (*See* Pls.' Br. at 18.) But the Sixth Circuit has held that "the continuing violations doctrine does not apply" to claims that a merger or series of mergers was anticompetitive. *See Z Techs. Corp. v. Lubrizol Corp.*, 753 F.3d 594, 599 (6th Cir. 2014) (affirming dismissal on pleadings of antitrust claims under Section 2 of the Sherman Act and Section 7 of the Clayton Act as to acquisition consummated more than four years prior to the commencement of the action because acquisitions occurred outside the statute of limitations); *see also Midwestern Mach. Co., Inc. v. Nw. Airlines, Inc.*, 392 F.3d 265 (8th Cir. 2004) (rejecting

8

continuing violation theory); *Concord Boat Corp. v. Brunswick Corp.*, 207 F.3d 1039, 1052 (8th Cir. 2000) (same); (Defs. Charlesbank and Bain Reply Br. at 9-10).[4]

#### 4. Plaintiffs Do Not Allege Illegal Activity Involving USASF

Plaintiffs do not address that fact that, based on the allegations in the Complaint to the effect that Varsity and USASF are not independent economic actors and never have been, there can be no actionable "conspiracy" between Varsity and USASF. (*See* Varsity Br. at 18-19.) Their suggestion that *Copperweld* cannot apply unless there is common ownership is not correct. (See *id.*) Plaintiffs argue that if *Copperweld* mandates that Varsity and USASF are legally incapable of conspiring, they are each responsible for the acts of the other. That is also wrong as a matter of law—as the case on which Plaintiffs rely says. *See Arandell v. Centerpoint Energy Servs.*, 900 F.3d 623, 633 (9th Cir. 2018) (holding that *Copperweld* "does not supply a theory of unbounded vicarious liability for the acts of legally distinct entities"). (*See also* Defs. Charlesbank and Bain Reply Br. at 3-5.)

The alleged USASF-related actions cannot sustain a claim of monopolization against Varsity or USASF in any event. They assert that Varsity requires that "All-Star gyms be members of USASF" (Pls.' Br. at 16-17), but that does not affect a Gym's ability to go to other competitions or otherwise affect competition. They point to rules that were allegedly adopted by Varsity (not USASF) in 2008, 2010, and 2013 relating to what teams could participate in Varsity's own events. (*See* Pls.' Br. at 17.) Surely Varsity is allowed to make such determinations without running afoul of the antitrust laws.[5] (*See* Varsity Br. at 13-14.) Finally,

---

[4] Unlike *Z Techs.*, the case Plaintiffs cite—*Arthur S. Langenderfer, Inc. v. S.E. Johnson Co.*, 917 F.2d 1413 (6th Cir. 1990)—did not involve the statute of limitations and is inapposite.

[5] The same is true of Varsity's alleged requirements relating to its camps (*see* Pls.' Br. at 17). The only case that Plaintiffs cite is *LePage's, Inc. v. 3M*, 324 F.3d 141 (3d Cir. 2003), which had nothing to do with the issue.

9

they point to USASF's insurance requirement for events and complain that one insurance carrier (that is neither alleged to be owned or controlled by Varsity or USASF) offers insurance at lower rates to gyms that participate only in USASF-sanctioned events. (*See* Pls.' Br. at 17-18.) That an independent insurer chooses to charge more in different circumstances is neither anticompetitive nor attributable to Varsity or USASF. (*See* Varsity Br. at 15.)

## II. Plaintiffs Misapprehend the Availability of Declaratory Relief

Plaintiffs misconstrue the purpose of declaratory relief, which is to set the terms of relationships between the parties for the future. The case that Plaintiffs cite is inapposite, in that it relates to future business dealings under still-in-force contracts between the parties. *See Dolgencorp, LLC v. Nat'l Union Fire Ins. Co. of Pittsburgh Pennsylvania*, No. 18-CV-0529, 2018 WL 3753157, at *2 (M.D. Tenn. Aug. 8, 2018). Here the Plaintiffs are indirect purchasers, *i.e.*, individuals who have no direct dealings with Varsity at all, much less ongoing contractual relationships, as was the issue in *Dolgencorp*. (*See also* Varsity Br. at 20.)

## III.     Plaintiffs' State Law Claims Cannot Be Sustained

Varsity adopts by reference the briefing of Jeff Webb and of USASF relating to the additional reasons that Plaintiffs' state law claims should be dismissed.

## CONCLUSION

For the foregoing reasons and for the reasons stated in Defendants' opening briefs, Defendants respectfully request that the Court dismiss the claims against them in their entirety. While the deficiencies in Plaintiffs' allegations are clear from the face of the Complaint and the parties' briefs, Varsity welcomes the opportunity for oral argument to address any remaining questions the Court may have.

| | |
|---|---|
| Dated: April 29, 2021 | Respectfully submitted,<br><br>s/ Matthew S. Mulqueen<br><br>George S. Cary*<br>Mark W. Nelson*<br>Alexis Collins*<br>Steven J. Kaiser*<br>CLEARY GOTTLIEB STEEN & HAMILTON LLP<br>2112 Pennsylvania Avenue, NW<br>Washington, DC 20037<br>Phone: (202) 974-1500<br>Fax: (202) 974-1999<br>gcary@cgsh.com<br>mnelson@cgsh.com<br>alcollins@cgsh.com<br>skaiser@cgsh.com<br><br>* Admitted *pro hac vice*<br><br>Matthew S. Mulqueen (TN #28418)<br>Adam S. Baldridge (TN #23488)<br>BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ<br>165 Madison Avenue, Suite 2000<br>Memphis, TN 38103<br>Phone: (901) 526-2000<br>Fax: (901) 577-0866<br>mmulqueen@bakerdonelson.com<br>abaldridge@bakerdonelson.com<br><br>*Attorneys for Varsity Brands, LLC; Varsity Spirit, LLC; and Varsity Spirit Fashion & Supply, LLC* |