UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| JESSICA JONES, MICHELLE VELOTTA, and CHRISTINA LORENZEN, on behalf of themselves and all others similarly situated<br><br>    Plaintiffs,<br> v.<br><br>VARSITY BRANDS, LLC, VARSITY SPIRIT, LLC, VARSITY SPIRIT FASHION & SUPPLIES, LLC, U.S. ALL STAR FEDERATION, INC., JEFF WEBB, CHARLESBANK CAPITAL PARTNERS LLC, and BAIN CAPITAL PRIVATE EQUITY<br><br>    Defendants. | **Civ. Action No. 2:20-cv-02892-SHL** |

**REPLY IN SUPPORT OF U.S. ALL STAR FEDERATION, INC.'S MOTION TO DISMISS**

I.  **Plaintiffs Fail to Plead a Section 2 Claim in Count One or Any Claim in Counts Three, Four, Five, or Six Against USASF.**

As explained in USASF's Memorandum in Support of its Motion to Dismiss, a review of the Complaint filed in this action makes clear that the Section 2 claim in Count One and the claims in Counts Three, Four, Five, and Six are not brought against USASF. As a result, in its Motion to Dismiss, USASF intended merely to obtain confirmation of that which was evident from the face of the Complaint. In response to USASF's Motion to Dismiss, however, Plaintiffs take the unexpected position that these claims were intended to be brought against USASF. In doing so, Plaintiffs ignore the actual language in their claims. Even if these claims had been brought against USASF, they nonetheless fail to provide proper notice of the existence of a claim against USASF. Further, USASF incorporates by reference all arguments raised by Jeff Webb and Varsity in their Motions to Dismiss and related briefing that these claims fail to state a plausible claim for relief.

A.  **Count One**

Count One seeks injunctive relief for violations of Sections 1, 2, and 3 of the Sherman Act. Plaintiffs' allegations relating to violations of Section 1 of the Sherman Act are contained in Paragraph 234 of the Complaint and do reference USASF. This paragraph, however, does not put USASF on notice of a Section 2 claim as it is limited to alleged conduct "in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1."[1]

On the other hand, Plaintiffs' allegations relating to violations of Section 2 of the Sherman Act are contained in Paragraph 235 of the Complaint. These allegations are strictly limited to Varsity, and this Paragraph contains no reference to USASF: "During the Class period **Varsity** engaged in a continuing Exclusionary scheme with respect to the Relevant Markets in an

---

[1] Notably, Plaintiffs' refer to Paragraph 234 in their Response and selectively quote the first portion of this Paragraph, omitting the explicit reference to Section 1 of the Sherman Act. (Pl. Resp., p. 3, ECF No. 69). This inappropriate attempt to mislead the Court should be rejected.

1

unreasonable restraint of trade and commerce, with the purpose and effect of acquiring, enhancing, and maintaining monopoly power in the Relevant Markets, in violation of the Sherman Act, 15 U.S.C. § 2." (Compl. ¶ 235 (emphasis added)).  While the Complaint contains a Section 2 claim, it is apparent from the face of the Complaint that this claim is brought only against Varsity and not against USASF.  Accordingly, it should be dismissed as to USASF.

### B. Count Six

Count Six, although labeled "For Declaratory Relief Under 28 U.S.C. § 2201 for Violations of Sections 1, 2, 3 of the Sherman Act, 15 U.S.C. §§ 1-3," contains only one substantive paragraph, which makes clear that Plaintiffs are seeking declaratory relief under Section 2 of the Sherman Act: "Plaintiffs and the members of the Injunctive Relief Class, pursuant to Fed. R. Civ. P. 57 and 28 U.S.C. § 2201, hereby seek a declaratory judgment that Defendant's conduct in seeking to prevent competition as described herein violates Section 2 of the Sherman Act." (Compl. ¶ 268). Because Plaintiffs do not actually plead a Section 2 violation against USASF.(*see supra* Section I.A), they cannot seek declaratory relief for a violation of Section 2 against USASF.  The use of the singular "Defendant's," while perhaps not itself controlling, is consistent with the plain language of the Complaint in this regard.  Because there is no Section 2 claim pleaded against USASF, Count Six should also be dismissed as to USASF.

### C. Counts Three, Four, and Five

Again, Plaintiffs ignore the plain language of their Complaint.  The focus on these claims is clearly on Varsity and these claims are not brought against USASF.  The specific allegations contained in these Counts are addressed in detail in USASF's Memorandum in Support of its Motion to Dismiss, but the allegations are clear that the "actor" at issue in these Counts was Varsity and not USASF.  Indeed, Plaintiffs' contention otherwise is disingenuous.  As to Count Three,

2

Plaintiffs refer to Paragraph 249 (Pl. Resp., p. 4, ECF No. 69), which contains a reference to "Defendants' antitrust violations alleged in this Claim," but the only antitrust violations alleged in Count Three are those relating to Varsity.  (*See* Compl. ¶ 247 ("**Varsity** intentionally and wrongfully maintained monopoly power . . . .") (emphasis added), ¶ 249 ("**Varsity** intentionally and wrongfully engaged in . . . .") (emphasis added)).  Similarly, as to Count Four, Plaintiffs' reference to Paragraph 252 of the Complaint is misleading.  (*See* Pl. Resp., p. 4, ECF No. 69). This Paragraph **does not allege** "that USASF created rules that unfairly favored Varsity by giving Varsity exclusive bid power."  To the contrary, it alleges "Varsity engaged in unlawful and unfair acts and practices" and that **Varsity** "exploit[ed] its control over USASF" to create these rules. (Compl. ¶ 252).  This does not put USASF on notice that Count Four was brought against it or even of the specific acts or omissions that Plaintiffs believe USASF took that gave rise to this Count.  Likewise, in Count Five, although Plaintiffs allege that "Defendants have reaped and retains substantial benefits," Plaintiffs only seek to disgorge Varsity in Count Five.  (*See* Compl. ¶ 264 ("It would be wrong and inequitable for **Varsity** to be permitted to retain any of the ill-gotten gains . . . .") (emphasis added), ¶ 265 ("The benefits conferred upon **Varsity** are measurable . . . .") (emphasis added), ¶ 266 ("**Varsity** should be compelled to disgorge . . . .") (emphasis added)).

These claims do not contain any claim against USASF, and they surely do not put USASF on notice that these claims are brought against it.  Accordingly, they must be dismissed.

**II.     Plaintiffs Fail to State a Plausible Antitrust Claim Against USASF.**

    **A.     Plaintiffs Fail To Properly Define the Relevant Markets.**

Varsity's briefing, incorporated herein by reference, addresses the deficiencies with Plaintiffs' market definitions and the arguments made in Plaintiffs' Responses in detail.

    **B.     Plaintiffs Fail to Plead Any Sort of Illegal Agreement.**

Plaintiffs entirely fail to respond to USASF's arguments that the conduct involving USASF alleged in the Complaint does not rise to the level of an illegal agreement. Further, Plaintiffs incorrectly argue that actions that are not anticompetitive, in combination with other things that are not anticompetitive, can give rise to an antitrust claim. This is not the law. (*See* Varsity Reply, p. 6 n.3). Regardless, Plaintiffs do not even explain how the various USASF rules and policies complained of rise to the level of an illegal agreement, even considered in combination, because they cannot do so.

None of the various allegations about USASF—considered individually or collectively—plausibly suggest that USASF entered into a conspiracy with Varsity to restrain trade. This is not a case where Plaintiffs allege that USASF is engaging in anticompetitive conduct for its own benefit; Plaintiffs allege that USASF is conspiring with Varsity and, accordingly, they must plead sufficient facts showing an agreement with Varsity. Merely pointing to generally applicable policies without connecting these policies to some alleged conspiracy with Varsity is insufficient. Plaintiffs fail to explain why a requirement that USASF member gyms have liability insurance could be anticompetitive, regardless of the other alleged actions it is coupled with. And Plaintiffs certainly do not explain how this insurance requirement suggests any conspiracy between USASF and Varsity. Plaintiffs fail to explain why a rule applicable to all event producers regarding the geographic location of bid-awarding events plausibly pleads the existence of a conspiracy between USASF and Varsity. Plaintiffs likewise fail to explain how USASF's generic uniform requirements supposedly favor Varsity or suggest the existence of a conspiracy between USASF and Varsity. Nor do Plaintiffs respond to USASF's argument that there are **zero** allegations in the Complaint connecting USASF to the Cheer Camp market, and as a result, **zero** allegations suggesting a conspiracy between USASF and Varsity impacting this market. Although Plaintiffs argue that

4

these rules should not be considered in isolation, Plaintiffs also fail to explain how these rules collectively favor Varsity or plausibly plead an actionable conspiracy between USASF and Varsity.

Even taking all of the allegations in the Complaint as true and viewing them in the light most favorable to Plaintiffs, there is no conduct alleged—individually or collectively—from which the Court could reasonably infer that USASF was involved in a conspiracy to restrain trade.

      C.      **Plaintiffs Ignore the Case Law Applying *Copperweld* and the Intracorporate Conspiracy Doctrine, Which Precludes Their Claims.**

Although *Copperweld* involved a wholly-owned subsidiary and its parent corporation, this doctrine is not limited to cases involving a direct ownership interest.  As explained in USASF's Memorandum in Support of its Motion to Dismiss, this case is analogous to *Jack Russell Terrier Network of Northern Ca. v. Am. Kennel Club*, 407 F.3d 1027, 1035 & n.15 (9th Cir. 2005), which involved a national organization and its regional affiliates, and to *Am. Council of Certified Podiatric Physicians and Surgeons v. Am. Bd. of Podiatric Surgery, Inc.*, 185 F.3d 606, 620-21 (6th Cir. 1999), which involved a defendant corporation and its members.  Plaintiffs' attempt to distinguish this case by arguing that "Plaintiffs' Complaint does indeed allege that Varsity and USASF are distinct legal entities with distinct and independent legal interest" is unpersuasive.  *Jack Russell* and *American Council of Certified Podiatric Physicians and Surgeons* involved distinct legal and natural persons.  The Ninth Circuit and the Sixth Circuit, respectively, found that these distinct legal persons were unable to conspire because they were alleged to have the same economic interests.  Here, as explained in detail in USASF's Memorandum in Support of its Motion to Dismiss, Varsity and USASF are alleged to be essentially one and the same.  Plaintiffs consistently take the position that USASF is the "cat's paw" of Varsity (Compl. ¶ 108) and subject to Varsity's control and domination.  (Compl. ¶¶ 104-105, 110, 112, 191; *see also* Pl. Resp., p. 1, ECF No. 69 ("USASF was directed and controlled by Varsity and Varsity leadership.")).  Taking

5

the allegations in the Complaint as true for purposes of this Motion to Dismiss, USASF was controlled by Varsity, they share the same economic interests, and USASF is incapable of conspiring with Varsity.

### III. Plaintiffs Fail to State a Plausible Claim Under the Tennessee Trade Practices Act.

Critically, Plaintiffs do not respond to USASF's arguments that the Tennessee Trade Practices Act ("TTPA") cannot support a claim for the alleged Cheer Competitions and Cheer Camps markets, which involve intangible services and appear to concede that they cannot state a TTPA claim for these markets. Thus, at the start, the Court should limit Plaintiffs' TTPA claim to the alleged Cheer Apparel market, which is the only alleged market involving tangible goods.

Even as to the Cheer Apparel market, however, Plaintiffs' TTPA claim still fails because Plaintiffs do not plead facts showing that transactions in the Cheer Apparel market have a substantial effect on Tennessee commerce. The only allegations in the Complaint that Plaintiffs point to are that Defendants "are residents of Tennessee, are Tennessee corporations, and have their principal place of business in Tennessee" and that "[t]he anticompetitive scheme was directed, maintained and implemented in Tennessee." (Pl. Resp., p. 16, ECF No. 69). This is exactly what the Tennessee Supreme Court found to be insufficient in *Freeman Industries, LLC v. Eastman Chemical Co.*, 172 S.W.3d 512 (Tenn. 2005). As the Tennessee Supreme Court noted, "[t]he focus under the substantial effects standard . . . is not on the anticompetitive conduct itself but on the *effects* of the conduct on Tennessee commerce." *Freeman*, 172 S.W.3d at 524 (emphasis in original). Thus, the Tennessee Supreme Court found the allegation "that Eastman took orders and implemented sales to customers at the new prices from Tennessee" to be insufficient to establish a substantial effect on Tennessee commerce and affirmed the dismissal of the TTPA claim. *Id.*

6

Here, Plaintiffs allege nothing more than that Defendants are based in Tennessee and set prices in Tennessee. This case is not distinguishable from *Freeman*. As a matter of Tennessee law, the allegations in the Complaint are insufficient to state a plausible TTPA claim under any alleged market, including the Cheer Apparel market. Accordingly, all of Plaintiffs' TTPA claims should be dismissed.

IV.     **Plaintiffs Fail to State a Plausible Claim for Relief Under Any State Antitrust Law or Consumer Protection Law.**

Although Counts Three and Four were not brought against USASF, out of an abundance of caution, USASF again incorporates by reference the arguments made by Varsity and Jeff Webb as to these Counts. USASF also briefly addresses Plaintiffs' arguments as to these Counts. Count Three alleges violations of 31 state antitrust statutory schemes, and Count Four similarly alleges violations of 31 state consumer protection acts, although they do not identify the specific provisions of those statutory schemes—or even the statutory sections—that are alleged to be violated. Nor do they allege any facts specific to those jurisdictions requiring intrastate conduct or effects. *See In re Cast Iron Soil Pipe and Fittings Antitrust Litig.*, 2015 WL 5166014, at *26 (E.D. Tenn. June 24, 2015) (dismissing claims asserted under antitrust statutes of eight states and D.C. due to the plaintiffs' failure to allege conduct or commercial effects within those states).

Moreover, as a result of this deficient pleading, USASF has no notice of the elements of the claim alleged and is impeded in its ability to seek dismissal based on a failure to plead factual allegations going to each element of these claims. This same issue will arise again at the summary judgment stage if these claims are not dismissed. Indeed, other courts have dismissed statutory claims for this reason. *See, e.g.*, *Henton v. Wells Fargo Bank, N.A.*, 2011 WL 111362, at *3 (E.D. Tenn. Jan. 13, 2011) ("The Court has reviewed plaintiff's complaint and agrees with defendants that there are no facts alleged in the complaint specifying a specific violation of a cited statute or

7

act. While plaintiff has claimed violations of various statutes and acts and has pled some of the relevant statutory language, merely asserting that defendants acted in violation of these statutes cannot support plausible inferences that defendants did in fact commit those violations.")

Even setting aside the failure to plead specific provisions, as to Count Three, Plaintiffs concede that they do not have a private right of action under the cited Alaska and Colorado statutes. (*See* Pl. Resp. to Webb Mot. to Dismiss, p. 11 n.11, ECF No. 71). They also ask the Court to ignore the statutory language of Arkansas, Illinois, and Utah. *See* Webb Reply, p. 8; *see also* Ark Code Ann. § 4-88-113(f)(1)(B) ("A private class action under this subsection is prohibited . . . ."); Ill. Comp. Stat. 10/7(2) ("Provided further that no person shall be authorized to maintain a class action in any court of this State for indirect purchasers asserting claims under this Act."); Utah Code Ann. § 76-10-3109(1)(a) (providing a right of action only for "[a] person who is a citizen of this state or a resident of this state").

Even more curiously, as to Arkansas, Plaintiffs concede that "Arkansas's antitrust statute does not provide a private right of action" (Pl. Resp. to Webb Mot. to Dismiss, p. 12, ECF No. 71), but then attempt to shoehorn their claim under the Arkansas Deceptive Trade Practices Act, Ark. Code Ann. §§ 4-88-101 et seq. Of note, Count Three does not reference the Arkansas Deceptive Trade Practices Act ("ADTPA"); this Act is referenced in Count Four of the Complaint. The Count Three claim under Arkansas's antitrust statute must be dismissed. Even in Count Four, Plaintiffs again fail to identify or provide notice of their theory of relief under the ADTPA.

Further, Plaintiffs do not even address whether they have a private right of action under California, Hawaii, Idaho, Iowa, Kansas, Maine, Maryland, Michigan, Minnesota, Nebraska, New Hampshire, New Mexico, North Dakota, Oregon, or Rhode Island antitrust law, focusing only on the examples raised by the Defendants. The issue here is that Plaintiffs have raised 30 different

8

state antitrust statutes, did not identify the particular sections which they claim were violated or the facts relating to each state, and disregarded whether each state afforded a private right of action.

Finally, as to both Counts Three and Four, Plaintiffs incorrectly argue that there "is no dispute that Plaintiffs have standing to sue USASF." (*See* Pl. Resp., p. 18). This ignores the abundance of case law on this precise issue. This case has not been certified as a class action, and the focus of the standing inquiry is on the named Plaintiffs, who are the only parties to this action. The Supreme Court has acknowledged "[t]hat a suit may be a class action . . . adds nothing to the question of standing, for even named plaintiffs who represent a class 'must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent.'" *Lewis v. Casey*, 518 U.S. 343, 357 (1996) (quoting *Simon v. Eastern Ky. Welfare Rights Org.*, 426 U.S. 26, 40 n.20 (1976)).

Indeed, numerous courts have held that named plaintiffs lack standing to sue under the laws of any state where they do not reside. *See, e.g.*, *In re Packaged Ice Antitrust Litig. Indirect Purchaser Class Action*, 779 F. Supp. 2d 642, 657 (E.D. Mich. 2011) (collecting cases) ("As held in the many cases discussed above in which courts have chosen to address the standing issue prior to class certification, named plaintiffs lack standing to assert claims under the laws of the states in which they do not reside or in which they suffered no injury."); *see also In re Wellbutrin XL Anitrust Litig.*, 260 F.R.D. 143, 158 (E.D. Pa. 2009) (dismissing claims "in the majority of the jurisdictions referenced in the amended complaint" and permitting plaintiffs to proceed only on claims "in those states in which they are located"); *In re Checking Acct. Overdraft Litig.*, 694 F. Supp. 2d 1302, 1324-25 (S.D Fla. Mar. 11, 2020) ("Thus, the Court finds that Plaintiffs may only assert a state statutory claim if a named plaintiff resides in that state."); *Temple v. Circuit City Stores, Inc.*, 2007 WL 2790154, at *8 (E.D.N.Y. Sept. 25, 2007) (rejecting the argument that standing should be

9

addressed at class certification because "[t]he Supreme Court has made it clear that because Article III standing goes to a federal court's jurisdiction, the court should consider standing as a threshold issue" and dismissing all claims under the laws of the non-Tennessee states for lack of standing).

Because Plaintiffs lack standing to bring claims under any state law other than Kansas, California, and Colorado (and Plaintiffs have conceded the lack of a private right of action under Colorado's antitrust law), these claims must be dismissed.

### V.  Plaintiffs Fail to Plead a Plausible Unjust Enrichment Claim Against USASF.

Again, although Count Five was not brought against USASF, out of an abundance of caution, USASF again incorporates by reference the arguments made by Varsity and Jeff Webb as to this Count.  USASF further notes as to this claim that there is no factual allegation in the Complaint, which taken as true, could support a claim for unjust enrichment against USASF.  To plead a claim for unjust enrichment, a plaintiff must allege facts showing "[a] benefit conferred upon the defendant by the plaintiff," "appreciation by the defendant of such benefit," and "acceptance of such benefit under such circumstances that it would be inequitable for him to retain the benefit without payment of the value thereof."  *Freeman Indus.*, 172 S.W.3d at 525 (quoting *Paschall's, Inc. v. Dozier*, 407 S.W.2d 150, 153-54 (Tenn. 1966)).  Here, Plaintiffs fail to allege that USASF "appreciated" any benefit conferred by Plaintiff.  To the contrary, Plaintiffs allege that the registration fees paid to USASF were actually payments to Varsity.  (Compl. ¶¶ 41, 75, 223).  In other words, taking the allegations of the Complaint as true, Plaintiffs fail to plausible plead that USASF was unjustly enriched by the payment of registration fees or otherwise.  This provides yet another basis for dismissal of Count Five.

### VI.  CONCLUSION

For the foregoing reasons, Defendant USASF respectfully requests that the Court dismiss all claims against USASF with prejudice.

10

|  |  |
|---|---|
| April 29, 2021 | Respectfully submitted, |
|  | *s/ Nicole D. Berkowitz* |
|  | Grady Garrison (TN #008097) |
|  | Nicole D. Berkowitz (TN #35046) |
|  | BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ |
|  | 165 Madison Avenue, Suite 2000 |
|  | Memphis, TN 38103 |
|  | Phone: (901) 526-2000 |
|  | Fax: (901) 577-0866 |
|  | ggarrison@bakerdonelson.com |
|  | nberkowitz@bakerdonelson.com |
|  | *Attorneys for U.S. All Star Federation, Inc.* |

**CERTIFICATE OF SERVICE**

I hereby certify that on this 29th day of April, 2021, the foregoing was served on the Plaintiffs via the Court's Electronic Filing System and/or by emailing a true and exact copy to the following counsel of record:

Joseph R. Saveri, Esq.
Elissa Amlin Buchanan, Esq.
Kevin Rayhill, Esq.
Steven N. Williams, Esq.
Anne-Patrice Harris, Esq.
JOSEPH SAVERI LAW FIRM, INC.
601 California St., Suite 1000
San Francisco, CA 94108
Email: jsaveri@saverilawfirm.com
Email: eabuchanan@saverilawfirm.com
Email: krayhill@saverilawfirm.com
Email: swilliams@saverilawfirm.com
Email: aharris@saverilawfirm.com

Richard Paul, III
Sean R. Cooper
PAUL LLP
601 Walnut Street, Suite 300
Kansas City, MO 64106
Email: Rick@paulllp.com
Email: sean@paulllp.com

Van Davis Turner, Jr., Esq.
BRUCE TURNER, PLLC
2650 Thousand Oaks Boulevard Suite 2325
Memphis, TN 38118
Email: vturner@bruceturnerlaw.net

*Counsel for Plaintiffs*

George Cary, Esq.
Steven Kaiser, Esq.
Alexis Collins, Esq.
Mark W. Nelson, Esq.
CLEARY GOTTLIEB STEEN & HAMILTON LLP
2112 Pennsylvania Avenue, NW Suite 1000
Washington, DC 20037
Email: gcary@cgsh.com
Email: skaiser@cgsh.com
Email: alcollins@cgsh.com
Email: mnelson@cgsh.com

Adam S. Baldridge, Esq.
Matthew S. Mulqueen, Esq.
BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ, P.C.
165 Madison Avenue, Suite 2000
Memphis, TN 38103
Email: abaldridge@bakerdonelson.com
Email: mmulqueen@bakerdonelson.com

*Counsel for Defendants Varsity Brands, LLC, Varsity Spirit, LLC, Varsity Spirit Fashions & Supplies, LLC, Charlesbank Capital Partners LLC and Bain Capital Private Equity*

Paul Coggins, Esq.
Brendan Patrick Gaffney, Esq.
LOCKE LORD LLP
2200 Ross Avenue, Suite 2800
Dallas, TX 75201
Email: pcoggins@lockelord.com
Email: bgaffney@lockelord.com

*Counsel for Defendant Jeff Webb*

*s/ Nicole D. Berkowitz*