IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| JESSICA JONES, MICHELLE VELOTTA, and CHRISTINA LORENZEN on Behalf of Themselves and All Others Similarly Situated,<br><br>Plaintiffs,<br>v.<br><br>VARSITY BRANDS, LLC, VARSITY SPIRIT, LLC, VARSITY SPIRIT FASHION & SUPPLIES, LLC, U.S. ALL STAR FEDERATION, INC., JEFF WEBB, CHARLESBANK CAPITAL PARTNERS LLC, and BAIN CAPITAL PRIVATE EQUITY,<br><br>Defendants. | Case No. 2:20-cv-02892-SHL-cgc |

**REPLY IN SUPPORT OF JEFF WEBB'S MOTION TO DISMISS**

# INTRODUCTION

Plaintiffs' Response (the "Response") to Defendant Jeff Webb's Motion to Dismiss (the "Motion") confirms that they are unable to make any plausible allegation that Mr. Webb has monopoly power, attempted to form or sustain a monopoly, or committed any anticompetitive act with (or without) the intent to monopolize. The non-conclusory allegations in the 268-paragraph Complaint Class Action (the "Complaint" or "CCA") are thin and ultimately fatal to their claims. They allege that Mr. Webb hosted a meeting more than fifteen years ago (well outside the statute of limitations) and that he was an officer of a corporate defendant. Plaintiffs fail to offer any authority where another Court has allowed a complaint to proceed on such facts, and this Court should not be the first. There is no plausible allegation that Mr. Webb himself violated the Sherman Act or conspired with anyone else to do so. Thus, the Court should dismiss the claims against him.

# ARGUMENT

## I. Plaintiffs Antitrust Claims Must Be Dismissed.

### A. Plaintiffs have not alleged viable Sherman Act claims against Mr. Webb.

The Complaint fails to specify what Sherman Act theory Plaintiffs rely upon to support their claims against Mr. Webb. Because the allegations against him are so minimal, he cannot determine whether Plaintiffs are alleging a restraint in trade under Section 1, monopolization under Section 2, or a conspiracy to monopolize under Section 2.

> *1. Plaintiffs do not allege facts supporting individual liability against Mr. Webb under Sections 1 or 2 of the Sherman Act.*

As an initial matter, there is no dispute that individuals can be held personally liable for violations of antitrust laws in some circumstances. However, Plaintiffs do not come close to alleging facts that would support such a claim here. It is not enough for Plaintiffs to allege that Mr. Webb is liable for alleged acts by Varsity because he was Varsity's CEO. *See* RESTATEMENT

(THIRD) OF AGENCY LAW § 7.01 cmt. d ("An agent is not subject to liability for torts committed by the agent's principal that do not implicate the agent's own conduct; there is no principle of 'respondeat inferior.'").[1]  Instead, Plaintiffs must allege conduct by Mr. Webb to assert claims against him individually.  *Brown v. Donco Enters., Inc.*, 783 F.2d 644, 646 (6th Cir. 1986) ("Individual liability under the antitrust laws can be imposed only where corporate agents are *actively* and knowingly engaged in a scheme designed to achieve anticompetitive ends.") (emphasis added).  Plaintiffs fail to make any such allegations in the Complaint.

None of the scant allegations against Mr. Webb give rise to individual liability under either Section 1 or 2 of the Sherman Act.  *See* Dkt. #58-1 at pp. 7-8.  The only conduct Plaintiffs attribute to Mr. Webb in the Complaint is that he allegedly conducted a meeting in his boardroom in 2005 – sixteen years ago.  CCA at ¶ 107.  Plaintiffs do not explain how this single vague allegation, which falls far outside the applicable limitations period, supports a claim against Mr. Webb under the Sherman Act.

Instead of identifying individual acts by Mr. Webb, Plaintiffs rely upon conclusory allegations to suggest that Mr. Webb was involved in anticompetitive conduct.  Because Mr. Webb was "the long time CEO" and "the face of Varsity," Plaintiffs conclusorily claim that Mr. Webb was "responsible for," "control[led]," and "directed" Varsity's purportedly anticompetitive conduct.  Resp. at pp. 3, 5-6, 18.  Unsubstantiated allegations that an officer of a company "directed" conduct are insufficient to support a claim against an individual under the Sherman Act.

---

[1] Plaintiffs cite to case law for the proposition that, pursuant to agency law, an individual officer or employee of a company can be liable for his own tortious conduct, including antitrust violations, even if he engages in such conduct on behalf of the company.  *See* Resp. at p. 4 (citing *Ky.-Tenn. Light & Power Co. v. Nashville Coal Co.*, 37 F. Supp. 728, 738 (W.D. Ky. 1941)).  Here, however, Plaintiffs improperly attempt the inverse, contending that because Mr. Webb was the CEO of Varsity, he may be held personally liable for any of Varsity's alleged conduct.

*See United States Bd. of Oral Implantology v. Am. Bd. of Dental Specialties*, 390 F. Supp. 3d 892, 904 (N.D. Ill. 2019) (dismissing Sherman Act claims against individuals where the complaint alleged the individuals "'directed' the conduct of the defendants.").

With respect to Section 2 of the Sherman Act, Plaintiffs fail to articulate the nature or theory of their monopolization claim against Mr. Webb. "The [Section 2] offenses of monopolization, attempt to monopolize, and conspiracy to monopolize are distinct and require different proofs." *Potters Med. Ctr. v. City Hosp. Ass'n*, 800 F.2d 568, 574 (6th Cir. 1986). To the extent Plaintiffs assert a monopolization claim, they "'must . . . prove the required elements against each individual defendant.'" *In re Mushroom Direct Purchaser Antitrust Litig.*, 514 F. Supp. 2d 683, 699 (E.D. Pa. 2007) (quoting *Carpet Grp. Int'l v. Oriental Rug Imps. Assoc.*, 256 F. Supp. 2d 249, 284 (D.N.J. 2003)).

To support a monopolization claim against Mr. Webb, plaintiffs would need to prove "'(1) the possession of monopoly power in the relevant market and (2) the willful acquisition of or maintenance of that power as distinguished from growth or development.'" *Boulevard Souvenirs v. Elvis Presley Enters., Inc.*, 2007 WL 9705982, at *3 (W.D. Tenn. Oct. 2, 2007) (quoting *United States v. Grinnell Corp.*, 384 U.S. 563, 570-71 (1966). Plaintiffs fail to allege that Mr. Webb himself possesses monopoly power. Because Plaintiffs must prove the required elements of a monopolization claim against each individual defendant, the failure to do so is fatal to a traditional Section 2 monopolization claim. *See id.* at *4 (dismissing monopolization claim against officer of a company because "as an individual, she d[id] not possess monopoly power because she d[id] not have market share nor d[id] she have the power to prevent newcomers from entering the market."); *see also In re Mushroom*, 514 F. Supp. 2d at 700 (dismissing monopolization claim against members of a mushroom cooperative because the complaint contained "no allegations regarding

the monopoly power of the individual member defendants.").[2]

        2.     *Mr. Webb cannot be held liable for a Section 1 or Section 2 conspiracy.*

Because Plaintiffs have not stated a viable traditional Section 1 or Section 2 claim against Mr. Webb, they resort to a conspiracy claim. The conspiracy claim here also fails, due to the intracorporate conspiracy doctrine.

Plaintiffs incorrectly claim that "there is no authority" supporting Mr. Webb's argument that he cannot conspire with Varsity pursuant to the intracorporate conspiracy doctrine. Resp. at p. 6. While Plaintiffs are correct that *Copperweld Corp. v. Indep. Tube Corp.*, 467 U.S. 752 (1984) dealt with corporate parents and subsidiaries, it also explained that "officers of a single firm are not separate actors . . . [such that] officers or employees of the same firm do not provide the plurality of actors imperative for a [Section 1] conspiracy." *Id.* at 769.

Relying on *Copperweld*, other courts, including the Sixth Circuit, have found that Section 1 and Section 2 conspiracy claims against individuals fail because the employees or directors of an organization cannot conspire with the organization. *Potters Med. Ctr.*, 800 F.2d at 573-74 (relying on *Copperweld* to conclude that a physician and attorney, both employees of a hospital, could not conspire with the hospital to violate either Section 1 or Section 2 of the Sherman Act); *see also United States Bd. of Oral Implantology*, 390 F. Supp. 3d at 904, 907 (relying on *Copperweld* to dismiss Section 1 and 2 Sherman Act claims against individual directors of the organization); *Lockheed Martin Corp. v. Boeing Co.*, 314 F. Supp. 2d 1198, 1254 (M.D. Fla. 2004) (dismissing individual defendants who "were employees of Boeing during the period Lockheed

---

[2] In the Response, Plaintiffs correctly point out that the Motion inadvertently dropped a word in a quote from *ES Dev., Inc. v. RWM Enters., Inc.*, 939 F.2d 547, 554 (8th Cir. 1991). The error, however, is of no avail to the Plaintiffs. Mr. Webb does not contend that a plaintiff can never establish a traditional Section 2 claim against an individual, but rather that Plaintiffs have failed to allege a necessary element (i.e. monopoly power) against him here.

claims they conspired with Boeing. . . . Under *Copperweld*, [the individual defendants] thus cannot be held liable under section 2 for actions in furtherance of a conspiracy with Boeing.").

Indeed, one of Plaintiffs' cited cases recognizes that "a conspiracy between a corporation and its officers is not actionable under section 1 of the Sherman Act." *Monarch Mktg. Sys. v. Duncan Parking Meter Maint. Co., Inc.*, 1986 WL 3625, at *1 (N.D. Ill. March 13, 1986) (quoting *Univ. Life Ins. Co. of Amer. v. Unimarc Ltd.*, 699 F.2d 846, 852 (7th Cir. 1983)).

Even if Plaintiffs could overcome the intracorporate conspiracy doctrine and assert a viable conspiracy to monopolize claim against Mr. Webb, they wholly fail to allege the required elements for a conspiracy to monopolize claim. Specifically, Plaintiffs must demonstrate a "specific intent to monopolize." *Richter Concrete Corp. v. Hilltop Concrete Corp.*, 691 F.2d 818, 827 (6th Cir. 1982) ("In order to prove [defendants] engaged in a conspiracy to monopolize, [plaintiff] would have had to prove both an existence of conspiracy and specific intent to monopolize.").[3] The Complaint is devoid of any allegations that Mr. Webb possessed the specific intent to monopolize.

### B.  Plaintiffs' claim under the Tennessee Trade Practices Act fails.

Plaintiffs concede that the Tennessee Trade Practices Act ("TTPA") requires proof that the alleged anticompetitive conduct must "affect[] Tennessee trade or commerce to a substantial degree." *Freeman Indus., LLC v. Eastman Chem. Co.*, 172 S.W.3d 512, 523 (Tenn. 2005). In the Response, Plaintiffs repeat the allegations from the Complaint that the purported anticompetitive scheme "was conceived and implemented in Tennessee, where Varsity and USASF were and are headquartered[, and that] Webb was and is a resident of Tennessee." Resp. at p. 7. Such

---

[3] Plaintiffs also do not allege that Mr. Webb committed any "overt act" in furtherance of a conspiracy to monopolize. *See Howard Hess Dental Labs, Inc. v. Dentsply Intern., Inc.*, 602 F.3d 237, 253 (3d Cir. 2010) (identifying "an overt act in furtherance of the conspiracy" as an additional element of a conspiracy to monopolize).

allegations focus on "the anticompetitive conduct itself," rather than the effects of such conduct, and are insufficient to state a claim under the TTPA. *See Freeman Indus.*, 172 S.W.3d at 524.

Plaintiffs reveal their misplaced focus on conduct, rather than the effects of such conduct, by claiming that "overt acts in furtherance of their scheme were committed in Tennessee." Resp. at p. 7. The supposed "overt acts" would necessarily constitute "conduct" and not demonstrate any "substantial effects" of such conduct. Notably, Plaintiffs identify the organization and operation of "cheer competitions and camps" as overt acts supporting their TTPA claim. *Id.* at p. 8. Such conduct would not even fall under the TTPA, which does not apply to intangible services such as "cheer competitions and camps." *See Bennett v. Visa U.S.A. Inc.*, 198 S.W.3d 747, 751 (Tenn. Ct. App. 2006) ("The law is well settled that the TTPA applies only to tangible goods, not intangible services."). Similarly, the other "overt act" Plaintiffs identify, "manufactur[ing] cheer apparel," would constitute Varsity's unilateral conduct, which is not actionable under the TTPA. *See In re Effexor Antitrust Litig.*, 357 F. Supp. 3d 363, 393-4 (D.N.J. 2018) (dismissing TTPA claim premised on unilateral conduct).

### C. Plaintiffs do not identify allegations of intrastate conduct or effects.

Plaintiffs concede that many of the state antitrust statutes they rely upon require that the purported anticompetitive conduct have substantial effects upon the commerce of those states.[4] Plaintiffs rely upon allegations that purported class members "in each identified state" have paid inflated prices. Resp. at p. 9 (citing CCA at ¶ 34). The Complaint broadly alleges that "Defendants' anticompetitive conduct deprived the members of the Classes of the benefits of

---

[4] Plaintiffs rely upon cases that provide little or no support to their argument. *See, e.g.*, *Griffiths v. Blue Cross and Blue Shield of Alabama*, 147 F. Supp. 2d 1203 (N.D. Ala. 2001) (finding merely that an agreement that restricted competition in Alabama may also have interstate effects beyond Alabama); *In re Aggrenox Antitrust Litig.*, 94 F. Supp. 3d 224, 253 (D. Conn. 2015) (considering whether the challenged conduct or its effects must occur "purely or primarily within the state.").

6

competition . . . causing them to pay artificially-inflated supracompetitive prices in the Relevant Markets." CCA at ¶ 34. Plaintiffs allege that Varsity violated each state antitrust law "with respect to purchases of Defendants' products and services" in each state. CCA at ¶ 248. Such conclusory and boilerplate allegations are insufficient.

At least one court in this Circuit has dismissed claims under many of the same state antitrust statutes because they relied on conclusory allegations and failed to "allege any facts specific to" those jurisdictions requiring intrastate conduct or effects. *See In re Cast Iron Soil Pipe and Fittings Antitrust Litig.*, 2015 WL 5166014, at *26 (E.D. Tenn. June 24, 2015) (dismissing claims asserted under antitrust statutes of the District of Columbia, Mississippi, Nevada, New York, North Carolina, South Dakota, Tennessee, West Virginia, and Wisconsin, due to the plaintiffs' failure to allege conduct or commercial effects within those states).

In *Cast Iron*, the court rejected as deficient allegations that "price competition was restrained, suppressed, and eliminated," that "prices were raised, fixed, maintained, and stabilized at artificially high levels," and that class members residing in the states "were deprived of free and open competition." *Id.* The court found such allegations insufficient because they "do not specifically identify certain details relating to the wrongful conduct or identify a connection between the [state] and the wrongful conduct." *Id.* Here, Plaintiffs' boilerplate allegations offer even less detail.

### D. Plaintiffs cannot bring causes of action under Arkansas, Illinois, and Utah antitrust laws.

Plaintiffs acknowledge that Arkansas's antitrust statute does not provide for a private right of action for indirect purchasers. Resp. at p. 12. Instead, only the attorney general may bring an action on behalf of indirect purchasers under the statute. ARK. CODE ANN. § 4-75-315. Plaintiffs respond by claiming they can bring antitrust claims under the Arkansas Deceptive Trade Practices

7

Act ("ADTPA").  Resp. at p. 12 (citing ARK. CODE ANN. §§ 4-88-101).  In their "Third Claim for Relief," Plaintiffs purport to bring a claim under the Arkansas antitrust statute, not the ADTPA.  CCA at ¶ 248.D (citing ARK CODE ANN. 4-75-309).  Because Plaintiffs cannot bring a claim under the Arkansas antitrust statute, that claim must be dismissed.  Additionally, the Court should dismiss Plaintiffs' purported ADTPA claim in their "Fourth Claim for Relief" for the same reasons that all of their consumer protection claims should be dismissed.

Plaintiffs rely upon *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 408 (2010) to contend that the Illinois prohibition on antitrust class actions is inapplicable.  That reliance is misplaced. The majority of courts have rejected Plaintiffs' theory, found that the Illinois antitrust law is distinguishable from the New York law considered in *Shady Grove*, and refused to consider class actions brought under the Illinois antitrust statute.  *See In re Effexor*, 357 F. Supp. 3d at 391 (citing cases).  Courts have found that the Illinois prohibition on class actions is substantive because the rule applies only to the Illinois antitrust law, is incorporated in the same provision as the underlying statutory right, and reflects a policy judgment.  *In re Wellbutrin XL Antitrust Litig.*, 756 F. Supp. 2d 670, 677 (E.D. Pa. 2010).  Thus, courts recognize that the Illinois bar on class actions is "deeply intertwined" with the Illinois substantive antitrust law.  *See Staley v. Gilead Sci., Inc.*, 446 F. Supp. 3d 578, 624-26 (N.D. Cal. 2020) (dismissing claim under the Illinois antitrust statute after comparing judicial analysis and concluding that the prohibition on class actions applies in federal court).

With respect to Utah's residency requirement, Plaintiffs' position renders the statutory requirement meaningless by claiming it can be satisfied simply by alleging that putative class members are Utah residents.  Resp. at p. 13.  Again, Plaintiffs are incorrect.  "The majority of courts that have been presented with this statute require at least one Utah citizen or resident be a

named plaintiff." *In re Effexor*, 357 F. Supp. 3d at 393 (citing cases and dismissing claim under Utah antitrust statute). Because none of the named Plaintiffs are Utah citizens or residents, the Court should dismiss this claim.

## II. Plaintiffs Fail to Articulate Claims under any State's Consumer Protection Statute.

Plaintiffs seek to evade Rule 8's pleading requirements by conclusorily claiming that "state consumer protection statutes typically are interpreted broadly" and that many are "modeled on the Federal Trade Commission ('FTC') Act." Resp. at p. 14. Plaintiffs fail to acknowledge, however, that "there are *significant* differences among States' consumer protection laws." *Thompson v. Jiffy Lube Intern., Inc.*, 250 F.R.D. 607, 625 (D. Kan. 2008) (emphasis in original); *see also Tylka v. Gerber Prods. Co.*, 178 F.R.D. 493, 498 (N.D. Ill. 1998) (noting "the nuances and differences presented by the consumer fraud statutes" when considering class certification involving 50 consumer fraud statutes). In doing so, Plaintiffs "have failed to state how [Mr. Webb's] conduct violated any particular statute" and failed to satisfy Rule 8. *See In re Aluminum Warehousing Antitrust Litig.*, 2014 WL 4277510, at *38 (S.D.N.Y. Aug. 29, 2014) (holding that claims under a "large array" of state consumer protection statutes fail "to meet even the basic requirements of Rule 8" when "the statutes are listed . . . and the Court and the defendants are then to determine how and why the alleged conduct violated a particular statute.").

Moreover, the Response wholly ignores the Complaint's deficiencies with respect to the purported claims against Mr. Webb for violation of various state consumer protection statutes. It is not clear from the Complaint that Plaintiffs are even asserting state consumer protection claims against Mr. Webb individually. Indeed, Plaintiffs do not even refer to Mr. Webb in their "Fourth Claim for Relief." *See* CCA at ¶¶ 251-56. The only indication that Plaintiffs *may* be asserting the claims against Mr. Webb is their use of the plural "Defendants" in paragraphs 254-55.

9

The use of the plural "Defendants" is inconsistent and incompatible with Plaintiffs' allegations in which they state, "*Varsity* engaged in unlawful and unfair acts and practices . . . CCA at ¶ 252 (emphasis added). Likewise, Plaintiffs allege they suffered damages as a "result of *Varsity's* unlawful and unfair business practices." *Id.* at ¶ 253 (emphasis added). Plaintiffs claim only that Varsity, not Mr. Webb, violated state consumer protection laws.

### III. Plaintiffs' Unjust Enrichment Claim Fails.

Plaintiffs suggest that their unjust enrichment claim against Mr. Webb should survive because they "are not required to allege specific facts regarding the *amount* of benefit" to Mr. Webb. Resp. at p. 17 (emphasis added). However, that does not relieve Plaintiffs of their obligation to allege facts to show that Mr. Webb actually retained some benefit, regardless of the alleged amount. *See Freeman Indus., LLC*, 172 S.W.3d at 525 (explaining that the Tennessee statute requires a benefit conferred on the defendant, and the defendant's appreciation and acceptance of that benefit). The Complaint does not identify any benefit whatsoever that Mr. Webb received, directly or indirectly, that could support a claim for unjust enrichment. As a result, the Court should dismiss Plaintiffs' unjust enrichment claim.

### IV. Plaintiffs are not Entitled to Declaratory Judgment and Injunctive Relief.

Plaintiffs cite to three paragraphs of the Complaint to support their allegation that Mr. Webb "continues to actively participate" in a purported exclusionary scheme. Resp. at p. 19-20 (citing CCA at ¶¶ 20, 117-118). None of those paragraphs mentions any continued active participation by Mr. Webb. Plaintiffs' failure to allege any facts demonstrating that Mr. Webb violated the Sherman Act, or poses any threat to do so in the future, is fatal to their claims for declaratory judgment and injunctive relief.

### CONCLUSION

Mr. Webb respectfully requests that the Court dismiss all claims against him.

Dated:  April 29, 2021

By: /s/ *Paul E. Coggins*

Paul Coggins* (TX Bar #04504700)
Brendan Gaffney* (TX Bar #24074239)
LOCKE LORD LLP
2200 Ross Avenue, Suite 2800
Dallas, TX 75201
Phone: (214) 740-8000
Fax: (214) 740-8800
pcoggins@lockelord.com
bgaffney@lockelord.com

* Admitted *pro hac vice*

Edward L. Stanton III (TN Bar #018904)
BUTLER SNOW LLP
6075 Poplar Avenue, Suite 500
Memphis, Tennessee 38119
Telephone: (901) 680-7336
Facsimile: (901) 680-7201
Edward.Stanton@butlersnow.com

**ATTORNEYS FOR JEFF WEBB**