UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| JONES et al.,<br><br>         Plaintiffs,<br>    v.<br><br>VARSITY BRANDS, LLC et al.,<br><br>         Defendants. | **Civ. Action No. 2:20-cv-02892** |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO STRIKE CLASS ALLEGATIONS**

# TABLE OF CONTENTS

INTRODUCTION ..................................................................................................................1
ARGUMENT.........................................................................................................................2
   I. Plaintiffs Do Not Adequately Address the Fatal Problems With Adequacy and Typicality ...2
   II. Plaintiffs Provide No Basis to Suggest Harm Can Be Established By Common Proof.........4
   III. The Proposed Nationwide Damages Class Under Tennessee Law Fails as a Matter of Law…………………………………………………………………………………………5
      A.  Tennessee Antitrust Law Does Not Apply to Most Claims Here....................................5
      B.  The Choice of Law for Most of Plaintiffs' Claims is Not Tennessee Law ......................6
   IV. The Proposed State Law Damages Class Fails as a Matter of Law....................................7
   V. Plaintiffs do Not Rehabilitate Injunctive Relief..................................................................9
   VI. Plaintiffs Miss the Point on "Standing" ............................................................................9
   VII. Modification or Amendment of Plaintiffs' Class Definitions Would be Futile ................10
CONCLUSION......................................................................................................................10

## TABLE OF AUTHORITIES

**Federal Cases**

*Bell Atl. Corp. v. AT&T Corp.*,
   339 F.3d 294 (5th Cir. 2003) ...................................................................................................4

*Fallick v. Nationwide Mutual Insurance Co.*,
   162 F.3d 410 (6th Cir. 1998) .................................................................................................10

*Fishon v. Mars Petcare US, Inc.*,
   No. 19-CV-00816, 2020 WL 6826733 (M.D. Tenn. Nov. 20, 2020) .....................................2

*In re Cast Iron Soil Pipe and Fittings Antitrust Litig.*,
   No. 14–md–2508, 2015 WL 5166014 (E.D. Tenn. June 24, 2015).........................................1

*In re Hydrogen Peroxide Antitrust Litig.*,
   552 F.3d 305 (3d Cir. 2008) ....................................................................................................4

*In re Polyurethane Foam Antitrust Litig.*,
   314 F.R.D. 226 (N.D. Ohio 2014)......................................................................................1, 3

*In re Restasis (Cyclosporine Ophthalmic Emulsion) Antitrust Litig.*,
   335 F.R.D. 1 (E.D.N.Y. 2020) ................................................................................................2

*In re Skelaxin (Metaxalone) Antitrust Litig.*,
   299 F.R.D. 555 (E.D. Tenn. 2014)...................................................................................... 6-7

*Loreto v. Procter & Gamble Co.*,
   No. 09-cv-815, 2013 WL 6055401 (S.D. Ohio, Nov. 15, 2013) ............................................9

*Operating Eng'rs Loc. 324 Health Care Plan v. G & W Const. Co.*,
   783 F.3d 1045 (6th Cir. 2015) ................................................................................................2

*Phillips Petroleum Co. v Shutts*,
   472 U.S. 797 (1985) ................................................................................................................7

*Pilgrim v. Universal Health Card, LLC*,
   660 F.3d 943 (6th Cir. 2011) ............................................................................................. 7-8

*Powers v. Hamilton Cty. Pub. Def. Comm'n*,
   501 F.3d 592 (6th Cir. 2007) ................................................................................................10

*Rikos v. Procter & Gamble Co.*,
   799 F.3d 497 (6th Cir. 2015) ................................................................................................4

**State Cases**

*Bennett v. Visa U.S.A. Inc.*,
   198 S.W.3d 747 (Tenn. Ct. App. 2006) ..................................................................................6

*Freeman Indus., LLC v. Eastman Chem. Co.*,
   172 S.W.3d 512 (Tenn. 2005) ................................................................................................5

*Hataway v. McKinley*,
   830 S.W.2d 53 (Tenn. 1992) ..................................................................................................7

*Jo Ann Forman, Inc. v. Nat'l Council on Comp. Ins., Inc.*,
   13 S.W.3d 365 (Tenn. Ct. App. 1999) ...................................................................................6

**State Statutes**

Tennessee Trade Practices Act ("TTPA") ......................................................................................6

**Other Authorities**

Fed. R. Civ. P. 23(b)(2) ...................................................................................................................9

Fed. R. Civ. P. 23(b)(3) ............................................................................................................ 2, 9

## INTRODUCTION

Plaintiffs' response to Defendants' motion to strike does nothing to cure the fundamental defect in their case, which cannot be corrected by promises and rhetoric: the proposed classes are so sprawling that they cannot possibly satisfy the requirements for class certification, even after a lengthy and expensive discovery process. Plaintiffs characterize this case as "routine[]" and involving "prototypical" issues, and claim that class requirements can be satisfied because all members of the putative classes "assert the same facts, the same anticompetitive conduct and the same injuries." (Pls.' Br. at 1, 6, 19.) But the Defendants' opening brief and Plaintiffs' own Complaint make plain that this is simply not true and that the intricacies and varied nature of the markets and proposed classes that Plaintiffs seek to pursue preclude the proposed classes from coming even close to having the required cohesion to go forward.

Unlike the single-market cases on which Plaintiffs rely for support,[1] the Complaint here alleges three purported markets (Competitions, Apparel, and Camps). Each involves at least two different types of intermediaries (All Star gyms and schools, and among schools, various kinds of schools like public and private secondary schools and colleges and universities) that have distinct relationships both with their participants and with Varsity: to take a few examples, some received rebates, discounts, and/or free services, while others did not; some competed for prestigious bids to championship events, while others did not; some competed at All-Star competitions, others only participated in scholastic cheer; some went to cheer camps, others did not. Indeed, insofar as Plaintiffs seek to bring scholastic cheer and cheer camps into their

---

[1] *See* Pls.' Br. at 4, 7, citing *In re Cast Iron Soil Pipe and Fittings Antitrust Litig.*, No. 14–md–2508, 2015 WL 5166014 (E.D. Tenn. June 24, 2015) (one narrow market consisting of only cast iron soil pipes and their fittings) and *In re Polyurethane Foam Antitrust Litig.*, 314 F.R.D. 226, 230 (N.D. Ohio 2014) (one product market with two sub-markets).

1

proposed classes, the classes they propose are even more impossible to certify than the class in *Fusion Elite.*

## ARGUMENT

As Plaintiffs acknowledge, "Rules 23(d)(1)(D) and 23(c)(1)(A), read together with Rule 12(f), grant the Court authority to strike class allegations prior to discovery." (Pls.' Br. at 3.) The cases on which Plaintiffs rely neither establish that striking the class allegations in this type of complex case with multiple markets, products, services, distribution chains, and intra-class member conflicts under federal and 37 different state laws is inappropriate; nor do they justify permitting Plaintiffs to conduct a fishing expedition in an attempt to support their untenable class claims.[2] To the contrary, where, as here, these deficiencies are evident from the face of the Complaint and establish that no class can be certified, courts have not hesitated to strike class allegations.

### I. Plaintiffs Do Not Adequately Address the Fatal Problems With Adequacy and Typicality

Plaintiffs take issue with Defendants' assertion of inherent conflicts in the purported class, but make only conclusory claims of common interest among class members. Their purported simple interest in "recovering damages" or "obtaining injunctive . . . or declaratory relief," (Pls.' Br. at 6), does not satisfy Rule 23's requirement that "questions of law or fact common to class members" predominate under the facts alleged here. Fed. R. Civ. P. 23(b)(3).

---

[2] *See, e.g., Operating Eng'rs Loc. 324 Health Care Plan v. G & W Const. Co.*, 783 F.3d 1045, 1050 (6th Cir. 2015) (recognizing the purpose of motions to strike is to "avoid the expenditure of time and money that must arise from litigating spurious issues" and striking affirmative defenses that were inadequately pled or otherwise failed as a matter of law); *In re Restasis (Cyclosporine Ophthalmic Emulsion) Antitrust Litig.*, 335 F.R.D. 1 (E.D.N.Y. 2020) (end-payors antitrust claim involving a single product); *Fishon v. Mars Petcare US, Inc.*, No. 19-CV-00816, 2020 WL 6826733, at *1 (M.D. Tenn. Nov. 20, 2020) (putative nationwide consumer class brought claims about one product under three states' laws).

2

Plaintiffs summarily state that the putative class members all "assert the same facts, the same anticompetitive conduct and the same injuries," (Pls.' Br. at 6), but then concede that this is, in fact, *not* true. For example, Plaintiffs concede that "some gyms may have received rebates under Network Agreements or the Family Plan [and] . . . some gyms received paid trips to All-Star competitions or attended high-level meets." (Pls.' Br. at 7.) Given these differences, the only reasonable inference from Plaintiffs' allegations is that certain class members benefitted from key aspects of the alleged "anticompetitive scheme," regardless of whether base prices were "artificially-inflated" by Varsity's supposed monopoly. Plaintiffs fail to explain how putative class members who benefit from loyalty discounts and paid championship bids can assert the same injuries as those who paid full price, or how the former would not be harmed by an injunction against those programs.[3]

Plaintiffs also seek to misdirect by asking the Court to ignore the discount programs as "just one aspect of the anti-competitive scheme." (Pls.' Br. at 6-7.) But the heart of Plaintiffs' Complaint is that these programs are the lynchpin that entice gyms and schools to compete at Varsity competitions and purchase Varsity apparel and thus perpetuate Varsity's alleged monopoly (*see, e.g.*, Compl. ¶¶ 60-61, 73, 141-52, 154, 156, 184-85, 190, 207); they are not some background fact or semi-relevant aside. Nevertheless, Plaintiffs ask the Court to assume away the fact that those who receive discounts benefit at the expense of those that do not. Plaintiffs on both sides of that line should not be in the same class.

---

[3] These facts distinguish this case from *In re Polyurethane Foam Antitrust Litig.*, where no direct or indirect purchasers were alleged to benefit from free and discounted services or would be harmed by the proposed remedy. 314 F.R.D. at 234-35, 237-39.

### II.     Plaintiffs Provide No Basis to Suggest Harm Can Be Established By Common Proof

Beyond the inherent conflicts, Plaintiffs provide nothing to suggest harm can be shown by common proof.  In antitrust cases, common questions do not predominate unless, at a minimum, harm can be shown by common proof.  *See, e.g.*, *Rikos v. Procter & Gamble Co.*, 799 F.3d 497, 522 (6th Cir. 2015); *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 311-12 (3d Cir. 2008); *Bell Atl. Corp. v. AT&T Corp.*, 339 F.3d 294, 302 (5th Cir. 2003).

Plaintiffs simply assert that they will be able to demonstrate many elements of their case—specifically, Defendants' participation in an antitrust conspiracy, Plaintiffs' resulting injuries, and the relevant markets' boundaries—with common proof, without explaining how they could do so.  (*See* Pls.' Br. at 9; Defs.' Br. at 11-13.)  In reality, the Complaint makes clear that this will be an impossible task, particularly with respect to injury.  Harm as to the myriad products and services that Plaintiffs put at issue for a single class—including competitions, apparel, and camps—could not possibly be shown by common proof.  (*See* Defs.' Br. at 8.)

First, Plaintiffs do not address the fundamental problem that it will be impossible to demonstrate through common proof that, for example, an All Star participant who only paid to attend competitions and a scholastic participant who only purchased a uniform were injured by the same conduct.  Given the combination of markets, products, and types of cheerleading (All Star and scholastic), there are innumerable permutations and combinations, making proof of harm by common evidence manifestly impossible.  Second, Plaintiffs cannot explain how they would show through common proof that a variety of direct purchasers—including schools (which themselves include public schools, private schools, colleges and universities) and gyms—who bought their wide variety of products and services (some allegedly monopolized and some not) through different channels were overcharged, and then, whether and to what extent any of

4

those overcharges were passed on to indirect purchasers buying from these varied intermediaries. (*See* Defs.' Br. at 12.) It is beyond the realm of plausible that the entrance or registration fees they paid and the costs of the dozens, if not hundreds, of apparel products as to which damages are sought were raised by a uniform or quasi-uniform or related amount. Plaintiffs are reduced to speculation that Varsity's rebates make their offering so attractive to gyms and schools that, over time, alternative suppliers have exited the market and that Varsity has charged more as a result for all (and each) of the myriad cheerleading-related products and services and that, further, indirect purchasers, regardless through which of numerous intermediaries, were injured in some way that can be shown by common proof. (*See* Pls.' Br. at 13.) There is no way to break through this complexity, and Plaintiffs certainly have not provided even a hint of one. The Court can only conclude that harm cannot possibly be shown by common proof.

### III. The Proposed Nationwide Damages Class Under Tennessee Law Fails as a Matter of Law

#### A. Tennessee Antitrust Law Does Not Apply to Most Claims Here

Plaintiffs argue that under *Freeman*, out-of-state indirect purchasers may recover under Tennessee antitrust law as long as the alleged anticompetitive conduct affects Tennessee trade or commerce to a substantial degree. (Pls.' Br. at 15 (citing *Freeman Indus., LLC v. Eastman Chem. Co.*, 172 S.W.3d 512, 517 (Tenn. 2005)).) But, Plaintiffs provide nothing to support the premise—which defies common sense. To the contrary, the Complaint alleges that Varsity promotes and sells apparel at events "across the country" and holds major events at Walt Disney World Resort, which of course is not in Tennessee. (Compl. ¶¶ 47, 60.) Indeed, as the named plaintiffs themselves demonstrate, most putative class members attended events and purchased apparel outside of Tennessee. (Compl. ¶¶ 13-15.)

Furthermore, no purchasers—in-state or out-of-state—may recover under Tennessee

5

antitrust law for many of the purchases implicated by Plaintiffs proposed class definition because it is "well settled" that the Tennessee Trade Practices Act (the "TTPA") "applies only to tangible goods, not intangible services." *Bennett v. Visa U.S.A. Inc.*, 198 S.W.3d 747, 751 (Tenn. Ct. App. 2006); *see also Jo Ann Forman, Inc. v. Nat'l Council on Comp. Ins., Inc.*, 13 S.W.3d 365, 369, 373 (Tenn. Ct. App. 1999) (concluding that the terms "product or article" as used in the TTPA are not synonymous with "trade or commerce" as used by the Sherman Act and so the "intangible" service of workers compensation insurance is a not subject to Tennessee antitrust law). As such, two of Plaintiffs' three alleged markets—Competitions and Camps—are not actionable under Tennessee antitrust law, and any putative class member who made purchases only in those markets could not sustain a claim under Tennessee law.[4]

### B. The Choice of Law for Most of Plaintiffs' Claims is Not Tennessee Law

Even if the claims of the out-of-state members of the putative class fell within the scope of the TTPA, they would still not be actionable under the TTPA under the required choice-of-law analysis. *See, e.g., In re Skelaxin (Metaxalone) Antitrust Litig.*, 299 F.R.D. 555, 582 (E.D. Tenn. 2014). Under Tennessee choice of law rules, Tennessee law can only govern the dispute if Tennessee has the *most* significant relationship to each putative class member's claim. *Id.* In this case, as in most antitrust cases, it is the place of injury—which is where the alleged overcharge occurred—that has the most significant relationship to each indirect purchaser's claim. *See id.* ("Antitrust class actions . . . focus on the place the injury occurred, which is where the plaintiffs were overcharged."); (Defs.' Br. at 13-15). For the vast majority of the class, that

---

[4] There are a host of other reasons why Plaintiffs' claim under Tennessee law is not actionable, including that their claims alleging unilateral conduct fall outside the scope of the TTPA. (*See* Webb Mot. to Dismiss Reply Br. at 6; Varsity Mot. to Dismiss Reply Br. at 10.)

place is not Tennessee.[5]

Plaintiffs also generally argue that a nationwide class under Tennessee law would be appropriate because Defendants' alleged scheme had "considerable factual overlap" across states. (Pls.' Br. at 17, n. 8) (citing *Pilgrim v. Universal Health Card, LLC*, 660 F.3d 943, 948 (6th Cir. 2011).) But "factual overlap" is irrelevant to the choice of law analysis, which turns on whether Tennessee has the most significant relationship to each *individual* putative class member's claim. *Pilgrim*, 660 F.3d at 947 ("[T]he consumer-protection laws of the State where *each* injury took place would govern these claims.").[6] Given the alleged facts, no amount of discovery could show that Tennessee was the place of injury for most of the proposed class or has the most significant relationship to each putative class member's dispute. Under these circumstances, the Court should strike the class allegations regarding a single nationwide class under Tennessee law. *See Pilgrim,* 660 F.3d at 948 (striking class allegations under similar circumstances).

**IV.   The Proposed State Law Damages Class Fails as a Matter of Law**

Plaintiffs identify no case that certifies a class of individuals who made purchases in 37 different states under the particular laws of those states, as Plaintiffs have proposed here. Indeed, Plaintiffs do not even have standing to sue for damages under nine of the pled states' antitrust

---

[5] Neither *Phillips Petroleum Co. v Shutts*, 472 U.S. 797 (1985), nor *Hataway v. McKinley*, 830 S.W.2d 53 (Tenn. 1992), are to the contrary. (*See* Pls.' Br. at 15-16.) *Phillips* rejected application of a single state's law to out-of-state transactions. 472 U.S. at 822. In *Hataway*, which did not involve out-of-state plaintiffs, Tennessee had the most significant relationship to the dispute. Although the decedent died at a rock quarry in Arkansas, the death occurred during a scuba diving class taught at Memphis State University, and the parties were residents of Tennessee. *Hataway*, 830 S.W.2d at 54. Here, such strong ties to Tennessee would not exist for the out-of-state members of the putative class.

[6] *Pilgrim* interpreted Ohio choice of law rules, but the Court in *Skelaxin* notes that Tennessee and Ohio require similar choice of law inquiries. 299 F.R.D. at 584 ("[T]his distinction is of minimal consequence since Ohio also applies the Restatement view of choice-of-law.").

7

laws (many of which Plaintiffs omit from their Appendix) because they are indirect purchasers or due to other unique features of those states' laws. (*See* Appendix A.) Likewise, it is not correct that each of the relevant state antitrust laws "mirrors the federal antitrust laws." (Pls.' Br. at 18.) As outlined in Appendix B, the antitrust laws of many of the states that Plaintiffs seek to include in their class contain material differences from federal law that create a multitude of individualized issues and will make it impossible for Plaintiffs to show predominance. The same is true of the various state consumer protection laws, as Plaintiffs implicitly concede by failing to address Defendants' showing of their variability. (*See* Defs.' Br. at 16.)

The allegations in the Complaint also undermine Plaintiffs' conclusory assertion of "considerable factual overlap" across states. Indeed, in striking allegations of a class "governed by the laws of the various States," the Sixth Circuit in *Pilgrim* held that "[w]here and when [Defendants] offered discounts is a prototypical factual issue that will vary from place to place and from region to region." 660 F.3d at 948. Similarly, in this case, where and when Varsity offered discounts, rebates, free services, or paid bids for its events, camps, and apparel—and whether those offerings could be anticompetitive under the market conditions in that location and time or harmed any of the participants—will inevitably vary from state to state. Furthermore, a central part of Plaintiffs' allegations is that Varsity owns 33 events that provide Worlds bids.[7] These events do not take place in all of the 37 states that Plaintiffs include in their proposed class. Thus, as in *Pilgrim*, 660 F.3d at 947-48, "defendants' program did not operate the same way in every State."

---

[7] (*See* Compl. ¶ 126 ("Varsity and USASF severely restrict competition in the Cheer Competition Market by limiting the number of Cheer Competitions entitled to provide Bids to Worlds."); *see also id.* at ¶ 116, 123-124, 136, 139, 160-162, 174, 184 (discussing importance these events).)

8

## V.      Plaintiffs Do Not Rehabilitate Injunctive Relief

Plaintiffs' argument that an injunctive relief class is appropriate because "Defendants did not make individualized inquiries into which discounts, rebates, or bids were provided to some and not others and instead conducted their scheme systematically on Plaintiffs and class members as a whole" is makeweight.[8]  (Pls.' Br. at 18.)  The core issue is not whether the anti-competitive conduct was a "systematic scheme," but rather is whether the injunctive remedy that the plaintiffs seek to impose—elimination of the rebates, discounts, and paid Worlds bids programs—would provide relief to some class members but not others. (Defs.' Br. at 16-17.)

The same alleged facts that create a conflict for the putative Rule 23(b)(3) class also preclude an injunctive relief class under Rule 23(b)(2).  (*See* Defs.' Br. at 16-17; *supra* at Section I.)  Even if Varsity's conduct was "systematic," some gyms and schools have benefitted from it, and given Plaintiffs' pass-through theory, so have some putative class members.  (Defs.' Br. at 16-17.)  Because some class members would be harmed, no injunctive relief class could be certified.

## VI.     Plaintiffs Miss the Point on "Standing"

As Defendants discussed in their opening brief, "a class cannot be certified if *any members in the class* would lack Article III standing." (Defs.' Br. at 17-18) (emphasis added) (citing *Loreto v. Procter & Gamble Co.*, No. 09-cv-815, 2013 WL 6055401, at *3 (S.D. Ohio, Nov. 15, 2013).)  Plaintiffs respond that "each of the *named* plaintiffs" have standing, (Pls.' Br. at 19 (emphasis added)), in effect conceding that there are absent class members who lack

---

[8] It is also false.  Plaintiffs allege that Varsity did in fact make "individualized inquiries" and conferred unique benefits on some putative class members.  (*See e.g.* Compl. ¶ 142 (Varsity allegedly "induces larger and more prestigious All-Star Gyms . . . to sign Network Agreements," under which those "prestigious" gyms enjoy unique rebates and discounts for attending Varsity events because their "attendance is critical to putting on successful All-Star events.").)

9

standing. But a class cannot be certified if absent members of the class lack standing. (See Defs.' Br. at 17-18.) Plaintiffs' reliance on *Fallick v. Nationwide Mutual Insurance Co.*, 162 F.3d 410 (6th Cir. 1998), to avoid the standing issue is misplaced. In *Fallick*, there was no dispute that injury to the absent class members had been alleged; the issue was whether the named plaintiff satisfied the other Rule 23 criteria to represent class members injured by ERISA plans. 162 F.3d at 423. In this case, by contrast, Plaintiffs' own allegations demonstrate that many of the class members have benefitted from—not been harmed by—the alleged anticompetitive conduct and therefore lack standing to challenge it. *See also supra* Section II.

### VII. Modification or Amendment of Plaintiffs' Class Definitions Would be Futile

Plaintiffs' final argument is to appeal to the Court's ability to "modify and mold" a class. (Pls.' Br. at 20.) But it is not the Court's duty to engineer a workable definition in Plaintiffs' stead or permit discovery on the assumption that such a definition is even possible where the Complaint demonstrates the opposite. Plaintiffs cite *Powers* as an example of the Court's latitude to adjust a class definition when necessary, but the modifications in *Powers* were simply to remove those class members who had not been represented by the defendant, a comparatively simple and objective task. *See Powers v. Hamilton Cty. Pub. Def. Comm'n*, 501 F.3d 592, 618 (6th Cir. 2007). Given the antagonistic and misaligned interests of the members of the class proposed here, no such simple and objective correction could be made and modification or amendment of the class allegations would be futile.

### CONCLUSION

For the foregoing reasons and for the reasons stated in Defendants' opening brief, Defendants respectfully request that the Court strike Plaintiffs' class allegations.

April 29, 2021

Respectfully submitted,

By: s/ Matthew S. Mulqueen

George S. Cary*
Alexis Collins*
Steven J. Kaiser*
CLEARY GOTTLIEB STEEN & HAMILTON LLP
2112 Pennsylvania Avenue, NW
Washington, DC 20037
Phone: (202) 974-1500
Fax: (202) 974-1999
gcary@cgsh.com
mnelson@cgsh.com
alcollins@cgsh.com
skaiser@cgsh.com

* Admitted *pro hac vice*

Matthew S. Mulqueen (TN #28418)
Adam S. Baldridge (TN #23488)
BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ
165 Madison Avenue, Suite 2000
Memphis, TN 38103
Phone: (901) 526-2000
Fax: (901) 577-0866
mmulqueen@bakerdonelson.com
abaldridge@bakerdonelson.com

*Attorneys for Varsity Brands, LLC; Varsity Spirit, LLC; Varsity Spirit Fashions & Supplies, LLC; Charlesbank Capital Partners, LLC; and Bain Capital Private Equity, LP*

By: s/ Nicole D. Berkowitz

Grady Garrison (TN #008097)
Nicole D. Berkowitz (TN #35046)
BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ
165 Madison Avenue, Suite 2000
Memphis, TN 38103
Phone: (901) 526-2000
Fax: (901) 577-0866
ggarrison@bakerdonelson.com
nberkowitz@bakerdonelson.com

*Attorneys for U.S. All Star Federation, Inc.*

By: s/ Paul Coggins

Paul Coggins*
Brendan Gaffney*
LOCKE LORD LLP
2200 Ross Avenue, Suite 2800
Dallas, TX 75201
Phone: (214) 740-8000
Fax: (214) 740-8800
pcoggins@lockelord.com
bgaffney@lockelord.com

* Admitted *pro hac vice*

Edward L. Stanton III (TN Bar #018904)
BUTLER SNOW LLP
6075 Poplar Avenue, Suite 500
Memphis, Tennessee 38119
Telephone: (901) 680-7336
Facsimile: (901) 680-7201
Edward.Stanton@butlersnow.com

*Attorneys for Jeff Webb*