**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TENNESSEE**

| | |
|---|---|
| **FUSION ELITE ALL STARS**, et al., | |
| Plaintiffs, | |
| v. | Case No. 2:20-cv-02600-SHL-cgc |
| **VARSITY BRANDS, LLC**, et al., | **JURY TRIAL DEMANDED** |
| Defendants. | |

**MEMORANDUM OF LAW IN SUPPORT OF**
**PLAINTIFFS' MOTION TO COMPEL DISCOVERY RESPONSES**
**FROM DEFENDANT U.S. ALL STAR FEDERATION, INC.**

## TABLE OF CONTENTS

I.      INTRODUCTION ...................................................................................................................1

II.     HISTORY OF MEET & CONFERS ...................................................................................3

III.    LEGAL STANDARD............................................................................................................4

IV.     ARGUMENT ........................................................................................................................6

        A.      Plaintiffs' Requests for Production........................................................................6

        B.      Disputes Over Search Parameters for USASF's ESI.............................................9

                1.      Plaintiffs' Proposed Search Terms............................................................10

                2.      Custodians..................................................................................................11

                3.      Relevant Time Period ...............................................................................15

        C.      The Proportionality of the Documents and ESI Sought.......................................17

V.      RESERVATION OF RIGHTS .........................................................................................20

VI.     CONCLUSION...................................................................................................................20

Plaintiffs Fusion Elite All Stars, Spirit Factor LLC d/b/a Fuel Athletics, Stars and Stripes

Gymnastics Academy Inc. d/b/a Stars and Stripes Kids Activity Center, Kathryn Anne Radek,

Lauren Hayes, and Janine Cherasaro (collectively, "Plaintiffs"), individually on behalf of

themselves and on behalf of all others similarly situated, hereby file this Memorandum of Law in

Support of their Motion to Compel Discovery and seek an order compelling Defendant U.S. All

Star Federation, Inc. ("USASF") to produce certain documents and electronically stored

information ("ESI") responsive to Plaintiffs' First Request for Production of Documents

("RFPs"), properly served pursuant to Federal Rule of Civil Procedure 34, and readily available

to them.

## I.    INTRODUCTION

All Star Cheer is an elite, competitive, and distinctive type of cheerleading. Dkt. 56 ¶3.

This is an antitrust class action on behalf of All Star Gyms[1] and parents of All Star cheerleaders

against the dominant producer of All Star Competitions and All Star Apparel—Varsity—and

also against the main regulatory body for the sport, USASF.[2] Plaintiffs seek to represent a

proposed class of entities and natural persons that directly paid Varsity for: (a) registration,

entrance, spectator, or other fees and expenses associated with participation in one or more All

Star Competitions or (b) All Star Apparel. *Id.* at ¶40.

Plaintiffs allege that USASF conspired with Varsity to cause Varsity to maintain and

enhance Varsity's monopoly power in the All Star Apparel and All Star Competition Markets

---

[1] Unless otherwise indicated, capitalized terms have the same meaning as those used in the
Consolidated Class Action Complaint. Dkt. 56.

[2] The defendants are Varsity Brands, LLC; Varsity Spirit, LLC; Varsity Spirit Fashions &
Supplies, LLC (collectively, "Varsity") and USASF (Varsity and USASF together,
"Defendants"). The plaintiffs are three All Star Gyms and three parents of current and former All
Star Cheerleaders (collectively, "Plaintiffs"). Dkt. 56 ¶¶29-39.

(collectively, the "Relevant Markets"). *Id.* ¶¶9, 53. "USASF has always been captive to Varsity," with Varsity providing significant funding and controlling USASF's board of directors. *Id.* ¶¶73, 197, 199, 201. Defendants state in filings with this Court that. "[t]aking the allegations in the Complaint as true, Varsity and USASF, are essentially one and the same." Dkt. 84-1 at 10; Dkt. 83-1 at 18. "Until recently, USASF employees worked at Varsity's headquarters in Tennessee, and USASF's office is still only miles away from Varsity's headquarters," and their finances are intermingled with Varsity paying USASF's employees. Dkt. 56 ¶¶73, 76.

The conspiracy between Defendants includes: USASF's promulgation of rules that favor Varsity over its All Star Apparel rivals, *id.* ¶¶106, 140-142, 154; restricting competition by limiting which All Star Competition producers can award Bids to USASF's Cheerleading World Champions ("Worlds") and allocating those Bids primarily to Varsity, *id.* ¶¶93, 136;[3] and allowing or instructing judges to "advantage All Star Teams that wear Varsity apparel," *id.* ¶¶107, 154. "USASF refuses non-member IEPs, Varsity's competitors, from having access to its rules, claiming as a pretext that the rules are subject to trademark and copyright protections." *Id.* ¶135. It also pressures All Star Gyms with a variety of tactics to only attend USASF-sanctioned, meaning Varsity, events. *Id.* ¶¶137-138.

USASF's control of All Star Competitions is relevant to a number of the discovery disputes discussed below. USASF only permits "Tier 1" All Star Competition producers to

---

[3] All Star Teams attend a limited number of All Star Competitions per season and generally set their event schedule with the goal of maximizing their chances to earn a Bid to one or more of three recognized championships: Worlds, The Summit, and the U.S. Finals (collectively, "Championships"). Dkt. 56 ¶¶85-101. Bids are formal invitations to compete in these Championships and are obtained only by attending and succeeding at particular All Star Competitions. *Id.* ¶87. Because an All Star Team cannot attend a Championship without a Bid, the limited number of Bids and Bid-qualifying events make them a coveted, prestigious, and distinctive part of this sport. *Id.* ¶88.

award Fully Paid Bids to Worlds, of which Varsity owns more than half. *Id*. ¶¶207-208. USASF is also responsible for the geographic restrictions that have reinforced Varsity's market power, "prohibit[ing] All Star Competition producers from holding Bid-qualifying All Star Competitions within 500 miles of another Bid-qualifying competition." *Id*. ¶211. And USASF "use[s] [its] rule-making 'authority' to prevent potential rival sanctioning organizations from creating their own All Star Championships that could undermine Varsity's dominance." *Id*. ¶213. Finally, "USASF membership rules specify that members are not permitted to affiliate, partner with, or own non-USASF-sanctioned IEPs, and that every All Star Gym that wishes to attend USASF events must become a USASF member." *Id*. ¶222. As a result, USASF has control over every All Star Gym that has attended an USASF-sanctioned event. *Id*.

Plaintiffs bring claims against Defendants under Section 2 of the Sherman Act, 15 U.S.C. § 2, for monopolization and conspiracy to monopolize. The RFPs, search terms, custodial accounts, and time period discussed below go to the heart of these allegations, and Plaintiffs respectfully request that this Court order USASF to comply with its discovery obligations.

## II.    HISTORY OF MEET & CONFERS

Plaintiffs and USASF have been engaging in near weekly meet and confers from December 2020 to the present in an effort to narrow the parties' disputes. The parties have successfully resolved the vast majority of disputes regarding specific requests but continue to have disputes regarding which custodians' files will be searched, which search terms will be used, and the time period that should be covered by USASF's production. Plaintiffs have repeatedly sought to narrow these disputes by narrowing their requested search terms and have offered, for the custodians still being sought, to limit collections to emails and documents in their Google Drives, rather than having entire drives imaged. USASF has rejected these compromises. The parties have also not been able to reach agreement on Request Nos. 10, 11, 82, 83, 87, and

98 through 111. Plaintiffs thus seek relief from this Court pursuant to Rule 37 and Local Rule 26.1.

### III.    LEGAL STANDARD

"The scope of discovery under the Federal Rules of Civil Procedure is traditionally quite broad." *Goree v. United Parcel Serv., Inc.* ("*Goree II*"), No. 14-cv-2505, 2015 WL 11120571, at *5 (W.D. Tenn. Sept. 29, 2015). "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). This includes "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." *Goree II*, 2015 WL 11120571, at *5 (quoting Fed. R. Evid. 401). "This relevance standard is a low threshold to meet." *Hogan v. Cleveland Ave Rest., Inc.*, No. 15-cv-02883, 2019 WL 1876808, at *4 (S.D. Ohio Apr. 26, 2019).

"In assessing the proper scope of discovery, the court looks to the underlying claims and defenses." *Goree II*, 2015 WL 11120571, at *5. Plaintiffs bring monopolization and conspiracy claims under 15 U.S.C. § 2. Dkt. 56 ¶¶243-247, ¶¶249-261. These claims require evidence of:

(1) <u>Monopoly Power</u>: a defendant had monopoly power—or conspired with a defendant that did;

(2) <u>Willful Acquisition, Maintenance, or Use of that Power through Anticompetitive Conduct</u>: a defendant deliberately achieved or maintained that monopoly power other than by competing on the merits—or conspired with the specific intent to monopolize and took overt actions to support monopolization;

(3) <u>Causation of Anticompetitive Harm</u>: a defendant used the resulting monopoly power to increase prices above competitive levels, impair competitors, decrease output below competitive levels, decrease quality, or impose other anticompetitive harms; and

(4) <u>Concerted Action</u>: a defendant collaborated with another to harm competition (required only for a conspiracy to monopolize, not for monopolization).

*See Conwood Co., L.P. v. U.S. Tobacco Co.*, 290 F.3d 768, 782, 788-89 (6th Cir. 2002) (elements of monopolization claim); *Richter Concrete Corp. v. Hilltop Concrete Corp.,* 691 F.2d 818, 827 (6th Cir. 1982) (elements of claim for conspiracy to monopolize).

"[T]he heart of any American antitrust case is the discovery of business documents. Without them, there is virtually no case." *In re Uranium Antitrust Litig.*, 480 F. Supp. 1138, 1155 (N.D. Ill. 1979). However, "the proof is largely in the hands of the alleged conspirators." *Mary Ann Pensiero, Inc. v. Lingle*, 847 F.2d 90, 95 (3d Cir. 1988) (quoting *Poller v. Columbia Broadcasting Sys. Inc.*, 368 U.S. 464, 473 (1962)). "Broad discovery is permitted because direct evidence of an anticompetitive conspiracy is often difficult to obtain, and the existence of a conspiracy frequently can be established only through circumstantial evidence, such as business documents and other records." *In re Urethane Antitrust Litig.*, 261 F.R.D. 570, 573 (D. Kan. 2009) (citation and quotations omitted); *Callahan v. A.E.V., Inc.*, 947 F. Supp. 175, 179 (W.D. Pa. 1996). Additionally, "broad discovery may be needed to uncover evidence of invidious design, pattern, or intent." *Urethane*, 261 F.R.D. at 573 (citations and quotations omitted); *see also In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. 07-cv-5944, 2014 WL 5462496, at *8 (N.D. Cal. Oct. 23, 2014) (same); *United States v. Dentsply Int'l., Inc.*, No. Civ. A. 99–5, 2000 WL 654286, at *5 (D. Del. May 10, 2000) (same). And given the scope of this antitrust class action and the amount of money involved, "[t]he public policy implications in this matter favor extremely broad discovery." *United States v. Blue Cross Blue Shield of Mich.*, No. 10-cv-14155, 2012 WL 4513600, at *3 (E.D. Mich. Oct. 1, 2012).

## IV.    ARGUMENT

### A.    Plaintiffs' Requests for Production[4]

The parties have reached agreements regarding all of Plaintiffs' RFPs, with Plaintiffs agreeing to narrow the scope of many and drop some altogether, save for Requests Nos. 10, 11, 82, 83, 87, and 98 through 111.

**Request No. 10:** This seeks information regarding USASF's programs, initiatives, rules, and policies. USASF has agreed to produce information regarding its rules and policies, but states that it is not clear as to what is meant by programs and initiatives, despite discussing both on its website and making a number of programs and initiatives available to its members, such as the Gym Insurance Initiative, the FUNdamentals program, the NoviceSELECT program, and the Athletes First Initiative. Plaintiffs require information regarding USASF's programs and initiatives to understand the ways in which USASF is able to control and influence its members—including Varsity's customers and competitors—and aid Varsity in carrying out its monopolization scheme.

**Request No. 11:** This seeks documents related to USASF's Affiliate Membership, Corporate Sponsor, and Official Sponsor programs. Ex. 6. According to USASF's website, these programs provide significant benefits in the Relevant Markets for companies that participate. *Id*. Affiliate members listed in the USASF Affiliate member directory include Varsity All Star Fashion and FloCheer, a streaming service affiliated with Varsity TV.

The identity of these program members is directly relevant to the heart of Plaintiffs' conspiracy claim: that USASF and Varsity are working together to exclude certain Varsity rivals from the Relevant Markets. Information about which companies USASF is working with and

---

[4] The full text of the requests at issue and USASF's responses are included in Appendix A.

which companies have influence over USASF is relevant to the question of whether USASF treats Varsity-affiliated entities or entities who aid Varsity in maintaining its dominance more favorably than other entities operating in the Relevant Markets. Indeed, Plaintiffs allege that USASF is used by its biggest financial supporter, Varsity, to increase Varsity's market power in the Relevant Markets. The identities of such supporters are clearly relevant, but USASF has refused to disclose three of these entities' identities because of purported confidentiality agreements.

First, these entities' identities are, to some degree, likely already in the public domain. The very purpose of the affiliate and sponsor programs is to increase its members' visibility. Second, "parties cannot create a privilege against civil discovery by mere written agreement." *Brown v. Tellermate Holdings Ltd.*, No. 11-cv-1122, 2013 WL 1363738, at *4 (S.D. Ohio Apr. 3, 2013); *see also In re Columbia/HCA Healthcare Corp. Billing Practices Litig.*, 293 F.3d 289, 313 n.3 (6th Cir. 2002) (Boggs, J. dissenting) (same). And in any event, USASF's confidentiality concerns have been addressed by the protective order already entered by this Court. Dkt. 77; *Brown*, 2013 WL 1363738, at *4. It need only avail itself of the procedures for designating matters as "Confidential" to ensure the information is not publicly disseminated. Dkt. 49-2 at 1, 8-11. In any event, USASF has not offered any evidence supporting its assertion that the identity of its affiliates and sponsors is confidential. And the information is clearly relevant to Plaintiffs' claim that USASF conspired with Varsity to exclude non-Varsity businesses from the Relevant Markets. Dkt. 56 ¶¶249-61. Thus, the responsive documents should be produced.

**Requests Nos. 82 and 83:** These seek information regarding payments between Varsity and USASF in order to establish Varsity's control and influence over USASF. Plaintiffs allege that Varsity created and propped up USASF in order to use it to control Varsity's customers and

competitors and to maintain a monopoly in the Relevant Markets. Dkt. 56 ¶¶9(c), 73-76, 195-203, 248-261. USASF does not deny Defendants' close relationship but declines to produce the requested information, without providing any specifics regarding the burden associated with doing so. Indeed, USASF initially agreed to produce the requested information, but later claimed, without providing any specifics, that it would be too complicated. USASF has not substantiated its burden and must produce this relevant information.

**Request No. 87:** Varsity controlled USASF and provided itself with opportunities to collude with USASF by employing USASF's employees and paying their salaries. Yet USASF declines to produce the information requested in Request No. 87 regarding the names, positions, and salaries for these employees. This information is critical to the conspiracy and monopolization claims and must be produced.

**Request Nos. 98 to 111:** These seek documents and communications related to sexual misconduct in the All Star Cheer industry, including Varsity's reporting and background check policies. These allegations relate directly to an essential issue for Plaintiffs' § 2 claims—whether Defendants' conduct had anticompetitive effects. A decrease in quality is one such anticompetitive effect. *See Nilavar v. Mercy Health Sys. W. Ohio,* 142 F. Supp. 2d 859, 874 (S.D. Ohio 2000) (allegations of "higher prices, lower quality services, and less choice for consumers . . . constitute the kind of injuries that the antitrust laws were enacted to prevent"); Dkt. 56 ¶¶237-241. The failure to adopt standards to protect cheerleaders from sexual abuse, including the failure to follow internal reporting and background check policies, is an egregious flaw in the quality of the services that Varsity offers. If Varsity faced greater competition, it and USASF would be incentivized to strengthen the standards. USASF has refused to produce any documents on this topic, pointing to the pending motion to strike these allegations, filed on December 1,

2020. Dkt. 82. This objection is contrary to this Court's ruling that discovery will not be stayed pending such motions.[5] Plaintiffs therefore ask this Court to compel USASF's immediate responses to Request Nos. 98 to 111.

### B.    Disputes Over Search Parameters for USASF's ESI

Understanding that this Court "is loathe to decide the search terms to be used because the parties are far better positioned to do so," *Goree v. United Parcel Serv., Inc.* ("*Goree I*"), No. 14-cv-2505, 2015 WL 11120572, at *3-4 (W.D. Tenn. Oct. 30, 2015) (Lipman, J.), the parties have engaged in lengthy conferences in an attempt to reach agreement on search terms for USASF's ESI. However, "[c]rafting appropriate search terms requires careful thought, quality control, testing, and cooperation with opposing counsel, and is not always an easy task." *Cahoo v. SAS Inst. Inc.*, No. 17-cv-10657, 2019 WL 7971900, at *6 (E.D. Mich. June 25, 2019) (citation and quotations omitted). Where a party believes proposed terms are overly broad or unduly burdensome, it "ha[s] an obligation not just to assert [its] objection, but explain the grounds for the objection and to point to evidence supporting it." *Id*. (citation omitted). And it must, if asked "offer specific suggestions for narrowing the offending search terms in a way that addresses [its] concerns while still retrieving as many of the relevant documents targeted by the disputed search terms as possible." *Id*. (quoting *The Case for Cooperation*, 10 Sedona Conf. J. 339, 354 (2009)).

---

[5] *See* Dkt. ¶55 at 21:15-22:3 ("I am not inclined to stay anything pending a motion to dismiss. It's not the way I view my role as a judge in pushing cases and moving people toward resolution. I hate doing it . . . . But otherwise I'm just not inclined to do it. I don't think it's appropriate. I think giving -- setting aside time where the Court is dealing with the motion to dismiss just frankly I think takes the lawyers off the hook. And I'm not inclined to do that. Particularly in this case where you're talking about a motion that's not even going to be ripe for me to deal with until mid February. So I'm not going to do that.").

### 1. Plaintiffs' Proposed Search Terms

The Protocol for the Discovery of Electronically Stored Information and Hard Copy Documents ("ESI Protocol") entered by this Court on October 29, 2020 requires a producing party to "disclose the list of search terms . . . it intends to use" and permits the responding party to "propose additional terms or culling parameters." Dkt. 72 at 4. USASF initially proposed 36 search terms in response to the RFPs. Ex. 2. Plaintiffs proposed a number of modifications to USASF's proposal, including new search terms. After much discussion and compromise by Plaintiffs, the parties were only able to reach agreement as to 16 additional search terms (the "Agreed Search Terms"), detailed in Exhibit 4. USASF ran a trial search using the remaining 182 terms it objected to (the "Disputed Search Terms), the details of which are in a "hit" report attached hereto as Exhibit 3.[6] Plaintiff then proposed modifications to 116 of the Disputed Search Terms in an attempt at compromise.[7] This reduced the number of hits on the Disputed Search Terms from 122,839 to 104,814 documents. Ex. 3 at 24 (E186, I186). Notably, the Agreed Search Terms only resulted in 283 hits when run with Plaintiffs' modified Disputed Search Terms. Ex. 4 at 119.

USASF's refusal to use more than 16 of Plaintiffs' search terms in an antitrust class action of this scope is not based on logic or burden. For example, the term "Rebel" only adds 70 additional hits. Ex. 3 at 22 (I167). It is directly relevant to allegations regarding (1) the impact of

---

[6] The term "hit(s)" refers to the number of unique documents returned by a search term for the time period of 2012 to June 30, 2020. This metric will permit the Court to evaluate the reasonableness of each of the Disputed Search Term in isolation. The hit reports do not reflect any deduplication or spam filters, which will likely reduce the total numbers if the Disputed Search Terms are ultimately employed.

[7] Plaintiffs proposed nine new search terms with their modifications, which are indicated in red in Exhibit 3. These were designed to avoid losing relevant documents eliminated by the modifications to the Disputed Search Terms

Varsity's predatory acquisitions on rival All Star Apparel manufacturer Rebel Athletic, and (2) exclusionary allocation of booth space at competitions like Worlds. Dkt. 56 ¶¶110, 163, 190. It also is directly responsive to Request No. 11 (discussed above); Request Nos. 19, 20, 23 (related to vendors); Request Nos. 29 and 30 (related to affiliate and sponsor dues); Request No. 45 (related to All Star Apparel competitors); and Request Nos. 59 and 77 through 81 (regarding All Star Apparel rules, policies, practices, show floors, and market competition).

USASF similarly refuses to run the terms "kickback," or "kick*back," which returned only eight hits, and "no w/2 sanction*," which returned only five hits. Ex. 3 at 22 (I158, I164). These terms are relevant to Plaintiffs' assertion that Varsity and USASF have conspired to monopolize the Relevant Markets by, for instance, impairing Varsity's competitors. USASF likewise refuses to run numerous Disputed Search Terms using the words "score," "rig," and "scandal," which are relevant to allegations about favorable scoring for All Star Teams who wear Varsity Apparel. Even the terms that produced the greatest number of hits—"All Star" and "Varsity"—amounted to just over 28,000 hits when Plaintiffs offered modifiers to reduce USASF's alleged burden. *Id*. at 1 (I7), 23 (I176). As discussed in Section IV.C *infra*, this is a reasonable result that is proportional to the needs of the case.

### 2.    Custodians

The ESI Protocol likewise requires the parties to propose and discuss in good faith the "(i) the identity and role of custodians from which documents will be obtained for the production; (ii) the identity, scope and format of custodial and non-custodial sources from which documents will be considered for production." Dkt. 72 at 4. The parties are at impasse as to the custodians listed below. Each has a USASF-issued e-mail account and his or her own Google Drive that, according to counsel for USAF, is used for USASF-related business (the "Custodial Accounts"). With the exception of two custodians, USASF has refused to provide any further

detail about the Google Drives, including an explanation as to why Google Drives are used instead of a USASF server or some other more easily searchable system. USASF has also refused to explain what types of files are stored there, who has access to them, or which RFPs they are responsive to. Instead, USASF has simply represented, quite vaguely, that the Google Drives contain responsive documents but are overly burdensome to image or search. Plaintiffs have offered to forego imaging and searching the Google Drives for the two custodians proposed by USASF, of whose Google drives USASF provided inventories to Plaintiffs, subject to a reservation of rights, if USASF would be willing to simply retrieve certain categories of responsive documents from the files of those two custodians. Plaintiffs have also requested that USASF provide an inventory of the types of files each Google Drive contains. This would give Plaintiffs better insight into whether the Google Drives contain responsive and relevant information and perhaps enable them to abandon requests for some of the disputed Custodial Accounts. USASF maintains, without support, that both options are no less burdensome and has only provided an inventory of two Google Drives. It is also refusing to include all but two of these custodians' USASF e-mail accounts in its ESI search.

These Custodial Accounts contain documents and data directly responsive to the RFPs and directly relevant to the monopolization and conspiracy claims at issue. According to counsel for USASF, these custodians communicate directly with putative class members (both Gyms and parents) and All Star Competition producers. Many of these custodians have responsibilities related to All Star Competition rules, the crafting and enforcement of which is alleged to favor Varsity. And these custodians train judges who allegedly favor All Star Teams that wear Varsity All Star Apparel and spend significant funds on Varsity's All Star Apparel and Competitions. USASF does not genuinely dispute the relevance of the e-mails, documents, or data contained in

the Custodial Accounts. Nor does it argue that the Custodial Accounts are duplicative or that documents can be obtained from more readily accessible sources. It asserts only that collecting and searching the Custodial Accounts is overly burdensome. As shown in Section IV *infra*, while there may be some burden associated with these Custodial Accounts, it is proportional to the needs of this case and must be produced.

**Lynn Singer:** Ms. Singer is USASF's Executive Director of Communications/Dance. Ex. 10. In her role, she has served as the USASF spokesperson, announcing news about USASF in press reports, thereby making her privy to wide-ranging aspects of USASF's business. Ex. 13, 14 Ms. Singer has also, at least from time to time, attended USASF's Board of Director meetings. Ex. 12. USASF identified Ms. Singer as a custodian but only with respect to her e-mail account and certain undisclosed documents that USASF copied from her Google Drive, which do not include all of the responsive documents located there. Ex. 2. According to USASF, Ms. Singer's Google Drive contains Word documents related to competition rules, meeting notes, and other various projects. Of course, if Ms. Singer's email is relevant to the case—as USASF has acknowledged by proposing her as a custodian—her non-email ESI is highly likely to be relevant to the case as well.

**Alison Stangle:** Ms. Stangle is currently the Interim Executive Director of USASF, running the organization at the highest levels as one of USASF's most senior executives. Ex. 10, 16. She previously was USASF's Executive Director of Rules & Safety and is a member of the USASF Rules Committee and headed the scoring committee for Worlds. Ex. 11, 15. In addition, Ms. Stangle, at least from time to time, has attended USASF's Board of Director meetings. Ex.12. She is likewise identified as a custodian but only with respect to her e-mail account and certain undisclosed documents that USASF copied from her Google Drive, which do not include

all of the responsive documents located there. Ex. 2. Ms. Stangle's Google Drive contains a trove of relevant documents, including:

- Presentations relating to Worlds training for judges and coaches, All Star Competition producer meetings;
- Age grids;
- Worlds results, scoring;
- Expense reports;
- Legality and safety documents;
- IASF and USASF rules;
- Senior extension eligibility;
- Legality official course;
- Documents relating to penalties, and tiers of All Star (prep, elite, etc.); and
- Athletic Performance Standards.

Ex. 5. These documents are likely to show that USASF events, training, and rules are designed to benefit Varsity, advantaging Varsity-associated Gyms, Teams, coaches, and officials and disadvantaging all others. Documents related to other rules, such as age, safety, and athletic performance standards, will likewise show that the rules were written to favor Varsity.

**Dana Fielding:** Ms. Fielding is USASF's Associate Director of Rules and Safety and is a member of the USASF Rules Committee. Ex. 11. She reports directly to Ms. Stangle. Given her title and the USASF reporting structure, Plaintiffs believe that she is likely to have many of the same types of relevant documents that Ms. Stangle has in her Google Drive and USASF e-mail account. These documents are highly relevant to Plaintiffs' claims for the same reasons as stated for Ms. Stangle: documents regarding the rules will show that they are inclined to favor Varsity.

**Angela Bruno:** Ms. Bruno is currently USASF's Senior Member Support Specialist and was previously the Manager of Credentialing and Club Membership. She has reported directly to two of USASF's vice presidents in those roles. Ms. Bruno is the point of contact for All Star Coaches, All Star Athletes, and Gyms seeking USASF credentials and membership. Ex. 7, 8, 9. This role is directly relevant to Plaintiffs' allegations that USASF uses its credentialing process

14

and membership requirements to help Varsity increase its share of the Relevant Markets. *E.g.,* Dkt. 56 ¶¶137-138.

**Regional Directors:** Karen Wilson is USASF's Senior Regional Director and reports directly to its Vice President, Amy Clark (who is an agreed upon custodian). She is responsible for USASF's western region and describes her role as follows: "Manage the membership for All Star Gyms. Promote safety and education resources for coaches and gym owners. Provide credentialing opportunities for coaches and provide continuing education opportunities through meetings and conferences." Ex. 17. Glenda Broderick, Robin Galik, Kinshasa Garrett, and Shauna Holm are regional directors who also report directly to Amy Clark. Their roles as regional directors are comparable to Ms. Wilson's role. They are, respectively, responsible for USASF's southeastern, northeastern, southwestern, and midwestern regions. Notably, many of these individuals have served in their roles for years, making it even more likely that they will have relevant documents in their files. For instance, Glenda Broderick has served as USASF's Southeastern Regional Director since August 2010. Ex. 18. Importantly, while these employees job titles are similar, each is responsible for dealing with different All Star Gyms and All Star Competition producers, so the documents and communications they possess are likely unique. They are also are highly relevant to Plaintiffs' claims because they will show the relationship between USASF and the Gyms and coaches, highlighting the effect that the relationships have and ultimately showing that Gyms and coaches are beholden to USASF and therefore Varsity.

### 3. Relevant Time Period

The parties are likewise in disagreement over the time period that should be covered by USASF's document production (the "Relevant Time Period"). Plaintiffs' Complaint encompasses events going back to 2003 and acquisitions of Varsity's competitors going back to 2008, Dkt. 56 ¶¶ 71, 73, 168, 197, yet USASF refuses to produce documents from any time

before 2015. The RFPs initially defined the Relevant Time Period as "May 26, 2008 to the present." Ex. 1 at 10. After USASF offered more details about its ESI, Plaintiffs proposed a range of 2012 to the present, and subsequently agreed to limit the end-date to June 30, 2020, as proposed by USASF. This Relevant Time Period (January 1, 2012- June 30, 2020) will capture documents that are relevant to the second element of Plaintiffs' monopolization claim: the willful acquisition, maintenance, or use of that power through anticompetitive conduct. This Relevant Time Period is necessary to determine and show how USASF's operations changed as Varsity's market power increased, particularly the periods before and after Varsity acquired a number of its major rivals, including JAM Brands in 2015, Spirit Celebrations in 2016 or 2017, and Epic Brands in 2018.[8] Dkt. 56 ¶¶128, 165, 166. USASF does not challenge the relevance of this time period and objects based only on burden, arguing that 2015 is a more appropriate and less burdensome start date. However, "[p]re and post conspiracy information . . . [is] directly relevant to Plaintiffs' damages because the 'before and after' method [of damages calculations] . . . requires such information." *Arrowpac Inc. v. Sea Star Line, LLC*, No. 12-cv-1180, 2014 WL 12617575, at *3 (M.D. Fla. Sept. 11, 2014).[9]

---

[8] These and a number of other acquisitions were a significant part of Varsity's Exclusionary Scheme. For example, "JAM Brands produced many of the largest and most popular All Star Competitions in the United States, including The MAJORS and The U.S. Finals, one of the most coveted All Star Championships. It also owned All Star Competitions that awarded 24 of the Bids to Worlds." Dkt. 56 ¶160.

[9] *Accord Conwood*, 290 F.3d at 793 (approving methodology using data from seven years before and seven years after benchmark date); *Allan v. Realcomp II, Ltd.*, No. 10-cv-14046, 2013 WL 12333444, at *6 (E.D. Mich. Mar. 30, 2013) (approving of "before and after" analysis to determine "but-for cause of a statistically significant rise in prices in the relevant market"); *In re NASDAQ Mkt.-Makers Antitrust Litig.*, 169 F.R.D. 493, 521 (S.D.N.Y. 1996) ("The 'before and after' theory compares . . . the prices [plaintiff] paid during the period the violation continued with . . . prices paid prior to the beginning of the violation or after its termination.").

C.      **The Proportionality of the Documents and ESI Sought**

"[T]he party resisting discovery . . . bears the burden to show that the discovery sought is

disproportionate." *Brown v. Tax Ease Lien Servicing, LLC*, No. 15-cv-208, 2016 WL 10788070,

at *8 (W.D. Ky. Oct. 11, 2016). "Merely because production of otherwise relevant information

or documents may perhaps be burdensome in the view of the responding party does not make the

requested discovery automatically disproportionate for the purposes of Rule 26(b)(1)." *Id*. at *9.

And the factors this Court must consider weigh heavily in favor of the Disputed Search Terms,

Custodial Accounts, and Relevant Time Period proposed by Plaintiffs.

The first proportionality factor looks to "the significance of the substantive issues [at

stake in the litigation], as measured in philosophic, social, or institutional terms." *In re Haynes*,

577 B.R. 711, 727 (Bankr. E.D. Tenn. 2017) (citation omitted). Plaintiffs allege monopolization

of a multi-million-dollar industry impacting hundreds of thousands of gyms, cheerleaders, and

their parents. Dkt. 56 ¶¶9, 38, 59-60. This factor weighs in Plaintiffs' favor.

"Under the second proportionality factor, courts should 'compare[ ] the cost of discovery

to the amount in controversy to determine [the proposed discovery's] proportionality.'" *Oxbow

Carbon & Mins. LLC v. Union Pac. R.R. Co.*, 322 F.R.D. 1, 7 (D.D.C. 2017) (citations omitted).

USASF conspired with Varsity, a business worth at least $2.5 billion that raised $185 million in

new capital in less than 10 days during the pandemic last year. Dkt. 56 ¶¶38, 59. All Star Cheer

is, in fact, notoriously expensive, with a single season costing between $3,000 and $6,000 per All

Star Team member and an estimated 100,000 to 450,000 athletes participating in the sport each

year. *Id*. ¶¶5, 60. Plaintiffs propose 9 custodians and 183 Disputed Search Terms covering an 8-

year time period. Plaintiffs' modified Disputed Search Terms returned 104,814 hits.[10] Ex. 3 at 24 (I186). USASF claims collecting and processing ESI from the Custodial Accounts, which totals approximately 1.8 terabytes, will cost $131,829 while collecting and processing Google Drive data for two custodians will cost $35,103. Comparing this to the hundreds of millions of dollars at issue, Plaintiffs' proposal is certainly proportional to the needs of the case.[11] That these Disputed Search Terms and Custodial Accounts "cannot be produced without imposing some burden on [USASF] does not preclude [their] production given the substantial issues and amounts of damages involved." *Brown v. Tax Ease Lien Servicing, LLC*, No. 3:15-CV-208, 2016 WL 10788070, at *2 (W.D. Ky. Oct. 11, 2016). The second factor weighs in Plaintiffs' favor.

The third, fourth, and fifth factors also all weigh in Plaintiffs' favor.[12] The third factor, access to relevant information, looks at "information asymmetry—a circumstance in which one party has very little discoverable information while the other party has vast amounts of discoverable information." *Oxbow*, 322 F.R.D. at 8. As noted in Section III *supra*, evidence in

---

[10] The Disputed Search Terms also returned 100,056 families, meaning documents attached to the hits. Ex. 3 at 24 (J186).

[11] *See*, *e.g.*, *Am. Mun. Power, Inc. v. Voith Hydro, Inc.*, No. 2:17-CV-708, 2019 WL 6251339, at *13 (S.D. Ohio Nov. 22, 2019) (finding $100,000 cost of search 2 TB of data and producing ESI for 15 custodians and 33 search terms, in addition to $1.1 million for other ESI services, was proportional to alleged $40 million loss); *John B. v. Goetz*, 879 F. Supp. 2d 787, 882 (M.D. Tenn. 2010) (finding $10 million cost of 50 search terms, 50 custodians and 493 gigabytes of data proportional to $7 billion at issue); *ProCom Heating, Inc. v. GHP Grp., Inc.*, No. 13-cv-00163, 2016 WL 8203221, at *5 (W.D. Ky. July 8, 2016) (defendant failed to demonstrate that estimated $55,000 to $120,000 cost for ESI searches were "disproportionate to the value of the information"); *Oxbow*, 322 F.R.D. at 8 ($140,000 cost of ESI was not excessive compared to $150,000,000 damages claim).

[12] USASF proposed that Plaintiffs bear the cost of reviewing and producing anything beyond 45,000 documents. However, "'[a] court should consider cost shifting only when electronic data is relatively inaccessible, such as in back up tapes.'" *Cason-Merenda v. Detroit Med. Ctr.*, No. 06-cv-15601, 2008 WL 2714239, at *3 (E.D. Mich. July 7, 2008) (citations and quotations omitted); *Goetz*, 879 F. Supp. 2d at 882. The Custodial Accounts that Plaintiffs ask USASF to search certainly do not fit this category, and there is no basis for cost-shifting here.

antitrust cases like this, where a conspiracy is alleged, is primarily in the hands of the defendants. *Lingle*, 847 F.2d at 95. USASF does not dispute that it possesses relevant and unique information, and this motion to compel is the only way for Plaintiffs to obtain it. *Oxbow*, 322 F.R.D. at 8. The fourth factor looks at the parties' resources. *Id*. USASF receives significant financial backing from Varsity.[13] Thus, its alleged non-profit status does not absolve of it any discovery obligations. And the fifth factor asks "whether [t]he issues at stake are at the very heart of [the] litigation." *Oxbow*, 322 F.R.D. at 8. USASF does not dispute that it possesses relevant documents important to this litigation, and Plaintiffs have shown above that the documents they seek involve the issues that go to the heart of the litigation.

The sixth factor—burden and expense—is USASF's sole basis for objecting to the Disputed Search Terms, Custodians, and Relevant Time Period. But, as Plaintiffs have shown, this litigation involves a multi-billion dollar business and many millions of dollars in damages incurred by small businesses and parents that collectively comprise the proposed class. The costs identified by USASF are but a small fraction of that. And "while certainly high, [the cost] is not so unreasonably high as to warrant rejecting [Plaintiffs'] request out of hand." *Oxbow*, 322 F.R.D. at 9. In fact, parties in litigation across the country, in litigation involving similar stakes, have expended significantly larger sums on discovery. *See id*. (collecting cases); *Goetz*, 879 F. Supp. 2d at 882 (rejecting burden argument where defendant claimed expense of $10 million to run a 50-word search for 50 custodians).

---

[13] USASF's allegiance to Varsity has also provided it with significant revenue. All Star Gyms, All Star Cheerleaders, and All Star Team coaches must all be USASF members, and pay USASF dues to participate in a USASF-sanctioned Competition, and every Varsity competition is USASF sanctioned. Dkt. 56 ¶214. Thus, as Varsity's market power has increased so has USASF revenue from membership dues, which reached nearly $6 million in 2015 and $5 million in 2017. *Id*. ¶216.

Similarly, neither the number of hits nor the number of Custodial Accounts is inordinately high when compared to the scope of this litigation and amount at issue. Plaintiffs seek far fewer custodians than in matters of comparable scope. *See, e.g.*, *Goetz*, 879 F. Supp. 2d at 882, n.42 (permitting search of 50 custodians in a case involving $7 billion of federal funds); *Cary v. Ne. Ill. Reg'l Commuter R.R. Corp*, No. 19-cv-3014, 2021 WL 678872, at *1 (N.D. Ill. Feb. 22, 2021) (finding proposed limit of eight custodians arbitrary and requiring search of 27 custodians' files). Thus, the sixth and final factor weighs in Plaintiffs' favor.

## V.       RESERVATION OF RIGHTS

Plaintiffs reserve the right to move to compel USASF to produce additional documents and data, employ additional search terms, review additional custodial files, and/or produce other forms of discovery related to requests that are not currently ripe for resolution, that are presently unknown to Plaintiffs, or should the documents and data that are produced by USASF prove insufficiently responsive to the RFPs. *See generally*, *V5 Techs. v. Switch, Ltd.*, 332 F.R.D. 356, 360 (D. Nev. 2019) ("[M]otions to compel filed during the discovery period are rarely considered to be untimely."); *Haviland v. Cath. Health Initiatives-Iowa, Corp.*, 692 F. Supp. 2d 1040, 1044 (S.D. Iowa 2010) (Discovery is not intended to be a practice "involving deadline brinkmanship.") (emphasis added).

## VI.      CONCLUSION

Plaintiffs' RFPs, the Disputed Search Terms, the Custodial Accounts, and the Relevant Time Period are proportional to the needs of this case and seek documents highly relevant to the monopolization and conspiracy claims at issue. For these and the foregoing reasons, Plaintiffs respectfully request that this Court compel USASF to comply with its discovery obligations by June 30, 2021.

Dated: May 5, 2021                    Respectfully submitted,


                                      By: */s/ Katherine Van Dyck*
                                      Jonathan W. Cuneo*
                                      Katherine Van Dyck*
                                      Victoria Sims*
                                      **CUNEO GILBERT & LADUCA, LLP**
                                      4725 Wisconsin Avenue NW, Suite 200
                                      Washington, DC 20016
                                      Telephone: (202) 789-3960
                                      jonc@cuneolaw.com
                                      kvandyc@cuneolaw.com
                                      vicky@cuneolaw.com

                                      H. Laddie Montague, Jr.*
                                      Eric L. Cramer*
                                      Mark R. Suter*
                                      **BERGER MONTAGUE PC**
                                      1818 Market Street, Suite 3600
                                      Philadelphia, PA 19106
                                      Telephone: (215) 875-3000
                                      hlmontague@bm.net
                                      ecramer@bm.net
                                      msuter@bm.net

                                      Gregory S. Asciolla*
                                      Karin E. Garvey*
                                      Veronica Bosco*
                                      **LABATON SUCHAROW LLP**
                                      140 Broadway New York, NY 10005
                                      Telephone: (212) 907-0700
                                      gasciolla@labaton.com
                                      kgarvey@labaton.com
                                      vbosco@labaton.com

                                      *Interim Co-Lead Counsel for the Proposed Direct
                                      Purchaser Class*

J. Gerard Stranch, IV (TN BPR #23045)
Benjamin A. Gastel (TN BPR #28699)
**BRANSTETTER, STRANCH & JENNINGS, PLLC**
223 Rosa Parks Ave. Suite 200
Nashville, TN 37203
Telephone: (615) 254-8801
gerards@bsjfirm.com
beng@bsjfirm.com

*Liaison Counsel for the Proposed Direct Purchaser
Class*

Benjamin D. Elga*
**JUSTICE CATALYST LAW, INC.**
81 Prospect Street Brooklyn, NY 11201
Telephone: (518) 732-6703
belga@justicecatalyst.org

Craig L. Briskin*
**JUSTICE CATALYST LAW, INC.**
718 7th Street NW Washington, DC 20001
Telephone: (518) 732-6703
cbriskin@justicecatalyst.org

Roberta D. Liebenberg*
Jeffrey S. Istvan*
Mary L. Russell*
**FINE KAPLAN AND BLACK, R.P.C.**
One South Broad St., 23rd Floor
Philadelphia, PA 19107
Telephone: (215) 567-6565
rliebenberg@finekaplan.com
jistvan@finekaplan.com
mrussell@finekaplan.com

Nathan A. Bicks (TN BPR #10903)
Frank B. Thacher III (TN BPR #23925)
**BURCH, PORTER, & JOHNSON, PLLC**
130 North Court Ave.
Memphis, TN 38103
Telephone: (901) 524-5000
nbicks@bpjlaw.com
fthacher@bpjlaw.com

Aubrey B. Harwell, Jr. (TN BPR #002559)
Charles Barrett (TN BPR #020627)

Aubrey B. Harwell III (TN BPR #017394)
**NEAL & HARWELL, PLC**
1201 Demonbreun St., Suite 1000 Nashville, TN 37203
Telephone: (615) 244-1713
aharwell@nealharwell.com
cbarrett@nealharwell.com
tharwell@nealharwell.com

*Admitted pro hac vice

*Counsel for the Proposed Direct Purchaser Class*

## APPENDIX A

**REQUEST NO. 10**: All Documents reflecting or relating to the USASF programs, initiatives, rules and policies, including: (a) the process by which Your programs, initiatives, rules, and policies are developed, reviewed, and implemented; (b) a list of all current and historical programs, initiatives, rules, and policies; (c) the rationale for all programs, initiatives, rules, and policies; (d) how the programs, initiatives, rules, and policies have changed over time; and (e) the rationale for any such changes.

> **RESPONSE**: USASF objects to this Request to the extent it seeks documents relating to USASF "programs" and "initiatives" as those terms are vague and undefined. USASF is unable to determine what Plaintiffs are requesting beyond USASF's rules and policies. USASF also objects to this Request to the extent it seeks documents protected from disclosure by the attorney client privilege, work product doctrine, and/or any other privilege or confidentiality obligations. USASF further objects to this Request to the extent it seeks documents relating to USASF's rules and policies that are not relevant to the claims or defenses of any party to this action. Subject to and without waiving the foregoing, USASF will search for and produce, for the time period January 1, 2015 to June 30, 2020, non-privileged responsive documents relating to USASF Cheer Rules, Athletic Performance Standards, legality rules, event producer membership guidelines and sanctioning standards, and Professional Responsibility Code.

**REQUEST NO. 11:** Documents sufficient to identify all current and historical partner and affiliate members, corporate sponsors, and/or official partners, including financial and other requirements to become an affiliate member.

> **RESPONSE**: USASF objects to this Request on the basis that it is not properly limited in time and seeks information which has no relevance to any party's claims or defenses. USASF's affiliate members, corporate sponsors, and/or official partners are not at issue in this action. As a result, it is USASF's position that it is not proportional to the needs of this case for USASF to search for and/or produce any documents in response to this Request. Documents produced in response to other Requests may contain information responsive to this Request, and those documents will not be withheld on the basis of the objections to this Request.

**REQUEST NO. 82**: Documents sufficient to show all monies paid by Varsity to USASF and all loans, gifts, or payments made by Varsity to USASF, including for each loan, gift, or payment of money, the terms of the loan, gift, or payment, what the loan, gift, or payment was used for, and, if applicable, USASF's repayment history.

> **RESPONSE**: USASF objects to this Request as not properly limited in time. USASF also objects to this Request to the extent it seeks information protected from disclosure by the attorney client privilege, work product doctrine, and/or any other privilege or confidentiality obligation. Subject to and without waiving the foregoing objections, USASF will search for and produce nonprivileged

documents responsive to this Request for the time period January 1, 2015 to June 30, 2020, to the extent such documents exist, pursuant to the parameters set forth in Exhibit A.

**REQUEST NO. 83**: Documents sufficient to show all monies paid by USASF to Varsity, including for each loan, gift, or payment of money, the terms of the loan, gift, or payment, what the loan, gift, or payment was used for, and, if applicable, the repayment history.

> **RESPONSE**: USASF objects to this Request as not properly limited in time. USASF also objects to this Request to the extent it seeks information protected from disclosure by the attorney client privilege, work product doctrine, and/or any other privilege or confidentiality obligation. Subject to and without waiving the foregoing objections, USASF will search for and produce nonprivileged documents responsive to this Request for the time period January 1, 2015 to June 30, 2020 pursuant to the parameters set forth in Exhibit A.

**REQUEST NO. 87:** Documents sufficient to identify the USASF Staff, Employees and directors, by name and job title, who were paid by Varsity, and the amounts that were paid by Varsity, since 2003.

> **RESPONSE:** USASF objects to this Request as not properly limited in time. USASF also objects to this Request on the basis that it is an Interrogatory masquerading as a Request for Production of Documents in that it requests the creation of a list of "the USASF Staff, Employees and directors, by name and job title, who were paid by Varsity, and the amounts that were paid by Varsity, since 2003." USASF is not aware of any document already in existence that provides the requested information.

**REQUEST NO. 98:** Irrespective of time period, all statements, affidavits, declarations or other factual material referring to or submitted by You in connection with any investigation or litigation concerning the reporting of sexual misconduct with the cheer industry or business, as well as the requests that prompted the provision by You of those Documents.

> **RESPONSE**: USASF objects to this Request as it is not limited in time. USASF further objects to this Request as it seeks information not relevant to the claims or defenses of any party in this matter, and is overly broad, unduly burdensome, and not proportional to the needs of the case. Plaintiffs allege that USASF conspired with Varsity to monopolize the All Star cheerleading apparel and competition markets. Documents relating to alleged sexual misconduct have nothing to do with the subject matter of this lawsuit. USASF further objects to this Request as the documents sought are protected from disclosure under various federal and state confidentiality and privacy laws and USASF's contractual agreements.

**REQUEST NO. 99:** Irrespective of time period, all Documents provided by You to any news outlet or other organization in response to allegations of sexual misconduct by Varsity, and Independent Event Producers, or USASF Staff, Employees, directors, workers, vendors, or contractors, at Varsity or USASF Events, or affiliated with Varsity or USASF in any way.

**RESPONSE**: USASF objects to this Request as it is not limited in time. USASF further objects to this Request as it seeks information not relevant to the claims or defenses of any party in this matter, and is overly broad, unduly burdensome, and not proportional to the needs of the case. Plaintiffs allege that USASF conspired with Varsity to monopolize the All Star cheerleading apparel and competition markets. Documents relating to alleged sexual misconduct have nothing to do with the subject matter of this lawsuit.

**REQUEST NO. 100:** Documents sufficient to show Your policies regarding reporting of sexual misconduct and any other physical or mental abuse of minors, including hazing, bullying, and emotional abuse by You, Your members, or others in the All Star Cheer industry, including Documents reflecting or relating to Your SafeSport Code, SafeSport policies, SafeSport training, Your Professional Responsibility Code & Proactive Minor Abuse Prevention Policies, and the Athletes 1st initiative.

**RESPONSE**: USASF objects to this Request as not properly limited in time. USASF further objects to this Request as it seeks information not relevant to the claims or defenses of any party in this matter, and is overly broad, unduly burdensome, and not proportional to the needs of the case. Plaintiffs allege that USASF conspired with Varsity to monopolize the All Star cheerleading apparel and competition markets. Documents relating to USASF's policies regarding reporting of sexual misconduct and other physical or mental abuse have nothing to do with the subject matter of this lawsuit. Subject to and without waiving the foregoing objections, USASF will produce copies of its SafeSport Code and Professional Responsibility Code.

**REQUEST NO. 101:** All Documents reflecting or relating to insurance or insurance policies relating to coverage for allegations or litigation related to sexual misconduct.

**RESPONSE**: USASF objects to this Request as it is not limited in time. USASF further objects to this Request as it seeks information not relevant to the claims or defenses of any party in this matter, and is overly broad, unduly burdensome, and not proportional to the needs of the case. Plaintiffs allege that USASF conspired with Varsity to monopolize the All Star cheerleading apparel and competition markets. Documents relating to alleged sexual misconduct, and specifically insurance coverage for allegations or litigation related to sexual misconduct, have nothing to do with the subject matter of this lawsuit.

**REQUEST NO. 102:** All Communications between Varsity and USASF concerning the reporting of sexual misconduct, as well as all Documents reflecting Your desire or efforts to thwart, limit or suppress such reporting.

**RESPONSE**: As to the first portion of this Request, USASF objects to this Request as it is not properly limited in time. USASF further objects to this Request as it seeks information not relevant to the claims or defenses of any party in this matter, and is overly broad, unduly burdensome, and not proportional to the needs of the case. Plaintiffs allege that USASF conspired with Varsity to

monopolize the All Star cheerleading apparel and competition markets. Documents relating to alleged sexual misconduct have nothing to do with the subject matter of this lawsuit. USASF further objects to this Request to the extent the documents sought are protected from disclosure under various federal and state confidentiality and privacy laws and USASF's contractual agreements. As to the second portion of this Request, subject to and without waiving the foregoing objections, USASF is not aware of any documents "reflecting [its] desire or efforts to thwart, limit or suppress such reporting" that would be responsive to this Request.

**REQUEST NO. 103:** Documents sufficient to identify any of Your Staff, workers, Employees, directors, vendors, contractors, or Gym owners, coaches, choreographers, or judges associated with any of Your Events, that have been convicted of sex crimes against minors, including those whom are registered as sex offenders.

RESPONSE: USASF objects to this Request as it is not properly limited in time. USASF further objects to this Request as it seeks information not relevant to the claims or defenses of any party in this matter, and is overly broad, unduly burdensome, and not proportional to the needs of the case. Plaintiffs allege that USASF conspired with Varsity to monopolize the All Star cheerleading apparel and competition markets. Documents relating to alleged sexual misconduct have nothing to do with the subject matter of this lawsuit. USASF further objects to this Request to the extent the documents sought are protected from disclosure under various federal and state confidentiality and privacy laws and USASF's contractual agreements.

**REQUEST NO. 104:** Documents sufficient to show the background check process, including primary and secondary screenings, for anyone age 18 years or older who accompanies a Team into a warm-up or backstage area at all Events, including Gym owners, coaches, volunteers and non-coaching Staff members associated with a program, and adult Athletes who are 19 years or older, before being employed or permitted to participate in or attend Events.

RESPONSE: USASF objects to this Request as it is not limited in time. USASF further objects to this Request as it seeks information not relevant to the claims or defenses of any party in this matter, and is overly broad, unduly burdensome, and not proportional to the needs of the case. Plaintiffs allege that USASF conspired with Varsity to monopolize the All Star cheerleading apparel and competition markets. Documents relating to USASF's background check process have nothing to do with the subject matter of this lawsuit.

**REQUEST NO. 105:** Documents sufficient to show the effect of a person being flagged during any background check or screening process, including whether flagged persons were still permitted to work in the All Star or cheerleading industry including at All Star Events.

RESPONSE: USASF objects to this Request as it is not limited in time. USASF further objects to this Request as it seeks information not relevant to the claims or defenses of any party in this matter, and is overly broad, unduly burdensome, and

not proportional to the needs of the case. Plaintiffs allege that USASF conspired with Varsity to monopolize the All Star cheerleading apparel and competition markets. Documents relating to the effect of a person being flagged any background check or screening process have nothing to do with the subject matter of this lawsuit.

**REQUEST NO. 106:** Documents sufficient to identify all Gym owners, coaches, volunteers, and non-coaching Staff members associated with a program, and adult Athletes who have been flagged during Your background check or screening processes, including why they were flagged, whether membership was suspended or revoked, and if so, whether membership was reinstated.

> **RESPONSE**: USASF objects to this Request as it is not properly limited in time. USASF further objects to this Request as it seeks information not relevant to the claims or defenses of any party in this matter, and is overly broad, unduly burdensome, and not proportional to the needs of the case. Plaintiffs allege that USASF conspired with Varsity to monopolize the All Star cheerleading apparel and competition markets. Documents relating to individuals who have been "flagged" during USASF's background check or screening process has no relevance to this lawsuit. USASF further objects to this Request to the extent the documents sought are protected from disclosure under various federal and state confidentiality and privacy laws and USASF's contractual agreements.

**REQUEST NO. 107:** Documents sufficient to identify all suspended members and members ineligible for USASF membership.

> **RESPONSE**: USASF objects to this Request as it is not properly limited in time. USASF further objects to this Request as it seeks information not relevant to the claims or defenses of any party in this matter, and is overly broad, unduly burdensome, and not proportional to the needs of the case. Plaintiffs allege that USASF conspired with Varsity to monopolize the All Star cheerleading apparel and competition markets. Documents relating to individuals who have been suspended from USASF membership or are ineligible for USASF membership have no relevance to this lawsuit. USASF further objects to this Request to the extent the documents sought are protected from disclosure under various federal and state confidentiality and privacy laws and USASF's contractual agreements.

**REQUEST NO. 108:** Documents sufficient to identify all complaints You received from Your members or customers regarding sex offenders within the All Star or cheerleading industry, including the names and roles of any persons identified in the complaints and the allegations against them.

> **RESPONSE**: USASF objects to this Request as it is not properly limited in time. USASF further objects to this Request as it seeks information not relevant to the claims or defenses of any party in this matter, and is overly broad, unduly burdensome, and not proportional to the needs of the case. Plaintiffs allege that USASF conspired with Varsity to monopolize the All Star cheerleading apparel and competition markets. Documents relating to alleged complaints regarding sex

5

offenders within the All Star or cheerleading industry have nothing to do with the subject matter of this lawsuit. USASF further objects to this Request to the extent the documents sought are protected from disclosure under various federal and state confidentiality and privacy laws and USASF's contractual agreements.

**REQUEST NO. 109:** Documents sufficient to show any action taken by You in response to the complaints identified in Request No. 108.

> **RESPONSE**: USASF objects to this Request as it is not properly limited in time. USASF further objects to this Request as it seeks information not relevant to the claims or defenses of any party in this matter, and is overly broad, unduly burdensome, and not proportional to the needs of the case. Plaintiffs allege that USASF conspired with Varsity to monopolize the All Star cheerleading apparel and competition markets. Documents relating to alleged complaints regarding sex offenders within the All Star or cheerleading industry have nothing to do with the subject matter of this lawsuit. USASF further objects to this Request to the extent the documents sought are protected from disclosure under various federal and state confidentiality and privacy laws and USASF's contractual agreements.

**REQUEST NO. 110:** All Communications between Varsity and USASF concerning the complaints identified in Request No. 108 and concerning any identified or suspected sex offenders within the All Star or cheerleading industry.

> **RESPONSE**: USASF objects to this Request as it is not properly limited in time. USASF further objects to this Request as it seeks information not relevant to the claims or defenses of any party in this matter, and is overly broad, unduly burdensome, and not proportional to the needs of the case. Plaintiffs allege that USASF conspired with Varsity to monopolize the All Star cheerleading apparel and competition markets. Documents relating to alleged complaints regarding sex offenders within the All Star or cheerleading industry have nothing to do with the subject matter of this lawsuit. USASF further objects to this Request to the extent the documents sought are protected from disclosure under various federal and state confidentiality and privacy laws and USASF's contractual agreements.

**REQUEST NO. 111:** All Documents reflecting or relating to any discussions, deliberations, analyses, or Communications regarding the effect, if any, of sexual misconduct and surrounding publicity on USASF's sales, membership, dues, revenues, costs, profitability, competition, or competitors in any market in which USASF competes.

> **RESPONSE**: USASF objects to this Request as it is not limited in time. USASF further objects to this Request as it seeks information not relevant to the claims or defenses of any party in this matter, and is overly broad, unduly burdensome, and not proportional to the needs of the case. Plaintiffs allege that USASF conspired with Varsity to monopolize the All Star cheerleading apparel and competition markets. Documents relating to alleged sexual misconduct have nothing to do with the subject matter of this lawsuit.