# EXHIBIT 1

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TENNESSEE**

| | |
|---|---|
| FUSION ELITE ALL STARS, et al.,<br><br>　　　　　Plaintiffs,<br>　　v.<br><br>VARSITY BRANDS, LLC, et al.,<br><br>　　　　　Defendants. | Case No. 2:20-cv-02600-SHL-cgc<br><br>**Jury Trial Demanded** |

### PLAINTIFFS' FIRST REQUEST FOR PRODUCTION OF DOCUMENTS TO DEFENDANT U.S. ALL STAR FEDERATION, INC.

Pursuant to Rule 34 of the Federal Rules of Civil Procedure, Plaintiffs[1] request that Defendant U.S. All Star Federation, Inc. ("USASF" or the "USASF Defendant") produce for inspection and copying, within 30 days, the Documents listed below.

### DEFINITIONS

1.　　The term "Abenity" means Abenity, Inc., its predecessor and successor entities, its officers, directors, shareholders, parent and subsidiary companies (whether direct or indirect), divisions, Employees, agents, attorneys, representatives, Staff, and other persons acting or authorized to act on its behalf.

2.　　The term "All Star" cheerleading means the discipline of cheerleading that involves athletes performing routines composed of tumbling, stunting, pyramids, and dance. It is distinct from traditional school cheerleading (sideline cheering) in that its primary purpose is

---

[1] Plaintiffs are Fusion Elite All Stars, Spirit Factor LLC d/b/a Fuel Athletics, Stars and Stripes Gymnastics Academy Inc. d/b/a Stars and Stripes Kids Activity Center, Kathryn Anne Radek, Janine Cherasaro, and Lauren Hayes.

competition, while school cheer primarily involves crowd leading and other roles associated with generating school spirit.

3.      The term "All Star Apparel" means the clothing (including uniforms), shoes, accessories, or equipment purchased for use by All Star Team Athletes at Events and during practices and training.

4.      The term "All Star Athlete" means a cheerleader who is a member of an All Star Team, and includes the parent(s) and/or legal guardian(s) of same.

5.      The term "All Star Event" means an All Star cheerleading competition, including Championships.

6.      The term "All Star Gym" means a cheerleading gym whose members are Athletes on All Star cheerleading Teams.

7.      The term "All Star Spectator" means a person who attends an All Star Event to watch the Athletes perform.

8.      The term "All Star Team" means a cheerleading squad that competes in All Star cheerleading competitions.

9.      The terms "any," "and," and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery all responses which might otherwise be construed to be outside its scope. Each of the following words includes the meaning of every other word: "each," "every," "all," and "any." The present tense shall be construed to include the past tense, and the past tense shall be construed to include the present tense.

10.      The term "Apparel" means the clothing (including uniforms), shoes, accessories, or equipment purchased for use by Athletes (whether considered All Star or not) at Events (whether considered All Star or not) and during practices and training.

2

11.     The term "Athlete" means a cheerleader who is a member of an All Star or any other cheerleading Team, and includes the parent(s) and/or legal guardian(s) of same.

12.     The term "Bid" means an official offer from an Event inviting an All Star Team to attend a Championship competition.

13.     The term "Championship" means one of three nationally recognized All Star cheerleading championship competitions in the United States: the Cheerleading Worlds, The Summit, and the U.S. Finals.

14.     The term "Championship Qualifier" or "Qualifier" means an Event at which an All Star Team may receive a Bid to a Championship.

15.     The term "Charlesbank Capital Partners" or "Charlesbank" means Charlesbank Capital Partners and its predecessor and successor entities, its officers, directors, shareholders, parent and subsidiary companies (whether direct or indirect), divisions, employees, agents, attorneys, representatives, and other persons acting or authorized to act on its behalf.

16.     The terms "Communication" and "Communications" are used in the broadest possible sense and mean every conceivable manner or means of disclosure, transfer or exchange of oral or written information between one or more persons or entities and shall include, without limitation, notes, letters, memoranda, e-mails, texts, instant messages, social media posts, social media messages, facsimiles, reports, briefings, telegrams, telexes, or by oral contact by such means as face to face meetings and telephone conversations, or any form of transmittal of information in the form of facts, ideas, inquiries or otherwise. The term "communicate" means to exchange, transfer, or disseminate facts or information, regardless of the means by which it is accomplished.

17.     The term "Complaint" means the October 2, 2020 Consolidated Class Action Complaint (ECF 56) or any future amended complaint(s) filed in the above-captioned action.

18.     The terms "concerning," "reflecting," and "relating to" are used in the broadest possible sense and mean, in whole or in part, addressing, analyzing, constituting, containing, commenting, in connection with, dealing with, discussing, describing, embodying, evidencing, identifying, pertaining to, referring to, reporting, stating, or summarizing.

19.     The term "Contract" means any contract, arrangement, or understanding, formal or informal, oral or written, between two or more persons, together with all modifications or amendments thereto.

20.     The term "Defendants" means any Defendant named in the Complaint or any future amended complaint(s) filed in the above-captioned action.

21.     The terms " Document" and " Documents" are used in the broadest sense allowable under Rule 34 of the Federal Rules of Civil Procedure, including any written, printed, typed, photocopied, photographed, recorded or otherwise reproduced or store Communication or representation, whether comprised of letters, words, numbers, data, pictures, sounds or symbols, or any combination thereof. It includes notes, letters, memoranda, e-mails, texts, instant messages, social media posts, facsimiles, reports, briefings, telegrams, telexes, records, envelopes, messages, studies, analyses, contracts, agreements, working papers, accounts, analytical records, reports and/or summaries of investigations, press releases, comparisons, books, calendars, diaries, articles, magazines, newspapers, booklets, brochures, pamphlets, circulars, bulletins, notices, questionnaires, surveys, drawings, diagrams, instructions, notes of meetings or Communications, questionnaires, surveys, charts, graphs, photographs, films, tapes, disks, data cells, print-outs of information store or maintained by electronic data processing or

work processing equipment, all other data compilations from which information can be obtained including without limitation optical storage media such as CDs, DVDs, memory sticks, floppy disks, hard disks, and magnetic tapes. The term "Document" also means every copy of a Document where such copy is not an identical duplicate of the original.

22.     The term "Employee" means, without limitation, any current or former officer, director, executive, manager, board member, secretary, Staff member, consultant, messenger, or agent, whether characterized as full-time, part-time, volunteer, or "core."

23.     The term "Event" means a cheerleading competition whether considered All Star cheerleading or not.

24.     The term "Event Producer" means a producer of cheerleading competitions whether or not considered All Star and whether or not affiliated with Varsity.

25.     The term "Gym" means a cheerleading gym whose members are Athletes on cheerleading Teams whether considered All Star or not.

26.     The term "including" means including but not limited to.

27.     The term "Independent Event Producers" or "IEPs" means All Star competition producers that hold Events not owned by or otherwise affiliated with Varsity or USASF.

28.     The term "Offer" means any offer, arrangement, or understanding, formal or informal, oral or written, between two or more persons, together with all modifications or amendments thereto, to sell goods or services, including offers to sell goods or services involving discounts or rebates.

29.     The term "Partners Group" means Partners Group AG and its predecessor and successor entities, its officers, directors, shareholders, parent and subsidiary companies (whether

direct or indirect), divisions, employees, agents, attorneys, representatives, and other persons acting or authorized to act on its behalf.

30.     The term "Plaintiffs" means any of the Plaintiffs identified in the Complaint.

31.     The term "Preferred Vendor" means any vendor, such as an insurer, with which one or more Defendants has an agreement regarding the fees charged to All Star Gyms, All Star Athletes, and/or All Star Teams for the vendor's goods or services.

32.     The term "Price" means the sum or amount of money or its equivalent for which anything is bought sold, or offered for sale as well as monetary values or rates, Price increases or decreases, retail Prices, wholesale Prices, transfer Prices, exchange Prices, markups, profit margins, discounts, rebates, promotions, or promotional allowances, and all related costs or charges.

33.     The term "Spectator" means a person who attends a cheerleading Event to watch the Athletes perform whether considered All Star or not.

34.     The term "Staff" means all full-time, part-time, volunteer, and "core" members associated with an organization. Staff association with an organization may be determined by employment status, payment, volunteer status, board position, committee position, or involvement with day to day operations, even if involvement is on a temporary basis.

35.     The term "Stay to Play" means any Event at which an All Star Gym and/or Team is required to book lodging and stay at a Varsity-approved "housing partner" hotel.

36.     The term "Team" means a cheerleading squad that competes in cheerleading competitions whether considered All Star or not.

37.     The term "USASF" means defendant U.S. All Star Federation, Inc., its predecessor and successor entities, its officers, directors, shareholders, parent and subsidiary

companies (whether direct or indirect), divisions, Employees, agents, attorneys, representatives, Staff, and other persons acting or authorized to act on its behalf.

38.     The term "Varsity" means defendants Varsity Brands, LLC, Varsity Spirit, LLC, and Varsity Spirit Fashion & Supplies, LLC, each of their predecessor and successor entities, officers, directors, shareholders, parent and subsidiary companies (whether direct or indirect), divisions, Employees, agents, attorneys, representatives, and other persons acting or authorized to act on their behalf.

39.     The terms "You" or "Your" means the person or entity upon whom these Requests for Productions were served; for an entity, each of its predecessors, successors, parents, divisions, subsidiaries, and affiliates, each other entity directly or indirectly, wholly or in part, owned or controlled by it, and each partnership or joint venture to which any of them is a party; and all present and former directors, officers, Employees, Staff, agents, consultants, or other persons acting for or on behalf of any of them.

## **INSTRUCTIONS**

1.      The Definitions above are provided only for purposes of discovery, in conformance with Rule 34(a) of the Federal Rules of Civil Procedure, and are not intended to be used for any purpose other than discovery. Plaintiffs reserve the right to modify these Definitions or utilize different Definitions for any other purpose.

2.      The terms defined above and the individual requests for production and inspection are to be construed broadly to the fullest extent of their meaning in a good faith effort to comply with the Federal Rules of Civil Procedure.

3.      All words not defined in the Definitions shall be construed using their plain and ordinary meaning. If more than one meaning can be ascribed to a word, the meaning that would

make a Document be covered by the requests for production should be used, unless You provide written notice of the specific ambiguity and state the definition on of the word used to exclude the Document from the scope of the request.

4.      In answering and responding to these requests, You shall furnish such information and Documents in Your possession, custody or control, including information that is in the possession, custody or control of Your agents, consultants, accountants, investigators, and (subject to any otherwise applicable privileges) attorneys.

5.      Each request herein shall be construed independently. No request shall be construed by reference to any other request for the purpose of limiting the scope of the answers to such request.

6.      All headings set forth within the numbered requests below are for continuity only and shall not be deemed to control or affect the meaning or construction of any request.

7.      Where the context in a request makes it appropriate, each singular word shall include its plural and each plural word shall include its singular.

8.      Your obligation to respond to these requests is a continuing one. If, after responding to these requests, You obtain or become aware of any new or additional information pertaining to a request contained herein, You must supplement Your answer in accordance with Federal Rules of Civil Procedure 26 and 34.

9.      You are to produce entire Documents including all attachments, cover letters, memoranda, and appendices, as well as the file, folder tabs, and labels appended to or containing any Documents. Copies which differ from the original (because, by way of example only, handwritten or printed notations have been added) should be produced separately. Each Document requested herein must be produced in its entirety and without deletion, abbreviation,

8

redaction, expurgation, or excisions, regardless of whether You consider the entire Document to be relevant or responsive. The use or disclosure of Documents produced in response to these requests is subject to the limitations set forth in the Stipulated Protective Order (ECF 49-2) and the Stipulation Regarding Production of Electronically Stored Information ("ESI Protocol"). Accordingly, redaction of Documents to preserve confidentiality is unnecessary and production of Documents that have been redacted for purposes of production in response to these requests will not constitute compliance with these requests. If any part of a Document is responsive to any request, the whole Document is to be produced.

10.     You are requested to produce any and all electronically stored information in the manner required by the ESI Protocol. Unless otherwise limited by the ESI Protocol, pursuant to Federal Rules of Civil Procedure 34(b) electronically stored information should be produced in native format (including metadata) whenever possible.

11.      Documents and other things not otherwise responsive to a request shall be produced if such materials mention, discuss, refer to, or explain the materials called for by a request, or if such materials are attached to materials called for by a request and constitute (e.g., routing slips, transmittal emails, transmittal memoranda, letters, cover letters, comments, evaluations, or similar materials).

12.     Any alteration of a responsive Document, including any marginal notes, handwritten notes, underlining, date stamps, received stamps, endorsed or filed stamps, drafts, revisions, modifications and other versions of a final Document is a separate and distinct Document and it must be produced.

13.     If there are no Documents or other things responsive to any particular request, Your response shall state so in writing.

14.     If any Document is withheld, in whole or in part, due to a claim of privilege of any kind, provide a privilege log that sets forth separately with respect to each Document: (a) the nature of the privilege or ground of confidentiality claimed; (b) the author(s) of the Document (designating which, if any, are attorneys); (c) the title of the Documents (or subject line if the Document in an email); (d) the recipient(s) of the Document, including all persons who received copies of the Document (designating which, if any, are attorneys); (e) a description of the Document (or redacted portion of the Document) as set forth in Rule 26(b)(5)(A)(ii) of the Federal Rules of Civil Procedure; (f) the Bates range of the Document; and (g) the privilege log reference number. Any privilege log or list is to be produced in an Excel spreadsheet or other format capable of electronic sorting.

15.     Unless otherwise noted herein, the relevant time period for these requests is May 26, 2008 to the present (the "Relevant Time Period"). These requests seek all responsive Documents created or generated during the Relevant Time Period, as well as responsive Documents created or generated outside the Relevant Time Period, but which contain information concerning the Relevant Time Period.

16.     To the extent that You contend that Documents responsive to a particular request were previously produced to the Federal Trade Commission, Securities and Exchange Commission, Department of Justice, a state attorney general, or any other governmental agency, or as part of any other litigation, identify the specific request in any particular request for Documents, in response to which You produced such Documents and explain how You searched for Documents and produced them in response to such request for Documents, including by producing a list of the search terms used to identify Documents responsive to the applicable

request for Documents, the relevant time period searched, and the custodians whose files were searched.

17.     In the event that any Document or other thing responsive to these requests has been lost, discarded, or destroyed, that Document or other thing is to be identified by stating as completely as possible: (a) the authors or creators of the material; (b) all persons who received copies of the material, including any indicated and blind copy recipients; (c) the present custodian of the material;, (d) the date of the material; (e) the material's date of destruction or discard, manner of destruction or discard, and the reason for destruction or discard; and (f) the persons authorizing and carrying out such destruction or discard.

18.     If You have any good faith objections to any request or any part thereof, the specific nature of the objection and whether it applies to the entire request or to a part of the request shall be stated in accordance with Rule 34 of the Federal Rules of Civil Procedure. If there is an objection to any part of a request, then the part objected to should be identified and Documents and other things responsive to the remaining unobjectionable part should be timely produced. Further, if You object to part of a request, You must state the basis of Your objections in accordance with Rule 34.

19.     Each production shall be submitted with a transmittal letter that includes the case caption; production volume name; encryption method/software used; and passwords for any password protected files.

## REQUESTS FOR PRODUCTION

## I.     CORPORATE STRUCTURE AND GOVERNANCE

**REQUEST NO. 1:**     From January 1, 2003 to the present, all Documents reflecting (a) board of director and board and standing committee agendas, board meeting minutes (and drafts

thereof), standing committee meeting minutes (and drafts thereof), pre-board meeting board packets, presentations made to or by the board of directors and board and standing committees, and notes and Communications regarding board of director and board and standing committee meetings regarding some or all of the facts and allegations in the Complaint; and (b) Your Bylaws and any other corporate governance Documents, irrespective of date, and any and all amendments or additions thereto.

**REQUEST NO. 2:**   All Documents reflecting or relating to Your 501(c)(3) federal tax status, including (a) Communications about why You organized Yourself as a not for profit corporation; (b) Communications between You and the Internal Revenue Service concerning the designation of USASF as a not for profit corporation; (c) Your Bylaws; (d) Your non-profit charter; and (e) any other Documents concerning the purposes and powers of the organization and plans for disposition of its assets upon dissolution.

**REQUEST NO. 3:**   All Documents reflecting or relating to Your Tennessee mutual benefit corporation and/or not-for-profit status, including (a) Communications or filings with the State of Tennessee related to Your mutual benefit corporation and/or not-for-profit status; (b) Communications or Documents regarding why You organized Yourself as a mutual benefit or not-for-profit corporation; and (c) Communications or Documents regarding dissolution, revocation, or reorganization of Your Tennessee mutual benefit corporation or not-for-profit status.

**REQUEST NO. 4:**   Documents sufficient to show the following with respect to Your executive committee or committee of similar name: (a) the current and historical members; (b) membership requirements and/or who is eligible for membership; (c) how committee members

12

are elected or appointed; (d) the current and historical day to day operations; (e) how the requirements and operations have changed over time, and (f) the rationale for any such changes.

**REQUEST NO. 5:**   Documents sufficient to identify each of Your standing committees, including for each committee: (a) the name or title; (b) the current and historical members; (c) membership requirements and/or who is eligible for membership; (d) how committee members are elected or appointed; (e) the current and historical day to day operations; (f) how the requirements and operations have changed over time; and (g) the rationale for any such changes.

**REQUEST NO. 6:**   Documents sufficient to identify each of Your advisory boards, including for each board: (a) the name or title; (b) the current and historical members; (c) membership requirements and/or who is eligible for membership; (d) how committee members are elected or appointed; (e) the current and historical day to day operations; (f) how the requirements and operations have changed over time; and (g) the rationale for any such changes.

**REQUEST NO. 7:**   Documents sufficient to identify all Employees and Staff, including full-time, part-time and volunteer Staff, broken out by year joined and including the name, title, and responsibilities of each Employee or Staff member.

**REQUEST NO. 8:**   Documents sufficient to show what constitutes good standing for all committees and advisory boards, including your policies for removing committee and board members who are not in good standing and the rationale for all such policies.

**REQUEST NO. 9:**   Documents sufficient to identify all Employees and Staff, including full-time, part-time, and volunteer Staff, who have had their good standing designation revoked at any time, even if it has been since reinstated, including Documents sufficient to show when and why their designation was revoked.

**REQUEST NO. 10:**  All Documents reflecting or relating to the USASF programs, initiatives, rules and policies, including: (a) the process by which Your programs, initiatives, rules, and policies are developed, reviewed, and implemented; (b) a list of all current and historical programs, initiatives, rules, and policies; (c) the rationale for all programs, initiatives, rules, and policies; (d) how the programs, initiatives, rules, and policies have changed over time; and (e) the rationale for any such changes.

**REQUEST NO. 11:**  Documents sufficient to identify all current and historical partner and affiliate members, corporate sponsors, and/or official partners, including financial and other requirements to become an affiliate member.

**REQUEST NO. 12:**  Documents sufficient to identify all registration requirements for becoming an affiliate member, including financial and other requirements to become an affiliate member and any required supporting documentation that must be submitted to USASF in order to become a member.

**REQUEST NO. 13:**  All Documents reflecting or relating to Your National Meeting or meeting of similar name, including for each year of the Relevant Time Period, Documents sufficient to identify (a) every person or entity that attended; (b) every Staff member that presented on or discussed a topic, answered participant questions, led participant breakout assemblies, or otherwise assisted in the organization of the National Meeting in any way; and (c) the topics discussed.

**REQUEST NO. 14:**  All Documents reflecting or relating to Your policies, practices, guidelines and training directed to compliance with the antitrust or competition laws of the United States, of any state of the United States, the District of Columbia, or any foreign country, including all Documents concerning the creation of such policies, and any statements signed by

14

Your Staff, Employees, executives, or board members acknowledging their receipt of or compliance with Your antitrust compliance policies.

## II.   CONTRACTS AND OFFERS

**REQUEST NO. 15:**  All Documents reflecting or relating to (a) Contracts (whether executed or not) between You and any All Star Gym, All Star Team, and/or All Star Athlete; (b) Offers by You to any Team Gym, Team, or Athlete to sell goods or services, including offers to sell goods or services where discounts, rebates, or Prices depend upon multiple purchases; (c) Communications and/or negotiations with such Gyms, Teams, or Athletes, or their respective representatives, referencing or relating to such agreements or negotiations; and (d) Communications prepared by or sent to any person outside USASF that reference or relate to any such agreements, Contracts, Offers, or negotiations.

**REQUEST NO. 16:**  All Documents reflecting or relating to (a) Contracts (whether executed or not) between You and K&K Insurance Group, Inc. or associated entities; (b) Communications and/or negotiations with K&K Insurance Group, Inc. or their respective representatives, referencing or relating to such agreements or negotiations; and (c) Communications prepared by or sent to any person outside USASF that reference or relate to any such agreements or negotiations.

**REQUEST NO. 17:**  All Documents reflecting or relating to (a) Contracts (whether executed or not) between You and Varsity or associated entities, including any Contract(s) for producing the Cheerleading Worlds Championship; (b) Communications and/or negotiations with Varsity or its respective representatives, referencing or relating to such agreements or negotiations; and (c) Communications prepared by or sent to any person outside USASF that reference or relate to any such agreements or negotiations.

**REQUEST NO. 18:**  Documents sufficient to show the fees, dues, rebates, requirements, dates, terms, and duration associated with each Contract between You and any Event Producer, Gym, Team, or Athlete.

**REQUEST NO. 19:**  All Documents regarding Preferred Vendors, including any revenue-sharing agreements or other Contracts between You and any such Preferred Vendor, as well as any Documents showing revenues, expenditures, gains, and losses.

**REQUEST NO. 20:**  All Documents reflecting or relating to the financial, economic, or competitive effects of using a Preferred Vendor instead of an outside, non-preferred vendor, including any policies denying Gyms or Teams' use of outside, non-preferred vendors.

**REQUEST NO. 21:**  All Documents reflecting or relating to actual or proposed contractual or Offer terms or provisions, or model contractual or Offer terms or provisions, for use in any types of agreements between You and any Event Producer, Gym, Team, or Athlete, including all Documents reflecting or relating to the financial, economic, or competitive effects of such actual or potential Contracts or Offers. Responsive Documents include all Communications, studies, analyses, memoranda or other Documents referencing or relating to the effects of such Contracts, Offers, or contractual provisions on:

  a.   Your revenues and losses;

  b.   Your ability to attract Gyms, Event Producers, or Athletes to attend Your Events or join Your organization;

  c.   Your Prices, fees, dues, rebates, discounts, or other terms of sale; and/or

  d.   any actual or potential competitor and that competitor's ability to compete with USASF in producing Events or engaging in any other line of business.

**REQUEST NO. 22:**   All Documents reflecting or relating to Your Member Perks Program, including (a) Documents identifying all current and historical members of the program, (b) Documents identifying all requirements for membership, (c) dues or fees paid by members, (d) all agreements or other Contracts between You and any member of the program, (e) all agreements or other Contracts between you and Abenity, (f) all member-only discounts and corporate rates offered to program members, and (g) any other discounts, perks, or benefits offered to program members, including any benefits related to Events or Apparel.

**REQUEST NO. 23:**   Documents sufficient to identify each of Your Staff, Employees and board members involved in approving or negotiating the terms of each of Your Contracts, Offers, or agreements with any Event Producers, vendors, Gyms, Teams, or Athletes.

## III.   FINANCIALS

**REQUEST NO. 24:**   For each year of the Relevant Time Period, all financial statements, equity valuations, asset appraisals, financial models, budgets (proposed or otherwise), investor presentations, pro formas, and similar financial Documents relating to You.

**REQUEST NO. 25:**   All of Your monthly, quarterly, and annual audited and unaudited financial statements and related data, including profit and loss statements, balance sheets, cash flow statements, income statements, regulatory filings (including Your income tax returns), issuance of equity or debit, loans, and money owed or receivable.

**REQUEST NO. 26:**   For each year of the Relevant Time Period, all payroll Documents, including Documents sufficient to show the monies paid to each Staff member, Employee, worker, director, board member, executive committee member, standing committee member, judge, official, or any other person paid by You, broken out by individual person and role.

**REQUEST NO. 27:**  Documents sufficient to show the current and historical annual dues paid by each Staff member, Employee, volunteer, worker, director, board member, executive committee member, standing committee member, or any other person affiliated with Your membership, broken out by individual person and role.

**REQUEST NO. 28:**  Documents sufficient to show what Staff membership annual dues are used for, including whether these dues are used toward Staff payroll, for any of Your other expenses, investments, salaries, bonuses, or payments, and, if applicable, describing all such other expenses, investments, salaries, bonuses, or payments.

**REQUEST NO. 29:**  Documents sufficient to show the current and historical affiliate and/or associate membership dues, broken out by individual affiliate member, corporate sponsor, official partner, or associate member.

**REQUEST NO. 30:**  Documents sufficient to show what affiliate and/or associate membership annual dues are used for, including whether these dues are used toward Staff payroll or for any of Your other expenses, investments, salaries, bonuses, or payments and, if applicable, describing all such other expenses, investments, salaries, bonuses, or payments.

**REQUEST NO. 31:**  Documents sufficient to show what Gym, Athlete, Team, Spectator, judge, choreographer, vendor, Event Producer, and coach membership fees or dues are used for, including whether these dues or fees are used toward Staff payroll or for any of Your other expenses, investments, salaries, bonuses, or payments and, if applicable, describing all such other expenses, investments, salaries, bonuses, or payments.

**REQUEST NO. 32:**  Documents sufficient to identify the sources of all other incoming monies received by You in addition to the dues and fees described in Request Nos. 27 and 29, including any fees or monies received in association with Your Season of Service, leadership

workshops, Your National All Star Cheer And Dance Day, Your legality official training and certification programs, or Your Athletes 1st program.

**REQUEST NO. 33:**  Documents sufficient to show what all incoming monies received by You in addition to the dues and fees described in Request Nos. 27 and 29 are used for, including whether monies are used toward Staff payroll, payments to any other persons or entities, or for any of Your other expenses, investments, salaries, bonuses, or payments and, if applicable, describing all such other expenses, investments, salaries, bonuses, or payments.

**REQUEST NO. 34:**  Documents sufficient to show sales, revenues, expenditures, profits and losses in as granular a form as you maintain such information for (a) all of Your Events on an Event-by-Event basis; (b) membership dues or fees; (c) creation and distribution or rules or regulations relating to All Star Cheer or other cheerleading related activities and Events; and (d) any and all other goods or services sold, provided, distributed, disseminated, or licensed by You.

**REQUEST NO. 35:**  Documents sufficient to show all direct-to-consumer sales, including quantity, Price, product, and purchaser, for Apparel or souvenir apparel (*e.g.*, t-shirts, sweatshirts, hats, jackets, etc.), sold at Your Events.

**REQUEST NO. 36:**  Documents and data (in machine-readable format such as *.csv, *.txt or other native flat file format) sufficient to show Your actual costs, in as granular form as the information is maintained, for all Events on an Event by Event basis, including:

> a.  Your actual costs for producing Events, including venue costs, promotional costs, travel costs, advertising costs, compensation for judges, workers, Staff, Employees, contractors, insurance costs, and all other costs incidental to producing and promoting Events;

19

    b.   Your actual costs involved in promoting USASF as a brand, including advertising expenses; development of USASF trademarks and logos; and legal fees expended in protecting USASF's purported intellectual property rights; and

    c.   all other costs associated with producing Events in an itemized fashion.

If such data are not kept, or have not been kept, in electronic form in the ordinary course of your business or are otherwise not available in electronic form, please produce such data in hard copy.

    **REQUEST NO. 37:**  Documents and data (in machine-readable format such as *.csv, *.txt or other native flat file format) in as granular form as it is maintained, including by transaction or receipt, sufficient to show the following:

    a.   total receipts from Events, broken down by Event, and identifying the purchasers by name, address, customer number, and main contact person or persons;

    b.   total revenues derived from Event ticket sales to Spectators, and identifying the purchasers by name, address, customer number, and main contact person or persons;

    c.   total revenues derived from Event entry fees for Event Producers, Gyms, Teams, Athletes, or anyone else, and identifying the purchasers by name, address, customer number, and main contact person or persons; and

    d.   total revenues derived from the sale of advertising during Events, identifying the sources of all such revenues.

If such data are not kept, or have not been kept, in electronic form in the ordinary course of your business or are otherwise not available in electronic form, please produce such data in hard copy.

    **REQUEST NO. 38:**  Documents and data (in machine-readable format such as *.csv, *.txt or other native flat file format) in as granular form as it is maintained, including by

transaction or receipt, broken down by Event Producer, Gym, Team, Athlete, Spectator, or other means of identifying the purchaser or customer, including at minimum by name, address, phone number, email address, customer number, and main contact person or persons, and itemized by relevant categories, including date, check or other payment method, and transaction, in electronic format, sufficient to show the following:

     a.   cost of fees or costs of attendance at an Event by a Gym, Team, Athlete, Spectator, or any other means of identifying the purchasers by name, address, customer number, and main contact person or persons; and

     b.   any and all additional fees or costs paid by an Event Producer, Gym, Team, Athlete, Spectator, or other customer.

If such data are not kept, or have not been kept, in electronic form in the ordinary course of your business or are otherwise not available in electronic form, please produce such data in hard copy.

## IV.   EVENTS

**REQUEST NO. 39:**  Documents sufficient to identify each USASF sanctioned Event during the Relevant Time Period, including (a) date; (b) location; (c) Event Producer(s); (d) participating Gyms; (e) winning Gyms; (f) whether the Event is a Championship or Championship Qualifier, and, if the latter, for which Championship it is a Qualifier; (g) number of athletes performing; (h) number of Bids available to be awarded; (i) number of Bids actually awarded; (j) type of Bids awarded; and (k) what each Gym and/or Team paid to participate in the Event, including a total amount per Gym and broken out on a Team-by-Team basis, if available.

**REQUEST NO. 40:**  All Documents reflecting Communications between Varsity and USASF concerning the awarding of Bids and/or related Bid data, including all Documents relating to or identifying: (a) which Events are permitted to award Bids, including, *e.g.*, what

"tier" each Event is; (b) how many Bids may be awarded at each Event; (c) to whom Bids may be offered; and/or (d) what type of Bids may be awarded.

**REQUEST NO. 41:**  All Documents reflecting Communications between Varsity and USASF about USASF member attendance at All Star or other Events, including Varsity Events, USASF-member IEP Events, and non-USASF sanctioned Events.

**REQUEST NO. 42:**  All Documents reflecting or relating to the designation of "tier 1" status for cheer Events is, including all Documents showing: (a) the exclusivity of "tier 1" Events to offer fully-paid Bids to the Cheerleading Worlds; (b) how an Event is conferred with "tier 1" status; (c) identifying which Events have "tier 1" status; and (d) the financial, economic, or competitive effects of limiting the amount of "tier 1" Events.

**REQUEST NO. 43:**  All Documents reflecting or relating to Bids awarded by Independent Event Producers, including all Documents reflecting or relating to the number and/or type of Bids available or offered at Events produced by Independent Event Producers.

**REQUEST NO. 44:**  All Documents reflecting, analyzing, or discussing relating to competition with or between Event Producers, including any and all Documents reflecting any efforts on Your part to take business from, or direct business to, an Event Producer.

**REQUEST NO. 45:**  Documents sufficient to identify each person or entity You consider to be, or considered to have been, an actual or potential competitor of USASF or Varsity in producing Events, selling Apparel, regulating or setting rules for cheerleading, or in any other line of USASF's or Varsity's business, including:

      a.  all Documents analyzing, discussing or relating to the competitive strengths or weaknesses of actual or potential competitors;

b.  for each year in the Relevant Time Period, Documents sufficient to identify the individual shares of the market or markets in which you participate or purport to set rules for or regulate, for each producer, competitor, or, measured as a percentage of total sales in dollars or units;

c.  all Documents and data referencing or relating to determination of all Prices, dues, and fees charged by You, Varsity, or competitors of You and Varsity for: (a) attendance or participation at Events; (b) sale of Apparel; (c) membership or other affiliation fees or dues; or (d) any other good or service provided by USASF or Varsity; and

d.  all Documents discussing the business models or other aspects of actual or potential competitors of USASF or Varsity in all markets in which USASF or Varsity competes, including any Documents reflecting comparisons of Prices, dues, or fees charged by USASF or Varsity relative to actual or potential competitors.

**REQUEST NO. 46:**  Documents sufficient to describe the sport or athletic activity of All Star cheerleading, including of how it differs from other kinds of cheerleading.

**REQUEST NO. 47:**  Documents sufficient to describe (a) USASF's current and historical criteria for whether an Event can be considered a USASF-sanctioned All Star Event; (b) how such criteria have changed over time; and (c) the rationale for any such changes.

**REQUEST NO. 48:**  Documents sufficient to identify (a) the current and historical requirements of a Gym, Athlete, and/or Team to attend any Event, Championship Qualifier, or Championship, including all Documents reflecting or relating to the financial, economic or

competitive effects of such requirements, broken out an Event-by-Event basis; (b) how such requirements have changed over time; and (c) the rationale for any such changes.

**REQUEST NO. 49:**  All Documents regarding (a) USASF members' current and historical attendance at non-USASF Events, including Communications regarding individual non-USASF Events, Communications regarding trends relating to non-USASF Events, and All Star cheer season schedules submitted by member Gyms and Teams; (b) how attendance and Communications have changed over time; and (c) the rationale for any such changes.

**REQUEST NO. 50:**  All Documents reflecting (a) current and historical Communications regarding USASF Athletes attendance at any Event claiming to be a World or International Championship other than the International Cheer Union, World Championships, or USASF/IASF Worlds, including internal Communications on the topic; (b) current and historical external Communications to USASF members; (c) how such Communications have changed over time; and (d) the rationale for any such changes.

**REQUEST NO. 51:**  Documents sufficient to show (a) Your Event rules, currently and historically, including all rules, limitations, or restrictions that You impose at Events or regarding Events, such as geographic limitations as to where those Events may take place and who may participate; (b) how Your Event rules have changed over time; and (c) the rationale for any such changes.

**REQUEST NO. 52:**  Documents sufficient to show (a) the current and historical rules and scoring guidelines imposed on Teams at USASF All Star Events, including any copyrights; (b) how such rules have changed over time; and (c) the rationale for any such changes.

**REQUEST NO. 53:**  All Documents reflecting Communications demanding non-USASF Events refrain from using USASF Event rules.

24

**REQUEST NO. 54:**  All Documents reflecting USASF members who reported liability insurance coverage through carriers other than K&K Insurance.

**REQUEST NO. 55:**  All Documents concerning any restrictions or rules prohibiting Event producers from holding Bid-qualifying Events within a certain distance of any other Bid-qualifying Events or within the same geographic area or region, including any and all Documents reflecting Communications between You and Varsity or anyone else regarding any such rules or restrictions.

**REQUEST NO. 56:**  All Documents reflecting or relating to the financial or economic effects of Your Event rules, limitations, and restrictions described in Request No. 51.

**REQUEST NO. 57:**  Documents sufficient to show the information included on Event scoresheets and/or Event scorebooks, including all Event scoring categories and points available at each Event.

**REQUEST NO. 58:**  All Documents concerning instructions given to Your Event judges.

**REQUEST NO. 59:**  All Documents concerning or reflecting the relationship, if any, between the brand of Apparel, the choice of choreographer, or the ownership of a Gym, on the one hand, and scoring at competitions, on the other.

**REQUEST NO. 60:**  All Documents concerning the rules, limitations, or restrictions imposed by You on Athletes, Spectators, coaches, judges, and officials, relating to such persons' participation in Events hosted by Independent Event Producers.

**REQUEST NO. 61:**  Documents sufficient to identify all requirements for Event Producers, Gyms, Athletes, Teams, Spectators, legality officials, and/or coaches to participate in or produce USASF-sanctioned events.

**REQUEST NO. 62:**  Documents sufficient to identify all requirements for USASF membership, broken out for Event Producers, Gyms, Athletes, Teams, Spectators, legality officials, and coaches.

**REQUEST NO. 63:**  Documents sufficient to show USASF's membership policies, Prices, dues, fees and Prices, for Gyms, Athletes, Teams, Spectators, judges, choreographers, vendors, Event Producers, legality officials, and coaches.

**REQUEST NO. 64:**  Documents sufficient to identify all USASF members (including member Athletes, Gyms, Teams, and Coaches), broken out by membership type and listing year joined and duration of membership.

**REQUEST NO. 65:**  Documents sufficient to identify all requirements for becoming a USASF Athlete, Gym, Team, and/or Coach member, including financial and other requirements to become a member and any required supporting documentation that must be submitted to USASF in order to become a member.

**REQUEST NO. 66:**  Documents sufficient to identify all USASF judges, choreographers, and legality officials, broken out by title, responsibilities, and years serving in relevant position.

**REQUEST NO. 67:**  Documents sufficient to identify all requirements for becoming a USASF judge, choreographer, and/or legality official, including any financial and other requirements to become a member and any required supporting documentation that must be submitted to USASF in order to become a judge, choreographer, or legality official.

**REQUEST NO. 68:**  All Documents reflecting or relating to the financial, economic, or competitive effects of USASF membership requirements.

**REQUEST NO. 69:**  Documents sufficient to show the conditions and restrictions associated with maintaining a USASF membership for Gyms, Athletes, Teams, Spectators, judges, choreographers, vendors, Event Producers, legality officials, and coaches.

**REQUEST NO. 70:**  All Communications to USASF members regarding Events not sanctioned by USASF.

**REQUEST NO. 71:**  Documents sufficient to identify the total number of Event tickets sold on a monthly, quarterly and annual basis, together with Documents sufficient to show the location where the sales were made (city and state); what means was used to pay for the tickets (*i.e.*, cash, credit card, debit card, check, etc.); and whether the tickets were sold by you or using a third party.

**REQUEST NO. 72:**  Documents sufficient to identify the website URLs where tickets to Events are available for purchase by consumers, either directly or indirectly through USASF, and the years for which You utilized those URLs.

**REQUEST NO. 73:**  Documents sufficient to show all entities that You partner with for Event ticket sales, including the years for which You partnered with those entities, as well as all Documents relating to financial arrangements between You and such entities.

**REQUEST NO. 74:**  Documents sufficient to show Your policies and practices concerning Event ticket pricing, including any Documents reflecting or relating to the financial, economic, or competitive effects of ticket pricing.

**REQUEST NO. 75:**  All Communications between You and any Independent Event Producer or Varsity about changes in Event ticket pricing.

**REQUEST NO. 76:**  Documents sufficient to show all travel subsidies paid to Gyms for attending Events for all Events hosted or sponsored by Varsity, Independent Event Producers, and/or USASF during the Relevant Time Period.

## V.     ALL STAR APPAREL

**REQUEST NO. 77:**   All Communications concerning Apparel between You or any of your Staff, Employees or directors, on the one hand, and any Gym, Athlete, Team, Spectator, judge, choreographer, vendor, Event Producer, legality official, and/or coach, on the other.

**REQUEST NO. 78:**   All Documents constituting or reflecting any policy or practice of Yours regarding which entities or persons may showcase or sell merchandise at USASF events, as well as Documents sufficient to identify all persons or entities permitted to do so.

**REQUEST NO. 79:**   All Documents reflecting Your desire or efforts to thwart, limit or suppress any Apparel manufacturers' ability to showcase or sell Apparel at Your Events.

**REQUEST NO. 80:**  Documents sufficient to show all entities that You partner with for Varsity-branded All Star Apparel sales, including any financial arrangements between You and such entities.

**REQUEST NO. 81:**  All Documents reflecting Your policies relating to Apparel manufacturers' competition with Varsity-branded Apparel.

## VI.    RELATIONSHIP BETWEEN VARSITY AND USASF

**REQUEST NO. 82:**  Documents sufficient to show all monies paid by Varsity to USASF and all loans, gifts, or payments made by Varsity to USASF, including for each loan, gift, or payment of money, the terms of the loan, gift, or payment, what the loan, gift, or payment was used for, and, if applicable, USASF's repayment history.

**REQUEST NO. 83:**  Documents sufficient to show all monies paid by USASF to Varsity, including for each loan, gift, or payment of money, the terms of the loan, gift, or payment, what the loan, gift, or payment was used for, and, if applicable, the repayment history.

**REQUEST NO. 84:**  Documents sufficient to show the origins of the original 2003 trademark application for the marks "U.S. All Star Federation" and "USASF," including who applied for the trademark and who was listed as the owner, including Documents sufficient to show transfer and current ownership of those trademarks, if applicable.

**REQUEST NO. 85:**  Documents reflecting or relating to the National All Star Cheerleading Coaches' Congress ("NACCC"), including but not limited to all Documents relating to or reflecting whether USASF was funded to thwart a competitive threat posed by the NACCC and how Varsity and USASF planned to or did thwart competition, as well as all Documents reflecting or relating to USASF's acquisition of NACCC in 2005. Responsive Documents include all state and federal tax filings and Communications with state and federal tax agencies, including but not limited to any Communications with the Internal Revenue Service regarding USASF's acquisition of NACCC.

**REQUEST NO. 86:**  Documents sufficient to identify what email addresses USASF Staff, Employees and directors have used since 2003 for official USASF business.

**REQUEST NO. 87:**  Documents sufficient to identify the USASF Staff, Employees and directors, by name and job title, who were paid by Varsity, and the amounts that were paid by Varsity, since 2003.

**REQUEST NO. 88:**  Documents sufficient to identify all individuals who have been affiliated with in any way, including by employment status, volunteer status, payments, and

29

board membership, at one time or another (even if not simultaneously), by both USASF and Varsity, or a company owned by Varsity.

**REQUEST NO. 89:**  Documents sufficient to identify, since 2003, the owner of the URL www.usasf.net, as well as the owner of all registrations associated with the URL, such as "PERFECT PRIVACY, LLC."

**REQUEST NO. 90:**  Documents sufficient to show, beginning January 1, 2003, the address(es) of USASF's and Varsity's offices.

**REQUEST NO. 91:**  Documents sufficient to identify all Varsity-owned and/or Varsity-created cheerleading groups and/or governing bodies of which USASF is a "member," such as USA Cheer, including the address and telephone numbers of each group and the Staff or Employees of each group.

**REQUEST NO. 92:**  Documents sufficient to show, beginning on January 1, 2003, the composition of the USASF board, including the type of board seat held (*e.g.*, seats reserved for Gym owners and/or coaches, or seats reserved for certain competition Event Producers), the employer of each board member, and whether that employer was, at the time, an entity owned by Varsity.

**REQUEST NO. 93:**  Documents sufficient to show, beginning on January 1, 2003, the selection process for USASF board member candidates, including the names of the members of the nominating committee.

**REQUEST NO. 94:**  All Documents reflecting or relating to Communications between You or any of your Staff, Employees, directors, or anyone working on Your behalf, on the one hand, and Varsity, Varsity's executives, directors, or Employees, or anyone acting on Varsity's

behalf and/or Bain and/or Charlesbank and/or Partners Group, on the other, concerning any of the following topics:

    a.  Event production, including All Star or other Events, Varsity Events, USASF sanctioned Events, USASF-member IEP Events, and non-USASF sanctioned Events, including Event sales and expenditures;

    b.  Independent Event Producers;

    c.  the demand, supply, output, revenues, income, profits, sales arising out of or relating to All Star or other Events;

    d.  Apparel, including Apparel sales and expenditures, if any;

    e.  the demand, supply, output, revenues, income, profits, sales arising out of or relating to All Star or other Apparel;

    f.  the demand, supply, output, revenues, income, profits, sales arising out of or relating to any other market in which USASF or Varsity competes or participates; and

    g.  the market shares of any competitors or suppliers in any market in which USASF or Varsity competes or participates.

## VII.    DOCUMENT RETENTION AND PRESERVATION

    **REQUEST NO. 95:**  Documents sufficient to identify and describe the systems and structures You use to store, maintain, or utilize Your ESI, including all codes, information, documentation, ESI or programs necessary to utilize any ESI You are producing in response to these requests.

    **REQUEST NO. 96:**  Documents sufficient to show Your preservation, retention, backup, storage, destruction, and litigation hold policies and practices for Documents, electronic

Communications equipment, and data storage media (including phones, mobile devices, laptops, tablets, pagers, personal computers, servers, removable storage media, cloud storage, and backup media) as well as any changes to, enforcement of, and compliance with, those policies over the Relevant Time Period.

**REQUEST NO. 97:**  All Documents concerning any known departure or variance from any of Your policies concerning the retention, storage, or destruction of any Document identified in Request No. 96.

## VIII.   SEXUAL MISCONDUCT

**REQUEST NO. 98:**  Irrespective of time period, all statements, affidavits, declarations or other factual material referring to or submitted by You in connection with any investigation or litigation concerning the reporting of sexual misconduct with the cheer industry or business, as well as the requests that prompted the provision by You of those Documents.

**REQUEST NO. 99:**  Irrespective of time period, all Documents provided by You to any news outlet or other organization in response to allegations of sexual misconduct by Varsity, and Independent Event Producers, or USASF Staff, Employees, directors, workers, vendors, or contractors, at Varsity or USASF Events, or affiliated with Varsity or USASF in any way.

**REQUEST NO. 100:** Documents sufficient to show Your policies regarding reporting of sexual misconduct and any other physical or mental abuse of minors, including hazing, bullying, and emotional abuse by You, Your members, or others in the All Star Cheer industry, including Documents reflecting or relating to Your SafeSport Code, SafeSport policies, SafeSport training, Your Professional Responsibility Code & Proactive Minor Abuse Prevention Policies, and the Athletes 1st initiative.

**REQUEST NO. 101:** All Documents reflecting or relating to insurance or insurance policies relating to coverage for allegations or litigation related to sexual misconduct.

**REQUEST NO. 102:** All Communications between Varsity and USASF concerning the reporting of sexual misconduct, as well as all Documents reflecting Your desire or efforts to thwart, limit or suppress such reporting.

**REQUEST NO. 103:** Documents sufficient to identify any of Your Staff, workers, Employees, directors, vendors, contractors, or Gym owners, coaches, choreographers, or judges associated with any of Your Events, that have been convicted of sex crimes against minors, including those whom are registered as sex offenders.

**REQUEST NO. 104:** Documents sufficient to show the background check process, including primary and secondary screenings, for anyone age 18 years or older who accompanies a Team into a warm-up or backstage area at all Events, including Gym owners, coaches, volunteers and non-coaching Staff members associated with a program, and adult Athletes who are 19 years or older, before being employed or permitted to participate in or attend Events.

**REQUEST NO. 105:** Documents sufficient to show the effect of a person being flagged during any background check or screening process, including whether flagged persons were still permitted to work in the All Star or cheerleading industry including at All Star Events.

**REQUEST NO. 106:** Documents sufficient to identify all Gym owners, coaches, volunteers, and non-coaching Staff members associated with a program, and adult Athletes who have been flagged during Your background check or screening processes, including why they were flagged, whether membership was suspended or revoked, and if so, whether membership was reinstated.

**REQUEST NO. 107:** Documents sufficient to identify all suspended members and members ineligible for USASF membership.

**REQUEST NO. 108:** Documents sufficient to identify all complaints You received from Your members or customers regarding sex offenders within the All Star or cheerleading industry, including the names and roles of any persons identified in the complaints and the allegations against them.

**REQUEST NO. 109:** Documents sufficient to show any action taken by You in response to the complaints identified in Request No. 108.

**REQUEST NO. 110:** All Communications between Varsity and USASF concerning the complaints identified in Request No. 108 and concerning any identified or suspected sex offenders within the All Star or cheerleading industry.

**REQUEST NO. 111:** All Documents reflecting or relating to any discussions, deliberations, analyses, or Communications regarding the effect, if any, of sexual misconduct and surrounding publicity on USASF's sales, membership, dues, revenues, costs, profitability, competition, or competitors in any market in which USASF competes.

## IX.    MISCELLANEOUS

**REQUEST NO. 112:** All Documents reflecting or concerning Your Communications with any of the Plaintiffs.

**REQUEST NO. 113:** All Communications between You and anyone else, including members of the proposed Class, referencing or relating to the allegations in the Complaint, including the filing of the Complaint, exclusive of any Communications protected by attorney/client privilege.

**REQUEST NO. 114:**  All Documents created, produced, published or issued by third party analysts or consultants regarding USASF and the cheerleading industry, including, reports that analyze or project demand, revenues, income, profits or market share derived from or relating to All Star or other Events, and All Star or other Apparel.

**REQUEST NO. 115:**  Irrespective of time period, all statements, affidavits, declarations or other factual material referring to or submitted by You in connection with any investigation or litigation, including investigations and litigation related to All Star Apparel and the definition of cheerleading as a sport, as well as the requests that prompted the provision by You of those Documents.

**REQUEST NO. 116:**  Irrespective of time period, all Documents provided by You to the Federal Trade Commission, Securities and Exchange Commission, Department of Justice, a state attorney general, or any other governmental agency regarding Varsity or USASF, as well as all such requests that prompted the provision by You of those Documents.

**REQUEST NO. 117:**  All Documents not otherwise responsive to any of these requests relating to Your answers to any of Plaintiffs' Interrogatories.

Dated: October 19, 2020

By: _____
    Eric L. Cramer

H. Laddie Montague, Jr.*
Eric L. Cramer*
Mark R. Suter*
**BERGER MONTAGUE PC**
1818 Market Street, Suite 3600
Philadelphia, PA 19106
Telephone: (215) 875-3000
hlmontague@bm.net
ecramer@bm.net
msuter@bm.net

Jonathan W. Cuneo*
Katherine Van Dyck*
Victoria Sims*
**CUNEO GILBERT & LADUCA LLP**
4725 Wisconsin Avenue NW, Suite 200
Washington, DC 20016
Tel: (202) 789-3960
jonc@cuneolaw.com
kvandyc@cuneolaw.com
vicky@cuneolaw.com

Gregory S. Asciolla*
Karin E. Garvey*
Veronica Bosco*
Ethan H. Kaminsky*
**LABATON SUCHAROW LLP**
140 Broadway
New York, NY 10005
Telephone: (212) 907-0700
gasciolla@labaton.com
kgarvey@labaton.com
vbosco@labaton.com
ekaminsky@labaton.com

*Interim Co-Lead Counsel for the Proposed
Direct Purchaser Class*

36

J. Gerard Stranch, IV (TN BPR #23045)
Benjamin A. Gastel (TN BPR #28699)
**BRANSTETTER, STRANCH &
JENNINGS, PLLC**
223 Rosa Parks Ave. Suite 200
Nashville, TN 37203
Telephone: (615) 254-8801
gerards@bsjfirm.com
beng@bsjfirm.com

*Liaison Counsel for Plaintiffs and the
Proposed Direct Purchaser Class*

Benjamin D. Elga**
**JUSTICE CATALYST LAW, INC.**
81 Prospect Street
Brooklyn, NY 11201
Tel: (518) 732-6703
belga@justicecatalyst.org

Brian Shearer**
Craig L. Briskin**
**JUSTICE CATALYST LAW, INC.**
718 7th Street NW
Washington, DC 20001
Tel: (518) 732-6703
brianshearer@justicecatalyst.org
cbriskin@justicecatalyst.org

Roberta D. Liebenberg**
Jeffrey S. Istvan**
Mary L. Russell*
**FINE KAPLAN AND BLACK, R.P.C**
One South Broad St., 23rd Floor
Philadelphia PA 19107
Tel: (215) 567-6565
rliebenberg@finekaplan.com
jistvan@finekaplan.com
mrussell@finekaplan.com

*Additional Counsel for Plaintiffs and the
Proposed Direct Purchaser Class*

* Admitted pro hac vice
** Pro hac vice application forthcoming

Nathan A. Bicks (TN BPR #10903)
Frank B. Thacher III (TN BPR #23925)
**BURCH, PORTER, & JOHNSON, PLLC**
130 North Court Ave.
Memphis, TN 38103
Telephone: (901) 524-5000
nbicks@bpjlaw.com
fthacher@bpjlaw.com

Aubrey B. Harwell, Jr. (TN BPR #002559)
Charles Barrett (TN BPR #020627)
Aubrey B. Harwell III (TN BPR #017394)
**NEAL & HARWELL, PLC**
1201 Demonbreun St., Suite 1000
Nashville, TN 37203
Telephone: (615) 244-1713
aharwell@nealharwell.com
cbarrett@nealharwell.com
tharwell@nealharwell.com

*Additional Counsel for Plaintiffs and the
Proposed Direct Purchaser Class*

\* Admitted pro hac vice
\*\* Pro hac vice application pending
\*\*\* Pro hac vice application forthcoming

## CERTIFICATE OF SERVICE

I, Eric L. Cramer, hereby certify that on this 19th day of October 2020, I served a copy of

the foregoing Plaintiffs' First Request for Production of Documents to Defendant U.S. All Star

Federation, Inc. via electronic mail upon the below Counsel:

Adam S. Baldridge
Matthew Sinon Mulqueen
**BAKER DONELSON BEARMANN
CALDWELL & BERKOWITZ**
165 Madison Ave
Ste 2000
Memphis, TN 38103
Tel: 901-526-2000
Tel: 901-577-8234
abaldridge@bakerdonelson.com
mmulqueen@bakerdonelson.com

Steven Kaiser
Alexis Collins
George Cary
Mark W. Nelson
**CLEARY GOTTILEB STEEN &
HAMILTON LLP**
2112 Pennsylvania Avenue NW
Ste 1000
Washington, DC 20037
Tel: 202-974-1554
Tel: 202-974-1519
Tel: 202-974-1920
Tel: 202-974-1500
skaiser@cgsh.com
alcollins@cgsh.com
gcary@cgsh.com
mnelson@cgsh.com

*Attorneys for Defendants Varsity Brands,
LLC, Varsity Spirit Fashions & Supplies, Inc.,
and Varsity Spirit, LLC*

Grady M. Garrison
Nicole D. Berkowitz
**BAKER DONELSON BEARMAN
CALDWELL & BERKOWITZ, P.C.**
165 Madison Ave.
Ste. 2000
Memphis, TN 38103
Tel: 901-526-2000
Tel: 901-577-8166
Fax: 901-577-2303
ggarrison@bakerdonelson.com
nberkowitz@bakerdonelson.com

*Attorneys for Defendant U.S. All Star
Federation, Inc.*

_____
Eric L. Cramer