**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TENNESSEE**

| | |
|---|---|
| **FUSION ELITE ALL STARS**, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>**VARSITY BRANDS, LLC**, et al.,<br><br>Defendants. | Case No. 2:20-cv-02600-SHL-cgc<br><br>**JURY TRIAL DEMANDED** |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF**
**MOTION TO COMPEL DISCOVERY RESPONSES FROM VARSITY DEFENDANTS**

## TABLE OF CONTENTS

I.     INTRODUCTION ......................................................................................................1

II.    HISTORY OF MEET & CONFERS ........................................................................3

III.   LEGAL STANDARD................................................................................................4

IV.   ARGUMENT ............................................................................................................5

       A.     The Relevant Time Period .............................................................................6

       B.     Specific Requests for Production...................................................................9

       C.     Custodians...................................................................................................13

             1.     James Hill.........................................................................................14

             2.     Jamie Parrish ....................................................................................14

       D.     The Proportionality of the Documents and ESI Sought...............................15

V.     RESERVATION OF RIGHTS ................................................................................17

VI.   CONCLUSION.......................................................................................................17

Plaintiffs Fusion Elite All Stars, Spirit Factor LLC d/b/a Fuel Athletics, Stars and Stripes

Gymnastics Academy Inc. d/b/a Stars and Stripes Kids Activity Center, Kathryn Anne Radek,

Lauren Hayes, and Janine Cherasaro (collectively, "Plaintiffs"), individually on behalf of

themselves and on behalf of all others similarly situated, hereby file this Memorandum of Law

in Support of Motion to Compel Discovery seeking an order compelling Defendants Varsity

Brands, LLC, Varsity Spirit, LLC, and Varsity Spirit Fashion & Supplies, LLC (collectively,

"Varsity") to produce certain documents and electronically-stored information ("ESI")

responsive to Plaintiffs' First Requests for Production of Documents ("RFPs"), properly served

pursuant to Federal Rule of Civil Procedure 34 and readily available to them.

## I.    INTRODUCTION

All Star Cheer [1] is an elite, competitive, and distinctive type of cheerleading. Dkt. 56 ¶3.

This antitrust class action was filed by All Star Gyms and parents of All Star cheerleaders against

Varsity—the dominant producer of All Star Competitions and All Star Apparel (together, the

"Relevant Markets")—and USASF, All Star Cheer's main regulatory body.[2] Plaintiffs seek to

represent a class of entities and natural persons that directly paid Varsity for: (a) registration,

entrance, spectator, or other fees and expenses associated with participation in one or more

Competitions or (b) Apparel. *Id.* ¶40.

Plaintiffs allege that Varsity systematically impaired and then acquired its actual and

potential rivals in the U.S. market for Competitions and now controls the Competition market,

---

[1] Unless otherwise indicated, capitalized terms have the same meaning as those used in the Consolidated Class Action Complaint. Dkt. 56.

[2] Defendants are Varsity and U.S. All Star Federation, Inc. ("USASF") (Varsity and USASF together, "Defendants"). Plaintiffs are three All Star Gyms and three parents of current and former All Star Cheerleaders (collectively, "Plaintiffs"). *Id*. ¶¶29-39.

producing 90% of Competitions. *Id.* ¶¶156-69, 16, 189, 194, 217. The goal of All Star Teams is to attend one of three year-end Championships, which Teams can do only by earning a Bid. *Id.* ¶¶85-101. Varsity controls which Competitions have the right to award Bids to the Championships, and nearly all Bid-awarding Competitions are owned by Varsity. *Id.* ¶¶93, 98, 101. Thus, as a result of Varsity's exclusionary conduct, All Star Gyms are effectively required to attend Varsity Competitions to receive Bids. *Id.* ¶87. To further control which Competitions Gyms attend, Varsity imposes exclusionary agreements or terms on them, causing the Gyms to agree, on their own behalf and on behalf of their All Star Team members, to almost exclusively attend Varsity Competitions. *Id.* ¶¶172-84.

Varsity has leveraged its control of the Competition Market to dominate the Apparel Market by effectively requiring All Star Teams to wear Varsity Apparel from "bow to toe," as Gyms that spend more on Varsity's Apparel reportedly have a better chance at scoring higher at Varsity Competitions. *Id.* ¶¶146, 194. Moreover, Varsity's exclusionary agreements make buying from non-Varsity Apparel competitors prohibitively expensive. *Id.* ¶¶107, 192. As a result, Varsity controls 80% of the Apparel market. *Id.* ¶107.

Finally, Varsity and USASF, All Star Cheer's governing body which is controlled by Varsity, have conspired to maintain control of the Competition Market by erecting additional barriers to entry that prevent non-Varsity, independent event producers ("IEPs") from entering the market and making it increasingly difficult for non-Varsity affiliated All Star Athletes to effectively participate in Competitions. *Id.* ¶¶93, 106-07, 135-38, 140-142, 154.

Plaintiffs bring claims against Defendants under Section 2 of the Sherman Act, 15 U.S.C. § 2, for monopolization and conspiracy to monopolize. The discovery sought—and the related RFPs, custodial accounts, and time period discussed below—go to the heart of these allegations.

Throughout the parties' discovery negotiations, Plaintiffs have consistently compromised and attempted to lessen Varsity's burden, and the volume of ESI that Plaintiffs seek is well within the ranges seen in cases of similar magnitude. Plaintiffs respectfully request that the Court order Varsity to comply with its discovery obligations.

## II.    HISTORY OF MEET & CONFERS

The parties have engaged in near-weekly meet and confer sessions on Plaintiffs' First Set of Requests for Production to Varsity since December 2020. During the meet and confers and the correspondence that followed, Plaintiffs have narrowed their requests multiple times. Despite these efforts, Varsity has continued to reject Plaintiffs' compromises and has, on many occasions, demanded further concessions before it would even consider a compromise. For instance, instead of considering Plaintiffs' initial custodian proposal, Varsity demanded, without any effort to explain why the proposed custodians were not relevant, that Plaintiffs further reduce the number of custodians sought before it would consider them at all. Varsity even conditioned its extremely limited custodian proposal on an agreement that Plaintiffs forego or severely limit any motions to compel production from further custodians, beyond the few it had agreed to add.

This pattern of obstruction has been repeated with respect to numerous other disputed discovery issues. Varsity has even withdrawn previous offers of production, such as the offer it made with respect to Request No. 56, discussed below. Despite this, Plaintiffs have continued to offer compromises to narrow the disputes. The parties have now reached impasse on 17 requests and several issues concerning the scope of production, namely the temporal scope of production, and custodians.

## III.    LEGAL STANDARD

"The scope of discovery under the Federal Rules of Civil Procedure is traditionally quite broad." *Goree v. United Parcel Serv., Inc.* ("*Goree II*"), No. 14-cv-2505, 2015 WL 11120571, at *5 (W.D. Tenn. Sept. 29, 2015).

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1). This includes "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." *Goree II*, 2015 WL 11120571, at *5 (citation omitted).

"In assessing the proper scope of discovery, the court looks to the underlying claims and defenses." *Id*. Plaintiffs here bring monopolization and conspiracy claims under the Sherman Act. Dkt. 56 ¶¶243-247, 249-261. These claims require evidence of:

(1) <u>Monopoly Power</u>: a defendant had monopoly power—or conspired with a defendant that did;

(2) <u>Willful Acquisition, Maintenance, or Use of that Power through Anticompetitive Conduct</u>: a defendant deliberately achieved or maintained that monopoly power other than by competing on the merits—or conspired with the specific intent to monopolize and took overt actions to support monopolization;

(3) <u>Causation of Anticompetitive Harm</u>: a defendant used the resulting monopoly power to increase prices above competitive levels, impair competitors, decrease output below competitive levels, decrease quality, or impose other anticompetitive harms; and

(4) <u>Concerted Action</u>: a defendant collaborated with another to harm competition (required only for a conspiracy to monopolize, not for monopolization).

*See Conwood Co., L.P. v. U.S. Tobacco Co.*, 290 F.3d 768, 782, 788-89 (6th Cir. 2002) (elements of monopolization claim); *Richter Concrete Corp. v. Hilltop Concrete Corp.,* 691 F.2d 818, 827 (6th Cir. 1982) (elements of claim for conspiracy to monopolize).

"[T]he heart of any American antitrust case is the discovery of business documents. Without them, there is virtually no case." *In re Uranium Antitrust Litig.*, 480 F. Supp. 1138, 1155 (N.D. Ill. 1979). In particular, "broad discovery may be needed to uncover evidence of invidious design, pattern, or intent." *Urethane*, 261 F.R.D. at 573; *see also In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. 07-cv-5944, 2014 WL 5462496, at *8 (N.D. Cal. Oct. 23, 2014) (same). And in conspiracy cases, "[b]road discovery is permitted because direct evidence of an anticompetitive conspiracy is often difficult to obtain, and the existence of a conspiracy frequently can be established only through circumstantial evidence, such as business documents and other records." *In re Urethane Antitrust Litig.*, 261 F.R.D. 570, 573 (D. Kan. 2009). Indeed, "the proof is largely in the hands of the alleged conspirators." *Mary Ann Pensiero, Inc. v. Lingle*, 847 F.2d 90, 95 (3d Cir. 1988) (quoting *Poller v. Columbia Broadcasting Sys. Inc.*, 368 U.S. 464, 473 (1962)). And given the scope of this antitrust class action and the amount of money involved, "[t]he public policy implications in this matter favor extremely broad discovery." *United States v. Blue Cross Blue Shield of Mich.*, No. 10-cv-14155, 2012 WL 4513600, at *3 (E.D. Mich. Oct. 1, 2012).

## IV.   ARGUMENT

Key to the present litigation is whether Varsity maintained monopoly power in the Relevant Markets in the U.S. and whether Varsity conspired with USASF to monopolize those markets. The documents, ESI, relevant time period, and custodians discussed below are necessary to support Plaintiffs' claims. Varsity argues that the documents Plaintiffs seek are

unduly burdensome. Plaintiffs, however, have made significant attempts to lessen that burden. And the resulting volume of documents and number of custodians that Varsity will have to produce are well within the ranges seen in cases of similar magnitude. As for relevance, it is indisputable with respect to the issues and requests discussed below.

A.      The Relevant Time Period

Plaintiffs' Complaint encompasses events going back to 2003 and acquisitions of Varsity's competitors going back to 2008, Dkt. ¶¶ 71, 73, 168, 197, yet Varsity refuses to produce data from any time before 2015. This position is untenable and will deprive Plaintiffs of much of the relevant evidence at issue in their case.[3]

Transactional and other data reflecting sales of the relevant products and services at issue is the information Plaintiffs' and Defendants' experts use to create damage models, calculate damages, assemble expert reports relevant to class certification and conduct a variety of other crucial tasks in the litigation. It is typically the lifeblood of any antitrust case and this case is no exception. Thus, being deprived it is particularly problematic.

Pursuant to this Court's October 15 Scheduling order, the parties' data productions were due "[w]ithin 100 days of service of the relevant requests for production of documents"—*i.e.*, January 25, 2021. Dkt. 61 at 2. Varsity did not produce their data by this deadline, relying on an ultimately-abandoned objection. Varsity finally produced its data several months later, still objecting to the scope of production Plaintiffs requested. Varsity's primary objection has been to Plaintiffs' requested time period which initially was from 2008 to the present, but which

---

[3] Plaintiffs have also requested Varsity to provide "team-level" data—data broken out by each team that attends a given gym, as well as data from the Worlds competition, which Plaintiffs believe Varsity has. Plaintiffs understand that there are no current disputes regarding those requests and will therefore not expend further time on them.

Plaintiffs have pared back to January 1, 2011 to June 30, 2020. Varsity has agreed only to produce data from 2015 forward, so the dispute is about the period 2011 to 2015.[4]

Data from 2011 forward is necessary to encompass a number of important events, including the spate of significant acquisitions Varsity made of its rivals in the Competition Market: Pac West (2011), CheerSport and Universal Spirit (2012), Cheer Ltd (2014), COA Cheer & Dance (2015), and JAM Brands (2015). Dkt. 56 ¶¶159-164, 168. Through these acquisitions Varsity eradicated its largest competitors and absorbed the majority of Bid-awarding events put on by independent producers.[5] Dkt. 56 ¶¶128, 165, 166.[6]

---

[4] Plaintiffs' reserve their rights to seek supplementation of data from July 1, 2020 to the date of dispositive motions or trial, given that damages continue to accrue.

[5] These and a number of other acquisitions were a significant part of Varsity's Exclusionary Scheme. For example, "JAM Brands produced many of the largest and most popular Competitions in the United States, including The MAJORS and The U.S. Finals, one of the most coveted All Star Championships. It also owned Competitions that awarded 24 of the Bids to Worlds." Dkt. 56 ¶160.

[6] The data and documents emanating from this earlier period are relevant both because they reflect a time when Varsity's market share and power was lower (and thus would serve as a benchmark for measuring the effects of the alleged scheme), and also because Varsity has engaged in a continuing scheme to violate the antitrust laws, making these acts part of the alleged monopolization scheme that is causing harm to the Plaintiffs and class members during the limitations period. *See*, *e.g.*, *Barnosky Oils, Inc. v. Union Oil Co. of California*, 665 F.2d 74, 81 (6th Cir.1981). ("When a continuing antitrust violation is alleged, the cause of action accrues each time a plaintiff is injured by an act of the defendants."); *In re Se. Milk Antitrust Litig.*, 555 F. Supp. 2d 934, 947 (E.D. Tenn. 2008) (same); *In re Skelaxin (Metaxalone) Antitrust Litig.*, No. 12–md–2343, 2013 WL 2181185, at *29 (E.D. Tenn. May 20, 2013) ("even if most or all of the overt acts alleged as part of the continuing conspiracy occurred outside the limitations period— Plaintiffs have sufficiently alleged those acts resulted in Plaintiffs being overcharged for metaxalone well into the limitations period"); *Le v. Zuffa, LLC*, 216 F. Supp. 3d 1154, 1169 (D. Nev. 2016) (rejecting defendant's argument that claim was barred by statute of limitations because "all but one of the acquisitions that Plaintiffs discuss occurred outside the applicable four-year statute of limitations" given that the conduct and its effects continued into the limitations period); *Meijer, Inc. v. 3M*, No. 04-cv-5871, 2005 WL 1660188, at *3-4 (E.D. Pa. July 13, 2005) ("[I]t has long been held that 'a purchaser suing a monopolist for overcharges paid within the previous four years may satisfy the conduct prerequisite to recovery by pointing to anticompetitive actions taken before the limitations period.'") (quoting *Berkey Photo, Inc. v. Eastman Kodak Co.*, 603 F.2d 263, 296 (2d Cir. 1979)).

Data from the time before these acquisitions will demonstrate how Varsity operated—and the effects of that conduct on prices—before it removed its main competitors in the competition market, in comparison with how it behaved—and its prices—after doing so. *See Kleen Prod. LLC v. Int'l Paper*, 306 F.R.D. 585, 595 (N.D. Ill. 2015)*, aff'd sub nom. Kleen Prod. LLC v. Int'l Paper Co*., 831 F.3d 919 (7th Cir. 2016) ("demonstrating impact and damages involves comparing the 'but-for' price—the price a customer would have paid in the absence of the conspiracy—and the actual price paid.") (internal quotations omitted). It is critical that Plaintiffs and their expert economists have access to information regarding the state of prices in the Relevant Markets during a period when Varsity's monopoly power was lower so those prices can be compared to a period when Varsity's monopoly power was higher, controlling for other factors affecting price. "The 'before and after' theory compares . . . the prices [plaintiff] paid during the period the violation continued with . . . prices paid prior to the beginning of the violation or after its termination." *In re NASDAQ Mkt.-Makers Antitrust Litig.*, 169 F.R.D. 493, 521 (S.D.N.Y. 1996); *accord Conwood*, 290 F.3d at 793 (approving methodology using data from seven years before and seven years after benchmark date); *Allan v. Realcomp II, Ltd.*, No. 10-cv-14046, 2013 WL 12333444, at *6 (E.D. Mich. Mar. 30, 2013) (approving of "before and after" analysis to determine "but-for cause of a statistically significant rise in prices in the relevant market"); *Arrowpac Inc. v. Sea Star Line, LLC*, No. 12-cv-1180, 2014 WL 12617575, at *3 (M.D. Fla. Sept. 11, 2014) ("[p]re and post conspiracy information … [is] directly relevant to Plaintiffs' damages because the "before and after" method … requires such information."). The data Varsity possesses, going back to 2011, is the only source of such information, and Plaintiffs' request is proportional to the needs of the case. *See infra* Section IV.E.

Plaintiffs thus seek the following relevant categories of data back to January 1, 2011:

(1) transactional sales data for Apparel, and Competition fees (including spectator fees);

(2) Apparel and Competition cost data, included in cost reports and Varsity's general ledger entries; and

(3) data showing rebates paid to gyms as part of their participation in the Family Plan and Network Agreements.

Such information is highly relevant to the third element of Plaintiffs' monopolization claim, anticompetitive harm, as well as to proof of impact and damages to members of the Class. The class period in this case runs from May 26, 2016 until the continuing Exclusionary Scheme allegedly ends. If Varsity can get away with producing only data from 2015 forward, Plaintiffs may not have sufficient data for the pre-damages period to do a proper analysis of impact and damages. This request is thus potentially case dispositive. Varsity is attempting to keep Plaintiffs from having access to information critical to proving their claims.

### B.   Specific Requests for Production[7]

**Request No. 20:** Request No. 20 seeks financial information from Varsity, including profit and loss statements, cash flow statements, and balance sheets. The majority of the categories of documents responsive to this request are standard corporate documents, located in known places in Varsity's files from which they can be copied without significant burden. In addition, Plaintiffs have sought, and the parties have discussed, profit and loss statements relating to particular competitions. With respect to the former, Plaintiffs need Varsity's general profit and loss statements, cash flow statements and balance sheets to track the effects of Varsity's acquisitions, its increases in fees, and its expansion of the requirements of its rebate

---

[7] The full text of the disputed responses and objections, in accordance with LR 26.1(b)(2) are included in Appendix A, attached hereto.

programs in which participation was required to avoid penalty pricing. Plaintiffs require the latter because profit and loss statements from particular Competitions demonstrate how acquisitions of particular competitors affected those competitors' events (and whether they were acquired purely to expand market share) as well as how they affected Varsity's own Competitions that were previously forced to compete with them.[8] The Competition-related profit and loss statements are particularly important because Varsity has advised Plaintiffs that it lacks transactional data for acquired Competitions from the year of their acquisitions. To reduce the burden on Varsity, Plaintiffs are willing to limit the events for which they seek profit and loss statements to those acquired from Varsity's competitors, including JAMFest/Live, Spirit Celebration Grand Championship, and Spirit Celebration Challenge, as well as Varsity's Summit and the D2 Summit Competitions. All such profit and loss statements are plainly relevant.

**Request No. 56:** Request No. 56 seeks documents regarding which staff members are involved in calculating scores at Varsity's Competitions. Despite initially agreeing to produce this information for a small number of events, Varsity is now refusing to produce any documents or information in response to this Request. This Request is relevant to Plaintiffs' allegations that scoring at Varsity competitions is tied to All Star Teams' relationships with Varsity. Dkt. 56 ¶146. During the parties' meet and confers it appeared that they had reached agreement on this

---

[8] Varsity itself recognizes the importance of such information. In a recently-filed complaint against a former employee who departed Varsity for a competitor, Varsity asserted that this employee's sharing of Varsity's information regarding "competition scoring system, bid processes, pricing models, and customers" harmed its competitive position and that "the loss of dozens, if not hundreds, of customers from the D2 summit alone . . . while difficult to quantify, exceeds $75,000.00 [sic]." *Varsity Spirit LLC f/n/a Varsity Spirit Corp. v. Josh Quintero*, No. 2:21-cv-0219, Dkt. 1 ¶¶14, 36 (W.D. Tenn. Mar. 31, 2021). Upon learning of the litigation, Plaintiffs wrote a letter to Varsity to confirm that it would be producing these documents in response to Plaintiffs' Requests. During a subsequent meet and confer, Varsity's counsel stated that any such materials would be produced if responsive to Plaintiffs' agreed RFPs.

request. Varsity stated in its March 19, 2021 letter that "[w]e also offered that if Plaintiffs want us to provide that information as to a small number of particular events, Varsity likely would do so. If that is what you mean to be say about Request No. 56, we are in agreement." Ex. 2 to the Declaration of Victoria Sims, filed contemporaneously herewith, at 6. But when Plaintiffs later sought to discuss how many events the parties could agree on, Varsity informed them, without explanation, that the offer was withdrawn. Plaintiffs seek to hold Varsity to its offer.

**Request No. 62:** Request No. 62 seeks Varsity's agreements with its ticket vendors. Entities that Varsity partners with for ticket sales are directly relevant to this litigation, given that Varsity has asserted that it may argue that any spectators who purchased their tickets through such entities are indirect, rather than direct, purchasers, potentially affecting those individuals' ability to recover damages under federal law and removing them from the Direct Purchaser Class that Plaintiffs seek to represent in this litigation.

 If it is Varsity's intent to make this argument, then Varsity must produce its agreements with its vendors, so that Plaintiffs may investigate the extent to which title of the tickets actually passed from Varsity to its vendors, as well as the extent to which those vendors may have been involved in Defendants' conspiracy.

**Request No. 77:** This Request seeks documents regarding payments from Varsity to USASF. Plaintiffs allege that Varsity created and supported USASF as part of its scheme to obtain and maintain a monopoly in the Relevant Markets. Dkt. 56 ¶¶9(c), 73-76, 195-203, 248-261. Plaintiffs need to understand how much control and influence Varsity had over USASF and the mechanics of the Defendants' relationship. Defendants do not dispute their close relationship. Yet Varsity largely declines to disclose the specifics of its relationship with USASF, claiming that Plaintiffs do not need them. That is not a recognized basis for avoiding discovery that goes

11

to the core of Plaintiffs' claims and is a challenge neither to burden nor to relevance. Varsity must produce the requested documents, for the time period of January 1, 2003 to June 30, 2020.[9]

**Request No. 78:** This Request seeks documents regarding payments from USASF to Varsity. Defendants' conspiracy, and Varsity's use of USASF to effectuate its monopoly, are at the heart of this litigation. For the same reasons set forth in support of Request No. 77, the documents sought in response to Request No. 78 are also highly relevant.

**Request No. 82:**  This Request seeks documents from January 1, 2003 to June 30, 2020 regarding which USASF salaries were paid by Varsity. The documents and information sought by Request No. 82 are directly relevant to Plaintiffs' conspiracy allegations, specifically that "USASF has always been captive to Varsity," with Varsity providing significant funding and controlling its board. Dkt. 56 ¶¶73, 197, 199, 201. USASF admits, in its Interrogatory Responses, that USASF employees were all Varsity employees until January 31, 2015. *See* Ex. 1, to the Declaration of Victoria Sims, filed contemporaneously herewith. Contrary to Varsity's contention, this Request is not an attempt to circumvent limits on interrogatories. Rather, documents are the best evidence of the extent of Varsity's financial control of USASF, including evidence that Varsity maintained payroll records for USASF employees showing the identities of those individuals, how much they were paid, and for how long.

**Requests Nos. 92-103:**  Plaintiffs' Request Nos. 92 to 103 seek documents and communications related to sexual misconduct in the cheerleading industry, including Varsity's reporting and background check policies. These allegations relate directly to an essential issue

---

[9] Varsity's original objection, which it made in response to numerous requests, and on which it later ceased to rely, at least with respect to requests like this one, seeking data, was that this request should have been propounded as an interrogatory. But "[a] document request is a far more practical means of obtaining [transaction history] than is an interrogatory." *Madanes v. Madanes*, 186 F.R.D. 279, 290 (S.D.N.Y. 1999).

for Plaintiffs' § 2 claims—whether Varsity's conduct had anticompetitive effects. A decrease in quality is one such anticompetitive effect. *See Nilavar v. Mercy Health Sys. W. Ohio,* 142 F. Supp. 2d 859, 874 (S.D. Ohio 2000) (allegations of "higher prices, lower quality services, and less choice for consumers … constitute the kind of injuries that the antitrust laws were enacted to prevent"); Dkt. ¶¶237-241. The failure to adopt standards to protect cheerleaders from sexual abuse, including the failure to follow internal reporting and background check policies, is an egregious flaw in the quality of the services that Defendants offer. If Varsity faced greater competition, it and USASF would have incentive to strengthen the standards. Varsity has refused to produce any documents on this topic, pointing its pending motion to strike allegations related to sexual abuse in All Star Cheer, filed on December 1, 2020. Dkt. 82. This objection is contrary to this Court's ruling that discovery will not be stayed pending such motions.[10] Plaintiffs ask this Court to compel Varsity's responses immediately.

### C.   Custodians

The ESI Protocol likewise requires the parties to propose and discuss, in good faith, "(i) the identity and role of custodians from which documents will be obtained for the production; (ii) the identity, scope and format of custodial and non-custodial sources from which documents will be considered for production." Dkt. 72 at 4. The parties are at an impasse as to the custodians described below. Varsity does not dispute that the below custodians may have relevant documents; rather, it asserts that collecting documents for the below custodians is overly

---

[10] Dkt. ¶55 at 21:15-22:3 ("I am not inclined to stay anything pending a motion to dismiss. It's not the way I view my role as a judge in pushing cases and moving people toward resolution. I hate doing it . . . . But otherwise I'm just not inclined to do it. I don't think it's appropriate. I think giving -- setting aside time where the Court is dealing with the motion to dismiss just frankly I think takes the lawyers off the hook. And I'm not inclined to do that. Particularly in this case where you're talking about a motion that's not even going to be ripe for me to deal with until mid February. So I'm not going to do that.").

burdensome and potentially duplicative, though it has made no effort to substantiate those claims.

### 1. *James Hill*

James Hill served as Varsity's National Director of Sales until June 2020. Prior to that, he worked for Varsity as a championships Brand Manager, Assistant National Sales Director, National Account Manager, and All Star Advisor. Among other things, his self-described duties as National Sales Director included "govern[ing] a $130M annual budget for 30+ corporate event brands across US & Canada and successfully expanded customer reach through creating and defining optimal sales regions based upon total revenue and client counts." Ex. 3 at 2.[11] He also "evaluat[ed] costs against evolving market price points and establishing structures to achieve profit targets." *Id*. Finally, he "[t]argeted/established strategic partnerships and *conducted in-depth research on market trends to gain edge over competitors*." *Id*. (emphasis added). Given his roles, he likely has direct knowledge of and has been a key decision maker for items that go to the heart of this litigation, such as Competition and Apparel budgets, sales, revenues, finances, and pricing. He also likely has direct knowledge of any anticompetitive behavior by Varsity or decisions made by Varsity regarding potential competitors in the Relevant Markets.

### 2. *Jamie Parrish*

Jamie Parrish worked as a Varsity choreographer and served as a Director of Public Relations and Special Projects for Varsity. As such, he likely has direct knowledge of event scoring, decisions regarding scoring and judging, and any allegations that Varsity favors its own choreography/props/uniforms in routines at All Star Competitions. Mr. Parrish also helped form

---

[11] Attached as Exhibit 3 to the Declaration of Victoria Sims, filed contemporaneously, is a true and correct copy of the LinkedIn profile for James Hill, *available at* https://www.linkedin.com/in/jimhilljr (last accessed May 4, 2021).

the NACCC, the previous governing body for All Star Cheer, and likely has direct knowledge of why it was absorbed by Varsity-founded and -controlled USASF. Dkt. 56 ¶71.

### D.     The Proportionality of the Documents and ESI Sought

"[T]he party resisting discovery . . . bears the burden to show that the discovery sought is disproportionate." *Brown v. Tax Ease Lien Servicing, LLC*, No. 15-cv-208, 2016 WL 10788070, at *8 (W.D. Ky. Oct. 11, 2016). "Merely because production of otherwise relevant information or documents may perhaps be burdensome in the view of the responding party does not make the requested discovery automatically disproportionate for the purposes of Rule 26(b)(1)." *Id.* at *9. The factors that this Court must consider weigh heavily in favor of Plaintiffs' proposals regarding the RFPs, time period, and custodians.

The first proportionality factor looks to "the significance of the substantive issues [at stake in the litigation], as measured in philosophic, social, or institutional terms." *In re Haynes*, 577 B.R. 711, 727 (Bankr. E.D. Tenn. 2017) (quoting Fed. R. Civ. P. 26(b) advisory committee's note). Plaintiffs allege monopolization of a multi-million-dollar industry impacting hundreds of thousands of gyms, cheerleaders, and their parents. Dkt. 56 ¶¶9, 38, 59-60. This factor weighs in Plaintiffs' favor.

The second proportionality factor also weighs in Plaintiffs' favor. "Under the second proportionality factor, courts should compare[ ] the cost of discovery to the amount in controversy to determine [the proposed discovery's] proportionality." *Oxbow Carbon & Mins. LLC v. Union Pac. R.R. Co.*, 322 F.R.D. 1, 7 (D.D.C. 2017) (citations and quotations omitted). USASF conspired with Varsity, a business worth at least $2.5 billion that raised $185 million in new capital in less than 10 days during the pandemic last year. Dkt. 56 ¶¶38, 59. All Star Cheer is, in fact, notoriously expensive, with a single season costing between $3,000 and $6,000 per All Star athlete, with an estimated 100,000 to 450,000 athletes participating in the sport each year.

*Id*. ¶¶5, 60. Varsity has not provided Plaintiffs with a cost figure for collecting documents from Plaintiffs' proposed custodians, undoubtedly because doing so is within Varsity's means. Documents from these custodians are also reasonable and "proportional to the needs of the case." Fed. R. Civ. P. 26(b)(a); *see Am. Mun. Power, Inc. v. Voith Hydro, Inc.*, No. 17-cv-708, 2019 WL 6251339, at *13 (S.D. Ohio Nov. 22, 2019) (finding $100,000 cost of producing ESI for 15 custodians, in addition to $1.1 million for other ESI services, was proportional to alleged $40 million loss); *ProCom Heating, Inc. v. GHP Grp., Inc.*, No. 13-cv-00163, 2016 WL 8203221, at *5 (W.D. Ky. July 8, 2016) (defendant failed to demonstrate that estimated $55,000 to $120,000 cost for ESI searches was "disproportionate to the value of the information"). That these disputed custodians "cannot be produced without imposing some burden on [Varsity] does not preclude [their] production given the substantial issues and amounts of damages involved." *Brown v. Tax Ease Lien Servicing, LLC*, No. 15-cv-208, 2016 WL 10788070, at *2 (W.D. Ky. Oct. 11, 2016).

The third factor, access to relevant information, looks at "information asymmetry—a circumstance in which one party has very little discoverable information while the other party has vast amounts of discoverable information." *Oxbow*, 322 F.R.D. at 8 (quotations omitted). As noted in Section III *supra*, evidence in an antitrust case like this, where a conspiracy is alleged, is primarily in the hands of the defendants. *Lingle*, 847 F.2d at 95. Varsity does not dispute that it is possesses relevant and unique information, and this motion to compel is the only way for Plaintiffs to obtain it. *Oxbow*, 322 F.R.D. at 8.

The fourth factor looks at the parties' resources. *Id*. Varsity cannot reasonably argue that it, a conglomerate worth billions, cannot bear the cost of discovery. Thus, this factor also weighs in Plaintiffs' favor.

The fifth factor asks "whether '[t]he issues at stake are at the very heart of [the] litigation." *Oxbow*, 322 F.R.D. at 8. Varsity does not dispute that it possesses relevant documents important to this litigation. It merely disagrees with the method of retrieving them, so the importance of the discovery is not at issue.

Instead, *part* of the sixth factor—burden—is Varsity's sole basis for objecting to the production of documents. As Plaintiffs noted, Varsity does not make objections based on cost whatsoever. Thus, the sixth factor weighs in Plaintiffs' favor.

## V.      RESERVATION OF RIGHTS

Plaintiffs reserve the right to move to compel Varsity to produce additional documents and data, employ additional search terms, review additional custodial files, and/or produce other forms of discovery related to requests that are not currently ripe for resolution, or materials that are presently unknown to Plaintiffs, or should the documents and data that are produced by Varsity prove insufficiently responsive to the Varsity Requests for Production. *See generally*, *V5 Techs. v. Switch, Ltd.*, 332 F.R.D. 356, 360 (D. Nev. 2019) ("[M]otions to compel filed during the discovery period are rarely considered to be untimely."); *Haviland v. Cath. Health Initiatives-Iowa, Corp.*, 692 F. Supp. 2d 1040, 1044 (S.D. Iowa 2010) (Discovery is not meant to be a process "involving deadline brinkmanship.") (emphasis added).

## VI.     CONCLUSION

Plaintiffs' RFPs, the Custodial Accounts, and the Relevant Time Period are proportional to the needs of this case and involve documents highly relevant to the monopolization and conspiracy claims at issue. For these and the foregoing reasons, Plaintiffs respectfully request that this Court grant their motion and order Varsity to comply with its discovery obligations by June 30, 2021.

Dated: May 5, 2021                    Respectfully submitted,

                                      By: */s/ Victoria Sims*
                                      Jonathan W. Cuneo*
                                      Katherine Van Dyck*
                                      Victoria Sims*
                                      **CUNEO GILBERT & LADUCA, LLP**
                                      4725 Wisconsin Avenue NW, Suite 200
                                      Washington, DC 20016
                                      Telephone: (202) 789-3960
                                      jonc@cuneolaw.com
                                      kvandyc@cuneolaw.com
                                      vicky@cuneolaw.com

                                      H. Laddie Montague, Jr.*
                                      Eric L. Cramer*
                                      Mark R. Suter*
                                      **BERGER MONTAGUE PC**
                                      1818 Market Street, Suite 3600
                                      Philadelphia, PA 19106
                                      Telephone: (215) 875-3000
                                      hlmontague@bm.net
                                      ecramer@bm.net
                                      msuter@bm.net

                                      Gregory S. Asciolla*
                                      Karin E. Garvey*
                                      Veronica Bosco*
                                      **LABATON SUCHAROW LLP**
                                      140 Broadway New York, NY 10005
                                      Telephone: (212) 907-0700
                                      gasciolla@labaton.com
                                      kgarvey@labaton.com
                                      vbosco@labaton.comInterim

                                      *Co-Lead Counsel for the Proposed Direct Purchaser
                                      Class*

J. Gerard Stranch, IV (TN BPR #23045)
Benjamin A. Gastel (TN BPR #28699)
**BRANSTETTER, STRANCH & JENNINGS, PLLC**
223 Rosa Parks Ave. Suite 200
Nashville, TN 37203
Telephone: (615) 254-8801
gerards@bsjfirm.com
beng@bsjfirm.com

*Liaison Counsel for the Proposed Direct Purchaser
Class*

Benjamin D. Elga*
**JUSTICE CATALYST LAW, INC.**
81 Prospect Street Brooklyn, NY 11201
Telephone: (518) 732-6703
belga@justicecatalyst.org

Craig L. Briskin*
**JUSTICE CATALYST LAW, INC.**
718 7th Street NW Washington, DC 20001
Telephone: (518) 732-6703
cbriskin@justicecatalyst.org

Roberta D. Liebenberg*
Jeffrey S. Istvan*
Mary L. Russell*
**FINE KAPLAN AND BLACK, R.P.C.**
One South Broad St., 23rd Floor
Philadelphia, PA 19107
Telephone: (215) 567-6565
rliebenberg@finekaplan.com
jistvan@finekaplan.com
mrussell@finekaplan.com

Nathan A. Bicks (TN BPR #10903)
Frank B. Thacher III (TN BPR #23925)
**BURCH, PORTER, & JOHNSON, PLLC**
130 North Court Ave.
Memphis, TN 38103
Telephone: (901) 524-5000
nbicks@bpjlaw.com
fthacher@bpjlaw.com

19

Aubrey B. Harwell, Jr. (TN BPR #002559)
Charles Barrett (TN BPR #020627)
Aubrey B. Harwell III (TN BPR #017394)
**NEAL & HARWELL, PLC**
1201 Demonbreun St., Suite 1000 Nashville, TN 37203
Telephone: (615) 244-1713
aharwell@nealharwell.com
cbarrett@nealharwell.com
tharwell@nealharwell.com

*Admitted pro hac vice

*Counsel for the Proposed Direct Purchaser Class*

<u>**Appendix A**</u>

**REQUEST NO. 20**: All of Your monthly, quarterly, and annual audited and unaudited financial statements and related data, including profit and loss statements, balance sheets, cash flow statements, income statements, regulatory filings (including Your income tax returns), issuance of equity or debit, loans, and money owed or receivable.

> **RESPONSE: V**arsity objects to Request No. 20 as seeking irrelevant information, overly broad, unduly burdensome, and disproportional to the needs of the case. For example, the request is not limited to the subject matter of the litigation, but instead seeks information regardless of the product(s) or service(s) at issue. Varsity further objects that the terms "financial statements," "related data," "balance sheets," "income statements," "regulatory filings," and "money owed or receivable" are vague and ambiguous. Varsity further objects that "issuance of equity or debit" does not refer to a document, but rather actions. In light of those objections, Varsity will not produce documents in response to this request.

**REQUEST NO. 56:** Documents identifying Varsity employees responsible for computing final scores for All Star Events after judges submit their score cards.

> **RESPONSE:** Varsity objects to Request No. 56 as seeking irrelevant information, overly broad, unduly burdensome, and disproportional to the needs of the case. For example, the request is not limited to the subject matter of the litigation, Apparel and Competitions. Varsity further objects that the request is not a proper document request, but is an interrogatory and its promulgation seeks to circumvent the negotiated limits on interrogatories. In light of those objections, Varsity will not produce documents in response to this request.

**REQUEST NO. 62:** Documents sufficient to show all entities that You partner with for Event ticket sales, including the years for which You partnered with those entities, as well as all documents relating to financial arrangements between You and such entities.

> **RESPONSE:** Varsity objects to Request No. 62 as seeking irrelevant information, overly broad, unduly burdensome, and disproportional to the needs of the case. For example, the request is not limited to the subject matter of the litigation, Apparel and Competitions. Varsity further objects that the request is not a proper document request, but is an interrogatory and its promulgation seeks to circumvent the negotiated limits on interrogatories. In light of those objections, Varsity will not produce documents in response to this request.

**REQUEST NO. 77:** Documents sufficient to show all monies paid by Varsity to USASF, including for each loan, gift, or payment of money, the terms of the loan, gift, or payment, what the loan, gift, or payment was used for, and, if applicable, USASF's repayment history.

**RESPONSE:** Varsity objects to Request No. 77 as overly broad, unduly burdensome, and disproportional to the needs of the case. For example, the request is not limited to the subject matter of the litigation, Apparel and Competitions. Varsity further objects that the request is not a proper document request, but is an interrogatory and its promulgation seeks to circumvent the negotiated limits on interrogatories. In light of those objections, Varsity will not produce documents in response to this request.

**REQUEST NO. 78:** Documents sufficient to show all monies paid by USASF to Varsity and all loans made by USASF to Varsity, including for each loan, gift, or payment of money, the terms of the loan, gift, or payment, what the loan, gift, or payment was used for, and, if applicable, Varsity's repayment history.

**RESPONSE:** Varsity objects to Request No. 78 as overly broad, unduly burdensome, and disproportional to the needs of the case. For example, the request is not limited to the subject matter of the litigation, Apparel and All-Star Competitions. Varsity further objects that the request is not a proper document request, but is an interrogatory and its promulgation seeks to circumvent the negotiated limits on interrogatories.

**REQUEST NO. 82:** Documents sufficient to identify the USASF employees, by name and job title, who were paid by Varsity, and the amounts that were paid by Varsity, since 2003.

**RESPONSE:** Varsity objects to Request No. 82 as seeking irrelevant information, overly broad, unduly burdensome, and disproportional to the needs of the case. For example, the request seeks information regarding individuals from more than 15 years ago and is not limited to the subject matter of the litigation. Varsity further objects that the request is not a proper document request, but is an interrogatory and its promulgation seeks to circumvent the negotiated limits on interrogatories. In light of those objections, Varsity will not produce documents in response to this request.

**REQUEST NO. 93:** Irrespective of time period, all documents provided by You to any news outlet or other organization in response to allegations of sexual misconduct by Varsity or USASF employees, at Varsity or USASF Events, or affiliated with Varsity or USASF in any way.

**RESPONSE:** Varsity objects to Request No. 93 as seeking irrelevant information, overly broad, unduly burdensome, and disproportional to the needs of the case, exacerbated by its unlimited time period and scope. In light of those objections, Varsity will not produce documents in response to this request.

**REQUEST NO. 94:** Documents sufficient to show Your policies regarding reporting of sexual misconduct.

**RESPONSE:** Varsity objects to Request No. 94 as seeking irrelevant information, overly broad, unduly burdensome, and disproportional to the needs of the case. In light of those objections, Varsity will not produce documents in response to this request.

**REQUEST NO. 95:** All documents reflecting or relating to insurance or insurance policies relating to coverage for allegations or litigation related to sexual misconduct.

> **RESPONSE:** Varsity objects to Request No. 95 as seeking irrelevant information, overly broad, unduly burdensome, and disproportional to the needs of the case. In light of those objections, Varsity will not produce documents in response to this request.

**REQUEST NO. 96:** All communications between Varsity and USASF concerning the reporting of sexual misconduct, as well as all documents reflecting Your desire or efforts to thwart, limit or suppress such reporting.

> **RESPONSE:** Varsity objects to Request No. 96 as seeking irrelevant information, overly broad, unduly burdensome, and disproportional to the needs of the case. In light of those objections, Varsity will not produce documents in response to this request.

**REQUEST NO. 97:** Documents sufficient to identify any of Your workers, employees, or contractors, or Gym owners, coaches, choreographers, or judges associated with any of Your Events, that have been convicted of sex crimes against minors, including those whom are registered as sex offenders.

> **RESPONSE:** Varsity objects to Request No. 97 as seeking irrelevant information, overly broad, unduly burdensome, and disproportional to the needs of the case. Varsity further objects that the request is not a proper document request, but is an interrogatory and its promulgation seeks to circumvent the negotiated limits on interrogatories. In light of those objections, Varsity will not produce documents in response to this request.

**REQUEST NO. 98:** Documents sufficient to show the background check process for coaches and Gym owners before being permitted to participate in or attend Events, including how many times coaches and Gym owners were flagged for sexual misconduct.

> **RESPONSE:** Varsity objects to Request No. 98 as seeking irrelevant information, overly broad, unduly burdensome, and disproportional to the needs of the case. Varsity further objects that the request is not a proper document request, but is an interrogatory and its promulgation seeks to circumvent the negotiated limits on interrogatories. In light of those objections, Varsity will not produce documents in response to this request.

**REQUEST NO. 99:** Documents sufficient to show the effect of a person being flagged during any background check process, including whether flagged persons were still permitted to work in the All Star or cheerleading industry.

> **RESPONSE:** Varsity objects to Request No. 99 as seeking irrelevant information, overly broad, unduly burdensome, and disproportional to the needs of the case. Varsity further objects that the request is not a proper document request, but is an interrogatory and its promulgation seeks to circumvent the

negotiated limits on interrogatories. In light of those objections, Varsity will not produce documents in response to this request.

**REQUEST NO. 100:** Documents sufficient to identify all complaints You received from Your customers, Teams, Athletes, or Gyms regarding sex offenders within the All Star or cheerleading industry, including the names and roles of any persons identified in the complaints and the allegations against them.

> **RESPONSE:** Varsity objects to Request No. 100 as seeking irrelevant information, overly broad, unduly burdensome, and disproportional to the needs of the case. Varsity further objects that the request is not a proper document request, but is an interrogatory and its promulgation seeks to circumvent the negotiated limits on interrogatories. In light of those objections, Varsity will not produce documents in response to this request.

**REQUEST NO. 101:** Documents sufficient to show any action taken by You in response to the complaints identified in Request No. 100.

> **RESPONSE:** Varsity objects to Request No. 101 as seeking irrelevant information, overly broad, unduly burdensome, and disproportional to the needs of the case. Varsity further objects that the request is not a proper document request, but is an interrogatory and its promulgation seeks to circumvent the negotiated limits on interrogatories. In light of those objections, Varsity will not produce documents in response to this request.

**REQUEST NO. 102:** All communications between Varsity and USASF concerning the complaints identified in Request No. 100 and concerning any identified or suspected sex offenders within the All Star or cheerleading industry.

> **RESPONSE:** Varsity objects to Request No. 102 as seeking irrelevant information, overly broad, unduly burdensome, and disproportional to the needs of the case. In light of those objections, Varsity will not produce documents in response to this request.

**REQUEST NO. 103:** All documents reflecting or relating to any discussions, deliberations, analyses, or communications regarding the effect, if any, of sexual misconduct and surrounding publicity on Varsity's sales, revenues, costs, profitability, competition, or competitors in any market in which Varsity competes.

> **RESPONSE:** Varsity objects to Request No. 103 as seeking irrelevant information, overly broad, unduly burdensome, and disproportional to the needs of the case. In light of those objections, Varsity will not produce documents in response to this request.