# EXHIBIT 4

**CLEARY GOTTLIEB STEEN & HAMILTON LLP**

2112 Pennsylvania Avenue, NW
Washington, DC 20037-3229
T: +1 202 974 1500
F: +1 202 974 1999

clearygottlieb.com

NEW YORK

PARIS

BRUSSELS

LONDON

FRANKFURT

COLOGNE

MOSCOW

ROME

MILAN

HONG KONG

BEIJING

BUENOS AIRES

SÃO PAULO

ABU DHABI

SEOUL

D: +1 (202) 974-1554
skaiser@cgsh.com

GEORGE S. CARY
MITCHELL S. DUPLER
GIOVANNI P. PREZIOSO
MATTHEW D. SLATER
DAVID I. GELFAND
MICHAEL A. MAZZUCHI
MARK W. NELSON
D. BRUCE HOFFMAN
ROBIN M. BERGEN
DEREK M. BUSH
BRIAN BYRNE
PAUL D. MARQUARDT
JEREMY CALSYN
LEAH BRANNON
MATTHEW G. SOLOMON
KATHERINE MOONEY CARROLL
ELAINE EWING
NOWELL D. BAMBERGER
KENNETH S. REINKER
ALEXIS COLLINS
RESIDENT PARTNERS

KENNETH L. BACHMAN, JR.
DANIEL B. SILVER
RICHARD DEC. HINDS
SARA D. SCHOTLAND
WILLIAM B. MCGURN III
JOHN S. MAGNEY
MARK LEDDY
JOHN C. MURPHY, JR.
DAVID M. BECKER
JANET L. WELLER
LINDA J. SOLDO
MICHAEL H. KRIMMINGER
SENIOR COUNSEL
W. RICHARD BIDSTRUP
STEVEN J. KAISER
KATHLEEN WARD BRADISH
CUNZHEN HUANG**
CHASE D. KANIECKI
MACEY LEVINGTON
CARL LAWRENCE MALM
CHARLES STERLING
CARL F. EMIGHOLZ
RESIDENT COUNSEL
JOHN P. MCGILL, JR.
MATTHEW I. BACHRACK
LARRY WORK-DEMBOWSKI
PATRICK FULLER
SAIF I. SHAH MOHAMMED
CHRISTIAN J. MAHONEY
SENIOR ATTORNEYS

EMILY M. ARNOLD
GRAHAM BANNON
HANI BASHOUR
TAYLOR H. BATES
ZACHARY BAUM
ELSBETH BENNETT
LINDEN BERNHARDT
JORGE A. BONILLA LOPEZ
MADISON C. BUSH
SAMUEL H. CHANG
CHINWE T. CHUKWUOGO
EVERETT K. CORAOR
LISA M. DANZIG
KATHERINE DENBY
BRANDON J. FIGG
MEREDITH LEIGH FINN
CHRISTOPHER M. FITZPATRICK
ALAN B. FREEDMAN
SAMUEL G. FULLER
LAUREN E. GILBERT*
MELISSA GOHLKE
SAVANNAH HAYNES*
CHRISTOPHER J. HILDEBRAND
JESSICA HOLLIS
STEPHEN J. HOUCK
RICHARD HUBER
SAMEER JAYWANT
ANDREW L. KLINE
JOHN F. KOZAK
TOBIAS A. KRAFT
NATHANAEL F. KURCAB
ELISE G. LANE
GABRIEL J. LAZARUS
ALEXIS R.B. LAZDA
CLOTILDE LE ROY
JOHN A. LIGHTBOURNE
MOLLY MA
NORA MCCLOSKEY
ADAM MOTIWALA
RICK REDMOND
BEN ROSENBLUM
MICHAEL G. SANDERS
MICHAEL SCHULMAN
WILLIAM SEGAL
GARRETT D. SHINN
SARAH M. STANTON
NICOLE TATZ
ZACH TSCHIDA
JACK H L. WHITELEY*
JIM WINTERING
HUANBING IZZY XU

JEANNE-PALOMA ZELMATI
IRIS MENGYAO ZHOU
ASSOCIATES

* Admitted only to a bar other
than that of the District of
Columbia. Working under the
supervision of principals of
the Washington office.

** Special Legal Consultant,
qualified in the People's
Republic of China.

March 19, 2021

<u>VIA EMAIL</u>

Victoria Sims, Esq.
Cuneo Gilbert & LaDuca LLP
4725 Wisconsin Avenue, NW
Suite 200
Washington, DC 20016

Re: _Fusion Elite v. Varsity_, Civ. Action No. 2:20-cv-2600 (W.D. Tenn.)

Dear Ms. Sims:

This letter responds to your letter of March 1 and addresses the other open issues in written discovery in this case. To the extent that Varsity indicates a willingness to produce any documents or information, it reserves the right to revisit the issue in light of the resolution of the pending motions to dismiss and to strike.

<u>Requests Subject to ESI Search (Requests 3, 5, 6-8, 10-12, 14, 16-18, 37-44, 46-55, 57-59, 63, 64, 67-70, 74-76, 80, 87, 88, 104-106)</u>

In its original responses to Plaintiffs' document requests, Varsity clearly delineated its objections and what it was doing in response to each of Plaintiffs' 109 requests, including as to many of the requests that Varsity would conduct ESI searches of identified custodians using identified search terms.

Plaintiffs have proposed numerous (thousands, in fact, when all of the permutations are worked out) additional search terms. Varsity provided metrics showing the

Victoria Sims, Esq.
March 19, 2021
Page 2

significant number of additional documents that would need to be reviewed if these additional search terms were employed, which in our view made doing so unduly burdensome and disproportional to the needs of the case, especially given the generic nature of the new terms. Plaintiffs then proposed minor modifications, which did not significantly alter the situation.

We continue to believe that the original terms were more than adequate to the task for this litigation, giving due regard to the needs of the case and the burden of ESI review. That said, in an effort to bring the search term issue to closure, Varsity would—in the context of an overall agreement that includes Plaintiffs' producing the additional materials identified in our letter of February 12 and resolution of custodians (which I will refer to in the remainder of this letter as an "Overall Agreement")—add most of the additional search terms that Plaintiffs request. The remaining terms—which Varsity would not agree to use—are either impertinent because they seek to locate documents responsive to Requests 92 to 103 (*i.e.*, terms 91 to 94 in Plaintiffs' letter of January 6), as to which the parties have agreed to table discussion, or would be unduly burdensome. Set forth in Appendix A to this letter are hit counts for the latter category. We note that many of the unduly burdensome terms are multiple terms, most unrelated to cheerleading, multiplexed by multiple other terms, also not related to cheerleading. They seem to have been derived from generic search terms and as such appear to contemplate a pure fishing expedition. We see no cause to run these additional burdensome terms.

Plaintiffs also provided a list of 41 additional custodians and requested additional organizational charts beyond the current chart that was provided in November with Varsity's responses to Plaintiffs' document requests. Varsity provided the requested charts. Varsity informed Plaintiffs that it would not agree to in essence triple the number of custodians and suggested Plaintiffs identify a small number (*i.e.*, two or three) of additional high-level employees of Varsity for consideration. We continue to see that as the path forward on custodians.

Time Period

Plaintiffs have proposed extending the scope of certain of its requests to 2012 and certain others to 2003. In the context of an Overall Agreement, Varsity would be willing to undertake those requests for the most part, with the specifics set forth in Appendix B to this letter. Varsity does not believe production of documents created after June 30, 2020 is appropriate or proportional to the needs of the case.

Market Scope

Plaintiffs' "market scope proposal" is unfocused and non-specific. Varsity will of course produce any documents it intends to use in the case and we understand that Plaintiffs will as well. Otherwise Varsity does not understand what documents Plaintiffs think it would use to support its market definition or counter a contention that the markets are broader that would not at least mention All Star cheerleading. In any event, it would be unduly burdensome and disproportionate to the needs of the case to search for and include documents that do not mention

Victoria Sims, Esq.
March 19, 2021
Page 3

All Star cheerleading on the chance that they somehow could be used in relation to market definition.

Request No. 1

 Request No. 1 relates to so-called "board materials."  The list of issues that you say are "potentially relevant to his litigation" makes no sense.  This case is about All Star cheerleading.  In its objections and responses to Plaintiffs' document requests, Varsity stated that it would "produce any documents responsive to Request No. 1 that are also responsive to unobjected-to portions of Plaintiffs' other requests during the time period specified above (January 1, 2015 to June 30, 2020)."  This is a wholly sensible and proportional response and approach.

 That said, in an effort to bring this issue to closure, in the context of an Overall Agreement, Varsity would be willing to expand its original response to include such materials to the extent they relate to cheerleading.  Since many such documents contain material not relating to cheerleading, Varsity would redact the non-cheerleading material.

Request No. 2

 Varsity disagrees that antitrust compliance policies or discussions about such policies are relevant.  This case is not about compliance with company policies but rather about compliance with the law.  Moreover, discussions about compliance problems tend to implicate privileged discussions with counsel.

 That said, in an effort to bring this issue to closure, in the context of an Overall Agreement, Varsity would be willing to include within its production any such antitrust compliance policy applicable to its cheerleading business and, to the extent it encounters discussions of any such policy in its ESI searches that relate to All Star cheerleading and do not involve legal counsel, to include those within its production as well.

Request No. 4

 As we have discussed, we view Request No. 4 to be a subset of Request No. 3 and that Request No. 3 encompasses any "summary document[s] … showing the terms and duration associated with its contracts with, or offers to, All Star Gyms, Teams, and/or Athletes."

Request No. 9

 To the best of its ability to interpret the phrase "similar types of agreement or programs," Varsity does not believe that there are any others.  Varsity is otherwise attempting to compile a list of gyms that participated in the Varsity Family Plan or had a Network Agreement, which it believes it will be able to do for at least the 2014-15 to 2019-20 season.

Victoria Sims, Esq.
March 19, 2021
Page 4

Request No. 13

Varsity confirms that it is including within the scope of its production whatever "documents reflecting or relating to the effects of" Network Agreements or the Varsity Family Plan on the business or sales of any "actual or potential alternative supplier of All Star Apparel and/or [All Star] Competitions" it locates through its ESI searches.

Request No. 15

In addition to providing an interrogatory response on this topic, Varsity expects to produce many documents relating to contract negotiations from its ESI searches. Those documents are expected to show who the primary negotiators of contracts with Gyms, Teams, and Athletes were. We understand that is what you mean by your statement that "Varsity claims that documents it produced in response to other Requests will be fully responsive to this Request."

Request No. 19, 20

In the context of an Overall Agreement, Varsity is willing to produce monthly profit and loss statements for its cheerleading business. The rest of what is sought by this request (and certainly all that is properly sought) overlaps with other requests.

You mention documents that Plaintiffs have received from third parties. Please identify what documents to which you refer, which would help clarify what you otherwise have in mind. That said, merely because a document was given to an investor or potential investor does not make it relevant to or proportional to the needs of this case and Varsity will not undertake to find and produce any and all such documents.

Request No. 21, 23, 24, 27, and 28

Varsity is continuing to investigate what event level and apparel profit and loss and cost information it might be able to produce in response to Request No. 21, 23, 24, 27 and 28.

Request No. 22

Varsity has produced direct-to-consumer transactional data from AS400. As we have emphasized on multiple occasions, this data is not limited to sales of products used in All Star competitions or by All Star teams.

Request No. 29

Varsity has produced transactional data relating to competitions and apparel sales.

Request No. 30

The information Plaintiffs seek in response to Request 30 is irrelevant and not based on any allegations in the Complaint. Varsity will not produce this information.

Victoria Sims, Esq.
March 19, 2021
Page 5

Request No. 31

      Varsity has produced an interrogatory response on this subject, which is sufficient to the needs of the case.  Non-consummated (*e.g.*, "proposed" or "contemplated") transactions are irrelevant.  In addition, Request No. 31 as written only seeks "documents sufficient to show" and your suggestion that it be expanded into documents that "discuss cheer" is improper.

Request No. 32

      Request No. 32 seeks "Documents sufficient to show the beneficial ownership of Varsity and changes thereto over time, including documents sufficient to show any stock or other interests owned by each person holding a beneficial ownership."  Your request to expand that into a request for "purchase agreements evidencing the two purchases of Varsity" is improper.  Your use of the term "group of owners during the 2015-present time period" is also ambiguous.  And, in any event, the identity of the owners of Varsity is ultimately irrelevant (and seems known to the Plaintiffs).

Request No. 33

      Request No. 33 as written is grossly overbroad.  That said, the categories you list in your letter limit the request to documents that would be considered responsive in Varsity's ESI search, subject to the market scope discussion above.

Request No. 34

      We expect there to be a document in the production responsive to this request as written.  Your effort to rewrite it to include more information and your request that material be provided in a form that "may be introduced into evidence" is improper.

Request No. 35

      Request No. 35 as written is grossly overbroad.  The categories you list are also overbroad.  This case is about All Star cheerleading.  Varsity's "business model" in some generic sense is not independently relevant, nor are "analyses of [other] markets in which Varsity competes."  That said, to the extent limited to All Star cheerleading, documents on these subjects would be considered responsive in Varsity's ESI search, subject to the market scope discussion above.

Request No. 36

      As you point out, Varsity has provided an interrogatory response on the subject of this Request that provides the information requested to 2015, which is almost 18 months earlier than the start of the relevant statute of limitations.  That response is sufficient to the needs of the case.

Victoria Sims, Esq.
March 19, 2021
Page 6

Request No. 45

      Varsity has provided an interrogatory response on the subject of this Request. Varsity has also produced transactional data showing what gyms were invoiced to participate in each event and the associated charges.  In the context of an Overall Agreement, Varsity would also provide information about event location and, at least for the 2016-17 to 2019-20 seasons, about bids awarded at events (information prior to that period is not readily available).  We are investigating the time scope of available data relating to payments "broken out on a Team-by-Team basis" and would consider providing such information in the context of an Overall Agreement to the extent available in Varsity's live databases.

Request No. 56

      We have told you that we understand that as to certain events (particularly those more recent in time), there is information about staffing of events.  We also offered that if Plaintiffs want us to provide that information as to a small number of particular events, Varsity likely would do so.  If that is what you mean to be say about Request No. 56, we are in agreement.

Request No. 60

      Varsity is investigating the feasibility of the request outlined in your letter.

Request No. 61

      Tickets were not sold "through" Ticketroar.  During the period Varsity worked with Ticketroar (Q3 of 2017 to Q2 of 2019), Ticketroar used Eventbright's sales platform.  After that time, Varsity worked directly with Eventbright.  As you note, Disney handles online ticket sales for events at Walt Disney World.  We will address pretrial stipulations at the appropriate time.

Request No. 62

      Having investigated this request further, Varsity has concluded the burden would be significant.  Varsity is considering what might further be done in this area.

Request No. 65

      Your recounting of what we have told you is not correct.  USASF does not, to Varsity's knowledge, "allocate[] money to Gyms for travel."  We understand that, to the extent Varsity provides a paid bid to Worlds, it does not "subsidize travel."  Varsity sometimes pays the registration fee directly, and that registration fee may include lodging.  A gym may choose to use the money that is awarded to it in the context of a paid bid for travel, but that is up to the gym.

Request No. 66

      Your recounting of what you have been told is not correct.  Varsity will produce documents that show the terms of the Family Plan.  As to Network Agreements, Varsity believes

Victoria Sims, Esq.
March 19, 2021
Page 7

it will be able to produce currently-in-force agreements but continues to investigate expired agreements. To the extent it can locate expired Network Agreements through a reasonable search, it will produce them.

<u>Request No. 71</u>

Varsity has confirmed that third parties do not sell Varsity apparel, including at Varsity's competitions. The sale of other apparel (*i.e.*, souvenir t-shirts and similar items) at Varsity's competitions is not relevant to the case.

<u>Request No. 73</u>

Varsity requests written clarification on what is meant by a "book of designs that Varsity uses for its All Star Apparel."

<u>Request No. 77, 78</u>

As we have discussed, Varsity believes this request is, at the very least, disproportionate to the needs of the case. In any event, based on our investigation to date we understand that Varsity's general ledger does not systematically have this information.

<u>Request No. 82</u>

As we have discussed, Varsity believes this request is, at the very least, disproportionate to the needs of the case. Compiling this information, if it were even possible, would be a significant undertaking. We note that Varsity has provided an interrogatory response on the subject matter of this request, which Varsity believes is adequate to the needs of the case.

<u>Request No. 83</u>

As we have discussed, Varsity believes this request is, at the very least, disproportionate to the needs of the case. Compiling this information, if it were even possible, would be a significant undertaking. We note that Varsity has provided an interrogatory response on the subject matter of this request, which Varsity believes is adequate to the needs of the case.

<u>Request No. 84</u>

We understand that Plaintiffs are obtaining the information requested regarding USASF.net from USASF. Perfect Privacy LLC is not affiliated with Varsity (we suggest you do an Internet search to better understand that entity).

<u>Request No. 85</u>

To the extent Plaintiffs provide a reasonable list of addresses that they represent were addresses of USASF offices, Varsity will confirm whether it also had offices at that(those) location(s) in the same time period.

Victoria Sims, Esq.
March 19, 2021
Page 8

Request No. 86

       Varsity is not aware of any responsive All Star cheer organizations.

Request No. 89

       As we have discussed, in its ESI searches, Varsity is including any ESI sources that its custodians identified as having responsive material to which they had access in the ordinary course.  We have told you that we see no reason in a case like this to scour smart phones or like devices for information and are not doing so.

Request Nos. 90-91

       Varsity does not think this information is relevant, particularly in the grossly overbroad way that it is requested.

Request No. 107

       As written, Request No. 107 is patently overbroad.  We are investigating whether there are any such materials relating to All Star cheerleading or that address the "alleged anticompetitive conduct alleged in the Complaint, or provide potential explanations or justifications for such alleged conduct."  If Varsity locates any such materials, it will produce them.

Request No. 108

       As written, Request No. 108 is plainly overbroad in that it is topically unlimited. That said, Varsity SEC's filings from 2003, such as they are insofar as Varsity and its predecessors have not been public companies for many years, are publicly available.  We are not aware of any investigations of the kind identified in (c) and (d) of your narrative.  As to (a), in the context of an Overall Agreement, Varsity would produce any documents that relate to competition in cheerleading events or apparel that Varsity provided to a governmental entity in connection with an acquisition to the extent they can be located through a reasonable search.

Request No. 109

       As we discussed, Varsity does not consider this to be an appropriate discovery request and will not provide documents in response to it.

                 Very truly yours,

                 *Steven J. Kaiser*

                 Steven J. Kaiser

Victoria Sims, Esq.
March 19, 2021
Page 9

## APPENDIX A

| Search Term | Hit Count |
|---|---|
| ((must or require* or obligat* or need* or commit* or responsib*) w/10 (stay or reserv* or book)) and (hotel or room or accomodat* or facility or center or resort) | 3487 |
| (barrier or obstacle or restraint or restrict* or limit* or curb* or check* or block or constrain* or control* or dominat* or reduc* or decrease or lead or prefer* or exclus* or exclude* or loyal* or pressure or aggressiv* or prevent* or impair or stop* or hinder*) w/5 (client or customer or gym* or athlete or spectator or fan or supporter or booth or promot* or showcase) | 12057 |
| (barrier or obstacle or restraint or restrict* or limit* or curb* or check* or block or constrain* or control* or dominat* or reduc* or decrease or lead or prefer* or exclus* or exclude* or loyal* or pressure or aggressiv* or prevent* or impair or stop* or hinder*) w/5 (entry or market or industry or competition or cheer* or apparel or uniform or merch*) | 11702 |
| (board or BOD) w/3 (book or meeting or present* or packet or deck or material* or minutes or script or slides) | 5627 |
| (business or market* or revenue or sales or profit* or earnings or "net income" or annual* or quarter* or month* or week* or insurance) w/3 (model or plan or target or objective or goal or focus or strateg* or scheme or grow* or grew) | 31177 |
| (Charlesbank or Bain) w/20 (own* or stock or equity or control* or interest or board or seat or purchase or negotiat* or bid* or offer* or sell or sale or pric* or "due diligence" or probe or inquir* or investigat* or analy*) | 1675 |
| (entry or attend* or registration or dues or competition or event or show* or apparel or uniform or merch* or brand or source or music* or education or camp* or clinic* or video or photography or pictures or hotel or bid* or scorebook or booth or insurance or K&K or grow* or grew) w/5 (revenue or sales or profit* or earnings or "net income" or annual* or quarter* or month* or week* or market* or forecast or outlook or budget*) | 64111 |
| (entry or attend* or registration or dues or competition or event or show* or apparel or uniform or merch* or brand or source or music* or education or camp* or clinic* or video* or photography or pictures or hotel or bid* or scorebook or grow* or grew) w/5 (cost or charge or fee or expense or expenditure or rate or pay*) | 15141 |
| (obstruct* or thwart or lock* or close* or penalty or fee or hook* or leverag* or concentrate or fix* or dues or prefer* or punish* or reject* or breach* or break* or *compliance or comply or insurance or K&K) w/10 (client or customer or gym* or athlete or spectator or fan or supporter or booth or promot* or showcase) | 9076 |
| (obstruct* or thwart or lock* or close* or penalty or fee or hook* or leverag* or concentrate or fix* or prefer* or punish* or reject* or breach* or break* or *compliance or comply) w/10 (entry or market or industry or competition or cheer* or apparel or uniform or merch*) | 8145 |

Victoria Sims, Esq.
March 19, 2021
Page 10

| | |
|---|---|
| (partner* or affiliat* or cooperat* or collaborat* or combin* or consort* or alliance or reciproc* or unite* or join* or venture) w/10 (compet* or hotel or video* or photography or pictures or apparel or uniform or manufact* or insurance or K&K) | 10096 |
| (rebate or refund or discount or reduc* or allow* or return or pric* or free or subsid*) w/10 (negotiate* or offer or deal or attend* or participat* or compet* or threshold or level or invitat* or maximum or minimum or insurance or K&K) | 27491 |
| (scor* or judg* or evaluat* or assess*) w/5 (rule* or guideline or polic* or process* or procedure or instruct* or practice* or submi* or comput* or calculat* or total* or formula* or limit* or bid* or location or geograph* or market* or sheet or book or catagor* or card or certif* or credential* or authorit* or permit* or varsity or sanction* or trademark or copyright) | 5892 |
| *competitive | 8098 |

Victoria Sims, Esq.
March 19, 2021
Page 11

## APPENDIX B

| RFP | Year | Proposal in Context of Overall Agreement |
|-----|------|------------------------------------------|
| 1 | 2012 | Would extend to 2012 to scope discussed in text for Request No. 1. |
| 9 | 2012 | If such information can be identified after a reasonable search (it may or may not be), would produce to 2012 |
| 10 | 2012 | Would extend ESI search for Tres Letard and Brian Elza to 2012 using relevant search terms for Family Plan and Network Agreement* |
| 11 | 2012 | Would extend ESI search for Tres Letard and Brian Elza to 2012 using relevant search terms for Family Plan and Network Agreement* |
| 20 | 2012 | Within scope discussed in text as to Request No. 20, would extend to 2012 |
| 34 | 2012 | A document will be in the production showing "the price paid by Charlesbank and Partners Group for Varsity or an interest in Varsity." |
| 42 | 2012 | Would extend ESI search for Jeff Webb to 2012 using search term "(policy or effect or affect) / 5 acquisition" |
| 43 | 2012 | Would extend ESI search for Jeff Webb to 2012 using search term "(policy or effect or affect) / 5 acquisition" |
| 44 | 2012 | Would extend ESI search for Jeff Webb to 2012 using search term "NACCC w/5 rule" |
| 46 | 2012 | Would extend ESI search to 2012 using search term "USASF w/5 (tier or bid)" |
| 49 | 2012 | Would extend ESI search to 2012 using search term "(competit* w/5 (event OR apparel))" |
| 52 | 2012 | Would extend ESI search to 2012 using search term "(require* w/50 event)" |
| 66 | 2012 | Documents sufficient to show the requirements for rebates under the Varsity Family Plan will be included in the production starting with 2013-14 season |
| 70 | 2012 | Would extend ESI search to 2012 using search term "(competit* w/5 (event OR apparel))" |
| 77 | 2003 | Varsity objects to this request in its entirety.  It would be especially infeasible to provide detail as requested to 2003 and it is barely relevant if at all and not proportional to the needs of the case. |
| 80 | 2003 | Would extend ESI search to 2003 for Jeff Webb using search term ("USASF w/5 (fund or NACCC or threat or thwart)) |
| 82 | 2003 | Varsity objects to this request in its entirety.  It would be especially infeasible to provide detail as requested to 2003 and it is barely relevant if at all and not proportional to the needs of the case. |
| 108 | 2003 | Varsity sees no basis to extent this request to 2003.  Would extend to 2012 within the parameters discussed in the text. |

*These are:  "family plan", "network agreement", (family or plan or network or agreement) w/20 provision, (family or plan or network or agreement) w/20 offer, (family or plan or network or agreement) w/20 rebate, (family or plan or network or agreement) w/20 discount, (family or plan or network or agreement) w/20 enforce, (family or plan or network or agreement) w/20 enforcement