# EXHIBIT 6



4725 WISCONSIN AVE, NW, SUITE 200
WASHINGTON, DC 20016
TEL: (202) 789-3960
FAX: (202) 789-1813
www.cuneolaw.com

Victoria Sims, Esquire
Telephone: (202) 449-3958
vicky@cuneolaw.com
Admitted to Practice in Maryland
and the District of Columbia

Nicole Berkowitz
Baker, Donelson, Bearman, Caldwell & Berkowitz, PC
165 Madison Avenue, Suite 2000
Memphis, TN 38103
Direct: 901.577.8166
Fax: 901.577.0866
E-mail: nberkowitz@bakerdonelson.com

April 2, 2021

Re:  *Fusion Elite All Stars v. Varsity Brands, LLC, et al.*, No. 2:20-cv-2600 (W.D. Tenn.)

Dear Counsel:

We write to follow up on our various meet and confers regarding U.S. All Star Federation's ("USASF") responses to Plaintiffs' First Request for Production of Documents, dated October 19, 2020 (the "Requests"). We believe the summary below accurately reflects our conversations and the parties' positions to date.

**Search Terms**

Plaintiffs sent USASF proposed search terms on March 29, 2020. Please provide USASF's responses to these terms.

**Custodians**

Plaintiffs sent USASF proposed custodians on February 26, 2021. Please advise of USASF's position on these custodians.

**Relevant Time Period**

Plaintiffs provided a proposal on the Relevant Time Period on February 16, 2021. USASF provided a partial response on February 27, 2021. Please provide USASF's full response to Plaintiffs' proposal.

April 2, 2021
Page 2

**Specific Requests**

Based on the parties' discussions and meet-and-confers, Plaintiffs provide the following understandings, proposals and/or inquiries about each respective Request to which USASF initially objected, at least in part.

Request No. 1

Plaintiffs understand that USASF is producing the responsive documents it possesses, which are, subject to an agreement on time period: Board of Director minutes/notes for most months, but not every month up until November 2012, agendas and presentations, as well as minutes from 2004 and 2005, for some, but not every, month; bylaws, including from before 2012, USASF's corporate charter; and other corporate governance documents. With respect to minutes/notes of Board of Directors' meetings, USASF has agreed only to produce board of director meeting minutes and notes kept by Jim Chadwick. Plaintiffs request minutes/notes from Steve Peterson as well. Please clarify whether each Board member has notes and minutes or just their own notes that are called minutes by USASF. As we have discussed, Plaintiffs seek these documents back to 2003.

USASF has proposed redactions for confidentiality. Redactions for confidentiality other than of personal non-public information, are not permitted under the ESI Protocol entered in this case. ESI Protocol, (Doc. No. 72), Sec. 14. USASF has also proposed making redactions for privilege. If any redactions are made for privilege, they must be logged in the privilege log. ESI Protocol, (Doc. No. 72), Secs. 14, 17.

Request No. 2

USASF states it has never had 501(c)(3) status. Plaintiffs accept USASF's representation.

Request No. 3

USASF states that it will agree to provide its corporate formation documents, which identify it as a mutual non-profit corporation.  USASF states that it is not aware of any other correspondence with the State of Tennessee or documents submitted to the State of Tennessee regarding its non-profit status.  USASF states that it is possible that USASF's board minutes discuss its non-profit status or its plan to file its corporate charter as a mutual benefit non-profit corporation with the State of Tennessee, which minutes will be produced. USASF declines to produce or log any documents describing why it was registered as a non-profit, claiming privilege. Plaintiffs are not seeking documents discussing whether it was legal for USASF to register as a non-profit but rather discussions regarding why it chose to register that way. Plaintiffs do not believe that such discussions are privileged. Please advise whether USASF will agree to produce such documents. Please also advise whether USASF will produce communications and documents regarding dissolution, revocation, or reorganization of its Tennessee mutual benefit corporation or not-for-profit status.

Request No. 4

Plaintiffs understand that USASF is producing its by-laws (which are expected to set forth the composition of its executive committee), as well as the names of current and historical members of its nominating committee and Board of Directors. Plaintiffs request that USASF advise whether there are or have been any other executive committees (as opposed to the standing committees identified in response to Request No. 5) at USASF. Plaintiffs also request all executive committee membership requirements and information regarding how committee members are elected or appointed. Finally, Plaintiffs request information regarding daily operations and the purpose of all executive committees, including information regarding how they have changed over time. Plaintiffs request such documents going back to 2003 and understand the USASF is amenable to such request.

WASHINGTON, DC (*Main Office*)  •  NEW YORK  •  ST. LOUIS

April 2, 2021
Page 3

Request No. 5

Plaintiffs understand that USASF agrees to produce lists of the committee members, documents sufficient to show the eligibility requirements, and documents sufficient to show the process for electing or appointing members and any changes to that process over time after Plaintiffs have identified the standing committees to which the Request pertains. Plaintiffs request this information for the following committees: the Sanctioning Committee, the Rules Committee, National Advisory Board, Worlds Advisory Board, and the Credentialling Committee.

Request No. 6

USASF represents that it does not have and has never had any advisory boards. USASF advises that it does, however, have committees, namely the nominating committee, the standing committees and the Board of Directors. USASF advises that it will provide the information requested in Request No. 6 for the Board of Directors and the nominating and standing committees, namely:

    a)   the name or title;
    b)   the current and historical members, including their corporate affiliations;
    c)   membership requirements and/or who is eligible for membership;
    d)   how committee members are elected or appointed;
    e)   the current and historical day to day operations;
    f)   how the requirements and operations have changed over time; and
    g)   the rationale for any such changes.

It is Plaintiffs' understanding that USASF will verify whether there are documents showing which committees existed each year of the production period.

Request No. 7

This Request seeks organizational charts back to 2012. USASF has produced its organization charts to Plaintiffs. If any other charts exist for the time period of January 1, 2012 to the present, Plaintiffs ask that they be produced, and that any charts produced informally be produced in a formal manner, with USASF's next production.

Request No. 8

This Request seeks documents that set forth the basis for removal from committees or the Board of Directors, such as the employee handbook or board rules. USASF advises that it will verify whether it has any documents that state what a committee or board member has to do to maintain his or her status on the Board or any committee and what the basis for removal is (and the reasoning for such policies).

Plaintiffs further request that USASF verify whether any documents exist stating which board members are not or have not been in good standing.

Request No. 9

USASF advises that it does not revoke Board of Directors or committee appointments. USASF has agreed to inquire how many employees were fired for misconduct. Plaintiffs are not seeking information regarding anyone who has been removed or fired for reasons having to do with their work concerning the dance aspect of USASF. Plaintiffs are also not looking for information about anyone whose misconduct was purely financial, *i.e.*, embezzlement. That being said, as Plaintiffs pointed out during our meet and confers, the reasons given for an employee's firing or for removal of board or committee members may not be complete or may focus only on one of a number of reasons for removal. Removal for reasons having to do with the way in which an employee or

WASHINGTON, DC (*Main Office*) • NEW YORK • ST. LOUIS

April 2, 2021
Page 4

committee member carried out his or her obligations relating to All Star Cheer is clearly relevant, as USASF is the governing body of All Star Cheer. Plaintiffs have alleged that USASF has not appropriately carried out its obligations as a governing body of All Star Cheer and therefore have the right to investigate whether any employees have been removed from their positions or any members have been removed from the Board or committees for not properly carrying out the asserted mission of USASF.

Request No. 10

It is Plaintiffs' understanding that USASF will produce documents relating to USASF cheer rules, Athletic Performance Standards, legality rules, event producer membership guidelines and sanctioning standards, and the Professional Responsibility Code. Plaintiffs further understand that, subject to agreement on custodians and search terms, USASF will produce historical and current versions of, as well as discussions about, its programs, rules, initiatives and policies, and will provide redlined versions of some documents.

Plaintiffs request that USASF produce any documents that show the process of developing, implementing or changing its programs, rules, policies, or initiatives. Namely, to the extent there are memoranda, reports or other specific documents detailing each program, policy, initiative, or set of rules concerning All Star Cheer, including reasons why they should be implemented, changed, or suspended, Plaintiffs request such documents. Plaintiffs believe some of these documents may be "go-get" documents that are located in specific, known central locations, rather than needing to be located through search terms.

USASF advised that it did not know what was meant by programs and initiatives. However, USASF has numerous programs and initiatives, such as the Gym Insurance Initiative, the Member Perks Program, the FUNdamentals program, the NoviceSELECT program, and the Athletes First Initiative. Indeed, USASF's website states that "USASF programs, initiatives, rules and policy development begin in the Standing Committees and are brought to the Board of Directors for review to ensure that the USASF mission is upheld before being carried out." Plaintiffs request that USASF interpret these terms in the same way USASF interprets them in ordinary practice and the way it interpreted them in drafting the above language.

Request No. 11

USASF, as a non-profit company, and a governing body, does much of its work through its partners and sponsors. USASF must disclose its corporate sponsors and partners, so that Plaintiffs may understand which entities have influence over USASF or input into its decisions. For instance, Plaintiffs need to understand whether there are event producers other than Varsity who have input into USASF's operations. Plaintiffs thus seek identification of and agreements with USASF's corporate sponsors and partners.

USASF has already stated that it has affiliate members such as judges, choreographers, legality officials, and coaches. USASF agrees to produce its fees/dues for affiliate members. Plaintiffs also seek identities of affiliate members in order to fully understand USASF's relationships with these members and the influence they may wield over USASF. Finally, Plaintiffs seek clarification as to whether there are requirements other than payment for becoming an affiliate member.

USASF states that its sponsors, who decline to identify themselves, have raised objections to production of their agreements with USASF and requested that Plaintiffs raise this issue with the Court.

USASF's sponsors have raised concerns regarding disclosure of information concerning them. However, the Protective Order entered in this case protects all confidential and highly confidential information produced by "any Party or Non-Party that produces Discovery Material in this Action" from public disclosure. Protective Order, (Doc. No. 49-2), Secs. 2.8, 7.3, 7.4. Thus, there is no legitimate objection to production.

April 2, 2021
Page 5

Please advise whether USASF agrees to identify any of its partners.

Request No. 12

It is Plaintiffs' understanding that USASF will verify whether forms and registration or application instructions exist and whether, in addition, any other guidance given to a person or entity who wishes to become an affiliate member exists.

Request No. 13

The annual meeting is an important opportunity for USASF to set forth its policies and influence its members. Plaintiffs understand that there are certain rewards or advantages for gyms who attend the annual meeting, such as, during the course of the class period, early receipt of the USASF Cheer and Dance Rules, and, importantly, the age grid, none of which were able to be obtained early without attendance. Further, these meetings cover relevant topics, such as credentialling and the APS. Plaintiffs ask USASF to provide information regarding who organizes the annual meeting and where materials regarding that meeting, such as lists of attendees, programs and handouts, are stored, for what years. If attendee lists are overly burdensome to produce for all years, Plaintiffs are willing to discuss reserving their rights on such lists and limiting this request to programs, handouts, presentations and other such materials for the time being.

Request No. 14

USASF advises that it does not have an antitrust compliance policy or in-house counsel. Plaintiffs accept USASF's representation.

Request No. 15

Plaintiffs maintain that any contracts related to All Star Cheer, the subject of this lawsuit, are relevant. USASF advises that is has no contracts related to Worlds and that the only contracts it enters into are its membership forms. Plaintiffs request sample membership forms as well as offers of membership and offers to attend Worlds. USASF expects that these offers will be located in emails and agrees to provide them.

Plaintiffs further request that USASF advise whether it engages in negotiations with Worlds attendees or with its members, and if so, whether USASF is willing to produce such negotiations.

Finally, Plaintiffs request that USASF advise whether it will produce communications with members regarding the benefits of membership and reasons to become a member.

Request No. 16

Plaintiffs seek further clarification on whether USASF has any formal or informal agreements with K&K Insurance, and whether USASF will produce any negotiations between USASF and K&K that USASF locates when it performs its document review.

Request No. 17

Based on discussions during the meet and confer sessions focusing on this Request, Plaintiffs understand that USASF has agreed to produce the materials Plaintiffs have requested, subject to limitations based on custodians, search terms and the time period. Plaintiffs request production of responsive documents back to 2003.

USASF has more recently stated that it objects to producing its contracts with Premier Gyms or event producers

WASHINGTON, DC (*Main Office*) • NEW YORK • ST. LOUIS

April 2, 2021
Page 6

associated with Varsity. As USASF has stated, it agrees to produce its template agreements with gyms and any agreements that depart from the templates or have additional provisions. Plaintiffs understand that the Premier contracts will be subject to the same agreement. As for contracts with event producers, as part of the compromise on Request No. 18, Plaintiffs have requested that those contracts be produced. USASF does not object to producing communications and negotiations sought in this Request. It does not believe these go back to 2003, but believes they do go back to 2012 and will produce them as far back as they go. Please confirm this.

Request No. 18

USASF has offered to produce the template of each of the types of contracts it has with event producers, gyms, teams, and athletes, evidencing the fees, dues, rebates, requirements, dates, terms, and duration associated with each contract. USASF has also offered to produce specific contracts that have any special or different provisions beyond those in the templates. USASF states that it knows which contracts have such provisions and agrees to produce all such relevant contracts. In addition to this, Plaintiffs request that USASF produce copies of all of its contracts with event producers, including Varsity.

Request No. 19

Plaintiffs and USASF have a difference of opinion regarding the definition of the term "preferred vendor." USASF states that preferred vendors are only vendors into whose fees USASF has input. Plaintiffs disagree with this overly narrow definition. To avoid further debate and supplemental Requests that will further draw out negotiations, Plaintiffs request that USASF simply advise Plaintiffs of vendors who have been recommended or suggested by USASF to its members, and provide any contracts, revenue-sharing agreements, or financial information (such as financial statements) USASF has for these vendors.

Additionally, USASF states that it has no approved vendors. Please advise if Plaintiffs' understanding of USASF's statement is correct.

Request No. 20

As stated above, Plaintiffs and USASF do not have agreement on the definition of the term "preferred vendor." However, in an attempt to bring negotiations to a close, Plaintiffs request that USASF provide documents discussing vendors that offer preferential pricing to USASF members; documents discussing differences between using different vendors (such as communications with members regarding which vendors to choose) and, specifically between using a vendor recommended or suggested by USASF and another vendor; and documents concerning denial of a particular vendor a member has requested to use.

Request No. 21

USASF has agreed to produce communications, reports, memos and analyses regarding actual or proposed contractual or offer terms or provisions in any agreements between USASF and any event producer, gym, team, or athlete. Plaintiffs request that USASF include communications regarding the requirements and benefits of membership with USASF.

Request No. 22

Plaintiffs maintain that the Member Perks Program is another method through which USASF restricts competition and maintains a hold over its members and elevates certain vendors over others, including in the areas of accommodations and music. USASF represents that the program is administered by a third-party, Abenity, and USASF therefore has limited information regarding the program. Please advise what information is available regarding the Member Perks Program, in USASF's custody, possession or control and whether USASF will

April 2, 2021
Page 7

provide that information. Plaintiffs expect that materials held by a vendor hired by USASF are in USASF's control.

<u>Request No. 23</u>

USASF is compiling a list of its employees, with those employees' positions and the dates they were employed. USASF stated that it would consider including employees' responsibilities in this list if Plaintiffs identified specific areas of interest. Plaintiffs request that USASF include responsibilities related to: Worlds, membership requirements, dealings with event producers, dealings with gyms, rules, credentialling, the Athletic Performance Standards, vendor interactions and management, sponsorship, safety, and relationships with Varsity, Bain, Charlesbank, and Partners Group. It is Plaintiffs' understanding that USASF intends to produce and not exclude any documents responsive to this request.

<u>Request No. 24</u>

It is Plaintiffs' understanding that USASF agrees to produce profit and loss statements, balance sheets, monthly and annual financial statements, and high-level budgets**.** USASF represents that no other documents sought in this Request exist and that these documents exist only as "go-get" documents. Plaintiffs request confirmation that none of these documents would be expected to be located in custodial sources.

<u>Request No. 25</u>

Plaintiffs understand that USASF has agreed to produce all requested documents that it has in its possession, save for its tax returns, which it represents only contain redundant information. Subject to agreement on the other Requests, Plaintiffs accept this offer.

Plaintiffs request confirmation that USASF has no documents concerning issuance of equity or debit, loans, or money owed or receivable.

<u>Request No. 26</u>

USASF advises that it does not have payroll records from before January 2015 as Varsity paid USASF salaries prior to that point. Plaintiffs requested payroll records from 2015 on, and USASF said that it would consider the request. Plaintiffs now seek a response as to USASF's position. Plaintiffs also seek a response to whether USASF has records showing the salaries paid by Varsity to USASF employees, as sought in other Requests.

<u>Request No. 27</u>

USASF advises that it is compiling a list of dues for all years in the production period, for each category of membership, along with the amount of members in each category who paid those dues in the given year.

Plaintiffs also seek the names of specific members, but are willing, as a compromise, to address this issue through a separate Request, *infra*, Request No. 64.

<u>Request No. 28</u>

USASF advises that neither dues payments nor Worlds spectator fees are earmarked. USASF agrees to produce documents that discuss increasing dues or spectator fees, as well as documents about being able to pay for expenses, based on expected income from dues or fees.

April 2, 2021
Page 8

Request No. 29

Plaintiffs believe that this Request will be satisfied by the dues information produced in response to Request No. 27, provided USASF includes dues or fees paid by corporate sponsors, partners, affiliate and associate members or produces documents showing this information.

Request No. 30

Plaintiffs accept USASF's offer with respect to Request No. 28, in satisfaction of this request.

Request No. 31

Plaintiffs accept USASF's offer with respect to Request No. 28, in satisfaction of this request.

Request No. 32

USASF advises that it is producing all of its financial documents, as well as fee schedules, back to 2012. Plaintiffs inquire whether there are other documents that break out fees specific to particular sources (including those listed in this Request), particularly if these events were hosted by third parties.

Request No. 33

USASF advises that none of its sources of income are earmarked for specific uses, but agrees to identify other sources of income, beyond membership fees and fees associated with Worlds. Plaintiffs request the same agreement from USASF on this Request as USASF provided for Request No. 28, namely production of discussions about increasing income from certain sources or paying expenses based on certain income.

Request No. 34

It is Plaintiffs' understanding that USASF will produce financial information regarding its sales, revenues, expenditures, and profits and losses for Worlds. USASF advises that it does not believe that it possesses information regarding sales, revenues, expenditures, profits or losses for any other competitions, but, if it locates such documents, it will produce them.

Plaintiffs request that USASF produce sales, revenues, expenditures, and profit and loss information for membership dues or fees; payments related to creation and distribution of rules or regulations relating to All Star Cheer or other cheerleading related activities and events; and any and other services or good USASF provides, related to All Star Cheer. Please advise if those amounts are located in the financial documents USASF has agreed to produce. This case is about Varsity's domination of All Star Cheer, in part, through USASF and its membership requirements, rules, and programs. USASF is a co-Defendant in Plaintiffs' Complaint and is to be held jointly and severally liable for the conduct at issue. The financial information Plaintiffs seek is clearly relevant.

Request No. 35

USASF advises that apparel sales are not done through USASF, but rather, through third parties. USASF believes that to the extent it has information responsive to this Request, it will be produced in the Worlds profit and loss statements. USASF has agreed to verify whether there are documents containing the requested information provided by vendors to USASF and/or to its accountants. Plaintiffs ask USASF to confirm the names of the vendors who sold apparel at Worlds during the production period, namely Fullstart, Poppy's, RVYL Apparel and Direct Sports Leisure. Please confirm whether there are any others. Plaintiffs also understand that Varsity-

manufactured apparel was sold at Worlds. Please advise whether that apparel was sold by Varsity.

Request No. 36

USASF advises that it does not possess the requested information for any All Star competitions other than Worlds and agrees to produce the requested information for Worlds only.

Plaintiffs request USASF to produce information regarding the costs of promoting USASF as a brand, including advertising expenses; development of USASF trademarks and logos; legal fees expended in protecting USASF's purported intellectual property rights; and all other costs associated with producing events in an itemized fashion. Please advise whether this information will be contained in the documents USASF contemplates producing, such as its annual and monthly financial reports.

Request No. 37

USASF agrees to produce the requested information with respect to Worlds only, and asserts that it does not possess this information for any other events. USASF further agrees to inquire whether it has separate documents or reports setting forth the spectator fees paid to attend Worlds each year. Plaintiffs request that USASF advise if it determines that it has any of this information for events other than Worlds.

Request No. 38

USASF agrees to produce the requested information with respect to Worlds only, and asserts that it does not possess this information for any other events. Plaintiffs request that USASF advise them if it determines that it has this information for events other than Worlds.

Request No. 39

USASF will produce the responsive documents it possesses, based on its custodial search. Plaintiffs ask USASF to confirm that it does not expect responsive documents to exist in any central files.

Request No. 40

USASF agrees to produce what is requested subject to its custodian and search term parameters, as well as potentially privilege-based objections. If there are such objections to responsive documents, they must be entered in USASF's privilege log. ESI Protocol, (Doc. No. 72), Sec. 17.

Request No. 41

USASF agrees to produce what is requested subject to its custodian and search term parameters.

Request No. 42

USASF agrees to produce what is requested subject to its custodian and search term parameters.

Request No. 43

USASF agrees to produce what is requested subject to its custodian and search term parameters.

Request No. 44

USASF agrees to produce documents about other Worlds competitions and about steering business to other USASF event producers (including Varsity), whose names can be used as search terms. Please advise whether USASF will also agree to produce documents about moving business away from non-USASF event producers, and whether USASF will agree to produce documents regarding USASF's efforts to compete, as an event producer, against other event producers.

Request No. 45

USASF believes that some responsive information will be found in board minutes and agrees to produce such minutes. USASF also agrees to produce documents about other World championships and the NACCC and is willing to search for documents regarding competitors in the cheer competition and regulation market. USASF agrees that if it finds competitive analyses, it will produce them. USASF further states that it has no reports analyzing the difference between sideline cheer and All Star Cheer. If USASF has documents regarding Varsity's competitors in the apparel or competition markets, we ask that those documents be produced as well.

Request No. 46

Plaintiffs maintain that any statements made by or documents submitted by or to USASF that are relevant to demonstrating the market or the monopolistic conduct identified in Plaintiffs' Complaint are relevant. Plaintiffs seek production to the extent responsive documents concern All Star Cheer.

Request No. 47

USASF agrees to produce what is requested subject to its custodian and search term parameters.

Request No. 48

It is Plaintiffs' understanding that USASF will produce documents showing current and historical requirements for event attendance and registration packets for Worlds. Plaintiffs ask USASF to verify that these packets will cover each year of the production period. For other events, USASF states that the only requirement to attend is membership. However, Plaintiffs note there are often other requirements. For championships, there are bid requirements; there are sometimes "Stay-to-Play" requirements; and there are certain requirements concerning what apparel may be worn, among others. Plaintiffs seek production of documents showing all requirements for attendance and participation in USASF competitions.

USASF also agrees to produce documents showing the rationale for changes in attendance requirements, as well as documents analyzing or discussing the market effects of its membership requirements, apparel requirements, safety requirements, stay-to-play requirements, and any other requirements.

Request No. 49

USASF agrees to produce what is requested subject to its custodian and search term parameters.

Request No. 50

USASF agrees to produce what is requested subject to its custodian and search term parameters.

Request No. 51

Plaintiffs seek clarification on whether what USASF has agreed to produce ("membership guidelines") will cover requested event rules, currently and historically, including all rules, limitations, or restrictions that USASF imposes at events or regarding events, *i.e.*, documents that will show geographic limitations and other rules. Plaintiffs seek further clarification on whether USASF will produce all rules and information about changes and the rationales for them. Plaintiffs maintain that production of only membership and tier 1 rules are insufficient, as those would not cover things such as the rules on where competitions can be held and how close to one another they may be. Plaintiffs understand that for any responsive documents, USASF agrees to produce them within the confines of its search term parameters.

Request No. 52

USASF agrees to produce the requested documents, subject to its custodian and search term parameters. USASF notes that some responsive documents may be withheld on the basis of privilege. All privileged documents must be logged in USASF's privilege log. ESI Protocol, (Doc. No. 72), Sec. 17.

Request No. 53

USASF agrees to produce what is requested subject to its custodian and search term parameters.

Request No. 54

Plaintiffs seek to explore whether gyms that sought to obtain their insurance policies from companies other than K&K Insurance were denied the ability to do so, discouraged, or penalized in some way. USASF advises there is no way to look for this information other than to go through each gym's profile and that gyms only have to certify that they possess insurance.

Plaintiffs inquire whether there are any discussions between the USASF employee(s) in charge of insurance during the production period and the gyms. USASF will check this issue. USASF advises that if this individual were to become a custodian in order to respond to this Request, any searches of this person's files would be limited. Please advise on the above, include the name of the person(s) at USASF that handle(s) insurance issues.

Request No. 55

USASF agrees to produce the requested documents, subject to its custodian and search term parameters.

Request No. 56

USASF alleges that all responsive documents are privileged. Plaintiffs maintain that documents concerning financial and economic, rather than legal, effects cannot be privileged and request that USASF reconsider its position. They are business advice, at most. If USASF does not change its position, USASF must log responsive documents it alleges are privileged.

Request No. 57

It is Plaintiffs' understanding that USASF does not systematically maintain or gather scoresheets for competitions other than Worlds, and that accordingly, USASF will produce event scoresheets for Worlds only. Plaintiffs agree with USASF's proposal that if USASF locates scoresheets from other competitions, it will produce them.

USASF invited Plaintiffs to craft search terms sufficient to look for scoresheets for competitions other than Worlds. Plaintiffs have done so in their most recent proposal.

Request No. 58

USASF agrees to produce what is requested subject to its custodian and search term parameters.

Plaintiffs understand that USASF's production in response to this Request will not be limited to instructions given to judges, and Plaintiffs request that the production include information (including discussions and internal memoranda) about the instructions themselves—such as how they were formulated, changed, and whether the event producers or judges had any questions or thoughts about them.

Request No. 59

USASF agrees to produce the requested documents, if any are located, subject to its custodian and search term parameters.

Request No. 60

USASF agrees to produce the requested documents, if any are located, subject to its custodian and search term parameters.

Request No. 61

USASF has agreed to search for any codes of conduct specific to Worlds, and will produce current and historical versions of its Professional Responsibility Code, Member Event Producer Compliance Guide, Event Sanctioning Standards, Company Member Agreements, the Safesport code, Athletic Performance Standards, and USASF Cheer Rules. USASF has represented that these documents contain all requirements for event participation and production applicable to producers, gyms, athletes, teams, legality officials, and coaches. USASF has advised there is no publication listing standards for spectators. Plaintiffs request that USASF confirm that these documents cover legality officials and gyms (rather than just gym owners) and that there are no other documents that set forth event requirements for legality officials or gyms.

Request No. 62

USASF intends to produce its Professional Responsibility Code, Member Event Producer Compliance Guide, Event Sanctioning Standards, and Company Member Agreements. USASF believes that these documents identify all membership requirements. Please confirm that these documents contain membership requirements for affiliate members. USASF does not intend to withhold any documents containing membership requirements.

Request No. 63

USASF will produce its Professional Responsibility Code, Member Event Producer Compliance Guide, Event Sanctioning Standards, and Company Member Agreements. Plaintiffs request that USASF verify whether these

materials contain the policies applicable to legality officials, judges, vendors, and choreographers.

USASF is also compiling a dues fee schedule for production to Plaintiffs, as stated *supra*, Request No. 18. Plaintiffs understand that this schedule will contain fees paid by affiliate members and any other categories of members to which gyms, athletes, teams, judges, choreographers, vendors, event producers, legality officials, or coaches belong. Plaintiffs understand that there are no other fees paid to USASF besides membership fees and fees associated with Worlds.

Request No. 64

USASF refused to produce any responsive documents to this Request, based on Plaintiffs' class definition. However, the Complaint contains a count against USASF and Plaintiffs seek damages from USASF. Plaintiffs maintain that it is directly relevant to the count against USASF to know how many members USASF has, whether membership has been increasing or decreasing, whether members are associated with particular types of gyms or gyms in certain regions, and which event producers are affiliated with USASF. Plaintiffs maintain that if Defendants argue that gyms or other event producers do not have to be part of USASF to participate in the sport and that there exist successful or significant gyms or event producers that are not members, then Plaintiffs need the ability to test such claims.

USASF also raised concerns about producing the names of minors. To address USASF's concerns regarding the information of minors, Plaintiffs offer to limit this Request, as written, to gym, team, and event producer members. The list of gym, team, and event producer members will enable Plaintiffs to determine what portion of the market, which players were affiliated with USASF. With respect to coach members, Plaintiffs will agree not to seek the list of names of members, if USASF will agree to provide the number of coach members for each year 2015-2020. Plaintiffs seek the same information for Athlete members.

Request No. 65

Plaintiffs request that, at a minimum, USASF produce the forms that potential and renewing members must fill out and any other lists of requirements, including any other literature is made available to those seeking to join the USASF or renew their membership. Plaintiffs understand that USASF is verifying to see whether it has such documents

Request No. 66

Plaintiffs need to understand what portion of available judges, legality officials, and choreographers were USASF members and therefore were likely unavailable for non-USASF competitions. USASF advises that there is no specific membership category for these types of members, but states that they have the option to join USASF as associate members. USASF advises that the associate membership category did not exist until 2017 (or rather that there is no revenue for it prior to 2017, meaning that perhaps it existed and was free). Plaintiffs seek confirmation on this point.

USASF states that choreographers are not typically USASF members and that there is not a large number of people in the associate member category. USASF advised that it would consider producing the names of the individuals listed in this category and the years they were members. Please advise whether USASF agrees to do so.

Request No. 67

Plaintiffs ask that USASF clarify whether it will produce forms, instructions, guidance, and applications for

membership by judges, choreographers, and legality officials.

Request No. 68

USASF agrees to produce the requested documents, subject to its custodian and search term parameters. USASF stated that it would produce any reports it located regarding attendance at non-USASF affiliated IEP events versus USASF events. Plaintiffs also ask that USASF search for discussions of why gyms should join USASF and/or how membership requirements are restrictive, namely the pros and cons of USASF membership. Plaintiffs also ask that USASF include in its production any promotional materials, discussions with gyms, individuals, and judges considering joining USASF, as well as internal discussions or reports about what effects the membership requirements have had.

Request No. 69

USASF agrees to produce its Professional Responsibility Code, Member Event Producer Compliance Guide, Event Sanctioning Standards, and Company Member Agreements. Plaintiffs request confirmation as to whether these documents cover all conditions and restrictions for gyms, athletes, teams, spectators, judges, choreographers, vendors, event producers, legality officials, and coaches. Plaintiffs understand that USASF has agreed to determine whether it has guidelines beyond the documents offered for event producers, vendors, and choreographers.

Request No. 70

USASF agrees to produce what is requested subject to its custodian and search term parameters.

Request No. 71

USASF agrees to produce what is requested subject to its custodian and search term parameters. USASF advises that it does not believe it has responsive documents beyond those concerning Worlds, and that it expects to locate information regarding spectator tickets in Steve Peterson's files, which will be produced. Plaintiffs request that USASF search its files for documents, including communications or reports regarding other events, to verify whether such documents exist.

Specifically, USASF advises that spectator tickets for Worlds are coordinated by Disney World and that one email from Steve Peterson to Disney sets the price of spectator tickets each year, and that these emails will be produced. Plaintiffs expect that they will receive these emails for each year in the production period.

USASF also stated that it would verify whether its accountant has any information regarding event ticket sales. Plaintiffs ask that USASF procure event ticket sales information from Disney World, if it is not in the possession of USASF or its accountant. Plaintiffs seek the revenues from event ticket sales for each year of the production period, as well as information about the portion of those revenues that is remitted to USASF and to Varsity.

Request No. 72

USASF has agreed to produce Worlds packets showing how and where to register for the competition. Plaintiffs inquire whether these packets show the website where spectator tickets may be purchased.

Request No. 73

USASF has agreed to confirm whether there are agreements (with Disney World or others) regarding how and where tickets are sold. USASF notes that it thinks that certain of its agreements with Varsity may address this

April 2, 2021
Page 15

issue, and it is producing those agreements. Please advise whether, based on USASF's investigations, this is the case. Please also advise whether USASF has, during the course of the production period, partnered with any entities for ticket sales, besides Disney World.

Request No. 74

USASF agrees to produce the requested documents, subject to its custodian and search term parameters. To the extent any documents are used to set ticket prices (such as reports or charts showing what other event producers charge for spectator fees), Plaintiffs ask that those be produced.

Request No. 75

USASF agrees to produce what is requested subject to its custodian and search term parameters.

Request No. 76

USASF agrees to produce form tier 1 and 2 company member agreements and general membership guidelines. Plaintiffs request that USASF produce additional documents that show all travel subsidies actually paid to gyms for attending events, such as travel booking documents, communications, charts, and reports.

USASF also agrees to investigate whether it has paid bid tracking information for events, including Worlds. Plaintiffs seek clarification on whether USASF allocates or subsidizes any funds to gyms for participation in Worlds or any other competition.

Request No. 77

USASF agrees to produce what is requested subject to its custodian and search term parameters, including those concerning Varsity and other manufacturers' apparel. USASF invited Plaintiffs to craft terms to locate such documents. Plaintiffs have done so in their search term proposal sent to USASF on March 29, 2021.

Request No. 78

USASF advises that there is no approval process for commercial vendors who sell merchandise at Worlds. The only vendors are contracted partners with USASF.  Please advise as to what is required to become a contracted partner of USASF.

USASF advises that the apparel vendors who sell merchandise at Worlds are Fullstart, Poppy's, and Direct Sports Leisure. USASF advises that Varsity-manufactured (but not Varsity-branded) clothes from the Dominican Republic are also sold at Worlds. Please confirm these clothes are sold at Worlds by Varsity. USASF agrees to produce what is requested subject to its custodian and search term parameters. Please advise whether USASF will agree to add the names of the above apparel vendors (Fullstart, Poppy's, and Direct Sports Leisure) as search terms.

Request No. 79

USASF agrees to produce the requested documents, subject to its custodian and search term parameters. Plaintiffs seek to clarify that this request seeks documents concerning who is or is not permitted to sell at USASF competitions and why.

USASF also agrees to produce any reports or analyses regarding apparel that it locates, as well as communications regarding which entities are permitted to sell apparel at Worlds or other USASF-sanctioned

competitions.

Finally, USASF agreed to determine who Steve Peterson works with to organize Worlds, both at USASF and at Varsity.

Request No. 80

USASF advises that RYVL Apparel had agreements with USASF pursuant to which it provided printed T-shirts to be sold at Worlds. USASF agrees to produce these agreements. Please advise whether this vendor sold Varsity-branded or -manufactured apparel.

USASF also advises that it receives a percentage of the income from the retail sales made at Worlds. Please confirm that the agreement giving rise to this profit-sharing will be produced.

Finally, please advise whether USASF will produce the agreement that permits Varsity-manufactured clothes to be sold at Worlds.

Request No. 81

Plaintiffs seek documents concerning Varsity versus non-Varsity apparel, including how non-Varsity apparel compares to Varsity apparel and whether either is given a preference in competitions, discussions with members, rules, or otherwise. USASF agrees to produce responsive documents, including any policies regarding this that are located.

Request No. 82

USASF agrees to produce what is requested subject to its custodian and search term parameters, as well as potentially privilege-based objections. If there are such objections to responsive documents, they must be entered in USASF's privilege log. Plaintiffs request production of responsive documents back to 2003.

Request No. 83

USASF agrees to produce what is requested subject to its custodian and search term parameters, as well as potentially privilege-based objections. If there are such objections to responsive documents, they must be entered in USASF's privilege log. Plaintiffs request production of responsive documents back to 2003.

USASF has more recently stated, with respect to Requests Nos. 82 and 83, that it does not know what responsive records it possesses going back to 2003. Please provide an update on USASF's investigations into this issue. Plaintiffs understood from USASF's responses to Plaintiffs' Requests for Production and the ensuing meet-and-confers that USASF agrees to produce all requested materials for at least the 2015-2020 time period.

Plaintiffs are not seeking all payments made to and from every gym or event producer associated with USASF.

Request No. 84

USASF agrees to produce what is requested subject to its custodian and search term parameters. Plaintiffs understand that the responsive documents USASF has in its possession are two trademark registrations, a trademark application and a trademark assignment. Plaintiffs request production of responsive documents back to

April 2, 2021
Page 17

2003.

Request No. 85

As Plaintiffs and USASF have discussed, this Request seeks information regarding the following issues:

- Documents regarding the motivation to form USASF and whether that motivation was impacted by the existence of NACCC.
  - Plaintiffs understand that USASF will produce these documents, including in response to Request No. 1, back to 2003.
- Documents concerning USASF's acquisition of NACCC.
  - Plaintiffs understand that USASF will produce these documents back to 2005.
  - USASF has stated that such documents will discuss the negotiations/agreement between the NACCC and USASF, such as the "merger agreement," Board of Director actions of the USASF and NACCC on the issue, and the NACCC's bylaws.  Information about this agreement may also be found in the USASF Board of Director minutes from that time period.
- Documents concerning what happened to the NACCC's role following the acquisition and the NACCC's role now.
  - USASF advises that the NACCC's role was previously to prepare rules and standards. Please advise when that was NACC's role and what documents may be associated with this role.
  - USASF also advises that the NACCC currently has no role in governing All Star Cheer. The NACCC's primary role is to host "The Connection" a mentorship program for younger coaches. Plaintiffs do not currently seek documents regarding this program, save for documents showing the NACCC's transition from a preparer of rules to becoming The Connection.
- USASF advises that there are no tax or regulatory filings in connection with its acquisition of the NACC. Please confirm that there have also not been any communications with regulators regarding this acquisition.
- USASF advises that Elaine Pascal was the president of the NACCC at the time it was acquired by USASF; that Morton Bergue was involved with the NACC; and Jim Chadwick and Karin Wilson interfaced with them. Plaintiffs ask USASF to ask Elaine Pascal and Morton Bergue to provide USASF with responsive documents (to this Request) in their possession, to the extent they are not in USASF's possession.

Request No. 86

USASF advises it does not have a directory. Thus, in lieu of a directory, USASF has agreed to compile a list showing its directors for each year going back to 2003, whether they were voting or non-voting directors, and their email addresses (if known), as well as to provide a list of USASF's employees and staff, showing the state where they worked and the date range during which they worked for USASF. USASF advises that this list current goes back to 2010. Plaintiffs ask USASF to compile the list going back to 2003, to the extent possible, and include the titles and job responsibilities for the employees. If USASF is agreeable, then the parties have agreement on this Request. USASF states that the employees' emails will be discernable from the email communications produced. To the extent they are not, Plaintiffs reserve the right to request them.

Request No. 87

USASF advises that before 2015, all USASF employees were paid by Varsity, and that Jim Chadwick and Steve Peterson are still paid by Varsity. Plaintiffs request that USASF clarify whether it will provide payroll information

for Chadwick and Peterson showing the salaries they have been paid by Varsity during their time at USASF.

With respect to the other individuals who were paid by Varsity before 2015, Plaintiffs ask USASF to determine whether there is a summary document showing these payments, and whether this information can be compiled from USASF's general ledger.

Request No. 88

Plaintiffs ask USASF to verify whether it has personnel records or resumés for its employees and volunteers showing if they had been employed by Varsity prior to or at the same time that they were employed by USASF. Plaintiffs also inquire whether there is available information on which of USASF's board members have been affiliated with Varsity.

Request No. 89

Please confirm that USASF has documents back to 2003, relating to the owner of the USASF URL, and that USASF agrees to employ search terms concerning the transfer and ownership of the USASF URL.

Request No. 90

USASF advises that it will produce various corporate formation documents and submissions to the Tennessee Secretary of State, which will show its address at various points in time going back to 2004, when USASF was incorporated. USASF advises that its current address is 8275 Tournament Drive, Suite 325, Memphis, Tennessee 38125.

Request No. 91

Plaintiffs request that USASF provide a list of governing bodies and cheerleading organizations of which it is a member.

Request No. 92

USASF agrees to produce its original and current by-laws, including all redlined versions, which state the composition of the board and amendments between the two versions. USASF represents that while it does not possess a directory containing all of the information requested, it could provide names of the members of the nominating committee, the Board of Directors and a list of USASF's employees. USASF does not believe there is a directory for USASF employees that goes back to 2003, based on its understanding that the current version may have been run over the older versions.

Plaintiffs request that USASF also include information concerning what type of seat each board member held, namely whether the seat was a voting seat, and whether it was reserved for a certain category of members, like Varsity or other event producer employees (JAM Brands, etc.), coaches, or gym owners. Plaintiffs ask USASF to confirm whether any other information responsive to this Request is available. As we have discussed, Plaintiffs are seeking documents responsive to this Request back to 2003.

Request No. 93

USASF believes that responsive documents will likely be go-get documents, and agrees to produce what is requested, including board meeting minutes discussing nomination and approval of new members, and any documents USASF locates regarding the selection process for new members, subject to its custodian and search term parameters, as well as potentially privilege-based objections. If there are such objections to responsive

documents, they must be entered in USASF's privilege log.

As we have discussed, Plaintiffs are seeking documents responsive to this Request back to 2003.

Request No. 94

USASF agrees to produce what is requested subject to its custodian and search term parameters, as well as potentially privilege-based objections. If there are such objections to responsive documents, they must be entered in the privilege log.

Plaintiffs believe that at least some responsive documents may be go-get documents and located in central files. USASF invited Plaintiffs to craft terms to locate additional documents beyond those collected on a go-get basis. Plaintiffs have done so in their search term proposal sent to USASF on March 29, 2021.

Request No. 95

Plaintiffs have requested that USASF provide administrative or IT records showing which devices each custodian uses or which devices are permitted to access USASF's records, including personal devices. Plaintiffs expect that USASF will engage in discussions to identify the relevant ESI sources.

Request No. 96

USASF advises there is no written preservation or retention policy and that there are only litigation holds. Please confirm that there is a litigation hold in place with respect to this case.

Request No. 97

Plaintiffs understand that USASF is not aware of any documents concerning the deletion of any information requested by Plaintiffs during the course of the litigation. If USASF becomes aware of the deletion or destruction of documents discussing requested information (whether before or after the litigation was initiated), USASF will advise Plaintiffs.

Request Nos. 98-111

Plaintiffs are willing to defer action on these Requests for 60 days, provided the parties agree on all other issues.

Request No. 112

USASF agrees to produce what is requested subject to its custodian and search term parameters, as well as any privilege considerations. Any documents withheld due to privilege must logged in USASF's privilege log.

Request No. 113

USASF agrees to produce what is requested subject to its custodian and search term parameters, as well as any privilege considerations. Any documents withheld due to privilege must logged in USASF's privilege log.

Request No. 114

USASF advises that there is one responsive document regarding the geographic location of members, which will be produced. Plaintiffs request that USASF produce any additional responsive documents, if located.

April 2, 2021
Page 20

Request No. 115

USASF states that it has not been involved in any investigations of itself or Varsity. If USASF learns otherwise, Plaintiffs ask that USASF advise them.

Plaintiffs also ask that USASF verify whether it has submitted any statements, declarations, affidavits, or other materials under oath including deposition or other sworn testimony (not pleadings) in any litigation concerning cheerleading between 2012 and the present.

Request No. 116

USASF advises that it has not communicated with nor provided any documents to any of the agencies listed in this Request, back to 2003.

Request No. 117

Plaintiffs understand that USASF is producing any non-privileged documents that USASF used to compile, or that are mentioned in, its interrogatory responses. If any such documents are privileged, they must be logged in USASF's privilege log.

Very truly yours,

 _/s/ Victoria Sims_

Victoria Sims

Cc:    Veronica Bosco
       Katherine Van Dyck
       Eric L. Cramer
       Mark R. Suter
       Karin E. Garvey

WASHINGTON, DC (*Main Office*)  •  NEW YORK  •  ST. LOUIS