# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| FUSION ELITE ALL STARS et al., | |
| Plaintiffs, | **Civ. Action No. 2:20-cv-2600** |
| v. | |
| VARSITY BRANDS, LLC et al., | |
| Defendants. | |

## VARSITY DEFENDANTS' MEMORANDUM OF LAW IN RESPONSE TO PLAINTIFFS' MOTION TO COMPEL

## TABLE OF CONTENTS

INTRODUCTION ...................................................................................................................1

BACKGROUND ....................................................................................................................1

ARGUMENT .........................................................................................................................3

I.      The Additional Discovery Plaintiffs Seek Would be Irrelevant, Unduly Burdensome,
        Overly Broad, Cumulative and Disproportional to the Needs of the Case .......................3

II.     Varsity Already Has Produced Vast Amounts of Data, Which Are Sufficient for the Needs
        of the Case....................................................................................................................4

III.    Plaintiffs' Motion as to Particular Requests Should Be Denied ........................................7

        A.      Request 20 Does Not Even Cover the Documents Plaintiffs Seek and
                Plaintiffs Already Have the Underlying Information About Events .......................7

        B.      Request 56 Seeks Irrelevant Information And Is Not A Proper Document
                Request...............................................................................................................9

        C.      Plaintiffs' Demand for Venue Agreements is Unnecessary and
                Disproportionate ...............................................................................................11

        D.      The Parties Agreed About Varsity's Production in Respect of Requests 77
                and 78...............................................................................................................12

        E.      Request 82 Seeks Salary Information That Plaintiffs Do Not Need.....................13

        F.      The Parties Agreed to Table Discussion of Requests 92 to 103...........................14

IV.     Plaintiffs Have Not Justified Their Demand for Additional Custodians ...........................16

V.      Plaintiffs' Attempted Reservation of Rights Violates the Court's Scheduling Order to
        Bring Disputes to the Court by May 5, 2021 ...................................................................19

CONCLUSION....................................................................................................................21

## TABLE OF AUTHORITIES

**Federal Cases**

*Abbott v. Wyo. Cty. Sheriff's Off.*,
15-CV-531W, 2017 WL 2115381 (W.D.N.Y. May 16, 2017) ...................................................4

*Clark v. Hercules Inc.*,
No. 13-cv-794, 2017 WL 3316311 (M.D. Fla. Aug. 3, 2017) ...............................................10

*Concord Boat Corp. v. Brunswick Corp.*,
207 F.3d 1039 (8th Cir. 2000) ................................................................................................7

*Harris v. Advance Am. Cash Advance Ctrs, Inc.*,
288 F.R.D. 170 (S.D. Ohio 2012) .................................................................................. 9, 12-13

*Johnson v. CoreCivic, Inc.*,
No. 18-cv-1051, 2019 WL 5089086 (W.D. Tenn. Oct. 10, 2019)...........................................3

*Midwestern Mach. Co., Inc. v. Nw. Airlines, Inc.*,
392 F.3d 265 (8th Cir. 2004) ..................................................................................................7

*Raymond James & Assocs., Inc. v. 50 North Front St. TN, LLC*,
No. 18-cv-2104, 2020 WL 1527827 (W.D. Tenn. Mar. 30, 2020) ..........................................4

*Reiter v. Sonotone Corp.*,
442 U.S. 330 (1979)................................................................................................................15

*U.S. v. Merck-Medco Managed Care, LLC*,
No. 00 CV 737, 2005 WL 1971885 (E.D. Pa. Aug. 15, 2005) ...............................................10

*Z Techs. Corp. v. Lubrizol Corp.*,
753 F.3d 594 (6th Cir. 2014) .............................................................................................. 6-7

**Federal Statutes**

15 U.S.C. § 15(a) ........................................................................................................................15

**Other Authorities**

Fed. R. Civ. P. 26(b)(1) ................................................................................................................4

Fed. R. Civ. P. 26(b)(2)(C)........................................................................................................4, 9

Fed. R. Civ. Pro. 11(b) ......................................................................................................10

Varsity Brands, LLC, Varsity Spirit, LLC, and Varsity Spirit Fashions & Supplies, LLC (collectively, "Varsity") hereby respond to Plaintiffs' Motion to Compel Discovery Responses from Varsity Defendants, ECF No. 105.

## INTRODUCTION

Plaintiffs' motion should be denied in its entirety. Varsity has already spent millions of dollars collecting, reviewing, and producing documents and data in this case, and there is no justification for imposing further burden on Varsity. Indeed, Plaintiffs' motion should be viewed for what it is—an effort to use the discovery process to either cause severe financial harm to Varsity or coerce it into an extortionate settlement.

## BACKGROUND

Document discovery in this case began in October 2020 when the parties served document requests on each other. As required by Rule 34, Varsity responded to Plaintiffs' 109 requests in November 2020, stating its objections and, as to each request, stating what production it would make. Among other things, in its responses Varsity committed to review and produce documents from 14 custodians using very broad search terms such as "price," "contact," and "agreement." The custodians included the founder of Varsity, the head of Varsity's cheerleading business, his second-in-command, the comptroller of the cheerleading business, and the other senior business and operational leaders of the cheerleading business. The time period was January 1, 2015 to June 30, 2020—five and a half years and beginning almost 18 months before the damages period that Plaintiffs posit. (Kaiser Decl. ¶¶ 3-4.) In short, Varsity's responses were comprehensive, extensive, and more than adequate for the needs of the case.

Varsity's extensive discovery efforts have already cost more than four millions dollars and heaped substantial strain on a workforce still recovering from the effects of the global

pandemic that severely impacted All Star cheerleading.  (Seely Decl. ¶ 2.)[1]  Varsity has diligently reviewed the hundreds of thousands of documents that "hit" on these broad search terms across the 14 custodians and already has produced hundreds of thousands of pages of materials out of this review, with more to come as the process proceeds.  In addition, Varsity has produced hundreds of thousands of data records relating to its costs and its sales of the products and services that Plaintiffs have brought into issue in this case, down all the way to the transaction level.  The time period covered by this data is 2015 to 2020, which exceeds the putative damages period in this case by almost a year and a half.  (Kaiser Decl. ¶ 5.)

Plaintiffs did not contact Varsity about Varsity's responses to Plaintiffs' document requests for nearly a month after they were served.  From this point until May 5, Varsity and Plaintiffs conducted at least 23 separate conference calls spanning approximately 35 hours, not counting preparation and follow-up or conferences between USASF and Plaintiffs.  Even though Varsity in its original responses had committed to provide extensive discovery, during these sessions—which from Varsity's perspective were largely discursive, repetitive, and unproductive—Plaintiffs repeatedly made disproportionate and unjustified demands for massive volumes of additional materials.  For example, at one point Plaintiffs demanded that Varsity produce documents from *41 additional custodians*.  They likewise demanded that Varsity provided granular data on Varsity's costs, in "any markets You believe Varsity compete," including "markets" that have nothing to do with All-Star cheerleading, such as band uniforms. When Varsity said it would not provide such data, Plaintiffs threatened Varsity with a motion to compel.  Plaintiffs likewise demanded additional search terms that would have led to hundreds of

---

[1] This amount includes only costs related to the *Fusion Elite* case.  Plaintiffs in *Jones* and *American Spirit* have issued even more wide-ranging and sprawling document requests.

thousands of additional documents having to be reviewed.  When informed that Varsity had sampled documents that hit on these new search terms and found virtually zero responsive documents, Plaintiffs continued to pursue them (albeit in ever slightly-reduced forms), ultimately abandoning them just days before filing their motion to compel.  (Kaiser Decl. ¶¶ 6-9.)  Simply addressing Plaintiffs' extraordinary and ever-shifting demands has been an expensive and unduly burdensome process for Varsity.  Given the irrelevance and overbreadth of many of Plaintiffs' demands to the merits of the case, it has also done nothing to advance the interests of the putative class.

In short, it has become increasingly evident that rather than litigate the case on the merits, Plaintiffs are seeking to use excessive costs of discovery to cause severe financial harm to Varsity, the effect of which would be to destroy the cheerleading business it has built to the detriment of the members of the very classes that Plaintiffs say they want to represent or, short of that, coerce it into an extortionate settlement.  The Court should step in and put a stop to this overreach by denying Plaintiffs' motion to compel in its entirety.

## ARGUMENT

### I.   The Additional Discovery Plaintiffs Seek Would be Irrelevant, Unduly Burdensome, Overly Broad, Cumulative and Disproportional to the Needs of the Case

Discovery is not unlimited.  "The party seeking discovery is obliged to demonstrate relevance." *Johnson v. CoreCivic, Inc.*, No. 18-cv-1051, 2019 WL 5089086, at *2 (W.D. Tenn. Oct. 10, 2019).  And even theoretically "relevant" evidence is not discoverable if the burden of doing so would be disproportionate.  The proportionality analysis considers: (1) the importance of the issues at stake in the action, (2) the amount in controversy, (3) the parties' relative access to relevant information, (4) the parties' resources, (5) the importance of the discovery in resolving the issues, and (6) whether the burden or expense of the proposed discovery outweighs

its likely benefit.  Fed. R. Civ. P. 26(b)(1).  "Determinations as to proportionality are subject to change with the circumstances of the case."  *Raymond James & Assocs., Inc. v. 50 North Front St. TN, LLC*, No. 18-cv-2104, 2020 WL 1527827, at *2 (W.D. Tenn. Mar. 30, 2020) (internal citations and quotations omitted).  "This is in part because '[c]onsiderations of proportionality can include reviewing whether discovery production has reached a point of diminishing returns.'"  *Id.* (quoting *Abbott v. Wyo. Cty. Sheriff's Off.*, 15-CV-531W,  2017 WL 2115381, at *2 (W.D.N.Y. May 16, 2017)).  Thus, "[w]hen the 'marginal utility' of further document production is low, Rule 26's proportionality principle commands that courts should take steps to limit discovery."  *Id.*  In addition, the Court should limit discovery if "(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome or less expensive" or "(ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action."  Fed. R. Civ. P. 26(b)(2)(C).

As set forth in the following sections, all of these considerations weigh heavily against granting any aspect of Plaintiffs' motion to compel yet further documents or data from Varsity.

## II. Varsity Already Has Produced Vast Amounts of Data, Which Are Sufficient for the Needs of the Case

Varsity has produced (or is in the process of producing) hundreds of thousands of elements of data relating to its All-Star cheerleading business, including:

- Transaction data pertaining to Varsity's sales of cheerleading apparel to All Star gyms and to individuals, as well as competition fees for its All Star competitions, and rebates paid in respect of such sales;

- Profit and loss statements;

- Cash flow statements;

- Income statements;

- Cost of goods sold reports for apparel;

- General ledger data pertaining to Varsity's All Star competitions; and

- Data relating to online ticket sales.

Plaintiffs' assertion that Varsity produced this data "late" is baseless and misrepresents the Court's scheduling order.  (*See* Pls.' Br. at 6.)  The Order required that the "Production of *Transactional* Data in Response to Requests for Production" should be made by January 25, 2021, "subject to any unresolved objections of the producing party."  ECF No. 61 (emphasis added).  By its terms, this was a deadline for the production of requested *transactional* data that was not subject to any unresolved objections, not a deadline for "data productions" generally, as Plaintiffs incorrectly state.  Plaintiffs' requests contained a number of confusing and overlapping requests that were not explicitly identified as seeking "transactional data" but that Plaintiffs later asserted were requests for transactional data (among other things).[2]  Only after further discussions with Plaintiffs could Varsity make heads or tails of what "transaction data" Plaintiffs were seeking.[3]  After Plaintiffs clarified their requests and the parties discussed what was available, Varsity produced the transaction data the Plaintiffs requested for 2015 to 2020.[4]

Plaintiffs take no issue with the data that has been produced but ask the Court to order Varsity to extend the period of the data back to 2011 (Pls.' Br. at 6-9.)  They demand this even

---

[2] On January 12, 2021, Varsity set out its questions about those requests in a letter to Plaintiffs. (*See* Kaiser Decl. ¶ 19, Ex. G (1/12/21 Letter from Kaiser to Bosco).).

[3] The requests were also interrogatories disguised as document requests, which violated the restrictions on the number of interrogatories to which the parties agreed after extensive negotiations.  Plaintiffs state that Varsity has "ceased to rely" on this objection (Pls.' Br. at 12 n.9), which is not true.

[4] The production was not made "several months later" as Plaintiffs (mis)state (Pls.' Br. at 6), but rather was made on March 9, a little more than a month after what Plaintiffs incorrectly say was the "deadline."

though their damage claims and class period do not begin until May 26, 2016, which is more

than five years later.[5]  Plaintiffs' argument is that their experts would conduct a so-called "before

and after" analysis of pricing to assess alleged damages and generally need data "to create

damage models, calculate damages, assemble expert reports relevant to class certification" and

conduct otherwise unspecified "crucial tasks in the litigation."  (Pls.' Br. at 6, 8.)  But Varsity has

already provided transactional data for almost a year and a half *prior to* the damages period from

which to do such an analysis.  There is no basis for requiring data from an *even earlier* period.

Plaintiffs speculate that their experts "*may* not have sufficient data for the pre-damages period to

do a proper analysis of impact and damages," (Pls.' Br. at 8 (emphasis added)), but fail to

substantiate that speculation with any factual support, for example a declaration from an expert

explaining why and how such data would be necessary.

Plaintiffs otherwise seek to support their speculation by reference to acquisitions made

outside the statute of limitations period.  (*See* Pls.' Br. at 7-8.)  But that makes no sense because

Plaintiffs may not as a matter of law recover damages allegedly caused by acquisitions that were

completed more than four years prior to filing their Complaint in 2020.  *See, e.g., Z Techs. Corp.*

*v. Lubrizol Corp.*, 753 F.3d 594, 599 (6th Cir. 2014) (affirming dismissal on pleadings of antitrust

claims under Section 2 of the Sherman Act and Section 7 of the Clayton Act because acquisition

that allegedly led to higher prices occurred more than four years prior to suit being filed).[6]

---

[5] Plaintiffs likewise originally demanded documents beginning as to some requests from 2003 and as to the rest from 2008, *eight to thirteen years before* the damages period.  To placate Plaintiffs and avoid saddling the Court with another dispute, Varsity agreed to incur the unnecessary burden of identifying, collecting, and producing documents responsive to a small number of requests using tightly targeted search terms and limited custodians for 2012 to 2014.

[6] Varsity has moved to dismiss Plaintiffs' claim based on acquisitions outside the limitations period.  (ECF No. 83 at 13-14)  As here (*see* Pls.' Br. at 7 n.6), Plaintiffs in response to that motion invoked the continuing violation "doctrine" to try to resurrect their damages claims, which is untenable because the Sixth Circuit and other circuits have held that doctrine does not

Moreover, by Plaintiffs' own admission, these acquisitions were of "main competitors in the *competition* market" (Pls.' Br. at 8 (emphasis added)), yet Plaintiffs ask this Court to order production of 2011 to 2014 "data" relating to *apparel*.

In terms of the particular "categories" of data that Plaintiffs seek (*see* Pls' Br. at 9), Varsity understands that Plaintiffs are seeking the same data that Varsity has already provided for 2015 to 2020 back to 2011. But, as Plaintiffs are aware, there is no pre-existing "general ledger data" available prior to 2013 when Varsity adopted its current accounting system, and much of the other data that has already been provided similarly is not available back to 2011. (Craft Decl. ¶ 11.) Of course Varsity cannot produce what it does not have.

Enough is enough. Plaintiffs have almost eighteen months of data from before the damages period to conduct a "before and after" analysis to assess the effect of Varsity's in-period acquisitions and conduct on prices. They have offered no valid justification for an additional 48 months and their request should be denied. What justification they have offered is limited to transaction data about competitions (not "data" in general or transactional data about apparel), and that justification—that there were acquisitions of competition producers before 2015—does not withstand scrutiny given the statute of limitations.

### III.       Plaintiffs' Motion as to Particular Requests Should Be Denied

#### A.       Request 20 Does Not Even Cover the Documents Plaintiffs Seek and Plaintiffs Already Have the Underlying Information About Events

Plaintiffs' Request 20 was for "All of Your monthly, quarterly, and annual audited and

---

apply to claims based on mergers and acquisitions. *See Z. Techs.*, 753 F.3d at 598-99 (affirming dismissal on pleadings of Section 2 claim based on acquisition and holding that "it is clear from the complete absence of supporting case law that the continuing violations doctrine does not apply to such claims"); *see also Midwestern Mach. Co., Inc. v. Nw. Airlines, Inc.*, 392 F.3d 265 (8th Cir. 2004) (rejecting continuing violation doctrine); *Concord Boat Corp. v. Brunswick Corp.*, 207 F.3d 1039, 1052 (8th Cir. 2000) (same).

unaudited financial statements and related data, including profit and loss statements, balance sheets, cash flow statements, income statements, regulatory filings (including Your income tax returns), issuance of equity or debit, loans, and money owed or receivable." In discussions with Plaintiffs, they clarified that this request was for "profit and loss statements, cash flow statements, and balance sheets" (Pls.' Br. at 9). Varsity is producing these documents and Plaintiffs' motion to compel as to these documents is moot.

Beyond that, even though Request 20 does not seek anything other than "monthly, quarterly, and annual audited and unaudited financial statements and related data," Plaintiffs move for something entirely different—so-called "profit and loss statements" for certain *events*. These are not "monthly, quarterly, [or] annual" financial statements and Plaintiffs cannot amend their requests for production in a motion to compel. To the extent Plaintiffs take the position that they are entitled to "underlying data" as to events, Varsity has produced its general ledger entries for its events, which show all costs and revenues associated with those events to the extent the information is available. Plaintiffs may readily derive "profit and loss" information from that data for events. All information that would be found in "profit and loss" statements—and much more detail—can be found in the general ledger data for events. (Craft Decl. ¶ 1.)

Plaintiffs do not dispute this. Rather, even though such reports would not even be responsive to Request 20, they ask this Court to order Varsity to undertake the *additional* burden of determining whether they have already generated such reports in respect of certain events and categories of events and producing them. *See* Pls.' Br at 10 ("Plaintiffs are willing to limit the events for which they seek profit and loss statements to those acquired from Varsity's competitors, including JAMFest/Live, Spirit Celebration Grand Championship, and Spirit Celebration Challenge, as well as Varsity's Summit and the D2 Summit Competitions.") The

Federal Rules of Civil Procedure do not permit such duplicative discovery.  Fed. R. Civ. Pro. 26(b)(2)(C)(i) (requiring court to limit discovery that is "unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive").  Information about those events is already subsumed within the general ledger entries that Varsity produced.  And the documents they seek to compel would not even be responsive to Request 20 on its own terms.  Plaintiffs' motion as to Request 20 should be denied.

### B.     Request 56 Seeks Irrelevant Information And Is Not A Proper Document Request.

Plaintiffs' Request 56 is for "Documents identifying Varsity employees responsible for computing final scores for All Star Events after judges submit their score cards."  In other words, Plaintiffs seek to have Varsity reconstruct records for the thousands of events that have taken place since 2015 to determine the individuals who ran a computer program to tabulate scores.  Varsity informed Plaintiffs that they do not have this information in a document or group of documents and cannot be compelled to create such documents.  *See Harris v. Advance Am. Cash Advance Ctrs., Inc.*, 288 F.R.D. 170 (S.D. Ohio 2012) ("a [d]efendant is not required to create documents in response to [a] plaintiff's request for discovery").  What Plaintiffs would do with this information is unclear—a list of names of individuals responsible for "computing final scores for All Star Events after judges submit their score cards" would provide no evidence of anything.

In any event, Plaintiffs have provided no legitimate basis for this discovery.  Plaintiffs say that "[t]his Request is relevant to Plaintiffs' allegations that scoring at Varsity competitions is tied to All Star Teams' relationships with Varsity."  (Pls.' Br. at 10.)  Yet, when Varsity asked Plaintiffs to produce *any* evidence they had of such alleged scoring shenanigans, they outright refused, effectively admitting that they had no reasonable evidentiary support for those

scandalous allegations in their Complaint.  (Kaiser Decl. ¶¶ 10-11.)  They labelled Varsity's

request a "contention interrogatory" (*id.*), which of course is incorrect as a matter of law.  *See,*

*e.g., U.S. v. Merck-Medco Managed Care, LLC*, No. 00 CV 737, 2005 WL 1971885 (E.D. Pa.

Aug. 15, 2005) (holding that interrogatories that sought "information that formed the basis for

the allegations made in Plaintiffs' Complaint … do not constitute contention interrogatories");

*see also Clark v. Hercules Inc.*, No. 13-cv-794, 2017 WL 3316311, *10 (M.D. Fla. Aug. 3, 2017)

(ordering plaintiff to serve interrogatory response providing factual basis for allegations in

complaint).  When pressed, Plaintiffs pointed to a court opinion in a 2010 case not involving All

Star cheerleading, where testimony by Varsity's founder was summarily characterized as saying

that Varsity's innovations in apparel had helped teams do better in collegiate competitions (which

are distinct from the All Star market at issue in this case).  (Kaiser Decl. ¶ 12.)  Stating the

obvious, "doing better" does not suggest anything untoward and certainly does not provide a

basis to require Varsity to generate new documents for Plaintiffs.

        Given Plaintiffs can provide nothing to support their spurious allegation, they should not

be rewarded with further burdensome discovery.  Plaintiffs have had the better part of a year to

identify any competitions where scoring was affected by, in their words, "All Star Teams'

relationships with Varsity."  (Pls.' Br. at 10.)  Indeed they should have done this *prior* to filing

their Complaint, they should not have thrown in an unsubstantiated allegation in the Complaint

in the hope that discovery would reveal something to support it.  *See, e.g.*, Fed. R. Civ. Pro. 11(b)

(requiring that any "pleading, written motion, or other paper" is based on an "inquiry reasonable

under the circumstances" and that the "factual contentions [contained therein] have reasonable

evidentiary support or will likely have [such] support").  That Plaintiffs still cannot do so

demonstrates that the request—even limited to a "small number of competitions"—seeks

irrelevant information.  Moreover, to the extent Plaintiffs mean to extend the request to all of the thousands of competitions that Varsity has conducted from 2015, it would also be unduly burdensome, requiring Varsity to somehow reconstruct staffing information from those thousands of competitions.  Plaintiffs' request should be denied.

### C.   Plaintiffs' Demand for Venue Agreements is Unnecessary and Disproportionate

Plaintiffs similarly cannot justify their request for "[d]ocuments sufficient to show all entities that You partner with for Event ticket sales, including the years for which You partnered with those entities, as well as all documents relating to financial arrangements between You and such entities."  In their motion, Plaintiffs have slimmed down this request to just "agreements with its ticket vendors."  (Pls.' Br. at 11.)  But, as Varsity has told Plaintiffs, these agreements with vendors at all of the various venues in which it holds competitions are not maintained in one single repository and are not easily accessible.  There would be significant burden in tracking the agreements down, particularly back in time.  (Craft Decl. ¶ 16.)

Plaintiffs have provided no valid justification for imposing this burden.  They argue that ticket vendor agreements will somehow show "involve[ment] in Defendants' conspiracy" (Pls.' Br. at 11), but the only so-called conspiracy that Plaintiffs allege is as between USASF and Varsity.  There is nothing in the Complaint to suggest or imply an involvement of ticket sellers, nor is there any suggestion that the commercial agreement between Varsity and a ticket vendor could somehow provide evidence of such a conspiracy.  Plaintiffs cannot obtain discovery on the basis of a phantom conspiracy that is not alleged or even implied in their Complaint.

Plaintiffs' other argument is that they need the agreements to determine whether "title" to the tickets passed to the ticket vendor.  But, even assuming the issue is relevant, there are far more efficient ways to make this determination, for example by asking the question at a

11

deposition.  Varsity is certainly willing to work with Plaintiffs to develop this information, but there is no need to impose the burden inherent in locating venue agreements to do so.

### D.     The Parties Agreed About Varsity's Production in Respect of Requests 77 and 78

Plaintiffs' efforts to create a dispute about Requests 77 and 78 are both confusing and unnecessary.  After substantial negotiations, Plaintiffs agreed Request 77 and 78 would be satisfied if Varsity disclosed the amount of money that Varsity advanced on behalf of USASF.  Varsity had agreed to do this, only to be blindsided by Plaintiffs' motion to compel.  (Kaiser Decl. ¶ 13.)  The request should be denied on the basis of the parties' agreement if nothing else.  Moreover, as Varsity has made clear to Plaintiffs, it does not have a pre-existing document or discrete set of documents that could show the information requested.  (Craft Decl. ¶ 9.)  *See Harris*, 288 F.R.D. at 172 ("a [d]efendant is not required to create documents in response to [a] plaintiff's request for discovery").

In any event, even if Varsity had available the transaction-by-transaction information that Plaintiffs apparently seek, any further response would sweep in wholly irrelevant information and be disproportionate to the needs of the case.  Plaintiffs apparently seek to make some negative inference from Varsity's financial support of USASF.  Requiring Varsity to review years of financial information to determine "all monies paid by Varsity to USASF, including for each loan, gift, or payment of money, the terms of the loan, gift, or payment, what the loan, gift, or payment was used for, and, if applicable, USASF's repayment history" (RFP 77) and the same for payments "by USASF to Varsity" (RFP 78) would impose undue burden on Varsity and would add little or nothing of relevance to the record.  Among other things, as Plaintiffs are well aware, for many years Varsity has provided administrative and other "back office" service to USASF, including payroll services, and there have undoubtedly been many payments back and

forth (Craft Decl. ¶ 10), none of which have any relevance to this case.  There is no better evidence of what Plaintiffs *really* need for these requests than what they said would satisfy them prior to their motion—a simple description of the amount of money Varsity advanced to USASF before USASF began paying back that deficit.

The Court should deny Plaintiffs' motion to compel as to Requests 77 and 78 and instead have the parties implement their agreement whereby Varsity would provide the amount of money that it advanced to USASF before USASF began paying back the advancement.

### E.     Request 82 Seeks Salary Information That Plaintiffs Do Not Need

Plaintiffs obfuscate what they sought in Request 82, which is "documents sufficient to identify the USASF employees, by name and job title, who were paid by Varsity, and the amounts they were paid by Varsity, since 2003."  As with requests 77 and 78, Varsity has told Plaintiffs that it does not have a document or set of documents "sufficient to show" this information, but instead would have to pick through records to the extent available to develop partial information, which of course is not required to respond to document requests.  *See Harris*, 288 F.R.D. 170 (a "[d]efendant is not required to create documents in response to [a] plaintiff's request for discovery").  Varsity has also provided an interrogatory response on the identical issue, in which Varsity identified the most senior individuals at USASF that have been "paid" by Varsity (in the sense that Varsity processes USASF's payroll) as well as additional details.

Plaintiffs' only justification for this request is their allegations that USASF "has always been captive to Varsity," "with Varsity providing significant funding and controlling its board." (Pls.' Br. at 12.)[7]  But the request is not limited to board members, and the individual salaries of

---

[7] Contrary to Plaintiffs' suggestion, these allegations undermine their conspiracy claims, they do not support them.  (See ECF No. 81 at 18-19)

USASF employees is barely relevant to "providing significant funding," if it is relevant at all, particularly insofar as USASF reimburses Varsity for the payroll of USASF employees. (Craft Decl. ¶ 10.) In a last effort to justify the unjustifiable, Plaintiffs now say that it is the fact that "Varsity maintained payroll records for USASF employees showing the identities of those individuals, how much they were paid, and for how long" that is *itself* relevant (Pls. Br. at 12) (as opposed to what those records show). Even if that were a valid argument, and it is not, Plaintiffs can certain explore the issue in depositions.

Varsity offered as a compromise to provide the titles and salaries of the two most senior and significant USASF employees at issue and to provide an aggregate total of salary "paid" for USASF employees from 2015. Plaintiffs' only stated objection to this resolution was that it would not cover the 2012 to 2014 period. They were unable to articulate any particular relevance to the earlier period or explain why Varsity should be put to the burden of going further back in time. (Kaiser Decl. ¶¶ 14-15.) Now they apparently have abandoned those discussions and ask this Court to compel the production of nearly two decades worth of private salary data.

The Court should recognize this request for what it is—pure harassment of Varsity—and deny Plaintiffs' motion to compel.

### F.     The Parties Agreed to Table Discussion of Requests 92 to 103

The parties agreed to put off further discussion of Requests 92 to 103, which seek documents related to "sexual misconduct." Varsity has moved to strike the related allegations from the complaint (see ECF No. 82) and the parties had agreed to put off further discussion of these requests and requests related to the topic that Varsity defensively issued to Plaintiffs, for at least 60 days. (*See* Kaiser Decl. ¶ 16, Ex. E.)[8]

---

[8] On May 4, the day before motions were due, Plaintiffs asked for a stipulation to extend that agreement until July 5. The proposed stipulation, however, also would let Plaintiffs off the hook

In any event, Plaintiffs' motion as to Requests 92 to 103 should be denied.  First, those requests seek information that is irrelevant to the parties' claims and defenses.  As Varsity explained in its motion to strike, Plaintiffs only added their abuse allegations in what is now their fourth complaint.  They reference an article in *USA Today* that discussed how gyms—*i.e.*, members of Plaintiffs' putative class—were allowed to be owned by, to be managed by, or to employ sex offenders.  (Compl. ¶¶ 238-239.)  But Plaintiffs' conclusory assertion that gyms' involvement with sex offenders was somehow due to Varsity's alleged "market share and lack of effective competition" is not supported by any factual allegation at all.  Nor could it support a claim under the antitrust laws, which require an injury in "business or property" to have standing.  15 U.S.C. § 15(a); *Reiter v. Sonotone Corp.*, 442 U.S. 330, 339 (1979) ("The phrase 'business or property' … would, for example, exclude personal injuries suffered.").[9]

This case is sufficiently sprawling as it is.  There is no reason to allow it to veer off in a scandalous direction that does not relate to Plaintiffs' alleged damages and indeed deals with the failures of the class that Plaintiffs seek to represent to not employ sexual predators.[10]

---

on the Court's May 5 deadline for submitting document discovery disputes, permitting Plaintiffs to "[move] to compel one or both Defendants to produce additional documents and data, employ additional search terms, review additional custodial files, and/or produce other forms of discovery related to potential disputes about requests that are not currently ripe for resolution, that are presently unknown to Plaintiffs, or should the documents and data that are produced by Defendants prove insufficiently responsive to the Varsity and USASF RFPs."  Plaintiffs refused to identify what additional issues (other than Plaintiffs' RFPs 98 to 111) would be subject to this proposed stipulation, which essentially would have eviscerated the Court's scheduling order. (Kaiser Decl. ¶¶ 20-21.)  *See also infra* Section V.

[9] Plaintiffs misrepresent the Court's position in suggesting that the Court has ruled that "discovery will not be stayed pending *such* motions."  (Pls.' Br. at 13 (emphasis added).)  The Court made that statement in respect of Defendants' request for a total stay of discovery in the case pending a motion to *dismiss*, not a motion to strike the specific allegations at issue.

[10] Plaintiffs label discovery of *Plaintiffs* on the topics of these requests as "not relevant to the claims or defenses in this litigation" (Kaiser Decl. ¶ 22, Ex. J (excerpt from Plaintiffs' document request responses)), but argue that the same discovery of Varsity is somehow relevant. Accordingly, if the Court is inclined to order any production in respect of Requests 92 to 103, it

**IV.       Plaintiffs Have Not Justified Their Demand for Additional Custodians**

Varsity has conducted extensive ESI searches of the files of fourteen custodians, which cover the range of Varsity's All-Star Cheerleading business.  Broad search terms were employed,[11] with the resulting hits reviewed for responsiveness and privilege.  These individuals, with their current or most recent relevant job titles are:

- Jeff Webb, founder and former Board Chairman and CEO of Varsity Brands;

- Bill Seely, President, Varsity Spirit (Varsity's division that includes cheerleading);

- John Newby, Executive Vice President, Varsity Brands;

- Tres Letard, former Vice President of Operations & Co-General Manager, All Star;

- Brian Elza, former Vice President & Co-General Manager, All Star;

- Landon Craft, Business Unit Controller, All Star, Varsity Spirit;

- Nicole Lauchaire, Senior Vice President, Corporate Communications (formerly Senior Vice President, Corporate Marketing & Communications, Varsity Spirit);

- Damianne Albee, Vice President of International Operations, National Sales Director – the Summit;

- Jackie Kennedy, Vice President, Marketing & Communications;

- Craig Davis, Vice President, Brand Performance & Experience (formerly Vice President of Business Systems Development);

- Buffy Duhon, Vice President, Business Projects & Brand Operations (formerly Senior Vice President & General Manager National Cheerleaders Associations & National Dance Alliance);

- Leslie Wright, former Vice President, General Manager, Varsity All-Star Fashion;

- Stacy Rowe, former Vice President, Premier Athletics; and

- Cole Stott, former General Manager, Varsity Knoxville.

---

should likewise compel Plaintiffs to produce documents in response to Defendants' Requests 64 to 70.

[11] The complete list of search terms are in Appendix A.

Plaintiffs initially demanded Varsity add 41 additional custodians, a wildly disproportionate demand that they eventually dropped. Toward the end of the meet and confer process, Plaintiffs sought to leverage their original demand by implying that if Varsity did not agree to add four additional custodians, they would move to compel others beyond the two on which they ultimately moved. (Kaiser Decl. 17.) Varsity succumbed to that demand and agreed to add these four additional custodians:

- John Nichols, former Executive Vice President-General Manager;
- Pash Nangia, former Senior Vice President, Chief Financial Officer;
- Brian Carroll, Executive Vice President, Varsity Spirit Fashion; and
- Daniel Kessler, Vice President, Domestic/International Sales Development.

As is evident, the custodians provide essentially blanket coverage of the relevant aspects of Varsity's All Star cheerleading competition and apparel businesses and Plaintiffs' allegations about those businesses, which involve Varsity's rebate programs, its relationship with USASF, its All Star cheerleading competitions and apparel, and its acquisitions.

Plaintiffs nevertheless seek production from the custodial files of two additional custodians beyond the 18 custodians from which Varsity has agreed to produce, even though the direct supervisors of both proposed custodians are already included in Varsity's agreed production and there is no basis to believe that the proposed custodians have unique documents. These two custodians *were not even included* on Plaintiffs' original list of 41.

In any event, there is no basis to conclude that these additional lower-level employees would have relevant information that would not be duplicative or cumulative, or justify the burden that reviewing their documents would place on Varsity. This is not a case of some secret "conspiracy" where lower-level employees like these custodians acted out of sight of their supervisors to fix prices with competitors. Rather, this case involves high-level decisions and

corporate practices of Varsity's cheerleading business relating to acquisitions, rebate programs, and its relationship with the USASF.  Neither of these individuals were specifically involved in those decisions or with USASF.  (Seely Decl. ¶ 5.)  Discovery into the lower depths of Varsity's organization is not warranted.

As to the two custodians in particular, Plaintiffs note that Jamie Parrish worked in public relations for Varsity.  But one of the other custodians is Nicole Lauchaire, who was Varsity's *director* of public relations and Mr. Parrish's supervisor.  (Seely Decl. ¶ 3.)  Otherwise, Plaintiffs postulate that Mr. Parrish "has direct knowledge of event scoring, decisions regarding scoring and judging, and any allegations that Varsity favors its own choreography/props/uniforms in routines at All Star Competitions."  In other words, Plaintiffs speculate that he might be able to support these unfounded allegations, which, as discussed above in respect of Request 57, Plaintiffs put forward in their Complaint with no factual basis whatsoever.  Plaintiffs can certainly seek to depose Mr. Parrish as to his "direct knowledge."  But Plaintiffs should not be allowed to use made-up allegations to further burden Varsity with additional document production.  To the extent there was some secret scoring plan, evidence of it would be found in the documents of the other 18 custodians.

Plaintiffs' other proposed custodian—James Hill—similarly is duplicative and cumulative to Varsity's existing custodians.  Mr. Hill was a lower-level employee who reported to Brian Elza. (Seely Decl. ¶ 4.)  Brian Elza is already a custodian along with the other senior leaders of Varsity's cheerleading business, past and present, including Jeff Webb, Bill Seely, John Newby, and John Nichols.  (Seely Decl. 5.)  Plaintiffs speculate that Mr. Hill "likely has direct knowledge of any anticompetitive behavior by Varsity or decisions made by Varsity regarding potential competitors in the Relevant Markets" but such speculation is if anything a justification

for a deposition, not for a massive review of his custodial files where such reviews are already being undertaken as to 18 other custodians who have far more direct and extensive knowledge of the allegations in Plaintiffs' complaint.

Lacking any substantive reasons to support their request, Plaintiffs' argument essentially boils down to the assertion that Varsity in principle can afford to do it.  (*See* Pls.' Br. at 16.)  That is makeweight.  Varsity does not have unlimited resources.  To the contrary, it has been facing the existential threat of Covid-19, which has decimated its revenues and left it on the edge of insolvency.  Regardless, requiring it to spend of hundreds of thousands of dollars more on top of the more than $4 million it has already spent on discovery in this case alone (*see* Kaiser Decl. ¶ 2) to satisfy Plaintiffs' insatiable desire for cumulative discovery is unwarranted and would place an undue burden on Varsity.  Adding two additional custodians can be expected to, at a minimum, add many hundreds of thousands of dollars to those costs.  (Kaiser Decl. ¶ 18.)

## V.  Plaintiffs' Attempted Reservation of Rights Violates the Court's Scheduling Order to Bring Disputes to the Court by May 5, 2021

Plaintiffs improperly attempt to "reserve rights" to bring further motions "to compel Varsity to produce additional documents and data, employ additional search terms, review additional custodial files, and/or produce other forms of discovery related to requests that are not currently ripe for resolution, or materials that are presently unknown to Plaintiffs, or should the documents and data that are produced by Varsity prove insufficiently responsive to the Varsity Requests for Production" (Pls.' Br. at 17).  But on March 31, 2021, in response to an agreed motion, the Court ordered that "[t]he deadline for submission of disputes to the Court concerning any areas of dispute regarding documents and data to be produced in response to the Parties' First Sets of Requests for Production is now *May 5, 2021*."  (ECF No. 101 (emphasis added).)  The purpose of this Order was to bring finality to the document production process and to ensure

compliance with the Court's overall discovery cutoff of February 22, 2022.

Plaintiffs cannot avoid the Court's order, particularly as to issues that supposedly are not "ripe for resolution," or "should the documents and data" that Varsity has agreed to produce (or otherwise produces) "prove insufficiently responsive" (whatever that means). The parties had an obligation to bring the disputes to the Court by May 5. Varsity expended dozens of hours discussing and explaining the scope of its production to Plaintiffs, and many more hours preparing correspondence on these subjects, all with the understanding that, as the Court Order states, the process would culminate on May 5. Varsity has made many concessions to Plaintiffs in reliance on the finality of its negotiations. If Plaintiffs had or have any other issues with the scope of what Varsity has committed to produce, they were obligated to bring them to the Court's attention on May 5 as the Court's Order required. They cannot simply ignore the Order. [12]

Ultimately, Plaintiffs' reservation is an empty gesture, but, for the avoidance of doubt, should Plaintiffs seek to bring further motions to compel that could have been brought on May 5, Varsity will object to such motions as untimely under the Court's scheduling orders. [13]

---

[12] Relatedly, Plaintiffs misrepresent a discussion with Varsity relating to a dispute with a former employee. (*See* Pls.' Br. at 10 n.8.) At the last minute in the negotiations, Plaintiffs sought to inject this case into the process. Contrary to what Plaintiffs tell the Court, Varsity did not commit to produce any additional documents relating to this case. Varsity merely stated it would not hold back materials that it had otherwise agreed to produce should they overlap with what was referenced in the complaint in the other case.

[13] Of course, to the extent that something comes up in the documents or at depositions that leads to some specific and concrete issue that was not as of May 5 reasonably knowable or known, Varsity will discuss with Plaintiffs what, if anything, might be appropriate in terms of limited additional discovery.

## CONCLUSION

Varsity respectfully requests that the Court deny Plaintiffs' motion to compel in its

entirety.

Dated: May 19, 2021                        Respectfully submitted,

                                           /s Matthew S. Mulqueen
                                           _____

                                           George S. Cary*
                                           Mark W. Nelson*
                                           Alexis Collins*
                                           Steven J. Kaiser*
                                           CLEARY GOTTLIEB STEEN & HAMILTON
                                           LLP
                                           2112 Pennsylvania Avenue, NW
                                           Washington, DC 20037
                                           Phone: (202) 974-1500
                                           Fax: (202) 974-1999
                                           gcary@cgsh.com
                                           mnelson@cgsh.com
                                           alcollins@cgsh.com
                                           skaiser@cgsh.com

                                           * Admitted *pro hac vice*

                                           Matthew S. Mulqueen (TN #28418)
                                           Adam S. Baldridge (TN #23488)
                                           BAKER, DONELSON, BEARMAN,
                                           CALDWELL & BERKOWITZ
                                           165 Madison Avenue, Suite 2000
                                           Memphis, TN 38103
                                           Phone: (901) 526-2000
                                           Fax: (901) 577-0866
                                           mmulqueen@bakerdonelson.com
                                           abaldridge@bakerdonelson.com

                                           *Attorneys for Defendants Varsity Brands, LLC,*
                                           *Varsity Spirit, LLC, and Varsity Spirit*
                                           *Fashions & Supplies, LLC*