## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| FUSION ELITE ALL STARS, SPIRIT FACTOR LLC d/b/a FUEL ATHLETICS, and STARS AND STRIPES GYMNASTICS ACADEMY INC. d/b/a STARS AND STRIPES KIDS ACTIVITY CENTER, on behalf of themselves and all others similarly situated<br><br>   Plaintiffs,<br> v.<br><br>VARSITY BRANDS, LLC, VARSITY SPIRIT, LLC, VARSITY SPIRIT FASHION & SUPPLIES, LLC, and U.S. ALL STAR FEDERATION, INC.,<br><br>   Defendants. | **Civ. Action No. 2:20-cv-02600-SHL-cgc**<br><br><br>**JURY TRIAL DEMANDED** |

## U.S. ALL STAR FEDERATION, INC.'S RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL DISCOVERY RESPONSES

Defendant U.S. All Star Federation, Inc. ("USASF") submits this response opposing the relief sought in Plaintiffs' Motion to Compel Discovery Responses from USASF (ECF No. 102) and Memorandum of Law in Support of Plaintiffs' Motion to Compel Discovery Responses from USASF (ECF No. 102-1).

## **BACKGROUND**

In October 2020, Plaintiffs served 117 broad requests for production on USASF.  USASF provided detailed responses setting forth its objections to these requests, whether it had documents responsive to these requests, and stating the production it would make.  Among other things, USASF committed to gathering documents from the five individuals who, during the relevant time period, served as USASF's President, Vice President of Events & Corporate Alliances, Vice President of Membership, Executive Director of Communications, and Executive Director of Rules.  (First Berkowitz Decl. ¶ 3, ECF No. 104-1).  USASF also identified numerous categories of documents which it intended to manually collect, regardless of custodian, and agreed to search documents going back to January 1, 2015—well before the damages period applicable to this case. (First Berkowitz Decl. ¶ 5).

To date, USASF has diligently reviewed thousands of documents, including manually collecting nearly <u>one thousand</u> documents for review.  USASF has produced over 20,000 pages of documents, including its financial statements, various iterations of rules and policies, and correspondence to, from, and about Varsity and its affiliates.  USASF has spent tens of thousands of dollars on discovery alone.  Although Plaintiffs did not contact USASF's counsel about USASF's responses to these document requests for nearly a month after they were served, since that time, the parties have conducted at least 19 separate conference calls spanning approximately 30 hours, not including preparation, follow-up, and written correspondence regarding these issues,

and not including conference calls between Varsity and Plaintiffs.  (Second Berkowitz Decl. ¶ 3, attached hereto as <u>Exhibit A</u>).  During this process, USASF made numerous compromises, agreeing to produce certain categories of documents dating back to 2003 and manually collecting additional categories of documents.  Nevertheless, Plaintiffs continue to insist that USASF undertake additional massive document collection and review efforts, which would potentially involve the collection of up to 1874.48 GB of additional data, the processing of over 1,500 search term variations, and the review of an estimated 1.5 million additional documents.  (*See* First Berkowitz Decl. ¶¶ 7-10).  Even after USASF explained to Plaintiffs the enormous financial burden with their demands, Plaintiffs refused to reduce the scope of their search proposal to a level proportionate with the needs of the case.  (*See* First Berkowitz Decl. ¶¶ 12-16).

The burden which Plaintiffs seek to impose on USASF would cripple this non-profit entity and is likely to devastate the cheerleading industry, which includes members of the very class of people Plaintiffs seek to represent.  Plaintiffs' requests and search proposals are substantially overbroad and, rather than advancing the case, appear to be designed to financially wreck USASF.  These types of abusive litigation tactics should not be rewarded.  Plaintiffs' Motion to Compel should be denied in its entirety.

**LAW AND ARGUMENT**

## I.  Legal Standard Under Rule 37.

Under Rule 37, a party seeking discovery may move for an order compelling production of documents if the opposing party fails to produce documents or fails to permit an inspection as requested under Rule 34.  Fed. R. Civ. P. 37(a)(3)(B)(iv).  "The party seeking discovery is obliged to demonstrate relevance."  *Johnson v. CoreCivic, Inc.*, 2019 WL 5089086, at *2 (W.D. Tenn. Oct. 10, 2019).  Further, the discovery sought must be proportional to the needs of the case.  Fed. R.

Civ. P. 26(b)(1). As this Court has previously acknowledged, "[d]eterminations as to proportionality are subject to change with the circumstances of the case." *Raymond James & Assocs., Inc. v. 50 North Front St. TN, LLC*, 2020 WL 1527827, at *2 (W.D. Tenn. Mar. 30, 2020) (quoting *Nat.-Immunogenics Corp. v. Newport Trial Grp.*, 2019 WL 3110021, at *7 (C.D. Cal. Mar. 19, 2019)). "This is in part because '[c]onsiderations of proportionality can include reviewing whether discovery production has reached a point of diminishing returns." *Id.* (quoting *Abbott v. Wyoming Cty. Sheriff's Office*, 2017 WL 2115381, at *2 (W.D.N.Y. May 16, 2017). Thus, "[w]hen the 'marginal utility' of further document production is low, Rule 26's proportionality principle commands that courts should take steps to limit discovery." *Id.* (quoting *Alaska Elec. Pension Fund v. Bank of Am. Corp.*, 2016 WL 6779901, at *3 (S.D.N.Y. Nov. 16, 2016)).

## II.    Plaintiffs Are Not Entitled to the Discovery Sought in Their Requests for Production.

### Request No. 10

This Request broadly calls for "[a]ll documents reflecting or relating to" USASF's "programs, initiatives, rules and policies." USASF has objected on the grounds that the terms "programs" and "initiatives" are too vague for the parameters of this Request to be reasonably ascertainable. Plaintiffs do not address this objection anywhere in their Motion to Compel or Memorandum in Support. (*See* Pl. Mot. to Compel, ECF No. 102, Pl. Mem., ECF No. 102-1).

Rule 34(b) of the Federal Rules of Civil Procedure requires that the party issuing a request for production describe the documents or things requested with "reasonable particularity." Fed. R. Civ. P. 34(b). "To determine if a request fails for reasonable particularity, district courts within the Sixth Circuit consider 'whether the request places the party upon reasonable notice of what is called for and what is not.'" *Avanos Med. Sales, LLC v. Medtronic Sofamor Danek USA, Inc.*, 2021 WL 848177, at *7 (W.D. Tenn. Mar. 5, 2021) (quoting *Pan v. Kohl's Dep't Stores, Inc.*, 2015 WL 4346218, at *2 (S.D. Ohio July 15, 2015)).

3

This test is not met here. Although USASF has repeatedly asked Plaintiffs to provide more specific definitions and/or categories of "programs" and "initiatives," Plaintiffs essentially responded that these terms should include whatever USASF thinks they include. Thus, rather than putting USASF on reasonable notice of what categories of documents Plaintiffs are requesting, Plaintiffs have instead shifted the onus to USASF to determine, at its own risk and peril, the parameters of Request No. 10. That is simply not how requests for production work under Rule 34.

Moreover, other courts have found that similarly nonspecific requests in antitrust cases are impermissibly broad. *See, e.g., Richland Wholesale Liquors, Inc. v. Joseph E. Seagram & Sons, Inc.*, 40 F.R.D. 480, 481 (D.S.C. 1966) (holding that request for all "financial statements and records" was impermissibly broad because "that designation would seem to embrace every paper from sales stubs on a spike through the annual report"); *Haleiwa Theatre Co. v. Forman*, 37 F.R.D. 62, 68 (D. Haw. 1965) (holding that request for "all correspondence" with certain parties during 4-year period was impermissibly broad "without limiting the same as to subject matter"); *International Commodities Corp. v. International Ore & Fertilizer Corp.*, 30 F.R.D. 58, 61 (S.D.N.Y. 1961) (holding that requests in antitrust action that effectively "seem[ed] to call for virtually all papers of [defendant] and its allied subsidiaries" were impermissibly broad). Indeed, given that USASF's entire operation relates to "programs, initiatives, rules and policies," Request No. 10, on its face, seeks every document in USASF's possession, custody, or control.[1]

---

[1] The Parties are continuing to confer regarding Request No. 10, but at present, Plaintiffs are continuing to demand "all documents" relating to twelve wide-ranging categories of programming offered by USASF, without providing any explanation as to why they believe these materials are relevant to this litigation.

Request No. 10 is impermissibly overbroad as it is currently phrased and USASF cannot reasonably ascertain what categories of documents are requested.  Accordingly, Plaintiffs' Motion to Compel as to Request No. 10 should be denied.

**Request No. 11**

This Request seeks "[d]ocuments sufficient to identify all current and historical partner and affiliate members, corporate sponsors, and/or official partners, including financial and other requirements to become an affiliate member."  USASF has objected that Request No. 11 is not properly limited in time, seeks information which has no relevance to any party's claims or defenses, and is thus not proportional to the needs of this case.  Further, compliance with Request No. 11 would violate confidentiality provisions of USASF's agreements with certain entities in the categories listed by Plaintiffs.

As an initial matter, Plaintiffs have failed to demonstrate the relevance of any of the requested discovery beyond the parties' agreed-upon time period beginning January 1, 2015.  This time period includes the entire four-year damages period applicable to Plaintiffs' claims and, generously, an additional nearly eighteen months prior to that four-year window.  (*See* First Berkowitz Decl. ¶ 5).  While the bar for relevance is low, it is not nonexistent, and Plaintiffs' must demonstrate the relevance of their requested discovery.  *See Johnson*, 2019 WL 5089086, at *2.

More specifically, in the context of a Rule 37 motion to compel, "[i]n order to compel the production of documents, the requesting party must first demonstrate the relevance of the documents if it is not self-evident from the request." *Tequila Centinela, S.A. de C.V. v. Bacardi & Co., Ltd.*, 242 F.R.D. 1, 9 (D.D.C. 2007) (citation omitted).  "'[I]t is proper to deny discovery of matter that is relevant only . . . that occurred before an applicable limitations period, unless the information sought is otherwise relevant to issues in the case.'"  *Lewis v. ACB Business Servs., Inc.*, 135 F.3d 389, 402 (6th Cir. 1998) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340,

352 (1978)).  Any documents generated prior to January 1, 2015 would necessarily relate to conduct that is not actionable under the statute of limitations and, therefore, are not relevant or discoverable.

Further, the limits of Rule 26(b) are identified "through increased reliance on the commonsense concept of proportionality."  *International Aerospace Grp. Corp. v. Evans Meridians Ltd.*, 2017 WL 1927957, at *1 (S.D. Fla. May 10, 2017) (quoting *In re: Takata Airbag Prod. Liab. Litig.*, 2016 WL 1460143, at *2 (S.D. Fla. Mar. 1, 2016)).  Thus, "[t]o satisfy the discoverability standard, the information sought must have more than minimal relevance to the claims or defenses."  *Doe v. Ohio State Univ.*, 2018 WL 1373868, at *2 (S.D. Ohio Mar. 19, 2018).  "Information that is 'negligibly relevant [or] minimally important in resolving the issues' does not satisfy the standard."  *Id.* (quoting *VHT, Inc. v. Zillow Grp., Inc.*, No. C15-1096JLR, 2016 WL 7077235, at *1 (W.D. Wash. Sept. 8, 2016)) (alternations in *Doe*).

In connection with seeking "Documents sufficient to identify all current and historical partner and affiliate members, corporate sponsors, and/or official partners," Plaintiffs also shoehorn an unrelated request for "financial and other requirements to become an affiliate member."  Plaintiffs make no effort to argue that this portion of Request No. 11 has any relevance to their claims, and thus, do not move to compel on this portion of Request No. 11.

Plaintiffs, instead, focus on the purported relevance of the "identities" of USASF's affiliates, corporate sponsors, etc., claiming that this information is relevant to whether USASF treats Varsity and Varsity-affiliated entities more favorably than other entities in the Relevant Market.  (Pl. Mem., pp. 6-7, ECF No. 102-1).  It is not clear how the identities themselves provide any insight into "whether USASF treats Varsity-affiliated entities or entities who aid Varsity in maintaining its dominance more favorably than other entities operating in the Relevant Markets."

6

(*See id.*, p. 7).  Moreover, as Plaintiffs could easily discern from the public available reports on USASF's website, "sponsorship" revenue comprises a very small percentage of USASF's total revenue, for example, totaling only 5.2% of USASF's revenue in 2017.  (*See, e.g.*, USASF 2017 Annual Report, attached as <u>Exhibit B</u>).  Plaintiffs can hardly say with any sincerity that USASF's sponsors and corporate partners carry any meaningful "influence over USASF."

Further, as Plaintiffs note, USASF's website has an entire section entitled "Current Members," from which Plaintiffs can obtain the identities of  USASF's current affiliate members.  (*See* ECF No. 102-1, Exhibit 6).  Thus, any further documentation identifying USASF's affiliates and sponsors is of limited relevance.

Finally, USASF has confidentiality agreements with several of its current and former affiliates and sponsors, which preclude it from disclosing information regarding its agreements with them absent a court order.   USASF cannot comply with these obligations merely by designating these materials under the Protective Order.   While USASF does not believe the identities of any of its current or historical affiliates and sponsors has any relevance to this litigation, USASF will comply with any court order which requires it to disclose this information.

### **Request Nos. 82 and 83**

These Requests broadly seek "[d]ocuments sufficient to show all monies paid . . . and all loans, gifts, or payments made" by Varsity to USASF and vice versa, "including for each . . . the terms of the loan, gift, or payment, what the loan, gift, or payment was used for, and, if applicable, [the recipient's] repayment history."  USASF has objected to these Requests as not properly limited in time and to the extent that they seek privileged and/or confidential information.  Further, although USASF initially sought to identify documents responsive to this Request via ESI searching, it ultimately determined that these documents could not be located with an ESI search, in large part because USASF does not have a document or discrete set of documents that could

7

show the information requested.  *See Harris v. Advance America Cash Advance Centers, Inc.*, 288 F.R.D. 170 (S.D. Ohio 2012) ("a [d]efendant is not required to create documents in response to [a] plaintiff's request for discovery").

Plaintiffs also incorrectly state that USASF "declines to produce the requested information, without providing any specifics regarding the burden associated with doing so."  (Pl. Mem., p. 8). Contrary to Plaintiffs' assertion, USASF explained during the meet-and-confer process that the transaction-by-transaction information they are seeking does not exist and is not in USASF's possession, custody, or control and, moreover, even if USASF could obtain such records that it would be unduly burdensome to review years of financial records to identify (with no guarantee of accuracy) each payment made by or to Varsity.

Further, this information is of minimal (if any) relevance.  It is no secret that for many years Varsity has provided administrative and other "back office" services to USASF, including payroll services, and there have undoubtedly been many payments back and forth (*see* Craft Decl. ¶ 10, ECF No. 114), none of which have any relevance to this case.  Similarly, various Varsity-related gyms, event producers, and coaches have undoubtedly paid membership fees to USASF (just like every other USASF member).  There is no reason why Plaintiffs require a detailed accounting of every single transaction.  Requiring USASF to generate an accounting of each and every payment between it and Varsity, including the terms and purpose(s) of every single payment, would require immense time and resources from USASF and is clearly not proportional to the needs of this case. Because USASF itself does not possess these financial records, it is not even clear if USASF could create this type of accounting, and in any event, its accuracy would be dubious.

The only evidence which Plaintiffs could possibly need—and which Varsity has previously agreed to produce (*see* Varsity Resp., p. 12, ECF No. 111)—is a simple description of the amount

of money Varsity advanced to USASF before USASF began paying back that deficit.  Given that this money has been repaid to Varsity, however, it is still not clear how this information has any relevance to Plaintiffs' claims.  Regardless, anything else sought by Request Nos. 82 and 83 is irrelevant and disproportional to the needs of the case.

### Request No. 87

This Request calls for "[d]ocuments sufficient to identify the USASF Staff, Employees and directors, by name and job title, who were paid by Varsity, and the amounts that were paid by Varsity, since 2003."  While there are numerous issues with this Request, perhaps most critically is that USASF does not have any document or set of documents "sufficient to show" this information.  As the request itself demonstrates, these payroll records are in Varsity's, not USASF's possession.  (*See* Varsity Resp., pp. 13-14, ECF No. 111).

Plaintiffs have suggested that USASF could obtain this information by asking each current and former USASF employee to dig through years of their tax records to locate the W-2s issued by Varsity.  Aside from the fact that this endeavor would be extremely burdensome for these individuals and would involve USASF requesting personal financial information from persons who no longer work for USASF, these individuals have no obligation to provide their personal tax and payroll documents to USASF.  These documents are simply not in USASF's possession, custody, or control.

Further, these payroll documents are not relevant.  Plaintiffs claim that this information is relevant because "Varsity controlled USASF and provided itself with opportunities to collude with USASF by employing USASF's employees and paying their salaries."  (Pl. Mem., p. 8, ECF No. 102-1).  But this argument ignores that USASF proceeds were used to reimburse Varsity for these payroll expenses, as stated in USASF's interrogatory responses.  It is not clear how Varsity's assistance with USASF's payroll processes, for which USASF reimbursed Varsity, could have any

relevance to this matter. In any event, given that USASF lacks any particular document or set of documents which could show the requested information, it is more appropriate for Plaintiffs to explore this issue in depositions. Plaintiffs' Motion to Compel should be denied.

**Request Nos. 98 through 111**

These fourteen (14) separate Requests broadly seek documents relating to USASF's background check process, sexual misconduct prevention and response policies, and responses to allegations of sexual misconduct by or against USASF members or anyone associated with a USASF-sanctioned event. The Parties had previously agreed to put off further discussion on these Requests for at least 60 days, in light of Defendants' motion to strike Plaintiffs' allegations relating to "sexual misconduct" from the Complaint. (*See* ECF No. 82; Second Berkowitz Decl. ¶¶ 4-5).[2]

In any event, Plaintiffs' Motion to Compel as to Request Nos. 98 to 111 should be denied. As explained in Defendants' motion to strike, Plaintiffs only added their abuse allegations in what is now their fourth complaint. Plaintiffs added a passing reference to an article in *USA Today* that discussed how gyms—*i.e.*, members of Plaintiffs' putative class—were allowed to be owned by, to be managed by, or to employ sex offenders. (Compl. ¶¶ 238-239). Plaintiffs now make the conclusory assertion that USASF failed to "strengthen the standards" for sexual misconduct screening and prevention because Varsity did not "face[] greater competition." (Pl. Mem., p. 8, ECF No. 102-1). Not only have Plaintiffs failed to posit any factual allegation supporting this

---

[2] In the days before motions were due, Plaintiffs indicated that they desired a broader stipulation, which would let Plaintiffs off the hook on the Court's May 5 deadline for submitting document discovery disputes, permitting Plaintiffs to "[move] to compel one or both Defendants to produce additional documents and data, employ additional search terms, review additional custodial files, and/or produce other forms of discovery related to potential disputes about requests that are not currently ripe for resolution, that are presently unknown to Plaintiffs, or should the documents and data that are produced by Defendants prove insufficiently responsive to the Varsity and USASF RFPs." Plaintiffs refused to identify what additional issues (other than Plaintiffs' RFPs 98 to 111) would be subject to this proposed stipulation, which essentially would have eviscerated the Court's scheduling order. (Second Berkowitz Decl. ¶ 6).

bald conjecture, but even if true, this is not an actionable antitrust injury. *See* 15 U.S.C. § 15(a) (providing a right of action only to a person who is "injured in his business or property"); *Reiter v. Sonotone Corp.*, 442 U.S. 330, 339 (1979) ("The phrase 'business or property' … would, for example, exclude personal injuries suffered.").

Further, "the Court has the duty to deny discovery directed to matters not legitimately within the scope of Rule 26, and to use its broad discretionary power to protect a party or person from harassment or oppression that may result even from a facially appropriate discovery request." *Teal v. Coffee Cnty. Bank*, 2013 WL 12043474, at *1 (E.D. Tenn. Nov. 13, 2013). Thus, where a litigant seeks discovery "regarding alleged sexual misconduct completely unconnected with th[e] commercial dispute," and "[t]he sexual inquiries appear[] to have no purpose apart from litigation *in terrorem* . . . the district court [does] not abuse its discretion by prohibiting them." *Medison Am., Inc. v. Preferred Med. Sys., LLC*, 357 F. App'x 656, 660 (6th Cir. 2009).

Given that the allegations of sexual misconduct are, at most, tangentially related to Plaintiffs' antitrust claims, there is no reason to permit Plaintiffs to proceed with these types of harassing requests. The unfettered discovery sought by Plaintiffs relates to highly private and incredibly traumatic experiences for any victim whose report of sexual misconduct may be exposed, particularly given that such victims may be minor children. Thus, even if some identifying information could be redacted, disclosure of any kind is likely to chill the reporting of misconduct going forward. Accordingly, USASF respectfully urges this Court, for lack of relevance and in keeping with its duty to protect persons from harassment or oppression, to deny Plaintiffs the harassing discovery sought in Request Nos. 98 through 111.

III.    **Plaintiffs' ESI Proposal Is Not Proportional to the Needs of the Case, Unreasonably Cumulative, and Overly Burdensome and Expensive**

Under Rule 26(b) of the Federal Rules of Civil Procedure, parties may obtain discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense *and proportional to the needs of the case*." Fed. R. Civ. P. 26(b)(1) (emphasis added). The proportionality analysis considers: (1) the importance of the issues at stake in the action, (2) the amount in controversy, (3) the parties' relative access to relevant information, (4) the parties' resources, (5) the importance of the discovery in resolving the issues, and (6) whether the burden or expense of the proposed discovery outweighs its likely benefit. Fed. R. Civ. P. 26(b)(1).

### A. Plaintiffs Understate and Misrepresent the Results of Their Overly Broad and Budensome ESI Proposal.

As explained in great detail in USASF's Motion for Protective Order, which is incorporated herein by reference, USASF initially agreed to run approximately 35 search terms across the e-mail data of five key custodians (Jim Chadwick, Steve Peterson, Amy Clark, Alison Stangle, and Lynn Singer) and the Google drives of three of those key custodians (Jim Chadwick, Steve Peterson, and Amy Clark). This proposal generated approximately 20,000 documents for review, which USASF is in the process of reviewing and producing as appropriate. (First Berkowitz Decl. ¶ 6). To date, USASF has produced approximately 5,300 documents totaling 22,154 pages of documents. USASF has also manually collected roughly 1,000 documents, which it is continuing to review and produce as appropriate.

On the other hand, Plaintiffs' ESI proposal imposes an enormous burden on USASF, far beyond what is proportional to the needs of the case, particularly as applied to USASF. Although Plaintiffs have "modified" their original search proposal, even their modified ESI proposal is overly broad and disproportional to the needs of the case. Plaintiffs' summary of this modified proposal as well as their so-called "hit" report is grossly misleading and understates the expense

to USASF and the number of documents which USASF would be required to review under Plaintiffs' proposal.

Specifically, Plaintiffs' modified proposal contains nearly 200 search terms and an additional 148.46 GB of e-mail data from 10 new custodians. These 200 search terms, however, contain numerous modifiers, resulting in more than 1,500 search terms when all variations are counted.[3] This proposal—just as to the existing custodians and document repositories that USASF collected—would generate 351,225 documents to be reviewed for the time period January 1, 2012 to date of collection or 257,133 documents to be reviewed for the time period January 1, 2015 to date of collection. (*See* Hit Report for Plaintiffs' Modified Search Term Proposal, attached as Exhibit C).[4]

Once the data from these additional proposed custodians are collected at a cost of approximately $16,000 (not including their Google Drive data), USASF anticipates the total number of documents to be reviewed based on Plaintiffs' modified list of search terms will be approximately 414,012, the review of which is estimated to cost at least $1,250,000. (First Berkowitz Decl. ¶¶ 12-16). Further, this does not even include the additional burden imposed by Plaintiffs' "modified" proposal, which would require more than half of USASF's employees to collectively spend hundreds of hours manually collecting vast categories of documents and downloading hundreds, if not thousands, of individual files from their Google Drives, which would then need to be reviewed by counsel for privilege and responsiveness before production. In short,

---

[3] For example, Plaintiffs propose that USASF search the following: (business OR market* OR revenue OR sales OR profit* OR earnings OR "net income" OR annual* OR quarter* OR month* OR week* OR insurance) w/10 (model OR plan OR target OR objective OR goal OR focus OR strateg* OR scheme OR grow* OR grew). This search term alone contains 110 variations.

[4] For ease of reference, USASF is also sending the native Excel version of this exhibit to the Court by email.

the operational and financial burdens imposed on USASF by even Plaintiffs' modified ESI proposal are colossal.

Plaintiffs' contention that their modified ESI proposal would result in only 104,814 documents to be reviewed grossly understates the number of documents which USASF would be required to review under its proposal and is extremely misleading.  Despite the fact that USASF has explained to Plaintiffs how to read the hit report provided by USASF (which is not the report attached as Exhibit 3 to Plaintiffs' Motion, but rather is the report attached hereto as Exhibit C), Plaintiffs continue to misunderstand or mischaracterize the hit report provided by USASF.  As a threshold matter, the 104,814 number posited by Plaintiffs ignores the hundreds of thousands of additional hits and families that are expected to be generated from the additional custodians and repositories requested by Plaintiffs.  Further, this number only accounts for "unique" hits.  In other words, while there may only be 104,814 documents from the current collection set that hit on a single search term, there are an <u>additional</u> 246,407 documents which hit on <u>multiple</u> search terms, including their family members, which are not included in this number, for Plaintiffs' proposed time period back to 2012.

Thus, as has been explained to Plaintiffs on multiple occasions, the total number of documents to be reviewed based on their modified proposal (for the time period back to 2012) is actually expected to be 351,225 for the already collected custodians and repositories or at least 414,012 including the additional proposed custodians.  The cost associated with this additional collection and review is enormous.

Most recently, on May 5, 2021, before Plaintiffs' filed their Motion to Compel, USASF provided Plaintiffs with a list of 1,036 search terms (490 of which USASF proposed running back to 2012 and the remainder of which USASF proposed running back to 2015), which it proposed

running across the already collected custodians and repositories.  (USASF's May 5, 2021 ESI Proposal, attached as Exhibit D).  USASF undertook a thorough examination of Plaintiffs' search terms to generate this proposal, accepting many of the terms proposed by Plaintiffs and modifying others to generate a reasonable number of documents to be reviewed, consistent with USASF's Motion for Protective Order.  Nevertheless, Plaintiffs' unwillingness to compromise and insistence that USASF undertake the collection and review of a massive number of documents, likely to be cumulative or irrelevant to this case, only further underscores the harassing and abusive nature of Plaintiffs' requests and ESI proposal.  Plaintiffs' "modified" ESI proposal is not tailored to locate documents that are relevant to their claims, but rather is a sprawling fishing expedition designed to financially cripple USASF.

Further, in the interest of clarification, Plaintiffs egregiously misrepresent the number of documents generated from individual search terms that USASF would be obligated to review under Plaintiffs' "modified" ESI proposal.  For example, for the time period back to 2012, the search term "Rebel" generates 3,046 documents to be reviewed, not merely "70 additional hits."  (*See* Pl. Mem, p. 10, ECF No. 102-1).  While the term "Rebel" alone generates 79 unique hits + family members, the term "rebel*" is also included in over 100 other search terms (not including variations) proposed by Plaintiffs, so it is perhaps not surprising that (beyond these 79 documents) there are an additional 2,967 documents (including families) that hit on "Rebel" plus another search term. Given Plaintiffs' insistence on the relevance of this term, USASF's May 5 proposal suggests the search term "Rebel w/10 (booth* OR vendor* OR scandal* OR rebel* OR investigat* OR showcase* OR promot* OR merch* OR rebate* OR refund*)" which is designed to generate only those documents which are actually relevant to these issues and limit the number of extraneous hits.  (*See* Ex. D, line 7).

Plaintiffs also incorrectly state that USASF refuses to run the terms "kickback" or "kick*back," which are included in USASF's May 5 ESI Proposal. (*See* Ex. D, line 151). As to Plaintiffs' reference to the search terms "score," "rig," and "scandal," Plaintiffs have not suggested running any of these terms as standalone terms, so USASF could not have refused to do so. Nevertheless, the terms "scorebook," "scoresheet," "score sheet," "rig*," and "scandal" are included as part of numerous terms contained in USASF's most recent proposal. (*See, e.g.*, Ex. D, lines 174, 204, 220, 234, 240, 276, 279, 326, 335, 367, 381, 385, 402, 410, 536, 557, 603, 606, 711, 789, 816, 818, 834, 846, 847).

Further, Plaintiffs incorrectly state that the terms "All Star" and "Varsity" with their proposed modifiers generate only 28,000 hits. As can be clearly seen from Exhibit C, Plaintiffs' modified "All Star" term would generate 149,105 documents, including families, to be reviewed, and Plaintiffs' modified "Varsity" term would generate 101,039 documents, including families, to be reviewed.

Even these corrected figures include only the existing custodians and repositories from which USASF has already collected documents. If USASF is forced to expand its collection efforts to include the 10 additional custodians requested by Plaintiffs, the review set generated by these search terms is expected to be substantially greater, increasing the burden and expense to USASF.

**B. Plaintiffs' Custodian Proposal Is Similarly Overly Broad.**

Plaintiffs insist on the email accounts of Dana Fielding, Angela Bruno, Karen Wilson, Glenda Broderick, Robin Galik, Kinshasa Garrett, and Shauna Holm to the ESI parameters and manually searching for potentially hundreds or thousands of documents among the Google Drives

of these custodians and Alison Stangle and Lynn Singer.  (Pl. Mem., pp. 11-15).[5]  Plaintiffs have remained inflexible in this position, notwithstanding the immense financial and operational burdens it would place on USASF and its employees.  (*See* First Berkowitz Decl. ¶¶ 13-16, ECF No. 104-1).  Yet for all their obstinance, Plaintiffs cannot specify a single document or category of documents that would necessitate such voluminous discovery at this stage.[6]

Instead, Plaintiffs state only in the most general terms the sort of "relevant" or "responsive" documents that each custody is "likely" to have.  To be clear, USASF has already collected all documents which it believes are responsive to Plaintiffs' requests and can be located manually with reasonable effort.  As to Plaintiffs' request that USASF provide an "inventory" of documents contained in these custodians' Google Drives, this request is highly inappropriate and is merely a fishing expedition to that Plaintiffs can seek to obtain documents which are cumulative or not encompassed by Plaintiffs' requests.  For example, Plaintiffs submit that Lynn Singer's Google Drive "contains Word documents related to competition rules, meeting notes, and other various projects."  (Pl. Mem., p. 13).  But USASF is already in the process of collecting and producing all of its rules, changes to rules, board of director meeting minutes, and committee meeting minutes from the relevant time period.  These documents either came from Ms. Singer or are cumulative of those in her possession.  USASF is also running ESI searches across Ms. Singer's emails, which

---

[5] Prior to filing their Motion to Compel, Plaintiffs had also insisted on searching the email and Google Drives of Casey Winn, Aricka Gates, and USASF's SafeSport account.  They appear to have conceded that such efforts are not necessary.

[6] Bizarrely, Plaintiffs claim that "USASF does not genuinely dispute the relevance of the e-mails, documents, or data contained in the Custodial Accounts.  Nor does it argue that the Custodial Accounts are duplicative or that documents can be obtained from more readily accessible sources." (Pl. Mem., pp. 12-13).  To the contrary, USASF emphatically contends in its Motion for Protective Order that Plaintiffs' ESI proposal is unreasonably cumulative of documents already being provided by USASF and Varsity in this case and overly burdensome and should be limited under Rule 26(b)(2)(C).  (*See generally* Mot. for Protective Order, ECF No. 104).

are expected to capture responsive documents to the extent they were shared with any other person via email.

Similarly, Plaintiffs submit that Alison Stangle's Google Drive contains "a trove of relevant documents," and itemize various categories of rules, legality documents, safety documents, and athletic performance standards.  (*Id.*, p. 14).  Again, however, USASF is already in the process of collecting and producing these types of documents to the extent they are responsive to Plaintiffs' requests.  For example, USASF is producing each iteration of its Athletic Performance Standards, the IASF and USASF rules, the legality official court, Worlds results, and Worlds training for judges, among other things.  It does not make any sense for USASF to obtain largely duplicative or cumulative documents from Ms. Stangle, when it has already gathered these documents.  Moreover, USASF is performing ESI searches across Ms. Stangle's email, which should capture these documents to the extent they were shared by email.

To the extent Plaintiffs seek to have USASF manually scour Ms. Singer and Ms. Stangle's Google Drives for responsive documents, this is no different than having USASF perform an ESI search of those records, the cost of which would be exorbitant.  (*See generally* Motion for Protective Order, ECF No. 104 (discussing Plaintiffs' original ESI proposal).

The email and Google Drive data for the other custodians identified by Plaintiffs are also anticipated to be nearly entirely cumulative of those already collected or irrelevant to this litigation.  These additional custodians report to the five members of leadership that USASF has already identified as custodians to this litigation.  Any instructions to "favor" Varsity or systemic policies developed to assist Varsity in dominating the cheerleading industry (which do not exist) would necessarily involve USASF's leadership team.  Likewise, any relevant documents in their possession that were ultimately distributed to USASF members or that relate to membership,

credentialing, or safety (among other things) are likely also in the possession of USASF's leadership. The independent documents of lower-level USASF employees have little, if any, relevance to this litigation.

Indeed, Plaintiffs explicitly state that the documents they hope to obtain from Dana Fielding are cumulative of those they believe they would get from Ms. Stangle, as Ms. Fielding is only "likely to have many of the same types of relevant documents that Ms. Stangle." (Pl. Mem., p. 14, ECF No. 102-1). As to Angela Bruno, Plaintiffs speculate that she may have unspecified documents "directly relevant to Plaintiffs' allegations that USASF uses its credentialing process and membership requirements to help Varsity increase its share of the relevant market." (*Id.*, pp. 14-15). This ignores, however, that USASF has already agreed to produce various documents regarding its credentialing process and membership requirements, and that any documents possessed by Ms. Bruno on this subject are likely to be cumulative of those already being produced. Finally, as to Karen Wilson, Glenda Broderick, Robin Galik, Kinshasa Garrett, and Shauna Holm, Plaintiffs claim only in the most generic terms that they "likely . . . will have relevant documents in their files," which they speculate are "likely unique" and "will show the relationship between USASF and the Gyms and coaches." (*Id.*, p. 15). Again, as Plaintiffs recognize, these regional directors all report directly or indirectly to Amy Clark, who is an agreed upon custodian. Ms. Clark is heavily involved in all aspects of USASF's operations and is in regular communication with each of these proposed custodians. To the extent these persons have any materials which are relevant to this litigation, it is very likely that they would be captured through USASF's search of Ms. Clark's email and Google Drive data. Plaintiffs' suggestion that these persons might possibly have relevant documents that would not be captured by USASF's existing custodians and repositories is pure speculation.

In sum, Plaintiffs have very little idea, if any, what they expect or even hope to find from these custodians.  As USASF has explained to Plaintiffs, the vast majority of their documents are likely to be cumulative of those USASF has already agreed to collect and produce.[7]  USASF entertained Plaintiffs' requests for more information on these various custodians and provided further information regarding the roles and responsibilities of the other proposed custodians.  At some point, however, enough is enough.  USASF has no obligation to provide a detailed inventory of the Google Drives for each custodian proposed by Plaintiffs—which as explained above, have no independent relevance to this litigation.

This is the classic example of a party attempting to go on a "fishing expedition."  As the Sixth Circuit has recognized, "[a]lthough a plaintiff should not be denied access to information necessary to establish her claim, neither may a plaintiff be permitted 'to go fishing,' and a trial court retains discretion to determine that a discovery request is too broad and oppressive.'"  *Surles ex rel. Johnson v. Greyhound Lines, Inc.*, 474 F.3d 288, 305 (6th Cir.2007) (quoting *Marshall v. Westinghouse Elec. Corp.*, 576 F.2d 588, 592 (5th Cir.1978)).  This Court should avoid permitting the type of "oceanic fishing expedition[]"sought by Plaintiffs here.  *Myers v. Prudential Ins. Co. of Am.*, 581 F.Supp.2d 904, 913 (E.D. Tenn. 2008).

### C.  Plaintiffs Should Not Be Permitted to Obtain Documents Predating 2015.

Plaintiffs' attempt at a "fishing expedition" does not stop there.  Although USASF's proposed time period of January 1, 2015 through June 30, 2020, captures the entire damages period as well as nearly eighteen months prior, Plaintiffs now insist on expanding that temporal scope by

---

[7] To the extent documents are not exact duplicates and the metadata differs ever so slightly, they would not be de-duplicated by USASF's e-discovery platform.  Thus, although these documents may be cumulative in substance and nearly duplicative, Plaintiffs seek to have USASF to individually review each of these documents for virtually no additional benefit.

nearly 60% by pushing the start date back three years to January 1, 2012.  (Pl. Mem., p. 15-16).  Once again, however, Plaintiffs have little idea, if any, what additional discovery this increased timeframe will produce, merely speculating as to their relevance in general terms.  (*Id.*, p. 16).

The most specific (though still conjectural) point that Plaintiffs deign to make on this issue is that "[t]his Relevant Time Period is necessary to determine and show how USASF's operations changed as Varsity's market power increased," particularly following Varsity's acquisition of certain entities from 2015 through 2018.  (*Id.*).  Notably, the relevant events referenced by Plaintiffs took place from 2015 through 2018, all of which is already covered by the current temporal scope of discovery, and only one of which took place in the first year of that scope, 2015.  To the extent that "USASF's operations changed as Varsity's market power increased" (*id.*), Plaintiffs will just as likely be able to show that change with documents from January 1, 2015 through 2018 and up to June 30, 2020, as they would with documents from January 1, 2012 through December 31, 2014.

Further, Plaintiffs misleadingly rely on *Arrowpac* for the proposition that pre- and post-conspiracy discovery is "directly relevant."  However, the basis just put forth by Plaintiff for expanding discovery to January 1, 2012 is that it is "relevant to the second element of Plaintiffs' monopolization claim: the willful acquisition, maintenance, or use of that power through anticompetitive conduct."  (*Id.* (emphasis added)).  The *Arrowpac* court stated, by contrast, that pre- and post-conspiracy discovery was "directly relevant to Plaintiffs' damages."  *Arrowpac, Inc. v. Sea Star Line, LLC*, 2014 WL 12617575, at *3 (M.D. Fla. Sept. 11, 2014) (emphasis added).  Thus, like the parties in *Arrowpac* and despite the *Arrowpac* court's admonition to them, Plaintiffs "ignore significant differences in discovery between liability and damages."  *Id.*, at *2.

Finally, as a point of clarification, Plaintiffs incorrectly state that "USASF refuses to produce documents from any time period before 2015."  (Pl. Mem., pp. 15-16).  To the contrary,

USASF had previously offered to produce a large number of documents, including board meeting minutes and documents relating to its acquisition of the NACCC, going back to 2003, as well as documentation relating to its membership fees and number of members, going back to 2012.  While USASF maintains that even these categories of documents are not relevant to the extent they predate 2015, USASF was willing to undertake the effort to locate these limited categories of older documents in the spirit of compromise.  USASF was under the impression that an agreement on this issue had been reached until it received Plaintiffs' Motion to Compel, which suggests that such an agreement never existed.

In sum, Plaintiffs have no basis for their purported need to obtain discovery dating back to January 1, 2012.  The time period proposed by USASF is more than adequate to encompass the applicable damages period and a reasonable amount of time (eighteen months) before that period. The Court should see Plaintiffs' Motion to Compel for what it is—a harassing attempt to arbitrarily and exponentially expand the scope of discovery, all at USASF's expense.

### D.  Plaintiffs' Requests and ESI Proposal Are Far Overbroad and Not Proportional to the Needs of the Case.

As explained in USASF's Motion for Protective Order, many of Plaintiffs' requests seek documents that are not relevant to this litigation, in whole or in part.  (*See* Mot. for Protective Order, pp. 8-9, ECF No. 102).  And even to the extent Plaintiffs' requests seek relevant documents, these requests when viewed in connection with Plaintiffs' ESI proposal are not proportional to the needs of the case.  The factors for proportionality are discussed at length in USASF's Motion.  (*Id.*, pp. 9-14).  In short, USASF is a mutual benefit non-profit corporation with limited resources.  Its expenses have outpaced its revenue for a number of years, and it has very limited insurance applicable to this case.  If USASF is forced to undertake the discovery sought, it will likely run out of resources to operate and to defend itself partway through the discovery period in this case.

Plaintiffs' contentions that USASF can afford this because "USASF conspired with Varsity, a business worth at least $2.5 billion that raised $185 million in new capital in less than 10 days during the pandemic last year" and that All Star cheer is expensive (Pl. Mem., p. 17) are wholly disconnected from USASF's actual resources and the real possible amount in controversy related to USASF.  Further, Plaintiffs ignore that Varsity has also already spent millions of dollars on discovery in this case, the *American Spirit* case, and the *Jones* case, and that the additional documents they seek from USASF are likely to be cumulative of those already being produced by Varsity.  Finally, Plaintiffs mischaracterize the burden and cost of their proposal to USASF.  The cost is not merely the $165,000+ associated with undertaking the collection proposed by Plaintiff (*id.*, p. 18), but rather the $1.3 million to $4.2 million associated with actually reviewing these documents, plus the numerous hours of manpower to manually download hundreds or thousands of Google Drive documents.  (*See* Mot. for Protective Order, p. 14).

Given the low "marginal utility" of the further ESI collection, review, and production sought from USASF, the proportionality requirement in Rule 26(b)(1) "commands" that this Court should limit the discovery sought from USASF.  *See Raymond James*, 2020 WL 1527827, at *2. Accordingly, USASF respectfully urges this Court to deny Plaintiffs' Motion to Compel.

## CONCLUSION

For the foregoing reasons, USASF respectfully urges this Court to deny Plaintiffs' Motion to Compel Discovery Responses in its entirety.  Alternatively, if the Court is inclined to permit Plaintiffs any of the additional discovery requested, USASF submits that June 30, 2021 is not a realistic deadline for USASF to collect and produce the numerous additional documents requested, and would request that USASF have 120 days after the Court's ruling on this Motion to complete such production.

May 19, 2021                          Respectfully submitted,

                                     *s/ Nicole D. Berkowitz*
                                     Grady Garrison (TN #008097)
                                     Nicole D. Berkowitz (TN #35046)
                                     BAKER, DONELSON, BEARMAN, CALDWELL &
                                     BERKOWITZ
                                     165 Madison Avenue, Suite 2000
                                     Memphis, TN 38103
                                     Phone: (901) 526-2000
                                     Fax: (901) 577-0866
                                     ggarrison@bakerdonelson.com
                                     nberkowitz@bakerdonelson.com

                                     *Attorneys for U.S. All Star Federation, Inc.*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 19th day of May 2021, the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system and/or via U.S. Mail, postage prepaid, to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's electronic filing system.

                                     *s/ Nicole D. Berkowitz*
                                     Nicole D. Berkowitz