# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| **FUSION ELITE ALL STARS**, et al., <br><br> Plaintiffs, <br><br> v. <br><br> **VARSITY BRANDS, LLC**, et al., <br><br> Defendants. | Case No. 2:20-cv-02600-SHL-cgc <br><br> **JURY TRIAL DEMANDED** |

# PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION TO COMPEL DISCOVERY RESPONSES FROM DEFENDANT U.S. ALL STAR FEDERATION, INC.

USASF's role as a co-conspirator in Varsity's scheme to monopolize the All Star Apparel and All Competition Markets (the "Relevant Markets")[1] is significant, well pleaded, and central to Plaintiffs' claims under the Sherman Act, 15 U.S.C. § 2.[2] The requests for production Plaintiffs served in October 2020 (the "Requests") are narrowly tailored to that conspiracy. USASF served its initial written responses and objections on November 18, 2020, without any accompanying documents or data, and counsel for Plaintiffs contacted USASF to begin good faith negotiations. Decl. of Victoria Sims ("Sims Decl.") ¶¶4-5. While the parties have reached agreement on a number of the Requests, Plaintiffs bring the remaining disputes to the Court because USASF has produced only 5,300 documents and agreed to only 16 of Plaintiffs' proposed search terms and 5 custodians for the retrieval of electronically stored information ("ESI"). Compared to the joint and several liability and treble damages USASF faces—for a conspiracy that has generated close to $1 billion in revenue for Varsity—the discovery Plaintiffs seek is relevant and proportional, and USASF should be compelled to respond fully.

I.  **ARGUMENT**

    A.  **Plaintiffs' Requests for Production**

**Request No. 10:** USASF correctly notes that the parties are continuing to meet and confer regarding this Request. Still, it argues that the terms "programs" and "initiatives" (though not "rules or "policies"—the other half of this Request it does not contest) are "too vague." Dkt. 116 at 3. But Plaintiffs only ask that USASF interpret these terms in the same way it uses them in

---

[1] Unless otherwise indicated, capitalized terms have the same meaning as those used in the Consolidated Class Action Complaint. Dkt. 56.

[2] The defendants are Varsity Brands, LLC; Varsity Spirit, LLC; Varsity Spirit Fashions & Supplies, LLC (collectively, "Varsity") and U.S. All Star Federation ("USASF") (Varsity and USASF together, "Defendants").

ordinary practice and on its own website.³ This Request—which relates to how USASF bolsters Varsity's monopoly — simply seeks documents that discuss USASF's rules, programs, policies, and initiatives and show how and why they were implemented and changed. Plaintiffs have offered to narrow the contested portion of this Request after gaining a better understanding of the programs and initiatives at issue. But in any event, the test for reasonable particularity is "a matter of degree depending on the circumstances of the case." *Hager v. Graham*, 267 F.R.D. 486, 493 (N.D.W. Va. 2010) (citation and quotations omitted) (finding that request for complete investigative files and claims files did not fail for lack of particularity); *U.S. v. Nat'l Steel Corp.*, 26 F.R.D. 607, 610 (S.D. Tex. 1960) ("the description [must] be sufficient to apprise a man of ordinary intelligence which documents are required"). USASF is in the best position to explain the parameters of its own programs and initiatives to appropriately narrow the parameters of Request No. 10, and its argument that the Request does not comport with Rule 34(b) fails.

**Request No. 11:** USASF previously advised Plaintiffs that its only remaining objection to this Request was providing information about three objecting corporate affiliate members. Sims Decl. ¶6. USASF now objects to the relevance of this Request in its entirety and refuses to produce any responsive documents. Sims Decl. ¶7. USASF also asks the Court and Plaintiffs to accept its claim—based on a single annual report published on its website almost four years ago—that USASF affiliates do not "carry any meaningful 'influence.'" Dkt. 116 at 7. But USASF has not even identified who those affiliates are or how much revenue each one actually provided to USASF. Of course, the existence of that revenue proves that there are some financial

---

³ USASF's website states that "USASF programs, initiatives, rules and policy development begin in the Standing Committees and are brought to the Board of Directors for review to ensure that the USASF mission is upheld before being carried out." Ex. 1.

2

requirements imposed on sponsor or affiliate members. Conversely, if USASF imposes no financial requirements on its affiliates because USASF is almost entirely sponsored by Varsity, that is likewise relevant to the allegations at issue. But Plaintiffs cannot possibly determine what degree of influence these affiliates carry or whether they are treated more favorably if they do not even know their identities. More importantly, USASF does not explain why information that was, at some point, publicly available (the very purpose of corporate sponsorship) is not discoverable. *See* Dkt. 102-8 (USASF website promising affiliates "added exposure" to members). Indeed, if USASF considers sponsorship revenue a "very small percentage," Dkt. 116 at 7, identifying the sources of such revenue should be a simple task.

**Request Nos. 82 and 83:** Contrary to USASF's claims, Plaintiffs do not seek "transaction-by-transaction information." Dkt. 116 at 8. They are not, and never have been, seeking all payments made to and from every gym or event producer associated with USASF. Plaintiffs seek responsive documents showing payments between Varsity and USASF in order to establish Varsity's control and influence over USASF. USASF *admits* that "[i]t is no secret that" Varsity and USASF are tied in *multiple* financial respects, Dkt. 116 at 8, despite USASF representing itself as a neutral governing body. Plaintiffs need to be able to understand the extent to which USASF is not neutral and is in fact controlled by Varsity, including exactly what financial aspects are controlled by Varsity.

USASF's relevance objection, raised for the first time in its opposition to the Motion, is waived. Ex. 2 at 51;[4] Fed. R. Civ. P. 34(b); *Reynolds & Reynolds Co., Inc. v. Alan Vines Auto. of Jackson, LLC* ("*Reynolds*"), No. 20-mc-0003, slip op., 2020 WL 5797923, at *4 (W.D. Tenn.

---

[4] All exhibits are attached to the Declaration of Victoria Sims, filed contemporaneously herewith.

Sept. 28, 2020). USASF also claims that no responsive documents exist when it, in fact, possesses a general ledger. Ex. 2 at 51; Sims Decl. ¶8. USASF claims that Plaintiffs should be satisfied with the initial payment that Varsity advanced to it before USASF began paying it back. But Plaintiffs allege Varsity has controlled USASF throughout the relevant period of 2012 to the present, and documents describing this information must be produced.

**Request No. 87:** The issue of who paid USASF employees their salaries is a mystery wrapped in an enigma. Both Varsity and USASF refuse to produce the information. Dkt. 111 at 13-14; Dkt. 116 at 9-10. And, again, USASF asks Plaintiffs and this Court to accept at face value that all the funds used by Varsity to pay USASF employees were repaid. Dkt. 116 at 9. USASF undoubtedly has control over information concerning the names, positions, and salaries of *its own employees.* And its objection that Request No. 87 is irrelevant was not raised in its initial responses and is therefore waived. Ex. 2 at 53; Fed. R. Civ. P. 34(b); *Reynolds*, 2020 WL 5797923, at *4. In any event, this request is exactly the type permitted in an antitrust conspiracy case, where "direct evidence of an anticompetitive conspiracy is often difficult to obtain, and the existence of a conspiracy frequently can be established only through circumstantial evidence, *such as business documents and other records.*" *In re Urethane Antitrust Litig.*, 261 F.R.D. 570, 573 (D. Kan. 2009) (citation and quotations omitted) (emphasis added). This information is highly relevant to Plaintiffs' allegations that USASF is under the control of Varsity, and it must be produced.

**Request Nos. 98-111:** Plaintiffs were willing, in good faith, to defer discussion on these Requests for at least 60 days, in light of the pending motion to strike such allegations, Dkt. 82, but USASF declined to either sign or edit a stipulation memorializing that agreement. In any event, since discovery is ongoing, per the Court's directive, USASF's objection that the Requests

are untimely is baseless. USASF's citation to *Reiter v. Sonotone Corp.*, 442 U.S. 330, 339 (1979), is inapposite as Plaintiffs are not seeking to recover damages resulting from any sexual misconduct. Likewise inapposite is the citation to *Medison America, Inc. v. Preferred Medical Systems, LLC*, 357 F. App'x 656, 660 (6th Cir. 2009), as the sexual misconduct allegations here are not "completely unconnected with [the] dispute." The sexual abuse described in the Plaintiffs' complaint is the direct result of Defendants' failure to properly police the coaches, choreographers, videographers, photographers, and countless other adults that have unfettered access to the All Star Cheer athletes that Defendants are meant to protect at the All Star Competitions that they produce and oversee. USASF should be compelled to produce documents relating to the environment of sexual abuse it enabled.

## B. Search Terms and Custodians

USASF's claims of burden surrounding its ESI ring hollow when considered in context.[5] First, there are a multitude of ways to reduce time allocated to data retrieval and privilege reviews, such as self-retrieval of Google Drive data, Dkt. 110-8, and using key searches for the names of counsel and the words "privileged" and "confidential." *John B. v. Goetz*, 879 F. Supp. 2d 787, 883 (M.D. Tenn. 2010). Second, it is unclear how the 200 search terms (disaggregated into 1,500 search terms by USASF) and 9 custodians Plaintiffs propose result in "substantially greater" burden and expense than the 1,036 search terms and 5 custodians proposed by USASF. Third, the number of documents USASF discusses does not reflect de-duplication or spam filters,

---

[5] USASF's response to Plaintiffs' motion to compel the use of certain search terms shows significantly more areas of agreement than dispute. As Plaintiffs were on the cusp of filing their Motion, USASF proposed 1,036 search terms that admittedly bear a great deal of similarity to the search terms set forth in Exhibit 3 to Plaintiff's motion. The space between the parties' positions at this point relates largely to which custodians' e-mail accounts and Google Drives should be searched. But until they reach full agreement on which search terms and custodial accounts are appropriate, the issues raised in Plaintiffs' Motion remain ripe for this Court's attention.

which will likely reduce the number of hits even more.[6] And fourth, the attorneys' fees USASF cites are ordinarily not included within the term "costs" and are not properly part of this Court's proportionality analysis. *See United States ex rel. Guardiola v. Renown Health*, No. 12-cv-00295, 2015 WL 5056726, at *4 (D. Nev. Aug. 25, 2015) (courts have "reject[ed ] arguments that 'cost' under Rule 26(b)(2)(B) includes document review and storage. [There is] no authority for the proposition that review costs—ordinarily borne by the producing party—fall into cost under Rule 26(b)(2)(B)"). With these factors in mind, Plaintiffs' ESI proposal, which USASF has averred will cost $181,000 exclusive of attorneys' fees, is certainly proportional to the needs of a case involving hundreds of millions if not billions of dollars. Dkt. 56 ¶38; Dkt. 109-2 at -295. In fact, USASF admits that it would cost only $16,000 to search the data of a narrowed but highly relevant list of additional custodians. Dkt. 116 at 13.

USASF's arguments regarding custodians are even less persuasive. The lower-level employees' Google Drives and e-mail accounts are likely to have drafts and communications with USASF members that the upper-level employees would not have. Indeed, USASF has said nothing to suggest that Amy Clark is copied on *every single communication* with every gym or that she has *every single draft* of USASF's rules and policies. And USASF's claim that documents from Lynn Singer and Alison Stangle's Google Drives need not be collected because *some* versions from *some* years have been pulled from other sources is not only unavailing but is concerning. Dkt. 116 at 17-18. USASF may not pick and choose which documents from which years from which sources it will produce. Ms. Singer and Ms. Stangle's documents are relevant

---

[6] Plaintiffs were careful to properly present the number of documents at issue. Exhibit 3 clearly sets forth the data USASF provided regarding search terms, and Plaintiffs' memorandum disclosed that the disputed search terms returned 100,056 unique families. Dkt. 102-1 at 18 n.18.

no matter the source they come from. And as Plaintiffs already noted, the process of retrieving them is straightforward and far from burdensome. Dkt. 110-8.

### C. Time Period

USASF's contention regarding the relevant time period is simply incorrect—Plaintiffs' Complaint encompasses events going back to 2003 and acquisitions of Varsity's competitors going back to 2008. Dkt. 56 ¶¶ 71, 73, 168, 197. By highlighting three events in their opening papers that occurred in 2015 and later, Plaintiffs were not limiting the events at issue to this period. In any event, USASF continues to not challenge the relevance of a time period dating back to 2012.[7]

## II. CONCLUSION

Plaintiffs respectfully request that this Court compel USASF to comply with its discovery obligations by June 30, 2021.

Dated: May 26, 2021                    Respectfully submitted,

By: /s/ Katherine Van Dyck
Jonathan W. Cuneo*
Katherine Van Dyck*
Victoria Sims*
**CUNEO GILBERT & LADUCA, LLP**
4725 Wisconsin Avenue NW, Suite 200
Washington, DC 20016
Telephone: (202) 789-3960
jonc@cuneolaw.com
kvandyc@cuneolaw.com
vicky@cuneolaw.com

---

[7] Plaintiffs also note (and USASF agrees) that USASF consented to producing documents responsive to certain Requests back to a time before 2012. The dispute here is whether the rest of USASF's documents will be produced back to 2012 or 2015.

7

H. Laddie Montague, Jr.*
Eric L. Cramer*
Mark R. Suter*
**BERGER MONTAGUE PC**
1818 Market Street, Suite 3600
Philadelphia, PA 19106
Telephone: (215) 875-3000
hlmontague@bm.net
ecramer@bm.net
msuter@bm.net

Gregory S. Asciolla*
Karin E. Garvey*
Veronica Bosco*
**LABATON SUCHAROW LLP**
140 Broadway New York, NY 10005
Telephone: (212) 907-0700
gasciolla@labaton.com
kgarvey@labaton.com
vbosco@labaton.com

*Interim Co-Lead Counsel for the Proposed Direct Purchaser Class*

J. Gerard Stranch, IV (TN BPR #23045)
Benjamin A. Gastel (TN BPR #28699)
**BRANSTETTER, STRANCH & JENNINGS, PLLC**
223 Rosa Parks Ave. Suite 200
Nashville, TN 37203
Telephone: (615) 254-8801
gerards@bsjfirm.com
beng@bsjfirm.com

*Liaison Counsel for the Proposed Direct Purchaser Class*

Benjamin D. Elga*
**JUSTICE CATALYST LAW, INC.**
81 Prospect Street Brooklyn, NY 11201
Telephone: (518) 732-6703
belga@justicecatalyst.org

Craig L. Briskin*
**JUSTICE CATALYST LAW, INC.**
718 7th Street NW Washington, DC 20001
Telephone: (518) 732-6703

8

cbriskin@justicecatalyst.org

Roberta D. Liebenberg*
Jeffrey S. Istvan*
Mary L. Russell*
**FINE KAPLAN AND BLACK, R.P.C.**
One South Broad St., 23rd Floor
Philadelphia, PA 19107
Telephone: (215) 567-6565
rliebenberg@finekaplan.com
jistvan@finekaplan.com
mrussell@finekaplan.com

Nathan A. Bicks (TN BPR #10903)
Frank B. Thacher III (TN BPR #23925)
**BURCH, PORTER, & JOHNSON, PLLC**
130 North Court Ave.
Memphis, TN 38103
Telephone: (901) 524-5000
nbicks@bpjlaw.com
fthacher@bpjlaw.com

Aubrey B. Harwell, Jr. (TN BPR #002559)
Charles Barrett (TN BPR #020627)
Aubrey B. Harwell III (TN BPR #017394)
**NEAL & HARWELL, PLC**
1201 Demonbreun St., Suite 1000 Nashville, TN 37203
Telephone: (615) 244-1713
aharwell@nealharwell.com
cbarrett@nealharwell.com
tharwell@nealharwell.com

*Admitted pro hac vice

*Counsel for the Proposed Direct Purchaser Class*