# EXHIBIT 4

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TENNESSEE**

| | |
|---|---|
| FUSION ELITE ALL STARS, et al., <br><br><br> Plaintiffs, <br> v. <br><br> VARSITY BRANDS, LLC, et al., <br><br> Defendants. | Case No. 2:20-cv-02600-SHL-cgc <br><br> **Jury Trial Demanded** |

<u>**PLAINTIFFS' FIRST REQUEST FOR PRODUCTION OF DOCUMENTS TO DEFENDANTS VARSITY BRANDS, LLC, VARSITY SPIRIT, LLC, AND VARSITY SPIRIT FASHION & SUPPLIES, LLC**</u>

Pursuant to Rule 34 of the Federal Rules of Civil Procedure, Plaintiffs'[1] request that

defendants Varsity Brands, LLC, Varsity Spirit, LLC, and Varsity Spirit Fashion & Supplies,

LLC (the "Varsity Defendants") produce for inspection and copying, within 30 days, the

documents listed below.

<u>**DEFINITIONS**</u>

1.      The term "All Star" cheerleading means the discipline of cheerleading that

involves athletes performing routines composed of tumbling, stunting, pyramids, and dance. It is

distinct from traditional school cheerleading (sideline cheering) in that its primary purpose is

competition, while school cheer primarily involves crowd leading and other roles associated with

generating school spirit.

---

[1] Plaintiffs are Fusion Elite All Stars, Spirit Factor LLC d/b/a Fuel Athletics, Stars and Stripes Gymnastics Academy Inc. d/b/a Stars and Stripes Kids Activity Center, Kathryn Anne Radek, Janine Cherasaro, and Lauren Hayes.

2.      The term "All Star Apparel" means the clothing (including uniforms), shoes, accessories, or equipment purchased for use by All Star Team athletes at Events and during practices and training.

3.      The term "Apparel" means the clothing (including uniforms), shoes, accessories, or equipment purchased for use by Athletes (whether considered All Star or not) at Events (whether considered All Star or not) and during practices and training.

4.      The term "All Star Athlete" means a cheerleader who is a member of an All Star Team, and includes the parent(s) and/or legal guardian(s) of same.

5.      The term "Athlete" means a cheerleader who is a member of an All Star or any other cheerleading Team, and includes the parent(s) and/or legal guardian(s) of same.

6.      The term "All Star Gym" means a cheerleading Gym whose members are Athletes on All Star cheerleading Teams.

7.      The term "Gym" means a cheerleading Gym whose members are Athletes on cheerleading Teams whether considered All Star or not.

8.      The term "All Star Team" means a cheerleading squad that competes in All Star cheerleading competitions.

9.      The term "Team" means a cheerleading squad that competes in cheerleading competitions whether considered All Star or not.

10.      The term "All Star Spectator" means a person who attends an All Star Event to watch an All Star Athlete perform.

11.      The term "Spectator" means a person who attends a cheerleading Event to watch the Athletes perform whether considered All Star or not.

12.     The terms "any," "and," and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery all responses which might otherwise be construed to be outside its scope. Each of the following words includes the meaning of every other word: "each," "every," "all," and any." The present tense shall be construed to include the past tense, and the past tense shall be construed to include the present tense.

13.     The term "Bain Capital" or "Bain" means Bain Capital, LP, its predecessor and successor entities, its officers, directors, shareholders, parent and subsidiary companies (whether direct or indirect), divisions, employees, agents, attorneys, representatives, and other persons acting or authorized to act on its behalf.

14.     The term "Bid" means an official offer from an Event inviting an All Star Team to attend a Championship competition.

15.     The term "Championship" means one of three nationally recognized All Star cheerleading championship competitions in the United States: the Cheerleading Worlds, The Summit, and the U.S. Finals.

16.     The term "Championship Qualifier" or "Qualifier" means an Event at which an All Star Team may receive a Bid to a Championship.

17.     The term "Charlesbank Capital Partners" or "Charlesbank" means Charlesbank Capital Partners and its predecessor and successor entities, its officers, directors, shareholders, parent and subsidiary companies (whether direct or indirect), divisions, employees, agents, attorneys, representatives, and other persons acting or authorized to act on its behalf.

18.     The terms "communication" and "communications" are used in the broadest possible sense and mean every conceivable manner or means of disclosure, transfer or exchange of oral or written information between one or more persons or entities and shall include, without

3

limitation, notes, letters, memoranda, e-mails, texts, instant messages, social media posts, social media messages, facsimiles, reports, briefings, telegrams, telexes, or by oral contact by such means as face to face meetings and telephone conversations, or any form of transmittal of information in the form of facts, ideas, inquiries or otherwise. The term "communicate" means to exchange, transfer, or disseminate facts or information, regardless of the means by which it is accomplished.

19.     The term "Complaint" means the October 2, 2020 Consolidated Class Action Complaint (ECF 56) or any future amended complaint(s) filed in the above-captioned action.

20.     The terms "concerning," "reflecting," and "relating to" are used in the broadest possible sense and mean, in whole or in part, addressing, analyzing, constituting, containing, commenting, in connection with, dealing with, discussing, describing, embodying, evidencing, identifying, pertaining to, referring to, reporting, stating, or summarizing.

21.     The term "Contract" means any contract, arrangement, or understanding, formal or informal, oral or written, between two or more persons, together with all modifications or amendments thereto.

22.     The term "Defendants" means any Defendant named in the Complaint or any amended complaint filed in this action.

23.     The terms "document" and "documents" are used in the broadest sense allowable under Rule 34 of the Federal Rules of Civil Procedure, including any written, printed, typed, photocopied, photographed, recorded or otherwise reproduced or store communication or representation, whether comprised of letters, words, numbers, data, pictures, sounds or symbols, or any combination thereof. It includes notes, letters, memoranda, e-mails, texts, instant messages, social media posts, facsimiles, reports, briefings, telegrams, telexes, records,

envelopes, messages, studies, analyses, contracts, agreements, working papers, accounts, analytical records, reports and/or summaries of investigations, press releases, comparisons, books, calendars, diaries, articles, magazines, newspapers, booklets, brochures, pamphlets, circulars, bulletins, notices, questionnaires, surveys, drawings, diagrams, instructions, notes of meetings or communications, questionnaires, surveys, charts, graphs, photographs, films, tapes, disks, data cells, print-outs of information store or maintained by electronic data processing or work processing equipment, all other data compilations from which information can be obtained including without limitation optical storage media such as CDs, DVDs, memory sticks, floppy disks, hard disks, and magnetic tapes. The term "document" also means every copy of a document where such copy is not an identical duplicate of the original.

24.     The term "Due Diligence" means any appraisals and/or analyses undertaken to establish the assets, liabilities, and commercial potential of a firm, corporation, or entity.

25.     The term "employee" means, without limitation, any current or former officer, director, executive, manager, board member, secretary, staff member, consultant, messenger, or agent.

26.     The term "All Star Event" means an All Star cheerleading competition, including Championships.

27.     The term "Event" means a cheerleading competition whether considered All Star cheerleading or not.

28.     The term "including" means including but not limited to.

29.     The term "Independent Event Producers" or "IEPs" means producers that hold Events not owned by or otherwise affiliated with Varsity or USASF.

30.     The term "Offer" means any offer, arrangement, or understanding, formal or informal, oral or written, between two or more persons, together with all modifications or amendments thereto, to sell goods or services, including offers to sell goods or services involving discounts or rebates.

31.     The term "Partners Group" means Partners Group AG and its predecessor and successor entities, its officers, directors, shareholders, parent and subsidiary companies (whether direct or indirect), divisions, employees, agents, attorneys, representatives, and other persons acting or authorized to act on its behalf.

32.     The term "Plaintiffs" means any of the Plaintiffs identified in the Complaint or any amended Complaint(s) filed in the above-captioned action.

33.     The term "Preferred Vendor" means any vendor, such as an insurer, with which one or more Defendants has an agreement regarding the fees charged to Gyms, Athletes, and/or Teams for the vendor's goods or services.

34.     The term "price" means the sum or amount of money or its equivalent for which anything is bought sold, or offered for sale as well as monetary values or rates, price increases or decreases, retail prices, wholesale prices, transfer prices, exchange prices, markups, profit margins, discounts, rebates, promotions, or promotional allowances, and all related costs or charges.

35.     The term "Stay to Play" means any Event at which an All Star Gym and/or Team is required to book lodging and stay at a Varsity-approved "housing partner" hotel.

36.     The term "USA Cheer" means the USA Federation for Sport Cheering, its predecessor and successor entities, its officers, directors, shareholders, parent and subsidiary

companies (whether direct or indirect), divisions, employees, agents, attorneys, representatives, and other persons acting or authorized to act on its behalf.

37.     The term "USASF" means defendant U.S. All Star Federation, Inc., its predecessor and successor entities, its officers, directors, shareholders, parent and subsidiary companies (whether direct or indirect), divisions, employees, agents, attorneys, representatives, and other persons acting or authorized to act on its behalf.

38.     The terms "Varsity" or "Varsity Defendants" mean Varsity Brands, LLC, Varsity Spirit, LLC, and Varsity Spirit Fashion & Supplies, LLC, each of their predecessor and successor entities, officers, directors, shareholders, parent and subsidiary companies (whether direct or indirect), divisions, employees, agents, attorneys, representatives, and other persons acting or authorized to act on their behalf.

39.     The terms "You" or "Your" means the persons or entities upon whom these Requests for Productions were served; for an entity, each of its predecessors, successors, parents, divisions, subsidiaries, and affiliates, each other entity directly or indirectly, wholly or in part, owned or controlled by it, and each partnership or joint venture to which any of them is a party; and all present and former directors, officers, employees, agents, consultants, or other persons acting for or on behalf of any of them.

## INSTRUCTIONS

1.     The Definitions above are provided only for purposes of discovery, in conformance with Rule 34(a) of the Federal Rules of Civil Procedure, and are not intended to be used for any purpose other than discovery. Plaintiffs reserve the right to modify these Definitions or utilize different Definitions for any other purpose.

2.      The terms defined above and the individual requests for production and inspection are to be construed broadly to the fullest extent of their meaning in a good faith effort to comply with the Federal Rules of Civil Procedure.

3.      All words not defined in the Definitions shall be construed using their plain and ordinary meaning. If more than one meaning can be ascribed to a word, the meaning that would make a document be covered by the requests for production should be used, unless You provide written notice of the specific ambiguity and state the definition of the word used to exclude the document from the scope of the request.

4.      In answering and responding to these requests, You shall furnish such information and documents in Your possession, custody or control, including information that is in the possession, custody or control of Your agents, consultants, accountants, investigators, and (subject to any otherwise applicable privileges) attorneys.

5.      Each request herein shall be construed independently. No request shall be construed by reference to any other request for the purpose of limiting the scope of the answers to such request.

6.      All headings set forth within the numbered requests below are for continuity only and shall not be deemed to control or affect the meaning or construction of any request.

7.      Where the context in a request makes it appropriate, each singular word shall include its plural and each plural word shall include its singular.

8.      Your obligation to respond to these requests is a continuing one. If, after responding to these requests, You obtain or become aware of any new or additional information pertaining to a request contained herein, You must supplement Your answer in accordance with Federal Rules of Civil Procedure 26 and 34.

9.      You are to produce entire documents including all attachments, cover letters, memoranda, and appendices, as well as the file, folder tabs, and labels appended to or containing any documents. Copies which differ from the original (because, by way of example only, handwritten or printed notations have been added) should be produced separately. Each document requested herein must be produced in its entirety and without deletion, abbreviation, redaction, expurgation, or excisions, regardless of whether You consider the entire document to be relevant or responsive. The use or disclosure of documents produced in response to these requests is subject to the limitations set forth in the Stipulated Protective Order (ECF 49-2) and the Stipulation Regarding Production of Electronically Stored Information ("ESI Protocol"). Accordingly, redaction of documents to preserve confidentiality is unnecessary and production of documents that have been redacted for purposes of production in response to these requests will not constitute compliance with these requests. If any part of a document is responsive to any request, the whole document is to be produced.

10.      You are requested to produce any and all electronically stored information in the manner required by the ESI Protocol. Unless otherwise limited by the ESI Protocol, pursuant to Federal Rules of Civil Procedure 34(b) electronically stored information should be produced in native format (including metadata) whenever possible.

11.      Documents and other things not otherwise responsive to a request shall be produced if such materials mention, discuss, refer to, or explain the materials called for by a request, or if such materials are attached to materials called for by a request and constitute (e.g., routing slips, transmittal emails, transmittal memoranda, letters, cover letters, comments, evaluations, or similar materials).

12.     Any alteration of a responsive document, including any marginal notes, handwritten notes, underlining, date stamps, received stamps, endorsed or filed stamps, drafts, revisions, modifications and other versions of a final document is a separate and distinct document and it must be produced.

13.     If there are no documents or other things responsive to any particular request, Your response shall state so in writing.

14.     If any document is withheld, in whole or in part, due to a claim of privilege of any kind, provide a privilege log that sets forth separately with respect to each document: (a) the nature of the privilege or ground of confidentiality claimed; (b) the author(s) of the document (designating which, if any, are attorneys); (c) the title of the documents (or subject line if the document in an email); (d) the recipient(s) of the document, including all persons who received copies of the document (designating which, if any, are attorneys); (e) a description of the document (or redacted portion of the document) as set forth in Rule 26(b)(5)(A)(ii) of the Federal Rules of Civil Procedure; (f) the Bates range of the document; and (g) the privilege log reference number. Any privilege log or list is to be produced in an Excel spreadsheet or other format capable of electronic sorting.

15.     Unless otherwise noted herein, the relevant time period for these Requests is May 26, 2008 to the present (the "Relevant Time Period"). These Requests seek all responsive documents created or generated during the Relevant Time Period, as well as responsive documents created or generated outside the Relevant Time Period, but which contain information concerning the Relevant Time Period.

16.     To the extent that You contend that documents responsive to a particular request were previously produced to the Federal Trade Commission, Securities and Exchange

Commission, Department of Justice, a state attorney general, or any other governmental agency, or as part of any other litigation, identify the specific request in any particular request for documents, in response to which You produced such documents and explain how You searched for documents and produced them in response to such request for documents, including by producing a list of the search terms used to identify documents responsive to the applicable request for documents, the relevant time period searched, and the custodians whose files were searched.

17.     In the event that any document or other thing responsive to these requests has been lost, discarded, or destroyed, that document or other thing is to be identified by stating as completely as possible: (a) the authors or creators of the material, (b) all persons who received copies of the material, including any indicated and blind copy recipients, (c) the present custodian of the material, (d) the date of the material, (e) the material's date of destruction or discard, manner of destruction or discard, and the reason for destruction or discard, and (f) the persons authorizing and carrying out such destruction or discard.

18.     If You have any good faith objections to any request or any part thereof, the specific nature of the objection and whether it applies to the entire request or to a part of the request shall be stated in accordance with Rule 34 of the Federal Rules of Civil Procedure. If there is an objection to any part of a request, then the part objected to should be identified and documents and other things responsive to the remaining unobjectionable part should be timely produced. Further, if You object to part of a request, You must state the basis of Your objections in accordance with Rule 34.

19.     Each production shall be submitted with a transmittal letter that includes the case caption; production volume name; encryption method/software used; and passwords for any password protected files.

## REQUESTS FOR PRODUCTION

### I.     CORPORATE STRUCTURE AND GOVERNANCE

**REQUEST NO. 1:**   From January 1, 2003 to the present, all documents reflecting (a) Your board of director and board committee agendas, Your board meeting minutes (and drafts thereof), pre-board meeting board packets, presentations made to or by the board of directors and board committees, including any and all notes and communications regarding board of director and board committee meetings regarding some or all of the facts and allegations in the Complaint; and (b) Your Bylaws and any other corporate governance documents, irrespective of date, and any and all amendments or additions thereto.

**REQUEST NO. 2:**   All documents reflecting or relating to Your policies, practices, guidelines and training directed to compliance with the antitrust or competition laws of the United States, of any state of the United States, the District of Columbia, or any foreign country, including all documents concerning the creation of such policies, and any statements signed by Your employees acknowledging their receipt of or compliance with Your antitrust compliance policies.

### II.    CONTRACTS AND OFFERS

**REQUEST NO. 3:**   All Documents reflecting or relating to (a) Contracts (whether executed or not) between You and any Gym, Team, and/or Athlete, including, all Contracts and agreements between You and any Gym, Team, or Athlete, (b) Offers by You to any Gym, Team, or Athlete to sell goods or services, including offers to sell goods or services where Your

discounts, rebates, or prices depend upon multiple or combined purchases of products or

services, (c) communications and/or negotiations with Gyms, Teams, or Athletes, or their

respective representatives, referencing or relating to such Contracts, Offers, or negotiations, and

(d) communications prepared by or sent to any person outside Varsity that reference or relate to

any such Contracts, Offers, or negotiations, including copies of all 1099s issued to Gyms for

rebates or other payments by Varsity.

**REQUEST NO. 4:**   Documents sufficient to show the terms and duration associated

with each Contract between You and any Gym, Team, or Athlete, and each Offer You made

available to any Gym, Team, or Athlete.

**REQUEST NO. 5:**   All documents reflecting or relating to any "Stay-to-Play" policy

or third parties involved in hotel booking, including any revenue-sharing agreements or other

Contracts between You and any such hotel or third party involved in hotel booking, as well as

any documents showing revenues, profits, and losses, and all documents discussing or reflecting

the financial, economic or competitive effects of any "Stay-to-Play" policy.

**REQUEST NO. 6:**   All documents reflecting or relating to Preferred Vendors,

including any revenue-sharing agreements or other Contracts between You and any such

Preferred Vendor, as well as any documents showing revenues, profits, and losses.

**REQUEST NO. 7:**   All documents reflecting or relating to the financial, economic or

competitive effects of using a Preferred Vendor instead of an outside, non-preferred vendor,

including any policies denying Gyms' and/or Teams' use of outside, non-preferred vendors.

**REQUEST NO. 8:**   All documents reflecting or relating to Your decision to offer, or

make available to, any Gym, Team, or Athlete, or any other person or company, a Network

Agreement, Family Plan, or any other agreement or Offer setting out the terms by which You
propose to sell goods or services, including Apparel.

**REQUEST NO. 9:**    All documents identifying the Gyms, Teams, and/or Athletes that
(a) have executed Network Agreements and/or which (b) participate in any Family Plan or any
other agreement or Offer setting out the terms by which persons or entities can buy products
Apparel or any other goods or services from You.

**REQUEST NO. 10:**   All documents reflecting or relating to actual or proposed
contractual terms or provisions, or model contractual or Offer terms or provisions, for use in the
arrangements known as Network Agreements and Family Plans, or any other types of
agreements between You and any Gym, Team, or Athlete, including all documents discussing or
reflecting the financial, economic or competitive effects of such actual or potential Contracts or
Offers. Responsive documents include all communications, studies, analyses, memoranda or
other documents referencing or relating to the effects of such Contacts, Offers, or provisions on:

    a.   Your profitability;

    b.   Your ability to compete with any Independent Event Producers, sellers of
        Apparel, or any other persons or entities;

    c.   Your ability to attract Gyms or Athletes to attend Your Events or to buy your
        Apparel or to purchase any other product or service from You;

    d.   Your prices, fees, rebates, discounts, or other terms of sale; and/or

    e.   any actual or potential competitor and that competitor's ability to compete with
        Varsity in producing Events or selling Apparel or engaging in any other line of
        business.

**REQUEST NO. 11:**   All documents reflecting or relating to the drafting or editing of, justifications for, and the reasoning behind, the following provisions in Your Contracts with, or Offers to, any Gyms, Teams, or Athletes, including the arrangements known as Network Agreements and Family Plans:

      a.  rebate terms and levels;

      b.  required number of Varsity Events at which a Gym, Team, or Athlete must compete to earn a rebate or discount;

      c.  spending thresholds for earning rebates, discounts, or more favorable terms of sale;

      d.  provisions or terms providing for attendance at multiple Varsity Events, or for spending threshold amounts of dollars at Varsity Events or for Varsity Apparel, as a condition of entitlement to earning certain discounts or rebates; and

      e.  the invitation by You to Gyms, Teams, or Athletes to join the Network Agreement or similar types of agreements.

**REQUEST NO. 12:**   All documents reflecting or relating to studies or analyses of the effects of the Contracts, Offers, or contractual provisions identified in Request No. 11 on Your revenues, success, strategy, profitability, and/or on the prices or fees You charge Gyms or Athletes or anyone else for attending Events or for Apparel or for any other good or service you sell or provide.

**REQUEST NO. 13:**   All documents reflecting or relating to the effects of any of the Contracts, Offers, or contractual provisions identified in Request No. 11 on the business or sales of any actual or potential competitor You identified in response to Request No. 50.

**REQUEST NO. 14:**  All documents reflecting or relating to the administration, monitoring, auditing, or enforcement or threatened enforcement of any of Your terms of sale, Offers, Contracts, contractual or Offer provisions, with Gyms, Teams, or Athletes.

**REQUEST NO. 15:**  Documents sufficient to identify each of Your Employees involved in approving or negotiating the terms of each of Your Contracts, Offers, or agreements with any Gyms, Teams, or Athletes.

**REQUEST NO. 16:**  All documents reflecting or relating to punishments, penalties, or acts of retribution taken or assessed against Gyms, Teams, or Athletes that violated, or chose not to enter into a Network Agreement, accept Family Plan terms, or to reject any other actual or proposed Contract or Offer from Varsity.

**REQUEST NO. 17:**  All documents reflecting or relating to (a) Contracts (whether executed or not) between You and K&K Insurance Group, Inc. or associated entities; (b) all communications and/or negotiations with K&K Insurance Group, Inc. or its respective representatives, referencing or relating to such agreements or negotiations, and (c) any documents prepared by or sent to any person outside Varsity that reference or relate to any such agreements or negotiations.

**REQUEST NO. 18:**  All documents reflecting or relating to: (a) Contracts (whether executed or not) between You and USASF or associated entities, including the contract(s) for producing the Cheerleading Worlds Championship; (b) all communications and/or negotiations with Varsity or its representatives, referencing or relating to such agreements, Offers, or negotiations; and (c) communications prepared by or sent to any person outside USASF that reference or relate to any such agreements, Offers, or negotiations.

### III.    FINANCIALS

**REQUEST NO. 19:**  For each year of the Relevant Time Period, all financial statements, equity valuations, asset appraisals, financial models, budgets (proposed or otherwise), investor presentations, pro formas, and similar financial documents relating to You.

**REQUEST NO. 20:**  All of Your monthly, quarterly, and annual audited and unaudited financial statements and related data, including profit and loss statements, balance sheets, cash flow statements, income statements, regulatory filings (including Your income tax returns), issuance of equity or debit, loans, and money owed or receivable.

**REQUEST NO. 21:**  Documents sufficient to show sales, revenues, profits or losses in as granular a form as you maintain it for (a) all of Your Events on an Event-by-Event basis, (b) all Apparel sold by You, and (c) any and all other goods or services sold by You.

**REQUEST NO. 22:**  Documents sufficient to show all direct-to-consumer sales, including quantity, net price, product, and purchaser, for Apparel or souvenir apparel (e.g., t-shirts, sweatshirts, hats, jackets, etc.), sold at Your Events, on the website shop.varsity.com or any other website owned by You, or by any other means.

**REQUEST NO. 23:**  Documents and data (in machine-readable format such as *.csv, *.txt or other native flat file format) sufficient to show Your actual costs, in as granular form as the information is maintained, for all Events on an Event by Event basis, including:

      a.   Your actual costs for producing Events, including venue costs, promotional costs, travel costs, advertising costs, compensation for judges, workers, employees, contractors, insurance costs, and all other costs incidental to producing and promoting Events;

     b.   Your actual costs involved in promoting Varsity as a brand, including advertising expenses; development of Varsity trademarks and logos; and legal fees expended in protecting the Varsity's purported intellectual property rights; and

     c.   all other costs associated with producing Events in an itemized fashion.

If such data are not kept, or have not been kept, in electronic form in the ordinary course of your business or are otherwise not available in electronic form, please produce such data in hard copy.

**REQUEST NO. 24:**  Documents and data (in machine-readable format such as *.csv, *.txt or other native flat file format) in as granular form as it is maintained, including by transaction or receipt, sufficient to show the following:

     a.   total receipts from Events, broken down by Event, and identifying the purchasers by name, address, customer number, and main contact person or persons;

     b.   total revenues derived from Event ticket sales to Spectators, and identifying the purchasers by name, address, customer number, and main contact person or persons;

     c.   total revenues derived from Event entry fees for Gyms and/or Teams, and identifying the purchasers by name, address, customer number, and main contact person or persons;

     d.   total revenues derived from the sale of advertising during Events, identifying the advertiser by name, address, vendor number, and main contact person or persons;

     e.   total revenues derived from Varsity licensed merchandise sold at Events, identifying the sources of all such revenues; and

     f.   total revenues derived from licensing content, including music and choreography, used in routines performed at Events, identifying the source of all such revenues.

If such data are not kept, or have not been kept, in electronic form in the ordinary course of your business or are otherwise not available in electronic form, please produce such data in hard copy.

**REQUEST NO. 25:**  Documents and data (in machine-readable format such as *.csv, *.txt or other native flat file format) in as granular form as it is maintained, including by transaction or receipt, broken down by Gym, Team, Athlete, Spectator, or other means of identifying the purchaser or customer, including at minimum by name, address, phone number, email address, customer number, and main contact person or persons, and itemized by relevant categories, including date, check or other payment method, and transaction, in electronic format, sufficient to show the following:

  a. costs of fees or costs of attendance at an Event by Gym, Team, Athlete, Spectator, or other customer;

  b. any and all additional fees or costs paid by a Gym, Team, Athlete, Spectator, or other customer; and

  c. costs paid by a Gym, Team, Athlete, Spectator, or other customer, for Apparel purchased at an Event.

If such data are not kept, or have not been kept, in electronic form in the ordinary course of your business or are otherwise not available in electronic form, please produce such data in hard copy.

**REQUEST NO. 26:**  Documents sufficient to show, on a purchase by purchase basis as well as in the aggregate, the purchases of Varsity-branded Apparel, by Gyms, Teams, Athletes, or other customer, including at least the following information for each purchaser or customer: name, address, phone number, email address, customer number, and main contact person or persons, identifying the prices and other terms of sale.

**REQUEST NO. 27:**  Documents and data (in machine-readable format such as *.csv, *.txt or other native flat file format) sufficient to show Your actual costs, in as granular form as the information is maintained, associated with all of Your Apparel, on a monthly basis and in electronic format, including:

       a.  Your costs for producing and selling Apparel, including material costs, compensation for workers, employees, contractors, insurance costs, and all other costs incidental to producing and selling Apparel;

       b.  Your costs for advertising expenses;

       c.  Your costs for development of Varsity trademarks and logos;

       d.  Your costs for legal fees expended in protecting the Varsity's purported intellectual property rights; and

       e.  all other costs associated with producing and selling Your Apparel in an itemized fashion.

If such data are not kept, or have not been kept, in electronic form in the ordinary course of your business or are otherwise not available in electronic form, please produce such data in hard copy.

**REQUEST NO. 28:**  Documents and data (in machine-readable format such as *.csv, *.txt or other native flat file format), in as granular form as it is maintained, itemized on a purchaser by purchaser basis, including for each customer or purchaser, at minimum, name, address, phone number, email address, customer number, and main contact person or persons, including date, in electronic format, sufficient to show the following:

       a.  total receipts from Varsity-branded Apparel;

       b.  total revenues derived from the sale of advertising involving Varsity-branded Apparel;

c.   total revenues derived from the sale of Varsity-branded Apparel to Gyms, Athletes, Teams, Spectators, or other purchasers;

d.   total revenues derived from the sale of Varsity-branded Apparel at Events, including to Gyms, Teams, Athletes, Spectators, or other purchasers;

e.   total revenues derived from the sale of any Apparel at Events, including to Gyms, Teams, Athletes, Spectators, or other purchasers; and

f.   total revenues derived from licensing Apparel.

If such data are not kept, or have not been kept, in electronic form in the ordinary course of your business or are otherwise not available in electronic form, please produce such data in hard copy.

**REQUEST NO. 29:**  Documents and data (in machine-readable format such as *.csv, *.txt or other native flat file format) in as granular form as it is maintained, including by transaction or receipt, broken down by purchaser, including at minimum for each purchaser the name, address, phone number, email address, customer number, and main contact person or persons, itemized by product code, number of items sold, description of product, price, date, check, or other payment method, and transaction, sufficient to show the following:

a.   net price paid per item, including all rebates, discounts, and returns;

b.    whether the transaction occurred at an Event, over the internet, by phone, or in some other place;

c.   whether the transaction was associated with or made pursuant to a Contract with Varsity, an Offer from Varsity, including the Contract or Offer date, and the impact of the transaction on the purchaser's rebate status under the Contract or Offer;

d.   any and all additional fees or costs associated with the transaction; and

21

e.   costs paid by a Gym, Team, Athlete, Spectator, or other purchaser, for Apparel purchased at an Event.

If such data are not kept, or have not been kept, in electronic form in the ordinary course of your business or are otherwise not available in electronic form, please produce such data in hard copy.

**REQUEST NO. 30:**   Documents and data (in machine-readable format such as *.csv, *.txt or other native flat file format) sufficient to show Your actual costs, in as granular form as the information is maintained, for all business costs you incurred in any markets You believe Varsity competes, reported on a monthly basis if available, including:

a.   Your actual costs for running cheerleading camps, including venue costs, promotional costs, travel costs, advertising costs, compensation for judges, workers, employees, or contractors, insurance costs, and all other costs incidental to producing and promoting cheerleading camps;

b.   Your actual costs for owning Gyms, in as granular form as possible, including venue costs, promotional costs, advertising costs, compensation for workers, employees, or contractors, insurance costs, and all other costs incidental to maintaining Gyms;

c.   Your actual costs for producing choreography, in as granular form as possible, including promotional costs, advertising costs, compensation for choreographers, insurance costs, and all other costs incidental to producing and promoting choreography; and

d.   all other costs in an itemized fashion.

If such data are not kept, or have not been kept, in electronic form in the ordinary course of your business or are otherwise not available in electronic form, please produce such data in hard copy.

## IV.    OWNERSHIP OF VARSITY

**REQUEST NO. 31:**   Documents sufficient to show any proposed, contemplated, planned, pending or executed purchases, sales, acquisitions, mergers, joint ventures, divestitures, transfers, spinoffs or any other change in Your ownership or the ownership of any subsidiaries, corporate affiliates, departments, business units or other subdivisions of Your company.

**REQUEST NO. 32:**   Documents sufficient to show the beneficial ownership of Varsity and changes thereto over time, including documents sufficient to show any stock or other interests owned by each person holding a beneficial ownership.

**REQUEST NO. 33:**   Irrespective of time period, all documents provided by You to Charlesbank Capital Partners and/or Partners Group in connection with the purchase of all or an interest in Varsity by Charlesbank Capital Partners and Partners Group.

**REQUEST NO. 34:**   Documents sufficient to show the price paid by Charlesbank and Partners Group for Varsity or an interest in Varsity.

**REQUEST NO. 35:**   Irrespective of time period, documents sufficient to show the relationship between Varsity and Bain, including:

    a.   all documents reflecting or relating to any purchase agreements entered into by You and Bain and/or to any agreements whereby Bain obtained an equity interest in Varsity, including documents reflecting or relating to the negotiations preceding any such agreements and communications regarding such agreements;

    b.   documents sufficient to Identify each of Your Employees involved in approving or negotiating the terms of any purchase agreement produced in response to this request;

c.  all documents reflecting or relating to Due Diligence requests made by Bain to You related to Bain's acquisition, in whole or in part, of Varsity and any responses by You to such requests;

d.  all documents reflecting or relating to studies or analyses of the effects of any Contracts or Offers produced in response to this Request on Your revenues, success, strategy, profitability or on the prices or fees You charged Gyms, Athletes, Teams, or anyone else;

e.  all documents reflecting or relating to financial data, summaries, financial, SWOT or other analyses, white papers, slide decks, or other Due Diligence files related to the decision to sell Varsity, in whole or in part to Bain and/or Bain's decision to buy some or all of Varsity;

f.  all communications received or sent by Your current and/or former officers, directors, agents, accountants, employees, and partners related to Bain's acquisition of Varsity;

g.  all documents reflecting or relating to communications received or sent by Your current and/or former officers, directors, agents, accountants, employees, and partners related to Bain's Due Diligence investigation of Varsity, USASF, and/or USA Cheer;

h.  all documents discussing, referring to, or describing the methodology used by You as part of Bain's Due Diligence review of Varsity, USASF, and/or USA Cheer;

i.   all documents reflecting or relating to bids, indications of value, suggested bids, discussions of value or correspondence related to Varsity, USASF, and/or USA Cheer prepared by or on behalf of Bain;

j.   all documents including correspondence, communications, hand-outs, presentations, notes, minutes or summaries-related to Bain's purchase of Varsity;

k.   all promotional documents, public statements, announcements, disclosures, or press releases issued by Bain relating to Varsity, USASF, and/or USA Cheer;

l.   all documents or communications exchanged with Bain regarding USASF;

m.   all documents or communications exchanged with Bain regarding the Network Agreement or Family Plan or any other Contract or Offer made to Gyms, Teams, or Athletes;

n.   all documents or communications exchanged with Bain regarding acquisitions by Varsity of other producers of Events or Apparel;

o.   all contracts or written agreements or memorandum of understandings or drafts thereof between Bain and Varsity, Bain and Charlesbank, or Bain and Partners Group;

p.   all documents and communications between Bain's current and/or former officers, directors, agents, employees, and partners and any of Varsity's, USASF's, and/or USA Cheers directors or officers;

q.   all documents and communications between the current and/or former officers, directors, agents, employees, and partners of Charlesbank Capital Partners and/or Partners Group and any of Varsity's, USASF's, and/or USA Cheers directors or officers related to Bain's acquisition of Varsity; and

25

r.  all documents created, produced, published or issued by Bain or third party analysts or consultants regarding You and the All Star cheer industry, including without limitation, reports that analyze or project demand, revenues, income, profits or market share derived from or relating to All Star or other cheer Events, and All Star or other cheer Apparel.

## V.   ACQUISITIONS BY VARSITY

**REQUEST NO. 36:**  Documents sufficient to show the acquisitions of all Independent Event Producers, Apparel manufacturers, Gyms, and any other entity acquired by Varsity since 2004, broken down by name, date, and price.

**REQUEST NO. 37:**  Beginning in 2004, all internal communications between and among Varsity employees, as well as all presentations and analyses, relating to acquisitions of Independent Event Producers, including the JAM Brands, Apparel manufacturers and sellers, Gyms, and/or other cheerleading related entities, including the National Spirit Group or the National All Star Cheerleading Coaches Congress ("NACCC").

**REQUEST NO. 38:**  Beginning in 2004, all documents reflecting communications between You and each Independent Event Producer that Varsity sought to or in fact acquired.

**REQUEST NO. 39:**  Beginning in 2004, all documents reflecting communications between You and each Apparel manufacturer, seller, or supplier that Varsity sought to or in fact acquired.

**REQUEST NO. 40:**  Beginning in 2004, all documents reflecting communications between You and each Gym that Varsity sought to or in fact acquired.

**REQUEST NO. 41:**  Beginning in 2004, all documents reflecting communications between You and any other cheerleading related business or entity that Varsity sought to or in fact acquired.

**REQUEST NO. 42:**  All documents concerning any corporate practice, policy or strategy regarding acquisitions of Independent Event Producers, Apparel manufacturers, Gyms, and any other entities, including all documents reflecting Your analyses of the effects of Your acquisitions on Your alleged competitors, prices or fees for goods or services that You sell or provide, and the sales and revenues of You and those entities with which You compete.

**REQUEST NO. 43:**  Documents sufficient to show the effect of Varsity's acquisition of Independent Event Producers, Apparel manufacturers, Gyms, and any other entities on prices or fees for Your Events, Apparel, or other goods or services You sell.

**REQUEST NO. 44:**  Documents sufficient to show the effect of Varsity's absorption of other cheerleading entities, such as the NACCC, on Event rules.

**VI.  EVENTS**

**REQUEST NO. 45:**  Documents sufficient to identify each of Your Events during the Relevant Time Period, including (a) date; (b) location; (c) participating Gyms; (d) winning Gyms; (e) whether the Event is a Championship or Championship Qualifier, and, if the latter, for which Championship it is a Qualifier; (f) number of Bids available to be awarded; (g) number of Bids actually awarded; (h) type of Bids awarded; and (g) what each Gym and/or Team paid to participate in the Event, including a total amount per Gym and broken out on a Team-by-Team basis, if available.

**REQUEST NO. 46:**  All communications between Varsity and USASF concerning the awarding of Bids and related Bid data, including: (a) which Events are permitted to award Bids,

27

including what "tier" each Event is; (b) how many Bids may be awarded at each Event; (c) to
whom Bids may be offered; (d) what type of Bids may be awarded.

**REQUEST NO. 47:**  Documents sufficient to show what "tier 1" status is, including
documents showing: (a) the exclusivity of "tier 1" Events to offer fully-paid Bids to the
Cheerleading Worlds; (2) how an Event accesses "tier 1" status; (3) identifying which Events
have "tier 1" status; and (4) all documents discussing or reflecting the financial, economic or
competitive effects of limiting the amount of "tier 1" Events.

**REQUEST NO. 48:**  All documents reflecting or relating to Your competition with
Independent Event Producers, including any and all documents reflecting any efforts on Your
part to take business from your alleged competitors or potential competitors.

**REQUEST NO. 49:**  Documents sufficient to identify each person or entity You
consider to be, or previously considered to be, an actual or potential competitor of Varsity in
producing Events, selling Apparel, or in any other line of Varsity's business, including:

    a.   all documents analyzing, discussing or relating to the competitive strengths or
         weaknesses of actual or potential competitors;

    b.   for each year in the Relevant Time Period, documents sufficient to identify the
         individual shares of the market or markets in which you participate, for Varsity
         and each of Your actual or potential competitors in each market in which you
         compete, measured as a percentage of total sales in dollars (including income
         from all sources mentioned in Request No. 25, above);

    c.   all documents and data referencing or relating to determination of all prices and
         fees charged by You or your competitors: (a) for attendance or participation at

Events; (b) sale of Apparel; (c) or for any other good or service provided by
Varsity; and

    d.   all documents discussing the business models or other aspects of actual or
potential competitors of the Varsity in all markets in which Varsity competes,
including any documents reflecting comparisons of prices or fees charged by
Varsity relative to actual or potential competitors, marketing strategies, or
sponsorships.

**REQUEST NO. 50:**  Documents sufficient to show the requirements of a Gym and/or
Team to attend any Event, Championship Qualifier, or Championship, including all documents
discussing or reflecting the financial, economic or competitive effects of such requirements,
broken out an Event-by-Event basis.

**REQUEST NO. 51:**  Documents sufficient to show Your Event rules, including all
rules, limitations, or restrictions that You impose at Events or regarding Events, such as
geographic limitations as to where those Events may take place and who may participate.

**REQUEST NO. 52:**  All documents concerning any restrictions or rules prohibiting
Event producers from holding Bid-qualifying Events within a certain distance of any other Bid-
qualifying Events or within the same geographic area or region, including any and all
communications between You and USASF or anyone else regarding any such rules or
restrictions.

**REQUEST NO. 53:**  All documents reflecting or relating to the financial or economic
effects on Varsity's competitors in any market in which it competes of the Event rules,
limitations, and restrictions described in Request No. 52.

**REQUEST NO. 54:**  Documents sufficient to show the information included on Event scoresheets and/or Event scorebooks, including all Event scoring categories and points available at each Event.

**REQUEST NO. 55:**  Documents sufficient to show Varsity's process for computing final scores at its Events, including how Varsity processes judge score cards, and what Varsity employees do after judges submit their scores to compute a final score.

**REQUEST NO. 56:**  Documents identifying Varsity employees responsible for computing final scores for All Star Events after judges submit their score cards.

**REQUEST NO. 57:**  All documents concerning instructions given to Your Event judges.

**REQUEST NO. 58:**  All documents concerning or reflecting the relationship, if any, between the brand of Apparel, the choice of choreographer, or the ownership of a Gym and scoring at competitions.

**REQUEST NO. 59:**  All documents concerning the rules, limitations, or restrictions imposed by You on Athletes, coaches, judges, and officials relating to such persons' participation in Events hosted by Independent Event Producers or purchase of Apparel from Varsity's competitors.

**REQUEST NO. 60:**  Documents sufficient to identify the total number of Event tickets sold on a monthly, quarterly and annual basis, together with documents sufficient to show the location where the sales were made (city and state); what means was used to pay for the tickets (i.e., cash, credit card, debit card, check, etc.); and whether the tickets were sold by you or using a third party.

**REQUEST NO. 61:**  Documents sufficient to identify the website URLs where tickets to Events are available for purchase by consumers, either directly or indirectly through Varsity, and the years for which You utilized those URLs.

**REQUEST NO. 62:**  Documents sufficient to show all entities that You partner with for Event ticket sales, including the years for which You partnered with those entities, as well as all documents relating to financial arrangements between You and such entities.

**REQUEST NO. 63:**  Documents sufficient to show Your policies and practices concerning Event ticket pricing, including any documents reflecting or relating to the financial, economic or competitive effects of ticket pricing.

**REQUEST NO. 64:**  All communications between You and any Independent Event Producer about changes in Event ticket pricing.

**REQUEST NO. 65:**  Documents sufficient to show all travel subsidies paid to Gyms for attending Events for all Events hosted or sponsored by Varsity or USASF during the Relevant Time Period.

**REQUEST NO. 66:**  Documents sufficient to show rebates and discounts associated with participation in Varsity Events, including the number of Events that Gyms and/or Teams are required to attend, and/or the amount of money that they are required to spend, in order to receive such rebates and discounts, as well as changes to these amounts over time.

**VII.   ALL STAR APPAREL**

**REQUEST NO. 67:**  All documents reflecting communications between You or any of Your employees and any Gym and/or Team regarding decisions to purchase or purchases of Apparel.

31

**REQUEST NO. 68:**   All documents constituting or reflecting any policy or practice regarding what entities may showcase or sell merchandise at Varsity or USASF events as well as documents sufficient to identify the entities permitted to do so.

**REQUEST NO. 69:**   All documents reflecting Your policies relating to rival Apparel manufacturers' ability to showcase or sell Apparel at Your Events.

**REQUEST NO. 70:**   Documents sufficient to identify each person or entity You consider to be, or considered to have been, an actual or potential competitor of Varsity in producing Apparel, and:

a.   all documents analyzing, discussing or relating to the competitive strengths or weaknesses of actual or potential competitors;

b.   for each year in the Relevant Time Period, documents sufficient to identify the individual shares of the market or markets in which you participate, for Varsity and each of Your actual or potential competitors, measured as a percentage of total sales in dollars (including income from all sources mentioned in Request No. 28, above);

c.   all documents and data referencing or relating to the determination of prices and fees charged for Apparel by You or your competitors; and

d.   all documents discussing the business models or other aspects of actual or potential competitors of the Varsity. Responsive documents include any materials relating to comparisons of prices or fees charged by Varsity relative to actual or potential competitors.

**REQUEST NO. 71:**  Documents sufficient to show all entities that You partner with for Varsity-branded Apparel sales, including any financial arrangements between You and such entities.

**REQUEST NO. 72:**  Documents sufficient to identify the website URLs where Varsity-branded Apparel is available for purchase.

**REQUEST NO. 73:**  Documents sufficient to identify all Varsity-owned Apparel copyright designs.

**REQUEST NO. 74:**  All documents reflecting any steps You have taken to limit the sales of other Apparel manufacturers.

**REQUEST NO. 75:**  Documents describing the designs and specifications of Apparel.

**REQUEST NO. 76:**  Documents describing or analyzing Varsity's target customer base for its Apparel.

**VIII.   RELATIONSHIP BETWEEN VARSITY AND USASF**

**REQUEST NO. 77:**  Documents sufficient to show all monies paid by Varsity to USASF and all loans made by Varsity to USASF, including for each loan, gift, or payment of money, the terms of the loan, gift, or payment, what the loan, gift, or payment was used for, and, if applicable, USASF's repayment history.

**REQUEST NO. 78:**  Documents sufficient to show all monies paid by USASF to Varsity and all loans made by USASF to Varsity, including for each loan, gift, or payment of money, the terms of the loan, gift, or payment, what the loan, gift, or payment was used for, and, if applicable, Varsity's repayment history.

**REQUEST NO. 79:**  Documents sufficient to show the origins of the original 2003 trademark application for the marks "U.S. All Star Federation" and "USASF," including who

applied for the trademark and who was listed as the owner, and all documents sufficient to show

transfer and current ownership of those trademarks, if applicable.

**REQUEST NO. 80:**  Documents sufficient to show why Varsity decided to fund

USASF, including all documents relating to or reflecting whether USASF was funded to thwart a

competitive threat posed by the NACCC and how Varsity and USASF planned to or did thwart

competition.

**REQUEST NO. 81:**  Documents sufficient to identify what email addresses USASF

employees have used since 2003 for official USASF business.

**REQUEST NO. 82:**  Documents sufficient to identify the USASF employees, by name

and job title, who were paid by Varsity, and the amounts that were paid by Varsity, since 2003.

**REQUEST NO. 83:**  Documents sufficient to identify all individuals who have been

employed, at one time or another (even if not simultaneously), by both USASF and Varsity, or a

company owned by Varsity.

**REQUEST NO. 84:**  Documents sufficient to identify, since 2003, the owner of the

URL www.usasf.net, as well as the owner of all registrations associated with the URL, such as

"PERFECT PRIVACY, LLC."

**REQUEST NO. 85:**  Documents sufficient to show, beginning January 1, 2003, the

address(es) of USASF's and Varsity's offices.

**REQUEST NO. 86:**  Documents sufficient to identify all Varsity-owned and/or Varsity-

created cheerleading groups and/or governing bodies of which USASF is a "member," such as

USA Cheer, including the address and telephone numbers of each group and the employees of

each group.

34

**REQUEST NO. 87:**  Documents, including correspondence and communications, regarding the selection of USASF board members.

**REQUEST NO. 88:**  Documents, including correspondence and communications, in Your possession regarding proposed policy or rule changes at or within USASF.

## IX.   DOCUMENT RETENTION AND PRESERVATION

**REQUEST NO. 89:**  Documents sufficient to identify and describe the systems and structures You use to store, maintain, or utilize Your ESI, including all codes, information, documentation, ESI or programs necessary to utilize any ESI You are producing in response to these requests.

**REQUEST NO. 90:**  Documents sufficient to show Your preservation, retention, backup, storage, destruction, and litigation hold policies and practices for documents, electronic communications equipment, and data storage media (including phones, mobile devices, laptops, tablets, pagers, personal computers, servers, removable storage media, cloud storage, and backup media) as well as any changes to, enforcement of, and compliance with, those policies over the Relevant Time Period.

**REQUEST NO. 91:**  All documents concerning any known departure or variance from any of Your policies concerning the retention, storage, or destruction of any document identified in Request No. 90.

## X.   SEXUAL MISCONDUCT

**REQUEST NO. 92:**  Irrespective of time period, all statements, affidavits, declarations or other factual material referring to or submitted by You in connection with any investigation or litigation concerning the reporting of sexual misconduct, as well as the requests that prompted the provision by You of those documents.

35

**REQUEST NO. 93:**  Irrespective of time period, all documents provided by You to any news outlet or other organization in response to allegations of sexual misconduct by Varsity or USASF employees, at Varsity or USASF Events, or affiliated with Varsity or USASF in any way.

**REQUEST NO. 94:**  Documents sufficient to show Your policies regarding reporting of sexual misconduct.

**REQUEST NO. 95:**  All documents reflecting or relating to insurance or insurance policies relating to coverage for allegations or litigation related to sexual misconduct.

**REQUEST NO. 96:**  All communications between Varsity and USASF concerning the reporting of sexual misconduct, as well as all documents reflecting Your desire or efforts to thwart, limit or suppress such reporting.

**REQUEST NO. 97:**  Documents sufficient to identify any of Your workers, employees, or contractors, or Gym owners, coaches, choreographers, or judges associated with any of Your Events, that have been convicted of sex crimes against minors, including those whom are registered as sex offenders.

**REQUEST NO. 98:**  Documents sufficient to show the background check process for coaches and Gym owners before being permitted to participate in or attend Events, including how many times coaches and Gym owners were flagged for sexual misconduct.

**REQUEST NO. 99:**  Documents sufficient to show the effect of a person being flagged during any background check process, including whether flagged persons were still permitted to work in the All Star or cheerleading industry.

**REQUEST NO. 100:** Documents sufficient to identify all complaints You received from Your customers, Teams, Athletes, or Gyms regarding sex offenders within the All Star or

cheerleading industry, including the names and roles of any persons identified in the complaints

and the allegations against them.

**REQUEST NO. 101:** Documents sufficient to show any action taken by You in response

to the complaints identified in Request No. 100.

**REQUEST NO. 102:** All communications between Varsity and USASF concerning the

complaints identified in Request No. 100 and concerning any identified or suspected sex

offenders within the All Star or cheerleading industry.

**REQUEST NO. 103:** All documents reflecting or relating to any discussions,

deliberations, analyses, or communications regarding the effect, if any, of sexual misconduct and

surrounding publicity on Varsity's sales, revenues, costs, profitability, competition, or

competitors in any market in which Varsity competes.

**XI.     MISCELLANEOUS**

**REQUEST NO. 104:** All documents reflecting or relating to Your communications with

any of the Plaintiffs.

**REQUEST NO. 105:** All communications between You and anyone else, including

members of the proposed Class, referencing or relating to the allegations in the Complaint,

including the filing of the Complaint, exclusive of any communications protected by

attorney/client privilege.

**REQUEST NO. 106:**  All documents created, produced, published or issued by third

party analysts or consultants regarding Varsity and the cheerleading industry, including, reports

that analyze or project demand, revenues, income, profits or market share derived from or

relating to All Star or other Events, and All Star or other Apparel.

**REQUEST NO. 107:** Irrespective of time period, all statements, affidavits, declarations or other factual material referring to or submitted by You in connection with any investigation or litigation, including investigations and litigation related to Apparel and the definition of cheerleading as a sport, as well as the requests that prompted the provision by You of those documents.

**REQUEST NO. 108:** Irrespective of time period, all documents provided by You to the Federal Trade Commission, Securities and Exchange Commission, Department of Justice, a state attorney general, or any other governmental agency regarding Varsity or USASF, as well as all such requests that prompted the provision by You of those documents.

**REQUEST NO. 109:** All documents not otherwise responsive to any of these requests relating to Your answers to any of Plaintiffs' Interrogatories.

Dated: October 16, 2020

By: *Eric Cramer*
_____
H. Laddie Montague, Jr.*
Eric L. Cramer*
Mark R. Suter*
**BERGER MONTAGUE PC**
1818 Market Street, Suite 3600
Philadelphia, PA 19106
Telephone: (215) 875-3000
hlmontague@bm.net
ecramer@bm.net
msuter@bm.net

Jonathan W. Cuneo***
Katherine Van Dyck***
Victoria Sims*
**CUNEO GILBERT & LADUCA LLP**
4725 Wisconsin Avenue NW, Suite 200
Washington, DC 20016
Tel: (202) 789-3960
jonc@cuneolaw.com

38

kvandyc@cuneolaw.com
vicky@cuneolaw.com

Gregory S. Asciolla*
Karin E. Garvey*
Veronica Bosco*
Ethan H. Kaminsky*
**LABATON SUCHAROW LLP**
140 Broadway
New York, NY 10005
Telephone: (212) 907-0700
gasciolla@labaton.com
kgarvey@labaton.com
vbosco@labaton.com
ekaminsky@labaton.com

* Admitted pro hac vice
** Pro hac vice application pending
*** Pro hac vice application forthcoming

*Interim Co-Lead Counsel for the Proposed
Direct Purchaser Class*

J. Gerard Stranch, IV (TN BPR #23045)
Benjamin A. Gastel (TN BPR #28699)
**BRANSTETTER, STRANCH &
JENNINGS, PLLC**
223 Rosa Parks Ave. Suite 200
Nashville, TN 37203
Telephone: (615) 254-8801
gerards@bsjfirm.com
beng@bsjfirm.com

*Liaison Counsel for Plaintiffs and the
Proposed Direct Purchaser Class*

Benjamin D. Elga***
**JUSTICE CATALYST LAW, INC.**
81 Prospect Street
Brooklyn, NY 11201
Tel: (518) 732-6703
belga@justicecatalyst.org

Brian Shearer***
Craig L. Briskin***
**JUSTICE CATALYST LAW, INC.**
718 7th Street NW

Washington, DC 20001
Tel: (518) 732-6703
brianshearer@justicecatalyst.org
cbriskin@justicecatalyst.org

Roberta D. Liebenberg***
Jeffrey S. Istvan***
Mary L. Russell*
**FINE KAPLAN AND BLACK, R.P.C**
One South Broad St., 23rd Floor
Philadelphia PA 19107
Tel: (215) 567-6565
rliebenberg@finekaplan.com
jistvan@finekaplan.com
mrussell@finekaplan.com

* Admitted pro hac vice
** Pro hac vice application pending
*** Pro hac vice application forthcoming

Nathan A. Bicks (TN BPR #10903)
Frank B. Thacher III (TN BPR #23925)
**BURCH, PORTER, & JOHNSON, PLLC**
130 North Court Ave.
Memphis, TN 38103
Telephone: (901) 524-5000
nbicks@bpjlaw.com
fthacher@bpjlaw.com

Aubrey B. Harwell, Jr. (TN BPR #002559)
Charles Barrett (TN BPR #020627)
Aubrey B. Harwell III (TN BPR #017394)
**NEAL & HARWELL, PLC**
1201 Demonbreun St., Suite 1000
Nashville, TN 37203
Telephone: (615) 244-1713
aharwell@nealharwell.com
cbarrett@nealharwell.com
tharwell@nealharwell.com

*Additional Counsel for Plaintiffs and the
Proposed Direct Purchaser Class*

40