# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| FUSION ELITE ALL STARS, et al.,<br><br>        Plaintiffs,<br>  v.<br><br>VARSITY BRANDS, LLC, et al.,<br><br>        Defendants. | **Civ. Action No. 2:20-cv-02600** |
| JESSICA JONES, et al.,<br><br>        Plaintiffs,<br>  v.<br><br>BAIN CAPITAL PRIVATE EQUITY, et al.<br><br>        Defendants. | **Civ. Action No. 2:20-cv-02892** |
| AMERICAN SPIRIT AND CHEER<br>ESSENTIALS, INC., et al.,<br><br>        Plaintiffs,<br>  v.<br><br>VARSITY BRANDS, LLC, et al.,<br><br>       Defendants. | **Civ. Action No. 2:20-cv-02782** |

**DEFENDANTS' RESPONSE TO PLAINTIFFS' JOINT MOTION TO MODIFY SCHEDULING ORDERS**

**TABLE OF CONTENTS**

ARGUMENT ................................................................................................................................... 4
   I.   Plaintiffs Failed to Pursue Discovery in a Timely Fashion.................................................. 5
      A.   *Fusion Elite*............................................................................................................ 5
      B.   *Jones* ...................................................................................................................... 8
      C.   *American Spirit*................................................................................................... 12
   II.  Given Plaintiffs' Dilatory Tactics, Good Cause Does Not Exist to Modify the Scheduling Orders.................................................................................................................................. 13
CONCLUSION.............................................................................................................................. 15

# **TABLE OF AUTHORITIES**

**Cases**

*Inge v. Rock Fin. Corp.*,
  281 F.3d 613 (6th Cir. 2002) ...................................................................................................5

*Lightbody v. Kellogg USA, Inc.*,
  No. 10-cv-02772, 2012 WL 13065400 (W.D. Tenn. Aug. 3, 2012) .........................................5

*Mayhue v. Cherry Street Servs., Inc.*,
  598 F. App'x 392 (6th Cir. 2015) ............................................................................................4

**Other Authorities**

Fed. R. Civ. P. 16 ............................................................................................................................4

Fed. R. Civ. P. 45 ..........................................................................................................................11

Defendants hereby respond to Plaintiffs' Joint Motion to Modify Scheduling Orders. For the reasons stated below, Plaintiffs' motion should be denied.

## ARGUMENT

Plaintiffs seek to modify the scheduling orders in the three cases, each of which the Court entered with all parties' consent. Plaintiffs fail, however, to demonstrate "good cause" to do so, which is required under Rule 16(b)(4) of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 16(b)(4) ("A schedule may be modified only for good cause and with the judge's consent."); *see also Mayhue v. Cherry Street Servs., Inc.*, 598 F. App'x 392, 399-400 (6th Cir. 2015) (affirming denial of plaintiff's request to extend the discovery period because plaintiff failed to show good cause for the extension). Indeed, in the agreed orders, the Court emphasized that "[a]bsent good cause shown, the deadlines set by this order will not be modified or extended." (*Fusion Elite* ECF No. 61; *American Spirit* ECF No. 100; *Jones* ECF No. 61.)

Plaintiffs seek to extend all deadlines, including a deadline that has already passed,[1] largely based on assertions that they desire to take more discovery. But, contrary to Plaintiffs' assertions, discovery in this case can be completed in the time provided in the scheduling orders and the other dates do not need to be relaxed. Plaintiffs may want more time—as lawyers almost

---

[1] Among the deadlines Plaintiffs want to extend are the deadlines to seek leave to amend the pleadings or to add parties, which currently was November 19, 2021. Plaintiffs filed the instant motion the night before, continuing a pattern of requesting extension the day of the deadline or in this instance the night before. Although joining in the request for extension, Plaintiffs in *American Spirit* filed a motion to amend their Complaint in compliance with the deadline. Plaintiffs provide no particular basis for this extension other than to argue that these deadlines are "largely dependent on having sufficient discovery to uncover facts and make determinations on the liability of additional parties." (Pls.' Mem. at 14-15.) But Plaintiffs have received significant discovery from Defendants and cannot show good cause to extend this deadline merely by speculating that something in the additional depositions they may take if given more time will somehow provide a basis for such amendments that was not apparent on the original deadline.

invariably do—but to the extent they find themselves under timing pressure, it is only because they wasted many months before pressing forward with discovery as they should have from the beginning. This does not support a change to the schedule. Indeed, "[t]he primary measure of Rule 16's 'good cause' standard is the moving party's diligence in attempting to meet the case management order's requirements." *Lightbody v. Kellogg USA, Inc.*, No. 10-cv-02772, 2012 WL 13065400, at *1 (W.D. Tenn. Aug. 3, 2012) (quoting *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 625 (6th Cir. 2002)). In other words, a party may not use issues created by its own dilatory conduct to justify a scheduling extension, which is exactly what Plaintiffs improperly seek to do.

Plaintiffs complain that the "original period for completion of discovery, ranging from 16 months in *Fusion Elite* to just 10 months in *Jones*, is fairly compressed, particularly when compared to other antitrust cases or class actions involving similar complex disputes." (Pls.' Mem at 13.) But Plaintiffs fail to mention that this Court *rejected* the *Fusion Elite* parties' original proposed schedule, which is almost identical to the schedule that Plaintiffs now again ask the Court to impose. The fact that the Court already rejected the proposed schedule weighs further against Plaintiffs' motion.

## I. Plaintiffs Failed to Pursue Discovery in a Timely Fashion

Despite Plaintiffs' assertions that they have made "good faith and diligent efforts to pursue and obtain discovery from defendants and non-parties," Pls.' Mem. at 3, the "outstanding" discovery about which Plaintiffs complain is only outstanding because of their own inaction. Time pressure caused by a party's own inaction is not "good cause" to modify a scheduling order.

### A. *Fusion Elite*

The *Fusion Elite* Plaintiffs argue that "ongoing negotiations significantly shifted production deadlines, which *Fusion* Plaintiffs had counted on in negotiating the deadlines

5

adopted by the Court in the *Fusion Elite* Scheduling Order—for amendment of pleadings, the close of fact discovery, expert reports and briefings." (Pls.' Mem. at 6.) But that leaves out the crucial fact that all of the "deadlines" for the production of data or documents were "subject to any unresolved objections of the producing Party." (*Fusion Elite* ECF No. 61 at 2.) Plaintiffs issued more than one hundred vague, vastly overbroad, and in many instances incomprehensible document requests to Varsity. As to the unobjected-to portions of those requests, Varsity met the pertinent deadlines. Varsity also spent many hours over several months discussing the remainder of Plaintiffs' requests with Plaintiffs, which ultimately culminated in a resolution on June 22, 2021. (Kaiser Decl. ¶ 2.) As Plaintiffs concede, the additional documents produced subject to that agreement were produced months ago.

The original schedule set out a process for resolving objections, which set a deadline to bring those disputes to the Court. Although Plaintiffs were well aware of the February 18, 2022 discovery cutoff, they repeatedly asked Defendants to agree to extensions to that deadline so as to continue discussions, which, from Varsity's perspective, Plaintiffs were conducting in an inefficient and meandering manner.[2] (Kaiser Decl. ¶ 3.) The Court was assured that "all other deadlines set forth by the Court will remain the same." (*Fusion Elite* ECF No. 100.)

In any event, as Plaintiffs concede, Varsity produced a substantial majority of its documents by June 2021. (Kaiser Decl. ¶ 4.) Plaintiffs waited two more months to start requesting dates for depositions and even then only requested three depositions. Varsity promptly provided a date for the one current employee that Plaintiffs sought, only to have that

---

[2] Ultimately, after months of discussion, Plaintiffs abandoned virtually all of their demands. (Kaiser Decl. ¶ 3.) Had Plaintiffs moved with alacrity, negotiations would have been concluded months earlier.

date rejected. (Kaiser Decl. ¶ 5.) Plaintiffs finally got around to taking their first deposition on November 16 and 17. (*Id.*)

As to USASF, the *Fusion Elite* Plaintiffs contend that "significant document productions are outstanding." (Pls.' Mem. at 7.) But Plaintiffs waited until August 9, 2021—nearly six weeks after Magistrate Judge Claxton's order instructing Plaintiffs to refine their search parameters and almost ten months after discovery began in *Fusion Elite*—to provide USASF with a search term proposal, which Plaintiffs identified as "the same search terms proposed by Plaintiffs . . . on May 27, 2021," contrary to Magistrate Judge Claxton's order. (Berkowitz Decl. ¶ 3.) Nevertheless, pursuant to Magistrate Judge Claxton's guidance at the hearing, USASF endeavored to respond to Plaintiffs' proposal by refining the custodians, search terms, and time frames relevant to each area of inquiry identified by Plaintiffs and provided a response two weeks later on August 23, 2021. (Berkowitz Decl. ¶ 4.)

After receiving USASF's response, Plaintiffs took another four weeks to respond, providing a proposal on September 22, and USASF ran numerous variations of searches in an effort to further refine Plaintiffs' proposed search parameters to target only those documents which were actually relevant to this case. (Berkowitz Decl. ¶¶ 5-6.) Each search report involved multiple days of processing and analysis, and USASF provided a response on October 19. (Berkowitz Decl. ¶ 6.) Although Plaintiffs had no such technological limitations to explain their delays, Plaintiffs took yet another four weeks to respond to USASF's October 19 proposal, providing their next ESI proposal on November 20. (Berkowitz Decl. ¶ 7.) USASF is in the process of running additional search reports to identify any remaining areas of dispute, but the parties are in agreement on many of the areas of inquiry. (Berkowitz Decl. ¶ 8.) Accordingly, while USASF does not dispute that a significant portion of its document production is currently

7

outstanding, once again this is due to Plaintiffs' repeated delays in providing search term proposals to USASF. (Berkowitz Decl. ¶ 9.)

Despite Plaintiffs' lengthy delays, USASF anticipates being able to substantially complete production sufficiently in advance of the fact discovery deadline, such that Plaintiffs can depose USASF witnesses before the current deadline. (*Id.*) Plaintiffs, however, have not yet requested any depositions from USASF, provided USASF with any Rule 30(b)(6) topics, or even identified which or how many USASF witnesses they intend to depose. (Berkowitz Decl. ¶ 10.) Plaintiffs also waited *ten months*—until October 1, 2021—to raise any issues with USASF's response to Plaintiffs' first set of interrogatories, served by USASF on December 28, 2020. (Berkowitz Decl. ¶ 11.) USASF sent Plaintiffs a proposal for supplementation on November 2, 2021, but Plaintiffs have yet to respond. (*Id.*)

As to third-party discovery, the *Fusion Elite* Plaintiffs state that they have served 27 subpoenas on non-parties "between November 2, 2020 and the present" and 16 subpoenas remain outstanding, including from Rebel and Nfinity. (Pls.' Mem. at 7.) But the *Fusion Elite* Plaintiffs failed to serve a number of these subpoenas promptly. For example, the *Fusion Elite* Plaintiffs served a subpoena on PricewaterhouseCoopers LLP on September 29, 2021 and on Rubenstein Public Relations, Inc. and Quinnipiac University on October 27, 2021, more than a year after discovery began in the *Fusion Elite* matter. (Kaiser Decl. ¶ 6.) The *Fusion Elite* Plaintiffs cannot now point to these outstanding subpoenas as cause for a modification of the scheduling order when they chose to issue the subpoenas well into the discovery period, knowing full well that discovery was set to close on February 18, 2022.

### B. *Jones*

The *Jones* Plaintiffs complain that Defendants have made "meager" productions of documents. Pls.' Mem. at 8. But, despite having agreed to the February 18, 2022 discovery

8

cutoff and the other deadlines and despite assuring the Court during the January 6, 2021 scheduling conference that they would "get going on the discovery … right away," *American Spirit* ECF No. 101 at 30:6-7, the *Jones* Plaintiffs waited nearly three months to even serve document requests on any of Defendants, first serving discovery on all Defendants except Jeff Webb on March 26, 2021 and then on Jeff Webb on April 8, 2021. (*Jones* ECF No. 82.) Defendants timely served responses to these discovery requests. (*See id.*) Many more weeks passed until Plaintiffs asked to meet and confer on those responses.

Like the *Fusion Elite* Plaintiffs, the *Jones* Plaintiffs repeatedly asked for extensions to the deadline to bring document disputes to the Court. (Kaiser Decl. ¶ 9.) Ultimately, at the *Jones* Plaintiffs' request, the parties twice moved the Court to extend that deadline, first to July 30, 2021 and then to September 17, 2021. (*Jones* ECF No. 82; *Jones* ECF No. 93.) As in *Fusion Elite*, the Court was assured that if it granted these extensions, "all other deadlines set by the Court will remain the same." (*Id.*)

As in *Fusion Elite*, the *Jones* Plaintiffs did not pursue negotiations with any urgency. (Kaiser Decl. ¶ 8.) Instead, many weeks went by between discussions and, even worse, Plaintiffs repeatedly changed positions as to what custodians and requests were even at issue. Ultimately, the *Jones* Plaintiffs filed motions to compel on September 18, 2021, one day *after* the deadline that they had already extended twice. (*See Jones* ECF No. 100-04.) The Court permitted the late filing by the *Jones* Plaintiffs but admonished Plaintiffs that the Court would "not accept any other late requests for extensions from Plaintiffs, even by 'just' 24 hours." (*Jones* ECF 106 at 2.)

9

As to Varsity, the parties have resolved their disputes and the *Jones* Plaintiffs have withdrawn their motion to compel. (*Jones* ECF No. 166.)

The *Jones* Plaintiffs likewise waited until September 18 to move to compel as to Charlesbank and Bain even though the position they have brought to the Court through those motions—apparently seeking the production of *every* document about Varsity from *seventeen* custodians and numerous other sources, as unreasonable and improper under the Federal Rules as that would be—has remained nearly unchanged from the beginning.[3] (Kaiser Decl. ¶ 9.) Given the *Jones* Plaintiffs' unwillingness to limit their requests in any way, the *Jones* Plaintiffs should have brought their motions months earlier and, had they done so, they would have been resolved months ago. Further undermining their argument that an extension to the discovery period is warranted, in the meantime the Court dismissed Charlesbank and Bain from the *American Spirit* case and the same outcome seems likely here given the paucity and inadequacy of the allegations against them. And Charlesbank and Bain produced documents in response to the subpoena issued to them in *Fusion Elite*, which have been produced to the *Jones* Plaintiffs. (Kaiser Decl. ¶ 7.)

As to Defendant Webb, the *Jones* Plaintiffs overstate the extent of outstanding discovery issues. Contrary to their assertions, the relevant time period for production was resolved during the October 28, 2021 hearing on Plaintiffs' motion to compel, during which Magistrate Judge

---

[3] For example, Plaintiffs' letter of July 6, 2021 demanded production from the files of nineteen Charlesbank and Bain custodians; two and a half months later, Plaintiffs moved to compel production from seventeen custodians, including all of the Charlesbank custodians listed in their July 6 letter along with an additional custodian identified by the *Jones* Plaintiffs on August 6. Bain and Charlesbank have been equally (and consistently) clear that they would not agree to such massive ESI discovery, particularly in light of the paucity of allegations against them as owners of Varsity from late 2014 to mid-2018 (for Charlesbank) and from mid-2018 (for Bain). (Kaiser Decl. ¶ 9.)

Claxton held that the applicable time period should be January 1, 2015 to December 1, 2021. (Gaffney Decl. ¶ 4.) Mr. Webb substantially completed production of documents for the time period of January 1, 2015 to December 10, 2020 by the deadline in the Court's Scheduling Order. (*See Jones* ECF No. 110-1 at ¶ 6.) This limits Mr. Webb's outstanding discovery obligations to a small number of text messages for the relevant time period, and documents from December 10, 2020 to December 1, 2021, the volume of which will be minimal, particularly insofar as Mr. Webb left his employment at Varsity at the end of 2020. (Gaffney Decl. ¶¶ 5-6.)

As to third parties, the *Jones* Plaintiffs' argument that the schedule should be extended because they have served forty subpoenas on gyms to date, and expect to serve a total of seventy subpoenas to gyms, "seeking data related to the pass on of the alleged illegal overcharges from gyms to athletes (and their parents)," Pls.' Mem. at 9, does not withstand scrutiny. The *Jones* Plaintiffs did not start serving gyms with subpoenas until October 18, 2021, more than nine months after the scheduling conference at which they promised the Court they would be proceeding with discovery forthwith. (Kaiser Decl. ¶ 10.) They try to excuse their delay by arguing that they needed Varsity's transaction data to determine who to subpoena, but even taking that curious argument at face value, that data was produced several months before they served their first subpoena. Their further excuse that "most of these organizations are unfamiliar with the subpoena process" and "need time and outreach to comply with a subpoena," Pls.' Mem. at 15, is neither here nor there; this is something that the *Jones* Plaintiffs should have anticipated. Moreover, any party—whether familiar with the subpoena process or not—would balk at providing information of the scope demanded by the *Jones* Plaintiffs' subpoenas, which on their face are plainly overbroad, unduly burdensome, and improper under Rule 45(d)(1). As to schools, the *Jones* Plaintiffs delayed identifying whether Varsity's scholastic transactional data

was data that they wanted, instead repeatedly saying that they were considering whether the data they had received to date was sufficient for their purposes. Once the *Jones* Plaintiffs finally explained that they wanted this particular data, the issue was resolved. Again, Defendants should not bear the cost of Plaintiffs' dilatory behavior.

The *Jones* Plaintiffs' final plea that they "will need to serve a second set of requests for production to address issues that may arise when Plaintiffs have an opportunity to review documents or as follow ups to depositions," Pls.' Mem. at 9, is risible. The scheduling order does not permit a second bite at the apple and, in any event, such a second round of written discovery after depositions would require discovery to be extended indefinitely.

### C. *American Spirit*

For their part, the *American Spirit* Plaintiffs provide no basis at all, much less good cause, for the extension they seek. Instead, they raise two irrelevant issues. First, they incorrectly state that there was "difficulty gaining compliance with Rule 26(f)." (Pls.' Mem. at 10.) This apparently refers to a dispute the parties had while the case was pending in the Northern District of Georgia *over fourteen months ago*. Plaintiffs fail to inform the Court that they moved the Northern District of Georgia for an order compelling a Rule 26(f) conference, and the Court instead granted Defendants' motion to stay and then, shortly thereafter, granted Defendants' motion to transfer the case to this Court. (*See* Plaintiffs' Motion to Compel, *American Spirit and Cheer Essentials, Inc. v. Varsity Brands, LLC*, No. 20-cv-03088 (Sept. 22, 2020), ECF No. 46; *see also* Order Granting Joint Motion to Transfer Action to the Western District of Tennessee, *American Spirit and Cheer Essentials, Inc. v. Varsity Brands, LLC*, No. 20-cv-03088 (Oct. 27, 2020), ECF No. 56.)

In any event, the Court need not concern itself with this distraction—the case has been pending in this Court since October 2020, the parties conducted their Rule 26(f) conference in

November 2020, and discovery opened in December 2020. Obviously, none of this justifies extending the discovery and other deadlines in this matter—deadlines that the American Spirit Plaintiffs agreed to even after the supposed "difficulty gaining compliance with Rule 26(f)." Similarly, Plaintiffs airily assert that some of the pleadings in the *Fusion Elite* and *Jones* actions have not been docketed in the *American Spirit* action. They provide no reason why this would provide cause for the changes to the scheduling order that they seek. (And, in any event, all of the pleadings in all of the cases are publicly available or accessible under the Court's Order Allowing Sharing of Discovery Material.)

The only assertion the *American Spirit* Plaintiffs make that is actually related to discovery is their acknowledgment that discovery into their non-cheerleading claims has been stayed pending Defendants' motions to dismiss, an order of the magistrate judge that they chose not to appeal. But that is hardly a reason to modify the scheduling orders across all of the actions, especially since the motions to dismiss the non-cheerleading claims may be (and certainly should be) granted. In any event, discovery into the non-cheerleading aspects of the *American Spirit* case will need to be addressed separately should they survive the motions to dismiss.[4]

## II. Given Plaintiffs' Dilatory Tactics, Good Cause Does Not Exist to Modify the Scheduling Orders

Having failed to pursue discovery with the appropriate urgency given the agreed and Court-ordered discovery deadline, Plaintiffs now say they have much to do and not enough time

---

[4] Similarly, the *Fusion Elite* Plaintiffs argue that they "have not received any discovery related to the sexual misconduct allegations that are subject to Varsity and USASF's pending motion to strike," Pls.' Mem. at 12, which is to say the parties agreed not to pursue such discovery while the motion to strike was pending. But like the non-cheerleading aspects of the *American Spirit* case, the motions to strike the unrelated allegations on this topic—a topic which the Plaintiffs in the other cases have not pursued and the Plaintiffs in *Fusion Elite* labelled irrelevant when discovery requests on the topic were directed to them, *see Fusion Elite* ECF No. 82-1—provides

to do it. They state that they have "dozens" of depositions remaining to be scheduled and that their expert will have inadequate time to prepare an expert report. Plaintiffs have not identified the witnesses for these "dozens" of additional depositions; to date they have identified about a dozen individuals they want to depose, and, to the extent the individuals are employees of Defendants, Defendants have offered dates well in advance of the February 18, 2022 close of discovery, accepting the dates that Plaintiffs themselves proposed where possible. As noted, Plaintiffs did not identify any deponents until August and did not take their first deposition until November 16, a date of their own choosing.

Plaintiffs point to a footnote in the scheduling order that provides that "the deadlines for completing depositions and closing fact discovery are contingent on the Parties' substantially completing production of data and documents sufficiently in advance of the February 18, 2022 deadline for completing depositions and closing fact discovery so that the Parties have sufficient time to prepare for and utilize the documents at depositions." (*Fusion Elite* ECF No. 61 at 2; *American Spirit* ECF No. 100 at 2; *Jones* ECF No. 61 at 2.) But the February 18 deadline is still almost three months away. Moreover, this provision was not intended to permit one party to modify the scheduling order as a result of its own inaction. In any event, Varsity has produced all of the documents it expects to produce in accordance with its agreements with the *Fusion Elite* Plaintiffs and will soon likewise complete the production of supplemental materials it agreed to produce in the *Jones* case. The other Defendants likewise expect to complete any

---

no basis to modify the scheduling orders across all of the cases. Should the motion to strike be denied and the *Fusion Elite* Plaintiffs be allowed to go forward with these allegations, the appropriateness of the discovery sought by the parties against each other would need to be assessed separately.

agreed-to remaining productions in short order, subject in the case of USASF to resolving a few remaining search term issues.

## CONCLUSION

Plaintiffs assured the Court on multiple occasions that they could meet the requirements of the scheduling orders imposed by the Court and that the multiple extensions requested by Plaintiffs would not interfere with these deadlines. Given the months of delays and inaction on the part of Plaintiffs, Plaintiffs have failed to demonstrate that there is good cause to modify the scheduling orders. Plaintiffs' motion should be denied.

Dated: December 2, 2021

Respectfully submitted,

/s Matthew S. Mulqueen

George S. Cary*
Jennifer Kennedy Park*
Steven J. Kaiser*
CLEARY GOTTLIEB STEEN & HAMILTON LLP
2112 Pennsylvania Avenue, NW
Washington, DC 20037
Phone: (202) 974-1500
Fax: (202) 974-1999
gcary@cgsh.com
jkpark@cgsh.com
skaiser@cgsh.com

* Admitted *pro hac vice*

Matthew S. Mulqueen (TN #28418)
Adam S. Baldridge (TN #23488)
BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ
165 Madison Avenue, Suite 2000
Memphis, TN 38103
Phone: (901) 526-2000
Fax: (901) 577-0866
mmulqueen@bakerdonelson.com
abaldridge@bakerdonelson.com

*Attorneys for Varsity Brands, LLC; BSN Sports, LLC; Varsity Spirit, LLC; Stanbury Uniforms, LLC; Herff*

*Jones, LLC; Bain Capital, LP; Charlesbank Capital Partners, LLC; Varsity Brands Holding Co., Inc.; Varsity Spirit Fashions & Supplies, LLC; Varsity Intropa Tours*

Grady Garrison (TN #008097)
Nicole D. Berkowitz (TN #35046)
BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ
165 Madison Avenue, Suite 2000
Memphis, TN 38103
Phone: (901) 526-2000
Fax: (901) 577-0866
ggarrison@bakerdonelson.com
nberkowitz@bakerdonelson.com

*Attorneys for U.S. All Star Federation, Inc. and USA Federation for Sport Cheering, d/b/a USA Cheer*

Paul Coggins*
Brendan Gaffney*
LOCKE LORD LLP
2200 Ross Avenue, Suite 2800
Dallas, TX 75201
Phone: (214) 740-8000
Fax: (214) 740-8800
pcoggins@lockelord.com
bgaffney@lockelord.com

* Admitted pro hac vice

Edward L. Stanton III (TN #018904)
BUTLER SNOW LLP
6075 Poplar Avenue, Suite 500 Memphis, Tennessee 38119 Telephone: (901) 680-7336
Fax: (901) 680-7201
Edward.Stanton@butlersnow.com

*Attorneys for Jeff Webb*

16