1                          UNREDACTED

2              IN THE UNITED STATES DISTRICT COURT
             FOR THE WESTERN DISTRICT OF TENNESSEE
3                          WESTERN DIVISION

4        ------------------------------------------------

5    JESSICA JONES, MICHELLE              )
     VELOTTA, and CHRISTINA
6    LORENZEN on behalf of
     Themselves and All others
7    Similarly Situated,
                                          )
8    VS                                   )NO.2:20-CV-02892
                                          )JACKSON, TENNESSEE
9                                         )
     VARSITY BRANDS, LLC;                 )
10   VARSITY SPIRIT, LLC; VARSITY
     FASHIONS & SUPPLIES, LLC;
11   U.S. ALL STAR FEDERATION,
     INC,;JEFF WEBB;
12   CHARLESBANK CAPITAL
     PARTNERS, LLC; and BAIN
13   CAPITAL PRIVATE EQUITY;

14       ------------------------------------------------

15                 EXPEDITED TRANSCRIPTION

16                   VIA FTR RECORDING

17                  NOVEMBER 19, 2021

18

19           BEFORE THE HONORABLE TU PHAM,

20          UNITED STATES MAGISTRATE JUDGE

21

22               KRISTI HEASLEY, RPR
                OFFICIAL COURT REPORTER
23            U.S. COURTHOUSE, SUITE 450
              111 SOUTH HIGHLAND AVENUE
24             JACKSON, TENNESSEE 38301

25

                      UNREDACTED TRANSCRIPT

```
 1                          APPEARANCES

 2    FOR THE PLAINTIFFS:

 3    AHSLEA SCHWARZ, ESQ.
      PAUL LLP
 4    601 Walnut Street, Suite 300
      Kansas City, KS 64106
 5

 6    KATHERINE MALONE, ESQ.
      HARTLEY LLP
 7    101 West Broadway, Suite 820
      San Diego, CA 92101
 8

 9

10

11    FOR THE DEFENDANTS:

12    STEVEN KAISER, ESQ.
      CLEARY GOTTILEB STEEN & HAMILTON LLP
13    2112 Pennsylvania Avenue, NW, Suite 1000
      Washington, DC 20037
14

15    MATTHEW MULQUEEN, ESQ.
      NICOLE D. BERKOWITZ, ESQ.
16    BAKER DONELSON BEARMAN CALDWELL & BERKOWITZ
      165 Madison Avenue, Suite 2000
17    Memphis, TN 38103

18

19    BRENDAN PATRICK GAFFNEY, ESQ.
      LOCKE LORD LLP
20    2200 Ross Avenue, Suite 2800
      Dallas, TX 75201
21

22    EDWARD L. STANTON, III, ESQ.
      BUTLER SNOW LLP
23    6075 Poplar Avenue, Suite 500
      Memphis, TN 38119
24

25
```

UNREDACTED TRANSCRIPT

1                          EXAMINATION INDEX

2                        NO TESTIMONY OFFERED

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                              EXHIBITS

2                          NO EXHIBITS MARKED

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1               THE COURT:  Afternoon everyone.

2               Judge Pham.  Here to conduct a hearing in

3   case of Jones versus Varsity Brands and other

4   codefendant, Case No. 20-cv-02892.

5               I will depend on the parties to let me

6   know if we are waiting for anyone to connect.  It's a

7   little after 2:00 o'clock.  But is there someone who

8   needs to be here that isn't here yet?

9               MS. SCHWARZ:  Ashlea Schwarz for

10  plaintiffs.  I believe we have everyone we need on our

11  side, Your Honor.

12              THE COURT:  Okay.

13              MR. KAISER:  Your Honor, for defendants

14  Charlesbank, Bain and the Varsity defendants, we are all

15  present and ready to proceed.

16              THE COURT:  Okay.  So let's get a -- just

17  for purposes of -- I'll have the parties who are on the

18  video session state their names for the record.

19              On behalf of the plaintiffs, who are the

20  attorneys here?

21              MS. SCHWARZ:  Ashley Schwarz on behalf of

22  plaintiffs.

23              MS. MALONE:  Katherine Malone on behalf of

24  the plaintiffs as well.

25              THE COURT:  And then that's it.  For the

1  defendants.

2          Mr. Kaiser, you already introduced

3  yourself with Varsity Brands and Charlesbank and Bain.

4          MR. KAISER:  That's correct, Your Honor,

5  yes.

6          THE COURT:  Okay.  Then who else?

7          MR. MULQUEEN:  Afternoon, Your Honor.

8  Matt Mulqueen also on behalf of the Varsity defendants,

9  Bain and Charlesbank.

10          MS. BERKOWITZ:  Afternoon, Your Honor.

11  I'm Nicole Berkowitz.  I'm here on behalf of defendant

12  U.S. All Star Federation.

13          THE COURT:  Okay.  And I think someone's

14  of microphone is off.  Mr. Gaffney, looks like your --

15          MR. GAFFNEY:  Brendan Gaffney.  I'm here

16  on behalf of defendant Jeff Webb.  Good afternoon.

17          THE COURT:  Good afternoon.

18          MR. STANTON:  Afternoon, Your Honor.  Ed

19  Stanton here, also on behalf of defendant Jeff Webb.

20          THE COURT:  Good to see you again, Mr.

21  Stanton.  It's been a while.

22          MR. STANTON:  Yes, it has been, Your

23  Honor.  Good to see you.

24          THE COURT:  Then who else?

25          MR. KAISER:  We have other people who,

UNREDACTED TRANSCRIPT

1    for -- example, Nico Banks from my office.  Although, he

2    has not actually entering an appearance, he is on the

3    call.

4                    THE COURT:  Okay.  That's fine.  I assume

5    there is -- I have my staff also on the call here as

6    well.

7                    Okay.  Then unless anyone else has to

8    chime in --

9                    MR. SUTTER:  Your Honor, good afternoon.

10   This Mark Sutter from Burger Montague on behalf of the

11   Fusion Elite All Star plaintiffs.

12                   THE COURT:  Okay.  All right.  Well, let's

13   go ahead and get started.

14                   So I got that email yesterday regarding

15   some of the issues here raised that we're going to

16   address with Varsity.  And it sounded like in the email

17   that those parties were able to resolve all their

18   disputes, which is great.  But I think in that email

19   y'all had asked to be excused from participating, at

20   least as it relates to those issues.

21                   And I did want to just quickly touch upon

22   that motion and those issues to see if there is anything

23   that the Court needed to do.

24                   I don't know if the parties anticipated,

25   anticipated submitting a proposed order resolving, or

1    whether the motion was being withdrawn as to those

2    parties.  I just wasn't clear on that.  So I wanted to

3    hear from you all on that.

4              And then whoever is on that matter, if you

5    want to disconnect from the call then you can.

6              MR. KAISER:  Our understanding, Your

7    Honor, is that we resolved these by agreement, and that

8    no further action by the Court is needed.  I guess for a

9    housekeeping measure, that would mean technically the

10   motion is withdrawn.  But, obviously, we are going to

11   follow through on what we agreed to do.

12             MS. MALONE:  Yeah.  Just to follow up.  We

13   would be happy to submit a proposed order reflecting the

14   terms that we came to.

15             THE COURT:  Okay.  So I'm glad I raised

16   that, because two different things there.  Right?  If

17   there is a -- I hope there was a meeting of the minds and

18   I disrupt things here.

19             But on the one hand, if there is a motion

20   that the parties have resolved and want the terms of that

21   agreement memorialized in a court order with the

22   authority of the Court to impose any sanctions, I

23   suppose, I'm not inviting that.  But to have the force of

24   any order, that's one thing.

25             If it's that you're withdrawing the motion

1   in light of this agreement, and then there is nothing for

2   the Court to resolve or enter, that could be something

3   very, very different.

4                MR. KAISER:  Your Honor, we spent weeks

5   and months negotiating this.  Certainly, having a court

6   order at the end of it was not a part of that

7   negotiation.  I would say that if that is what the

8   plaintiffs have in mind, they should have raised it a

9   long time ago.  Furthermore, it will only serve to

10  complicate the issue.

11               We know what we're supposed to do.  We're

12  going to go off and do it.  And I think really the right

13  thing to happen here is the motion should just be denied

14  as moot.

15               THE COURT:  Ms. Malone.

16               MS. MALONE:  Well, if defendants -- you

17  know, it's a (inaudible).   I have no doubt that they

18  will.  I'm not really sure what the downside of a

19  proposed order memorializing the terms of the agreement

20  are, so that's our preference.

21               MR. KAISER:  The downside is that multiple

22  times in negotiations the defendant -- the plaintiffs

23  have changed their position after agreements were made.

24  And I fear that if you give them another opportunity,

25  they'll, once again, change their position.  And then

1   we'll be back before you arguing about what they agreed

2   to versus what they submitted as a order.  We'll be doing

3   this for the next two months.

4             I just think that is a terrible use of

5   resources in a case that is already far too

6   resource-intensive.  I would object to that.  I think the

7   motion should just be denied as moot.

8             That was the agreement as we understood it

9   and we're ready to go.

10            MS. MALONE:  I mean, the agreement was

11  memorialized in writing and it's fairly clear.  I think

12  it would be relatively easy to just copy and paste into a

13  proposed order and do the reformatting.

14            So, again, we disagree.  And I think just

15  as a housekeeping matter, it would be preferable to have

16  it in writing.  And then that would also address your

17  concerns about any ambiguities or disputes that may arise

18  in the future.

19            MR. KAISER:  That just --

20            THE COURT:  Hold on a second.

21            When you say my concern, your concern,

22  were you talking to Mr.  Kaiser or the Court?

23            MS. MALONE:  Sorry.  I was talking to

24  Mr. Kaiser.

25            Your Honor, I think actually it would

1    smooth this out.  You know, we certainly don't want to

2    bring unnecessary motions before you.  That's part of why

3    we came to this agreement.  And so the benefits of

4    memorializing this in a way that every one is clear on, I

5    think outweigh whatever concerns the Varsity defendants

6    have.

7                    THE COURT:  Okay.  So I'm glad we had

8    this, because that was a question I had.  I wasn't clear,

9    based on that short email I received, what the parties'

10   expectations were as far as the end product, the end

11   result of that, whether it was just a private agreement

12   resolved and the motion would be denied as moot, as being

13   withdrawn by, as being withdrawn, or whether the parties

14   anticipated having the Court enter an order memorializing

15   the parties' agreement in an order, I suppose.

16                    And I don't know whether -- it doesn't

17   matter to me whether it's phrased as a motion, as an

18   order granting the motion or denying it, or rather just

19   an order regarding, so no one wins or loses.

20                    But I think that was my question, which I

21   think has been answered.  Which is, y'all have not agreed

22   on how to ultimately resolve the motion insofar as an

23   order versus withdrawing the motion.

24                    MR. KAISER:  Well --

25                    MS. MALONE:  It wasn't contemplated in our

1    discussions in our agreements, but yeah.

2                    MR. KAISER:  Judge Pham, she submitted --

3    Ms.  Malone submitted something to the Court that says,

4    that the plaintiffs and the Varsity defendants have

5    successfully resolved the outstanding discovery disputes

6    outlined in ECF No. 100, which is the motion we're

7    talking about.

8                    And then goes on to say, the parties would

9    like to request the Court take this motion off calendar

10   for the November 19, 2021 hearing.

11                   So I don't know what better evidence there

12   is than -- what we did was resolve the outstanding

13   discovery disputes and, therefore, the motion is moot.

14                   Now, obviously, they're trying to get

15   something here, which is some sort of order that they can

16   then say we're in contempt of down the line.  That is not

17   what we agreed to.  And I don't know that we have an

18   agreement then.

19                   It would be unfortunate for this to hang

20   up on this issue.  But Ms. Malone said, well, I can just

21   cut and past what we already have.  And then she said,

22   but it would be good to have more clarity.

23                   Well, those two thing are not consistent

24   with one another.  I believe we have clarity.  There is

25   no need to get, involve the Court in this at this point

1  because we resolved it.

2          We gave up a lot of things that we would

3  not have to avoid Court involvement.  And now it seems

4  like we're getting pushed into Court involvement, which

5  is not appropriate.

6          THE COURT:  Okay.  Well, I don't know --

7  it sounds like this is not an issue that y'all have seen

8  eye to eye on.  And perhaps with further discussion

9  between the two of you, there could be some agreement

10  about the agreement insofar as how to resolve this motion

11  and the form in which it should be resolved.

12          So rather than taking up all the parties'

13  time on that, why don't you all just have an off line

14  conversation, and then try to work it out.  And if you

15  can't, then I can have just those parties on a separate

16  call next week to resolve it, if you all can't resolve

17  the form in which the motion should be resolved.  Okay?

18          But I did have a question, though.

19  Insofar as the term, the one issue that came up was the

20  time frame, the relevant time period.  And I was curious

21  and interested to know -- again, I assume I'm not asking

22  either side to violate the agreement to disclose what it

23  is y'all agreed to regarding time frame.

24          That seems to be a recurring theme in this

25  case, so just wanted to raise that.

1          Go ahead, Ms. Malone.

2          MS. MALONE:  Yes.  So, yes, Your Honor,

3  we -- as to the time period, we agreed the January 1st,

4  2015, date to June 30th, 2020, because Judge Claxton had

5  told us it was the Court's position that plaintiffs were

6  capped at the front end there.  And that was the Court's

7  position and believed as to what was appropriate.  So we

8  took that guidance and used that as a benchmark.

9          THE COURT:  So January 2015 to December

10  2020?

11          MR. KAISER:  June 30th, 2020.

12          MS. MALONE:  June 30th, 2020.  Yes, Your

13  Honor.

14          THE COURT:  Okay.  All right.  So I guess

15  the parties involved in that portion of the hearing today

16  can just talk to each other and see if you can agree what

17  the right approach should be.  And then you can let me

18  know here, let's say, Monday by 5:00 o'clock whether you

19  have agreed to the form in which the case, that that

20  motion be resolved.

21          If you tell me it's not been resolved,

22  I'll go ahead and set this for a separate hearing.  And

23  I'll invite everyone, but it's really just for those who

24  are involved in this particular motion that would be

25  asked to attend, to see if I can help you resolve that

1    dispute.  Okay?

2                    Anything else on that motion, those

3    issues?

4                    MS. MALONE:  No, Your Honor, not from the

5    plaintiffs.  Thank you.

6                    THE COURT:  Okay.  All right.  So for

7    those -- if there is any attorneys that's limited to

8    that -- whoever wants to remove themselves from the call,

9    they can.  I'm not going keep you to this.

10                    Let me move on quickly the to Webb

11   proposed orders here.  I had gotten the dueling versions

12   from the parties after the hearing before Judge Claxton.

13   Some variation, but it appears that the one about

14   plaintiffs seeking documents for earlier time period

15   based upon a good cause showing is still an option, looks

16   like from the plaintiff's version.  And the defense

17   doesn't have that.

18                    MR. KAISER:  Yes, Your Honor.

19                    THE COURT:  So there is a bit of a

20   difference there.  So I wanted to talk to the Webb

21   parties on the different versions and which one I should

22   be entering.

23                    MS. SCHWARZ:  This is Ashlea Schwarz for

24   the plaintiffs.  I think that's spot on.  The only issue

25   we have is in the hearing, Judge Claxton did say that she

1   thought that was the appropriate time frame.  But, of

2   course, if there was discovery or some reason down the

3   road to come back, that she would entertain additional

4   argument, if we believed that a further time period is

5   necessary.

6           So I think while we're in agreement on the

7   time period, we would just like the order to reflect that

8   we do have that right from the prior ruling to come back,

9   should the need arise.

10          THE COURT:  Any response?

11          MR. GAFFNEY:  Yes, Your Honor.  I think as

12  for Defendant Webb, Judge Claxton was quite clear on the

13  time frame going from January 1st, 2015, to December of

14  2021.

15          The additional language that plaintiffs

16  propose we find to be unnecessarily superfluous.  While

17  Judge Claxton, her exact words during the hearing were,

18  quote, you know, free to argue down the line if something

19  comes up in discovery that indicates some, you know, real

20  need to go back further, end quote.

21          And the very next sentence she followed

22  that up with, but I'm going to stand pat on the

23  January 1st, 2015, time frame.

24          It certainly did not include a reference

25  to being able to seek an expanded time period just for

1    good cause, as is stated in plaintiff's proposed order.

2    And she also -- I would also say that, including the

3    additional language, and Judge Claxton's comments, I

4    would say that was akin to last Friday when we were

5    before you and the order granting plaintiff's joint

6    motion to facilitate coordination of depositions and

7    related actions.

8             As you recall, the plaintiff sought up to

9    11 hours in deposition time, which was granted.  And you

10   advised on the record -- and I'm just paraphrasing, not

11   to quote -- that if it were to come up that that extended

12   time period is being abused or, you know, being --

13   parties are being asked unnecessarily duplicative

14   questions, then defendants could seek relief from the

15   Court.

16            You know, that didn't need to be, that

17   didn't need to be put in the order.  And I just think

18   this is similar.  And the fact that plaintiffs can seek

19   relief from the Court if they have some very real need to

20   go back further that comes up in discovery, they know how

21   to do that without that having to be expressly written

22   into an order.

23            THE COURT:  Okay.  Well, I guess the

24   difference then is simply something that, I suppose, any

25   party could re-raise with the Court, if there is

1   additional information that comes to light that is a

2   basis and is material for the Court to consider in

3   reevaluating, reconsidering a prior ruling.  I suppose

4   that's always an option, regardless of what the language

5   of the order says.

6           But it seems like from reviewing the

7   transcript with Judge Claxton, that that was the time

8   frame that she had in mind.  And it also sounds pretty

9   consistent with what -- sorry.  I'm getting some -- Mr.

10  Turner.  Mr. Turner.  Hello.  Okay.  Thank you.

11          But perhaps it looks like, given what

12  Judge Claxton had previously ruled, that it would be, the

13  defense version on that would be consistent.  As with

14  anything, I suppose, if there is additional information

15  comes to light, and there is a basis for the Court to

16  reevaluate, then I suppose that's always an option

17  anyway.

18          What about the other differences here?

19          MR. GAFFNEY:  The only other difference,

20  we actually resolved.  And it was -- the only material

21  difference was plaintiff's version had said that

22  production pursuit to that order shall be substantially

23  completed not later than 30 days from entry of the order.

24  And the version that Mr. Webb proposed, that we proposed

25  on behalf of Mr. Webb, said 45 days.  And the parties

1   have agreed on the 45 days.

2           THE COURT:  Okay.  What about this, at

3   least 14 day prior to deposition, that was in the

4   plaintiff's version.  Is that in here?

5           Plaintiff version says 30 days prior to

6   order, and at least 14 days before deposition for

7   Mr. Webb.

8           MR. GAFFNEY:  In all reality, based on

9   scheduling, I don't know that Mr. Webb's deposition would

10  be taking place within 45 days, in any event.  So I don't

11  know that that langue matters to plaintiffs, unless they

12  say otherwise.

13          THE COURT:  Ms. Schwarz.

14          MS. SCHWARZ:  Well, the language matters

15  to us.  Depends on when the -- let me say this.  If it's

16  a rolling production and we don't have all the documents,

17  and we have a beginning of documents 45 days from now,

18  but not a conclusion of it, that's the only time I can

19  see that would become an issue, is if the whole

20  production couldn't be done in 45 days.

21          I don't know that to be the case.  I just

22  think -- that's the issue, is we want to have a cut off,

23  so that if we're getting ready for depositions, it's not,

24  well, we provided some, but we get dumped with majority

25  of it later down the road.

1        MR. GAFFNEY:  It will be substantially

2    complete in 45 days pursuant to the order, so it

3    wouldn't -- there wouldn't be a dump within 14 days of

4    the, of the deposition.

5        THE COURT:  I guess theoretically if there

6    are documents produced three days before his deposition,

7    that's a concern, even if it's a smaller amount.

8        Yeah.  Then I certainly appreciate the

9    parties trying to cut off any problems down the road, but

10   I'm not sure this one -- what to do.

11       It seems to me here the defendant's

12   version is pretty straight forward.  I guess, of course,

13   if it's produced two or three days beforehand, and it's

14   100 documents, versus 50, you could reschedule the

15   deposition, which the parties would not be very happy

16   with, I image, with Mr. Gaffney producing it when

17   everyone is trying to coordinate these things.  So I

18   assume that's not going to be a problem.

19       Okay.  Anyone else wish to be heard about

20   these competing versions before we move on?  Okay.

21       MS. SCHWARZ:  Not from the plaintiffs,

22   Your Honor.

23       THE COURT:  All right.

24       MR. GAFFNEY:  Not from --

25       THE COURT:  I'll enter the defense

1    versions then that was submitted.  And we'll get that

2    docketed today.

3              So let's see what is next on my list.

4              Well, I guess, the next one is the

5    Charlesbank and Bain parties.

6              I did get your email raising the,

7    addressing the disputes.  And it appears that the Bain

8    and Charlesbank defendants' position, in light of what

9    occurred before Judge Claxton, and their review of Judge

10   Lipman's order, feel that discovery should not proceed as

11   to those defendants until the Court rules on the motion

12   to dismiss as to them.

13             Is that where you all are at on that?

14             MR. KAISER:  That is definitely were

15   Charlesbank and Bain are.  And as you pointed out, that's

16   where Judge Claxton was.

17             THE COURT:  Okay.  Plaintiffs.

18             MS. SCHWARZ:  Your Honor, we -- yes, that

19   was where Judge Claxton was.

20             I would like to preface with, she

21   didn't -- at the hearing, it was three weeks ago, and the

22   order had just come down in the American Spirit case.

23   And she didn't hear any argument or any -- didn't open it

24   up for even do we agree -- obviously, we don't agree that

25   the motion to dismiss is going come out the same way when

1    you have different counsel, different complaints.

2                    Her presumption was that our complaints

3    were identical, and our complaints were identical, and

4    that's not correct.  And so I would just like the Court

5    to know that there was no discussion, no argument.  It

6    was not a ruling that we weren't going to, she just

7    deferred it, saying, I think it's coming soon, so I'm

8    going to put it off to see if it happens.  That was over

9    three weeks ago.

10                    Obviously, their position hasn't changed,

11   that there is no negotiations, there is no productions

12   that are going to happen.

13                    For us the issue is, again, it's been

14   three weeks and we haven't seen an order from the Judge.

15   We don't know when that's coming.  Depositions are going

16   on where Charlesbank and Bain are referenced and

17   discussed, and we are hamstrung with having no discovery.

18                    We have 12 documents, insurance policies,

19   but no documents.

20                    So, for example, a deposition occurred

21   this week where both the Varsity people were asked about

22   Charlesbank and Bain in their interactions with them and

23   what they said.  And there was testimony, yeah, Bain did

24   significant due diligence long in advance of the -- and

25   I'm paraphrasing, obviously -- long in advance of the

1    purchase.

2              And we had nothing, because we don't have

3    any documents that we can even look to to begin our

4    discovery.  So we're getting hamstring with the other

5    defendant depositions.

6              So it's impacting more than just our

7    ability to prosecute the case against these two

8    defendants, it's hurting our ability across the board.

9              So I would argue that, one, Judge Lipman

10   very clearly stated that Fusion and our case are

11   different.  They have different classes.  They have

12   different claims.  They're not overlapping.  They may be

13   competing.  And that discovery would not be stayed during

14   the motion to dismiss Practice.

15             So we would appreciate if the Court could

16   hear argument today, so that we can move forward with

17   discovery for our case across the board.

18             THE COURT:  Okay.  Response.

19             MR. KAISER:  Yes, Your Honor.

20             First of all, Judge Lipman -- Judge

21   Claxton did not say anything about the ruling from Judge

22   Lipman coming down soon.  So that's not what she based

23   her decision on.

24             I would also preface this by saying that

25   if we're going to -- every time the plaintiffs don't like

1    something that you or Judge Claxton says, we're going to

2    reargue it three weeks hence.  That's not conducive to

3    getting this case done.

4            Judge Lipman has put us on a very, on a

5    schedule.  And she's made it clear that she wants to move

6    forward, not constantly revisit things.

7            What Judge Claxton did say, which is

8    totally correct, is that there are pending motions to

9    dismiss Bain and Charlesbank.  The arguments are exactly

10    the same.  They are based on complaints with pretty much

11    the exact same foundation, which is true.

12            The distinctions that Ms. Schwarz raised

13    are not really distinctions.  Yes, they're different

14    employers, that's true.  But that's not the point.

15            The point is that Bain and Charlesbank are

16    the owners, or (inaudible) were the owners of Varsity.

17    And there is nothing in the complaint to justify holding

18    them liable for whatever Varsity is said to have done.

19            So that's the same issue in both of them.

20    We would all like to get these motions to dismiss

21    resolved, of course.

22            Judge Lipman has done a great job in all

23    respects, but it takes time to get through these things.

24    And I expect she will probably rule on these pretty soon.

25    But then again, I don't really know.

1            As you know this issues of being hamstrung

2    or whatever, that's really inaccurate.  The fact is that

3    the parties, Varsity and the U.S.A., the parties that

4    actually were involved in cheerleading have produced an

5    inordinate amount of materials, including all sorts of

6    materials that were given to Bain and Charlesbank as the

7    owners.

8            In addition, there are multiple, probably

9    more than 10 third parties who have produced thousands

10   and thousands, and tens of thousands of documents

11   regarding the purchase of Bain -- purchase of Varsity by

12   Bain, by Charlesbank, due diligence materials.  I mean,

13   more than you could spend the rest of your life using,

14   going through, et cetera.

15           So the idea that they don't have this

16   stuff is just factually incorrect.

17           What we're talking about now is digging

18   into two guys' files and the emails of two guys, Bain and

19   Charlesbank, that are probably, almost surely going to be

20   out of this case, based on what happened with the

21   American Spirit case, and they should not be subject to

22   party discovery.  It's just that simple.

23           That's what Judge Claxton ruled.  And I

24   would submit to this Court that's what the final outcome

25   here should be.

1          And it's just unfair to us to constantly

2     have to come back and argue these same things over and

3     over again, deal with the same things over and over

4     again.

5          Plaintiffs did not ask Judge Claxton for

6     time -- they accepted the ruling and moved on.  I think,

7     frankly, when the magistrate change happened, they saw an

8     opportunity to maybe get a second shot at this and now

9     here we are.

10          But I don't think you should give them a

11     second shot at this.  I think we should be done with this

12     until the motion to dismiss is decided.

13          THE COURT:  Well, there is no motion to

14     stay discovery as to Charlesbank and Bain, Correct?

15     Judge Claxton had decided that without a motion?

16          MS. SCHWARZ:  Correct.

17          MR. KAISER:  She decided to set the motion

18     to compel aside pending the motion to dismiss decision by

19     Judge Lipman, that's correct.

20          THE COURT:  Right.  So effectively staying

21     discovery as to Charlesbank and Bain.  But there was --

22     just reviewing the docket, there was no motion to stay

23     the discovery as to those, pending the resolution of

24     motion to dismiss.

25          MR. KAISER:  Correct.

1              THE COURT:  All right.

2              So a few things here.  First, is that --

3    and, perhaps, the judges can differ.  But at least for

4    me, normally I would require the parties to brief a

5    motion to stay discovery, and even in the situation where

6    it is just a part of the case, so that the Court can give

7    both sides advance notice that I'm considering it and an

8    to opportunity to be heard.

9              Because in this case, if Bain and

10   Charlesbank, there is no discovery as to them, and if

11   Judge Lipman -- and I know defense disagrees -- but if

12   Judge Lipman decides to not grant the motion, and

13   discovery then is to proceed against them, with everyone

14   else that's been on board, and having engaged in

15   discovery, will -- what would Bain and Charlesbank

16   defendants say at that point?

17             Are they going to ask for a redo for

18   discovery?  Or are they going to accept the discovery

19   that has been conducted, depositions, and utilize it, and

20   even if they haven't said -- an opportunity to question

21   witnesses and participate in meaningful over the next

22   whatever it is days, weeks, months, until --

23             MR. KAISER:  Bain and Charlesbank will not

24   use that set of circumstances as a reason to redo any

25   discovery.  I can assure the Court of that.

1          In terms of a motion to stay discovery, if
2   the Court would prefer we file such a motion and brief
3   that, that would be perfectly fine.
4          THE COURT:  Okay.
5          MS. SCHWARZ:  Obviously, Your Honor, there
6   wasn't a motion to stay.  And this was not some gotcha
7   act by us.  We had asked for this hearing.  And the
8   change of Magistrate Judge didn't change anything, other
9   than you put -- you put them back on calendar.  And to
10  us, that meant we were entitled to raise our position
11  with you.
12         If they get to now file a motion to stay,
13  it's going to be on the same basis that we just heard
14  here without, again without -- I can give you our
15  position on it.  But, again, it's just going to delay it.
16         And we have got depositions.  And,
17  frankly, his position that we have the evidence because
18  other third parties produced documents, you know, we want
19  it from the defendants we sued.  We don't want to go
20  through the files of people we didn't sue to see what
21  they have to say about the people we did sue.
22         And they are, in our view, in our case,
23  Charlesbank and Bain are relevant because we allege that
24  their acquisitions involve valuation of Varsity.  It
25  involved the markets.  It involved the competition.  And

1    whether or not they're parties, they have relevant
2    evidence that, just like in other cases, we'll serve
3    third party subpoenas and have to get it that way, should
4    the motion be ruled on.
5              So this is just a –– to me it's a kicking
6    the can down the road.  How much longer can be extend
7    this without having to participate?  Without having to
8    even participate in meeting and conferring about –– let's
9    say we win and the Judge does deny the motion.
10             What could we agree to?  What could we say
11   this is what we're going to go forward with, should that
12   occur?  That doesn't require hundreds of thousands of
13   dollars, as they posit, in discovery.  But I just –– it's
14   very hard to say, sure, let's now brief a motion to stay,
15   when we've been fighting about this for months and months
16   and months, and we have nothing to just say, sure, we'll
17   go with a couple more months of briefing to see whether
18   or not we can push a discussion forward.  Because we
19   might, we might win, and we might lose, but that's how
20   this works.  And the Judge don't stay discovery simply
21   because one side thinks that they're certainly right.
22             MR. KAISER:  We would be happy to talk to
23   them about what happens if the motion to dismiss is
24   denied, that –– that's the first time that's been
25   proposed.

1          To clarify on what I was talking about,
2   what else has been produced.  What has been produced is
3   exactly what she says they want, which is the due
4   diligence materials.  That has produced by other parties
5   had access to them, as I understand it.
6          And so, yes, there is no -- that's not
7   really, you know, the issue.  If they don't want to go
8   through things that have been produced, that's up to
9   them, I supposed.
10          The other thing is, Fusion Elite, the
11   other case, did issue a subpoena to us, to Bain and to
12   Charlesbank.  That subpoena was complied with many months
13   ago.  They have all the documents that were produced in
14   response to those subpoenas.
15          So, you know, I don't know.  This is,
16   obviously, more, a lot more stuff.  Hundreds of thousands
17   of dollars in additional expense.  And, you know, that's
18   party discovery.  And we just don't -- given where things
19   stand with Judge Lipman on the motion to dismiss, again,
20   we don't think that's appropriate at this time.
21          We also don't think it's appropriate on
22   the merits, for many reasons we could -- we got into in
23   the motion -- in the motion to compel briefing.  But at
24   the threshold, we don't think this should be something
25   that gets resolved right now because of that.

UNREDACTED TRANSCRIPT

31

 1          But in terms of talking to plaintiffs

 2  about alternative possibilities if the motion to dismiss

 3  is denied, we would be all, certainly in favor of doing

 4  that.

 5          THE COURT:  Well, that's the other thing

 6  is, thinking through the different scenarios.  Even if

 7  the motion to dismiss were granted against Charlesbank

 8  and Bain, that wouldn't foreclose the plaintiff to obtain

 9  third party discovery through subpoena from your clients.

10  Would they be entitled to the exact same information that

11  they're asking for through the discovery request here?

12  Would it be a narrower set?

13          MR. KAISER:  I don't think so, Your Honor,

14  because what they're asking for here is so beyond what

15  any third party would ever be compelled to produce in a,

16  under a Rule 45 subpoena.  I don't think it's really --

17  well, it's completely inappropriate under the Federal

18  rules as they pertain to parties as well, but it's over

19  the top inappropriate when it comes to a third party.

20          And, again, they have been subject to

21  third party subpoenas by Fusion Elite, which, frankly,

22  sought a lot of the same kinds of things they're asking

23  for.  You know, a certain portion of that was produced

24  and that resolved it with Fusion Elite.  So that has kind

25  of already played out.

1           Now they may say, we can issue our own

2      subpoenas.  And I suppose they could.  I would remind the

3      Court, again, that the Judge, Judge Lipman has ordered

4      these guys to coordinate on discovery.  And I guess this

5      would just be another example where they chose not to.

6      But, you know, that could be what happens here.

7           And if it does, it does, but we would have

8      to take those issues up as they come.

9           THE COURT:  I'll let Ms. Schwarz respond.

10     Sounds like she wants to respond to some of your

11     comments.

12           But ultimately here we're are we if -- I'm

13     not suggesting that a motion to stay is required;

14     although, I think, quite frankly, it probably would make

15     sense for the record.

16           But insofar as the outcome, if the Court

17     agrees with Charlesbank and Bain's position that

18     discovery should be stayed in light of the pending

19     dispositive motion in the Jones case, coupled with Judge

20     Lipman's opinion in the American Spirit case, that it

21     would, from your position, would apply equally to this

22     case and the complaint, that wouldn't necessarily prevent

23     the Jones plaintiff from issuing the Rule 45 subpoenas

24     and getting some information from those defendants that

25     they might argue would be relevant to this, to the Jones

1    litigation.

2              And if that were the case, would it be --

3    and it sounds like, and I wasn't aware of this, is that

4    with Fusion Elite, that -- Mr. Kaiser, your comment was

5    that their subpoena sought largely the same type of

6    information that the party discovery that Jones has

7    served upon your clients in this case is seeking.

8              And if that's the case, and if the

9    discovery was produced in the Fusion Elite case, and if

10   that's going to overlap with what Ms. Schwarz had sent to

11   you for the party discovery, then maybe the issues in

12   dispute is much much narrower than what has been set

13   forth in the emails to my chambers.

14             MS. SCHWARZ:  Your Honor, if I could,

15   obviously, respond to that.  We disagree.  I'm not one to

16   assume intent by anyone else, so I prefer to just let you

17   know that in the Fusion litigation, obviously,

18   Charlesbank and Bain are not defendants.

19             What is sought from them in those

20   litigations is not what we are seeking in our request for

21   production of documents in this case.

22             Second, in Fusion they produced 13

23   documents and 19 documents, respectively.  That's it.

24   That's, that is so wholly insufficient and is not related

25   to what we are requesting here.

1            And I think it would be inappropriate for

2  us to have to argue why we should get documents through a

3  third party subpoena right now, when we don't have the

4  benefit of briefing that for Your Honor, to provide you

5  with the law of what is appropriate and is not

6  appropriate, and what would be included in a Rule 45

7  subpoena.

8            You know, we intentionally crafted our

9  request to not repeat what was done in Fusion.  We aren't

10  seeking what was done in Fusion.  There were no custodial

11  searches done in Fusion.  We weren't involved -- in fact,

12  their discovery was served before we even had our

13  complaint on file.

14            So to say, well, gosh, Fusion did this.

15  We didn't have any participation in what Fusion did.

16  Again, it is -- it's a different claim.  We have them as

17  defendants here.  And I don't think that just saying,

18  well, we produced 13 and 19 documents, so you got

19  everything you can possibly need, it's just not, it's not

20  reality.

21            So I would argue that, Your Honor, this is

22  not something where we can just all sit aside and say,

23  gosh, go look at everyone's else's documents until a

24  ruling comes down.  We would like to have guidance from

25  the Court so that the parties can get started.  That if

1    the motion goes our way, that we have guidance from the

2    Court on what that time period is going to look like,

3    what those custodians are going to look like, what the --

4    which files are going to be searched.

5                  I think these are not issues pertaining to

6    particularly requests, so much as a broader issue of

7    what, what this is going to look like.

8                  So while I raise the idea that we need to

9    talk about this, we've been asking to talk about this.  I

10   would say not me personally, so Mr. Kaiser doesn't need

11   to say, well, I wasn't involved, because it wasn't me

12   personally over the summer.  But our firms have been

13   communicating about, well, what about these custodians,

14   what about this?

15                 And we have been saying all along, you

16   know, where can we come to an agreement on something?

17   And the response is just, no.  We'll give you one

18   custodian --

19                 MR. KAISER:  Your Honor --

20                 MS. SCHWARZ:  -- we'll give you a two year

21   period.

22                 So I think it would not do us well to just

23   walk away from this and say, file a motion to stay, and

24   then maybe you guys chat, because we're not going to get

25   anywhere.  The position is going to be, we're just going

1    to keep pulling this out until a ruling on the motion has
2    been handed down.
3              MR. KAISER:  Your Honor, I'm sure the last
4    thing you want on a Friday afternoon is to -- refer
5    discussions.  But it is true that Ms. Schwarz was not
6    involved in those.
7              The fact is that that the position that
8    the plaintiffs put out months and months ago in terms of
9    everything she just talked about, despite many hours of
10   conversations with them, has never moved one inch.
11             No matter what we say, no matter what we
12   offer, no matter what we try, it's always been the
13   day-one position.  There has been no negotiating with
14   these folks.
15             Yes, they get on the phone.  But when you
16   try to talk to them, nothing.  We tried to reach an
17   accommodation with them.  They rejected it.  They want 17
18   custodians from these two clients.
19             Let's put that in prospective.  In the
20   Varsity defendants, the Varsity defendants, the people
21   that actually ran this business that they say, is really
22   what this case is about, the total number of custodians
23   is 20.  And yet they want 17 from these two, you know,
24   people who just owned the company during various periods.
25             So, yes, nothing -- we have not been able

UNREDACTED TRANSCRIPT

1  to reach an kind of conclusion with them, because they

2  refuse to even consider the fact that they're asking for

3  way too many custodians, asking for every document about

4  Varsity.  So many problems that are weighted out in the

5  motion to compel.

6          So I really -- I know judges hate hearing

7  about this kind of stuff, she said, he said, whatever.

8  But since it was bought up, I felt I had to, compelled to

9  respond.

10          They have not moved from their position

11  one iota as far as I can see in months and months.

12          THE COURT:  Okay.  So here are some

13  thoughts.  It would seem just initially that, that what

14  Judge Claxton had -- whether you call it a ruling or

15  thoughts on the pending motion to dismiss and it's impact

16  in discovery in this case, I would tend to agree with.

17  It would appear that the pending motion before Judge

18  Lipman on the Jones case that relates to Bain and

19  Charlesbank, the analysis, would -- again, without

20  briefing from the parties, and that's why I raised it,

21  would appear to have, as Judge Claxton commented, not

22  exactly her words, but that it would appear to be

23  applicable in this case.  But again, subject to being

24  convinced otherwise by the parties through appropriate

25  briefing on an issue that I do think is important.

1                Because ultimately, if the Court were to

2    agree with the defendants and say, okay, what Judge

3    Claxton says is, appears to be correct, and I would agree

4    with it, but, ultimately, it wouldn't prevent plaintiffs

5    any way to -- if there was a stay, it wouldn't be a stay

6    as to complete discovery for Charlesbank and Bain, but

7    rather to party discovery, I suppose.  In which case they

8    could then issue subpoenas and proceed that way.

9                So are we just kicking the can down the

10   road to where it would be a month from now, which is

11   these same are before the Court in the form of third

12   party subpoenas?

13               And, Mr. Kaiser, you've argued that, well,

14   it would be over, overbroad and expansive to allow

15   plaintiffs to take third party discovery against your

16   clients in a case where -- and let's assume for a moment

17   they are dismissed.  I don't know.  I suppose we can

18   address that at the appropriate time.

19               But in that situation, maybe you're right,

20   that there would be a narrower set of documents that

21   plaintiffs would be entitled to as non-parties.

22               But then what happens is that later on, if

23   it turns out that your client ends up being back in the

24   case, or in the case without being dismissed at all, then

25   what?  The discovery bus has left.  Everyone has been

 1    involved.  And I suppose the plaintiffs would then be
 2    allowed to take party discovery from your client.  And
 3    your client would not have participated up to that point,
 4    and, I suppose, run the risk of foregoing opportunities
 5    to attend depositions and to participate.
 6                      But it sounds like you're okay with that.
 7                      MR. KAISER:  Indeed.
 8                      THE COURT:  What was that?
 9                      MR. KAISER:  Indeed.  Yes, we don't have
10    any concerns on that front.
11                      THE COURT:  So will it be then the
12    plaintiffs playing a bit of catch up, get initial
13    documents that may be they would be entitled to from
14    party discovery, as opposed to third party discovery?
15                      And what I don't know is the difference
16    between the two in this case, and if there is any
17    difference.  And if there isn't much of a difference,
18    then we're back to square one; which is, that while there
19    is a stay, there really isn't a stay.
20                      And with everyone else engaging in
21    discovery, does it just make sense to go ahead and file
22    forward with discovery against your clients, even though
23    you've got a good argument that there is similar issues
24    here, at least to your client, and the applicability of
25    Judge Lipman's orders.

```
 1              MR. KAISER:  Well, I would just say in
 2    response to all that, which is all points well taken.  Is
 3    that if it comes to pass that Bain and Charlesbank are --
 4    you know, the motions to dismiss go the plaintiffs way,
 5    yes, that will have to be addressed and we will -- and it
 6    will be.
 7              And if that requires a little bit more
 8    time for them to finish up discovery of Bain and
 9    Charlesbank, you know, that's the risk we would be
10    running, absolutely.  And we are more than willing to run
11    that risk.  Because the alternative is right now
12    spending, as everyone agrees, I mean Ms. Schwarz said
13    this before, hundreds and hundreds of thousands of
14    dollars, you know, beating through nine -- sorry, 17
15    custodian documents, which is what we did in the entire
16    Varsity case, more or also, the Varsity people, and
17    spending -- I say hundreds and hundreds, but it's really
18    a hundred thousand per at least, so we're talking
19    millions now, that may ultimately and probably will
20    ultimately prove to be unnecessary.
21              And we're not -- we come back to the point
22    that these are not the operating parties.  These are
23    people who own the operating parties.  Now they have
24    their theories about how to get them into the case.  And
25    that's fine.  That's before Judge Lipman.
```

UNREDACTED TRANSCRIPT

1            But at the end of the day, it certainly

2    does not call for anything remotely -- whether it's a non

3    party discovery or subpoena, it doesn't -- but even more

4    so if it's a subpoena -- doesn't call for anything like

5    what they're asking for.

6            So I would say that we run the risk.  If

7    things don't go our way in the motion to dismiss, we'll

8    have to come back and deal with this down the road.  I

9    don't think that's kicking the can down the road, so much

10   as preserving Bane and Charlesbank's rights, and making

11   sure that we don't end up in a situation where we're

12   spending millions of dollars on discovery that never

13   should been taken in the first place.

14            THE COURT:  Well, sounds like you agree,

15   Mr. Kaiser, that regardless, that the discovery is not

16   going to be stayed completely against your client.  That

17   there needs to be some discovery that your clients, even

18   in a third party context?

19            MR. KAISER:  Well, Bain and Charlesbank,

20   were subject to subpoena in Fusion Elite and did produce

21   documents.  What they agreed to produce were

22   presentations that Varsity made or received from Bain and

23   Charlesbank that the third parties made.  To us that

24   fills the bill.

25            Now there are a lot of other documents

UNREDACTED TRANSCRIPT

1   that have been produced by Varsity or by third parties

2   that also, you know, fall into the categories of things

3   that Bain saw or whatnot and due diligence and all the

4   issues that Ms. Schwarz referenced.

5           So they have -- I think what has already

6   been produced pretty much covers the water front on what

7   would be legitimate, frankly, either in party or in

8   subpoena.  But if there is something in a Rule 45 context

9   that they think, you know, they haven't gotten, you know,

10  we can talk to them about that.  That's fine.

11          But I don't know see any cause -- in a

12  party situation and these facts, or, frankly, even more

13  so in a subpoena situation, to do this kind of massive

14  ESI, expansive emails and all that kind of discovery,

15  like they put forward in the motion to compel.

16          So I think it's a qualified, yes, to your

17  question, but definitely a qualified yes.

18          THE COURT:  Okay.  Anything further, Ms.

19  Schwarz.

20          MS. SCHWARZ:  I hesitate, because I don't

21  think this is the appropriate place to argue the motion

22  to dismiss.

23          But what he keeps saying is, they're not

24  parties to this, and they're not the real actors.  But

25  that's not what we have alleged.  You know, our

1   allegations are that they did.  They sit on the board of

2   directors today making the decisions.

3                When Charlesbank owned Varsity through the

4   indirect parent, they had requirements that if

5   acquisitions were going to be made above a certain dollar

6   threshold, Charlesbank had to sign off on it.  They were

7   not a passive investor.  They sit on the board.  They

8   oversee the conduct.  Both companies did that, and do

9   that today.

10               So to say they are just owners is not

11  true.  Again, that's motion to dismiss.  That's coming

12  down the road.  But I don't want you walking away from

13  this with the view that, oh, gosh, these are just big

14  private equity companies that were kind of tangentially,

15  so why put them through this.  Because that is not our

16  allegation.

17               Our allegations are that they are actors

18  in the conspiracy.  They are actors that helped to create

19  this monopoly that is now excluding others from the

20  market.

21               So I'm not going to repeat everything I

22  said.  I think we should have some guidance on what we

23  can anticipate receiving.  The motion to dismiss is what

24  it is, but that's not before Your Honor.  But, again, I

25  just -- I can't sit here and say that these are

1    absolutely passive investors that have no part in it.

2                 Because while that might have been the

3    allegations in American Spirit, it is not the allegations

4    in our case.  And as more evidence is coming out and more

5    is being discovered, we have documents showing that that

6    is to be true.  So I don't think that we should be stuck

7    in the place of, well, American Spirit didn't do it, and

8    so that, and Fusion, they're not defendants there, so

9    they didn't ask same documents you asked for, so you

10   should habe to be just stuck with what others did.

11               MR. KAISER:  Well, Your Honor, those are,

12   in fact, exactly the allegations at American Spirit.  So

13   I don't know what difference is being referred to, but

14   there is no difference.

15               THE COURT:  Okay.  And I think repeated,

16   as said by the parties, that this is not the time or

17   place to have to hash out those arguments and try to

18   resolve that.

19               I think what needs to happen is that --

20   well, a couple of options.

21               First, is the briefing.  I hesitate to say

22   that, because it will delay things.  But I don't know

23   really it's a motion to stay.  I suppose it is.  But I

24   think that regardless of what occurs there, it wouldn't

25   be stayed completely.  Whether it be through party

UNREDACTED TRANSCRIPT

1    discovery or through subpoena, there would be steps that

2    I think the plaintiffs would be entitled to anyway.

3                Now maybe the scope is affected there

4    between the two.  But I think that there is some amount

5    of discovery that plaintiffs would be entitled to,

6    regardless the outcome of the motion to dismiss.

7                So how do we -- what's the most efficient

8    way of getting that resolved?  One is getting the parties

9    to talk, and then reconvening in a week or so, where

10   parties can inform the Court about any resolution, with

11   the understanding -- I think that reading your emails,

12   that up to now, the defendants have been resisting

13   having -- I should -- but there has not been fruitful

14   discussions because of this issue about this stay that

15   came up with Judge Claxton.

16               And my view is that, I don't necessarily

17   disagree, but I do think that in the non-party, at a

18   minimum in the non-party context there would be ways in

19   which the plaintiffs would be able to get discovery from

20   the defendants.

21               Now maybe it isn't the number of

22   custodians.  Even in the party context -- I'm not ruling

23   one way or the other on this, but even in the party

24   context, perhaps that could be scaled back, regardless of

25   where Bain and Charlesbank end up in this case, if at

1    all.

2              But maybe there needs to be meaningful

3    discussions of scaling that back, and the scope of that,

4    that ESI discovery.

5              So those are my thoughts.  I don't think a

6    complete stay, regardless of what the outcome of the

7    motion to dismiss, would be appropriate.

8              MR. KAISER:  As I said, we're certainly

9    happy to talk to the plaintiffs.  So far they've never

10   moved off their original position, but maybe that will

11   change with this guidance.  And perhaps some sort of

12   accommodation can be made.

13             THE COURT:  Okay.  So not to take up the

14   time of everyone else, I want to be respectful of their

15   time, what I'd like to do then is -- I know next week is

16   a holiday week.  But to come back maybe early part of the

17   following week with those parties who are interested --

18   and everyone is invited back.  You will all get the

19   invitation, but you don't have to appear if you don't

20   want to.

21             But for those who have something to say,

22   and wish to be heard on this, you are welcome to join.

23   But we will send out another notice.

24             My expectation is that there would be some

25   type of meaningful discussion between the parties.  As I

UNREDACTED TRANSCRIPT

1    said, the email was sort of here's what we want.  And the

2    other side is not talking to us because they think the

3    case will be stayed.  Here's what we want.  That was sort

4    of the whole thing all the way down the email.

5            So it wasn't really too helpful to me.

6    Obviously, not that helpful for the parties.

7            MR. KAISER:  Can I make one personal

8    request that that next hearing be the end of next, the

9    week after next, because we are heading into the holidays

10   and -- my bigger problem is the clients and forth that.

11   Also, this case has been moving at a very high rate of

12   speed, and we -- I personally would prefer not to spend

13   the Thanksgiving weekend talking about this with the

14   plaintiffs.  I suspect the plaintiffs may feel the same

15   way; although, they might not want to say it.

16           THE COURT:  Are you asking for a resetting

17   for the end of, end of the following week?

18           MR. KAISER:  Yes, sir.

19           THE COURT:  Right.  So I said Monday or

20   Tuesday of the week after Thanksgiving, but you're asking

21   for the following, end of that week.

22           MR. KAISER:  Well, you know, that wouldn't

23   be great for me either.  If it's going to involve me, I

24   really -- it would be much better if it was Monday or

25   Tuesday of the following week, so whenever that is, the

48

1    first full week of December.

2              THE COURT:  Right.  That's what -- right.

3    So that's Monday the 29th.

4              MR. KAISER:  No.  I would say one week

5    hence, so whatever that is.  Sixth of December, or

6    whatever.

7              THE COURT:  Well, okay.  I see.  So you're

8    saying two weeks from now?

9              MR. KAISER:  Yes, sir, that is -- right.

10             THE COURT:  Okay.  Well, how is that going

11   to impact the, any of the depositions, discovery, and

12   other things that parties are trying to achieve in this

13   and other cases?

14             MS. SCHWARZ:  I believe we have

15   depositions that are occurring.  I don't know the whole

16   deposition schedule, but I know that I'm taking

17   depositions that week and the following week, I believe,

18   and the week of Christmas, for that matter.

19             THE COURT:  You said that week.  You mean

20   next week?

21             MS. SCHWARZ:  Ronnie, you may have to

22   chime in, because I don't have that calendar.  But I

23   think it's the week of the 6th and the week of the 20th,

24   I know I have depositions.

25             MS. SPIEGEL:  We're able to cover

UNREDACTED TRANSCRIPT

1  something I think in the first week of December.  We

2  do -- defendants are deposing one of our main plaintiffs

3  on December 1st.

4              I'm Ronnie Spiegel from the Joseph Saveri

5  Law Firm on behalf of the Jones plaintiffs.

6              So I know we have the deposition on

7  December 1st, Your Honor.  So I would just respectfully

8  ask that it be set after that, some time either the 2nd

9  or 3rd, or perhaps in that first week of December, the

10  week of the 6th is fine with us as well.

11              MS. SCHWARZ:  6th or 7th work for you, Mr,

12  Kaiser.  Correct?

13              MR. KAISER:  Yes, that would be my

14  preference.  Thank you.

15              MS. SCHWARZ:  Okay.  And I don't want to

16  be here and then not show up the next time.  I'm going to

17  have to move some things around to make the 6th or 7th

18  work.  So if you don't see me, it's not that I just

19  bounced.  I just may not be able to get out of some other

20  commitments I've got.  But I am sure someone else can

21  step in.

22              THE COURT:  Okay.  So how about the 6th,

23  December 6th, Monday.  That gives you two weeks to have

24  more meaningful discussions regarding the scope of the

25  discovery here.

1          I floated the idea of the motion to stay.

2   I suppose I don't want to end this hearing without at

3   least hearing from the parties about whether they want to

4   file -- well, I guess, it would be defendant wanting to

5   file that, to make a record of it.  But as I already

6   indicated, even if I granted, some form of discovery I

7   think would still have to go forward with it.

8          So make use of your time, but I don't want

9   to --

10          MR. KAISER:  Your Honor, I prefer to

11  resolve things, rather than stand on ceremony.  So, you

12  know, I hear what Your Honor is saying.  And, you know --

13  so I think we're -- obviously, I represent clients who

14  may have a different view.  But from where I sit know, I

15  wouldn't anticipate the desire to do that.

16          If something changes, I guess we'll just

17  file and it will be what it is.  But I think right now,

18  hoping for -- trying to get something on the 6th would be

19  the most productive path forward.

20          THE COURT:  Okay.  So the 6th.  And I

21  think some of y'all are West Coast, that's why I set it

22  for the afternoon.  So we can set it for late morning,

23  Terry, or 1:00 o'clock in the afternoon.

24          THE CLERK:  We can do that, Judge.

25          THE COURT:  1:30, set it for that.

UNREDACTED TRANSCRIPT

1          THE CLERK:  Yes, sir.

2          THE COURT:  That will be Central Time,

3  1:30, Monday 6th, for video hearing.

4          And prior to that I would require the

5  party to meet and confer, to attempt to resolve the

6  disagreement, and then to provide me by that Friday just

7  a written update.  It doesn't have to be anything fancy,

8  but just a written update about whether everything is

9  still on the table or whether y'all have it resolved.

10  And maybe I'll get good news and that y'all resolved

11  everything.

12          So let's do that by the 3rd then, close of

13  business on the 3rd.  So just let me know.  That will let

14  me know how to spend the weekend before the 6th.  Okay.

15          Then if there is no resolution, or not

16  complete resolution, then I will take the issues up one

17  by one, and we'll resolve any disputes on the 6th

18  regarding the scope of discovery and how to move forward

19  from here.

20          Then as mentioned, on Monday, if the other

21  Varsity, that motion, just let me know -- just let me

22  know what y'all decided.  I don't know if they're still

23  on the call.  I can see some of them maybe.

24          MR. KAISER:  We will take no one --

25          FEMALE VOICE:  We're still here.

UNREDACTED TRANSCRIPT

```
 1                    FEMALE VOICE:  We're all still here.

 2                    THE COURT:  So let us know if there is

 3       anything I need to do further on that.  Okay.

 4                    Anything else at this time before we

 5       adjourn and see those who are interested on the 6th, from

 6       the plaintiffs?

 7                    MS. SCHWARZ:  No, Your Honor.  Thank you.

 8                    THE COURT:  Defendants?

 9                    MR. KAISER:  No, Your Honor.

10                    THE COURT:  Okay.  All right.

11                    MR. GAFFNEY:  No, Your Honor.  Thank you.

12                    THE COURT:  Have a good weekend everyone.

13                    MS. SCHWARZ:  Thank you, Your Honor.

14

15

16

17

18

19

20

21

22

23

24

25
```

UNREDACTED TRANSCRIPT

1          I, Kristi Heasley, do hereby certify that the

2    foregoing 52 pages are, to the best of my knowledge,

3    skill and ability, a true and accurate unredacted

4    transcript from the FTR recording in the matter of:

5    JESSICA JONES, MICHELLE

6    VELOTTA, and CHRISTINA
     LORENZEN on behalf of
7    Themselves and All others
     Similarly Situated,

8                                       )
     VS                                 )NO.2:20-CV-02892
9                                       )JACKSON, TENNESSEE
                                        )
10   VARSITY BRANDS, LLC;               )
     VARSITY SPIRIT, LLC; VARSITY
11   FASHIONS & SUPPLIES, LLC;
     U.S. ALL STAR FEDERATION,
12   INC,;JEFF WEBB;
     CHARLESBANK CAPITAL
13   PARTNERS, LLC; and BAIN
     CAPITAL PRIVATE EQUITY;

14

15

16          Dated this 3rd of December, 2021.

17

18

19   /s/  Kristi Heasley

20   _____
     Kristi Heasley, RPR
21   Official Court Reporter
     United States District Court
22   Western District of Tennessee
     Eastern Division

23

24

25


                  UNREDACTED TRANSCRIPT