IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

────────────────────────────────────────────

| | |
|---|---|
| JESSICA JONES, MICHELLE VELOTTA,) and CHRISTINA LORENZEN, on Behalf of Themselves and All Others Similarly Situated, ) ) ) ) | |
| Plaintiffs, ) | |
| v. ) ) | No. 20-cv-02892-SHL-tmp |
| VARSITY BRANDS, LLC; VARSITY SPIRIT, LLC; VARSITY SPIRIT FASHION & SUPPLIES, LLC; U.S. ALL STAR FEDERATION, INC.; JEFF WEBB; CHARLESBANK CAPITAL PARTNERS LLC; and BAIN CAPITAL PRIVATE EQUITY, ) ) ) ) ) ) ) ) | |
| Defendants. ) | |

────────────────────────────────────────────

**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION TO COMPEL DISCOVERY RESPONSES FROM DEFENDANTS BAIN CAPITAL PRIVATE EQUITY AND CHARLESBANK CAPITAL PARTNERS LLC**

────────────────────────────────────────────

Before the court are the plaintiffs' Motions to Compel Discovery from defendants Bain Capital Private Equity ("Bain") and Charlesbank Capital Partners LLC ("Charlesbank"), filed on September 18, 2021. (ECF Nos. 101; 102.) The defendant filed responses on October 4, 2021. (ECF Nos. 111; 112.) For the reasons below, the motions are GRANTED IN PART and DENIED IN PART.

**I.   BACKGROUND**

The present case involves anti-trust claims brought against Varsity Brands, LLC, its affiliated brands and companies, and its

prior and present owners.[1] Charlesbank owned Varsity from 2014 through June 2018, when it sold its interest to Bain, who remains the majority owner. (ECF No. 102-1 at 3.) In brief, the plaintiffs allege that the defendants conspired to and did in fact form a monopoly over the cheerleading industry in the United States. The plaintiffs filed their complaint on December 10, 2020, seeking class certification, damages, and injunctive relief. (ECF No. 1.)

On September 18, 2021, the plaintiffs filed the present motions, seeking to compel document discovery from Bain and Charlesbank.[2] (ECF Nos. 101; 102.) In dispute were dozens of requests for production, multiple proposed document custodians, the relevant time period of any production, exact search terms to use for identifying responsive documents, and the types of media that would be searched. (Id.) An initial hearing on the motion was

---

[1]Two other related cases are currently proceeding before U.S. District Judge Sheryl Lipman: Fusion Elite All Stars, et al. v. Varsity Brands, LLC, et al., 2:20-cv-02600-SHL-tmp (W.D. Tenn. Aug. 13, 2020) ("Fusion") and American Spirit and Cheer Essentials Inc., et al. v. Varsity Brands, LLC, et al., 2:20-cv-02782-SHL-tmp (W.D. Tenn. Jul. 24, 2020) ("American Spirit"). Bain and Charlesbank were initially defendants in American Spirit but were dismissed from that case on October 28, 2021. (American Spirit ECF No. 141.) Bain and Charlesbank have filed a similar motion to dismiss in the present case, but discovery has proceeded while the motion has been pending. (ECF No. 60.)

[2]The plaintiffs concurrently filed two other Motions to Compel against other defendants in this case. (ECF Nos. 100, 103.) One motion was subsequently resolved by the parties and another was granted in part by the court. (ECF Nos. 166, 167.) Only the motions against Charlesbank and Bain remain.

held before Magistrate Judge Charmiane Claxton on October 28, 2021.[3] (ECF No. 136.) The case was subsequently transferred to the undersigned and another hearing was held on November 19, 2021. (ECF No. 164.) During this hearing, the undersigned scheduled a hearing for December 6, 2021, solely to address the motions against Bain and Charlesbank. (Id.) The parties were ordered to meet and confer and submit an update on the unresolved issues. (Id.) On December 3, 2021, the parties emailed the court a list of outstanding disputes, showing no substantive compromise had been reached. At the December 6 hearing, the parties confirmed that they were still in dispute over the following:

- Regarding Bain:
    - Request Nos. 2, 3, 4, 5, 6, 7, 9, 10, 11, 12, 14, 15, and 20.

---

[3]During this hearing, Magistrate Judge Claxton noted that Bain and Charlesbank had recently been dismissed from the American Spirit case and that a similar motion was pending before Judge Lipman in this case. (ECF No. 143 at 4-5.) Judge Claxton declined "to move forward either way" on the present motions in light of Judge Lipman's decision. (Id. at 5.) However, at no point did Judge Claxton stay or "set aside" discovery as to Bain and Charlesbank despite their subsequent protestations; she merely declined to consider the motions against them on that day given Judge Lipman's ruling. (Id.) ("I think at this time it would be imprudent to move forward either way making a decision, given that [Judge Lipman]'s given such a strong indicator in a related case, what her thoughts are on that.") At the November 19 hearing, the undersigned asked Bain and Charlesbank whether they planned to file a motion to stay discovery given the pending motions to dismiss. No such motion has been filed. Because fact discovery in this case is set to close in two months, the undersigned finds that discovery should proceed regardless of any pending dispositive motions. (ECF No. 61.)

- o Whether Josh Bekenstein, Jay Corrigan, Spencer Dahl, Ethan Portnoy, Kate Steinman, David Hutchins, Tom O'Rourke, and Saron Tesfalul are relevant document custodians.

- o Whether the relevant time period for responsive documents should be January 1, 2018 through June 30, 2020, or January 1, 2015 through present.

- o Whether searches for responsive documents should include hard copy sources, non-custodial files, audio recordings, and text messages.

- Regarding Charlesbank:

  - o Request Nos. 5, 6, 7, 9, 10, 11, 12, 13, 15, 16, and 21.

  - o Whether Kim Davis, Jesse Ge, Neil Kalvelage, David Katz, Brian Pegno, and Brandon White are relevant document custodians.

  - o Whether the relevant time period for responsive documents should be January 1, 2014 through present, or January 1, 2015 through June 30, 2020.

  - o Whether searches for responsive documents should include hard copy sources, non-custodial files, audio recordings, and text messages.

However, in an email to the court on December 7, 2021, the parties indicated that they had agreed on search terms as to Bain custodian Ryan Cotton, which were responsive to Bain Request Nos. 5, 6, 7,

-4-

9, 10, 11, 15, 16, and 20. With this record set, the undersigned now considers the remainder of the outstanding issues in the motion.

## II.  ANALYSIS

### A.  Scope of Discovery

The scope of discovery is governed by Federal Rule of Civil Procedure 26(b)(1), which provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b)(1). The party seeking discovery is obligated to demonstrate relevance. Johnson v. CoreCivic, Inc., No. 18-CV-1051-STA-tmp, 2019 WL 5089086, at *2 (W.D. Tenn. Oct. 10, 2019). Upon a showing of relevance, the burden shifts to the party opposing discovery to show, with specificity, why the requested discovery is not proportional to the needs of the case. William Powell Co. v. Nat'l Indem. Co., No. 1:14-CV-00807, 2017 WL 1326504, at *5 (S.D. Ohio Apr. 11, 2017), aff'd sub nom. 2017 WL 3927525 (S.D. Ohio June 21, 2017), and modified on reconsideration, 2017 WL 4315059 (S.D. Ohio Sept. 26, 2017). Six factors are relevant to proportionality: (1) "the importance of the issues at stake in the action;" (2) "the amount in controversy;" (3) "the parties' relative access to relevant information;" (4) "the parties' resources;" (5) "the importance of the discovery in resolving the issues;" and (6) "whether the burden or expense of

-5-

the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

The plaintiffs allege that Charlesbank and Bain actively participated in a conspiracy to monopolize the cheerleading industry, namely by providing financial support and guidance to Varsity in its acquisition of competitors. Charlesbank and Bain have conceded that many of the materials the plaintiffs have requested are relevant.[4] Considering proportionality, the issues at stake in this case are national in implication and importance, with a substantial amount in controversy stemming from allegedly anticompetitive pricing and trade practices. In terms of the parties' resources, Bain and Charlesbank are both sophisticated investment firms: Charlesbank acquired Varsity in 2014 for $1.4 billion and sold its interest to Bain for $2.5 billion. (ECF No. 102-1 at 3.) Many of the plaintiffs' claims can only be resolved through fairly extensive discovery from Charlesbank and Bain, the only parties who have access to this information. With these

---

[4]Specifically, Charlesbank has conceded that Request Nos. 5, 6, 7, 9, 10, 11, 12, 16, and 21 seek relevant information. (ECF No. 102-1 at 13.) Bain concedes identical requests, although the numbering is slightly different in their Motion. (ECF No. 101-1 at 14.) Specifically, Request Nos. 5, 6, 7, and 9 are identical across the two motions. Charlesbank Request No. 10 is unique to Charlesbank. Because of this extra request, Bain Request No. 10 corresponds to Charlesbank Request No. 11, Bain Request No. 11 corresponds to Charlesbank Request No. 12, and so on until the end of the Motion.

-6-

principals in mind, the court will now consider each of the matters in dispute.

## B.   Search Terms, Forms of Media, and Relevant Time Period

The requests for production at issue in this case are wide reaching, seeking to capture nearly all aspects of Bain and Charlesbank's acquisition and ownership of Varsity. As courts have acknowledged, there is "inherent complexity [in] formulating refined search terms" to return responsive electronically stored documents; the task involves "the interplay, at least, of the sciences of computer technology, statistics and linguistics."[5] McMaster v. Kohl's Department Stores, Inc., No. 18-13875, 2020 WL 4251342, at *3 (E.D. Mich. Jul. 24, 2020) (quoting United States v. O'Keefe, 537 F. Supp. 2d 14, 23-24 (D.D.C. 2008)). Typically, "the resolution of such questions [is] beyond the ken of laymen." Id. (internal quotation marks removed).

The parties agreed to a list of search terms for the records of Ryan Cotton, the Managing Director of Bain since 2003 and a Board Member of Varsity Brands. (ECF No. 100-4 at Ex. 99.) Cotton "led Bain's acquisition of Varsity" and Bain concedes he is a proper custodian. (ECF No. 101-1 at 15.) The search terms agreed

---

[5]Ideally, the parties should have been able to engage in good-faith, meaningful discussions in attempting to reach an agreement on the outstanding discovery disputes. That was not accomplished in this case, despite the court providing the parties ample opportunity to satisfy their discovery obligations.

on for searching Cotton's records specifically correspond to
Request Nos. 5, 6, 7, 9, 10, 11, 15, 16, 17, and 20 in the Bain
Motion, which are identical to Request Nos. 5, 6, 7, 9, 11, 12,
16, and 21 in the Charlesbank Motion. (ECF No. 100-4 at Ex. 99.)
In light of the parties' agreement, the court believes using these
terms is the best available method for producing a responsive,
proportional set of documents to the requests specified. These
terms will thus be used in searching the custodians specifically
noted below, which will resolve Bain Request Nos. 5, 6, 7, 9, 10,
11, 15, 17, and 20, as well as Charlesbank Request Nos. 5, 6, 7,
9, 11, 12, 16, and 21. The court understands that these terms will
be used to search "electronic sources to which the custodians have
access in the ordinary course of their work, including their email"
and any accessible shared drives/folders. (ECF No. 111 at 15-16.)
Personal text messages of the custodians are not included; the
plaintiffs do not present evidence that a significant amount of
business at either Bain or Charlesbank is done over text messages,
and a search of all additional custodians' personal phones would
be overly burdensome and invasive.[6] The relevant time period for

_____

[6]Although the court ordered text messages searchable as to
defendant Jeff Webb, that order is distinguishable. (ECF No. 165.)
Webb is a named individual defendant, the founder of Varsity, and
a central figure in the litigation. A search of his text messages
is appropriate given the lesser burden, the greater likelihood of
discoverable material, and his unique role in the company.

-8-

searches will be January 1, 2015 to June 30, 2020 for the
Charlesbank custodians and June 30, 2017 to June 30, 2020 for the
Bain custodians.[7]

## C.  Proper Custodians

### a.  Bain

Bain has already agreed to produce documents from one
custodian: Ryan Cotton, the Managing Director of Bain since 2003
and "a member of the board of managers of the general partner of
Varsity's indirect parent entity." (ECF No. 111 at 10.) Cotton led
the "Impact Deal Team" that managed Bain's acquisition of Varsity
from Charlesbank. However, eight other custodians remain in
dispute.

#### i. Josh Bekenstein

Josh Bekenstein is the current Co-Chairman of Bain and "is
one of the two most senior people at Bain Capital." (ECF No. 111
at 11.) The plaintiffs note that Bekenstein's name was on
preliminary and final offer letters regarding the Varsity deal
and allege that he has "exclusive knowledge concerning Bain's due
diligence efforts regarding Varsity dating back to 2014." (ECF No.
101-1 at 15.) Bain states that "Mr. Bekenstein has not had any

---

[7]January 1, 2015 to June 30, 2020 is the relevant time period
agreed to for discovery of the Varsity defendants and corresponds
to the statute of limitations in this kind of anti-trust case.
Bain did not acquire Varsity until June 2018 and the time period
is adjusted accordingly.

particular day-to-day involvement in Bain's ownership of Varsity since the acquisition" and that he was merely a "high level advisor" on the Impact Deal Team (ECF No. 111 at 11.)

The undersigned finds that given Bekenstein's high level position in Bain, and the lack of any evidence of specific involvement in the Varsity deal, the presence of his name on offer letters and in management presentations is a matter of routine business practice. The plaintiffs have not demonstrated or even alleged that Bekenstein took an especially active role in the Varsity deal. Any documents he would possess would likely be duplicative of those of Cotton and the other, more active members of the Impact Deal Team. The burden of searching Bekenstein's records outweighs any unique benefit that would likely come from them. The request to add Bekenstein as an additional custodian is denied.

### ii. Jay Corrigan

Jay Corrigan is a Managing Partner and current CFO of Bain. (Id. at 12.) The plaintiffs point to Corrigan's signature on an agreement with a holding company formed to facilitate Bain's purchase of Varsity as evidence that Corrigan is "likely to have documents reflecting Bain's view of Varsity's competitive position and valuation prior to Bain's acquisition as well as documents reflecting Bain's influence on Varsity's operations." (ECF No. 101-1 at 16.) Bain argues that Corrigan was not part of the Impact

Deal Team and has not been involved in Bain's ownership of Varsity. (ECF No. 111 at 12.)

The undersigned finds that Corrigan's signature on one agreement with a company related to the Varsity deal is not enough to establish the likelihood that he would possess non-duplicative or responsive documents. Corrigan did not serve on the Impact Deal Team and his signature is likely a matter of routine business practice given his role at the company. The burden of searching Corrigan's records likely outweighs any unique benefit that would come from them. The request to add Corrigan as an additional custodian is denied.

### iii. Spencer Dahl, Ethan Portnoy, and Kate Steinman

Spencer Dahl, Ethan Portnoy, and Kate Steinman were all members of the Impact Deal Team, serving in different capacities under Ryan Cotton. (Id.) The plaintiffs point to documents that show the three attended management meetings concerning diligence on the Varsity deal, meetings that concerned Varsity's "plans to target growth," and that at least Portnoy had access to "the Jeffries data room, where information and content relating to Varsity was kept." (ECF No. 101-1 at 16-17.) Bain argues that all three were "junior-level employees, working under the supervision of Mr. Cotton" and that "the documents they have about Varsity would be low-level or duplicative" of Cotton's files. (ECF No. 111 at 12.)

The undersigned finds that, even though these employees worked under Ryan Cotton, their active roles on the Impact Deal Team and access to the unique data room make it likely that they will possess responsive documents. While these documents may be duplicative of those possessed by Cotton, it is unlikely that he was copied on every responsive document used or possessed by his team. The burden of searching these employees' files is outweighed by the likely benefit that they will possess a number of highly responsive documents. Therefore, given these employees' level of focus on the Varsity deal and involvement in Varsity's business, the request to add Dahl, Portnoy, and Steinman as additional custodians is granted.

### iv. David Hutchins

David Hutchins is the current General Counsel for "Bain's North American Private Investments." (Id. at 13.) The plaintiffs point to his listing as "Secretary" of the holding company formed to facilitate the Varsity acquisition as evidence that he "will have knowledge relating to Bain's view of Varsity's competitive position and valuation prior to Bain's acquisition[.]" (ECF No. 101-1 at 16.) Bain argues that Hutchins was not a member of the Impact Deal Team and that Ryan Cotton was listed as the President of the same holding company, making any documents Hutchins has likely duplicative. (ECF No. 111 at 13.) Further, Bain notes that Hutchins's role at Bain is to provide legal advice and that any

-12-

non-duplicative documents would likely be privileged and undiscoverable. (Id.)

The undersigned finds that Hutchins's listing as Secretary of the holding company is likely a matter of routine business practice given his legal role within Bain. Further, Ryan Cotton's role at that holding company appears far more active; a search of his records will likely produce any relevant evidence that Hutchins possessed. The plaintiffs have not pointed to any evidence that Hutchins was actively involved in the Varsity deal or the Impact Deal Team, and Bain's arguments regarding privilege are well taken. The request to add Hutchins as an additional custodian is denied.

v. Tom O'Rourke

Tom O'Rourke was a "Principal in the Consumer, Retail & Dining Vertical area at Bain at the time of Bain's acquisition of Varsity." (Id.) O'Rourke also served on the Board of Directors of Varsity Brands for almost two years after Bain's acquisition of the company, until leaving Bain in April 2020. (Id.) The plaintiffs argue that O'Rourke's presence on the Board of Directors, his designation as "a primary contact at Bain Capital in the Project Impact Initial Indication Summary" and presence at diligence sessions concerning Varsity indicate that he likely possesses responsive documents. (ECF No. 101-1 at 17.) Bain argues that O'Rourke's documents would likely "be a duplicative and cumulative source of documents in this case" since Ryan Cotton's name is

-13-

listed alongside O'Rourke's on all the documents the plaintiffs cite. (ECF No. 111 at 14.)

The undersigned finds that O'Rourke's membership on the Board of Directors and identification as the primary contact regarding the Varsity deal's Initial Indication Summary provide independent reasons to believe he possesses responsive documents. O'Rourke served a different role within the company than Cotton and appears to have provided support for the Impact Deal Team. Further, he served on the Board of Varsity's parent company from the time Bain acquired Varsity until he left Bain. The request to add O'Rourke as an additional custodian is granted.

vi. Saron Tesfalul

Saron Tesfalul was "a Vice President of Bain at the time of Bain's acquisition of Varsity."[8] (Id.) The plaintiffs argue that Tesfalul was a member of the Impact Deal Team alongside Cotton and that "she worked with other Bain team members on Varsity Spirit budgets and was on an email that discussed camps and competitions." (ECF No. 101-1 at 18.) The defendants dispute this, stating that these emails did not discuss camps and competitions and that Ms. Tesfalul was merely copied briefly before being dropped. (ECF No. 111 at 14.) A review of the court record also shows that Tesfalul

---

[8]The plaintiffs list Tesfalul as a "Principal, Consumer Retail & Dining Vertical." (ECF No. 101-1 at 18.) The undersigned has used Bain's description of her role here.

had access to the data room regarding the Varsity deal that has been discussed above. (ECF No. 100-3 at 368.)

The undersigned finds that Tesfalul's access to the data room, role on the Impact Deal Team, and presence on emails make it likely that she possesses responsive documents. The request to add her as an additional custodian is granted.

### b. Charlesbank

Charlesbank has already agreed to produce documents from two custodians: Andrew Janower and Joshua Beer, Charlesbank Managing Directors who "have sworn under oath that they were involved in any substantive communications or documents at Charlesbank regarding Varsity's cheerleading business." (ECF No. 112 at 7.) However, six other custodians remain in dispute.

#### i. Kim Davis

Kim Davis is a Managing Director and a Founding Partner of Charlesbank. (ECF No. 102-1 at 10.) The plaintiffs seek to include Davis as a custodian because they "expect Davis will possess knowledge of Charlesbank's acquisition of Varsity and Varsity's operations and acquisitions during the relevant time period." (Id.) The plaintiffs claim that Davis was a "key figure involved in the acquisition of Varsity's rivals EPIC, Mardi Gras Sprit, and JAM Brands[.]" (Id.) Additionally, the plaintiffs state that "Davis is expected to possess information regarding Charlesbank's role in the overall management of Varsity. Documents show that

-15-

Davis was part of the larger discussions and deliberations regarding 'All-Star event growth' and the 'agreements reached with Disney.'" (Id.) Finally, the plaintiffs believe Davis also played a role in the deliberations of "pricing and expense strategies." (Id.) To support these claims, the plaintiffs cite to minutes from the board meeting of Varsity's indirect parent company, Hercules VB Holding, Inc., indicating that Davis attended these meetings as a member of the board. (ECF No. 112 at 9.) Additionally, they cite to a board deck which includes information about acquisitions. (Id.)

Charlesbank notes that the minutes do not show Davis as presenting anything at the board meetings in question. (Id.) They also claim that there is no evidence that Davis was a "key player" because the board deck plaintiffs cite to was provided to the entire board of directors. (Id.) Additionally, the two custodians that Charlesbank has already agreed to, Andrew Janower and Joshua Beer, were also present at the board meetings. (Id.)

The undersigned finds that Davis's mere presence at board meetings—meetings that were attended by other custodians—is not sufficient reason to justify adding him as an additional custodian. The plaintiffs have not demonstrated that Davis took an active role in Varsity's business and any documents he would possess would likely be duplicative of those of other custodian board members. The burden of searching Davis's records outweighs any unique

-16-

benefit that would likely come from them. The request to add Davis as an additional custodian is denied.

### ii. Jesse Ge

Jesse Ge has been the Senior Vice President of Charlesbank from 2017 to the present. (ECF No. 102-1 at 10.) The plaintiffs seek to include Ge as a custodian because "Ge is listed as one of three 'Key Team Members' in Charlesbank's acquisition and investment of Varsity." (Id.) The plaintiffs state that "[d]ocuments further indicate that Ge will have knowledge of Charlesbank's strategies to grow Varsity Spirit." (Id.) Additionally, the plaintiffs "expect that Ge will possess responsive documents related to the valuation of Varsity." (Id. at 11.) To support these claims, the plaintiffs cite to several emails authored by Ge regarding the Varsity Spirit business.

Charlesbank states the Ge was "not even employed by Charlesbank at the time of its acquisition of Varsity's indirect parent and hardly could have been a 'key team member.'" (ECF No. 112 at 12.) They also state that Janower and Beer were copied on the emails in question, so adding Ge as a custodian would be duplicative. (Id.)

The undersigned finds that Ge's role in developing Varsity Spirit business make it likely that he will possess responsive documents. While Janower and Beer may be copied on these emails, it is unlikely that they are copied on every responsive document

-17-

used or possessed by Ge. The burden of searching Ge's files is outweighed by the likely benefit that he will possess highly responsive documents. Therefore, the request to add Ge as a custodian is granted.

### iii. Neil Kalvelage

Neil Kalvelage is a former operating partner of Charlesbank and held the title of CEO for Varsity Brands for "approximately 4 months" in 2017. (ECF No. 102-1 at 11.) The plaintiffs seek to include Kalvelage as a custodian because "[his] documents, especially those from the time he was CEO, will be highly relevant as they will reflect Charlesbank's influence on Varsity's operation." (Id.) Additionally, the plaintiffs claim that "Kalvelage worked closely with John Sadlow, Varsity's director of Strategy and Business Development and oversaw strategy, evaluated 'threats' and acquired Spirit Celebration as a 'defensive play' against other independent event producers." (Id.) The plaintiffs include emails between Kalvelage and Sadlow regarding the Spirit Celebration acquisition.

Charlesbank argues that adding Kalvelage as a custodian would be duplicative. (ECF No. 112 at 13.) The undersigned finds that Kalvelage's unique involvement as CEO of Varsity and his prominent position at Charlesbank make it likely that a search of his files would recover highly responsive documents. The likely benefit of adding Kalvelage as a custodian outweighs the burden on

-18-

Charlesbank. Therefore, the request to add Kalvelage as a custodian is granted.

     iv. <u>David Katz</u>

David Katz has been a principal at Charlesbank from 2013 to present. The plaintiffs seek to include Katz as a custodian because "he is listed as one of the 'Key Team Members' in Charlesbank's acquisition and investment of Varsity as well as a key member of the Impact Deal Team." (ECF No. 102-1 at 11.) The plaintiffs state that "Katz is expected to possess relevant information regarding the holdings, increased valuation of Varsity, and Varsity's competitive position in the cheer market." (<u>Id.</u>) The plaintiffs also add that "before the sale to Bain, Katz played a role in the strategizing on the acquisitions of rival apparel manufactures." (<u>Id.</u>) The plaintiffs cite to emails written by Katz regarding an acquisition of an apparel company.

Charlesbank argues that Varsity's "valuation" has no relevance in this case. (ECF No. 112 at 10.) Additionally, Charlesbank states "despite having access to Varsity's entire production relating to acquisitions, [plaintiffs] cite only three documents about a short-lived and never consummated transaction in 2015, outside the applicable statute of limitations." (<u>Id.</u>) Charlesbank also argues that other Varsity custodians were included on these emails, so discovery from Katz would be

duplicative. (Id.) Finally, they claim that Katz has not been significantly involved with Varsity since 2018. (Id.)

The undersigned finds that Katz's position on the Impact Deal Team and his involvement in strategizing Varsity acquisitions make it likely that he will possess responsive documents. The burden of searching Katz's files is outweighed by the benefit that he will likely possess highly responsive documents. Therefore, the request to add Katz as a custodian is granted.

### v. Brian Pegno

Brian Pegno has been an associate at Charlesbank from 2019 to present. The plaintiffs seek to add Pegno as a custodian because "[he] was a key member of the Varsity team and is expected to have knowledge regarding Varsity's valuation." (ECF No. 102-1 at 11.)

Charlesbank points out that Pegno has only worked at Charlesbank since the company sold its majority interest in Varsity to Bain. (ECF No. 112 at 11.) The plaintiffs have not included any documents to support Pegno's inclusion besides a citation to an older version of Charlesbank's website which is no longer accessible. (ECF No. 102-1 at 11.) As a result, the undersigned finds that the burden of adding Pegno as a custodian outweighs the likely benefit to the plaintiffs. Therefore, the request to add Pegno as a custodian is denied.

### vi. Brandon White

Brandon White has been a managing director at Charlesbank from 1997 to present. (ECF No. 102-1 at 11.) The plaintiffs seek to add White as a custodian because "[he] played a key role in the acquisition of Varsity and in the management of Varsity after acquisition." (ECF No. 102-1 at 11.) The plaintiffs claim that "White participated in the discussion regarding the acquisition of Varsity's largest competitor JamBrands and other key competitors." (Id.) The plaintiffs also state that White "possesses knowledge regarding Charlesbank's role in formulating Varsity's business strategies as a member of Varsity Brands' Board of Directors." (Id.) Additionally, the plaintiffs argue that "White will have responsive information regarding officer compensation as he corresponded with Defendant Jeff Webb regarding his equity share and compensation." (Id. at 12.) Finally, the plaintiffs say that "White oversaw the agreement between Varsity and Disney World Resort." (Id.) The plaintiffs cite to emails that show White was included in the discussion of the acquisition of JamBrands and Omni, an email showing White drafted the agenda for a Varsity board meeting, and an email chain which shows he was involved with the contract between Varsity and Disney World Resort.

Charlesbank argues that adding White as a custodian would be duplicative and cumulative of other custodians. (ECF No. 112 at 11.) The undersigned finds that White's significant involvement in various aspects of Varsity's business and his prominent role at

Charlesbank make it likely that he will be in possession of highly responsive documents. The burden of searching White's files is outweighed by the benefit that he will likely possess highly responsive documents. Therefore, the request to add White as a custodian is granted.

**D.    Production of Financial Analyst Reports**

The plaintiffs request production of "[a]ll financial analysts' reports by Moody's, Standard and Poor's, or other rating agencies' reports, including all drafts thereof, concerning the acquisition of Varsity by Bain or Charlesbank and/or other buyers who had a proposal or expression of interest concerning any acquisition merger, consolidation, business combination, or other similar transaction or series of transactions involving Varsity or its subsidiaries." (ECF Nos. 101-1 at 8; 102-1 at 7.) On December 3, 2021, the parties emailed the court a list of outstanding disputes between the parties. In that email, defendants stated "[u]pon further inquiry, Bain [and Charlesbank have] determined [they do] not have documents of the kind described, making this request moot." Within seven days of the entry of this order, defendants are ordered to verify that these documents do not exist in a discovery response.

**E.    Production of Joint Defense Agreement and Judgment Sharing Agreement**

The plaintiffs seek production of "documents referring or relating to any joint defense, contribution, indemnification Agreements, or judgment sharing Agreement relating to any investigation, civil or criminal litigation involving the marketing of Competitive Cheer, Apparel, or Camp." (ECF Nos. 101-1 at 9; 102-1 at 8.) They argue that "discovery of any joint defense agreements is important because it will explain the extent to which the Defendants have agreed to exchange confidential information for their mutual benefit, and the extent to which that information may be protected from disclosure." (ECF Nos. 101-1 at 10; 102-1 at 9.) They further argue that a judgment sharing agreement "will be needed to inform assessment of class sales, damages, and potential settlement factors, such as whether any sales of settling defendants would be reduced by any agreement." (Id.)

Bain and Charlesbank object to the discovery of any joint defense agreement because any such agreement is not relevant to the allegations in the complaint and would reveal the defendants' defense strategy. (ECF Nos. 111 at 11-12; 112 at 13-14.) They also state the request for a judgment sharing agreement is moot because no such agreement exists. (ECF Nos. 111 at 12; 112 at 14.)

Pursuant to Rule 26(b)(1), discovery must be "relevant to any party's claim or defense[.]" Fed. R. Civ. P. 26(b)(1). This court finds that the plaintiff has failed to show that a joint defense

agreement is relevant to the claim or defense of any party. <u>See Broessel v. Triad Guar. Ins. Corp.</u>, 238 F.R.D. 215, 218 (W.D. Ky. 2006). For this reason, the undersigned concludes any joint defense agreements are not discoverable.[9] Bain and Charlesbank are ordered to verify that no judgment sharing agreement exists in a discovery response within seven days of the entry of this order.

### III. CONCLUSION

In sum, it is hereby ORDERED that:

- The search terms listed in ECF No. 100-4, Ex. 99 be used to search the following custodians:
    - Ryan Cotton
    - Spencer Dahl
    - Ethan Portnoy
    - Kate Steinman
    - Tom O'Rourke
    - Saron Tesfalul
    - Andrew Janower
    - Joshua Beer

---

[9]Although a joint defense agreement is currently not relevant, if the defendants ever assert the joint defense or common legal interest privilege to withhold information in discovery, the agreement may then become relevant. <u>See Blackmon v. Bracken Construction Company, Inc.</u> 338 F.R.D. 91, 94 (W.D. La. 2021) (reviewing Joint Defense Agreement in camera and allowing portions of it to be produced). At that point, defendants' argument that such a document would reveal their defense strategy would need to be addressed.

- Jesse Ge

- Neil Kalvelage

- David Katz

- Brandon White

- The relevant time periods for these searches be January 1, 2015 to June 30, 2020 for the Charlesbank custodians and June 30, 2017 to June 30, 2020 for the Bain custodians.

- Bain and Charlesbank verify in a discovery response that no documents responsive to Bain Request No. 12 and Charlesbank Request No. 13 exist within seven days of the entry of this order.

- Bain and Charlesbank verify in a discovery response that no judgment sharing agreement between the defendants exists within seven days of the entry of this order.

- The plaintiffs' request for production of the joint defense agreement between the defendants in this case be DENIED.

- The plaintiffs' requests to add Josh Bekenstein, Jay Corrigan, David Hutchins, Kim Davis, and Brian Pegno be DENIED.

IT IS SO ORDERED.

s/ Tu M. Pham
TU M. PHAM

-25-

Chief United States Magistrate Judge

December 13, 2021
Date