# **EXHIBIT 3(a)**

# AGREEMENT, GENERAL RELEASE, AND CONFIDENTIALITY STATEMENT

This Agreement, General Release, and Confidentiality Statement ("Agreement"), is between Varsity Spirit, LLC ("Varsity Spirit" or "the Company") and Marlene Cota ("Employee"), hereinafter referred to collectively as "the Parties."

**Agreement**

**1.  Definition.** Throughout this Agreement, the term "Released Parties," when capitalized and used alone, shall encompass the following:

(a)  Varsity Spirit, LLC and any other subsidiary, parent company, affiliated entity, related entity, or division of any of the foregoing including, but not limited to, Hercules VB Holdings, Inc. and its parents and subsidiaries and Hercules Achievement., Inc., and its parents and subsidiaries; and

(b)  Any current or former officer, member, director, trustee, agent, employee, insurer, shareholder, representative, or employee benefit or welfare program or plan (including the administrators, trustees, and fiduciaries of such program or plan) of an entity referenced in or encompassed by subparagraph 1(a).

**2.  Employment.** Employee's employment with Varsity Spirit ended January 9, 2018 (the "Separation Date").  Employee's termination is without cause and Employee is being provided severance (the "Severance Plan"). Employee acknowledges and agrees that she is required to sign, not revoke and comply with this Agreement in order to be entitled to any pay or benefits under the Severance Plan.  Employee agrees that as a condition of this Agreement, she waives her right to seek reemployment with the Company at any time and should she apply in the future, her application for employment will not be considered by the Company and will be null and void.  Employee hereby resigns from all positions held and all boards of directors and all equivalent bodies of the Company or any company related to the Company including any entity referred to in or encompassed by subparagraph 1(a).

**3.  Payment and Other Consideration.** 

If the Company reemploys the Employee while the Employee is receiving severance pay or benefits, the severance pay and benefits shall cease as of her reemployment date.  If the Employee dies before receiving all of the severance pay, the Company shall pay the remainder to the deceased

Employee's estate in a lump sum and shall continue the health continuation benefits for the Dependents for the duration of the continuation period set forth in this Agreement.

In paying the amounts and providing the benefits specified in this Paragraph 3, the Company makes no representation as to the tax consequences or liability arising from said payment, including but not limited to 26 C.F.R. § 409A. Moreover, the Parties understand and agree that any tax consequences and/or liability arising from the payments and benefits to Employee and the Dependents shall be the sole responsibility of Employee. To this extent, Employee acknowledges and agrees that she will pay any and all taxes and/or liabilities which may be determined to be due in connection with the payments and benefits described in this Paragraph 3. Employee also agrees to indemnify the Company for any and all tax and/or other liability (including, but not limited to, fines, penalties, interest, and costs and expenses, including attorneys' fees) arising from or relating to the payments and benefits described in this Paragraph 3 and/or imposed by the Internal Revenue Service, the State of Indiana, or any other taxing agency or tribunal as a result of the Company's failure to properly withhold taxes on or report the taxability of said payments and benefits or any portion thereof.

Employee and the Company agree that Employee, to the extent applicable, may be entitled to payments under the Varsity Brands Holding Co., Inc. Phantom Unit Plan, subject to the terms of the Phantom Unit Plan. As of the Separation Date, Employee has no earned and accrued vacation hours. Other than payment of these amounts, to which Employee may remain entitled, Employee acknowledges and agrees that the consideration and sums included in this Paragraph 3 are the maximum sums ever to be due Employee from the Company, and she hereby relinquishes and waives any rights to other forms of payment or benefits under any other agreement between Employee and the Company, whether written, oral, express or implied, except as expressly provided for in this Paragraph.

**4.     General Release and Waiver of Claims.** Employee, for herself, her heirs, executors, and administrators, hereby releases and discharges the Released Parties from any claim, demand, action, or cause of action, known or unknown, which arose at any time from the beginning of time to the date she executes this Agreement, and waives all claims against, relating to, arising out of, or in any way connected to the Released Parties, including without limitation claims related to Employee's employment with the Company, the cessation of her employment, or the compensation or benefits payable in connection with that employment or the cessation of that employment, including (without limitation) any claim, demand, action, or cause of action, including claims for attorneys' fees and costs, (hereinafter collectively referred to as "Claims"), based on but not limited to: The Age Discrimination in Employment Act of 1967, as amended ("ADEA"), 29 U.S.C. § 621, et seq; The Americans With Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12,101, et seq.; The Rehabilitation Act of 1973, as amended, 29 U.S.C. § 701 et seq.; The Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601, et seq.; The Civil Rights Act of 1866 and 1964, as amended, 42 U.S.C. § 1981; The Lilly Ledbetter Fair Pay Act of 2009; The Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, et seq.; Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000(e), et seq.; The Fair Credit Reporting Act, 15 U.S.C. § 1681, et seq.; The Worker Adjustment and Retraining Notification Act, 29 U.S.C. § 2101, et seq., and any similar state law; The Equal Pay Act, as amended, 29 U.S.C. § 206, et seq.; The National Labor Relations Act, 29 U.S.C. § 151, et seq.; The Indiana Civil Rights Law, Ind. Code § 22-9-1-1, et seq.; The Indiana Family Military leave law; the Indiana wage payment statute, Ind. Code § 22-2-4-1, et seq., and any Indiana wage law; any existing or potential entitlement under any Company program or plan, including wages or other paid leave; any existing or potential agreement, contract, representation, policy,

procedure, or statement (whether any of the foregoing are express or implied, oral or written); Claims under the U.S. or Indiana Constitution; and/or Claims arising under any federal, state and local fair employment practices law, and any other employee or labor relations statute, executive order, law or ordinance, and any duty or other employment related obligation, Claims arising from any other type of statute, executive order, law or ordinance or common law, Claims arising from contract or public policy, as well as tort, tortious cause of conduct, breach of implied covenant of good faith and fair dealing, breach of contract, intentional and/or negligent infliction of emotional distress, invasion of privacy, defamation, wrongful discharge, negligence, discrimination, harassment, and retaliation, together with all claims for monetary and equitable relief, punitive and compensatory relief and attorneys' fees and costs.

Employee understands and agrees that she is releasing the Released Parties from any and all Claims by which she is giving up the opportunity to recover any compensation, damages, or any other form of relief in any proceeding brought by Employee or on Employee's behalf. This Paragraph and this Agreement shall not operate to waive or bar any claim or right which may not under any circumstances be waived or barred.

**5.    Disclaimer of Liability.** This Agreement is not to be construed as an admission of liability or wrongdoing by either party, but is entered into in an effort to provide Employee with a severance package and to end the Parties' employment relationship on an amicable basis.

**6.    Confidentiality/Return of Property.** The terms of this Agreement are confidential. Employee agrees to keep the terms of this Agreement confidential and will not disclose any information concerning it to anyone except her immediate family, tax advisor, legal counsel, or anyone required by law to know the contents of the Agreement, *provided that* Employee shall inform any of these specified persons that she is bound by a confidentiality covenant and prior to any such disclosure to any of such persons, require that such person agree to abide by the terms of such covenant and not disclose any information concerning the Agreement. Employee agrees that, in the event she is compelled by court order or process to disclose any terms of this Agreement, she shall immediately notify Robert Tisdale by facsimile at 901-251-5849 and email to rtisdale@varsity.com at least seven days prior to the disclosure. Employee acknowledges that disclosure of the terms or amounts of this Agreement (by Employee or anyone she has told) would cause irreparable harm to the Company but in an amount incapable of precise determination. Should Employee violate this provision, the Company shall be entitled to injunctive relief in addition to any other available remedy or form of legal and equitable relief. Employee further acknowledges that this confidentiality provision is a material element of this Agreement and that consideration has been given for this provision.

Employee further agrees that she will not contact any business associates of the Company, including but not limited to present or past customers of the Company, concerning her employment, the cessation of her employment, or any information contained within this Agreement.

If asked about the terms of any severance, Employee agrees that she will decline comment and will make no verbal comments or physical gestures indicating that she has recovered monetary sums from the Company.

Employee certifies and declares that she has returned to the custody of the Company all Company property and documents, as well as any copies of Company property and documents, in her possession. The phrase "Company documents" is defined to include any writings, contracts, records,

3

files, tape recordings, correspondence, photographs, communications, summaries, data, notes, memoranda, diskettes, or any other source containing information which relates to or references the Company and which was provided by the Company or obtained as a result of Employee's relationship/employment with the Company.

      **7.**      **Non-Disclosure/Non-Solicitation/Non-Disparagement.** Employee agrees that the information she obtained as a result of her position with the Company was sensitive, private, proprietary, and/or confidential information. Employee hereby agrees and declares, under penalties of perjury, that (i) she will keep all such information confidential and (ii) she will not volunteer or disclose any such information to anyone without first obtaining express authorization to do so from the undersigned representative of the Company. For purposes of this Agreement, "proprietary" or "confidential" information would include, but is not limited to (whether written or not), trade secrets (as defined by applicable law), all information about the Company's services and programs, products, systems, manuals, processes, research, operations, customers and/or customer or prospective customer lists, finances, purchasing, costs, marketing plans, sales plans, sales, formulas, inventions, vendor lists, contracts, licenses, strategic and financial plans, financial reports, revenue information, margins, quotations, commission information, pricing, credit history and credit terms, engineering specifications, business methods or strategies, future business plans, databases, software, computer programs and other business aspects of Company which are not generally known to the public and/or which provide Company with a competitive advantage.

      Employee will not directly or indirectly seek to cause any person or organization to discontinue or limit their current relationship with the Company for a period of two years following the Separation Date.

      With the sole exception of legally protected activity, Employee or Released Parties will not make any statements or representations that disparage, demean, or impugn the other party or any negative representations concerning their prior interactions , including without limitation any statements impugning the personal or professional character of Employee or any board member, director, officer, or employee for the Company. Further and more specifically, Employee or Release Parties will not directly or indirectly, in public or in private, deprecate, impugn, or otherwise make any remarks that would tend to or could be reasonably construed to defame the other party.

      **8.**      **Non-Competition.** From the date this Agreement is signed through January 9, 2019, Employee shall not (i) in a competitive capacity, and in (A) area(s) lying within a fifty (50) mile radius of any Company office or facility to which Employee was assigned or for which Employee had any regular management or supervisory responsibilities for the "Company Family" (herein defined as the Company or for any company related in ownership to the Company), in each case at any time during the two (2) years preceding the Separation Date, (B) the state of Indiana, (C) the state of Tennessee, (D) the state of Texas, (E) each state of the United States of America in which an entity in the Company Family is offering for sale, selling, distributing, or providing its products and services, as of the Separation Date or at any time during the one (1) year preceding the Separation Date, (F) the United States of America, or (G) Canada (subsections A though G collectively, the "Region") directly or indirectly own, manage, finance, operate, control or participate in ownership, management, or operation of, act in a competitive capacity as an agent or consultant of, or be employed in a competitive capacity with, any business engaged in the development, production, marketing, sale or servicing of any product or service (i) with which Employee was involved during the last year of her employment with the Company, or (ii) which the Company Family is developing, producing, marketing, selling or servicing (or plans to develop, produce, market, sell or service) and

4

about which Employee gained any confidential or proprietary information during the course of her employment with the Company. Employee further agrees that she will not in the Region, from the date this Agreement is signed through January 9, 2019, assist in the research and development of any product or service where such research and development would be aided by the trade secret, confidential and/or proprietary information learned in the course of her relationship with the Company; or which competes with those products and services produced by the Company Family and with which Employee was involved with during the last two years of her employment with the Company.

      **9.**    **Non-Solicitation of Customers.** Employee agrees that, from the date this Agreement is signed through January 9, 2019, she will not in a competitive capacity, on behalf of any person or entity other than the Company, directly or indirectly:

    (a)    solicit, divert (or attempt to solicit or divert) or accept business from any customer of the Company;

    (b)    solicit, divert (or attempt to solicit or divert) or accept business from any customer of the Company with whom she has had contact (either directly or indirectly) or over which she has had responsibility during the last two years of her employment, or about whom she has obtained trade secret, confidential and/or proprietary information;

    (c)    solicit, divert (or attempt to solicit or divert) or accept business from any identified prospective customer of the Company; or

    (d)    solicit, divert (or attempt to solicit or divert) or accept business from any identified prospective customer of the Company with whom she has had contact (either directly or indirectly) or over which she has had responsibility during her last year of employment, or about whom she has obtained trade secret, confidential and/or proprietary information.

      **10.**    **Non-Solicitation of Employees.** Employee agrees that from the date this Agreement is signed through January 9, 2019, she will not directly or indirectly encourage, solicit, induce, or attempt to encourage, solicit or induce any Employee, agent or representative of an entity in the Company Family to leave her employment (or terminate her relationship) with the entity in the Company Family (or devote less than full time efforts to that business), and she will not directly or indirectly hire or attempt to hire, for any competitive or other position with any competitor or other business, any person who is an employee, agent or representative of an entity in the Company Family (or who was an employee, agent or representative of an entity in the Company Family at any time within the preceding 180 days).

      **11.**    **Other Restrictive Covenants**.  Sections 6 through 10 shall be read in tandem with, and shall not limit or be limited by, (i) the Employee Confidentiality, Non-Solicitation, Non-Competition and Invention Assignment Agreement signed by you on January 4, 2016 which is incorporated by reference herein; and (ii) any other restrictive covenant obligation you have to any of the Released Parties.

      **12.**    **Successors.** This Agreement shall apply to, and inure to the benefit of, the predecessors, successors, and assigns of Varsity Spirit and each past, present, or future employee, agent, representative, officer, or director of Varsity Spirit and any division, subsidiary, parent, or affiliated entity.

**13.** **Future Assistance.** Employee agrees that she will cooperate and make herself reasonably available to the Company in the event her assistance is needed to locate, understand, perform, complete, or clarify work previously performed by Employee or other matters related to the Company, *provided* that such assistance shall not unreasonably interfere with Employee's subsequent employment.

**14.** **Severability.** The Parties acknowledge and agree that the provisions of this Agreement are both reasonable and enforceable. However, the provisions of this Agreement are severable, and the invalidity of any one or more provisions shall not affect or limit the enforceability of the remaining provisions. In the unlikely event, therefore, that a court of competent jurisdiction determines that any of the terms, provisions, or covenants of the Agreement are unreasonable, the court shall limit the application of any such term, provision or covenant, or modify such term, provision or covenant and proceed to enforce those terms as so limited or modified.

**15.** **General Consequences.** In the event the Employee breaches the Confidential Information covenant described above, any portion of the Employee's executed Separation Agreement, or any non-compete, non-solicitation, confidentiality or other restriction contained therein or contained in any other agreements entered into between the Employee and the Company, (i) the payment of severance pay and benefits to the Employee or her dependents or survivors shall cease, (ii) the Company shall have no further obligation at any time to pay severance pay or benefits under the Plan, and (iii) the Employee shall be required to return to the Company any severance pay and benefits the Company paid or provided under this Plan less one thousand dollars ($1,000) and the Company shall have all remedies available at law for the recovery of such amounts.  In addition, should Employee ever breach any provision or obligation under this Agreement, Employee shall pay all damages (including, but not limited to, litigation and/or defense costs, expenses, and reasonable attorneys' fees) incurred by the Company as a result of Employee's breach if such breach is not cured or corrected within thirty (30) days of the Company's mailing written notice of the breach to Employee's last known address.  Nothing in this Paragraph is intended to limit or restrict any other rights or remedies the Company may have by virtue of this Agreement or otherwise.

**16.** **Applicable Law.** This Agreement shall be interpreted, enforced, and governed under the laws of Tennessee.

**17.** **Choice of Forum.** Employee understands and acknowledges Company's desire and need to defend any litigation against it in Tennessee. Accordingly, the Parties agree that any claim brought by Employee against Company or any of its employees or agents must be maintained only in the state and federal courts sitting in Memphis, Tennessee.

Employee further understands and acknowledges that in the event Company initiates litigation against Employee, the Company may need to prosecute such litigation in Employee's forum state, in the State of Tennessee, or in such other state where Employee is subject to personal jurisdiction. In addition, Employee specifically consents to personal jurisdiction in the State of Tennessee, as well as any state in which resides a customer whose account was serviced by or under Employee's direction or supervision during Employee's employment with Company. Both Parties waive the right to a jury trial.

**18.** **Nonwaiver.** The waiver by the Company of a breach of any provision of this Agreement by Employee shall not operate or be construed as a waiver of any subsequent breach by Employee.

**19.     Defend Trade Secrets Act Notice; Whistleblowing**.  Employee understands that pursuant to the Defend Trade Secrets Act of 2016, Employee shall not be held criminally or civilly liable under any federal or state trade secret law for the disclosure of a trade secret that (A) is made (i) in confidence to a federal, state, or local government official, either directly or indirectly, or to an attorney; and (ii) solely for the purpose of reporting or investigating a suspected violation of law; or (B) is made in a complaint or other document filed in a lawsuit or other proceeding, if such filing is made under seal.  In addition, nothing in this Agreement shall be interpreted or applied to prohibit Employee from making any good faith report to any governmental agency or other governmental entity concerning any act or omission that Employee reasonably believes constitutes a possible violation of federal or state law or making other disclosures that are protected under the anti-retaliation or whistleblower provisions of applicable federal or state law or regulation.

**20.     Knowledge and Understanding.** Employee declares, under penalty of perjury, that:

(a)     She has been and is hereby advised to consult with an attorney prior to executing this Agreement and has had the opportunity to do so;

(b)     She has been given a period of twenty-one (21) days within which to consider this Agreement which allows Employee to make a knowing, voluntary, and fully informed decision;

(c)     She has availed herself of all opportunities she deems necessary to make a voluntary, knowing, and fully informed decision; and

(d)     She is fully aware of her rights and has carefully read and fully understands all provisions of this Agreement before signing.

This notice is provided in accordance with the ADEA.

**21.     Effective Date.** If Employee consents to and signs this Agreement within twenty-one (21) days of receipt, Employee shall have an additional seven (7) days after signing the Agreement to revoke it. Employee expressly states, under penalty of perjury, that if she executes this Agreement before the expiration of the 21-day period, such execution is knowing, voluntary, and done on the advice of counsel (or with the opportunity to consult with counsel). Any revocation shall be in writing and addressed/delivered to the attention of Robert Tisdale at 6745 Lenox Center Court, Suite 300, Memphis, Tennessee. This Agreement shall not become effective, therefore, and none of the benefits set forth in this Agreement shall become effective until the $_8$th day after Employee executes this Agreement without revocation being exercised (the "Effective Date").

**22.     Termination of Payments.**  If Employee breaches any of Employee's obligations under this Agreement, in addition to any other legal or equitable remedies it may have for such breach, the Company shall have the right to terminate its payments to Employee or for Employee's benefit under this Agreement.  The termination of such payments in the event of Employee's breach will not affect Employee's continuing obligations under this Agreement.

**23.     Complete Agreement.** This Agreement, including without limitation the restrictive covenant obligations described herein and the documents governing your stock and phantom unit rights, sets forth the complete agreement between the Parties. Notwithstanding the foregoing, nothing in this Agreement is intended to or shall limit, supersede, nullify, or affect any duty or responsibility Employee may have or owe to the Company by virtue of any separate agreement or otherwise.

Employee represents and acknowledges that in executing this Agreement she does not rely and has not relied upon any representations or statements not set forth herein made by the Company or any of its employees, agents, representatives, officers, or directors with regard to the subject matter, basis, or effect of this Agreement or otherwise. This Agreement may be modified only in writing by a duly authorized officer of the Company.

**BY SIGNING THIS RELEASE, I STATE THAT: I HAVE READ IT; I UNDERSTAND IT AND KNOW THAT I AM GIVING UP IMPORTANT RIGHTS; I AGREE TO ALL THE TERMS CONTAINED WITHIN THE AGREEMENT; I AM AWARE OF MY RIGHT TO CONSULT AN ATTORNEY BEFORE SIGNING IT; I HAVE SIGNED IT KNOWINGLY AND VOLUNTARILY.**

The Parties have each executed this Agreement on the dates indicated below.

**FOR VARSITY SPIRIT, LLC**

By: _[signature]_
Burton Brillhart

Dated: January 30, 2018

_[signature]_
**Marlene Cota**

Dated: 1-30-2018

8