# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
## WESTERN DIVISION

| | |
|---|---|
| **FUSION ELITE ALL STARS**, et al.,<br><br>   Plaintiffs,<br><br>v.<br><br>**VARSITY BRANDS, LLC**, et al.,<br><br>   Defendants. | Case No. 2:20-cv-02600-SHL-tmp<br><br>**JURY TRIAL DEMANDED** |
| **JONES**, et al.,<br><br>   Plaintiffs,<br><br>v.<br><br>**BAIN CAPITAL PRIVATE EQUITY**, et al.,<br><br>   Defendants. | Case No. 2:20-cv-02892-SHL-tmp<br><br>**JURY TRIAL DEMANDED** |

## PLAINTIFFS' JOINT RESPONSE IN OPPOSITION TO MOTION TO QUASH OR MODIFY SUBPOENA DIRECTED TO <u>MARLENE COTA AND FOR PROTECTIVE ORDER</u>

# TABLE OF CONTENTS

I.     INTRODUCTION ...................................................................................................1

II.    BACKGROUND .....................................................................................................2

III.    LEGAL STANDARD.............................................................................................5

IV.    ARGUMENT .........................................................................................................7

       A.    Defendants Do Not Have Standing to Quash the Cota Subpoena ...........................7

       B.    No Good Cause Exists to Support a Protective Order ..........................................10

       C.    Plaintiffs Are Not Attempting to Dodge Rule 34 .................................................12

V.    CONCLUSION....................................................................................................14

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*B.L. v. Schuhmann*,
No. 18-cv-151, 2020 WL 3145692 (W.D. Ky. June 12, 2020) ....................................7, 9, 13

*In re Columbia/HCA Healthcare Corp. Billing Pracs. Litig.*,
293 F.3d 289 (6th Cir. 2002) ...................................................................................9

*DiLuzio v. Vill. of Yorkville, Ohio*,
No. 11-cv-1102, 2016 WL 7406535 (S.D. Ohio Dec. 22, 2016)............................15

*Elvis Presley Enters., Inc. v. City of Memphis, Tenn.*,
No. 18-cv-02718, 2020 WL 4283279 (W.D. Tenn. Apr. 6, 2020), *aff'd*, 2020
WL 4015476 (W.D. Tenn. July 16, 2020) ...........................................................6, 9, 12

*Fenney v. Wal-Mart Stores E., LP*,
2018 WL 6492967 (W.D. Tenn. Nov. 5, 2018) .......................................................7

*First Fin. Bank Nat'l Ass'n v. Williams*,
No. 19-cv-00128, 2021 WL 5315419 (W.D. Ky. Oct. 7, 2021)..........................9, 11

*Gard v. Grand River Rubber & Plastics Co.*,
No. 20-cv-125, 2021 WL 75655 (N.D. Ohio Jan. 8, 2021) ...................................7, 8

*Hickman v. Taylor*,
329 U.S. 495 (1947)................................................................................................12

*Lewis v. ABC Bus. Servs., Inc.*,
135 F.3d 389 (6th Cir. 1998) ...................................................................................6

*Orlowski v. Bates*,
No. 11-cv-01396, 2017 WL 5957931 (W.D. Tenn. Oct. 5, 2017)............................5

*Sandlin v. Citibank, N.A.*,
No. 15-cv-2768, 2017 WL 9538516 (W.D. Tenn. Oct. 31, 2017)............................6

*Smith & Nephew Inc. v. Nw. Ortho Plus, Inc.*,
No. 12-cv-02476JPMDKV, 2012 WL 13027947 (W.D. Tenn. July 17, 2012).......15

*Underwood v. Riverview of Ann Arbor*,
No. 08-cv-11024, 2008 WL 5235992 (E.D. Mich. Dec. 15, 2008) ..........................6

*United States Reg'l Econ. Dev. Auth., LLC v. Matthews*,
No. 16-cv-01093, 2018 WL 2172713 (D. Conn. May 10, 2018) ............................11

*Waite, Schneider, Bayless & Chesley Co. L.P.A. v. Davis,*
 No. 11-cv-0851, 2013 WL 146362 (S.D. Ohio Jan. 14, 2013)................................................11

*Whiting v. Trew,*
 2020 WL 6468131 (E.D. Tenn Nov. 3, 2020) ...........................................................................6

**Rules**

Fed. R. Civ. P. 26.......................................................................................................6, 11, 12

Fed. R. Civ. P. 26(b).............................................................................................................6

Fed. R. Civ. P. 26(b)(1).......................................................................................................15

Fed. R. Civ. P. 34...............................................................................................................12

Fed. R. Civ. P. 45............................................................................................................5, 12

Fed. R. Civ. P. 45(c).............................................................................................................6

**Other Authorities**

*A Tangled Jeff Webb Weaves Cheerleading's Olympic Dreams*, Sportico (Sept.
 16, 2021),
 https://www.sportico.com/personalities/executives/2021/cheerleading-varsity-
 brands-webb-1234638714/ ...................................................................................................2

Plaintiffs Fusion Elite All Stars, Spirit Factor LLC d/b/a Fuel Athletics, Stars and Stripes Gymnastics Academy Inc. d/b/a Stars and Stripes Kids Activity Center, Kathryn Anne Radek, Lauren Hayes, and Janine Cherasaro ("*Fusion Elite* Plaintiffs") and Plaintiffs Jessica Jones, Michelle Velotta, and Christina Lorenzen ("*Jones* Plaintiffs") (collectively, "Plaintiffs") hereby oppose the Motion to Quash or Modify Subpoena Directed to Marlene Cota and For Protective Order (*Fusion Elite*, Dkt. 178 or "Motion") filed by Defendants Varsity Spirit, LLC, Varsity Brands, LLC, Varsity Brands Holding Co., Inc., Varsity Spirit Fashions & Supplies, LLC ("Varsity") and Defendants Bain Capital, LP ("Bain"), and Charlesbank Capital Partners, LLC ("Charlesbank") (together, "non-Varsity Defendants") (collectively, "Defendants"). For the reasons set forth below, Defendants have no standing to challenge the subpoena and fail to show any good cause for a protective order. Accordingly, Defendants' Motion should be denied.

## I.      INTRODUCTION

Defendants do not have standing to challenge the subpoena duces tecum served on Marlene Cota on November 25, 2020 (hereinafter "Cota Subpoena"). First and fatally, Defendants are not a party to the Cota Subpoena, as she is an ex-employee of Varsity and received the subpoena as a non-party. It is the prerogative of the subpoena recipient to quash, not Defendants'. Second, Defendants do not meet the very limited exceptions that exist for when a party may interfere with non-party discovery to challenge a non-party subpoena: (a) a clear "personal interest" in the documents to be produced, e.g., where trade secrets or other highly personal information about a defendant will be revealed, or (b) where there is a privilege issue. There are also no grounds for the issuance of a protective order.

Ms. Cota's documents are indisputably relevant to Plaintiffs' claims. For example, in August 2021, Ms. Cota was interviewed by Mary Carillo on HBO's Real Sports with Bryant Gumble in an exposé regarding the "allegations of sexual abuse within the glitzy world of

competitive cheerleading." (Ex. 4)[1]. Ms. Cota is also heavily quoted in a September 16, 2021 article from Sportico.com regarding the relationship between Varsity, Jeff Webb, Charlesbank, and Bain, all of which are Defendants in the *Jones* action.[2]

Defendants have not demonstrated any "personal interest" or "privilege," so as to give them any standing to quash the Cota Subpoena, nor do they show sufficient grounds for a protective order. Defendants' Motion is nothing more than an attempt to use crafty lawyering to block Plaintiffs from uncovering highly relevant information that Defendants know Ms. Cota has in her possession and which they do not want to be part of the evidentiary record in these actions. Defendants' Motion should be denied in its entirety.

## II.   BACKGROUND

Marlene Cota was employed by Varsity from approximately June 2005 to January 2018 and held the title of "VP Corporate Alliances" at the time of her termination. (Dkt. 178 at 3-5.) Her documents are indisputably relevant to Plaintiffs' claims. In August 2021, Ms. Cota was interviewed by Mary Carillo on HBO's Real Sports with Bryant Gumbel exposé regarding the "allegations of sexual abuse within the glitzy world of competitive cheerleading." (Ex. 4) In that episode, the following exchange occurred regarding Varsity's role in All Star Cheer and the impact of its monopoly on child safety:

> Cota: The priority was 'protect the brand.'
>
> Carillo: Not the child?
>
> Cota: Correct
>
> ….

---

[1] The exhibits referenced herein are attached the Declaration of Katherine Van Dyck in Support of Plaintiffs' Joint Response in Opposition to Motion to Quash or Modify Subpoena Directed to Marlene Cota and For Protective Order ("Van Dyck Decl."), filed contemporaneously herewith.

[2] *See* Daniel Libit, *A Tangled Jeff Webb Weaves Cheerleading's Olympic Dreams*, Sportico (Sept. 16, 2021), https://www.sportico.com/personalities/executives/2021/cheerleading-varsity-brands-webb-1234638714/.

> Cota: 90-95% of the business of cheerleading is controlled by Varsity.
>
> Carillo: So from top to bottom? From the bows in their hair to all the events?
>
> Cota: Ponytails to the toes.
>
> ….
>
> Cota: They created a governing body so that they could manage how they were going to keep that growth, that machine, going.
>
> Carillo: Did anyone see an issue with a massive multibillion dollar corporation creating the governing body?
>
> Cota: No. You know the, the directive was always profit, profit, profit.
>
> Carillo: So what is the USASF in your eyes?
>
> Cota: It's just another appendage of Varsity.

(Van Dyck Decl. ¶6) Those statements relate directly to Plaintiffs' allegations that Varsity (1) uses its control of USASF to increase its market power, (*Fusion Elite*, Dkt. 56 ¶¶197-205; *Jones*, Dkt. 1 ¶¶102-120), and (2) "refused to take action [against sex abuse] because its market share and lack of effective competition allowed it to resist calls for a more rigid, restrictive, and expensive background check system," (*Fusion Elite*, Dkt. 56 ¶241).

Ms. Cota's knowledge, and the description of her former job at Varsity, that Varsity provides in its Motion, make clear that she is a highly relevant figure in this litigation. Yet her name does not appear in Varsity's initial disclosures, served by Varsity on October 30, 2020. (Van Dyck Decl. ¶2, Ex. 1.) In addition, on November 25, 2020, *Fusion Elite* Plaintiffs served interrogatories on Varsity that included a request to "[i]dentify all Person(s) responsible for negotiating, drafting, implementing, and approving any Contracts on behalf of Varsity with . . . (c) third-party merchandisers or retailers selling Apparel or other cheerleading-related merchandise at All Star Events [and] (d) any Sponsor of All Star Events, Championships, or

Championship Qualifiers." (Van Dyck Decl. ¶ 3, Ex. 2 at 48.) [3] In its responses served on December 28, 2020, Varsity identified two employees who negotiated with third-party merchandisers and retailers—John Newby and Chris Darby (*Id*. at 49.) It identified no employees who negotiated with Sponsors, and Ms. Cota's name is not identified anywhere else in the interrogatory responses. (*Id*.) Ms. Cota was also excluded from the list of custodians Varsity identified in response to *Fusion Elite* Plaintiffs' First Request for Production of Documents. (Van Dyck Decl. ¶ 4, Ex. 3.) Now, Varsity tells Plaintiffs for the first time in its Motion, that Ms. Cota "was primarily involved in corporate sponsorships." (*Fusion Elite*, Dkt. 178 at 2.) Then, it criticizes *Fusion Elite* Plaintiffs in the same breath for not identifying her as a custodian sooner. (*Id*.) Clearly, Varsity should have disclosed Ms. Cota's identity sooner.

Varsity concedes that it has not reviewed Ms. Cota's custodial files, yet it is clear from her attorney's letter that Ms. Cota should have been identified in Varsity's discovery responses as a custodian and not in a television interview that aired after negotiations over custodians had concluded. (Dkt. 178-2). Responsive documents in Ms. Cota's possession include:

- "agreements and other documents describing or referencing Ms. Cota's employment compensation, and/or the terms and conditions of her employment with Varsity;"

- "correspondence between Ms. Cota and Varsity employees and/or sponsors or other third parties pertaining to sponsorships, competitions, competitors, and other business dealings;"

- "business development documents disseminated by Varsity to its employees and/or third parties including documents related to acquiring sponsorships and commissions for the acquisition of new sponsorships;" and

- "Ms. Cota's personal notes made during her employment with Varsity, some of which are loose leaf and many of which are contained in volumes of notebooks."

---

[3] Plaintiffs are not relying on any redacted portions of this exhibit.

(Dkt. 178-2 at 2.) These categories are directly relevant to Plaintiffs' claims that Varsity monopolized the All-Star Cheer and All-Star Apparel Markets, including by "den[ying] its actual and potential competitors access to the showrooms at its market-dominant All Star Competitions." (Dkt. 56 ¶153.) Varsity should not be permitted to conceal those documents from Plaintiffs now, based on its own lack of transparency or its private agreements with Ms. Cota.

Reference to Ms. Cota in the Sportico.com article on September 16, 2021 (see, fn. 2, supra), indicates that Ms. Cota has highly relevant information about the relationship between Defendant Jeff Webb and his successor as CEO at Varsity, Adam Blumenfeld, as well as the role of Charlesbank and Bain as owners of Varsity. For example, the Sportico piece quotes Ms. Cota and further cements the high relevancy of documents and information that may be in her possession:

> Cota, who contends that Webb still coveted the top job, describes the dynamic between him and Blumenfeld as a 'rivalry, and probably not a healthy one.' Webb disputes that characterization, calling the relationship 'cordial.' (The Varsity spokesperson said: 'Adam and Jeff have long enjoyed – and continue to enjoy – a cordial and constructive professional relationship.') In any case, Cota says Blumenfeld was better suited at playing the 'Wall Street game.'

> 'I have every opportunity to throw Jeff under the bus,' Cota said, 'but I think it is important for people to understand that while Jeff is a businessman, the real commoditization of the brand didn't happen until the [arrival] of Charlesbank and Adam Blumenfeld and BSN and Bain Capital.'

Libit, *supra*.

## III.   LEGAL STANDARD

"'The scope of a subpoena issued under Rule 45 of the [FRCP] is ... subject to the general relevancy standard applicable to discovery under [FRCP] 26(b)(1).'" *Orlowski v. Bates*, No. 11-cv-01396, 2017 WL 5957931, at *1 (W.D. Tenn. Oct. 5, 2017) (citation omitted). That standard "'is to be liberally construed to permit broad discovery.'" *Id*. at *2. Relevance in

discovery is more liberal than the trial setting, "as Rule 26(b) allows any "line of interrogation [that] is reasonably calculated to lead to the discovery of admissible evidence." *See*, *e.g.*, *Lewis v. ABC Bus. Servs., Inc.*, 135 F.3d 389, 402 (6th Cir. 1998).

While a subpoena recipient may move to quash under certain circumstances, Defendants do not have any standing to quash a non-party subpoena. The only exceptions are where a Defendant can demonstrate "". . . a personal interest or claim of privilege in the subpoenaed documents."" *Sandlin v. Citibank, N.A.*, No. 15-cv-2768, 2017 WL 9538516, at *1 (W.D. Tenn. Oct. 31, 2017) (citation omitted); *see also Whiting v. Trew*, 2020 WL 6468131, *6 (E.D. Tenn Nov. 3, 2020) ("Ordinarily a party has no standing to quash a subpoena issued to someone who is not a party to the action, unless the objecting party claims some personal right or privilege with regard to the documents sought") (internal citations omitted). Moreover, "the party which seeks to quash the subpoena bears a heavy burden of proof." *Id*. A non-party may quash a subpoena only if it ""(i) fails to allow a reasonable time to comply; (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c); (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or (iv) subjects a person to undue burden."" *Id*. at *1 (citation omitted).

Under Rule 26, this Court can only enter a protective order ""for good cause shown' . . . 'from annoyance, embarrassment, oppression, or undue burden or expense.'" *Elvis Presley Enters., Inc. v. City of Memphis, Tenn.*, No. 18-cv-02718, 2020 WL 4283279, at *4 (W.D. Tenn. Apr. 6, 2020), *aff'd*, 2020 WL 4015476 (W.D. Tenn. July 16, 2020) (quoting Fed. R. Civ. P. 26(c)(1)). "Good cause exists if 'specific prejudice or harm will result' from the absence of a protective order." *Id*. Defendants must articulate "specific facts showing 'clearly defined and serious injury' resulting from the discovery sought and cannot rely on mere conclusory statements." *Underwood v. Riverview of Ann Arbor*, No. 08-cv-11024, 2008 WL 5235992, at *2

(E.D. Mich. Dec. 15, 2008) (citation omitted). "The principle of public access to legal proceedings guides any decision that seeks to limit that access." *Fenney v. Wal-Mart Stores E., LP*, 2018 WL 6492967, at *1 (W.D. Tenn. Nov. 5, 2018) (citation and quotations omitted).

## IV.    ARGUMENT

### A.    Defendants Do Not Have Standing to Quash the Cota Subpoena

Ms. Cota wants to cooperate with the subpoena and produce the highly relevant evidence and information in her possession. It is Ms. Cota's subpoena to challenge, and she has chosen not to do so. Rather, it is Varsity, Bain and Charlesbank who are attempting to quash production of relevant information that Ms. Cota has every right to provide. Sixth Circuit courts have made clear that only the subpoena recipient may move to quash, with only very limited exceptions for where another party has a "personal interest" or where documents are "privileged." Neither of those exceptions apply here.

Defendants do not demonstrate any personal interest or privilege. Rather, Defendants argue that they have standing to quash because the documents sought are "Varsity's sole property." (Dkt. 178 at 10.) In support, Defendants point to various confidentiality agreements between Varsity and Ms. Cota. However, there is "no law in support of [Defendants'] position that a private confidentiality agreement constitutes 'privileged or other protected matter' within the meaning of the rule, nor would it make sense for parties to be able to categorically put materials beyond the reach of a court order by contract." *B.L. v. Schuhmann*, No. 18-cv-151, 2020 WL 3145692, at *4 (W.D. Ky. June 12, 2020). Instead, it is well established that "a defendant 'should not be able to buy the silence of witnesses with a [confidentiality] agreement when the facts of one controversy are relevant to another.'" *Gard v. Grand River Rubber &*

*Plastics Co.*, No. 20-cv-125, 2021 WL 75655, at *7 (N.D. Ohio Jan. 8, 2021) (citation omitted).[4]
As the court in *Gard* explained, "'The Federal Rules of Civil Procedure's liberal discovery rules
trump private party agreements seeking to limit available information.'" *Id.* at *8 (citation
omitted) (alteration in original). That maxim should especially hold true here, where Varsity
intentionally delivered the documents at issue to Ms. Cota after terminating her employment.

Defendants tell this Court that the documents at issue "should never have been in Ms.
Cota's possession following her departure." (Dkt. 178 at 2.) However, Defendants omit
important facts about how they came into Ms. Cota's possession in the first place. Ms. Cota did
not abscond with the documents, nor were they in her possession by virtue of her employment.
When Ms. Cota was terminated in 2018, Defendants specifically instructed Ms. Cota "to return
the following day to receive her personal things." (Dkt. 178-2 at 1.) Upon doing so, "Robert
Tisdale and Ron Shaw, both Varsity employees, placed boxes of Ms. Cota's personal items into
her vehicle. Ms. Cota did not know specifically what the boxes provided by Varsity contained,
and she did not examine their contents." (Dkt. 178-2 at 1.) That is, approximately four years ago,
Varsity intentionally gave Ms. Cota the documents at issue after her employment ended. Varsity
does not deny that this transpired, *i.e.*, that Ms. Cota only came into possession of the disputed
documents via Varsity's voluntarily delivery to her. Defendants cannot demonstrate any personal
interest in the documents by way of their confidentiality agreements with Ms. Cota.

---

[4] *See also*, *e.g.*, *Gard*, 2021 WL 75655 at *7 (citing *Kalinauskas v. Wong*, 151 F.R.D. 363, 364-
366 (D. Nev. 1993) (finding that a confidential settlement agreement between defendants
employer and a former employee could not prevent a plaintiff in a sexual discrimination suit
from deposing the former employee regarding her employment and any knowledge of sexual
harassment); *Id.* (citing *Hamad v. Graphic Arts Ctr., Inc.*, 1997 WL 12955, at *1-2 (D. Or. Jan.
3, 1997) (finding that confidentiality and non-disparagement provisions of settlement agreement
between defendant employer and former employee were against public policy and, therefore,
void to the extent they prohibited the former employee from testifying in deposition in plaintiff's
Title VII action).

Varsity's claims of standing also fail because Varsity offers only vague assertions of privilege and confidentiality instead of specific facts regarding why the documents require protection. *See B.L.*, 2020 WL 3145692, at *5 (denying motion to quash where "assertions [we]re insufficiently vague to allow the Court to conclude the subpoena request[ed] disclosure of trade secrets"). "[A] 'movant cannot demonstrate confidentiality by resting on vague and conclusory assertions.'" *First Fin. Bank Nat'l Ass'n v. Williams*, No. 19-cv-00128, 2021 WL 5315419, at *2 (W.D. Ky. Oct. 7, 2021) (citation omitted).

Finally, any theoretical privilege that might have existed was waived in January 2018. "As a general rule, the 'attorney-client privilege is waived by voluntary disclosure of private communications by an individual or corporation to third parties.'" *In re Columbia/HCA Healthcare Corp. Billing Pracs. Litig.*, 293 F.3d 289, 294 (6th Cir. 2002) (quoting *In re Grand Jury Proceedings October 12, 1995*, 78 F.3d 251, 254 (6th Cir.1996)). "Secondly, any form of selective waiver, even that which stems from a confidentiality agreement, transforms the attorney-client privilege into 'merely another brush on an attorney's palette, utilized and manipulated to gain tactical or strategic advantage.'" *Id*. at 302. Nor can Defendants "rely on the confidentiality agreement to salvage work product protections" previously afforded to Varsity. *Id*. at 306. Varsity could have reviewed the documents before putting them in Ms. Cota's car, but it chose not to. Thus, any privilege that existed or may have attached to those documents was waived when the documents were delivered to Ms. Cota, and that "waiver is complete and final." *Id*. at 307.

Even if Varsity could somehow stretch the bounds of standing or persuade the Court that it has some viable property interest in Ms. Cota's documents, Charlesbank and Bain certainly do not. Charlesbank and Bain cannot show a "personal interest" or "privilege" or any grounds to quash or challenge the Cota Subpoena. While Charlesbank and Bain rely heavily on *Elvis*

*Presley* to establish their standing, the decisive factors identified in that case are absent here. First, neither Bain nor Charlesbank has demonstrated any "personal interest" such as trade secrets or other highly personal information of theirs that will be exposed in the Cota documents. Even if Varsity could somehow argue it has some property interest in the Cota documents based on its confidentiality agreements, neither Charlesbank nor Bain were a party to such agreements. It is even less clear how documents over which Varsity claims ownership would implicate a privilege with respect to Charlesbank or Bain. Charlesbank has no present ownership over Varsity (as owners from 2014-2018), and Bain's ownership began in 2018. (*Jones*, Dkt. 1 ¶¶21, 84-85.) The connection between the documents and Bain or Charlesbank is simply too vague to confer any standing on those parties.

### B. No Good Cause Exists to Support a Protective Order

Defendants make the backup argument that, even if they have no standing to quash, they should be allowed to block Plaintiffs from obtaining relevant evidence via a protective order. (Dkt. 178 at 8.) As an initial matter, it is unlikely that Defendants have standing to seek a protective order regarding a non-party's production of documents. Rather, this would be the prerogative of Ms. Cota, who does not object to production. In any event, Defendants cannot meet the standard necessary to obtain a protective order. Defendants do not articulate specific facts showing "annoyance." They do not allege that any of documents in Ms. Cota's possession contain trade secrets; they only state that she made a private agreement to keep such information confidential. Defendants also do not allege that production of the documents would cause any sort of harm to their businesses. Defendants do not assert that the subpoena is overly broad or that the documents sought are irrelevant. They cannot. Finally, Defendants cannot claim burden or expense as they are not the ones who will even produce the documents. They state only that

the production "*could potentially* result in the disclosure of privileged attorney-client communications." (Dkt. 178 at 3) (emphasis added).

Ms. Cota's attorney has already offered to designate the documents as "Highly Confidential" pursuant to the protective order previously entered by this Court. (Dkt. 178-2 at 2; Dkt. 77 ¶¶2.7, 7.4.) Defendants also have the ability to designate the documents as "Highly Confidential" and to claw back any privileged documents under the operative protective orders in these actions. (*Fusion Elite*, Dkt. 77 ¶¶5.4, 12.1-12.4; *Jones*, Dkt. 66 ¶¶5.4, 12.1-12.4.) Varsity's claim that the documents in Ms. Cota's possession "*may contain* attorney-client privilege communications" is therefore simply too vague and insufficient to establish good cause under Rule 26. (Dkt. 178 at 10) (emphasis added); *see also United States Reg'l Econ. Dev. Auth., LLC v. Matthews*, No. 16-cv-01093, 2018 WL 2172713, at \*9 (D. Conn. May 10, 2018) ("Other than a conclusory allegation such an interest exists, Defendants fail to inform the Court how their privacy interests would be negatively impacted by disclosure of the documents."). It is speculative at best and inconsistent with the description of documents provided by Ms. Cota, which does not identify communications with Varsity attorneys. Even if such communications did exist, an improper disclosure of privileged communications (to the extent such privilege has not been waived) would be easily remedied with the protections already provided by this Court. *Id.*; *see also Williams*, No. 19-cv-00128, 2021 WL 5315419, at \*2 (W.D. Ky. Oct. 7, 2021) ("confidentiality concerns are assuaged where documents exchanged in this discovery shall be entitled to the protection of the stipulated protective order entered by this Court"); (Dkt. 77).

Charlesbank and Bain's claims for a protective order are even more attenuated, and likewise, neither can make a case why the current protective order provisions would be insufficient to the extent any information is contained in Ms. Cota's production. *Waite, Schneider, Bayless & Chesley Co. L.P.A. v. Davis*, No. 11-cv-0851, 2013 WL 146362, at \*5

(S.D. Ohio Jan. 14, 2013) (defendant did not have standing to quash subpoena, and instead of issuing protective order, court found it sufficient for third party subpoenas to be supplemented with operative protective order in the case).

Defendants' proposal—essentially an *in camera* review of the documents outside the presence of Plaintiffs *and the Court*—is simply not contemplated by Rule 26 or Rule 45. Such a procedure would permit Defendants to unilaterally conceal properly subpoenaed documents from Plaintiffs without any indication as to why and without Plaintiffs having access to that same highly relevant evidence. Given that Varsity should have identified Ms. Cota in response to multiple other discovery requests by Plaintiff, such a result would prejudice Plaintiffs and be grossly unfair. "Mutual knowledge of all the relevant facts gathered by both parties is essential to proper litigation." *Hickman v. Taylor*, 329 U.S. 495, 507 (1947). Thus, even if the Court were to find that a protective order is warranted for Ms. Cota's documents, that should not preclude access to those documents for Plaintiffs.

### C.   Plaintiffs Are Not Attempting to Dodge Rule 34

Defendants attempt to assert that Plaintiffs are trying to get around Rule 34. Defendants chiefly rely on *Elvis Presly Enterprises*, 2020 WL 4283279, claiming that Plaintiffs could have sought these documents from Varsity. This argument is not persuasive. The parties in *Elvis Presley* were not similarly situated. In *Elvis Presley*, discovery had closed, and "[t]he court w[ould] not allow EPE to circumvent its scheduling orders by seeking documents from a party by a Rule 45 subpoena." *Id*. at *5. Defendants' other cases are equally inapposite. In *PCA-Corrections v. Akron Healthcare*, the plaintiffs served a third-party subpoena seeking duplicative documents before the defendant had even received requests for production. No. 20-cv-428, 2021 WL 2043118, at *3 (S.D. Ohio May 21, 2021). Finally, the subpoenaed non-party in *Madej v. Yale University* was a current employee, and the defendant had already produced 100 pages of

documents in response to identical requests. No. 20-cv-133, 2020 WL 6270273, at *1 (D. Conn. Oct. 26, 2020).

Here, Defendant failed to identify Ms. Cota in its initial disclosures and its discovery responses. (Van Dyck Decl. ¶¶ 2-4, Exs. 1, 2, 3.) Plaintiffs only learned of her significance through a nationally-televised interview on HBO, which aired in August 2021, and the with the additional article on Sportico.com published on September 16, 2021. Discovery is not closed, and Varsity concedes that is has likely not reviewed or produced documents from Ms. Cota's custodial files. In addition, Varsity has no proprietary interest in her personal diaries. Finally, Defendants seem to take the simultaneous positions that (1) "Plaintiffs issued voluminous document requests to Defendants" and (2) "Plaintiffs never s[ought] such material from Varsity itself." (Dkt. 178 at 13, 14.) If Defendants are correct that the subpoena is not duplicative of the documents already sought from or produced by Varsity, "there is no reason for the Court to limit discovery."[5] *B.L. v. Schuhmann*, No. 18-cv-151, 2020 WL 3145692, at *3 (W.D. Ky. June 12, 2020).

Defendants' objection to Plaintiffs' Request for Production No. 8 is even less convincing. Yes, *Fusion Elite* Plaintiffs agreed to withdraw, temporarily, their requests *to Varsity* related to sex abuse pending resolution of the motion to strike as part of an effort to resolve discovery disputes with Varsity. However, Plaintiffs have no such agreement with Ms. Cota, discovery closes in four and a half months, and this Court has stated unequivocally that "[n]o other requests for extensions of these deadlines will be granted absent extraordinary circumstances." (Dkt. 175

---

[5] Even if the subpoena is duplicative of prior discovery requests, Varsity concedes that is has not produced appropriate responsive documents. It's failure to identify Ms. Cota in response to Plaintiffs' document requests and interrogatories was clearly in error, whether intentional or not. Thus, should this Court grant Defendants' motion, Varsity should, at a minimum, be required to search Ms. Cota's custodial files and produce any responsive documents that are retrieved.

at 4.) The time for discovery on this issue is now, and Ms. Cota's interview on HBO intimates that she has knowledge regarding the connection between Varsity's monopolistic behavior and the rampant sex abuse existing in All Star Cheer. (Van Dyck Decl. ¶6) (telling HBO that Varsity's priority was to "protect the brand" and "not the child"). Plaintiffs' request for documents relating to those allegations is not insidious; it is directly relevant to those allegations. Defendants offer no legitimate reason for prohibiting it, particularly given this Court's prior ruling that discovery would not be stayed pending its motion to strike.[6]

In sum, Defendants do not have standing to quash the Cota Subpoena, nor do they meet the very limited exceptions for when a party may have grounds to quash a non-party subpoena. There are also no grounds for a protective order, but even if particular additional protections are needed regarding the Cota documents (and Defendants have not demonstrated that they are), that is no ground for a refusal to produce the documents. Furthermore, even if there is a dispute about who should have rightful possession of the documents sought by the Cota Subpoena (Varsity or Ms. Cota), that also does not preclude Plaintiffs from obtaining the documents sought.

## V.    CONCLUSION

Varsity failed to disclose a former employee with knowledge directly relevant to this litigation, and now it along with Bain, and Charlesbank are trying to use private agreements imposed on Ms. Cota as part of her employment and subsequent termination by Varsity to conceal documents relevant to this litigation. This is a distortion of the discovery process.

---

[6] *See* Dkt. 55 at 21:15-22:3 ("I am not inclined to stay anything pending a motion to dismiss. It's not the way I view my role as a judge in pushing cases and moving people toward resolution. I hate doing it . . . . But otherwise I'm just not inclined to do it. I don't think it's appropriate. I think giving -- setting aside time where the Court is dealing with the motion to dismiss just frankly I think takes the lawyers off the hook. And I'm not inclined to do that. Particularly in this case where you're talking about a motion that's not even going to be ripe for me to deal with until mid February. So I'm not going to do that.").

"Indeed, '[t]he purpose of discovery is to allow a broad search for facts, the names of witnesses, or any other matters which may aid a party in the preparation or presentation of his case.'" *Smith & Nephew Inc. v. Nw. Ortho Plus, Inc.*, No. 12-cv-02476JPMDKV, 2012 WL 13027947, at *1 (W.D. Tenn. July 17, 2012) (citation omitted); Fed. R. Civ. P. 26(b)(1) advisory committee's note. Defendants are "taking what is supposed to be a transparent process under the Federal Rules of Civil Procedure and turning it into an all-out war over information." *DiLuzio v. Vill. of Yorkville, Ohio*, No. 11-cv-1102, 2016 WL 7406535, at *31 (S.D. Ohio Dec. 22, 2016), *report and recommendation adopted*, 2017 WL 780605 (S.D. Ohio Feb. 28, 2017). Defendants have no standing to challenge the subpoena and have failed to show good cause for a protective order. Plaintiffs' respectfully request that Defendants' Motion be denied.

Dated: January 10, 2022                    Respectfully submitted,


By: */s/ Katherine Van Dyck*
Jonathan W. Cuneo*
Katherine Van Dyck*
Victoria Sims*
CUNEO GILBERT & LADUCA, LLP
4725 Wisconsin Avenue NW, Suite 200
Washington, DC 20016
Telephone: (202) 789-3960
jonc@cuneolaw.com
kvandyc@cuneolaw.com
vicky@cuneolaw.com

H. Laddie Montague, Jr.*
Eric L. Cramer*
Michael Kane*
Mark R. Suter*
BERGER MONTAGUE PC
1818 Market Street, Suite 3600
Philadelphia, PA 19106
Telephone: (215) 875-3000
hlmontague@bm.net
ecramer@bm.net
mkane@bm.net
msuter@bm.net

Gregory S. Asciolla*
Karin E. Garvey*
Veronica Bosco*
LABATON SUCHAROW LLP
140 Broadway New York, NY 10005
Telephone: (212) 907-0700
gasciolla@labaton.com
kgarvey@labaton.com
vbosco@labaton.com

*Interim Co-Lead Counsel in the Fusion Elite Action
for the Proposed Direct Purchaser Class*

J. Gerard Stranch, IV (TN BPR #23045)
Benjamin A. Gastel (TN BPR #28699)
BRANSTETTER, STRANCH & JENNINGS,
PLLC
223 Rosa Parks Ave. Suite 200
Nashville, TN 37203
Telephone: (615) 254-8801

16

gerards@bsjfirm.com
beng@bsjfirm.com

*Liaison Counsel in the Fusion Elite Action for the
Proposed Direct Purchaser Class*

Benjamin D. Elga*
JUSTICE CATALYST LAW, INC.
81 Prospect Street Brooklyn, NY 11201
Telephone: (518) 732-6703
belga@justicecatalyst.org

Craig L. Briskin*
JUSTICE CATALYST LAW, INC.
718 7th Street NW Washington, DC 20001
Telephone: (518) 732-6703
cbriskin@justicecatalyst.org

Roberta D. Liebenberg*
Jeffrey S. Istvan*
Mary L. Russell*
FINE KAPLAN AND BLACK, R.P.C.
One South Broad St., 23rd Floor
Philadelphia, PA 19107
Telephone: (215) 567-6565
rliebenberg@finekaplan.com
jistvan@finekaplan.com
mrussell@finekaplan.com

Nathan A. Bicks (TN BPR #10903)
Frank B. Thacher III (TN BPR #23925)
BURCH, PORTER, & JOHNSON, PLLC
130 North Court Ave.
Memphis, TN 38103
Telephone: (901) 524-5000
nbicks@bpjlaw.com
fthacher@bpjlaw.com

Aubrey B. Harwell, Jr. (TN BPR #002559)
Charles Barrett (TN BPR #020627)
Aubrey B. Harwell III (TN BPR #017394)
NEAL & HARWELL, PLC
1201 Demonbreun St., Suite 1000 Nashville, TN
37203
Telephone: (615) 244-1713
aharwell@nealharwell.com
cbarrett@nealharwell.com
tharwell@nealharwell.com

*Counsel in the Fusion Elite Action for the Proposed
Direct Purchaser Class*

Joseph R. Saveri*
Steven N. Williams*
Ronnie Seidel Spiegel*+
Katharine A. Malone*
Anna-Patrice Harris*
JOSEPH SAVERI LAW FIRM, LLP
601 California Street, Suite 1000
San Francisco, California 94108
Telephone: (415) 500-6800
Facsimile:  (415) 395-9940
        jsaveri@saverilawfirm.com
        swilliams@saverilawfirm.com
        rspiegel@saverilawfirm.com
        kmalone@saverilawfirm.com
        aharris@saverilawfirm.com

Van Turner (TN Bar No. 22603)
BRUCE TURNER, PLLC
2650 Thousand Oaks Blvd., Suite 2325
Memphis, Tennessee 38118
Telephone: (901) 290-6610
Facsimile: (901) 290-6611
Email: vturner@bruceturnerlaw.net

Richard M. Paul III*
Sean R. Cooper*
Ashlea Schwarz*
PAUL LLP
601 Walnut, Suite 300
Kansas City, Missouri 64106
Telephone: (816) 984-8100
rick@paulllp.com
sean@paulllp.com
ashlea@paulllp.com

Jason S. Hartley*
HARTLEY LLP
101 West Broadway, Suite 820
San Diego, CA 92101
Telephone: (619) 400-5822
Email: hartley@hartleyllp.com

Daniel E. Gustafson*
Daniel C. Hedlund*
Daniel J. Nordin*

18

GUSTAFSON GLUEK PLLC
Canadian Pacific Plaza
120 South Sixth Street, Suite 2600
Minneapolis, MN 55402
Telephone: (612) 333-8844
Facsimile: (612) 339-6622
dgustafson@gustafsongluek.com
dhedlund@gustafsongluek.com
dnordin@gustafsongluek.com

*Attorneys in the Jones Action for Individual and Representative Plaintiffs*

* Admitted pro hac vice

+Located in Washington State