1

IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF TENNESSEE

WESTERN DIVISION

_____

JESSICA JONES, et al,

                    Plaintiff,

vs.                                    NO. 2:20-cv-2892

BAIN CAPITAL PRIVATE EQUITY, et al,


                    Defendant.

_____




EXPEDITED TRANSCRIPTION

VIA FTR RECORDING

BEFORE THE HONORABLE TU PHAM

UNITED STATES MAGISTRATE JUDGE


NOVEMBER 12, 2021




LISA J. MAYO, RDR, CRR
OFFICIAL REPORTER
FOURTH FLOOR FEDERAL BUILDING
MEMPHIS, TENNESSEE 38103


**UNREDACTED TRANSCRIPT**

2

```
1              A P P E A R A N C E S

2

3

4

5    Appearing on behalf of the Plaintiffs:

6            VICTORIA SIMS
             CUNEO GILBERT & LADUCA, LLP
7            4725 Wisconsin Avenue, NW, Suite 200
             Washington, DC 20016
8
             KATHARINE MALONE, ESQ.
9            JOSEPH SAVERI LAW FIRM, INC.
             601 California Street, Suite 1000
10           San Francisco, CA 94108

11           ROBERT FALANGA
             KOBELAH BENNAH
12           FALANGA & CHALKER
             11200 Atlantis Place, #C
13           Alpharetta, GA 30022

14

15
     Appearing on behalf of the Defendants:
16
             PAUL COGGINS
17           BRENDAN PATRICK GAFFNEY
             LOCKE LORD, LLP
18           220 Ross Avenue, Suite 2800
             Dallas, TX 75201
19
             GRADY GARRISON
20           BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ
             165 Madison Avenue, Suite 2000
21           Memphis, TN 38103

22           STEVEN KAISER
             CLEARY GOTTILEB STEEN & HAMILTON LLP
23           2112 Pennsylvania Avenue, NW, Suite 1000
             Washington, DC 20037
24

25
```

**UNREDACTED TRANSCRIPT**

```
 1                        FRIDAY

 2                   NOVEMBER 12, 2021

 3

 4               ----------------------

 5

 6        THE COURT:  So my clock says 11:02.  So let's go

 7   ahead and get started.  Hello everyone, I'm Judge Pham, and

 8   I'll be presiding over the argument today, and I think if

 9   you-all have already received the various notices and orders

10   that Judge Lipman has entered, I'll be the referral

11   magistrate judge going forward on these cases.  But for

12   today, I want to hear from the parties, give you an

13   opportunity to be heard on this motion to coordinate the

14   depositions.  I know we have a lot of people on the call, but

15   maybe to streamline things a bit if I could just have the

16   attorneys who will be arguing announce their name for the

17   record.  Obviously we're doing this by video.  It is being

18   recorded, but we don't have a court reporter here.

19            On behalf of the plaintiffs, let's see, who will

20   be arguing this motion?

21        MS. SIMS:  Good morning, Your Honor.  Victoria

22   Sims from Cuneo, Gilbert and Laduca.  I am counsel for the

23   plaintiffs Fusion, but I'll be speaking on behalf of all of

24   the plaintiffs although by cocounsel Ms. Malone and

25   Mr. Bennah may jump in as needed.  And I have on with me
```

**UNREDACTED TRANSCRIPT**

1  Karen Garvey from Labaton Sucharow but she will not be

2  arguing for plaintiffs today.

3       **THE COURT:**  All right.  And then who will be

4  arguing for the defendant?

5       **MR. KAISER:**  Good morning, Your Honor.  Steve

6  Kaiser from Cleary Gottlieb, arguing for -- we represent the

7  Varsity defendants and Bain and Charles Bank.  I think we'll

8  be presenting the primary argument for the defendants but

9  other counsel are here as well and I'd like them to introduce

10  themselves if they choose to.

11       **MR. COGGINS:**  Your Honor, Paul Coggins from Locke

12  Lord on behalf of my muted partner Brendan Gaffney.  He'll

13  unmute himself and be the one arguing for defendant Webb

14  today.

15       **MR. GAFFNEY:**  I'm Brendan Gaffney on behalf of

16  Locke Lord on behalf of Webb.  I'll be unmuted when it's my

17  turn to speak, of course.

18       **THE COURT:**  Anyone else?  No.  Okay.

19       All right.  We'll hear from the plaintiffs first

20  on this joint motion?

21       **MS. SIMS:**  Thank you, Your Honor.  As I said, I'm

22  Victoria Sims from Cuneo Gilbert and Laduca and I'll be

23  presenting the primary argument on behalf of plaintiffs

24  today.

25       So, Your Honor, I thought we would start off with

**UNREDACTED TRANSCRIPT**

1   the areas in which plaintiffs and defendants have agreement.

2   The first point on which plaintiffs and defendants all have

3   agreement is that all plaintiffs should be permitted to

4   attend and question witnesses at all depositions in the three

5   related actions.  Plaintiffs and defendants also agree that

6   Fusion Elite needs seven hours with each percipient witness

7   and 15 hours with Varsity's corporate witnesses, and that's

8   set forth as the defendants have mentioned in the deposition

9   stipulation that was entered in Fusion.

10          The parties also agree that the Fusion case is

11  narrower than the two other related actions, the Jones and

12  American Spirit actions.  So what does this mean?  What this

13  means to us is that the parties simply need to determine for

14  depositions noticed by Fusion how much additional time

15  American Spirit and Jones plaintiffs need to ask about their

16  additional topics after Fusion plaintiffs have finished their

17  seven hours of questioning, and of course the same would

18  conversely be true for depositions noticed by Jones or

19  American Spirit plaintiffs.

20          And in making our proposal for additional hours,

21  we really tried to be as conservative as possible.  For USASF

22  30(b)(1) and 30(b)(6) depositions we proposed only one

23  additional hour per group per case.  So that would be nine

24  total hours of testimony at each deposition at most, and

25  that's very low in comparison with some of the cases we've

UNREDACTED TRANSCRIPT

1    seen where, for instance, 14 hours of testimony was allowed

2    for witnesses noticed in more than one case.

3           USASF is active primarily in two markets, All

4    Star cheer apparel market and the All Star competition

5    market.  So we have proposed one additional hour per case to

6    allow those plaintiffs to ask questions specific to their

7    clients who are not in Fusion case, for instance, an apparel

8    manufacturer, an independent event producer, camp producer as

9    well as parents who indirectly paid Varsity by paying

10   gymnastics or schools for apparel and attendance at

11   competitions.

12          Now for Varsity, we said there are additional

13   markets at issue in which Varsity engaged in conduct and

14   about which Varsity has knowledge that are at issue in the

15   Jones and American Spirit case but not in the Fusion.  For

16   instance, there's school cheer.  Those are the cheerleaders

17   that you typically see at high school games, and school cheer

18   involves the school cheer competition market and the school

19   cheer apparel market.  There's also the camps market which is

20   the two camps markets, the school cheer camp market and the

21   all star cheer camp market.  Those are also not at issue in

22   Fusion, and there are other types of damages:  Indirect

23   purchaser damages, damages for Varsity state of play market,

24   damages for Varsity TV, damages for camp fees.

25          So for Varsity, we said two additional hours will

**UNREDACTED TRANSCRIPT**

1    be needed for each of those cases, for American Spirit and

2    Jones each, to address those additional markets and those

3    additional damages with the 30(b)(1) witnesses, and three

4    additional hours per case will be needed for Varsity's

5    30(b)(6) deposition.

6         And Your Honor, I just want to emphasize that's

7    the upper limit.  It may be for some depositions the other

8    groups don't anticipate any questions and don't notice the

9    deposition.  Deposition could be noticed only in Fusion and

10   it would be seven hours or only in Jones or only in American

11   Spirit.  For instance, the Albee deposition that's coming up

12   next week was noticed in two cases, Fusion and Jones.  So

13   that will be nine hours of questions max.  And we really

14   tried to be as reasonable as possible with the defendants

15   while preserving our clients' rights to seek the most basic

16   discovery into their claims.  We've asked for a lot less time

17   than what's been allowed in other complex multi-case

18   litigations, like Qualcomm where 14 hours was allowed for two

19   consolidated actions, and Intel where even more than 14 hours

20   was allowed for some witnesses.

21        So, Your Honor, all we ask is that each group be

22   given enough time to question witnesses about the claims

23   their clients are making and the particular markets at issue

24   in their cases.  Thank you.

25        **THE COURT:**  Okay.  Anyone else on behalf of

**UNREDACTED TRANSCRIPT**

1   plaintiffs before I left the defense respond?

2              **MS. MALONE:**   Good morning, Your Honor.   This is

3   Katherine Malone with the Joseph Saveri Law Firm on behalf of

4   Jones plaintiffs.   We just want to briefly reiterate, you

5   know, and second what Ms. Sims said.   We agree to this

6   proposal sort of generally and would like it cover so we

7   don't have to run to the court every time there's a cross

8   notice deposition and have a flurry of unnecessary motion

9   practice before you.

10             You know, as explained by Ms. Sims, there are 55

11  depositions allowed for in the Fusion deposition agreement.

12  We have three additional defendants and have proposed

13  deposition protocol to defense counsel that reflects that.

14  So we're really all just looking here for framework that will

15  allow all the parties to participate without, again,

16  unnecessarily involving this Court.   Yeah.   We just want to

17  make sure that every action and group, you know, has

18  sufficient time to introduce their documents and seek the

19  information that they need from percipient witnesses.   Thank

20  you.

21             **THE COURT:**   Okay.   Thank you.   Anyone else for

22  plaintiffs?   No?   Okay.

23             All right.   I'll hear from the defense at this

24  time.

25             **MR. KAISER:**   Thank you, Your Honor.

**UNREDACTED TRANSCRIPT**

1          Obviously the defense have a very different take

2     on this.  Judge Lipman ordered these plaintiffs to coordinate

3     on depositions and she was very clear on this, and what

4     plaintiffs have done here is basically they want the benefit

5     of coordination, which is to say they all get to show up at

6     every deposition and ask questions, but they don't want any

7     restriction related on what they're doing in the depositions.

8          In fact, what they want is to take the federal

9     rules which say one day of 7 hours as Your Honor is well

10    aware and turn that into multiple days of up to 11 hours in

11    the 30(b)(1) depositions, which of course would be a 57%

12    increase in the deposition time.

13          Now, couple of things you didn't hear from the

14    plaintiffs.  I think it's important that they be said, is the

15    plaintiffs don't deny that Fusion Elite, Jones and the

16    cheerleading part of American Spirit, in other words these

17    three cases, arise from a common nucleus of operative facts,

18    and they concede -- at least they have to us -- the discovery

19    as to the noncheerleading parts of American Spirit have been

20    stayed pending the Court's action on the defendant's motion

21    to dismiss.  They also don't deny, and this is important,

22    that the witnesses who they have noticed at least so far all

23    relate solely to cheerleading.  There's no other witnesses

24    that have been notice today deposition.  All we're talking

25    about today is discovery relating to cheerleading.

**UNREDACTED TRANSCRIPT**

1          They also do not deny that they have not made any

2   showing of any kind of a need for additional time with any

3   particular witness which is what the federal rules require.

4   Essentially their argument is they don't have to, and --

5   because they don't want to trouble the Court, which is a

6   laudable goal to be sure but that's not how it works.  They

7   have to make a showing to us initially and then if we can't

8   agree then that is what the Court is here for, is to resolve

9   disputes.  It's not to whitewash disputes by ordering broad

10  relief that hasn't been justified by the showing of a party

11  seeking the relief which is the plaintiffs here.

12          So what the plaintiffs -- what have they said?

13  Well, they say Jones and American Spirit go into additional

14  areas of cheerleading than Fusion Elite does but that's

15  backwards.  The point is that Fusion Elite is a subset of the

16  other two cases.  Plaintiffs should not get more time because

17  one of the cases has less allegations than the other two.

18  That's backwards.

19          Now Ms. Sims said, well, we agreed to seven

20  hours.  That's not really true.  What we said was in the

21  Fusion Elite case when that was the only case we were talking

22  about they could take a deposition consistent with the

23  federal rules of seven hours.  We certainly didn't concede

24  that seven hours was necessary or desirable or appropriate.

25  All we said was that was the limit.

**UNREDACTED TRANSCRIPT**

1          Now they said -- the other thing they say is they

2   have to prove different things because the class they seek to

3   represent have different damage theories.  For example,

4   plaintiffs in Fusion Elite are direct purchasers and

5   plaintiff in Jones are indirect purchasers, which is to say

6   individuals who purchased from Varsity's customers or its

7   customers' customers down the line.  Well, that's true, but

8   it's irrelevant to these proceedings because it's irrelevant

9   to whether these witnesses, the particular witnesses at

10  issue, should be subjected to 57% more deposition time than

11  the federal rules would otherwise allow.

12          Again, plaintiffs have made no showing or even

13  tried to explain why these witnesses can be expected to have

14  any information relating to these issues that they say are

15  different, none of which really has anything to do with

16  Varsity.  What Varsity's customers and their customers'

17  customers did in terms of pricing and so forth is not

18  something that they're saying they're going to be asking

19  Varsity's witnesses about.  So that's really a little bit of

20  a sideshow, a red herring, however you want to put it.  It's

21  really not germane to what we're talking about here.

22          The other thing I would want to note is that

23  plaintiffs have a generous allotment of depositions in this

24  case.  As Your Honor knows, the federal rules as a background

25  rule permit ten depositions of seven hours each.  As things

**UNREDACTED TRANSCRIPT**

1  stand, plaintiffs have 55 depositions in the protocol, which

2  would total 385 hours, which is 550% more than the federal

3  rules would allow, you know, at a baseline.  Now they want

4  57-plus percent more time in terms of hours.  And on top of

5  that -- and I think Ms. Malone alluded to this -- plaintiffs

6  and Jones have sent a demand for dozens of additional

7  deposition allotments -- although again they haven't

8  specified the deponents -- and hundreds of additional hours

9  beyond what they were seeking from this Court today and I

10  imagine that American Spirit may be next in seeking, you

11  know, more expansion.

12          So plaintiffs' motion should be denied.  As

13  defense has said, we would happy to entertain specific

14  request as to specific witnesses for additional time where it

15  is warranted by that particular witnesses circumstances.

16  They have steadily refused to engage with us on that.

17  They've refused to even talk about that topic with us which

18  is a grave disappointment from our perspective.

19          Plaintiffs should not be allowed to end run the

20  process because they don't feel like it, feel like

21  undertaking it, they don't feel like they have time to do or

22  they don't think defense will be reasonable.  They haven't

23  tried.  Federal rules require that.  They require meet and

24  confer.  In fact, they require individual showings and they

25  haven't done any of that.  I will say I suspect if they

**UNREDACTED TRANSCRIPT**

1   tried -- if they had tried we could have resolved this a long

2   time ago.  Unless Your Honor has questions, that's what I had

3   to say.

4          **THE COURT:**  I may have some follow-up questions,

5   but I want to allow the other attorneys for the defense to be

6   heard if they want to argue.

7          **MR. GARRISON:**  Your Honor, Grady Garrison on

8   behalf of US All Star.  I join in in Mr. Kaiser's arguments.

9   I have a couple of additional observations to make.  The

10  plaintiffs claim to need fact discovery back to 2004 while

11  the antitrust statute of limitations reaches back only to

12  2016.  Surely they should be required to show particularized

13  need for each witness they seek to depose back to that early

14  date.  This should be done on a case-by-case basis and they

15  certainly have not done this today.

16          Further, I would note that US All Star is

17  positioned in a very different way as a defendant in this

18  case.  It has consumed over half of its insurance coverage

19  available to it and the depositions have not even begun.  US

20  All Star is a small Tennessee nonprofit corporation, and as

21  Magistrate Claxton observed in a prior hearing after she

22  looked at its balance sheet, she said that she, quote, didn't

23  see much in there, end of quote.

24          We're talking about survival for US All Star.

25  It's the only meaningful body out there that provides for all

**UNREDACTED TRANSCRIPT**

1   star cheerleading athlete protection and safety guidelines,

2   sanctioning of events and impartial judges, athlete

3   protection and safety guidelines being the most important.

4           So we submit that before we just run off and

5   allow carte blanche depositions that they should be required,

6   the plaintiff, to show particularly for each witness what

7   they really need.  It's very critical from US All Star.

8           **THE COURT:**  Mr. Garrison, some of those issues

9   sounds like it might be beyond the scope of the motion that

10  was set for today.

11          **MR. GARRISON:**  Well, I thought it was important

12  for Your Honor to know that, to know a little bit about our

13  organization and how it can be life threatening to this

14  defendant.  It's very important to us, and that's why I felt

15  compelled to make those statements.

16          **THE COURT:**  All right.  Very well.  Anyone else

17  for the defense?

18          **MR. GAFFNEY:**  Hi, Your Honor.  I'm Brendan

19  Gaffney.  I'm counsel for defendant Jeff Webb and he is only

20  a defendant in two of the cases, the Jones case and the

21  American Spirit case, not named as a defendant in the Fusion

22  Elite matter and I would echo a little bit of what Mr. Kaiser

23  said is to depose any witness, you know.  They haven't

24  articulated any particularized need for why Mr. Webb would

25  need to be deposed for longer than seven hours.  We haven't

**UNREDACTED TRANSCRIPT**

1   even begun to discuss timing of his deposition, hasn't been

2   noticed yet; and, you know, if they were to offer such a

3   particularized showing for why they needed more than seven

4   hours with Mr. Webb, that's a dialogue we'd certainly be

5   willing to entertain and discuss at the appropriate time, but

6   it's premature to determine that 11 hours should

7   automatically apply to Mr. Webb and along with all other

8   witnesses, particularly, you know, when the 11 hours --

9   that's going to inevitably spill over into two-day

10  depositions.  And when you factor in breaks and starting

11  time, that ends up being a pretty excessively long

12  deposition, and I think there should be some showing for why,

13  you know, Mr. Webb or any other particular witness for that

14  matter should have to sit for that period of time for a

15  deposition, particularly where the issues are so common.

16          So if they were to show such we would be -- might

17  be willing to -- or able to reach some sort of potential

18  compromise.

19          **THE COURT:**  Well, wouldn't the plaintiffs be

20  entitled to the 21 hours normally --

21          **MR. GAFFNEY:**  I think --

22          **THE COURT:**  -- Mr. Kaiser?

23          **MR. KAISER:**  If I could address that briefly.

24          So in sort of a -- the plaintiffs have raised

25  that issue, of course, and I would say no.  I think this is

**UNREDACTED TRANSCRIPT**

1   just like an MDL where there's coordinated pretrial

2   discovery.  There's no -- when that happens, the baseline is

3   seven hours.  This isn't an MDL because the cases were all

4   either filed here or moved here, but in any event they're

5   here and they're being coordinated.

6            Judge Lipman certainly said they should be

7   coordinated which is the same that's used in the MDL context,

8   coordinated pretrial proceedings.  They have been

9   coordinated.  They're on the same schedule in every sense.

10  It's just like an MDL.

11           Now are there instances where people in MDLs have

12  gotten more than seven hours with particular witnesses as

13  Ms. Sims alluded to?  Yes.  That does happen from time to

14  time.  That's true.  I'm not -- I've been doing this for, you

15  know, geeze, 25 years.  I've never seen a situation where a

16  court has entered in -- entered a blanket order just saying,

17  you know, we're going to have -- notwithstanding the

18  seven-hour rule we're going to make it more for every

19  witness.

20           They've cited a few stipulations and some things

21  which were -- as I understand were asked to particular

22  witnesses typically, and you know, again, it's not an issue

23  of is every witness going to be doable in seven hours.

24  Frankly I think if they were efficient about it they could

25  definitely get the witnesses done in seven hours, but, you

**UNREDACTED TRANSCRIPT**

1   know, there's a discussion that needs to be had there as to

2   particular witnesses but not every single witness.  That

3   would be unprecedented, and, you know, lawyers in this very

4   case who are at these very law firms have been taking

5   depositions in cases far more complicated than this one, like

6   the generic drug litigation which may be the most complicated

7   case ever brought in the United States, and those depositions

8   typically are seven hours, and there's multiple parties,

9   multiple cases, multiple classes, the whole thing.

10              **MS. SIMS:**  Your Honor, may plaintiffs respond?

11              **THE COURT:**  Yes.  Let me just make sure I've

12  heard from all the defense attorneys who wish to be heard on

13  this.  Anyone else?  Okay.  Looks like no.

14              Ms. Sims, yes, you can respond.

15              **MS. SIMS:**  Thank you, Your Honor.

16              So as Mr. Kaiser mentioned in Fusion alone, the

17  deposition stipulation allows for 55 nonexpert witnesses.  We

18  do not think it would be efficient to litigate these issues

19  55 times or even 25 times.  We'd like to go to the court and

20  get it done, and that's how it's usually done in these kinds

21  of cases.  In the hard disk drive suspension assembly

22  litigation it was agreed among counsel, among defense and

23  plaintiffs, that two additional hours would be added for a

24  party in a related.  Even in an MDL, Kohn noticing a

25  defendant's deposition.

1          Same issue in Qualcomm.  This is how it is

2     typically accomplished.  We don't want to bother the Court

3     every single time for every single witness.

4          That being said, with respect to, for instance,

5     the Varsity witnesses, most of the witnesses noticed have

6     worked for Varsity for well over a decade, and they've all

7     produced thousands of documents in just the Fusion case.

8     Mr. Webb worked for Varsity for 46 years.  I think that

9     entitled us to at least a day and a half with him.  He

10    produced thousands of documents just in the Fusion case,

11    which again relates to two markets, but he has knowledge

12    about six markets.

13         Ms. Wright, Leslie Wright from Varsity was with

14    Varsity for 23 years.  Bill Seely, 30 years.  John Nichols,

15    27 years.  John Newby, 28 years.  Nicole Lauchaire, 15 years.

16    Brian Carroll, 24 years.  Damianne Albee, 21 years.  Jackie

17    Kennedy, 10 years.  And they've all produced over a thousand

18    documents and many of them have knowledge of at least three

19    and up to six markets.

20         Mr. Kaiser refers to this as just the cheer

21    industry, but the cheer industry involves six different

22    markets that are at issue here.  All star cheer apparel, all

23    star cheer competitions, school cheer apparel, school cheer

24    competitions, all star cheer camps and school cheer camps.

25    Those all require time for separate questioning.

**UNREDACTED TRANSCRIPT**

1          Mr. Kaiser mentioned that we're seeking an

2     increase of 57%, but as Your Honor noted, in three cases we

3     would be entitled to 21 hours.  So we're being extremely

4     modest where we're not even seeking two full days of

5     depositions across three cases.

6          Mr. Kaiser seems to say that these cases are all

7     one case, that they should be treated as an MDL, but that's

8     not the case at all.  They haven't been consolidated.  In

9     fact, the coordination order that Mr. Kaiser referenced

10    states that each of these cases is brought on behalf of

11    largely nonoverlapping proposed classes of persons and

12    entities whose interests may come into conflict and who may

13    need or desire to take different positions, and thus, must

14    not be consolidated and should continue to have distinct sets

15    of counsel, counsel that should be allowed to pose their own

16    questions at each of the depositions.

17         The deposition stipulation does not say that all

18    three cases have to fit into one day of questioning.  It says

19    that discovery will be coordinated to the extent feasible and

20    that's exactly what we've done.  We've cut down the permitted

21    deposition time by ten hours, almost 50%, to only request

22    11 hours maximum where all three cases notice the deposition.

23         Your Honor, Mr. Grady (sic) spoke about USASF and

24    their unique position, and as I said at the outset, we made

25    an accommodation for USASF.  We've offered them only one

**UNREDACTED TRANSCRIPT**

1   additional hour per case.  So if all three cases notice a

2   deposition of, for instance, Mr. Chadwick who is with USASF

3   for over ten years, then that will be only nine hours of

4   questioning.  That can be done in one day easily.  And if two

5   cases notice then only eight hours of questioning.  That's

6   barely more than what would be allowed in one case.  And

7   we're asking for that for three cases.  So we have taken

8   USASF's position into account and we've made the accomodation

9   for that as set forth in our reply.

10          **THE COURT:**  Is that set forth in your proposed

11  order as well?

12          **MS. SIMS:**  It is not in the proposed order, but

13  we would be of course be willing to modify it and resubmit

14  it.

15          **THE COURT:**  Okay.  All right.  Any further

16  argument for the plaintiffs before I let the defense have the

17  final word on it?

18          **MS. MALONE:**  Yes, Your Honor, hi.  I just wanted

19  to correct the record on -- with regard to the proposed Jones

20  deposition protocol.  I believe Mr. Kaiser said that we were

21  seeking dozens of new depositions.  In fact, we're seeking 15

22  depositions, five for each of the three additional

23  plaintiffs, Bain, Charles Bank and Mr. Webb; and just to

24  again echo what Ms. Sims said about Mr. Webb, he's a pivotal

25  witness in this case.  He's a key person.  I believe he

**UNREDACTED TRANSCRIPT**

1    described himself as cheerleading at one point.  I mean, he

2    created this entire industry.  So, you know, we understand

3    he's just one witness in the case, but, you know, he's one

4    where potentially the most time would be needed and we're

5    still making a reasonable compromise.

6                **THE COURT:**  Okay.  Defendants?

7                **MR. KAISER:**  The one thing I'd like to say, Your

8    Honor -- and I appreciate your taking the time to hear us all

9    out so thoroughly -- when we appeared before Judge Lipman in

10   this case, at least in one of these cases, this issue of

11   depositions came up and this is where we all are moving back

12   to.  I just wanted to quote something that the defense lawyer

13   Mr. Falanga said at that time.  He said -- he said, "I agree

14   with Mr. Kaiser that the depositions -- as far as depositions

15   I think that everyone should know, hey, on such and such a

16   date we're going to take so and so's deposition.  If you want

17   to be there, be there.  If you're not there, then you don't

18   get a second bite at the apple.  That I agree with. "

19                So this was before the Court and the Court agreed

20   with that statement.  The Court agreed that there should be

21   coordination.  This is just like an MDL.  MDLs are not

22   consolidated -- all the cases aren't consolidated.  Ms. Sims,

23   if that's what she was getting at, that's just not true.

24   They are coordinated for pretrial proceedings which is

25   exactly what is going -- what should be going on here.  The

                        **UNREDACTED TRANSCRIPT**

1   cases that they have cited to the Court, if you look at them

2   as we have, you'll see that they are not situations where

3   blanket, you know, extra hours for all depositions were

4   granted.  They were very specific to particular witnesses.

5   Typically they were stipulations.  Again, we haven't even

6   been approached to do a stipulation.  It was just give us 57%

7   more time or we're going the Court.  So, you know, maybe

8   there is a stipulation to be gotten -- to be obtained as to

9   certain witnesses, but there's no precedent for this sort of

10   blanket, you know -- forget about the federal rules and

11   coordinated proceeding, we're going to go with 11 hours.

12          **THE COURT:**  Okay.  All right.  Mr. Garrison?

13   Hold on, Ms. Sims.

14          **MS. SIMS:**  Your Honor -- apologies.

15          **THE COURT:**  One second.  Were you trying to

16   respond?

17          **MR. GARRISON:**  Yes, Your Honor.  Notwithstanding

18   any accomodation to Mr. Chadwick or any other US All Star

19   employees, US All Star still has to attend all of these

20   depositions to protect its interests so the burden is still

21   there.  Thank you.

22          **THE COURT:**  Mr. Gaffney?

23          **MR. GAFFNEY:**  Yes.  Just to touch on one thing

24   is, you know, Ms. Sims mentioned a lot of, you know, time

25   periods for how long various employees worked for Varsity.

**UNREDACTED TRANSCRIPT**

1   You mentioned that, you know, Mr. Webb had been in the

2   cheerleading industry for 47 years, but, you know, to be

3   clear, yes, he's been involved in the industry for a very

4   long time, but we're talking about a four-year statute of

5   limitations in this case.  So, you know, the fact that he's

6   been involved in the industry for a long time should not

7   automatically mean that he's to sit for an excessively long

8   period of time for his deposition.

9               **THE COURT:**  Okay.  All right.  Ms. Sims?

10              **MS. SIMS:**  Your Honor, if I may very briefly

11  respond to a couple of the statements that were made.  First

12  of all, Mr. Kaiser stated that there is no allowance in other

13  litigation of this sort for general addition of time based on

14  a co-notice or cross notice by a related case.  We submitted

15  such deposition protocols to Your Honor in our exhibits.

16  I'll read from just one of them, the hard disk drive

17  suspension assembly's antitrust litigation proceeding in the

18  Northern District of California.  That's a litigation about

19  just one conspiracy, to be clear, and that deposition

20  protocol states that "if a witness is noticed for deposition

21  by counsel for class plaintiffs and counsel for any direct

22  action plaintiff, the deposition will be limited to nine

23  hours of deposition."

24              So that's a general allowance for two additional

25  hours for a co-notice by another group of plaintiffs, and

**UNREDACTED TRANSCRIPT**

1    that is the case in many litigations like this.  It's not

2    done plaintiff by plaintiff as Mr. Kaiser asserts.

3              As far as the statement that Mr. Kaiser

4    referenced by Mr. Falanga, Mr. Falanga or his colleague

5    Mr. Bennah I think who may be on his call, but I want to

6    clarify Mr. Falanga is counsel for plaintiffs and to the

7    extent that Mr. Falanga stated that the depositions across

8    cases should occur at the same time, that's exactly what

9    we're trying to accomplish.  We're saying they're noticed for

10   the same days, just give us enough time to allow everyone to

11   ask their questions specific to their clients and the markets

12   in which they're making claims.  That's all we're seeking.

13             **MR. KAISER:**  Your Honor, if I could respond to

14   just one minor point.  Ms. Sims keeps quoting from

15   stipulations that were entered into other cases which

16   obviously what people agree to for whatever reason really has

17   no bearing on anything and certainly not authority where a

18   court is entered or anything.  I would just add in those

19   other cases we're talking about multi-billion dollar massive

20   entities and not what we're dealing with here which is

21   small -- essentially small businesses or medium size business

22   maybe in Varsity case in Tennessee.

23             I would also add that even the one she's cited is

24   different from this case in that there were people who had

25   opted out of the class actions and wanted to ask questions.

**UNREDACTED TRANSCRIPT**

1    There's a very different scenario than we have here where the

2    parties were ordered to coordinate their discovery.  That

3    would not be the case when we're talking about opt-outs who

4    may have very specific issues as to them.  Here they have

5    made no showing of anything that's relevant to these

6    witnesses, Varsity witnesses, USASF witnesses, about

7    difference between their cases.  I would just point that out.

8              **THE COURT:**  All right.  Well, I read all the

9    briefs and understood the parties' positions and did want to

10   give y'all an opportunity to argue in support of your

11   positions.

12              I would agree with the plaintiffs that in this

13   situation -- and I think they have -- I think all parties

14   here try to consolidate and follow the directive of Judge

15   Lipman, but insofar as what the default position is, what the

16   foundational position is on where the parties start, yes, it

17   is -- the starting point would be so ruled, but in this case

18   where you have multiple class actions and overlapping and

19   some maybe not so overlapping issues, number of parties that

20   need to be coordinated, coupled with what sounds like mostly

21   video -- and there may be some in person but video

22   environment.  I know that is accounted for as far as

23   technical difficulty and whatnot and there may be some build

24   in there so far as delays, but even without that, conducting

25   the depositions by video, handling of documents, the scope of

**UNREDACTED TRANSCRIPT**

1    discovery which is not really before the Court today.  I know

2    a few of you have touched upon it, but insofar as ultimately

3    the relevant time period and those sorts of things, I'm not

4    really addressing that now, but what I'm saying is that given

5    the complexities of this case, the number of witnesses, the

6    class action nature but also the video component of what I

7    assume to be many or most of the depositions, I think that it

8    is reasonable to start off with what the plaintiffs have

9    proposed without an individualized showing as to each witness

10   why they should go over the seven hours as to all of the

11   cases.

12           So I agree that plaintiffs' position is the

13   correct one and is the most reasonable and, therefore, will

14   grant the motion by the plaintiffs to have the consolidated

15   but also slightly extended time period outside of what would

16   normally be allowed under the federal rules.

17           Now, having said that, this is what I see as the

18   default position and the parties I would expect wouldn't

19   abuse the allotted time period where they're utilizing it

20   just to ask irrelevant questions, certainly to harass a

21   witness, to call witnesses who don't need to be called, and

22   given some of the issues raised and concerns raised by the

23   defendant, that it wouldn't be misused or abused.  I'm going

24   to assume that that's not going to be the case.

25           If it turns out that after some depositions there

**UNREDACTED TRANSCRIPT**

 1   is a demonstrated track record of abuse of the extended time

 2   period, whether it be getting in overbroad areas or -- and I

 3   say that because I assume that not all the time will be used.

 4   Even if someone notices a co -- another plaintiff or third

 5   plaintiff notices a deposition which then ups the time period

 6   slightly, it doesn't necessarily mean that the entire time

 7   period, whether it's 7, 9 or 11 hours, would always be

 8   utilized, and that the parties would be judicious in making

 9   their decision as to when notice a party and how to utilize

10   that time.  I know under the proposed order, it will be up to

11   plaintiffs' counsel to coordinate that to minimize any

12   prolonging -- unnecessary prolonging of the deposition.

13          So while not inviting additional motion practice

14   because there's been quite a bit so far, I'm not foreclosing

15   the defendants of bringing to the Court's attention at the

16   appropriate time if there is any evidence of any abuse of

17   this protocol.  So I guess in a way it's sort of

18   flip-flopping what Mr. Kaiser and Mr. Gaffney and

19   Mr. Garrison have been arguing for in their response insofar

20   as what has to be demonstrated here.

21          Ultimately I find that given -- for the reasons

22   I've already stated that there is a justifiable reason here

23   to go ahead and proceed with the modified protocol submitted

24   by the plaintiffs to allow for that additional cushion of

25   time for these depositions.  So the motion is granted for

**UNREDACTED TRANSCRIPT**

1   those reasons.

2          If the plaintiffs can submit to me a revised,

3   updated version of the proposed order with any additional

4   accommodations that were discussed, Ms. Sims, and other

5   issues that are pertinent to the -- how the depositions will

6   move forward in a unified and consolidated matter here, you

7   can submit that to me.  Try to get it to me by Monday, maybe

8   Tuesday --

9          **MS. SIMS:**  Will do.

10          **THE COURT:**  -- at the latest.

11          And I'll be seeing some of you-all next Friday

12   for a more extended hearing regarding some discovery

13   disputes, but that's not for today.

14          All right.  With that, anything further for the

15   plaintiffs?

16          **MR. FALANGA:**  Yes, Your Honor, Robert Falanga,

17   I'm the attorney for American Spirit.  Just a housekeeping

18   matter, we are not getting notice of these hearings.  I don't

19   know why, but for some reason we're on the pleadings but

20   we're not getting notified of the hearings.  We weren't

21   notified of this hearing until we called your office to get a

22   link.  If you could do that.

23          The second thing is --

24          **THE COURT:**  So when you say the notice of the

25   hearing, was it just this notice?  Are you getting other ECF

**UNREDACTED TRANSCRIPT**

1    notices?

2          **MR. FALANGA:**  Some of them we are.  For some

3    reason, when we file and are listed in the pleadings it's not

4    getting filed into our docket.  I don't know why.

5          **THE COURT:**  So you're not -- all right.  So you

6    say you didn't get notice of this hearing and you may not be

7    getting other notices?

8          **MR. FALANGA:**  Correct, Your Honor.  If you look

9    at your order setting this down and you look at all the

10   e-mails, neither myself nor my cocounsel Kobelah Bennah are

11   listed in that e-mail list.  We found out about it from the

12   other cases.  We're made aware of it but we're not included

13   in the mailings.

14         **THE COURT:**  Okay.  Well, I'm not aware of that,

15   but I'll alert my staff just -- maybe they can go into the

16   record and see what happened there, but we'll follow up on

17   that.

18         **MR. FALANGA:**  And then the next thing, Your

19   Honor, is we were given a privileged log a couple of days ago

20   and in every single one of those privilege logs they say

21   attorney/client privilege, attorney/client privilege.

22   There's some that are with an attorney named Burton Bernhardt

23   which is the attorney for Varsity, the corporate attorney.  I

24   agree that those may have attorney/client privilege, but

25   there's many, many e-mails in there that don't have anything

**UNREDACTED TRANSCRIPT**

1    to do with an attorney.  We would request like an in-camera

2    inspection of the privilege log documents so that when we

3    take for instance Bryan Ellis's deposition next Friday that

4    we have the correct documents that we need to go forward.

5            **THE COURT:**  Okay.  That sounds a lot more than

6    housekeeping, Mr. Falanga.  That's quite a request.  You're

7    raising challenges to an attorney -- assertion of

8    attorney/client privilege on a log which I haven't seen, for

9    documents I'm unaware of, for issues I don't know about.

10           **MR. FALANGA:**  Correct.

11           **THE COURT:**  And I'm not trying to minimize the

12   significance of this issue, but it's not presently before the

13   Court and this would not be the right venue to address it.

14   Now if there's a problem you can't work out with opposing

15   counsel after you've raised it and consulted as required by

16   local rules then you can file a motion.

17           **MR. FALANGA:**  Yes, Your Honor.  I just wanted to

18   bring it your attention because we did discuss it this

19   morning about filing a motion but it wouldn't be able to get

20   in front of you in time, and because of the timeliness of the

21   depositions being next week, we wanted to make sure that we

22   got this matter sorted out.  We did put a call in to the

23   defendants and we are -- I'm sure that we'll hear from them

24   and maybe we can work it out, but I wanted you to be aware of

25   that.

**UNREDACTED TRANSCRIPT**

1          The other thing, Judge, is that there was kind of

2     a misstatement made by Mr. Kaiser.  He said that until the

3     motion to dismiss is decided by Judge Lipman there's a

4     restraining order to keep us from getting any of the

5     scholastic information or documents that we've requested.

6     And Judge Lipman did deny the motion to dismiss against

7     Varsity Holding Company.  So it would be lifted as to that

8     company.  We would take that position.  So I just wanted to

9     correct the statement that he made that it would be as to all

10    defendants because she's already ruled on Varsity Holdings

11    that their motion to dismiss was denied, which should release

12    the restraining order.

13          **MR. KAISER:**  Your Honor, I'm compelled to respond

14    to that.

15          **THE COURT:**  And you can, Mr. Kaiser, to make a

16    record but I just want to --

17          **MR. KAISER:**  I must.

18          **THE COURT:**  Yeah.  I'll let you do that.  I will

19    allow to you do that, but when I asked if there's any other

20    matters to take up, I meant as to this motion, not just

21    broadly.  I want to be respectful of counsel's time.  There

22    are a bunch of lawyers on this call.  So I try to move

23    efficiently if I can because I know you've got other things

24    to do.  So if there's something that needs to be addressed on

25    an individual issue or motion or between parties then we can

**UNREDACTED TRANSCRIPT**

1    take that up through a motion that's filed in the appropriate

2    case involving the specific parties.  So I don't want to

3    utilize this as an opportunity to address matters that are

4    outside of what the motion was set.

5              Mr. Falanga, your issue about getting notice, we

6    will look into, but beyond that, we're really not in a

7    position today to be heard on the merits of any other

8    discovery issue, although I am on notice that there might be

9    something coming here shortly, but with that, Mr. Kaiser, you

10   can make the record.

11             **MR. KAISER:**  Yes.  Well, the Court granted

12   Varsity's motion to dismiss Bain and Charles Bank in Mr.

13   Falanga's case and you'll probably hear a little bit more

14   about that next week.  There's a motion to dismiss on

15   identical grounds for those defendants pending in the other

16   case, the Jones case.  But as to the issue that Mr. Falanga

17   raised, Varsity Holdings has a motion pending, which is the

18   motion that matters for purposes of the stay, which is a

19   motion to dismiss based on the merits which is the same

20   arguments that the other Varsity entities are making.  This

21   motion that Judge Lipman addressed was -- had to do with

22   Varsity Holdings' ownership of the downstream entities.  So

23   that issue has not been resolved.  It's still pending with

24   Judge Lipman and the discovery stay remains in place from our

25   perspective, and I would suggest that American Spirit should

**UNREDACTED TRANSCRIPT**

1   consider that before they make representations to the

2   contrary.

3           **THE COURT:**  All right.  Anyone else as to the

4   motion that was noticed for today?  Any other outstanding

5   matters?  No, okay.

6           All right.  Well, I'll be looking for that

7   proposed order consistent with the Court's ruling.  All

8   parties are excused.

9           **MS. SIMS:**  Thank you, Your Honor.

10          **MS. MALONE:**  Thank you, Your Honor.

11          **MR. KAISER:**  Thank you.

12          (Adjournment.)

13

14

15

16

17

18

19

20

21

22

23

24

25

**UNREDACTED TRANSCRIPT**

34

1                       **C E R T I F I C A T E**

2

3

4              I, LISA J. MAYO, do hereby certify that the

5    foregoing 34 pages are, to the best of my knowledge, skill

6    and abilities, a true and accurate transcript from my

7    stenotype notes of the MOTION CONFERENCE on 12TH DAY OF

8    NOVEMBER, 2021, in the matter of:

9

10

11   JONES, ET AL

12   VS.

13   BAIN CAPITAL PRIVATE EQUITY, ET AL.

14

15   Dated this 03.11.2022

16

17

18

19                         _____S/Lisa J. Mayo_____

20                         LISA J. MAYO, LCR, RDR, CRR
                           Official Court Reporter
21                         United States District Court
                           Western District of Tennessee
22

23

24

25

                         **UNREDACTED  TRANSCRIPT**