# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE
# WESTERN DIVISION

| | |
|---|---|
| **FUSION ELITE ALL STARS**, et al.,<br><br>      Plaintiffs,<br><br>v.<br><br>**VARSITY BRANDS, LLC**, et al.,<br><br>      Defendants. | Case No. 2:20-cv-02600-SHL-tmp<br><br>**JURY TRIAL DEMANDED** |
| **JONES**, et al.,<br><br>      Plaintiffs,<br><br>v.<br><br>**BAIN CAPITAL PRIVATE EQUITY**, et al.,<br><br>      Defendants. | Case No. 2:20-cv-02892-SHL-tmp<br><br>**JURY TRIAL DEMANDED** |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO COMPEL
<u>DEPOSITION OF ADAM BLUMENFELD</u>**

**TABLE OF CONTENTS**

I. Introduction ................................................................................................................. 1

II. Statement of Facts ...................................................................................................... 3

III. Legal Standards .......................................................................................................... 4

IV. Argument ................................................................................................................... 5

   A. Mr. Blumenfeld Has Unique, Non-duplicative Knowledge of the Facts Relevant to Plaintiffs' Claims ...................................................................................................... 5

   B. The Apex Doctrine Does Not Say Otherwise ........................................................ 7

V. Conclusion .................................................................................................................. 9

## TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

*American Soc'y of Mech. Eng'rs v. Hydrolevel*,
  456 U.S. 556 (1982)..........................................................................................................6

*In re Apple iPhone Antitrust Litig.*,
  2021 WL485709 (N.D. Cal. Jan. 26, 2021)..................................................................7, 8

*Bledsoe v. FCA US LLC*,
  No. 4:16-cv-14024, 2021 WL 1720833 (E.D. Mich. Apr. 30, 2021) .........................4

*Eaton Corp. v. Weeks*,
  2014 WL 700466 (E.D. Mich. Feb. 24, 2014)...........................................................4, 9

*Grateful Dead Prods. v. Sagan*,
  2007 WL 2155693 (N.D. Cal. Jul. 26, 2007)..............................................................8

*John B. v. Goetz*,
  879 F.Supp.2d 787 (M.D. Tenn. Jan. 28, 2010) ........................................................4

*Lawlor v. National Screen Service Corp.*,
  349 U.S. 322 (1955)..........................................................................................................5

*Lewis v. ABC Bus. Servs.*,
  135 F.3d 389 (6th Cir. 1998) .....................................................................................4

*Serrano v. Cintas Corp.*,
  699 F.3d 884 (6th Cir. 2012) .....................................................................................8

*Turner v. City of Detroit*,
  2012 WL 4839139 (E.D. Mich. Oct. 11, 2012) .........................................................9

*United States v. Blue Cross Blue Shield of Mich.*,
  No. 10-cv-14155, 2012 WL 4513600 (E.D. Mich. Oct. 1, 2012)..............................5

*In re Urethane Antitrust Litig.*,
  261 F.R.D. 570 (D. Kan. 2009)..................................................................................4

*Walgreen Co. v. Hummer*,
  2011 WL 13237757 (N.D. Ohio Nov. 29, 2011) .......................................................9

**Rules**

Fed. R. Civ. P. 26..........................................................................................................3, 4, 7

Plaintiffs Jessica Jones, Michelle Velotta, and Christina Lorenzen (collectively "Jones Plaintiffs") and Plaintiffs Fusion Elite All Stars, Spirit Factor LLC d/b/a Fuel Athletics, Stars and Stripes Gymnastics Academy Inc. d/b/a Stars and Stripes Kids Activity Center, Kathryn Anne Radek, Lauren Hayes, and Janine Cherasaro (collectively "Fusion Elite Plaintiffs") (collectively "Plaintiffs") individually and on behalf of all others similarly situated, respectfully submit this Memorandum of Law in Support of their Motion to Compel Deposition of Adam Blumenfeld ("Motion") and seek an order compelling Varsity Brands, LLC ("Varsity Brands"), Varsity Spirit LLC ("Varsity Spirit"), and Varsity Spirit Fashion & Supplies, LLC ("Varsity Spirit Fashion") (collectively, "Varsity") to produce Mr. Blumenfeld for deposition on March 31, 2022, as noticed, or on a date that is mutually agreeable to the parties.

## I.   INTRODUCTION

Plaintiffs allege that Defendants engaged in an exclusionary scheme to achieve, support and maintain Varsity's monopolies in the markets for competitive cheerleading competitions, camps, and apparel (the "Relevant Markets"). *See generally* Complaint, Jones Action, ECF No. 1. Plaintiffs allege that Varsity, supported by Defendants,[1] monopolized the markets by, among other things, an aggressive strategy of acquiring Varsity's rivals in the Relevant Markets as well as engaging in a plethora of anticompetitive and exclusionary conduct to maintain and further those monopolies. *See id*. As current CEO of Varsity, no one stands in a better or more unique position to testify about the facts in the case than Adam Blumenfeld. As CEO, Mr. Blumenfeld would be responsible for Varsity's acquisitions of competitors in the Relevant Markets and the setting and execution of corporate policy. He would be responsible for and most knowledgeable

---

[1] Defendants is reference to Defendants in the Jones Action which includes: Varsity, Jeff Webb, Bain, Charlesbank, and the United States All Star Federation ("USASF").

about Varsity's business model and business strategy, with a breadth and depth of knowledge that likely no other Varsity witness could provide. In addition, Mr. Blumenfeld would have personal knowledge of Defendant Charlesbank Capital Partners LLC's ("Charlesbank") role in the management of Varsity. In particular, he would know of the involvement and active participation of Charlesbank executives in day-to-day decision making, sales and marketing, and their participation as officers and directors of Varsity's various entities and boards of directors. Likewise, Mr. Blumenfeld would have knowledge of Defendant Bain Capital Private Equity's ("Bain") and the sale of Varsity to Bain from Charlesbank in July 2018, and the terms and discussions that surrounded that deal. As with Charlesbank, Mr. Blumenfeld would have direct knowledge of Bain's active participation in the management and operations of Varsity, including involvement in day-to-day decision making regarding sales and marketing, as well as the involvement of Bain executives on Varsity's various corporate boards. Mr. Blumenfeld will also be knowledgeable about the terminations of key long-time employees in the last several years, including Bain's involvement in those termination decisions. More generally, Mr. Blumenfeld bears ultimate responsibility to Varsity's owners and would have been at the center of Varsity's many programs, decisions, and messaging that would fall under any CEO's ultimate watch.

    Like his predecessor Jeff Webb, Mr. Blumenfeld, sits uniquely atop the Varsity empire and directs the decisions of the many Varsity-owned entities and their respective boards of directors. As CEO, he is likely the person who could most broadly testify about how Varsity views the Relevant Markets, its competitors in those markets, and its strategies and goals in those markets—key parts of Plaintiffs' claims. As a director and officer not only of Varsity Brands, LLC, but also of numerous other Varsity-owned entities, who sits on boards (or who has sat on boards) alongside Jeff Webb and individuals from Defendants Charlesbank and Bain, Mr.

Blumenfeld is also in a unique position to speak about the various Varsity boards and the decisions that were approved by those boards. Mr. Blumenfeld's testimony will be even more meaningful given that he is often mentioned in public articles and media pieces regarding Varsity, including those which point to Varsity as a monopolist.[2]

There is no basis under Rule 26 to shield a knowledgeable witness like Mr. Blumenfeld from discovery. Fed. R. Civ. P. 26. Nor does the so-called "apex doctrine" apply. The apex doctrine is no more than an application of Rule 26's requirements of relvance and proportionality, which are well supported here. Even if the apex doctrine were applicable, it would only serve to support the discovery of Mr. Blumenfeld's testimony, because he holds superior and unique knowledge of facts and events at the heart of Plaintiffs' claims. As set forth below, Varsity does not have any basis to avoid producing Mr. Blumenfeld for deposition whatsoever, and the Court should grant Plaintiffs' motion without delay.

## II.   STATEMENT OF FACTS

On March 10, 2022, Plaintiffs noticed Mr. Blumenfeld for deposition to take place on March 31, 2022. *See* Declaration of Elissa Buchanan, filed herewith ("Buchanan Decl."), Exhibit 4 (Notice). Plaintiffs followed up with Varsity counsel to determine the most workable date for Mr. Blumenfeld to appear. *See id.*, ¶¶ 1-2, Exs 1-3 & 5-9. Varsity counsel has refused to confirm a date for Mr. Blumenfeld and on March 18, 2022, counsel for Mr. Blumenfeld confirmed for the certificate of consultation, that Mr. Blumenfeld will not be produced for deposition. *See id.*, Ex.

---

[2] *See, e.g.,* How a Cheerleading Monopolist Played Rough During the Pandemic (substack.com) (last visited 3/18/2022); Conversation With Varsity Brands' CEO Adam Blumenfeld | SGB Media Online (sgbonline.com) (last visited 3/18/2022); Varsity Spirit Takes A Tumble in Netflix's 'Cheer' Documentary - Team Insight (formula4media.com) (last visited 3/18/2022); Cheerleading: Varsity's Webb a Tangled Olympic Dreamweaver – Sportico.com (last visited 3/18/2022); Digest - Memphis Daily News (last visited 3/18/2022).

9. Plaintiffs now seek the Court's assistance to have this highly relevant discovery move forward without further delay.

### III.     LEGAL STANDARDS

The scope of discovery under the federal rules is broad. *Lewis v. ABC Bus. Servs.*, 135 F.3d 389, 402 (6th Cir. 1998); *see also John B. v. Goetz*, 879 F.Supp.2d 787, 860 (M.D. Tenn. Jan. 28, 2010) (relevancy standard for discovery has been "construed broadly"). Federal Rule of Civil Procedure 26 permits parties to obtain discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed.R.Civ.P. 26(b)(1). Relevance in the context of discovery is not as constrained as in the context of trial, and information relevant in the discovery phase "need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of relevant evidence." *Id.* Evidence is relevant when it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." *Bledsoe v. FCA US LLC*, No. 4:16-cv-14024, 2021 WL 1720833, *1 (E.D. Mich. Apr. 30, 2021).

"Under the Federal Rules of Civil Procedure, discovery is generally broad and generous." *Eaton Corp. v. Weeks*, 2014 WL 700466, *6 (E.D. Mich. Feb. 24, 2014). Discovery is especially broad in conspiracy cases, like the one alleged by Plaintiffs here. *See* ECF No. 1. In conspiracy cases, "[b]road discovery may be needed to uncover evidence of invidious design, pattern, or intent. Broad discovery is permitted because direct evidence of an anticompetitive conspiracy is often difficult to obtain, and the existence of a conspiracy frequently can be established only through circumstantial evidence, such as business documents and other records." *In re Urethane Antitrust Litig.*, 261 F.R.D. 570, 573 (D. Kan. 2009) (internal quotation marks and footnotes omitted. The Supreme Court has recognized". . . the public interest in vigilant enforcement of the

antitrust laws through the instrumentality of private treble-damage action." *Lawlor v. National Screen Service Corp.*, 349 U.S. 322, 329 (1955). Given the importance of the issues at stake and the nature scope of injuries to the members of the class, "[t]he public policy implications in this matter favor extremely broad discovery." *United States v. Blue Cross Blue Shield of Mich.*, No. 10-cv-14155, 2012 WL 4513600, at *3 (E.D. Mich. Oct. 1, 2012).

IV. ARGUMENT

A. MR. BLUMENFELD HAS UNIQUE, NON-DUPLICATIVE KNOWLEDGE OF THE FACTS RELEVANT TO PLAINTIFFS' CLAIMS

Mr. Blumenfeld's testimony is directly relevant and proportional to the needs of the case under any standard.

It is a fact of basic corporate governance that a CEO is ultimately responsible to the company and to its board of directors for the actions and decisions of the company. In that capacity, a CEO is responsible for all decisions and acts of the company, and would be knowledgeable about the financial performance of the company, its business model, its profitability, its operations, as well as for responding to any competitive threats and execution of the company's business and goals. This is no different for Varsity.

As CEO, it is implicit that Mr. Blumenfeld would be deeply and personally involved in the facts and events that give rise to Plaintiffs' claims. He would be at the helm of Varsity's decisions regarding any acquisitions in the Relevant Markets, and the strategies and intentions behind them. As an officer and director of Varsity Brands LLC and a multitude of Varsity-owned entities, he would likely be a key figure, if not the key figure, in approving any such acquisitions and Varsity's acquisition strategies and intentions. In addition, while he was CEO, Bain purchased Varsity from Charlesbank. As the CEO during that transaction, he would have unique knowledge of that transaction, including the extent to which Bain paid a premium for financial

control of the monopolistic business that was built by Charlesbank while it owned the company.

Mr. Blumenfeld has also long sat on Varsity Brands LLC's Board of Directors, as well as numerous other Varsity-entity boards. For example, as of approximately March 2, 2018, Mr. Blumenfeld was an officer and/or director of the following Varsity entities:

- Varsity Brands, LLC:  Officer (CEO & President); Board of Directors (Directors included Blumenfeld, Webb and Charlesbank Directors (White, Janower, Davis, Olivet);

- Varsity Spirit LLC:  Officer (CEO); Board of Directors (Director);

- Varsity Spirit Fashions & Supplies, LLC:  Officer (CEO & President); Board of Governors (only Webb and Blumenfeld);

- Hercules Achievement Holdings, Inc.: Officer (CEO & President); Board of Directors (Management Director) along with Jeff Webb (as Investor Independent Director) and four directors from Charlesbank;

- Hercules VB Holdings, Inc.: Officer (CEO & President); Board of Directors (Management Director) along with Jeff Webb (as Investor Independent Director) and four directors from Charlesbank;

- Varsity Brands Holding Co., Inc: Officer: (CEO & President) along with Andrew Janower of Charlesbank (President) and Brandon White of Charlesbank (Vice President); Board of Directors (Blumenfeld, Webb, along with at least four directors from Charlesbank)

For a full list of the officer and director positions held by Mr. Blumenfeld at the various Varsity entities over time, *see* Buchanan Decl., Exs. 10-14 (collection of FEAS-Ares00074739; FEAS-Ares00075980; JEFF00245074 FEAS-Ares00001297; VAR00009646) (under seal).

Among other things, Mr. Blumenfeld's role as an officer and director on so many of Varsity's boards will allow for testimony regarding Bain and Charlesbank's involvement in the operations of Varsity as well as evidence which will establish that the representatives of Charlesbank and Bain directing and managing Varsity, established principal and agency relationships between the companies and their personnel.  *See American Soc'y of Mech. Eng'rs v. Hydrolevel*, 456 U.S. 556 (1982) (acts of agents acting with apparent authority sufficient to

establish principal/agency relationship and liability under the antitrust laws.)

In sum, there is really no one like Varsity's CEO who can speak as broadly or as intimately on Varsity's acquisitions or its reasons for acquisitions in the Relevant Markets more fully than Mr. Blumenfeld. And likely there is no one else who may be as knowledgeable about the reasons or justifications that Varsity will likely claim as a defense for its aggressive acquisitions. The CEO's understanding of these subjects is almost by definition unique and non-repetitive, and should be allowed to be discovered here. Mr. Blumenfeld will also possess information regarding the numerous terminations of long time senior Varsity employees following Bain's acquisition.

In addition, Plaintiffs believe that Mr. Blumenfeld's testimony would be especially meaningful to Plaintiffs' claims given that he is mentioned in numerous public media articles, including those that accuse Varsity of being a monopolist. Varsity has not articulated any burden associated with producing Mr. Blumenfeld – as it must, and the testimony of Mr. Blumenfeld is proportional to the needs of the case under Rule 26. *See* Fed. R. Civ. P. 26.

**B.     THE APEX DOCTRINE DOES NOT SAY OTHERWISE**

The so-called apex doctrine does not shield a knowledgeable witness like Mr. Blumenfeld from discovery. The apex doctrine is not codified in the Federal Rules. Rather, the apex doctrine is really just an application of Rule 26's requirements of relevance and proportionality and protecting a person from abuse or harassment. *See In re Apple iPhone Antitrust Litig.*, 2021 WL485709, *3-4 (N.D. Cal. Jan. 26, 2021) (ordering Apple CEO Tim Cook and other high level executives to testify where Apple sought to prevent depositions by claiming the apex doctrine). "When a lawsuit concerns important aspects of a company's business model that are plainly the result of high-level executive decisions, we should expect that high-level executives will be deposed, and their testimony will be relevant and proportional . . . . ." *Id.* at *5. Indeed,

depositions of chief executives is common in antitrust cases because the conduct which is subject of the lawsuit concerns high level strategy and decision making, including fundamental decisions regarding competitors, market conditions, competitive threats and competitive strategies. *See id*.

When courts choose to apply the apex doctrine for a large conglomerate such as Varsity, a two-prong test is generally applied: 1) whether the witness has first-hand non-repetitive knowledge; and 2) whether it is an option to resort to other forms of discovery. *See id.* (finding that two high level vice presidents were subject to deposition despite a lesser degree of "apex-ness" than the CEO). *Id.* at *3. The party seeking to take the deposition need not prove conclusively that the deponent certainly has unique non-repetitive information; rather, "where a corporate officer may have any first-hand knowledge of relevant facts, the deposition should be allowed." *See id.* (quoting *Finisar Corp. v. Nistica, Inc.*, 2015 WL 3988132, *2 (N.D. Cal. June 30, 2015); *see also Grateful Dead Prods. v. Sagan*, 2007 WL 2155693, *1, fn. 5 (N.D. Cal. Jul. 26, 2007). As to the second prong, "[f]ormal 'exhaustion' of other requirements is not 'an absolute requirement; instead, exhaustion of other discovery methods is an important, but not dispositive, consideration for a court to take into account in deciding how to exercise its discretion.'" *See Apple*, 2021 WL 485709, at *4-5 (internal quotations omitted). In fact, "it is very unusual for a court to prohibit the taking of a deposition [of an apex witness] altogether absent extraordinary circumstances." *Id.* (citing *Moyle v. Liberty Mut. Ret. Ben. Plan*, 2012 WL 5373421, at *3 (S.D. Cal. Oct. 31, 2012). No extradaordinary circumstances are present here.

Sixth circuit courts have repeatedly allowed for depositions of CEOs and other high-level executives similar to the deposition of Mr. Blumenfeld here. *See, e.g., Serrano v. Cintas Corp.*, 699 F.3d 884, 891 (6th Cir. 2012) (finding that district court could not rely upon apex doctrine to grant' employer's motion for protective order precluding EEOC from deposing employer's

CEO); *see also Eaton*, 2014 WL 700466, at *7 (where issue of the lawsuit involved Plaintiffs' high level executives, depositions including the CEO, were allowed to proceed); *Turner v. City of Detroit*, 2012 WL 4839139 (E.D. Mich. Oct. 11, 2012) ("The court may permit depositions of high ranking officials where the official has first-hand knowledge related to the claim being litigated."); *Walgreen Co. v. Hummer*, 2011 WL 13237757, at *2 (N.D. Ohio Nov. 29, 2011) (allowing depositon of CEO where plaintiff tried to rely on apex doctrine, but court found that CEO possessed unique personal knowledge relevant to the fact of the dispute).

As shown above, the nature of the claims at issue in this case and the record in this case shows that Plaintiffs are entitled to the deposition of Mr. Blumenfeld. The cases concerns—and the deposition will involve—important aspects of Varsity's business model. Further Mr. Blumenfeld has personal knowledge of this case including key corporate decisions regarding acquisitions and other matters and the involvement of Charlesbank and Bain in Varsity's operations.

## V.     CONCLUSION

For the foregoing reasons, the Court should grant Plaintiffs' Motion and allow Mr. Blumenfeld's deposition to proceed as noticed or at a time mutually agreed upon by the parties.

Dated: March 18, 2022                    Respectfully submitted,

                                          By:          */s/ Joseph R. Saveri*
                                                     Joseph R. Saveri

Joseph R. Saveri*
Steven N. Williams*
Ronnie Seidel Spiegel*+
Kevin E. Rayhill*
Elissa A. Buchanan*
JOSEPH SAVERI LAW FIRM, LLP
601 California Street, Suite 1000
San Francisco, California 94108
Telephone: (415) 500-6800
Facsimile:  (415) 395-9940
    jsaveri@saverilawfirm.com
    swilliams@saverilawfirm.com
    rspiegel@saverilawfirm.com
    krayhill@saverilawfirm.com
    eabuchanan@saverilawfirm.com

Van Turner (TN Bar No. 22603)
BRUCE TURNER, PLLC
2650 Thousand Oaks Blvd., Suite 2325
Memphis, Tennessee 38118
Telephone: (901) 290-6610
Facsimile: (901) 290-6611
Email: vturner@bruceturnerlaw.net

Richard M. Paul III*
Sean R. Cooper*
Ashlea Schwarz*
PAUL LLP
601 Walnut, Suite 300
Kansas City, Missouri 64106
Telephone: (816) 984-8100
rick@paulllp.com
sean@paulllp.com
ashlea@paulllp.com

Jason S. Hartley*
HARTLEY LLP
101 West Broadway, Suite 820
San Diego, CA 92101
Telephone: (619) 400-5822

10

PLAINTIFFS' MEMORANDUM OF LAW ISO MOTION TO COMPEL DEPOSITION OF ADAM BLUMENFELD

Email: hartley@hartleyllp.com

Daniel E. Gustafson*
Daniel C. Hedlund*
Daniel J. Nordin*
GUSTAFSON GLUEK PLLC
Canadian Pacific Plaza
120 South Sixth Street, Suite 2600
Minneapolis, MN 55402
Telephone: (612) 333-8844
Facsimile: (612) 339-6622
dgustafson@gustafsongluek.com
dhedlund@gustafsongluek.com
dnordin@gustafsongluek.com

*Attorneys in the Jones Action for Individual and Representative Plaintiffs*

\* Admitted pro hac vice
+Located in Washington State

Benjamin D. Elga*
JUSTICE CATALYST LAW, INC.
81 Prospect Street Brooklyn, NY 11201
Telephone: (518) 732-6703
belga@justicecatalyst.org

Craig L. Briskin*
JUSTICE CATALYST LAW, INC.
718 7th Street NW Washington, DC 20001
Telephone: (518) 732-6703
cbriskin@justicecatalyst.org

Roberta D. Liebenberg*
Jeffrey S. Istvan*
Mary L. Russell*
FINE KAPLAN AND BLACK, R.P.C.
One South Broad St., 23rd Floor
Philadelphia, PA 19107
Telephone: (215) 567-6565
rliebenberg@finekaplan.com
jistvan@finekaplan.com
mrussell@finekaplan.com

Nathan A. Bicks (TN BPR #10903)
Frank B. Thacher III (TN BPR #23925)

11

PLAINTIFFS' MEMORANDUM OF LAW ISO MOTION TO COMPEL DEPOSITION OF ADAM BLUMENFELD

        BURCH, PORTER, & JOHNSON, PLLC
        130 North Court Ave.
        Memphis, TN 38103
        Telephone: (901) 524-5000
        nbicks@bpjlaw.com
        fthacher@bpjlaw.com

        Aubrey B. Harwell, Jr. (TN BPR #002559)
        Charles Barrett (TN BPR #020627)
        Aubrey B. Harwell III (TN BPR #017394)
        NEAL & HARWELL, PLC
        1201 Demonbreun St., Suite 1000 Nashville, TN 37203
        Telephone: (615) 244-1713
        aharwell@nealharwell.com
        cbarrett@nealharwell.com
        tharwell@nealharwell.com

        *Counsel in the Fusion Elite Action for the Proposed Direct Purchaser Class*

## CERTIFICATE OF SERVICE

I hereby certify that on March 18, 2022, I served a copy of the foregoing document via the Court's ECF system, effecting service on all interested parties.

                                                */s/ Joseph R. Saveri*
                                                Joseph R. Saveri