```
            IN THE UNITED STATES DISTRICT COURT
           FOR THE WESTERN DISTRICT OF TENNESSEE
                       WESTERN DIVISION
_____

JESSICA JONES, et al.,         )
                               )
    Plaintiffs,                )
                               )
v.                             )   No. 22-mc-9-SHL-tmp
                               )
ACE CHEER COMPANY LLC,         )   Related Case:
                               )   No. 20-cv-2892-SHL-tmp
    Defendants.                )
                               )
_____

     ORDER GRANTING IN PART AND DENYING IN PART MOTION TO QUASH
_____
```

Before the court by order of reference is third-party ACE Cheer's ("ACE") Motion to Quash and/or Modify Subpoena and/or Motion for Protective Order, filed on February 3, 2022 and plaintiffs' Motion to Compel filed on March 9, 2022. (ECF Nos. 1; 5; 9.) For the reasons below, both motions are GRANTED in part and DENIED in part.

## I. BACKGROUND

The present case involves antitrust claims brought against Varsity Brands, LLC, its affiliated brands and companies, and its prior and present owners. In brief, the plaintiffs, parents of athletes who participate in the sport of competitive cheerleading, allege that the defendants conspired to and did in fact form a monopoly over the cheerleading industry in the United States. Plaintiffs allege that the monopolization of the industry resulted

in illegal overcharges that caused plaintiffs to pay higher prices for goods and services in the relevant markets. The plaintiffs filed their complaint on December 10, 2020, seeking class certification, damages, and injunctive relief. (ECF No. 1.)

ACE is a third-party All-Star cheer gym. (ECF No. 5-1 at 2.) On December 7, 2021, plaintiffs issued a subpoena to ACE pursuant to Federal Rule of Civil Procedure 45(a)-(c), seeking the production of documents. (Id. at 4.) The subpoena sought the following information:

- Information regarding the number of teams and participants at the gym (Request No. 1);

- Information regarding prices charged to Plaintiffs by the gym (Request No. 2);

- Information regarding the prices gyms paid to Varsity or other competition producers for participation in cheer competitions and the prices the gym charged to Plaintiffs for those cheer competitions (Request No. 3);

- Information regarding the prices the gym paid to Varsity or other camp producers for participation in cheer camps and the prices gyms charged to Plaintiffs for those cheer camps (Request No. 4);

- Information regarding the prices the gym paid to Varsity or other apparel producers for cheer apparel and the prices gyms charged to Plaintiffs for that cheer apparel (Request No. 5); and

- Information regarding any rebates or discounts the gym received from Varsity or other producers related to cheer competitions, camps, and apparel (Request No. 6).

(Id. at 4-5.) The subpoena served on ACE is identical to approximately seventy subpoenas served on other All-Star gyms across the country. (ECF No. 5-2 at 6.) The subpoena requested an initial production date of January 6, 2022, and for the production to take place at Veritext, 2031 Shady Crest Drive in Hoover, Alabama, which is within 100 miles of ACE. (Id. at 7.) On February 3, 2022, ACE filed the present Motion to Quash in the United States District Court for the Northern District of Alabama. (ECF No. 1.) On February 16, 2022, plaintiffs and ACE filed a joint motion for extension of time to respond to the motion, which was granted on February 17, 2022. (ECF Nos. 3 & 4.) On March 9, 2022, in lieu of a response, plaintiffs filed a Motion to Compel Compliance with Subpoena. (ECF No. 5.) On March 9, 2022, plaintiffs filed an unopposed motion to change venue, which was granted on March 10, 2022. (ECF Nos. 6-7.) The case was transferred to the Western District of Tennessee on March 15, 2022. (ECF No. 8.)

## II.  ANALYSIS

ACE seeks for the court to quash or modify the subpoena, or in the alternative, moves for entry of a protective order for the confidential business and commercial information requested by the subpoena. (ECF No. 1 at 1.) ACE argues that the subpoena violates the Federal Rules because it requests documents be produced to a location that is over 100 miles from ACE's residency in Birmingham, Alabama. Further, ACE contends the subpoena is unduly burdensome

and seeks the production of privileged information. (Id. at 1-2.) Plaintiffs disagree, claiming "the Subpoena calls for production within an appropriate geographic range, the information sought is highly relevant . . . the proportionality factors weigh in Plaintiffs' favor, ACE has not demonstrated any undue burden, and its documents are not privileged." (ECF No. 5-1 at 9.)

Under Rule 45, on timely motion, the court "must quash or modify a subpoena that: (i) fails to allow a reasonable time to comply; (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c); (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or (iv) subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A). "'A subpoena to a third party under [Federal Rule of Civil Procedure] 45 is subject to the same discovery limitations as those set out in Rule 26.'" Mid Am. Sols. LLC v. Vantiv, Inc., No. 1:16-mc-2, 2016 WL 1611381, at *5 (S.D. Ohio Apr. 20, 2016)(alteration in original)(quoting State Farm Mut. Auto. Ins. Co. v. Physiomatrix, Inc., No. 12-cv-11500, 2013 WL 10936871, at *3 (E.D. Mich. Nov. 26, 2013)). "Federal Rule of Civil Procedure 26 permits parties to obtain discovery 'regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case.'" Id. (quoting Fed. R. Civ. P. 26(b)(1)). "'Demonstrating relevance is the burden of the party seeking discovery.'" Id.

(quoting Am. Elec. Power Co. v. U.S., 191 F.R.D. 132, 136 (S.D. Ohio 1999)).

**A.   Geographic Range of the Subpoena**

As a threshold matter, ACE argues that the subpoena violates the Federal Rules because "it requests that ACE produce documents to Joseph R. Saveri in San Francisco, California, which is over 100 miles from ACE's residency in Birmingham, Alabama." (ECF No. 1 at 5.) Under Rule 45, on timely motion, the court "must quash or modify a subpoena that . . . requires a person to comply beyond the geographical limits specified in Rule 45(c)." Fed. R. Civ. P. 45(d)(3)(A). Rule 45(c)(2)(A) provides, "A subpoena may command: production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person." The subpoena lists the place of compliance as "Veritext, 2031 Shady Crest Drive, Hoover, AL 35216." (ECF No. 5-3 at 1.) Because Hoover, Alabama is less than 100 miles from Birmingham, Alabama, the subpoena does not violate Rule 45(c)(2)(A). (ECF No. 5-2 at 7.)

**B.   Relevance**

Plaintiffs argue that the discovery sought is necessary "to show the extent to which overcharges from Varsity to gyms increased the prices paid by Plaintiffs, and thus, the extent to which Plaintiffs suffered harm." (ECF No. 5-1 at 9-10.) In its Objection and Responses to Plaintiffs' Requests for Documents, ACE largely

makes boilerplate objections to the relevance of each request. (See ECF No. 1 at 10-13.) However, ACE specifically objects to the "relevant time period" as defined by the subpoena, which is January 1, 2014 to present. (ECF Nos. 1 at 3; 5-3 at 1.)

Because plaintiffs are indirect purchasers bringing an antitrust claim, they must prove that "1) defendants overcharged the direct purchasers; and 2) some or all of the overcharge was passed on to them through each of the various intermediate levels of the distribution chain." In re Automotive Parts Antitrust Litig., 40 F. Supp. 3d 836, 850 (E.D. Mich. 2014) (citing In re Graphics Processing Units Antitrust Litig., 235 F.R.D. 478, 502 (N.D. Cal. 2008)). The amount that ACE charged athletes is relevant to establishing that the alleged overcharges were indeed passed through to the plaintiffs. The discovery requests are relevant to establishing harm and calculating damages from the alleged anticompetitive scheme. The court finds that plaintiffs have established that the discovery sought is relevant.

However, the court agrees with ACE that the relevant time period is too broad. Plaintiffs argue that "experts in similar cases routinely look at a 'before' and 'after' period to estimate damages and harm that occurred before the class period, and to perform their regression analysis." (ECF No. 5-1 at 13.) Plaintiffs allege that they suffered harm between December 10, 2016 to present. (Id.) January 1, 2015 to June 30, 2020 is the relevant

time period agreed to for discovery of the Varsity defendants and corresponds to the statute of limitations in this kind of antitrust case. Jones v. Bain, No. 20-cv-02892-SHL-tmp (W.D. Tenn, Dec. 10, 2020), (ECF No. 174 at 9 n.7.) The undersigned applies the same time period here. This allows plaintiffs almost two years of data before the alleged harm occurred.

**C.   Proportionality**

In addition to relevancy, Rule 26 requires that the discovery be "proportional to the needs of the case," Fed R. Civ. P. 26(b)(1). Six factors are relevant to proportionality: (1) "the importance of the issues at stake in the action;" (2) "the amount in controversy;" (3) "the parties' relative access to relevant information;" (4) "the parties' resources;" (5) "the importance of the discovery in resolving the issues;" and (6) "whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). "'[T]he status of a person as a non-party is a factor that weighs against disclosure.'" Mid Am. Sols., 2016 WL 1611381, at *5 (quoting Am. Elec. Power Co., 191 F.R.D. at 136). Further, Rule 45 requires a subpoenaing party to "take reasonable steps to avoid imposing undue burden or expense [on the non-party]." Fed. R. Civ. P. 45(d)(1).

The issues at stake in this case are national in implication and importance, with a substantial amount in controversy stemming from allegedly anticompetitive pricing and trade practices.

Regarding the parties' relative access to the information, ACE argues that requests regarding the prices that ACE paid for events or apparel could be sought from event producers and apparel vendors. (ECF No. 1 at 11-13.) However, ACE has exclusive access to the information regarding the prices that were charged to plaintiffs. (ECF No. 5-1 at 5.) As stated above, the discovery is highly relevant to plaintiffs' claims because it provides data that shows whether and to what extent ACE passed on any overcharges to athletes and their families. (ECF No. 5-1 at 11.)

Turning to burden, ACE argues that the subpoena subjects them "to an undue burden that would require significant production costs and expenses." (ECF No. 1 at 2.) However, ACE cannot rely on a "mere assertion that compliance would be burdensome and onerous without showing the manner and extent of the burden and the injurious consequences" of complying with the subpoena. United States v. Blue Cross Blue Shield of Mich., No. 10-CV-14155, 2012 WL 4513600, at *5 (E.D. Mich. Oct. 1, 2012)(quoting 9A Wright & Miller, Federal Practice and Procedure § 2463.1 at 507). ACE has not provided any information regarding the estimated costs of complying with plaintiffs' subpoena or any specific evidence of undue burden. Taylor v. Universal Auto Grp. I, Inc., No. 14-mc-50, 2015 WL 1810316, at *6 (S.D. Ohio Apr. 17, 2015)(refusing to quash subpoena when non-party did not provide the court with estimated cost of compliance or any evidence to support its claim

of undue burden). Further, other gyms who were served with an identical subpoena have complied without delay or claim of burden. (ECF No. 5-2 at 9.) Plaintiffs have also offered to assist gyms with Bates-stamping and designating documents as highly confidential. (Id.) Here, the burden of production is outweighed by the likely benefit. On balance, plaintiffs have shown that the discovery is proportional to the needs of the case.

**D.   Privilege**

Under Rule 45, on timely motion, the court "must quash or modify a subpoena that . . . requires disclosure of privileged or other protected matter, if no exception or waiver applies." Fed. R. Civ. P. 45(d)(3)(A). ACE claims that "[a]s to the work completed by and financial performance of ACE, including but not limited to ACE's confidential business and commercial information, the Subpoena seeks the production of information that is privileged and not discoverable under the Federal Rules of Civil Procedure." (ECF No. 1 at 2.) ACE argues, "[t]he Subpoena is due to be quashed and/or modified because it requests ACE's proprietary, sensitive, confidential, and private business and commercial information. . ." (Id. at 3.) A privacy interest is not a "privilege" under Rule 45, even in cases regarding highly confidential trade secret information. Columbus Drywall & Insulation, Inc. v. Masco Corp., 2:06-MC-0034, 2006 WL 2871834, (S.D. Ohio, Aug. 7, 2006)(denying a motion to quash, stating that a protective order is sufficient

- 9 -

to preserve party's interest in maintaining proprietary trade secret information). The only objection ACE makes under Rule 45 that could require quashing the subpoena is that "ACE objects to each and every Discovery Request to the extent that the information called for, if any, is protected by the attorney/client privilege, work product doctrine or other applicable privileges or immunities." (ECF No. 1 at 4.) However, ACE has not identified any documents that would fall under that privilege, nor do the requests themselves seek information that would likely be privileged.

In order to protect ACE's privacy interest the produced documents will be designated as "Highly Confidential" under the existing protective order. (ECF No. 62 at 2-3.) The documents shall be produced according to this order, so that any sensitive information contained within may be safeguarded. To the extent ACE has a good-faith belief that any documents qualify as attorney-client privileged materials, ACE may withhold or redact privileged portions, produce the rest, and provide a privilege log to plaintiffs' counsel along with the document production.

**E.    Cost Shifting**

ACE argues that "Rule 45(d)(2)(b)(ii) requires the district court to shift a non-party's costs of compliance with a subpoena, if those costs are significant." (ECF No. 1 at 8)(quoting EEOC v. Schuster Co., No. 19-cv-4063-LRR, 2020 WL 9348329, at *8 (N.D. Iowa Oct. 7, 2020)).

Generally, absent a protective order, the party producing discovery bears the costs of production. Cahoo v. SAS Inst. Inc., 377 F. Supp. 3d 769, 776–77 (E.D. Mich. 2019) (citing Medtronic Sofamor Danek, Inc. v. Michelson, 229 F.R.D. 550, 553 (W.D. Tenn. 2003)); see also Oppenheimer Fund v. Sanders, 437 U.S. 340, 358 (1978)). However, Fed. R. Civ. P. 45(d)(2)(B)(ii) "'has been deemed to make cost shifting mandatory in all instances in which a non-party incurs significant expense from compliance with a subpoena.'" Id. (quoting Linglong Americas Inc. v. Horizon Tire, Inc., No. 15-1240, 2018 WL 1631341, at *2 (N.D. Ohio Apr. 4, 2018)); see also Hennigan v. Gen. Elec. Co., No. 09-11912, 2012 WL 13005370, at *2 (E.D. Mich. Apr. 2, 2012) ("It is well-established that cost-shifting, in the context of a subpoena, should occur when an order requiring compliance subjects a non-party to 'significant expense.'"). Here, ACE has not provided any information regarding cost or time estimates, therefore the court cannot determine whether the cost to ACE would be significant. However, considering that other gyms have complied without claims of burden, the undersigned finds cost shifting is not appropriate based on the current record. However, in the event that the costs for production turn out to be a severe financial burden on ACE, after completing the production ACE may elect to file a motion to renew its request for cost-shifting.

**III. CONCLUSION**

- 11 -

For the reasons stated above, ACE's Motion to Quash is GRANTED in part and DENIED in part and plaintiffs' Motion to Compel is GRANTED in part and DENIED in part. Documents produced according to this order shall be governed by the existing protective order. ACE shall complete its production within fourteen days of the date of this order.

IT IS SO ORDERED.

s/ Tu M. Pham
TU M. PHAM
Chief United States Magistrate Judge

March 30, 2022
Date