**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TENNESSEE**

| | |
|---|---|
| JONES, ET AL. | Case No. 2:20-cv-02892-SHL-tmp |
| Plaintiffs, | |
| v. | |
| VARSITY BRANDS, LLC, ET AL., | |
| Defendants. | |

**VARSITY DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION TO COMPEL DISCOVERY**

## <u>TABLE OF CONTENTS</u>

**ARGUMENT** ................................................................................................................ 3

I.    VARSITY HAS DISCHARGED ITS OBLIGATIONS AS TO TEXT MESSAGES AND CAMP DATA AS PER THE PARTIES' AGREEMENT ................................................. 4

  A.    Varsity Has Produced the Text Messages it Agreed to Produce ...................................... 4

  B.    Varsity Has Produced the Camp Data it Agreed to Produce ........................................... 6

II.    TO THE EXTENT IN DISPUTE, PLAINTIFFS' SECOND RFPS COVER THE SAME GROUND AS THE FIRST RFPS ................................................................................. 7

  A.    In Seeking Communications About Competitive Cheer, Champs, and Apparel Relating With Certain Varsity Employees and Competitors, Plaintiffs Seek to Reopen the Resolved First Set of Requests for Production ......................................................................... 8

    1.    The time to dispute custodians (Requests 16-18, 20, 21) has long passed. .................... 8

    2.    Communications with Nfinity (RFP 14), Rebel (RFP 15) and David Owens of *American Spirit* Plaintiff Rockstar (RFP 19) are already in the scope of Varsity's production and no further production or undertaking to locate additional documents is warranted. ................. 11

  B.    Plaintiffs' RFPs 1-13 Have Been Resolved .................................................................. 13

III.    PLAINTIFFS' INTERROGATORIES SEEK INFORMATION THAT VARSITY DOES NOT HAVE OR THAT IS IRRELEVANT AND IN ANY EVENT WILDLY OVERBROAD FOR THE NEEDS OF THE CASE ...................................................... 13

    1.    Interrogatory 12 (Loan or Credit Relationships) .......................................................... 13

    2.    Interrogatory 14 (Market Share Information) ............................................................... 15

    3.    Interrogatory 18 (Varsity Brands and Subsidiaries Board of Directors) ....................... 16

    4.    Interrogatory 19 (Boards and Committees of NFHS, AACCA, ICU, USASF and USA Cheer) ....................................................................................................................... 17

i

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Handloser v. HCL America, Inc.*
    No. 19-cv-01242, 2020 WL 7405686 (N.D. Cal. Dec. 17, 2020)............................................11

*In re Broiler Chicken Antitrust Litig.*,
    No. 1:16-cv-08637, 2022 WL 621807 (N.D. Ill. March 3, 2022) ........................................11

*Johnson v. CoreCivic, Inc.*,
    No. 18-cv-1051, 2019 WL 5089086 (W.D. Tenn. Oct. 10, 2019)............................................3

*Raymond James & Assocs., Inc. v. 50 North Front St. TN, LLC*,
    No. 18-cv-2104, 2020 WL 1527827 (W.D. Tenn. Mar. 30, 2020)............................................4

*Stein v. U.S. Xpress Enters., Inc.*,
    No. 1:19-cv-00098, 2022 WL 5115533 (E.D. Tenn. Feb. 11, 2022).......................................10

*Tolliver v. Fed. Rep. of Nigeria*,
    265 F.Supp.2d 873 (W.D. Mich. 2003) ................................................................................10

**Other Authorities**

Fed. R. Civ. P. 26(b)(1)..........................................................................................................4

Fed. R. Civ. P. 26(b)(2)(C) .....................................................................................................4

Fed. R. Civ. P. 30(b)(6)...........................................................................................................6

## INTRODUCTION

Plaintiffs' motion to compel should be denied.  To the extent it seeks materials that Plaintiffs do not already have, the motion would vastly expand the scope of discovery in this case at the eleventh hour.  Indeed, as to materials and information they do not already have, Plaintiffs are mainly seeking a "second bite at the apple" on their already resolved first set of production of documents, both in the guise of seeking to expand Varsity's obligations under the Parties' agreement to resolve those requests and in seeking to compel the production of additional documents that were responsive to those requests.  Otherwise, Plaintiffs seek information they already have, or that Varsity[1] does not have, or that is irrelevant and disproportionate to the needs of the case.  Moreover, by waiting until a few weeks were left in discovery to pursue this impermissible additional discovery, Plaintiffs have created a situation where the requested discovery (or the vast bulk of it at least) cannot possibly be produced by the close of discovery, much less for use during depositions.

## BACKGROUND

On November 17, 2021, the *Jones* Plaintiffs and Varsity agreed on the scope of Varsity's production in response to the *Jones* Plaintiffs' first set of requests for production of documents ("Plaintiffs' First RFPs"), resolving all issues with those requests.  (Kaiser Decl. ¶ 2.)  Varsity has delivered on each item that it agreed to produce.  Plaintiffs are therefore simply incorrect in representing otherwise, which at a minimum betrays a fundamental lack of care on their part.  In particular, Plaintiffs say that Varsity has not produced text messages as agreed, when in fact it has.  (*Id.* ¶ 3.)  Plaintiffs likewise assert that Varsity has not produced comprehensive data about

---

[1] As used herein, "Varsity" refers to Varsity Brands, LLC; Varsity Spirit, LLC; and Varsity Spirit Fashions & Supplies, LLC.

camps, when in fact it has.  (*Id.* ¶ 6.)  Indeed, it appears that Plaintiffs prepared their motion to compel prior to conferring with Varsity and did not bother to even consider the additional information Varsity provided, which as discussed below moots these issues.  (*See id.* ¶ 14, Ex. 1 (pointing Plaintiffs to documents in production that demonstrated their assertions were incorrect).)

Plaintiffs also move to compel on their second set of document requests ("Plaintiffs' Second RFPs").  These requests were not issued until January 21, 2022, which was less than three months before the April 18, 2022 close of discovery.  The requests seek documents from additional custodians but otherwise essentially overlap with Plaintiffs' First RFPs.  Issuing additional requests on the same topics violated Plaintiffs' duty of good faith and fair dealing in relation to resolving Plaintiffs' First RFPs.  Indeed, to the extent Plaintiffs' Second RFPs overlap with Plaintiffs' First RFPs, the Second RFPs are improper *ab initio* as this Court recently confirmed in ruling on *American Spirit*'s motion to compel.  (Order Granting Defendants' Motion for Protective Order and Denying Plaintiffs' Motion for Sanctions or to Compel, *American Spirit & Cheer Essentials, Inc. v. Varsity Brands, LLC*, Case No. 2:20-cvr-02782 (No. 177).)  In any event, it is far too late in the process to be seeking additional custodians, especially from lower level employees (and in one case an employee who was not in the relevant parts of Varsity's business) based on information given to Plaintiffs many months ago and prior to the parties' agreement on custodians.

Finally, Plaintiffs ask this Court for an order compelling Varsity to provide information it does not have, is irrelevant, or is, at a minimum, disproportionate to the needs of the case.  For example, Plaintiffs seek "market shares" from Varsity for itself and all alternative suppliers of products or services in certain "markets" of Plaintiffs' choosing.  As Varsity has explained to

Plaintiffs, Varsity does not know the sales of other suppliers and does not know the total sales of all such other suppliers, much less in the "markets" as Plaintiffs have chosen to define them for their own purposes, all of which would be needed to provide the information that Plaintiffs demand. (Varsity has provided detailed information about its own sales.  (Kaiser Decl. ¶ 4.)) Notably, the *Fusion Elite* Plaintiffs dropped an identical demand and accepted the same information that Varsity provided to these Plaintiffs.  (*Id.*)  Plaintiffs also seek information about Varsity's support to various organizations, but Varsity provided that information to the extent it has it reasonably available, as Plaintiffs have been informed.  (*Id.* ¶ 5.)

Otherwise, Plaintiffs seek an order requiring Varsity to "[i]dentify all members, officers, and Directors of the Board of Directors or any committee thereof of Varsity Brands, LLC, Varsity Spirit, LLC, Varsity Brands Holding Co., LLC, or Hercules Holding Co., LLC. For each Person identified, Identify (a) the name of the Person; (b) the board(s) and committees in which they served; (c) the years in which they served; and (d) the positions (e.g., Chairman, Vice Chairman, Secretary) in which they served."  In other words, Plaintiffs seek all-encompassing information about Varsity's internal organization, which is not at issue in this case.  Plaintiffs likewise seek unnecessarily detailed information about Varsity involvement in NFHS, AACCA, ICU, USASF, or USA Cheer.

## ARGUMENT

Discovery is not unlimited.  "The party seeking discovery is obliged to demonstrate relevance."  *Johnson v. CoreCivic, Inc.*, No. 18-cv-1051, 2019 WL 5089086, at *2 (W.D. Tenn. Oct. 10, 2019).  And even theoretically "relevant" material is not discoverable if the burden of doing so would be disproportionate.  The proportionality analysis considers: (1) the importance of the issues at stake in the action, (2) the amount in controversy, (3) the parties' relative access

to relevant information, (4) the parties' resources, (5) the importance of the discovery in resolving the issues, and (6) whether the burden or expense of the proposed discovery outweighs its likely benefit.  Fed. R. Civ. P. 26(b)(1).  "Determinations as to proportionality are subject to change with the circumstances of the case."  *Raymond James & Assocs., Inc. v. 50 North Front St. TN, LLC*, No. 18-cv-2104, 2020 WL 1527827, at *2 (W.D. Tenn. Mar. 30, 2020) (internal citations and quotations omitted).  "This is in part because '[c]onsiderations of proportionality can include reviewing whether discovery production has reached a point of diminishing returns.'"  *Id.* (quoting *Abbott v. Wyo. Cty. Sheriff's Off.*, 15-CV-531W,  2017 WL 2115381, at *2 (W.D.N.Y. May 16, 2017)).  Thus, "[w]hen the 'marginal utility' of further document production is low, Rule 26's proportionality principle commands that courts should take steps to limit discovery."  *Id.*  In addition, the Court should limit discovery if "(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome or less expensive" or "(ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action."  Fed. R. Civ. P. 26(b)(2)(C).  That is precisely the situation here—Plaintiffs seek more of the same long after the point of diminishing returns has been passed.

## I.   VARSITY HAS DISCHARGED ITS OBLIGATIONS AS TO TEXT MESSAGES AND CAMP DATA AS PER THE PARTIES' AGREEMENT

### A.   Varsity Has Produced the Text Messages it Agreed to Produce

When Plaintiffs on March 15 first asked Varsity about its productions of text messages in response to the agreed resolution of Plaintiffs' First RFPs, Plaintiffs incorrectly accused Varsity of not producing *any* text messages.  (Kaiser Decl. ¶ 7.)  Varsity pointed Plaintiffs to a produced text message as an example of why Plaintiffs were wrong.  (*Id.* ¶ 14, Ex. 1.)  Now Plaintiffs

4

confusingly assert that Varsity has not produced the text messages of the "agreed custodians," which is equally incorrect.  In fact, Varsity has done so.

Plaintiffs misrepresent the meet and confer conversations relating to text messages, which, as discussed above, mainly related to Plaintiffs' false accusation, now abandoned, that no text messages had been produced.  Plaintiffs *now* assert that "Varsity confirmed that they they [sic] had only produced text messages from the custodians discussed on November 17, 2021" and that list "concerned a subset of disputed custodians" and "did not affect previously agreed to custodians."  (Pls.' Br. at 4.)  Plaintiffs are confused.  The only "previously agreed to" custodians were John Newby and John Nichols.  Plaintiffs concede that former employees like Mr. Nichols were not subject to the parties' agreement regarding text messages.  (*Id.* (conceding that the agreements as to text messages were "as to current employees of Varsity").)  The remainder of the November 17 list consisted of a mix of current employees (Bill Seely, John Sadlow, Buffy Duhon, and Melanie Berry) and former employees (Jeff Webb[2] and Tres Letard), who as former employees likewise were dropped.  Thus the complete list of "agreed custodians" is Mr. Seely, Mr. Newby, Mr. Sadlow, Ms. Duhon, and Ms. Berry.[3]  All of these individuals' text messages

---

[2] Mr. Webb's production of text messages was the subject of previous ruling of this Court.  (ECF No. 165.)

[3] All of this is further confirmed by Plaintiffs' email to the Court of November 4, 2021, where Plaintiffs wrote, in respect of text messages, that "Plaintiffs have requested that Varsity search text messages of the custodians as matched with each bucket of requests.  Varsity has declined to do so."  (Kaiser Decl. ¶ 15, Ex. 2.)  The reference to "bucket of requests" was to five categories of documents, each of which had a list of associated custodians, which in sum were Mr. Seely, Mr. Newby, Mr. Sadlow, Ms. Duhon, and Ms. Berry plus other custodians that Plaintiff either later agreed to drop entirely (Adam Blumenfeld and Mr. Parrish) and/or were former employees (Mr. LeTard, Mr. Parrish, and Jim Hill) and therefore not part of the parties' agreement on text messages, which was reached two weeks later.  Plaintiffs do not contend there was any agreement on text messages or custodians at the time of the November 4 transmission, and there was none.  (*Id.*)

were reviewed and produced to the extent responsive within the agreed parameters. (Kaiser Decl. ¶ 3.) There is accordingly no actual issue on text messages.

### B. Varsity Has Produced the Camp Data it Agreed to Produce

Plaintiffs also incorrectly assert that Varsity has not complied with its agreement to produce data as to cheerleading camps. (Pls.' Br. at 5.) In fact, this data was provided in December 2021. Once again, Plaintiffs appear confused. Although Plaintiffs cite a number of produced documents to the Court as containing "incomplete" camp data, they fail to address the document that *Varsity* pointed them to in response to their accusation that no camp data had been produced, VAR00462074. (*See* Kaiser Decl. ¶ 14, Ex. 1.) This document contains the data Varsity agreed to produce for 2015 for camps and the same production contained the corresponding data for the other agreed years. Had Plaintiffs bothered to review VAR00462074 and the other documents in the same production for subsequent years, they would have seen there are tabs called "Camp Financial Statement," and tabs called "Camp Transaction Details," which contain the very data that Plaintiffs incorrectly accuse Varsity of not producing. (*Id.* ¶ 8.)

Once again, Plaintiffs have accused Varsity of something that was not true, apparently not bothered to investigate Varsity's response, and instead burdened the Court (and Varsity) with this motion. In any event, as with text messages, Varsity did what it agreed to do and Plaintiffs' motion should be denied.[4]

---

[4] Plaintiffs also curiously request an order for Varsity to "make available knowledgeable persons to address specific questions regarding the data base and the data contained in them." (Pls.' Br. at 6-7.) There is no provision in the Federal Rules for such an order, which would be improper. Apparently sensing this, Plaintiffs say they would "seek leave of Court to take a deposition of a Rule 30(b)(6) designee on that specific topic." (*Id.* at 7.) But "leave of Court" is not required to take a deposition under Rule 30(b)(6). Indeed, the *Jones* Plaintiffs have already taken testimony under Rule 30(b)(6) in this case on various topics. Moreover, the *Fusion Elite* Plaintiffs have noticed a 30(b)(6) deposition on questions they say they have about the data that was produced.

**II.    TO THE EXTENT IN DISPUTE, PLAINTIFFS' SECOND RFPS COVER THE SAME GROUND AS THE FIRST RFPS**

As noted, Plaintiffs issued their Second RFPs on January 21, 2022, less than three months before the April 18, 2022 close of discovery.  The requests follow two patterns.  One (which is repeated in Requests 14 to 21), seeks "[a]ll Documents or Communications between You and [named individual or entity] relating to Competitive Cheer, Camps, and/or Apparel."  The other (which is repeated in Requests 1 to 13), seeks "[a]ll Documents or Communications referring or relating to any separation, severance, termination, employment, or non-disclosure Agreements, provisions or terms, including any drafts or non-executed versions thereof between You and [former employee]."  (As noted below, the parties have resolved Requests 1 to 13.)

Any further production of documents must be balanced, on proportionality grounds, in light of the needs of the case and in light of what has already been produced.  In that regard, it is painfully evident that discovery relating to cheerleading is long past the point of diminishing returns.  Varsity alone has produced more than 600,000 pages of information and hundreds of thousands of detailed transaction and financial data records.  (Mahoney Decl. ¶ 2.)  The documents produced have come from, among other places, the custodial files of 20 different individuals (*id.*), including the current president of Varsity's cheerleading business, his two immediate predecessors in that role, the current and past general managers of Varsity's All Star cheerleading business, and numerous individuals in the public relations, communications, operations, and apparel areas of Varsity's cheerleading business (Kaiser Decl. ¶ 9.  There is no basis to conclude that the incremental discovery sought—as costly and disruptive as it would be to Varsity, which has already expended approximately $10 million in discovery on this case (Mahoney Decl. ¶ 2)—will play any role in resolving the issues in this case, certainly not a proportionally-sufficient role to justify yet further expenditure of resources and time.

**A.    In Seeking Communications About Competitive Cheer, Champs, and Apparel Relating With Certain Varsity Employees and Competitors, Plaintiffs Seek to Reopen the Resolved First Set of Requests for Production**

**1.    The time to dispute custodians (Requests 16-18, 20, 21) has long passed.**

To the extent these requests seek conceivably relevant material, they seek the same materials that Plaintiffs sought in their First RFPs, which were issued on March 26, 2021. Varsity timely responded to those requests on April 26, 2021. The Court set a deadline of 90 days after the service of requests to bring any motion regarding the responding party's response. (ECF No. 61.) Plaintiffs asked for and received two extensions to that deadline, with the final deadline set at Plaintiffs' request to be September 18, 2021. (*See* ECF No. 94; ECF No. 106.) On that date, Plaintiffs filed a motion to compel. (ECF No. 100.) The parties resolved all of their outstanding issues in an agreement reached on November 17, 2021. In that regard, Plaintiffs informed the Court on November 18, 2021 that "the *Jones* Plaintiffs and the Varsity Defendants have successfully resolved the outstanding discovery disputes outlined in ECF No. 100 (Motion to Compel Discovery Reponses from Varsity Defendants)." (Kaiser Decl. ¶ 16, Ex. 3.) Plaintiffs subsequently withdrew their motion to compel. (ECF No. 166.)

The main subject of contention between the parties as to the Plaintiffs' First RFPs was the custodians of whose files Plaintiffs wanted Varsity to search for documents. The parties ultimately agreed on Mr. Webb, Mr. Seely, Mr. Newby, Mr. Sadlow, Mr. Nichols, Ms. Duhon, Mr. LeTard and Ms. Berry. Plaintiffs dropped the many dozen others that they had originally demanded.

Now Plaintiffs apparently want more custodians, specifically former Varsity employees Kevin Brubaker, Marlene Cota, Sheila Noone, Josh Quintero, and Abel Rosa. As this Court concluded in respect of American Spirit's motion to compel (ECF No. 177 in *American Spirit*),

having passed up the opportunity to bring a particular dispute over the scope of Varsity's responses to those First RFPs when due (in this case September 18, 2021 by order of the Court at ECF No. 106), Plaintiffs may not manufacture a new dispute by issuing new document requests.

But that is exactly what Plaintiffs seek to do here.  Plaintiffs admit that they are seeking "emails and other materials" from additional custodians' files.  (Pls.' Br. at 16-17.)  Plaintiffs *do not* assert that its requests seek different kinds of information or on different *topics* than Plaintiffs' First RFPs, just that the second RFPs (and specifically RFPs 16-18, 20, and 21 of the Second RFPs) seek information from different custodians' files.[5]

This is a dispute that Plaintiffs could have and should have brought by the deadline for bringing such disputes, *i.e.*, September 18, 2021.  Plaintiffs' only excuse for not doing so is that they were "reasonably not aware" of the individuals earlier.  But that is simply false.  Each of these individuals was identified on organization charts that were originally produced in *Fusion Elite* in February 2021 and provided to the *Jones* Plaintiffs in May 2021.  (Kaiser Decl. ¶ 10.) The documents Plaintiffs cite for these individuals in support of their motion all were produced to them well in advance of the deadline to bring disputes over Plaintiffs' First RFPs to the Court. (*Id.* ¶ 11.)  The *Fusion Elite* Plaintiffs even wrote a letter to Varsity about one of the new custodians, Mr. Quintero, nearly a year ago in *April 2021*.  (*Id.* ¶ 17, Ex. 4.).  The *Jones* Plaintiffs' issued a notice of subpoena for Ms. Cota on November 3, 2021, two weeks *before* agreeing to the custodian list.  (*Id.* ¶ 18, Ex. 5.)  Moreover, Plaintiffs identify no information that

---

[5] To the extent Plaintiffs contend that their requests from these new custodians are more expansive than the requests of the other custodians, any difference could not be justified or proportional to the needs of the case, particularly given the extensive scope of Plaintiffs' First RFPs and the extensive scope of discovery on these same topics in Fusion Elite, all of which has been made available to the *Jones* Plaintiffs.

came into their possession after the parties' reached their agreement regarding custodians. Plaintiffs' attempt to excuse their late identification of these custodians is therefore makeweight.

Even putting timing and lack of diligence aside, ordering yet more custodians would be disproportionate to the needs of the case. Plaintiffs have already received hundreds of thousands of documents on the subject of competitive cheer, camps, and apparel from the leaders of those businesses at Varsity, including board level documents, and documents from numerous subordinate employees. Now, apparently realizing that those documents do not support their antitrust theories, they are hoping to find something in the files of lower-level employees (Mr. Brubaker, Ms. Noone, Mr. Quintero, and Mr. Rosa) (Declaration of John Newby ¶¶ 3-6) or in the files of an employee who was not even involved in the issues in the case (Ms. Cota) (Newby Decl. ¶ 7; Kaiser Decl. ¶ 12; *see also* ECF No. 176 at 2 (noting that Ms. Cota's employment with Varsity ended four years ago, she was primarily involved with corporate sponsorships during her tenure, and Plaintiffs did not name Ms. Cota among their more than 50 custodians of interest); *see generally* ECF No. 1). "The mere hope that additional discovery may give rise to winning evidence does not warrant the authorization of wide-ranging fishing expeditions." *Tolliver v. Fed. Rep. of Nigeria*, 265 F.Supp.2d 873, 880 (W.D. Mich. 2003) (internal citations and quotations omitted).

This sort of endless fishing around deeper and deeper into the depths of an organization on the theory that something may turn up is the very premise behind the proportionality analysis and why such efforts are denied, particularly at the end of discovery, as should happen here. *See, e.g., Stein v. U.S. Xpress Enters., Inc.*, No. 1:19-cv-00098, 2022 WL 5115533, at *3 (E.D. Tenn. Feb. 11, 2022) (denying motion to compel production of ESI from additional custodians where Plaintiff made no showing that such additional discovery would yield relevant information that is

not duplicative to information already produced by existing higher-ranking employee custodians); *see also In re Broiler Chicken Antitrust Litig.,* No. 1:16-cv-08637, 2022 WL 621807, at *2 (N.D. Ill. March 3, 2022) (denying plaintiffs' motion to compel additional employee as a document custodian one month before scheduled close of discovery where parties had previously negotiated document custodians and employee was not chosen); *Handloser v. HCL America, Inc.* No. 19-cv-01242, 2020 WL 7405686, at *2 (N.D. Cal. Dec. 17, 2020) ("The Court cannot discern why plaintiffs expect to discover information from these three custodians that differs from discovery they have already obtained from the other 16 custodians, including (apparently) these three custodians' direct supervisors.").  Plaintiffs should not now be permitted to add additional custodians a few weeks before the close of discovery simply because they neglected to identify them earlier.

      **2.**      **Communications with Nfinity (RFP 14), Rebel (RFP 15) and David Owens of *American Spirit* Plaintiff Rockstar (RFP 19) are already in the scope of Varsity's production and no further production or undertaking to locate additional documents is warranted.**

      Plaintiffs seek to compel communications with Nfinity, Rebel Apparel, and David Owens, who is the principal of one of the Plaintiffs in the *American Spirit* case.  This is a bizarre demand because communications with these entities are well covered by the production that Varsity has already made.  Indeed, "Rebel" and "Nfinity" were search terms.  Plaintiffs even cite some of these documents.

      Plaintiffs do not suggest any deficiency in Varsity's production or explain why they waited until March 18, 2022, long after the relevant deadline, to bring any such deficiencies to the Court.  Indeed, Plaintiffs make no suggestion of any kind as to what Varsity is supposed to do beyond what it has done as to such communications.  If the request is to look in more custodian's files, the same failure that pertains to their requests discussed in the previous section applies here

as well.  And, indeed, Plaintiffs do not suggest (or even speculate) that any of the additional

former Varsity employees they have identified (Mr. Brubaker, Ms. Cota, Ms. Noone, Mr.

Quintero, or Mr. Rosa) could reasonably be expected to have relevant (or even any)

communications with these individuals or their respective companies.  (*See* Pls.' Br. at 9-13

(describing Plaintiffs' view of roles of these individuals without mentioning Rebel, Nfinity,

David Owens, or Rockstar Championships as within the scope of those roles).)  Moreover, even

though they concede that David Owens is the "Owner and Chief Executive Office [sic] of

Rockstar Championships, LLC," and that "[h]e is a plaintiff in the class action against Varsity

brought by American Spirit and Cheer Essentials,"[6] Plaintiffs apparently were unable to find a

single document—including from Rockstar's files, to which as co-Plaintiffs they presumably

have ready access—to support their motion to compel.

Plaintiffs do not even try to contend that Mr. Owens, Rebel, or Nfinity were not

"reasonably known" to them.  Indeed, Rockstar identified Mr. Owens in its complaint filed in

July 2020 and included allegations about Nfinity and Rebel.  (*See Am. Spirit* Compl. ¶¶ 6, 179,

193, 227, 257, 260, 292A (Rockstar); *id.* ¶ 292A (Owens); *id.* ¶¶ 75, 177-78 (Rebel); *id.* ¶¶ 70,

75 (Nfinity).)  The *Jones* Plaintiffs themselves discussed Rebel in their Complaint, which was

filed in December 2020.  (*See* Compl. ¶¶ 153, 201.)  The *Fusion Elite* Amended Complaint filed

in October 2020 likewise contained allegations about Rebel and Nfinity.  (*See Fusion Elite*

Amended Compl. ¶¶ 110, 163, 190 (Rebel); *id.* ¶ 191 (Nfinity).)

Again, to the extent Varsity's broad searches among twenty custodians in this and the

*Fusion Elite* case turned up communications of the kind of which Plaintiffs seek to compel

---

[6] In fact, Rockstar is the Plaintiff, not Mr. Owens, although Rockstar has asked to have Mr.
Owens appointed a class representative.  (Complaint Class Action, *American Spirit & Cheer
Essentials, Inc. v. Varsity Brands*, LLC, Case No. 2:20-cv-02892 (No. 1).)

production, they were produced.  Plaintiffs fail to provide any reason to require anything else, particularly at this late date, or to overcome the manifest disproportionality and undue burden that such further efforts would entail.  In that regard, based on the expense of discovery in this case to date, the cost of five additional custodians is conservatively estimated to be at least $1.5 million.  (Mahoney Decl. ¶¶ 3-4.)

### B. Plaintiffs' RFPs 1-13 Have Been Resolved

The parties have resolved Plaintiffs' RFPs 1-13.  (Kaiser Decl. ¶ 19, Ex. 6.)  Plaintiffs motion to compel as to those requests is accordingly moot.

## III. PLAINTIFFS' INTERROGATORIES SEEK INFORMATION THAT VARSITY DOES NOT HAVE OR THAT IS IRRELEVANT AND IN ANY EVENT WILDLY OVERBROAD FOR THE NEEDS OF THE CASE

Plaintiffs motion to compel further responses to their interrogatories is also without merit. In general, the questions, which are vaguely framed, seek entirely or mostly irrelevant information and are overbroad.

### 1. Interrogatory 12 (Loan or Credit Relationships)

Interrogatory 12 asks Varsity to "[i]dentify all past and present loan or credit relationships Varsity has had or currently has with NFHS, AACCA, ICU, USASF, or USA Cheer" and "[f]or each loan or credit relationship identified, describe: (a) the debtor and lender; (b) the nature and the amount of the loan or credit facility; (c) the beginning date of the loan or credit facility; and (d) when any such loan or credit facility was discharged, forgiven, assigned, or transferred." Varsity timely objected to the interrogatory as seeking irrelevant information, as overly broad, unduly burdensome, and disproportional to the needs of the case, in particular in its request for information about ICU.  Varsity also objected to the term "loan and credit relationships" as vague, ambiguous, and susceptible to multiple interpretations.

13

Having made those objections, Varsity provided information about its support of USASF and USA Cheer, including specifics regarding money that it advanced USASF during its formative time, which included the amount advanced and when USASF had paid it back.  It said that it had provided similar financial support to AACCA.  It said that it was not aware of any "loan or credit relationship" with NFHS.  (Plaintiffs statement that Varsity has "omitted any information" about NFHS is therefore false.)  In the parties truncated meet and confer discussions, Plaintiffs said that they would be satisfied with a similar level of detail regarding USA Cheer and AACCA as provided as to USASF.  Varsity was attempting to put that information together (reserving its rights and recognizing that it might not have the information), when Plaintiffs filed their motion to compel.

Certainly nothing beyond what Varsity was working to provide, to the extent Varsity has the information, is warranted as to AACCA and USA Cheer.  Indeed, in that regard, Plaintiffs seem to be trying to create a dispute where none exists.  For example, they say that Varsity's response that it financially supported USASF by advancing money (specifying the amount) does not state "whether it was in the form of an arm's length loan, bank loan, direct payments or other kind of financial support" or "indicate if the support was cash, in kind or of some other type." (Pls.' Br. at 17.)  But the interrogatory asks for "loan or credit relationships," which can only be interpreted as cash, and Varsity specifically stated that it "advanced" a certain amount of money in fact does state the nature of the "support"—it was cash advanced over time.

As noted, there is nothing to provide relating to NFHS.  ICU is the International Cheer Union and Plaintiffs have otherwise dropped discovery related to the ICU, which is the organization recognized by the International Olympic Committee as the official governing body

for cheerleading at the international level.  Plaintiffs provide no basis to conclude ICU is relevant to this interrogatory.

### 2.    Interrogatory 14 (Market Share Information)

Interrogatory 14 asks Varsity to "Identify the respective market shares of Varsity and all competitors for each year during the Relevant Time Period with respect to (1) Cheer Events, (2) Cheer Apparel, (3) Cheer Camps, (4) Dance Event Producers, and (5) Dance Apparel."  In addition to interposing objections, Varsity fully responded to this Interrogatory by saying that Varsity "does not possess this information about Cheer Events, Cheer Apparel, and Cheer Camps because it does not know the sales of all suppliers of Cheer Events, Cheer Apparel, or Cheer Camps (or Dance Events or Dance Apparel) and therefore cannot provide "market shares" as it understands that term."  Plaintiffs likewise do not try to establish relevance of information about Dance Events or Dance Apparel.

Plaintiffs do not address Varsity's response at all in their motion to compel.  (*See* Pls.' Br. at 18-19.)  Rather, they simply recite inapplicable nostrums about requirements for responding to interrogatories in general.  (*See id.*)  In any event, Varsity cannot provide what it does not have, and it does not have the sales of all alternative suppliers (*i.e.*, "all competitors") of Varsity in the so-called markets for "Cheer Events," "Cheer Apparel," "Cheer Camps," "Dance Event[s]," or "Dance Apparel."  (Plaintiffs likewise do not respond to the fact that information about "dance" would be irrelevant even if Varsity had it.)  Varsity has provided its own sales in these areas and has provided a list of entities it views as alternative suppliers of cheerleading events, cheerleading apparel, and cheerleading camps, a fact that Plaintiffs do not disclose to the Court. (Kaiser Decl. ¶ 4.)  Also contrary to Plaintiffs' representation, Varsity has produced its internal database in which it tries to track third-party cheer events.  (*Id.* ¶ 13.)

Because Varsity does not have the additional information Plaintiffs seek, Plaintiffs'
motion to compel is not well taken.  Indeed, the information Varsity provided satisfied the
*Fusion Elite* Plaintiffs, who had similar interrogatories for market share information.  (*Id.* ¶ 4.)
The fact that Plaintiffs in the two cases came after Varsity twice on these same questions is yet
another failure of Plaintiffs to coordinate in discovery as the Court ordered them to do (*see* ECF
No. 45) and provides a further reason to deny their motion to compel.

      **3.**      **Interrogatory 18 (Varsity Brands and Subsidiaries Board of Directors)**

Interrogatory 18 demands that Varsity "[i]dentify all members, officers, and Directors of
the Board of Directors or any committee thereof of Varsity Brands, LLC, Varsity Spirit, LLC,
Varsity Brands Holding Co., LLC, or Hercules Holding Co., LLC. For each Person identified,
Identify (a) the name of the Person; (b) the board(s) and committees in which they served; (c) the
years in which they served; and (d) the positions (*e.g.*, Chairman, Vice Chairman, Secretary) in
which they served."  As Varsity timely objected, this interrogatory seeks irrelevant information,
is overly broad, unduly burdensome, and disproportional to the needs of the case.

The only argument that Plaintiffs advance on relevance is that "two defendants,
Charlesbank and Bain, have exercised control and participated actively in the affairs of Varsity
through, among other things, the control of and participation in the Varsity management boards."
(Pls.' Br. at 20.)  They then recite the same legal argument that was advanced in their motion to
dismiss response.  (As the Court knows, that motion remains pending although the Court
dismissed *American Spirit*'s claims against Bain and Charlesbank that were based on essentially
identical allegations.  (*See* ECF No. 229.))

Plaintiffs' relevance argument, even taken at face value, does not support the excruciating
detail they seek, which is not limited to the participation of Charlesbank or Bain, but rather
covers any and all "members, officers, and directors of the Board of Directors or any committee

thereof" of four different Varsity Brands subsidiaries. As to Bain and Charlesbank, Plaintiffs are already well informed of the positions that Bain and Charlesbank employees had in relation to any relevant entity; they cited this information to the Court in their motion to compel the deposition of Adam Blumenfeld. (ECF No. 212-2, Buchanan Decl., Exs. 10-14 (under seal).) Any further response from Varsity would be duplicative and serve no useful purpose. It would therefore be irrelevant and in any event disproportionate to the needs of the case.

**4.    Interrogatory 19 (Boards and Committees of NFHS, AACCA, ICU, USASF and USA Cheer)**

As an initial matter, Plaintiffs' arguments relating to Interrogatory 19 are past page 20 in their brief, thus violating the Court's rule regarding brief length. L.R. 7.2(e). Varsity has faithfully lived within those limits, including in this response and in the their motions to dismiss and to strike. Plaintiffs should not be allowed to ignore the Court's rules with impunity and the Court should disregard Plaintiffs' request relating to Interrogatory 19. Plaintiffs also did not meet and confer with Varsity on this interrogatory in any meaningful way.

The request fails on its own merits in any event. As set forth in Plaintiffs' brief, Plaintiffs want Varsity to "identify all of its employees, officers, or board members that serve on boards of committee of five organizations: NFHS, AACCA, ICU, USASF, and USA Cheer." (Pls.' Br. at 21.) The only argument they provide to support this interrogatory relates to USASF. But Plaintiffs can see from USASF's website who its Board of Directors is and who serves on its subsidiary boards and committees and their affiliations. (*See* https://www.usasf.net/boards-committees**.**) Similarly, USA Cheer, of which AACCA is now a part, lists its board members on its website. (*See* https://www.usacheer.org/about/board-of-directors). As noted above, the ICU is an international organization that Plaintiffs previously dropped from all of their other discovery requests. Information about its governing council is available on its website. (*See*

https://cheerunion.org/about/council/.)  NFHS is not a cheerleading organization.  Rather, it is the National Federation of State High School Associations, which, according to its website, is "the national leader and advocate for high school athletics as well as fine and performing arts programs."  It has "51 member state associations (including Washington, D.C.)" and serves "19,500 high schools and more than 12 million young people."  (https://www.nfhs.org/who-we-are/aboutus.)  Its board of directors is available on its website.  (See https://www.nfhs.org/who-we-are/board-of-directors),  Plaintiffs do not explain why these public sources are not sufficient for their asserted needs.

To be sure, Plaintiffs' interrogatory as written is broader than as presented to the Court in Plaintiffs' brief, including, for example, demanding that Varsity identify any of its employees who are "members" of these organizations.  Plaintiffs have apparently dropped this part of the interrogatory, and also dropped the part of the interrogatory asking for historical information. Plaintiffs have had the opportunity to explore this topic at depositions, including of USASF itself.

To the extent that Plaintiffs still mean to be seeking historical information,[7] the interrogatory is overbroad and seeks information that Varsity does not keep in any systematic form.  (Newby Decl. ¶ 8.)  Plaintiffs' relevance argument is that Varsity "controlled" these organizations and "used the control of these organizations to set rules and procedures …."  (Pls.' Br. at 21.)  But the interrogatory is not limited to the boards of these organizations or even to

---

[7] Varsity timely objected to the time period in both Plaintiffs' Second RFPs and interrogatories and said to the extent it provided documents or information, it would do so for the period January 1, 2015 to June 30, 2020 for documents and December 10, 2016 to June 30, 2020 for information in response to interrogatories.  Plaintiffs have not contested these objections and therefore those time periods control for purposes of Plaintiffs' Second RFPs and interrogatories.  Varsity also notes that the Court has consistently limited the start date for discovery in this case to January 1, 2015.  (ECF Nos. 174 and 231.)

"boards and committees" that set "rules and procedures," as it must be even accepting Plaintiffs'

theory of relevance.  For example, USASF's website indicates it has the following committees in

addition to its board of directors:  National Advisory Board, Regional Advisory Board, The

Connection, Cheer Rules Committee, Dance Rules Committee, Sanctioning Committee, Cheer

Worlds Advisory Board, Dance Worlds Advisory Board, Athlete Advisory Council, All Star

Wellness Committee, Exceptional Athlete Committee, Dance Executive Committee, Compliance

Committee, Disciplinary Committee, Athlete Performance Standards Committee, and USASF

DEIS Sub-Committee.  (*See* https://www.usasf.net/boards-committees.)  Few of these would

seem to be involved in setting "rules and procedures."  NFHS lists more than forty committees

on its website, including rules committees for basketball, football and other non-cheerleading

sports.  (*See* https://members.nfhs.org/committees.)  Putting Varsity to the task of gathering

irrelevant information, if it is even available historically, would impose an undue burden on

Varsity, particularly in the end stages of fact discovery.  Indeed, Plaintiffs offer no reason why

they waited a year into fact discovery to promulgate this interrogatory.

## CONCLUSION

Varsity respectfully requests that Plaintiffs' motion to compel be denied in its entirety.

Dated: April 1, 2022

Respectfully submitted,

s/ Matthew S. Mulqueen

George S. Cary*
Steven J. Kaiser*
Linden Bernhardt*
CLEARY GOTTLIEB STEEN &
 HAMILTON LLP
2112 Pennsylvania Avenue, NW
Washington, DC 20037
Phone: (202) 974-1500
Fax: (202) 974-1999
gcary@cgsh.com
skaiser@cgsh.com
lbernhardt@cgsh.com

Jennifer Kennedy Park*
Heather Nyong'o*
CLEARY GOTTLIEB STEEN &
 HAMILTON LLP
1841 Page Mill Road, Suite 250
Palo Alto, CA 94304
Phone: (650) 815-4100
Fax: (202) 974-1999
jkpark@cgsh.com
hnyongo@cgsh.com

* Admitted pro hac vice

Matthew S. Mulqueen (TN #28418)
Adam S. Baldridge (TN #23488)
BAKER, DONELSON, BEARMAN,
 CALDWELL & BERKOWITZ
165 Madison Avenue, Suite 2000
Memphis, TN 38103
Phone: (901) 526-2000
Fax: (901) 577-0866
mmulqueen@bakerdonelson.com
abaldridge@bakerdonelson.com

*Attorneys for Varsity Brands, LLC; Varsity Spirit, LLC; Varsity Spirit Fashions & Supplies, LLC*