UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| JONES, ET AL.<br><br>         Plaintiffs,<br>   v.<br><br>VARSITY BRANDS, LLC, ET AL.,<br><br>         Defendants. | **Case No. 2:20-cv-02892-SHL-tmp** |

**CHARLESBANK'S AND BAIN'S RESPONSE TO PLAINTIFFS' MOTION FOR LEAVE TO TAKE TWENTY DEPOSITIONS OF CHARLESBANK AND BAIN**

## **TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................................ 1

ARGUMENT .................................................................................................................................. 2

    I.    THE COURT HAS ALREADY REJECTED THE NEED FOR TESTIMONY ABOUT VARSITY'S CHEERLEADING ACTIVITIES FROM VARSITY BRANDS' CEO, WHICH IS *A FORTIORI* AS TO VARSITY BRANDS' UPSTREAM OWNERS AND INVESTORS LIKE BAIN AND CHARLESBANK ......................................................... 4

    II.    THE OTHER TOPICS THAT PLAINTIFFS POINT TO DO NOT WARRANT LEAVE TO TAKE TWENTY ADDITIONAL DEPOSITIONS ...................................................... 6

    III.    PLAINTIFFS' REQUEST FOR LEAVE DOES NOT FIT WITHIN THE SCHEDULE FOR THIS CASE, EVEN AS EXTENDED ................................................................... 10

CONCLUSION ............................................................................................................................. 12

# TABLE OF AUTHORITIES

**Cases**

*Bituminous Fire & Marine Ins. Corp. v. Dawson Land Dev. Co., Inc.*,
  No. 3:02-CV-793-J-21TEM, 2003 WL 22012201 (M.D. Fla. Feb. 13, 2003) ..........................4

*Goree v. United Parcel Serv., Inc.*,
  No. 14-cv-2505, 2016 WL 3647681, at *3 (W.D. Tenn. April 12, 2016) ................................4

*Johnson v. CoreCivic, Inc.*,
  No. 18-cv-1051, 2019 WL 5089086 (W.D. Tenn. Oct. 10, 2019).............................................2

*LeBlanc v. Coastal Mech. Servs.*,
  LLC, No. 04-80611-CIV-RYSKAMP/VITUNAC, 2005 WL 8156053 (S.D. Fla.
  March 29, 2005).......................................................................................................................4

*Moore v. Abbott Lab'ys*,
  No. 2:05–cv–1065, 2009 WL 73876 (S.D. Ohio Jan. 8, 2009) ................................................4

*Raymond James & Assocs., Inc. v. 50 N. Front St. TN, LLC*,
  No. 18-cv-2104, 2020 WL 1527827 (W.D. Tenn. Mar. 30, 2020)...........................................3

**Other Authorities**

Fed. R. Civ. P. 26................................................................................................................... 2-3, 9

Fed. R. Civ. P. 30........................................................................................................................10

## INTRODUCTION

Plaintiffs' motion for leave to take twenty[1] additional depositions beyond the approximately twenty they have already taken and the total of approximately thirty-two they have noticed to take (Kaiser Decl. ¶ 2) should be denied.[2] As the Court observed in denying the same Plaintiffs' motion to compel the deposition of Varsity Brand's CEO Adam Blumenfeld, any legitimate need for deposition testimony relating to cheerleading is well covered by the depositions already taken and to be taken in this case, including the current and previous two leaders of Varsity's cheerleading business, the current and former heads of Varsity's All Star cheerleading business and many subordinate employees. (*See* ECF No. 229; Kaiser Decl. ¶ 3.) Going even further up the chain from Mr. Blumenfeld, *i.e.*, into Varsity Brands' owner Bain and its former owner (and present minority investor) Charlesbank, is unwarranted for the same reasons, and all the more so.

This leaves Plaintiffs' efforts to state claims against Bain and Charlesbank based on their supposed vicarious liability for Varsity's conduct. As the Court knows, identical claims based on essentially identical allegations were dismissed in the *American Spirit* case. (Order Granting in Part and Denying in Part Defendants Bain Capital, LP, Charlesbank Partners, LLC, and Varsity Brands Holding Co., Inc.'s Motion to Dismiss, *Am. Spirit & Cheer Essentials, Inc. v. Varsity Brands, LLC*, Case No. 2:20-cvr-02782 (No. 141.)) The same result is expected in this case, although the Court has not yet ruled. But, in any event, Bain and Charlesbank have agreed to a

---

[1] Plaintiffs are inconsistent in their request. In their brief they refer to requesting twenty additional depositions and fourteen additional depositions. (Compare Pls.' Br. at 2 ("Plaintiffs seek to take an additional 20 depositions of Bain and Charlesbank") with Pls.' Br. at 17 (referring to "Plaintiffs' request for 14 depositions").

[2] This figure does not include the requested twenty depositions of Bain and Charlesbank personnel that are the subject of Plaintiffs' motion for leave.

reasonable slate of depositions on this topic: Andrew Janower and Joshua Beer of Charlesbank, who are the principle individuals relating to Charlesbank's ownership and subsequent minority investment in Varsity Brands; and Ryan Cotton of Bain, who is the principle individual relating to Bain's ownership of Varsity Brands, which did not even happen until mid-2018, long after most of the events in the case. It is expected that these individuals will likewise provide any 30(b)(6) testimony for Bain and Charlesbank. Plaintiffs provide no basis to take up to twenty depositions of Bain and Charlesbank, which would nearly *double* the *total* number of depositions taken in this case to assess Bain's and Charlesbank's involvement in Varsity. Indeed, testimony from multiple Bain and Charlesbank deponents on this topic would be duplicative and cumulative. No more is warranted.

In addition to being unnecessary and disproportional to the needs of the case, the request is infeasible in the time left for depositions of Bain and Charlesbank, which even as extended expires on May 7. (*See* ECF No. 211.)

Plaintiffs motion should be denied in its entirety.

## ARGUMENT

Discovery is not unlimited. "The party seeking discovery is obliged to demonstrate relevance." *Johnson v. CoreCivic, Inc.*, No. 18-cv-1051, 2019 WL 5089086, at *2 (W.D. Tenn. Oct. 10, 2019). And even theoretically "relevant" evidence is not discoverable if the burden of doing so would be disproportionate. The proportionality analysis considers: (1) the importance of the issues at stake in the action, (2) the amount in controversy, (3) the parties' relative access to relevant information, (4) the parties' resources, (5) the importance of the discovery in resolving the issues, and (6) whether the burden or expense of the proposed discovery outweighs its likely benefit. Fed. R. Civ. P. 26(b)(1). "Determinations as to proportionality are subject to

change with the circumstances of the case." *Raymond James & Assocs., Inc. v. 50 N. Front St. TN, LLC*, No. 18-cv-2104, 2020 WL 1527827, at *2 (W.D. Tenn. Mar. 30, 2020) (internal citations and quotations omitted). "This is in part because '[c]onsiderations of proportionality can include reviewing whether discovery production has reached a point of diminishing returns.'" *Id.* (quoting *Abbott v. Wyo. Cty. Sheriff's Off.*, 15-CV-531W, 2017 WL 2115381, at *2 (W.D.N.Y. May 16, 2017)). In addition, the Court should limit discovery if "(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome or less expensive" or "(ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action." Fed. R. Civ. P. 26(b)(2)(C).

Plaintiffs advance two arguments in an effort to support their motion for leave to take twenty depositions of Bain and Charlesbank. First, they suggest that Bain and Charlesbank can provide evidence about the substance of the case, which is to say the conduct of Varsity. This is the same argument that the Court rejected as to Mr. Blumenfeld, and the reasons for that are *a fortiori* here. (*See* ECF No. 229.) Second, Plaintiffs say Bain and Charlesbank can provide information about Bain's and Charlesbank's involvement in Varsity's management that Plaintiffs could try to use to salvage their assertion that Bain and Charlesbank are vicariously liable for the actions of Varsity.

To be sure, Plaintiffs do not identify any particular individual deponents in their motion. Rather, their arguments are all sweeping generalities.[3] Nor do they dispute that Messrs. Janower,

---

[3] As discussed below, Plaintiffs have expressed interest in deposing certain Bain and Charlesbank individuals via correspondence with Defendants. Plaintiffs have not, however, sought to justify the depositions of any of these individuals in their brief, nor did they clearly identify them for the Court.

3

Beer, and Cotton are *the* central figures in Charlesbank's and Bain's respective involvement with Varsity. The Court is left largely with the argument that lots of depositions are needed because lots of depositions are often taken in cases. But that argument rings particularly hollow in this case because many depositions *have been taken* in this case and more will be taken by the close of discovery on April 18 (a total of approximately 32 depositions). (Kaiser Decl. ¶ 2.) Even putting that rich deposition record aside, sweeping generalities and assertions that a case is "complex" are insufficient to justify deviation from the presumptive limit of ten depositions. *See Moore v. Abbott Lab'ys*, No. 2:05–cv–1065, 2009 WL 73876 at *1 (S.D. Ohio Jan. 8, 2009); *Bituminous Fire & Marine Ins. Corp. v. Dawson Land Dev. Co., Inc.*, No. 3:02-CV-793-J-21TEM, 2003 WL 22012201, at *1 (M.D. Fla. Feb. 13, 2003); *see also Goree v. United Parcel Serv., Inc.*, No. 14-cv-2505-SHL-tmp, 2016 WL 3647681, at *3 (W.D. Tenn. April 12, 2016) (noting that in "multi-party cases, there is a presumptive limit of ten depositions" even where the plaintiffs "have different claims"). Additionally, Plaintiffs should "specifically identify the proposed deponents, so that the court can ascertain whether the desired depositions would in fact be cumulative or duplicative." *LeBlanc v. Coastal Mech. Servs.*, LLC, No. 04-80611-CIV-RYSKAMP/VITUNAC, 2005 WL 8156053, at *2 (S.D. Fla. March 29, 2005) (citing *Whittingham v. Amherst Coll.*, 163 F.R.D. 170, 171 (D. Mass. 1995)).

**I. THE COURT HAS ALREADY REJECTED THE NEED FOR TESTIMONY ABOUT VARSITY'S CHEERLEADING ACTIVITIES FROM VARSITY BRANDS' CEO, WHICH IS *A FORTIORI* AS TO VARSITY BRANDS' UPSTREAM OWNERS AND INVESTORS LIKE BAIN AND CHARLESBANK**

In rejecting Plaintiffs' motion to depose Adam Blumenfeld, this Court already has considered and rejected the argument that upstream testimony about Varsity's cheerleading-related activities is warranted. In denying the motion to compel Mr. Blumenfeld's deposition, the Court observed that, like depositions of Bain and Charlesbank here, the deposition of Varsity

4

Brand's CEO was not "one of [Plaintiffs'] original ten allotted, undercutting the idea that his personal knowledge was truly necessary to resolving the issues in the case." (ECF No. 229, at 9.) The Court also noted that "Plaintiffs' claims are also limited to Varsity's monopolization of the cheerleading industry, a subset of Varsity's business handled by the Varsity Spirit subsidiary. Plaintiffs will be deposing or have deposed the past three presidents of this subdivision, who are more likely than Mr. Blumenfeld to possess specific knowledge about its strategy and approach to the 'Relevant Markets.'" (*Id.*) Plaintiffs have been permitted to take part in all of those depositions. (Kaiser Decl. ¶ 3.)

Bain and Charlesbank are, of course, even more removed from Varsity's cheerleading business than is Mr. Blumenfeld. (*See* Cotton Decl. ¶ 3; Beer Decl. ¶ 3; Janower Decl. ¶ 3.) For the same reasons that a deposition of Mr. Blumenfeld was not justified, so, too, are additional depositions of Bain and Charlesbank, particularly beyond the testimony of those that are already set to be deposed. Moreover, as the Court has already surmised (ECF No. 229, at 9), the deponents that Bain and Charlesbank have already offered are the best positioned in those organizations to provide such testimony, given their roles as Bain's and Charlesbank's lead individuals in their respective investments in Varsity Brands. (*See* Cotton Decl. ¶¶ 4-5, Beer Decl. ¶¶ 4-5; Janower Decl. ¶¶ 4-5.) They are also the individuals that Plaintiffs initially identified as deponents. (Kaiser Decl. ¶ 11, Ex. 1.) Bain and Charlesbank have agreed to these depositions, even though they will exceed Plaintiffs' limit under the Federal Rules. Plaintiffs' assertion that the Court should grant leave to take yet more depositions, much less a total of twenty of Bain and Charlesbank so that Plaintiffs can pursue questions about Varsity's cheerleading business, makes no sense.

Plaintiffs' reliance on antitrust cases where the court either ordered or the parties agreed

to scores of hundreds of depositions (Pls.' Br. at 12) is misplaced—again, the live issues with Bain and Charlesbank, such as they are, relate to Bain's and Charlesbank's alleged involvement in the management of Varsity, not any actions in the marketplace.[4]  Indeed, no such direct actions are alleged.  And, given Plaintiffs' access to more than 600,000 pages of documents produced by Varsity alone, if there was such involvement, Plaintiffs would be able to bring evidence of it to the Court, which, as discussed below, they fail to do.  (*See* Kaiser Decl. ¶ 4.)  The other cases Plaintiffs cite (Pls.' Br. at 14-15) where the Court allowed depositions beyond the ten provided for in the federal rules are likewise inapposite—Plaintiffs already have taken dozens of depositions in this case.

## II.   THE OTHER TOPICS THAT PLAINTIFFS POINT TO DO NOT WARRANT LEAVE TO TAKE TWENTY ADDITIONAL DEPOSITIONS

Plaintiffs' other arguments basically reduce to two things:  (1) Charlesbank's and Bain's acquisition of Varsity Brands in 2014 and 2018, respectively, and related consideration of those acquisitions; and (2) Charlesbank's and Bain's "involvement" in Varsity's cheerleading business.

Whatever limited relevance those two topics have, they do not warrant leave to take twenty additional depositions, particularly at this late stage in the case.  Rather, the depositions proposed are more than sufficient to the needs of the case and proportional.  As noted, these are the individuals who led Charlesbank's acquisition of Varsity Brands and its involvement with Varsity Brands during the period of Charlesbank's ownership (Mr. Janower); the individual who led Charlesbank's involvement with Varsity Brands as a minority investor during the period after Charlesbank's sale of Varsity Brands to Bain in mid-2018 (Mr. Beer), and the individual who led Bain's acquisition of Varsity Brands and subsequent involvement with Varsity Brands after that

---

[4] Plaintiffs' cases also typically involved multi-defendant price-fixing conspiracies, which is not the situation here.

point (Mr. Cotton). Notably, these are the same three individuals that Plaintiffs initially requested on February 18, which request Bain and Charlesbank immediately agreed. (*See* Kaiser Decl. ¶¶ 5, 11, Ex. 1.)

Plaintiffs' effort to support their motion by citing produced documents and testimony merely proves Bain's and Charlesbank's point. Indeed, after receiving more than 600,000 pages of discovery from Varsity alone relating to its cheerleading business and business in general, Plaintiffs point to just seven documents and one deposition excerpt that they say support their request for leave to take twenty additional depositions. (Pls.' Br. at 18.) These materials do not, however, support Plaintiffs' request. In particular, Exhibit 1[5] simply lists acquisitions that *Varsity* made while Charlesbank owned Varsity Brands. Again, Plaintiffs have had every opportunity to question numerous Varsity employees, which is to say the individuals directly involved in these acquisitions, about them, and they will have the opportunity to question Mr. Janower and Mr. Beer, although the document indicates no involvement of Charlesbank in these acquisitions, just that they occurred during the time of Charlesbank's ownership of Varsity Brands. Exhibit 2 is an email exchange about a communication that Varsity was considering releasing where an individual at Bain made some comments and suggestions. Varsity's press releases are not the subject of this litigation and a stray interaction like this does not give any basis for twenty depositions. Exhibit 3 relates to a presentation that Bain & Company, a consulting affiliate of Bain Capital Private Equity (the Defendant in this case) made to Varsity prior to Bain's acquisition of Varsity Brands. Bain Capital Private Equity, the defendant in this case, was not involved in this presentation. (Cotton Decl. ¶ 6.) Exhibit 5, which is from early 2015, simply indicates that Charlesbank, the owner of Varsity Brands at the time, would be reviewing financial

---

[5] "Exhibit" in this paragraph refers to the exhibits to the Saveri Declaration at ECF No. 228-1.

results and strategic priorities for the division. Again, Plaintiffs may question Mr. Janower and Mr. Beer about this if they so choose. Exhibit 6 relates to non-cheerleading questions asked by the CEO of Varsity Brands (*i.e.*, the person in Mr. Blumenfeld's position at the time, who for a brief period was Mr. Kalvelage). Exhibit 7 discusses Varsity's plans for the Impact Program and simply mentions Bain's ownership of Varsity Brands ("[a]s we lean further into our Bain ownership") but does not indicate any particular Bain involvement. Plaintiffs can certainly explore this document and topic with Mr. Cotton. Exhibit 8 refers to a report that Varsity was preparing for its then owner Charlesbank at the time and like the rest does not suggest any particular involvement by Charlesbank in anything that is at issue in this case. Exhibit 9 makes a passing reference to "pretty strict ROI rules of engagement now (new ownership)" in attempting to mollify a customer who wanted a deeper discount on a particular transaction. Again, Plaintiffs may inquire about "ROI rules of engagement" at the upcoming depositions if they so choose.

In terms of deposition testimony, from the approximately twenty depositions taken to date, the only testimony Plaintiffs point to (Exhibit 4) consists of a brief snippet of deposition testimony from Mr. Elza, where he said that Charlesbank had "a lot of oversight with it." (ECF No. 228-1, Saveri Decl., Ex. 4, Elza Dep. Nov. 16, 2021 at 326.) Mr. Elza provided no details of that "oversight" and even testified that Charlesbank was "less involved in the management of Varsity than Bain was." (*Id.* at 270.) As to Bain, Mr. Elza testified that he had no interaction with Bain and that any interaction he was aware of was at "board meetings." (*Id.* at 50-51.) Mr. Cotton, who Bain has agreed to produce for deposition, was on the board. (Cotton Decl. ¶ 4.) Further proving Bain's point, Mr. Elza also testified that Bain did not "g[i]ve input that filtered its way down to [him] about which companies Varsity should be looking to purchase." (ECF No. 228-1, Saveri Decl., Ex. 4, Elza Dep. Nov. 16, 2021 at 55.) In that regard, Plaintiffs' assertion

8

that they need twenty depositions of Bain and Charlesbank employees about acquisitions is undermined by the very witness whose testimony they bring to the Court's attention.

These are presumably the best documents and testimony that Plaintiffs could find to support their assertion of supposed "deep" involvement of Bain and Charlesbank in the management of Varsity Brands, which itself consists of three separate divisions, only one of which (Varsity Spirit) relates to cheerleading, in the more than 600,000 pages that have been produced to them from Varsity's files and the approximately twenty depositions taken to date. If Bain and/or Charlesbank were running Varsity in the way Plaintiffs say they were, surely it would be all over the documents that Varsity produced. The fact that it is not speaks volumes.

Plaintiffs will certainly be welcome to ask questions about any and all of these documents and any other documents at the upcoming depositions of Mr. Janower, Mr. Beer, and Mr. Cotton. But these materials do not suggest the need for more depositions of Bain and Charlesbank on top of ones to which Bain and Charlesbank have already agreed and on top of the dozens of other depositions in this case. Such a vast expansion of depositions in this case—which on the topics at issue would certainly result in entirely cumulative and duplicative testimony—would not meaningfully help resolve the issues in the case and would impose a burden and expense well beyond any likely benefit. (In that regard, even a conservative estimate of $50,000 per deposition in legal fees alone to prepare for and defend each deposition would suggest an incremental cost of at least $750,000. (Kaiser Decl. ¶ 6.)) Such an expansion would be disproportionate to the need of the case and should not be permitted. *See* Fed. R. Civ. P. 26(b)(1).

### III. PLAINTIFFS' REQUEST FOR LEAVE DOES NOT FIT WITHIN THE SCHEDULE FOR THIS CASE, EVEN AS EXTENDED

Plaintiffs' request likewise cannot be squared with the reality of the schedule in this case. As noted above, in an effort to accommodate Plaintiffs, Bain and Charlesbank—with the Court's ultimate concurrence—agreed to extend the period during which depositions of current and former employees of Bain and Charlesbank can take place to May 7 from the April 18 deadline to complete all fact discovery in the case. (ECF No. 211.) In that period there are a total of fourteen work days, three of which are already taken up by the depositions of Messrs. Janower, Beer, and Cotton. It is literally impossible to conduct this many depositions in the time available. The rest of the schedule in the case was not extended, nor is such an extension likely (*see id.* at 2) or desired.

The schedule crunch is entirely of Plaintiffs' own making. Plaintiffs concede that the Court on April 7, 2021—nearly a year ago—ordered "that discovery was to proceed immediately." (Pls.' Br. at 5.) But Plaintiffs waited *more than ten months*, until February 18, 2022, to request *any* depositions of Bain or Charlesbank employees or former employees. And even then they requested only depositions of Mr. Janower, Mr. Beer, and Mr. Cotton. (Kaiser Decl. ¶ 11, Ex. 1.) They did not suggest that more requests were coming. With the discovery schedule rapidly running out and being filled with other depositions, Plaintiffs waited another nearly two weeks, to March 2, to request four more deponents for each of Bain and Charlesbank. (*Id.* ¶ 12, Ex. 2.) Then, the day after securing Bain's and Charlesbank's agreement to seek the extension until May 7 to complete the depositions, they issued identical thirty-three topic notices under Rule 30(b)(6) to both Bain and Charlesbank. (*Id.* ¶¶ 13-15, Exs. 3-5.) Then, on March 24, after the Court granted their request to extend the period to May 7, Plaintiffs requested four more

10

depositions of Bain and Charlesbank. (*Id.* ¶ 16, Ex. 6.) They filed this motion on March 28, just three weeks before the close of discovery.

Plaintiffs try to excuse this delay and dilatory conduct by saying they did not have documents from Bain and Charlesbank, but in fact the very list of people they have noticed for deposition is a subset of the individuals Plaintiffs identified as document custodians in letters sent on August 6, 2022, more than eight months ago. (*See* Kaiser Decl. ¶¶ 17-18, Exs. 7, 8.) In addition to identifying the same individuals, Plaintiffs said essentially the same things about those individuals as they now say generally about the additional depositions they want of Bain and Charlesbank. As to the timing of the document production, Plaintiffs *agreed* that Bain and Charlesbank could substantially complete their document productions on April 1, 2022 (which, indeed, was *Plaintiffs'* proposal, which Bain and Charlesbank accepted), knowing full well that discovery in the case was set to close on April 18. (*See id.* ¶ 19, Ex. 9.)[6] And, as Plaintiffs point out, it has always been the position of Bain and Charlesbank that depositions of Mr. Janower, Mr. Beer, and Mr. Cotton would be sufficient and proportional to the needs of the case. (Pls.' Br. at 7.) This was communicated to Plaintiffs numerous times during the course of the parties' discussions regarding depositions. (Kaiser Decl. ¶ 8.) Indeed, Bain and Charlesbank insisted that any agreement about allowing additional depositions would be without prejudice to their ability to challenge any particular deponent. (*Id.* ¶ 9.)[7]

---

[6] To try to speed things up, Bain and Charlesbank made suggestions as to how the scope of productions could be narrowed, but Plaintiffs rejected all such suggestions out of hand. For example, Bain and Charlesbank proposed that they omit routine documents such as exchanges of draft acquisition-related documents and attorney-client communications relating to such drafts, the volume of which complicated production and privilege review efforts. (Kaiser Decl. ¶ 7.)

[7] *See also infra* n.8 regarding abrupt termination of employment of Plaintiffs' counsel who had been handling deposition discussions.

11

Although Plaintiffs have unfortunately resorted to *ad hominem* attacks on Bain and Charlesbank,[8] as the above demonstrates, Plaintiffs through their dilatory conduct and inattentiveness have made it impossible to conduct anything close to the number of depositions they are seeking leave to take in the remaining time, even were such large numbers of depositions warranted, which they are not. Plaintiffs had every bit of information that they now bring to the Court no later than last summer and have known Bain's and Charlesbank's position for months. As with the deposition of Mr. Blumenfeld, "the timing of plaintiffs' deposition notice and filing of the motion to compel" weighs against the requested relief. (ECF No. 229, at 10.) The Court's observation that "plaintiffs had ample opportunity to notice the deposition of the most senior executive at Varsity in a timelier fashion" (*id.*), applies with equal if not greater force to the twenty additional depositions that Plaintiffs now seek of Bain and Charlesbank. Indeed, some of the additional depositions that Plaintiffs seek are of some of the most senior individuals at Bain and Charlesbank, including Charlesbank's co-founder Kim Davis and Bain's former Chief Financial Officer Jay Corrigan, both of whom the Court previously held were not even proper document custodians. (ECF No. 174.)

## CONCLUSION

Bain and Charlesbank respectfully request that the Court deny Plaintiffs' motion for leave to take twenty additional depositions in its entirety.

---

[8] These attacks are supposedly "supported" by the declaration of Joseph Saveri, which is curious considering Mr. Saveri was not involved in a single discussion with counsel for Bain and Charlesbank regarding depositions. (Kaiser Decl. ¶ 10.) That task fell for the most part to another lawyer in Mr. Saveri's firm, whose employment abruptly terminated in the midst of those discussions. (*Id.*) This may be another reason for Plaintiffs' lack of diligence. Indeed, Plaintiffs did not inform Bain and Charlesbank of this lawyer's termination at the time; they only learned of it when their counsel inquired why that lawyer was no longer involved in the discussions, which was particularly inefficient because it was apparent that the lawyers who had taken over were unfamiliar with the prior discussions. (*Id.*)

Dated: April 5, 2022

Respectfully submitted,

s/ Matthew S. Mulqueen

George S. Cary*
Steven J. Kaiser*
Linden Bernhardt*
CLEARY GOTTLIEB STEEN &
 HAMILTON LLP
2112 Pennsylvania Avenue, NW
Washington, DC 20037
Phone: (202) 974-1500
Fax: (202) 974-1999
gcary@cgsh.com
skaiser@cgsh.com
lbernhardt@cgsh.com

Jennifer Kennedy Park*
Heather Nyong'o*
CLEARY GOTTLIEB STEEN &
 HAMILTON LLP
1841 Page Mill Road, Suite 250
Palo Alto, CA 94304
Phone: (650) 815-4100
Fax: (202) 974-1999
jkpark@cgsh.com
hnyongo@cgsh.com

* Admitted pro hac vice

Matthew S. Mulqueen (TN #28418)
Adam S. Baldridge (TN #23488)
BAKER, DONELSON, BEARMAN,
 CALDWELL & BERKOWITZ
165 Madison Avenue, Suite 2000
Memphis, TN 38103
Phone: (901) 526-2000
Fax: (901) 577-0866
mmulqueen@bakerdonelson.com
abaldridge@bakerdonelson.com

*Attorneys for Charlesbank Capital Partners,
 LLC and Bain Capital Private Equity*

13

14