UNITED STATES DISTRICT COURT<br>
WESTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| JONES, ET AL.<br><br>               Plaintiffs,<br>   v.<br><br>VARSITY BRANDS, LLC, ET AL.,<br><br>           Defendants. | **Case No. 2:20-cv-02892-SHL-tmp** |

**DECLARATION OF STEVEN J. KAISER IN SUPPORT OF CHARLESBANK AND
BAIN DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION FOR LEAVE TO TAKE
TWENTY DEPOSITIONS**

I, Steven J. Kaiser, declare as follows:

1.   I am one of Bain's and Charlesbank's counsel and have been personally involved in the matters described below.

2.   The *Jones* Plaintiffs have taken, on their own notice, approximately 20 depositions to date. The *Jones* Plaintiffs have noticed approximately 32 depositions total.  This figure does not include the requested 20 depositions of Bain and Charlesbank personnel that are the subject of Plaintiffs' motion for leave.

3.   The depositions of Bill Seely, the current leader of Varsity Spirit, as well as John Nichols and Jeff Webb, the previous two leaders of Varsity Spirit, are all either scheduled to be taken or have already been taken. The depositions of several current and former heads of Varsity's All Star cheerleading business, as well as many subordinate employees, are either scheduled to be taken or have already been taken. Plaintiffs have been permitted to take part in all of those depositions.

4.   Varsity has produced more than 600,000 pages of documents.

5.   Plaintiffs initially requested the depositions of Andrew Janower, Joshua Beer, and Ryan Cotton on February 18, 2022, which request Bain and Charlesbank immediately accepted.

6.   Using a conservative estimate of approximately $50,000 per deposition in legal fees, the addition of 15 depositions suggests an incremental cost of at least $750,000.

7.   In an effort to get documents to Plaintiffs more quickly, Bain and Charlesbank made suggestions to the Plaintiffs as to how the scope of productions could be narrowed, but Plaintiffs rejected all such suggestions. For example, Bain and Charlesbank proposed that they omit routine documents such as exchanges of draft acquisition documents and attorney-client communications related to such drafts, the volume of which complicated production and privilege review efforts. Plaintiffs refused to consider those suggestions.

8.   Bain and Charlesbank have maintained the position that the depositions of Andrew Janower, Joshua Beer, and Ryan Cotton would be sufficient and proportional to the needs of the case, which has been communicated to the Plaintiffs numerous times during the course of the parties' discussions.

9.   Bain and Charlesbank indicated that any agreement about allowing additional depositions would be without prejudice to their ability to challenge any particular deponent.

10. Joseph Saveri was not involved in discussions with counsel for Bain and Charlesbank regarding depositions. The majority of discussions about depositions was with a lawyer for Plaintiffs whose employment ended in the midst of discussions. Bain and Charlesbank were not informed of this until they inquired as to why the lawyer was no longer involved in the discussions, which was particularly inefficient because it was apparent the lawyers who had taken over were unfamiliar with the prior discussions.

11. Attached as Exhibit 1 is a true and correct copy of an email dated February 18, 2022

from Elissa A. Buchanan to me and counsel for the parties.

12. Attached as Exhibit 2 is a true and correct copy of an email dated March 2, 2022 from Elissa A. Buchanan to me and counsel for the parties.

13. Attached as Exhibit 3 is a true and correct copy of an email dated March 11, 2022 from Ruby Ponce to me and counsel for the parties. This email was sent the day after Plaintiffs secured Bain's and Charlesbank's agreement to seek an extension until May 7 to complete the depositions.

14. Attached as Exhibit 4 is the Plaintiffs' Notice of Deposition Pursuant to Fed. R. Civ. P. 30(b)(6) of Charlesbank Capital Partners. This Notice was an attachment to the email attached as Exhibit 3.

15. Attached as Exhibit 5 is the Plaintiffs' Notice of Deposition Pursuant to Fed. R. Civ. P. 30(b)(6) of Bain Capital Private Equity. This Notice was an attachment to the email attached as Exhibit 3.

16. Attached as Exhibit 6 is a true and correct copy of an email dated March 24, 2022 from Ruby Ponce to me and counsel for the parties.

17. Attached as Exhibit 7 is a true and correct copy of a letter dated August 6, 2021 from Daniel J. Nordin to me.

18. Attached as Exhibit 8 is a true and correct copy of a letter dated August 6, 2021 from Daniel J. Nordin to me.

19. Attached as Exhibit 9 is a true and correct copy of an email dated March 10, 2022 from Ronnie Spiegel to me and Matthew Mulqueen, copying Ashleigh Jensen and Joseph Saveri.

20. I declare under penalty of perjury that the foregoing is true and correct.  Executed on April 5, 2022

_____

Steven J. Kaiser

# EXHIBIT 1

| | |
|---|---|
| **From:** | Elissa A. Buchanan |
| **To:** | Cary, George S.; Kaiser, Steven J.; abaldridge@bakerdonelson.com; mmulqueen@bakerdonelson.com; Park, Jennifer Kennedy; Bernhardt, Linden; Nyong"o, Heather; pcoggins@lockelord.com; bgaffney@lockelord.com; jennifer.mccoy@lockelord.com; ggarrison@bakerdonelson.com; nberkowitz@bakerdonelson.com; aroach@bakerdonelson.com; Edward.Stanton@butlersnow.com; Haynes, Savannah |
| **Cc:** | Joseph Saveri; Ronnie Spiegel; Kevin Rayhill; Katharine Malone; Van D. Turner; Eric L. Cramer; Mark R. Suter; mkane@bm.net; Katie Van Dyck; Robert Falanga; Vicky Sims; Kobelah Bennah; Ashleigh Jensen |
| **Subject:** | Varsity Cheer-Bain and Charlesbank Deposition Scheduling |
| **Date:** | Friday, February 18, 2022 6:05:20 PM |

Counsel,

Plaintiffs propose the following dates for depositions:

Charlesbank:

- April 4 or 5 for Joshua Beer
- April 6 or 7 for Andrew Janower

Bain:
- April  11 or 12 for Ryan Cotton

Please let us know if these dates work for Defendants. We will serve notices once we have agreed upon dates.

Sincerely,

**Elissa Buchanan**
*Attorney*



601 California Street, Suite 1000
San Francisco, CA 94108
**T** 415.500.6800 x822
**F** 415.395.9940

**Disclaimer**

The information contained in this communication from the sender is confidential. It is intended solely for use by the recipient and others authorized to receive it. If you are not the recipient, you are hereby notified that any disclosure, copying, distribution or taking action in relation of the contents of this information is strictly prohibited and may be unlawful.

This email has been scanned for viruses and malware, and may have been automatically archived by **Mimecast Ltd**, an innovator in Software as a Service (SaaS) for business. Providing a **safer** and **more useful** place for your human generated data. Specializing in; Security, archiving and compliance. To find out more Click Here.

# EXHIBIT 2

| | |
|---|---|
| **From:** | Elissa A. Buchanan |
| **To:** | Kaiser, Steven J.; Cary, George S.; abaldridge@bakerdonelson.com; mmulqueen@bakerdonelson.com; Park, Jennifer Kennedy; Bernhardt, Linden; Nyong"o, Heather; pcoggins@lockelord.com; bgaffney@lockelord.com; McCoy, Jennifer; ggarrison@bakerdonelson.com; nberkowitz@bakerdonelson.com; Roach, Andrew; Edward.Stanton@butlersnow.com; Haynes, Savannah |
| **Cc:** | Joseph Saveri; Ronnie Spiegel; Kevin Rayhill; Katharine Malone; Van D. Turner; Eric L. Cramer; Mark R. Suter; mkane@bm.net; Katie Van Dyck; Robert Falanga; Vicky Sims; Kobelah Bennah; Ashleigh Jensen; Ruby Ponce |
| **Subject:** | RE: Varsity Cheer-Bain and Charlesbank Deposition Scheduling |
| **Date:** | Wednesday, March 2, 2022 6:11:54 PM |
| **Attachments:** | image001.jpg |

Counsel,

Plaintiffs are seeking depositions for the following Bain and Charlesbank witnesses:

Bain: Josh Bekenstein, Jay Corrigan, Tom O'Rourke, Kate Steinman
Charlesbank: Neil Kalvelage, Kim Davis, David Katz, Brandon White

Please provide dates between the first week of April and April 18 that these witnesses will be available for deposition. After we have agreed upon dates, Plaintiffs will serve notices for the witnesses. Please note that Plaintiffs are reviewing Defendants' productions to determine if we will seek other Bain or Charlesbank depositions.

Plaintiffs will also be seeking 30(b)(6) depositions for Bain and Charlesbank. Please provide dates between the first week of April and April 18 for the 30(b)(6) depositions. We will email the 30(b)(6) notices shortly.

Best,

**Elissa**
**T** 415.500.6800 x822

---



---

**From:** Kaiser, Steven J. <skaiser@cgsh.com>
**Sent:** Tuesday, February 22, 2022 8:00 AM
**To:** Elissa A. Buchanan <EABuchanan@saverilawfirm.com>
**Subject:** RE: Varsity Cheer-Bain and Charlesbank Deposition Scheduling

Request noted; we will check into availability.

---

**Steven J. Kaiser**
Cleary Gottlieb Steen & Hamilton LLP
2112 Pennsylvania Avenue, NW

Washington, DC 20037
T: +1 202 974 1554
skaiser@cgsh.com | clearygottlieb.com

---

**From:** Elissa A. Buchanan <EABuchanan@saverilawfirm.com>
**Sent:** Friday, February 18, 2022 6:05 PM
**To:** Cary, George S. <gcary@cgsh.com>; Kaiser, Steven J. <skaiser@cgsh.com>;
abaldridge@bakerdonelson.com; mmulqueen@bakerdonelson.com; Park, Jennifer Kennedy
<jkpark@cgsh.com>; Bernhardt, Linden <lbernhardt@cgsh.com>; Nyong'o, Heather
<hnyongo@cgsh.com>; pcoggins@lockelord.com; bgaffney@lockelord.com;
jennifer.mccoy@lockelord.com; ggarrison@bakerdonelson.com; nberkowitz@bakerdonelson.com;
aroach@bakerdonelson.com; Edward.Stanton@butlersnow.com; Haynes, Savannah
<shaynes@cgsh.com>
**Cc:** Joseph Saveri <jsaveri@saverilawfirm.com>; Ronnie Spiegel <rspiegel@saverilawfirm.com>;
Kevin Rayhill <krayhill@saverilawfirm.com>; Katharine Malone <kmalone@saverilawfirm.com>; Van
D. Turner <vturner@bruceturnerlaw.net>; Eric L. Cramer <ecramer@bm.net>; Mark R. Suter
<msuter@bm.net>; mkane@bm.net>; Katie Van Dyck <kvandyck@cuneolaw.com>; Robert Falanga
<Robert@FalangaLaw.com>; Vicky Sims <Vicky@cuneolaw.com>; Kobelah Bennah
<Kobelah@FalangaLaw.com>; Ashleigh Jensen <ajensen@saverilawfirm.com>
**Subject:** Varsity Cheer-Bain and Charlesbank Deposition Scheduling

Counsel,

Plaintiffs propose the following dates for depositions:

Charlesbank:

- April 4 or 5 for Joshua Beer
- April 6 or 7 for Andrew Janower

Bain:
- April  11 or 12 for Ryan Cotton

Please let us know if these dates work for Defendants. We will serve notices once we have agreed
upon dates.

Sincerely,

**Elissa Buchanan**
*Attorney*

---



601 California Street, Suite 1000
San Francisco, CA 94108

**T** 415.500.6800 x822
**F** 415.395.9940

## Disclaimer

The information contained in this communication from the sender is confidential. It is intended solely for use by the recipient and others authorized to receive it. If you are not the recipient, you are hereby notified that any disclosure, copying, distribution or taking action in relation of the contents of this information is strictly prohibited and may be unlawful.

This email has been scanned for viruses and malware, and may have been automatically archived by **Mimecast Ltd**, an innovator in Software as a Service (SaaS) for business. Providing a **safer** and **more useful** place for your human generated data. Specializing in; Security, archiving and compliance. To find out more Click Here.

This message is being sent from a law firm and may contain confidential or privileged information. If you are not the intended recipient, please advise the sender immediately by reply e-mail and delete this message and any attachments without retaining a copy.

Throughout this communication, "Cleary Gottlieb" and the "firm" refer to Cleary Gottlieb Steen & Hamilton LLP and its affiliated entities in certain jurisdictions, and the term "offices" includes offices of those affiliated entities. Our external privacy statement is available at: https://www.clearygottlieb.com/footer/privacy-statement

# EXHIBIT 3

| From: | Ruby Ponce |
|---|---|
| To: | Cary, George S.; Kaiser, Steven J.; Park, Jennifer Kennedy; Nyong"o, Heather; mmulqueen@bakerdonelson.com; abaldridge@bakerdonelson.com; Edward.Stanton@butlersnow.com; ggarrison@bakerdonelson.com; nberkowitz@bakerdonelson.com; Roach, Andrew |
| Cc: | Joseph Saveri; Ronnie Spiegel; Kevin Rayhill; Elissa A. Buchanan; Sofia Jordan; Gurjit Aulkh; Ashleigh Jensen; Sean Cooper; Dan Nordin; dhedlund@gustafsongluek.com; dgustafson@gustafsongluek.com; Jason Hartley; Jason Lindner; rick@paulllp.com; Van D. Turner; lwang@gustafsongluek.com |
| Subject: | Jones et al v. Bain Capital Private Equity et al., Case No. 2:20-cv-02892-SHL-cgc |
| Date: | Friday, March 11, 2022 1:50:14 PM |
| Attachments: | 2022-03-11 Varsity Corporate Representative Depo 30(b)(6) Notice of Charlesbank.pdf 2022-03-11 Varsity Corporate Representative Depo 30(b)(6) Notice of Bain.pdf |

Counsel,

Attached please find the following regarding the above-noted matter:

- NOTICE OF DEPOSITION PURSUANT TO FED. R. CIV. P. 30(B)(6) OF BAIN CAPITAL PRIVATE EQUITY
- NOTICE OF DEPOSITION PURSUANT TO FED. R. CIV. P. 30(B)(6) OF CHARLESBANK CAPITAL PARTNERS

Thank you,

**Ruby Vazquez-Ponce**
*Paralegal*

_____



601 California Street, Suite
1000
San Francisco, CA 94108
**T** 415.500.6800 x809
**F** 415.395.9940

**Disclaimer**

The information contained in this communication from the sender is confidential. It is intended solely for use by the recipient and others authorized to receive it. If you are not the recipient, you are hereby notified that any disclosure, copying, distribution or taking action in relation of the contents of this information is strictly prohibited and may be unlawful.

This email has been scanned for viruses and malware, and may have been automatically archived by **Mimecast Ltd**, an innovator in Software as a Service (SaaS) for business. Providing a **safer** and **more useful** place for your human generated data. Specializing in; Security, archiving and compliance. To find out more Click Here.

# EXHIBIT 4

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

| | |
|---|---|
| **JESSICA JONES, MICHELLE VELOTTA**, and **CHRISTINA LORENZEN** on Behalf of Themselves and All Others Similarly Situated, | Case No. 2:20-cv-02892-SHL-tmp |
| **Plaintiffs,** | **JURY TRIAL DEMANDED** |
| v. | |
| **VARSITY BRANDS, LLC; VARSITY SPIRIT, LLC; VARSITY SPIRIT FASHION & SUPPLIES, LLC; U.S. ALL STAR FEDERATION, INC.; JEFF WEBB; CHARLESBANK CAPITAL PARTNERS LLC; and BAIN CAPITAL PRIVATE EQUITY,** | |
| **Defendants.** | |

**NOTICE OF DEPOSITION PURSUANT TO FED. R. CIV. P. 30(B)(6) OF CHARLESBANK CAPITAL PARTNERS**

Plaintiffs will take the deposition of defendant Charlesbank Capital Partners LLC ("Charlesbank") under Fed. R. Civ. P. 30(b)(6) at such date, time, and place as is mutually agreed upon. The deposition will be taken by stenographic and/or videographic means before a person duly authorized to administer oaths and will be continued until completed. You are invited to attend and participate as authorized by law.

Rule 30(b)(6) requires Charlesbank to produce one or more witnesses at the agreed date, location and time who is prepared to testify about Charlesbank's knowledge of the topics set forth below. If the designated representative(s) do not have such knowledge, he, she, or they are required to acquire it through a reasonable investigation.

## I.      Definitions

1. "Agreement" means any oral or written contract, arrangement or understanding, whether formal or informal, between two or more Persons, together with all modifications and amendments thereto.

2. "All" should be construed to include the collective as well as the singular and shall mean "each," "any," and "every."

3. "All-Star Cheer" means a discipline of cheerleading in which routines composed of tumbling, stunting, pyramids, and dance are performed by teams of athletes affiliated with All-Star gyms (as opposed to schools, clubs, or government entities).

4. "Cheer Apparel" means the clothing (including uniforms), shoes, accessories, or equipment purchased for use by athletes wear at cheer or dance events, and during practices and training.

5. "Bain" means Bain Capital Private Equity, and all predecessors, successors, subsidiaries, departments, divisions, and/or affiliates, including without limitation any organization or entity which it manages or controls, together with all present and former directors, members, officers, employees, agents, representatives, or any persons acting or authorized to act on its behalf.

6. "Banking Institution" means any investment bank, venture capital or other banking firm involved in Charlesbank's Due Diligence of Varsity, acquisition of Varsity, funding or ownership of Varsity, management of Varsity, or sale of Varsity to Bain, including but not limited to Ares, Barclays, Crescent, Goldman Sachs, Jefferies, Partners Group (USA) Inc., or Price Waterhouse Coopers.

7. "Bid" means an official offer from a Competition inviting an All-Star team to attend an All-Star Championship competition.

8. "Charlesbank" means Charlesbank Capital Partners LLC, and all predecessors, successors, subsidiaries, departments, divisions, and/or affiliates, including without limitation any organization or entity which it manages or controls, together with all present and former directors, members, officers, employees, agents, representatives, or any persons acting or authorized to act on their behalf.

9. "Camp" or "Cheer Camp" means any camp at which athletes and teams practice All-Star Cheer, School Cheer, or dance skills and develop cheerleading or dance routines for School Cheer or All-Star Cheer.

10. "Championship" or "Championship Event" means any All-Star Cheer or School Cheer competition in the United States, including but not limited to Cheerleading Worlds, The Summit, or the U.S. Finals or other national championship competitions and any of the nationally recognized School Cheer championship competitions in the United States, including and not limited to: UCA National High School Cheerleading Championship; UCA National College Championship; NCA National High School Cheerleading Championship; and NCA College National Championship.

11. "Cheer Competition" means an Event at which teams perform Competitive Cheer routines and are evaluated by a panel of judges on the difficulty and execution of their performance.

12. "Communication" means without limitation, oral or written communications of any kind, such as electronic communications, e-mails, text messages, facsimiles, telephone communications, correspondence, exchange of written or recorded information, or face-to-

face meetings. The phrase "communication between" is defined to include instances where one party addresses the other party, but the other party does not necessarily respond.

13. "Defendant" means all those listed in the above-captioned litigation.

14. "Document" or "Documents" has the broadest meaning ascribed to it by Federal Rule of Civil Procedure 34(a) and encompasses all forms of tangible expression, including all ESI or data, and all written, recorded, printed, typed, transcribed, filmed, digitized, or graphic matter and all other tangible things and media upon which any handwriting, typing, printing, computer code, software, drawing, representation, electrostatic or other copy, sound or video recording, magnetic or electrical impulse, visual reproduction or communication is recorded, reproduced or represented, including papers, books, records, correspondence, reports, memoranda, electronic mail (e-mail), text, instant or social media messages, drafts, telegrams, files, telephone logs and messages, cloud storage, hard drives, solid state disks or solid-state drives, removable media, minutes or transcripts of meetings or communications.

15. "Due Diligence" means any appraisals and/or analyses undertaken to establish the assets, liabilities, and commercial potential of a firm, corporation, or entity.

16. "Employee" means, without limitation, any current or former officer, director, executive, manager, secretary, staff member, messenger, agent, or other Person who is or was employed by the responding Defendant or, where applicable, another Person.

17. "Event" means a cheerleading or dance competition, including championships, whether considered School Cheer or All-Star Cheer.

18. "Event Producer" means a person or entity that finances, organizes, or advertises a Championship, Championship Qualifier, School Event.

19. "Identify," when used in reference to an individual Employee, means to provide: the
Employee's full name, last known business and home address; date of birth; social security
number; title or position and period of service in each such position; immediate supervisor in
each position; business and home telephone numbers (including voice, cellular and facsimile
phone numbers) assigned to or used by such Employee and the period during which such
numbers were assigned to be used by that Employee; and business and home electronic mail
identifiers as well as the period during which such identifiers were assigned to and used by
that Employee.

20. "Identify" (or "Identity") when used in reference to any entity other than an individual shall
require a statement of all of the following information relating to such entity: (i) Full name or
title; (ii) Principal place of business or other activity; (iii) Place of incorporation (if
applicable); (iv) Date of formation; (v) Names of any predecessor or successor corporations
or other business entities; (vi) Nature or type of entity; and (vii) Principal business or other
activity.

21. "Person" means, without limitation, any natural person, corporation, partnership, limited
liability company, proprietorship, joint venture, trust, association, government entity, group,
or other form of legal entity.

22. "The Relevant Markets" means the markets for Cheerleading Competitions, Camps, and
Apparel for both All-Star Cheer and School Cheer.

23. "School Cheer" means a discipline of cheerleading in which routines composed of tumbling,
stunting, pyramids, dance, and elements of traditional sideline cheer such as band chants,
fight songs, and motivational cheers are performed by teams of Athletes affiliated with
Schools.

24. "Varsity" means Varsity Brands, LLC, Varsity Spirit, LLC, Varsity Spirit Fashion &
    Supplies, LLC, and all predecessors, successors, subsidiaries, departments, divisions, and/or
    affiliates, including without limitation any organization or entity which they manage or
    control, together with all present and former directors, members, officers, employees, agents,
    representatives, or any persons acting or authorized to act on their behalf.

25. "You," "Your," or "Your company" mean the responding Defendant, its predecessors,
    successors, subsidiaries, departments, divisions, and/or affiliates, including without limitation
    any organization or entity which the responding Defendant manages or controls, together
    with all present and former directors, officers, Employees, agents, representatives, or any
    persons acting or purporting to act on behalf of the responding Defendant.

## II.   Instructions

26. Unless otherwise specified, the Relevant Time Period is January 1, 2013 to present.

27. The Definitions above are provided only for purposes of discovery, in conformance with
    Rule 34(a) of the Federal Rules of Civil Procedure and are not intended to be used for any
    purpose other than discovery. Plaintiffs reserve the right to modify these Definitions or
    utilize different Definitions for any other purpose.

28. The terms defined above are to be construed broadly to the fullest extent of their meaning in
    a good faith effort to comply with the Federal Rules of Civil Procedure.

29. All words not defined in the Definitions shall be construed using their plain and ordinary
    meaning.

30. Each topic shall be construed independently, and no topic shall be viewed as limiting the
    scope of any other topic.

31. The terms defined above and in each individual topic should be construed broadly and to the fullest extent of their meaning to comply with the Federal Rules of Civil Procedure and the Federal Rules of Evidence.

32. If You object to a portion or aspect of a deposition topic, state the grounds for Your objection with specificity.

### III.     Subject Matter of Testimony ("Topics")

1. The corporate, organizational, and management structure of Your business as it relates to its ownership of and involvement with Varsity.

2. Your acquisition of Varsity.

3. Your valuation of Varsity and/or its assets for the purpose of facilitating the acquisition of Varsity and/or any of its assets.

4. Varsity's competitive strengths, as discussed within Charlesbank or presented to Charlesbank by any other Person.

5. The time periods during which Charlesbank conducted its Due Diligence of Varsity and the types of items or data assessed during such Due Diligence periods.

6. The names and roles of Charlesbank Employees who interacted with Varsity during and regarding Charlesbank's Due Diligence of the acquisition of Varsity.

7. The names and roles of Charlesbank Employees who interacted with Bain during and regarding its Due Diligence of the acquisition of Varsity.

8. Internal Charlesbank discussions regarding Charlesbank's acquisition of Varsity, including but not limited to discussions regarding The Relevant Markets; Varsity's competitors in The Relevant Markets; Varsity's market share in The Relevant Markets; Varsity's acquisitions of competitors in The Relevant Markets; Varsity' market growth in The Relevant Markets; and

Varsity's ecosystem.

9.  Discussions between Charlesbank and any other Defendant regarding Charlesbank's

acquisition of Varsity, including but not limited to discussions regarding The Relevant

Markets; Varsity's competitors in The Relevant Markets; Varsity's market share in The

Relevant Markets; Varsity's acquisitions of competitors in The Relevant Markets; Varsity'

market growth in The Relevant Markets; and Varsity's ecosystem.

10. Charlesbank's relationships with any Banking Institutions regarding Charlesbank's

acquisition or management of Varsity.

11. Research, reports, analysis, presentations, or compilations of Documents prepared by any

Banking Institutions regarding Charlesbank's acquisition of Varsity.

12. Charlesbank's involvement and roles on the corporate boards, or committees thereof, of all

Varsity-owned entities during the Relevant Time Period, including but not limited to

identification of each Charlesbank Employee who held any board seat or served on any board

committee, or who served as an officer or director of any Varsity-owned entity, or

participated in any other way on any Varsity board or committee thereof, including for each

Charlesbank Employee, their name, duration of their term, any seats or positions held, their

title at Charlesbank, their role and responsibilities on the board or committee; their voting

rights; their authority on the board or committee or as a director or officer.

13. Charlesbank's oversight of and involvement in, since acquisition, the business operations of

any Varsity-owned entity, including management, decision-making, administration,

marketing, public relations, sales, finances, accounting; competitions and championships;

and the Bid system to attend Championships.

14. Charlesbank's knowledge of or decision-making authority related to Varsity TV.

NOTICE OF DEPOSITION PURSUANT TO FED. R. CIV. P. 30(B)(6) OF CHARLESBANK CAPITAL
PARTNERS

15. Charlesbank's knowledge of or decision-making authority related to Varsity's acquisitions of competitors in the Relevant Markets.

16. Charlesbank's funding of any of Varsity's acquisitions in The Relevant Markets.

17. Charlesbank's knowledge of or decision-making authority related to Stay-to-Play or other hotel programs affiliated with Varsity.

18. Charlesbank's knowledge of or decision-making authority related to any rebate or discount programs offered by Varsity to All-Star Cheer or School Cheer teams.

19. The terms, provisions, and conditions of any management agreements with any Varsity-owned entities.

20. The relationship, functions, duties, responsibilities, benefits, rights, if any, of Charlesbank as an owner of Varsity.

21. Charlesbank's relationship with and interactions with Defendants other than Varsity.

22. Communications or agreement between You and any other Defendant regarding any attempt at monopolizing, owning, overtaking, or otherwise controlling the Relevant Markets; limiting entrance to the Relevant Markets; creating barriers to entry into the Relevant Markets and/or raising, setting, or fixing prices in the Relevant Markets including

    a. The individual and business units involved in the communication or agreement;

    b. The reasons for the communication or agreement; and

    c. Your actions following the communication or agreement and the extent to which Your actions in the market for Cheer were related to the communications or agreements.

23. Charlesbank's relationship with the United States All Star Federation ("USASF").

24. Charlesbank's involvement in the creation, implementation, or any changes to any USASF

rules or policies, either directly or indirectly as owner of Varsity.

25. The terms, provisions, conditions, and facts and circumstances of all financial arrangements and/or transactions by and between Charlesbank and any of the other Defendants.

26. Charlesbank's relationship, benefits, or rights, if any, related to each of the following either directly or indirectly through its ownership of Varsity:

    a. International Cheer Union (ICU);

    b. International All-Star Federation (IASF);

    c. American Association of Cheerleading Coaches and Administrators (AACCA);

    d. National Federation of High School Associations (NFHS);

    e. USA Federation for Sport Cheering (USA Cheer);

    f. National Cheerleading Association (NCA);

    g. Universal Cheer Association (UCA); and

    h. National All-Star Cheerleading Coaches Congress ("NACCC").

27. The terms, provisions, conditions, and facts and circumstances of any Charlesbank Employee's ability to participate in or participation in the Phantom Unit Holders Plan.

28. The terms, provisions, conditions, and facts and circumstances of any other non-Defendant Person's ability to participate in or participation in the Phantom Unit Holders Plan.

29. Any disputes, inquiries, or investigations relating to The Relevant Markets by the Federal Trade Commission, U.S. Securities & Exchange Commission, United States Department of Justice, or states' attorneys general, or other government agencies or regulations initiated at any time during the Relevant Time Period, including:

    a. The governmental entity;

    b. The scope of the investigation; and

     c.   The scope of the documents you produced in response to the investigation.

30. Your efforts to search for, identify, collect, produce, and preserve documents in this litigation or any other investigation or litigation involving Varsity's participation in The Relevant Markets, including the implementation of any litigation hold, including the mechanisms, systems software or computer programs, used by Charlesbank to create, store, back-up, and recover Documents relevant or potentially relevant to this litigation.

31. The location, custody and control (including any Structured Databases, ESI, information systems, databases and Communications systems) of any Documents maintained by Charlesbank or any of its departments, divisions, parents, subsidiaries, joint ventures, affiliates, units or other subdivisions related to Varsity.

32. Any payments, benefits, or things of value provided by Charlesbank to, or received by Charlesbank from, any other Defendants, including: the individuals or business units involved in the payment, benefit, or thing of value; the reasons for the payment, benefit or thing of value; and the amount and date of the payment, benefit or thing of value.

33. All facts and circumstances supporting or refuting Charlesbank's affirmative defenses.

Dated: March 11, 2022

/s/ Joseph R. Saveri

Joseph R. Saveri*
Steven N. Williams*
Ronnie Seidel Spiegel*
Kevin E. Rayhill*
Katharine Malone*
Elissa A. Buchanan*
Anna-Patrice Harris*
**JOSEPH SAVERI LAW FIRM, LLP**
601 California Street, Suite 1000
San Francisco, CA 94108
Tel.: (415) 500-6800
Fax: (415) 395-9940
jsaveri@saverilawfirm.com
swilliams@saverilawfirm.com
rspiegel@saverilawfirm.com
krayhill@saverilawfirm.com
kmalone@saverilawfirm.com
eabuchanan@saverilawfirm.com
aharris@saverilawfirm.com

Van Turner (TN Bar No. 22603)
**BRUCE TURNER, PLLC**
2650 Thousand Oaks Blvd, Suite 2325
Memphis, TN 38118
Tel.: (901) 290-6610
Fax: (901) 290-6611
vturner@bruceturnerlaw.net

Daniel E. Gustafson*
Daniel C. Hedlund*
Daniel J. Nordin*
**GUSTAFSON GLUEK PLLC**
Canadian Pacific Plaza
120 South Sixth Street, Suite 2600
Minneapolis, MN 55402
Tel.: (612) 333-8844
Fax: (612) 339-6622
dgustafson@gustafsongluek.com
dhedlund@gustafsongluek.com
dnordin@gustafsongluek.com
Richard M. Paul, III*
Sean R. Cooper*
Ashlea Schwarz*
PAUL LLP

601 Walnut Street, Suite 300
Kansas City, MO 64106
Tel.: (816) 984-8100
rick@paulllp.com
sean@paulllp.com
ashlea@paulllp.com

Jason S. Hartley*
**HARTLEY LLP**
101 West Broadway, Suite 820
San Diego, CA 92101
Telephone: (619) 400-5822
hartley@hartleyllp.com

*Attorneys for Jessica Jones, Michelle Velotta, and
Christina Lorenzen*

*\* Admitted pro hac vice*

NOTICE OF DEPOSITION PURSUANT TO FED. R. CIV. P. 30(B)(6) OF CHARLESBANK CAPITAL
PARTNERS

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 11, 2022, I served a copy of the foregoing document via email on the counsel listed below.

/s/ Ruby Vazquez-Ponce
Ruby Vazquez-Ponce

George S. Cary
Steven J. Kaiser
Jennifer K. Park
CLEARY GOTTLIEB STEEN &
HAMILTON LLP
2112 Pennsylvania Avenue, NW
Washington, DC 20037
gcary@cgsh.com
skaiser@cgsh.com
jkpark@cgsh.com

Heather Nyong'o
CLEARY GOTTLIEB STEEN &
HAMILTON LLP
1841 Page Mill Road Palo Alto, CA 94304
hnyongo@cgsh.com

*Attorneys for Charlesbank Capital Partners,
LLC; Varsity Brands, LLC; Bain Capital
Private Equity; Varsity Spirit Fashions &
Supplies; BNS Sports, LLC; Varsity Spirit
LLC; Stansbury, LLC; Herff Jones, LLC;
Varsity Brands Holding Co., Inc.; Varsity
Intropia Tours, LLC*

Paul Coggins
Brendan Gaffney
Jennifer M McCoy
LOCKE LORD LLP
2200 Ross Avenue, Suite 2800
Dallas, TX 75201
pcoggins@lockelord.com
bgaffney@lockelord.com
jennifer.mccoy@lockelord.com
Edward L. Stanton III
BUTLER SNOW LLP

Matthew S. Mulqueen
Adam S. Baldridge
BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ
165 Madison Avenue, Suite 2000
Memphis, TN 38103
Phone: (901) 526-2000
Fax: (901) 577-0866
mmulqueen@bakerdonelson.com
abaldridge@bakerdonelson.com

*Attorneys for Charlesbank Capital Partners,
LLC; Varsity Brands, LLC; Bain Capital
Private Equity; Varsity Spirit Fashions &
Supplies; BNS Sports, LLC; Varsity Spirit
LLC; Stansbury, LLC; Herff Jones, LLC;
Varsity Brands Holding Co., Inc.; Varsity
Intropia Tours, LLC*

Grady Garrison
Nicole D. Berkowitz
James Andrew Roach
BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ
165 Madison Avenue, Suite 2000
Memphis, TN 38103
Phone: (901) 526-2000
Fax: (901) 577-0866
ggarrison@bakerdonelson.com
nberkowitz@bakerdonelson.com
aroach@bakerdonelson.com

*Attorneys for U.S. All Star Federation, Inc.;
USA Federation for Sport Cheering*

6075 Poplar Avenue, Suite 500
Memphis, Tennessee 38119
Edward.Stanton@butlersnow.com

*Attorneys for Jeff Webb*

# EXHIBIT 5

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

| | |
|---|---|
| **JESSICA JONES, MICHELLE VELOTTA**, and **CHRISTINA LORENZEN** on Behalf of Themselves and All Others Similarly Situated, | Case No. 2:20-cv-02892-SHL-tmp |
| **Plaintiffs,** | |
| v. | **JURY TRIAL DEMANDED** |
| **VARSITY BRANDS, LLC; VARSITY SPIRIT, LLC; VARSITY SPIRIT FASHION & SUPPLIES, LLC; U.S. ALL STAR FEDERATION, INC.; JEFF WEBB; CHARLESBANK CAPITAL PARTNERS LLC; and BAIN CAPITAL PRIVATE EQUITY,** | |
| **Defendants.** | |

## NOTICE OF DEPOSITION PURSUANT TO FED. R. CIV. P. 30(B)(6) OF BAIN CAPITAL PRIVATE EQUITY

Plaintiffs will take the deposition of defendant Bain Capital Private Equity ("Bain") under Fed. R. Civ. P. 30(b)(6) at such date, time, and place as is mutually agreed upon. The deposition will be taken by stenographic and/or videographic means before a person duly authorized to administer oaths and will be continued until completed. You are invited to attend and participate as authorized by law.

Rule 30(b)(6) requires Bain to produce one or more witnesses at the agreed date, location and time who is prepared to testify about Bain's knowledge of the topics set forth below. If the designated representative(s) do not have such knowledge, he, she, or they are required to acquire it through a reasonable investigation.

## I.      Definitions

1.  "Agreement" means any oral or written contract, arrangement or understanding, whether

    formal or informal, between two or more Persons, together with all modifications and

    amendments thereto.

2.  "All" should be construed to include the collective as well as the singular and shall mean

    "each," "any," and "every."

3.  "All-Star Cheer" means a discipline of cheerleading in which routines composed of

    tumbling, stunting, pyramids, and dance are performed by teams of athletes affiliated with

    All-Star gyms (as opposed to schools, clubs, or government entities).

4.  "Cheer Apparel" means the clothing (including uniforms), shoes, accessories, or equipment

    purchased for use by athletes wear at cheer or dance events, and during practices and

    training.

5.  "Bain" means Bain Capital Private Equity, and all predecessors, successors, subsidiaries,

    departments, divisions, and/or affiliates, including without limitation any organization or

    entity which it manages or controls, together with all present and former directors, members,

    officers, employees, agents, representatives, or any persons acting or authorized to act on its

    behalf.

6.  "Banking Institution" means any, or investment bank, venture capital or other banking firm

    involved in Bain's Due Diligence of Varsity, acquisition of Varsity, funding or ownership of

    Varsity, or management of Varsity, including but not limited to Ares, Barclays, Crescent,

    Goldman Sachs, Jefferies, Partners Group (USA) Inc., or Price Waterhouse Coopers.

7.  "Bid" means an official offer from a Competition inviting an All-Star team to attend an All-

    Star Championship competition.

8. "Charlesbank" means Charlesbank Capital Partners LLC, and all predecessors, successors, subsidiaries, departments, divisions, and/or affiliates, including without limitation any organization or entity which it manages or controls, together with all present and former directors, members, officers, employees, agents, representatives, or any persons acting or authorized to act on their behalf.

9. "Camp" means any camp at which athletes and teams practice All Star Cheer, School Cheer, or dance skills and develop cheerleading or dance routines for School Cheer or All-Star Cheer.

10. "Championship" or "Championship Event" means any All-Star Cheer or School Cheer competition in the United States, including but not limited to Cheerleading Worlds, The Summit, or the U.S. Finals or other national championship competitions and any of the nationally recognized School Cheer championship competitions in the United States, including and not limited to: UCA National High School Cheerleading Championship; UCA National College Championship; NCA National High School Cheerleading Championship; and NCA College National Championship.

11. "Cheerleading Competition" means an Event at which teams perform Competitive Cheer routines and are evaluated by a panel of judges on the difficulty and execution of their performance.

12. "Communication" means without limitation, oral or written communications of any kind, such as electronic communications, e-mails, text messages, facsimiles, telephone communications, correspondence, exchange of written or recorded information, or face-to-face meetings. The phrase "communication between" is defined to include instances where one party addresses the other party, but the other party does not necessarily respond.

13. "Defendant" means all those listed in the above-captioned litigation.

14. "Document" or "Documents" has the broadest meaning ascribed to it by Federal Rule of Civil Procedure 34(a) and encompasses all forms of tangible expression, including all ESI or data, and all written, recorded, printed, typed, transcribed, filmed, digitized, or graphic matter and all other tangible things and media upon which any handwriting, typing, printing, computer code, software, drawing, representation, electrostatic or other copy, sound or video recording, magnetic or electrical impulse, visual reproduction or communication is recorded, reproduced or represented, including papers, books, records, correspondence, reports, memoranda, electronic mail (e-mail), text, instant or social media messages, drafts, telegrams, files, telephone logs and messages, cloud storage, hard drives, solid state disks or solid-state drives, removable media, minutes or transcripts of meetings or communications.

15. "Due Diligence" means any appraisals and/or analyses undertaken to establish the assets, liabilities, and commercial potential of a firm, corporation, or entity.

16. "Employee" means, without limitation, any current or former officer, director, executive, manager, secretary, staff member, messenger, agent, or other Person who is or was employed by the responding Defendant or, where applicable, another Person.

17. "Event" means a cheerleading or dance competition, including championships, whether considered School cheerleading or dance or not.

18. "Event Producer" means a person or entity that finances, organizes, or advertises a Championship, Championship Qualifier, or School Event.

19. "Identify," when used in reference to an individual Employee, means to provide: the Employee's full name, last known business and home address; date of birth; social security number; title or position and period of service in each such position; immediate supervisor in

each position; business and home telephone numbers (including voice, cellular and facsimile

phone numbers) assigned to or used by such Employee and the period during which such

numbers were assigned to be used by that Employee; and business and home electronic mail

identifiers as well as the period during which such identifiers were assigned to and used by

that Employee.

20. "Identify" (or "Identity") when used in reference to any entity other than an individual shall

require a statement of all of the following information relating to such entity: (i) Full name or

title; (ii) Principal place of business or other activity; (iii) Place of incorporation (if

applicable); (iv) Date of formation; (v) Names of any predecessor or successor corporations

or other business entities; (vi) Nature or type of entity; and (vii) Principal business or other

activity.

21. "Person" means, without limitation, any natural person, corporation, partnership, limited

liability company, proprietorship, joint venture, trust, association, government entity, group,

or other form of legal entity.

22. "The Relevant Markets" means the markets for Cheerleading Competitions, Camps, and

Apparel for both All-Star Cheer and School Cheer.

23. "School Cheer" means a discipline of cheerleading in which routines composed of tumbling,

stunting, pyramids, dance, and elements of traditional sideline cheer such as band chants,

fight songs, and motivational cheers are performed by teams of Athletes affiliated with

Schools.

24. "Varsity" means Varsity Brands, LLC, Varsity Spirit, LLC, Varsity Spirit Fashion &

Supplies, LLC, and all predecessors, successors, subsidiaries, departments, divisions, and/or

affiliates, including without limitation any organization or entity which they manage or

control, together with all present and former directors, members, officers, employees, agents, representatives, or any persons acting or authorized to act on their behalf.

25. "You," "Your," or "Your company" mean the responding Defendant, its predecessors, successors, subsidiaries, departments, divisions, and/or affiliates, including without limitation any organization or entity which the responding Defendant manages or controls, together with all present and former directors, officers, Employees, agents, representatives, or any persons acting or purporting to act on behalf of the responding Defendant.

## II.     Instructions

26. Unless otherwise specified, the Relevant Time Period is January 1, 2014 to present.

27. The Definitions above are provided only for purposes of discovery, in conformance with Rule 34(a) of the Federal Rules of Civil Procedure and are not intended to be used for any purpose other than discovery. Plaintiffs reserve the right to modify these Definitions or utilize different Definitions for any other purpose.

28. The terms defined above are to be construed broadly to the fullest extent of their meaning in a good faith effort to comply with the Federal Rules of Civil Procedure.

29. All words not defined in the Definitions shall be construed using their plain and ordinary meaning.

30. Each topic shall be construed independently, and no topic shall be viewed as limiting the scope of any other topic.

31. The terms defined above and in each individual topic should be construed broadly and to the fullest extent of their meaning to comply with the Federal Rules of Civil Procedure and the Federal Rules of Evidence.

32. If You object to a portion or aspect of a deposition topic, state the grounds for Your objection with specificity.

### III.    Subject Matter of Testimony ("Topics")

1. The corporate, organizational, and management structure of Your business as it relates to its ownership of and involvement with Varsity.

2. Your acquisition of Varsity.

3. Your valuation of Varsity and/or its assets for the purpose of facilitating the acquisition of Varsity and/or any of its assets or competitors.

4. Varsity's competitive strengths, as discussed within Bain or presented to Bain by any other Person.

5. The time periods during which Bain conducted its Due Diligence of Varsity and the types of items or data assessed during such Due Diligence periods.

6. The names and roles of Bain Employees who interacted with Varsity during and regarding Bain's Due Diligence of the acquisition of Varsity.

7. The names, roles, and responsibilities of Bain Employees who interacted with Charlesbank during and regarding its Due Diligence of the acquisition of Varsity.

8. Internal Bain discussions regarding Bain's acquisition of Varsity, including but not limited to discussions regarding The Relevant Markets; Varsity's competitors in The Relevant Markets; Varsity's market share in The Relevant Markets; Varsity's acquisitions of competitors in The Relevant Markets; Varsity' market growth in The Relevant Markets; and Varsity's ecosystem.

9. Discussions between Bain and any other Defendant regarding Bain's acquisition of Varsity, including but not limited to discussions regarding The Relevant Markets; Varsity's

competitors in The Relevant Markets; Varsity's market share in The Relevant Markets; Varsity's acquisitions of competitors in The Relevant Markets; Varsity' market growth in The Relevant Markets; and Varsity's ecosystem.

10. Bain's relationships and communications with any Banking Institutions regarding Bain's acquisition or management of Varsity.

11. Research, reports, analysis, presentations, or compilations of Documents prepared by any Banking Institutions regarding Bain's acquisition of Varsity.

12. Bain's involvement and roles on the corporate boards, or committees thereof, of all Varsity-owned entities during the Relevant Time Period, including but not limited to identification of each Bain Employee who held any board seat or served on any board committee, or who served as an officer or director of any Varsity-owned entity, or participated in any other way on any Varsity board or committee thereof, including for each Bain Employee, their name, duration of their term, any seats or positions held, their title at Bain, their role and responsibilities on the board or committee; their voting rights; their authority on the board or committee or as a director or officer.

13. Bain's oversight of and involvement in, since acquisition, the business operations of any Varsity-owned entity, including management, decision-making, administration, marketing, public relations, sales, finances, accounting; competitions and championships; and the Bid system to attend Championships.

14. Bain's knowledge of and decision-making authority related to Varsity TV.

15. Bain's knowledge of and decision-making authority related to Varsity's acquisitions of competitors in the Relevant Markets.

16. Bain's funding of any of Varsity's acquisitions in The Relevant Markets.

17. Bain's knowledge of and decision-making authority related to Stay-to-Play or other hotel programs affiliated with Varsity.

18. Bain's knowledge of and decision-making authority related to any rebate or discount programs offered by Varsity to All-Star Cheer or School Cheer teams.

19. The terms, provisions, and conditions of any management agreements with any Varsity-owned entities.

20. The relationship, functions, duties, responsibilities, benefits, rights, if any, of Bain as an owner of Varsity.

21. Bain's relationship with and interactions with Defendants other than Varsity.

22. Communications or agreement between You and any other Defendant regarding any attempt at monopolizing, owning, overtaking, or otherwise controlling the Relevant Markets; limiting entrance to the Relevant Markets; creating barriers to entry into the Relevant Markets; and/or raising, setting, or fixing prices in the Relevant Markets including:

   a.  The individual and business units involved in the communication or agreement;

   b.  The reasons for the communication or agreement; and

   c.  Your actions following the communication or agreement and the extent to which Your actions in the market for Cheer were related to the communications or agreements.

23. Bain's relationship with the United States All Star Federation ("USASF").

24. Bain's involvement in the creation, implementation, or any changes to any USASF rules or policies, either directly or indirectly as owner of Varsity.

25. The terms, provisions, conditions, and facts and circumstances of all financial arrangements and/or transactions by and between Bain and any of the other Defendants.

26. Bain's relationship, benefits, or rights, if any, related to each of the following either directly or indirectly through its ownership of Varsity:

    a.   International Cheer Union (ICU);

    b.   International All-Star Federation (IASF);

    c.   American Association of Cheerleading Coaches and Administrators (AACCA);

    d.   National Federation of High School Associations (NFHS);

    e.   USA Federation for Sport Cheering (USA Cheer);

    f.   National Cheerleading Association (NCA);

    g.   Universal Cheer Association (UCA); and

    h.   National All-Star Cheerleading Coaches Congress ("NACCC").

27. The terms, provisions, conditions, and facts and circumstances of any Bain Employee's ability to participate in or participation in the Phantom Unit Holders Plan.

28. The terms, provisions, conditions, and facts and circumstances of any other non-Defendant Person's ability to participate in or participation in the Phantom Unit Holders Plan.

29. Any disputes, inquiries, or investigations relating to The Relevant Markets by the Federal Trade Commission, U.S. Securities & Exchange Commission, United States Department of Justice, or states' attorneys general, or other government agencies or regulations initiated at any time during the Relevant Time Period, including:

    a.   The governmental entity;

    b.   The scope of the investigation; and

    c.   The scope of the documents You produced in response to the investigation.

30. Your efforts to search for, identify, collect, produce, and preserve documents in this litigation or any other investigation or litigation involving Varsity's participation in The Relevant

NOTICE OF DEPOSITION PURSUANT TO FED. R. CIV. P. 30(B)(6) OF BAIN CAPITAL PRIVATE EQUITY

Markets, including the implementation of any litigation hold, including the mechanisms, systems software or computer programs, used by Bain to create, store, back-up, and recover Documents relevant or potentially relevant to this litigation.

31. The location, custody and control (including any Structured Databases, ESI, information systems, databases and Communications systems) of any Documents maintained by Bain or any of its departments, divisions, parents, subsidiaries, joint ventures, affiliates, units or other subdivisions related to Varsity.

32. Any payments, benefits, or things of value provided by Bain to, or received by Bain from, any other Defendants, including: the individuals or business units involved in the payment, benefit, or thing of value; the reasons for the payment, benefit or thing of value; and the amount and date of the payment, benefit or thing of value.

33. All facts and circumstances supporting or refuting Bain's affirmative defenses.

Dated: March 11, 2022

/s/ Joseph R. Saveri

Joseph R. Saveri*
Steven N. Williams*
Ronnie Seidel Spiegel*
Kevin E. Rayhill*
Katharine Malone*
Elissa A. Buchanan*
Anna-Patrice Harris*
**JOSEPH SAVERI LAW FIRM, LLP**
601 California Street, Suite 1000
San Francisco, CA 94108
Tel.: (415) 500-6800
Fax: (415) 395-9940
jsaveri@saverilawfirm.com
swilliams@saverilawfirm.com
rspiegel@saverilawfirm.com
krayhill@saverilawfirm.com
kmalone@saverilawfirm.com
eabuchanan@saverilawfirm.com
aharris@saverilawfirm.com

Van Turner (TN Bar No. 22603)
**BRUCE TURNER, PLLC**
2650 Thousand Oaks Blvd, Suite 2325
Memphis, TN 38118
Tel.: (901) 290-6610
Fax: (901) 290-6611
vturner@bruceturnerlaw.net

Daniel E. Gustafson*
Daniel C. Hedlund*
Daniel J. Nordin*
**GUSTAFSON GLUEK PLLC**
Canadian Pacific Plaza
120 South Sixth Street, Suite 2600
Minneapolis, MN 55402
Tel.: (612) 333-8844
Fax: (612) 339-6622
dgustafson@gustafsongluek.com
dhedlund@gustafsongluek.com
dnordin@gustafsongluek.com
Richard M. Paul, III*
Sean R. Cooper*
Ashlea Schwarz*
PAUL LLP

601 Walnut Street, Suite 300
Kansas City, MO 64106
Tel.: (816) 984-8100
rick@paulllp.com
sean@paulllp.com
ashlea@paulllp.com

Jason S. Hartley*
**HARTLEY LLP**
101 West Broadway, Suite 820
San Diego, CA 92101
Telephone: (619) 400-5822
hartley@hartleyllp.com

*Attorneys for Jessica Jones, Michelle Velotta, and
Christina Lorenzen*

*\* Admitted pro hac vice*

## **CERTIFICATE OF SERVICE**

I hereby certify that on March 11, 2022, I served a copy of the foregoing document via email on the counsel listed below.

/s/ Ruby Vazquez-Ponce
Ruby Vazquez-Ponce

George S. Cary
Steven J. Kaiser
Jennifer K. Park
CLEARY GOTTLIEB STEEN &
HAMILTON LLP
2112 Pennsylvania Avenue, NW
Washington, DC 20037
gcary@cgsh.com
skaiser@cgsh.com
jkpark@cgsh.com

Heather Nyong'o
CLEARY GOTTLIEB STEEN &
HAMILTON LLP
1841 Page Mill Road Palo Alto, CA 94304
hnyongo@cgsh.com

*Attorneys for Charlesbank Capital Partners,
LLC; Varsity Brands, LLC; Bain Capital
Private Equity; Varsity Spirit Fashions &
Supplies; BNS Sports, LLC; Varsity Spirit
LLC; Stansbury, LLC; Herff Jones, LLC;
Varsity Brands Holding Co., Inc.; Varsity
Intropia Tours, LLC*

Paul Coggins
Brendan Gaffney
Jennifer M McCoy
LOCKE LORD LLP
2200 Ross Avenue, Suite 2800
Dallas, TX 75201
pcoggins@lockelord.com
bgaffney@lockelord.com
jennifer.mccoy@lockelord.com
Edward L. Stanton III
BUTLER SNOW LLP

Matthew S. Mulqueen
Adam S. Baldridge
BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ
165 Madison Avenue, Suite 2000
Memphis, TN 38103
Phone: (901) 526-2000
Fax: (901) 577-0866
mmulqueen@bakerdonelson.com
abaldridge@bakerdonelson.com

*Attorneys for Charlesbank Capital Partners,
LLC; Varsity Brands, LLC; Bain Capital
Private Equity; Varsity Spirit Fashions &
Supplies; BNS Sports, LLC; Varsity Spirit
LLC; Stansbury, LLC; Herff Jones, LLC;
Varsity Brands Holding Co., Inc.; Varsity
Intropia Tours, LLC*

Grady Garrison
Nicole D. Berkowitz
James Andrew Roach
BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ
165 Madison Avenue, Suite 2000
Memphis, TN 38103
Phone: (901) 526-2000
Fax: (901) 577-0866
ggarrison@bakerdonelson.com
nberkowitz@bakerdonelson.com
aroach@bakerdonelson.com

*Attorneys for U.S. All Star Federation, Inc.;
USA Federation for Sport Cheering*

6075 Poplar Avenue, Suite 500
Memphis, Tennessee 38119
Edward.Stanton@butlersnow.com

*Attorneys for Jeff Webb*

# EXHIBIT 6

| From: | Ruby Ponce |
|---|---|
| To: | Cary, George S.; Kaiser, Steven J.; Park, Jennifer Kennedy; Nyong"o, Heather; mmulqueen@bakerdonelson.com; abaldridge@bakerdonelson.com; Edward.Stanton@butlersnow.com; ggarrison@bakerdonelson.com; nberkowitz@bakerdonelson.com; Roach, Andrew; pcoggins@lockelord.com; bgaffney@lockelord.com; McCoy, Jennifer |
| Cc: | Joseph Saveri; Ronnie Spiegel; Kevin Rayhill; Elissa A. Buchanan; Ashleigh Jensen; Gurjit Aulkh; vturner@bruceturnerlaw.net; dgustafson@gustafsongluek.com; dhedlund@gustafsongluek.com; Dan Nordin; rick@paulllp.com; Sean Cooper; Ashlea Schwarz; Jason Hartley; hlmontague@bm.net; Eric L. Cramer; Michael Kane; Mark R. Suter; sleo@bm.net; Jon Cuneo; kvandyck@cuneolaw.com; Romanenko, Vicky; kgarvey@dicellolevitt.com; gasciolla@dicellolevitt.com; vbosco@dicellolevitt.com; gerards@bsjfirm.com; beng@bsjfirm.com; belga@justicecatalyst.org; Roberta Liebenberg; Jeffrey Istvan; mrussell@finekaplan.com; nbicks@bpjlaw.com; aharwell@nealharwell.com; Cbarrett@nealharwell.com; tharwell@nealharwell.com; Robert@FalangaLaw.com; Kobelah Bennah |
| Subject: | RE: Fusion Elite All Stars et al v. Varsity Brands et al; American Spirit, et al. v. Varsity Brands, LLC et al.; Jones et al. v. Varsity Brands, LLC et al. |
| Date: | Thursday, March 24, 2022 4:58:51 PM |
| Attachments: | 2022-03-24 Deposition Notices.zip |

Counsel,

Attached please a zip folder containing a Notice of Deposition for the following regarding the above-noted matters:

- Landon Craft
- Spencer Dahl
- Jesse Ge
- Ethan Portnoy
- Saron Tesfalul

Thank you,

**Ruby Vazquez-Ponce**
*Paralegal*



601 California Street, Suite 1000
San Francisco, CA 94108
**T** 415.500.6800 x809
**F** 415.395.9940

## Disclaimer

The information contained in this communication from the sender is confidential. It is intended solely for use by the recipient and others authorized to receive it. If you are not the recipient, you are hereby notified that any disclosure, copying, distribution or taking action in relation of the contents of this information is strictly prohibited and may be unlawful.

This email has been scanned for viruses and malware, and may have been automatically archived by **Mimecast Ltd**, an innovator in Software as a Service (SaaS) for business. Providing a **safer** and **more**

**useful** place for your human generated data. Specializing in; Security, archiving and compliance. To find out more [Click Here](Click Here).

# EXHIBIT 7



**MINNESOTA OFFICE**
CANADIAN PACIFIC PLAZA
120 S. 6TH ST., STE 2600
MINNEAPOLIS, MN 55402

**CALIFORNIA OFFICE**
600 B STREET
17TH FLOOR
SAN DIEGO, CA 92101

**DANIEL J. NORDIN**
dnordin@gustafsongluek.com
TEL (612) 333-8844 • FAX (612) 339-6622
MINNESOTA OFFICE

August 6, 2021

**VIA EMAIL**
Steven J. Kaiser
Stephen J. Houck
Cleary Gotlieb Steen & Hamilton LLP
2112 Pennsylvania Avenue, NW
Washington, DC 20037
skaiser@cgsh.com
shouck@cgsh.com

      **Re:**  *Jones v. Varsity Brands, LLC*, No. 2:23-cv-02892
           Charlesbank's Responses to Plaintiffs' Requests for Production of
           Documents

Dear Mr. Kaiser:

      I write in response to your July 23, 2021, letter regarding the objections and
responses of Charlesbank Capital Partners, LLC ("Charlesbank") to Plaintiffs'
Request for Production of Documents ("Requests"). I disagree that my July 22
letter "make[s] extreme demands" and does not provide finality. For the sake of
clarity, where I indicated in my July 22 letter that Plaintiffs reserve their rights
with respect to a particular issue, I generally meant with respect to filing a motion
to compel by the applicable deadline.

      We do not yet appear have agreement regarding the relevant time period,
audio records, custodians, search terms, and the searching of non-custodial
electronic and hard copy sources for responsive documents.

Page 2
August 6, 2021

### Non-Privilege Redactions

In the documents Charlesbank produced in the Related Actions, it seems Charlesbank made liberal use of redactions for what appears to be non-privileged information. Plaintiffs are not currently requesting that Charlesbank re-produce any documents it already produced in the Related Actions without such redactions. However, Plaintiffs reserve the right to request non-redacted re-production of specific documents that were not redacted for privilege.

If Charlesbank makes similar heavy use of redactions for non-privileged information in documents produced pursuant to Plaintiffs' Requests, Plaintiffs will pursue full production of such documents. It would therefore be less burdensome for Charlesbank to not make redactions for non-privileged information in its initial production.

### Charlesbank ESI

Your letter reiterates Charlesbank's position that is only willing to agree to Andrew Janower and Joshua Beer as custodians. As explained in my previous letter, Plaintiffs have a good basis for all seven of their requested custodians. In addition to the reasons previously given, Plaintiffs have learned that Joshua Beer, Kim Davis, Andrew Janower, and Brandon White were involved in voting on relevant acquisitions. *See* VAR00265391; VAR00272550; FEAS-Ares-00001297; FEAS-Ares-00074739. Because your letter indicated Neil Kalvelage was CEO of Varsity Brands for "approximately 4 months" in 2017, Mr. Kalvelage should also be a custodian insofar as Charlesbank has maintained his custodial documents since his departure.

Your letter is inconsistent as to whether the offer of Mr. Beer is limited in the sense that certain search terms related to Request 21 will not be run for his custodial file. The list of search terms provided in your letter for Requests 5, 6, 7, 9, 10, 11, 12, 16, and 17 includes the terms provided in relation to Request 21. Your letter indicates that all terms will be run for both Mr. Janower and Mr. Beer, but that the terms specific to that request will only be run for Mr. Janower. This is not acceptable to Plaintiffs. All search terms must be run for all custodians, and Plaintiffs reserve their right to file a motion to compel on this issue.

Thank you for providing Charlesbank's proposed search terms. However, there is very little overlap between Charlesbank's and Plaintiffs' search terms. Taking into account Charlesbank's proposed terms, enclosed with this letter is a

Page 3
August 6, 2021

revised set of search terms that includes an indication of the request(s) to which they correspond. If we cannot reach agreement on search terms, Plaintiffs reserve the right to file a motion to compel on this revised list of search terms.

Your letter also states that searches will only be made of the custodians' "live email and electronic documents" but does not commit to searching non-custodial electronic sources or hard copy sources. You have so far not substantively responded whether Charlesbank created a data vault or other location where it maintained documents related to Varsity. In addition, the phrasing of "*live* email and electronic documents" implies there are some document sources that will not be searched. In our previous discussions, you indicated you were not aware of any archival or system change issues that would result in data sources being unavailable for the relevant time period. If that is no longer your understanding, Plaintiffs request that Charlesbank also search archival sources for any such systems to the extent necessary to fulfill the entire relevant time period. If Charlesbank will not commit to searching the relevant document sources necessary to match the relevant time period, Plaintiffs reserve their right to move to compel.

**Objections to Definitions and Instructions**

Definition 8: "Communication." Given your letter's silence on this issue, I take it your clients intend to stand on their objections to Plaintiffs' definition insofar as it included audio or voicemail records. Plaintiffs cannot accede to this objection without some substantiation of the burden involved and therefore reserve their rights to move to compel such records.

Instruction 2: Your letter indicates Charlesbank will use a relevant time period beginning in 2014. As I have explained previously, because Charlesbank acquired its interest in Varsity Brands in 2014, Plaintiffs expect discussions leading up to that acquisition to have taken place in 2013. Therefore, Plaintiffs require that the relevant time period begin in 2013. If Charlesbank cannot agree to a 2013 start date for the relevant time period, Plaintiffs reserve their right to move to compel.

As for the end of the relevant time period, June 30, 2020, is generally acceptable as compromise. However, having alleged ongoing harmful conduct, Plaintiffs may seek data and documents specifically related to calculating damages from after June 30, 2020, in a subsequent data/document pull. If Charlesbank cannot agree to such a production, to be negotiated in good faith at such time it

Page 4
August 6, 2021

becomes necessary, Plaintiffs reserve their right to move to compel production of documents according to the original cutoff date of "the present."

One exception to this general relevant time period is Mr. Kalvelage; the time period for whom should be all time during which he was an officer or director of Varsity Brands, LLC, Varsity Spirit, LLC, or Varsity Spirit & Fashions, LLC.

**Requests for Production**

Requests 1, 2, 3, 8, 18, 19: We have reached resolution on these requests.

Request 4: Thank you for the clarification of Mr. Janower and Mr. White's roles in Hercules VB Holdings, Inc. and Hercules VB LLC, and the information about Mr. Kalvelage's role as CEO of Varsity Brands. With this information, we have reached resolution on this request.

Requests 5, 6, 7, 9, 10, 11, 12, 16, and 17: Plaintiffs dispute that any of these requests are "patently overbroad and massive." You are incorrect that Request 5 would "swallow" the other requests. Request 5 deals with the operation of Varsity; Request 6 deals with the acquisition of Varsity; Request 10 deals with the sale of Varsity. While they may share some overlap at the margins with other requests, none of these requests subsumes the other. In addition, to the extent one or more Varsity-specific depositories of documents exists (as discussed above in relation to custodians), that is where Plaintiffs expect the majority of "go get" documents to be retrieved from, electronic and/or hard copy.

Request 7 also calls for documents created by or for Charlesbank's board of directors related to Varsity such as financial reports, profit and loss statements, profit projections, acquisition strategies, market analyses, risk analyses, reports, white papers, and studies. This request hardly swallows the others, and the nature of these documents may mean that are not located in a custodial file or even a non-custodial Varsity-specific file, but rather are located where documents for Charlesbank's board of directors are kept. Such documents should be located and produced.

Similarly, Request 17 calls for "annual or investor reports including all drafts thereof." Plaintiffs do not expect such reports to be produced if they do not mention Varsity. But any such reports that do mention Varsity may not be kept in custodial files or non-custodian Varsity-specific files and could instead be kept in

Page 5
August 6, 2021

another specific location. For this reason, such documents should be located and produced.

If the parties are unable to reach agreement on document sources and search terms (as discussed above), Plaintiffs reserve the right to move to compel on these requests.

Request 13: Your letter indicates Charlesbank will investigate whether it is aware of "financial analyst reports" but does not commit to produce them should they be found to exist. Please clarify whether Charlesbank will produce such reports if they exist. If Charlesbank intends to withhold such documents, Plaintiffs reserve their rights to file a motion to compel.

Request 15: With the understanding that Charlesbank has undertaken a reasonable search and determined there to be no agreements that are responsive to this request, it is resolved.

Request 20: This request calls for documents voluntarily submitted or produced subject to subpoena or other civil investigatory demand regarding Varsity. Charlesbank's response indicates it will "re-produce materials related to the subject matter of cheerleading which it has produced in the Related Actions." This response is insufficient. First, it is unclear whether Charlesbank will be producing *all* documents produced in the Related Actions or only a subset that it deems "related to the subject matter of cheerleading." Second, such a production would omit productions made in response to government inquiries, which are also likely to include documents relevant to this case. Charlesbank's objections to this request are also deficient under Fed. R. Civ. P. 34(b)(2)(C). Unless Charlesbank confirms that it is not withholding documents pursuant to its objections to this request, Plaintiffs reserve their right to move to compel Charlesbank to produce documents pursuant to this request.

Request 21: Your letter indicates that Charlesbank is only willing to "search the live email and electronic documents of Mr. Janower" for documents responsive to this request. As stated above, Plaintiffs require that all search terms be run for all custodians. Moreover, it is necessary to search non-custodial electronic and hard copy sources for responsive documents. If Charlesbank will not agree, Plaintiffs reserve the right to file a motion to compel.

If you believe a discussion on these issues may resolve at least some of them, please propose some times you are available early next week for a call.

Page 6
August 6, 2021

Sincerely,

GUSTAFSON GLUEK PLLC

Daniel J. Nordin

# EXHIBIT 8



**MINNESOTA OFFICE**
CANADIAN PACIFIC PLAZA
120 S. 6TH ST., STE 2600
MINNEAPOLIS, MN 55402

**CALIFORNIA OFFICE**
600 B STREET
17TH FLOOR
SAN DIEGO, CA 92101

**DANIEL J. NORDIN**
dnordin@gustafsongluek.com
TEL (612) 333-8844 • FAX (612) 339-6622
MINNESOTA OFFICE

August 6, 2021

**VIA EMAIL**
Steven J. Kaiser
Stephen J. Houck
Cleary Gotlieb Steen & Hamilton LLP
2112 Pennsylvania Avenue, NW
Washington, DC 20037
skaiser@cgsh.com
shouck@cgsh.com

> Re:   *Jones v. Varsity Brands, LLC*, No. 2:23-cv-02892
>        Bain Capital's Responses to Plaintiffs' Requests for Production of
>        Documents

Dear Mr. Kaiser:

I write in follow-up to my July 22, 2021, letter regarding the objections and responses of Bain Capital Private Equity ("Bain") to Plaintiffs' Request for Production of Documents ("Requests"). In addition to Bain's refusal to participate in ESI discovery, Bain's responses to most of Plaintiffs' requests are insufficient.

**Non-Privilege Redactions**

In the documents Bain produced in the Related Actions, it seems Bain made liberal use of redactions for what appears to be non-privileged information. Plaintiffs are not currently requesting that Bain re-produce any documents it already produced in the Related Actions without such redactions. However, Plaintiffs reserve the right to request non-redacted re-production of specific documents that were not redacted for privilege.

Page 2
August 6, 2021

     If Bain makes similar heavy use of redactions for non-privileged information in documents produced pursuant to Plaintiffs' Requests, Plaintiffs will pursue full production of such documents. It would therefore be less burdensome for Bain to not make redactions for non-privileged information in its initial production.

### ESI

     Bain has refused to discuss custodians and search terms. Below are the custodians Plaintiffs are seeking for Bain along with a brief explanation of why these individuals appear likely to have discoverable information:

- Bekenstein, Josh (Managing Director): Mr. Bekenstein is listed as a key contact for Bain Capital in produced documents (GS 000044; VAR00219494) and was part of the Impact Deal team with Ryan Cotton. JEFF00226732.

- Corrigan, Jay (CFO: July 1996 – Present): Mr. Corrigan was the authorized signatory on BCPE Hercules Holding LP agreement. FEAS-ARes00075914.

- Cotton, Ryan (Managing Director: August 2003 – Present; Board Member, Varsity Brands, LLC): Mr. Cotton was a member of the Impact Deal team with Josh Bekenstein. JEFF00226732.

- Dahl, Spencer (Analyst: July 2015 – July 2017; Associate: July 2017 – July 2019): Mr. Dahl was part of the Project Impact team and had access to the Jefferies data room. JEFF00226426.

- Hutchins, David (Associate General Counsel: June 2013 – January 2016; General Counsel: January 2016 – Present): Mr. Hutchins is listed as general counsel for BCPE Hercules Holding LP agreement. FEAS-Ares00075914.

- O'Rourke, Tom (Principal: July 2018 – April 2020): Mr. O'Rourke was part of the Project Impact team and had access to the Jefferies data room. JEFF00226426.

- Portnoy, Ethan, Associate (Analyst: July 2014 – July 2016; Associate: July 2016 – July 2018; Vice President: August 2020 – Present): Mr. Portnoy was part of the Project Impact team and had access to the Jefferies data room. JEFF00226426.

- Steinman, Kate (Analyst: July 2017 – July 2019; Associate: August 2019 – Present): Ms. Steinman was part of the Project Impact team and had access to the Jefferies data room. JEFF00226426.

Page 3
August 6, 2021

- Tesfalul, Saron (Principal, Consumer Retail & Dining Vertical: 2012 -
  Present): Ms. Tesfalul was part of the Project Impact team and had access to
  the Jefferies data room. JEFF00226426.

Enclosed with this letter is a revised list of search terms that Plaintiffs
request be used for these custodians. Absent an agreement on custodians and
search terms, Plaintiffs reserve their right to move to compel on Bain's refusal to
participate in ESI discovery.

**Objections to Definitions and Instructions**

Definition 8: "Communication." I take it your clients intend to stand on their
objections to Plaintiffs' definition insofar as it included audio or voicemail records.
Plaintiffs cannot accede to this objection without some substantiation of the burden
involved and therefore reserve their rights to move to compel such records.

Instruction 2: Bain's objections and responses to the Requests indicate Bain
will produce some limited documents from January 1, 2015, through June 30,
2015. The ending cutoff date is generally acceptable to Plaintiffs. However, having
alleged ongoing harmful conduct, Plaintiffs may seek data and documents
specifically related to calculating damages from after June 30, 2020, in a
subsequent data/document pull. If Bain cannot agree to such a production, to be
negotiated in good faith at such time it becomes necessary, Plaintiffs reserve their
right to move to compel production of documents according the original cutoff
date of "the present."

**Requests for Production**

Request 1: Plaintiffs understand Bain will produce the purchase agreements
constituting Bain's acquisition of its interest in Varsity, including any amendments
or modifications to such agreements. If this understanding is correct, this request is
resolved.

Request 2: Plaintiffs understand Bain will produce presentations sufficient to
identify any consultants, attorneys, accountants, bankers, or advisors retained in
connection with Bain's acquisition or disposition of any interest in Varsity. If this
understanding is correct, this request is resolved.

Request 3: Plaintiffs understand Bain will identify any employees or third
parties acting on Bain's behalf who were involved in approving or negotiating the

Page 4
August 6, 2021

terms of Bain's acquisition of any interest in Varsity. If this understanding is correct, this request is resolved.

Request 4: On our July 16, 2021, meet and confer, you indicated you would check with your client to determine if any Bain employees or third parties acting on Bain's behalf had official involvement in governing, managing, or working for or on behalf of Varsity. Have you made that determination, and if so, will Bain be identifying any such individuals?

Request 5: In response to this request which calls for documents relating to Bain's ownership and operation of Varsity, Bain indicated it will "produce final versions of presentations made to or by Varsity that relate to the subject matter of cheerleading that it can locate through a reasonable search of the files of the individual at Bain most likely to have such files." Such a response is wholly inadequate for multiple reasons. First, it wholly ignores the document examples provided in the request itself: "all financial data, summaries, or analyses, including profit and loss or asset and debit ledgers, annual reports, SWOT analyses, market analyses, risk analyses, cost analyses, profit projections, financing, long-range plans, growth strategies, and strategies regarding acquisition by Varsity of other Event Producers, Apparel manufacturers, or camp Producers." These are not encompassed by "final versions of presentations." Second, searching the documents of a single Bain employee is insufficient for both excluding additional custodians and noncustodial document sources. Moreover, each of Bain's objections are deficient as they do not "state whether any responsive materials are being withheld on the basis of that objection" as required by Fed. R. Civ. P. 34(b)(2)(C). Bain is obligated to make a meaningful production in response to this request, and Plaintiffs reserve their right to move to compel Bain to do so.

Request 6: In response to this request, Bain indicated that it would not produce any documents. Documents related to Bain's acquisition of any interest in Varsity, including financial data, summaries, SWOT analyses, market analyses, risk analyses, cost analyses, profit projections, financing, long-range plans, growth strategies, and strategies regarding acquisition by Varsity of other Event Producers, Apparel manufacturers, or Camp Producers are directly relevant to the claims in this case. Moreover, each of Bain's objections are deficient under Fed. R. Civ. P. 34(b)(2)(C). Bain is obligated to make a meaningful production in response to this request, and Plaintiffs reserve their right to move to compel Bain to do so.

Request 7: In response to this request which calls for documents created by or for Bain's board of directors, Bain indicated it will "produce final versions of

Page 5
August 6, 2021

presentations made to or by Varsity that relate to the subject matter of cheerleading that it can locate through a reasonable search of the files of the individual at Bain most likely to have such files." Such a response is wholly inadequate for the reasons stated in relation to Request 5. Each of Bain's objections are likewise deficient under Fed. R. Civ. P. 34(b)(2)(C). Bain is obligated to make a meaningful production in response to this request, and Plaintiffs reserve their right to move to compel Bain to do so.

Request 8: During our July 16, 2021, discussion you indicated that Bain was considering whether it would agree to produce promotional documents, public statements, announcements, disclosures, or press releases issued by Bain related to Varsity, USASF, and/or USA Cheer. As it stands, Bain's response is deficient under Fed. R. Civ. P. 34(b)(2)(C). Absent an agreed compromise, Plaintiffs reserve their right to move to compel Bain to produce documents under this request.

Request 9: This request calls for documents relating to the acquisition or disposition of any interest in Camp Producers by Varsity, and Bain's response indicates it will "produce final versions of presentations made to or by Varsity that relate to the subject matter of cheerleading that it can locate through a reasonable search of the files of the individual at Bain most likely to have such files." Such a response is wholly inadequate for the reasons stated in relation to Request 5. Each of Bain's objections are likewise deficient under Fed. Civ. P. 34(b)(2)(C). Bain is obligated to make a meaningful production in response to this request, and Plaintiffs reserve their right to move to compel Bain to do so.

Request 10: This request calls for documents relating to "any loans or credit provided to Varsity." Bain has indicated that it will not produce any documents in response to this request. Financing arrangements directly relevant as they have the potential to affect Varsity's ability to more aggressively assert its market position. Moreover, each of Bain's objections are deficient under Fed. R. Civ. P. 34(b)(2)(C). Bain is obligated to make a meaningful production in response to this request, and Plaintiffs reserve their right to move to compel Bain to do so.

Request 11: This request calls for documents "referring or relating to the financing of Varsity." Bain's response indicates it will "produce final versions of presentations made to or by Varsity that relate to the subject matter of cheerleading that it can locate through a reasonable search of the files of the individual at Bain most likely to have such files." Such a response is wholly inadequate for the reasons stated in relation to Request 5. Each of Bain's objections are likewise deficient under Fed. R. Civ. P. 34(b)(2)(C). Bain is obligated to make a meaningful

Page 6
August 6, 2021

production in response to this request, and Plaintiffs reserve their right to move to compel Bain to do so.

    <u>Request 12</u>: This request calls for analysts' reports concerning the acquisition of Varsity by Bain and/or other buyers. Bain's response indicates it will "produce final versions of any presentations or reports from third parties to the extent they relate to the subject matter of cheerleading that it can locate through a reasonable search of the files of the individual at Bain most likely to have such files." Searching the documents of a single Bain employee is insufficient as it both excludes additional custodians and noncustodial document sources. Each of Bain's objections are likewise deficient under Fed. R. Civ. P. 34(b)(2)(C). Bain is obligated to make a meaningful production in response to this request, and Plaintiffs reserve their right to move to compel Bain to do so.

    <u>Request 13</u>: Based on Bain's response that it will comply with Fed. R. Civ. P. 26(a)(1)(A)(iv), this request is resolved.

    <u>Request 14</u>: This request calls for joint defense, contribution, indemnification, or judgment sharing agreements related to any investigation, civil litigation, or criminal litigation involving the marketing of Competitive Cheer, Apparel, or camp. Bain's responses indicate that it will not produce documents in response to this request. The agreements covered by this request are relevant to assessing the bias of witnesses. Bain's objections to this request are also deficient under Fed. R. Civ. P. 34(b)(2)(C). Bain is obligated to make a meaningful production in response to this request, and absent a confirmation that such agreements do not exist, Plaintiffs reserve their right to move to compel Bain to produce them.

    <u>Request 15</u>: This request calls for documents relating to the valuation of any interest in Varsity. Bain's response indicates it will "produce final versions of presentations made to or by Varsity that relate to the subject matter of cheerleading that it can locate through a reasonable search of the files of the individual at Bain most likely to have such files." This response is inadequate. First, final versions of presentations do not include communications about valuation, communications about those presentations themselves, or other non-"presentation" documents. Bain's objections to this request are also deficient under Fed. R. Civ. P. 34(b)(2)(C). Bain is obligated to make a meaningful production in response to this request, and absent a confirmation that such agreements do not exist, Plaintiffs reserve their right to move to compel Bain to produce them.

Page 7
August 6, 2021

Request 16: This request calls for annual or investor reports including all drafts thereof. Bain's response indicates it will "produce final versions of presentations made to or by Varsity that relate to the subject matter of cheerleading that it can locate through a reasonable search of the files of the individual at Bain most likely to have such files." This response is inadequate. First, it is not clear that "presentations" shares the same meaning as "reports." Second, the request specifically calls for drafts, which will be omitted under the response. Bain's objections to this request are also deficient under Fed. R. Civ. P. 34(b)(2)(C). Bain is obligated to make a meaningful production in response to this request, and absent a confirmation that such agreements do not exist, Plaintiffs reserve their right to move to compel Bain to produce them.

Request 17: Based on the understanding that Bain has not made any filings with the SEC related to Varsity, this request is resolved.

Request 18: Based on the understanding that Bain has not made any Hart-Scott-Rodino Act filings related to Varsity's acquisitions of event producers, camp producers, and apparel manufacturers, this request is resolved.

Request 19: This request calls for documents voluntarily submitted or produced subject to subpoena or other civil investigatory demand regarding Varsity. Bain's response indicates it will "re-produce materials related to the subject matter of cheerleading which it has produced in the Related Actions." This response is insufficient. First, it is unclear whether Bain will be producing *all* documents produced in the Related Actions or only a subset that it deems "related to the subject matter of cheerleading." Second, such a production would omit productions made in response to government inquiries, which are also likely to include documents relevant to this case. Bain's objections to this request are also deficient under Fed. R. Civ. P. 34(b)(2)(C). Unless Bain confirms that it is not withholding documents pursuant to its objections to this request, Plaintiffs reserve their right to move to compel Bain to produce documents pursuant to this request.

Request 20: Bain's response indicates that it refuses to produce documents related to compensation or remuneration paid to Varsity officers, managers, or directors. Such documents, including the factors in determining compensation, relate to the operating priorities Bain set for Varsity and are directly relevant to the issues in this case. Bain's objections to this request are also deficient under Fed. R. Civ. P. 34(b)(2)(C). Plaintiffs reserve their right to move to compel Bain to produce documents pursuant to this request.

Page 8
August 6, 2021

     While I presently understand Bain's positions on these issues to be firm,
Plaintiffs are open to further discussion. If you believe such a discussion would be
productive, please propose some times you are available early next week for a call.

     Sincerely,

     GUSTAFSON GLUEK PLLC

     Daniel J. Nordin

# EXHIBIT 9

| **From:** | Ronnie Spiegel |
| **To:** | Kaiser, Steven J.; mmulqueen@bakerdonelson.com |
| **Cc:** | Ashleigh Jensen; Joseph Saveri |
| **Subject:** | Charlesbank and Bain production and depositions |
| **Date:** | Thursday, March 10, 2022 5:58:02 PM |

Counsel,

As a head's up, Jones Plaintiffs plan to file a motion tomorrow to compel compliance with the Court's 12/13/2021 discovery order, and to request an order setting the date for substantial completion as April 1, 2022 and to extend the time to take depositions of Charlesbank and Bain witnesses from April 18, 2022 to May 7, 2022. Please let us know if you can agree to these dates and wish to stipulate. Please also kindly let us know if you do not agree so that we can provide that information to the Court in the required Certificate of Consultation.

Thank you,
Ronnie

*Ronnie S. Spiegel, Partner



601 California Street, Suite 1000
San Francisco, CA 94108
T +1 415 500 6800
F +1 415 395 9940

*Located in Washington State
400 N.W. Gilman Blvd
P.O. Box. 906
Issaquah, WA 98027

**Disclaimer**

The information contained in this communication from the sender is confidential. It is intended solely for use by the recipient and others authorized to receive it. If you are not the recipient, you are hereby notified that any disclosure, copying, distribution or taking action in relation of the contents of this information is strictly prohibited and may be unlawful.

This email has been scanned for viruses and malware, and may have been automatically archived by **Mimecast Ltd**, an innovator in Software as a Service (SaaS) for business. Providing a **safer** and **more useful** place for your human generated data. Specializing in; Security, archiving and compliance. To find out more Click Here.