```
         IN THE UNITED STATES DISTRICT COURT
        FOR THE WESTERN DISTRICT OF TENNESSEE
                   WESTERN DIVISION
_____
                                )
JESSICA JONES, et al.,          )
                                )
                                )
     Plaintiffs,                )
                                )
v.                              )
                                )    No. 20-cv-02892-SHL-tmp
VARSITY BRANDS, LLC, et al.,    )
                                )
                                )
     Defendants.                )
_____
```

**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION TO COMPEL DISCOVERY RESPONSES FROM VARSITY DEFENDANTS**

_____

Before the court is plaintiffs' Motion to Compel Discovery from defendants Varsity Brands, LLC; Varsity Spirit, LLC; and Varsity Spirit Fashion & Supplies, LLC (collectively "Varsity"), filed on March 18, 2022. (ECF Nos. 214, 215.) Varsity filed a response on April 1, 2022. (ECF No. 238.) Plaintiffs replied on April 11, 2022. (ECF No. 257.) For the reasons below, the motion is GRANTED in part and DENIED in part.

### I. BACKGROUND

The present case involves antitrust claims brought against Varsity Brands, LLC, its affiliated brands and companies, and its prior and present owners.[1] In brief, the plaintiffs allege that

---

[1] Two other related cases are currently proceeding before U.S. District Judge Sheryl Lipman: Fusion Elite All Stars, et al. v.

the defendants conspired to and did in fact form a monopoly over the cheerleading industry in the United States. The plaintiffs filed their complaint on December 10, 2020, seeking class certification, damages, and injunctive relief. (ECF No. 1.)

On September 18, 2021, the plaintiffs filed a motion to compel discovery responses from Varsity. (ECF No. 100.) On November 8, 2021, the court set a hearing on the motion for November 19, 2021. (ECF No. 146.) On November 18, 2021, the parties informed the court by email that they had resolved all outstanding discovery disputes and requested that the hearing be taken off the calendar. (ECF No. 162.) Plaintiffs withdrew the motion on November 24, 2021.[2] (ECF No. 166.)

On March 18, 2022, plaintiffs filed the present motion asking the court to compel production of the following:

- o Text messages from "all agreed custodians that were current employees"
- o Structured data regarding camps

---

Varsity Brands, LLC, et al., 2:20-cv-02600-SHL-tmp (W.D. Tenn. Aug. 13, 2020) ("Fusion") and American Spirit and Cheer Essentials Inc., et al. v. Varsity Brands, LLC, et al., 2:20-cv-02782-SHL-tmp (W.D. Tenn. Jul. 24, 2020) ("American Spirit").

[2]At the end of the Order, the court stated, "**No other requests for extensions of these deadlines will be granted absent extraordinary circumstances.**" (Id.) (emphasis in original). The undersigned emphasizes that this Order does not extend the discovery deadline.

- o From plaintiffs second requests for production: request nos. 1-21
- o From plaintiffs first set of interrogatories: interrogatory nos. 12, 14, 18, and 19

Varsity filed their response on April 1, 2022, stating that requests number 1-13 had been resolved, but the remainder of the requests remain in dispute. (ECF No. 239 at 13.) On April 6, 2022, plaintiffs sought leave to file a reply, which the court granted in part and denied in part on April 7, 2022. (ECF No. 252 & 254.) Plaintiffs filed their reply on April 11, 2022. (ECF No. 257.)

On December 16, 2021, the court entered an Amended Scheduling Order, which extended the close of fact discovery to April 18, 2022. (ECF No. 177.)

## II.   ANALYSIS

### A.   Scope of Discovery

The scope of discovery is governed by Federal Rule of Civil Procedure 26(b)(1), which provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b)(1). The party seeking discovery is obligated to demonstrate relevance. Johnson v. CoreCivic, Inc., No. 18-CV-1051-STA-tmp, 2019 WL 5089086, at *2 (W.D. Tenn. Oct. 10, 2019). Upon a showing of relevance, the burden shifts to the party opposing discovery to show, with specificity, why the

requested discovery is not proportional to the needs of the case. William Powell Co. v. Nat'l Indem. Co., No. 1:14-CV-00807, 2017 WL 1326504, at *5 (S.D. Ohio Apr. 11, 2017), aff'd sub nom. 2017 WL 3927525 (S.D. Ohio Jun. 21, 2017), and modified on reconsideration, 2017 WL 4315059 (S.D. Ohio Sept. 26, 2017). Six factors are relevant to proportionality: (1) "the importance of the issues at stake in the action;" (2) "the amount in controversy;" (3) "the parties' relative access to relevant information;" (4) "the parties' resources;" (5) "the importance of the discovery in resolving the issues;" and (6) "whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

**B.  Text Messages**

Plaintiffs seek "text messages from all agreed custodians that were current employees." (ECF No. 215 at 4.) In the motion, plaintiffs argue that Varsity only produced text messages from custodians discussed during negotiations in November, but did not produce text messages from custodians that were agreed on before those negotiations. (Id.) Varsity claims that they have already produced all responsive text messages. (ECF No. 239 at 5-6.) In their Reply, plaintiffs shift gears, apparently no longer contesting that they have received text messages from the agreed custodians, instead arguing that "contrary to the ESI Stipulation in this case, the text messages have been produced with

-4-

insufficient metadata." (ECF No. 257 at 1, n.1.) As a proposed compromise, plaintiffs contacted Varsity and offered to withdraw the request if Varsity provided the Bates numbers for the text messages they have produced. (Id.) At the time the Reply was filed, plaintiffs had not heard back from Varsity. (Id.)

The court finds plaintiffs' proposed compromise to be reasonable. Varsity is ordered to identify the text messages already produced by their Bates numbers (or other numbering system used by Varsity to track their production).

**C.   Structured Data Regarding Camps**

As part of plaintiffs' First Request for Production, plaintiffs requested "structured data regarding cheer, schools and camps." (ECF No. 215 at 5.) Plaintiffs claim that Varsity has produced the relevant data as to cheer and schools but has failed to produce the same for camps. (Id.) Plaintiffs claim that they have received partial data in the form of Excel spreadsheets containing the following information: camp attendance and revenue for 2013, revenue data 2009-2014, and pricing data for home camps for the years 2015-2020. (Id. at 6 n.2.) They have also received general revenue information that is not structured data, which was produced in chart form. (Id.) Plaintiffs request that the court order Varsity to produce "the structured data from these databases for the entire time period . . . and request an order that Varsity make available knowledgeable persons to address specific questions

regarding the data base [sic] and the data contained in them." (Id. at 6-7.)

In their response, Varsity argues that they produced the relevant data in December 2021, and points plaintiffs to a document Bates numbered VAR00462074. (ECF No. 238 at 6.) Varsity contends that this document contains tabs titled "Camp Financial Statement" and "Camp Transaction Details," which contain the very data that plaintiffs seek in this motion.³ (Id.) Varsity also notes that there is "no provision in the Federal Rules" that requires a person to be made available to address questions regarding the database. (ECF No. 239 at 6 n.4.) Further, the Fusion plaintiffs have already noticed a Rule 30(b)(6) deposition on questions regarding data that was produced. (Id.)

In their Reply, plaintiffs state that "Varsity points plaintiff to a few isolated reports of aggregate information found in its ESI production and otherwise tells the plaintiffs to find the information themselves." (ECF No. 257 at 1.) Plaintiffs argue that Varsity's production does not comply with the Federal Rules with respect to the production of datasets and databases because it was not produced in native format. (Id. at 2) (citing The Sedona Conference Database Principles Addressing the Preservation and

---

³In a footnote in their motion, plaintiffs state that they have received documents Bates numbered VAR00462073-VAR00462079, meaning that plaintiffs are in possession of VAR00462074. (ECF No. 215 at 6 n.4.)

-6-

<u>Production of Databases and Database Information in Civil Litigation</u>, 15 Sedona Conf. J. 171 (2014)).

Both the plaintiffs' opening brief and their reply are hard to follow and do not address any of the points raised in the defendants' response, which makes it difficult for the court to determine what plaintiffs believe they are still entitled to. Plaintiffs do not provide a legal basis for ordering Varsity to make a person available to address questions about the database, particularly when the <u>Fusion</u> plaintiffs, with whom the plaintiffs in this case are coordinating discovery, already plan to depose a person on that very subject.

Varsity made the following representation in their response:

> [VAR00462074] contains the data Varsity agreed to produce for 2015 for camps and the same production contained the corresponding data for the other agreed years. Had Plaintiffs bothered to review VAR00462074 and the other documents in the same production for subsequent years, they would have seen there are tabs called "Camp Financial Statement," and tabs called "Camp Transaction Details," which contain the very data that Plaintiffs incorrectly accuse Varsity of not producing.

(ECF No. 239 at 6.) Based on this representation, Varsity is ordered to provide a supplemental discovery response verifying that document Bates numbered VAR00462074 is identical in format and covers the same time period as the data previously produced for cheer and schools.

**D.   Plaintiffs' Second Requests for Production**

1. <u>Communications with Competitors (Request Nos. 14, 15, 19)</u>

Plaintiffs seek communications between Varsity and the following competitors in the cheer market: Tate Chalk, Founder, CEO, and Chairman of Nfinity Athletic Corporation; Karen Noseff Aldridge, Founder and CEO of Rebel Athletic; and David Owens, Owner and CEO of Rockstar Championships, LLC, a plaintiff in the <u>American Spirit</u> action. Plaintiffs argue that "[c]ommunications with the principal [of] one of Varsity's few competitors is directly relevant to the case," because "it will show the nature of the relevant economic markets . . . the nature of competition within them . . . . [and] [h]ow a monopolist responds to a competitor." (ECF No. 215 at 15-16.) Plaintiffs also claim that Owens was not initially on the custodian list because "plaintiffs were reasonably not aware of [him]."

Varsity argues that communications between Chalk and Aldridge were already included in a previous production that included "Rebel" and "Nfinity" as search terms. (ECF No. 238 at 11.) Plaintiffs do not suggest that the prior production was deficient or explain why communications with these individuals would not have been covered by these search terms. Therefore, the Motion to Compel as to communications with Chalk and Aldridge is denied.

Plaintiffs' contention that they were "reasonably not aware" of Owens when they originally proposed a list of custodians is not

well-taken. On January 22, 2021, a discovery coordination committee for the Fusion, Jones, and American Spirit cases was established. (ECF No. 111.) Rockstar Championships, LLC, the company owned by Owens, is a named plaintiff in the American Spirit case. American Spirit, 2:20-cv-02782-SHL-tmp (W.D. Tenn. Jul. 24, 2020) (ECF No. 1.) Although it is unclear whether plaintiffs are asking to add Owens as a custodian whose files should be searched, such a request would not have merit since Varsity would not have any custodial files for Owens, who was never employed by Varsity. Plaintiffs have not provided any specific argument as to why communications with Owens would be relevant to their claims, nor have they explained why they could not seek these communications from Owens himself, given that Rockstar is a plaintiff in the American Spirit action. As a result, the Motion to Compel as to communications with David Owens is denied.

    2.   Adding Former Employees as Custodians (Request Nos. 16, 17, 18, 20, 21)

Plaintiffs seek documents and communications with the following former Varsity employees: Kevin Brubaker, Marlene Cota, Sheila Noone, Josh Quintero, and Abel Rosa. (ECF No. 215 at 16.) In the section of their brief regarding the now-resolved Requests Nos. 1-13, plaintiffs provided the following descriptions of each of these individuals:

- Kevin Brubaker . . . was employed by Varsity in one capacity or another for over six years, from no later

-9-

than June or July 2013 until his termination in early 2020. From approximately June 2015, Brubaker worked for Varsity as "National Sales Director of New Development." In this role, he was tasked with scheduling duties, which entailed clearing conflicts for Varsity events, while counterprogramming competitors' events with strategically placed Varsity competitions.

- Marlene Cota . . . was employed by Varsity for over 19 years, from June 1998 until she was terminated in January 2018. In her role as Vice President of Corporate Alliances, Cota was directly involved in Varsity's corporate sponsorship growth initiatives, for which she relied on Varsity's monopoly in the Relevant Markets to court marketing partners. She also participated as a presenter at Varsity's annual All Star marketing summits. As an observer and/or participant, Cota has firsthand knowledge of Varsity's exclusionary scheme as it relates to its Stay-to-Play housing requirement, the co-mingling of Varsity and USASF, Varsity's market share growth initiatives, Varsity's unfair bid award system, [and] Varsity TV.

- Sheila Noone . . . was employed by Varsity from September 2008 to April 2020 as Vice President of Public Relations. In this role, Noone was directly involved in monitoring and managing public perception of Varsity, including as regards its Stay-to-Play program and allegations of monopoly from customers and Matt Stoller[.]

- Josh Quintero . . . was employed by Varsity from January 2003 until he resigned in December 2020. During that period he worked as "NCA/UCA State Director for Oklahoma" and "D2 Summit National Sales Director." Quintero was a top Salesforce Advisor for Varsity between 2016 and 2018. In those roles, Quintero observed and/or participated in Varsity's counterprogramming of competitors' events, its abuse of power through its Stay-to-Play housing requirement, its manipulation of the Summit bids system to control customer behavior, and its influence over the USASF and other governing bodies.

- Abel Rosa . . . was Varsity's Vice President of Operations June 2006 until his termination in August 2020. In this role, Rosa observed and/or directly participated in the development and implementation of Varsity's exclusionary scheme, including as it relates to its acquisition strategy, the counterprogramming of rival events, the abuse of market power through the Stay-to-Play housing requirements and Varsity Family Plan rebate program, and its control of the USASF.

(ECF No. 215 at 7-13) (internal citations omitted).

Plaintiffs argue that these individuals were not included in their previously negotiated custodian list because they were not reasonably aware of them at that time. (Id.) To justify adding these individuals as custodians, plaintiffs simply state, "communications are likely to contain relevant information regarding Varsity's business practices and its attempts to control how it is portrayed by others, including its former employees." (Id. at 17.)

Varsity argues that these requests are time-barred because these requests seek the same information sought in plaintiffs' first RFPs, but from different custodians. (ECF No. 239 at 9.) According to Varsity, because this is a dispute over the scope of Varsity's responses to the first RFPs, "plaintiffs could have and should have brought [this issue] by the deadline for bringing such disputes, *i.e.*, September 18, 2021." (Id.) Further, Varsity contends that ordering more custodians would be "disproportionate to the needs of the case." (Id. at 10.)

-11-

In their Reply, plaintiffs explain that three of the proposed custodians (Brubaker, Rosa, and Quintero) were former employees who, after leaving Varsity, "attempted to enter the market as rival independent event producers." (ECF No. 258 at 4.) These individuals are currently being sued by Varsity for violating their employment contracts. (Id.) Plaintiffs argue that "[t]his type of exclusionary conduct goes to the heart of Plaintiffs' claims." Plaintiffs also state that "Noone is a former employee who had direct knowledge of Varsity's efforts to undercut press coverage of the fact and effects of Varsity's monopoly, during both her tenure as a Varsity employee and after she left Varsity's employ." (Id.) Plaintiffs additionally claim that "Cota [was] a Varsity employee who was directly involved in various exclusionary practices . . . . [and] [t]he Court has previously determined that her deposition should be taken." (Id.)

Plaintiffs do not provide an adequate reason to demonstrate that Brubaker, Rosa, and Quintero's documents and communications would be relevant to their antitrust claims. Beyond conclusory statements, plaintiffs also do not provide any justification as to why Noone and Cota should be added as custodians at this late stage. Indeed, plaintiffs were clearly aware of Cota, at the latest, roughly two weeks before the original agreement on custodians was struck. (ECF No. 238 at 9.) Although the undersigned does not find that these requests are time-barred, the fact that

these custodians were sought after such a delay is a factor that goes against production. Similarly, the fast-approaching discovery deadline, large amount of information sought, and little support provided as to the relevance of each proposed custodian all weigh against production. As a result, plaintiffs Motion to Compel as to request numbers 16, 17, 18, 20, 21 is denied.

**D.   Plaintiffs' First Set of Interrogatories:**

    1.   <u>Financial Support of Organizations Involved in Rulemaking, Regulation, and Organization of Competitive Cheer (Interrogatory No. 12)</u>

Interrogatory 12 seeks information as to "whether Varsity provides financial support to five nominally independent nonprofit organizations[:]" USASF, AACCA, NFHS, ICU, and USA Cheer. (ECF No. 215 at 17.) Varsity timely objected to the interrogatory as seeking "irrelevant information, as overly broad, unduly burdensome, and disproportional to the needs of the case, in particular in its request for information about ICU." (ECF No. 238 at 13.) Nevertheless, Varsity provided information about their prior financial support of USASF. In a meet and confer session, Varsity alleges that "plaintiffs said that they would be satisfied with a similar level of detail regarding USA Cheer and AACCA as provided as to USASF." (ECF No. 238 at 14.) Varsity was in the midst of assembling this information when the instant motion was filed. (<u>Id.</u>)

Varsity also claims that it does not have any information relating to NFHS because "it [is] not aware of any 'loan or credit relationship'" with the organization. (Id.) Finally, Varsity claims that plaintiffs have dropped all other discovery related to ICU and that plaintiffs do not provide any information to show that ICU is relevant to the case. (Id.)

Varsity is ordered to provide information regarding USA Cheer and AACCA with a similar level of detail as was provided regarding USASF. Counsel for Varsity must also submit a supplemental interrogatory response verifying that Varsity does not have any information regarding a loan or credit relationship between NFHS and Varsity. As to ICU, the court finds that plaintiffs have failed to provide any specific reasons why Varsity's financial relationship with ICU is relevant to their claims, and therefore this discovery as to ICU is denied.

2. Market Share (Interrogatory No. 14)

Interrogatory 14 seeks information regarding Varsity's market share and that of their competitors for each year of the relevant time period. (ECF No. 215 at 18.) Varsity claims that they do not "possess this information about Cheer Events, Cheer Apparel, and Cheer Camps because it does not know the sales of all suppliers of Cheer Events, Cheer Apparel, or Cheer Camps (or Dance Events or Dance Apparel) and therefore cannot provide 'market shares' as it understands that term." (ECF No. 238 at 15.) Further, "Varsity has

provided its own sales in these areas and provided a list of entities it views as alternative suppliers of cheerleading events, cheerleading apparel, and cheerleading camps. . ." and "produced its internal database in which it tries to track third-party cheer events." (Id.) Although the court finds that Varsity should not be required to manufacture market share data in order to respond to the interrogatory, to the extent that Varsity has previously made any market share evaluations or calculations, Varsity is directed to respond to this interrogatory based on the market share assessments previously made.

### 3. Varsity Brands and Subsidiaries Board of Directors (Interrogatory No. 18)

Interrogatory 18 seeks information regarding the composition of the Board of Directors or other management boards of Varsity Brands, LLC and its parent holding companies and subsidiaries. Plaintiffs argue this information is relevant to showing that defendants Charlesbank and Bain had control of and participation on the Varsity management boards, and thus took part in the anticompetitive practices alleged in this lawsuit.

Varsity argues, as they have in several motions, that plaintiffs' arguments as to Bain and Charlesbank should be given little weight because of their confidence that Bain and Charlesbank will be dismissed from the case, as they were in American Spirit. (ECF No. 238.) Further, Varsity claims that the detail of

information sought is "excruciating" because plaintiffs seek "members, officers, and directors of the Board of Directors or any committee thereof" of four Varsity Brands subsidiaries.

The undersigned agrees that the data currently sought is overly broad. However, identifying the board members of four subsidiaries is not unduly burdensome. Thus, Varsity is ordered to identify the members of the Board of Directors or the functional equivalent of Varsity Brands, LLC; Varsity Spirit, LLC; Varsity Brands Holding Co., LLC; and Hercules Holding, Co., LLC. For each person identified, Varsity must provide the following information: the name of the person, the board on which they served, the years in which they served, and the positions in which they served.

4. <u>Varsity Employees, Officers, or Board Members Serving on NFHS, AACCA, ICU, USASF, and USA Cheer Boards or Committees (Interrogatory No. 19)</u>

Interrogatory 19 asks Varsity to identify all employees, officers, or board members who serve on boards or committees of NFHS, AACCA, ICU, USASF, and USA Cheer. Plaintiffs claim that this information is relevant to show that Varsity controls these organizations and has used them to further their monopoly. (ECF No. 215 at 21.) Varsity points out that the information regarding the boards of these organizations is available publicly. (ECF No. 238 at 17-18.) Varsity also restates that plaintiffs have dropped all discovery in relation to ICU. (<u>Id.</u> at 17.) Although plaintiffs do not explain why this publicly available information is

insufficient for their purposes, because the burden of this production is likely minimal, plaintiffs' Motion to Compel as to Interrogatory Number 19 is granted, except as to ICU.

### III. CONCLUSION

For the reasons stated above, plaintiffs' motion is GRANTED in part and DENIED in part. To the extent the motion has been granted, Varsity shall comply by no later than Wednesday, April 20, 2022.

IT IS SO ORDERED.

s/ Tu M. Pham
TU M. PHAM
Chief United States Magistrate Judge

April 14, 2022
Date