**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

| | |
|---|---|
| **JESSICA JONES, et al.,** | Case No. 2:20-cv-02892-SHL-tmp |
| Plaintiffs, | |
| v. | |
| **VARSITY BRANDS, LLC, et al.** | |
| Defendants. | **JURY DEMAND** |

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION TO COMPEL
DOCUMENTS WITHHELD BY DEFENDANT CHARLESBANK CAPITAL
PARTNERS, LLC, AND BAIN CAPITAL PRIVATE EQUITY**

# TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................. 1

II.     PROCEDURAL HISTOTY ................................................................. 3

III.    SUMMARY OF PLAINTIFFS' ALLEGATIONS ............................... 6

IV.     LEGAL STANDARD ......................................................................... 8

V.      ARGUMENT ...................................................................................... 8

PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION TO COMPEL DOCUMENTS WITHHELD BY
DEFENDANT CHARLESBANK CAPITAL PARTNERS, LLC, AND BAIN CAPITAL PRIVATE EQUITY

## <u>TABLE OF AUTHORITIES</u>

**Federal Cases**

*Am. Soc. of Mech. Engineers, Inc. v. Hydrolevel Corp.*,
    456 U.S. 556 (1982)...................................................................................................7

*Arandell Corp. v. Centerpoint Energy Servs., Inc.*,
    900 F.3d 623 (9th Cir. 2018) ..................................................................................7

*Burlington Northern & Santa Fe Ry. Co. v. U.S. Dist. Court for Dist. Of Mont.*,
    408 F.3d 1142 (9th Cir. 2005) ........................................................................ *passim*

*Carfagno v. Jackson National Life Ins. Co.*,
    2001 WL 34059032 (W.D. Mich. 2001)...................................................................8

*Cleveland Indians Base Co. v. United States*,
    1998 WL 180623 (N.D. Ohio 1998) .........................................................................8

*Copperweld Corp. v. Indep. Tube Corp.*,
    467 U.S. 752 (1984)...................................................................................................7

*In re Gen. Instrument Corp. Sec. Litig.*,
    190 F.R.D. 527 (N.D. Ill. 2000)........................................................................17, 19

*Hennigan v. Gen. Elec. Co.*,
    2011 WL 13214444 (E.D. Mich. June 1, 2011)............................................. *passim*

*Janko Enterprises, Inc. v. Long John Silver's, Inc.*,
    2013 WL 5308802 (W.D. Ky. Aug. 19, 2013) .........................................................9

*Lenox MacLaren Surgical Corp. v. Medtronic, Inc.*,
    847 F.3d 1221 (10th Cir. 2017) ...............................................................................7

*Mitchell v. Universal Music Grp. Inc.*,
    2018 WL 1573233 (W.D. Ky. Mar. 30, 2018) ...................................................9, 11

*NLRB v. Interbake Foods, LLC*,
    637 F.3d 492 (4th Cir. 2011) ...............................................................................8, 19

*Ramirez v. Cty. of Los Angeles*,
    231 F.R.D. 407 (C.D. Cal. 2005) ...........................................................................10

*Richmark Corp. v. Timber Falling Consultants*,
    959 F.2d 1468 (9th Cir. 1992) ..................................................................................8

*Troutman v. Louisville Metro Dep't of Corr.*,
    2018 WL 3041079 (W.D. Ky. June 19, 2018)..........................................................9

*Vaughan v. Celanese Americas Corp.*,
    2006 WL 3592538 (W.D.N.C. Dec. 11, 2006) ........................................................................19

*Wesley Corp. v. Zoom T.V. Products, LLC*,
    2018 WL 372700 (E.D. Mich. Jan. 11, 2018) ........................................................................10

**Rules**

Fed. R. Civ. P. 26 .................................................................................................................... *passim*

Fed. R. Civ. P. 34 ....................................................................................................9, 10, 11, 14

Fed. R. Civ. P. 37 ......................................................................................................................3, 20

PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION TO COMPEL DOCUMENTS WITHHELD BY
DEFENDANT CHARLESBANK CAPITAL PARTNERS, LLC, AND BAIN CAPITAL PRIVATE EQUITY

## I.    INTRODUCTION

The jointly-stipulated ESI Protocol, entered in this case on July 14, 2021, sets forth clear deadlines for producing privilege logs: "The parties agree to provide privilege logs as soon as practicable, but in any event, in at least three installments 1) no later than 60 days after the Producing Party's first production (i.e., 135 days after service of Requests for Production), 2) ninety days thereafter; **and** 3) 90 days before the court-ordered fact discovery cutoff, on which date all privilege logs must be complete. Privilege logs for each agreed (or court-ordered) custodian must be complete 10 days before the custodian's deposition." ECF 91 at 14 ("Discovery Protocol") (emphasis added).[1]  These requirements are conjunctive.

Defendants Charlesbank and Bain have ignored the timetables and failed to meet the deadlines in the Discovery Protocol. When observed, the Discovery Protocol provides the producing party a reasonable time to assert privilege claims over responsive documents through the production of a privilege log. If documents are improperly withheld, the documents can be challenged and produced long **before the close of fact discovery** and **before a witness is deposed**.

Here, Defendants first provided their privilege logs roughly 13 months after Plaintiffs propounded the request for production. The consequences and unfair prejudice of Defendants' failures are multifold and manifest. Defendants' great delay prevented Plaintiffs from timely addressing or challenging the thousands of responsive documents withheld and redacted for custodians whose depositions had already been taken or were soon to be taken. The delay prevented Plaintiffs from adequately preparing for those depositions—and taking them—because

---

[1] The Protocol was negotiated and agreed to by the parties and submitted to the Court. It has been entered by the Court. It constitutes a discovery order under Rule 26(f).

they did not have the benefit of the documents withheld. The delay prevented Plaintiffs from exploring the factual basis for any of the privilege claims. The delay also frustrated Plaintiffs issuing additional discovery requests after privilege issues are resolved, since both logs were produced *after* the close of discovery. With depositions of Charlesbank and Bain employees proceeding or already passed, and discovery otherwise closed, the prejudice is acute.

Moreover, the untimely disclosure of the massive numbers of withheld and redacted documents was a surprise. Prior to April 19 and 20, 2022, when Charlesbank and Bain's logs were first disclosed, both Defendants had only asserted general boilerplate privilege objections in their initial and revised objections and responses, without asserting privilege for any specific requests for production. Saveri Decl., Exhibits C and D at 2; Exhibits E and F. [Charlesbank and Bain's Original and Revised Objections and Responses]. Thus, Plaintiffs had no idea until *after* the close of discovery that Charlesbank had withheld 4,391 documents and redacted 3,523 for a total of roughly 8,000 responsive documents alleged to be privileged. That number constitutes more than 10% of Charlesbank's entire production of 76,658 documents. Nor were Plaintiffs aware until *after* the close of discovery that Bain had withheld 826 responsive documents, and redacted 1,245, for a total of 2,071 entries. That constitutes roughly 11% of Bain's total production of 18,843 documents.[2] Defendants' efforts to shift responsibility for their failure to provide a timely log is unavailing. It is not Plaintiffs' fault that Defendants failed to produce a

---

[2] As but one example of the prejudice Plaintiffs face, Defendant Charlesbank withheld 1,212 responsive documents and redacted 1,191 for which Joshua Beer was a custodian, without informing Plaintiffs before his deposition. Only after the Beer deposition concluded on April 20, 2022 did Defendants then provide the Charlesbank privilege log, with the 2,403 withheld or redacted Beer documents at 6:27 p.m. Central Time. Saveri Decl. ¶ 12.

privilege log for over 13 months after the requests for production and over four months after the Court granted the motion to compel and ordered the production of documents.

Had Defendants complied with the Discovery Protocol, Plaintiffs might have had a fair opportunity to review both logs and obtain documents improperly withheld in advance of the depositions and while discovery was open. Now, Plaintiffs have no tenable opportunity, and the basic purpose of the Rules has been frustrated. Given the stage of the proceedings, and Charlesbank's and Bain's conduct, the remedy should be consummate with the harm. The most appropriate remedy for the undue prejudice is for the Court to find, as other courts in the Sixth Circuit have held, that Defendants waived any purported privilege by failing to adequately and timely assert privilege, and order Defendants to immediately produce the responsive documents withheld.[3]

## II.   PROCEDURAL HISTORY

Plaintiffs filed their Class Action Complaint on December 10, 2020. ECF No. 1. Defendants, including Charlesbank and Bain, filed motions to strike the class allegations and motions to dismiss the Complaint on March 12, 2021. ECF Nos. 55–60. On August 26, 2021, the Court denied defendants' motions to dismiss in the *Fusion* action. *See* Fusion, ECF No. 141. The motions to dismiss in the Jones action are fully briefed and are awaiting the Court's ruling. ECF Nos. 67-71, 72-76. The Court has ordered, however, that full discovery can proceed while the motions to dismiss are pending. *See, e.g.*, ECF Nos. 61, 170.

---

[3] Plaintiffs may be entitled to additional relief including the reopening of concluded depositions, delaying depositions yet to be taken, or other relief under Rule 37(b)(2). Plaintiffs seek the production of the withheld documents without waiving rights to seek additional relief once in the possession of the documents.

Discovery has now been ongoing for over a year. Plaintiffs served their requests for production on Bain and Charlesbank over a year ago, on March 26, 2021.[4] Saveri Decl. Ex. A, Ex. B. After months of negotiation, Plaintiffs were compelled to seek court intervention, filing a motion to compel production of documents. On December 13, 2021, the Court granted the motion in part and denied it in part and ordered Charlesbank and Bain to produce responsive documents. ECF No. 174. Plaintiffs' protracted efforts to obtain compliance with the Order, Defendant's refusal to respond, and Defendants tardy production have been documented in prior filings and recognized by the Court. *See* ECF 261, at 4–5.

Charlesbank and Bain have produced documents in tranches. Charlesbank made an initial small production on September 15, 2021. Approximately two months after the Court's Order, on February 28, 2022, Charlesbank made an additional small production. Charlesbank produced the bulk of its production on April 1, 2022. On April 14, 2022, four days before the close of fact discovery, Charlesbank reproduced and corrected 111 of its earlier produced documents that had been improperly redacted for privilege. Saveri Decl. ¶ 9. Charlesbank produced a single privilege log on April 20, 2022. Saveri Decl. Ex. I [Charlesbank Privilege Log].

Bain made an initial small production on September 11, 2021. Approximately two months after the Court's Order, on February 24, 2022, Bain made an additional small production. Bain produced the bulk of its production on April 1, 2022. Saveri Decl. ¶ 9. Bain produced a single privilege log on April 19, 2022. Saveri Decl. Ex. J [Bain Privilege Log].

Depositions of Charlesbank and Bain employees and former employees have already commenced: Joshua Beer (Charlesbank) was deposed on April 20, 2022, and Andrew Janower

---

[4] In addition to the document requests in this action, Defendants were both subpoenaed in the Fusion case. That subpoena was served in November 2020. *See* Saveri Decl., Ex. G, Ex. H.

(Charlesbank) was deposed on April 22, 2022. Saron Tesfalul (Bain) was deposed on April 27, 2022. More Charlesbank and Bain employees are set to proceed on April 29, 2022 (David Katz and Brandon White), May 4 (Neil Kalvelage and Tom O'Rourke), and May 5 (Ryan Cotton). Significantly, both privilege logs indicate that each of the Bain and Charlesbank deposition witnesses are custodians or recipients of hundreds, or thousands of documents currently withheld or redacted by Charlesbank and Bain based on purported privilege. Saveri Decl., Ex. I, Ex. J [Privilege Logs].

The production of the privilege logs on April 19 and 20, 2022 occurred only after extensive efforts and inquiries by Plaintiffs. After extensive ignored requests, Charlesbank and Bain committed to substantially complete its document production by April 1, 2022. At that time, Charlesbank and Bain had not produced a privilege log and made no indication that thousands of responsive documents were being withheld. On April 18, 2022, the close of fact discovery, Plaintiffs informed Charlesbank and Bain that given Defendants' failure to timely provide privilege logs, any privilege claims were waived. Plaintiffs asked Defendants to produce any documents that may have been withheld. Saveri Decl., Ex. K. Bain produced its privilege log the next day, on April 19, 2022. Charlesbank produced its privilege log two days later, on April 20, 2022. The Charlesbank and Bain logs contain nearly 10,000 relevant documents withheld or redacted under a claim of attorney-client communication or attorney work product *Id.* Ex. I, J.[5]

---

[5] Plaintiffs timely sought information regarding the log, including noting the deficiencies in the log discussed below. *See* Saveri Decl., Ex. L. Defendants responded without addressing any of the specific points raised, claiming that Plaintiffs' position on waiver made any response on the adequacy of the privilege log "pointless." Saveri Decl., Ex. K.

III.     **SUMMARY OF PLAINTIFFS' ALLEGATIONS**

The nature of Plaintiffs' claims is set forth in their Complaint and has been the subject of

considerable discovery motion practice. *See, e.g.*, ECF Nos. 165, 174, 195, 229, 231, 236, 245,

261. Plaintiffs will not repeat those allegations here. In summary, Plaintiffs allege Varsity and

the other Defendants conspired to monopolize and fix prices of products in the markets for

competitive cheer, cheer camps, and cheer apparel through an exclusionary scheme. *See*

Complaint, ECF 1. Varsity now occupies a dominant market position with estimates of market

share exceeding 80 percent. Pursuant to the scheme, Varsity acquired and excluded its rivals,

controlled and corrupted the rule-making bodies in the sport, and monopolized the markets. As a

result of Defendants' anticompetitive scheme, Plaintiffs have been forced to pay prices for cheer

competitions, cheer camps, and cheer apparel that were higher than they would have been absent

Defendants' anticompetitive scheme. Plaintiffs allege that the violations are ongoing.

With respect to Charlesbank and Bain, more specifically, Plaintiffs allege Charlesbank

and Bain were direct participants in the anticompetitive scheme. As the evidence shows,

Charlesbank purchased Varsity in 2014, for $1.5 billion dollars. In so doing, Charlesbank knew

that Varsity was the dominant firm in the markets at issue here and had erected significant

barriers to entry and engaged in business practices to foreclose rivals and exclude competition.

Charlesbank's acquisition of Varsity, included Varsity Brands, Inc. and Varsity Spirit, Inc.

Compl. ¶ 84. Charlesbank became the majority shareholder and obtained control of Varsity. That

year, Charlesbank converted both Varsity Brands, Inc. and Varsity Spirit, Inc. to limited liability

companies owned and controlled by Charlesbank. Charlesbank owned over 65% of Varsity's

stock. As Varsity's parent, Charlesbank controlled Varsity through its control of the Varsity

boards of directors and management boards. Charlesbank and Charlesbank subsidiaries,

affiliates, officers and directors managed and operated Varsity. Charlesbank was actively involved in numerous aspects of Varsity's business, overseeing management, directing strategy, approving and funding acquisitions, hiring and firing key employees, setting and approving compensation, hiring consultants and otherwise directing Varsity's activities.

In 2018, Charlesbank sold Varsity to Bain Capital for approximately $2.5 billion. Compl. ¶ 85. Charlesbank received total payouts of $1.047 billion. At the time of Bain's acquisition, Charlesbank invested another $160 million, maintaining a seat on the Varsity Board of Directors and otherwise continuing to be involved in the management of Varsity. After the acquisition by Bain, Bain controlled Varsity through its control of the Varsity boards of directors and management boards. Through its agents, officers and directors, Bain also managed and operated Varsity. Bain has been actively involved in numerous aspects of Varsity's business, overseeing management, directing strategy, approving and funding acquisitions, hiring and firing key employees, setting and approving compensation, hiring consultants and otherwise directing Varsity's activities.

Charlesbank and Bain are also vicariously liable for the anticompetitive conduct of Varsity. *See Lenox MacLaren Surgical Corp. v. Medtronic, Inc.*, 847 F.3d 1221, 1226 (10th Cir. 2017) (parent company and subsidiary treated as a single entity for antitrust purposes, including Section 2 claims), *Arandell Corp. v. Centerpoint Energy Servs., Inc.*, 900 F.3d 623, 629 (9th Cir. 2018) (parent and subsidiary have full unity of interest); *Am. Soc. of Mech. Engineers, Inc. v. Hydrolevel Corp.*, 456 U.S. 556 (1982) (establishing principal and agent liability under antitrust law); *Copperweld Corp. v. Indep. Tube Corp.*, 467 U.S. 752, 771 (1984) (coordinated activity of a parent and subsidiary considered to be a single enterprise). Plaintiffs further allege that Charlesbank and Bain were and continue to be actively involved in the alleged anticompetitive

scheme through seats on Varsity's Board of Directors. Compl. ¶ 119.  Charlesbank and Bain dispute these allegations.

## IV.    LEGAL STANDARD

As the party withholding documents and information pursuant to a purported privilege, Charlesbank bears the burden to establish every element of the alleged privilege. *See NLRB v. Interbake Foods, LLC*, 637 F.3d 492, 501 (4th Cir. 2011). As discussed in detail below, it is also Defendant's obligation to timely assert any privilege. Failure to timely identify documents withheld or provide a sufficiently detailed basis for the parties to assess the privilege may constitute waiver of privilege. *Burlington Northern & Santa Fe Ry. Co. v. U.S. Dist. Court for Dist. Of Mont.*, 408 F.3d 1142, 1149 (9th Cir. 2005) (hereinafter "*Burlington Northern*").

## V.    ARGUMENT

It is a fundamental principle that the attorney-client privilege is waived by failure to object in a timely manner to the production of responsive documents on privilege grounds. *Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468, 1473 (9th Cir. 1992) ("[F]ailure to object to a discovery request within the time required constitutes a waiver of any objection"); *see also Carfagno v. Jackson National Life Ins. Co.*, 2001 WL 34059032 at *1-2 (W.D. Mich. 2001) (concluding that failure to object to discovery requests within the thirty days constituted a waiver of attorney-client privilege and attorney work product); *Cleveland Indians Base Co. v. United States*, 1998 WL 180623 (N.D. Ohio 1998) ("A party seeking to assert privilege must make a clear showing that it applies. Failure to do so is not excused because the document is later shown to be one which would have been privileged if a timely showing had been made."). Any other rule would "completely frustrate the time limits contained in the Federal Rules and

give a license to litigants to ignore the time limits for discovery without adverse consequences." *Carfagno*, 2001 WL 34059032 at \*1.

This principal is embodied in the Federal Rules. Under Federal Rule of Civil Procedure 26(b)(5), "[w]hen a party withholds information otherwise discoverable by claiming that the information is privileged . . . the party must: (i) expressly make the claim; and (ii) describe the nature of the documents, communications or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." Further, under Federal Rule 34(b)(2)(C), "[a]n objection must state whether any responsive materials are being withheld on the basis of that objection." The Rule also requires such objections be made within 30 days of the request. Fed. R. Civ. Proc. 34(b)(2)(A). The claim of privilege must "describe the nature" of the withheld documents in a manner that allows the parties to assess the claim, and state whether any responsive materials are being withheld. Fed. R. Civ. P. 26(b)(5).

Therefore, courts hold that boilerplate privilege objections do not satisfy the Rules. Such objections do not "describe" the materials withheld and are not sufficient to assert or protect privilege claims to withhold responsive documents. *See, e.g.*, *Burlington Northern*, 408 F.3d 1142, 1149 (9th Cir. 2005) (holding that boilerplate objections to discovery requests are insufficient to assert a privilege); *Troutman v. Louisville Metro Dep't of Corr.*, 2018 WL 3041079, at \*3 (W.D. Ky. June 19, 2018) (As is the result with boilerplate objections, the failure to raise a pertinent objection to a discovery request within the allotted response period results in the waiver of that objection."); *Janko Enterprises, Inc. v. Long John Silver's, Inc.*, 2013 WL 5308802, at \*7 (W.D. Ky. Aug. 19, 2013) ("Unexplained and unsupported 'boilerplate' objections clearly are improper.").

Where only a boilerplate privilege objection is made, the privilege is forfeited. *See, e.g.*, *Mitchell v. Universal Music Grp. Inc.*, 2018 WL 1573233, at *4 (W.D. Ky. Mar. 30, 2018) ("The consequence for lodging objections in such a frivolous fashion is waiver, regardless if the objection was made as a precautionary measure."); *Wesley Corp. v. Zoom T.V. Products, LLC*, 2018 WL 372700, at *4 (E.D. Mich. Jan. 11, 2018) ("Lawyers who purport to 'preserve' an objection by including it in a boilerplate statement must be prepared to face the fact that the result of a substance-free objection is generally the opposite of preservation, i.e., forfeiture.") (cleaned up).

Since boilerplate privilege objections are inadequate to preserve the privilege, the privilege log provides a mechanism for complying with the Rules. The privilege log generally constitutes the party's first sufficient assertion of the privilege, since the log describes the nature of and identifies the withheld documents in a manner that allows the parties to assess the privilege claim. *See Burlington Northern*, 408 F.3d at 1148; *Ramirez v. Cty. of Los Angeles*, 231 F.R.D. 407, 410 (C.D. Cal. 2005) ("The party who withholds discovery materials must provide sufficient information (i.e., a privilege log) to enable the other party to evaluate the applicability of the privilege or protection."). Thus, forfeiture or waiver generally results where a party fails to provide a privilege log in sufficient time to preserve the privilege. *Burlington Northern*, 408 F.3d at 1149–50.

*Burlington Northern* is the seminal case on this subject. There, the issue was whether a party, by submitting an untimely privilege log, served five months after the initial requests for documents were made, waived the assertion of attorney client and work product privileges. In *Burlington Northern*, the plaintiff first served document requests in November 2002. *Id.* 1145. The defendants responded to the requests within the 30-days provided for under Rule 34 but did

PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION TO COMPEL DOCUMENTS WITHHELD BY DEFENDANT CHARLESBANK CAPITAL PARTNERS, LLC, AND BAIN CAPITAL PRIVATE EQUITY

not produce a privilege log at that time. *Id.* The parties understood that the defendant intended to provide a privilege log, but the defendant did not provide a privilege log until roughly five months later. *Id.* 1145, 1149. The plaintiffs later filed a motion to compel production of all withheld documents on the ground that the defendant had waived its privilege claims by failing to provide a privilege log within the 30-days required by Rule 34. *Id.* 1147. The district court agreed that "defendant waived its privilege objections by failing to provide a privilege log at the time it served its discovery responses." *Id.* The Ninth Circuit affirmed, holding first that "boilerplate objections or blanket refusals" are "insufficient to assert a privilege." *Id.* 1149. The Ninth Circuit further held that although there is no "*per se* waiver rule," district courts should use Rule 34's "30-day period as a default guideline," and make a "case-by-case determination" on whether a privilege log provided outside of the 30-day period waives the privilege. *Id.*

The court identified four factors in making this determination: (1) the degree to which the objection or assertion of privilege enables the litigant seeking discovery and the court to evaluate whether each of the withheld documents is privileged; (2) the timeliness of the objection and accompanying information about withheld documents; (3) the magnitude of the document production; and (4) other particular circumstances of the litigation that make responding to discovery unusually easy. *Id*.

There is no Sixth Circuit case directly on point. The district courts in this circuit have applied the Federal Rules and followed *Burlington Northern*. These courts have held that a failure to timely provide a privilege log generally waives the privilege. *See, e.g.*, *Hennigan v. Gen. Elec. Co.*, 2011 WL 13214444, at *3 (E.D. Mich. June 1, 2011) (finding waiver for failure to provide a privilege log for 12 months, and stating that "if the time limits set forth in the discovery rules are to have any meaning, waiver is a necessary consequence of dilatory action in

most cases [because] '[d]iscovery deadlines are intended to ensure the efficient progress of a lawsuit and counsel are expected to comply with them.'"); *Mitchell v. Universal Music Grp. Inc.*, 2018 WL 1573233, at *5–7 (W.D. Ky. Mar. 30, 2018) (finding that defendants had "waived any discovery objections based on attorney-client privilege, work product doctrine," where defendants only raised boilerplate privilege objections and had not yet provided a privilege log).

*Hennigan*, is instructive. There the defendants produced the log "12 months after the initial response to the discovery request was made." 2011 WL 13214444, at *3–4. As here, the defendants initially served boilerplate attorney-client and work-product privilege objections with their responses to discovery requests. *Id.* at *2. Based on the delay, and even though the finding of waiver may be severe, the court held that "defendant has waived its right to assert privilege as a basis for refusing to produce the documents." *Id.* at *4. After plaintiffs moved to compel, the defendants then moved for a protective order to prevent production of privileged documents and produced a privilege log at the same time. *Id.* The plaintiffs argued that any privilege was waived, because defendant's privilege log was provided 12 months after the initial requests were made. The court agreed. *Id.* at *2–4. The court held that "[b]oilerplate or generalized objections are tantamount to no objection at all and will not be considered by the Court." *Id.* at *3 (quoting *Nissan North America v. Johnson Electric North America*, 2011 WL 669352 (E.D. Mich. 2011)). The court then held that waiver of the privilege was the proper result for such an untimely privilege log, relying on the *Burlington Northern* factors. *Id.* at *3–4. In support of waiver, the court found mere "possible prejudice" to the plaintiffs in the delay of obtaining responsive documents. *Id.* at *4. The court also found that even though the document production was particularly large, the size of the document production did "not excuse the almost 12 month delay in this case." *Id.*

This case presents an even stronger case for waiver. As in *Burlington Northern* and *Hennigan,* Charlesbank and Bain initially failed to specify privilege claims, interposing only a general boilerplate objection. *See* Saveri Decl., Exhibits C and D at 2 [Charlesbank and Bain's Original Objections and Responses]. Without specifying any document requests or documents, or describing the basis of the privilege claims, Charlesbank and Bain made the blanket assertion that the Defendant "objects to the Requests to the extent they seek material that is subject to attorney-client privilege or the work product doctrine." *Id.* As numerous courts have held, "[b]oilerplate or generalized objections are tantamount to no objection at all and will not be considered." *Hennigan*, 2011 WL 13214444, at *3. Then, just as in both *Burlington Northern* and *Hennigan*, Plaintiffs were forced to move to compel the production of documents.

In this case, in December 2021, the court granted in part and denied in part Plaintiffs' motion to compel, requiring the production of the bulk of Plaintiffs document requests. ECF No. 174. Charlesbank and Bain then served revised responses. Saveri Decl., Ex. E, Ex. F. [Charlesbank and Bain's Revised Objections and Responses]. Yet even with their revised responses, Defendants still did not assert any privilege other than incorporating their prior boilerplate objection. *Id.* Defendants then delayed compliance with the order for months. Defendants made a small production in February, then substantially complied with the order to produce documents on April 1, 2022. Defendants scheduled the depositions of their witnesses, without any mention of the withheld documents. No privilege log was produced at the time. Given the passage of time, the presence of the Discovery Protocol setting forth a timetable for producing a log, and no assertion that Charlesbank and Bain were together withholding 5,217 documents, the April 19 and 20, 2022 privilege disclosures were a surprise. It was only then that Charlesbank revealed it had withheld 4,391 responsive documents, and Bain revealed it had

withheld 826 responsive documents. The logs also included 4,768 redacted documents. Even

after that order in December 2021 requiring production of documents, Defendants still did not

produce a privilege log until after the close of discovery, roughly *13 months* after Plaintiffs'

initial request for documents, which were served on Defendants on March 26, 2021. Saveri

Decl., Ex. A, Ex. B.

The *Burlington Northern* factors apply with even greater force here. Starting with the

second factor—the timeliness of the objection and accompanying information about withheld

documents—Defendants produced their privilege logs 13 months after the initial requests were

made, similar in length as in *Hennigan* and much longer than the 5-month delay in *Burlington

Northern*. The *Burlington Northern* court held that Rule 34's 30-day timeline to respond with

adequate privilege objections was the "default guideline." But Defendants here missed that mark

by about a year. Moreover, *Burlington Northern* and *Hennigan* found waiver where the

defendants' logs were served late, but there was no concern over serving the log after the fact

discovery cutoff. Here, Defendants served their logs after the discovery cutoff, further

prejudicing Plaintiff.[6] Further, Defendant here, unlike in *Burlington Northern* and *Hennigan,*

failed to even comply with the jointly-stipulated Discovery Protocol. The Discovery Protocol

mandates that logs must be served in at least 3-installments, with the first being served "no later

---

[6] Defendants attempt to shift responsibility to Plaintiffs, arguing that Plaintiffs caused the delay when they did not accede to Defendants request that Plaintiffs forego a privilege log for certain materials. *See* Saveri Decl., Ex. K. This effort is not well taken. The delay resulted from Defendants' improper refusal to produce responsive documents, requiring a motion to compel. When the Court agreed, granting the motion, Defendants failed to make the production for many months. Defendants failed to provide the log for many months as well, waiting until the depositions of witnesses were underway and past the discovery cutoff. Defendants easily could have avoided many of the problems by making a rolling production of documents and attendant logs of withheld documents in compliance with ESI Protocol and prior to depositions. And many of the documents withheld appear not to be privileged or appear to show waiver of privilege.

than 60 days after the Producing Party's first production (i.e., 135 days after service of Requests for Production)," and the last installment required to be served no later than "90 days before the court-ordered fact discovery cutoff, on which date all privilege logs must be complete." ECF 91 at 14. Defendants missed all three, including the final deadline by 3 months.

In addition, the Discovery Protocol also independently required privilege logs "be complete 10 days before the custodian's deposition." *Id.* Here, Charlesbank's log was produced *after* the Joshua Beer deposition had already concluded on April 20, 2022. Thus, at the time of Mr. Beer's deposition, Defendant had provided no notice to Plaintiff that any of Beer's documents were withheld on privilege grounds. The log, produced after his deposition, shows Defendant withheld or redacted 2,403 responsive documents in which Mr. Beer was a custodian.[7] Plaintiffs could not, therefore, ask Beer about the nature of the documents logged or the subjects of the documents identified to assess the privilege claims. Nor could plaintiff timely challenge entries on the log, and then use the documents improperly withheld in depositions.

The same is true for numerous other deponents. The Charlesbank log was produced only two days before Charlesbank's Janower deposition. The log shows that Defendant withheld or redacted 2,307 responsive Janower documents. Saveri Decl. Ex. I [Charlesbank Log]. The depositions of White and Katz, are proceeding on April 29, just nine days after Charlesbank's log was produced. Defendant appears to have withheld or redacted thousands of responsive documents from the custodial files of these witnesses as well. Similarly, Bain's log was produced on April 19, 2022, just 8 days before Bain's Saron Tesfalul deposition. Saron Tesfalul appears on

---

[7] Mr. Beer is a managing director at Charlesbank and was heavily involved in the purchase of Varsity Brands, as well as the sale of Varsity Brands to Bain. Mr. Beer continues to serve on the board of Varsity Brands. Charlesbank's log shows that they have withheld 1,212 of Mr. Beer's documents and redacted 1,191.

over 1,000 of Bain's privilege entries—close to 50% of all entries. The purpose of the Rules and the Discovery Protocol are to require the party withholding documents to disclose the fact that materials are withheld and sufficient details to assess the privilege claim, with sufficient time that such claims can be reasonably and timely evaluated. Defendants failed to disclose on a timely basis, foreclosing Plaintiffs' ability to evaluate the claims before the close of fact discovery and before the witnesses' depositions.

Likewise, the first *Burlington Northern* factor—the degree to which the objection or assertion of privilege enables the litigant seeking discovery to evaluate whether each of the withheld documents is privileged—also weighs heavily in favor of waiver, because the initial boilerplate privilege objections provided nothing specific that would allow Plaintiffs to assess the asserted privilege claims.

Further, even a cursory review of the logs Charlesbank and Bain untimely produced shows that the logs are insufficient. The logs appear to be readily deficient in several ways. *See* Saveri Decl. Ex. I, Ex. J. [Privilege Logs]. First, the privilege logs' list of individuals included on emails and documents (to, from, cc, bcc, author, custodian) does not contain any information confirming the affiliation of the authors or recipients of the documents. Thus, while Plaintiffs may guess, Plaintiffs cannot determine with certainty, for example, whether the confidentiality of the privilege was maintained. Inadequate disclosure falls short of the withholding party's burden to substantiate the privilege claims. *See* Fed. R. Civ. P. 26(b)(5).

Indeed, it appears that many of the documents on both logs were transmitted to or from individuals that worked for or were affiliated with multiple separate entities, such as Varsity, Bain and Charlesbank, which would therefore not be privileged. It is unclear whether the communications between these entities involve arm's length business transactions or

PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION TO COMPEL DOCUMENTS WITHHELD BY
DEFENDANT CHARLESBANK CAPITAL PARTNERS, LLC, AND BAIN CAPITAL PRIVATE EQUITY

negotiations or other activity. That certain Charlesbank and Bain officers or directors participated in Varsity Board meetings does not absolve Charlesbank or Bain of its Rule 26 disclosure burdens. The fact alone that representatives of Charlesbank, Bain, and Varsity participated in board activities regarding Varsity does not mean that all communications between all individuals working for those entities would be protected.[8] Indeed, in a commercial context or arm's length business transactions, the interests would be adverse or opposed and the communications between those entities not privileged. Contract negotiations, for example, are not privileged. Moreover, while Plaintiffs may have some independent knowledge of some of the persons referred to on the logs by name, it is Defendants' burden to provide the basis for the privilege claim. The log only contains names, without any identification of who the individuals are. It is Charlesbank and Bain's burden to disclose the organization the individual is employed by or affiliated with—a key component of a privilege claim. *See In re Gen. Instrument Corp. Sec. Litig.*, 190 F.R.D. 527, 530 (N.D. Ill. 2000) (finding privilege log inadequate where document recipients were listed by name only). Even with respect to attorneys, Defendants' logs only contain asterisks by certain names, which Plaintiffs assume is used to denote which individuals are attorneys. But even assuming that is the case, there is no indication of who those attorneys represent.

Second, Defendants have included a puzzling field entitled "Other Counsel." Saveri Decl. Ex. I, Ex. J [Privilege Logs].  There is no explanation of what that field represents or where it comes from. It includes the names of individual lawyers in some cases, or the identification of an entire law firm in other cases. There is no explanation regarding who these counsel represented.

_____

[8] At a minimum, such details of these communications should be identified with specificity. They are not.

For example, if counsel represented counterparties to a negotiation or parties with adverse interests, the communication would not be privileged, or privilege would be waived. This is particularly troublesome because this additional field appears to be a significant basis for Defendants' privilege claims with respect to documents that would not appear to be privileged. For example, on Charlesbank's privilege log alone, there are roughly 1,600 emails that were withheld or redacted for attorney-client privilege that do not have an attorney anywhere on the email. Bain's log identifies 489 withheld and redacted emails without any attorney involved in the communication. There are also thousands of entries in which the only attorney on the allegedly privileged email is in the "cc" field. Transmitting a document to a lawyer does not automatically protect the document. The communication must be for the purposes of communicating or seeking legal advice.

Third, the descriptions of most of the withheld documents are inadequate. For example, the logs repeatedly describe voluminous numbers of documents in general non-detailed terms, such as:

- "Regarding Varsity Brands Notes"
- "Regarding Draft Press Release"
- "Regarding Contents of Press Release"
- "Regarding Data Gathering Exercise for Yearbook Transaction"
- "Regarding Content of Draft Disclosure Presentation"
- "Regarding Varsity Preemption Bid Letter"
- "Regarding Varsity's Structure"
- "Regarding Proposed Acquisition of Varsity Brands"
- "Regarding Proposed Acquisition of Jam Brands"
- "Regarding Proposed Acquisition of Director's Showcase International"
- "Regarding Proposed Acquisition of Allgoods"
- "Regarding Varsity Allgoods Purchase Price Adjustment"
- "Regarding Proposed Acquisition of Cheerleading Company"
- "Regarding Varsity Incentive Plan"
- "Regarding Internal Investigation in Connection with Varsity Brands Personnel Employment"
- "Regarding Varsity Closing Statement"

- "Regarding Proposed Officer & Director Changes"
- "Regarding Draft Corporate Communication Plan"

Without more, these descriptions fail to include sufficient detail for Plaintiffs or the Court to assess the privilege claim, which Defendants have the burden of establishing. Fed. R. Civ. P. 26(b)(5)(ii); *NLRB*, 637 F.3d at 501; *In re Gen. Instrument Corp. Sec. Litig.*, 190 F.R.D. at 532.

Courts have found similar statements to fall short of the requirements of the Rule. For example, statements like "Explanation re: Primestar Relationship," "NLC Employee Stock Options," and "Filing with SEC," fail because they do "not even approach the specificity required to establish that the documents are privileged." *In re Gen. Instrument Corp. Sec. Litig.*, 190 F.R.D. at 532. On the other hand, courts have found sufficient much more detailed descriptions, such as "Email string containing confidential communications with outside counsel and in-house counsel regarding employee benefits and labor issues in VECTRAN and PBI transactions." *Vaughan v. Celanese Americas Corp.*, 2006 WL 3592538, at *3 (W.D.N.C. Dec. 11, 2006). Ultimately, "the standard for testing the adequacy of the privilege log is whether, as to each document, it sets forth facts that, if credited, would suffice to establish each element of the privilege or immunity that is claimed." *Id*. Defendant does not meet this bare minimum. Indeed, just as other courts have complained, the problems with the logs are such that, Plaintiffs "can select, almost at random, any entry in the log[s] and be unable to determine how it meets the elements of attorney-client privilege." *In re Gen. Instrument Corp. Sec. Litig.*, 190 F.R.D. at 530.

Moreover, even without the ability for Plaintiffs to properly assess the privilege claims of each document withheld, Charlesbank and Bain's privilege claims are facially suspect. It appears that Charlesbank claimed the attorney-client privilege over one thousand, six hundred and thirteen (1,613) email communications that do not include any attorney. Charlesbank also withheld large numbers of emails where the only reference to an attorney is inclusion as a "cc."

So too with Bain's log. And, both Charlesbank and Bain have claimed privilege over thousands

of documents (stand-alone documents and email attachments) whose author is not an attorney.

Further, it appears that both Charlesbank and Bain withheld numerous documents that

were transmitted to each other, as well as other entities, such as Varsity and third-parties.

Transmission of privileged communications outside of the attorney-client relationship generally

destroys the attorney-client and work-product privileges. Even a cursory review indicates

numerous deficiencies or potential deficiencies.[9]

The third factor also weighs in favor of waiver. Charlesbank and Bain's document

productions are not extremely large. Moreover, they have had ample time to complete their logs.

*See, Hennigan*, 2011 WL 13214444, at *4  (the "large" size of the document production did "not

excuse the almost 12 month delay in this case."). Charlesbank's production was 76,568 total

documents. While a significant size, there are countless cases where the production was far

larger and the producing party was able to satisfy its obligations under Rules 26 and 37 on a

timely basis. Bain's production was only 18,843 documents. By comparison, Varsity's

production was 125,038 total documents. Bain and Charlesbank both claimed privilege over

roughly 10% of each of their entire productions.

The size of the untimely production of the privilege log—virtually at the close of

discovery—presents substantial and unnecessary challenges and prejudice to plaintiffs. In light

of the sheer volume of allegedly privileged documents, coupled with the logs' untimeliness,

---

[9] On April 26, 2022, Plaintiffs sent a letter to Defendant's counsel noting the extreme and
prejudicial untimeliness of the assertion of privilege over thousands of documents and
identifying numerous deficiencies with the log. *See* Saveri Decl. Ex. L. Defendants responded
without addressing any of the specific points raised, claiming that Plaintiffs' position on waiver
made any response on the adequacy of the privilege log "pointless." Saveri Decl. Ex. K.

Plaintiffs cannot reasonably address the significant deficiencies before the depositions of Charlesbank and Bain custodians or the close of discovery. Indeed, this was exactly the situation the ESI Order was designed to prevent.

 The fourth *Burlington* factor also weighs in favor of waiver. There are no exceptional circumstances which excuse this conduct. There were two orders in place—one ordering the production of the documents and the other providing milestones for the timely production of privilege logs—neither of which were followed. Indeed, Charlesbank and Bain could have sought relief from the orders or disclosed the withholding of the documents so as not to prejudice Plaintiffs. Defendants failed to do so. Both Bain and Charlesbank did not produce their privilege logs until after the April 18 close of discovery, and only in response to Plaintiffs' assertion of waiver. This is entirely inconsistent with Defendants' burden. There is no justification—despite Defendants' attempt to blame Plaintiffs for Defendants' inadequate and untimely log, *see* Saveri Decl. Ex. K—for first asserting privilege over roughly 10,000 responsive documents after the close of discovery.

 Charlesbank and Bain have failed to comply with every timetable set in the Discovery Protocol. Charlesbank and Bain failed to produce their logs at a minimum, "90 days before the court-ordered fact discovery cutoff, on which date all privilege logs must be complete." Discovery Protocol, ECF No. 91 at 14. Nor did either Defendant serve its log "10 days before the custodian's deposition." *Id.* Both logs were 13 months delayed from the March 2021 initial requests. Had Defendants complied with their disclosure obligations on a timely basis, Plaintiffs would have had the opportunity to review and address them in an orderly fashion prior to the depositions and the close of discovery. Charlesbank frustrated that.

Accordingly, Plaintiffs respectfully request that the Court find that Charlesbank and Bain have waived privilege over documents withheld pursuant to privilege and order Charlesbank and Bain to immediately produce the documents it has withheld. In anticipation of an opposition brief, Plaintiffs request the opportunity to file a short reply.

Dated: May 2, 2022                     By:_____*/s/ Joseph R. Saveri*_____

                                     Joseph R. Saveri*
                                     Steven N. Williams*
                                     Ronnie Seidel Spiegel*+
                                     Kevin E. Rayhill*
                                     Elissa A. Buchanan*
                                     David Siedel*
                                     **JOSEPH SAVERI LAW FIRM, INC.**
                                   601 California Street, Suite 1000
                                   San Francisco, California 94108
                                   Telephone: (415) 500-6800
                                   Facsimile:  (415) 395-9940
                                   Email:  jsaveri@saverilawfirm.com
                                          swilliams@saverilawfirm.com
                                          rspiegel@saverilawfirm.com
                                          krayhill@saverilawfirm.com
                                          eabuchanan@saverilawfirm.com
                                          dsiedel@saverilawfirm.com

                                   Van Turner (TN Bar No. 22603)
                                   **BRUCE TURNER, PLLC**
                                   2650 Thousand Oaks Blvd., Suite 2325
                                   Memphis, Tennessee 38118
                                   Telephone:  (901) 290-6610
                                   Facsimile:  (901) 290-6611
                                   Email:      vturner@bruceturnerlaw.net

                                   Daniel E. Gustafson
                                   Daniel C. Hedlund
                                   Daniel J. Nordin
                                   Ling S. Wang
                                   **GUSTAFSON GLUEK PLLC**
                                   Canadian Pacific Plaza
                                   120 South Sixth Street, Suite 2600
                                   Minneapolis, MN 55402
                                   Telephone: (612) 333-8844
                                   Facsimile: (612) 339-6622
                                   Email: dgustafson@gustafsongluek.com
                                          dhedlund@gustafsongluek.com
                                          dnordin@gustafsongluek.com
                                          lwang@gustafsongluek.com

                                   Richard M. Paul III*
                                   Sean R. Cooper*
                                   **PAUL LLP**

PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION TO COMPEL DOCUMENTS WITHHELD BY
DEFENDANT CHARLESBANK CAPITAL PARTNERS, LLC, AND BAIN CAPITAL PRIVATE EQUITY

601 Walnut Street, Suite 300
Kansas City, Missouri 64106
Telephone: (816) 984-8100
Fax: (816) 984-8101
Email: Rick@PaulLLP.com
Sean@PaulLLP.com

Jason S. Hartley*
Fatima Brizuela*
**HARTLEY LLP**
101 West Broadway, Suite 820
San Diego, CA 92101
Telephone: (619) 400-5822
Email: hartley@hartleyllp.com
brizuela@hartleyllp.com

* Admitted pro hac vice

+Located in Washington State

*Attorneys for Individual and Representative Plaintiffs*