**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TENNESSEE**

|  |
|---|
| JONES, ET AL. |
| Plaintiffs, |
| v. |
| VARSITY BRANDS, LLC, ET AL., |
| Defendants. |

**Case No. 2:20-cv-02892-SHL-tmp**

**CHARLESBANK'S AND BAIN'S RESPONSE TO PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF EVERY SINGLE DOCUMENT THAT BAIN AND CHARLESBANK HAVE WITHHELD OR REDACTED ON PRIVILEGE GROUNDS**

## **TABLE OF CONTENTS**

INTRODUCTION ...................................................................................................................1

FACTUAL BACKGROUND ..................................................................................................2

ARGUMENT ..........................................................................................................................6

    I.    Bain and Charlesbank's Production of Logs Shortly After The Agreed Date For
          Production of Documents Provides No Grounds for Waiver ...........................................6

    II.   *Burlington Northern* Does Not Support Waiver Here.....................................................9

     1.    The Logs Were Not Untimely.......................................................................................10

     2.    The Document Productions Were Large and Undertaken on an Extremely Compressed
          Schedule........................................................................................................................11

     3.    The Privilege Logs Readily Comply with ESI Protocol and Rule 26............................13

CONCLUSION.......................................................................................................................18

## TABLE OF AUTHORITIES

**Cases**

*Burlington N. & Santa Fe Ry. Co. v. Dist. Ct. of Mont.*,

    408 F.3d 1142 (9th Cir. 2005) ............................................................................9-12

*Factory Mut. Ins. Co. v. Derby Indus., LLC*,

    No. 3:17-CV-00198, 2018 WL 11412924 (W.D. Ky. Sept. 18, 2018) ...................7

*Hennigan v. Gen. Elec. Co.*,

    No. 09-11912, 2011 WL 13214444 (E.D. Mich. June 1, 2011) ...........................18

*In re Dep't of Just. Subpoenas to ABC*,

    263 F.R.D. 66 (D. Mass. 2009) ......................................................................7, 11

*Mitchell v. Cap. Recs., LLC*,

    No. 3:15-CV-00174-JHM, 2018 WL 2011934 (W.D. Ky. Apr. 30, 2018)...........18

*Nissan N. Am. v. Johnson Elec. N. Am.*,

    No. 09-CV-11783, 2011 WL 669352 (E.D. Mich. 2011) ....................................18

*White v. Graceland Coll. Ctr. for Pro. Dev. & Lifelong Learning, Inc.*,

    586 F. Supp. 2d 1250 (D. Kan. 2008) ..................................................................7

*Williams v. Bridgeport Music, Inc.*,

    300 F.R.D. 120 (S.D.N.Y. 2014) .........................................................................7

**Other Authorities**

Fed. R. Civ. P. 26.....................................................................................................13

## INTRODUCTION

Plaintiffs' privilege waiver motion should be denied.  The parties agreed that Bain and Charlesbank would "substantially complete" their production of documents by April 1, 2022.  There is no dispute that Bain and Charlesbank met that deadline.  Nor is there any dispute that, less than three weeks later, Bain and Charlesbank produced comprehensive, document-by-document privilege logs regarding the documents that were either redacted or withheld on privilege grounds.  Both the timing of the logs' production and their content exceeded the standards of Plaintiffs' privilege logs, were prepared in good faith, and, indeed, comply with the Federal Rules and the parties' agreements.  Nor is there any serious dispute that the vast majority of the withheld documents or portions of documents were validly withheld or redacted.

Nor should the slight gap between the agreed production of documents on April 1, 2022 and the production of the privilege logs a few weeks later have caused any surprise to Plaintiffs.  The parties discussed that there would be an extensive number of privileged documents, mainly caused by Plaintiffs' insistence that all routine correspondence with counsel (including outside counsel) relating to the drafting of deal documents related to the sale of Varsity Brands by funds managed by Charlesbank to funds managed by Bain be logged.  (Kaiser Decl., Ex. 1 at 3-4 (Feb. 15, 2022 email from Steven J. Kaiser to Katherine Malone).)  Indeed, Plaintiffs' insistence that all such documents be produced (or, if withheld or redacted, logged) was the main reason it took until April 1 for Bain and Charlesbank to pick through the tens of thousands of documents and separate those that needed to be withheld or redacted, to apply the redactions as needed, and to complete their respective productions, followed by a few weeks to finalize the privilege logs.

Plaintiffs also seek to raise issues with the contents of the logs.  These meritless complaints are particularly odd because Plaintiffs' own privilege logs provide less information

than Bain's and Charlesbank's logs.  Moreover, Bain's and Charlesbank's logs are in the same

form as the Varsity logs and, at the time the Varsity logs were produced, Plaintiffs were asked to

raise any issues with the form of the logs because future logs would follow the same form.  (*See*

Kaiser Decl. ¶ 4 & Ex. 2.)  For example, Plaintiffs now say that the Bain and Charlesbank logs

are deficient because they do not provide the email addresses of document recipients.  The

Varsity logs do not either, nor is there any requirement that Bain and Charlesbank are aware of

that would require that.  (In any event, Plaintiffs already have virtually all of this information

from the metadata that was provided.)  The proper way to address legitimate issues with a log is

to address those issues by category or document, not the extreme (and legally improper) sanction

of waiver.

Plaintiffs' motion should be denied in its entirety.

## FACTUAL BACKGROUND

The factual premise of Plaintiffs' motion—keyed off Plaintiffs' issuance of document

requests on March 26, 2021—falls apart when the actual facts are considered.

Plaintiffs' original document requests were objectionable on many grounds.  Ultimately

the main dispute centered around which custodians' files would be searched, the relevant time

periods for the search, and whether expensive and questionable sources such as voicemails and

text messages would be searched.  Plaintiffs were intransigent, never yielding on their demand

that the files of nine individuals at Bain and eight individuals at Charlesbank be searched, that

voicemails and text messages be searched and produced, and that the time period for Bain and

Charlesbank extend all the way to 2013 and forward to the present day.  Bain and Charlesbank

attempted to work out a proportional level of production, but Plaintiffs refused to move at all,

other than partially acceding to June 30, 2020 as a forward cutoff for certain documents.  In

particular, Bain and Charlesbank proposed a production from the files (but not text messages and voicemails) of the individuals at each company who were primarily involved in their funds' investments in Varsity Brands, and that the time period be limited to a reasonable time period, with due regard to the fact, for example, that funds managed by Bain did not even acquire interests in Varsity Brands until mid-2018.

Ultimately, these issues came to a head when Plaintiffs filed a motion to compel on September 19, 2022, which itself was a day after the deadline.  (*See* ECF No. 106 (granting *post hoc* motion for late filing).)  This was long after the original deadline for such motions, which had already been extended several times at Plaintiffs' request.  (*See* ECF No. 84; ECF No. 94)  Magistrate Judge Claxton initially indicated the motion would be set aside in light of the Court's dismissal of identical claims against Bain and Charlesbank in the related American Spirit case. (Hr'g Tr. 4:22-5:10, ECF No. 143 (Oct. 28, 2021) ("Judge Lipman entered an order in the American Spirit case dismissing Bain and Charlesbank. . . . So I'm going to [shelve] [the motions to compel] until I see what judge is going to do with those.").)  Before that ruling could be finalized, Magistrate Judge Claxton was replaced by Chief Magistrate Judge Pham, who decided to go forward with the motion.  On December 13, 2021, Magistrate Judge Pham denied the extensive custodial searches that Plaintiffs demanded, limited the searches to twelve custodians instead of the seventeen requested, rejected Plaintiffs' demand for text messages, and limited the time period for production to January 1, 2015 to June 30, 2020 (for Charlesbank) and June 30, 2017 to June 30, 2020 (for Bain).  (*See* ECF No. 175.)  Bain and Charlesbank set off diligently to comply with the Court's order.

The Court did not specify a time for production.  The general scheduling order in the case required that, subject to any pending objections, production was to be completed 165 days after

the requests were issued.  (ECF No. 61.)  In this instance, however, that date had already passed while objections were still pending.  Logically this meant that production was due to be completed 165 days from the date of the December 13, 2021 Order, but that would have meant completing production in late May 2022, which was after the close of discovery.  This prompted discussions among the parties about the timing of production, which ultimately resulted in the parties' agreeing that production would be substantially completed by April 1, 2022 and that any depositions of Bain and Charlesbank could, subject to the Court's approval, take place through May 7, 2022.  (ECF No. 211.)  Plaintiffs proposed the April 1, 2022 date, to which Bain and Charlesbank agreed.  (Kaiser Decl., Ex. 1 at 1 (Mar. 10, 2022 email from S. Kaiser to R. Spiegel).)

During the course of these discussions, Bain and Charlesbank informed Plaintiffs on several occasions, including by email on February 15, 2022, that the production that had been ordered was large and burdensome and encompassed many privileged documents that would need to be withheld in full or in part.  (Kaiser Decl., Ex. 1 at 3-4 (Feb. 15, 2022 email from Steven J. Kaiser to Katherine Malone).)  In the February 15 email to Plaintiffs' counsel (including lead counsel Joseph Saveri, who signed the motion papers here), Bain and Charlesbank's counsel wrote that producing documents quicker was "impossible because of the large amounts of irrelevant documents relating to the technical back and forth negotiation of deal-related documents, *many of which are privileged in whole or in part . . . .* " (*Id.* (emphasis added).)  This was largely due to the extremely broad Request 5, which called for the production of "All Documents and Communications referring or relating to Your ownership and operation of

Varsity."[1]   Bain and Charlesbank's counsel proposed commonsense ways to eliminate irrelevant documents, many of which would be privileged in whole or in part, in particular the routine back and forth with counsel regarding negotiating the 2018 purchase and sale of Varsity Brands equity from funds managed by Charlesbank to funds managed by Bain.   Plaintiffs' counsel initially refused to engage on the subject entirely, later said that they would consider it, but ultimately never definitively responded.   Perhaps confusing Plaintiffs' response was that, unbeknownst to Bain and Charlesbank, Plaintiffs' principal lawyer involved in the discussions abruptly left the employment of the Saveri Law Firm.

In any event, there were never *any* discussion of the specific timing of production of privilege logs.   In the meantime, the productions that were made, including the final productions on April 1, contained documents that indicated "redaction for privilege."   Left unredacted were the authors and recipients of the documents, the date of the documents, the subject matter of the documents (in the case of emails) and most of the other information that would subsequently be put on any log.   Plaintiffs did not question any of these redactions.   (Kaiser Decl. ¶¶ 2-3.)

After the document production was substantially completed on April 1 as agreed, the first time the issue of the privilege logs came up was when Plaintiffs' counsel Kevin Rayhill sent an email at 10:23 pm EDT on April 18, the night before the first Charlesbank deposition.   (Kaiser Decl., Ex. 3 at 4-5 (Apr. 18, 2022 email from Kevin Rayhill to Steven J. Kaiser).)   In that email, Plaintiffs demanded production of all of the documents that had been withheld in whole or in

---

[1] Although neither Bain nor Charlesbank ever "owned" or "operated" Varsity, Bain and Charlesbank understood this request to be seeking all documents relating to Varsity matters, including the 2018 acquisition of equity in Varsity Brands by funds managed by Bain from funds managed by Charlesbank.

part as privileged because, according to Plaintiffs, all privilege had been waived.  Counsel did not request that the upcoming depositions be rescheduled.

At this point, Bain and Charlesbank had been working diligently to complete their logs as soon as possible after the April 1 production and produced the logs on April 19 in the case of Bain and April 20 in the case of Charlesbank.  (Kaiser Decl. ¶ 2.)  This was less than 48 hours after receiving Mr. Rayhill's email and less than 20 days after the April 1 agreed date for the document productions to be substantially completed.  Bain and Charlesbank also noted their disagreement with Plaintiffs' waiver position in several subsequent communications and stated that "we think a more productive course would be to drop the waiver argument and work through any issues you think you have with the log[s]."  (Kaiser Decl., Ex. 3.)  Plaintiffs instead persisted in their waiver position, although they did not file the instant motion for nearly a week, during which time five of the nine Bain and Charlesbank depositions took place.[2]  Because Plaintiffs were bent on pursuing waiver, it was clear that further discussions about particular questions or issues that Plaintiffs had with the log would be pointless.

## ARGUMENT

### I.   BAIN AND CHARLESBANK'S PRODUCTION OF LOGS SHORTLY AFTER THE AGREED DATE FOR PRODUCTION OF DOCUMENTS PROVIDES NO GROUNDS FOR WAIVER

Privilege waiver is an extremely harsh remedy that is not employed in situation like those at bar.  "Acknowledging the harshness of a waiver sanction, . . . courts have reserved such a

---

[2] In response to Plaintiffs' prior motion to take eighteen 30(b)(1) depositions of current and former Bain and Charlesbank employees and a deposition under Rule 30(b)(6) of each of Bain and Charlesbank, the Court granted leave to take eight depositions under Rule 30(b)(1) of specifically identified individuals and one additional 30(b)(1) deposition among three specifically identified individuals, otherwise denying the motion.  (ECF No. 261.)  Those depositions were all completed between April 19 and May 5, which was within the modified deadline of May 7 that the Court had set at the parties' joint request.  (*See* ECF No. 211.)

penalty only for those cases where the offending party committed unjustified delay in responding to discovery. Minor procedural violations, good faith attempts at compliance and other mitigating circumstances bear against finding waiver." *White v. Graceland Coll. Ctr. for Pro. Dev. & Lifelong Learning, Inc.*, 586 F. Supp. 2d 1250, 1266 (D. Kan. 2008). "Waiver should only be found 'in the absence of mitigating considerations' and "is appropriate where the responding party's conduct evinces a 'deliberate party of delay' and is 'egregious.'" *In re Dep't of Just. Subpoenas to ABC*, 263 F.R.D. 66, 71 (D. Mass. 2009) (rejecting assertion of waiver based on course of dealing of parties, volume of document production, and lack of bad faith). *See also Williams v. Bridgeport Music, Inc.*, 300 F.R.D. 120 (S.D.N.Y. 2014) (holding that nineteen day interval between the production of materials and furnishing of privilege did not provide basis for waiver); *Factory Mut. Ins. Co. v. Derby Indus., LLC*, No. 3:17-CV-00198, 2018 WL 11412924 (W.D. Ky. Sept. 18, 2018) ("waiver of the privilege is inappropriate because of mere delay").

Cutting through Plaintiffs' rhetoric, Plaintiffs complain that Bain and Charlesbank produced their logs eighteen and nineteen days, respectively, after the agreed date for them to substantially complete their document productions. That is obviously a "good faith attempt" at compliance that does not warrant a sanction of waiver. Moreover, there are numerous other mitigating circumstances that bear against waiver. For example, as discussed below, the Bain and Charlesbank logs, in addition to complying with all applicable requirements, are of the same form that Plaintiffs accepted in the case of the Varsity privilege logs. Moreover, the document productions were very large and required substantial review work in a short period. Plaintiffs refused to negotiate reasonable limitations that would have moved the production and logging work along more quickly.

Plaintiffs repeatedly suggest that Bain and Charlesbank were required to produce privilege logs at the time of filing objections to document requests in April 2021. (ECF No. 290-1 at PageID 5667; hereinafter "Pls.' Br." ("Plaintiffs served their requests for production on Bain and Charlesbank over a year ago"); *id.* at PageID 5672-73 (suggesting that general privilege objections served at time of initial responses "forfeit" privilege); *id.* at PageID 5675 (suggesting that "boilerplate privilege objection[s] made at time of initial response meant waiver); *id.* at PageID 5679 (arguing in favor of waiver "because the initial boilerplate privilege objections provided nothing specific that would allow Plaintiffs to assess the asserted privilege claims.")) Such a requirement—which Plaintiffs themselves did not observe in this litigation—is not what was contemplated by the parties in this litigation and, indeed, would have been entirely impractical. Rather, as Plaintiffs concede (Pls.' Br. at PageID 5677-78), the parties negotiated a schedule for the production of privilege logs that contemplated that they would be produced *after* the documents were produced. In that regard, the deadline for the production of documents was 165 days after the promulgation of document requests (but subject to any pending objections), which would have put the deadline for production of documents (again subject to any pending objections) in mid-September 2021. The deadline for log production was 90 days prior to the close of discovery, which would have been in mid-November 2021 based on the schedule in place at the time. In no sense did the parties ever contemplate or require privilege logs be produced before or contemporaneously with the documents.

To be sure, the general scheduling order did not address the situation here, where late-resolved objections made the intervals untenable. In particular, Bain's and Charlesbank's objections were not resolved until the Court ruled on the motion to compel on December 13, 2021. Although Bain and Charlesbank worked diligently—and expended significant resources—

to find, gather, search, and review the documents that they had been ordered to produce, the task took a significant amount of time. And, in any event, the schedule ultimately was implicitly superseded by the parties' *agreement* that Bain's and Charlesbank's productions would be substantially completed by April 1, 2022, which they were. At no time did Plaintiffs suggest that the logs should be produced at any particular time and certainly not at the time Bain and Charlesbank lodged their original objections to Plaintiffs' document requests.

In these circumstances, the only appropriate way to measure the timing of the production of privilege logs in these circumstances is the agreed date of production of documents, which was April 1, 2022. The logs were produced eighteen and nineteen days later. There was no untoward delay or bad faith conduct.

## II.   *BURLINGTON NORTHERN* DOES NOT SUPPORT WAIVER HERE

In seeking their extreme remedy of waiver, Plaintiffs rely almost entirely on the Ninth Circuit's decision in *Burlington N. & Santa Fe Ry. Co. v. Dist. Ct. of Mont.*, 408 F.3d 1142 (9th Cir. 2005). In *Burlington Northern*, the Ninth Circuit explicitly rejected the very premise of Plaintiffs' argument—"[W]e reject a *per se* waiver . . . if a privilege log is not produced within [30 days]." *Id.* at 1149. Here, of course, the logs *were* produced within 30 days of the April 1, 2022 agreed date of production, and Plaintiffs were on notice at least two months before that date that there would be many documents that would need to be withheld or redacted and in large measure why. Plaintiffs did nothing until the very eve of depositions and now seek to invalidate all privilege.

In rejecting the kind of "per se" waiver rule that Plaintiffs seek here, the Ninth Circuit went on to identify several factors to assess a late production of a privilege log, which did not even happen here. Indeed, even if logs produced nineteen and twenty days after the agreed production date for documents were "late," none of these factors help Plaintiffs, certainly not "in

the context of a holistic reasonableness analysis" as the Ninth Circuit emphasized is required, as opposed to the kind of "mechanistic" application for which Plaintiffs advocate. *Id*. at 1149. Indeed, the ultimate conclusion of the Ninth Circuit in *Burlington Northern* not to intervene in the district court's finding of waiver is instructive because it stands in stark counterpoint to the circumstances at hand. "The district court found a waiver where the log not only was not filed during the [30 days], but was filed *five months* later," that the "assertion of privileges by Burlington were insufficient," "many of the documents were previously produced in a prior lawsuit," and that Burlington, "even after producing the privilege log, made substantive changes to that log." *Id.* at 1149-50. As discussed below, none of those factors is present here.

### 1.    The Logs Were Not Untimely

First, the logs were not "untimely." The Ninth Circuit noted that "service within 30 days, as a default guideline, is sufficient." 408 F.3d at 1149. Here the service was within nineteen and twenty days of the agreed date of the April 1 for production of documents. In *Burlington Northern*, the privilege logs were served *five months* later. *Id.*

Apparently recognizing this fundamental problem with their waiver-by-timing theory, Plaintiffs seek to move the relevant date back to some prior date, perhaps as far back as Bain's and Charlesbank's original responses to Plaintiffs' document requests. But as discussed above, that would not have been in keeping with the parties' overall agreement as to the timing of log production. The parties always contemplated that the logs would follow production, which is common in litigations with large document productions like this. Any other approach would not be realistic.

Plaintiffs' arguments on timing ring particularly hollow because Plaintiffs themselves missed every deadline they now cite against Bain and Charlesbank. In particular, on June 10, 2021, Plaintiffs served their objections and responses to Defendants' document requests. They

did not make particularized claims of privilege at that time but rather made "boilerplate objections" as Plaintiffs use that term in their motion to describe Bain's and Charlesbank's objections.  On September 23, 2021—135 days after the requests for production and the date on which Plaintiffs say a log was due—Plaintiffs had not served any privilege logs.  On November 20, 2021, 90 days before the then-in-force discovery cutoff of February 18, 2022 and another day on which Plaintiffs say a log was due, Plaintiffs had not served any privilege logs.[3]  As of November 21, 2021, ten days before December 1, when Plaintiff Jones' deposition was scheduled and therefore another day on which they say a log was due, no privilege logs had been received including from Jones.  The logs were only produced after Defendants prodded them on November 30, and even then, they were produced after the date scheduled for the Jones deposition.  (Kaiser Decl., Ex. 4 (In the meantime, Plaintiffs canceled Ms. Jones' December 1 deposition due to illness).)

The fact that Plaintiffs did not follow the timing rules that they say applied is yet another reason why the extreme remedy of waiver is inappropriate here.  *See, e.g.*, 263 F.R.D. at 71 (rejecting waiver because of parties' course of dealing among other reasons); *see also* 408 F.3d at 1149 (requiring "holistic" view in assessing waiver).

### 2.     The Document Productions Were Large and Undertaken on an Extremely Compressed Schedule

The magnitude of the document production was large and undertaken on an extremely tight schedule of just over three months, including the intervening holidays, all in the context of disruptions related to the global pandemic.  There was nothing "easy" about these productions. The third and fourth factors identified in *Burlington Northern* therefore point strongly against

---

[3] The scheduling order was not amended to move the close of fact discovery from February 18 to April 18 until December 16, 2021.

waiver.

Indeed, per the Court's Order, Bain and Charlesbank were required to produce documents using broad search terms from the custodial files of twelve custodians, which resulted in 76,543 documents being produced by Charlesbank and 18,792 being produced by Bain.[4]  These sources needed to be located, collected, searched, and reviewed for responsive documents.  In addition to the magnitude of the undertaking, there is also the fact that a large number of documents were privileged in whole or in part, which is not surprising given Plaintiffs insisted that every document relating to the negotiation of the transfer of shares from funds managed by Charlesbank to funds managed by Bain in 2018 be included in the production (or logged as privileged).  Many of these documents required intricate redactions to ensure that only privileged material was withheld, often because the document consisted of an email that was shared by both sides of the transaction (not privileged) with internal emails with counsel regarding legal issues (privileged).[5]  Ultimately, Charlesbank either withheld or redacted 7,914 documents and Bain withheld or redacted 2,071 documents.  And all of this needed to be done quickly, beginning in the middle of the holidays and in the midst of the Omicron surge of the COVID-19 pandemic.  In stark contrast, in *Burlington Northern*, the production was actually mainly a reproduction of documents that had been made in a previous case.  *See* 408 F.3d at 1149 (noting that responding to discovery in that case was "unusually easy" because "many of the same documents were the

---

[4] For example, Request 5 to both Bain and Charlesbank was for "All Documents and Communications referring or relating to Your ownership and operation of Varsity," without any limitation to cheerleading or to any other particular subject or subjects.  (ECF No. 290-3, Saveri Decl., Ex. A at 8; ECF No. 290-4, Saveri Decl., Ex. B at 8.)

[5] As noted, to try to speed things up, Bain and Charlesbank made suggestions as to how the scope of productions could be narrowed, but Plaintiffs rejected all such suggestions out of hand.  For example, Bain and Charlesbank proposed that they omit routine documents such as exchanges of draft acquisition-related documents and attorney-client communications relating to such drafts, the volume of which complicated production and privilege review efforts.  (Kaiser Decl., Ex. 1.)

subject of discovery in an earlier action").

### 3.    The Privilege Logs Readily Comply with ESI Protocol and Rule 26

In a last effort to disparage Bain's and Charlesbank's privilege logs, Plaintiffs

mischaracterize their contents, with vague assertions of "issues."  (Pls.' Br. at PageID 5679-83.)

Plaintiffs' assertions do not withstand scrutiny.

Each entry on the logs provide the subject matter of the document, the particular privilege

claimed, the basis for the claim (in other words, that the withheld portions provide legal advice,

request legal advice, discuss legal advice receive, were an attorney prepared draft legal document

like a contract, provide information to counsel to obtain legal advice, request information by

counsel to provide legal advice, and so forth), as well as a further description of the particulars

(for example, regarding contractual terms and conditions of acquisition of Varsity Brands).

Lawyers acting as such for Bain or, after the period of Bain's investment in Varsity Brands, for

Varsity Brands, are indicated with asterisks.  Similarly, lawyers acting for Charlesbank or, during

the period of Charlesbank's investment in Varsity Brands, for Varsity Brands, are indicated with

asterisks.

Plaintiffs do not identify any particular documents at issue, making it impossible to know

in each instance to which particular documents Plaintiffs refer.  This reduces their criticism to

vague assertions of possible issues, that Bain and Charlesbank are confident would, if

particularized, reduce to nothing.  Based on the limited information provided, however,

Plaintiffs' criticisms are not well taken.  Primarily, Plaintiffs complain that the logs do not

"contain any information confirming the affiliations of the authors or recipients of the

documents."  As noted, this has been true of all of the logs in this case, and until now, no one has

complained about it.  This is all the more troubling because Plaintiffs were asked to lodge such

complaints when Varsity's initial log was produced in September 2021, because future logs

13

would follow the same format.  No such complaint was forthcoming (nor has any Complaint of

this nature ever been received from any Plaintiff in the related cases.)  In any event, Plaintiffs

already have all or virtually all of this information.  The same individuals who are identified in

the log are also identified in myriad produced documents, with their email addresses, which are

also contained in metadata.  In other words, Plaintiffs were provided the information they say

Bain and Charlesbank were required to provide.  Moreover, as to the redacted documents, they

are listed in the documents themselves.  To the extent that Plaintiffs legitimately have questions

about the identities or affiliations of any individuals, they could have been addressed on a case-

by-case basis.

Relatedly, Plaintiffs argue that "it appears that many of the document on both logs were

transmitted to or from individuals that worked for or were affiliated with multiple separate

entities, such as Varsity, Bain and Charlesbank, which would therefore not be privileged"

because they may have "involve[d] arm's length business transactions or negotiations or other

activity."  (Pls.' Br. at PageID 5679-80.)  This appear to be a reference to the fact that there was a

business transaction between Bain and Charlesbank in 2018 whereby certain funds managed by

Charlesbank sold certain interests in Varsity Brands to certain funds managed by Bain.  Plaintiffs

do not point to a single document that fits into this category—and, in any event, Bain and

Charlesbank were mindful of this issue when deciding if a document was privileged.  Indeed,

there are many documents in the production where communications from Charlesbank's lawyers

to Bain's lawyers relating to the business transaction were produced.  The suggestion that Bain

and Varsity (during the time of the Bain's funds' investment in Varsity), or Charlesbank and

Varsity, or Charlesbank and Bain and Varsity cannot share privileged communications in

appropriate circumstances is simply wrong.

14

Second, Plaintiffs object to the use of a field called "Other Counsel" and incorrectly state that "[t]here is no explanation of what that field represents or where it comes from." (Pls.' Br. at PageID 5680.) In fact, Plaintiffs asked about this field in the context of the Varsity privilege logs and were told that this field provides further information about counsel that does not appear in the metadata, typically in redacted documents where the counsel is not in the top email (which typically was produced unless it was otherwise privileged) or indicates the attorney author of legal documents. (Kaiser Decl., Ex. 5.) They never questioned this field again until now. In any event, the purpose of this field is to provide additional information about the documents that is not apparent in the metadata to help Plaintiffs assess the claim of privilege.

Third, Plaintiffs object to descriptions of documents. But they omit the fact that as to each document, Bain and Charlesbank provided additional information about the privilege basis in the form of notations that the document as described above (*e.g.*, "requesting legal advice," "providing legal advice," etc.). Moreover, as Plaintiffs were informed in February 2022 and earlier, the large majority of the withheld and redacted documents related to negotiations over the Bain/Charlesbank transaction in 2018, which is to say internal communications with counsel regarding the terms and conditions of that transaction and related issues such as document drafting. Not surprisingly, this in turn led the large majority of the entries to refer to "requesting" or "providing" legal advice "regarding contractual terms and conditions" relating to the transaction, which of course is a core reason why legal advice is sought and received and makes perfect sense in the context of this case, where Plaintiffs have continually sought to bring the 2018 transaction into issue.

At any rate, Plaintiffs appear to approve of the description "Email string containing confidential communications with outside counsel and in-house counsel regarding employee

benefits and labor issues in VECTRAN and PBI transactions." (*See* Pls.' Br. at PageID 5682.) But this is far *less* than the information that Bain and Charlesbank provided in their entries, which includes what type of document is at issue (including email), who sent and received the document (including who the lawyers were), whether legal advice was being sought or received (and whether information was being sought or conveyed to seek such legal advice), the subject of the email (or, in the case of non-emails, the filename), the date, and yet additional detail about the document such as "regarding contractual terms and conditions of Bain's acquisition of Charlesbank." Taking all of this together, Plaintiffs can construct a sentence that has far more information than the one Plaintiffs approve of, for example, as to the first entry on Bain's log, "emails involving Bain counsel and Bain employees (listed in entry) on June 22, 2018 wherein legal advice is requested and provided relating to the contractual terms and conditions of acquisition of Varsity Brands with specific reference to a Varsity Management Equity Straw Man."

The other thing Plaintiffs incorrectly assert is that Charlesbank "claimed the attorney-client privilege over [1,613] email communications that do not include an attorney." (Pls.' Br. at PageID 5682.) Plaintiffs make no similar numerical claim about Bain's log. As to the Charlesbank log, the vast majority of the documents at issue (approximately 1,500) are documents that were redacted, which is to say that the top email that did not contain lawyers generally (if not always) was produced. Plaintiffs can inspect the redacted documents to ascertain who sent and received the redacted portions, as that information is not redacted. Likewise, Plaintiffs criticize documents where an attorney was "cc'd." They cite no basis for suggesting that an attorney must be on the "to" line of an email for a document to be privileged. The insinuation seems to be that Bain and Charlesbank withheld documents merely on the basis

16

that an attorney was copied on them.  But that is incorrect, as Plaintiffs well know insofar as they used many documents that originated from an attorney or on which an attorney was copied in their depositions and there are many more in the productions.  In any event, documents that listed an attorney as a "cc" were reviewed again to ensure they were validly subject to a privilege claim.  (Kaiser Decl. ¶ 5.)

Further refuting Plaintiffs' arguments that Bain and Charlesbank's logs are insufficient are the privilege logs produced on December 3, 2021 by these same Plaintiffs, and then only after prodding from the Defendants ahead of scheduled depositions.  (*See* Kaiser Decl., Ex. 4.) Plaintiffs' logs contain far *less* information than Bain and Charlesbank's logs.  For example, Plaintiff Lorenzen's entire privilege log is reproduced below at Figure 1:

**Figure 1 – Lorenzen Privilege Log**

LORENZEN PRIVILEGE LOG
December 2, 2021

| Begin Bates | End Bates | All Custodians | Author | Bcc | Cc | Custodian | Date Created | Date Received | Date Sent | Document Type | Subject | To | From | Privilege Type | Withheld in Entirety |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| LORENZEN_000778 | LORENZEN_000778 | Christina Lorenzen | clorenzen | | | Christina Lorenzen | 9/6/2019 15:07 | | | DOCUMENT | Cheer and band Scheduling | | | Attorney Client Privilege | Yes |
| LORENZEN_000838 | LORENZEN_000838 | Christina Lorenzen | | | | Christina Lorenzen | | 9/3/2019 16:07 | 9/3/2019 16:06 | EMAIL | RE: HELP! URGENT! (Cheer and band scheduling) | "My Email" <angelseekscowboy3 @yahoo.com> | "jshively@ shivelyde mos.com" <jshively@ shivelyde mos.com> | Full Doc A/C Privilege | Yes |

(Kaiser Decl., Ex. 5.)  As can be seen, in Ms. Lorenzen's log entries, there is no explanation for the basis of privilege (for example requesting legal advice, providing legal advice, prepared in anticipation of litigation, etc.) or even specific identification that a lawyer was an author or recipient of the document.  (It may be that jshively@shivelydemos.com is a lawyer, but nowhere is that indicated.  Nor is the identity of "angelseekscowboy3@yahoo.com" specified, although based on later deposition testimony it is understood that this is an email address that Ms. Lorenzen uses.)  The topic "Cheer and band Scheduling" certainly is not suggestive of privilege.

17

The logs of Plaintiff Jones and former Plaintiff Cherasero are similar in content.  (*Id.*)

Plaintiffs' failure to follow the very requirements—both on timing of provisioning of logs and on the content of those logs—that they seek to enforce against Bain and Charlesbank is an extreme case of unclean hands that is another reason to deny Plaintiffs' waiver motion.  And, unlike Bain and Charlesbank, Plaintiffs only produced a handful of documents each and had privilege logs of a few documents each.  Bain and Charlesbank were certainly entitled to rely on the scope and form of Plaintiffs' privilege logs in determining the information that Plaintiffs deemed adequate.[6]

### CONCLUSION

Bain and Charlesbank respectfully request that the Court deny Plaintiffs' motion to require Bain and Charlesbank to produce all of the documents that have withheld in whole or in part on privilege grounds.

---

[6] The other cases Plaintiffs cite simply further prove the point that there is no basis for waiver under the reasoning of *Burlington Northern*.  In *Hennigan v. Gen. Elec. Co.*, No. 09-11912, 2011 WL 13214444 (E.D. Mich. June 1, 2011), no privilege log was produced for a year after the time required for responding to document requests.  Here the privilege logs were produced eighteen and nineteen days after the agreed date for production, and Plaintiffs had been on notice for many weeks that a substantial number of documents would be withheld or redacted and the general reason as to the large majority of them (to which they did not object).  They were also on notice of the specific redacted documents because they had them in their possession.  Although the privileged content of these documents (typically emails) was redacted, the authors, recipients, dates, and subject matters of the documents was not.  *Mitchell v. Cap. Recs., LLC*, No. 3:15-CV-00174-JHM, 2018 WL 2011934 (W.D. Ky. Apr. 30, 2018) likewise does not help Plaintiffs. There the party claiming privilege asserted that it had not withheld any privileged documents and produced no log at all.  *Id.* at *2.  Here, by contrast, Bain and Charlesbank have produced comprehensive logs and before that informed Plaintiffs that there would be many documents withheld or redacted for privilege.  Plaintiffs also cite *Nissan N. Am. v. Johnson Elec. N. Am.*, No. 09-CV-11783, 2011 WL 669352 (E.D. Mich. 2011) (Pls.' Br. at PageID 5675), but that case has nothing to do with privilege waiver.

Dated: May 16, 2022

Respectfully submitted,

s/ Matthew S. Mulqueen

George S. Cary*
Steven J. Kaiser*
Linden Bernhardt*
CLEARY GOTTLIEB STEEN &
  HAMILTON LLP
2112 Pennsylvania Avenue, NW
Washington, DC 20037
Phone: (202) 974-1500
Fax: (202) 974-1999
gcary@cgsh.com
skaiser@cgsh.com
lbernhardt@cgsh.com

Jennifer Kennedy Park*
Heather Nyong'o*
CLEARY GOTTLIEB STEEN &
  HAMILTON LLP
1841 Page Mill Road, Suite 250
Palo Alto, CA 94304
Phone: (650) 815-4100
Fax: (202) 974-1999
jkpark@cgsh.com
hnyongo@cgsh.com

* Admitted pro hac vice

Matthew S. Mulqueen (TN #28418)
Adam S. Baldridge (TN #23488)
BAKER, DONELSON, BEARMAN,
  CALDWELL & BERKOWITZ
165 Madison Avenue, Suite 2000
Memphis, TN 38103
Phone: (901) 526-2000
Fax: (901) 577-0866
mmulqueen@bakerdonelson.com
abaldridge@bakerdonelson.com

*Attorneys for Charlesbank Capital Partners,*
*  LLC and Bain Capital Private Equity*

19