# Exhibit D

## Kevin Rayhill

| | |
|---|---|
| **From:** | Ruby Ponce |
| **Sent:** | Friday, March 11, 2022 10:50 AM |
| **To:** | gcary@cgsh.com; skaiser@cgsh.com; Park, Jennifer Kennedy; Nyong'o, Heather; mmulqueen@bakerdonelson.com; abaldridge@bakerdonelson.com; Edward.Stanton@butlersnow.com; Garrison, Grady; Berkowitz, Nicole; Roach, Andrew |
| **Cc:** | Joseph Saveri; Ronnie Spiegel; Kevin Rayhill; Elissa A. Buchanan; Sofia Jordan; Gurjit Aulkh; Ashleigh Jensen; Sean Cooper; Dan Nordin; dhedlund@gustafsongluek.com; dgustafson@gustafsongluek.com; Jason Hartley; Jason Lindner; rick@paulllp.com; Van D. Turner; lwang@gustafsongluek.com |
| **Subject:** | Jones et al v. Bain Capital Private Equity et al., Case No. 2:20-cv-02892-SHL-cgc |
| **Attachments:** | 2022-03-11 Varsity Corporate Representative Depo 30(b)(6) Notice of Charlesbank.pdf; 2022-03-11 Varsity Corporate Representative Depo 30(b)(6) Notice of Bain.pdf |

Counsel,

Attached please find the following regarding the above-noted matter:

- NOTICE OF DEPOSITION PURSUANT TO FED. R. CIV. P. 30(B)(6) OF BAIN CAPITAL PRIVATE EQUITY
- NOTICE OF DEPOSITION PURSUANT TO FED. R. CIV. P. 30(B)(6) OF CHARLESBANK CAPITAL PARTNERS

Thank you,

**Ruby Vazquez-Ponce**
*Paralegal*

_____



601 California Street, Suite 1000
San Francisco, CA 94108
**T** 415.500.6800 x809
**F** 415.395.9940

1

Exhibit D
Attachment 1

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
### WESTERN DIVISION

| | |
|---|---|
| **JESSICA JONES, MICHELLE VELOTTA,** and **CHRISTINA LORENZEN** on Behalf of Themselves and All Others Similarly Situated, | Case No. 2:20-cv-02892-SHL-tmp |
| **Plaintiffs,** | **JURY TRIAL DEMANDED** |
| v. | |
| **VARSITY BRANDS, LLC; VARSITY SPIRIT, LLC; VARSITY SPIRIT FASHION & SUPPLIES, LLC; U.S. ALL STAR FEDERATION, INC.; JEFF WEBB; CHARLESBANK CAPITAL PARTNERS LLC; and BAIN CAPITAL PRIVATE EQUITY,** | |
| **Defendants.** | |

## NOTICE OF DEPOSITION PURSUANT TO FED. R. CIV. P. 30(B)(6) OF CHARLESBANK CAPITAL PARTNERS

Plaintiffs will take the deposition of defendant Charlesbank Capital Partners LLC ("Charlesbank") under Fed. R. Civ. P. 30(b)(6) at such date, time, and place as is mutually agreed upon. The deposition will be taken by stenographic and/or videographic means before a person duly authorized to administer oaths and will be continued until completed. You are invited to attend and participate as authorized by law.

Rule 30(b)(6) requires Charlesbank to produce one or more witnesses at the agreed date, location and time who is prepared to testify about Charlesbank's knowledge of the topics set forth below. If the designated representative(s) do not have such knowledge, he, she, or they are required to acquire it through a reasonable investigation.

## I.    Definitions

1. "Agreement" means any oral or written contract, arrangement or understanding, whether formal or informal, between two or more Persons, together with all modifications and amendments thereto.

2. "All" should be construed to include the collective as well as the singular and shall mean "each," "any," and "every."

3. "All-Star Cheer" means a discipline of cheerleading in which routines composed of tumbling, stunting, pyramids, and dance are performed by teams of athletes affiliated with All-Star gyms (as opposed to schools, clubs, or government entities).

4. "Cheer Apparel" means the clothing (including uniforms), shoes, accessories, or equipment purchased for use by athletes wear at cheer or dance events, and during practices and training.

5. "Bain" means Bain Capital Private Equity, and all predecessors, successors, subsidiaries, departments, divisions, and/or affiliates, including without limitation any organization or entity which it manages or controls, together with all present and former directors, members, officers, employees, agents, representatives, or any persons acting or authorized to act on its behalf.

6. "Banking Institution" means any investment bank, venture capital or other banking firm involved in Charlesbank's Due Diligence of Varsity, acquisition of Varsity, funding or ownership of Varsity, management of Varsity, or sale of Varsity to Bain, including but not limited to Ares, Barclays, Crescent, Goldman Sachs, Jefferies, Partners Group (USA) Inc., or Price Waterhouse Coopers.

7. "Bid" means an official offer from a Competition inviting an All-Star team to attend an All-Star Championship competition.

8. "Charlesbank" means Charlesbank Capital Partners LLC, and all predecessors, successors, subsidiaries, departments, divisions, and/or affiliates, including without limitation any organization or entity which it manages or controls, together with all present and former directors, members, officers, employees, agents, representatives, or any persons acting or authorized to act on their behalf.

9. "Camp" or "Cheer Camp" means any camp at which athletes and teams practice All-Star Cheer, School Cheer, or dance skills and develop cheerleading or dance routines for School Cheer or All-Star Cheer.

10. "Championship" or "Championship Event" means any All-Star Cheer or School Cheer competition in the United States, including but not limited to Cheerleading Worlds, The Summit, or the U.S. Finals or other national championship competitions and any of the nationally recognized School Cheer championship competitions in the United States, including and not limited to: UCA National High School Cheerleading Championship; UCA National College Championship; NCA National High School Cheerleading Championship; and NCA College National Championship.

11. "Cheer Competition" means an Event at which teams perform Competitive Cheer routines and are evaluated by a panel of judges on the difficulty and execution of their performance.

12. "Communication" means without limitation, oral or written communications of any kind, such as electronic communications, e-mails, text messages, facsimiles, telephone communications, correspondence, exchange of written or recorded information, or face-to-

face meetings. The phrase "communication between" is defined to include instances where one party addresses the other party, but the other party does not necessarily respond.

13. "Defendant" means all those listed in the above-captioned litigation.

14. "Document" or "Documents" has the broadest meaning ascribed to it by Federal Rule of Civil Procedure 34(a) and encompasses all forms of tangible expression, including all ESI or data, and all written, recorded, printed, typed, transcribed, filmed, digitized, or graphic matter and all other tangible things and media upon which any handwriting, typing, printing, computer code, software, drawing, representation, electrostatic or other copy, sound or video recording, magnetic or electrical impulse, visual reproduction or communication is recorded, reproduced or represented, including papers, books, records, correspondence, reports, memoranda, electronic mail (e-mail), text, instant or social media messages, drafts, telegrams, files, telephone logs and messages, cloud storage, hard drives, solid state disks or solid-state drives, removable media, minutes or transcripts of meetings or communications.

15. "Due Diligence" means any appraisals and/or analyses undertaken to establish the assets, liabilities, and commercial potential of a firm, corporation, or entity.

16. "Employee" means, without limitation, any current or former officer, director, executive, manager, secretary, staff member, messenger, agent, or other Person who is or was employed by the responding Defendant or, where applicable, another Person.

17. "Event" means a cheerleading or dance competition, including championships, whether considered School Cheer or All-Star Cheer.

18. "Event Producer" means a person or entity that finances, organizes, or advertises a Championship, Championship Qualifier, School Event.

19. "Identify," when used in reference to an individual Employee, means to provide: the Employee's full name, last known business and home address; date of birth; social security number; title or position and period of service in each such position; immediate supervisor in each position; business and home telephone numbers (including voice, cellular and facsimile phone numbers) assigned to or used by such Employee and the period during which such numbers were assigned to be used by that Employee; and business and home electronic mail identifiers as well as the period during which such identifiers were assigned to and used by that Employee.

20. "Identify" (or "Identity") when used in reference to any entity other than an individual shall require a statement of all of the following information relating to such entity: (i) Full name or title; (ii) Principal place of business or other activity; (iii) Place of incorporation (if applicable); (iv) Date of formation; (v) Names of any predecessor or successor corporations or other business entities; (vi) Nature or type of entity; and (vii) Principal business or other activity.

21. "Person" means, without limitation, any natural person, corporation, partnership, limited liability company, proprietorship, joint venture, trust, association, government entity, group, or other form of legal entity.

22. "The Relevant Markets" means the markets for Cheerleading Competitions, Camps, and Apparel for both All-Star Cheer and School Cheer.

23. "School Cheer" means a discipline of cheerleading in which routines composed of tumbling, stunting, pyramids, dance, and elements of traditional sideline cheer such as band chants, fight songs, and motivational cheers are performed by teams of Athletes affiliated with Schools.

24. "Varsity" means Varsity Brands, LLC, Varsity Spirit, LLC, Varsity Spirit Fashion & Supplies, LLC, and all predecessors, successors, subsidiaries, departments, divisions, and/or affiliates, including without limitation any organization or entity which they manage or control, together with all present and former directors, members, officers, employees, agents, representatives, or any persons acting or authorized to act on their behalf.

25. "You," "Your," or "Your company" mean the responding Defendant, its predecessors, successors, subsidiaries, departments, divisions, and/or affiliates, including without limitation any organization or entity which the responding Defendant manages or controls, together with all present and former directors, officers, Employees, agents, representatives, or any persons acting or purporting to act on behalf of the responding Defendant.

## II.    Instructions

26. Unless otherwise specified, the Relevant Time Period is January 1, 2013 to present.

27. The Definitions above are provided only for purposes of discovery, in conformance with Rule 34(a) of the Federal Rules of Civil Procedure and are not intended to be used for any purpose other than discovery. Plaintiffs reserve the right to modify these Definitions or utilize different Definitions for any other purpose.

28. The terms defined above are to be construed broadly to the fullest extent of their meaning in a good faith effort to comply with the Federal Rules of Civil Procedure.

29. All words not defined in the Definitions shall be construed using their plain and ordinary meaning.

30. Each topic shall be construed independently, and no topic shall be viewed as limiting the scope of any other topic.

31. The terms defined above and in each individual topic should be construed broadly and to the fullest extent of their meaning to comply with the Federal Rules of Civil Procedure and the Federal Rules of Evidence.

32. If You object to a portion or aspect of a deposition topic, state the grounds for Your objection with specificity.

### III.    Subject Matter of Testimony ("Topics")

1. The corporate, organizational, and management structure of Your business as it relates to its ownership of and involvement with Varsity.

2. Your acquisition of Varsity.

3. Your valuation of Varsity and/or its assets for the purpose of facilitating the acquisition of Varsity and/or any of its assets.

4. Varsity's competitive strengths, as discussed within Charlesbank or presented to Charlesbank by any other Person.

5. The time periods during which Charlesbank conducted its Due Diligence of Varsity and the types of items or data assessed during such Due Diligence periods.

6. The names and roles of Charlesbank Employees who interacted with Varsity during and regarding Charlesbank's Due Diligence of the acquisition of Varsity.

7. The names and roles of Charlesbank Employees who interacted with Bain during and regarding its Due Diligence of the acquisition of Varsity.

8. Internal Charlesbank discussions regarding Charlesbank's acquisition of Varsity, including but not limited to discussions regarding The Relevant Markets; Varsity's competitors in The Relevant Markets; Varsity's market share in The Relevant Markets; Varsity's acquisitions of competitors in The Relevant Markets; Varsity' market growth in The Relevant Markets; and

Varsity's ecosystem.

9.   Discussions between Charlesbank and any other Defendant regarding Charlesbank's acquisition of Varsity, including but not limited to discussions regarding The Relevant Markets; Varsity's competitors in The Relevant Markets; Varsity's market share in The Relevant Markets; Varsity's acquisitions of competitors in The Relevant Markets; Varsity' market growth in The Relevant Markets; and Varsity's ecosystem.

10.  Charlesbank's relationships with any Banking Institutions regarding Charlesbank's acquisition or management of Varsity.

11.  Research, reports, analysis, presentations, or compilations of Documents prepared by any Banking Institutions regarding Charlesbank's acquisition of Varsity.

12.  Charlesbank's involvement and roles on the corporate boards, or committees thereof, of all Varsity-owned entities during the Relevant Time Period, including but not limited to identification of each Charlesbank Employee who held any board seat or served on any board committee, or who served as an officer or director of any Varsity-owned entity, or participated in any other way on any Varsity board or committee thereof, including for each Charlesbank Employee, their name, duration of their term, any seats or positions held, their title at Charlesbank, their role and responsibilities on the board or committee; their voting rights; their authority on the board or committee or as a director or officer.

13.  Charlesbank's oversight of and involvement in, since acquisition, the business operations of any Varsity-owned entity, including management, decision-making, administration, marketing, public relations, sales, finances, accounting; competitions and championships; and the Bid system to attend Championships.

14.  Charlesbank's knowledge of or decision-making authority related to Varsity TV.

15. Charlesbank's knowledge of or decision-making authority related to Varsity's acquisitions of competitors in the Relevant Markets.

16. Charlesbank's funding of any of Varsity's acquisitions in The Relevant Markets.

17. Charlesbank's knowledge of or decision-making authority related to Stay-to-Play or other hotel programs affiliated with Varsity.

18. Charlesbank's knowledge of or decision-making authority related to any rebate or discount programs offered by Varsity to All-Star Cheer or School Cheer teams.

19. The terms, provisions, and conditions of any management agreements with any Varsity-owned entities.

20. The relationship, functions, duties, responsibilities, benefits, rights, if any, of Charlesbank as an owner of Varsity.

21. Charlesbank's relationship with and interactions with Defendants other than Varsity.

22. Communications or agreement between You and any other Defendant regarding any attempt at monopolizing, owning, overtaking, or otherwise controlling the Relevant Markets; limiting entrance to the Relevant Markets; creating barriers to entry into the Relevant Markets and/or raising, setting, or fixing prices in the Relevant Markets including

    a. The individual and business units involved in the communication or agreement;

    b. The reasons for the communication or agreement; and

    c. Your actions following the communication or agreement and the extent to which Your actions in the market for Cheer were related to the communications or agreements.

23. Charlesbank's relationship with the United States All Star Federation ("USASF").

24. Charlesbank's involvement in the creation, implementation, or any changes to any USASF

rules or policies, either directly or indirectly as owner of Varsity.

25. The terms, provisions, conditions, and facts and circumstances of all financial arrangements and/or transactions by and between Charlesbank and any of the other Defendants.

26. Charlesbank's relationship, benefits, or rights, if any, related to each of the following either directly or indirectly through its ownership of Varsity:

    a.   International Cheer Union (ICU);

    b.   International All-Star Federation (IASF);

    c.   American Association of Cheerleading Coaches and Administrators (AACCA);

    d.   National Federation of High School Associations (NFHS);

    e.   USA Federation for Sport Cheering (USA Cheer);

    f.   National Cheerleading Association (NCA);

    g.   Universal Cheer Association (UCA); and

    h.   National All-Star Cheerleading Coaches Congress ("NACCC").

27. The terms, provisions, conditions, and facts and circumstances of any Charlesbank Employee's ability to participate in or participation in the Phantom Unit Holders Plan.

28. The terms, provisions, conditions, and facts and circumstances of any other non-Defendant Person's ability to participate in or participation in the Phantom Unit Holders Plan.

29. Any disputes, inquiries, or investigations relating to The Relevant Markets by the Federal Trade Commission, U.S. Securities & Exchange Commission, United States Department of Justice, or states' attorneys general, or other government agencies or regulations initiated at any time during the Relevant Time Period, including:

    a.   The governmental entity;

    b.   The scope of the investigation; and

    c.  The scope of the documents you produced in response to the investigation.

30. Your efforts to search for, identify, collect, produce, and preserve documents in this litigation or any other investigation or litigation involving Varsity's participation in The Relevant Markets, including the implementation of any litigation hold, including the mechanisms, systems software or computer programs, used by Charlesbank to create, store, back-up, and recover Documents relevant or potentially relevant to this litigation.

31. The location, custody and control (including any Structured Databases, ESI, information systems, databases and Communications systems) of any Documents maintained by Charlesbank or any of its departments, divisions, parents, subsidiaries, joint ventures, affiliates, units or other subdivisions related to Varsity.

32. Any payments, benefits, or things of value provided by Charlesbank to, or received by Charlesbank from, any other Defendants, including: the individuals or business units involved in the payment, benefit, or thing of value; the reasons for the payment, benefit or thing of value; and the amount and date of the payment, benefit or thing of value.

33. All facts and circumstances supporting or refuting Charlesbank's affirmative defenses.

Dated: March 11, 2022                 */s/ Joseph R. Saveri*

Joseph R. Saveri\*
Steven N. Williams\*
Ronnie Seidel Spiegel\*
Kevin E. Rayhill\*
Katharine Malone\*
Elissa A. Buchanan\*
Anna-Patrice Harris\*
**JOSEPH SAVERI LAW FIRM, LLP**
601 California Street, Suite 1000
San Francisco, CA 94108
Tel.: (415) 500-6800
Fax: (415) 395-9940
jsaveri@saverilawfirm.com
swilliams@saverilawfirm.com
rspiegel@saverilawfirm.com
krayhill@saverilawfirm.com
kmalone@saverilawfirm.com
eabuchanan@saverilawfirm.com
aharris@saverilawfirm.com

Van Turner (TN Bar No. 22603)
**BRUCE TURNER, PLLC**
2650 Thousand Oaks Blvd, Suite 2325
Memphis, TN 38118
Tel.: (901) 290-6610
Fax: (901) 290-6611
vturner@bruceturnerlaw.net

Daniel E. Gustafson\*
Daniel C. Hedlund\*
Daniel J. Nordin\*
**GUSTAFSON GLUEK PLLC**
Canadian Pacific Plaza
120 South Sixth Street, Suite 2600
Minneapolis, MN 55402
Tel.: (612) 333-8844
Fax: (612) 339-6622
dgustafson@gustafsongluek.com
dhedlund@gustafsongluek.com
dnordin@gustafsongluek.com
Richard M. Paul, III\*
Sean R. Cooper\*
Ashlea Schwarz\*
PAUL LLP

NOTICE OF DEPOSITION PURSUANT TO FED. R. CIV. P. 30(B)(6) OF CHARLESBANK CAPITAL PARTNERS

601 Walnut Street, Suite 300
Kansas City, MO 64106
Tel.: (816) 984-8100
rick@paulllp.com
sean@paulllp.com
ashlea@paulllp.com

Jason S. Hartley*
**HARTLEY LLP**
101 West Broadway, Suite 820
San Diego, CA 92101
Telephone: (619) 400-5822
hartley@hartleyllp.com

*Attorneys for Jessica Jones, Michelle Velotta, and
Christina Lorenzen*

*\* Admitted pro hac vice*

NOTICE OF DEPOSITION PURSUANT TO FED. R. CIV. P. 30(B)(6) OF CHARLESBANK CAPITAL
PARTNERS

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 11, 2022, I served a copy of the foregoing document via email on the counsel listed below.

_/s/ Ruby Vazquez-Ponce_
Ruby Vazquez-Ponce

| | |
|---|---|
| George S. Cary | Matthew S. Mulqueen |
| Steven J. Kaiser | Adam S. Baldridge |
| Jennifer K. Park | BAKER, DONELSON, BEARMAN, |
| CLEARY GOTTLIEB STEEN & | CALDWELL & BERKOWITZ |
| HAMILTON LLP | 165 Madison Avenue, Suite 2000 |
| 2112 Pennsylvania Avenue, NW | Memphis, TN 38103 |
| Washington, DC 20037 | Phone: (901) 526-2000 |
| gcary@cgsh.com | Fax: (901) 577-0866 |
| skaiser@cgsh.com | mmulqueen@bakerdonelson.com |
| jkpark@cgsh.com | abaldridge@bakerdonelson.com |

Heather Nyong'o
CLEARY GOTTLIEB STEEN &
HAMILTON LLP
1841 Page Mill Road Palo Alto, CA 94304
hnyongo@cgsh.com

_Attorneys for Charlesbank Capital Partners, LLC; Varsity Brands, LLC; Bain Capital Private Equity; Varsity Spirit Fashions & Supplies; BNS Sports, LLC; Varsity Spirit LLC; Stansbury, LLC; Herff Jones, LLC; Varsity Brands Holding Co., Inc.; Varsity Intropia Tours, LLC_

Paul Coggins
Brendan Gaffney
Jennifer M McCoy
LOCKE LORD LLP
2200 Ross Avenue, Suite 2800
Dallas, TX 75201
pcoggins@lockelord.com
bgaffney@lockelord.com
jennifer.mccoy@lockelord.com
Edward L. Stanton III
BUTLER SNOW LLP

_Attorneys for Charlesbank Capital Partners, LLC; Varsity Brands, LLC; Bain Capital Private Equity; Varsity Spirit Fashions & Supplies; BNS Sports, LLC; Varsity Spirit LLC; Stansbury, LLC; Herff Jones, LLC; Varsity Brands Holding Co., Inc.; Varsity Intropia Tours, LLC_

Grady Garrison
Nicole D. Berkowitz
James Andrew Roach
BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ
165 Madison Avenue, Suite 2000
Memphis, TN 38103
Phone: (901) 526-2000
Fax: (901) 577-0866
ggarrison@bakerdonelson.com
nberkowitz@bakerdonelson.com
aroach@bakerdonelson.com

_Attorneys for U.S. All Star Federation, Inc.; USA Federation for Sport Cheering_

6075 Poplar Avenue, Suite 500
Memphis, Tennessee 38119
Edward.Stanton@butlersnow.com

*Attorneys for Jeff Webb*

NOTICE OF DEPOSITION PURSUANT TO FED. R. CIV. P. 30(B)(6) OF CHARLESBANK CAPITAL
PARTNERS

# Exhibit D
# Attachment 2

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
### WESTERN DIVISION

|  |  |
|---|---|
| **JESSICA JONES, MICHELLE VELOTTA**, and **CHRISTINA LORENZEN** on Behalf of Themselves and All Others Similarly Situated, | Case No. 2:20-cv-02892-SHL-tmp |
| **Plaintiffs,** | |
| v. | **JURY TRIAL DEMANDED** |
| **VARSITY BRANDS, LLC; VARSITY SPIRIT, LLC; VARSITY SPIRIT FASHION & SUPPLIES, LLC; U.S. ALL STAR FEDERATION, INC.; JEFF WEBB; CHARLESBANK CAPITAL PARTNERS LLC; and BAIN CAPITAL PRIVATE EQUITY,** | |
| **Defendants.** | |

## NOTICE OF DEPOSITION PURSUANT TO FED. R. CIV. P. 30(B)(6) OF BAIN CAPITAL PRIVATE EQUITY

Plaintiffs will take the deposition of defendant Bain Capital Private Equity ("Bain") under Fed. R. Civ. P. 30(b)(6) at such date, time, and place as is mutually agreed upon. The deposition will be taken by stenographic and/or videographic means before a person duly authorized to administer oaths and will be continued until completed. You are invited to attend and participate as authorized by law.

Rule 30(b)(6) requires Bain to produce one or more witnesses at the agreed date, location and time who is prepared to testify about Bain's knowledge of the topics set forth below. If the designated representative(s) do not have such knowledge, he, she, or they are required to acquire it through a reasonable investigation.

## I.    Definitions

1.  "Agreement" means any oral or written contract, arrangement or understanding, whether formal or informal, between two or more Persons, together with all modifications and amendments thereto.

2.  "All" should be construed to include the collective as well as the singular and shall mean "each," "any," and "every."

3.  "All-Star Cheer" means a discipline of cheerleading in which routines composed of tumbling, stunting, pyramids, and dance are performed by teams of athletes affiliated with All-Star gyms (as opposed to schools, clubs, or government entities).

4.  "Cheer Apparel" means the clothing (including uniforms), shoes, accessories, or equipment purchased for use by athletes wear at cheer or dance events, and during practices and training.

5.  "Bain" means Bain Capital Private Equity, and all predecessors, successors, subsidiaries, departments, divisions, and/or affiliates, including without limitation any organization or entity which it manages or controls, together with all present and former directors, members, officers, employees, agents, representatives, or any persons acting or authorized to act on its behalf.

6.  "Banking Institution" means any, or investment bank, venture capital or other banking firm involved in Bain's Due Diligence of Varsity, acquisition of Varsity, funding or ownership of Varsity, or management of Varsity, including but not limited to Ares, Barclays, Crescent, Goldman Sachs, Jefferies, Partners Group (USA) Inc., or Price Waterhouse Coopers.

7.  "Bid" means an official offer from a Competition inviting an All-Star team to attend an All-Star Championship competition.

8. "Charlesbank" means Charlesbank Capital Partners LLC, and all predecessors, successors, subsidiaries, departments, divisions, and/or affiliates, including without limitation any organization or entity which it manages or controls, together with all present and former directors, members, officers, employees, agents, representatives, or any persons acting or authorized to act on their behalf.

9. "Camp" means any camp at which athletes and teams practice All Star Cheer, School Cheer, or dance skills and develop cheerleading or dance routines for School Cheer or All-Star Cheer.

10. "Championship" or "Championship Event" means any All-Star Cheer or School Cheer competition in the United States, including but not limited to Cheerleading Worlds, The Summit, or the U.S. Finals or other national championship competitions and any of the nationally recognized School Cheer championship competitions in the United States, including and not limited to: UCA National High School Cheerleading Championship; UCA National College Championship; NCA National High School Cheerleading Championship; and NCA College National Championship.

11. "Cheerleading Competition" means an Event at which teams perform Competitive Cheer routines and are evaluated by a panel of judges on the difficulty and execution of their performance.

12. "Communication" means without limitation, oral or written communications of any kind, such as electronic communications, e-mails, text messages, facsimiles, telephone communications, correspondence, exchange of written or recorded information, or face-to-face meetings. The phrase "communication between" is defined to include instances where one party addresses the other party, but the other party does not necessarily respond.

13. "Defendant" means all those listed in the above-captioned litigation.

14. "Document" or "Documents" has the broadest meaning ascribed to it by Federal Rule of Civil Procedure 34(a) and encompasses all forms of tangible expression, including all ESI or data, and all written, recorded, printed, typed, transcribed, filmed, digitized, or graphic matter and all other tangible things and media upon which any handwriting, typing, printing, computer code, software, drawing, representation, electrostatic or other copy, sound or video recording, magnetic or electrical impulse, visual reproduction or communication is recorded, reproduced or represented, including papers, books, records, correspondence, reports, memoranda, electronic mail (e-mail), text, instant or social media messages, drafts, telegrams, files, telephone logs and messages, cloud storage, hard drives, solid state disks or solid-state drives, removable media, minutes or transcripts of meetings or communications.

15. "Due Diligence" means any appraisals and/or analyses undertaken to establish the assets, liabilities, and commercial potential of a firm, corporation, or entity.

16. "Employee" means, without limitation, any current or former officer, director, executive, manager, secretary, staff member, messenger, agent, or other Person who is or was employed by the responding Defendant or, where applicable, another Person.

17. "Event" means a cheerleading or dance competition, including championships, whether considered School cheerleading or dance or not.

18. "Event Producer" means a person or entity that finances, organizes, or advertises a Championship, Championship Qualifier, or School Event.

19. "Identify," when used in reference to an individual Employee, means to provide: the Employee's full name, last known business and home address; date of birth; social security number; title or position and period of service in each such position; immediate supervisor in

NOTICE OF DEPOSITION PURSUANT TO FED. R. CIV. P. 30(B)(6) OF BAIN CAPITAL PRIVATE EQUITY

each position; business and home telephone numbers (including voice, cellular and facsimile phone numbers) assigned to or used by such Employee and the period during which such numbers were assigned to be used by that Employee; and business and home electronic mail identifiers as well as the period during which such identifiers were assigned to and used by that Employee.

20. "Identify" (or "Identity") when used in reference to any entity other than an individual shall require a statement of all of the following information relating to such entity: (i) Full name or title; (ii) Principal place of business or other activity; (iii) Place of incorporation (if applicable); (iv) Date of formation; (v) Names of any predecessor or successor corporations or other business entities; (vi) Nature or type of entity; and (vii) Principal business or other activity.

21. "Person" means, without limitation, any natural person, corporation, partnership, limited liability company, proprietorship, joint venture, trust, association, government entity, group, or other form of legal entity.

22. "The Relevant Markets" means the markets for Cheerleading Competitions, Camps, and Apparel for both All-Star Cheer and School Cheer.

23. "School Cheer" means a discipline of cheerleading in which routines composed of tumbling, stunting, pyramids, dance, and elements of traditional sideline cheer such as band chants, fight songs, and motivational cheers are performed by teams of Athletes affiliated with Schools.

24. "Varsity" means Varsity Brands, LLC, Varsity Spirit, LLC, Varsity Spirit Fashion & Supplies, LLC, and all predecessors, successors, subsidiaries, departments, divisions, and/or affiliates, including without limitation any organization or entity which they manage or

control, together with all present and former directors, members, officers, employees, agents, representatives, or any persons acting or authorized to act on their behalf.

25. "You," "Your," or "Your company" mean the responding Defendant, its predecessors, successors, subsidiaries, departments, divisions, and/or affiliates, including without limitation any organization or entity which the responding Defendant manages or controls, together with all present and former directors, officers, Employees, agents, representatives, or any persons acting or purporting to act on behalf of the responding Defendant.

## II.    Instructions

26. Unless otherwise specified, the Relevant Time Period is January 1, 2014 to present.

27. The Definitions above are provided only for purposes of discovery, in conformance with Rule 34(a) of the Federal Rules of Civil Procedure and are not intended to be used for any purpose other than discovery. Plaintiffs reserve the right to modify these Definitions or utilize different Definitions for any other purpose.

28. The terms defined above are to be construed broadly to the fullest extent of their meaning in a good faith effort to comply with the Federal Rules of Civil Procedure.

29. All words not defined in the Definitions shall be construed using their plain and ordinary meaning.

30. Each topic shall be construed independently, and no topic shall be viewed as limiting the scope of any other topic.

31. The terms defined above and in each individual topic should be construed broadly and to the fullest extent of their meaning to comply with the Federal Rules of Civil Procedure and the Federal Rules of Evidence.

32. If You object to a portion or aspect of a deposition topic, state the grounds for Your objection with specificity.

### III.   Subject Matter of Testimony ("Topics")

1. The corporate, organizational, and management structure of Your business as it relates to its ownership of and involvement with Varsity.

2. Your acquisition of Varsity.

3. Your valuation of Varsity and/or its assets for the purpose of facilitating the acquisition of Varsity and/or any of its assets or competitors.

4. Varsity's competitive strengths, as discussed within Bain or presented to Bain by any other Person.

5. The time periods during which Bain conducted its Due Diligence of Varsity and the types of items or data assessed during such Due Diligence periods.

6. The names and roles of Bain Employees who interacted with Varsity during and regarding Bain's Due Diligence of the acquisition of Varsity.

7. The names, roles, and responsibilities of Bain Employees who interacted with Charlesbank during and regarding its Due Diligence of the acquisition of Varsity.

8. Internal Bain discussions regarding Bain's acquisition of Varsity, including but not limited to discussions regarding The Relevant Markets; Varsity's competitors in The Relevant Markets; Varsity's market share in The Relevant Markets; Varsity's acquisitions of competitors in The Relevant Markets; Varsity' market growth in The Relevant Markets; and Varsity's ecosystem.

9. Discussions between Bain and any other Defendant regarding Bain's acquisition of Varsity, including but not limited to discussions regarding The Relevant Markets; Varsity's

competitors in The Relevant Markets; Varsity's market share in The Relevant Markets;

Varsity's acquisitions of competitors in The Relevant Markets; Varsity' market growth in

The Relevant Markets; and Varsity's ecosystem.

10. Bain's relationships and communications with any Banking Institutions regarding Bain's

acquisition or management of Varsity.

11. Research, reports, analysis, presentations, or compilations of Documents prepared by any

Banking Institutions regarding Bain's acquisition of Varsity.

12. Bain's involvement and roles on the corporate boards, or committees thereof, of all Varsity-

owned entities during the Relevant Time Period, including but not limited to identification of

each Bain Employee who held any board seat or served on any board committee, or who

served as an officer or director of any Varsity-owned entity, or participated in any other way

on any Varsity board or committee thereof, including for each Bain Employee, their name,

duration of their term, any seats or positions held, their title at Bain, their role and

responsibilities on the board or committee; their voting rights; their authority on the board or

committee or as a director or officer.

13. Bain's oversight of and involvement in, since acquisition, the business operations of any

Varsity-owned entity, including management, decision-making, administration, marketing,

public relations, sales, finances, accounting; competitions and championships; and the Bid

system to attend Championships.

14. Bain's knowledge of and decision-making authority related to Varsity TV.

15. Bain's knowledge of and decision-making authority related to Varsity's acquisitions of

competitors in the Relevant Markets.

16. Bain's funding of any of Varsity's acquisitions in The Relevant Markets.

17. Bain's knowledge of and decision-making authority related to Stay-to-Play or other hotel programs affiliated with Varsity.

18. Bain's knowledge of and decision-making authority related to any rebate or discount programs offered by Varsity to All-Star Cheer or School Cheer teams.

19. The terms, provisions, and conditions of any management agreements with any Varsity-owned entities.

20. The relationship, functions, duties, responsibilities, benefits, rights, if any, of Bain as an owner of Varsity.

21. Bain's relationship with and interactions with Defendants other than Varsity.

22. Communications or agreement between You and any other Defendant regarding any attempt at monopolizing, owning, overtaking, or otherwise controlling the Relevant Markets; limiting entrance to the Relevant Markets; creating barriers to entry into the Relevant Markets; and/or raising, setting, or fixing prices in the Relevant Markets including:

    a. The individual and business units involved in the communication or agreement;

    b. The reasons for the communication or agreement; and

    c. Your actions following the communication or agreement and the extent to which Your actions in the market for Cheer were related to the communications or agreements.

23. Bain's relationship with the United States All Star Federation ("USASF").

24. Bain's involvement in the creation, implementation, or any changes to any USASF rules or policies, either directly or indirectly as owner of Varsity.

25. The terms, provisions, conditions, and facts and circumstances of all financial arrangements and/or transactions by and between Bain and any of the other Defendants.

26. Bain's relationship, benefits, or rights, if any, related to each of the following either directly

or indirectly through its ownership of Varsity:

    a.   International Cheer Union (ICU);

    b.   International All-Star Federation (IASF);

    c.   American Association of Cheerleading Coaches and Administrators (AACCA);

    d.   National Federation of High School Associations (NFHS);

    e.   USA Federation for Sport Cheering (USA Cheer);

    f.   National Cheerleading Association (NCA);

    g.   Universal Cheer Association (UCA); and

    h.   National All-Star Cheerleading Coaches Congress ("NACCC").

27. The terms, provisions, conditions, and facts and circumstances of any Bain Employee's

ability to participate in or participation in the Phantom Unit Holders Plan.

28. The terms, provisions, conditions, and facts and circumstances of any other non-Defendant

Person's ability to participate in or participation in the Phantom Unit Holders Plan.

29. Any disputes, inquiries, or investigations relating to The Relevant Markets by the Federal

Trade Commission, U.S. Securities & Exchange Commission, United States Department of

Justice, or states' attorneys general, or other government agencies or regulations initiated at

any time during the Relevant Time Period, including:

    a.   The governmental entity;

    b.   The scope of the investigation; and

    c.   The scope of the documents You produced in response to the investigation.

30. Your efforts to search for, identify, collect, produce, and preserve documents in this litigation

or any other investigation or litigation involving Varsity's participation in The Relevant

Markets, including the implementation of any litigation hold, including the mechanisms, systems software or computer programs, used by Bain to create, store, back-up, and recover Documents relevant or potentially relevant to this litigation.

31. The location, custody and control (including any Structured Databases, ESI, information systems, databases and Communications systems) of any Documents maintained by Bain or any of its departments, divisions, parents, subsidiaries, joint ventures, affiliates, units or other subdivisions related to Varsity.

32. Any payments, benefits, or things of value provided by Bain to, or received by Bain from, any other Defendants, including: the individuals or business units involved in the payment, benefit, or thing of value; the reasons for the payment, benefit or thing of value; and the amount and date of the payment, benefit or thing of value.

33. All facts and circumstances supporting or refuting Bain's affirmative defenses.

Dated: March 11, 2022

/s/ Joseph R. Saveri

Joseph R. Saveri*
Steven N. Williams*
Ronnie Seidel Spiegel*
Kevin E. Rayhill*
Katharine Malone*
Elissa A. Buchanan*
Anna-Patrice Harris*
**JOSEPH SAVERI LAW FIRM, LLP**
601 California Street, Suite 1000
San Francisco, CA 94108
Tel.: (415) 500-6800
Fax: (415) 395-9940
jsaveri@saverilawfirm.com
swilliams@saverilawfirm.com
rspiegel@saverilawfirm.com
krayhill@saverilawfirm.com
kmalone@saverilawfirm.com
eabuchanan@saverilawfirm.com
aharris@saverilawfirm.com

Van Turner (TN Bar No. 22603)
**BRUCE TURNER, PLLC**
2650 Thousand Oaks Blvd, Suite 2325
Memphis, TN 38118
Tel.: (901) 290-6610
Fax: (901) 290-6611
vturner@bruceturnerlaw.net

Daniel E. Gustafson*
Daniel C. Hedlund*
Daniel J. Nordin*
**GUSTAFSON GLUEK PLLC**
Canadian Pacific Plaza
120 South Sixth Street, Suite 2600
Minneapolis, MN 55402
Tel.: (612) 333-8844
Fax: (612) 339-6622
dgustafson@gustafsongluek.com
dhedlund@gustafsongluek.com
dnordin@gustafsongluek.com
Richard M. Paul, III*
Sean R. Cooper*
Ashlea Schwarz*
PAUL LLP

601 Walnut Street, Suite 300
Kansas City, MO 64106
Tel.: (816) 984-8100
rick@paulllp.com
sean@paulllp.com
ashlea@paulllp.com

Jason S. Hartley*
**HARTLEY LLP**
101 West Broadway, Suite 820
San Diego, CA 92101
Telephone: (619) 400-5822
hartley@hartleyllp.com

*Attorneys for Jessica Jones, Michelle Velotta, and Christina Lorenzen*

*\* Admitted pro hac vice*

## **CERTIFICATE OF SERVICE**

I hereby certify that on March 11, 2022, I served a copy of the foregoing document via

email on the counsel listed below.

/s/ Ruby Vazquez-Ponce
Ruby Vazquez-Ponce

George S. Cary
Steven J. Kaiser
Jennifer K. Park
CLEARY GOTTLIEB STEEN &
HAMILTON LLP
2112 Pennsylvania Avenue, NW
Washington, DC 20037
gcary@cgsh.com
skaiser@cgsh.com
jkpark@cgsh.com

Heather Nyong'o
CLEARY GOTTLIEB STEEN &
HAMILTON LLP
1841 Page Mill Road Palo Alto, CA 94304
hnyongo@cgsh.com

*Attorneys for Charlesbank Capital Partners,
LLC; Varsity Brands, LLC; Bain Capital
Private Equity; Varsity Spirit Fashions &
Supplies; BNS Sports, LLC; Varsity Spirit
LLC; Stansbury, LLC; Herff Jones, LLC;
Varsity Brands Holding Co., Inc.; Varsity
Intropia Tours, LLC*

Paul Coggins
Brendan Gaffney
Jennifer M McCoy
LOCKE LORD LLP
2200 Ross Avenue, Suite 2800
Dallas, TX 75201
pcoggins@lockelord.com
bgaffney@lockelord.com
jennifer.mccoy@lockelord.com
Edward L. Stanton III
BUTLER SNOW LLP

Matthew S. Mulqueen
Adam S. Baldridge
BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ
165 Madison Avenue, Suite 2000
Memphis, TN 38103
Phone: (901) 526-2000
Fax: (901) 577-0866
mmulqueen@bakerdonelson.com
abaldridge@bakerdonelson.com

*Attorneys for Charlesbank Capital Partners,
LLC; Varsity Brands, LLC; Bain Capital
Private Equity; Varsity Spirit Fashions &
Supplies; BNS Sports, LLC; Varsity Spirit
LLC; Stansbury, LLC; Herff Jones, LLC;
Varsity Brands Holding Co., Inc.; Varsity
Intropia Tours, LLC*

Grady Garrison
Nicole D. Berkowitz
James Andrew Roach
BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ
165 Madison Avenue, Suite 2000
Memphis, TN 38103
Phone: (901) 526-2000
Fax: (901) 577-0866
ggarrison@bakerdonelson.com
nberkowitz@bakerdonelson.com
aroach@bakerdonelson.com

*Attorneys for U.S. All Star Federation, Inc.;
USA Federation for Sport Cheering*

6075 Poplar Avenue, Suite 500
Memphis, Tennessee 38119
Edward.Stanton@butlersnow.com

*Attorneys for Jeff Webb*