UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| JONES, ET AL.<br><br>    Plaintiffs,<br>  v.<br><br>VARSITY BRANDS, LLC, ET AL.,<br><br>    Defendants. | Case No. 2:20-cv-02892-SHL-tmp |

**CHARLESBANK'S AND BAIN'S RESPONSE TO PLAINTIFFS' MOTION TO COMPEL 30(B)(6) DEPOSITIONS**

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ...............................................................................................................1

BACKGROUND ................................................................................................................1

ARGUMENT .....................................................................................................................7

    I.    Plaintiffs' Motion is Procedurally Improper and Would Prejudice Defendants ...............7

      A.    The Court Already Rejected Plaintiffs' Request ...............................................................8

      B.    There Was No "Agreement" to Provide the Testimony That Plaintiffs Seek ...................8

      C.    Plaintiffs' Renewed Request is Out of Time ...............................................................10

      D.    Reopening Discovery Would Prejudice Defendants .......................................................12

    II.    Plaintiffs' Topics Are Not Appropriate in Any Event......................................................12

CONCLUSION.................................................................................................................18

## TABLE OF AUTHORITIES

**Cases**

*Baxter Healthcare Corp. v. Fresenius Med. Care Holdings, Inc.*,

No. C-07-1359, 2008 WL 5214283 (N.D. Cal. Dec. 12, 2008)...............................................17

*Catt v. Affirmative Ins. Co.*,

No. 2:08-CV-243, 2009 WL 1228605 (N.D. Ind. Apr. 30, 2009) ...........................................4

*Edwards v. Scripps Media, Inc.*,

331 F.R.D. 116 (E.D. Mich. 2019)........................................................................................13

*Johnson v. CoreCivic, Inc.*,

No. 18-cv-1051, 2019 WL 5089086 (W.D. Tenn. Oct. 10, 2019)..........................................13

*Prasad v. George Washington Univ.*,

323 F.R.D. 88 (D.D.C. 2017).................................................................................................14

*Raymond James & Assocs., Inc. v. 50 N. Front St. TN, LLC*,

No. 18-cv-2104, 2020 WL 1527827 (W.D. Tenn. Mar. 30, 2020).........................................13

*Reno v. W. Cab Co.*,

No. 2:18-cv-00840, 2020 WL 5902318 (D. Nev. Aug. 31, 2020).........................................14

*U.S. v. HVI Cat Canyon*,

No. CV 11-5097, 2016 WL 11683593 (C.D. Cal. Oct. 26, 2016) .........................................14

**Other Authorities**

Fed. R. Civ. P. 26.............................................................................................................13-14

Fed. R. Civ. P. 30...........................................................................................................*passim*

## INTRODUCTION

Plaintiffs' second motion for Rule 30(b)(6) depositions of Bain and Charlesbank should be denied. Plaintiffs previously sought to take twenty depositions of current and former employees of Bain and Charlesbank, including one Rule 30(b)(6) deposition of each. The Court did not grant that motion, but instead granted Plaintiffs leave to take eight depositions of specifically named individuals and a choice of one of three other individuals. The Court did not grant leave to take Rule 30(b)(6) depositions.

Although Plaintiffs evidently disagree with this plain reading of the Court's Order, Plaintiffs neither sought clarification, reconsideration, or appealed the Order to Judge Lipman. Instead, Plaintiffs waited until two weeks *after* the deadline for taking depositions of Bain and Charlesbank—which deadline was agreed by the parties and entered as an Order of the Court— to even bring this motion. Moreover, they waited until the eve of the last deposition of a Bain or Charlesbank witness, just two days before the deadline to complete depositions of Bain and Charlesbank, to even *propose* limiting a Rule 30(b)(6) deposition to the five topics they now bring before the Court, one of which was not even part of Plaintiffs' Rule 30(b)(6) notice. Meanwhile, Plaintiffs had squandered the generous opportunity the Court provided to take nine depositions of identified individuals at Bain and Charlesbank, spending only a few hours with each deponent (except for one) and not even attempting to cover some of the topics they now propose *at all*. And, putting all of this aside, the topics are inappropriate and unnecessary, and requiring Rule 30(b)(6) depositions on them would be disproportional to the needs of the case.

## BACKGROUND

By early March, Plaintiffs had well exceeded the number of depositions they were permitted to take under the Federal Rules, but continued to notice additional depositions.

(Steven J. Kaiser Declaration ¶ 2; *see* Rayhill Decl., Ex. D (Mar. 11, 2022 Notices of Deposition to Charlesbank and Bain Pursuant to Rule 30(b)(6)).)  Thus, on March 28, 2022, Plaintiffs filed a motion with this Court "seek[ing] to take an additional 20 depositions of Bain and Charlesbank witnesses . . . (18 fact witnesses and one Rule 30(b)(6) deposition, each)."  (ECF No. 228 at 2.) They reported to the Court that, in an "effort to compromise" during the parties' negotiations, "Plaintiffs uncomfortably dropped the proposed number from 20 to a total of 14 Charlesbank and Bain – 12 Rule 30(b)(1) fact witnesses to allocate across Bain and Charlesbank as Plaintiffs choose, and one Rule 30(6)(6) [*sic*] deposition, each."  (ECF No. 228-1 at 3.)  They reported that, as to this proposal, "Defendants refused."  (*Id.*)

On April 11, the Court issued an order on this motion, in which the motion was "GRANTED in part and DENIED in part."  (ECF No. 261 at 1.)  The Court explicitly denied Plaintiffs' request for 20 depositions (which Plaintiffs had requested include "one Rule 30(b)(6) deposition, each"), denied Plaintiffs' request that they be allowed to take depositions of whichever Bain and Charlesbank current and former employees they might choose, and denied Plaintiffs' request to split up their allocation of Bain and Charlesbank witnesses as they saw fit. (*Id.* at 9-11.)  The Court instead identified eight specific individuals that Plaintiffs would be allowed to depose, and three additional individuals from whom Plaintiffs would be allowed to depose one of their choosing.  (*Id.* at 11.)  Under the relevant scheduling order (ECF No. 211), those depositions had to be completed by May 7, which they were.  (Kaiser Decl. ¶ 6.)  The Court did not grant Plaintiffs' request for leave to take "one 30(b)(6) deposition, each."  Plaintiffs neither asked for clarification, moved for reconsideration, nor appealed the decision to Judge Lipman.

Now Plaintiffs assert that Bain and Charlesbank had somehow *agreed* to produce 30(b)(6) witnesses even before Plaintiffs filed their motion for twenty depositions on March 28. They base this on discussions the parties had *prior to* Plaintiffs' motion, in which Bain and Charlesbank expressed the view that deposition testimony of Ryan Cotton, Joshua Beer, and Andrew Janower would be sufficient and proportional to the needs of the case. (Rayhill Decl., Ex. A at PageID 6712.) Bain and Charlesbank also suggested that, *if* the parties agreed on 30(b)(6) topics, any agreed topic could likely be folded into the proposed depositions of these three individuals. (*Id.*) But, as Plaintiffs themselves emphasized in their motion to take twenty depositions, including "one 30(b)(6) deposition, each," the parties had not agreed on topics for any such 30(b)(6) depositions. (ECF No. 228 at 1 ("[Defendants] have challenged [Plaintiffs' 33] topics . . . ."); *see* Rayhill Decl., Ex. A at PageID 6712 (Bain and Charlesbank "will not [provide witnesses under Rule 30(b)(6)] on the topics as written.").) Without any agreed topics, there was of course no agreement to provide 30(b)(6) depositions, which are by their nature conducted on specific topics. *See* Fed. R. Civ. P. 30(b)(6) (requiring a Rule 30(b)(6) notice to "describe with reasonable particularity the matters for examination"). And, although Bain and Charlesbank suggested that any legitimate 30(b)(6) testimony could be rolled into the depositions of Messrs. Cotton, Janower, and Beer, they certainly never suggested that the topics that Plaintiffs now propose—which were not identified until more than five weeks *after* Plaintiffs filed their original motion for leave to take twenty depositions—would necessarily be handled by those individuals in the hypothetical world where the topics were agreed.

These discussions occurred in the context of Plaintiffs' insistence that they needed to take twenty depositions of Bain and Charlesbank. Bain and Charlesbank suggested that testimony from Messrs. Janower, Beer, and Cotton would be sufficient to the needs of the case, including as

to any legitimate and agreed 30(b)(6) topics.  (Rayhill Decl., Ex. A at PageID 6712; Kaiser Decl.

¶ 4.)  Plaintiffs rejected this approach and instead insisted on *both* a large number of depositions

of current and former Charlesbank and Bain employees (specifically eighteen) *and* to have

Charlesbank and Bain provide additional 30(b)(6) depositions on 33 topics.  (Kaiser Decl. ¶ 4.)

No agreement was ever reached.  (*Id.* ¶ 3.)  Indeed, so that there was no ambiguity on this issue,

on March 24, *before* Plaintiffs filed their motion for leave to take twenty depositions, including

"one 30(b)(6) deposition, each," Bain and Charlesbank reiterated to Plaintiffs that "there is no

agreement.  [Plaintiffs] rejected [Bain and Charlesbank's] proposal. . . . You may not just take the

parts you like and try to get more" by filing a motion.  (Kaiser Decl. ¶ 15, Ex. 1.)  Yet that is

exactly what Plaintiffs seek to do here.

The original topics for which Plaintiffs sought testimony—which Plaintiffs continued to

seek, without modification, until May 4—were patently inappropriate.  For example, one topic

sought a deponent to testify as to "All facts and circumstances supporting or refuting

[Bain's/Charlesbank's] affirmative defenses."  (Rayhill Decl., Ex. D at 11.)  This Court already

denied Plaintiffs' motion to compel responses to an identical interrogatory.  (ECF No. 287.)

Other topics purported to encompass all "discussions" regarding various topics with Varsity,

Charlesbank (or Bain, as the case may be), and so-called Banking Institutions, without

identifying what communications were at issue.  (Rayhill Decl., Ex. D.)  Such 30(b)(6) topics are

entirely inappropriate.  *See, e.g.*, *Catt v. Affirmative Ins. Co.*, No. 2:08-CV-243, 2009 WL

1228605, at *6 (N.D. Ind. Apr. 30, 2009) (rejecting 30(b)(6) notice requiring litigant "to identify

and prepare a company representative to essentially testify about every act, piece of

correspondence, telephone conversation, and electronic journal entry of the underlying claim").

That there was no "agreement" about 30(b)(6) depositions is plain from the Court's

Order.  The Court wrote that "plaintiffs note that defendants have only agreed to a total of three

depositions of Bain and Charlesbank employees." (ECF No. 261 at 5.)  It added, in a footnote,

that "Defendants . . . *proposed* Cotton and either Janower or Beer would serve as Bain and

Charlesbank's Rule 30(b)(6) representatives, respectfully." (ECF No. 261 at 5 n.3 (emphasis

added).)  The Court, quoting Plaintiffs' brief, then noted that:

> Plaintiffs have determined that the following Bain and Charlesbank witnesses, at a
> minimum, will possess information highly relevant to their claims, and have
> noticed them to date: Bain (*Ryan Cotton, Josh Bekenstein, Jay Corrigan, Kate
> Steinman (former); Tom O'Rourke (former), Ethan Portnoy, Saron Tesfalul and
> Spencer Dahl); Charlesbank (*Joshua Beer, *Andrew Janower; Neil Kalvelage
> (former), Brandon White, David Katz, Kim Davis, and Jesse Ge). Plaintiffs have
> also issued Rule 30(b)(6) notices to each Bain and Charlesbank. Defendants have
> allowed *only those with asterisks*.

(ECF No. 261 at 10 (quoting ECF No. 228-1 at 7) (emphasis added).)  Plaintiffs did not identify

the 30(b)(6) depositions with asterisks, which is to say Plaintiffs themselves conceded there was

no agreement as to 30(b)(6) depositions.  This was further confirmed in the Court's ultimate

ruling:  "The undersigned concludes that of those originally identified as custodians (not

including Cotton, Beer, and Janower, whose depositions defendants have agreed to), the

plaintiffs have adequately shown that they should be allowed to take the deposition of six of

those custodians: (1) Tom O'Rourke, (2) Saron Tesfalul, (3) Neil Kalvelage, (4) Brandon White,

(5) David Katz, and (6) one of the three members of the Impact Deal Team working under

Cotton, either Kate Steinman, Ethan Portnoy, or Spencer Dahl, at plaintiffs' choosing.  These

depositions will be in addition to the *agreed* depositions of Cotton, Beer, and Janower." (ECF

No. 261 at 11 (emphasis added).)  The Court did not grant leave to take 30(b)(6) depositions.

After the Court issued its Order on April 11, Plaintiffs did not mention 30(b)(6)

depositions to Defendants again until, at 2:30 pm on April 20, 2022, the day *after* the deposition

of Mr. Beer and less than two days before Mr. Janower's deposition, Plaintiffs sent an email regarding "which topics will be covered, and by whom, or if there are any on which you wish to meet and confer." (Rayhill Decl., Ex. B at PageID 6717.) In other words, Plaintiffs knew that there was no agreement on topics *or* witnesses. In the meantime, the parties had had many communications regarding scheduling the nine depositions that the Court had allowed without a single mention of 30(b)(6) depositions. (Kaiser Decl. ¶ 5.) On April 21, the very next day, Bain and Charlesbank told Plaintiffs that they viewed the Court's order denying Plaintiffs' requested depositions (including "one 30(b)(6) deposition, each"), other than as to the nine specific 30(b)(1) depositions that the Court permitted, as dispositive of Plaintiffs' requested additional depositions—including those Plaintiffs seek in this second motion. (Rayhill Decl., Ex. B at PageID 6717.)

Having already taken Mr. Beer's deposition, Plaintiffs went forward with the other eight depositions that the Court had permitted. Nearly two weeks later, at 3:24 pm on Wednesday, May 4, less than 24 hours before the ninth and final deposition of a Bain or Charlesbank witness (Mr. Cotton), Plaintiffs for the first time abandoned the 33 topics in their 30(b)(6) notice. (Rayhill Decl., Ex. B at PageID 6714.) They instead proposed four topics, which roughly correspond with the first four topics as to which they have moved to compel. They also for the first time asked if Bain and Charlesbank would "stipulate to authentication for Bain and Charlesbank produced documents" but did not identify any documents from among the 95,335 that Bain and Charlesbank produced (nor have they done so to date). (*Id.* at PageID 6714-15.) Plaintiffs made this proposal having already completed all of their authorized depositions of Charlesbank employees and knowing that it would be impossible to prepare Mr. Cotton on any 30(b)(6) topics ahead of his deposition the next day (Thursday), or any witness ahead of the

agreed and Court-ordered (ECF No. 211) close of depositions for Bain and Charlesbank on Saturday, May 7—much less on the sprawling topics that Plaintiffs proposed.

Bain and Charlesbank again made it clear that they would not produce further Bain and Charlesbank deponents beyond the nine as to which the Court granted leave.  (Kaiser Decl. ¶ 7.) Plaintiffs then waited another two weeks to bring this motion (almost a full month after Bain and Charlesbank responded to their belated inquiry about 30(b)(6) depositions on April 21)—during which time the May 7 deadline for depositions of Bain and Charlesbank came and went, as did all remaining deadlines to complete depositions in this case.

## ARGUMENT

### I.   PLAINTIFFS' MOTION IS PROCEDURALLY IMPROPER AND WOULD PREJUDICE DEFENDANTS

Plaintiffs' motion to compel is procedurally improper for three separate reasons.  First, it seeks to relitigate Plaintiffs' previous motion for twenty depositions of Bain and Charlesbank, including "one 30(b)(6) deposition, each."  (ECF No. 228.)  The Court resolved this motion by allowing Plaintiffs to take nine depositions of particular named individuals.  Second, it seeks additional depositions beyond the ten the Federal Rules allow, without having obtained stipulation of the parties or leave of the Court to do so.  *See* Fed. R. Civ. P. 30(a)(2)(A)(i). (Indeed, the Court in denied such leave in ECF No. 261.)  Third, it seeks to take depositions after fact discovery has closed, without any showing of good cause, much less the extraordinary circumstances that Judge Lipman has repeatedly emphasized are required.  (ECF No. 175 at 3 ("***No other requests for extensions of these deadlines will be granted absent extraordinary circumstances.***" (emphasis in original)).)

### A.  The Court Already Rejected Plaintiffs' Request

As discussed above, the Court has already considered and rejected Plaintiffs' request for 30(b)(6) depositions of Bain and Charlesbank.  On March 28, 2022, Plaintiffs filed a motion "seek[ing] to take an additional 20 depositions of Bain and Charlesbank witnesses . . . (18 fact witnesses and one Rule 30(b)(6) deposition, each)."  (ECF No. 228 at 2.)  On April 11, the Court issued an order, in which the motion was "GRANTED in part and DENIED in part."  (ECF No. 261 at 1.)  The Court explicitly denied Plaintiffs' request for 20 depositions (which Plaintiffs had requested include "one Rule 30(b)(6) deposition, each"), denied Plaintiffs' request that they be allowed to take depositions of whichever Bain and Charlesbank current and former employees they might choose, and denied Plaintiffs' request to split up their allocation of Bain and Charlesbank witnesses as they saw fit.  (*Id.* at 9-11.)  The Court instead identified eight specific individuals that Plaintiffs would be allowed to depose, and three additional individuals from whom Plaintiffs would be allowed to depose one of their choosing.  (*Id.* at 11.)  Under the relevant scheduling order (ECF No. 211), those depositions had to be completed by May 7, which they were.  (Kaiser Decl. ¶ 6.)  The Court did not grant Plaintiffs' request for leave to take "one 30(b)(6) deposition, each."  Plaintiffs neither asked for clarification, moved for reconsideration, nor appealed the decision to Judge Lipman.

### B.  There Was No "Agreement" to Provide the Testimony That Plaintiffs Seek

There was no "agreement" to provide 30(b)(6) testimony, much less on the topics that Plaintiffs now set forth.  Indeed, such an agreement would have been impossible because Plaintiffs had not even narrowed their list of topics until May 4, *after* all of the Court-permitted depositions of Charlesbank had been concluded, the night before the last of the Bain depositions, and three days before the Court-ordered close of Charlesbank and Bain depositions.  Nor had

Plaintiffs even brought up the issue of authentication of documents (Plaintiffs' new fifth topic) until that date.

There never was any general agreement on 30(b)(6) depositions either.  In the failed negotiations over the number of depositions of Bain and Charlesbank, Bain and Charlesbank indicated that, if Plaintiffs would limit their demand to Messrs. Cotton, Janower, and Beer, Bain and Charlesbank believed that these three individuals could cover any legitimate Rule 30(b)(6) topics.  They also made clear that the thirty-three topics that Plaintiffs had proposed were not legitimate or reasonable.  (Rayhill Decl., Ex. A (Mar. 17, 2022 Letter from S. Kaiser to Plaintiffs' Counsel).)  When Plaintiffs refused to compromise, Bain and Charlesbank reminded Plaintiffs that nothing that was said in negotiations could be used as an indication of agreement.  On March 24, *before* Plaintiffs filed their motion to take twenty depositions, including "one 30(b)(6) deposition, each," Bain and Charlesbank wrote that "there is no agreement.  [Plaintiffs] rejected [Bain and Charlesbank's] proposal. . . . You may not just take the parts you like and try to get more."  (Kaiser Decl. ¶ 15, Ex. 1.)

Plaintiffs' own words to the Court in their motion for leave to take twenty depositions of Bain and Charlesbank demonstrates there was no agreement.  In their memorandum in support of that motion, they reported to the Court that, in an "effort to compromise" during the parties' negotiations, "Plaintiffs uncomfortably dropped the proposed number from 20 to a total of 14 Charlesbank and Bain – 12 Rule 30(b)(1) fact witnesses to allocate across Bain and Charlesbank as Plaintiffs choose, and one Rule 30(6)(6) [*sic*] deposition, each."  (ECF No. 228-1 at 3.)  They reported that, as to this proposal, "Defendants refused."  (*Id.*)

The Court recognized there was no agreement in its Order on Plaintiffs' original motion. As discussed above, the Court wrote that "plaintiffs note that defendants have only agreed to a

total of three depositions of Bain and Charlesbank employees." (ECF No. 261 at 5.) It added, in a footnote, that "Defendants . . . *proposed* Cotton and either Janower or Beer would serve as Bain and Charlesbank's Rule 30(b)(6) representatives, respectfully." (ECF No. 261 at 5 n.3 (emphasis added).) It then quoted Plaintiffs' list of proposed deponents, as to which Plaintiffs had placed asterisks as to the agreed deponents: "Bain (*Ryan Cotton, Josh Bekenstein, Jay Corrigan, Kate Steinman (former); Tom O'Rourke (former), Ethan Portnoy, Saron Tesfalul and Spencer Dahl); Charlesbank (*Joshua Beer, *Andrew Janower; Neil Kalvelage (former), Brandon White, David Katz, Kim Davis, and Jesse Ge). Plaintiffs have also issued Rule 30(b)(6) notices to each Bain and Charlesbank." (ECF No. 261 at 10.) There were no asterisks in respect of the 30(b)(6) depositions, confirming that there was no agreement about Rule 30(b)(6) depositions and that the matter was before the Court in Plaintiffs' motion. Further confirmation is seen in the Court's ultimate ruling, where the Court specifically identified eight individuals who the Plaintiffs could depose, plus a list of three from which Plaintiffs could choose one. (ECF No. 261 at 11.) The Court did not grant leave to take 30(b)(6) depositions.

### C. Plaintiffs' Renewed Request is Out of Time

Fact discovery closed on April 18, 2022. (ECF No. 175.) The parties, by agreement, obtained Court permission to conduct depositions of Bain and Charlesbank through May 7. (ECF No. 211.) By April 21, Plaintiffs knew that Bain and Charlesbank would not produce witness to provide Rule 30(b)(6) testimony in light of the Court's order. Plaintiffs did not bring this motion for nearly a month after that, long after the close of even the extended period for depositions of Bain and Charlesbank. The parties are now moving into expert discovery, with initial reports from Plaintiffs due on June 20. (ECF No. 255.)

Plaintiffs do not even address the requirement that they show good cause, much less extraordinary circumstances, to allow the deposition period to be reopened. Any attempt at such

10

a showing would have failed.  In addition to the timing issues discussed above, which made Plaintiffs' delay of a month in filing this motion inexcusable, Plaintiffs had every opportunity to address the topics that they now bring before the Court at the nine depositions that they were permitted to take.  As to Topic 3, Plaintiffs asked no questions of the Bain and Charlesbank witnesses, and as to Topic 4, they asked only a few.  (Kaiser Decl. ¶ 8.)  As to one of the topics (Topic 1), Plaintiffs asked some questions but certainly could have followed up with more.  (*Id.*) As to the other topic (Topic 2), Plaintiffs asked many questions and, indeed, seemingly exhausted the topic.  (When Plaintiffs were asked what additional questions they might have about Topic 2, they were unable to provide a single example, nor do they provide one to this Court.)  (*Id.* ¶¶ 7-8.)  Plaintiffs also asked many questions about the origins of documents (what they call "foundational testimony" and identify as Topic 5, although it was not a topic in Plaintiffs' original 30(b)(6) notice) (ECF No. 304-1 at 12)).  (*Id.* ¶ 8.)

Plaintiffs point to no instances where a Bain or Charlesbank witness was unable to answer any question on these topics that was asked of them.  Indeed, in the nine depositions taken, Plaintiffs point to only two instances where a Bain or Charlesbank witness was not able to provide answers as an "organization," and neither of these examples are even within the scope of Plaintiffs' proposed topics.  The first was when Mr. White was asked the "basic terms" of the 2014 transaction whereby certain funds managed by Charlesbank acquired interests in Varsity Brands.  Mr. White noted that the legal document that contained the "terms" was hundreds of pages long and that he did not "recall every detail of that."  (Rayhill Decl., Ex. E.)  Of course, the terms of the 2014 transaction are not within the scope of any of Plaintiffs' topics and, indeed, requiring anyone, including a 30(b)(6) deponent, to be able to recite the content of a legal document that is "hundreds of pages" long would be inappropriate.  Similarly, Mr. White stated

that, because Charlesbank "is a collection of individuals," he could not say what "Charlesbank" thought about Varsity as an investment. He was also not able to testify whether "Charlesbank" intended to replace the then-current CEO of Varsity Brands at the time of the 2014 transaction, but stated his own personal views. Mr. White then testified for more than an hour (generating some 50 pages of deposition transcript) about the process by which that decision was made, which is all any witness, 30(b)(6) or otherwise, could do. (*See* Kaiser Decl. ¶ 13.)

### D.  Reopening Discovery Would Prejudice Defendants

When Bain and Charlesbank suggested that *if* the parties could agree on the appropriate number of depositions of Bain and Charlesbank and, further, *if* they could agree on appropriate 30(b)(6) topics, Messrs. Janower, Beer and Cotton likely could provide the agreed testimony, it was in consideration of the fact that they could be prepared to testify on the agreed topics and to provide that testimony in the conjunction with their 30(b)(1) depositions. In doing so, the disruption to the witnesses and the parties would be minimized.

Reopening discovery to accommodate Plaintiffs' request at this stage would have the opposite effect. Additional time would need to be spent preparing for the depositions and taking the depositions, at considerable expense both in terms of legal and other fees (estimated at $50,000 or more (Kaiser Decl. ¶ 14)) and in terms of the lost time of the individuals involved. The purpose of discovery deadlines is to prevent exactly this sort of endless imposition on the parties.

## II.    PLAINTIFFS' TOPICS ARE NOT APPROPRIATE IN ANY EVENT

Even setting aside the fact that the issue of 30(b)(6) depositions of Charlesbank and Bain has been litigated and resolved, there is no need for such depositions in this case. Indeed, when Charlesbank and Bain asked Plaintiffs to identify anything that they legitimately needed that they

were not getting from the 30(b)(1) depositions that the Court allowed, they were unable to do so. Instead they simply said they were "entitled" to such depositions.  (Rayhill Decl., Ex. C at 3.)

Discovery is not unlimited.  "The party seeking discovery is obliged to demonstrate relevance." *Johnson v. CoreCivic, Inc.*, No. 18-cv-1051, 2019 WL 5089086, at *2 (W.D. Tenn. Oct. 10, 2019).  And even theoretically "relevant" evidence is not discoverable if the burden of doing so would be disproportionate.  The proportionality analysis considers: (1) the importance of the issues at stake in the action, (2) the amount in controversy, (3) the parties' relative access to relevant information, (4) the parties' resources, (5) the importance of the discovery in resolving the issues, and (6) whether the burden or expense of the proposed discovery outweighs its likely benefit.  Fed. R. Civ. P. 26(b)(1).  "Determinations as to proportionality are subject to change with the circumstances of the case." *Raymond James & Assocs., Inc. v. 50 N. Front St. TN, LLC*, No. 18-cv-2104, 2020 WL 1527827, at *2 (W.D. Tenn. Mar. 30, 2020) (internal citations and quotations omitted).  "This is in part because '[c]onsiderations of proportionality can include reviewing whether discovery production has reached a point of diminishing returns.'" *Id.* (quoting *Abbott v. Wyo. Cty. Sheriff's Off.*, No. 15-CV-531W, 2017 WL 2115381, at *2 (W.D.N.Y. May 16, 2017)).  In addition, the Court should limit discovery if "(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome or less expensive" or "(ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action."  Fed. R. Civ. P. 26(b)(2)(C).

Depositions under Rule 30(b)(6) are not a means for obtaining duplicative or cumulative discovery or a means to a "do-over" of testimony that could have been obtained through other means.  *See, e.g.*, *Edwards v. Scripps Media, Inc.*, 331 F.R.D. 116, 121-22 (E.D. Mich. 2019)

13

(noting that Rule 26(b)(2)(C)'s limit on discovery that "is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive" or which the seeking party "has had ample opportunity to obtain . . . by discovery in the action" applies to Rule 30(b)(6) notices); *see also Reno v. W. Cab Co.*, No. 2:18-cv-00840, 2020 WL 5902318, at *2-3 (D. Nev. Aug. 31, 2020) (holding that a 30(b)(6) notice "drafted as a means to cover nearly every conceivable facet of this litigation" as opposed to "targeting those issues in which Rule 30(b)(6) testimony is truly needed" was "excessive and unreasonable"); *Prasad v. George Washington Univ.*, 323 F.R.D. 88, 99 (D.D.C. 2017) ("It is not appropriate, however, to use a 30(b)(6) deposition as a catch-all technique to reexamine at the end of discovery the universe of information an adversary has produced during the discovery period."); *U.S. v. HVI Cat Canyon*, No. CV 11-5097, 2016 WL 11683593, at *8 (C.D. Cal. Oct. 26, 2016) (granting motion for a protective order from "overbroad" notice because a "30(b)(6) deposition is not intended to be the only method to obtain evidence on every aspect of the case, particularly when the case is large and complex").

Even without the fatal procedural deficiencies discussed above there would be no call for testimony on any of the five topics that Plaintiffs identify in their motion at this juncture. Indeed, one of the topics (Topic 5 – "The authentication of Charlesbank and Bain documents") was not even in Plaintiffs' 30(b)(6) notice. Plaintiffs first raised it as a topic the night before the deposition of the last Bain employee and after all of the Charlesbank depositions had been taken. (*See* Rayhill Decl. Ex. B.)

Moreover, as noted above, Plaintiffs had every opportunity to explore these topics at the nine depositions that the Court allowed. Instead, they asked no questions about Topic 3 ("Details of any financial arrangements and/or transactions by and between Bain/Charlesbank and

Defendants USASF and Webb") and essentially no questions about Topic 4 ("Any disputes, inquiries, or investigations relating to The Relevant Markets by any governmental agencies, including states' attorneys general, during the Relevant Time Period." (*See* Kaiser Decl. ¶ 8.) They asked some questions about Topic 1 ("The funding and financial support Bain and Charlesbank provided to Varsity, and any financial transfers from Varsity to Bain or Charlesbank."). (*See id.*) They extensively questioned about Topic 2 ("Bain and Charlesbank's oversight of and involvement in the business operations of any Varsity-owned entity"), to the point where it is unclear what additional information they would seek in a do-over 30(b)(6) deposition. (Again, when asked, Plaintiffs could not identify any additional information they wanted or sought on Topics 1 and 2.) (*Id.* ¶¶ 7-8.) And, in any event, Plaintiffs certainly had ample time to ask additional questions. Plaintiffs spent comparatively little time questioning Mr. Cotton (just over two hours), Mr. Janower (about two and a half hours) and Mr. Beer (about three and a half hours) and likewise had additional time with the other witnesses. (*Id.* ¶ 12.) That they may not have pursued all of their questions (if that is the case) indicates that they are not seriously in need of information on these topics. Otherwise they would have explored the topics with the witnesses in the time available.

Moreover, although Plaintiffs say these Topics are "highly relevant" to their claims, that is hardly the case. As to Topic 1, Plaintiffs describe monetary transfers from and to Bain and Charlesbank are relevant somehow because they show the "size of the Varsity monopoly" and "further show involvement in the scheme." (ECF No. 304-1 at 8-9.) That makes no sense. The mere payment of dividends or provisioning of support would show no such thing.[1]  Otherwise

---

[1] Plaintiffs resort to *non sequiturs* in the testimony in their effort to secure testimony on this topic. The testimony they cite related to the detailed terms of the 2014 transaction where funds managed by Charlesbank acquired interests in Varsity Brands. This transaction did not involve

any company that pays a dividend to its shareholders would be a monopoly, which is obviously not the case.

As to Topic 3, Plaintiffs speculate about "payments by Charlesbank and Bain to Webb" and say that, if such "payments" existed, the would be "important to complete the financial details of the key transactions" and to show Mr. Webb's "bias." (ECF No. 304-1 at 10.) But Plaintiffs do not challenge the transactions involving Bain and Charlesbank as illegal, and they are far from the "key transactions' in the case. Moreover, Plaintiffs questioned Mr. Webb about any proceeds he received from the transactions and had every opportunity to ask him questions about payments directly from Bain or Charlesbank but chose not to do so. (Kaiser Decl. ¶ 9.) If such information was "highly relevant," Plaintiffs surely would have asked about it when they were deposing Mr. Webb. (They likewise did not ask a single USASF witness about payments to by Bain or Charlesbank to USASF. (*Id.* ¶ 10.) Plaintiffs do not even try to articulate any theory of relevance of such a payment involving USASF in their brief.)

As to Topic 4, Plaintiffs say that "testimony regarding governmental inquires directed at Charlesbank and Bain, or at Varsity while Charlesbank and Bain were Varsity's controlling parent . . . will be an important source of relevant evidence." (ECF No. 304-1 at 11.) They go on to speculate that there may have been such governmental inquiries under the Hart-Scott-Rodino Act in light of the Varsity acquisitions in the cheerleading industry that Plaintiffs have brought into issue in this case. Once again, Plaintiffs did not spend any significant time asking questions about such an investigation of any Bain or Charlesbank witness. (*See* Kaiser Decl.

---

payments to or from Varsity, but rather payment to the prior owners. And, as to the amount of that payment, the deponent said he remembered the "rough purchase price," which is otherwise in the record many times over. (Saveri Decl., Ex. E, White Dep. Tr. at 60:13.) The other testimony Plaintiffs cite is not even within the scope of Topic 1. (*See* ECF 304-1 at 9 (citing testimony about Charlesbank's investment thesis)).

¶ 8.)  And, in any event, none of the acquisitions that they have sought to bring into issue in this case were even close to being large enough to require a filing under the Hart-Scott-Rodino Act. (*Id.* ¶ 11.)

As noted, Topic 5 was not even a topic in Plaintiffs' 30(b)(6) notice and it is all the more inappropriate to bring a motion to compel on a topic that was never even noticed.  After Plaintiffs raised the issue of authenticating documents for the first time on April 20, Bain and Charlesbank noted that the time to raise authentication objections was when exhibits were identified for trial, but also asked if there were particular documents that Plaintiffs had questions about.  (Kaiser Decl. ¶ 7.)  Plaintiffs never responded.  (*Id.*)  Now Plaintiffs ask this Court to order Bain and Charlesbank to testify as to the authenticity of the 95,335 documents that Bain and Charlesbank produced.  This would be unduly burdensome and indeed is impossible, given that it would require a witness to be familiar with each and every produced document.  It is not an appropriate topic for a Rule 30(b)(6) deposition.  *See, e.g.*, *Baxter Healthcare Corp. v. Fresenius Med. Care Holdings, Inc.,* No. C-07-1359, 2008 WL 5214283, at *1 (N.D. Cal. Dec. 12, 2008) (denying motion under Rule 30(b)(6) to compel the defendants "to provide a witness knowledgeable enough to authenticate 2,700 individual documents or 150,000 pages, and more than 580 CD-ROM discs of electronic files and source code").  It would also be premature and likely completely or almost completely unnecessary.

This leaves Topic 2 ("Bain and Charlesbank's oversight of and involvement in the business operations of any Varsity-owned entity").  Plaintiffs spent a large portion if not the majority of their time in the depositions of Bain and Charlesbank asking questions related to this topic.  (Kaiser Decl. ¶ 8.)  In the one paragraph in their brief addressing this topic, Plaintiffs do not identify a single instance where their questions were not answered fully or where a witness

17

disclaimed knowledge.  As noted, Plaintiffs likewise had many hours of additional time that they could have asked any other questions they might have, but they either had no more questions or decided not to bother.  They should not be permitted an after-the-close of discovery do-over now.

## CONCLUSION

Bain and Charlesbank respectfully request that the Court deny Plaintiffs' motion to compel depositions under Rule 30(b)(6) in its entirety.

Dated: May 24, 2022

Respectfully submitted,

s/ Matthew S. Mulqueen

George S. Cary*
Steven J. Kaiser*
Linden Bernhardt*
CLEARY GOTTLIEB STEEN &
  HAMILTON LLP
2112 Pennsylvania Avenue, NW
Washington, DC 20037
Phone: (202) 974-1500
Fax: (202) 974-1999
gcary@cgsh.com
skaiser@cgsh.com
lbernhardt@cgsh.com

Jennifer Kennedy Park*
Heather Nyong'o*
CLEARY GOTTLIEB STEEN &
  HAMILTON LLP
1841 Page Mill Road, Suite 250
Palo Alto, CA 94304
Phone: (650) 815-4100
Fax: (202) 974-1999
jkpark@cgsh.com
hnyongo@cgsh.com

* Admitted pro hac vice

Matthew S. Mulqueen (TN #28418)
Adam S. Baldridge (TN #23488)
BAKER, DONELSON, BEARMAN,
 CALDWELL & BERKOWITZ
165 Madison Avenue, Suite 2000
Memphis, TN 38103
Phone: (901) 526-2000
Fax: (901) 577-0866
mmulqueen@bakerdonelson.com
abaldridge@bakerdonelson.com

*Attorneys for Charlesbank Capital Partners,
 LLC and Bain Capital Private Equity*