```
             IN THE UNITED STATES DISTRICT COURT
           FOR THE WESTERN DISTRICT OF TENNESSEE
                        WESTERN DIVISION
```
_____

```
JESSICA JONES, et al.,            )
                                  )
     Plaintiffs,                  )
                                  )
v.                                )
                                  )   No. 20-cv-02892-SHL-tmp
VARSITY BRANDS, LLC, et al.,      )
                                  )
     Defendants.                  )
```
_____

**ORDER DENYING PLAINTIFFS' MOTION TO COMPEL DOCUMENTS WITHHELD BY DEFENDANTS CHARLESBANK AND BAIN**
_____

Before the court is plaintiffs' Motion to Compel Documents Withheld by Defendants Charlesbank Capital Partners LLC ("Charlesbank") and Bain Capital Private Equity ("Bain"), filed on May 2, 2022. (ECF No. 290.) Defendants responded on May 16, 2022, plaintiffs replied on May 20, 2022, and defendants filed a sur-reply on May 24, 2022.  (ECF Nos. 297, 310, 312.) For the reasons below, the motion is DENIED.

## I.   BACKGROUND

The present case involves anti-trust claims brought against Varsity Brands, LLC, its affiliated brands and companies, and its prior and present owners.[1] Charlesbank owned Varsity from 2014

---

[1] Two other related cases are currently proceeding before U.S. District Judge Sheryl Lipman: Fusion Elite All Stars, et al. v. Varsity Brands, LLC, et al., 2:20-cv-02600-SHL-tmp (W.D. Tenn. Aug. 13, 2020) ("Fusion") and American Spirit and Cheer Essentials

through June 2018, when it sold its interest to Bain, who remains the majority owner. (ECF No. 102-1 at 3.) In brief, plaintiffs allege that defendants conspired to and did in fact form a monopoly over the cheerleading industry in the United States. Plaintiffs filed their complaint on December 10, 2020, seeking class certification, damages, and injunctive relief. (ECF No. 1.)

On March 12, 2021, Charlesbank and Bain filed motions to strike the class allegations and motions to dismiss the complaint. (ECF Nos. 55-60.) On March 26, 2021, plaintiffs served their requests for production on Bain and Charlesbank. (ECF No. 290-1 at 4.) Both defendants filed objections and responses to the requests on April 26, 2021. (ECF Nos. 111 at 2, 112 at 2.) In addition to their specific objections to individual requests, both defendants included a general privilege objection. (ECF Nos. 290-5 at 2, 290-6 at 2) ("[Defendants] object[] to the Requests to the extent they seek material that is subject to attorney-client privilege or the work product doctrine.").

Almost six weeks later, plaintiffs requested to meet and confer regarding the disputed discovery. (ECF No. 111.) On July 28, 2021, the parties filed a joint motion to extend the deadline to submit disputes regarding requests for production. (ECF No. 93.) Bain and Charlesbank each made initial productions on

---

Inc., et al. v. Varsity Brands, LLC, et al., 2:20-cv-02782-SHL-tmp (W.D. Tenn. Jul. 24, 2020) ("American Spirit").

September 11, 2021 and September 15, 2021, respectively. (Id.) On September 18, 2021, plaintiffs filed motions to compel the production of documents from Bain and Charlesbank. (ECF Nos. 101-02.) An initial hearing on the motion was held before Magistrate Judge Charmiane Claxton on October 28, 2021. (ECF No. 136.) During this hearing, Judge Claxton noted that Bain and Charlesbank had recently been dismissed from the American Spirit case and that a similar motion was pending before Judge Lipman in this case. (ECF No. 143 at 4-5.) Judge Claxton declined "to move forward either way" on the present motions in light of Judge Lipman's decision. (Id. at 5.) The case was subsequently transferred to the undersigned and another hearing was held on November 19, 2021. (ECF No. 164.) At the November 19 hearing, the undersigned asked Bain and Charlesbank whether they planned to file a motion to stay discovery given the pending motions to dismiss. (ECF No. 174.) No such motion was ever filed. The undersigned ultimately granted the plaintiffs' motions in part and denied them in part, ordering that discovery would proceed regardless of any pending dispositive motions. (Id.)

In an email sent on February 15, 2022, counsel for defendants explained to plaintiffs' counsel that the production of documents was "large and burdensome and encompassed many privileged documents that would need to be withheld in full or in part." (ECF No. 297 at 4.) In light of this, the parties agreed that

defendants' production would be substantially completed by April 1, 2022. (ECF No. 297 at 4.) Bain and Charlesbank each made a second production on February 24, 2022 and February 28, 2022, respectively, and both defendants made the bulk of their production on April 1, 2022. (ECF No. 290-1 at 4.) On April 14, 2022, Charlesbank re-produced 111 documents that had been mistakenly redacted for privilege. (Id.) Fact discovery closed on April 18, 2022. (ECF No. 175.) Bain produced a privilege log on April 19, 2022, and Charlesbank produced the same on April 20, 2022.[2] (Id.) The log and production showed that Charlesbank withheld 4,391 documents and redacted 3,523 documents, which constituted about ten percent of their total production. (Id. at 2.) Bain withheld 826 documents and redacted 1,245 documents, which constituted about eleven percent of their total production. (Id.) As of the date of this order, the Rule 30(b)(1) depositions of current and former employees of the defendants have already been completed. (Id. at 5.)

---

[2]Bain and Charlesbank's privilege logs were produced in the same format as the Varsity defendants' logs. (ECF No. 297 at 2.) In an email accompanying one of Varsity's privilege logs, counsel for Varsity — who is also counsel for Bain and Charlesbank — wrote, "[i]f there are any issues with the format of the log, please let us know as soon as possible. As Varsity's privilege review is ongoing, we intend to utilize this format for future privilege log installments unless we hear otherwise from you." (ECF No. 297-1 at 13.) Plaintiffs did not raise any objections to the format of the Varsity log. (ECF No. 297 at 2.)

On May 2, 2022, plaintiffs filed the present motion, seeking all withheld documents. Plaintiffs argue that because defendants failed to timely provide privilege logs, any and all claims of privilege have been waived. (Id.)

## II. ANALYSIS

The scope of discovery is defined by Federal Rule of Civil Procedure 26(b)(1), which provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" A party that claims the protection of the attorney-client privilege or the attorney work product doctrine to withhold documents must not only expressly raise the claim, but also prepare a privilege log that generally describes the nature of the documents withheld so as to enable the other parties to assess the merits of the claim. Fed. R. Civ. P. 26(b)(5)(A)(ii). The complete failure of a party to provide a privilege log may result in a waiver of the claimed privilege. Brown v. Tax Ease Lien Servicing, LLC, No. 3:15-CV-208-CRS, 2017 WL 6939338, at *14 (W.D. Ky. Feb. 16, 2017). However, such a waiver is not automatic given the harshness of such a sanction. Id. (citing First Savings Bank, F.S.B. v. First Bank Sys., Inc., 902 F. Supp. 1356, 1361-63 (D. Kan. 1995)); see also EEOC v. Safeway Store, Inc., No. C-00-3155 TEH(EMC), 2002 WL 31947153, at *2 (N.D. Cal. Sept. 16, 2002) ("Finding that a party has waived its right to assert a

privilege objection due to its conduct (or lack thereof) is a harsh sanction utilized where the party has unjustifiably delayed discovery."). "Minor procedural violations, good faith attempts at compliance, and other such mitigating circumstances militate against finding waiver. In contrast, evidence of foot-dragging or a cavalier attitude towards following court orders and the discovery rules supports finding waiver." Brown, 2017 WL 6939338, at *14 (quoting Ritacca v. Abbott Lab., 203 F.R.D. 332, 334-335 (N.D. Ill. 2001)).

In support of their argument for waiver, plaintiffs rely on the Ninth Circuit's decision in Burlington Northern & Santa Fe Ry. Co. v. Dist. Ct. of Mont., 408 F.3d 1142 (9th Cir. 2005). In that case, the Ninth Circuit rejected "a *per se* waiver rule that deems a privilege waived if a privilege log is not produced within Rule 34's 30-day time limit."[3] Burlington Northern, 408 F.3d at 1149. Instead, the court directed district courts to use the 30-day period as a default guideline, but to make a case-by-case determination that considers the following factors:

> [1] the degree to which the objection or assertion of privilege enables the litigant seeking discovery and the court to evaluate whether each of the withheld documents is privileged (where providing particulars typically contained in a privilege log is presumptively sufficient and boilerplate objections are presumptively insufficient); [2] the timeliness of the objection and

---

[3]Federal Rule of Civil Procedure 34 requires that a written response to a discovery request be served within 30 days of the service of the request.

> accompanying information about the withheld documents (where service within 30 days, as a default guideline, is sufficient); [3] the magnitude of the document production; and [4] other particular circumstances of the litigation that make responding to discovery unusually easy . . . or unusually hard.

Id. The Ninth Circuit added that "[t]hese factors should be applied in the context of a holistic reasonableness analysis . . . [and that] the application of these factors shall be subject to any applicable local rules, agreements or stipulations among the litigants, and discovery or protective orders." Id.

Plaintiffs argue that the Burlington Northern factors weigh heavily in favor of waiver. (ECF No. 290-1 at 16.) When considering the first factor, plaintiffs argue that defendants' initial boilerplate privilege objections provided nothing specific that would allow plaintiffs to assess privilege claims. (Id. at 16.) Further, plaintiffs claim that defendants' privilege logs themselves are deficient. (Id.) As to the second factor, plaintiffs contend that defendants produced privilege logs thirteen months after the initial requests for production were made, and after the April 18, 2022 close of discovery. (Id. at 14.)  Plaintiffs assert that the third factor also weighs in favor of waiver because defendants' "productions are not extremely large." (Id. at 20.) Finally, plaintiffs argue that the fourth factor also weighs in favor of waiver because "[t]here are no exceptional circumstances which excuse this conduct." (Id. at 21.)

Defendants argue that the Burlington Northern factors demonstrate that waiver is inappropriate. First, the privilege logs were not untimely; they were produced nineteen and twenty days after the agreed production deadline of April 1, 2022. (ECF No. 297 at 10.) Second, the "document productions were large and undertaken on an extremely tight schedule of just over three months." (Id. at 11.) Finally, defendants disagree with plaintiffs' characterization of their privilege logs and claim that the logs comply with the ESI Protocol and Rule 26. (Id. at 13.)

Although the Sixth Circuit has not expressly adopted the test developed by Burlington Northern, district courts within the circuit have applied it. See, e.g., Casale v. Nationwide Children's Hosp., 2:11-cv-1124, 2014 WL 1308748 (S.D. Ohio Mar. 28, 2014)(applying a modified version of the Burlington Northern test); Hennigan v. Gen. Elec. Co., No. 09-11912, 2011 WL 13214444, at *3 (E.D. Mich. June 1, 2011). Applying the Burlington Northern factors, the undersigned finds that defendants have not waived their privilege.

The first Burlington Northern factor, the degree to which the objection or assertion of privilege is clear, weighs against waiver. Plaintiffs' focus on defendants' general privilege objections in their responses and objections to plaintiffs' requests for production is misplaced. Defendants' use of general

-8-

privilege objections early in the discovery process, especially given the complexities of this case and large volume of document production, was justified. See Fischer v. Forrest, 14 Civ. 1304 (PAE) (AJP), 2017 WL 773694, at *3 (S.D.N.Y. Feb. 28, 2017) ("General objections should rarely be used . . . unless each such objection applies to each document request . . . e.g., objecting to produce privileged material[.]"). Defendants' privilege objections were made alongside several specific objections that needed to be resolved before document review and production could begin. It would have been unrealistic to expect defendants to produce a privilege log before the scope of production had been clearly defined.

Moreover, although defendants' privilege logs could have been more detailed, the logs provide the type of information that is commonly included in a privilege log. See Cooey v. Strickland, 269 F.R.D. 643, 649 (S.D. Ohio 2010) ("The party asserting the privilege must make "at least a minimal showing that the communication contained legal matters," but that showing need not be "onerous and may be satisfied by as little as a statement in the privilege log explaining the nature of the legal issue for which advice was sought.")(quoting In re Search Warrant Executed at Law Offices of Stephen Garea, No. 97-4112, 1999 WL 137499, at *2 (6th Cir. Mar. 5, 1999)). Here, the logs include the subject matter of the documents, the privilege claimed, and the basis of

the privilege, as well as the names of individuals who sent and received the documents. (ECF No. 290-11.) Further, Bain and Charlesbank's privilege logs are in the same format as the logs produced by the Varsity defendants. (ECF No. 297 at 2.) Plaintiffs did not raise any objections when asked if they had any issues with the format of the Varsity defendants' logs. (Id.)

The second factor, the timeliness of the objection, also weighs against waiver. Although plaintiffs highlight the fact that the privilege logs were produced thirteen months after the initial request for production, they fail to acknowledge relevant intervening events. The plaintiffs themselves sought extensions of time to file their motion to compel. (ECF Nos. 93, 99.) When Judge Claxton considered that motion, she declined to rule on it because Bain and Charlesbank had recently been dismissed from a related case and a similar motion was pending in the instant case. (ECF No. 143 at 5.) The motions to compel were not decided until December 13, 2021, at which point the April 18, 2022 discovery deadline was only four months away. (ECF No. 174.) Plaintiffs and defendants agreed that production would be substantially completed by April 1, 2022, which it was. (ECF No. 290-1 at 2.) The privilege logs were produced nineteen and twenty days later, less than thirty days after the stipulated date of production. (Id.) Although they were produced after the discovery deadline, this delay was minimal considering the size of the production and the limited time

defendants had to complete it. See Brown, 2017 WL 6939338, at *14. Additionally, the fact that a significant number of documents were privileged should not have come as a surprise to plaintiffs because defense counsel had represented over email that many of the deal-related documents were privileged. (ECF No. 297-1 at 3.)

The third and fourth factor, the magnitude of the document production and other relevant circumstances that make production particularly difficult or easy, also do not support waiver. Plaintiffs argue that defendants' "productions are not extremely large" and cite to Hennigan, in which the court found that the "large" size of the document production did not excuse an almost twelve month delay. 2011 WL 13214444, at *4; (ECF No. 290-1 at 20.) In Hennigan, the defendants, who had already failed to comply with a previous court order ordering production, explained that they did not provide a privilege log earlier because it was difficult to respond to plaintiffs' "general" requests and the magnitude of the document production made it "unusually difficult" to respond. Id. at 2-3. The court did not find this justification convincing because specific documents, which were held in a separate, smaller database "could be found without much effort." Id.

Here, unlike in Hennigan, defendants produced a large number of documents on an extremely compressed schedule. Charlesbank produced 76,568 total documents, while Bain produced 18,843

-11-

documents; the bulk of these productions were made within a three-month period. (ECF No. 290-1 at 20.) Although part of this time crunch is certainly due to Bain and Charlesbank's reluctance to engage in the discovery process, this conduct does not rise to the level of non-compliance of the defendants in Hennigan.

Considering the case holistically, the court finds the Burlington Northern factors do not support a waiver, therefore plaintiffs' motion is DENIED.

IT IS SO ORDERED.

s/ Tu M. Pham
TU M. PHAM
Chief United States Magistrate Judge

June 3, 2022
Date