**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

| | |
|---|---|
| **JESSICA JONES, et al.,** | Case No. 2:20-cv-02892-SHL-tmp |
| Plaintiffs, | |
| v. | |
| **VARSITY BRANDS, LLC, et al.** | |
| Defendants. | **JURY DEMAND** |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION
TO RECONSIDER ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTIONS TO DISMISS**

## <u>TABLE OF CONTENTS</u>

I.      INTRODUCTION ................................................................................................ 1

II.     FACTUAL BACKGROUND ............................................................................... 3

III.    LEGAL STANDARD .......................................................................................... 4

IV.     THE COURT SHOULD RECONSIDER ITS RULING ON PLAINTIFFS'
        TENNESSEE CLAIMS. ...................................................................................... 5

  A.    Varsity and Webb Never Raised the Applicable Arguments. ........................... 5

  B.    USASF Did not Adequately Raise the Arguments to Warrant Concession by Plaintiffs. . 8

        1.      Plaintiffs' Tennessee Antitrust Claim .................................................... 9

        2.      Plaintiffs' Tennessee Consumer Protection Claim ............................... 14

V.      CONCLUSION ................................................................................................... 17

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Amodeo v. ConservCare, LLC*, 2009 WL 736656 (Tenn. Ct. App. Mar. 20, 2009)......................11

*Baird Tree Co. v. City of Oak Ridge*, 2008 WL 2510581
    (Tenn. Ct. App. June 24, 2008)................................................................................11, 13

*Bearden v. Honeywell Int'l Inc.*, 2010 WL 3239285 (M.D. Tenn. Aug. 16, 2010) .......................16

*Beaudreau v. Larry Hill Pontiac/Oldsmobile/GMC, Inc.*,
    160 S.W.3d 874 (Tenn. Ct. App. 2004) .................................................................................11

*Busby v. Bonner*, 466 F. Supp. 3d 821 (W.D. Tenn. 2020) ............................................................7

*Cacevic v. City of Hazel Park*, 226 F.3d 483 (6th Cir. 2000) .........................................................4

*Cardenas v. Toyota Motor Corp.*, 418 F. Supp. 3d 1090 (S.D. Fla. 2019)....................................17

*Cooper v. Shelby Cnty., Tenn.*, No. 07-2283-STA-CGC,
    2010 WL 3211677 (W.D. Tenn. Aug. 10, 2010)....................................................................7

*Duke v. Browning-Ferris Indus. of Tennessee, Inc.*,
    2006 WL 1491547 (Tenn. Ct. App. May 31, 2006) ..............................................................11

*Francis v. Gen. Motors*, LLC, 504 F. Supp. 3d 659 (E.D. Mich. 2020).......................................16

*Hale v. Tennessee*, No. 3:14-CV-02194, 2021 WL 5867097
    (M.D. Tenn. Dec. 10, 2021)....................................................................................................4

*In re Larry E. Parrish, P.C.*, No. 2:20-CV-2253-SHL-ATC, 2021 WL 6804095
    (W.D. Tenn. Mar. 29, 2021) ...................................................................................................7

*Jo Ann Forman, Inc. v. Nat'l Council on Comp. Ins., Inc.*,
    13 S.W.3d 365 (Tenn. Ct. App. 1999) ..................................................................................11

*Kemp v. United States*, 142 S. Ct. 1856 (2022) .............................................................................4

*Lisk v. Lumber One Wood Preserving, LLC*, 792 F.3d 1331 (11th Cir. 2015)..............................16

*Malin v. JPMorgan*, 860 F. Supp. 2d 574 (E.D. Tenn. 2012) .........................................................6

*McAdoo Contractors, Inc. v. Harris*, 222 Tenn. 623 (1969) ...................................................10, 11

*McPherson v. Kelsey*, 125 F.3d 989 (6th Cir. 1997)...............................................................2, 9, 14

PLAINTIFFS' MEMORANDUM OF LAW
IN SUPPORT OF PLAINTIFFS' MOTION TO RECONSIDER

*Redmond v. NPC Int'l, Inc.*, No. 13-1037, 2014 WL 12814500
(W.D. Tenn. Dec. 3, 2014) ..............................................................................4

*Reynolds v. FCA US LLC*, 546 F. Supp. 3d 635 (E.D. Mich. 2021) ............................................16

*Roger Miller Music v. Sony/ATV Publ'g*, 477 F. 3d 383 (6th Cir. 2007) .......................................4

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393 (2010) .............8, 15, 16

*United States v. Hayter Oil Co. of Greeneville, Tenn.*,
51 F.3d 1265 (6th Cir. 1995) .......................................................................15

*United States v. Tennessee Walking Horse Breeders' & Exhibitors' Ass'n*,
263 F. Supp. 3d 679 (M.D. Tenn. 2017).......................................................4

## State Statutes

Tenn. Code Ann. § 47-18-101 .......................................................... *passim*

Tenn. Code Ann. § 47-18-109(g).........................................................14, 15

Tenn. Code Ann. § 47-25-101 .......................................................... *passim*

## Rules

Fed. R. Civ. P. 23 .........................................................................8, 14, 16, 17

Fed. R. Civ. P. 59(e) ..............................................................................4

Fed. R. Civ. P. 60(b) ..............................................................................4

W.D. Tenn. Civ. R. 7.3(b)(3) .....................................................................4

PLAINTIFFS' MEMORANDUM OF LAW
IN SUPPORT OF PLAINTIFFS' MOTION TO RECONSIDER

Plaintiffs Jessica Jones and Christina Lorenzen ("Plaintiffs") respectfully submit this Memorandum of Law in support of Plaintiffs' Motion to Reconsider the Order Granting in Part and Denying in Part Defendants' Motions to Dismiss ("Motion").[1]

## I.        INTRODUCTION

In the Court's Order, ECF No. 333, the Court dismissed portions of the Tennessee antitrust claim and the Tennessee consumer protection claim against all Defendants on the grounds that Plaintiffs "conceded" those claims. *See* ECF No. 333 at 40, 54–55. This is incorrect. Plaintiffs did not concede the claims. With respect to Defendants Varsity and Webb, Plaintiffs did not and could not have conceded the claims because Varsity and Webb never moved to dismiss on the grounds that the Court held Plaintiffs had conceded. The Court appears to have mistakenly concluded that Varsity and Webb had moved to dismiss on those grounds. But they never did. Because Varsity and Webb never made the motion on the grounds at issue, there was nothing for Plaintiffs to concede with respect to Varsity and Webb.

With respect to USASF, Plaintiffs also did not concede the claims. USASF did not properly move to dismiss on the grounds that the Court held Plaintiffs had conceded. With respect to the Tennessee antitrust claim, USASF stated only in conclusory fashion in its opening brief that the "Cheer Competitions and Cheer Camps markets . . . are intangible services," and therefore outside the scope of the Tennessee antitrust statute. ECF No. 57-1 at 18. USASF did not contend in its Reply (ECF No. 74) that Plaintiff had conceded this point. In fact, neither the case law nor the complaint itself supports this conclusion. The cases where other courts have

---

[1] The Court's Order ruled on ECF No. 57 (U.S. All Star Federation, Inc.'s ("USASF") Motion to Dismiss); ECF No. 58 (Jeff Webb's Motion to Dismiss); and ECF No. 59 (Varsity Brands, LLC and Varsity Spirit Fashion & Supplies, Inc.'s Motion to Dismiss). "Varsity" as used herein refers collectively to the three named Varsity Defendants: Varsity Brands, LLC, Varsity Spirit, Inc., and Varsity Spirit Fashions & Supplies, LLC, all of whom moved to dismiss. *See* ECF No. 59.

dismissed claims on this basis were limited to particular circumstances where the restraint involved purely service contracts or agreements, and thus the services in those cases are distinguishable from the products at issue here.

Further, USASF's conclusory statement that cheer competitions and cheer camps "are intangible services" is a factual contention that is incorrect and at odds with the well-pleaded allegations in Plaintiffs' complaint. As Plaintiffs allege, cheer competitions and cheer camps are not purely services. They are products that include aspects of both goods and services. Any omission by Plaintiffs to directly address USASF's conclusory assertion should not be deemed a concession by Plaintiffs. Plaintiffs ask the Court to reconsider its ruling that Plaintiffs conceded USASF's argument, consider Plaintiffs' arguments presented in this motion, and hold that Plaintiffs' complaint adequately alleges facts showing that the cheer camps and cheer competitions markets are not purely "intangible services." That issue is a factual question that is adequately pled by Plaintiffs' complaint. Were it not, Plaintiffs should be allowed to seek leave to amend the complaint to cure the deficiency.

On the Tennessee consumer protection claim, the Court also held that Plaintiffs conceded USASF's arguments. ECF No. 333 at 54–55. But USASF failed to adequately move to dismiss on the grounds that the Court held the Plaintiffs had conceded. USASF merely stated vaguely that "Plaintiffs cannot even bring a class action under some of the cited state laws," and cited to the procedural class action bar set forth in the Tennessee consumer protection statute. ECF No. 57-1 at 20. As the Sixth Circuit has held, "[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." *McPherson v. Kelsey,* 125 F.3d 989, 995 (6th Cir. 1997). USASF's vague and conclusory sentence was insufficient to raise the argument. Indeed, USASF never claimed that Plaintiffs had conceded the

argument in its Reply. Plaintiffs' failure to directly respond was thus not a concession or was excusable neglect.

Moreover, USASF's arguments under both the Tennessee antitrust statute and the Tennessee consumer protection statute are wrong. It would be a manifest injustice to dismiss these claims not on the merits, but on the basis of Plaintiffs' alleged concession, particularly where USASF did not adequately raise the arguments.

Plaintiffs respectfully request that this Court reconsider its Order dismissing the Tennessee antitrust claim as to cheer competitions and cheer camps, and the Tennessee consumer protection claim. Varsity and Webb never even remotely raised the argument, and USASF did not adequately raise the arguments such that Plaintiffs' lack of response was a concession on the claims. Plaintiffs ask the Court to rule on the issues on the merits.

## II.      FACTUAL BACKGROUND

Plaintiffs filed their class action complaint on December 10, 2020. ECF No. 1. Defendants USASF, Jeff Webb, Varsity, Charlesbank Capital Partners LLC ("Charlesbank"), and Bain Capital Private Equity ("Bain") filed motions to strike the class allegations and motions to dismiss the complaint on March 12, 2021. ECF Nos. 55–60. On August 26, 2021, the Court denied defendants' motions to dismiss in the *Fusion* action.[2] *See Fusion* action, ECF No. 141. On August 1, 2022, the Court granted in part and denied in part the Defendants' motions to dismiss. ECF No. 333. This was the first and only set of Rule 12 motions with respect to the complaint. Plaintiffs have not had the opportunity to amend the complaint previously. No answer has yet been filed.

---

[2] See *Fusion Elite All Stars, et al. v. Varsity Brands, LLC, et al.*, 2:20-cv-02600-SHL-tmp (W.D. Tenn.).

### III.    LEGAL STANDARD

In the Sixth Circuit, motions for reconsideration are most commonly analyzed under Federal Rule of Civil Procedure 59(e). *See, e.g.*, *Redmond v. NPC Int'l, Inc.,* No. 13-1037, 2014 WL 12814500, at *1 (W.D. Tenn. Dec. 3, 2014) (applying Rules 59(e) and 60(b) to reconsideration of motion to dismiss). Motions for reconsideration are not intended to allow litigants to simply re-argue what has already been addressed. Courts may grant a Rule 59(e) motion for reconsideration if there is "a clear error of law," or "a need to prevent manifest injustice." *United States v. Tennessee Walking Horse Breeders' & Exhibitors' Ass'n*, 263 F. Supp. 3d 679, 681 (M.D. Tenn. 2017); *see also Roger Miller Music v. Sony/ATV Publ'g*, 477 F. 3d 383, 395 (6th Cir. 2007). Motions under Rule 59(e) "are entrusted to the Court's sound discretion." *Tennessee Walking Horse*, 263 F. Supp. 3d at 681. "A showing of manifest injustice requires that there exists a fundamental flaw in the court's decision that without correction would lead to a result that is both inequitable and not in line with applicable policy." *Hale v. Tennessee*, No. 3:14-CV-02194, 2021 WL 5867097, at *3 (M.D. Tenn. Dec. 10, 2021).

Motions for reconsideration are also heard under Federal Rule of Civil Procedure 60(b). *See, e.g.*, *id.*; *Redmond,* 2014 WL 12814500, at *1. Under Rule 60(b), a "court may relieve a party from an Order" based on "mistake, inadvertence, surprise, or excusable neglect." Mistake can be from the Court or from the parties. *See, e.g.*, *Kemp v. United States*, 142 S. Ct. 1856 (2022); *Cacevic v. City of Hazel Park*, 226 F.3d 483, 490 (6th Cir. 2000) (motions under Rule 60(b)(1) are intended to provide relief "(1) when the party has made an excusable litigation mistake or . . . (2) when the judge has made a substantive mistake of law or fact in the final judgment or order"); *see also* Local Rule 7.3(b)(3) (the Court may revise an order based on a

"manifest failure by the Court to consider material facts or dispositive legal arguments that were presented to the Court before such interlocutory order").

## IV.     THE COURT SHOULD RECONSIDER ITS RULING ON PLAINTIFFS' TENNESSEE CLAIMS.

The Court should reconsider its Order granting the motions to dismiss on the Tennessee antitrust claim and Tennessee consumer protection claim on the grounds that Plaintiffs conceded those claims. With respect to Defendants Varsity and Webb, Plaintiffs ask the Court to reconsider its Order that Plaintiffs conceded the applicable arguments because Varsity and Webb never raised those arguments at all. With respect to USASF, Plaintiffs ask the Court to reconsider because USASF did not adequately raise the applicable arguments or sufficiently move to dismiss on the applicable grounds.[3]

### A.     Varsity and Webb Never Raised the Applicable Arguments.

In the Court's Order granting in part and denying in part all the Defendants' motions to dismiss, the Court dismissed—as to all Defendants—Plaintiffs' Tennessee antitrust claim[4] with respect to cheer competitions and cheer camps, as well as Plaintiffs' Tennessee consumer protection claim.[5] The Court did so solely on the grounds that Plaintiffs conceded the arguments. *See* ECF No. 333 at 40 (dismissing TTPA claim with respect to cheer camps and cheer competitions markets on the ground that Plaintiffs conceded the argument); ECF No. 333 at 54–55 (dismissing TCPA claim on the ground that Plaintiffs conceded the argument). This was in

---

[3] Plaintiffs ask the Court to find that Plaintiffs' failure to directly respond was excusable neglect, and therefore address Plaintiffs' Tennessee claims on the merits when they are adequately raised.
[4] Count 2 of Plaintiffs' complaint brought claims under the Tennessee antitrust statute, the Tennessee Trade Practices Act ("TTPA").
[5] Count 4 of Plaintiffs' complaint brought claims under Tennessee's consumer protection statute, the Tennessee Consumer Protection Act ("TCPA").

error. Neither Varsity nor Webb ever moved to dismiss on these grounds. There was thus nothing

for Plaintiffs to concede with respect to Varsity and Webb because they never raised the

arguments.

With respect to the Tennessee antitrust claim under the TTPA, the Court stated that

"Webb first argues that the TTPA is inapplicable to the Cheer Camp and Cheer Competition

markets because it applies only to tangible goods, not intangible services," citing to Webb's brief

at ECF 58-1 at PageID 298. *See* ECF No. 333 at 40. The Court then held that "[b]ecause the

Indirect Purchasers do not respond to this argument, the Court finds that point conceded." *Id.* But

Webb did not argue—either at PageID 298 or anywhere in the moving papers—that the TTPA

was inapplicable to cheer competitions and cheer camps on the grounds that those markets are

"intangible services." *See* ECF No. 58; ECF No. 58-1.

Webb's motion and the brief filed in support are devoid of any such assertion. *Id.* Varsity

did not raise this argument either. *See* ECF No. 59; ECF No. 59-1. Nor did Varsity or Webb

incorporate USASF's vague arguments. Varsity incorporated some of Webb's arguments, *see*

ECF 59-1 at 20, and Webb incorporated some of Varsity's arguments, *see* ECF 58-1 at 6 n.3. But

Webb and Varsity's motions did not incorporate USASF's arguments. *See* ECF Nos. 58-1, 59-1.

Moreover, neither Webb nor Varsity argued that Plaintiffs conceded the claim in their

replies, because that would have been incorrect. Neither of them had moved to dismiss on those

grounds. Instead, after the fact, in his reply brief, Jeff Webb attempted to raise for the first time

the argument that cheer camps and cheer competitions are purely "intangible services." *See* ECF

No. 75 at 6. Raising it for the first time in the reply further demonstrates it was not a basis for the

motion. It is well-settled that arguments raised for the first time in reply are improper and not

considered. *See Malin v. JPMorgan,* 860 F. Supp. 2d 574, 577 (E.D. Tenn. 2012) (declining to

address arguments raised for the first time in reply "as a matter of litigation fairness and
procedure," because "[i]t is well-settled that a movant cannot raise new issues for the first time in
a reply brief because consideration of such issues 'deprives the non-moving party of its
opportunity to address the new arguments'"); *see also Cooper v. Shelby Cnty., Tenn.,* No. 07-
2283-STA-CGC, 2010 WL 3211677, at *3 n.14 (W.D. Tenn. Aug. 10, 2010) (collecting 6th
Circuit and district court cases). Of course, since it was raised for the first time in reply, Plaintiffs
did not have the opportunity to respond, could not have conceded it, and it should not have been
considered. *See, e.g., In re Larry E. Parrish, P.C.,* No. 2:20-CV-2253-SHL-ATC, 2021 WL
6804095, at *4 (W.D. Tenn. Mar. 29, 2021); *Busby v. Bonner,* 466 F. Supp. 3d 821, 826 n.4
(W.D. Tenn. 2020) ("[B]ecause Defendants raise this argument for the first time in their Reply, it
is not well-taken, and not considered here."). Varsity's reply only attempted to incorporate Webb
and USASF's reply briefing on the state law claims. *See* ECF No. 73 at 10.

So too with Plaintiffs' Tennessee consumer protection claim under Tennessee Code
Section 47-18-101 *et seq.* Just as with the TTPA claim, the Court dismissed the Tennessee
consumer protection claim as to all Defendants on the grounds that Plaintiffs conceded the
argument. ECF No. 333 at 54–55. But only USASF—not Webb and not Varsity—raised the
issue of the alleged class action bar, and USASF only did so in a single perfunctory sentence in
its opening brief. *See* ECF No. 57-1 at 20. No mention of a purported concession is made in the
replies either.[6] It was thus clear error to hold that Plaintiffs had conceded the argument with
respect to Varsity and Webb. Neither made it.

---

[6] Even in USASF's reply brief, ECF No. 74, USASF argues that Plaintiffs conceded numerous
points as to numerous state law claims, but not Tennessee. USASF argued that Plaintiffs
conceded that there is no "private right of action" under Alaska, Colorado and Arkansas. ECF
No. 74 at 8. USASF argues that Plaintiffs also "do not address whether they have a private right

Indeed, Varsity and Webb only raised the class action bar found in the TCPA in their

Motion to Strike Class Action Claims. ECF No. 55. There, Varsity and Webb noted the TCPA

class action bar only in a footnote in their memorandum in support, without explanation. *See*

ECF No. 56 at 16 n.5. Plaintiffs responded to this argument by citing to *Shady Grove*, which held

that New York's class action bar was procedural, and therefore Federal Rule of Civil Procedure

23 applied. ECF No. 70 at 3. There is thus no question that Plaintiffs never conceded this issue as

to Varsity or Webb.

As discussed below, USASF's vague arguments on these issues were not adequately

raised on are ultimately incorrect. But at minimum, the Court should reconsider its ruling on the

Tennessee antitrust and consumer protection claims as to Varsity and Webb, because Varsity and

Webb never raised the applicable arguments. These issues should be decided on the merits.

Plaintiffs were not given an opportunity to defend their claims with respect to arguments Varsity

and Webb did not make and, therefore, could not have conceded the arguments with respect to

Varsity or Webb. Plaintiffs are prepared to submit additional briefing on these issues were they

to be properly raised. The Court's ruling as to Varsity and Webb on the present motions

constituted clear error.

**B.     USASF Did not Adequately Raise the Arguments to Warrant Concession by
        Plaintiffs.**

With respect to USASF, Plaintiffs ask this Court to reconsider its ruling on the Tennessee

antitrust and consumer protection claims because Plaintiffs' failure to address certain of

USASF's arguments was a result of mistake and excusable neglect and would constitute manifest

---

of action under California, Hawaii, Idaho, Iowa, Kansas, Maine, Maryland, Michigan,
Minnesota, Nebraska, New Hampshire, New Mexico, North Dakota, Oregon, or Rhode Island."
*Id.* But USASF never argued that Plaintiffs conceded the argument. Varsity and Webb also never
argued concession on these issues.

injustice to hold those claims conceded as to USASF. USASF's arguments were not adequately raised and are ultimately wrong. Plaintiffs' claims under Tennessee law are valid.

### 1. Plaintiffs' Tennessee Antitrust Claim

With respect to the Tennessee antitrust claim under the TTPA, USASF stated in conclusory fashion that the statute "applies only to tangible goods, not intangible services," and therefore allegedly could not apply to the "Cheer Competitions and Cheer Camps markets," because those markets are "intangible services." ECF No. 57-1 at 18. But USASF's brief is entirely devoid of any support for this factual statement. USASF did not provide any explanation as to why cheer camps and cheer competitions are "intangible services" and cited no factual support or case law for this factual statement. *See McPherson v. Kelsey,* 125 F.3d 989 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived."). Indeed, the claim that camps and competitions are purely "intangible services" is at odds with the allegations and implications of the complaint, which can also be amended if needed. *See, e.g.*, ECF No. 1 at ¶¶ 47, 51, 63, 74, 184, 213.

For example, camps provide overnight lodging, meals, facilities, and equipment, and operate as a "showroom and sales platform" for apparel and other products. *See id.* at ¶¶ 63, 213. Moreover, one of the primary reasons athletes attend Varsity's camps is merely to acquire "bids" (entrance tickets) to cheer competitions. *See id.* at ¶¶ 74, 184. Bids to compete in other events is a product, not a service. Likewise, by purchasing tickets to competitions, participants purchase both goods and services too. *See id.* at ¶ 51 ("Participants pay substantial sums to Varsity for associated goods and services."). For example, some of the largest competitions are held at Disney World, which as Plaintiffs have discovered, includes entrance tickets to the Disney

PLAINTIFFS' MEMORANDUM OF LAW
IN SUPPORT OF PLAINTIFFS' MOTION TO RECONSIDER

World theme park. *See id.* at ¶ 47. And, as further alleged, competitions also include "bids" to other competitions. *See id.* at ¶ 184.

In Plaintiffs' response, Plaintiffs pointed out that USASF did not challenge the cheer apparel market on this basis. ECF No. 69 at 15. Plaintiffs did not address why claims within the cheer competitions and cheer camps markets were not "intangible services," in part because the face of the complaint adequately pleads facts showing that the cheer camps and cheer competitions markets are not purely "intangible services." *See* ECF No. 1 at ¶¶ 47, 51, 63, 74, 184, 213. It would be a manifest injustice to dismiss a valid claim for relief simply because Plaintiffs did not address USASF's single conclusory and incorrect statement on this point. Indeed, the complaint pleads facts from which it can be inferred that cheer camps and cheer competitions are not purely intangible services. In the alternative, if the Court declines to reconsider as to USASF, Plaintiffs ask the Court for leave to amend the complaint to add additional factual allegations describing cheer camps and cheer competitions, so as to show how they fall within the ambit of the statute.

The TTPA makes unlawful all arrangements "which tend to lessen, full and free competition in the . . . **sale of articles of domestic growth**," including "arrangements, contracts, agreements, trusts, or combinations . . .which tend, to advance, reduce, or control the price or the cost to the producer or the consumer of **any such product or article**." Tenn. Code Ann. § 47-25-101 (emphasis added). The Tennessee Supreme Court has held that the TTPA does not apply to "a case construction contract [sic]." *McAdoo Contractors, Inc. v. Harris*, 222 Tenn. 623, 631 (1969) (affirming dismissal of claim against a county for conspiring not to award a government contract to the lowest bidder). *McAdoo* did not raise, discuss, or explain any distinction between "products or articles" as those terms are used in the TTPA. Subsequently, an intermediate

appellate court, in *Bennett v. Visa U.S.A. Inc.*, construed *McAdoo* to exclude "payment card processing services" from the TTPA because "the TTPA only prohibits 'arrangements' or 'combinations' which involve products, not those that involve services." 198 S.W.3d 747, 752 (Tenn. Ct. App. 2006). Similarly, other contracts or arrangements for services were held to be outside of the TTPA's scope. *See Baird Tree Co. v. City of Oak Ridge,* 2008 WL 2510581, at *7 (Tenn. Ct. App. June 24, 2008) (tree trimming contract was "purely a service contract"); *Jo Ann Forman, Inc. v. Nat'l Council on Comp. Ins., Inc.*, 13 S.W.3d 365, 367 (Tenn. Ct. App. 1999) (worker's compensation insurance contracts); *Amodeo v. ConservCare, LLC*, 2009 WL 736656, at *5 (Tenn. Ct. App. Mar. 20, 2009) (chiropractic services); *Duke v. Browning-Ferris Indus. of Tennessee, Inc.*, 2006 WL 1491547, at *4 (Tenn. Ct. App. May 31, 2006) (waste hauling services contracts); *Beaudreau v. Larry Hill Pontiac/Oldsmobile/GMC, Inc.*, 160 S.W.3d 874, 882 (Tenn. Ct. App. 2004) (service of "arranging of financing").[7]

These cases turned on the distinction between "products" and "services," a distinction which is found nowhere in the statute or in *McAdoo*, the only Tennessee Supreme Court decision on the subject. They held that purely service-based contracts or activities are not included under the TTPA. Here, cheer camps and cheer competitions are complex products comprised of bundled goods and services. As specifically alleged, some services are part of these products, but they also include goods such as equipment, lodging, food, facilities, theme park tickets, and "bids" to other competitions, among many other goods. *See, e.g.*, ECF No. 1 at ¶¶ 47, 51, 63, 74, 184, 213. No case has ever held that these products or any such product that includes some bundled services is outside the scope of the TTPA.

---

[7] Defendants' moving papers did not raise or address these cases.

Here, in contrast, the cheer competitions and cheer camps markets, like many modern products, are not purely intangible services. The complaint alleges that cheer competitions and cheer camps are products that are a mix of both goods and services.[8] As further alleged, Plaintiffs overpaid for registration fees to cheer camps and competitions. ECF No. 1 at ¶ 41. The fees to enter a cheer competition or cheer camp is an entrance ticket to the physical event space and the ability to participate in the camp or competition. It is like a ticket to see a movie, or a ticket to a concert. Movies and concerts, like cheer camps and cheer competitions, are bundled products that include both goods and services. At the movies, the ticket allows the entrant into the physical theatre showing the movie (a good or product), but also includes various services such as assistance in finding one's seat and janitorial services. The use of tangible facilities, such as the seats or restrooms, are also products, not services. Similarly, a ticket to a concert is also a product made up of a combination of goods and services. Indeed, most modern products are made up of a combination of both goods and services. Indeed, Defendants themselves admit that the relevant product markets are "bundled" to include both goods and services. *See* ECF No. 56 at 2 (noting the "assorted combinations of the various products and services" that are "bundled by intermediaries with their own products and services before being sold as bundles to putative class members"). Defendants should be estopped from asserting to the contrary here.

---

[8] As a matter of economics, it is accepted that many kinds of economic activity include characteristics of both goods and services. There is a wide spectrum of economic markets, including pure tangible commodity goods on one end (commodities like salt, or gold) and pure services on the other (a medical diagnosis, consulting fees). Many products, however, are a bundle of both goods and services. A restaurant, for instance, offers the sale of food and drinks in combination with the service of a waiter, and a specific atmosphere. A software company sells intangible goods (algorithms installed on a computer) in combination with support and sometimes training services.

PLAINTIFFS' MEMORANDUM OF LAW
IN SUPPORT OF PLAINTIFFS' MOTION TO RECONSIDER

Holding that the TTPA excludes from its reach all products that include aspects of both goods and services is a distinction not found in the statute itself. It is also an issue not addressed by the Tennessee Supreme Court or lower appellate courts. Because many "products" or "articles" have tangible and intangible aspects and share characteristics of goods and services, to so hold would diminish the TTPA to absurdity. Likewise, it would be contrary to the cases that have addressed the issue so far, which have merely held the TTPA is inapplicable to facts involving purely service-based markets. *See, e.g.*, *Baird Tree Co*, 2008 WL 2510581, at *7 (Tenn. Ct. App. June 24, 2008) (upholding trial court's dismissal under TTPA because "the contract at issue was purely a service contract"). Significantly, in *Sherwood v. Microsoft Corp.*, for example, the Tennessee Court of Appeals allowed a claim alleging anticompetitive pricing of operating system software to proceed under the TTPA. *See* 2003 WL 21780975, at *35 (Tenn. Ct. App. July 31, 2003). Software, similar to cheer camps and cheer competitions, includes both tangible and intangible features (primarily for software the algorithms that perform work) as well as services (such as help support services).

Moreover, the issue of whether cheer competitions and cheer camps are purely services-based markets is ultimately a factual question. It hinges on the nature and composition of cheer camps and cheer competitions and what cheer athletes receive when they purchase an entrance fee to a cheer camp or cheer competition. For example, purchasers may receive lodging, apparel, manuals, or other products, along with the use of the event space. *See, e.g.*, ECF No. 1 at ¶ 213. Other facts learned during discovery evidence that both cheer competitions and cheer camps share features of goods and services and tangible and intangible products. Indeed, Plaintiffs have learned during discovery that for at least some of Varsity's competitions, notably the end of season national or world championships which takes place at Walt Disney World, *see* ECF No. 1

PLAINTIFFS' MEMORANDUM OF LAW
IN SUPPORT OF PLAINTIFFS' MOTION TO RECONSIDER

at ¶¶ 47, 86, 127, Varsity includes entrance tickets to the Walt Disney World theme park. An entrance ticket to Walt Disney World theme park is not an intangible service that is not covered by the TTPA. Just like a movie or concert ticket, a ticket to Walt Disney World is a product covered by the TTPA, even though it has bundled services included with the sale of the ticket. Plaintiffs have adequately pled facts in the complaint to allow a factfinder to find that the markets for cheer camps and cheer competitions are products, not purely intangible services, and therefore within the scope of the TTPA. *See, e.g.*, ECF No. 1 at ¶¶ 47, 51, 63, 74, 184, 213.[9]

### 2. Plaintiffs' Tennessee Consumer Protection Claim

With respect to the Tennessee consumer protection claim under Tenn. Code Ann. Section 47-18-101 *et seq*., USASF, without including it in its Motion, argued in a single sentence in its memorandum supporting the Motion that "Plaintiffs cannot even bring a class action under some of the cited state laws," and cited as an example "Tenn. Code Ann. § 47-18-109(g) ("No class action lawsuit may be brought to recover damages for an unfair or deceptive act or practice declared to be unlawful by this part.")." ECF No. 57-1 at 20. USASF did not elaborate further or provide any argument or explanation as to why a state procedural rule is applicable in federal court, which is governed by the Rule 23 class action procedures.

Plaintiffs did not respond to this single conclusory statement because USASF did not adequately raise the argument. *See McPherson,* 125 F.3d at 995–96 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones." (quoting *Citizens Awareness,* 59

---

[9] To the extent the complaint is insufficient on this point, Plaintiffs request leave to amend to cure any such deficiency.

F.3d at 293–94)); *see also United States v. Hayter Oil Co. of Greeneville, Tenn.*, 51 F.3d 1265, 1269 (6th Cir. 1995) (deeming argument waived where it was raised with only "conclusory assertion"). In USASF's motion to dismiss, USASF never provided notice of the state procedural bar under Section 47-18-109(g) as a basis for dismissal. *See* ECF No. 57. Instead, USASF generally claimed that Plaintiffs' state law consumer protection claims included "pleading deficiencies." *Id.* ("To the extent Counts Three and Four are even construed as being brought against USASF, these Counts have numerous additional pleading deficiencies."). This is far from what is required to put Plaintiffs on notice of a specific statutory bar.

By contrast, Defendant Webb did in fact raise with adequate explanation the Illinois class action bar under the Illinois antitrust statute in his brief. *See* ECF No. 58-1 at 16–17. Webb did not do so with respect to the Tennessee class action bar under the Tennessee consumer protection statute. Plaintiffs responded to the Illinois class action bar argument. *See* ECF No. 71 at 12–13. Had USASF done more than merely cite the statute, Plaintiffs would have addressed it, as they addressed the Illinois state procedural bar. It was error to hold that Plaintiffs conceded the argument where USASF failed to adequately raise the argument. Had USASF adequately set forth the basis of its motion on this issue, Plaintiffs would have had the opportunity to argue the class action bar is a state procedural rule that is inapplicable in federal court, discussed below.

Tennessee Code Section 47-18-109(g) does not apply here. As the Court explained with respect to its analysis of the Illinois antitrust claims, state procedural rules, including class action bars, are not applicable in federal courts. *See* ECF No. 333 at 49–52. Under *Shady Grove*, state procedural rules, such as a New York law barring class claims, are not applicable in federal court even where the suit is based on the state statute. *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393 (2010). Although the Court held that within the context of the

Illinois antitrust statute, the "class action bar is 'so intertwined with a state right of remedy that it functions to define the scope of the state-created right,'" ECF No. 333 at 51, that analysis is not applicable to the Tennessee consumer protection statute.

Numerous district courts in the Sixth Circuit have held that the class action bar found in the Tennessee consumer protection statute is procedural and therefore is no bar to class actions governed by Rule 23 in federal court. *See Reynolds v. FCA US LLC*, 546 F. Supp. 3d 635, 657 (E.D. Mich. 2021) (allowing class action under TCPA to proceed); *Francis v. Gen. Motors*, LLC, 504 F. Supp. 3d 659, 689 (E.D. Mich. 2020) (same); *But see Bearden v. Honeywell Int'l Inc.*, 2010 WL 3239285, at *10 (M.D. Tenn. Aug. 16, 2010). In *Bearden*, one of the few courts to hold that the TCPA class action bar was substantive, the court held the bar was substantive because "the limitation here is contained in the substantive statute itself, not in a separate procedural rule." 2010 WL 3239285, at *10.

But this reasoning has been rejected by other circuits, such as the Eleventh. *See Lisk v. Lumber One Wood Preserving, LLC*, 792 F.3d 1331, 1336 (11th Cir. 2015). In *Lisk*, the court found that the class action bar contained within the Alabama consumer protection statute was procedural even though the bar was contained within the consumer protection statute itself. *Id.* The Court held that "how a state chooses to organize its statutes" had no bearing on the pertinent analysis. *Id.* The Court reasoned that "the New York legislature could not change the *Shady Grove* holding simply by reenacting the same provision as part of the statutory-interest statute." *Id.* The court further held that "[t]he goal of national uniformity that underlies the federal rules ought not be sacrificed on so insubstantial a ground. And more importantly, the question whether a federal rule abridges, enlarges, or modifies a substantive right turns on matters of substance— not on the placement of a statute within a state code." *Id.* District courts have relied on the

PLAINTIFFS' MEMORANDUM OF LAW
IN SUPPORT OF PLAINTIFFS' MOTION TO RECONSIDER

Eleventh Circuit's reasoning to hold that the Tennessee consumer protection class action bar is

procedural. *See Cardenas v. Toyota Motor Corp.*, 418 F. Supp. 3d 1090, 1107 (S.D. Fla. 2019)

("[T]his Court must find that Rule 23 [] does not abridge, enlarge, or modify a substantive right

under the Tennessee [consumer protection] statute.").

**V.      CONCLUSION**

For the foregoing reasons, the Court should grant Plaintiffs' Motion for Reconsideration

and grant the following relief:

1. The Court should amend the Order to make clear that the Court has not dismissed the

Tennessee antitrust and consumer protection claims as to Varsity and Webb, because Varsity and

Webb never raised the applicable arguments and therefore there was nothing for Plaintiffs to

concede as to Varsity and Webb; and

2. The Court should amend the Order to hold that USASF's arguments on the Tennessee

antitrust and consumer protection claims were not adequately raised to warrant concession by

Plaintiffs and allow these claims to be decided on the merits when they are adequately raised and

briefed by both sides.

Dated: August 12, 2022                          Respectfully submitted,

                                                By:_____/s/ *Joseph R. Saveri*_____
                                                        Joseph R. Saveri

                                                Joseph R. Saveri*
                                                Steven N. Williams*
                                                Ronnie Seidel Spiegel*+
                                                Kevin E. Rayhill*
                                                Elissa A. Buchanan*
                                                David Seidel*
                                                JOSEPH SAVERI LAW FIRM, LLP

601 California Street, Suite 1000
San Francisco, California 94108
Telephone: (415) 500-6800
Facsimile:   (415) 395-9940
jsaveri@saverilawfirm.com
swilliams@saverilawfirm.com
rspiegel@saverilawfirm.com
krayhill@saverilawfirm.com
eabuchanan@saverilawfirm.com
dseidel@saverilawfirm.com

Van Turner (TN Bar No. 22603)
BRUCE TURNER, PLLC
2650 Thousand Oaks Blvd., Suite 2325
Memphis, Tennessee 38118
Telephone: (901) 290-6610
Facsimile: (901) 290-6611
vturner@bruceturnerlaw.net

Richard M. Paul III*
Sean R. Cooper*
Ashlea Schwarz*
PAUL LLP
601 Walnut, Suite 300
Kansas City, Missouri 64106
Telephone: (816) 984-8100
rick@paulllp.com
sean@paulllp.com
ashlea@paulllp.com

Jason S. Hartley*
Fatima Brizuela*
HARTLEY LLP
101 West Broadway, Suite 820
San Diego, CA 92101
Telephone: (619) 400-5822
hartley@hartleyllp.com
brizuela@hartleyllp.com

Daniel E. Gustafson*
Daniel C. Hedlund*
Daniel J. Nordin*
David A Goodwin*
GUSTAFSON GLUEK PLLC
Canadian Pacific Plaza
120 South Sixth Street, Suite 2600
Minneapolis, MN 55402
Telephone: (612) 333-8844
Facsimile: (612) 339-6622
dgustafson@gustafsongluek.com
dhedlund@gustafsongluek.com
dnordin@gustafsongluek.com
dgoodwin@gustafsongluek.com

* Admitted pro hac vice

+Located in Washington State

*Attorneys for Individual and
Representative Plaintiffs*

## CERTIFICATE OF CONSULTATION

This is to certify that counsel for Plaintiffs and Defendants have consulted regarding the issues presented in this motion. The dates and manner of the consultations are as follows: On August 10, 2022, David Seidel for Plaintiffs met by phone with Matt Mulqueen, and communicated by email with Nicole Riccio and Brendan Gaffney. All Defendants oppose the motion.

By:   */s/ Joseph R. Saveri*
        Joseph R. Saveri