## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
## WESTERN DIVISION

AMERICAN SPIRIT AND CHEER
ESSENTIALS, INC. by HEIDI WEBER,
ROCKSTAR CHAMPIONSHIPS, LLC by
DAVID OWENS, JEFF & CRAIG CHEER,
LLC, d/b/a JEFF AND CRAIG CAMPS, by
CRAIG HALLMARK, MARK LUKENS and
KATHLEEN LUKENS, and ASHLEY
HAYGOOD, Individually and on Behalf of all
Others Similarly Situated,

                              Plaintiffs,

v.

VARSITY BRANDS, LLC, BSN SPORTS,
LLC, VARSITY SPIRIT LLC, HERFF
JONES, LLC, VARSITY BRANDS
HOLDING CO., INC., VARSITY SPIRIT
FASHION & SUPPLIES, LLC, U.S. ALL
STAR FEDERATION, INC., USA
FEDERATION FOR SPORT CHEERING,
d/b/a USA CHEER, VARSITY INTROPA
TOURS, LLC and JEFF WEBB,

                              Defendants.

CIVIL ACTION
FILE NUMBER:

<u>2:20-CV-02782-SHL-tmp</u>

**MOTION TO COMPEL AND
MEMORANDUM IN SUPPORT**

# I.      BACKGROUND STORY

In the United States of America:

It shall be unlawful for any person engaged in commerce, in the course of such commerce, to lease or make a sale or contract for sale of goods, . . .  within the United States . . .  or fix a price charged therefor, or discount from, or rebate upon, such price, on the condition, agreement, or understanding that the lessee or purchaser thereof shall not use or deal in the goods . . .  of a competitor or competitors of the lessor or seller, where the effect of such  . . . contract . . . may be to substantially lessen competition or tend to create a monopoly in any line of commerce.

15 U.S.C. § 14.  According to evidence finally coming to light from third parties, however, this is what Defendants do in American Schools:

Indeed, evidence shows the Defendants go into American Schools.  Then the Defendants make agreements to sell athletic equipment, graduation regalia, marching band and color guard paraphernalia by Nike, UnderArmour, and others.  And the Defendants make those agreements on the condition that purchasers not deal in the goods of competitors, where the effect of such contracts may be to substantially lessen competition or tend to create a monopoly in lines of commerce.  For example, excerpt 1 from Exhibit A:



**BSN**SPORTS'



## BSN SPORTS REWARD PROGRAM

### FOR

### Lake Oconee Academy

**BSN SPORTS** ("BSN") is pleased to offer Lake Oconee Academy the **BSN SPORTS REWARDS PROGRAM** for the purchase and supply of athletic apparel and equipment for use by the school and its interscholastic programs.

**BSN SPORTS Product Pricing:** The school shall be able to purchase products at the following discounts:

| | |
|---|---|
| -Nike Team Apparel/Stock Uniforms | 35% off Retail Price |
| -Under Armour Team Apparel/Stock Uniforms | 30% off Retail Price |
| -BSN Products | 15% off Catalog Price |
| -BSN Catalog Branded Products | 10% off Catalog Price |

All Custom Uniforms and Footwear will be priced separately. Custom apparel, decorated apparel and footwear from any other manufacturers offered by BSN SPORTS will be at team discount pricing.

Decoration charges are not included in the above discounts.

Products sold to the Cheerleading coach will not be included in Spending level totals.

BSN SPORTS Products are identified in our catalog with a black star icon next to the product code.
BSN SPORTS catalog branded products are products distributed by BSN from a manufacturer such as Wilson, Spalding, Rawlings, etc.

**My Team Shop:** BSN SPORTS' online player pay site is required to be used by all varsity programs. All other programs including club sports and organizations will be encouraged to participate. All MTS sales including club and organizations will count towards rebate goals.

Excerpt 2 From Exhibit A:

**Terms and Conditions:** All purchases will be made through BSN SPORTS. Only products purchased through BSN will be eligible for the Product Rebate.

The School and Athletic Program must be current on all payment obligations to BSN to be eligible for the Product Rebate.

**Term:** The duration of this agreement is Five (5) years from **July 1, 2018 to June 30, 2023**("Term").



Excerpts from Exhibit B:

OCONEE ACADEMY as an added benefit and joint resource in Sport, Spirit and Achievement. As used in this document 'preferred provider' is defined to mean that when LAKE OCONEE ACADEMY is making purchase of the products listed in this section, LAKE OCONEE ACADEMY will first come to Varsity Brands for the purchase of such products. If Varsity Brands is unable to fulfill, LAKE OCONEE ACADEMY can utilize another vendor.

six months of its origination to be valid. Once the six month period expires, a new agreement must be requested. If LAKE OCONEE ACADEMY chooses to use another vendor for the items listed above without allowing Varsity Brands first right of refusal, Varsity Brands reserves the right to invoice for all or a portion of realized products and services provided to LAKE OCONEE ACADEMY.

Excerpt From Exhibit C:

> 4.   Exclusive Vending Relationship
>
> (a)   In consideration of the Donation Amount, Tulane hereby enters into an exclusive vending relationship with Donor whereby, during the Term, Tulane will purchase **from** Donor all of its athletic **uniform** and equipment, other than **free** good components provided by vendors. As part of the exclusive vending relationship, Tulane will use its best **efforts** to secure **for** Donor the vending relationships of all of Tulane's intramural and athletic-related business during the **Term**. In addition, Tulane will use its best **efforts** to assist Donor and its **affiliates** (including, without limitation, **Herff** Jones and Varsity Sports) with **acquiring** other Tulane-related business opportunities during the **Term,** including, but not limited to, sales of class rings, yearbooks, graduation announcements and cap and gowns to Tulane and its student body. Notwithstanding anything to the contrary contained herein, the **effective date** of the vending relationship will be backdated to July 1, 2014 and **run** through June 30, 2024. Tulane operates on a **fiscal** year ending June 30 and will base all purchases on a **fiscal year** basis.

To get it right, the American Spirit Plaintiffs sued these Defendants because evidence like this shows they are the ones who both make and profit by these agreements.  Indeed, evidence like this indicates the Defendants make these agreements in violation of the antitrust laws. Id.; 15 U.S.C. § 14.  That is dangerous because, according to the Department of Justice:

> **"[such] business practices [] unreasonably deprive consumers of the benefits of competition, resulting in higher prices for products and services."**

Department of Justice, Antitrust Laws and You, https://www.justice.gov/atr/antitrust-laws-and-you, (last visited Nov. 1, 2022).

In a case like this, we expect trial testimony to show the Defendants' rule violations cause harm by tending to prevent other companies from distributing Nike, UnderArmour, and other goods involving American Schools at prices closer to wholesale prices. The result, according to the Department of Justice and evidence, is that American parents ultimately pay higher prices: Excerpt 1 from Ex. D:

I, Mark Lukens, declare as follows:

1. I am a named Plaintiff in the current action
2. I bought a class ring from Herff Jones and I have the receipt which is attached.
3. I spoke with a Herff Jones salesperson to get a copy of the receipt and was told they keep that information for only two (2) years.
4. I still have the ring.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct..

Executed on June 21 , 2022

Mark Lukens

Excerpt 2 from Exhibit D:

KATHLEEN L LUKENS                    Account Ending 0-21004                         p. 4/7

**Detail Continued**

|          |                                                                                                                                        |                  |     | Amount    |
|----------|----------------------------------------------------------------------------------------------------------------------------------------|------------------|-----|-----------|
| 03/03/17 | AMAZON MKTPLACE PMTS<br>BOOK STORES                                                                                                     | AMZN.COM/BILL    | WA  | $63.95    |
| 03/07/17 | CARNIVAL CRUISE LINES RESERVATION<br>CRUISE LINE                                                                                        | MIAMI            | FL  | $150.00   |
| 03/07/17 | FEDEX INV 971906063 I971906063<br>1-800-622-1147<br>KATHLEEN NC<br>DIRECT BILLING TRANSACTION<br>FEDEX INV# 000971906063<br>FedEx #1-800-622-1147 | MEMPHIS          | TN  | $206.91   |
| 03/07/17 | COLUMBIA DOWNTOWN HISTORIC DIS<br>Arrival Date          Departure Date<br>03/03/17               03/05/17<br>00000000                     | COLUMBIA         | SC  | $331.66   |
| 03/08/17 | ONSTAR<br>ONLINE SVCS                                                                                                                   | 888-4ONSTAR      | MI  | $24.99    |
| 03/08/17 | HERFF JONES/NCGRD 1632 0021<br>336-228-7770<br>Description<br>WATCHES AND JEWELRY                                                        | BURLINGTON       | NC  | $397.06   |
| 03/09/17 | DISNEY RESORTS-ART OF ANIMATION FRONT                                                                                                   | LAKE BUENA VISTA | FL  | $340.31   |

*Class Ring*

Excerpt from Ex. E:

American Spirit vs                                                    Ashley Haygood
Varsity Brands                                                        May 18, 2022

| Page 37 | Page 39 |
|---|---|
| 1          Oh. | 1  it is coming from. |
| 2          You can answer.  Answer. | 2     Q.     But you're not sure? |
| 3     A.     I am -- I'm not sure.  It's been -- | 3     A.     I can't remember. |
| 4  he's in 11th grade now.  It's been a little while | 4             MR. FALANGA:  Objection as to form. |
| 5  since he was a middle schooler, but to the best of | 5     Q.     Just let me try and understand your |
| 6  my recollection, he was also given pads.  Kneepads | 6  answer.  You can't remember where the items came |
| 7  and top pads.  Oh, and a cup, a groin cup.  That's | 7  from or is this something else you can't remember? |
| 8  all I can remember right now. | 8     A.     No, the items came from the school. |
| 9     Q.     What years did he play football for | 9     Q.     Okay. |
| 10  Woodstock Middle School? | 10     A.     I just don't remember how they got |
| 11     A.     Can I look at my calendar, please? | 11  them or how we even got them to be honest.  I'm not |
| 12     Q.     Sure.  That would be okay. | 12  even sure that I was there all the time.  A lot of |
| 13     A.     Okay.  So it looks like he played -- | 13  times for football they released stuff to the kids, |
| 14  he was in 8th grade August of 2018.  So he would | 14  so mom pays a check and, you know, everything else |
| 15  have played 2018, 2017, and I think he sat out for | 15  kind of happens through practice. |
| 16  his 6th grade year, or he might have sat out -- | 16     Q.     Uh-huh.  Okay. |
| 17  yeah, I think it was his 6th grade year.  He might | 17            And do you remember where the school |
| 18  have played all three.  I can't remember.  That boy | 18  got them from? |
| 19  has played a lot of football. | 19     A.     I -- I'm assuming Varsity.  My |
| 20     Q.     So it would have been in the range of | 20  recollection is that his stuff came from Varsity. |
| 21  2016 to 2018? | 21     Q.     Okay.  And when you say you're |
| 22     A.     Yes, ma'am, somewhere around there. | 22  assuming Varsity, what are you basing that on? |
| 23     Q.     Okay.  And who purchased the | 23     A.     My recollection. |
| 24  equipment that he used? | 24     Q.     And what's your -- and I'm sorry to |
| 25     A.     Myself and my husband. | 25  ask again, but what's your recollection based on? |
| **Page 38** | **Page 40** |
| 1     Q.     And did you purchase it from the | 1     A.     That his gear came from Varsity |
| 2  school? | 2  through the school. |
| 3     A     Yes. | 3     Q     Okay.  And maybe this will help |

Indeed, with BSN's "My Team Shop," parents can purchase from BSN from an online shop that is branded like their child's school.  <u>See</u> BSN, My Team Shop Video, https://bsnteamsports.com/ (last visited November 1, 2022).

All of this is happening at a time when, according to the United States Congress Joint Economic Committee, inflation is already straining households.  Exhibit F:



Instead of violating the rule, what the Defendants should have done is made agreements without the condition that purchasers not use or deal in the goods of competitors.  That would have helped by allowing other American companies to sell merchandise involving schools.  And according to the Department of Justice, that would have helped by saving American parents money.

After receiving this lawsuit, the Defense answers these charges with many, many motions to dismiss the lawsuit on technical grounds.  (See, e.g., ECF Nos. 92, 93, 94, 95, 171, 232, 234, 235, 238, 263).  For example, here is an excerpt from ECF No. 92:

Case 2:20-cv-02782-SHL-tmp   Document 92   Filed 12/01/20   Page 1 of 2   PageID 140

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE

AMERICAN SPIRIT AND CHEER ESSENTIALS,
INC., ROCKSTAR CHAMPIONSHIPS, LLC, JEFF
& CRAIG CHEER, LLC, d/b/a JEFF AND CRAIG
CAMPS, and ASHLEY HAYGOOD, Individually
and on Behalf of All Others Similarly Situated

        Plaintiffs,

      v.

VARSITY BRANDS, LLC, BSN SPORTS, LLC,
VARSITY SPIRIT, LLC, STANBURY, LLC,
HERFF JONES, LLC, BAIN CAPITAL, LP,
CHARLESBANK CAPITAL PARTNERS, LLC,
VARSITY BRANDS HOLDING CO., INC.,
VARSITY SPIRIT FASHION & SUPPLIES, LLC,
U.S. ALL STAR FEDERATION, INC., USA
FEDERATION FOR SPORT CHEERING, d/b/a
USA CHEER, VARSITY INTROPIA TOURS, LLC
and JEFF WEBB,

        Defendants.

Case No. 2:20-cv-02782-SHL-atc

MOTION TO DISMISS OF DEFENDANTS BAIN CAPITAL, LP, CHARLESBANK
PARTNERS, LLC, AND VARSITY HOLDING CO., INC.

Defendants Bain Capital, LP, Charlesbank Partners, LLC, and Varsity Holding Co., Inc. ("Defendants"), through their undersigned counsel, and pursuant to Federal Rule of Civil Procedure 12(b)(6), hereby move this Court to dismiss the Class Action Complaint (ECF No. 1) filed by Plaintiffs for failure to state a claim upon which relief can be granted.

Similarly, the Defense repeatedly asks the Court to prevent the named Plaintiffs from seeking a verdict on behalf of not only themselves, but also on behalf of classes of people similarly situated. (See, e.g., ECF 91, 233). So far, the American Spirit Plaintiffs have responded to those motions.

(See, e.g., ECF No. 103, 104, 106).  Nevertheless, the Defense has been somewhat successful. (See, e.g., ECF No. 194).

Notably, the defense works to block information about the Defendants' activities in schools.[1]  Indeed, since the beginning of this lawsuit the Defendants refuse to release information regarding their activities in schools.  <u>See, e.g.</u>, Req. for Prod. of Docs. to Def. BSN Sports. LLC attached as Ex. G.  Simultaneously, the defense asks the Court to block the American Spirit Plaintiffs from getting those documents from other parties. For example, here is an excerpt from their March 12, 2021 motion, ECF No. 118:

Case 2:20-cv-02782-SHL-atc   Document 118-1   Filed 03/12/21   Page 2 of 11   PageID 542

### TABLE OF CONTENTS

INTRODUCTION ...................................................................................................................1

ARGUMENT .......................................................................................................................2

I.    Discovery Shows that Plaintiffs Have No Standing to Bring Claims Based on Marching Band Uniforms, Graduation Regalia, or Athletic Equipment. ..............................................2

II.   Absent Standing, Discovery Related to These Products Should Be Precluded Under Rule 26. ...............................................................................................................................4

III.  Because Stanbury, Herff Jones, and BSN's Only Connection to the Case is with Marching Band Uniforms, Graduation Regalia, and Athletic Equipment, Discovery of Those Entities Should Likewise Be Precluded. ..................................................................6

CONCLUSION ....................................................................................................................7

---

[1] The Defense has produced volumes of documents *not* related to their activities in schools or *not* related to marching band uniforms, graduation regalia and other scholastic merchandise.  Indeed, from roughly September 2021 through May 2022, the defense shared documents with the American Spirit Plaintiffs that they also released in the *Jones* and *Fusion* cases which focus on cheerleading and possibly sexual misconduct *outside* of schools.

On March 29, 2021, after the Defense files its motion to block discovery—but even before receiving a Court order—the Defendants respond to multiple requests for documents as follows (attached in full as Exhibit H):

Request No. 14:  Please produce any record or document that would reflect a list that would include the identity by name of the student that purchased any scholastic merchandise, the parents name, address, email address and phone number associated with scholastic sales by your scholastic sales (not All Star sales reps) employees/representatives for each of the years 2016, 2017, 2018, 2019 and 2020.

Objections and Response to Request No. 14:  Varsity objects to Request No. 14 because it seeks irrelevant information, is overly broad, unduly burdensome, and disproportionate to the needs of the case.  Varsity further objects to Request No. 12 because the term "scholastic merchandise" is vague and ambiguous.  Varsity further objects to Request No. 14 because it seeks documents related to non-cheerleading related products or services, and as such is the subject to the Motion for Protective Order.

In light of Varsity's objections, Varsity will not produce documents in response to this Request.

Next, only after the Defendants already refused to release documents, the Court grants the protective order the Defendants asked for.  Indeed, from ECF No. 132:

the limited areas of inquiry until the pending motions to dismiss have been resolved.  The motion for protective order is GRANTED specifically as to discovery related to "marching band uniforms, graduation regalia and other scholastic merchandise such as yearbooks and class rings, and athletic equipment."  Should the Moving Defendants' motions to dismiss be denied in whole or in part, this protective order shall be terminated and responses to any discovery that is withheld pursuant to this protective order shall be provided to Plaintiffs within thirty (30) days of the entry of the relevant order on motion to dismiss.

IT IS SO ORDERED, this 1st day of June, 2021.

s/ Charmiane G. Claxton
CHARMIANE G. CLAXTON
UNITED STATES MAGISTRATE JUDGE

On October 28, 2021, the Court denies in part ECF No. 92, Varsity Brands Holding Company LLC's motion to dismiss. Indeed, from ECF No. 141:

CONCLUSION

As described, the Court GRANTS Defendants Bain, Charlesbank, and Varsity Holding's Motion to Dismiss the claims under § 1 of the Sherman Act, § 3 of the Clayton Act, and the Federal and Georgia RICO Acts in their entirety; GRANTS Defendants' Motion as to claims under § 2 of the Sherman Act against Bain and Charlesbank; and DENIES Defendants' Motion as to claims under § 2 of the Sherman Act against Varsity Holding.  Because no claims against Bain and Charlesbank survive this Motion, those Defendants are hereby DISMISSED.

IT IS SO ORDERED, this 28th day of October, 2021.

s/ Sheryl H. Lipman
SHERYL H. LIPMAN
UNITED STATES DISTRICT JUDGE

Thirty days afterwards, however, Varsity Brands Holding Company still does not release any documents they claimed to have withheld pursuant to the protective order.  As justification, the Defense argues that discovery of activities in schools is blocked from June 1, 2021 until the Court denies *each and every* remaining Defendants' motion to dismiss (which happens on March 30, 2022). (ECF Nos. 177, 194, 236 at PageID 3541).  Indeed, the American Spirit Plaintiffs move to compel production of these documents on February 9, 2022.  (ECF No 167).  But the Defense received the protection they sought.  Indeed, here is an excerpt from ECF. No. 177:

```
167-3, 167-4, 167-5.) Obviously, Rule 37 sanctions will not be
awarded against a party who refuses to produce documents covered
by a valid protective order. To the extent the motion seeks to
have sanctions imposed, or documents compelled, pursuant to the
requests contained in Exhibits B, C, and D, the motion is DENIED
due to the protective order.
```

Moreover, even while the Defendants refuse to release documents related to their activities in schools, the Defendants receive an order blocking the American Spirit Plaintiffs from getting the information elsewhere via subpoena.  For example, excerpts from ECF 177on March 1, 2022:

Thus, the pending motion to dismiss involves "the limited areas of inquiry" the protective order was designed to address. For clarity's sake, the undersigned finds that the June 1 Protective Order remains operative until the pending motion to dismiss, ECF No. 92, is denied in whole or in part. Should that occur, the protective order shall then terminate, and "responses to any discovery that is withheld pursuant to the protective order shall

be provided to plaintiffs within thirty (30) days of the entry of order on the pending motion to dismiss." (ECF No. 132 at 4.)

And another from ECF No. 177:

### III. CONCLUSION

The June 1 Protective Order remains in effect. Because of this, plaintiffs' Motion for Sanctions or to Compel is DENIED and defendants' Motion for Protective Order is GRANTED. Plaintiffs are hereby ordered to refrain from serving the subpoenas at issue in this motion, or, if already served, to withdraw them upon the entry of this order.

IT IS SO ORDERED.

s/ Tu M. Pham
TU M. PHAM
Chief United States Magistrate Judge

March 1, 2022
Date

13

On March 20, 2022, the Defendants receive an order granting in part and denying in part all remaining Defendants' motions to dismiss (which were pending at the time of the June 1, 2021 protective order). (Order Granting in Part and Denying in Part All Remaining Defendants' Motion to Dismiss, ECF No. 194). Even 30 days after that, however, the Defendants still release no documents they withheld pursuant to the protective order.

On May 13, 2022, the Defendants receive another order. This one allows discovery of the Defendant's activities in American schools, but for only 6 months. (ECF No. 236 at PageID 3544). On August 24, 2022, the Defense receives another, abbreviated request to produce. (Exhibit I). This request to produce asks for relevant information in simple terms:

REQUESTS FOR PRODUCTION

1.

Produce for inspection all IMPACT program agreements, VIP Branding agreements or New School Construction Program agreements entered with any junior high, high school or college from 2015 to the present. If you should answer

Page **12** of **23**

that the requested documents have already been provided, then, in that event, please identify those records by referencing the bates stamp or ESI protocol numbers for the referenced documents that were already produced.

On September 23, 2022, however, the Defense again responds with lengthy objections, not responsive documents.  (Exhibits J, K, L).  For example, and excerpt from Exhibit J:

> Objections and Response to Request No. 1:  Discovery in this case closed on April 18, 2022, except as to new Plaintiffs and as to topics that were the subject of the Court's Protective Order of June 1, 2021.  (ECF No. 132.)  To the extent any Request seeks information not the subject of the Court's Protective Order of June 1, 2021, including any document on the subject of cheerleading (other than "athletic equipment or uniforms strictly used in the scholastic setting –
>
> including scholastic cheerleading," ECF No. 236), discovery has closed, and Varsity will not produce further such information.
>
> Per the Scheduling Order in this case (ECF No. 100), Plaintiffs had 90 days from the promulgation of requests to bring any disputes regarding Varsity's objections to those requests to the Court for resolution.  The Court has already ruled that, because Plaintiff did not bring any such disputes to the Court in accordance with its Order, Varsity is not required to produce any discovery encompassed by the prior Requests for Production, dated January 28, 2022 and February 26, 2021.  (ECF No. 177.)  Similarly, the deadline for bringing any disputes over BSN's and Herff Jones's responses to Plaintiffs Requests for Production has passed, and those entities are accordingly not required to produce any discovery encompassed by the Requests for Production, dated February 10, 2021.  Varsity accordingly will not produce any documents encompassed by those earlier discovery requests.
>
> Varsity also objects to any Request for documents that were created outside of the period January 1, 2015 to June 30, 2020 and will not produce documents created outside of those dates, inclusive.
>
> In light of Varsity's objections, Varsity will not produce further documents in response to this Request.  Varsity otherwise reserves its rights, including the right to interpose additional objections should a further response be deemed to be required.

Thus, the Defendants still refuse to produce documents they withheld pursuant to the expired protective order.  Afterwards, the Defense does not release documents about their activities in schools despite follow up requests:



RE: American Spirit, et al. v. Varsity Brands, et al.

**Kobelah Bennah**
To  ○ Hazoury, Eric; ● Robert Falanga                                                  Tue 10/18/2022 12:33 PM
Cc  ○ mmulqueen@bakerdonelson.com; ○ Riccio, Nicole;  ○ ggarrison@bakerdonelson.com; ○ bgaffney@lockelord.com;
      ○ pcoggins@lockelord.com; ○ Kaiser, Steven J.

In response to the American Spirit Plaintiffs' request to produce documents related to scholastic activities, the Varsity companies evidently produced 40 pages of excuses and 0 documents.

Even if we allowed all of your objections, it does not seem you objected to producing all responsive documents.  Indeed, it seems likely that the Varsity companies have responsive documents the Court previously allowed you not to produce (pursuant to protective order now terminated).  If that were not the case, why did you apply for the protective order in the first place?

Moreover, it does not seem that even your 40 pages of new objections encompassed all responsive documents.

Consequently, Lead Class Counsel Falanga asked me to ask you to reconsider.  Would you like to consult about documents you would produce absent a motion to compel?  If not, we plan to file whatever necessary. Please respond with your intentions today.

By the way, there is a difference between good defense work on the one hand and obstruction of justice on the other.

Sincerely,

Falanga & Chalker
**Kobelah Svensen Bennah**
Attorney
6393 Bankers Walk
Riverdale, GA 30274
**Office:** (770) 907-9191
**Fax:** (770) 907-9249
www.falangalaw.com
kobelah@falangalaw.com

In any case, if the full truth is allowed out, the American Spirit plaintiffs expect Court action could both force the Defendants to change their business practices and make up for the harms and losses the Defendants cause.  (Amended Complaint, ECF No. 209).

Again, the Department of Justice holds that exclusive dealing "unreasonably deprive[s] consumers of the benefits of competition, resulting in higher prices for products and services." Thus, according to the Department of Justice, when the Defendants make these exclusive dealing agreements, they tend to unreasonably deprive consumers of the benefits of competition.  The

result is higher prices.  At trial, the American Spirit Plaintiffs intend to show as above that parents

pay these higher prices.  Indeed as showed above, in this case, Plaintiffs Ashley Haygood, Mark

Lukens, and Kathleen Lukens say they are real live parents who paid these higher prices.

Simultaneously, Plaintiffs American Spirit, Heidi Weber, Rockstar Championships, David Owens,

Jeff & Craig Cheer, and Craig Hallmark—and people with companies like theirs—say they were

unreasonably excluded from competition.  (First Amended Complaint, ECF No. 209 at PageID

3172-3174).

Regarding the Defendant's activities in American Schools, getting it right means three

things: the American Spirit Plaintiffs hope to (1) fix what can be fixed; (2) help what can be helped;

and (3) make up for what cannot be fixed or helped.  Regarding the fixing of what can be fixed,

the American Spirit Plaintiffs hope for a verdict that allows parents to receive reimbursement.

Simultaneously, the American Spirit Plaintiffs hope for a verdict that allows compensation for

competing American businesses.  Regarding the helping what can be helped, the American Spirit

Plaintiffs hope the Court orders the Defendants to stop making exclusive dealing agreements

involving American schools.  And to make-up for what cannot be fixed or helped—the profit

motive for making such agreements—the American Spirit Plaintiffs ask for punitive damages as

allowed by law. (See, First Amended Complaint, ECF No. 209 at PageID 3295).

Indeed, before the Defendants made these agreements involving schools, the schools ***did***

***not have exclusivity agreements*** that kept the schools from buying certain products from other

businesses.  After the Defendants made these agreements involving schools, however, ***the schools***

***are bound by exclusivity agreements*** that kept the schools from buying certain products from other

businesses.  These business practices are what the American Spirit Plaintiffs hope to amend.

At this point in the case, three things would help.  First, it would help if the Court would order the Defendants to actually produce any non-privileged documents they have withheld despite the attached request.   (Exhibit I).  This request represents a narrowed set of requests the Defendants have avoided since just after the beginning of the lawsuit.  (Compare Ex. I with Ex. G).  Second, since history suggests the Defendants are not likely to release these documents, it would also help if the Court would allow the American Spirit Plaintiffs to continue to receive what they can from others.  (See, e.g., October 7, Subpoena Requests distributed to more than 260 schools across the United States attached as Ex. M; see also Exs. A, B, and C supra).  Finally, it would help if the Court allowed the American Spirit Plaintiff's expert 60 days from the actual production of these documents to incorporate the results into his report.

## III.    SUPPORTING LAW

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1).  "A party may serve on any other party a request within the scope of Rule 26(b)." Fed. R. Civ. P. 34(a).

> For each item or category, the response must either state that inspection and related activities will be permitted as requested or state with specificity the grounds for objecting to the request, including the reasons. The responding party may state that it will produce copies of documents or of electronically stored information instead of permitting inspection. The production must then be completed no later than the time for inspection specified in the request or another reasonable time specified in the response.

Fed. R. Civ. P. 34(b)(2)(B).  "An objection must state whether any responsive materials are being withheld on the basis of that objection. An objection to part of a request must specify the part and permit inspection of the rest." Fed. R. Civ. P. 34(b)(2)(C).

When parties fail to cooperate,

[the Sixth Circuit Court of Appeals] has determined that four factors are to be considered when reviewing a decision by a district court to impose sanctions under Rule 37. (hereinafter, the "Regional Refuse test"). The first factor is whether the party's failure to cooperate in discovery is due to willfulness, bad faith, or fault; the second factor is whether the adversary was prejudiced by the party's failure to cooperate in discovery; the third factor is whether the party was warned that failure to cooperate could lead to the sanction[.]

Freeland v. Amigo, 103 F.3d 1271, 1277 (6th Cir. 1997) (internal citations omitted).  The fourth factor relates to dismissals and need not be considered here.  *See, e.g.*, Holbrook v. Ownbrix Int'l Corp., No. 219CV02879JPMCGC, 2021 WL 783550, at *3 (W.D. Tenn. Mar. 1, 2021).

## IV.    DISCUSSION

### A.    Continued Refusal Will be Willful.

In the Sixth Circuit, "willfulness" is defined as "a conscious and intentional failure to comply with the court order." Bass v. Jostens, Inc., 71 F.3d 237, 241 (6th Cir. 1995). The burden is on the disobedient party "to show that the failure was due to inability and not to willfulness, bad faith, or fault." Intercept Sec. Corp. v. Code-Alarm, Inc., 169 F.R.D. 318, 322 (E.D. Mich. 1996) (citing Reg'l Refuse, 842 F.2d at 154; Nat'l Hockey League v. Metro. Hockey Club, 427 U.S. 639, 642–43 (1976)).

In this case, it would be challenging for the Corporate Defendants to prove their failure to comply is due to inability and not willfulness.  Indeed, could they truthfully claim *inability* to produce their agreements with schools? (Compare Ex. A with Excerpt from Ex. J, supra).  Indeed, any statement that *inability* prevented the Corporate Defendants from producing *any* such documents will strain the limits of good faith.

19

**B.** **Failure to Cooperate Prejudices the American Spirit Plaintiffs.**

The prejudice prong is established where a failure to cooperate results in, among other things, increased difficulties in discovery.  See, e.g., In re Fam. Resorts of Am., Inc., 972 F.2d 347 (6th Cir. 1992) ("As far as the document requests are concerned, this is clearly correct, because the defendants never responded to these requests at all . . . .  Clearly, such incomplete responses prejudice the [movant's] ability to prepare its case and increase the difficulty of future discovery.").

In this case, the Corporate Defendants prejudiced the American Spirit Plaintiffs.  Clearly, BSN's, Varsity Brands LLC's, Varsity Brands Holding Company's, Stanbury's and Herff Jones's (all held by Varsity) refusal to produce *any* responsive documents whatsoever regarding their activities in American schools prejudiced the American Spirit Plaintiffs' ability to prepare their case and increased the difficulty of future discovery.  *Id.*  Indeed, the American Spirit Plaintiffs have been unable to use responsive documents to identify deponents, conduct relevant questioning, and clarify contested matters.  Such difficulty impedes both the discovery of the truth and the preparation of an illuminating trial.

**C.** **The Court can Warn**

That is true.  Holbrook v. Ownbrix Int'l Corp., No. 219CV02879JPMCGC, 2021 WL 783550, at *4 (W.D. Tenn. Mar. 1, 2021) ("As to the third factor, the Court warned the Corporate Defendants, in abundantly clear terms, that sanctions would be levied if they failed to comply with the Court's discovery orders.").  Quite frankly, Judge Claxton's (ECF No. 132) and Judge Pham's (ECF No. 177) orders excerpted above should be enough warning already.

## V.   CONCLUSION

For the foregoing reasons, the American Spirit Plaintiffs move that the Court issue an order:

(1)   Warning Varsity Brands Holding Co., Inc., Varsity Brands, LLC, Varsity Spirit, LLC, Varsity Spirit Fashion & Supplies, LLC., BSN, Herff Jones, and Stanbury to submit any withheld documents responsive to the outstanding requests in Exhibit I starting within 7 days with complete production due in 45 days *or else* the factual allegations pertaining to those Defendants will be deemed admitted as claimed in the Complaint;

(2)   Allowing the parties to receive truthful information from non-parties up until and during the trial of this case;

(3)   Allowing the American Spirit Plaintiff's expert 60 days from the date the above-named Defendants complete actual production of these documents to incorporate the results into his report.

Respectfully submitted,

This 1st day of November 2022.

s/  Robert A. Falanga
Robert A. Falanga, Esq.
Attorney Bar No. 254400
Interim Lead Class Counsel

s/  Kobelah Svensen Bennah
Kobelah Svensen Bennah
Attorney Bar No. 378113

LAW OFFICES
FALANGA & CHALKER
11200 Atlantis Pl #C
Alpharetta, GA 30022
Phone: (770) 955-0006
Fax: (770) 955-2123
robert@falangalaw.com
kobelah@falangalaw.com