REDACTED



VIA FED EX OVERNIGHT DELIVERY TRACKING NO. 777720832605

November 15, 2016

VIA Email: macneill@tulane.edu
306 James W. Wilson, Jr. Center
New Orleans, LA 70118

Dear Brandon:

    The letter serves to summarize our agreement earlier this year to terminate the Gift and Naming Rights Agreement ("Agreement") between BSN SPORTS, LLC (formerly known as BSN Sports, Inc.) ("Donor") and Tulane University ("Tulane") that was entered into by and between Donor and Tulane on November 15, 2014. A copy of the Agreement has been enclosed with this letter for your convenience.

    Pursuant to Section 4(a) of the Agreement, Tulane was obligated to spend at least ▮▮▮▮ ("Annual Minimum Purchases") during each 12-month period of the term of the Agreement on purchases of sporting goods and equipment, uniforms and other athletic products from the Donor. Such obligation, coupled with other obligations under the Agreement, was in consideration for an aggregate cash donation from Donor to Tulane equal to ▮▮▮▮, payable in ten installments of ▮▮▮▮ each through July 2024. As of the date of this letter, Donor has made two installment payments totaling ▮▮▮▮.

    The Agreement provided that the Annual Minimum Purchases would be calculated as an average over the course of each successive 24-month period during the term of the Agreement. The first 24-month period ("Initial Period") began on July 1, 2014 and expired on June 30, 2016. Tulane was obligated to purchase at least ▮▮▮▮ in sporting goods and equipment, uniforms and other athletic products from the Donor during that time. At the end of the Initial Period, Tulane's purchases totaled only ▮▮▮▮.

    Rather than continuing under the Agreement, we notified you of our desire to terminate the Agreement effective as of November 30, 2016 ("Termination Date") and enter into the BSN Sports Reward Program agreement ("Reward Agreement") attached hereto as Exhibit A, to be effective for six (6) years beginning June 1, 2017. As of the Termination Date, Donor has no further obligations under the Agreement, including but not limited to the payment of any installment that is unpaid as of the date of this letter.

Donor also requested that the recognition and benefits (collectively, "Benefits") to be provided to Donor under Section 3 of the Agreement to continue for a period of five (5) years following the Termination Date, with such Benefits to end on November 30, 2021. The reason for this request is to compensate Donor for the ▇▇▇▇▇ in installment payments previously paid to Tulane.

Brandon, please let me know if there is anything else you need regarding this matter. We look forward to hearing from you.

Sincerely,

*Terrence M. Babilla* /UH

Terrence M. Babilla
President, COO & GC

Enclosures



# BSN SPORTS REWARD PROGRAM

# FOR

# Tulane University

**BSN SPORTS** ("BSN") is pleased to offer **Tulane University (Athletic Program)** the **BSN SPORTS REWARDS PROGRAM** for the purchase and supply of athletic apparel and equipment for use by the school and its interscholastic programs.

**BSN SPORTS Product Pricing:** The school shall be able to purchase products at the following discounts:

-Nike Team Apparel/Stock Uniforms          35% off Retail Price
-BSN Products                              15% off Catalog Price
-BSN Catalog Branded Products              10% off Catalog Price

All Custom Uniforms and Footwear will be priced separately. Custom apparel, decorated apparel and footwear from any other manufacturers offered by BSN SPORTS will be at team discount pricing.

Decoration charges are not included in the above discounts.

Products sold to the Cheerleading coach will not be included in Spending level totals.

BSN SPORTS Products are identified in our catalog with a black star icon next to the product code. BSN SPORTS catalog branded products are products distributed by BSN from a manufacturer such as Wilson, Spalding, Rawlings, etc

**My Team Shop:** BSN SPORTS' online player pay site is required to be used by all varsity programs. All other programs including club sports and organizations will be encouraged to participate. All MTS sales including club and organizations will count towards rebate goals.

**Shipping:** The Athletic Program will pay freight charges on all orders.

**Product Rebate:** Subject to the terms below, at the end of each school year of this agreement, the Athletic Program will receive a Product Rebate including selected products from BSN. The Product Rebate will be selected from a list of products provided by BSN and subject to availability at the time of order. Product Rebates are available after the requirements below are met and must be utilized during each school budget year.  All Product Rebates will be redeemed in May and June.  A Product Rebate balance does not carry over from year to year.

| Annual Spending Level | Annual Rebate Amount: |
|---|---|
| $100,000+ | 8% of annual spend in Nike or other branded apparel or BSN equipment at catalog price. |
| $75,000 - $99,999 | **Annual Rebate Amount:** 6% of annual spend in Nike or other branded apparel or BSN equipment at catalog price. |
| $50,000 - $74,999 | **Annual Rebate Amount:** 4% of annual spend in Nike or other branded apparel or BSN equipment at catalog price. |

The maximum annual product rebate will be the amount above, inclusive of any manufacturer incentives.

Any decoration or customization to rebate product is paid for by the Athletic Program.

**Terms and Conditions:** All purchases will be made through BSN SPORTS. Only products purchased through BSN will be eligible for the Product Rebate.

The School and Athletic Program must be current on all payment obligations to BSN to be eligible for the Product Rebate.

**Term:** The duration of this agreement is six (6) years from **June 1, 2017 to May 31, 2023** ("Term").

Acknowledged and Agreed to:

**School Name**                                **BSN SPORTS**




_____        _____

Athletic Director                              Vice President

DocuSign Envelope ID: 7AC2E907-BD3F-4EB9-BEF3-8E0493BF56B0



Tulane University

# GIFT AND NAMING RIGHTS AGREEMENT

This Gift and Naming Rights Agreement ("Agreement") is made and entered into, to be effective, as of November 15, 2014 (the "Effective Date"), by and between BSN SPORTS, Inc., a Delaware corporation (together with its successors and assigns, "Donor"), and The Administrators of the Tulane Educational Fund, on behalf of Tulane University (collectively, "Tulane"). The parties to this Agreement are sometimes referred to individually as a "Party" or collectively as the "Parties."

WHEREAS, Donor is engaged primarily in the business of marketing and selling sporting goods and equipment, uniforms and physical education products in the United States and its possessions;

WHEREAS, Tulane is an academic university and currently constructing Yulman Stadium, a new athletic stadium primarily for use by its football team (the "Stadium");

WHEREAS, Donor desires to pledge to donate certain dollar amounts to Tulane, as set forth in this Agreement; and

WHEREAS, as a material inducement for Donor entering into this Agreement, in exchange for Donor's pledge, Tulane desires to purchase a certain minimum quantity of sporting goods and equipment, uniforms and other athletic products from Donor, as set forth in this Agreement, and to provide certain marketing and publicity opportunities, as well as other benefits, to Donor on the terms and conditions set forth in this Agreement.

NOW, THEREFORE, in consideration of the foregoing premises and the mutual covenants and agreements contained herein, each of the Parties agrees as set forth below.

1.  **Pledge and Schedule of Contribution**

    (a) Donor pledges to deliver an aggregate cash amount equal to ▮▮▮▮▮ (the "Donation Amount") to Tulane for the purposes described in this Agreement. The Donation Amount will be payable annually in ten equal installments of ▮▮▮▮▮ (each, an "Annual Donation Installment") on or before July 31 of each calendar year during the ten-year period beginning on the Effective Date and ending on July 30, 2024 (the "Term"). For the avoidance of doubt, the first Annual Donation Installment will be due and payable on December 31, 2014 and the second Annual Donation Installment will be due and payable on July 31, 2015.

    (b) Notwithstanding the foregoing, if the construction of the Stadium (the "Project") is not completed by the due date of Donor's second Annual Donation Installment (*i.e.*, June 30, 2015), Donor's obligation with respect to the Donation Amount will be suspended until the Project is complete, and the Term (and due dates of the Annual Donation Installments) will be extended a period of time corresponding to the

60482198.2

DS
TMB

DocuSign Envelope ID: 7AC2E907-BD3F-4EB9-BEF3-8E0493BF56B0

length of any such suspension. In addition, during each 12-month period of the Term, if at least five Tulane home football games are not played in the Stadium for any reason, Donor's Annual Donation Installment will be suspended for 12 months, and the Term will be extended by one additional 12-month period.

(c) Payments will be made in United States dollars by check or wire transfer, at Donor's discretion, to Tulane at the address set forth on the signature page to this Agreement, or to a bank which may be designated by Tulane in writing from time to time. Donor may accelerate the payment of any or all of the Donation Amount at any time in Donor's sole discretion.

2.  **Purpose of the Donation Amount**

The Donation Amount will be used to provide capital support of the Project and the subsequent on-going maintenance and improvements to the Stadium. Each Annual Donation Installment will be allocated solely to the Project or the Stadium, as applicable.

3.  **Recognition and Benefits**

(a) Unless Donor otherwise requests, Tulane will publish Donor's name in donor honor rolls, include Donor's name on the Stadium's donor recognition wall in a prominent place, and include Donor's name in any press releases or other publications relating to donors of Tulane. Tulane will provide Donor a copy of any such material prior to its release or publication. In addition, during each 12-month period of the Term, Donor also will be entitled to receive the additional benefits set forth on Exhibit A hereto, the *Form to Accept or Decline Benefits*, excluding any benefits that are expressly declined by Donor with respect to such 12-month period.

(b) Except as provided in this Agreement, neither Party will use any names, trademarks, service marks, trade dress, copyrights, or trade names of the other Party for any purpose without the prior written consent of the other Party, which consent will not be unreasonably withheld, conditioned or delayed.

(c) In consideration of Donor's pledge to deliver the Donation Amount in accordance with the terms and conditions set forth in this Agreement, Donor will receive naming rights ("Naming") to the Stadium's auxiliary scoreboard located at the North end of the Stadium (the "Scoreboard") for the full duration of the Term, and mutually approved signage will remain in place on the Scoreboard during all events at the Stadium during the Term. The Scoreboard will be located in a prominent and mutually agreeable location in the Stadium. The Parties initially have approved the signage reflecting the Naming set forth on Exhibit B hereto. Any modification, alterations or changes to the signage reflecting the Naming must be approved in advance by the Parties in writing.  BSN Signage will be installed on or before Tulane's Homecoming game on November 15, 2014.

(d)  Tulane will be solely responsible for all costs and expenses of producing, mounting, and maintaining the Scoreboard, including but not limited to the signage reflecting the Naming, necessary to keep the Scoreboard, including but not limited to the signage reflecting the Naming, in good condition and repair.

60482198.2

2

*TMB*

DocuSign Envelope ID: 7AC2E907-BD3F-4EB9-BEF3-8E04938F5680

(e) During the Term, Donor will have access to, and may use, the Stadium and its related facilities for at least two weekends (i.e., Friday at noon to Sunday at 5:00 pm, local time) to host Donor's national or regional sales meetings. These uses of the Stadium and its related facilities will take place in November on any away-football-game weekend (or such other mutually agreeable month and time) and must be approved in advance by Tulane, which approval will not be unreasonably withheld, conditioned or delayed. Donor will be responsible only for the entertainment costs associated with such use, including food, beverages, decorations and wait staff. For the avoidance of doubt, with respect to such uses of the Stadium and its related facilities, Donor shall not be responsible for the costs and expenses of maintenance, clean-up, utilities, insurance or any other similar charge or expense.

4. Exclusive Vending Relationship

(a) In consideration of the Donation Amount, Tulane hereby enters into an exclusive vending relationship with Donor whereby, during the Term, Tulane will purchase from Donor all of its athletic uniform and equipment, other than free good components provided by vendors. As part of the exclusive vending relationship, Tulane will use its best efforts to secure for Donor the vending relationships of all of Tulane's intramural and athletic-related business during the Term. In addition, Tulane will use its best efforts to assist Donor and its affiliates (including, without limitation, Herff Jones and Varsity Sports) with acquiring other Tulane-related business opportunities during the Term, including, but not limited to, sales of class rings, yearbooks, graduation announcements and cap and gowns to Tulane and its student body. Notwithstanding anything to the contrary contained herein, the effective date of the vending relationship will be backdated to July 1, 2014 and run through June 30, 2024. Tulane operates on a fiscal year ending June 30 and will base all purchases on a fiscal year basis.

(b) Tulane will spend at least ▇▇▇▇▇ during each 12-month period (July 1 through June 30) of the Term, on average over the course of each successive 24-month period during the Term, on purchases of sporting goods and equipment and other athletic products from Donor (the "Annual Minimum Purchases"). Annual Minimum Purchases will be calculated on the gross sales revenues of the sporting goods and equipment and other athletic products from Donor to Tulane less shipping, handling, expediting charges and returns and does not include sales tax, discounts or other customary reductions or deductions. For exemplary purposes only, (i) if Tulane made purchases of ▇▇▇▇▇ of sporting goods and equipment and other athletic products from Donor in the first 12-month period of the Term, then, in the second 12-month period of the Term, Tulane would be required to make purchases of at least ▇▇▇▇▇ or (ii) if Tulane made purchases of ▇▇▇▇▇ of sporting goods and equipment and other athletic products from Donor in the third 12-month period of the Term, then, in the fourth 12-month period of the Term, Tulane would be required to make purchases of at least $▇▇▇. For the avoidance of doubt, with respect to the Annual Minimum Purchases, the Term will consist of five 24-month periods beginning on the Effective Date and purchases of products from Donor's affiliates will not count toward the Annual Minimum Purchases.

(c) In connection with the Annual Minimum Purchases, Donor will make sporting goods and equipment, uniforms and other athletic products available to Tulane in accordance with Donor's ordinary course of business practices.

(d) During the Term, Donor, in its sole discretion, may create and maintain an online virtual bookstore (through the "my team shop" solution) for the sale of Tulane-specific equipment and merchandise to

DocuSign Envelope ID: 7AC2E907-BD3F-4EB9-BEF3-8E0493BF56B0

Tulane and the general public. If Donor elects to create and maintain such virtual bookstore, the Parties will reasonably cooperate in good faith in order to assist Donor in fulfilling the obligations set forth herein.

## 5.  Proprietary Marks

(a) Subject to the terms of this Agreement, Donor grants to Tulane a non-exclusive, royalty-free, non-transferable license during the Term to use "BSN SPORTS" and the related logo, including without limitation, any copyrights, trademarks, service marks, trade dress and other intellectual property relating to the same, and any derivatives, modifications or alterations thereof (collectively, the "Donor Marks") in connection with the promotion, marketing and operations of the Project, the Stadium and Scoreboard. The use of the Donor Marks is subject to the reasonable approval of Donor. Prior to the use of any Donor Marks, Tulane will notify Donor in writing of the proposed use of the Donor Marks. If Donor approves, in writing, of the proposed use of the Donor Marks, Tulane will have the right to use such Donor Marks pursuant to the terms of this Agreement. If Donor does not notify Tulane in writing of Donor's disapproval of any submissions by Tulane, and the reasons for any such disapproval, within ten business days of such submission, Donor will be deemed to have approved the materials in the submission. For the avoidance of doubt, Tulane will only be required to obtain such prior approval from Donor once in connection with each such use of the Donor Marks; provided, however, Donor may revoke or otherwise rescind any such previously provided approval upon written notice to Tulane. The grant by Donor herein of a license to Tulane will not convey any right, title or interest in the Donor Marks for any use or purpose other than expressly provided herein, and Donor specifically reserves all such rights for itself.

(b) Subject to the terms of this Agreement, Tulane grants to Donor a non-exclusive, royalty-free, non-transferable license during the Term to use the names or phrases "Tulane," "Tulane University," "Yulman Stadium," "Green Wave," and any related logos, including, without limitation, any copyrights, trademarks, service marks, trade dress and other intellectual property relating to the same, and any derivatives, modifications or alterations thereof (collectively, the "Tulane Marks") in connection with Donor's marketing and merchandising of its sporting goods and equipment, uniforms and other athletic products in its ordinary course of business practices. The use of the Tulane Marks is subject to the reasonable approval of Tulane. Prior to the use of any Tulane Marks, Donor will notify Tulane in writing of the proposed use of the Tulane Marks. If Tulane approves, in writing, of the proposed use of the Tulane Marks, Donor will have the right to use such Tulane Marks pursuant to the terms of this Agreement. If Tulane does not notify Donor in writing of Tulane's disapproval of any submissions by Donor, and the reasons for any such disapproval, within ten business days of such submission, Tulane will be deemed to have approved the materials in the submission. For the avoidance of doubt, Donor will only be required to obtain such prior approval from Tulane once in connection with each such use of the Tulane Marks; provided, however, Tulane may revoke or otherwise rescind any such previously provided approval upon written notice to Donor. Donor will not authorize any third party to use the Tulane Marks, except to the sole extent necessary for Donor's fulfillment of its obligations hereunder. The grant by Tulane herein of a license to Donor will not convey any right, title or interest in the Tulane Marks for any use or purpose other than expressly provided herein, and Tulane specifically reserves all such rights for itself.

DocuSign Envelope ID: 7AC2E907-BD3F-4EB9-BEF3-8E0493BF56B0

(c) Donor hereby represents that it is the sole owner of the Donor Marks free and clear of any liens, claims or encumbrances and that the Donor Marks do not infringe on any copyrights, trademarks, service marks, trade dress or other intangible or intellectual property of any third party.

(d) Tulane hereby represents that it is the sole owner of the Tulane Marks free and clear of any liens, claims or encumbrances and that the Tulane Marks do not infringe on any copyrights, trademarks, service marks, trade dress or other intangible or intellectual property of any third party.

## 6. Termination

(a) Except as set forth herein, either Party will have the right to terminate this Agreement at any time on written notice to the other Party in the event that such other Party materially breaches its obligations under this Agreement and fails to cure such breach within 30 days after receipt of written notice from the terminating Party setting forth in reasonable detail the nature of such breach.

(b) In the event that this Agreement is terminable by either Party in accordance with the terms of this Section 6, the non-defaulting Party may enforce the provisions of this Agreement by a suit in equity or at law for specific performance of any covenant or agreement contained in this Agreement, or for the enforcement of any other legal or equitable remedy at law.

(c) In the event that either Party is unable to perform (or is materially delayed in performing) its obligations hereunder or is unable to enjoy any of its benefits hereunder by reason of any act of God, fire, natural disaster, hurricane, accident, organized union or labor dispute or act of government (a "Force Majeure"), including, without limitation, the substantial damage or destruction of the Stadium or lost or delayed vendor products, in each case as a result of any Force Majeure, such Party will immediately give notice to the other Party of such fact and will use commercially reasonable efforts to restore, replace or otherwise mitigate the consequences hereunder of the Force Majeure. Upon receipt of such notice, each Party's obligations hereunder will be suspended for the period of time that the consequences hereunder of the Force Majeure remain in effect (the "Force Majeure Period"). Notwithstanding any term herein, if the Force Majeure Period lasts 12 months or more from and after the date that a Party receives notice of such Force Majeure and such Party has been able to perform its obligations hereunder despite such Force Majeure, such performing Party may terminate this Agreement by giving notice thereof to the other Party.

## 7. Miscellaneous

- *Applicable Law.* This Agreement will be governed by, and construed and interpreted in accordance with, the substantive laws of the State of Delaware without regard to conflict-of-law principles. IN NO EVENT WILL ANY PARTY BE LIABLE TO THE OTHER PARTY FOR SPECIAL, INCIDENTAL, CONSEQUENTIAL, EXEMPLARY, PUNITIVE, MULTIPLE OR OTHER INDIRECT DAMAGES, OR FOR LOSS-OF-USE DAMAGES, ARISING OUT OF PRODUCTS, SALE, SUPPLYING OR FAILURE TO DELAY IN SUPPLYING PRODUCTS CONTEMPLATED BY THIS AGREEMENT, SERVICES RELATED THERETO OR THE USE OR RESULTS OF SUCH PRODUCTS, WHETHER BASED ON WARRANTY, CONTRACT, TORT, STRICT LIABILITY, OR OTHERWISE EVEN IF SUCH PARTY HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES OR LOSSES.

DocuSign Envelope ID: 7AC2E907-BD3F-4EB9-BEF3-8E0493BF56B0

- *Confidentiality.* Each Party acknowledges and agrees that this Agreement is confidential, and no Party shall disclose this Agreement or any terms hereof to any third parties, except as may be necessary to obtain advice and counseling from such Party's attorneys, accountants, or financial advisors or as may otherwise be required through legal process. In the event that either Party is required to disclose or reasonably believes that it will likely be required to disclose this Agreement or any terms of this Agreement through legal process, such Party shall promptly notify the other party of such actual or anticipated disclosure.

- *Entire Agreement.* This Agreement, including the Exhibits attached hereto, constitutes the entire agreement of the Parties related to the subject matter hereof and supersedes any prior understandings, agreements or representations by or between the Parties, whether written or oral, relating to the subject matter hereof.

- *Relationship of Parties.* Donor is an independent legal entity and is not the legal representative or agent of Tulane for any purpose. Nothing contained in this Agreement will be deemed to create any partnership, agency, or joint-venture relationship between the Parties.

- *Severability.* Any term or provision of this Agreement that is invalid or unenforceable will not affect the validity or enforceability of the remaining terms and provisions hereof. If the final judgment of a court of competent jurisdiction declares that any term or provision hereof is invalid or unenforceable, the Parties agree that the court making such determination will have the power to replace any invalid or unenforceable term or provision with a term or provision that is valid and enforceable and that comes closest to expressing the intention of the Parties.

- *Multiple Counterparts.* This Agreement may be signed in multiple counterparts, including by portable document format (.pdf), all of which will constitute one and the same instrument.

- *Amendment.* This Agreement may be amended at any time by written agreement signed by each Party. The effective date of any amendment will be the date on which the last of the Parties signs it.

- *Further Assurances.* From and after the Effective Date and without any further consideration, each Party will execute and deliver to the other Party such further instruments or agreements as such Party may reasonably request in order fulfill the obligations set forth herein.

- *Captions; Headings.* The captions and headings in this Agreement have been inserted as a matter of convenience and in no way define, limit or enlarge the scope of this Agreement.

- *Notices.* All notices and other communications made under this Agreement must be in writing and (i) personally delivered with signed receipt obtained acknowledging delivery; (ii) transmitted by postage prepaid registered mail, return receipt requested; (iii) transmitted by facsimile or email, subject to confirmation of receipt by the addressee; or (iv) sent by overnight express mail, to the Parties at the addresses set forth on the signature page hereto. Any notice or communication delivered in accordance with this Agreement will be deemed given on the date actually delivered; provided that any notice or report deemed given or due on a Saturday, Sunday or legal holiday will be deemed given or due on the next business day.

60482198.2

DS
TMB

DocuSign Envelope ID: 7AC2E907-BD3F-4EB9-BEF3-8E0493BF56B0

- *Drafting Party.* This Agreement expresses the mutual intent of the Parties, and accordingly the rule of construction against the drafting Party will have no application to this Agreement.

[Signature page follows]

DS
*TMB*

60482198.2

DocuSign Envelope ID: 7AC2E907-BD3F-4EB9-BEF3-8E0493BF56B0

IN WITNESS WHEREOF, the Parties have caused this Agreement to be executed by their duly authorized officers to be effective as of the Effective Date.

**DONOR:**

BSN SPORTS, Inc.
Attn: General Counsel
1901 Diplomat Drive
Farmers Branch, TX 75234

By: *Terrence M. Babilla* (DocuSigned By: Terrence M. Babilla, 9426E1841A554EA...)
Name: Terrence M. Babilla
Title: President
Phone: 972-406-3477
Email: tbabilla@bsnsports.com

**TULANE:**

The Administrators of the Tulane Educational Fund
Attn: Rick Dickson, Athletic Director
Tulane University
333 Ben Weiner Drive
James W. Wilson Ctr.
New Orleans, LA 70118

By: *Rick Dickson*
Name: Rick Dickson
Title: Athletic Director
Phone: 504.865.5509
Email: rpd@tulane.edu

[Signature Page to Gift and Naming Rights Agreement]

DocuSign Envelope ID: 7AC2E907-BD3F-4EB9-BEF3-8E0493BF56B0

## Exhibit A

## Form to Accept or Decline Benefits

[Attached.]

*TMB* (DocuSigned)

DocuSign Envelope ID: 7AC2E907-BD3F-4EB9-BEF3-8E0493BF56B0

## Exhibit B

### Auxiliary Scoreboard Signage





