**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TENNESSEE**

| | |
|---|---|
| JESSICA JONES et al.,<br><br>          Plaintiffs,<br>     v.<br><br>VARSITY BRANDS, LLC et al.,<br><br>          Defendants. | **Civ. Action No. 2:20-cv-02892** |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO EXCLUDE TESTIMONY OF PLAINTIFFS' PROFERRED EXPERT JAMES H. ARONOFF**

## <u>**TABLE OF CONTENTS**</u>

INTRODUCTION ......................................................................................................................1

ARGUMENT ............................................................................................................................2

I.      MR. ARONOFF HAS NO RELEVANT EXPERIENCE .....................................................3

II.     THE VAST MAJORITY OF MR. ARONOFF'S REPORTS ARE FACTUAL
        NARRATIVE AND SHOULD NOT BE PERMITTED AS EXPERT TESTIMONY ........4

III.    MR. ARONOFF'S STRUCTURAL RELIEF RECOMMENDATIONS ARE IMPROPER
        SUBJECTS OF EXPERT TESTIMONY ..........................................................................7

        A.      Mr. Aronoff Is Not an Economist and Does Not Otherwise Have
                Specialized Scientific, Technical or Other Specialized Knowledge. ......................7

        B.      Recommendations As to Structural Relief Would not Help the Court ...................8

        C.      Mr. Aronoff's Recommendations Are Not Based on Facts and Data ...................13

        D.      Mr. Aronoff's Recommendations Are not the Product of Any Principles or
                Methods, Much Less Reliable Ones .....................................................................14

        E.      Mr. Aronoff Has Not Reliably Applied Reliable Principles and Methods to
                the Facts of the Case ............................................................................................16

        F.      Several of Mr. Aronoff's Recommendations Would be Anticompetitive if
                Implemented .........................................................................................................17

CONCLUSION........................................................................................................................18

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Amorgianos v. AMTRAK*,
  303 F.3d 256 (2d Cir. 2002) ..................................................................................................3

*Ask Chems., LP v. Comput. Packages, Inc.*,
  593 F. App'x 506 (6th Cir. 2014) ..........................................................................................7

*Atl. Richfield Co. v. USA Petroleum Co.*,
  495 U.S. 328 (1990) ..............................................................................................................17

*Cascade Health Sols. v. PeaceHealth*,
  515 F.3d 883 (9th Cir. 2008) ................................................................................................17

*Daubert v. Merrell Dow Pharms., Inc.*,
  509 U.S. 579 (1993) ...........................................................................................................2, 14

*Gen. Elec. Co. v. Joiner*,
  522 U.S. 136 (1997) ...........................................................................................................3, 14

*Heller v. Shaw Indus., Inc.*,
  167 F.3d 146 (3d Cir. 1999) ...................................................................................................2

*In re Davol, Inc./C.R. Bard, Inc., Polypropylene Hernia Mesh Prods. Liab. Litig.*,
  546 F. Supp. 3d 666 (S.D. Ohio 2021) ...................................................................................5

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
  299 F. Supp. 3d 430 (S.D.N.Y. 2018) .....................................................................................5

*In re Lyondell Chem. Co.*,
  558 B.R. 661 (Bankr. S.D.N.Y. 2016) .....................................................................................4

*Kumho Tire Co. v. Carmichael*,
  526 U.S. 137 (1999) ................................................................................................................2

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
  475 U.S. 574 (1986) ..............................................................................................................17

*Nelson v. Tennessee Gas Pipeline Co.*,
  243 F.3d 244 (6th Cir. 2001) ..................................................................................................2

*Newell Rubbermaid, Inc. v. Raymond Corp.*,
   676 F.3d 521 (6th Cir. 2012) ............................................................................................. 3, 15

*NicSand, Inc. v. 3M Co.*,
   507 F.3d 442 (6th Cir. 2007) ................................................................................................. 17

*Parrish v. Bentonville Sch. Dist.*,
   896 F.3d 889 (8th Cir. 2018) ................................................................................................. 12

*PharmaStem Therapeutics, Inc. v. ViaCell, Inc.*,
   491 F.3d 1342 (Fed. Cir. 2007) ............................................................................................... 6

*Reynolds v. Freightliner LLC*,
   Civ. No. 05-70-GFVT, 2006 WL 5249744 (E.D. Ky. June 21, 2006) ....................................... 6

*Rose v. Matrixx Initiatives, Inc.*,
   No. 07-2404-JPM/tmp, 2009 WL 902311 (W.D. Tenn. Mar. 31, 2009) ................................... 2

*Seiber v. Estate of McRae*,
    No. 1:11-CV-00111-TBR, 2013 WL 5673601 (W.D. Ky. Oct. 17, 2013) ................................ 7

*Tchatat v. City of New York*,
   315 F.R.D. 441 (S.D.N.Y. 2016) ............................................................................................. 5

*Thomas v. City of Chattanooga*,
   398 F.3d 426 (6th Cir. 2005) ................................................................................................. 15

*Tovey v. Nike, Inc.*,
   No. 1:12CV448, 2014 WL 3510636 (N.D. Ohio July 10, 2014) ............................................. 15

*United States v. Frazier*,
   387 F.3d 1244 (11th Cir. 2004) ............................................................................................. 15

*United States v. Rios*,
   830 F.3d 403 (6th Cir. 2016) ................................................................................................... 6

*Yancey v. Carson*,
   Nos. 3:04-CV-556, 3:04-CV-610, 2007 WL 3088232 (E.D. Tenn. Oct. 19, 2007) .............. 5, 15

**Other Authorities**

Fed. R. Evid. 403 ..................................................................................................................... 5

Fed. R. Evid. 702 ............................................................................................................. *passim*

Fed. R. Evid. 703 ............................................................................................................4

## INTRODUCTION

The Court should exclude the testimony of Mr. Aronoff, who states that he was "retained as an expert witness by the Joseph Saveri Law Firm, Inc. ('JSLF' or 'Counsel'), counsel for plaintiffs … to provide recommendations for relief with respect to the alleged activity of defendants …." (Ex. A[1], Aronoff Rep. ¶ 1.)  In essence, Plaintiffs seek to have Mr. Aronoff, an attorney by training but more recently a consultant to the financial services industry, present their arguments to the Court about possible injunctive relief in the guise of "expert" testimony.  Such opinion testimony—ungrounded in any science or scientific methodology—is inappropriate and should be excluded.  Otherwise, Mr. Aronoff's report simply amounts to a factual narrative consisting of Plaintiffs' version of the "facts," which is likewise improper and should not be permitted.

Even Mr. Aronoff concedes that he has neither examined nor offers any opinions regarding the alleged "anticompetitive activity of the Defendants." (Ex. B, Aronoff Rebuttal Rep. ¶ 6.)  He also conceded that he was not "asked to look into the competitive impact of [his] proposals." (Ex. C, Aronoff Dep. 131:5-6.)  And, moreover, he conceded he had no opinion on whether his recommendations would result in lower prices of cheer competitions, apparel, or camps. (Ex. C, Aronoff Dep. 174:21-176:3.)  Rather, Plaintiffs propose to have Mr. Aronoff tell this Court what it could do in terms of "structural relief." (Ex. A, Aronoff Rep. ¶ 5.)  In other words, Plaintiffs would have Mr. Aronoff replace the Court in its role in fashioning equitable relief, which is, of course, inappropriate.  Should the issue of injunctive relief ever become relevant in this case, Plaintiffs' attorneys, who are equally positioned as Mr. Aronoff, who

---

[1] References herein to "Ex. __" refer to the corresponding Exhibit in the Kaiser Declaration, which is submitted herewith.

himself is an attorney by training and has no particular experience in economics or any other topic relevant to this case, will undoubtedly be afforded the opportunity to make whatever argument they want.  Masquerading such argument as "expert" testimony would serve no legitimate purpose and should not be allowed.

## ARGUMENT

A party offering expert testimony must "establish its admissibility by a preponderance of proof."  *Nelson v. Tennessee Gas Pipeline Co.*, 243 F.3d 244, 251 (6th Cir. 2001).  Rule 702 of the Federal Rules of Evidence allows a "witness who is qualified as an expert by knowledge, skill, experience, training, or education [to] testify in the form of opinion or otherwise" in certain limited circumstances.  First, "the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue."  Fed. R. Evid. 702(a).  Second, the testimony must be "based on sufficient facts or data."  Fed. R. Evid. 702(b).  Third, the testimony must be "the product of reliable principles and methods."  Fed. R. Evid. 702(c).  Finally, the expert must have "reliably applied the principles and methods to the facts of the case."  Fed. R. Evid. 702(d).  All four of these requirements must be satisfied.

The Court has a "gatekeeping obligation" to ensure that any expert testimony "is not only relevant, but reliable."  *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999); *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993).  This obligation "applies to all aspects of an expert's testimony: the methodology, the facts underlying the expert's opinion, the link between the facts and the conclusion, *et alia*."  *Heller v. Shaw Indus., Inc.*, 167 F.3d 146, 155 (3d Cir. 1999).  This requires courts to examine each part of an expert's analysis, because any unreliable step "renders the expert's testimony inadmissible."  *Rose v. Matrixx Initiatives, Inc.*, 2009 WL 902311, at *10 (W.D. Tenn. Mar. 31, 2009) (quoting *Amorgianos v. AMTRAK*, 303 F.3d 256, 267 (2d Cir. 2002)); *see also Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).  "Red flags

that caution against certifying an expert include reliance on anecdotal evidence, improper

extrapolation, failure to consider other possible causes, lack of testing, and subjectivity." *Newell*

*Rubbermaid, Inc. v. Raymond Corp.*, 676 F.3d 521, 527 (6th Cir. 2012). "In addition, if a

purported expert's opinion was prepared solely for litigation, that may also be considered as a

basis for exclusion." *Id.*

As discussed below, Mr. Aronoff has no methodology. He simply endorses Plaintiffs'

requests, without even providing a basis for doing so. Indeed, his typical opinion is in the nature

of "Plaintiffs complain about X. The Court could forbid X." Making such prosaic observations

is not the proper role or purpose of expert testimony and, indeed, is not permitted under the

Federal Rules of Evidence in the guise of expert testimony. It also would not help the Court in

its role as a fact finder as it relates to injunctive relief.

## I.     MR. ARONOFF HAS NO RELEVANT EXPERIENCE

For testimony to be potentially admissible at trial, an expert must have "scientific,

technical, or other specialized knowledge [that] will help the trier of fact to understand the

evidence or determine a fact in issue." Fed. R. Evid. 702(a). The mere fact that an individual

may be an "expert" in one thing does not make that person suitable to testify on other things.

Mr. Aronoff does not meet this basic requirement. According to the curriculum vitae that

he attached to his reports, Mr. Aronoff is a financial services professional with "more than 35

years of experience in all aspects of asset origination, servicing and finance markets, including

senior management, capital raising, strategic planning, product development, trading, structuring,

valuation, due diligence, sales, and negotiating transactions." (Ex. A, Aronoff Rep. App. A.) He

has a law degree, although he no longer is an active practitioner. (Ex. C, Aronoff Dep. 13:12-

19.) More recently, he has held a number of positions at consulting companies. (Ex. C, Aronoff

Dep. 21:3-13; 23:13-25:10; 27:2-8.) His experience has all been in the financial services

industry, which he describes as "highly regulated." (Ex. C, Aronoff Dep. 19:4-16.) Based on his deposition testimony, that experience has been almost entirely related to structured finance. (Ex. C, Aronoff Dep. 21:14-17.) Prior to this engagement, he had no professional experience relating to sports or sports management. (Ex. C, Aronoff Dep. 29:15-19.) He does not put himself forward as an economist, and, indeed does not have an advanced degree in economics. (Ex. C, Aronoff Dep. 34:8-15.) (His undergraduate degree was in economics and politics. (Ex. A, Aronoff Rep. ¶ 9).) As an expert testifier in other matters, he has provided testimony relating to the financial services industry. He had done no work relating to antitrust litigation before this assignment. (Ex. C, Aronoff Dep. 32:25-33:4.)

Mr. Aronoff suggests that he is an "expert" in compliance programs. But, again, he has never done any work in any sport or sport-related industry before he undertook his assignment. Nor are his opinions particularly related to "compliance programs." Rather, as discussed below, they are in the nature of simply suggesting that "relief" could take the form of forbidding Varsity and/or USASF from undertaking the things that Plaintiffs or Plaintiffs' other proffered experts complain about. That is not a compliance program. Indeed, if there is an injunctive decree in this case, compliance would be subject to the Federal Rules of Civil Procedure and other applicable law.

## II.   THE VAST MAJORITY OF MR. ARONOFF'S REPORTS ARE FACTUAL NARRATIVE AND SHOULD NOT BE PERMITTED AS EXPERT TESTIMONY

A "factual narrative that does not draw technical or scientific conclusions" is inadmissible under Rule 703, because it offers "no more than what counsel for the [plaintiff] will do in argument." *In re Lyondell Chem. Co.*, 558 B.R. 661, 667-68 (Bankr. S.D.N.Y. 2016) (citation

omitted).[2]  "A history without any expert analysis or other application of the expert's expertise is simply a factual narrative that 'should be presented to the jury directly.'"  *In re Davol, Inc./C.R. Bard, Inc., Polypropylene Hernia Mesh Prods. Liab. Litig.*, 546 F. Supp. 3d 666, 677 (S.D. Ohio 2021).  Such testimony would also run afoul of Rule 403, because any value they might have would be "far outweighed by the danger that the jury would accord too much weight to such opinions because they come from the mouth of a [] professional."  *Tchatat v. City of New York*, 315 F.R.D. 441, 447 (S.D.N.Y. 2016); *see also Yancey v. Carson,* 2007 WL 3088232, at *4 (E.D. Tenn. Oct. 19, 2007) (excluding expert witness testimony on the basis that the expert "essentially marshaled the facts in the record which support the plaintiff's position").

The vast majority of Mr. Aronoff's reports are just this type of inadmissible factual narrative.  This includes the "Background" section in his opening report but also includes most of the rest of his reports, where he simply makes factual assertions with footnotes to various deposition testimony or documents, some of which were produced in this case and others he found on the Internet.  In some instances he simply cites the Plaintiffs' Complaint.  At his deposition, Mr. Aronoff agreed that he did not bring any expertise to bear in this part of his report (specifically paragraphs 26 through 93).  (Ex. C, Aronoff Dep. 55:5-9 ("I think that that material is included to set the factual context in which these recommendations are being offered. There are no opinions of mine offered in those sections, if that's what you're asking.")  He also reported that he was instructed by counsel to "assume that the allegations in the complaint were true, for purposes of making recommendations."  (Ex. C, Aronoff Dep. 83:13-15; *see also id.* at 68:19-21

---

[2] Even highly credentialed economists, including Nobel Prize winners, are excluded when their testimony is limited to reciting and interpreting lay facts.  *See, e.g.*, *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 299 F. Supp. 3d 430, 584 (S.D.N.Y. 2018) (excluding testimony of Nobel Prize-winning economist.)

(same).)[3]

It is not clear whether Plaintiffs expect to have Mr. Aronoff testify on the alleged facts he

sets forth in paragraphs 26 through 93, but such testimony should not be permitted.  Plaintiffs

should not be allowed to use Mr. Aronoff to summarize their version of the facts, which is to say,

provide a closing argument or summation.  There is no expert analysis or application of expert

expertise in such summations and factual assertions, and legal arguments should not be

laundered through the guise of a so-called expert's testimony.  *See, e.g.*, *Reynolds v. Freightliner*

*LLC*, 2006 WL 5249744, at *6 (E.D. Ky. June 21, 2006) (excluding expert witness testimony on

the basis that it "[s]imply regurgitate[ed], in a conclusory, 'expert' manner," information from the

factual record); *PharmaStem Therapeutics, Inc. v. ViaCell, Inc.*, 491 F.3d 1342, 1354-55 (Fed.

Cir. 2007) (excluding as unhelpful the proffered expert's practice of quoting from the opposing

party's materials and then drawing inferences from those materials).

Because such a biased factual summary is simply putting Mr. Aronoff's "expert"

imprimatur on disputed factual evidence, rather than providing the results of an expert-based

analysis that is helpful to the trier of fact, it cannot be admitted into evidence under Rule 702 and

should not be considered as part of the class certification record.  Instead, such evidence can and

should be weighed impartially by the trier of fact.  *See, e.g.*, *United States v. Rios*, 830 F.3d 403,

413 (6th Cir. 2016) (relevance of expert testimony depends on "whether the untrained layman

would be qualified to determine intelligently and to the best possible degree the particular issue

without enlightenment from those having a specialized understanding of the subject involved in the

---

[3] Speaking more generally of all of the recommendations in his report, Mr. Aronoff agreed that
the first paragraph in each recommendation (*i.e.*, paragraphs 95, 97, 99, 101, 103, 105, 107, 109,
111, 113, 115, 117, 119, 121, 123, and 125 of his report) is something he was told to assume and
the second paragraph (*i.e.*, paragraphs 96, 98, 100, 102, 104, 106, 108, 110, 112, 114, 116, 118,
120, 122, and 124) contains his "recommendation."  (Ex. C, Aronoff Dep. 95:2-96:1.)

dispute.") (quoting Fed. R. Evid. 702, Adv. Comm. Notes (internal quotation omitted)); *Ask Chems., LP v. Comput. Packages, Inc.*, 593 F. App'x 506, 510 (6th Cir. 2014) ("Where an expert merely offers his client's opinion as his own, that opinion may be excluded."); *see also Seiber v. Estate of McRae*,  2013 WL 5673601, at *6-7 (W.D. Ky. Oct. 17, 2013) (striking an expert opinion in which the proposed analysis did "not speak to matters outside the purview of laypersons").

## III.   MR. ARONOFF'S STRUCTURAL RELIEF RECOMMENDATIONS ARE IMPROPER SUBJECTS OF EXPERT TESTIMONY

As Mr. Aronoff emphasized in his report and his rebuttal report, Mr. Aronoff was retained "to provide recommendations for relief with respect to the alleged activity of the Defendants." (Ex. A, Aronoff Rep. ¶ 1.)  This sort of testimony flunks each requirement of Rule 702.  First, it would not "help the trier of fact"—here the Court, not the jury because the recommendations relate to injunctive relief—"to understand the evidence or determine a fact in issue."  Second, the testimony would not be "based on sufficient facts or data."  Third, the testimony would not be the "product of reliable principles and methods."  And, fourth, the proffered expert has not "reliably applied the principles and methods to the facts of the case."  Fed. R. Evid. 702(a)-(d).

### A.   Mr. Aronoff Is Not an Economist and Does Not Otherwise Have Specialized Scientific, Technical, or Other Specialized Knowledge

As an initial matter, Mr. Aronoff is not qualified to serve as an expert.  He is not an economist; he is trained as a lawyer and, after practicing law for several years, has held numerous consulting jobs related to the financial services industry.  He reports that the bulk of his time has been spent in what he calls "regulated industries," which is to say the financial industry, with an apparent emphasis on structured finance.  He has no background or experience in sports or cheerleading.  His work as an "expert" has been in the financial sector, not sports or cheerleading.  In the "Professional Highlights" section of his CV, he describes himself as a "Senior, deal-tested, capital markets professional with more than 35 years of experience in all

7

aspects of asset origination, servicing and financial markets, including senior management, capital raising, strategic planning, product development, trading, structuring, valuation, due diligence, sales, and negotiating transactions." (Ex. A, Aronoff Rep. App. A.) He admits that he has not "authored, co-authored, edited or otherwise written any publications, articles, books, papers and/or presentations in the past ten years." (Ex. A, Aronoff Rep. App. B.)

A proffered expert must actually be an expert. Ultimately, it is not clear what Mr. Aronoff claims to be an expert in, but, based on his training (an attorney) and work (New York based financial lawyer and consultant specializing in finance transactions), there is no basis to conclude that he is an "expert" in anything relevant to this case, much less an expert in appropriate restructuring of Varsity and/or USASF to address what Plaintiffs' other proffered experts have opined constituted anticompetitive conduct.

**B.      Recommendations As to Structural Relief Would not Help the Court**

Mr. Aronoff repeatedly emphasizes that he is not an economist and that he is not purporting to provide any opinions on whether anything that Defendants did was anticompetitive, procompetitive, or competitively neutral. (Ex. B, Aronoff Rebuttal Rep. ¶ 6.); (Ex. C, Aronoff Dep. 10:17-21 ("[Y]ou, yourself did not analyze whether any conduct of any party was anticompetitive. Right? A: That's correct.")) Rather, he simply takes what Plaintiffs' other proposed experts have offered opinions on and provides a "recommendation" that the Court order whatever practice that the other experts identified be terminated by injunction. Mr. Aronoff did not seriously dispute this at his deposition. (*See* Ex. C, Aronoff Dep. 37:19-38:21 ("Q: But just generally, it seems like what you did was you took what the plaintiffs were complaining about and said your recommendation was [that] Varsity … stop doing whatever it was they were complaining about. A: … So, yeah, that's core. The message is don't continue to engage in this problematic activity. … So in one sense, I agree with you.").) Mr. Aronoff went

on to assert that there is a "whole science and profession of regulatory compliance" and there was "much more to it than that" (Ex. C, Aronoff Dep. 38:22-25), but none of that "science" is set forth in his report at all.

To take one of many examples, in respect of Varsity's requirement that competitors travelling to certain events book their accommodations through Varsity's housing provider, Mr. Aronoff's recommendation is "Varsity can no longer require families to stay at specific accommodations, designated by Varsity, to participate in Varsity sponsored or controlled Cheer Competitions." (Ex. A, Aronoff Rep. ¶ 102.) Obviously such an anodyne "don't do X" opinion or recommendation would not be helpful to the Court.

In addition to being unhelpful in general, many of Mr. Aronoff's recommendations are all the more unhelpful because they are non-specific. Indeed, Mr. Aronoff conceded at his deposition that his recommendations were not fully formed. (Ex. C, Aronoff Dep. 92:3-5 ("Again, these recommendations, if accepted, are the starting point of crafting actual procedures."); *id.* at 109:5-6 ("[a]gain, my intent wasn't to craft the specifics of the recommendation"); *id.* at 110:24-111:7 ("But again, none of these recommendations were intended to provide specific rules that may be embodied in an agreement or an order or—in whatever form these recommendations, if they are implemented, are ever implemented, there would have to be more specific rules and regulations that are workable that incorporate the spirit of the recommendations that are made in this report."); *id.* at 120:14-21 ("Again, I wasn't asked to provide specific rules. … [T]o the extent there is implementation of the recommendation, then you would fill in the contours of the specifics."); *id.* at 158:24-159:2 ("I was not asked to necessarily provide the specific policies, restrictions, or actions that would need to be taken to resolve any of the criticisms or concerns involved in this case.").) And he admitted that he

"wasn't asked to write the actual policies and procedures for Varsity, for good reason," but merely was trying to "provide a starting point for practical, manageable, successful policies and procedures could be written." (Ex. C, Aronoff Dep. 105:22-106:1; *see also id.* at 106:5-6 ("I wasn't asked to craft the policies.").)

For example, Mr. Aronoff's recommendation as to Worlds Bids is that "Varsity can only host a portion of bid earning competitions. The remaining competitions where bids are awarded can be hosted by non-Varsity event producers." (Ex. A, Aronoff Rep. ¶ 114.) He provides no opinion on what that "portion" should be, nor any guidance for how that "portion" should be determined. Indeed, what he describes is exactly what the current situation is. Varsity has a portion of the events where USASF authorized the awarding of bids to Worlds. Non-Varsity event producers have the rest.

Similarly, Mr. Aronoff recommends that "the USASF can restructure [its] Board of Directors to better represent the interests of non-Varsity event producers, athletes, coaches, gyms, schools, and families." (Ex. A, Aronoff Rep. ¶ 120.) In addition to not making any sense to include "schools," when USASF has nothing to do with school cheerleading, Mr. Aronoff provides nothing to the Court in the nature of the specifics of any such "restructuring." Along the same lines, Mr. Aronoff recommends that "USASF, or any future governing body, can restructure the Board to better represent non-Varsity market participants and to ensure that no single Competitive Cheer market participant has inappropriate influence or control regarding governance decisions." (Ex. A, Aronoff Rep. ¶ 122.) Here, again, Mr. Aronoff provides no specifics as to this restructuring, or define what "inappropriate influence or control" means or even specify what "Cheer market participant" means. His suggestion, that "[t]his objective can also be achieved by appointing an industry governance monitor to the Board" (*id.*) is also vague

and non-specific.

Another non-specific and unhelpful suggestion relates to what Mr. Aronoff labels "transparency." His recommendation is that "Varsity can regularly disclose information to Competitive Cheer industry participants regarding Varsity's affiliations, decision-making processes and governance structure." (Ex. A, Aronoff Rep. ¶ 124.) There are no specifics about what information Varsity would have to reveal, or what is meant by "affiliations," or "decision-making processes" or "governance structure." Similarly, without specifying what he means by a "monitoring and reporting program," Mr. Aronoff vaguely recommends that "Varsity can develop and implement a robust monitoring and reporting program with regard to Varsity's role in the Competitive Cheer market, and those entities affiliated with Varsity and/or with whom Varsity has a controlling interest. Additionally Varsity's activity can be overseen by an independent monitor to assure Varsity's compliance with any agreed upon limitations or other remedial action." (Ex. A, Aronoff Rep. ¶ 126.)

Similarly, Mr. Aronoff's "recommendation" as to judges at Varsity events, which is not even an issue in the case, is that "Judges can be trained by an entity independent from Varsity" and that "[I]n the short term, an independent monitor can oversee the training process and ensure fair training practices." (Ex. A, Aronoff Rep. ¶ 100.) How that would work in practice, or what the monitor would be on the lookout for, and how the Court would ensure that some other "entity" would take on the task of training judges for Varsity is left unaddressed.

Other suggestions are prevaricated. For example, speaking of rebates, Mr. Aronoff provides the recommendation that "alternatively, rebates can be abolished altogether," but observes that "the elimination of rebates may ultimately be detrimental to athletes and families that presently are eligible to receive rebates." (Ex. A, Aronoff Rep. ¶ 104.) Left unsaid is how

the Court is supposed to balance those considerations.[4]

Mr. Aronoff also seems to misunderstand what his recommendations might be used for, suggesting that Varsity would have some say in the remedies imposed by the Court.  (*See* Ex. C, Aronoff Dep. 92:5-8 ("And one would hope that Varsity would take a significant role in adding the specifics of the procedures that came from these recommendations."); *id.* at 106:10-16 ("[T]he appropriate way to fill in the specifics with respect to my recommendations would be to get buy-in from the parties that would be affected by these recommendations to actually design the specific contours of any policy and procedure that is designed to fulfill the recommendation that I make here.").)  He flatly rejected the efficacy of having "imposed policies."  (*id.* at 106:21-107:4 ("[T]he data shows that if you want policies and rules within a corporate environment to succeed, the way to do that is to be as collaborative as possible and get buy-in from those affected by those policies.  And when that happens, as opposed to something simply being mandated, those policies and procedures have the highest likelihood of succeeding.").)

Non-specific recommendations from a non-expert in the field would not be helpful to the Court as trier of fact on injunction issues.  *See Parrish v. Bentonville Sch. Dist.*, 896 F.3d 889, 896 (8th Cir. 2018) ("A district court does not abuse its discretion in excluding a conclusory, non-specific report.").  The Court is perfectly well equipped to assess the proper contours of equitable relief should it find that such relief is warranted.  Plaintiffs will have their opportunity to present argument and proposals in that regard.  Mr. Aronoff has nothing to add to that discussion as an "expert."

---

[4] Mr. Aronoff's other alternative as to rebates is the anodyne "recommendation" that "Varsity cannot offer or require exclusive agreements of the type described above with gyms or schools." (Ex. A, Aronoff Rep. ¶ 96.)  Mr. Aronoff makes the same suggestions as to what he terms camp rebates.  (*See* Ex. A, Aronoff Rep. ¶ 104.)  Rebates for camp attendance are not an issue in this case.

### C.     Mr. Aronoff's Recommendations Are Not Based on Facts and Data

Mr. Aronoff's testimony should be excluded for the additional reason that it is not based on facts or data.  Rather, Mr. Aronoff simply takes the various things that Plaintiffs' other proffered experts say was or is anticompetitive and "recommends" that the Court order Varity and/or USASF not to do these things in the future.  For example, despite this Court's observation that Varsity's policy of not allowing rival apparel manufacturers to sell at Varsity's competitions may not be "actionable under prevailing antitrust laws" (*see Fusion Elite* ECF No. 141 at PageID 2257 n.2), Mr. Aronoff "recommends" that the Court force Varsity to allow its competitors to do so.  (Ex. A, Aronoff Rep. ¶ 108.)  His proffered "opinion" merely states the obvious and would do nothing to help the Court: "To provide relief, Varsity sponsored or controlled competitions can allow non-Varsity vendors to market and sell their products at Varsity sponsored or controlled competitions and end-of-season events."  (Ex. A, Aronoff Rep. ¶ 108)  He adds that "[a]lternatively, a certain percentage of booths or showrooms at Varsity sponsored or controlled competitions and end-of-season events can be reserved for, and made to [sic], non-Varsity vendors of Cheer Apparel."  (*Id.*)  This recommendation suffers from the additional infirmity of being non-specific as what percentage that should be.

This pattern of parroting what Plaintiffs' other proffered experts say and then providing the anodyne recommendation that the Court order Varsity and/or USASF, as the case may be, to stop doing whatever Plaintiffs are complaining about is the sum and substance of Mr. Aronoff's proposed testimony.  (*See* Ex. A, Aronoff Rep. ¶¶ 94-126.)[5]  In some instances, he even goes

---

[5] For example, Mr. Aronoff makes the suggestion that "to provide relief" from Varsity's practice of "offer[ing] additional rebates to teams that participate in a certain number of Varsity competitions," Varsity could be forced to only offer rebates "based on the amount spent on competitions" or that "rebates can be abolished altogether."  (Ex. A, Aronoff Rep. ¶¶ 95-96.)  Mr. Aronoff says that "USASF does not make competition rules available to non-member independent event producers" and recommends that "USASF, or any future governing body, can

beyond, suggesting that the Court ban things that Plaintiffs do not even contend was

anticompetitive.[6]

### D.   Mr. Aronoff's Recommendations Are not the Product of Any Principles or Methods, Much Less Reliable Ones

For expert testimony to be admissible, it must be based on "reasoning or methodology …

[that] is scientifically valid and … properly can be applied to the facts in issue.  *Daubert*, 509

U.S. at 592-93.  For a court to make that assessment, "at the outset" as *Daubert* requires, *id.* at

592, the reasoning or methodology must be identified.  "[N]othing in either Daubert or the

Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to

existing data only by the *ipse dixit* of the expert."  *Joiner*, 522 U.S. at 146.

Contrary to that basic requirement, Mr. Aronoff revealed no methodology in his report.

At his deposition, he confirmed that, in fact, he simply reviewed certain material and put forth

his opinions based on his "experience," which opinions of course mirror Plaintiffs' arguments in

the case.  Expert testimony based on "experience," which is all Mr. Aronoff even purports to

offer, must itself be ground in a revealed process or methodology for deriving the testimony from

---

make competition rules available to all event producers, whether or not they are USASF
members, at the beginning of each competition season …."  (Ex. A, Aronoff Rep. ¶¶ 97-98.)  The
Court does not need Mr. Aronoff to make such obvious observations.

[6] For example, Mr. Aronoff advises that the Court could ban Varsity from "control[ling] the
training of" judges that judge its competitions.  (Ex. A, Aronoff Rep. ¶ 100.)  Nowhere do
Plaintiffs other experts say that Varsity's efforts to train judges is anticompetitive.  Mr. Aronoff
glosses over this in his rebuttal report, mixing it in with other topics and ultimately saying that "I
have not been engaged to identify anticompetitive conduct by Varsity."  (Ex. B, Aronoff Rebuttal
Rep. ¶ 20.)  Likewise, Mr. Aronoff suggests the Court "could" ban Varsity from requiring
"families to stay at specific accommodations … to participate in Varsity sponsored or controlled
Cheer Competitions."  (Ex. A, Aronoff Rep. ¶ 102.)  In his rebuttal report, he incorrectly asserts
that another of Plaintiffs' experts labelled this practice as "anticompetitive."  (*Compare* Ex. B,
Aronoff Rebuttal Rep. ¶ 21 ("The anticompetitive effect of this policy … is discussed in the Netz
Report") *with* ECF No. 382-3 at 48-50 (asserting that "market power is … demonstrated by …
policy," not that the policy is "anticompetitive").)

the experience.  For an expert to rely on his personal experience, he must "explain *how* that experience leads to the conclusion reached, *why* that experience is a sufficient basis for the opinion, and *how* that experience is reliably applied to the facts." *United States v. Frazier*, 387 F.3d 1244, 1261 (11th Cir. 2004) (citation omitted; emphasis added); *see also Thomas v. City of Chattanooga*, 398 F.3d 426, 432 (6th Cir. 2005) (upholding inadmissibility of such testimony); *see also Yancey*, 2007 WL 3088232, at *5 ("In performing its gatekeeper function, this Court must have sufficient information regarding the basis for the opinions reached, the principles and methodology employed, and their application.  In this case, the plaintiffs essentially ask the Court to take [expert's] word for his reliability and at best offer only subjective, self-serving assurances of reliability.  This Court finds that is precisely the type of 'expert' testimony warned against by *Daubert* and *Kumho Tire*.")  When asked if he described in his report the process of using his experience to form his recommendations, his response could not have been clearer: "No."  (Ex. C, Aronoff Dep. 41:16.)  He went on in his answer to say that "I think I said earlier that in this report and in other reports that I've done, I don't describe in detail my thought processes.  I describe my opinions and the basis for those opinions, which I did in this case." (Ex. C, Aronoff Dep. 41:16-20.)  But, in fact, he did not provide the basis for any of his "recommendations."

That is no methodology at all and his opinions should be excluded on that basis.  *See, e.g.*, *Newell Rubbermaid, Inc.*, 676 F.3d at 527 ("[r]ed flags that caution against certifying an expert include reliance on anecdotal evidence;" excluding expert testimony on this basis.) Indeed, Mr. Aronoff's report is essentially identical in approach to the rejected report and opinions in *Tovey v. Nike, Inc.*, 2014 WL 3510636, at *5 (N.D. Ohio July 10, 2014), where the court excluded the expert's testimony there because it consisted of "merely a list of factual

assertions accompanied by a conclusion without any explanation for its basis or reliance on

accepted methodology."

> E.    **Mr. Aronoff Has Not Reliably Applied Reliable Principles and Methods to
> the Facts of the Case**

Insofar as Mr. Aronoff has revealed no principles or methods underlying his

"recommendations" on injunctive relief, it follows that he has not reliable applied such principles

or methods to the fact of the case.

Indeed, in making his "recommendations" relating to injunctive relief, Mr. Aronoff has

ignored the facts of the case, especially as they relate to developments in the marketplace.  Those

facts reveal that, notwithstanding Plaintiffs' complaints about Defendants, in the past few years

numerous new event producers have entered the market,[7] a rival structure of end-of-season

events has emerged,[8] and apparel and camp competition has continued to flourish.[9]  And, as

---

[7] Examples of recent event producer entrants include Liberty Spirit and Freedom Spirit, which
were founded by former Varsity employees and offer bids to a rapidly growing end-of-season
event that competes with Varsity's Summit.  (*See* Ex. D, Elza Dep. (Vol. II) 9:8-15, 15:12-25,
44:18-23; Ex. E, Hill Dep. 383:16-385:10.)  Another recent entrant founded in 2020, Revolution
Championships, already attracts the highest level All Star teams that are eligible to compete at
Worlds.  (Ex. F, Owens Dep. (Vol. I) 27:11-12, 185:1-9.)

[8] In 2019, a large group of non-USASF event producers created the Open Championship Series,
which holds over 300 regular season events per year that feed into a set of four end-of-season
championship events.  The Open Championship Series also features an end-of-season
elimination style event where teams compete for bids from the more than 300 qualifier events
called the Allstar World Championship, which competes with Varsity's Summit.  The Allstar
World Championship grew from about 400 teams in its first year in 2021 to over 1,100 teams in
2022.  (*See* Ex. G, Hanbery Dep. 26:9-16; Ex. F, Owens Dep. (Vol. I) 36:14-13, 37:10-38:17; *see
also*  "How It Works," The Open Championship Series, available at
https://openchampionshipseries.com/learn-more (accessed Feb. 2, 2023).)

[9] For example, the Chief Executive Officer of Rebel Athletic a prominent provider of cheer
apparel, stated in a sworn declaration that "upon information or belief—Rebel has maintained a
greater market share of that [All Star apparel] market than Varsity since at least 2019." (*Rebel*
ECF No. 8 at PageID 337.)  Rebel was subject to third-party discovery in this case.  Varsity's
former CFO testified that Nfinity emerged as the leader in cheer shoes.  (Ex. H, Nangia Dep.
24:16-17.)  In addition to its apparel business, Nfinity now operates cheer camps under its

noted, he likewise has conceded that he did not assess the likely effect of his suggestions on competition going forward, which would be the only potential purpose of injunctive relief in the first place.

In short, even assuming, as Mr. Aronoff does, that everything that Plaintiffs' other experts in this case say was anticompetitive is found to have been anticompetitive, the facts of the case demonstrate that no injunctive relief would be needed at all. Although Mr. Aronoff has no actual principle or methods for his analysis, any principled methodology would take these facts into account, which Mr. Aronoff clearly has not.

### F.  Several of Mr. Aronoff's Recommendations Would be Anticompetitive if Implemented

As noted above, one of Mr. Aronoff's recommendations as to competitions and camps is that Varsity could be abolished from providing discounts in the form of rebates. Prohibiting discounts would, if anything, mean higher prices, which is the opposite of what the antitrust laws are intended to promote. *See Atl. Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 340 (1990) ("Low prices benefit consumers regardless of how prices are set, and so long as they are above predatory levels, they do not threaten competition."); *Cascade Health Sols. v. PeaceHealth*, 515 F.3d 883, 896 (9th Cir. 2008) ("Price cutting is a practice the antitrust laws aim to promote.") (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 594 (1986)); *NicSand, Inc. v. 3M Co.*, 507 F.3d 442, 454 (6th Cir. 2007) (en banc) (same).

Mr. Aronoff's "recommendations" regarding Varsity's scheduling of its own events would likewise be blatantly anticompetitive. In particular, Mr. Aronoff recommends that "Varsity can determine its event schedule without reference to the schedules of other event producers. If the

---

"Nfinity Skills Academy" brand.  (*See* "Nfinity Skills Academy," NFINITY, available at https://www.nfinity.com/pages/nfinity-skills-academy (accessed Feb. 2, 2023).)

event schedules of non-Varsity event producers are released prior to Varsity's event schedule, Varsity cannot schedule a bid earning event in the same location or at the same time as any previously scheduled event."  (Ex. A, Aronoff Rep. ¶ 116.)  In addition to being vague and non-specific, and thus unhelpful for that reason, if this "recommendation" were imposed, Varsity would be *precluded from competing* with other event producers by offering rival events.  (As noted, Mr. Aronoff conceded that he did nothing to assess the potential competitive effects of his recommendations, including this one.)  Recommendations to require anticompetitive conduct such as these would be unhelpful to the trier of fact and should be excluded.

## CONCLUSION

Mr. Aronoff's "recommendations" regarding structural relief would not assist the trier of fact and is deficient for numerous other reasons, rendering them inadmissible under Rule 702. He likewise should not be permitted to offer argumentative spin on certain things that he and Plaintiffs' counsel deem to be "facts."  His testimony should be excluded in its entirety.

Dated: February 10, 2023

Respectfully submitted,

/s Matthew S. Mulqueen

George S. Cary*
Steven J. Kaiser*
Linden Bernhardt*
CLEARY GOTTLIEB STEEN &
HAMILTON LLP
2112 Pennsylvania Avenue, NW
Washington, DC 20037
Phone: (202) 974-1500
Fax: (202) 974-1999
gcary@cgsh.com
skaiser@cgsh.com
lbernhardt@cgsh.com

Jennifer Kennedy Park*
Heather Nyong'o*
CLEARY GOTTLIEB STEEN &
HAMILTON LLP
1841 Page Mill Road, Suite 250
Palo Alto, CA 94304
Phone: (650) 815-4100
Fax: (202) 974-1999
jkpark@cgsh.com
hnyongo@cgsh.com

* Admitted *pro hac vice*

Matthew S. Mulqueen (TN #28418)
Adam S. Baldridge (TN #23488)
BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ
165 Madison Avenue, Suite 2000
Memphis, TN 38103
Phone: (901) 526-2000
Fax: (901) 577-0866
mmulqueen@bakerdonelson.com
abaldridge@bakerdonelson.com

*Attorneys for Defendants Varsity Brands,
LLC, Varsity Spirit, LLC; Varsity Spirit
Fashions & Supplies, LLC; Charlesbank
Capital Partners, LLC; Bain Capital Private
Equity LP*

19

s/ Nicole Berkowitz Riccio
Grady Garrison (TN #008097)
Nicole Berkowitz Riccio (TN #35046)
James Andrew Roach (TN #37934)
Karen Lott Glover (TN #38714)
BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ
165 Madison Avenue, Suite 2000
Memphis, TN 38103
Phone: (901) 526-2000
Fax: (901) 577-0866
ggarrison@bakerdonelson.com
nriccio@bakerdonelson.com
aroach@bakerdonelson.com
kglover@bakerdonelson.com

*Attorneys for U.S. All Star Federation, Inc.
and USA Sport Cheering, d/b/a USA Cheer*

s/ Brendan P. Gaffney
Paul E. Coggins*
Brendan P. Gaffney*
LOCKE LORD LLP
2200 Ross Avenue, Suite 2800
Dallas, TX 75201
Phone: (214) 740-8000
Fax: (214) 740-8800
pcoggins@lockelord.com
bgaffney@lockelord.com

\* Admitted *pro hac vice*

Edward L. Stanton III (TN #018904)
S. Keenan Carter (TN #023386)
BUTLER SNOW LLP
6075 Poplar Avenue, Suite 500
Memphis, Tennessee 38119
Phone: (901) 680-7336
Fax: (901) 680-7201
Edward.Stanton@butlersnow.com
Keenan.Carter@butlersnow.com

*Attorneys for Jeff Webb*

20