## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
## WESTERN DIVISION

| | |
|---|---|
| **JESSICA JONES**, et al., | |
| Plaintiffs, | |
| | Case No. 2:20-cv-02892-SHL-tmp |
| v. | |
| | **JURY TRIAL DEMANDED** |
| **BAIN CAPITAL PRIVATE EQUITY**, et al., | |
| Defendants. | |

## INDIRECT PURCHASER PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR CLASS CERTIFICATION

## TABLE OF CONTENTS

Page(s)

I.    PRELIMINARY STATEMENT ...................................................................................1

II.   THE PROPOSED CLASSES ....................................................................................3

III.  STATEMENT OF FACTS ........................................................................................4

    A.   OVERVIEW OF PLAINTIFFS' ALLEGATIONS...............................................4

    B.   BACKROUND .......................................................................................4

    C.   MARKET POWER THROUGH ACQUISITIONS ...............................................6

    D.   THE VARSITY ECOSYSTEM ....................................................................7

    E.   EXCLUSIONARY CONDUCT AND ABUSE OF MARKET POWER ..............8

    F.   PLAINTIFFS .........................................................................................11

IV.   LEGAL STANDARD..............................................................................................12

V.    THE PROPOSED CLASSES SATISFY THE REQUIREMENTS OF RULE 23............13

    A.   This Action Meets the Requirements of Rule 23(a) ...............................13

        1.   The Classes are Sufficiently Numerous....................................13

        2.   Class Members Raise Common Questions of Law and Fact....................13

        3.   Plaintiffs' Claims are Typical of Claims of Class Members ....................14

        4.   Plaintiffs will Fairly and Adequately Represent the Proposed Classes.....15

    B.   Plaintiffs Satisfy the Requirements of Rule 23(b)(3) ...........................16

        1.   Common Issues Predominate Over the Class as a Whole ........................16

        2.   Common Issues of Law and Fact Predominate as to Violation, Causation, Impact, and Damages.................................................................18

        3.   A Class Action is the Superior Method to Resolve this Dispute ..............27

    C.   The Proposed Classes are Ascertainable.................................................29

    D.   Class Certification of an Injunctive Relief Class is Also Appropriate .................30

VI.   CONCLUSION.....................................................................................................30

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997) .....................................................17, 18, 27

*Amgen Inc. v. Connecticut Retirement Plans and Trust Funds*, 568 U.S. 455 (2013) ...........................................................................................................................12, 16, 17

*Bacon v. Honda of Am. Mfg., Inc.*, 370 F.3d 565 (6th Cir. 2004) ....................................................13

*Beattie v. CenturyTel., Inc.*, 511 F.3d 554 (6th Cir. 2007) .......................................................12, 25

*Bigelow v. RKO Radio Pictures*, 327 U.S. 251 (1946) ...................................................................25

*Bittinger v. Tecumseh Prods. Co.*, 123 F.3d 877 (6th Cir 1997) ...................................................13

*Bridging Communities, Inc. v. Top Flite Fin. Inc.*, 843 F.3d 1119 (6th Cir. 2016) ................16, 17

*Busby v. Bonner*, 466 F.Supp.3d 821 (W.D. Tenn. June 10, 2020) ................................................13

*Comcast Corp. v. Behrend*, 569 U.S. 27 (2013) .......................................................................24, 26

*D.D. by Next Friend B.N. v. Michigan Dept. of Health and Human Servs.*, 2022 WL 16680727 (E.D. Mich. Nov. 3, 2022) ...............................................................................30

*Dorsey v. Aviva Metals, Inc.*, 2022 WL 4536393 (N.D. Ohio Sept. 28, 2022) ............................29

*Doster v. Kendall*, 342 F.R.D. 117 (S.D. Ohio Jul. 14, 2022) ......................................................30

*Hanover Shoe, Inc. v. United Shoe Mach. Corp.*, 392 U.S. 481 (1968) .......................................21

*Hawaii v. Standard Oil Co. of Cal.*, 405 U.S. 251 (1972) ............................................................21

*Hospital Authority of Nashville v. Momenta Pharmaceuticals, Inc.* 333 F.R.D. 390 (M.D. Tenn. Sept. 20, 2019) ............................................................................................ *passim*

*Iannone v. AutoZone, Inc.*, 2022 WL 17485953 (W.D. Tenn. Dec. 7, 2022) ...............................22

*In re Am Med. Sys.*, 75 F.3d at 1082 ..............................................................................................14

*In re Broiler Chicken Antitrust Litig.*, 2022 WL 1720468 (N.D. Ill. May 27, 2022) ...................13

*In re Cardizem CD Antitrust Litig.*, 200 F.R.D. 297 (E.D. Mich. 2001) .......................................26

*In re Cathode Ray Tube (CRT) Antitrust Litig.*, 2013 WL 5391159 (N.D. Cal. 2013) ...............................................................................................................................13

*In re Delta/AirTran Baggage Fee Antitrust Litig.*, 317 F.R.D. 675 (N.D. Ga. 2016) ....................................................................................................................24

*In re Disposable Contact Lens Antitrust*, 329 F.R.D. 336 (M.D. Fla. Dec. 4, 2018) .............24, 29

*In re Domestic Air Transp. Antitrust Litig.*, 137 F.R.D. 677 (N.D. Ga. 1991) ..............................18

*In re Flat Glass Antitrust Litig.*, 191 F.R.D. 472 (W.D. Pa. Nov. 5, 1999) ..................................15

*In re Flonase Antitrust Litig.*, 284 F.R.D. 201 (E.D. Pa. 2012)....................................................13, 29

*In re Foundry Resins Antitrust Litig.*, 2007 WL 1299211 (S.D. Ohio May 2, 2007)....................13

*In re Foundry Resins Antitrust Litig.*, 242 F.R.D. .........................................................................15

*In re Lidoderm Antitrust Litig.*, No. 14-MD-02521-WHO, 2017 WL 679367 (N.D. Cal. Feb. 21, 2017)..............................................................................................................26

*In re NASDAQ Market Makers Antitrust Litig.*, 169 F.R.D. 493 (S.D.N.Y. 1996) ......................19

*In re Nexium Antitrust Litig.*, 777 F.3d 9 (1st Cir. 2015) ............................................13, 21, 26, 29

*In re Packaged Ice Antitrust Litig.*, 322 F.R.D. 276 (E.D. Mich. Sept. 19, 2017) ......13, 19, 20, 29

*In re Pharm. Indus. Average Wholesale Price Litig.*, 233 F.R.D. 229 (D. Mass. 2006) ....................................................................................................................13, 29

*In re Polyurethane Foam*, 314 F.R.D. ................................................................................... *passim*

*In re Polyurethane Foam Antitrust Litig.*, 2015 WL 4459636 (N.D. Ohio. Jul. 21, 2015) ...........................................................................................................12, 28, 29, 30

*In re Polyurethane Foam Antitrust Litig.*, 314 F.R.D. 314 F.R.D. 226, 293 (N.D. Ohio Apr. 9, 2014) ......................................................................................................13

*In re Restasis (Cyclosporine Opthalmic Emulsion) Antitrust Litig.*, 335 F.R.D. 1 (E.D.N.Y. May 5, 2020) ....................................................................................................13

*In re Scrap Metal Antitrust Litig.*, 2004 WL 7340436 (N.D. Ohio Mar. 31, 2004) .....................18

*In re Scrap Metal Antitrust Litig.*, 527 F.3d 517 (6th Cir. 2008)......................................24, 25, 26

*In re Static Random Access Memory (SRAM) Antitrust Litig.*, 264 F.R.D. 603 (N.D. Cal. Nov. 25, 2009) ...............................................................................................13

*In re Tableware Antitrust Litig.*, 241 F.R.D. 644 (N.D. Cal. 2007) ..............................................18

*In re TFT-LCD (Flat Panel) Antitrust Litig.*, 2012 WL 555090 (N.D. Cal. 2012) ......................13

INDIRECT PURCHASER PLAINTIFFS' MEMORANDUM OF LAW ISO MOTION FOR CLASS CERTIFICATION

*In re Wellbutrin XL Antitrust Litig.*, 282 F.R.D. 126 (E.D. Pa. 2011).....................................13, 29

*In re Wirebound Boxes Antitrust Litig.*, 128 F.R.D. 268 (D. Minn. Oct. 17, 1989) ......................18

*J. Truett Payne Co., Inc. v. Chrysler Motors Corp.*, 451 U.S. 557 (1981)...................................25

*Kohen v. Pac. Inv. Mgmt. Co. LLC*, 571 F.3d 672 (7th Cir. 2009).................................................21

*Messner v. Northshore Univ. Health System*, 669 F.3d 802 (7th Cir. 2012) ................................21

*Ruiz Torres v. Mercer Canyons Inc.*, 835 F.3d 1125 (9th Cir. 2016) .........................17, 18, 21, 26

*Sandusky Wellness Ctr., LLC v. ASD Specialty Healthcare, Inc.*, 863 F.3d 460 (6th Cir. 2017)...............................................................................................................12, 29

*Sprague v. Gen. Motors Corp.*, 133 F.3d 388 (6th Cir. 1998).......................................................14

*Story Parchment Co. v. Paterson Parchment Paper Co.*, 282 U.S. 555 (1931)...........................24

*Sullivan v. DB Investments, Inc.*, 667 F.3d 273 (3d Cir. 2011) (*en banc*) ...................................18

*Thomas & Thomas Rodmakers, Inc. v. Newport Adhesives & Composites, Inc.*, 209 F.R.D. 159 (C.D. Cal. 2002) ...........................................................................................19

*Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442 (2016) ..............................................................21

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) .................................................................12

*Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532 (6th Cir. 2012) ...............................................30

**Federal Statutes**

Sherman Act.............................................................................................................................19, 28

**Federal Rules**

Fed. R. Civ. P. 23 ................................................................................................................ *passim*

**Other Authorities**

Federal Trade Commission Act .....................................................................................................29

INDIRECT PURCHASER PLAINTIFFS' MEMORANDUM OF LAW ISO MOTION FOR
CLASS CERTIFICATION

**GLOSSARY**

| Term | Definition |
|---|---|
| **Plaintiffs** | "Plaintiffs" are named plaintiffs Christina Lorenzen and Jessica Jones. |
| **Defendants** | "Defendants" in this action are Varsity Brands, LLC, Varsity Spirit, LLC, Varsity Spirit Fashion & Supplies, LLC (together "Varsity"); Jeff Webb; United States All Star Federation ("USASF"); Bain Capital Private Equity, LLC ("Bain"); and, Charlesbank Capital Partners, LLC ("Charlesbank"). The term Defendants also includes any entity who may be named in any amended complaint in this action. |
| **CAC or Complaint** | "CAC" or "Complaint" refers to Indirect Purchaser Plaintiffs' Class Action Complaint for Violations of the Sherman Act and State Laws, ECF No. 1 (filed December 10, 2020). |
| **class period** | The alleged "class period" for which Plaintiffs' claims is December 10, 2016 to present. |
| **class members or proposed classes** | "class members" or "proposed classes" refers to the proposed classes as defined in the CAC, ¶¶29-32, and in Plaintiffs' Motion for Class Certification, concurrently filed herewith. For efficiency, the term "class members" and "proposed classes" is used interchangeably throughout this brief. |
| **competitive cheer** | "competitive cheer" is a distinct sport for teams associated with All Star gyms and schools. Athletes who participate in competitive cheer compete head-to-head against other competitive cheer teams in events with unique, choreographed routines that last two-and-a-half minutes. |
| **All-Star cheer or gyms** | "All-Star cheer" or "gyms" refers to the athletes who participate in competitive cheer through teams run by private gyms. |
| **School cheer or schools** | "School cheer" or "schools" refers to athletes who participate in competitive cheer through teams run by schools, including middle schools, high schools, colleges, and universities. School cheer is not the same as traditional sideline cheer, in which cheerleaders support other school sports teams, e.g., football or basketball, but largely do not compete with other school cheer teams. |
| **relevant markets** | The term "relevant markets" refers to the markets for cheer competitions, cheer camps, and cheer apparel. |
| **Saveri Decl. and Ex.** | "Saveri Decl." refers to the Declaration of Joseph R. Saveri in Support of Plaintiffs' Motion for Class Certification, filed herewith. "Ex." refers to exhibits to the Declaration of Joseph R. Saveri in Support of Plaintiffs' Motion for Class Certification, filed herewith. |

INDIRECT PURCHASER PLAINTIFFS' MEMORANDUM OF LAW ISO MOTION FOR CLASS CERTIFICATION

| Term | Definition |
|------|------------|
| **Jones Decl.** | "Jones Decl." refers to the Declaration of Jessica Jones in Support of Plaintiffs' Motion for Class Certification, filed herewith. |
| **Lorenzen Decl.** | "Lorenzen Decl." refers to the Declaration of Christina Lorenzen in Support of Plaintiffs' Motion for Class Certification, filed herewith. |
| **Aronoff Report or Aronoff Rebuttal** | "Aronoff Report" or "Aronoff Rebuttal" refer to the Expert Report of James H. Aronoff, filed herewith as Ex. 7 to the Saveri Decl. or Expert Rebuttal Report of James H. Aronoff, filed herewith as Ex. 8 to the Saveri Decl. |
| **Heeb Report or Heeb Rebuttal** | "Heeb Report" or "Heeb Rebuttal" refer to the Expert Report of Randall Heeb, filed herewith as Ex. 3 to the Saveri Decl. or Expert Rebuttal Report of Randall Heeb, filed herewith as Ex. 4 to the Saveri Decl. |
| **Maki Report or Maki Rebuttal** | "Maki Report" or "Maki Rebuttal" refer to the Expert Report of Jen Maki, filed herewith as Ex. 5 to the Saveri Decl. or Expert Rebuttal Report of Jen Maki, filed herewith as Ex. 6 to the Saveri Decl. |
| **Netz Report or Netz Rebuttal** | "Netz Report" or "Netz Rebuttal" refer to the Expert Report of Janet S. Netz, filed herewith as Ex. 1 to the Saveri Decl. or Expert Rebuttal Report of Janet S. Netz, filed herewith as Ex. 2 to the Saveri Decl. |
| **Related Actions** | The Related Actions coordinated with this action are *Fusion Elite All Stars, et al. v. Varsity Brands, LLC, et al.*, No. 2:20-CV-2600-SHL-tmp (W.D. Tenn.), *Radek, et al. v. Varsity Brands, LLC, et al.*, No. 2:20-CV-2649-SHL-tmp (W.D. Tenn.), and *American Spirit and Cheer Essentials, Inc., et al. v. Varsity Brands, LLC, et al.*, No. 2:20-CV-2782-SHL-tmp (W.D. Tenn.). |

INDIRECT PURCHASER PLAINTIFFS' MEMORANDUM OF LAW ISO MOTION FOR
CLASS CERTIFICATION

Plaintiffs, individually and on behalf of all others similarly situated, respectfully submit this Memorandum of Law in support of Indirect Purchaser Plaintiffs' Motion for Class Certification ("Motion"). This Memorandum is supported by the Declaration of Joseph R. Saveri ("Saveri Decl.") and accompanying exhibits, the reports of Plaintiffs' experts, as well as the documentary, testimonial, and economic evidence in this case.

## I.    PRELIMINARY STATEMENT

Each year, over one million kids and young adults participate in the sport of competitive cheer in the United States. Cheer athletes participate through teams run by gyms (known as All-Star gyms) and through schools,[1] and seek to compete at cheer competitions against other cheer teams, including at coveted end-of-season events. There is also a deep-rooted devotion among the parents and guardians of cheer athletes (Plaintiffs and proposed class members) to financially support their athletes' dreams of participation in competitive cheer. Unfortunately, those dreams have been increasingly shattered as prices of products within the Varsity ecosystem – cheer competitions, cheer apparel, and cheer camps – have skyrocketed across the board for all who participate. The evidence is abundantly clear that this prohibitive rise in prices is not a result of free market competition, nor can it be tied to any real cost of doing business, better quality of product, or good business fortune. Rather, as Plaintiffs allege and the record evidence shows, it is the deliberate and intentional result of Defendants' exclusionary scheme to monopolize the Varsity ecosystem and to abuse Varsity's monopoly power in the relevant markets to charge

---

[1] Plaintiffs refer to "school cheer" to encompass those who participate in competitive cheer on teams runs by middle schools, high schools, colleges, or universities and who compete at cheer competitions against other school cheer teams. Defendants incorrectly use the term "scholastic cheer," which improperly lumps together school cheer with activities that are not part of the proposed classes, including "sideline cheer," which refers to school cheer teams who support other sports teams at their school, but do not compete against other school cheer teams.

supra-competitive prices, and to reap exorbitant profits on the backs of all proposed class members.

The proposed classes are especially well-suited for class treatment under the standards of Rule 23. The classes are sufficiently numerous. Class members' claims all hinge on the same common questions regarding whether Defendants engaged in the alleged anticompetitive conduct and whether Plaintiffs and class members were harmed as a result. Plaintiffs are typical of other class members, even where their claims are not identical. Plaintiffs will fairly and adequately represent the class – they are dedicated to serving the class and have hired experienced counsel with decades of antitrust class action experience. Plaintiffs can also demonstrate that common questions predominate over any individual questions Defendants may attempt to raise. And while Plaintiffs are not required to calculate damages at the class certification stage, they have done so here, calculating actual damages to class members in the relevant markets, including both initial overcharges to gyms and schools and pass through of those overcharges to class members, demonstrating not only that there is a workable methodology to calculate damages using common proof, but that the methodology is actually workable as applied.

The need for a class action applies with special force here where class members, as everyday consumers, bear the harshest brunt of Defendants' anticompetitive conduct. The costs and expenses of independent litigation would be prohibitive to most class members, not to mention the sheer unmanageability and expense of litigating a storm of nearly identical smaller claims based on the same conduct, against the same Defendants in a multitude of forums across the United States. Therefore, a class action is the superior method for resolution of class members' claims. In sum, all elements of Rule 23 are sufficiently met and the proposed classes should be certified.

## II.     THE PROPOSED CLASSES

Plaintiffs move to certify the following indirect purchaser classes:[2]

A Nationwide Damages Class pursuant to Rule 23(b)(3) under Tennessee law defined as:

> All natural persons and entities in the United States that indirectly paid Varsity or any Varsity subsidiary or affiliate, from December 10, 2016, until the continuing Exclusionary Scheme alleged herein ends (the "Class Period") for: (a) registration fees associated with participation in Varsity Cheer Competitions; (b) Varsity Cheer Apparel; or (c) registration fees for attendance at Varsity Cheer Camps.

A State Law Damages Class pursuant to Rule 23(b)(3) defined as:

> All natural persons and entities in the United States that indirectly paid Varsity or any Varsity subsidiary or affiliate, from December 10, 2016, until the continuing Exclusionary Scheme alleged herein ends (the "Class Period") for: (a) registration fees associated with participation in Varsity Cheer Competitions; (b) Varsity Cheer Apparel; or (c) registration fees for attendance at Varsity Cheer Camps, in Arizona, Arkansas, California, Connecticut, the District of Columbia, Florida, Hawaii Idaho, Iowa, Kansas, Maine, Massachusetts, Maryland, Michigan, Minnesota, Mississippi, Missouri, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, North Dakota, Oregon, Rhode Island, South Dakota, Tennessee, Utah, Vermont, Washington, West Virginia, and Wisconsin.

An Injunctive Relief Class pursuant to Rule 23(b)(2) under federal law defined as:

> All natural persons and entities in the United States that indirectly paid Varsity or any Varsity subsidiary or affiliate, from December 10, 2016, until the continuing Exclusionary Scheme alleged herein ends (the "Class Period") for: (a) registration fees associated with participation in Varsity Cheer Competitions; (b) Varsity Cheer Apparel; or (c) registration fees for attendance at Varsity Cheer Camps.

---

[2] On August 1, 2022, the Court issued an opinion on Defendants' motion to dismiss, granting Defendants' motion as to Alabama, Alaska, Colorado, and Illinois, and Tennessee. ECF No. 333. On August 12, 2022, Plaintiffs moved for reconsideration with respect to the Tennessee state claims. ECF No. 335. Because Plaintiffs' motion for reconsideration is still pending, Plaintiffs have included claims under Tennessee law.

INDIRECT PURCHASER PLAINTIFFS' MEMORANDUM OF LAW ISO MOTION FOR CLASS CERTIFICATION

## III.   STATEMENT OF FACTS[3]

### A.   OVERVIEW OF PLAINTIFFS' ALLEGATIONS

On December 10, 2020, Plaintiffs filed their Class Action Complaint, alleging that Defendants acted in concert to raise, fix and stabilize prices associated with competitive cheer. CAC, ¶1. Plaintiffs allege that Defendants engaged in an exclusionary scheme, in which each Defendant actively participated. *Id.*, ¶¶1-76. Plaintiffs allege that Varsity, supported and funded by Defendants, acquired monopoly power in each of the relevant markets in the Varsity ecosystem, and then abused that market power through exclusionary and anticompetitive conduct that allowed Varsity to charge supra-competitive prices, and reap exorbitant profits on the backs of class members as a result. *Id.* The discovery record, developed over two years of discovery, strongly supports those claims. Proof of these claims, through substantial evidence from witnesses, contemporaneous business records and experts, present overwhelming common questions of law and fact.

### B.   BACKGROUND

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████

---

[3] Additional facts are set forth in Plaintiffs' expert reports. *See* Saveri Decl. at Exs. 1-8 (cited for each by name as "Rep." or "Reb."). Unless otherwise specified, all Exhibit References ("Ex.") are to the exhibits attached to the Saveri Declaration filed in support of Motion.

[4] *See* Ex. 66 (USASF, Mission & History, https://www.usasf.net/about (last visited Feb. 9, 2023)); *See also* Ex. 1 (Netz Rep., at 6, 20, 66 & n.6, 8, 79).

[5] *See* Ex. 1 (Netz Rep., at 6-7, 21 & n. 7-8, 80, 82); Ex. 19 (VAR00460483 at 0485); Ex. 23 (USASF_00011615) ██████████████████████████████ ███████ ; Ex. 14 (Peterson Dep., at 274:8–276:24, 281:22-282:14); Ex. 9 (Elza Dep., at 152:7–156:3).



<hr />

6 Ex. 21 (VAR00371192 at 1265-69); Ex. 22 (VAR00199104 at 9106) Ex. 1 (Netz Rep., at 19 & n.73–74).

7 *See* Ex. 67 (Charlesbank, Portfolio/Consumer, Varsity Brands, https://www.charlesbank.com/portfolio/companies/varsity-brands/ (last visited Feb. 9, 2023)).

8 *See* Ex. 62 (CB00044503 at 4517); Ex. 1 (Netz Rep., at 9-10 & n. 16, 24-25).

9 *See* Ex. 63 (CB00000188 at 0196); Ex. 64 (CB00041045); Ex. 9 (Elza Dep., at 328:4-22); Ex. 1 (Netz Rep., at 10 & n. 24).

10 *See* Ex. 65 (CB00057574 at 7574); Ex. 24 (CB00512194 at 2194).

11 *See* Ex. 15 (Janower Dep., at 83:17-20, 93:17-23, 120:10-12, 121:5-9).

12 Ex. 1 (Netz Rep., at 9).

13 *See* Ex. 1 (Netz Rep., at 9).

14 *See* Ex. 9 (Elza Dep., at 102:19-104:10); Ex. 1 (Netz Rep., at 10-11 & n. 30-31, 33).



## C.    MARKET POWER THROUGH ACQUISITIONS

15 Ex. 33 (JEFF00225986 at 5993); Ex. 9 (Elza, Dep., at 50:11-52:20; 54:19-25; 56:2-57:17); Ex. 1 (Netz Rep., at 11 & n. 32-35).

16 *See* Ex. 1 (Netz Rep., at 92–104); Ex. 2 (Netz Reb., at 85–89 & Ex. RR-7).

17 Ex. 36 (Cota Ex. 21 at 7) (emphasis added).

18 *See* Ex. 1 (Netz Rep. At 5261); Ex. 30 (VAR00101100 at 110).

19 *See* Ex. 1 (Netz Rep. at 52); Ex. 20 (VAR00346980 at 6985); Ex. 13 (Cota Dep., at 53:15–21); Ex. 31 (VAR00345222 at 5236).

20 *See* Ex. 1 (Netz Rep., at 61); Ex. 46 (VAR00341580 at 1581).

21 *See* Ex. 1 (Netz Rep., at 58 & n.233); Ex. 48 (BAIN00000352 at 0397).

███████████████████████████████████████████

███████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

█████████████████████████████████████████████

**D.    THE VARSITY ECOSYSTEM**

███████████████████████████████████████

███████████████████████████████████████████████

██████████████████████████████████████████████

███████████████████████████████████████████████

█████████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████████

---

[22] *See* Ex. 1 (Netz Rep., at 47–48 & n.188, 102–103 & n.418–426); Ex. 29 (VAR00255571 at 5580); Ex. 37 (VAR00265695 at 5695).

[23] *See* Ex. 1 (Netz Rep., at 45–47 & n.183, 103–104); Ex. 32 (VAR00081770 at 1775).

[24] *See* Ex. 1 (Netz Rep., at 36 & n.184).

[25] Ex. 9 (Elza Dep., at 285:14–287:10); Ex. 1 (Netz Rep., at 47 & n.185); Ex. 16 (LeTard Dep., at 263:1–264:7).

[26] *See* Ex. 1 (Netz Rep., at 62-65).

[27] *See, e.g.*, Ex. 25 (VAR00008463 at 8543); Ex. 58 (VAR00584154 at 4154).

[28] *See* Ex. 1 (Netz Rep., at 62-65); Ex. 31 (VAR00345222 at -5224).

[29] *See* Ex. 25 (VAR00008463 at 8477).

[30] Ex. 2 (Netz Reb., at 61-66); Ex. 34 (JEFF00047202 at 7207); Ex. 35 (VAR00424538 at 4544).

**E.   EXCLUSIONARY CONDUCT AND ABUSE OF MARKET POWER**

---

[31] *See* Ex. 1 (Netz Rep., at 65–89); Ex. 21 (VAR00371192 at 1265).

[32] *Id.* at 65-89; Ex. 28 (VAR00250013 at 0022) Ex. 39 (VAR00244139 at 4139).

[33] Ex. 1 (Netz Rep., at 69-85).

INDIRECT PURCHASER PLAINTIFFS' MEMORANDUM OF LAW ISO MOTION FOR CLASS CERTIFICATION

[Content redacted]

---

[34] *Id.* at 69-78.

[35] Ex. 1 (Netz Rep., at 73-78); Ex. 47 (VAR00365110) Ex. 12 (Parrish Dep., at 126:20-127:17).

[36] Ex.1 (Netz Rep., at 87–89).

[37] *Id.* at 65–89.

[38] *See, e.g.*, Ex. 55 (USASF_00017144).

[39] *See* Ex. 56 (CB00025235 at 5399) (emphasis added).

[40] *See* Ex. 13 (Cota Dep., at 223:11-17): Ex. 26 (VAR00160801); Ex. 27 (VAR00160726); Ex. 1 (Netz Rep., at 89–92); Ex. 2 (Netz Reb., at 84–85).

[41] *See* Ex. 26 (VAR00160801 at 0803); Ex. 59 (Squad Credentialing FAQ, https://www.varsity.com/uca/wp-content/uploads/2020/07/21_uca_squadcredfaq.pdf (last visited Jan. 17, 2023)).

---

[42] Ex. 1 (Netz Rep., at 92).

[43] *See* Ex. 27 (VAR00160726 at 0729)                                    .

[44] *See* Ex. 1 (Netz Rep., at 105).

[45] *See* Ex. 49 (VAR00020213); Ex. 50 (VAR00097496 at 7512-7513); *see also* Ex. 9 (Elza Dep., at 56:2-57:12).

[46] *See* Ex. 1 (Netz Rep., at 57 & n.229); Ex. 52 (USASF_00081243); Ex. 54 (VAR00182613).

[47] *See* Ex. 1 (Netz Rep., at 57-58 & n.230).

[48] *See supra* note 29, Ex. 1 (Netz Rep., at 104-113).

[49] *See* Ex. 17 (Heeb Dep., at 314:16–316:7).



## F.      PLAINTIFFS

Plaintiff Jessica Jones is a parent of two cheer athletes who participated in competitive cheer on All Star teams between 2016-2020. Ms. Jones is a resident of the State of Kansas. Plaintiff Christina Lorenzen is the parent of a cheer athlete who participated in competitive cheer on a team run through her school between 2019-2020. Ms. Lorenzen is a resident of the State of Colorado. Both Plaintiffs indirectly paid Varsity for products and services alleged by Plaintiffs' to have been impacted by Defendants' anticompetitive conduct and exclusionary scheme.[54] Both Plaintiffs are committed to serving as representatives.[55]

---

[50] *See* Ex. 1 (Netz Rep., at 48-50); Ex. 38 (VAR00075248); Ex. 40 (VAR00197598 at 7600).
[51] *See* Ex. 1 (Netz Rep., at 48-50); Ex. 41 (FUSIONELI000000236 at 0241).
[52] *See* Ex. 1 (Netz Rep., at 49 & n.191); Ex. 42 (VAR00309744 at 9756); Ex. 43 (VAR00233932 at 3932); Ex. 44 (VAR00418061 at 8063). *See* Ex. 45 (VAR00176406 at 6415).
[53] Ex. 4 (Heeb Reb., ¶¶14, 20-21).
[54] Jones Decl., ¶¶5-6; Lorenzen Decl., ¶¶5-8.
[55] Jones Decl., ¶¶7-15; Lorenzen Decl., ¶¶9-17.

# IV.    LEGAL STANDARD

A party seeking class certification must show that the requirements of Federal Rule of Civil Procedure 23 are met. Class certification is appropriate if the court finds, after conducting a "rigorous analysis," that the requirements of Rule 23(a) and one of the requirements of Rule 23(b) have been met. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011); *Hospital Authority of Nashville v. Momenta Pharmaceuticals, Inc.* 333 F.R.D. 390, 402 (M.D. Tenn. Sept. 20, 2019) (citing *Bridging Communities, Inc. v. Top Flite Fin. Inc.*, 843 F.3d 1119, 1124 (6th Cir. 2016)). Rule 23(a) requires that plaintiffs show: (1) numerosity; (2) commonality; (3) typicality, and (4) adequacy of representation. *Id.* Fed. R. Civ. P. 23(a)(1)-(4). With respect to Rule 23(b)(3) damages classes, Plaintiffs must also show that common questions predominate over questions affecting only individual class members, and that the class action is superior for fairly and efficiently adjudicating the controversy. *Beattie v. CenturyTel., Inc.*, 511 F.3d 554, 560 (6th Cir. 2007). There is also an implied requirement that putative class members can be readily identified, i.e., ascertainable, based on the class definition. *See, Sandusky Wellness Ctr., LLC v. ASD Specialty Healthcare, Inc.*, 863 F.3d 460, 466 (6th Cir. 2017)); *In re Polyurethane Foam Antitrust Litig.*, 2015 WL 4459636, *5 (N.D. Ohio. Jul. 21, 2015).

The Sixth Circuit has repeatedly recognized that courts have broad discretion in deciding whether to certify a class. *Momenta*, 333 F.R.D. at 402. "Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Amgen Inc. v. Connecticut Retirement Plans and Trust Funds*, 568 U.S. 455, 466 (2013). Courts routinely certify antitrust cases like this

one.[56]

## V.   THE PROPOSED CLASSES SATISFY THE REQUIREMENTS OF RULE 23

### A.   This Action Meets the Requirements of Rule 23(a)

#### 1.   The Classes are Sufficiently Numerous

The class must be so numerous that joinder is impractical. Fed. R. Civ. P. 23(a)(1). The numerosity requirement is fulfilled when the number of class members exceeds forty. *Busby v. Bonner*, 466 F.Supp.3d 821, 831 (W.D. Tenn. June 10, 2020); *see also Bacon v. Honda of Am. Mfg., Inc.*, 370 F.3d 565, 570 (6th Cir. 2004)) (more than several hundred class members easily satisfies the requirements of Rule 23(a)(1)). As of 2016, Varsity estimated that there were over one million cheer athletes in the United States (150,000-160,000 competing on gym teams and 900,000 athletes competing on school cheer teams). *See* Ex. 61 (VAR00402942); Ex. 60 (VAR00078752 at 8768). Thus, Rule 23(a)(1) is easily met. *See Bittinger v. Tecumseh Prods. Co.*, 123 F.3d 877, 884 n.1 (6th Cir 1997) ("to reach this conclusion is to state the obvious.")

#### 2.   Class Members Raise Common Questions of Law and Fact

Under Rule 23(a)(2), "[o]ne or more members of a class may sue or be sued as representative parties on behalf of all members only if . . .  there are questions of law or fact

---

[56] *See, e.g., Momenta*, 333 F.R.D. at 414-415; *In re Polyurethane Foam Antitrust Litig.*, 314 F.R.D. 314 F.R.D. 226, 293 (N.D. Ohio Apr. 9, 2014); *In re Packaged Ice Antitrust Litig.*, 322 F.R.D. 276, 298 (E.D. Mich. Sept. 19, 2017); *In re Foundry Resins Antitrust Litig.*, 2007 WL 1299211, at *1 (S.D. Ohio May 2, 2007); *see also, e.g., In re Broiler Chicken Antitrust Litig.*, 2022 WL 1720468, *21 (N.D. Ill. May 27, 2022); *In re Restasis (Cyclosporine Opthalmic Emulsion) Antitrust Litig.*, 335 F.R.D. 1 (E.D.N.Y. May 5, 2020); *In re Nexium Antitrust Litig.*, 777 F.3d 9, 14 (1st Cir. 2015); *In re Cathode Ray Tube (CRT) Antitrust Litig.*, 2013 WL 5391159, at *5 (N.D. Cal. 2013); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 2012 WL 555090, at *1 (N.D. Cal. 2012); *In re Flonase Antitrust Litig.*, 284 F.R.D. 201, 216 (E.D. Pa. 2012); *In re Wellbutrin XL Antitrust Litig.*, 282 F.R.D. 126, 137 (E.D. Pa. 2011); *In re Static Random Access Memory (SRAM) Antitrust Litig.*, 264 F.R.D. 603, 603 (N.D. Cal. Nov. 25, 2009); *In re Pharm. Indus. Average Wholesale Price Litig.*, 233 F.R.D. 229, 230-231 (D. Mass. 2006).

common to the class." Fed. R. Civ. P. 23(a)(2). In antitrust cases, the commonality requirement is generally easily met because of the nature of the claims and the nature of proof required. *See, e.g., Momenta*, 333 F.R.D. at 404. "Price-fixing conspiracy cases by their very nature deal with common legal and factual questions about the existence, scope, and extent of the alleged conspiracy." *Id.* (quoting *Foundry Resins Antitrust Litig.*, 242 F.R.D. 393, 404-05 (S.D. Ohio May 2, 2007)). It is settled that Plaintiffs' claims need not be identical, because even just "one common question is sufficient." *See id.* (citing *Powers v. Hamilton County Pub. Defender Com'n*, 501 F.3d 619 (6th Cir. 2007)); *see also Polyurethane Foam*, 314 F.R.D. at 237 ("Plaintiffs need only identify one common question of law or fact for purposes of 'commonality.'"). Here, there are many common questions, including (1) the nature and extent of Defendants' anticompetitive scheme; (2) the nature and extent of Defendants' exclusionary practices; (3) the scheme's duration; (4) the participation of each Defendant; (4) the anticompetitive effect of such conduct; (5) antitrust injury; and (6) damages.

### 3.    Plaintiffs' Claims are Typical of Claims of Class Members

"[A] plaintiff's claim is typical if it arises from the same practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory." *Momenta*, 333 F.R.D. at 404 (internal citations omitted). Claims are typical if the representative plaintiffs' claims arise from the same event or practice, or course of conduct that gives rise to the claims of other class members. *In re Am Med. Sys.*, 75 F.3d at 1082; *Hospital Authority*, 333 F.R.D. at 404. *see Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 399 (6th Cir. 1998) ("The premise of the typicality requirement is simply stated: as goes the claim of the named plaintiff, so go the claims of the class.").

Courts liberally construe the typicality requirement in antitrust cases and have repeatedly

held that factual differences between named plaintiffs and absent class members, even if pronounced, do not make plaintiffs atypical. *See, e.g., Foundry Resins*, 242 F.R.D. at 406 (citing *In re Lorazepam & Clorazepate Antitrust Litig.*, 202 F.R.D. 12, 28 (D.D.C. 2001)) ("[I]f the named class members' claims are based on the same legal theory or arise from the same course of conduct, factual differences in date, size, manner, or conditions of purchase, the type of purchaser, or other such concerns do not make named plaintiffs atypical."); *In re Polyurethane Foam*, 314 F.R.D. at 237 ("[C]laims in antitrust price-fixing cases generally satisfy Rule 23(a)(3)'s typicality requirement, even if members purchase different quantities and pay different prices."); *In re Foundry Resins Antitrust Litig.*, 242 F.R.D. at 405 ("In the antitrust context, typicality is established when the named plaintiffs and all class members alleged the same antitrust violations by defendants."). Individual issues with respect to damages in antitrust cases do not prevent a finding of typicality. *See, e.g., In re Flat Glass Antitrust Litig.*, 191 F.R.D. 472, 480 (W.D. Pa. Nov. 5, 1999) ("[T]he various products purchased[,] and the different amount of damage sustained by individual plaintiffs do not negate a finding of typicality, provided the cause of those injuries arises from a common wrong.").

Here, Plaintiffs and class members assert claims under federal and state law, arising from Defendants' anticompetitive conduct and exclusionary scheme. They share allegations of the same course of conduct. *See Hospital Authority*, 333 F.R.D. at 404 (indirect purchaser claims are typical because they "rely on the same course of conduct and their claims are cognizable under the various state antitrust, consumer protection, and unjust enrichment laws."). This is true regardless of which products the Plaintiffs purchased or how much each Plaintiff was damaged. *Id.* The typicality requirement is satisfied.

### 4.    Plaintiffs will Fairly and Adequately Represent the Proposed Classes

Rule 23(a)(4) requires that the representative parties must "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "The two criteria for determining whether class representatives are adequate are '(1) the representatives must have common interests with unnamed members of the class, and (2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel.'" *Momenta*, 333 F.R.D. at 404-05. Here, named Plaintiffs are closely aligned with absent class members. Each share the same interest in obtaining redress and justice. They are each seeking to be made whole, having suffered the same injury at the hands of Defendants. They have each paid more than they would have paid for Varsity products and services than they would have paid absent Defendants' anticompetitive conduct. They have no conflicts and are committed to vigorously prosecuting this case and pursuing the interests of the class through qualified class counsel. *See* Ex. 10 (Lorenzen Dep., at 219-220); Ex. 11 (Jones Dep., at 264-265); *see also* ECF No. 380 (Motion to Appoint Lead Class Counsel).

## B.    Plaintiffs Satisfy the Requirements of Rule 23(b)(3)

The proposed class satisfies Rule 23(b)(3), which requires that: (1) common questions predominate over individual questions; and (2) a class action is superior to other methods of adjudication. Plaintiffs establish predominance in two independently sufficient ways: common issues predominate in the case as a whole; and common issues predominate as to each component of Plaintiffs' claims. Either one is sufficient to certify the proposed class.

### 1.    Common Issues Predominate Over the Class as a Whole

The Supreme Court and the Sixth Circuit have held that Rule 23(b)(3) is satisfied if common issues predominate in the case *as a whole*. *See Amgen*, 568 U.S. at 469; *Bridging Cmtys., Inc. v. Top Flite Fin. Inc.,* 843 F.3d 1119, 1124 (6th Cir. 2016) (courts are to assess "the

legal or factual questions that qualify each class member's case as a genuine controversy," and assess whether those questions are "subject to generalized proof, and thus applicable to the class as a whole") (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997)). "A plaintiff class need not prove that each element of a claim can be established by classwide proof." *Whirlpool*, 722 F.3d at 858-61. And common questions must only "*predominate* over any questions affecting only individual [class] members." *Id.* (emphasis and alterations in original); *Momenta*, 333 F.R.D. at 405 (citing *Beattie*, 511 F.3d at 560). Not every element needs to be predominantly common. *See, e.g., Amgen*, 568 U.S. at 459 ("[Rule 23(b)(3)] does *not* require a plaintiff . . . to prove 'each element of her claim is susceptible to class-wide proof.' What the rule does require is that common questions '*predominate* over any questions affecting only individual class members.'"). Accordingly, courts have certified class actions even where some elements of the claim may give rise to individualized issues, such as proof of impact or injury. *See, e.g., Ruiz Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1137 (9th Cir. 2016) (certifying class because common issues predominated in the case as a whole, where fact of injury was common to each of class members' claims).

Just as in many antitrust cases, this litigation will focus overwhelmingly on common issues, including Defendants' conduct, its illegality, and its impact on the class. *See Amchem*, 521 U.S. at 625; *see generally, supra*, III.A-F. As it has to date, the litigation and trial in this case will focus overwhelmingly on common issues, including the anticompetitive scheme, whether it foreclosed competition and was anticompetitive, whether it generally increased prices, whether injunctive relief is appropriate, and aggregate damages. The litigation does not focus on whether any class members are uninjured. *See Torres*, 835 F.3d at 1140-41 (noting a "class defendant's interest was 'only in the total amount of damages for which it will be liable,' not 'the identities

INDIRECT PURCHASER PLAINTIFFS' MEMORANDUM OF LAW ISO MOTION FOR CLASS CERTIFICATION

of those receiving damage awards'").[57]

### 2. Common Issues of Law and Fact Predominate as to Violation, Causation, Impact, and Damages

Plaintiffs also establish predominance by showing that they will attempt to prove each component of their case—violation; causation, impact, and damages—using common evidence. As discussed above, the major factual and legal issues necessary to establish an antitrust violation are common to class members. As the evidence will show, the direct and foreseeable results of Defendants' conduct—higher prices, reduced competition, reduced output and other anticompetitive harm—was market wide, not specifically and uniquely targeted to any individuals. Here, as in many other antitrust cases, proof of an antitrust violation focuses on a defendant's conduct and is, therefore, entirely common. *Amchem*, 521 U.S. at 625; *Sullivan v. DB Investments, Inc.*, 667 F.3d 273, 336 (3d Cir. 2011) (*en banc*).

Further, proof of damages in the aggregate to to the class—as Drs. Heeb and Maki both provide—is common. Courts have held common issues predominate in antitrust cases if plaintiffs can establish *common impact*, that is, that they will rely on common evidence in attempting to show widespread harm to a class. *Torres*, 835 F.3d at 1138. These elements are

---

[57] Common issues predominate as a whole even where there are pronounced differences between class members. *See, e.g., In re Scrap Metal Antitrust Litig.*, 2004 WL 7340436, at *9 (N.D. Ohio Mar. 31, 2004) (citing *In re Vitamins Antitrust Litig.*, 209 F.R.D. 251, 264 (D.D.C. Feb. 25, 2002)) ("Courts have certified classes in cases where the industry, pricing structure, products, and transactions between defendants and their customers are complex, varied, fragmented, and diverse."); *In re Domestic Air Transp. Antitrust Litig.*, 137 F.R.D. 677, 699 (N.D. Ga. 1991) (class certified where named plaintiffs' claims stemmed from same legal theory as class claims notwithstanding fact that class purchased tickets at different prices according to different terms); *In re Wirebound Boxes Antitrust Litig.*, 128 F.R.D. 268, 272 (D. Minn. Oct. 17, 1989) (finding common impact even though prices varied and were individually negotiated); *In re Tableware Antitrust Litig.*, 241 F.R.D. 644 (N.D. Cal. 2007) (certifying a diverse class of direct purchasers who bought more than 200,000 different items of "tableware" and "giftware," including "candlesticks, picture frames, vases, bowls, cake stands and utensils").

common to the class and can be established through class-wide proof. *See Momenta* 333 F.R.D. at 406 (citing *Merenda v. VHS of Mich., Inc.*, 296 F.R.D. 528, 548 (E.D. Mich. 2013)); *see also In re Packaged Ice Antitrust Litig.*, 322 F.R.D. 276 (E.D. Mich. 2017) (citing *In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 535 (6th Cir. 2008)) (finding that allegations of price fixing and market allocation will not vary among class members).[58] By any measure, common questions predominate.

Each of plaintiffs' claims will generally involve proof of the following issues, as this Court held in its Order denying Defendants' Motion to Dismiss. *See* ECF No. 333. Each issue will be established through overwhelmingly common evidence:

1. **Exclusionary Agreements and other Conduct.** Plaintiffs allege among other things, that Defendants' Family Plan and Network Agreement were exclusionary and in restraint of trade. ECF No. 333 at 10-14. The question of whether these agreements were exclusionary is a question common to the class, not unique to individual plaintiffs. *See, e.g.*, Ex. 1 (Netz Rep., at 104-113).

2. **Proof of Conspiracy**. Plaintiffs' Sherman Act claims allege that Varsity engaged in a conspiracy with USASF to restrain trade and to monopolize. *See* ECF No. 333 at 15-19. Whether Varsity engaged in a conspiracy with USASF is not unique to any Plaintiffs or class members. It is common to the class and will be established through classwide evidence. *See, e.g.*, *id.*, at 65-89.

3. **Market Definition.** If each class member were required to prove their claim individually at a separate trial, each would need to define and establish the same relevant product markets, and the same relevant geographic markets. *See id.* at 21-34. Each would rely on the same evidence to establish the alleged product and geographic markets, including the same expert economist testimony. The analysis of what constitutes a relevant product and geographic market is common to the class.

4. **Market Power.** Varsity's acquisition and maintenance of market power will also be

---

[58] *See also Thomas & Thomas Rodmakers, Inc. v. Newport Adhesives & Composites, Inc.*, 209 F.R.D. 159, 167 (C.D. Cal. 2002) ("In price-fixing cases, 'courts have repeatedly have held that the existence of the conspiracy is the predominant issue and warrants certification even where significant individual issues are present.'"); *In re NASDAQ Market Makers Antitrust Litig.*, 169 F.R.D. 493, 518 (S.D.N.Y. 1996) ("existence of a conspiracy is the predominant issue in price fixing cases, warranting certification of the class even where significant individual issues are present ….").

proved by class wide evidence. *See id.* 20. Plaintiffs rely on extensive documentary evidence and deposition testimony, all common to the class. For example, evidence on Varsity's acquisitions of rivals, and proof of Varsity's market share percentages. Relying on this common evidence, Plaintiffs' experts show as a matter of economics, how Varsity's acquisitions led to and maintained market power. *See, e.g.*, Ex. 3 (Heeb Rep., ¶¶107-193, 195-250); Ex. 1 (Netz Rep., at 41-62, 62-98).

5. **Exclusionary Conduct and Abuse of Market Power.** Plaintiffs will also show through common evidence that Defendants obtained, maintained, and abused Varsity's monopoly power through willful anticompetitive conduct. ECF No. 333 at 34. Plaintiffs will present common proof of Defendants' exclusionary and anticompetitive conduct, and the ways in which Defendants abused Varsity's market power in the relevant markets. For example, common evidence will show how, among other things, Varsity and USASF conspired to exclude rivals and increase Varsity's monopoly power, how Varsity tied cheer camps to cheer competitions, how Varsity pursued an anticompetitive scheme of mergers and acquisitions to eliminate its rivals and monopolize the competitions market, and how Varsity employs exclusionary rebate agreements that foreclose competition. *See, e.g., id.* (Netz Rep., at 62-113). None of this proof is individualized. It is common to the class.

6. **Intent to Monopolize**. Class wide evidence also shows Varsity's intent to monopolize. *See* ECF No. 333 at 38. That too is a common, class-wide question. The same documents that support Plaintiffs' allegations would be used by each of the thousands of plaintiffs if they were to bring their own individual suits.

All these elements are common to the class and can be established through classwide proof. *See Momenta*, 333 F.R.D. at 406 (citing *Merenda v. VHS of Mich., Inc.*, 296 F.R.D. 528, 548 (E.D. Mich. 2013)); *see also Packaged Ice*, 322 F.R.D. at 286 (finding that allegations of price fixing and market allocation will not vary among class members).

### a.     Common Proof of Antitrust Injury and Impact

Because Plaintiffs and class members are indirect purchasers, all must ultimately prove that: (1) the alleged exclusionary scheme and anticompetitive conduct by Defendants resulted in higher prices or lower output; and (2) the overcharges imposed on gyms and schools were ultimately paid by class members, passed on to them by the direct purchasers. *See* ECF No. 333

at 20; *Momenta*, 333 F.R.D. at 409; *see also Polyurethane Foam*, 314 F.R.D. at 276.[59] Evidence

establishes "common impact" if it is common to class members and shows that the conduct

caused injury (or fact of damage) that is widespread across class members. *Torres*, 835 F.3d at

1136, 1138 (impact is common unless the class is defined so broadly to include class members

who could not have been harmed by the defendant's allegedly unlawful conduct); *Kohen v. Pac.*

*Inv. Mgmt. Co. LLC*, 571 F.3d 672, 677 (7th Cir. 2009) (class may contain uninjured members);

*In re Nexium Antitrust Litig.*, 777 F.3d 9, 22 (1st Cir. 2015) (same); *Messner v. Northshore Univ.*

*Health System*, 669 F.3d 802, 818–19 (7th Cir. 2012) (same).

Plaintiffs follow a two-step process that is routinely applied in proving impact and

damages on behalf of indirect purchasers. First, Plaintiffs will present evidence showing All Star

gyms and schools paid an overcharge in the first instance. *See Momenta*, 333 F.R.D. at 409;

*Polyurethane Foam*, 314 F.R.D. at 276. Next, Plaintiffs will prove that these higher prices were

passed on to the parents and families that constitute the class. *Polyurethane Foam*, 314 F.R.D. at

276 (citing *In re TFT-LCD (Flat Panel) Antitrust Litig*, 2012 WL 555090, at *1 (N.D. Cal.

2012)). As the Supreme Court has explained, plaintiffs only need to supply common evidence

that (1) if believed supports their claims; and (2) is admissible. *Tyson Foods*, *Inc. v. Bouaphakeo*,

577 U.S. 442, 459 (2016) ("The District Court could have denied class certification" on the

ground that it agreed with Defendants' experts, "only if it concluded that *no reasonable juror*

---

[59] Notably, the success of Defendants exclusionary scheme in raising prices is already proof positive of antitrust impact. Proving antitrust impact—or the *fact* of damage—does not require estimation of the amount of damage; it is satisfied by evidence tending to show even a penny of injury. *Hanover Shoe, Inc. v. United Shoe Mach. Corp.*, 392 U.S. 481, 488-89 (1968). "Antitrust injury occurs the moment the purchaser incurs an overcharge, whether or not that injury is later offset." *Nexium Antitrust Litig.*, 777 F.3d at 27 (citing *Adams v. Mills*, 286 U.S. 397, 407 (1932)). "If a class member is overcharged, there is an injury, even if that class member suffers no damages." *Hawaii v. Standard Oil Co. of Cal.*, 405 U.S. 251, 262 n.14 (1972).

could have believed that" plaintiffs' experts were right on the merits.). Here, the record is replete with common evidence of impact.

Two categories of generalized proof show injury is susceptible to proof on a classwide basis: (1) documentary and testimonial (deposition) evidence, and (2) expert testimony. Dr. Heeb concludes that there is common evidence which shows Defendants anticompetitive conduct that inflated price paid by all direct purchasers. Ex. 3 (Heeb Rep.). Through their experts, Plaintiffs demonstrate by common proof that gyms and schools generally incurred illegal overcharges, and that those illegal overcharges were passed through to class members. Ex. 3 (Heeb Rep., at 98-117); Ex. 4 (Heeb Reb., at 183-228); Ex. 5 (Maki Rep., at 45-46); Ex. 6 (Maki Reb., at 7-10). First, this includes evidence of supracompetitive prices paid by gyms and other direct purchasers. Second, relying on class wide common economic and econometric evidence Heeb and Maki show that at least some portion, (in this case all), of the overcharge was passed on to Plaintiffs. Plaintiffs' common evidence will come in the form of documents, deposition testimony, and expert analysis showing that All-Star gyms and schools passed on overcharges to the indirect purchaser Plaintiffs. *See, e.g.*, Ex. 5 (Maki Rep., at 45–46); Ex. 6 (Maki Reb., at 7–10). Predominance is established at both steps.

Even though individualized proof may be required to show the amount of overcharges passed on by specific gyms and schools to individual class members, that will not defeat the conclusion that impact may be proved on a classwide basis. *See Momenta*, 333 F.R.D. at 409; *see also Iannone v. AutoZone, Inc.*, 2022 WL 17485953, at *7 (W.D. Tenn. Dec. 7, 2022) (quoting *Scrap Metal*, 527 F.3d at 535) ("Here, 'the fact of damages [is] a question common to the class even if the amount of damages sustained by each individual class member varie[s].'"); *id.* (quoting *Sterling v. Velsicol Chem. Corp.*, 855 F.2d 1188, 1197 (6th Cir. 1988)) ("[T]he mere

INDIRECT PURCHASER PLAINTIFFS' MEMORANDUM OF LAW ISO MOTION FOR CLASS CERTIFICATION

fact that questions peculiar to each individual member of the class remain after the common questions of the defendant's liability have been resolved does not dictate the conclusion that a class action is impermissible.").

Thus, even if Varsity points to specific instances in which overcharges were not passed on, "[t]hat fact alone cannot defeat an otherwise proper offer of generalized evidence of overcharge passthrough." *Polyurethane Foam*, 314 F.R.D. at 286. That some direct purchasers may have passed on some but not all the overcharges instead "goes to the weight of evidence offered to prove if passthrough in fact occurred, and the amount of that passthrough." *Id.* Indeed, if the potential for individualized passthrough rates defeated class certification, no indirect classes would ever be certified. *See id.* at 244 ("Purchasers need only produce a method of proof capable of showing 'some damage flowing from the unlawful conspiracy; inquiry beyond this minimum point goes only to the amount and *not the fact* of damage.'").

Drs. Heeb and Maki then investigated the question of the extent to which the overcharge was passed on to the indirect purchasers constituting the class. Dr. Maki has calculated a 100% pass through rate with respect to each.[60] Ex. 5 (Maki Rep., ¶¶119–20); Ex. 6 (Maki Reb., ¶¶12–20). Dr, Maki applies this overcharge to the transaction data supplied by Varsity for each year of the class period. By multiplying the prices paid by the overcharge, Dr. Maki calculates damages for each product (competitions, camps, and apparel) and then totals them for the aggregate damage sum. *See* Ex. 5 (Maki Rep., at 37-46); Ex. 6 (Maki Reb., at 12-18). This methodology has been relied on repeatedly in antitrust class actions. *See, e.g, Polyurethane Foam*, 314 F.R.D.

---

[60] In fact, Dr. Maki finds that the passthrough likely exceeds 100% because gyms, like other middlemen, will mark prices up, and charge their customers more, in the event of increased prices. Ex. 5 (Maki Rep., ¶120 & n.263). Dr. Maki's conclusion of 100% therefore understates the actual amount of the overcharge passed on by direct purchasers.

INDIRECT PURCHASER PLAINTIFFS' MEMORANDUM OF LAW ISO MOTION FOR CLASS CERTIFICATION

at 286-88 (approving methodology of multiplying amount purchased by overcharge).

Varsity's rebate payments to gyms does not undercut this conclusion. The question whether any rebates or discounts given to the direct purchasers were passed on to indirect purchasers does not defeat predominance of common issues. Courts routinely reject this argument. *See, e.g., In re Disposable Contact Lens Antitrust*, 329 F.R.D. 336, 458 (M.D. Fla. Dec. 4, 2018) (rejecting defendants' attempt to differentiate class based on rebates, discounts, and insurance that may have been applied to class members); *In re Delta/AirTran Baggage Fee Antitrust Litig.*, 317 F.R.D. 675, 687 (N.D. Ga. 2016) ("Whether any class members were reimbursed for any part of a baggage fee—i.e., whether they were able to pass on some portion of the alleged antitrust overcharge—is legally irrelevant and therefore will not lead to a situation in which individual questions of antitrust injury will dominate over common ones.").

### b. Plaintiffs' Experts Calculate Aggregate Damages with Common Proof

Drs. Heeb and Maki show how common evidence can be used to construct a classwide damages model. Ex. 3 (Heeb Rep., ¶¶317–326); Ex. 5 (Maki Rep., ¶¶104-118); Ex. 6 (Maki Reb., ¶¶25-44). They show for each category of product the overcharges caused by Defendants' anticompetitive conduct, and how much total damages were incurred by the class. *Id.*

For purposes of class certification, Plaintiffs must show damages are "susceptible of measurement across the entire class." *Comcast Corp. v. Behrend*, 569 U.S. 27, 35 (2013). The calculation need not be exact. *Id.* In an antitrust action, that "classwide" figure can be an aggregated damages sum. *Scrap Metal*, 527 F.3d at 534. Plaintiffs may rely on an approximation of damages, "as a matter of just and reasonable inference." *Story Parchment Co. v. Paterson Parchment Paper Co.*, 282 U.S. 555, 563 (1931) (cited with approval in *Comcast*, 569 U.S. at 35). Defendants are not entitled to benefit from difficulties in proving what might have

INDIRECT PURCHASER PLAINTIFFS' MEMORANDUM OF LAW ISO MOTION FOR
CLASS CERTIFICATION

happened, but for their conduct. *See Bigelow v. RKO Radio Pictures*, 327 U.S. 251, 264 (1946) (the "approximate" damages formulation embodies the principle that a too-demanding damages standard would act as an "inducement to make wrongdoing so effective and complete in every case as to preclude any recovery, by rendering the measure of damages uncertain."); *see also J. Truett Payne Co., Inc. v. Chrysler Motors Corp.*, 451 U.S. 557, 566, (1981); *Scrap Metal*, 527 F.3d at 535 ("[W]e have never required a precise mathematical calculation of damages [for class certification]." Further the presence of "some individualized damage issues" will not preclude class treatment if common issues otherwise predominate. *Beattie*, 511 F.3d at 564.

Plaintiffs are not required to prove the element of antitrust impact at the class certification stage. Rather, instead they must show that the essential elements of their claims are "capable of proof at trial through evidence that is common to the class rather than individual to its members." *Momenta*, 333 F.R.D. at 407 (quoting *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 311-312 (3rd Cir. Dec. 30, 2008)); *Polyurethane Foam*, 314 F.R.D. at 244 (same). However, Plaintiffs do calculate damages here. *See* Ex. 5 (Maki Rep., at 37-46); Ex. 6 (Maki Reb., at 12-18). Dr. Maki bases her damages model on Dr. Heeb's impact model and the record evidence upon which it is based, in addition to Dr. Heeb's calculation of overcharges.

Dr. Heeb calculated overcharge using a statistical methodology that compared Varsity's prices to the prices of competitive benchmarks (i.e., prices chosen by competitors operating in the same relevant antitrust markets as Varsity), while controlling for the relevant factors between the Varsity products and the competitors' products. This approach in the cheer competitions market, for example, controlled for nominal price changes and other event characteristics to identify overcharge as the real price premium that customers paid for Varsity events relative to those of its competitors, where the price premium is solely due to Varsity's ownership of the

INDIRECT PURCHASER PLAINTIFFS' MEMORANDUM OF LAW ISO MOTION FOR CLASS CERTIFICATION

event and not due to any other economic factors (which were controlled for). Dr. Heeb calculated, using common data and economic evidence, an overcharge of 27% with respect to cheer competitions, an overcharge of 27% with respect to cheer camps, and an estimated overcharge of 11% with respect to cheer apparel. Ex. 4 (Heeb Reb., ¶¶14, 20–21). Dr. Maki also calculates interest as provided by law. Ex. 5 (Maki Rep., ¶117).

Courts routinely hold that the amount of damages a defendant must pay is a common issue if, as here, plaintiffs demonstrate that they can use a common method or formula to calculate class damages on an aggregate basis. *See In re Cardizem CD Antitrust Litig.*, 200 F.R.D. 297, 324 (E.D. Mich. 2001) ("As observed by a leading commentator on class actions: 'aggregate computation of class monetary relief is lawful and proper.'") (quotation omitted); *In re Nexium*, 777 F.3d at 19 (approving aggregate measure of classwide damages*); In re Lidoderm Antitrust Litig.*, No. 14-MD-02521-WHO, 2017 WL 679367, at *15 (N.D. Cal. Feb. 21, 2017) (approving use of aggregate damages) (*citing Meijer, Inc. v. Abbott Labs*, 2008 WL 4065839, at *7 (N.D. Cal. Aug. 27, 2008)); *see Comcast*, 569 U.S. at 35 (confirming that damages "[c]alculations need not be exact"). It is also well established that any need to perform individual damages calculations will not defeat class certification. *See Torres*, 835 F.3d at 1136 ("the presence of individualized damages calculations. . . does not defeat predominance.").

Differences in damages that class members sustained also do not defeat predominance. *See, e.g., Scrap Metal*, 527 F.3d at 535-36 (court upheld lower court certification and finding of predominance because "fact of damages" was a question common to the class even if the amount of damages sustained by each individual class member varied); *id.* (although damages calculation in antitrust action may involve some individualized issues, "it has been commonly recognized that the necessity for calculation of damages on an individual basis should not

preclude class determination when the common issues which determine liability predominate").

### 3.    A Class Action is the Superior Method to Resolve this Dispute

Certification under Rule 23(b)(3) also requires the Court to assess whether a class action

is "superior to other available methods for fairly and efficiently adjudicating the controversy."

Fed. R. Civ. P. 23(b)(3). Courts generally consider four factors regarding superiority:

> (A) The class members' interests in individually controlling the prosecution or
> defense of separate actions; (B) the extent and nature of any litigation
> concerning the controversy already begun by or against class members; (C)
> the desirability or undesirability of concentrating the litigation of the claims in
> the particular forum; and (D) the likely difficulties in managing a class action.

*Momenta*, 333 F.R.D. at 414.

Here, it would not be feasible or economical for class members to litigate the same case

individually, nor are there other individual lawsuits by class members already begun. *See, e.g.,*

*id.* ("The relatively small amount of individual damages and the similarity of claims give class

members little interest in individually controlling separate actions."); *see also Amchem*, 521 U.S.

at 617 ("The policy at the very core of the class action mechanism is to overcome the problem

that small recoveries do not provide the incentive for any individual to bring a solo action

prosecuting his or her rights."). Concentration of claims in the Western District of Tennessee,

where Varsity is headquartered and the Related Actions are filed, will make best use of the

parties' resources. *Momenta*, 333 F.R.D. at 414 (finding the third superiority factor met where

"concentration of these claims in this Court is desirable, as it will streamline the resolution of the

claims and conserve judicial and litigation resources."). Finally, the benefits of class action

litigation far outweigh any difficulties. For the overwhelming majority of class members,

recovery is only possible in the context of a class proceeding: no one would file an antitrust suit

and seek recovery of the overcharges they incurred in making purchases in the Relevant markets

INDIRECT PURCHASER PLAINTIFFS' MEMORANDUM OF LAW ISO MOTION FOR
CLASS CERTIFICATION

on their own. *See Polyurethane Foam*, 314 F.R.D. at 291–92.

A class action is the superior method here. Class members, everyday consumers, are most impacted by Defendants' anticompetitive conduct and, without a class action, would likely have no remedy at all. Prosecution of class members' claims is a multi-million dollar undertaking against wealthy defendants represented by expensive law firms. In other words, it would be economically irrational for class members to bring individual claims against Defendants for the same exact alleged conduct, scattered around different forums in the country. *See In re Polyurethane Foam*, 2015 WL 4459636, at *4 ("What would be unmanageable is the institution of countless individual lawsuits with the same facts and legal issues.").

Nor do the allegations brought under numerous state laws defeat the superiority of a class action. When common questions of law and fact otherwise predominate, as they do here, courts rarely deny certification simply because the class includes purchasers from many states and asserts claims under the laws of those states. As the court explained in *Polyurethane Foam*, "A national class action under state laws with similar standards is superior to the other option: dividing up this monster case, certifying thirty-plus separate class actions and forcing the same . . . plaintiffs, defendants, expert and fact witnesses and multiple courts to try this case over thirty times in states that have substantially similar standards. A national class action will save substantial judicial and party resources." 314 F.R.D. at 292 (quoting *In re Pharm. Indus. Average Wholesale Price Litig.,* 252 F.R.D. 83, 107 (D.Mass.2008)). That plaintiffs are proceeding under state laws does not render the class unmanageable. By their Nationwide Damage Class, Plaintiffs assert claims under Tennessee antitrust and unjust enrichment laws. ECF Nos. 1, 333. And by their state law damage claims, Plaintiffs bring claims under state antitrust or consumer protection law. *Id.* Numerous courts have found the state laws consistent with the Sherman Act and in

INDIRECT PURCHASER PLAINTIFFS' MEMORANDUM OF LAW ISO MOTION FOR CLASS CERTIFICATION

common with one another. *See Polyurethane Foam*, 314 F.R.D. at 292. And the state consumer

protection laws track the Federal Trade Commission Act. *Id*. As numerous courts hold, claims

under antitrust laws of the indirect purchaser states do not render a class action unmanageable.[61]

## C.  The Proposed Classes are Ascertainable

Ascertainability is an "implied requirement that the putative class members can be readily

identified based on the class definition." *See, e.g., Dorsey v. Aviva Metals, Inc.*, 2022 WL

4536393 (N.D. Ohio Sept. 28, 2022) (quoting *Sandusky*, 863 F.3d at 466). In order to meet Rule

23(b)(3)'s implied ascertainability requirement, a "class definition must be sufficiently definite

so that it is administratively feasible for the court to determine whether a particular individual is

a member of the proposed class." *Sandusky Wellness Center, LLC v. ASD Specialty Healthcare,*

*Inc.*, 863 F.3d 460, 471 (quoting *Young v. Nationwide Mut. Ins. Co.,* 693 F.3d 532, 536 (6th Cir.

2012)). The Sixth Circuit requires only that "objective criteria exist for identifying class

---

[61] *See, e.g., Polyurethane Foam*, 2015 WL 4459636, at *5 (finding that common questions of law and fact predominated where there were differences in state laws); *Packaged Ice*, 322 F.R.D. at 287 ("Nothing in Rule 23 commands that everyone in a class must allege precisely identical or 'uniform' causes of action and statutory variations do not defeat predominance."); *Nexium*, 777 F.3d at 14 (affirming certification of nationwide class of indirect purchasers pursuing claims "under the antitrust and consumer protection laws of 24 states and the District of Columbia"); *Flonase*, 284 F.R.D. at 216 (certifying class of indirect purchasers and noting "[a]lthough Indirect Purchasers assert [four different state law claims of monopolization], unfair and deceptive trade practices, and unjust enrichment, proof of the essential elements of these claims will be common across the class and focused on [defendant's] behavior, not that of the individual class members"); *In re Wellbutrin XL Antitrust Litig.*, 282 F.R.D. 126, 137 (E.D. Pa. 2011) (certifying an indirect purchaser class with claims "under the law of six different states"); *Pharm. Indus.*, 233 F.R.D. at 230–231 (certifying four subclasses of end-payors, where each subclass brought claims against a different defendant for violation of consumer protection laws of 41 states); *Disposable Contact Lens*, 329 F.R.D. at 412 (predominance met and class certified regardless of state where class members reside because all would rely on the same evidence at trial to prove the single overwhelming issue of whether defendants conspired to eliminate competition in the market).

members" and certification does not demand "100% accuracy" in identifying class membership. *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d at 539. Here, the proposed classes are clearly defined to include those persons who purchase the specified products indirectly from Varsity during the class period. *See* Section II, above. Nothing more is required at the class certification stage. *Polyurethane Foam,* 2015 WL 4459636, at 235.

**D.    Class Certification of an Injunctive Relief Class is Also Appropriate**

Certification of an injunctive relief class under Rule 23(b)(2) is more straightforward because plaintiffs do not need to prove damages for an injunction relief claim. Certification is appropriate where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2); *D.D. by Next Friend B.N. v. Michigan Dept. of Health and Human Servs.*, 2022 WL 16680727 (E.D. Mich. Nov. 3, 2022) (granting certification of class seeking to enjoin defendant's conduct); *Doster v. Kendall*, 342 F.R.D. 117, 128 (S.D. Ohio Jul. 14, 2022) (finding class certification appropriate where single injunction would provide class with the relief sought). Plaintiffs' claims for injunctive relief requires proof of the same common questions, as discussed above. Defendants' conduct is ongoing. Plaintiffs' expert has recommended changes to Varsity's operational model to address the anticompetitive conduct. *See* Ex. 7 (Aronoff Rep., ¶¶94-126). Certification of an injunctive relief class under Rule 23(b)(2) is appropriate.

**VI.    CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that the Court certify the proposed Classes and appoint the named Plaintiffs as class representatives.

Dated: February 10, 2023     Respectfully submitted,

By: /s/ Joseph R. Saveri
Joseph R. Saveri*
Steven N. Williams*
Ronnie Seidel Spiegel*+
David Seidel*
Kevin Rayhill*
Elissa A. Buchanan*
JOSEPH SAVERI LAW FIRM, LLP
601 California Street, Suite 1000
San Francisco, California 94108
Telephone: (415) 500-6800
Facsimile:  (415) 395-9940
     jsaveri@saverilawfirm.com
     swilliams@saverilawfirm.com
     rspiegel@saverilawfirm.com
     krayhill@saverilawfirm.com
     dseidel@saverilawfirm.com
     ebuchanan@saverilawfirm.com


Van Turner (TN Bar No. 22603)
TURNER FEILD, PLLC
2650 Thousand Oaks Blvd., Suite 2325
Memphis, Tennessee 38118
Telephone: (901) 290-6610
Facsimile: (901) 290-6611
Email: vturner@turnerfeildlaw.com

Richard M. Paul III*
Ashlea Schwarz*
PAUL LLP
601 Walnut, Suite 300
Kansas City, Missouri 64106
Telephone: (816) 984-8100
rick@paulllp.com
ashlea@paulllp.com

Jason S. Hartley*
HARTLEY LLP
101 West Broadway, Suite 820
San Diego, CA 92101
Telephone: (619) 400-5822
Email: hartley@hartleyllp.com

Daniel E. Gustafson*
Daniel C. Hedlund*
Daniel J. Nordin*
GUSTAFSON GLUEK PLLC
Canadian Pacific Plaza
120 South Sixth Street, Suite 2600
Minneapolis, MN 55402
Telephone: (612) 333-8844
Facsimile: (612) 339-6622
dgustafson@gustafsongluek.com
dhedlund@gustafsongluek.com
dnordin@gustafsongluek.com

*Attorneys in the Jones Action for Individual and
Representative Plaintiffs*