# Exhibit 9

# (Excerpted)

## FILED UNDER SEAL

1

```
1              IN THE UNITED STATES DISTRICT COURT
            FOR THE WESTERN DISTRICT OF TENNESSEE
2
     FUSION ELITE ALL STARS,      )
3    et al.,                      )  Case No.
                   Plaintiffs,    )  2:20-cv-02600-SHL-cgc
4           vs.                   )
                                  )
5    VARSITY BRANDS, LLC, et al., )
                                  )
6           Defendants.    )
     ----------------------------X
7    JONES, et al.,               )
                                  )  Case No.
8                   Plaintiffs,   )  2:20-cv-02892-SHL-cgc
            vs.                   )
9                                 )
     BAIN CAPITAL PRIVATE         )
10   EQUITY, et al.,              )
                                  )
11          Defendants.    )
     ----------------------------X
12   AMERICAN SPIRIT AND CHEER    )
     ESSENTIALS, INC., et al.,    )  Case No.
13                       )  2:20-cv-02782-SHL-cgc
                   Plaintiffs,    )
14          vs.                   )
                                  )
15   VARSITY BRANDS, LLC, et al., )
                                  )
16          Defendants.    )
     ----------------------------X
17

18           VIDEOTAPED ORAL DEPOSITION OF

19                BRIAN TODD ELZA

20

21                  Held Remotely

22           Tuesday, November 16, 2021
                   9:07 a.m. (CST)
23

24   Stenographically remotely reported by:
     Mayleen Ahmed, RMR, CRR, CRC, CCR/CSR
25   Job No.: 819263
```

50

1     approximately $2.5 billion for the Varsity

2     companies; is that right?

3          A.   Yes.

4          Q.   Who from Bain did you interact with in

5     advance of the acquisition?

6          A.   I don't recall the names.  I apologize.

7          Q.   Do you know whether anyone from Varsity

8     receives a salary or cash payments from Bain?

9               MR. KAISER:  Objection.

10         A.   I don't know.

11         Q.   In your role as an executive at Varsity,

12    did you interact with Bain personnel after Bain

13    acquired Varsity?

14         A.   They may have been around the office.

15    But, no, that was at higher level.

16         Q.   The Bain personnel, to your knowledge,

17    interacted with executives of Varsity above your

18    head; is that right?

19              MR. KAISER:  Objection.

20         A.   Yes.

21         Q.   To whom -- how did you know that Bain

22    personnel interacted with executives at Varsity

23    above your level?

24              MR. KAISER:  Objection.

25         A.   Just that they would go into board

Case 2:20-cv-02892-SHL-tmp    Document 389-10    Filed 02/10/23    Page 4 of 70
PageID 11470
FUSION ELITE ALL STARS v
VARSITY BRANDS

Brian Elza
November 16, 2021

51

1    meetings, the president and CFO typically and the

2    director of strategy would go.  That was about it.

3        Q.    Do you know the nature of Bain's

4    involvement, if any, in managing or directing

5    Varsity's businesses?

6            MR. KAISER:  Objection.

7        A.    Private equity company.  We know what --

8    we know what they do.

9        Q.    What do they do?

10           MR. KAISER:  Objection.

11       A.    Buy companies to increase the value and

12   sell it.

13       Q.    What, if anything, to your knowledge,

14   did Bain personnel -- personnel do at Varsity to

15   attempt to increase the value of Varsity?

16           MR. KAISER:  Objection.

17       Q.    You may answer.

18       A.    Supported us during acquisitions.  It's

19   a financial partner.

20       Q.    What do you mean by that?

21       A.    During acquisitions, our strategy was we

22   put together on paper what we wanted to go --

23   companies we were looking at, work with folks to

24   get -- prepare that, and that got presented to Bain,

25   and they ultimately approved those transactions.

                                                                        52

1        Q.    So when -- after 2018 when Bain had

2    acquired Varsity, when you were involved or Varsity

3    personnel were involved in attempting to acquire,

4    for example, competitor All Star cheer event

5    companies, you would present those potential

6    acquisitions to Bain personnel before the

7    acquisition; is that right?

8            MR. KAISER:  Objection.

9        A.    They were -- oh.

10       Q.    Go ahead.  You can answer.

11       A.    They were -- they were ultimately

12   presented to Bain for final buy-off, yes.

13       Q.    And before the acquisition could go

14   through, it was your understanding that Bain needed

15   to approve those acquisitions; is that right?

16           MR. KAISER:  Objection.

17       A.    That's --

18       Q.    I'm sorry?  Is that right?

19       A.    Yes.  As well as the Dallas Group, the

20   head of Varsity Brands.

21       Q.    And it's your understanding -- and what

22   was your involvement, in -- if any, in presenting

23   potential acquisitions to the Bain executives or

24   Bain personnel?

25           MR. KAISER:  Objection.

54

1  have to go -- eventually sell it to the next group

2  up.  I'm assuming they would have to sell it to the

3  next group up prior to getting final approvals.

4      Q.   But it was your understanding --

5          MR. KAISER:  You said -- you said

6  "assuming."  I just didn't hear the word.  You said

7  assuming all this.  You're assuming this happened?

8          THE WITNESS:  No.  I'm positive that's

9  how it happened.

10  BY MR. CRAMER:

11      Q.   And why are you positive that's how it

12  happen -- that would happen?

13          You've seen emails that went from

14  executives of Varsity to Bain personnel, correct?

15          MR. KAISER:  Objection.

16      Q.   Isn't that right?

17          MR. KAISER:  Objection.

18      A.   I don't recall.

19      Q.   You've seen presentations, slide decks

20  that you knew were going to be presented to Bain

21  personnel, right?

22          MR. KAISER:  Objection.

23      A.   Yes.

24      Q.   Yes?

25      A.   Yes.  Absolutely.

Case 2:20-cv-02892-SHL-tmp    Document 389-10    Filed 02/10/23    Page 7 of 70
PageID 11473

FUSION ELITE ALL STARS v
VARSITY BRANDS

Brian Elza
November 16, 2021

56

1    A.   Yes, it did.

2        Q.   And did any advice or input, strategic

3    or otherwise, from Bain personnel, was any of that

4    used in changing, amending, or adapting the Varsity

5    Family Plan over time?

6            MR. KAISER:  Objection.

7    A.   Yes.

8        Q.   Could you explain what you mean by that?

9    What -- how was -- how was Bain's strategic advice

10   potentially used to amend or adapt the Varsity

11   Family Plan over time?

12           MR. KAISER:  Objection.

13   A.    It was a very rich plan, and it was

14   created for all the right reasons, I will say that.

15   But, of course, over time, we realized that we had

16   to find a way to eventually adapt that plan.  So it

17   was a strategy to eventually try to eliminate at

18   least the cash portion of the Varsity Family Plan.

19       Q.   And Bain advice was included in

20   decisions made with respect to the Varsity Family

21   Plan over time is what you're saying?

22           MR. KAISER:  Objection.

23   A.   Yes.

24       Q.   What kind of advice did you get from

25   Bain relating to the Family Plan?

57

1          A.    Repeat that question one more time?

2          Q.    What kind of strategic or other advice

3     did you get from Bain personnel relating to changes

4     to the Family Plan overtime?

5          A.    The advice we got from all levels was

6     that we needed to make adjustments to keep the

7     dollars flowing into Varsity.

8                For example, rebate money that's paid

9     out in cash dollars, wouldn't it make more sense to

10    provide products in return for that, or discounted

11    products to the customers, to keep that money inside

12    our wheelhouse.

13         Q.    And some of that advice, you understood,

14    came from higher-ups at Varsity and some came from

15    Bain personnel; is that right?

16               MR. KAISER:  Objection.

17         A.    Yes.

18         Q.    All right.  You left Varsity in

19    July 2020; is that right?

20         A.    Yes.

21         Q.    And at some point recently, you founded

22    a company called Liberty Spirit; is that right?

23         A.    Yes.  On October the 1st or 2nd, we

24    launched a new competition, cheerleading competition

25    company.

Case 2:20-cv-02892-SHL-tmp    Document 389-10    Filed 02/10/23    Page 9 of 70
PageID 11475

FUSION ELITE ALL STARS v
VARSITY BRANDS

Brian Elza
November 16, 2021

102

1    the companies, that were part of the 42, protection

2    in those territories.

3        Q.    What do you mean by "protection in those

4    territories"?

5        A.    So if you had an event in Atlanta,

6    Georgia, January 14th and 15th, no one could have

7    another Worlds bid event in that market for two

8    weeks on either side.  So it protected that city by

9    a month.

10        Q.    It protected the event producer's event

11    in that city by a month; is that fair?

12        A.    That is correct.

13        Q.    All right.  We'll come back to that

14    particular issue.

15            I'd like to introduce as Ella Exhibit 7,

16    tab 354 in your binder.

17            (Exhibit 7 marked for identification.)

18    BY MR. CRAMER:

19        Q.    Elza 7 is a cover email with a Bates

20    number VAR00304733.  And then there's a slide deck

21    entitled "Bain & Company, Varsity Brands growth

22    assessment: Spirit," February 8, 2018 [sic].

23            And that bears the Bates range

24    VAR00304734 through -778.  This is now Elza 7.

25            Have you seen this document before?

103

1        A.    Give me a second to look through it.

2              (Witness reviewing document.)

3        Q.    And I'll note for the record the cover

4    email is from Mr. Sadlow dated February 12, 2018 to

5    Brian Carroll, Tres LeTard, Mr. Elza, and Nicole

6    Lauchaire, CC to Bill Seely.

7        A.    Yes, I recall this.

8        Q.    Okay.  Did -- this cover email,

9    addressed to you and others from Mr. Sad through

10   refers to a meeting, it says:

11             "In tomorrow's VLT, Bain is going to

12        walk us through their findings (attached)."

13             Do you see that?

14       A.    Yes.

15       Q.    So did you attend a meeting in which

16   Bain personnel walked you through findings that were

17   presented in a slide deck?

18       A.    Yes.  I think it was a Zoom call or some

19   sort of a video call 'cause I do not recall sitting

20   at the table with them.

21       Q.    Okay.  So sometime in February of 2018,

22   you participated in a meeting with Bain personnel.

23             Do you remember who from Bain was at the

24   meeting?

25       A.    I do not.  I don't remember.  I don't

Case 2:20-cv-02892-SHL-tmp    Document 389-10    Filed 02/10/23    Page 11 of 70
PageID 11477
FUSION ELITE ALL STARS v    Brian Elza
VARSITY BRANDS    November 16, 2021

104

1    recall names at this point.

2         Q.    Do you know where Bain got the

3    information that it utilized in the slide deck

4    that's attached to this email and part of Elza

5    Exhibit 7?

6         A.    I know they did a lot of due diligence

7    prior to acquiring our company, and they hired

8    companies to dig in and try to figure out all they

9    could.  And I know they worked with the directors of

10    strategy to try to come up with these numbers.  But

11    that's the extent of what I know.

12         Q.    Okay.  Do you recall participating and

13    providing information, you and Mr. LeTard, to Bain

14    before they acquired the company, answering

15    questions for Bain personnel, for example?

16         A.    Yes.

17         Q.    Okay.

18         A.    At least to Mr. Sadlow.  He really was

19    kind of the voice of the different divisions that

20    would help put these together.  So he would have

21    came to us.  We would have talked to him about it,

22    and that's how it would have gone.

23         Q.    What position did Mr. Sadlow have in

24    2018?

25         A.    VP of strategy, if I'm not mistaken.

152

1      A.    Yes.

2      Q.    And that was in or about 2004; is that

3   right?

4      A.    Early 2000s.  I was not -- I was

5   actually a gym owner and a coach at that point.  But

6   that sounds about right.

7      Q.    Okay.  Is it fair to say that until

8   recently, USASF employees worked at Varsity's

9   headquarters in Tennessee?

10     A.    That is correct.

11     Q.    And that USASF's office was also

12  Varsity's office for many years; is that right?

13     A.    They were located on the second floor of

14  the Varsity offices.

15     Q.    And when did USASF move outside of

16  Varsity's offices?

17     A.    Right before I moved there, I believe,

18  which would have been 20- --

19     Q.    2012?

20     A.    No.  I didn't move to Memphis until 2015

21  or '16.  So I think it was probably somewhere

22  between 2012 and 2015, but I was not around at the

23  time to know that, when they moved.

24     Q.    So from its founding in the early 2000s

25  through about 2015, USASF was housed inside the

FUSION ELITE ALL STARS v
VARSITY BRANDS

Brian Elza
November 16, 2021

153

1    Varsity office space; is that right?

2         A.    That is correct.

3         Q.    And USASF's office is currently a few

4    miles away from Varsity's headquarters in Memphis;

5    is that right?

6         A.    Yes, that's correct.

7         Q.    Is it true that Varsity -- or do you

8    know whether Varsity submitted the original

9    trademark application for the marks known as U.S.

10   All Star Federation and USASF?

11        MR. KAISER:  Objection.

12        A.    I do not know the answer to that.

13        Q.    Do you know whether USASF employees from

14   time to time have used Varsity email addresses or

15   had Varsity email addresses?

16        MR. KAISER:  Objection.

17        A.    I don't know the answer to that either.

18        Q.    Do you know whether any USASF employees

19   or people who were employed by USASF were also

20   employed by Varsity at the same time?

21        A.    Yes.

22        Q.    Who was that?

23        A.    Jim Chadwick and Steve Peterson.

24        Q.    And what position did Jim Chadwick have?

25        A.    He was the president of the USASF.

154

1      Q.    And at what period was he being paid by

2   Varsity as well as USASF?

3      A.    I don't really know the answer to that.

4      Q.    How do you know that Jim Chadwick was

5   being paid by Varsity at the same time he was

6   employed by USASF?

7         MR. KAISER:  Objection.

8      A.    Well, it was common knowledge within the

9   Varsity, within the Varsity folks, that he was, you

10  know, part of our team.

11     Q.    He was part of your team.

12         And what about Steve Peterson, was he

13  also part of your team?

14         MR. KAISER:  Objection.

15     A.    Yes.

16     Q.    And at what point was Mr. Peterson, if

17  you know, employed -- well, what position did

18  Mr. Peterson have at USASF?

19     A.    Vice president.

20     Q.    And was he also part of Varsity's team

21  at some point?

22         MR. KAISER:  Objection.

23     A.    It's my understanding, yes.

24     Q.    So at the same time he was vice

25  president of USASF, he was -- the Varsity people,

Case 2:20-cv-02892-SHL-tmp    Document 389-10    Filed 02/10/23    Page 15 of 70
FUSION ELITE ALL STARS v                 PageID 11481                         Brian Elza
VARSITY BRANDS                                                           November 16, 2021

155

1    including yourself, considered Mr. Peterson to be on

2    Varsity's team; is that right?

3              MR. KAISER:  Objection.

4         A.   Yes.

5         Q.   Do you know whether -- are there other

6    employees of USASF, other than Mr. Chadwick and

7    Mr. Peterson?

8         A.   Yes.

9         Q.   Who are the other employees that you

10   know of, of USASF or that have been employees of

11   USASF?

12             MR. KAISER:  Objection.

13        A.   Amy Clark, Andre Carter.  Oh, jeez.  Ali

14   Stangle, Mo Duckworth.  That's all I can remember

15   right now.

16        Q.   Were any of those individuals that you

17   just identified also compensated by Varsity?

18             MR. KAISER:  Objection.

19        A.   Not to my knowledge.

20        Q.   So, to your knowledge, Varsity

21   compensated the president and vice president of

22   USASF but maybe not some of its other employees; is

23   that right?

24             MR. KAISER:  Objection.

25        A.   That's my un- --

156

1    Q.   Go ahead.

2    A.   That's my understanding.  My

3    understanding, yes.

4    Q.   Do you know whether Varsity has stopped

5    paying Mr. Chadwick and Mr. Peterson?

6    A.   That is my understanding, that that is

7    no longer.

8    Q.   Do you know when Mr. Chad- -- Varsity

9    stopped compensating Chadwick and Peterson?

10    A.   I do not.

11    Q.   Do you know how much money Varsity was

12    paying Chadwick or Peterson?

13    A.   No.

14        MR. KAISER:  Objection.

15    Q.   Do you know whether -- strike that.

16        You were on USASF's board, right, for

17    about seven years?

18    A.   Yes.

19    Q.   And thereabout -- and there are 13

20    voting members of USASF's board; is that right?

21    A.   I don't know the exact number.  That

22    sounds close to the right number, though.

23    Q.   Since the JAM Brands acquisition,

24    Varsity has controlled more than half of the voting

25    member seats on USASF's board; is that right?

Case 2:20-cv-02892-SHL-tmp    Document 389-10    Filed 02/10/23    Page 17 of 70
PageID 11483

FUSION ELITE ALL STARS v
VARSITY BRANDS

Brian Elza
November 16, 2021

285

1    running too many events in the same regions at the

2    same time; is that right?

3        A.    That's correct.

4        Q.    And so as a result of the JAM Brand

5    acquisition, you at Varsity decided to cancel

6    certain Varsity events or JAM Brand events; is that

7    right?

8        A.    Yes, that is correct.

9        Q.    And so as a result of the acquisition of

10   JAM Brand, at least in certain regions, there were

11   fewer events for gyms and participants to attend; is

12   that right?

13       A.    Yes, that would be correct.

14       Q.    And then No. 2 says, "Reduce escalating

15   production capabilities."

16           What does that mean?

17       A.    I mentioned this earlier, but we were --

18   we had started spending way too much money and

19   overproducing these events, creating more of a rock

20   star feeling -- more lights, more bells, more

21   fireworks -- that it was a -- it was an opportunity

22   to reduce that.  We were overdoing it.

23       Q.    And the purchase of JAM Brands means

24   that you were taking out a competitor that might

25   have caused this escalation of production

Case 2:20-cv-02892-SHL-tmp    Document 389-10    Filed 02/10/23    Page 18 of 70
FUSION ELITE ALL STARS v                PageID 11484                         Brian Elza
VARSITY BRANDS                                                         November 16, 2021

286

1    capabilities; is that right?

2          MR. KAISER:  Objection.

3          A.    We were all -- we were all doing it.  We

4    were just trying to one-up the guy before us.

5          Q.    You were one-upping your competitors,

6    but if you take out your largest competitor, then

7    you don't have as much incentive to one-up your

8    competitors; is that fair?

9          MR. KAISER:  Objection.

10         A.    We learned we could be successful

11   without all the bells and whistles, is really what

12   we figured out.

13         Q.    And that's especially true because you

14   purchased your largest competitor; isn't that fair?

15         MR. KAISER:  Objection.

16         A.    We -- we would take a look at all of our

17   acquisitions to see if there were opportunities

18   where we could make some changes that would, you

19   know, help with the profitability of the events.

20         Q.    Let me just understand this.

21              So one way to compete with JAM Brands

22   events is to have more bells and whistles at the

23   events to try to attract athletes and gyms, right?

24         MR. KAISER:  Objection.

25         A.    Yes, that's correct.

287

1      Q.    And another way to compete with JAM

2    Brands events is to just purchase JAM Brands, right?

3           MR. KAISER:  Objection.

4      A.    In a sense, yes.

5      Q.    Right.  So you can purchase JAM Brands

6    events, and then you don't have to escalate the

7    bells and whistles that you would potentially have

8    to do if you had a big competitor in the marketplace

9    escalating up against you; is that fair?

10     A.    Yes, that's fair.

11     Q.    Okay.  And the bottom chart includes the

12   acquisitions of All Star event companies from 2014

13   to 2018; is that fair?

14     A.    Yes, that's correct.

15     Q.    Did you help create that chart?

16     A.    The -- they were all -- that chart was

17   dissected probably from all of our post-acquisition

18   summaries that we would have had a part in.  But

19   specifically, John Sadlow would have created the

20   slide and presented it to us to make sure we agreed

21   with it.

22     Q.    Okay.  And at the bottom of the page in

23   all of these pages, it says "Jefferies."

24          Do you know what "Jefferies" is

25   referring to?

328

1    yeah, I think they were both similar in the way

2    those mergers and acqui- -- or acquisitions were

3    handled.

4         Q.    Okay.  So to your mind, was there any

5    differences in how acquisitions and mergers were

6    handled under Charlesbank versus what you previously

7    testified for Bain?

8              MR. KAISER:  Objection.

9         A.    You had to be a lot more buttoned up

10   with Bain, and they -- it was a much longer process.

11   That's why I said Charlesbank was great to work

12   with.  They were -- they were a little bit easier to

13   work with.  Let's put it that way.

14        Q.    And for acquisitions, mergers under

15   Charlesbank, did you understand that they still had

16   to ultimately approve those acquisitions?

17             MR. KAISER:  Objection.

18        A.    That's -- that's always been my

19   understanding.  I guess I never got it written down.

20   But, yes, there was presentations involved prior to

21   any acquisitions that had to go all the way to

22   the -- to the ownership group.

23             MR. NORDIN:  Okay.  Those are all the

24   questions that I have for now.  Thank you, Mr. Elza.

25             And as counsel for the Fusion Elite

Case 2:20-cv-02892-SHL-tmp   Document 389-10   Filed 02/10/23   Page 21 of 70
PageID 11487
FUSION ELITE ALL STARS v
VARSITY BRANDS
Brian Elza
November 16, 2021

363

1          REPORTER'S CERTIFICATE

2          I, MAYLEEN AHMED, the undersigned, do

3    hereby certify:

4          That the witness, BRIAN TODD ELZA,

5    before examination was remotely duly sworn; that the

6    foregoing deposition was taken remotely

7    stenographically by me on November 16, 2021, and

8    thereafter was transcribed by me; that the

9    deposition is a full, true, and complete transcript

10   of the testimony; and that, in accordance with

11   FRCP 30(e)(1), before completion of the proceedings,

12   review of the transcript was not requested and

13   signature was not reserved by the witness.

14          I further certify that I am not a

15   relative or employee of any attorney or counsel or

16   any party to this action, and that I am not

17   financially interested in said action or the outcome

18   thereof.

19          In WITNESS WHEREOF, I have hereunto set

20   my hand this 17th day of November 2021.

21

22   _____
          /s/  MAYLEEN AHMED, RMR, CRR, CRC
23        Washington CCR No. 3402 - Exp 12/29/21
          Oregon CSR No: 17-0447 - Exp 12/31/23
24        Texas CSR No:  9428 - Exp 7/31/23
          California CSR No: 14380 - Exp 12/31/21
25        New York Notary Public

# Exhibit 10

# (Excerpted)

## FILED UNDER SEAL

Case 2:20-cv-02892-SHL-tmp    Document 389-10    Filed 02/10/23    Page 23 of 70
PageID 11489
JONES vs
VARSITY BRANDS, LLC
Christina Lorenzen
January 20, 2022

2

1          REMOTE APPEARANCES

2

3    Attorneys for the Jones Plaintiffs:

4        JOSEPH SAVERI LAW FIRM, LLP

5        BY: RONNIE SEIDEL SPIEGEL, ESQ.

6            KATHARINE MALONE, ESQ.

7        601 California Street - Suite 1000

8        San Francisco, California 94108

9        415.500.6800

10        rspiegel@saverilawfirm.com

11        kmalone@saverilawfirm.com

12

13

14    Attorneys for Defendants Varsity Brands, LLC;

15    Varsity Spirit, LLC; Varsity Spirit Fashion &

16    Supplies, LLC; Charlesbank Capital Partners, LLC;

17    and Bain Capital Private Equity, LP:

18        CLEARY GOTTLIEB STEEN & HAMILTON LLP

19        BY: STEVEN J. KAISER, ESQ.

20            LINDEN BERNHADT, ESQ.

21        2112 Pennsylvania Avenue NW

22        Washington, D.C. 20037

23        202.974.1500

24        skaiser@cgsh.com

25        lbernhardt@cgsh.com

Case 2:20-cv-02892-SHL-tmp    Document 389-10    Filed 02/10/23    Page 24 of 70
PageID 11490
JONES vs
VARSITY BRANDS, LLC
Christina Lorenzen
January 20, 2022

219

1    from being a good class representative?

2         MR. KAISER:  Objection.

3    Q.    You can answer.

4    A.    No.

5    Q.    Are you seeking any special treatment in

6    serving as a class representative?

7    A.    No.  I expect to be treated just like

8    all the other class members.

9    Q.    And do you plan to uphold all of your

10   duties as a class representative?

11   A.    Yes.

12   Q.    And what are those duties?

13   A.    My duties as a class representative are

14   to obtain counsel to participate in the litigation

15   so, so I've signed documents that required my

16   signature; I participated in producing all my

17   documents to my attorneys.

18        I'm here today participating in the

19   discovery phase.  I will testify, if that was

20   required, if it makes it to trial.

21        And then there's the class

22   notifications.  So if the class is certified, I work

23   with my attorneys to make sure that's handled

24   properly.  And then, if there's any sort of a

25   settlement notification, again, I'd rely on the

220

1   assistance of my attorneys to accomplish that duty.

2       Q.   And do you understand that, if

3   necessary, you might need to testify at trial?

4       A.   Yes.

5       Q.   And are you willing to testify at trial

6   if asked?

7       A.   Yes.

8       Q.   Thank you.

9           And did you see a copy of the complaint

10  before it was filed?

11      A.   Yes.

12      Q.   And did you review your discovery

13  responses before they were sent out to -- sorry.

14  Strike that.

15          Did you receive a copy of your discovery

16  responses before they were served on defense

17  counsel?

18      A.   Yes.

19      Q.   And did you sign a verification to

20  attest to their accuracy?

21      A.   Yes.

22      Q.   Okay.  And you gave all the facts you

23  could as you knew them at the time; is that correct?

24      A.   Yes.

25      Q.   All right.  If you can refer to what's

256

1          REPORTER'S CERTIFICATE

2          I, MAYLEEN AHMED, the undersigned, do

3    hereby certify:

4          That the witness, CHRISTINA LORENZEN,

5    before examination was remotely duly sworn; that the

6    foregoing deposition was taken remotely

7    stenographically by me on January 20, 2022, and

8    thereafter was transcribed by me; that the

9    deposition is a full, true, and complete transcript

10   of the testimony; and that, in accordance with

11   FRCP 30(e)(1), before completion of the proceedings,

12   review of the transcript was not requested and

13   signature was not reserved by the witness.  I

14   further certify that I am not a relative or employee

15   of any attorney or counsel or any party to this

16   action, and that I am not financially interested in

17   said action or the outcome thereof.

18         In WITNESS WHEREOF, I have hereunto set
     my hand this 25th day of January 2022.
19

20

21         _____

22         /s/  MAYLEEN AHMED, RMR, CRR, CRC
            Washington CCR No. 3402 - Exp 12/29/22
           Oregon CSR No: 17-0447 - Exp 12/31/23
23          Texas CSR No:  9428 - Exp 7/31/23
           California CSR No: 14380 - Exp 12/31/22
24          New York Notary Public

25

# Exhibit 11

# (Excerpted)

## FILED UNDER SEAL

Case 2:20-cv-02892-SHL-tmp    Document 389-10    Filed 02/10/23    Page 28 of 70
PageID 11494

Fusion Elite All Stars vs
Varsity Brands

Jessica Jones
February 10, 2022

1

1      IN THE UNITED STATES DISTRICT COURT

2        FOR THE WESTERN DISTRICT OF TENNESSEE

3
   FUSION ELITE ALL STARS,      )
4   et al.,                     )  Case No.
                                )  2:20-cv-02600-SHL-cgc
5            Plaintiffs,    )
         vs.                    )
6                               )
   VARSITY BRANDS, LLC, et al., )
7                               )
             Defendants.    )
8   ----------------------------X

9

10

11          VIDEOTAPED ORAL DEPOSITION OF

12                JESSICA JONES

13

14

15              Held Remotely

16          Thursday, February 10, 2022

17              9:32 a.m. (CST)

18

19

20

21

22

23   Stenographically remotely reported by:

24   Mayleen Ahmed, RMR, CRR, CRC, CCR/CSR

25   Job No.: 821679

264

1   being a good class representative in this lawsuit if

2   the class suit is certified?

3       A.    Not that I'm aware of.

4       Q.    Do you plan to uphold all of your duties

5   as a class representative?

6       A.    Yes.

7       Q.    And what are those duties?

8       A.    Hire experienced attorneys, which I feel

9   like I have done; be generally familiar with the

10  case; do what is in the best interest of the class;

11  all of the paperwork that I have been involved in.

12      Q.    Did you see the Complaint before it was

13  filed?

14      A.    Yes.

15      Q.    And did you see the Complaint after it

16  was filed?

17      A.    Yes.

18      Q.    Did you see your discovery responses

19  before they were served?

20      A.    Yes.

21      Q.    And did you verify that those responses

22  were accurate before they were --

23      A.    Yes.

24      Q.    -- served?

25            Are you aware that part of your duties

265

1   might require you to testify at trial?

2       A.   Yes.

3           MS. BERNHARDT:  Object to form.

4       Q.   Are you aware that part of your duties

5   may be to assist with notice to the class regarding

6   class certification and/or settlement?

7       A.   Yes.

8           MS. BERNHARDT:  Object to form.

9       Q.   Are you aware that you will need to

10  consult with counsel if a settlement is proposed and

11  before it is accepted?

12      A.   Yes.

13      Q.   Do you know what the class period is in

14  this case?

15      A.   Yes.  It is from December of 2016 to

16  present day.

17      Q.   And did you cooperate fully with

18  providing your documents to counsel?

19      A.   Yes.

20          MS. BERNHARDT:  Object to form.

21          MS. SPIEGEL:  No further questions.

22          MS. BERNHARDT:  All right.  Why don't we

23  take five minutes, and we'll see if we have any

24  further questions.

25          THE VIDEOGRAPHER:  Okay.  We are going

269

1          REPORTER'S CERTIFICATE

2          I, MAYLEEN AHMED, the undersigned, do

3    hereby certify:

4          That the witness, JESSICA JONES, before

5    examination was remotely duly sworn; that the

6    foregoing deposition was taken remotely

7    stenographically by me on February 10, 2022, and

8    thereafter was transcribed by me; that the

9    deposition is a full, true, and complete transcript

10   of the testimony; and that, in accordance with

11   FRCP 30(e)(1), before completion of the proceedings,

12   review of the transcript was not requested and

13   signature was not reserved by the witness.  I

14   further certify that I am not a relative or employee

15   of any attorney or counsel or any party to this

16   action, and that I am not financially interested in

17   said action or the outcome thereof.

18          In WITNESS WHEREOF, I have hereunto set

19   my hand this 17th day of February 2022.

20

21

22   _____
     /s/  MAYLEEN AHMED, RMR, CRR, CRC
     Washington CCR No. 3402 - Exp 12/29/22
23   Oregon CSR No: 17-0447 - Exp 12/31/23
     Texas CSR No:  9428 - Exp 7/31/23
24   California CSR No: 14380 - Exp 12/31/22
     New York Notary Public

25

# Exhibit 12

# (Excerpted)

## FILED UNDER SEAL

1

1          IN THE UNITED STATES DISTRICT COURT
              FOR THE WESTERN DISTRICT OF TENNESSEE

2
    FUSION ELITE ALL STARS,      )
3   et al.,                      )  Case No.
             Plaintiffs,    )  2:20-cv-02600-SHL-cgc
4        vs.                    )
                               )
5   VARSITY BRANDS, LLC, et al., )
                               )
6            Defendants.    )
    ----------------------------X
7   JONES, et al.,            )
                          )  Case No.
8            Plaintiffs,    )  2:20-cv-02892-SHL-cgc
         vs.               )
9                         )
    BAIN CAPITAL PRIVATE        )
10  EQUITY, et al.,            )
                          )
11           Defendants.    )
    ----------------------------X

12

13           VIDEOTAPED ORAL DEPOSITION OF

14               JAMIE J. PARRISH

15

16           Thursday, March 3, 2022

17               9:54 a.m. (EST)

18

19           11200 Atlantis Pl #C

20           Alpharetta, Georgia 30022

21

22

23

24  Stenographically Reported Remotely By:
    Mayleen Ahmed, RMR, CRR, CRC, CCR/CSR
25  Job No.: 831770

126

1  Walmart doesn't know the sales of its competitors;

2  it only knows what it has.  Does it have market

3  share?  Sure, it has market share.  It doesn't have

4  competitor knowledge.  Like, literally, they're

5  booked.

6          Cheerleading is different because all of

7  Varsity competitions -- all a Varsity sales rep has

8  to do is pull up a competition from the year prior

9  and look at all the teams' performance orders.

10  Because cheerleading is very interesting that you

11  have to put a performance order and the division.

12          So, very quickly, you can decipher from

13  the teams that were there how many people were

14  there, how many teams were there; you can

15  cross-check them to your Varsity customer list and

16  sales force, and you can come up with the three or

17  four teams that are not on the Family Plan, and then

18  you can come up with the teams that are on the

19  Family Plan, and then you can, you know, make some

20  deals under the table.  Like, "Hey, if you'll come

21  over to this competition, we'll give you three or

22  four athletes," or, "We'll give you some Varsity

23  credits," or, "We'll give you some uniform credits

24  if you'll come over here."

25          And the goal being to pull teams away

1  from our competitors in an effort to get their

2  number of participation underneath that requirement

3  set by the USASF Board to give a Worlds bids.

4          And once you -- once they, you know --

5  and then, you know, a competition company within

6  Varsity could then make an appeal to the USASF Board

7  that that particular company had lost its USASF

8  Worlds bid requirement by not having "X" amount of

9  teams, and then that -- then the Worlds bid gets

10  taken, and then, poof, there goes that competition.

11          If they "poof, goes that competition,"

12  then that opens them up for various things like, you

13  know, buying them out, or they just go away.

14      Q.   And did that actually happen, the

15  situation you just described with Varsity planting

16  its own event and driving down numbers at --

17      A.   It was common practice.

18      Q.   Excuse me?

19          MR. KAISER:  Objection.

20      A.   It was common practice.

21      Q.   And the side "deals under the table," as

22  you referred to them, did those actually happen?

23          MR. KAISER:  Objection.

24      A.   Completely.

25      Q.   With any frequency?

306

1           REPORTER'S CERTIFICATE

2           I, MAYLEEN AHMED, the undersigned, do

3    hereby certify:

4           That the witness, JAMIE J. PARRISH,

5    before examination was remotely duly sworn; that the

6    foregoing deposition was taken remotely

7    stenographically by me on March 3, 2022, and

8    thereafter was transcribed by me; that the

9    deposition is a full, true, and complete transcript

10   of the testimony; and that, in accordance with

11   FRCP 30(e)(1), before completion of the proceedings,

12   review of the transcript was not requested and

13   signature was not reserved by the witness.  I

14   further certify that I am not a relative or employee

15   of any attorney or counsel or any party to this

16   action, and that I am not financially interested in

17   said action or the outcome thereof.

18          In WITNESS WHEREOF, I have hereunto set

19   my hand this 14th day of March 2022.

20

21   _____

22   /s/  MAYLEEN AHMED, RMR, CRR, CRC
       Washington CCR No. 3402 - Exp 12/29/22
       Oregon CSR No: 17-0447 - Exp 12/31/23
23     Texas CSR No:  9428 - Exp 7/31/23
       California CSR No: 14380 - Exp 12/31/22
24     New York Notary Public

25

# Exhibit 13
# (Excerpted)

FILED UNDER SEAL

1

1    IN THE UNITED STATES DISTRICT COURT

2    FOR THE WESTERN DISTRICT OF TENNESSEE

3
   FUSION ELITE ALL STARS, et al.,
4
           Plaintiffs,      No.2:20-cv-02600
5                               SHL-tmp
        v.
6    VARSITY BRANDS, LLC, et al.,
           Defendants.
7    _____x
   AMERICAN SPIRIT AND CHEER      No. 2:20-cv-02782
                   SHL-tmp
   ESSENTIALS, INC., et al.,
9          Plaintiffs,
       v.
10   VARSITY BRANDS, LLC, et al.,
           Defendants,
11   _____x
   JESSICA JONES, et al.,       No. 2:2-cv-02892
12         Plaintiffs,       SHL-tmp
       v.
13   VARSITY BRANDS, LLC, et al.,
           Defendants.
14   _____x

15             VOLUME I

16        REMOTE VIDEOTAPED DEPOSITION

17               OF

18            MARLENE COTA

19        WEDNESDAY, APRIL 6, 2022

20

21

22

23

24   Reported by:
   ANNETTE ARLEQUIN, CCR, RPR, CRR, CLR
25   JOB NO. 2022-820231

53

1   school or All Star?

2      Q.   Yeah, thank you for asking that.

3   I will specify moving forward.

4         So we are going to talk about

5   both today.

6      A.   Um-hmm.

7      Q.   My first question is the All

8   Star.

9         So has Varsity's market share in

10  the competitive cheer market for All Star,

11  not schools, has that changed throughout

12  the years from 2012 to 2018?

13        MR. MULQUEEN:  Objection.

14     A.   It has increased.

15     Q.   And do you know what the market

16  share -- Varsity's market share in

17  competitive cheer market for All Star was

18  in 2018, at the time you left?

19        MR. MULQUEEN:  Objection.

20     A.   At the time that I left, I would

21  say conservatively, 80 percent, 85 percent.

22     Q.   Okay.  And what about in All Star

23  apparel, do you know what Varsity's market

24  share was in the market for All Star

25  apparel around 2018 when you left?

223

1    A.  Yes.

2    Q.  Okay.  Would you agree, then, in

3  that case, that Varsity leverages its

4  market dominance in the cheer competition

5  market to enhance and maintain its market

6  power in the cheer camp market?

7        MR. MULQUEEN:  Objection.

8    Improper leading question.

9    A.  Would you repeat the question?

10   Q.  Sure.

11        Would you agree that given

12  Varsity's -- that Varsity leverages its

13  market power in the cheer competition

14  market to enhance and maintain its market

15  power in the camp market?

16        MR. MULQUEEN:  Same objection.

17   A.  Yes.

18   Q.  Do you know how much a World

19  event provider can bring in in registration

20  fees?

21        MR. MULQUEEN:  Objection.

22   A.  I do not.

23   Q.  Are you aware of independent

24  event providers jointly complaining to

25  Varsity regarding its business tactics in

231

1          C E R T I F I C A T E

2

3   STATE OF FLORIDA        )

4                : ss.

5   COUNTY OF PALM BEACH   )

6

7        I, ANNETTE ARLEQUIN, a Notary

8    Public within and for the State of New

9    York, do hereby certify:

10       That MARLENE COTA, VOLUME I, whose

11    deposition is hereinbefore set forth,

12    was duly sworn by me, and that the

13    transcript of such depositions is a

14    true record of the testimony given by

15    such witness.

16        I further certify that I am not

17    related to any of the parties to this

18    action by blood or marriage; and that I

19    am in no way interested in the outcome

20    of this matter.

21        IN WITNESS WHEREOF, I have hereunto

22    set my hand this 15th day of April, 2022.

23

24    _____

25    ANNETTE ARLEQUIN, CCR, RPR, CRR, RSA

# Exhibit 14
# (Excerpted)
## FILED UNDER SEAL

1

1            IN THE UNITED STATES DISTRICT COURT
         FOR THE WESTERN DISTRICT OF TENNESSEE
2
FUSION ELITE ALL STARS,        )
3  et al.,                      )  Case No.
              Plaintiffs,       )  2:20-cv-02600-SHL-TMP
4        vs.                    )
                                )
5  VARSITY BRANDS, LLC, et al., )
                                )
6            Defendants.        )
----------------------------X
7  JONES, et al.,               )
                                )  Case No.
8            Plaintiffs,        )  2:20-cv-02892-SHL-TMP
         vs.                    )
9                               )
BAIN CAPITAL PRIVATE            )
10  EQUITY, et al.,             )
                                )
11            Defendants.       )
----------------------------X
12

13        VIDEOTAPED ORAL 30(b)(6) DEPOSITION OF

14            U.S. ALL STAR FEDERATION

15          by corporate representative

16       STEVE H. PETERSON, and as 30(b)(1)

17

18           Wednesday, March 9, 2022

19              8:39 a.m. (CST)

20        165 Madison Avenue - Suite 2000

21           Memphis, Tennessee 38103

22

23

24  Stenographically Reported Remotely By:
Mayleen Ahmed, RMR, CRR, CRC, CCR/CSR
25  Job No.: 831772

1        Q.     And how long has that been your business

2    address?

3        A.     I think around seven years.

4        Q.     And prior to that, where was your

5    business -- what was your business address?

6        A.     I don't recall the physical address, but

7    it was the Varsity corporate office at Lenox.

8        Q.     And so do you recall approximately over

9    what period of time your offices of USASF were

10   located where Varsity was located?

11             MR. KAISER:  Objection.

12       A.     I was there in 2004 through around 2015

13   when we moved into our own offices.

14       Q.     So is it fair to say during that period

15   from 2004 to 2015, USASF and Varsity were located in

16   the same location?

17       A.     Yes, sir.

18       Q.     Do -- do you know why USASF moved,

19   changed its address?

20       A.     We did it to, again, relieve the

21   skepticism and conspiracy theorists that Varsity was

22   running the USASF.

23       Q.     Do you know who pays the rent now for

24   USASF's offices?

25       A.     USASF.

Case 2:20-cv-02892-SHL-tmp    Document 389-10    Filed 02/10/23    Page 45 of 70
FUSION ELITE ALL STARS vs                    PageID 11511                    Steve Peterson
VARSITY BRANDS                                                               March 09, 2022

275

1      Q.    Now, you've been employed by USASF since
2  2004; is that correct?
3      A.    Yes, sir.
4      Q.    And during that period of time, have you
5  been a salaried employee of USASF?
6      A.    Yes, sir.
7      Q.    And during that period until today, have
8  you been continuously employed by USASF?
9      A.    No, but my legal employment was with
10  Varsity up until February 2020.
11      Q.    Okay.  So let me make sure I understand
12  that.
13            From 2004 to 2020, you were an employee
14  of Varsity; is that correct?
15      A.    Correct.
16      Q.    And so does that mean during that period
17  you got a paycheck from Varsity?
18      A.    In the early years, the paychecks were
19  from Varsity, but the USASF reimbursed Varsity back
20  for the -- for my salaries, for my income.
21      Q.    Okay.  And during what period of time
22  was that true?
23      A.    I don't remember what year the checks
24  switched to USASF checks, but I don't recall.
25      Q.    So there was a period of time starting

Case 2:20-cv-02892-SHL-tmp    Document 389-10    Filed 02/10/23    Page 46 of 70
PageID 11512

FUSION ELITE ALL STARS vs
VARSITY BRANDS

Steve Peterson
March 09, 2022

276

```
 1    in 2004 when you received a USAS- -- USASF check

 2    which was reimbursed by Varsity; is that correct?

 3    Do I have that right?

 4         A.    Well, it was my salary for working for

 5    the USASF, but the checks were run through the

 6    Varsity payroll system.

 7         Q.    Got it.

 8               And -- and then at some point in time,

 9    that changed; is that right?

10         A.    Yes, sir.

11         Q.    And how did it change?

12         A.    I think when -- I honestly don't know

13    when exactly.

14         Q.    Generally, do you know when?  I mean,

15    could you give me a year?

16         A.    No, I really can't.  I honestly don't

17    remember.

18         Q.    Was it about the same time that Vars- --

19    that USASF moved its offices?

20         A.    Probably around that time.

21         Q.    Okay.  In 2020, I think, then, your

22    employer changed; is that right?

23         A.    Yes.  I became full-time employed by

24    USASF.

25         Q.    Okay.  From 2004 through today, have you
```

281

 1    going to be included.

 2         Q.    Okay.  Let me back up.

 3              At the time that Charlesbank purchased

 4    an interest in Varsity, did you receive some money?

 5              MR. KAISER:  Objection.

 6         A.    As part of the E- -- as part of the ESOP

 7    program.

 8         Q.    Okay.  And with -- when did you begin to

 9    participate in that ESOP program?

10         A.    I honestly don't know.  I was -- I

11    didn't even know about the ESOP program until the

12    Charlesbank purchase.

13         Q.    Okay.  Do you recall when the

14    Charlesbank purchase was?

15         A.    No, sir.

16         Q.    Do you recall approximately what year?

17    Do you recall how long you had been working for

18    U- -- USASF at the time?

19         A.    Yes.  I was working for the USASF at the

20    time.  I just don't recall when Charlesbank acquired

21    Varsity.

22         Q.    Okay.  And so prior to the time

23    Charlesbank had acquired its interest in Varsity,

24    you had participated in an Employee Stock Option

25    Plan; is that correct?

Case 2:20-cv-02892-SHL-tmp    Document 389-10    Filed 02/10/23    Page 48 of 70
FUSION ELITE ALL STARS vs                    PageID 11514                              Steve Peterson
VARSITY BRANDS                                                                         March 09, 2022

282

 1              MR. KAISER:   Objection.

 2    Mischaracterizes.

 3        A.    Yes.  If that's what the ESOP program

 4    is.

 5        Q.    Okay.  And at the time that Charlesbank

 6    purchased an interest, did Charles back -- did

 7    Charlesbank make a tender offer for the shares that

 8    were held by the ESOP?

 9        A.    I do not know.

10        Q.    You received some -- some cash as a

11    result of that transaction, correct?

12        A.    Yes, sir.

13        Q.    Do you recall how much?

14        A.    It was around 250,000.

15        Q.    Okay.  And that was for work beginning

16    in approximately 2004 at -- while you were at USASF,

17    right?

18        A.    I honestly don't know the number of

19    years it includes because I was at National Spirit

20    Group, you know, since 1982.  And when Varsity

21    acquired National Spirit Group is when I was asked

22    to -- to work for the USASF.

23        Q.    Okay.  And at that time, did you start

24    receiving a paycheck from -- or receive a salary

25    from Varsity?

330

```
 1                    REPORTER'S CERTIFICATE

 2

 3               I, MAYLEEN AHMED, the undersigned, do

 4    hereby certify:

 5               That the witness, STEVE H. PETERSON,

 6    before examination was remotely duly sworn; that the

 7    foregoing deposition was taken remotely

 8    stenographically by me on March 9, 2022, and

 9    thereafter was transcribed by me; that the

10    deposition is a full, true, and complete transcript

11    of the testimony; and that, in accordance with

12    FRCP 30(e)(1), before completion of the proceedings,

13    review of the transcript was not requested and

14    signature was not reserved by the witness.  I

15    further certify that I am not a relative or employee

16    of any attorney or counsel or any party to this

17    action, and that I am not financially interested in

18    said action or the outcome thereof.

19               In WITNESS WHEREOF, I have hereunto set

20    my hand this 17th day of March 2022.

21

22                                 _____

23              /s/  MAYLEEN AHMED, RMR, CRR, CRC
                Washington CCR No. 3402 - Exp 12/29/22
                Oregon CSR No: 17-0447 - Exp 12/31/23
24              Texas CSR No:  9428 - Exp 7/31/23
                California CSR No: 14380 - Exp 12/31/22
25              New York Notary Public
```

# Exhibit 15
# (Excerpted)
## FILED UNDER SEAL

1

1           IN THE UNITED STATES DISTRICT COURT

2          FOR THE WESTERN DISTRICT OF TENNESSEE

3   FUSION ELITE ALL STARS,      )
    et al.,                      )  Case No.
4              Plaintiffs,       )  2:20-cv-02600-SHL-cgc
        vs.                      )
5                                )
    VARSITY BRANDS, LLC, et al., )
6                                )
               Defendants.       )
7   ---------------------------X
    JONES, et al.,               )
8                                )  Case No.
               Plaintiffs,       )  2:20-cv-02892-SHL-atc
9       vs.                      )
                                 )
10  BAIN CAPITAL PRIVATE         )
    EQUITY, et al.,              )
11                               )
               Defendants.       )
12  ---------------------------X

13          ** HIGHLY CONFIDENTIAL **

14      VIDEOTAPED ORAL 30(b)(6) DEPOSITION OF

15       CHARLESBANK CAPITAL PARTNERS, LLC

16             by corporate designee

17               ANDREW JANOWER

18

19           Wednesday, July 6, 2022

20             11:08 a.m. (EST)

21           Boston, Massachusetts

22

23

24  Stenographically remotely reported by:
    Mayleen Ahmed, RMR, CRR, CRC, CCR/CSR
25  Job No.: 849754

Case 2:20-cv-02892-SHL-tmp    Document 389-10    Filed 02/10/23    Page 52 of 70
PageID 11518

FUSION ELITE ALL STARS v
VARSITY BRANDS                          30(b)(6), Highly Confidential

Andrew Janower
July 06, 2022

83

```
 1              THE WITNESS:  But it's not -- but it's

 2  not the sort of thing I would typically look at.

 3              MR. SAVERI:  Okay.  Very good.

 4              Sir, let me --

 5              THE WITNESS:  Or be expected to look at.

 6              MR. SAVERI:  Let me ask you to put up on

 7  the screen another spreadsheet, sir.

 8              Gurjit, it has the Bates numbers 93940,

 9  CB0093940.

10              Okay.  Let's go -- let's go all the way

11  to the left if we can, Gurjit.  Go all the -- start

12  at the beginning tab on the left.

13              Is that -- is that the first tab?  Okay.

14  So...

15              MR. AULKH:  It is.

16  BY MR. SAVERI:

17          Q.    Mr. Janower, do you recall in 2016 there

18  was a dividend recapitalization at -- with respect

19  to Varsity Brands?

20          A.    Yes.

21          Q.    And could you just generally describe

22  what that transaction -- let me back up.

23              At the time of that transaction, were

24  you on the -- were you a member of the Varsity Board

25  of Directors?
```

93

1          A.    If you scroll down to the bottom.

2          Q.    Yes, please.

3          A.    That looks like 245 million.  That would

4    be a good way to check this.

5          Q.    Yeah.  Indeed.

6                Right?  You see that number?

7          A.    There you go.

8          Q.    Okay.

9          A.    118.

10         Q.    Okay.  So --

11         A.    Wow, 117 -- yeah.  So that would be --

12   there's probably, like, 100 members of the

13   management team that all participated in the

14   dividend.  That's marvelous.

15         Q.    Okay.  So, indeed.  So let's go to the

16   top.

17               So lines 5 through 11 -- excuse me -- 5

18   through 12 were the Charlesbank entities that

19   received a dividend at this time; is that correct?

20         A.    Yes.

21         Q.    And do you recall that if you total all

22   those up, it totaled to a little under 160 million?

23         A.    Correct.

24         Q.    And then the other investors are listed,

25   Partners, Crescent.  We discussed those earlier.

120

```
 1    Goldman first-tier loan was paid off,

 2    $994,798,770.36 was the outstanding amount of the

 3    loan at that time; is that -- is that correct?

 4         A.    Yes.

 5         Q.    And then there was an additional payment

 6    of $1,246,931.44, which appears to be the interest

 7    due at that time and fees associated with the

 8    payoff; is that correct?

 9         A.    Apparently so.

10         Q.    In addition, at this time, was a

11    dividend paid to the shareholders?

12         A.    That's the very next line.  Yes.

13         Q.    And that dividend was a little under

14    $300 million?

15         A.    Correct.

16         Q.    $299,432,480.86?

17         A.    Assuming -- assuming this is the final

18    version of the Sources and Uses, that appears to be

19    correct.

20         Q.    Okay.  The next line is a vested phantom

21    dividend.  Do you see that?

22         A.    I do.

23         Q.    And was that a dividend paid to

24    participants in the stock incentive plan at -- at

25    Varsity?
```

121

```
 1       A.   Yes.

 2       Q.   Could you go to the Investor Summary,

 3   which is two tabs over.  And if you go all the way

 4   over to the right.  Okay.  That's fine.

 5            If you look at lines 5 through 12, those

 6   are the Charlesbank entities that received a payment

 7   in this -- a dividend payment at this time; is that

 8   correct?

 9       A.   If it adds up to 196 million, then yes.

10       Q.   Okay.  And, again, similar to the past,

11   if you start at line 26.

12            MR. SAVERI:  And then, Gurjit, scroll

13   down to the bottom.

14       A.   This is going to be, like, somewhere

15   around line 117.

16       Q.   Actually, there's -- there's more

17   because of the phantom plan, I believe.

18       A.   Wow.

19       Q.   So is it fair to say, then, that the --

20   the -- those individuals on, I guess it was line 26

21   to 240, generally include a number of employees of

22   Varsity Brands and affiliated entities?

23            MR. KAISER:  Objection.

24       A.   I mean, I haven't looked at every line

25   item.  But, yeah, I would expect that every person
```

342

```
 1                    REPORTER'S CERTIFICATE

 2            I, MAYLEEN AHMED, the undersigned, do

 3    hereby certify:

 4            That the witness, ANDREW JANOWER, before

 5    examination was remotely duly sworn; that the

 6    foregoing deposition was taken remotely

 7    stenographically by me on July 6, 2022, and

 8    thereafter was transcribed by me; that the

 9    deposition is a full, true, and complete transcript

10    of the testimony; and that, in accordance with

11    FRCP 30(e)(1), before completion of the proceedings,

12    review of the transcript was not requested and

13    signature was not reserved by the witness.

14            I further certify that I am not a

15    relative or employee of any attorney or counsel or

16    any party to this action, and that I am not

17    financially interested in said action or the outcome

18    thereof.

19            In WITNESS WHEREOF, I have hereunto set

20    my hand this 15th day of July 2022.

21

22    _____

23    /s/  MAYLEEN AHMED, RMR, CRR, CRC
      Washington CCR No. 3402 - Exp 12/29/22
      Oregon CSR No: 17-0447 - Exp 12/31/23
24    Texas CSR No:  9428 - Exp 7/31/23
      California CSR No: 14380 - Exp 12/31/22
25    New York Notary Public
```

# Exhibit 16

# (Excerpted)

## FILED UNDER SEAL

1

1              IN THE UNITED STATES DISTRICT COURT
            FOR THE WESTERN DISTRICT OF TENNESSEE
2
    FUSION ELITE ALL STARS,        )
3   et al.,                        )    Case No.
                  Plaintiffs,      )    2:20-cv-02600-SHL-cgc
4          vs.                     )
                                   )
5   VARSITY BRANDS, LLC, et al., )
                                   )
6              Defendants.         )
    ---------------------------X
7   JONES, et al.,                 )
                                   )    Case No.
8              Plaintiffs,         )    2:20-cv-02892-SHL-cgc
           vs.                     )
9                                  )
    BAIN CAPITAL PRIVATE EQUITY, )
10  et al.,                        )
                  Defendants.      )
11  ---------------------------X
    AMERICAN SPIRIT AND CHEER      )
12  ESSENTIALS, INC., et al.,      )    Case No.
                                   )    2:20-cv-02782-SHL-cgc
13             Plaintiffs,         )
           vs.                     )
14                                 )
    VARSITY BRANDS, LLC, et al., )
15                                 )
               Defendants.         )
16  ---------------------------X

17           **  C O N F I D E N T I A L **

18           VIDEOTAPED ORAL DEPOSITION OF

19             FRANCIS XAVIER LeTARD, III

20

21                   Held Remotely

22           Monday, November 22, 2021
                   8:14 a.m. (CST)
23

24  Stenographically remotely reported by:
    Mayleen Ahmed, RMR, CRR, CRC, CCR/CSR
25  Job No.: 820219

Case 2:20-cv-02892-SHL-tmp    Document 389-10    Filed 02/10/23    Page 59 of 70
FUSION ELITE ALL STARS vs                    PageID 11525                    Francis LeTard
VARSITY BRANDS                              Confidential                    November 22, 2021

263

1          A.      Yeah.   So at that time period, there was

2     an increase of costs that were going into the

3     events.   There was higher levels of production:

4     more lights, more bigger elaborate backdrops,

5     decorations, have you, for the competitions.   We

6     identify those as being excess and not needed, so we

7     were -- we were -- part of our cost-saving strategy

8     was to reduce our focus on those or reduce our costs

9     of those items.

10         Q.      And you were assisted in that through

11    the JAM Brands acquisition, correct?

12         A.      It reduced some of the risk of having --

13    of -- of removing those elements of the event.

14         Q.      Right.   So one risk of doing that, if

15    JAM Brands is still there, is that customers might

16    go to a JAM Brands event because it had higher

17    production values, right?

18              MR. KAISER:   Objection.

19         A.      Possibly.

20         Q.      Possibly?

21         A.      Possibly.

22         Q.      Right.   So if you eliminate JAM Brands,

23    you don't have the risk of customers going to JAM

24    events instead of a Varsity event if Varsity reduces

25    its production values at its events; is that right?

264

```
1              MR. KAISER:  Objection.

2        A.    That was the thought, yes.

3        Q.    Okay.  And so as a result of the JAM

4   Brands acquisition, Varsity could spend less on

5   production values at its events; is that right?

6              MR. KAISER:  Objection.

7        A.    At particular events, yes.
```

```
8        Q.    All right.  Please turn to -569 of this

9   slide deck.  There's a slide entitled --

10       A.    Slide deck.  Sorry.  569.  Got it.

11       Q.    Yeah, not a tab.  Same slide deck,

12   page 70 --

13       A.    Gotcha.

14       Q.    -- of Elza Exhibit 30, tab 370, Bates

15   page -569.  There's a page entitled "Domestic Core

16   Business."

17             Do you see that?

18       A.    Uh-hmm.

19       Q.    And there's a list of companies under

20   the caption "Domestic Core Pipeline."

21             Do you see that?

22       A.    Yes.

23       Q.    Did you play any role in creating this

24   list?

25       A.    Let me look at it.
```

479

```
 1              REPORTER'S CERTIFICATE

 2              I, MAYLEEN AHMED, the undersigned, do

 3    hereby certify:

 4              That the witness, FRANCIS XAVIER LeTARD,

 5    III, before examination was remotely duly sworn;

 6    that the foregoing deposition was taken remotely

 7    stenographically by me on November 22, 2021, and

 8    thereafter was transcribed by me; that the

 9    deposition is a full, true, and complete transcript

10    of the testimony; and that, in accordance with

11    FRCP 30(e)(1), before completion of the proceedings,

12    review of the transcript was requested and signature

13    was reserved by the witness.

14              I further certify that I am not a

15    relative or employee of any attorney or counsel or

16    any party to this action, and that I am not

17    financially interested in said action or the outcome

18    thereof.

19              In WITNESS WHEREOF, I have hereunto set

20    my hand this 30th day of November 2021.

21

22    _____

23              /s/  MAYLEEN AHMED, RMR, CRR, CRC
                Washington CCR No. 3402 - Exp 12/29/21
                Oregon CSR No: 17-0447 - Exp 12/31/23
24              Texas CSR No:  9428 - Exp 7/31/23
                California CSR No: 14380 - Exp 12/31/21
25              New York Notary Public
```

# Exhibit 17

# (Excerpted)

## FILED UNDER SEAL

106

```
 1            IN THE UNITED STATES DISTRICT COURT
           FOR THE WESTERN DISTRICT OF TENNESSEE
 2                    WESTERN DIVISION

 3 JESSICA JONES and          )
   CHRISTINA LORENZEN on       )
 4 Behalf of Themselves and    )
   All Others Similarly        )
 5 Situated,                    )
        Plaintiffs,            )
 6                             )
   vs.                         ) CASE NO. 2:20-cv-02892-SHL-tmp
 7                             )
   VARSITY BRANDS, LLC;        )
 8 VARSITY SPIRIT, LLC;        )
   VARSITY SPIRIT FASHION &     )
 9 SUPPLIES, LLC; U.S. ALL     )
   STAR FEDERATION, INC.;       )
10 JEFF WEBB; CHARLESBANK      )
   CAPITAL PARTNERS LLC; and   )
11 BAIN CAPITAL PRIVATE        )
   EQUITY,                     )
12     Defendants.            )

13

14           ORAL VIDEOTAPED DEPOSITION

15                 RANDALL HEEB

16               JANUARY 19, 2023

17                  VOLUME 2

18

19

20

21

22

23

24

25
```

314

1  was just going to take a quick look at my notes.

2              THE VIDEOGRAPHER:  One moment, please.

3  The time is 6:32 p.m.  We're going off the record.

4                  (Recess taken)

5              THE VIDEOGRAPHER:  The time is 6:35 p.m.

6  We are back on record.  Go ahead, Counselor.

7  BY MS. RICCIO:

8      Q.   Thanks, Dr. Heeb, for your time.  I have no

9  further questions at this time.  Thank you.

10     A.   Thank you.

11             MS. SPIEGEL:  I have a few follow-up

12  questions.

13             MR. GAFFNEY:  No questions.

14                    EXAMINATION

15  QUESTIONS BY MS. SPIEGEL:

16     Q.   Dr. Heeb, I'd like to refer you back to

17  Exhibit 11.

18     A.   That's this one?

19     Q.   Yes.  And Exhibit 11 appears to be a

20  compilation of several network agreements, correct, with

21  various gyms?

22     A.   That's how I would interpret it, yes.

23     Q.   Okay.  And it includes network agreements dated

24  on various dates, correct?

25     A.   Yes, that's right.

Case 2:20-cv-02892-SHL-tmp    Document 389-10    Filed 02/10/23    Page 65 of 70
JESSICA JONES vs                        PageID 11531                      Randall Heeb
VARSITY BRANDS                                                     January 19, 2023

315

1      Q.   And this is ranging from dates starting 2008

2  through 2018, correct, if you look at the last page?

3      A.   '18.  2018 and 2014 this one is.

4      Q.   And Ms. Nyong'o referred you to the network

5  agreement with Cheer Extreme on page VAR00017932?

6      A.   That's right.

7      Q.   And she asked you some questions about whether

8  this network agreement involved rebates and/or

9  discounts, I guess, to events and apparel, correct?

10     A.   That's right.

11     Q.   And I'd like to go through some of the other

12 network agreements here.  If you could turn to

13 page VAR00017936.

14     A.   Yes.

15     Q.   Actually, I'm sorry.  17935.  And I'll note

16 that it's a little bit blurry; but at the top it appears

17 to be a network agreement between Bay State All Stars

18 and Varsity, correct?

19     A.   Yes.

20     Q.   And it's dated August 6th, 2014, correct?

21     A.   That is particularly difficult to read, but

22 that might be 2014.

23     Q.   Okay.  And then if you look at paragraph 2 --

24     A.   Yes.

25     Q.   -- No. 2, it has a clause pertaining to

1 discounts.  Is that correct?

2      A.    It has a clause that appears to be an exclusive

3 purchasing requirement that the customer will

4 exclusively purchase and wear Varsity uniforms and

5 Varsity shoes, and it provides an additional discount

6 related to apparel and accessories in exchange for this

7 exclusive dealing arrangement.

8      Q.    Okay.  Thank you.  And if you could turn to the

9 next page, VAR00017936.

10     A.    Yes.

11     Q.    This appears to be a 2016 Varsity network

12 agreement with Cheerforce All Stars?

13     A.    Yes, that's right.

14     Q.    Okay.  And it's dated May 3rd, 2016, correct?

15     A.    That's -- either May 3rd or -- looks like

16 May 4th.

17     Q.    Okay.  At the top on page VAR17936 this appears

18 to be --

19     A.    Yeah.  The signature lines have the next day.

20           Okay.  It's referencing an agreement that

21 is made on the 3rd day of May 2016 at the top, correct?

22     A.    Yes.

23     Q.    Okay.  And if you look at paragraph 2(c) where

24 it says "Discount," does this tell you anything about

25 whether this contract relates to only events or whether

Case 2:20-cv-02892-SHL-tmp    Document 389-10    Filed 02/10/23    Page 67 of 70
PageID 11533
JESSICA JONES vs
VARSITY BRANDS
Randall Heeb
January 19, 2023

328

1                 UNITED STATES DISTRICT COURT
                   DISTRICT OF MINNESOTA
2

3
   Court File No. 0:18-cv-01776-JRT-HB
4

5  IN RE:

6  PORK ANTITRUST LITIGATION

7  _____/

8

9                   REPORTER'S CERTIFICATE

10           ORAL DEPOSITION OF RANDALL HEEB

11                   January 19, 2023

12

13      I, Melinda Barre, Certified Shorthand Reporter in

14  and for the State of Texas, hereby certify to the

15  following:

16      That the witness, RANDALL HEEB, was duly sworn by

17  the officer and that the transcript of the oral

18  deposition is a true record of the testimony given by

19  the witness;

20      That the original deposition was delivered to

21  Heather Nyong'o.

22      That a copy of this certificate was served on all

23  parties and/or the witness shown herein

24  on _____.

25      I further certify that pursuant to FRCP Rule

Case 2:20-cv-02892-SHL-tmp    Document 389-10    Filed 02/10/23    Page 68 of 70
PageID 11534
JESSICA JONES vs
VARSITY BRANDS
Randall Heeb
January 19, 2023

329

1  30(f)(1), that the signature of the deponent:

2       ____ was requested by the deponent or a party before

3  the completion of the deposition and that the signature is

4  to be before any notary public and returned within 30 days

5  from date of receipt of the transcript.  If returned,

6  the attached Changes and Signature Page contains any

7  changes and the reasons therefor:

8       ____was not requested by the deponent or a

9  party before the completion of the deposition.

10      I further certify that I am neither counsel for,

11 related to, nor employed by any of the parties or

12 attorneys in the action in which this proceeding was

13 taken, and further that I am not financially or

14 otherwise interested in the outcome of the action.

15      Certified to by me on this, the _____ day

16 of _____, 2023.

17

18

19

20      _____

21      Melinda Barre
        Texas CSR 2192
22      Expiration:  12/31/23

23

24

25

Case 2:20-cv-02892-SHL-tmp   Document 389-10   Filed 02/10/23   Page 69 of 70
PageID 11535

JESSICA JONES vs
VARSITY BRANDS

Randall Heeb
January 19, 2023

330

```
 1  COUNTY OF HARRIS      )

 2  STATE OF TEXAS        )

 3      I hereby certify that the witness was notified on

 4  _____ that the witness has 30 days or (____

 5  days per agreement of counsel) after being notified by

 6  the officer that the transcript is available for review

 7  by the witness and if there are changes in the form or

 8  substance to be made, then the witness shall sign a

 9  statement reciting such changes and the reasons given by

10  the witness for making them;

11      That the witness' signature was/was not returned as

12  of _____.

13      Subscribed and sworn to on this, the _____ day of

14  _____, 2023.

15

16

17

18

19                      _____

20                      Melinda Barre
                        Texas CSR 2192
21                      Expiration:  12/31/23

22

23

24

25
```

# Exhibit 18

INTENTIONALLY LEFT BLANK