**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TENNESSEE**

| |
|---|
| JESSICA JONES et al., |
| Plaintiffs, |
| v. |
| VARSITY BRANDS, LLC et al., |
| Defendants. |

**Civ. Action No. 2:20-cv-02892**

**DECLARATION OF STEVEN J. KAISER IN SUPPORT OF**
**DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION TO**
**APPOINT CLASS COUNSEL**

I, Steven J. Kaiser, declare as follows:

1.     I am counsel to Varsity Brands, LLC; Varsity Spirit, LLC; Varsity Spirit Fashions & Supplies, LLC; Charlesbank Capital Partners, LLC; and Bain Capital Private Equity LP in this matter.

2.     Attached as Exhibit A is a true and correct copy of Plaintiffs' Combined Objections and Responses to Defendants' First Set of Interrogatories, dated July 13, 2021.

3.     Attached as Exhibit B is a true and correct copy of excerpts from the transcript of the deposition of Christina Lorenzen.

4.     Attached as Exhibit C is a true and correct copy of excerpts from the transcript of the deposition of Jessica Jones.

5.     Attached as Exhibit D is a true and correct copy of Varsity's Objections and Responses to Plaintiffs' Second Set of Interrogatories, dated October 3, 2022.

6.     Attached as Exhibit E is a true and correct copy of a letter that I sent to Joseph R.

Saveri, Jr., counsel for Plaintiffs, on February 2, 2023.

7.   Attached as Exhibit F is a true and correct copy of a letter that I received from Mr. Saveri on February 17, 2023.

8.   Attached as Exhibit G is a true and correct copy of a letter that I sent to Mr. Saveri on February 23, 2023.

9.   I declare under penalty of perjury that the foregoing is true and correct.


Executed on February 24, 2023.


_____
Steven J. Kaiser

# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

| | |
|---|---|
| **JESSICA JONES**, **MICHELLE VELOTTA**, and **CHRISTINA LORENZEN** on Behalf of Themselves and All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>**VARSITY BRANDS, LLC; VARSITY SPIRIT, LLC; VARSITY SPIRIT FASHION & SUPPLIES, LLC; U.S. ALL STAR FEDERATION, INC.; JEFF WEBB; CHARLESBANK CAPITAL PARTNERS LLC; and BAIN CAPITAL PRIVATE EQUITY,**<br><br>Defendants. | Case No. 2:20-cv-02892-SHL-cgc |

**PLAINTIFFS' COMBINED OBJECTIONS AND RESPONSES TO DEFENDANTS'
FIRST SET OF INTERROGATORIES**

**GENERAL OBJECTIONS**

Plaintiffs Jessica Jones, Michelle Velotta, and Christina Lorenzen ("Plaintiffs") jointly object to the Definitions, Instructions, and Interrogatories, and to each individual Interrogatory included in Defendants' First Set of Interrogatories (the "Interrogatories") on the grounds set forth below. Each individual response included below incorporates, is subject to, and does not waive any of these general objections.

1.       Plaintiffs object to the Interrogatories to the extent they are not reasonably calculated to lead to the discovery of admissible evidence or seek information that is not relevant to any claim or defense of any party.

2.       Plaintiffs object to the Interrogatories to the extent they individually or cumulatively purport to impose on Plaintiffs duties and obligations beyond those required by the

Federal Rules of Civil Procedure, the Local Rules of the United States District Court for the Western District of Tennessee, the Standing Orders of Judge Lipman or Magistrate Judge Claxton, or other applicable domestic or foreign laws or rules, including but not limited to privacy laws, or what the parties have agreed to or will agree to with regard to an ESI document production protocol, the Protective Order entered in this matter (ECF. No. 62), any privilege issues, and expert discovery.

3.      Plaintiffs object to the Interrogatories to the extent that they may seek identification or production of documents not in Plaintiffs' possession, custody, or control and to the extent the Interrogatories seek to compel the creation of documents by Plaintiffs.

4.      Plaintiffs object to the Interrogatories to the extent that they are overbroad, unduly burdensome, vague, ambiguous, or do not specify the documents sought with sufficient particularity. Plaintiffs will meet and confer with Defendants concerning narrowing several of the Interrogatories and to establish a protocol for searching and producing ESI, as set forth herein.

5.      Plaintiffs object to the Interrogatories to the extent that they seek the disclosure of information that is protected by Federal Rule of Evidence 408, the attorney client-privilege or the attorney work product doctrine, or that is otherwise privileged or immune from discovery under any other applicable federal, state, or other privilege, exemption or shield.

6.      Plaintiffs object to the Interrogatories to the extent that they require Plaintiffs to draw legal conclusions or are predicated on legal conclusions or arguments. Subject to and without waiving any of the Objections, Plaintiffs' responses are not intended, and may not be construed, as an admission or legal conclusion.

7.      Plaintiffs object to the Interrogatories to the extent that they are in the nature of a "contention" interrogatory, which is premature at this early stage of the litigation.

8.      In providing these responses and objections, Plaintiffs do not waive any ground on which they may object to the use of any response or objection in subsequent proceedings.

9.      . Plaintiffs further object to the Interrogatories as unduly burdensome to the extent they seek information that is in the possession of defendants and which they could obtain if they reviewed their own records.

10.     Plaintiffs' investigation in this action is ongoing. Plaintiffs therefore reserve the right to supplement or amend these responses as new information comes to light.

11.     Plaintiffs object to the definitions used by Defendants to the extent they seek to change the ordinary meaning of the terms identified or impose obligations on Plaintiffs inconsistent with the Federal Rules. Specifically:

a.      Plaintiffs object to the terms "communication" and "communications" as overbroad to the extent they include documents not within Plaintiffs' possession, custody, or control, or not within the scope of Rules 26 and 33 of the Federal Rules of Civil Procedure.

b.      Plaintiffs object to the terms "document" and "documents" as vague and ambiguous because the definition is circular.

c.      Plaintiffs object to the terms "Plaintiffs", "You," and "Your" to the extent that they incorporate any persons or documents not under Plaintiffs' custody or control.

## OBJECTIONS AND RESPONSES TO INTERROGATORIES

### INTERROGATORY NO. 1:

Provide a list of each direct or indirect purchase you made of any of the following, whether from Varsity, USASF, or any other provider or organizer, including gyms: cheer competition fees, cheer competition spectator fees, cheer-related merchandise, cheer camps, or any other product or service that you contend relates to damages or harm suffered by you or any member of the class you seek to represent as a result of any conduct you contend stated in the Complaint that you contend was illegal, stating for each:

(1) the date of the purchase,

(2) the amount of the purchase,

(3) the item or service purchased,

(4) the counterparty (i.e., the seller or provider), and

(5) any discount or rebate received in respect of the purchase.

Include all such purchases regardless of whether you contend that the purchase is the basis of a damage claim in this Case.

### RESPONSE TO INTERROGATORY NO. 1:

In addition to Plaintiffs' General Objections, incorporated herein by reference, Plaintiffs object to Interrogatory No. 1 to the extent it seeks information that is not relevant to any party's claim or defense. Plaintiffs further object to Interrogatory No. 1 to the extent that it seeks information already in Defendants' possession. Plaintiffs further object to Interrogatory No. 1 on the grounds that it is compound. Plaintiffs further object on the grounds that the Interrogatory seeks information that is as easily accessible to Defendants.

Subject to and without waiving the foregoing objections, Plaintiffs direct Defendants to Attachment A as incorporated herein by reference. Plaintiffs are continuing to investigate and will update their responses if more information becomes available.

### INTERROGATORY NO. 2:

Provide a list of each cheerleading competition that any member of your family,

including yourself, your spouse, your children, any other individuals you claim or have claimed as dependents, and any other individual under the age of 30 who lives in or has lived in your household, has attended, stating for each:

> (1) the name of the competition,

> (2) the organizer of the competition,

> (3) the date(s) of the competition,

> (4) the venue of the competition,

> (5) who attended (and for each attendee, whether the attendance was as a competitor, spectator, coach, or other, specifying what),

> (6) whether the competition required particular travel arrangements, and, if so,

> (7) the particulars of those arrangements (including what was required to be purchased and for how much); and

> (8) any money you expended in connection with the competition, stating for each such expenditure, the amount expended, the seller or vendor, and the product or service purchased.

## RESPONSE TO INTERROGATORY NO. 2:

In addition to Plaintiffs' General Objections, incorporated here by reference, Plaintiffs object to Interrogatory No. 2 to the extent it seeks information that is not relevant to any party's claim or defense. Plaintiffs further object to Interrogatory No. 2 to the extent that it seeks information already in Defendants' possession. Plaintiffs further object to Interrogatory No. 2 on the grounds that it is compound. Plaintiffs further object on the grounds that the Interrogatory seeks information that is as easily accessible to Defendants.

Subject to and without waiving the foregoing objections, Plaintiffs direct Defendants to Attachment B as incorporated herein by reference. Plaintiffs are continuing to investigate and will update their responses if more information becomes available.

## INTERROGATORY NO. 3:

Provide for each of the "[a]t least 35 All Star Gyms" that you allege in paragraph 228

of your Complaint closed in 2019:

> (1) the former gym's name,

> (2) the former gym's address,

> (3) the former gym's telephone number, and

> (4) the name of the former gym's owner(s).

## RESPONSE TO INTERROGATORY NO. 3:

In addition to Plaintiffs' General Objections, incorporated here by reference, Plaintiffs object to Interrogatory No. 3 to the extent it is premature and is in the nature of a "contention" interrogatory. Plaintiffs further object to Interrogatory No. 3 to the extent that it seeks information already in Defendants' possession. Plaintiffs further object to Interrogatory No. 3 on the grounds that it is compound. Plaintiffs further object on the grounds that the Interrogatory seeks information that is as easily accessible to Defendants as it would be to Plaintiffs. Plaintiffs will meet and confer with Defendants to discuss the extent to which the information requested by this Interrogatory is reasonably accessible.

## INTERROGATORY NO. 4:

Provide a list of the rules that were "frequently written to favor Varsity's latest Cheer Apparel designs" as stated in paragraph 155 of your Complaint.

## RESPONSE TO INTERROGATORY NO. 4:

Plaintiffs object to this Interrogatory on the grounds that it is in the nature of a "contention" interrogatory, which is premature at this early stage of the litigation. Plaintiffs further object to this Request to the extent that it calls for legal conclusions or expert opinion.

Dated: July 13, 2021

By: _____ */s/ Joseph R. Saveri* _____
                    Joseph R. Saveri

Joseph R. Saveri*
Steven N. Williams*
Ronnie Spiegel*
Kevin E. Rayhill*
Elissa A. Buchanan*
Anna-Patrice Harris*
**JOSEPH SAVERI LAW FIRM, LLP**
601 California Street, Suite 1000
San Francisco, California 94108
Telephone: (415) 500-6800
Facsimile:   (415) 395-9940
Email:  jsaveri@saverilawfirm.com
          swilliams@saverilawfirm.com
          rspiegel@saverilawfirm.com
          krayhill@saverilawfirm.com
          eabuchanan@saverilawfirm.com
          aharris@saverilawfirm.com

Van Turner (TN Bar No. 22603)
**BRUCE TURNER, PLLC**
2650 Thousand Oaks Blvd., Suite 2325
Memphis, Tennessee 38118
Telephone: (901) 290-6610
Facsimile: (901) 290-6611
Email: vturner@bruceturnerlaw.net

Daniel E. Gustafson
Daniel C. Hedlund
Daniel J. Nordin
Ling S. Wang
**GUSTAFSON GLUEK PLLC**
Canadian Pacific Plaza
120 South Sixth Street, Suite 2600
Minneapolis, MN 55402
Telephone: (612) 333-8844
Facsimile: (612) 339-6622
Email: dgustafson@gustafsongluek.com
          dhedlund@gustafsongluek.com
          dnordin@gustafsongluek.com
          lwang@gustafsongluek.com

PLAINTIFFS' COMBINED OBJECTIONS AND RESPONSES TO DEFENDANTS' FIRST
INTERROGATORIES

Richard M. Paul III*
Sean R. Cooper*
**PAUL LLP**
601 Walnut, Suite 300
Kansas City, Missouri 64106
Telephone: (816) 984-8100
Email: rick@paulllp.com
          sean@paulllp.com

Jason S. Hartley*
**HARTLEY LLP**
101 West Broadway, Suite 820
San Diego, CA 92101
Telephone: (619) 400-5822
Email: hartley@hartleyllp.com

* *Admitted pro hac vice*

*Attorneys for Individual and Representative Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on July 13, 2021, I served a copy of the foregoing document via email on the counsel listed below.

Ruby Vazquez-Ponce

George S. Cary
Mark W. Nelson
Alexis Collins
Steven J. Kaiser
**CLEARY GOTTLIEB STEEN & HAMILTON LLP**
2112 Pennsylvania Avenue, NW
Washington, DC 20037
gcary@cgsh.com
mnelson@cgsh.com
alcollins@cgsh.com
skaiser@cgsh.com

Paul Coggins
Brendan Gaffney
**LOCKE LORD LLP**
2200 Ross Avenue, Suite 2800
Dallas, TX 75201
pcoggins@lockelord.com
bgaffney@lockelord.com

Talis C. Trevino
**LOCKE LORD LLP**
Terminus 200, Suite 1200
3333 Piedmont Road NE
Atlanta, GA 30305
talis.trevino@lockelord.com

Matthew S. Mulqueen
Adam S. Baldridge
**BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ**
165 Madison Avenue, Suite 2000
Memphis, TN 38103
Phone: (901) 526-2000
Fax: (901) 577-0866
mmulqueen@bakerdonelson.com
abaldridge@bakerdonelson.com

Edward L. Stanton III
**BUTLER SNOW LLP**
6075 Poplar Avenue, Suite 500
Memphis, Tennessee 38119
Edward.Stanton@butlersnow.com

Grady Garrison
Nicole D. Berkowitz
**BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ**
165 Madison Avenue, Suite 2000
Memphis, TN 38103
ggarrison@bakerdonelson.com
nberkowitz@bakerdonelson.com

# ATTACHMENT A

**JOSEPH SAVERI LAW FIRM**                                    **HIGHLY CONFIDENTIAL – AT**

<u>**ATTACHMENT A**</u>

JOSEPH SAVERI LAW FIRM                                    HIGHLY CONFIDENTIAL – A

ATTACHMENT A

2

**JOSEPH SAVERI LAW FIRM**                                    **HIGHLY CONFIDENTIAL – A**

<u>ATTACHMENT A</u>



3

JOSEPH SAVERI LAW FIRM                                    HIGHLY CONFIDENTIAL – A

## ATTACHMENT A

**JOSEPH SAVERI LAW FIRM**                              **HIGHLY CONFIDENTIAL – A**

## ATTACHMENT A



5

**JOSEPH SAVERI LAW FIRM**                                    **HIGHLY CONFIDENTIAL – A**

<u>ATTACHMENT A</u>



6

JOSEPH SAVERI LAW FIRM                                    HIGHLY CONFIDENTIAL – AT

## ATTACHMENT A

**JOSEPH SAVERI LAW FIRM**                                    **HIGHLY CONFIDENTIAL – A**

## ATTACHMENT A

8

# ATTACHMENT B

HIGHLY CONFIDENTIAL – A1

## ATTACHMENT B

1

**JOSEPH SAVERI LAW FIRM**                                    **HIGHLY CONFIDENTIAL – A**

## ATTACHMENT B



2

# EXHIBIT B

```
 1                (Witness reviewing document.)

 2        A.    I see that.

 3             I -- I think I ended up paying for the

 4   entire month despite this conversation, but I would

 5   need to research it further.

 6        Q.    Okay.

 7        A.    But I believe this is not what happened.

 8        Q.    Okay.

 9        A.    Even though I was proposing this, I

10   don't believe that's what actually happened, but I

11   could further research this to verify it.

12        Q.    Checking one thing.  Just bear with me

13   for a second.

14             Okay.  Now, did -- you mentioned earlier

15   today, I believe, that your child attended a camp in

16   relation -- in connection with cheerleading; is that

17   correct?

18        A.    No.  My daughter did not attend the

19   camp.

20        Q.    Did the team go to a camp?

21        A.    Yes.

22        Q.    Was there a particular reason why your

23   daughter didn't go to the camp?

24        A.    Yes.  My child custody agreement states

25   that my daughter spends three weeks in the summer
```

# EXHIBIT C

49

1        A.    Yes.

2        Q.    Which years?

3        A.    Can you repeat that, please?

4        Q.    Which years were they involved in school

5    cheerleading?

6        A.    One of my daughters did cheer for her

7    eighth-grade year.  So that would be last year, she

8    did cheer at school.  And my other daughter has

9    never cheered for school but she did cheer camps

10   through school.

11       Q.    When were those cheer camps?

12       A.    They're offered every school year, but I

13   don't remember the exact years that she

14   participated.  I believe one was in 2016; one was

15   2017.

16       Q.    Was this middle school or high school?

17       A.    This was cheer camp, and she was in

18   elementary school.

19       Q.    How did she get involved in cheer camp?

20       A.    The school sent out notices that if you

21   would like to enroll your child in the camp, then

22   you may.

23       Q.    Do you recall which camps?

24       A.    I do not remember the name of the camps.

25       Q.    Was the camp run by the school?

50

1      A.    Not by the school she attended.

2      Q.    Was it run by a different school?

3      A.    Yes.

4      Q.    Which school?

5      A.    Kapaun Mt. Carmel Catholic High School.

6      Q.    So it was run by a Catholic high school?

7      A.    Correct.

8      Q.    All right.  So for your child that

9  competed last year in school cheer, she wasn't

10  competing in All Star at the time?

11      A.    She was.

12      Q.    She was?

13      A.    Yes.

14      Q.    This is while she attended Fierce?

15      A.    Correct.

16      Q.    And did she go to competitions as part

17  of her school team?

18      A.    No.

19      Q.    So was it sideline cheer?

20      A.    Yes.

21      Q.    What sporting events did they cheer at?

22      A.    Football.

23      Q.    Was this middle school football?

24      A.    Yes.

25      Q.    Have you ever utilized V!ROC, to your

# EXHIBIT D

## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TENNESSEE

|  |  |
|---|---|
| JONES et al.,<br><br>              Plaintiffs,<br><br>    v.<br><br>VARSITY BRANDS, LLC et al.,<br><br>              Defendants. | **Civ. Action No. 2:20-cv-02892** |

### RESPONSES OF DEFENDANTS VARSITY BRANDS, LLC; VARSITY SPIRIT, LLC; AND VARSITY SPIRIT FASHIONS & SUPPLIES, LLC TO PLAINTIFFS' SECOND SET OF INTERROGATORIES

Defendants Varsity Brands, LLC; Varsity Spirit, LLC; and Varsity Spirit Fashions & Supplies, LLC (collectively, "Varsity") hereby respond to Plaintiffs' Second Set of Interrogatories.

### OBJECTIONS TO DEFINITIONS

1.    Varsity notes that the vast majority of the terms purportedly defined in the "Definitions" (other than "You," "Your," and "state") are not used in the interrogatories and including them in the Definitions is inappropriate and improper surplusage.  Because the terms are not used, no further response is needed, but Varsity specifically notes that it does not accept the definitions for any other purpose and specifically reserves its rights should Plaintiffs seek to use the same or similar definitions in other circumstances.

2.    Varsity objects to the terms "You" and "Your" in Definition 37 to the extent they seek to include any person or entity beyond Varsity.  Where "You" or "Your" appear in the requests, Varsity will interpret the terms to cover Varsity Brands, LLC; Varsity Spirit, LLC; and Varsity Spirit Fashions & Supplies, LLC.

## OBJECTIONS TO INSTRUCTIONS

1.      Varsity objects to the Instructions to the extent Plaintiffs seek to impose any burden on Varsity beyond those required by the Federal Rules of Civil Procedure. Varsity will respond in accordance with the Federal Rules of Civil Procedure and will otherwise disregard the Instructions.

2.      Varsity objects to the time period contained in Instruction 7 and the embedded definition of "Relevant Time Period" as overly broad and unduly burdensome, and as seeking to renegotiate the limits on discovery previously agreed upon by the parties. To the extent Varsity responds to these requests, Varsity will only do so for the period December 10, 2016 to June 30, 2020.

## OBJECTIONS AND RESPONSES TO REQUESTS

The above objections are explicitly incorporated by reference to each of the following responses as if they were set forth in full in each individual response.

Interrogatory No. 1:  State each affirmative defense to the claims against You.

Objection and Response to Interrogatory No. 1: *See* ECF No. 340, section entitled "Affirmative and Other Defenses," paragraphs 1, 2, and 5.  (The remainder of the defenses set forth therein are a non-exhaustive list of failures of Plaintiffs' pleadings and/or anticipated failures of proof on issues on which Plaintiffs bear the burden of proof.  They are therefore not affirmative defenses and are outside the scope of Interrogatory No. 1.)  Varsity reserves its rights to supplement its affirmative defenses and its rights as to any and all failures of proof in Plaintiffs' case, whether as anticipated in ECF 340 or otherwise.

Interrogatory No. 2:  State each fact which you contend supports each affirmative defense You stated in response to Interrogatory No. 1.

<u>Objection and Response to Interrogatory No. 2</u>: Varsity objects to Interrogatory 2 as seeking information that Varsity is not required to disclose under the Federal Rules of Civil Procedure and as seeking Varsity's work product.  In addition, to literally identify "each fact" that supports its affirmative defenses would be unduly burdensome and would improperly seek to constrain Varsity's ability to defend itself at trial.  Moreover, given the incoherent nature of Plaintiffs' complaint, the specific facts that support Varsity's affirmative defenses that may become relevant upon the conclusion of Plaintiffs' trial presentation are not ascertainable in the exhaustive sense that the interrogatory appears to seek to require.

Subject to and without waiving those objections, Varsity responds further that insofar as the bulk of the conduct referenced in the Complaint occurred outside the applicable statute of limitations and/or statute of repose period (*i.e.*, more than four years prior to Plaintiffs filing their action (or such other period as is applicable under the particular law at issue)), Plaintiffs' claims for damages are barred, in whole or in part, by the statute of limitations and/or statute of repose. Each of the claims that Plaintiffs purportedly bring are brought under laws that have statutes of limitations.  Any claim that accrued outside the applicable statute of limitations is barred.  For example, claims based on increased prices due to the anticompetitive effects of an acquisition that occurred outside the applicable statute of limitations would be barred, as the Court has already held.  For the same reason, claims for injunctive relief based on conduct that occurred outside the relevant statutory period are barred by the doctrine of laches, and such claims may also be barred even if based on conduct within the statutory period.  A plaintiff is not permitted to wait years after the conduct at issue to bring a claim and seek such relief, which is what Plaintiffs have done here.

Moreover, Plaintiffs allege that they have been damaged by conduct known to them and dating as far back as 2003. Yet Plaintiffs allege that they chose to continue patronizing Varsity's cheerleading competitions and chose to continue purchasing apparel from Varsity.  Plaintiffs otherwise failed to take steps to avoid or lessen their alleged damages. Plaintiffs' claims are therefore barred, in whole or in part, by their failure to mitigate damages, waiver, estoppel, and/or by the voluntary payment doctrine.

Because the interrogatory asks about Varsity's "affirmative defenses," no response as to the "other defenses" is required.  That said, although Plaintiffs' lack of standing is not an affirmative defense because the burden to establish standing is on each Plaintiff, Varsity further notes that the fact that no Plaintiff in this case purchased attendance at a Varsity cheerleading camp (or attended a Varsity cheerleading camp) means that Plaintiffs lack standing to assert claims regarding cheerleading camps.  Varsity reserves the right to identify other failures of Plaintiffs' proof of standing at trial or at summary judgment, depending on what proof Plaintiffs bring forward to establish standing, if any.

As to the remaining listed other defenses, Varsity refers Plaintiffs to its briefs filed in support of its motion to strike (ECF Nos. 55) and reserves its right to supplement the points made therein in responding to any motion for class certification on the schedule set by the Court. Varsity refers Plaintiffs to the briefs filed in support of the various Defendants' motions to dismiss (ECF Nos. 59) in respect of Plaintiffs' failure to state a claim and to the particulars set forth in its Answer as to procedural requirements under certain state laws, which Plaintiffs have not satisfied.

Varsity likewise reserves its rights as to any other failure of proof in Plaintiffs' case, which can only be identified at the conclusion of Plaintiffs' case at trial, should Plaintiffs' claims

not be summarily dismissed under Rule 56.  Varsity also reserves its right to move for summary

judgment, including as to any issue as to which Plaintiffs have the burden of proof.


Dated: October 3, 2022

George S. Cary*
Steven J. Kaiser*
Linden Bernhardt*
CLEARY GOTTLIEB STEEN & HAMILTON LLP
2112 Pennsylvania Avenue, NW
Washington, DC 20037
Phone: (202) 974-1500
Fax: (202) 974-1999
gcary@cgsh.com
skaiser@cgsh.com
lbernhardt@cgsh.com

Jennifer Kennedy Park*
Heather Nyong'o*
CLEARY GOTTLIEB STEEN & HAMILTON LLP
1841 Page Mill Rd, Suite 250
Palo Alto, CA 94304
Phone: (650) 815-4100
Fax: (202) 974-1999
jkpark@cgsh.com
hnyongo@cgsh.com

* Admitted *pro hac vice*

Matthew S. Mulqueen (TN #28418)
Adam S. Baldridge (TN #23488)
BAKER, DONELSON, BEARMAN, CALDWELL &
BERKOWITZ
165 Madison Avenue, Suite 2000
Memphis, TN 38103
Phone: (901) 526-2000
Fax: (901) 577-0866
mmulqueen@bakerdonelson.com
abaldridge@bakerdonelson.com

*Attorneys for Defendants Varsity Brands, LLC;*
*Varsity Spirit, LLC; and Varsity Spirit Fashions &*
*Supplies, LLC*

# EXHIBIT E

# CLEARY GOTTLIEB STEEN & HAMILTON LLP

2112 Pennsylvania Avenue, NW
Washington, DC 20037-3229
T: +1 202 974 1500
F: +1 202 974 1999

clearygottlieb.com

AMERICAS
NEW YORK
SAN FRANCISCO
SÃO PAULO
SILICON VALLEY
WASHINGTON, D.C.

ASIA
BEIJING
HONG KONG
SEOUL

EUROPE & MIDDLE EAST
ABU DHABI
BRUSSELS
COLOGNE
FRANKFURT
LONDON
MILAN
PARIS
ROME

D: +1 (202) 974-1554
skaiser@cgsh.com

February 2, 2023

Joseph R. Saveri, Jr., Esq.
Joseph Saveri Law Firm, LLP
601 California Street, Suite 1000
San Francisco, CA 94108

Re: *Jessica Jones, et al.,  v. Varsity Brands, LLC, et al.*

Counsel:

We write regarding the claims in this case relating to camps.

As you know, neither of the Plaintiffs in this case ever paid for or attended a Varsity camp.  (*See* Plaintiffs' Combined Objections and Responses to Defendants' First Set of Interrogatories, at 1-6; *see also* Lorenzen Dep. at 86:12-19; Jones Dep. at 49:4-50:7.)  They therefore have no standing to pursue claims based on camps.  *See* American Spirit ECF No. 194, at 12-18 (dismissing claims because no Plaintiff had purchased the products at issue and Plaintiffs therefore lacked standing).  Accordingly, Defendants request that Plaintiffs drop their claims relating to camps from this case without further delay, including by not seeking certification of a class relating to camps and officially dismissing the claims relating to camps from the case via a stipulated order of dismissal.

Should Plaintiffs persist in asserting claims based on camps, including by moving to certify a class relating to camps, Varsity will ask the Court for sanctions.  As you know, Rule 11 of the Federal Rules of Civil Procedure requires, on the pain of possible sanctions, that parties not pursue baseless claims.  Among other things, Rule 11 requires that "the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law" and "the factual

Joseph R. Saveri, Esq.
February 2, 2023
Page 2

contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." Fed. R. Civ. Pro. 11. Here, discovery has shown there is no legal or factual basis for standing as to the claims relating to camps. Should Plaintiffs continue to pursue these claims, Rule 11 sanctions would be appropriate, as many courts have found in similar circumstances where a party pursued antitrust claims despite plainly having no standing to do so. *See, e.g.*, *Pierce v. Commercial Warehouse*, 142 F.R.D. 687, 694 (M.D. Fla. 1992); *Colorado Chiropractic Council v. Porter Memorial Hospital*, 650 F. Supp. 231, 237-40 (D. Colo. 1986).

Defendants reserve all of their rights relating to these and Plaintiffs' other claims in this case, which are fatally flawed for numerous additional reasons.

Very truly yours,

Steven J. Kaiser

# EXHIBIT F

# JOSEPH SAVERI
## LAW FIRM

601 CALIFORNIA STREET
SUITE 1000
SAN FRANCISCO CA 94108

TEL 415.500.6800
FAX 415.395.9940

February 17, 2023

**Via Electronic Mail**

Steven J. Kaiser
Cleary Gottlieb Steen & Hamilton LLP
2112 Pennsylvania Avenue, NW
Washington, DC 20037
skaiser@cgsh.com

**Re:**  *Jones v. Bain Capital Private Equity*
     **(M.D. Tenn. No. 2:20-cv-02892-SHL-tmp)**

Dear Mr. Kaiser:

This responds to you email of February 2, 2022 and motion you and Defendants circulated yesterday.

The issues you raise with respect to standing are tardy and misplaced. Given the timing and lack of substantive merit, it appears that your communication is likely being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation. *See* Fed. Civ. Pro. R. 11(a). Indeed, it appears intended to deter or punish meritorious claims and lawyers who pursue such claims on behalf of their clients.

You have been aware of the testimony of Plaintiffs for over a year. It is unclear why you are raising such issues now. They certainly could have been addressed at the time of the deposition during the discovery period. Doing so now appears to be entirely strategic. Any defenses that you would raise at this juncture are untimely and would be governed by the principle of laches.

Plaintiffs have standing to pursue damages claims with respect to all the products identified in Plaintiffs' damages classes as well as the injunctive relief claim. To the extent you are aiming your position at Ms. Lorenzen, her testimony shows that she paid for cheer competitions, apparel, and accommodations. Under *Blue Shield v. McCready*, 457 U.S. 465 (1982),

Steven J. Kaiser
February 17, 2023
Page 2

Ms. Lorenzen has standing to assert claims for damages because she is a purchaser of those products. In addition, Plaintiffs have standing to pursue claims for camps because Varsity's anticompetitive conduct was sufficiently intertwined with respect to each product. 457 U.S. at 483–84.

The Varsity ecosystem is comprised of the interrelated products and services that Varsity offers including three core components: competitions and events; uniforms and accessories; and training and education (including camps and clinics). Surrounding these core components are three external types of organizations that are essential to Varsity maintaining control of the entire ecosystem: governing bodies, safety organizations, and strategic partners. At the core of the ecosystem is digital and social interaction which Varsity claims creates a connected culture. In short, the Varsity ecosystem has three core components— competitions, camps, and apparel—that are connected via digital and social interactions and that it protects via its control of external organizations.

Indeed, the record in this case confirms that Varsity possessed market power with respect to cheer competitions, camps and apparel. Varsity leveraged its cheer competition market power with respect to camps. Using Varsity's Network and Varsity Family Plan programs, Varsity incentivized gyms and schools to choose Varsity-sponsored camps in an effort to disadvantage Varsity's cheer camp rivals. *See* Heeb Report, at ¶333. Varsity also provides bids to some of its national competitions at its cheer camps. According to NCA's cheer bid distribution document, camps also can distribute paid bids (gold paid bid, silver paid bid, or bronze paid bid) and at-large bids depending on the enrollment count of athletes at camps and type of camp hosted. *Id.*, ¶337. Bids are only offered at overnight, day, and Elite home camps at which 8 or more participating members of a team must attend to be considered for a bid. *Id.* at 338. In 2016, NCA was given 10 silver and bronze bids to the D2 Summit to award at its camps. *Id.* at 339; see also *id.* ¶¶227, 272. As Plaintiffs' experts show, there is no legitimate business reason for Varsity's tying policy. Indeed, in the but for world, Varsity would likely cease tying participation in its school cheer competitions to attendance at its cheer camps. Indeed, as Dr. Netz explains, Varsity's tying policy allowed it to leverage its market power in cheer competitions to harm competition and protect and enhance its market power in the relevant market for cheer camps. Netz Rep., at 89-92.

Steven J. Kaiser
February 17, 2023
Page 3

These alleged anticompetitive schemes would have common impact on parents and participants who expended money on cheer competition events, apparel, and camps regardless of location or degree of individualized purchases. But for Varsity's alleged anticompetitive conduct advanced by Varsity's monopoly power, indirect purchasers would have paid less money to participate in Varsity's competitive cheer "ecosystem."

Plaintiffs have standing because they are consumers who were directly injured when they paid supracompetitive prices. They were both, as were all class members, the target of the antitrust conduct of Defendants. *See: Malamud v. Sinclair Oil Corp.*, 521 F.2d 1142 (6th Cir.1975); *Association of Data Processing Service Organizations, Inc. v. Camp*, 397 U.S. 150 (1970). Plaintiffs were customers of Varsity where they purchased products sold by Varsity as part of its ecosystem. *See Blue Shield v. McReady*, 457 U.S. 465, 483-84; *Associated General Contractors*, 459 U.S. 519 (1983). Further, as shown above, the products sold within the Varsity ecosystem are intertwined. Varsity uses its exclusionary practices to prevent its competitors from gaining access to customers, such as Plaintiffs, and thereby to acquire and maintain monopoly power. *See Southaven Land Co., Inc. v. Malone & Hyde, Inc.*, 715 F.2d 1079, 1086-87 & n. 10 (1983) ("Logic dictates, therefore, that the primary class of persons protected by § 2 are those adversely affected as a result of controlled prices or an exclusion of competition. In the case at bar Southaven has not adduced an injury resulting from either controlled prices of grocery products or exclusion of competitors or participants in the grocery industry.")

We also note that you rely on rulings issued by the Court in related proceedings based on different allegations and a different record. These rulings are of limited utility here.[1] In this case, the Court has already denied Defendants' motion to dismiss on standing grounds in this case. ECF No. 333 at 3. And the Court specifically ruled that "[t]he "suitability of named plaintiffs as representatives of the class will be addressed at the class certification stage." *Id.* at 44-45. As the Court explained: "Whether the named plaintiffs 'may assert the rights of absent

---

[1] The *American Spirit* motion to dismiss ruling (ECF No. 194) related to band uniforms and graduation which are not at issue in the above-captioned case. Here, the record is substantially different and shows, among other things, that competitions, camps and apparel are intertwined and closely tied together, both from the perspective of Varsity and class members.

Steven J. Kaiser
February 17, 2023
Page 4

class members is neither a standing issue nor an Article III case or
controversy issue but depends rather on meeting the prerequisites of
Rule 23 governing class actions.'" *Id.* at 44 (quoting *Lewis v. Casey*, 518
U.S. 343 395-96 (1996)).

In addition, even if the Court were to agree with you, Plaintiffs would be
entitled to add one or more Plaintiffs to address the standing concern you
raise. *See In re Telectronics Pacing Sys., Inc.*, 172 F.R.D. 271, 283 (S.D.
Ohio 1997) ("*In re Telectronics*") ("When, and if, required the court may
substitute new class representatives."); *see* A. Conte & H. Newberg,
Newberg on Class Actions § 3.42 (4th ed. 2002) ("Under Rule 23, the
court may . . . invite interventions to bolster or substitute for class
representation."); *see also United States Parole Commission v. Geraghty*,
445 U.S. 388, 415-16 n. 8 (Powell, J., dissenting) ("If the named
plaintiff's own claim becomes moot after certification, the court can re-
examine his ability to represent the interests of class members. Should it
be found wanting, the court may seek a substitute representative or even
decertify the class.").

In our view, these contentions are warranted by existing law or by a
nonfrivolous argument for extending, modifying, or reversing existing
law or for establishing new law. *See* Rule 11(b)(2). Likewise, they have
evidentiary support. *See* Rule 11(b)(3).

Plaintiffs note that the motion for sanctions you set forth itself would run
afoul of Rule 11. In the event you continue in this regard, we intend to
pursue relief under Rule 11 against all Defendants and their counsel who
all join in your unwarranted and frivolous motion.

Sincerely,

Joseph R. Saveri

# EXHIBIT G

# CLEARY GOTTLIEB STEEN & HAMILTON LLP

2112 Pennsylvania Avenue, NW
Washington, DC 20037-3229
T: +1 202 974 1500
F: +1 202 974 1999

clearygottlieb.com

**AMERICAS**
NEW YORK
SAN FRANCISCO
SÃO PAULO
SILICON VALLEY
WASHINGTON, D.C.

**ASIA**
BEIJING
HONG KONG
SEOUL

**EUROPE & MIDDLE EAST**
ABU DHABI
BRUSSELS
COLOGNE
FRANKFURT
LONDON
MILAN
PARIS
ROME

D: +1 (202) 974-1554
skaiser@cgsh.com

February 23, 2023

Joseph R. Saveri, Jr., Esq.
Joseph Saveri Law Firm, LLP
601 California Street, Suite 1000
San Francisco, CA 94108

Re: *Jessica Jones, et al.,  v. Varsity Brands, LLC, et al.*

Mr. Saveri:

This letter is in response to yours of February 18.

Thank you for acknowledging that neither Plaintiff participated in the "camp market" as Plaintiffs have alleged it.  They have no damages in that "market," were not otherwise harmed in that "market," and are not likely to be harmed in that "market."  They therefore lack standing to bring claims in that market or represent others in seeking to do so.  That is black letter law.

The cases you cite are not on point.  In each, the plaintiff actually suffered injury in the market in which they were attempting to bring a claim, unlike here, where neither Plaintiff suffered an injury in camps.  For example, in *Blue Cross of Virginia v. McCready*, 457 U.S. 465 (1982), the issue was whether a party who had been denied reimbursement as a result of an anticompetitive health insurance scheme to exclude psychologists from the psychotherapy market, which was effectuated via an agreement not to reimburse for psychotherapy treatment received from psychologists, had standing.  As a result of the scheme, the plaintiff did not receive reimbursement for her use of a psychologist to obtain psychotherapy treatment (and thereby participated in the psychotherapy market) and thus suffered harm.  The Supreme Court held that the plaintiff had standing under the antitrust laws.  The Court's decision relates to when

Cleary Gottlieb Steen & Hamilton LLP or an affiliated entity has an office in each of the locations listed above.

Joseph R. Saveri, Esq.
February 23, 2023
Page 2

an *injured* party has standing; it does not give license to parties that did not suffer injury in the market (here camps) to sustain a claim for harm in that market.

Of similar accord are the other cases you cite in your letter. *See, e.g.*, *Southaven Land Co., Inc. v. Malone & Hyde, Inc.*, 715 F.2d 1079, 1086-87 (6th Cir. 1983) (denying standing because "Southaven is not a consumer, customer, competitor or participant in the relevant market or otherwise inextricably intertwined with any such entity" in the sense of being used "as a fulcrum, conduit or market force to injure competitors or participants in the relevant product and geographical markets")

You do not cite a case—presumably because no such case exists—where a party was permitted to assert antitrust claims in a market in which it made *no* purchases, as is the case here.

Your invocation of "tying" is also plainly misplaced. In a tying case, the potential actionable injury is the overcharge in the tied (*i.e.*, camps) market. *Pogue v. International Indus., Inc.*, 524 F.2d 342, 345-46 (6th Cir. 1975). Here neither Plaintiff alleges payment of such an overcharge.

In terms of timing, Defendants of course reserve all of their defenses until trial and, in any event, standing is not waivable. Your assertion of strategic conduct here is unfortunate. Ms. Velotta—the only Plaintiff to allege the indirect purchase of registration fees for Varsity cheer camps—did not exit this case until April 6, 2022. Plaintiffs' motion for class certification was the first court filing after that date that sought to pursue a claim for damages related to camps. In the meantime, Varsity noted the lack of standing in their interrogatory responses of October 10, 2022 and reminded Plaintiffs of the lack of standing in their letter to you of February 2, 2023.

Your assertion that another Plaintiff with standing could be located at this late date is not well taken. The time to amend pleadings to add new parties has long passed, you were aware of the need for a plaintiff that actually had standing in April 2022, and discovery has been closed for nearly a year. And, in any event, the theoretical possibility of some other party having standing does not forgive you or your clients for filing a motion that has no basis in law or fact.

This is not a close call or an arguable issue. We suggest you reconsider your position and drop the camp claims forthwith, including by filing a modified motion for class certification to that effect.

As to your threat to seek sanctions against Defendants and their counsel should we proceed, we simply note that itself would be a sanctionable act and reserve all rights in that regard.

Joseph R. Saveri, Esq.
February 23, 2023
Page 3

Very truly yours,

Steven J. Kaiser