**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TENNESSEE**

JONES, et al.

               Plaintiffs,

      v.

VARSITY BRANDS, LLC, et al.,

            Defendants.

**Case No. 2:20-cv-02892-SHL-tmp**

**DEFENDANTS' OPPOSITION TO MOTION TO ADD PLAINTIFF (ECF No. 394)**

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ........................................................................................................... 1

ARGUMENT ................................................................................................................. 3

    I.    Plaintiffs Unduly Delayed Their Request to Add a Party ............................................. 3

    II.    Adding Ms. Coulson Would Be Highly Prejudicial to Defendants and the Court and Would Undermine the Schedule ...................................................................................... 5

    III.    Plaintiffs' Motion Should Be Denied Because, Based On Their Representations, the Addition of Ms. Coulson is Unneccessary .................................................................. 7

    IV.    Plaintiffs' Motion Should Be Denied Because They Have Not Shown That Ms. Coulson Would Have Standing ................................................................................................. 10

CONCLUSION ........................................................................................................... 11

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Bearup v. Cintas Corp. No. 2*,

    No. 1:21-cv-151, 2022 WL 79852 (S.D. Ohio Jan. 7, 2022)................................................... 6

*Blue Shield of Va. v. McCready*,

    457 U.S. 465 (1982).................................................................................................................8-9

*Braun v. Cadence Healthcare Sols., LLC*,

    No. CV419-101, 2020 WL 8475967 (S.D. Ga. Dec. 11, 2020)........................................... 6

*Colo. Chiropractic Council v. Porter Mem'l Hosp.*,

    650 F. Supp. 231 (D. Colo. 1986)..................................................................................... 2

*Compound Prop. Mgmt., LLC v. Build Realty, Inc.*,

    No. 1:19-cv-133, 2020 WL 13460834 (S.D. Ohio Dec. 15, 2020)....................................... 6

*Fla. Seed Co., Inc. v. Monsanto Co.*,

    105 F.3d 1372 (11th Cir. 1997) ....................................................................................... 8

*In re Aluminum Warehousing Antitrust Litig.*,

    520 F. Supp. 3d 455 (S.D.N.Y. 2021) .............................................................................. 4

*In re Pharmacuetical Indus. Average Wholesale Price Litig.*,

    277 F.R.D. 52 (D. Mass 2011)......................................................................................... 6

*In re Telectronics Pacing Sys., Inc.*,

    172 F.R.D. 271 (S.D. Ohio 1997) .................................................................................... 6

*In re Thornburgh*,

    869 F.2d 1503 (D.C. Cir. 1989)....................................................................................... 7

*Klein v. Am. Land Title Ass'n*,

    926 F. Supp. 2d 193 (D.D.C. 2013) ............................................................................... 11

*Kremens v. Bartley*,

    431 U.S. 119 (1977)......................................................................................................... 7

*Lujan v. Defs. of Wildlife*,

    504 U.S. 555 (1992)......................................................................................................... 4

*Montgomery v. CitiMortgage, Inc.*,
    No. 10–11729, 2011 WL 5108095 (E.D. Mich. Oct. 27, 2011) ......................................... 10

*Nat'l Fed'n of Blind v. Target Corp.*,
    582 F. Supp. 2d 1185 (N.D. Cal. 2007)..................................................................................... 7

*Peterson v. Alaska Commc'ns Sys. Grp., Inc.*,
    328 F.R.D. 255 (D. Alaska 2018) ............................................................................................. 6

*Pierce v. Com. Warehouse*,
    142 F.R.D. 687 (M.D. Fla. 1992)............................................................................................. 2

*Pogue v. Int'l Indus., Inc.*,
    524 F.2d 342 (6th Cir. 1975).................................................................................................. 10

*Southaven Land Co., Inc. v. Malone & Hyde, Inc.*,
    715 F.2d 1079 (6th Cir. 1983) ............................................................................................. 8-9

*Sports Racing Servs., Inc. v. Sports Car Club of Am., Inc.*,
    131 F.3d 874 (10th Cir. 1997) .............................................................................................. 10

*Tait v. BSH Home Appliances Corp.*,
    289 F.R.D. 466 (C.D. Cal. 2012) ............................................................................................ 7

*Tic-X-Press, Inc. v. Omni Promotions Co.*,
    815 F.2d 1407 (11th Cir. 1987) ............................................................................................ 11

*U.S. Parole Comm'n v. Geraghty*,
    445 U.S. 388 (1980)................................................................................................................. 7

*Wiener v. Dannon Co., Inc.*,
    255 F.R.D. 658 (C.D. Cal. 2009) ............................................................................................ 7

**Other Authorities**

Fed. R. Civ. P. 11 ..................................................................................................................... 1-2, 8

Fed. R. Civ. P. 12 ......................................................................................................................... 6

Fed. R. Civ. P. 15 ......................................................................................................................... 3

Fed. R. Civ. P. 16 ......................................................................................................................... 3

## INTRODUCTION[1]

Plaintiffs' motion to add Amy Coulson as a new plaintiff, which was brought more than fifteen months after the Court-ordered deadline for motions to add parties and nearly ten months after the close of fact discovery, should be denied.

Plaintiffs say that they want to add Ms. Coulson to "replace Ms. Velotta" (ECF No. 394-2, ¶ 7). But Ms. Velotta's claims were voluntarily dismissed on April 6, 2022, *more than eleven months ago*. Plaintiffs do not explain why they waited nearly a year to file this motion. Nor do they reconcile what they told the Court at the time Ms. Velotta was dismissed—that "there will be no prejudice or material difference in the litigation as a result of dropping Ms. Velotta as a party to this action." (ECF No. 246-1, at PageID 4752). Plaintiffs now concede that adding Ms. Coulson would require more discovery, which of course would prejudice Defendants and potentially delay proceedings, including trial.

Prior to Plaintiffs' late identification of Ms. Coulson and filing of this motion, on February 2, 2023, Defendants requested that Plaintiffs drop their improper pursuit of cheer camp-related claims because neither Plaintiff had standing to pursue such claims. (Kaiser Decl., Ex. A, Kaiser Letter to Saveri 2/2/2023.)[2] Instead, on February 10, 2023 (before they filed their motion to add Ms. Coulson), Plaintiffs filed their motion for class certification, in which they *continued* to pursue camp claims. (ECF No. 387.) But in the absence of a plaintiff with standing to pursue those claims, those claims have no basis in fact or law. Accordingly, on February 16, 2023, Defendants served Plaintiffs with a motion under Rule 11 of the Federal Rules of Civil Procedure. The motion was filed with the Court earlier today (ECF No. 403), the first day after

---

[1] All Defendants join in this response.
[2] Defendants had previously noted the lack of standing in their responses to interrogatories on October 3, 2022. (Kaiser Decl., Ex. B at 4.)

the end of the 21-day cure period that Rule 11 provides between service and filing.  Even if the Court were to allow Plaintiffs to add Ms. Coulson, the Rule 11 motion is well taken and should be granted.  *See, e.g., Pierce v. Com. Warehouse*, 142 F.R.D. 687, 694 (M.D. Fla. 1992) (sanctioning "Plaintiffs and counsel for Plaintiffs" for violating Rule 11 in pursuing antitrust claims that they plainly lacked standing to pursue); *Colo. Chiropractic Council v. Porter Mem'l Hosp.*, 650 F. Supp. 231, 237-40 (D. Colo. 1986) (same).

The driving force behind Plaintiffs' untimely request to add Ms. Coulson seems to be their concern—apparently prompted by Defendants' February 2 letter and February 16 service of the Rule 11 motion—that neither of the existing Plaintiffs have standing to assert claims related to cheer camps.  Ms. Velotta was the only one of the three original Plaintiffs who allegedly purchased a registration at a Varsity cheer camp.  Thus, Plaintiffs' claims related to camps cannot go forward because neither existing Plaintiff has standing to bring those claims.  Curiously, however, Plaintiffs deny there is a standing issue at all.  Indeed, despite black-letter law that a plaintiff must have participated in a market to have standing to assert antitrust claims in that market, they "vigorously disagree" that the remaining two Plaintiffs lack standing to pursue claims relating to cheer camps.  (ECF No. 394-1, at PageID 13380.)  To the contrary, they assert that the current Plaintiffs *have* standing to bring camp claims.  If that is so, adding Ms. Coulson would serve no purpose, and the motion should be denied for that reason.

Moreover, Plaintiffs do not even provide sufficient information to confirm that Ms. Coulson's addition as a plaintiff would address the standing problem that they "vigorously disagree" exists.  In particular, they do not represent that Ms. Coulson purchased *competition* entry fees for any Varsity competition that required *camp* attendance.  Because Plaintiffs seek to assert a tying claim, such a purchase of the "tying product" (competitions) is required to assert a

claim relating to the "tied product" (camps). If Ms. Coulson did not purchase competition entry fees to a competition that required camp attendance, she would not have standing to assert a claim in camps, regardless of whether she purchased attendance at a Varsity camp. Plaintiffs have therefore failed to show that the amendment would not be futile.

## ARGUMENT

The Court's April 7, 2021 Scheduling Order (ECF No. 61, at PageID 335), set November 19, 2021 as the deadline for "motions to join parties." Plaintiffs have not sought leave from this deadline as required by Rule 16 or attempted to show good cause to modify the schedule but instead assert that neither "Federal Rules of Civil Procedure 15 or 16 [need to] be satisfied". (ECF No. 394-1, at PageID 13378.) Of course, that is not correct. As explicitly set forth in Rule 16, "[a] schedule may be modified only for good cause and with the judge's consent." *See* Fed. R. Civ. P. 16(b)(4).

Because Plaintiffs have not attempted to comply with Rule 16, the Court should deny Plaintiffs' motion as barred by the Scheduling Order. In any event, although Plaintiffs assert that Rule 16 and Rule 15 do not apply, they concede that "undue delay or undue prejudice may justify a court's refusal to add a party" (ECF No. 394-1, at PageID 13377 n.3), which is exactly the situation here.

## I.   PLAINTIFFS UNDULY DELAYED THEIR REQUEST TO ADD A PARTY

Plaintiffs provide no reason to excuse their delay of almost eleven months *after* Ms. Velotta exited the case to file their motion. In correspondence with Defendants, Plaintiffs tried to shift the fault for their dilatory conduct to *Defendants*, arguing that it was somehow *Defendants'* fault that Plaintiffs did not attend to the fatal standing problem in camps triggered by the departure of Ms. Velotta eleven months ago. (Kaiser Decl., Ex. C, Saveri Letter to Kaiser 2/17/23.) They asserted that Defendants had "been aware of the testimony of Plaintiffs [that they

3

did not attend camps] for over a year" (*id.*at 1), as if Plaintiffs' counsel were not at the depositions of their own clients.[3]  They went on to assert that Defendants had waived the need for Plaintiffs to prove standing under the "principle of laches." (*Id.*)

Plaintiffs' argument has no basis in fact or law.  "Plaintiffs bear the burden of showing antitrust standing."  *In re Aluminum Warehousing Antitrust Litig.*, 520 F. Supp. 3d 455, 474 (S.D.N.Y. 2021); *see also Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992) (holding that "[t]he party invoking federal jurisdiction bears the burden of establishing these elements [of standing]").  A defendant cannot "waive" that requirement.  *See, e.g.*, *Lujan*, 504 U.S. at 561 ("Since they are not mere pleading requirements but rather an indispensable part of the plaintiff's case, each element [of standing] must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation.")  Nor does a defendant have an obligation to inform a plaintiff of problems with its case, although in this instance Defendants did just that, specifically identifying the standing issue in their responses to Plaintiffs' interrogatories in October 2022 (Kaiser Decl., Ex. B at 4.), a fact that Plaintiffs omitted from their motion.  Their representation to the Court that Defendants only "recently raised the issue" (ECF No. 394-1, at PageID 13375) is factually inaccurate and, in any event, irrelevant.

The undisputable facts are that Plaintiffs knew that neither Ms. Jones nor Ms. Lorenzen had made a camp purchase when they filed their Complaint in December 2020, knew that Ms. Velotta had exited the case in April 2022, were reminded of the lack of standing by Defendants in October 2022, and were reminded again before they filed their motion for class certification on

---

[3] Likewise, the Complaint in this action, which was filed in December 2020, alleges camp purchases only by Ms. Velotta, not by Ms. Jones or by Ms. Lorenzen.  (*See* ECF No. 1 (Compl. ¶¶ 13-15).)

February 10, 2023.  They did not file this motion until February 23, 2023, which is undue delay by any measure.

## II.    ADDING MS. COULSON WOULD BE HIGHLY PREJUDICIAL TO DEFENDANTS AND WOULD UNDERMINE THE SCHEDULE

Allowing Plaintiffs to add Ms. Coulson at this late stage would unduly prejudice the nonmoving parties, which Plaintiffs also acknowledge "may justify a court's refusal to add a party" (ECF No. 394-1, at PageID 13377 n.3).  At a minimum, Defendants would be compelled to review whatever documents the previously undisclosed Ms. Coulson produces and take her deposition both to assess the substantive merits of whatever claim she is seeking to bring and her suitability as a class representative.  (Even Plaintiffs acknowledge that Ms. Coulson "must meet the requirements of Rule 23(a)." (ECF No. 394-1, at PageID 13378.))  The documents produced and deposition could lead to the need for further discovery, for example of the intermediaries in any purchase chain between Ms. Coulson and Varsity, and potentially lead to disputes over the scope of the discovery.  Defendants would have to attend to all of this in the midst of preparing and submitting their oppositions to Plaintiffs' motion for class certification (with Defendants' response due in less than a month on March 30), their response to Plaintiffs' motion to exclude certain opinions of Defendants' two experts (due the same day), their replies on the *Daubert* motions to exclude the testimony of Plaintiffs' four experts (due on April 28, 2023), and their motions for summary judgment (due on July 28, 2023), not to mention preparing for trial.  The discovery obtained could, and likely would, impact some or all of these submissions as well as potentially requiring the reopening of expert discovery, with the net result being that this case would be set back many months at least.  Defendants should not be prejudiced in this way, particularly because Ms. Velotta left the case more than eleven months ago and Plaintiffs "vigorously disagree" there is a standing issue in camps in the first place.

By contrast, Plaintiffs would *not be prejudiced at all* if the motion is denied. Plaintiffs never purchased a Varsity camp registration. Their children never attended a Varsity camp. There is no prospect that they will attend a Varsity camp in the future. Although Plaintiffs may desire to include camps in this case, Plaintiffs *themselves* have no cognizable legal interest in claims based on camps.

The cases Plaintiffs cite do not support their position. At most, they stand for the proposition that the Court *has the power* to add parties, which is not the issue here. None addresses the issue of the circumstances in which a court *should allow* the substitution of parties. For example, *Bearup v. Cintas Corp. No. 2*, No. 1:21-cv-151, 2022 WL 79852 (S.D. Ohio Jan. 7, 2022), involved an *unopposed* motion to add parties prior to the deadline for doing so. In *In re Pharmacuetical Industry Average Wholesale Price Litigation*, 277 F.R.D. 52, 59 (D. Mass 2011), the issue was an *unopposed* motion to add class representatives as part of a settlement. The unopposed motion in *Braun v. Cadence Healthcare Solutions, LLC*, No. CV419-101, 2020 WL 8475967 (S.D. Ga. Dec. 11, 2020), was brought shortly after relevant information emerged, not nearly a year later as here. In *Compound Property Management, LLC v. Build Realty, Inc.*, No. 1:19-cv-133, 2020 WL 13460834 (S.D. Ohio Dec. 15, 2020), the court allowed the plaintiffs to file an amended complaint after the original complaint was dismissed under Rule 12(b)(6), not nearly a year after the close of discovery. *In re Telectronics Pacing Systems, Inc.*, 172 F.R.D. 271, 283 (S.D. Ohio 1997), concerned whether a class representative needed to have "filed an individual action in order to qualify as a class representative," which is not at issue here. Nor is whether a class representative needs to be a named plaintiff in the action. *See Peterson v. Alaska Commc'ns Sys. Grp., Inc.*, 328 F.R.D. 255, 268 (D. Alaska 2018). *U.S. Parole Commission v. Geraghty*, 445 U.S. 388 (1980); *Kremens v. Bartley*, 431 U.S. 119 (1977); and *In re Thornburgh*,

869 F.2d 1503, 1509-10 (D.C. Cir. 1989), related to whether a class action could be continued if the representative's claim became moot by subsequent events, which is also not at issue. Here, Ms. Velotta, the only putative representative with potential standing in camps, was voluntarily dropped, and the remaining Plaintiffs did nothing for nearly a year to address the lack of standing that Ms. Velotta's departure caused.

The only case that Plaintiffs cite that is remotely similar to the present circumstances is *Wiener v. Dannon Co., Inc.*, 255 F.R.D. 658 (C.D. Cal. 2009), where the court *denied* class certification because the named plaintiff had not made purchases of the items at issue. After denying class certification, the court allowed the plaintiff a few days to find a replacement class representative. The court did not address any prejudice to the defendant that such a substitution would cause or whether it would complicate the case.[4]

## III. PLAINTIFFS' MOTION SHOULD BE DENIED BECAUSE, BASED ON THEIR REPRESENTATIONS, THE ADDITION OF MS. COULSON IS UNNECCESSARY

Paradoxically, Plaintiffs in effect argue that Ms. Coulson's participation in the case is not necessary because the current Plaintiffs Ms. Lorenzen and Ms. Jones satisfy the standing requirements for their claims as to camps, even though, as they concede, "neither paid for Varsity cheer camps." (ECF No. 394-1, at PageID 13380.) In that regard, they "vigorously disagree" that the two current Plaintiffs lack standing to pursue claims relating to camps. (ECF No. 394-1, at PageID 13380.) For Plaintiffs to argue otherwise would, in effect, concede that Defendants' Rule 11 motion (ECF No. 403) is well taken.

---

[4] Likewise, *National Federation of Blind v. Target Corp.*, 582 F. Supp. 2d 1185, 1209 (N.D. Cal. 2007), did not involve complicated issues of standing and tracing of alleged overcharges through the chain of distribution but rather involved standing under the Americans with Disabilities Act. Unlike here, substituting a new class representative into the case would not prejudice the defendants, require more discovery, or delay resolution of the case. Similarly, in *Tait v. BSH Home Appliances Corp.*, 289 F.R.D. 466, 477 (C.D. Cal. 2012), there was no indication that the substitution would cause any need for additional discovery or otherwise prejudice anyone.

Even assuming Plaintiffs have standing on the camp claims, which they do not, no purpose would be served by allowing the late addition of Ms. Coulson. Plaintiffs identify no information or testimony that Ms. Coulson would provide in support of their claims. Since, *in Plaintiffs' conception*, adding Ms. Coulson would not aid the claims they are seeking to assert or have any other substantive effect, the motion should be denied.

Notwithstanding Plaintiffs' "vigorous disagreement," there is, in reality, *no* basis for Plaintiffs' position that the two existing Plaintiffs have standing to bring claims relating to camps. As this Court has already held, to have standing to bring claims in a particular market, a plaintiff must have *participated* in that market. (*American Spirit*, ECF No. 194 at PageID 2938.) This is settled, black-letter law. *See, e.g.*, *Southaven Land Co., Inc. v. Malone & Hyde, Inc.*, 715 F.2d 1079, 1086 (6th Cir. 1983) ("A significant element of the § 4 'standing' inquiry is the nature of the plaintiff's alleged injury either as a 'customer' or 'participant' in the 'relevant market.'"); *Fla. Seed Co., Inc. v. Monsanto Co.*, 105 F.3d 1372, 1374 (11th Cir. 1997) ("Basically, a plaintiff must show that it is a customer or competitor in the relevant antitrust market."). It is undisputed that neither Plaintiff purchased attendance at a Varsity camp (or even attended a Varsity camp). They, therefore, lack standing.

In an effort to salvage the camp claims, Plaintiffs miscite *Blue Shield of Virginia v. McCready*, 457 U.S. 465, 484 (1982) and the Court's "inextricably intertwined" language. (*See* Kaiser Decl., Ex. C.) But *McCready* does not help their cause. In *McCready*, the issue was whether a party who had been denied reimbursement as a result of an anticompetitive scheme to exclude psychologists from the psychotherapy market, which was effectuated via an agreement with an insurance company not to reimburse for psychotherapy treatment received from psychologists, had antitrust standing. 457 U.S. at 467. As a result of the scheme, the plaintiff

8

suffered harm when she did not receive reimbursement for her use of a psychologist to obtain psychotherapy treatment. By seeking and obtaining psychotherapy service from a psychologist, the plaintiff participated in the psychotherapy market. The Supreme Court held that the plaintiff had standing under the antitrust laws because her harm was "inextricably intertwined" with the scheme because people in the plaintiff's position—people who had received services *in the relevant market*—necessarily had to be harmed by lack of reimbursement for the scheme to work. *Id.* at 484. The Court's decision relates to when a *party injured in the market* has standing; it does not give license to parties that did not suffer injury in the market (here, camps) to sustain a claim in that market. In *Southaven Land Co., Inc.*, the Sixth Circuit denied standing because the plaintiff was "not a consumer, customer, competitor or participant in the relevant market" explaining that "inextricably intertwined" means that the plaintiff must be used "as a fulcrum, conduit or market force to injure competitors or participants in the relevant product and geographical markets." 715 F.2d at 1086-87.

Although Plaintiffs invoke the "inextricably intertwined" language, there are no such allegations here. Rather, Plaintiffs say that Varsity required teams attending a few of its end-of-year high-level high school championship meets to be "credentialed" by attending a Varsity camp. (Compl. ¶ 158.) Plaintiffs call this a "tying arrangement" but do not dispute that, in stark contrast to the plaintiff in *McCready*, neither Ms. Lorenzen nor Ms. Jones purchased a Varsity camp or attended a Varsity camp. Plaintiffs have not alleged—nor could they—facts to show that either was used "as a fulcrum, conduit or market force to injure competitors or participants in the [alleged camp market]." *See Southaven Land Co., Inc.*, 7125 F.2d at 1086. Moreover, the measure of damages in a tying case is the difference between what the plaintiff paid for the tied good (here camps) and what the price would have been in the absence of the tie. *Pogue v. Int'l*

*Indus., Inc.*, 524 F.2d 342, 345-46 (6th Cir. 1975).  Here, neither Plaintiff paid for the tied good in the first place.  Thus, neither was overcharged.[5]

## IV.  PLAINTIFFS' MOTION SHOULD BE DENIED BECAUSE THEY HAVE NOT SHOWN THAT MS. COULSON WOULD HAVE STANDING

Plaintiffs have not even shown that *Ms. Coulson* herself would have standing to assert a claim to camps.  Thus, their motion should be denied because they have not demonstrated that her addition would not be futile.  *See, e.g., Montgomery v. CitiMortgage, Inc.*, No. 10–11729, 2011 WL 5108095, at *8 (E.D. Mich. Oct. 27, 2011) (denying leave to amend where plaintiff failed to explain *why* his proposed amendments would not be futile).

Plaintiffs assert that Ms. Coulson paid for a Varsity camp, but they do not say that she purchased (indirectly or otherwise) the *tying* product–entrance to one of the few Varsity end-of-season high-level high school national championship cheer competitions.  If she did not purchase the *tying* product, she cannot assert a tying claim, and her proposed addition would be futile. *See, e.g., Sports Racing Servs., Inc. v. Sports Car Club of Am., Inc.*, 131 F.3d 874, 887 (10th Cir. 1997) ("two types of parties may have standing to challenge illegal tying arrangements—the purchasers who are forced to buy the tied product to obtain the tying product (the prototypical tying plaintiff), and the competitor who is restrained from entering the market for the tied

---

[5] In their memorandum and their lead counsel's sworn declaration, Plaintiffs also say that "Defendants' Network Agreements and Family Plan … incentivize[s] gym owners to send athletes to Varsity camps" (ECF No. 394-1 at PageID 13380; *see also* ECF No. 394-2, at PageID 13386 (sworn declaration of lead counsel.))  This is patently incorrect.  Indeed, Plaintiffs' own expert wrote that "[r]ebates [under those plans] are based on *payments in the cheer competition and cheer apparel markets*."  (ECF No. 388-3 (Heeb Rep. ¶ 117 (emphasis added)).)  Even if Plaintiffs were correct that camp attendance could earn a gym a rebate (which it could not), Plaintiffs would still lack standing in camps because they did not attend or pay for a Varsity camp.  Any rebate received as a result of a gym's attendance at a camp would either benefit them by increasing the gym's revenue or, at worst, have no impact on them.  Plaintiffs do not even try to explain how the "inextricably intertwined" language of *McCready* would help them on the rebate programs, which it would not.

10

product"); *see also Klein v. Am. Land Title Ass'n*, 926 F. Supp. 2d 193, 201 n.6 (D.D.C. 2013) ("Klein lacks antitrust standing to assert such a [tying] claim because he is neither a purchaser who was forced to buy the tied product nor a competitor who is restrained from entering the market for the tied product.")  If Ms. Coulson's purchase of the tied product (camps) was not coerced by the need to purchase the tying product (the relevant competitions), she has no tying claim.  *See, e.g., Tic-X-Press, Inc. v. Omni Promotions Co.*, 815 F.2d 1407, 1415 (11th Cir. 1987) ("A showing of coercion requires evidence of actual exertion of economic muscle against the buyer which actually influences his choice of products in the tied market.")

If the current Plaintiffs have standing in camps, which is Plaintiffs' position, Ms. Coulson's participation in the case would add nothing.  If the current Plaintiffs do not have standing, then the time to cure the deficiency was when Ms. Velotta left the case, not nearly a year later, long after discovery has closed, after expert discovery is complete and deep into class certification briefing.  And, in any event, Plaintiffs have not even alleged facts from which it could be concluded that Ms. Coulson has standing in camps.

## CONCLUSION

Defendants respectfully request that the Court deny Plaintiffs' Motion for Leave to Add a Party in its entirety.

Dated: March 9, 2023

Respectfully submitted,

s/ Matthew S. Mulqueen

George S. Cary*
Steven J. Kaiser*
Linden Bernhardt*
CLEARY GOTTLIEB STEEN & HAMILTON LLP
2112 Pennsylvania Avenue, NW
Washington, DC 20037
Phone: (202) 974-1500
Fax: (202) 974-1999
gcary@cgsh.com
skaiser@cgsh.com
lbernhardt@cgsh.com

Jennifer Kennedy Park*
Heather Nyong'o*
CLEARY GOTTLIEB STEEN & HAMILTON LLP
1841 Page Mill Road, Suite 250
Palo Alto, CA 94304
Phone: (650) 815-4100
Fax: (202) 974-1999
jkpark@cgsh.com
hnyongo@cgsh.com

* Admitted *pro hac vice*

Matthew S. Mulqueen (TN #28418)
Adam S. Baldridge (TN #23488)
BAKER, DONELSON, BEARMAN, CALDWELL &
BERKOWITZ
165 Madison Avenue, Suite 2000
Memphis, TN 38103
Phone: (901) 526-2000
Fax: (901) 577-0866
mmulqueen@bakerdonelson.com
abaldridge@bakerdonelson.com

*Attorneys for Varsity Brands, LLC; Varsity Spirit,
LLC; Varsity Spirit Fashions & Supplies, LLC;
Charlesbank Capital Partners, LLC; Bain Capital
Private Equity LP*

s/ Nicole Berkowitz Riccio

12

Grady Garrison (TN #008097)
Nicole Berkowitz Riccio (TN #35046)
James Andrew Roach (TN #37934)
Karen Lott Glover (TN #38714)
BAKER, DONELSON, BEARMAN, CALDWELL
& BERKOWITZ
165 Madison Avenue, Suite 2000
Memphis, TN 38103
Phone: (901) 526-2000
Fax: (901) 577-0866
ggarrison@bakerdonelson.com
nriccio@bakerdonelson.com
aroach@bakerdonelson.com
kglover@bakerdonelson.com

*Attorneys for U.S. All Star Federation, Inc.*

s/ Brendan P. Gaffney

Paul E. Coggins*
Brendan P. Gaffney*
Kiprian E. Mendrygal*
Jennifer McCoy*
Katherine Wright
LOCKE LORD LLP
2200 Ross Avenue, Suite 2800
Dallas, TX 75201
Phone: (214) 740-8000
Fax: (214) 740-8800
pcoggins@lockelord.com
bgaffney@lockelord.com
kmendrygal@lockelord.com
jennifer.mccoy@lockeord.com
katie.wright@lockelord.com

* Admitted pro hac vice

Edward L. Stanton III (TN #018904)
S. Keenan Carter (TN # 023386)
BUTLER SNOW LLP
6075 Poplar Avenue, Suite 500
Memphis, Tennessee 38119
Telephone: (901) 680-7336
Fax: (901) 680-7201

13

Edward.Stanton@butlersnow.com
Keenan.carter@butlersnow.com

*Attorneys for Jeff Webb*