# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE
# WESTERN DIVISION

| | |
|---|---|
| **JESSICA JONES, et al.,** | Case No. 2:20-cv-02892-SHL-tmp |
| Plaintiffs, | |
| v. | |
| **VARSITY BRANDS, LLC, et al.** | |
| Defendants. | |
| | **JURY DEMAND** |

## PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR SANCTIONS

## MEMORANDUM OF LAW

Defendants' Motion for Sanctions under Rule 11 is unwarranted and frivolous, and was filed for an improper purpose. Defendants' motion argues that Plaintiffs' motion for class certification is so totally devoid of merit and frivolous that Plaintiffs and their counsel should be sanctioned. ECF No. 402. Yet Defendants' own correspondence and briefing proves beyond any doubt that Plaintiffs had more than sufficient legal and factual justification to pursue claims for damages for camp-related purchases, along with damages claims for purchases of Varsity competitions and apparel. Defendants were well aware that Plaintiffs had more than sufficient factual and legal bases for pursuing camp-related claims. Yet Defendants filed their motion anyway, for the purpose of intimidating Plaintiffs into dropping their meritorious camp related claims. *See* Declaration of J. Saveri Filed in Support of this Motion ("Saveri Decl.") at Ex. A [Feb. 2, 2023 Letter from Kaiser to Saveri] at 1 ("Defendants request that Plaintiffs drop their claims relating to camps from this case without further delay, including by not seeking certification of a class relating to camps and officially dismissing the claims relating to camps from the case via a stipulated order of dismissal."). Defendants' motion is thus not only frivolous, but sanctionable itself under Rule 11.

Defendants' own documents make clear three key points. First, Defendants have conceded that so long as a plaintiffs' injury in one market is "inextricably entwined" with another market, that plaintiff has standing to pursue claims in the other market. *See* ECF No. 402 at 4. Defendants therefore concede that Plaintiffs have standing if they can show that their injury from purchasing products in Varsity's ecosystem was "inextricably intertwined" with the other products in Varsity's ecosystem. *Blue Shield of Virginia v. McCready*, 457 U.S. 465 (1982). Plaintiffs have informed Defendants in detail how the markets are inextricably intertwined based,

among other things, on Defendants' own documents, deposition testimony and the opinions of economists. *See* Saveri Decl. at Ex. B [Feb. 17 letter from Saveri to Kaiser]. Defendants' response to Plaintiffs letter did nothing to foreclose Plaintiffs' position. *See* Saveri Decl. at Ex. C [Feb. 23, 2023 Letter from Kaiser to Saveri].

There is ample case law to support Plaintiffs' position. For example in *Dang v. San Francisco Forty Niners*, the Court held the Plaintiff had antitrust standing to pursue claims alleging two inextricably intertwined markets, where the plaintiff only purchased a product in one of the two markets. 964 F. Supp. 2d 1097, 1111–13 (N.D. Cal. 2013). The Court held that the markets were inextricably intertwined because "anticompetitive conduct in the licensing market would necessarily have an effect on the retail market." *Id.* at 1113. So too here. Because Varsity developed, marketed and sold its camps and competitions together, and exercised its monopoly power as to each, anticompetitive conduct in each market would "necessarily have an effect" on the other market. Similarly, in *In re Automotive Parts Antitrust Litigation*, the court held that indirect purchaser plaintiffs had standing in "inextricably linked and intertwined" markets where demand in a vehicles market created demand in a vehicle components market. No. 12-MD-02311, 2013 WL 2456612, *15 (E.D. Mich., 2013). Given Defendants' strategy of leveraging market dominance through anticompetitive tying, rebates, exclusionary practices and other intertwined activities, demand in the camps and competitions markets drives demand in the other market too. *See also In re Auto. Parts Antitrust Litig.*, 29 F.Supp.3d 982, 1002 (E.D. Mich., 2014). (stating that "[t]he Court's conclusion [that plaintiffs have standing] is not altered by [plaintiffs'] status relative to market participation" and "[s]tanding under antitrust law can be established even where the market participant test is blurry"). Indeed, even outside the antitrust context, class representatives may have standing to pursue damages with respect to other similar

products they did not in fact purchase. *See, e.g.*, *Gold v. Eva Nats., Inc.*, 586 F. Supp. 3d 158, 162 (E.D.N.Y. 2022) ("Plaintiff satisfies the requirements for class standing at this juncture . . . [because] even though the plaintiff did not purchase each of the products at issue," the claims with respect to each product were "sufficiently similar").

Defendants' motion for sanctions seeks to preemptively adjudicate whether the applicable standards are met, rather than on the merits. And whether the markets are sufficiently intertwined is in part a factual determination. Defendants' admission that there is a disagreement on the legal standard and the record in this case is alone sufficient to show that Defendants' motion for sanctions is filed in bad faith. Instead of joining this issue on the merits, Defendants threatened Plaintiffs with sanctions if they did not dismiss their claims outright. *See* Saveri Decl. Ex. A [Feb. 2, 2023 Letter from Kaiser to Saveri] ("Should Plaintiffs persist in asserting claims based on camps, including by moving to certify a class relating to camps, Varsity will ask the Court for sanctions.").

Second, Defendants concede that there are numerous cases that have allowed plaintiffs to add class representatives during and even after class certification, including for the specific purpose of curing a standing deficiency. *See* ECF No. 404 at 7 & n.4. In Defendants' Opposition to Plaintiffs' Motion to Add Class Representative (ECF No. 404), Defendants state:

> The only case that Plaintiffs cite that is remotely similar to the present circumstances is *Wiener v. Dannon Co., Inc.*, 255 F.R.D. 658 (C.D. Cal. 2009), where the court *denied* class certification because the named plaintiff had not made purchases of the items at issue. After denying class certification, the court allowed the plaintiff a few days to find a replacement class representative. The court did not address any prejudice to the defendant that such a substitution would cause or whether it would complicate the case.

*Id.* at 7. Even putting all of the other cases that Plaintiffs cite aside, this case alone shows that Plaintiffs have a reasonable basis for seeking to add a new class representative, which would cure Defendants' arguments on standing.

Plaintiffs' Motion to Add Class Representative was filed on February 23, 2023, shortly after Defendants threatened Plaintiffs with sanctions if they did not voluntarily dismiss their camp-related claims. If Plaintiffs' motion is granted, it will cure the alleged deficiency that Defendants are asserting. Yet despite having that motion in hand, which detailed numerous cases that have allowed the addition of class representatives during or even after class certification, Defendants filed their motion for sanctions. Defendants could have simply opposed Plaintiffs' motion to add a new class representative. Instead, they chose to file a frivolous motion for sanctions, the basis of which is directly contradicted by their opposition papers and other statements and the record in this case. In their opposition, Defendants concede there is case law supporting Plaintiffs' request to add a new class representative which would cure Defendants' standing arguments. *See* ECF No. 404 at 6–7 (citing cases and conceding that "the Court *has the power*" to add new class representatives). Yet they filed their motions for sanctions in spite of this authority.

Defendants cite two cases for the alleged proposition that sanctions should be imposed on plaintiffs that lack standing. *See* ECF No. 402 at 4–5 ("In similar circumstances—where an antitrust plaintiff pursued claims that it plainly had no standing to pursue—courts have imposed such sanctions."). But both cases cited by Defendants are so thoroughly inapposite and inapplicable that no reasonable attorney—Defendants included—could have possibly believed they support sanctions here. In *Pierce v. Commercial Warehouse*, a court granted sanctions after the plaintiff filed no less than three different complaints after they were repeatedly dismissed for various reasons, including because the plaintiff in that case was "an entity which was set up as a propaganda and fund-raising device for purposes of this litigation," which proceeded to "[churn] out a stream of press releases and mailings to jobbers around the country, referring to this lawsuit

and requesting money." *Pierce v. Com. Warehouse*, 142 F.R.D. 687, 691 (M.D. Fla. 1992). After numerous motions to dismiss on the same issues, after summary judgment motions filed by both parties were granted in Defendants' favor, after Plaintiffs "acknowledged that the [fraudulent plaintiff entity] could not meet the requirements for a class action under Rule 23," and after other transgressions, the court granted sanctions. *Id.* at 691, 693–94. And in *Colorado Chiropractic Council*, a court granted sanctions for what the court called "baseless litigation." *Colorado Chiropractic Council v. Porter Mem'l Hosp.*, 650 F. Supp. 231, 234 (D. Colo. 1986). In that case, brought on behalf of forty-six chiropractors who alleged that defendant hospitals had "obstructed plaintiffs' attempts to utilize the hospitals' resources and have denied them hospital staff privileges," it turned out that "none of the plaintiffs were ever denied the right to practice at any of the hospitals." *Id*. at 234, 236. No reasonable attorney could believe that these cases—which essentially granted sanctions against attorneys for bringing what amounted to entirely fraudulent suits—could ever support sanctions for a plaintiff that (1) justifiably argues that the Supreme Court's inextricably intertwined doctrine supports standing to pursue claims in a market tied to a market in which the plaintiffs uncontrovertibly have standing to pursue; and (2) seeks to add a new class representative to cure any alleged standing defect, as numerous courts have allowed. Defendants' citations to these two cases prove they have no reasonable justification in pursuing sanctions here.

Third, Defendants are using their motion for sanctions to adjudicate the merits of Plaintiffs' camps claims and sought to intimidate Plaintiffs into "withdrawing contentions that are fairly debatable." Fed. R. Civ. P. 11, Advisory Committee Note on 1993 Amendments. That is unwarranted and highly improper. Defendants' own motion for sanctions establishes that Defendants knew that after one of Plaintiffs' class representatives, Michelle Velotta, decided to

drop from being a class representative on April 6, 2022, Plaintiffs' remaining class representatives had not purchased camps. *See* ECF No. 402 at 2 & n.1. Defendants have thus known about this issue since April 6, 2022, almost 12 months ago. Instead of filing a motion under Rule 12(b)(1) for lack of standing, or instead of raising the standing issue in its opposition to class certification, Defendants threatened Plaintiffs with sanctions if they did not voluntarily dismiss their meritorious camp-related claims. That is highly improper and has been thoroughly condemned. Indeed, the Advisory Committee note to the 1993 amendments to Rule 11 states this clearly:

> Rule 11 motions should not be made or threatened for minor, inconsequential violations of the standards prescribed by subdivision (b). They should not be employed as a discovery device **or to test the legal sufficiency or efficacy of allegations in the pleadings**; other motions are available for those purposes. **Nor should Rule 11 motions be prepared to emphasize the merits of a party's position, to exact an unjust settlement, [or] to intimidate an adversary into withdrawing contentions that are fairly debatable**[.]

Fed. R. Civ. P. 11, Advisory Committee Note on 1993 Amendments (emphasis added); *see also Jawbone, LLC v. Donohue*, No. 01 CIV. 8066 (CSH), 2002 WL 1424587, at *6 (S.D.N.Y. June 28, 2002) (quoting Fed. R .Civ. P. 11, Advisory Committee Note on 1993 Amendments). The use of a Rule 11 motion as a "substitute for a challenge governed by the more suitable standards of Fed. R. Civ. P. 12" must be "discourage[d]." *Dobronski v. Alarm Mgmt. II L.L.C.*, No. 18-11055, 2019 WL 1232690, at *1-2 (E.D. Mich. Mar. 18, 2019). The Sixth Circuit is in accord. *Gibson v. Solideal USA, Inc.*, 489 F. App'x 24, 30 (6th Cir. 2012) ("If, as [Defendant] now contends, [Plaintiff's] complaint was obviously foreclosed by existing law, it should have filed a motion to dismiss for failure to state a claim rather than incur the significant discovery expenses it now seeks to recover.").

    The Court's Local Rules also forbid Defendants' conduct. In Appendix C to the Local Rules, the Court has specified "Guidelines for Professional Courtesy and Conduct." Those

professional guidelines state that a "lawyer should seek sanctions against opposing counsel only where required for the protection of the client or of the legal system and not for mere tactical advantage." Defendants' motion for sanctions was clearly brought to secure a tactical advantage, and to disrupt the orderly progress of the litigation through the misapplication of Rule 11 and the accompanying threat of sanctions. Defendants seek to dismiss Plaintiffs' claims outside of the proper Rule 12 or class certification proceeding and to disrupt Plaintiffs' pretrial preparation, multiplying the proceedings and raising costs. Indeed, that the issue of Plaintiffs' standing is now being litigated in a motion for sanctions rather than through the proper litigation procedures proves Defendants' motion is being used for tactical and improper reasons. Plaintiffs reserve all rights to assert any additional bases for standing if Defendants challenge standing through proper litigation procedures, such as at the class certification stage, as this Court ordered. *See* ECF No. 333 at 44–45.

In sum, Defendants' motion for sanctions is devoid of merit because Plaintiffs have legal and factual basis for showing that the purchases of products—and Defendants sales and marketing strategies—are inextricably intertwined, and to seek to add a new class representative that would cure the very deficiency that Defendants allege. Given Defendants' delay in raising the issue with Plaintiffs until just before class certification, with the threat that unless Plaintiffs voluntarily dismissed their camps claims Defendants would seek sanctions against Plaintiffs and their counsel, it is clear that Defendants' motion for sanctions is being used for an improper purpose. *See* Fed. R. Civ. P. 11, Advisory Committee Note on 1993 Amendments ("Nor should Rule 11 motions be prepared to emphasize the merits of a party's position, to exact an unjust settlement, [or] to intimidate an adversary into withdrawing contentions that are fairly debatable[.]").

For all of the above reasons, Defendants' motion for sanctions is not only frivolous and should be denied, but it is itself a violation of Rule 11. Plaintiffs will file a separate motion for sanctions seeking to recover costs and fees associated with Defendants' conduct in filing this baseless and purely strategic motion for sanctions.

Dated: March 23, 2023

Respectfully submitted,

By: *Joseph R. Saveri*
Joseph R. Saveri

Joseph R. Saveri*
Steven N. Williams*
Ronnie Seidel Spiegel*+
Kevin E. Rayhill*
Elissa A. Buchanan*
David Seidel*
JOSEPH SAVERI LAW FIRM, LLP
601 California Street, Suite 1000
San Francisco, California 94108
Telephone: (415) 500-6800
Facsimile: (415) 395-9940
jsaveri@saverilawfirm.com
swilliams@saverilawfirm.com
rspiegel@saverilawfirm.com
krayhill@saverilawfirm.com
eabuchanan@saverilawfirm.com
dseidel@saverilawfirm.com

Van Turner Jr. (TN Bar No. 22603)
TURNER FEILD, PLLC
2650 Thousand Oaks Blvd., Suite 2325
Memphis, Tennessee 38118
Telephone: (901) 290-6610
Facsimile: (901) 290-6611
VTurner@TurnerFeildLaw.com

Richard M. Paul III*
Ashlea Schwarz*
PAUL LLP
601 Walnut, Suite 300
Kansas City, Missouri 64106
Telephone: (816) 984-8100
rick@paulllp.com
ashlea@paulllp.com

Jason S. Hartley*
Fatima Brizuela*
HARTLEY LLP
101 West Broadway, Suite 820
San Diego, CA 92101
Telephone: (619) 400-5822
hartley@hartleyllp.com
brizuela@hartleyllp.com

Daniel E. Gustafson*
Daniel C. Hedlund*
Daniel J. Nordin*
GUSTAFSON GLUEK PLLC
Canadian Pacific Plaza
120 South Sixth Street, Suite 2600
Minneapolis, MN 55402
Telephone: (612) 333-8844
Facsimile: (612) 339-6622
dgustafson@gustafsongluek.com
dhedlund@gustafsongluek.com
dnordin@gustafsongluek.com

* Admitted *pro hac vice*

+Located in Washington State

*Attorneys for Individual and Representative Plaintiffs*