# EXHIBIT B

# JOSEPH SAVERI
## LAW FIRM

601 CALIFORNIA STREET
SUITE 1000
SAN FRANCISCO CA 94108

TEL 415.500.6800
FAX 415.395.9940

February 17, 2023

**Via Electronic Mail**

Steven J. Kaiser
Cleary Gottlieb Steen & Hamilton LLP
2112 Pennsylvania Avenue, NW
Washington, DC 20037
skaiser@cgsh.com

**Re:** *Jones v. Bain Capital Private Equity*
(M.D. Tenn. No. 2:20-cv-02892-SHL-tmp)

Dear Mr. Kaiser:

This responds to you email of February 2, 2022 and motion you and Defendants circulated yesterday.

The issues you raise with respect to standing are tardy and misplaced. Given the timing and lack of substantive merit, it appears that your communication is likely being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation. *See* Fed. Civ. Pro. R. 11(a). Indeed, it appears intended to deter or punish meritorious claims and lawyers who pursue such claims on behalf of their clients.

You have been aware of the testimony of Plaintiffs for over a year. It is unclear why you are raising such issues now. They certainly could have been addressed at the time of the deposition during the discovery period. Doing so now appears to be entirely strategic. Any defenses that you would raise at this juncture are untimely and would be governed by the principle of laches.

Plaintiffs have standing to pursue damages claims with respect to all the products identified in Plaintiffs' damages classes as well as the injunctive relief claim. To the extent you are aiming your position at Ms. Lorenzen, her testimony shows that she paid for cheer competitions, apparel, and accommodations. Under *Blue Shield v. McCready*, 457 U.S. 465 (1982),

Steven J. Kaiser
February 17, 2023
Page 2

Ms. Lorenzen has standing to assert claims for damages because she is a purchaser of those products. In addition, Plaintiffs have standing to pursue claims for camps because Varsity's anticompetitive conduct was sufficiently intertwined with respect to each product. 457 U.S. at 483–84.

The Varsity ecosystem is comprised of the interrelated products and services that Varsity offers including three core components: competitions and events; uniforms and accessories; and training and education (including camps and clinics). Surrounding these core components are three external types of organizations that are essential to Varsity maintaining control of the entire ecosystem: governing bodies, safety organizations, and strategic partners. At the core of the ecosystem is digital and social interaction which Varsity claims creates a connected culture. In short, the Varsity ecosystem has three core components—competitions, camps, and apparel—that are connected via digital and social interactions and that it protects via its control of external organizations.



These alleged anticompetitive schemes would have common impact on parents and participants who expended money on cheer competition events, apparel, and camps regardless of location or degree of individualized purchases. But for Varsity's alleged anticompetitive conduct advanced by Varsity's monopoly power, indirect purchasers would have paid less money to participate in Varsity's competitive cheer "ecosystem."

Plaintiffs have standing because they are consumers who were directly injured when they paid supracompetitive prices. They were both, as were all class members, the target of the antitrust conduct of Defendants. *See: Malamud v. Sinclair Oil Corp.*, 521 F.2d 1142 (6th Cir.1975); *Association of Data Processing Service Organizations, Inc. v. Camp*, 397 U.S. 150 (1970). Plaintiffs were customers of Varsity where they purchased products sold by Varsity as part of its ecosystem. *See Blue Shield v. McReady*, 457 U.S. 465, 483-84; *Associated General Contractors*, 459 U.S. 519 (1983). Further, as shown above, the products sold within the Varsity ecosystem are intertwined. Varsity uses its exclusionary practices to prevent its competitors from gaining access to customers, such as Plaintiffs, and thereby to acquire and maintain monopoly power. *See Southaven Land Co., Inc. v. Malone & Hyde, Inc.*, 715 F.2d 1079, 1086-87 & n. 10 (1983) ("Logic dictates, therefore, that the primary class of persons protected by § 2 are those adversely affected as a result of controlled prices or an exclusion of competition. In the case at bar Southaven has not adduced an injury resulting from either controlled prices of grocery products or exclusion of competitors or participants in the grocery industry.")

We also note that you rely on rulings issued by the Court in related proceedings based on different allegations and a different record. These rulings are of limited utility here.[1] In this case, the Court has already denied Defendants' motion to dismiss on standing grounds in this case. ECF No. 333 at 3. And the Court specifically ruled that "[t]he "suitability of named plaintiffs as representatives of the class will be addressed at the class certification stage." *Id.* at 44-45. As the Court explained: "Whether the named plaintiffs 'may assert the rights of absent

---

[1] The *American Spirit* motion to dismiss ruling (ECF No. 194) related to band uniforms and graduation which are not at issue in the above-captioned case. Here, the record is substantially different and shows, among other things, that competitions, camps and apparel are intertwined and closely tied together, both from the perspective of Varsity and class members.

class members is neither a standing issue nor an Article III case or controversy issue but depends rather on meeting the prerequisites of Rule 23 governing class actions.'" *Id.* at 44 (quoting *Lewis v. Casey*, 518 U.S. 343 395-96 (1996)).

In addition, even if the Court were to agree with you, Plaintiffs would be entitled to add one or more Plaintiffs to address the standing concern you raise. *See In re Telectronics Pacing Sys., Inc.*, 172 F.R.D. 271, 283 (S.D. Ohio 1997) ("*In re Telectronics*") ("When, and if, required the court may substitute new class representatives."); *see* A. Conte & H. Newberg, Newberg on Class Actions § 3.42 (4th ed. 2002) ("Under Rule 23, the court may . . . invite interventions to bolster or substitute for class representation."); *see also United States Parole Commission v. Geraghty*, 445 U.S. 388, 415-16 n. 8 (Powell, J., dissenting) ("If the named plaintiff's own claim becomes moot after certification, the court can re-examine his ability to represent the interests of class members. Should it be found wanting, the court may seek a substitute representative or even decertify the class.").

In our view, these contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law. *See* Rule 11(b)(2). Likewise, they have evidentiary support. *See* Rule 11(b)(3).

Plaintiffs note that the motion for sanctions you set forth itself would run afoul of Rule 11. In the event you continue in this regard, we intend to pursue relief under Rule 11 against all Defendants and their counsel who all join in your unwarranted and frivolous motion.

Sincerely,

Joseph R. Saveri