# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
### WESTERN DIVISION

| | |
|---|---|
| **JESSICA JONES, et al.,** | Case No. 2:20-cv-02892-SHL-tmp |
| Plaintiffs, | |
| v. | |
| **VARSITY BRANDS, LLC, et al.** | |
| Defendants. | |
| | **JURY DEMAND** |

## PLAINTIFFS' CROSS-MOTION FOR SANCTIONS AGAINST DEFENDANTS AND COUNSEL AND MEMORANDUM OF LAW IN SUPPORT

## <u>TABLE OF CONTENTS</u>

**Page**

I.    BACKGROUND .................................................................................................. 1

II.   LEGAL STANDARD ......................................................................................... 3

III.  ARGUMENT ...................................................................................................... 4

      A.    Defendants' Rule 11 Motion Is a Rule 11 Violation ............................... 4

            1.    Defendants' Rule 11 Motion is Frivolous .................................... 5

            2.    Defendants' Filed Their Rule 11 Motion for an Improper Purpose .......... 12

IV.   CONCLUSION ................................................................................................. 18

Plaintiffs move for sanctions against all Defendants and those counsel of record and their law firms who joined in the motion under Fed. R. Civ. P. 11 ("Rule 11"). Defendants filed an unwarranted and frivolous Rule 11 motion seeking sanctions against Plaintiffs for an improper strategic purpose. *See* ECF No. 402. Plaintiffs opposed. ECF No. 414. Defendants' Rule 11 motion is the latest example of a worrying disregard for the Federal Rules that have guided their previous attempts to weaponize procedural rules against Plaintiffs, needlessly increasing the costs of litigation, multiplying the proceedings, and taxing the resources of the Court. Such conduct must be deterred. Numerous courts have granted motions for sanctions under Rule 11 where an opposing party has improperly filed a Rule 11 sanctions motion.

As detailed below, sanctions against Defendants under Rule 11 are warranted. Plaintiffs ask the Court for an award of attorney's fees and costs in opposing Defendants' Rule 11 motion (ECF No. 414) and drafting this counter-request for sanctions.

## I.     BACKGROUND

On February 2, 2023, in the days leading up to the court-scheduled deadline for Plaintiffs to file their motion for class certification, Defendants sent a letter to Plaintiffs, demanding that Plaintiffs drop a significant part of their claims under threat of sanctions. Defendants stated that "[s]hould Plaintiffs persist in asserting claims based on camps, including by moving to certify a class relating to camps, Varsity will ask the Court for sanctions." *See* ECF No. 414-2 [Kaiser Letter to Saveri, Feb. 2, 2023] at Page 1. Plaintiffs continued with their preparation of the class certification motion, and on February 10, 2023, Plaintiffs sought certification of Plaintiffs' damages classes and injunctive relief class under Rule 23. *See* ECF No. 387.

On February 16, 2023, Defendants served Plaintiffs with a Rule 11 motion seeking sanctions "against Plaintiffs and Plaintiffs' counsel for continuing the baseless pursuit of claims

PLAINTIFFS' CROSS-MOTION FOR SANCTIONS AGAINST DEFENDANTS AND
COUNSEL AND MEMORANDUM OF LAW IN SUPPORT
874-0242-4920

relating to cheerleading camps, including through the filing of a motion for class certification of a class to pursue such claims." *See* ECF No. 402 at 1. Defendants stated in the motion that Plaintiffs had not provided them with a satisfactory explanation of their "basis for continuing to pursue claims relating to camps." *Id.* at 3.

On February 17, 2023, Plaintiffs wrote to Defendants, pointing out Defendants' delay in raising this issue, and explaining the basis for pursuing their class claims, including claims with respect to purchases of Varsity camps. *See* ECF No. 415 [Saveri Letter to Kaiser, Feb. 17, 2023]. Plaintiffs explained the factual and legal basis with respect to the current representatives' damage claims for purchases of Varsity competitions, camps and apparel. Plaintiffs also indicated their intent to name an additional class representative who had purchased Varsity camps pursuant to Rules 21 and 23. In addition, Plaintiffs wrote: "[T]he motion for sanctions you set forth itself would run afoul of Rule 11. In the event you continue in this regard, we intend to pursue relief under Rule 11 against all Defendants and their counsel who all join in your unwarranted and frivolous motion." *Id.* at 4.

On February 23, 2023, Plaintiffs filed their motion to add a new class representative. As shown in the moving papers, the additional class representative is a resident of Memphis and has purchased a number of Varsity products, including competitions and camps. The additional class representative would specifically meet Defendants' alleged class representative standing deficiency, because Ms. Coulson purchased Varsity camps for her daughter. *See* ECF No. 384-1 at 8–9. The motion was filed over 5 weeks before the due date for Defendants' opposition to the class certification motion.

On February 23, 2023, Defendants sent a letter to Plaintiffs, doubling down on their insistence on filing for sanctions. *See* ECF No. 414-4 [Kaiser Letter to Saveri, Feb. 23, 2023].

PLAINTIFFS' CROSS-MOTION FOR SANCTIONS AGAINST DEFENDANTS AND
COUNSEL AND MEMORANDUM OF LAW IN SUPPORT

Defendants wrote: "We suggest you reconsider your position and drop the camp claims forthwith, including by filing a modified motion for class certification to that effect." *Id.* at 2.

On March 9, 2023, with Plaintiffs' February 17, 2023 letter in hand, and with Plaintiffs' motion to add a new class representative on file, Defendants' filed their Rule 11 motion. *See* ECF No. 402. Defendants allege that "Plaintiffs have improperly pursued camp-related claims, including through filing of their motion for class certification" and "request that the Court dismiss those claims forthwith." *See* ECF No. 402 at 5.

On March 23, 2023, Plaintiffs filed an opposition to Defendant's motion for sanctions. ECF No. 414.

Plaintiffs hereby ask the Court for relief under Rule 11, including sanctioning Defendants and their counsel of record and law firms for filing a baseless and bad faith motion for sanctions which seeks dismissal of claims outside proper litigation channels and without addressing the merits of Plaintiffs' claims.[1]

## II.    LEGAL STANDARD

A pleading, motion or other paper violates Rule 11 "either when it has been interposed for any improper purpose, or where, after reasonable inquiry, a competent attorney could not form a reasonable belief that the pleading is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification or reversal of existing law." *Sorenson v. Wolfson*, 683 F. App'x 33, 35 (2d Cir. 2017) (internal citation and quotation marks

---

[1] Because this motion counter-requests sanctions in the form of attorney's fees and costs in responding to a baseless motion for sanctions, the 21-day safe harbor period is inapplicable. *See, e.g.*, *Universal Surveillance Corp. v. Checkpoint Sys., Inc.*, No. 5:11-CV-1755, 2013 WL 8350812, at *6 (N.D. Ohio Oct. 16, 2013) ("[A] party defending a Rule 11 motion need not comply with the separate document and safe harbor provisions when counter-requesting sanctions.").

PLAINTIFFS' CROSS-MOTION FOR SANCTIONS AGAINST DEFENDANTS AND
COUNSEL AND MEMORANDUM OF LAW IN SUPPORT
874-0242-4920

omitted). The Rule 11 standard is an objective one of "reasonableness under the circumstances." *JP Morgan Chase Bank, NA v. Winget*, No. 08-13845, 2014 WL 86239, at *2 (E.D. Mich. Jan. 9, 2014), *aff'd* 602 F. App'x 246 (6th Cir. 2015) (internal citation omitted). Upon finding a Rule 11 violation, the court may impose sanctions of various type. *See Glob. Freight, Inc. v. Tremell,* No. 2:21-CV-11337-APP, 2022 WL 16844503, at *7 (E.D. Mich. Sept. 30, 2022) (stating that "sanctions are discretionary under Rule 11(c)(1)"); *Essroc Cement Corp. v. CPRIN, Inc.*, No. 1:08-CV-974, 2009 WL 2033052, at *21 (W.D. Mich. July 9, 2009) (noting that "[w]hereas the pre–1993 rule made the imposition of sanctions for violations mandatory, sanctions are discretionary under the amended rule").

## III.   ARGUMENT

### A.   Defendants' Rule 11 Motion Is a Rule 11 Violation

Sanctions are warranted under Rule 11 where a party files a "baseless" or "bad faith" motion for Rule 11 sanctions. *See MetLife Bank, N.A. v. Badostain*, No. 1:10-CV-118-CWD, 2010 WL 5559693, at *10 (D. Idaho Dec. 30, 2010); *Riccard v. Prudential Ins. Co.*, 307 F.3d 1277, 1294 (11th Cir. 2002); s*ee also Miller v. Affiliated Fin. Corp.,* 600 F. Supp. 987, 992 n. 9 (N.D. Ill. 1984) (stating that "[a]ny needless proliferation of time caused by an inappropriate forcing of evidentiary presentation . . . may itself call Rule 11 into consideration"). Here, Defendants violated Rule 11 by presenting an unwarranted and frivolous Rule 11 motion for an improper purpose, multiplying the proceedings, and needlessly increasing the cost of litigation. *See* Fed. R. Civ. P. 11 (b); see also Fed R. Civ P. 1. (the Federal Rules of Civil Procedure "should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding").

Defendants' motion concedes that they knew the named class representatives did not purchase camps as early as July 13, 2021, and have been aware of the claimed standing issue since at least April 6, 2022, when one of Plaintiffs' named class representatives dropped from the

PLAINTIFFS' CROSS-MOTION FOR SANCTIONS AGAINST DEFENDANTS AND
COUNSEL AND MEMORANDUM OF LAW IN SUPPORT

case. *See* ECF No. 402 at 2 & n.1. But instead of simply filing a rule 12(b)(1) motion or availing themselves of other procedures available to them, they lied in wait for roughly a year, until eight days before Plaintiffs' motion for class certification was due. Defendants then preemptively demanded Plaintiffs dismiss their camp claims or face sanctions. Upon Defendants threatening Plaintiffs with sanctions unless Plaintiffs dismissed their camp claims, Plaintiffs explained to Defendants how the record in this proceeding shows that given the nature of Varsity's self-described interconnected "ecosystem," and its tying of camps and competitions together, among other things, Plaintiffs' purchases of these interconnected products are sufficiently intertwined so that Plaintiffs have standing to pursue damage claims and injunctive relief broadly, as to each. This includes claims for damages and injunctive relief with respect to claims arising from purchases of Varsity camps. *See* ECF No. 415 [Saveri Letter to Kaiser, Feb. 17, 2023]. Plaintiffs also quickly moved under Rules 21 and 23 to add a new named class representative that would cure any alleged standing concern. Yet despite all this, Defendants still filed their motion for sanctions. Their conduct is highly improper and runs afoul of Rule 11. The Court should grant sanctions against Defendants.

### 1. Defendants' Rule 11 Motion is Frivolous

As explained in Plaintiffs' Opposition to Defendants' Motion for Sanctions, ECF No. 414, Defendants' motion violates Rule 11. The standard for gauging whether a claim is frivolous, meritless or for an improper purpose under Rule 11 is "whether a reasonable attorney in like circumstances could believe his actions were factually and legally justified." *Diaz v. First Marblehead Corp.*, 643 F. App'x 916, 921 (11th Cir. 2016) (internal citations and internal quotation marks omitted). Here, Defendants' motion for sanctions argues that the Court should award sanctions under this standard against Plaintiffs for seeking to certify a class of plaintiffs

PLAINTIFFS' CROSS-MOTION FOR SANCTIONS AGAINST DEFENDANTS AND
COUNSEL AND MEMORANDUM OF LAW IN SUPPORT

874-0242-4920

that includes the camp market. Defendants argue that the two named class representatives lack standing to pursue camp claims. Thus, Defendants' motion for sanctions can only be granted if no reasonable attorney could have believed that Plaintiffs' motion for class certification was factually and legally justified. The issue at stake in Defendants' motion for sanctions is not how this Court will ultimately rule on whether the class representatives have standing to pursue camp claims, whether Plaintiffs may add a new class representative to cure any alleged defect, whether the class should be certified, or whether Plaintiffs will prevail at trial. The issue is whether no reasonable attorney could possibly have believed that they were legally justified in pursuing claims including claims with respect to the marketing and sale of camps under the facts of this case. There is no question that Plaintiffs have more than an adequate basis to pursue their damages claims for camps. And Defendants know this. As would any reasonable attorney. Two facts establish Plaintiffs' justification to pursue camp claims.

First, Defendants themselves admit in their motion that so long as the alleged product markets are "inextricably entwined," the Supreme Court explicitly recognizes plaintiffs harmed in one market may themselves pursue claims in the other market. Defendants state that "[w]ithout a consumer, customer, competitor or participant in the relevant market as a Plaintiff, or any injury to Plaintiff inextricably entwined with injury in the relevant market, Plaintiffs fail to satisfy [the standing factor relating to the nature of the plaintiff's alleged injuries]." *See* ECF No. 402 at 4; *see also Blue Shield of Virginia v. McCready*, 457 U.S. 465 (1982).

In their February 17, 2023 letter to Defendants, Plaintiffs explained how under the law, the facts show that the market for camps is inextricably intertwined with the market for competitions, and why the two named class representatives have standing to pursue camp claims on behalf of the class.

PLAINTIFFS' CROSS-MOTION FOR SANCTIONS AGAINST DEFENDANTS AND COUNSEL AND MEMORANDUM OF LAW IN SUPPORT

The Varsity ecosystem is comprised of the interrelated products and services that Varsity offers including three core components: competitions and events; uniforms and accessories; and training and education (including camps and clinics). Surrounding these core components are three external types of organizations that are essential to Varsity maintaining control of the entire ecosystem: governing bodies, safety organizations, and strategic partners. At the core of the ecosystem is digital and social interaction which Varsity claims creates a connected culture. In short, the Varsity ecosystem has three core components—competitions, camps, and apparel—that are connected via digital and social interactions and that it protects via its control of external organizations.



These alleged anticompetitive schemes would have common impact on parents and participants who expended money on cheer competition events, apparel, and camps regardless of location or degree of individualized purchases. But for Varsity's alleged anticompetitive conduct advanced by Varsity's monopoly power, indirect purchasers would have paid less money to participate in Varsity's competitive cheer "ecosystem."

Plaintiffs have standing because they are consumers who were directly injured when they paid supracompetitive prices. They were both, as were all class members, the target of the antitrust conduct of Defendants. *See: Malamud P. Sinclair Oil Corp.,* 521 F.2d 1142 (6th Cir. 1975); *Association of Data Processing Serpice Organizations, Inc. P.* Camp, 397 U.S. 150 (1970). Plaintiffs were customers of Varsity where they purchased products sold by Varsity as part of its ecosystem. *See Blue Shield v. McReady*, 457 U.S. 465, 483-84; *Associated*

PLAINTIFFS' CROSS-MOTION FOR SANCTIONS AGAINST DEFENDANTS AND COUNSEL AND MEMORANDUM OF LAW IN SUPPORT

> *General Contractors,* 459 U.S. 519 (1983). Further, as shown above, the products
> sold within the Varsity ecosystem are intertwined. Varsity uses its exclusionary
> practices to prevent its competitors from gaining access to customers, such as
> Plaintiffs, and thereby to acquire and maintain monopoly power. *See Southaven
> Land Co., Inc v. Malone & Hyde, Inc.,*715 F.2d 1079, 1086-87 & n.10 (1983)
> ("Logic dictates, therefore, that the primary class of persons protected by § 2 are
> those adversely affected as a result of controlled prices or an exclusion of
> competition. In the case at bar Southaven has not adduced an injury resulting from
> either controlled prices of grocery products or exclusion of competitors or
> participants in the grocery industry.")

*See* ECF No. 415 [Saveri Letter to Kaiser, Feb. 17, 2023] at 2–3. Defendants are well aware of

the supporting evidence because it is largely based on their own party admissions, in addition to

the expert testimony disclosed in Rule 26 reports, their own expert reports, and the subject of

extensive depositions. Defendants' expert reports quarrel with the economic analysis but do not

conclude they are without a reasonable basis. Thus, Defendants knew that Plaintiffs had a

legitimate basis to show that Varsity's anticompetitive conduct with respect to competitions,

camps and apparel are "inextricably intertwined" under Supreme Court authority. Yet they filed

their motion anyway. Defendants are of course free to disagree with the law or argue that their

own records do not show that the markets are inextricably intertwined. But Defendants' motion

for sanctions is frivolous because Plaintiffs have a reasonable basis to argue and show they are.

How the Court or the jury ultimately find is not the issue in Defendants' Rule 11 motion. The

only question at issue in Defendants' motion for sanctions is whether Plaintiffs have any

reasonable justification in pursuing it. *See Nat'l Wrecking Co. v. Int'l Bhd. of Teamsters, Loc.

731*, 990 F.2d 957, 963 (7th Cir. 1993) (finding that a claim is "colorable enough to avoid

sanctions for frivolity" if it is "not totally devoid of merit"). And even if the Court disagrees with

Plaintiffs, that does not make Defendants' motion less sanctionable given its motive and purpose.

Plaintiffs' pursuit of camp claims through the named class representatives is clearly not

totally devoid of merit. *See, e.g.*, *Dang v. San Francisco Forty Niners*, 964 F. Supp. 2d 1097,

PLAINTIFFS' CROSS-MOTION FOR SANCTIONS AGAINST DEFENDANTS AND
COUNSEL AND MEMORANDUM OF LAW IN SUPPORT

1112 (N.D. Cal. 2013) (holding that plaintiffs had standing to pursue claims in two markets even though they only purchased products in one market because the markets were intertwined). There are numerous cases where a party was permitted to assert antitrust claims in a market or for products in which it made *no* purchases.[2] Thus, Defendants' contention that Plaintiffs' claims are totally devoid of merit is itself totally devoid of merit. And that violates Rule 11.

Second, Plaintiffs' motion for class certification with respect to camps is justified because Plaintiffs have moved to add a new class representative who cures any purported standing deficiency. *See* ECF No. 394-1. As the moving papers show, plaintiffs have been allowed to add class representatives, **even after the class certification motion is adjudicated**, and courts routinely do so. *Id.* at 3–6. (citing cases); *see also McAnaney v. Astoria Fin. Corp.*, No. 04-CV-1101JFBWDW, 2007 WL 2702348, at *13 (E.D.N.Y. Sept. 12, 2007) (noting that where a named plaintiff is no longer an adequate representative of the class, the procedure "favored" over decertifying the class is to give plaintiffs' counsel a "reasonable period of time for the substitution or intervention of a new class representative") (internal citation and quotation marks omitted); *Whitlock v. Johnson*, 153 F.3d 380, 384 (7th Cir. 1998) (finding district court was proper in allowing certified class claims to continue "with the substitution of appropriate class representatives" after the failure of the named plaintiff's individual claim on the merits); *Little Caesar Enterprises, Inc. v. Smith*, 172 F.R.D. 236, 244 n. 3 (E.D. Mich. 1997) ("Affording plaintiffs the opportunity to provide such substitutes is the common practice in cases where, although the current named representatives are inadequate, adequate representatives are known

---

[2] In Plaintiffs' Opposition to Defendants' Motion for Sanctions, ECF No. 414 at 2-3, Plaintiffs cite numerous cases for this proposition. *See Dang v. San Francisco Forty Niners,* 964 F. Supp. 2d 1097, 1111–13 (N.D. Cal. 2013); *In re Automotive Parts Antitrust Litigation*, 2013 WL 2456612, *15 (E.D. Mich., 2013); *In re Automotive Parts Antitrust Litigation*, 29 F.Supp.3d 982, 1002 (E.D. Mich., 2014); *Gold v. Eva Nats., Inc.*, 586 F. Supp. 3d 158, 162 (E.D.N.Y. 2022).

PLAINTIFFS' CROSS-MOTION FOR SANCTIONS AGAINST DEFENDANTS AND
COUNSEL AND MEMORANDUM OF LAW IN SUPPORT

and available as substitutes.") (internal citation omitted).

Plaintiffs moved to add Ms. Amy Coulson as a named class representative on February 23, 2023, **more than 5 weeks before Defendants' class certification opposition is due**. *Id.* That motion is pending. Plaintiffs did so immediately after Defendants threatened Plaintiffs with sanctions if they did not voluntarily dismiss their camp claims on February 2, 2023. ECF No. 414-2 [Kaiser Letter to Saveri, Feb. 2, 2023]. Even were the Court to determine the other representatives do not have the requisite standing, Plaintiffs have sought to add a new named representative who cures any alleged defect. And again, the resolution of that motion does not make Defendants' motion less sanctionable.

As explained in Plaintiffs' motion to add Ms. Amy Coulson, numerous courts have permitted the addition of new class representatives during or even after class certification. *See* ECF No. 394-1 at 3–6. Plaintiffs' motion to add Ms. Amy Coulson stated:

> Courts allow for substitutions or additions even after class certification is fully briefed. *See, e.g., In re Pharm. Indus. Average Wholesale Price Litig.*, 277 F.R.D. 52, 59 (D. Mass. 2011) ("*AWP*"). "Such discretion protects the interests of the class as a whole . . . ." *Id.* The same remains true even after a class certification motion is heard. *See e.g., Nat'l Fed'n of Blind.*, 582 F. Supp. 2d at 1209 (court permitted plaintiffs to locate a class representative after class certification hearing); *Tait*, 289 F.R.D. at 477 (same); *Weiner*, 255 F.R.D. at 673 (same).

*Id.* at 4. Defendants opposition **does not dispute** that courts have allowed, under Rule 23, the addition of new class representatives during or even after class certification. For example, Defendants' opposition concedes that *National Federation of Blind v. Target Corp.*, 582 F. Supp. 2d 1185, 1209 (N.D. Cal. 2007), allowed the addition of a new class representative to cure a standing defect. *See* ECF No. 404 at 7 n.4. Defendants' opposition further concedes the same with respect to *Tait v. BSH Home Appliances Corp.*, 289 F.R.D. 466, 477 (C.D. Cal. 2012). *Id.* And Defendants' opposition even admits that in *Wiener v. Dannon Co., Inc.*, 255 F.R.D. 658

PLAINTIFFS' CROSS-MOTION FOR SANCTIONS AGAINST DEFENDANTS AND
COUNSEL AND MEMORANDUM OF LAW IN SUPPORT

(C.D. Cal. 2009), the Court allowed Plaintiffs to add new class representatives even *after the motion for class certification was denied* on standing grounds. Defendants merely argue there is more prejudice here, when in fact the opposite is true given the motion to add was made substantially in advance of the due date for the class certification opposition, unlike in that case. Thus, Defendants' Opposition to Plaintiffs' Motion to Add Class Representative proves that Defendants are well aware there is legal justification in pursuing camp claims and seeking to add a class representative that cures any alleged standing deficiency. *See* ECF No. 404 at 7 n.4. Defendants' opposition is sufficient on its own to conclude that (1) Plaintiffs' motion is not "totally devoid of merit"; and (2) Defendants know this.

Defendants cite two cases for the assertion that sanctions should be imposed on any Plaintiff that lacks standing. *See* ECF No. 402 at 4–5 ("In similar circumstances—where an antitrust plaintiff pursued claims that it plainly had no standing to pursue—courts have imposed such sanctions."). But these cases are so far afield that they only provide further support to Plaintiffs' position. Plaintiffs' Opposition to Defendants' Motion for Sanctions explains why both cases cited by Defendants "are so thoroughly inapposite and inapplicable that no reasonable attorney—Defendants included—could have possibly believed they support sanctions here." ECF No. 414 at 4. Plaintiffs Opposition states:

> In *Pierce v. Commercial Warehouse*, a court granted sanctions after the Plaintiff filed no less than three different complaints after they were repeatedly dismissed for various reasons, including because the Plaintiff in that case was "an entity which was set up as a propaganda and fund-raising device for purposes of this litigation," which proceeded to "[churn] out a stream of press releases and mailings to jobbers around the country, referring to this lawsuit and requesting money." *Pierce v. Com. Warehouse*, 142 F.R.D. 687, 691 (M.D. Fla. 1992). After numerous motions to dismiss on the same issues, after summary judgments motions filed by both parties were granted in Defendants' favor, after Plaintiffs "acknowledged that the [fraudulent plaintiff entity] could not meet the requirements for a class action under Rule 23," and after other transgressions, the court granted sanctions. *Id.* at 693–94. And in *Colorado Chiropractic Council*, a court granted sanctions for what the court called "baseless

PLAINTIFFS' CROSS-MOTION FOR SANCTIONS AGAINST DEFENDANTS AND
COUNSEL AND MEMORANDUM OF LAW IN SUPPORT

litigation." *Colorado Chiropractic Council v. Porter Mem'l Hosp.*, 650 F. Supp. 231, 234 (D. Colo. 1986). In that case, brought on behalf of forty-six chiropractors who alleged that defendant hospitals had "obstructed plaintiff's attempts to utilize the hospitals' resources and have denied them hospital staff privileges," it turned out that "none of the plaintiffs were ever denied the right to practice at any of the hospitals." *Id.* at 236. No reasonable attorney could believe that these cases—which essentially granted sanctions against attorneys for bringing what amounted to entirely fraudulent suits—could ever support sanctions for a plaintiff that (1) justifiably argues that the Supreme Court's inextricably intertwined doctrine supports standing to pursue claims in a market tied to a market in which the Plaintiffs uncontrovertibly have standing to pursue; and (2) seeks to add a new class representative to cure any alleged standing defect, as numerous courts have allowed. *See* ECF No. Defendants citations to these two cases proves they are well aware that they have no reasonable justification in pursuing sanctions here.

*Id.*

The only question on Defendants' motion for sanctions is whether Plaintiffs' motion for class certification "is entirely devoid of merit." Plaintiffs have more than adequate legal and factual basis to certify a class including camps purchasers, either because the purchases of the products occurred in a market or markets that are inextricably intertwined, or by adding a new class representative that cures the purported standing issue. Defendants themselves concede these justifications. Knowing Plaintiffs' legal and factual justification, and then filing their motion for sanctions anyway, is beyond frivolous. Defendants' contention that Plaintiffs' claims are so totally devoid of merit that Plaintiffs should have voluntarily dismissed their camps-related claims without even being heard on the merits is itself totally devoid of merit. And that violates Rule 11.

## 2.     Defendants' Filed Their Rule 11 Motion for an Improper Purpose

"Given the timing and lack of substantive merit, it appears that [Defendants' Rule 11 motion was] likely . . . presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation." *See* ECF No. 415 [Saveri Letter to Kaiser, Feb. 17, 2023] at 1 (citing Fed. R. Civ. P. 11(a)). With respect to timing, a Rule 11 motion is

PLAINTIFFS' CROSS-MOTION FOR SANCTIONS AGAINST DEFENDANTS AND
COUNSEL AND MEMORANDUM OF LAW IN SUPPORT

"untimely" unless it is filed "as soon as practicable after discovery of a Rule 11 violation."

*Northlake Mktg. & Supply, Inc. v. Glaverbel, S.A.*, 194 F.R.D. 633, 634 (N.D. Ill. 2000) (quoting

*Kaplan v. Zenner*, 956 F.2d 149, 151 (7th Cir. 1992) (internal quotation marks omitted).

Defendants were aware that Plaintiffs moved to drop Ms. Velotta as a class representative on

April 5, 2022, and the Court granted the motion on April 6, 2022.[3] Assuming that there was no

standing to assert claims at that time—as Defendants incorrectly assert—Defendants sat and

waited for roughly a year. This proves their motion is brought for an improper purpose.

      Given its timing in the lead-up to class certification, it is clear that Defendants used their

Rule 11 motion strategically for an improper purpose. Indeed, if Defendants truly believed that

Plaintiffs' camp damages must be dismissed for lack of standing—and more, that Plaintiffs are

entirely devoid of any merit in pursuing them—Defendants could have saved substantial expense

simply by moving to dismiss under Federal Rule of Civil Procedure 12(b)(1) or raising the

alleged standing deficiency during class certification or summary judgment briefing.[4] Yet they

chose not to do so. Instead, they waited until the eve of class certification to threaten Plaintiffs

and their lawyers with sanctions and demanded they dismiss their camp claims. *See* ECF No.

414-2 [Kaiser Letter to Saveri, Feb. 2, 2023].

      This tactic has been thoroughly condemned. Indeed, the advisory committee note to Rule

11 states this clearly:

> "Rule 11 motions should not be made or threatened for minor, inconsequential
> violations of the standards prescribed by subdivision (b). They should not be

---

[3] By their own admission, Defendants had been aware since no later than July 13, 2021 which named class representatives purchased camp products from Varsity. *See* ECF No. 402 at 2 ("Plaintiffs' counsel served Plaintiffs' interrogatory response on July 13, 2021, which detailed that neither of the remaining Plaintiffs had ever indirectly or directly purchased registration fees for attendance at a Varsity cheer camp.").

[4] See ECF No. 333 at 44–45 ("[T]he suitability of the named plaintiffs as representatives of the class will be addressed at the class certification stage.").

PLAINTIFFS' CROSS-MOTION FOR SANCTIONS AGAINST DEFENDANTS AND
COUNSEL AND MEMORANDUM OF LAW IN SUPPORT

874-0242-4920

> employed as a discovery device **or to test the legal sufficiency or efficacy of allegations in the pleadings**; other motions are available for those purposes. **Nor should Rule 11 motions be prepared to emphasize the merits of a party's position, to exact an unjust settlement, [or] to intimidate an adversary into withdrawing contentions that are fairly debatable**[.]"

Fed. R. Civ. P. 11, Advisory Committee Note on 1993 Amendments (emphasis added). Rule 11 motions "should not be employed . . . to test the legal sufficiency or efficacy of allegations in the pleadings" or "prepared to emphasize the merits of a party's position." *See Jawbone, LLC v. Donohue*, No. 01 CIV. 8066 (CSH), 2002 WL 1424587, at *6 (S.D.N.Y. June 28, 2002) (quoting Fed. R .Civ. P. 11, Advisory Committee Note on 1993 Amendments). "[O]ther motions are available for those purposes." Fed. R .Civ. P. 11, Advisory Committee Note on 1993 Amendments. Accordingly, the use of a Rule 11 motion as a "substitute for a challenge governed by the more suitable standards of Fed. R. Civ. P. 12" must be "discourage[d]." *Dobronski v. Alarm Mgmt. II L.L.C.*, No. 18-11055, 2019 WL 1232690, at *1-2 (E.D. Mich. Mar. 18, 2019).

Here, Defendants' motion for sanctions fits the description of unpermitted conduct set forth in the Advisory Committee notes. Defendants specifically ask that "the Court dismiss [Plaintiffs' camp] claims forthwith." *See* ECF No. 402 at 5. Defendants purport to justify this request on the grounds that "Plaintiffs' motion for class certification was the first court filing after [April 6, 2022] that sought to pursue a claim for damages related to camps." *See* ECF No. 414-4 [Kaiser Letter to Saveri, Feb. 23, 2023] at 2. This argument rings hollow. Defendants chose not to avail themselves of procedures provided under the Federal Rules to address the merits of this dispute, and then sprang a threat of sanctions on Plaintiffs just before Plaintiffs' motion for class certification was due, demanding that Plaintiffs dismiss their claims arising from camp purchases.

The Sixth Circuit is in accord that Rule 11 sanctions motion cannot be used to adjudicate

PLAINTIFFS' CROSS-MOTION FOR SANCTIONS AGAINST DEFENDANTS AND
COUNSEL AND MEMORANDUM OF LAW IN SUPPORT

874-0242-4920

issues that are properly addressed by Rule 12 motions. *See Gibson v. Solideal USA, Inc.*, 489 F.

App'x 24, 30 (6th Cir. 2012). If, as Defendants allege, Plaintiffs' camp claims are "obviously

foreclosed by existing law, [Defendants] should have filed a motion to dismiss [on standing

grounds] rather than incur the significant . . . expenses it now seeks to recover [as a Rule 11

sanction]." *Id*. Defendants' conduct shows their true motive for seeking sanctions: to end-run

around Rule 23 procedures and to avoid addressing the issues on the merits by seeking to

intimidate Plaintiffs into voluntarily dismissing their claims. This is a clear "misuse" of Rule 11

and, therefore, improper. *E. Gluck Corp. v. Rothenhaus*, 252 F.R.D. 175, 183 (S.D.N.Y. 2008)

(stating that a Rule 11 motion that raises issues that "more properly should be addressed in a

Rule 12(b)(6) motion to dismiss … entails a misuse of Rule 11").

Further, Defendants are once again using their own dilatory practices—including their

tactical decision not to move to dismiss for lack of standing under Rule 12(b)(1) once Ms.

Velotta removed herself as a class representative—as a basis for precluding Plaintiffs from curing

the very standing deficiency they now allege. In Defendants' Opposition to Plaintiffs' Motion to

Add Class Representative, Defendants argue that Plaintiffs' motion should be denied because

Plaintiffs are out of time. *See* ECF No. 404 at 3. But it was Defendants that chose not to file any

motion to dismiss Plaintiffs' claims on standing to pursue camp damages. Defendants' decision

not to do so reflects the lack of merit to such a motion in the first place.

Over the course of this litigation, Defendants have time and again been delinquent, and

then attempted to use their own delay as a shield to prevent Plaintiffs from seeking the relief for

Defendants' dilatory practices. Defendants have tried this exact tactic previously during

discovery. During a prior discovery dispute over whether Charlesbank and Bain would comply

with Plaintiffs' Rule 30(b)(6) deposition notice, Judge Pham held that Defendants could not

PLAINTIFFS' CROSS-MOTION FOR SANCTIONS AGAINST DEFENDANTS AND
COUNSEL AND MEMORANDUM OF LAW IN SUPPORT

874-0242-4920

sandbag Plaintiffs by refusing to comply with their obligations under a Court order and then use that delay as a basis to argue that Plaintiffs were out of time in filing a motion. *See* ECF No. 325 at 8 ("The reason for the delayed filing of [plaintiffs'] motion is solely due to defendants' incorrect interpretation of the court's prior order."); *see also id.* at 15 ("If defendants had followed the court's prior order and engaged in negotiations regarding the scope of the Rule 30(b)(6) depositions, those depositions could have been completed on the same day as the Rule 30(b)(1) depositions."). Plaintiffs' motion to add a new class representative was brought immediately after Defendants threatened Plaintiffs with sanctions if they did not give in to Defendants' demands to dismiss their camp claims. Had Defendants brought a motion to dismiss on camp-related standing grounds 11 months ago, and had the Court granted the motion, Plaintiffs could have then filed to add a new class representative long ago. Defendants intentionally chose to wait until the eve of class certification to raise the alleged standing violation so that they could try to then preclude Plaintiffs from curing the alleged defect by arguing there is no more time, just as they did in prior discovery disputes. This conduct—and strategy—shows the Rule 11 motion is being used improperly.

## A.  Rule 11 Sanctions Against Defendants Are Warranted

"[T]he decision to impose [Rule 11] sanctions and their form may be influenced by consideration of a party's past misconduct." *Vollmer v. Publishers Clearing House*, 248 F.3d 698, 710 (7th Cir. 2001). Defendants' frivolous and improper Rule 11 motion is "part of a pattern [of conduct] that has marked their efforts in this lawsuit, and that is not a proper use of Rule 11." *See Riccard v. Prudential Ins. Co.*, 307 F.3d 1277, 1294 (11th Cir. 2002). Defendants' baseless resort to Rule 11 is not indiscriminate. It is tactical and intentional. Tellingly, this is not the first motion for sanctions that Defendants have filed in this case. Defendants' prior motion for sanctions was

denied by Judge Pham. *See Fusion Elite* action, 20-cv-02600, at ECF No. 280. Other misconduct

establishes a pattern. For example, the persistent refusal of Defendants Bain Capital Private

Equity ("Bain") and Charlesbank Capital Partners, LLC ("Charlesbank") to comply timely with

their discovery obligations in this case is well documented.[5] In addition, Bain and Charlesbank

have demonstrated a worrying disregard for the Court's authority and has substantially delayed

these proceedings.[6] Defendants and their counsel have shown a pattern and practice of bad faith.

Rule 11 should not be used as a "combative tool." *Autrey v. United States*, 889 F.2d 973,

986 n.20 (11th Cir. 1989). Defendants acknowledge in their motion that the named class

representatives would have standing for the camp claims if there was "any injury to Plaintiff[s]

inextricably entwined with injury in the relevant market," *See* ECF No. 402 at 4. Plaintiffs

explained in detail how their injuries in the competitions and apparel markets are "inextricably

intertwined" with injuries in the camp market and are prepared to offer proof at trial. *See* ECF

No. 415 [Saveri Letter to Kaiser, Feb. 17, 2023]. Defendants, well aware of that record, seek to

deny Plaintiffs that opportunity, threatening Plaintiffs with sanctions if they did not voluntarily

dismiss their camp claims.

---

[5] Bain and Charlesbank repeatedly claimed—contrary to the Federal Rules and ultimately Court order—that no discovery was permissible until their motions to dismiss were adjudicated. *See* ECF No. 261 at 3. The Court had to repeatedly order Bain and Charlesbank to comply with discovery requests. *See* ECF No. 174; ECF No. 261 at 9 n. 4 ("Defendants have repeatedly noted that they expect Bain and Charlesbank to be dismissed from the case. . . . Defendants' confidence in their ability to predict the rulings of the court is not a reason to prevent or stall discovery."); *See* ECF No. 325 at 8 ("Defendants argue that because the court did not previously explicitly state that plaintiffs could take Rule 30(b)(6) depositions, those depositions were effectively denied. This is incorrect.").

[6] *See, e.g.*, ECF No. 325 at 8 ("The reason for the delayed filing of [plaintiffs'] motion is solely due to defendants' incorrect interpretation of the court's prior order."); *see also id.* at 15 ("If defendants had followed the court's prior order and engaged in negotiations regarding the scope of the Rule 30(b)(6) depositions, those depositions could have been completed on the same day as the Rule 30(b)(1) depositions.").

On February 23, 2023, Plaintiffs moved to add a new class representative "to protect the interests of the proposed classes from Defendants' misguided attack and remove any doubt that the requirements of Rule 23 are satisfied." *See* ECF No. 394 at 9. At a minimum, this would constitute a corrective action taken well within Rule 11's safe harbor period. *See* Fed. R. Civ. P. 11(c)(2) (stating that a Rule 11 motion "must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service"). But they did not, demonstrating from their intractability that the true purpose of their Rule 11 motion is "to deter or punish meritorious claims and lawyers who pursue such claims on behalf of their clients." *See* ECF No. 415 [Saveri Letter to Kaiser, Feb. 17, 2023] at Page 1.

Given that the purpose of Rule 11 sanctions is to deter such abuses of the legal process, sanctions against Defendants are warranted. *See MetLife Bank, N.A. v. Badostain*, No. 1:10-CV-118-CWD, 2010 WL 5559693, at *10 (D. Idaho Dec. 30, 2010) (sanctioning defendants who filed Rule 11 motion that "undeniably argue[d] the theory of [their] case" and "could easily be seen as a device to test the legal sufficiency or efficacy" of plaintiff's allegations, even after plaintiff had taken steps to correct the alleged violation).

## IV.   CONCLUSION

For the reasons stated above, Plaintiffs respectfully request that the Court impose such sanctions on Defendants and their counsel under Rule 11(c)(1) as it deems proper, including an award for attorney's fees and costs in opposing Defendants' Rule 11 motion and drafting this counter-request for sanctions.

Dated: March 23, 2023

Respectfully submitted,

By: _____ /s/ Joseph R. Saveri _____
        Joseph R. Saveri


Joseph R. Saveri*
Steven N. Williams*
Ronnie Seidel Spiegel*+
Kevin E. Rayhill*
Elissa A. Buchanan*
David Seidel*
JOSEPH SAVERI LAW FIRM, LLP
601 California Street, Suite 1000
San Francisco, California 94108
Telephone: (415) 500-6800
Facsimile: (415) 395-9940
jsaveri@saverilawfirm.com
swilliams@saverilawfirm.com
rspiegel@saverilawfirm.com
krayhill@saverilawfirm.com
eabuchanan@saverilawfirm.com
dseidel@saverilawfirm.com

Van Turner (TN Bar No. 22603)
BRUCE TURNER, PLLC
2650 Thousand Oaks Blvd., Suite 2325
Memphis, Tennessee 38118
Telephone: (901) 290-6610
Facsimile: (901) 290-6611
vturner@bruceturnerlaw.net

Richard M. Paul III*
Sean R. Cooper*
Ashlea Schwarz*
PAUL LLP
601 Walnut, Suite 300
Kansas City, Missouri 64106
Telephone: (816) 984-8100
rick@paulllp.com
sean@paulllp.com
ashlea@paulllp.com

PLAINTIFFS' CROSS-MOTION FOR SANCTIONS AGAINST DEFENDANTS AND
COUNSEL AND MEMORANDUM OF LAW IN SUPPORT

Jason S. Hartley*
Fatima Brizuela*
HARTLEY LLP
101 West Broadway, Suite 820
San Diego, CA 92101
Telephone: (619) 400-5822
hartley@hartleyllp.com
brizuela@hartleyllp.com

Daniel E. Gustafson*
Daniel C. Hedlund*
Daniel J. Nordin*
David A Goodwin*
Ling Shan Wang*
GUSTAFSON GLUEK PLLC
Canadian Pacific Plaza
120 South Sixth Street, Suite 2600
Minneapolis, MN 55402
Telephone: (612) 333-8844
Facsimile: (612) 339-6622
dgustafson@gustafsongluek.com
dhedlund@gustafsongluek.com
dnordin@gustafsongluek.com
dgoodwin@gustafsongluek.com
lwang@gustafsongluek.com

\* Admitted *pro hac vice*

+Located in Washington State

*Attorneys for Individual and
Representative Plaintiffs*