UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE

JONES, et al.

             Plaintiffs,

    v.

VARSITY BRANDS, LLC, et al.,

         Defendants.

**Case No. 2:20-cv-02892-SHL-tmp**

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' CROSS-MOTION FOR SANCTIONS AGAINST DEFENDANTS AND THEIR COUNSEL (ECF NO. 416)**

## **TABLE OF CONTENTS**

INTRODUCTION ......................................................................................................... 1

ARGUMENT ............................................................................................................... 3

I.     DEFENDANTS' RULE 11 MOTION IS PROCEDURALLY PROPER AND TIMELY  3

II.    PLAINTIFFS' FRIVOLOUS MOTION TO CERTIFY A CLASS TO PURSUE
CLAIMS IN CAMPS LACKS ANY LEGAL OR FACTUAL BASIS............................ 6

A.   Plaintiffs Inarguably Lack Article III Standing to Assert Claims in Camps ................... 6

B.   Plaintiffs Do Not Have Antitrust Standing in Camps ...................................................... 7

C.   Plaintiffs' Out-of-Time Effort to Add a New Class Representative to Address the Fatal
Standing Problem They Deny Exists Proves Defendants' Point............................ 12

D.   Sanctions Are Appropriate Where, as Here, Plaintiffs Manifestly Lack Standing......... 13

E.   Defendants' Rule 11 Motion is Accordingly Not Sanctionable ..................................... 14

III.   PLAINTIFFS' REHASHING OF PRIOR DISCOVERY DISPUTES IS IRRELEVANT
AND MERITLESS ...................................................................................................... 14

IV.   PLAINTIFFS' CAMP-RELATED CLAIMS ARE RIPE FOR DISMISSAL................. 18

CONCLUSION............................................................................................................. 18

## TABLE OF AUTHORITIES

**Cases**

*Assoc. Gen. Contractors of Cal., Inc. v. Ca. State Council of Carpenters*,

   459 U.S. 519 (1983)..........................................................................................9

*B & H Med., L.L.C. v. ABP Admin., Inc.*,

   354 F. Supp. 2d 746 (E.D. Mich. 2005), *aff'd*, 526 F.3d 257 (6th Cir. 2008) ..........................5

*Blue Shield of Va. v. McCready*,

   457 U.S. 465 (1982)..........................................................................................8

*Colo. Chiropractic Council v. Porter Mem'l Hosp.*,

   650 F. Supp. 231 (D. Colo. 1986).........................................................................13

*Dang v. S. F. Forty Niners*,

   964 F. Supp. 2d 1097 (N.D. Cal. 2013) ................................................................10

*Fla. Seed Co., Inc. v. Monsanto Co.*,

   105 F.3d 1372 (11th Cir. 1997) ............................................................................7

*Gold v. Eva Nats., Inc.*,

   586 F. Supp. 3d 158 (E.D.N.Y. 2022) ............................................................. 11-12

*Hyland v. Homeservices of Am., Inc.*,

   No. 3:05-CV-612-R, 2008 WL 4000546 (W.D. Ky. Aug. 25, 2008).........................7

*In re Aluminum Warehousing Antitrust Litig.*,

   833 F.3d 151 (2d Cir. 2016)................................................................................9

*In re Automative Parts Antitrust Litigation*,

    29 F. Supp. 3d 982 (E.D. Mich. 2014).................................................................11

*In re Automative Parts Antitrust Litigation*,

   No. 12-md-02311, 2013 WL 2456612 (E.D. Mich. June 6, 2013).........................11

*Lujan v. Defs. of Wildlife*,

   504 U.S. 555 (1992).........................................................................................7

*MetLife Bank, N.A. v. Badostain*,

   No. 1:10-cv-118-CWD, 2010 WL 5559693 (D. Idaho Dec. 30, 2010) ..................17

*NicSand, Inc. v. 3M Co.*,

   507 F.3d 442 (6th Cir. 2007) (en banc) ...............................................................7

*Pierce v. Commercial Warehouse,*
    142 F.R.D. 687 (M.D. Fla. 1992) ........................................................................14

*Pogue v. Int'l Indus., Inc.,*
    524 F.2d 342 (6th Cir. 1975) ......................................................................... 9-10

*Riccard v. Prudential Ins. Co.,*
    307 F.3d 1277 (11th Cir. 2002) ..........................................................................17

*Runfola & Assocs., Inc. v. Spectrum Reporting II, Inc.,*
    88 F.3d 368 (6th Cir. 1996) ..................................................................................5

*Southaven Land Co., Inc. v. Malone & Hyde, Inc.,*
    715 F.2d 1079 (6th Cir. 1983) .......................................................................7, 10

*Vollmer v. Publishers Clearing House,*
    248 F. 3d 698 (7th Cir. 2001) ............................................................................17

*Zurich Ins. Co. v. Logitrans, Inc.,*
    297 F.3d 528 (6th Cir. 2002) ...............................................................................6

**Other Authorities**

Fed. R. Civ. P. 11 .................................................................................... *passim*

Fed. R. Civ. P. 12 .......................................................................................5, 18

Fed. R. Civ. P. 23 ...........................................................................................3

Fed. R. Civ. P. 37 .........................................................................................17

Fed. R. Civ. P. 56 .........................................................................................18

# INTRODUCTION[1]

Plaintiffs' retaliatory motion for sanctions against Defendants and their counsel should be denied, and Defendants should be awarded the costs of this response.

The issue presented here and by Defendants' motion for Rule 11 sanctions is simple.  On April 6, 2022, the only Plaintiff who conceivably had standing to assert a claim in camps voluntarily dismissed her claims.  (ECF No. 250.)  The remaining Plaintiffs assured the Court that the departure of this Plaintiff would work no prejudice on Defendants.  (*Id.*)  Since that date, Plaintiffs have lacked standing to pursue their camp claims, and Plaintiffs took no action to address that deficiency despite Defendants raising the issue on multiple occasions over the last year.  Defendants identified Plaintiffs' lack of standing in their respective answers filed on August 15, 2022, and further elaborated on the issue in interrogatory responses served on Plaintiffs on October 3, 2022.  Defendants were not "lying in wait" on the standing issue, and Plaintiffs studiously avoid addressing the August and October papers.

On February 2, 2023, Defendants sent a letter to Plaintiffs, reiterating that there was no basis in law or fact for them to pursue camp claims in their forthcoming motion for class certification.  Moreover, the letter reminded Plaintiffs that the Court had already ruled as such in dismissing claims in the related *American Spirit* case and warned that Defendants would seek sanctions under Rule 11 if they prejudicially sought certification of the camp claims.

On February 10, 2023, Plaintiffs nevertheless filed their motion for class certification as to the camp claims.  This violated Rule 11, which requires that all motions presented to the Court have a legitimate basis in fact and law.  Defendants should not have been put to the burden of responding to such a motion, and the Court should not be put to the burden of adjudicating it.

---

[1] All Defendants join in this response.

Plaintiffs' response is to advance the baseless argument that a plaintiff can recover for harm that he or she did not suffer and to assert that the contrary position is so obviously incorrect that *Defendants* should be sanctioned for raising it. In particular, Plaintiffs claim they can recover damages as to registration fees in camps even though *they admit that they paid no camp registration fees, directly or indirectly*. This is fundamentally wrong—Article III of the United States Constitution requires otherwise. Indeed, it is a basic, bedrock principle of law, confirmed by the Supreme Court many times, that there is no claim without harm. Here, Plaintiffs do not dispute that they suffered no damages related to camp registrations. Notably, Plaintiffs in the *Fusion Elite* case, which was recently settled and pending court approval, likewise paid no camp registration fees and sought no camp damages.

Making matters worse, Plaintiffs filed this cross motion for Rule 11 sanctions against Defendants and their counsel. They have made wild and unsubstantiated allegations of misconduct against Defendants and their counsel. This is an unfortunate choice, to which Defendants can only respond that Plaintiffs' assertions of improper motive and misconduct are without any basis in fact. It is wrong for Defendants to be forced to defend against a motion for class certification of claims that no Plaintiff has standing to assert. Filing papers with the Court asserting such baseless claims is what Rule 11 is designed to prevent and address when it happens, as it has here.

To be sure, Defendants do not ascribe these issues to the two remaining Plaintiffs *per se*. They appear largely if not entirely to be bystanders with respect to the camp claims. They did not purchase camp registrations, and they would not participate in any hypothetical recovery for camp registrations. Moreover, based on their deposition testimony, they appear to rely entirely on their counsel for the decisions in this case. However, that does not excuse their counsel from

comporting with the requirements of the Federal Rules of Civil Procedure, including Rule 11; nor does it absolve Plaintiffs from overseeing their counsel's conduct.

Ultimately, Plaintiffs' motion is yet another instance of wasting class and party resources, which calls into further question the adequacy of Plaintiffs' counsel under Rule 23, an issue that is separately before the Court.  (*See* ECF No. 398; ECF No. 420 at PageID 13746.)

## ARGUMENT

### I.   DEFENDANTS' RULE 11 MOTION IS PROCEDURALLY PROPER AND TIMELY

Rule 11 is not a catch-all sanctions provision.  Rather, it is a means to address filings with the Court that present "claims, defenses, [or] legal contentions" that are not "warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or establishing new law" or contain "factual contentions" that do not have "evidentiary support." Fed. R. Civ. P. 11(b).  Thus, unless and until a filing is made with the Court that does not comport with Rule 11, a Rule 11 motion is not proper.

Plaintiffs' contention that Defendants' Rule 11 motion is somehow improper because of its timing is inexplicable.  (Pls.' Br. at 13-14.)  The motion was served on Plaintiffs on February 16, almost immediately after the offending filing was made on February 10.  Equally untenable—and factually untrue—is Plaintiffs' contention that Defendants "lied [sic] in wait for roughly a year."  (Pls.' Br. at 5.)  It is not for Defendants to advise Plaintiffs about fatal legal and factual issues with their case before such issues are presented to the Court.

Here, however, Defendants have done so.  Defendants identified Plaintiffs' lack of standing in their answers, which were timely filed on August 15, 2022.  (ECF No. 336 at PageID 7337-38; ECF No. 337 at PageID 7391; ECF No. 338 at PageID 7441; ECF No. 339 at PageID

7489; ECF No. 340 at PageID 7533.)  Defendants each further elaborated on the issue in interrogatory responses served on October 3, 2022, stating:

> [T]he fact that no Plaintiff in this case purchased attendance at a Varsity cheerleading camp or attended a Varsity cheerleading camp means that Plaintiffs lack standing to assert claims regarding cheerleading camps. . . . If Plaintiffs do not withdraw such claims, USASF reserves the right to seek all appropriate sanctions for the cost of defending against such claims.

Kaiser Decl., Ex. A, Defendant U.S. All Star Federation, Inc.'s First Supplemental Responses to Plaintiffs' First Set of Interrogatories, at 8; *see also* Kaiser Decl., Ex. B, Responses of Defendants Bain Capital Private Equity and Charlesbank Capital Partners to Plaintiffs' First Set of Interrogatories ("Respondents further note that the fact that no Plaintiff in this case purchased attendance at a Varsity cheerleading camp (or attended a Varsity cheerleading camp) means that Plaintiffs lack standing to assert claims regarding cheerleading camps."); ECF No. 403-5 at 4 (same); Kaiser Decl., Ex. C, Defendant Jeff Webb's Supplemental Objections and Answers to Plaintiffs' First Set of Interrogatories, at 5 ("Moreover, Plaintiffs did not participate in certain alleged markets at issue in this case because they did not purchase attendance or actually attend any Varsity cheerleading camp.").  Remarkably, in the combined twenty-six pages of briefing Plaintiffs have filed with this Court in ECF Nos. 414 and 416, Plaintiffs never once address the times they were put on notice of this issue prior to Defendant's February 2, 2023, letter.  Nor did Plaintiffs do anything to address their fatal lack of standing in the intervening time.

Likewise, Plaintiffs' assertion that the February 2 letter—in which Defendants reminded Plaintiffs of the impropriety of filing a class certification motion seeking to assert claims in camps—was somehow improper is absurd.  Defendants sent this letter specifically to avoid the situation in which they now find themselves, litigating a class certification motion based in part on claims that no Plaintiff has standing to pursue, under both black-letter law and this Court's prior rulings in the related *American Spirit* case.  (*American Spirit*, ECF No. 194 at PageID

4

2938.)  Defendants would have been perfectly within their rights to wait until the motion was filed and then to notify Plaintiffs of the Rule 11 motion.  *See* Fed. R. Civ. P. 11(c)(2) (setting procedure for initial service of Rule 11 motion after offending court filing, followed by 21-day cure period before filing).  Sending the letter ahead of time provided Plaintiffs with the opportunity to take the appropriate course and not pursue the camp claims for which they had no standing, thereby avoiding any need for a Rule 11 motion.  Unfortunately, Plaintiffs did not do so.

Similarly, Plaintiffs' assertion that Defendants could have waited to address the issue at summary judgment (Pls.' Br. at 13) is simply another way of saying that Defendants have no remedy to avoid continuing to expend resources defending against baseless claims in the interim.  To the contrary, when a party files papers with the Court that have no basis in fact or law, Rule 11 is that recourse, and Defendants need not wait until summary judgment to pursue it.[2]

---

[2] Plaintiffs also argue that Defendants could have saved "substantial expense" by moving to dismiss under Federal Rule of Civil Procedure 12(b)(1) or raising the alleged standing deficiency during class certification.  This argument simply blames the victim for Plaintiffs' failure to amend their complaint to drop camp-related claims once Ms. Velotta exited the case.  "Substantial expense" has been expended solely because of Plaintiffs' continued pursuit of claims for which they have no standing.  It is indisputably *Plaintiffs'* obligation under Rule 11 to continually assess their claims, and when they are untenable, to dismiss them voluntarily. *Runfola & Assocs., Inc. v. Spectrum Reporting II, Inc.*, 88 F.3d 368, 373-74 (6th Cir. 1996) ("[T]he reasonable inquiry under Rule 11 is not a one-time obligation.  The plaintiff is impressed with a continuing responsibility to review and reevaluate his pleadings and where appropriate modify them to conform to Rule 11. . . . [A]fter discovery has been launched, if plaintiffs are still unable to plead a sufficient factual basis for the allegations made against defendants, the spectre of Rule 11 sanctions should guide the actions of plaintiffs' counsel.") (internal quotation marks, brackets, and citations omitted) (quoting *Herron v. Jupiter Transp. Co.*, 858 F.2d 332, 335-36 (6th Cir. 1988), and *Michaels Bldg. Co. v. Ameritrust Co.*, 848 F.2d 674, 681 (6th Cir. 1988)); *see B & H Med., L.L.C. v. ABP Admin., Inc.*, 354 F. Supp. 2d 746, 748 (E.D. Mich. 2005), *aff'd*, 526 F.3d 257 (6th Cir. 2008) (sanctioning plaintiffs after "a lengthy discovery period failed to disclose any support for the antitrust claims asserted in the complaint.").  That said, as discussed below, it does appear that Plaintiffs' claims related to camps are ripe for summary dismissal at this time.  *See infra* Section IV.

Plaintiffs raise several other incorrect arguments. They argue that Defendants, through their motion and forewarning letter, somehow sought to "intimidate" Plaintiffs. Yet it is Plaintiffs, not Defendants, who are seeking to recover tens of millions of dollars for camp claims that they have no standing to assert, a clear attempt to apply pressure on Defendants through the assertion of untenable claims. Also, Plaintiffs responded to Defendants' February 2 letter and February 16 service of their Rule 11 motion by threatening Defendants and their counsel that, if Defendants proceeded to file their then-served Rule 11 motion, "we intend to pursue relief under Rule 11 against all Defendants and their counsel." (ECF No. 414-3 at PageID 13671.) Plaintiffs further asserted that "[a]ny defenses that you could raise at this juncture are untimely and would be governed by the doctrine of laches." (*Id.* at PageID 13668.) Plaintiffs have apparently abandoned that frivolous argument. *See, e.g.*, *Zurich Ins. Co. v. Logitrans, Inc.*, 297 F.3d 528, 531 (6th Cir. 2002) ("Article III standing is a jurisdictional requirement that cannot be waived, and . . . may be brought up at any time in the proceeding.")

Plaintiffs also argue that Defendants' motion seeks to litigate the merits of Plaintiffs' claims, which somehow makes it sanctionable. If Plaintiffs' position were accepted, Rule 11 would cease to serve its intended function, as an offending party could always urge the Court to wait until trial. Rule 11 exists precisely for situations like this, where a party, having advanced baseless claims in a court filing and been given the opportunity to withdraw or correct the filing, refuses to do so.

## II.   PLAINTIFFS' FRIVOLOUS MOTION TO CERTIFY A CLASS TO PURSUE CLAIMS IN CAMPS LACKS ANY LEGAL OR FACTUAL BASIS

### A.   Plaintiffs Inarguably Lack Article III Standing to Assert Claims in Camps

Plaintiffs state that Defendants' Rule 11 motion should be granted if "no reasonable attorney could possibly have believed that they were legally justified in pursuing claims . . . with

respect to the marketing and sale of camps under the facts of this case." (Pls.' Br. at 6.) Plaintiffs fail their own test. In reality, there is *no* basis for Plaintiffs' position that Ms. Jones and Ms. Lorenzen, the two existing Plaintiffs, have standing to bring claims relating to camps. Plaintiffs do not dispute that they made no purchases of camp registrations. They therefore did not suffer harm. They therefore lack standing under Article III. *See, e.g.*, *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 559-61 (1992).

Instead of addressing this basic problem, Plaintiffs continue to miscite inapposite cases and concepts relating to *antitrust* standing, which is to say standing to bring an antitrust case to address an actual injury. But without an actual injury that gives rise to Article III standing, antitrust standing is irrelevant. *See, e.g.*, *NicSand, Inc. v. 3M Co.*, 507 F.3d 442, 449 (6th Cir. 2007) (en banc) ("antitrust standing and Article III standing are not one and the same"); *see also Hyland v. Homeservices of Am., Inc.*, No. 3:05-CV-612-R, 2008 WL 4000546, at *2 (W.D. Ky. Aug. 25, 2008) ("If a plaintiff does not have Article III standing, he cannot later create subject matter jurisdiction by adding a plaintiff who has Article III standing.").

**B.      Plaintiffs Do Not Have Antitrust Standing in Camps**

Plaintiffs additionally lack antitrust standing. As this Court has already held, to have standing to bring antitrust claims in a particular market, a plaintiff must have *participated* in that market. (*American Spirit*, ECF No. 194 at PageID 2938.) This is settled, black-letter law. *See, e.g.*, *Southaven Land Co., Inc. v. Malone & Hyde, Inc.*, 715 F.2d 1079, 1086 (6th Cir. 1983) ("A significant element of the § 4 'standing' inquiry is the nature of the plaintiff's alleged injury either as a 'customer' or 'participant' in the 'relevant market.'"); *Fla. Seed Co., Inc. v. Monsanto Co.*, 105 F.3d 1372, 1374 (11th Cir. 1997) ("Basically, a plaintiff must show that it is a customer or competitor in the relevant antitrust market."). Plaintiffs assert claims based on a camp market, and it is undisputed that neither Plaintiff purchased attendance at a Varsity camp (or even

7

attended a Varsity camp). They therefore lack antitrust standing in addition to lacking Article III standing.

Plaintiffs seek to avoid this obvious conclusion with the frivolous argument that somehow the "inextricably intertwined" language of *Blue Shield of Va. v. McCready*, 457 U.S. 465 (1982), gives them standing to assert claims for purchases they did not make. In essence, they assert that *McCready* permits parties allegedly harmed in one market (here, the competition and apparel markets) to bring claims based on anticompetitive conduct in another market (here, the camp market) in which the parties concede they have not suffered any harm. *McCready* stands for no such principle. For the "inextricably intertwined" concept to be even *potentially* applicable, Plaintiffs would need to have been harmed *in the alleged camp market*, which they were not. Nor do they assert that anticompetitive conduct in the camp market led them to pay higher prices in some other market. Plaintiffs have things backwards.

In *McCready*, the plaintiff *suffered a harm* when she was denied an insurance reimbursement for her visits with a psychologist as a result of an anticompetitive scheme to benefit psychiatrists by excluding psychologists from the psychotherapy market. The issue in the case was whether the plaintiff could bring an *antitrust* claim to recover the harm she undisputedly incurred. 457 U.S. at 467. Critically, by seeking and obtaining psychotherapy services from a psychologist, the plaintiff *participated* in the psychotherapy market (she had been harmed by seeing an excluded psychologist rather than a non-excluded psychiatrist). The Supreme Court held that the plaintiff had standing under the antitrust laws because her harm was, in its words, "inextricably intertwined" with the scheme—that is, because people in the plaintiff's position who had received services *in the relevant market* necessarily had to be harmed by lack of reimbursement for the scheme to work. *Id.* at 484. The Court's decision in

8

*McCready* relates to when a *party injured in the market* has *antitrust* standing; it does not give license to parties that did not suffer injury in the market (here, camps) to pursue a claim in that market. *See Assoc. Gen. Contractors of Cal., Inc. v. Ca. State Council of Carpenters*, 459 U.S. 519, 538 (1983) ("McCready alleged that she was a consumer of psychotherapeutic services and that she had been injured by the defendants' conspiracy to restrain competition *in the market for such services*.") (emphasis added); *In re Aluminum Warehousing Antitrust Litig.*, 833 F.3d 151, 161 (2d Cir. 2016) (rejecting plaintiffs' "inextricably intertwined" argument where they had not purchased a product in the relevant market, on the basis that "to suffer antitrust injury, the putative plaintiff *must be a participant in the very market that is directly restrained*.") (emphasis added).

Here, Plaintiffs admit they suffered no injury as a result of Varsity's alleged conduct with respect to camps. They say that Varsity required some participants attending a few of its end-of-year high-level high school championship competitions to attend a Varsity camp. (Compl. ¶ 158.) Plaintiffs call this a "tying" arrangement (Pls.' Br at 5; *see also* ECF No. 414 at PageID 13654)[3] but do not dispute that, in stark contrast to the plaintiff in *McCready*, neither Ms. Lorenzen nor Ms. Jones purchased a Varsity camp or paid for a child to attend a Varsity camp.

---

[3] Plaintiffs' most recent filing suggests that they have abandoned their tying claims, although it seems more likely they are simply disavowing the label in an effort to avoid unfavorable precedent rather than withdrawing the claims. (ECF No. 433 at PageID 16645-46 n.8 ("Defendants' reliance on [tying cases] is misplaced. Plaintiffs are not pursuing Section 1 tying claims.").) In any event, even if Plaintiffs would prefer to call it by a different name, they have asserted a tying claim. *Compare Pogue v. Int'l Indus., Inc.*, 524 F.2d 342, 345-46 (6th Cir. 1975) ("In the typical tying arrangement, the victim's injury lies in the higher prices that must be paid for the tied product as a result of the seller's economic power in the tying product market.") *with* ECF No. 433 at PageID 16645 ("Defendants made attending their camps a prerequisite to attending their most sought after competitions . . . .") *and* ECF No. 1 at PageID 49 ("Varsity exploits its market power in the primary Cheer Competition Market to overcharge the families of participants in competitive cheer in multiple ways. Parents indirectly pay unlawfully inflated prices to Varsity for . . . All-Star Gyms' Cheer Camps[.]").

Nor do they allege that they suffered economic injury by purchasing registration for a non-Varsity camp.  Plaintiffs have not alleged—nor could they—facts to show that either Plaintiff was used "as a fulcrum, conduit or market force to injure competitors or participants in the [alleged camp market]."  *Southaven Land Co., Inc.*, 715 F.2d at 1086 (denying standing).  Moreover, the measure of damages in a tying case is the difference between what the plaintiff paid for the tied product (here camps) and what the price would have been in the absence of the tie.  *Pogue v. Int'l Indus., Inc.*, 524 F.2d 342, 345-46 (6th Cir. 1975).  Neither Plaintiff paid for the tied good in the first place.  Thus, neither was overcharged, and neither has standing to pursue a tying claim.

The cases Plaintiffs cite further demonstrate that the "inextricably intertwined" concept does nothing for Plaintiffs here.  *Dang v. San Francisco Forty Niners*, 964 F. Supp. 2d 1097, 1105 (N.D. Cal. 2013), concerned vertically related markets, specifically the market for NFL trademark licenses for apparel and the market for NFL trademark licensed apparel.  Unlike here, the plaintiff *purchased* NFL trademark licensed apparel, which it alleged was more expensive because of anticompetitive conduct in the NFL trademark licensing market.  *Id.* at 1111.  In other words, the upstream anticompetitive conduct caused higher prices downstream, which, unlike here as to camps, *the plaintiff paid*.  The court reasoned that the overcharge by the apparel manufacturer for the NFL license could have been passed down to consumers, such as the plaintiff, in the form of higher apparel prices.  *Id.* at 1113.  That is not at all the situation here, where no Plaintiff purchased a camp registration at all and Plaintiffs do not allege (nor could they) that overcharges in camps caused them to pay higher prices for something else, much less in the manner that would confer standing.

*In re Automative Parts Antitrust Litigation*, the other antitrust case on which Plaintiffs rely, is the same. There the issue was whether consumers who bought automobiles had standing to pursue indirect purchaser actions under state law based on overcharges to automobile manufacturers for certain auto parts. *See* 29 F. Supp. 3d 982, 994 (E.D. Mich. 2014) ("IPPs[, i.e., purchasers of new vehicles] allege that Defendants' anticompetitive conduct . . . impacted the prices that consumers paid for new vehicles."); *see also* No. 12-md-02311, 2013 WL 2456612, at *15 (E.D. Mich. June 6, 2013) (confirming same). Just like in *Dang* and unlike here, in *Auto Parts*, the downstream plaintiffs were allegedly overcharged because of an upstream overcharge.

*Dang* and *Auto Parts* were thus garden-variety indirect purchaser cases, where the theory was that overcharge in an upstream market—the sale to the intermediate—led to overcharges in the downstream market—the sale to the plaintiff. That is not the issue with Plaintiffs' claims based on camps because there was *no sale of camp registrations to any Plaintiff.* In no way does *Dang* or *In re Auto Parts* stand for the proposition that a party that did not purchase a product or service directly or indirectly somehow has standing to claim damages based on alleged overcharges for that product to others.

Plaintiffs also cite *Gold v. Eva Naturals, Inc.*, 586 F. Supp. 3d 158, 162 (E.D.N.Y. 2022), for the proposition that "outside the antitrust context, class representatives may have standing to pursue damages with respect to other similar products they did not in fact purchase." (ECF No. 414 at 13654-55.) This, again, is a frivolous argument. As the Court in *Gold* held, "the representative plaintiff must establish that she has Article III standing." *Gold*, 586 F. Supp. 3d at 160-61. Here, of course, there is no Article III standing for claims related to camps—Plaintiffs did not purchase a camp registration. In addition, in *Gold*, the "other products" were essentially identical variations of the same product that the plaintiff purchased with the identical allegations

11

about misbranding as "natural" products that "in reality . . . allegedly contain synthetic ingredients." *Id.* at 162. By contrast, Plaintiffs' allegations about camps are not similar, much less identical, to their allegations about competitions and apparel. Plaintiffs' claims about camps are based on an alleged tying arrangement, and Plaintiffs' claims about competitions and apparel (the products that Plaintiffs allegedly did indirectly purchase) are based on rebate programs, acquisitions, and the relationship between Varsity and USASF. In any event, antitrust standing is an additional requirement and, as set forth above, Plaintiffs do not have antitrust standing.

### C. Plaintiffs' Out-of-Time Effort to Add a New Class Representative to Address the Fatal Standing Problem They Deny Exists Proves Defendants' Point

On February 23, Plaintiffs sought leave to add a new Plaintiff, Ms. Coulson. (ECF No. 394.) The only purpose for adding Ms. Coulson is that she allegedly purchased a camp registration. (ECF No. 394-2, Declaration of Joseph R. Saveri ("Ms. Coulsen's addition will directly address Defendants' stated concerns regarding standing.").) Thus, although Plaintiffs deny it, they apparently recognize that they cannot proceed with claims in camps without a new Plaintiff and are attempting to add Ms. Coulson far past the appropriate time to do so. Ms. Coulson was not put forward as a potential Plaintiff until more than a year after the deadline for adding parties had passed, more than ten months after Ms. Velotta exited the case by voluntary dismissal, and almost five months after Defendants told Plaintiffs they lacked standing and risked sanctions by continuing to assert their camp claims.

The impropriety of adding Ms. Coulson at this late date is addressed in Defendants' response to Plaintiffs' motion to do so. (*See* ECF No. 404.) But even if the Court were to grant that motion, Plaintiffs should not be excused for their baseless pursuit of camp-related claims through their class certification motion. Rather, they should not have pursued those claims for which they lack standing.

Plaintiffs argue otherwise, in effect asserting they should be excused for pursuing baseless claims because of the possibility that they might be allowed to add a new plaintiff and, indeed, that their effort to do so makes Defendants' Rule 11 motion itself a Rule 11 violation. (Pls.' Br. at 18.)  They argue that their motion to add Ms. Coulson is a "corrective action taken well within Rule 11's safe harbor period."  (*Id.* at 18)  That is incorrect.  Plaintiffs have not corrected their Rule 11 violation, which is seeking to assert claims in their class certification motion that they have no standing to assert.  As specified in Rule 11, the way to correct that action would be to "withdraw" or "appropriately correct" the offending motion for class certification.  Fed. R. Civ. P. 11(c)(2).  Seeking to change the case by adding a new party corrects nothing.

Although they criticize Defendants for predicting that the Court would dismiss the claims against Bain and Charlesbank (*see* Pls.' Br. at 17 n.5), Plaintiffs presume that the Court will allow them to bring in a new Plaintiff to assert claims that they themselves have no standing to assert.  Plaintiffs predict this despite having waited over ten months from the voluntary exit of Ms. Velotta from the case in April 2022 and without moving the Court for relief from the scheduling order requiring such motions be filed by November 2021.  The Court should not grant Plaintiffs' motion to add Ms. Coulson but, even if it were to do so, Plaintiffs have not corrected their improper class certification motion by making the request.

### D.   Sanctions Are Appropriate Where, as Here, Plaintiffs Manifestly Lack Standing

Plaintiffs cannot evade the cases that Defendants identified as precedent for sanctioning parties for pursuing claims where they lacked standing.  The cases stand for the principle that pursuing claims without standing—and not withdrawing them when confronted with that fact— is sanctionable under Rule 11.  Tellingly, even Plaintiffs are forced to concede that, in *Colorado*

13

*Chiropractic Council v. Porter Memorial Hospital*, 650 F. Supp. 231, 234 (D. Colo. 1986), the plaintiffs' claims were sanctionable because, precisely like here, none of the plaintiffs suffered the harm that they alleged.  (ECF No. 414 at PageID 13657.)  Similarly, notwithstanding Plaintiffs' mischaracterization of the case, *Pierce v. Commercial Warehouse* turned on the fact that the plaintiff there "did not buy or sell automotive parts" and "made no allegation that it had suffered injury to its own business or commercial interests."  142 F.R.D. 687, 691 (M.D. Fla. 1992).  The Court not only found that the entity plaintiff, which was purportedly asserting claims on behalf of others, lacked standing, but so did the "six real plaintiffs," whose depositions established they had not purchased the products underlying their claims.  *Id.* at 692.  Plaintiffs' main argument about the case seems to be that the sanctions motion was brought after the issues had been resolved on the merits, but Plaintiffs point to no authority that a Rule 11 motion can only be brought after the merits are resolved.  Indeed, the purpose of Rule 11 is to address such baseless claims and contentions prior to the needless expenditure of resources to address them.

> ### E.    Defendants' Rule 11 Motion is Accordingly Not Sanctionable

As the foregoing demonstrates, Defendants' Rule 11 motion was timely and meritorious. Plaintiffs' cross motion for sanctions is therefore untenable by definition and should be denied. It is a classic example of attempting to distract the Court from Plaintiffs' own bad conduct by throwing mud at the other side.  Defendants respectfully request that, in addition to the sanctions requested in Defendants' original Rule 11 motion, Plaintiffs be further sanctioned to compensate Defendants for the costs of responding to this motion.

## III.   PLAINTIFFS' REHASHING OF PRIOR DISCOVERY DISPUTES IS IRRELEVANT AND MERITLESS

At the end of their motion, Plaintiffs veer into irrelevant and long-resolved prior disputes over 30(b)(6) depositions and document productions that they had with Bain and Charlesbank.

14

They do not seek any relief over those disputes, which would not be available under Rule 11 in any event.  *See* Rule 11(d) (Rule 11 is "does not apply to disclosures and discovery requests, responses, objections, and motions under Rules 26 through 37.")  Nonetheless, Plaintiffs improperly seek to bootstrap those past and irrelevant disputes into their motion by claiming the Court can sanction Defendants for alleged past "misconduct" in discovery.  (Pls.' Br. at 16.)

Although irrelevant, Defendants are compelled to respond to these scurrilous allegations. As the actual record shows, the long-since-resolved discovery disputes arose from Plaintiffs staking out unreasonable positions in discovery, refusing to negotiate, and bringing repeated motions to compel that were largely rejected.

As to the 30(b)(6) depositions of Bain and Charlesbank, after months of negotiations, Plaintiffs moved to compel twenty depositions of unnamed Bain and Charlesbank employees, including 30(b)(6) depositions (covering 32 overbroad topics) for each of Bain and Charlesbank. Chief Magistrate Judge Pham denied that request and instead granted Plaintiffs depositions of nine individuals,[4] without explicitly granting Plaintiffs' request to take "one 30(b)(6) deposition, each."  (ECF No. 227-1 at PageID 4105; ECF No. 261 at PageID 5242.) Plaintiffs proceeded to take eight individual depositions.  Less than twenty-four hours before the ninth and final deposition was scheduled to take place, and with only three days left before Plaintiffs' deadline for depositions to be completed under the relevant scheduling order, Plaintiffs, for the first time, abandoned the 32 topics in their original 30(b)(6) notice.  (ECF No. 304-4 at PageID 6714.) They instead proposed four topics and asked Bain and Charlesbank to "stipulate to authentication" for unspecified documents from among the 95,335 that Bain and Charlesbank

---

[4] It bears mentioning that, in the course of negotiation, Bain and Charlesbank had offered Plaintiffs the opportunity to take ten depositions; Plaintiffs obtained less by litigating than they could have achieved through compromise.  (ECF No. 227-12 at PageID 4149.)

had produced.  (*Id.* at PageID 6714-15.)  Unsurprisingly, Bain and Charlesbank declined the last-minute demand for additional depositions.  Plaintiffs moved to compel, and Chief Magistrate Judge Pham concluded that Bain and Charlesbank had misunderstood his earlier order and permitted Plaintiffs to take the 30(b)(6) depositions.  (ECF No. 325.)  In so doing, he concluded that even Plaintiffs' narrowed topics were still too broad and limited them further, rejecting one, limiting one, and allowing three (including authentication questions for specific documents).  (*Id.*)  More than 90% of Plaintiffs' original 30(b)(6) topics were either dropped or rejected.

Plaintiffs likewise misrepresent the course of document discovery of Bain and Charlesbank.  Judge Claxton agreed that the Court's dismissal of the claims against them in October 2021 in the related *American Spirit* case strongly suggested that the Court would likewise dismiss the claims against them in this case.  (ECF No. 143, at PageID 2479-80.)  On that basis, Bain and Charlesbank asked Chief Magistrate Judge Pham, who replaced Judge Claxton on the case while the motion was pending, not to burden them with the excessive discovery that Plaintiffs were seeking.  Chief Magistrate Judge Pham declined to do that, but instead dramatically pared back the scope of Plaintiffs' requests and limited the demanded custodians.  (ECF No. 174.)  Chief Magistrate Judge Pham denied nearly 60% of Plaintiffs' requested time period for document production as to Charlesbank and nearly 75% as to Bain (*Id.* at 25), denied Plaintiffs' demand that Bain and Charlesbank search text messages, and denied five of Plaintiffs' requested custodians.  (*Id.* at 8, 24-25.)  Despite Plaintiffs' aspersions, Bain and Charlesbank have diligently complied with their discovery obligations throughout the course of this litigation.[5]

---

[5] Notwithstanding their compliance, Plaintiffs brought a ridiculous motion to compel the production of each and every document that Bain and Charlesbank had withheld or redacted a privileged on the basis that all privileges were waived when the privilege logs were not produced

Moreover, long-since-resolved discovery disputes are not an appropriate basis for a Rule 11 motion, and the cases Plaintiffs cite do not suggest otherwise.[6] *See, e.g.*, *Vollmer v. Publishers Clearing House*, 248 F. 3d 698, 712 (7th Cir. 2001) (vacating imposition of sanctions that were based on supposed past misconduct in other lawsuits); *Riccard v. Prudential Ins. Co.*, 307 F.3d 1277, 1282 (11th Cir. 2002) (describing "bitter campaign against Prudential that has included the filing of four lawsuits; the filing of complaints alleging misconduct by Prudential with the Securities and Exchange Commission, the United States Attorney's Office, the Banking and Insurance Department of one state, and the Agricultural Department of another; the filing of a motion for sanctions against Prudential and some of the attorneys representing it; and the filing of ethical complaints with the Bar Associations of two states against those attorneys").

Likewise, although Plaintiffs represent *MetLife Bank, N.A. v. Badostain*, No. 1:10-cv-118-CWD, 2010 WL 5559693 (D. Idaho Dec. 30, 2010) as granting sanctions for bringing a Rule 11 motion relating to the merits of the case, in fact, counter-sanctions were granted because the target of the Rule 11 motion had "addressed the otherwise sanctionable conduct in part by dismissing their breach of contract claims against two of the Defendants" and because the movant had "misstated law" even after the misstatement had been pointed out to it. *Id.* at *9-10. Here, to the contrary, Plaintiffs have not corrected their motion for class certification or

---

within thirty days of the service of Plaintiffs' *original* document requests in June 2021. Judge Pham denied that motion in its entirety, (ECF No. 326), just as he has largely or entirely denied Plaintiffs' other discovery motions directed to other Defendants. (ECF Nos. 229 (denying deposition of Varsity Brands' CEO); 272 (denying motion to compel documents from Varsity); 287 (denying motion to compel Defendants to provide their affirmative defenses)).

[6] Even if a Rule 11 motion were permissible in response to discovery disputes, which it is not, Plaintiffs' motion has been brought far too late; as described above, these disputes were resolved nearly a year ago. Fed. R. Civ. P. 11 advisory committee's notes to 1983 amendment ("A party seeking sanctions should give notice to the court and the offending party promptly upon discovery a basis to for doing so."); *see also* Fed. R. Civ. P. 37(a)(5) (Court to award expenses, if at all, upon resolution of motions to compel).

dismissed the camp-related camps—to the contrary, they have asserted they will continue to press them even if the Court denies their motion to add Ms. Coulson as a plaintiff.  And it is Plaintiffs, not Defendants, who have repeatedly misstated the law, including as set out in this memorandum.  (And, as in *MetLife Bank*, Defendants have pointed out these misstatements to Plaintiffs several times.  (ECF No. 414-4; ECF No. 404 at PageID 13539.)

## IV.   PLAINTIFFS' CAMP-RELATED CLAIMS ARE RIPE FOR DISMISSAL

Plaintiffs seek to cast Defendant's motion as an effort to adjudicate the merits of their claims.  Although that was not the purpose of the motion, it does seem that those claims are indeed ripe for summary dismissal, whether under Rule 12 or Rule 56.  The facts are not in dispute.  Plaintiffs concede that they made no camp-related purchases, directly or indirectly.  They in effect concede that their only basis for standing for their camp-related claims is their "inextricably intertwined" argument, which, as demonstrated above, is incorrect in all respects and, in any event, does not address their manifest lack of Article III standing.

The Court would be well within its discretion to dismiss those claims on the record before it or to order Plaintiffs to show cause why the camp-related claims should not be dismissed.  To the extent the Court requires or prefers a formal motion on the pleadings to effectuate dismissal, Defendants will file such a motion forthwith.

## CONCLUSION

For the reasons discussed above, Plaintiffs' cross motion for sanctions should be denied, and Defendants should be awarded their costs for preparing this response.  In addition, Defendants request that the Court dismiss Plaintiffs' camp-related claims, issue an order to show cause why those claims should not be dismissed, or set a schedule for briefing a motion to dismiss those claims under Rule 12 and/or Rule 56.

Dated: April 6, 2023

Respectfully submitted,

s/ Matthew S. Mulqueen

George S. Cary*
Steven J. Kaiser*
Linden Bernhardt*
CLEARY GOTTLIEB STEEN & HAMILTON LLP
2112 Pennsylvania Avenue, NW
Washington, DC 20037
Phone: (202) 974-1500
Fax: (202) 974-1999
gcary@cgsh.com
skaiser@cgsh.com
lbernhardt@cgsh.com

Jennifer Kennedy Park*
Heather Nyong'o*
CLEARY GOTTLIEB STEEN & HAMILTON LLP
1841 Page Mill Road, Suite 250
Palo Alto, CA 94304
Phone: (650) 815-4100
Fax: (202) 974-1999
jkpark@cgsh.com
hnyongo@cgsh.com

* Admitted *pro hac vice*

Matthew S. Mulqueen (TN #28418)
Adam S. Baldridge (TN #23488)
BAKER, DONELSON, BEARMAN, CALDWELL &
BERKOWITZ
165 Madison Avenue, Suite 2000
Memphis, TN 38103
Phone: (901) 526-2000
Fax: (901) 577-0866
mmulqueen@bakerdonelson.com
abaldridge@bakerdonelson.com

*Attorneys for Varsity Brands, LLC*; *Varsity Spirit,
LLC*; *Varsity Spirit Fashions & Supplies, LLC*;
*Charlesbank Capital Partners, LLC; Bain Capital
Private Equity LP*

19

s/ Nicole Berkowitz Riccio

Grady Garrison (TN #008097)
Nicole Berkowitz Riccio (TN #35046)
James Andrew Roach (TN #37934)
Karen Lott Glover (TN #38714)
BAKER, DONELSON, BEARMAN, CALDWELL
& BERKOWITZ
165 Madison Avenue, Suite 2000
Memphis, TN 38103
Phone: (901) 526-2000
Fax: (901) 577-0866
ggarrison@bakerdonelson.com
nriccio@bakerdonelson.com
aroach@bakerdonelson.com
kglover@bakerdonelson.com

*Attorneys for U.S. All Star Federation, Inc.*

s/ Brendan P. Gaffney

Paul E. Coggins*
Brendan P. Gaffney*
Kiprian E. Mendrygal*
Jennifer McCoy*
Katherine Wright
LOCKE LORD LLP
2200 Ross Avenue, Suite 2800
Dallas, TX 75201
Phone: (214) 740-8000
Fax: (214) 740-8800
pcoggins@lockelord.com
bgaffney@lockelord.com
kmendrygal@lockelord.com
jennifer.mccoy@lockeord.com
katie.wright@lockelord.com

* Admitted pro hac vice

Edward L. Stanton III (TN #018904)
S. Keenan Carter (TN # 023386)
BUTLER SNOW LLP
6075 Poplar Avenue, Suite 500
Memphis, Tennessee 38119
Telephone: (901) 680-7336

20

Fax: (901) 680-7201
Edward.Stanton@butlersnow.com
Keenan.carter@butlersnow.com

*Attorneys for Jeff Webb*