**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TENNESSEE**

JESSICA JONES et al.,

Plaintiffs,

v.

VARSITY BRANDS, LLC et al.,

Defendants.

**Civ. Action No. 2:20-cv-02892**

**DEFENDANTS' REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION TO EXCLUDE TESTIMONY OF PLAINTIFFS' PROFFERED EXPERT JANET S. NETZ, PHD**

# TABLE OF CONTENTS

INTRODUCTION ..........1

ARGUMENT ..........1

I. Dr. Netz' Product Market Definitions Remain Unreliable..........1

Ii. Anecdotes Do Not Salvage Dr. Netz' Geographic Market ..........3

Iii. Dr. Netz's Factual Narratives Are Improper ..........4

CONCLUSION..........5

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Gen. Elec. Co. v. Joiner*,
522 U.S. 136 (1997) .......... 2

*In re: LIBOR-Based Fin. Instruments Antitrust Litig.*,
299 F.Supp.3d 430 (S.D.N.Y. 2018) .......... 5

*In re Live Concert Antitrust Litig.*,
863 F.Supp.2d 966 (C.D. Cal. 2012) .......... 3

*In re REMEC Inc. Sec. Litig.*,
702 F.Supp.2d 1202 (S.D. Cal. 2010) .......... 4

*Ky. Speedway, LLC v. Nat'l Ass'n of Stock Car Auto Racing, Inc.*,
588 F.3d 908 (6th Cir. 2009) .......... 2

*New York v. Kraft Gen. Foods, Inc.*,
926 F.Supp. 321 (S.D.N.Y. 1995) .......... 2-3

*Newell Rubbermaid, Inc. v. Raymond Corp.*,
676 F.3d 521 (6th Cir. 2012) .......... 4-5

*Pride v. BIC Corp*.,
218 F.3d 566 (6th Cir. 2000) .......... 4

*ProMedica Health Sys., Inc. v. FTC*,
749 F.3d 559 (6th Cir. 2014) .......... 3

*Tchatat v. City of New York*,
315 F.R.D. 441 (S.D.N.Y. 2016) .......... 5

*Universal Surveillance Corp. v. Checkpoint Sys., Inc.*,
No. 5:11-CV-1755, 2015 WL 6082122 (N.D. Ohio Sept. 30, 2015) .......... 4

*Weisgram v. Marley Co.*,
528 U.S. 440 (2000) .......... 2

## INTRODUCTION

Plaintiffs' false narratives and mischaracterizations of Defendants' arguments do not shore up Dr. Netz's methodologically devoid opinions. This isn't a "battle of the experts" and Defendants did not argue that not doing quantitative analysis leads to exclusion. Rather, Defendants argued, and Plaintiffs do not counter, that for Dr. Netz's purely qualitative analysis to be admissible she must have actually done the analysis and it must be reliable, neither of which is the case. Dr. Netz repeatedly testified that she relied on no qualitative evidence whatsoever to support her conclusions. Plaintiffs also mislead by claiming Dr. Netz considered narrower markets with citations to her report showing Dr. Netz only considered the broadest markets. (ECF No. 425 at PageID 14285.) That misdirection aside, Plaintiffs do not meaningfully dispute that they seek to admit expert testimony supported solely by Dr. Netz's say-so and her misapplication of her chosen methodology. Plaintiffs also concede that the remainder of Dr. Netz's report is recitation of documents that they say "speak plainly," and in any event should not be presented to the jury. (*Id.* at PageID 14291.)

## ARGUMENT

### I. DR. NETZ'S PRODUCT MARKET DEFINITIONS REMAIN UNRELIABLE

Dr. Netz testified that she relied on no evidence at all to support her test of her product market definitions.[1] Whether quantitative or qualitative analysis is necessary here (*id.* at PageID 14277) is therefore beside the point. "Expert testimony that is speculative is not competent proof and contributes "nothing to a 'legally sufficient evidentiary basis.'" *Weisgram v. Marley Co.*,

[1] ECF No. 382-5 at 95:14-96:9 ("A. Well, quantitative analysis would not be required, but I also did not have qualitative evidence that that would happen. Q. So you had neither quantitative nor qualitative analysis that that would happen? A. Correct."). Plaintiffs claim Dr. Netz used the *Brown Shoe* indicia, too, but she simply ignored them when they were inconvenient. *Id.* 74:25-75:4.

528 U.S. 440, 454 (2000). And as Plaintiffs aptly point out, this Court has held that "defining a product market is 'highly factual.'" (ECF No. 333 at PageID 7228.) Because Dr. Netz admits her Cheer Competitions market definition relies on neither sufficient facts nor data, her opinion that customers would substitute between All Star and School competitions is entirely speculative.[2] This is therefore not a mere disagreement with an expert's conclusion. Dr. Netz's opinion on the Cheer Competitions market is purely *ipse dixit* and precisely the type of testimony that requires this Court to exercise its gatekeeping function to exclude. *See Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997). The same is true of Dr. Netz's Cheer Camps product market.

Dr. Netz's Cheer Apparel product market fares no better. Plaintiffs only defense of Dr. Netz's expansive market definition here is to raise inapposite caselaw about cluster markets for cereal brands. But Dr. Netz never suggested Cheer Apparel was such a market. This alone makes her opinion inadmissible. *Id*. Even if Dr. Netz had analyzed whether "Cheer Apparel" as defined by Plaintiffs' counsel were an appropriate cluster market under applicable legal standards, all record evidence demonstrates that it is not under Sixth Circuit precedent (or any other precedent.)[3] As Plaintiffs acknowledge, if "*most* customers would be willing to pay monopoly prices for the convenience of receiving" a group of non-substituting products as a package, then that group of products may be considered a relevant cluster market in the Sixth Circuit. *ProMedica Health Sys., Inc. v. FTC*, 749 F.3d 559, 567 (6th Cir. 2014). But the facts

---

[2] Plaintiffs further imply Dr. Netz can skip the Hypothetical Monopolist Test ("HMT") and instead rely on so-called "direct evidence of ubiquitous market power." (ECF No. 425 at PageID 14281, 89.) They cannot do so in the Sixth Circuit. *Ky. Speedway, LLC v. Nat'l Ass'n of Stock Car Auto Racing, Inc.*, 588 F.3d 908, 919 (6th Cir. 2009) (finding argument that evidence of market power can define product markets in lieu of properly applied HMT was "unpersuasive.").

[3] Plaintiffs cite *New York v. Kraft General Foods* for the proposition that cluster markets are appropriate for similar goods where determining substitution is difficult. 926 F.Supp. 321, 333 (S.D.N.Y. 1995). But Plaintiffs cannot explain why the inclusion of Cornflakes and Cheerios in a cereal market merits the inclusion of pom-poms and shoes in a cheer apparel market.

fatally undermine Plaintiffs; Dr. Netz concedes [REDACTED] (ECF No. 382-3 at 29.)

Finally, Plaintiffs claim there is no requirement that Dr. Netz start with the narrowest set of products when applying the HMT. (ECF No. 425 at PageID 14278.) Besides contradicting the requirements of the HMT as defined by Dr. Netz herself (ECF No. 382-5 at 51:1-13), this argument fails as a matter of law. *See, e.g.*, *In re Live Concert Antitrust Litig.*, 863 F.Supp.2d 966, 987 (C.D. Cal. 2012) (excluding expert for failing to "meaningfully consider any narrower definition of the market" as required by the HMT).[4] Plaintiffs try to have it both ways and argue that Dr. Netz did look at more narrow markets. (ECF No. 425 at PageID 14285.) However, Dr. Netz admitted she did not do so for her Competitions and Camps product markets. (ECF No. 382-5 at 96:10-97:13; 179:3-9.) The language in Dr. Netz's report to which Plaintiffs point shows only that she considered *broader* markets, like camps for different sports, and excluded them. (ECF No. 382-3 at 60.) That is beside the point.[5]

## II. ANECDOTES DO NOT SALVAGE DR. NETZ'S GEOGRAPHIC MARKET

Dr. Netz's geographic market analysis suffers from similar methodological defects. (*See* ECF No. 382-1 at PageID 8564-66.) First, Plaintiffs concede that their experts disagree on the relevant geographic market. (ECF No. 425 at PageID 14287.) Plaintiffs try to explain this away

---

[4] The *Live Concert* court further concluded that an "[expert's] failure even to consider the possibility of a narrower product market is also contrary to the approach outlined in the Horizontal Merger Guidelines," *Id.* So too here.

[5] Plaintiffs' defense appears to be that Varsity "did not view cheer camps as distinctive types" because Board presentations reported camp revenues at an aggregate level. (ECF No. 425 at PageID 14285.) Putting aside that this only further shows Plaintiffs' propensity for inventing "conclusions" from anecdotes, their logic is risible. Are "Non-Perishables" and "Fresh" relevant antitrust product markets simply because Kroger reports its grocery revenues this way in its annual report? *See* The Kroger Co., Annual Report (Form 10-K) (Mar. 28, 2023), at 63. Obviously not.

by saying it does not matter, yet Dr. Heeb's overcharge analysis yields far different results on a national versus regional basis and, indeed, concedes that Varsity did not even have a statistically significant difference in prices in one of the regions. (*Id.*; ECF No. 388-1 at PageID 10445.) For the first time in her rebuttal report, Dr. Netz attempts to rehabilitate her unfounded conclusion that markets are national, which she based on her ad hoc determinations that certain anecdotal documents were more informative than others were, by conducting anecdotal analyses of travel distances. *See, e.g.,* ECF No. 382-4 at Ex. 8 (distances traveled by All Star gyms to a single event in 2018); Ex. 9 (sample of 200 gyms that traveled the most); Ex. 10 (sample of schools that only go to one event per season); Ex. 11 (sample of a single championship event); Ex. 17 (sample of just the 10 largest resort camps). Dr. Netz's improper rebuttal is transparently biased, unreliable, and inadmissible. (*See* ECF No. 382-1 at PageID 8565-66.) "[R]ed flags that caution against certifying an expert include reliance on anecdotal evidence..." *Newell Rubbermaid, Inc. v. Raymond Corp.*, 676 F.3d 521, 527 (6th Cir. 2012). Unlike, *Universal Surveillance Corp.*, (ECF No. 425 at PageID 14286), Dr. Netz offers no meaningful rationale for her sample selection. 2015 WL 6082122, at *15 (N.D. Ohio Sept. 30, 2015). That certain customers traveled farther than the average customer to some specific events is irrelevant to whether Dr. Netz selected a reliable sample to support her opinion that the market is national. She did not. *See In re REMEC Inc. Sec. Litig.,* 702 F.Supp.2d 1202, 1273 (S.D. Cal. 2010).

Dr. Netz's rehabilitation effort also fails as a matter of law. *See Pride v. BIC Corp*., 218 F.3d 566, 578–79 (6th Cir. 2000) (refusal to allow rebuttal reports that constituted a "transparent attempt" to redress weaknesses identified in original report was proper).

## III. DR. NETZ'S FACTUAL NARRATIVES ARE IMPROPER

"Plaintiffs wholly agree that no expert witness in this case should be permitted to take the stand and regurgitate either side's factual narrative for sake of regurgitation." (ECF No. 427 at

PageID 14343.) Yet, Dr. Netz's purported opinions regarding conduct consist purely of factual narrative and her interpretation of documents. (*See* ECF No. 382-1 at PageID 8566-74.) Plaintiffs do not dispute that Dr. Netz admitted that she had no methodology for how she selected the documents she chose to "interpret," calling the selection "anecdotal." (ECF No. 382-5 at 158:23-24.) That is reason enough for exclusion. *Newell Rubbermaid, Inc.*, 676 F.3d at 527. Plaintiffs also contradict themselves by arguing that the documents require expert interpretation for the jury while also arguing that "the documents speak plainly." (ECF No. 425 at PageID 14291-92.) Either the documents speak plainly and her interpretations should be excluded as unnecessary, or her interpretation is a thinly veiled attempt at mind reading that should also be excluded, as has happened before with Dr. Netz. *See In re: LIBOR*, 299 F.Supp.3d 430, 491 (S.D.N.Y. 2018) (excluding Dr. Netz's interpretations of anecdotal documents.)[6] Plaintiffs' counsel should not be permitted to launder their own arguments through Dr. Netz simply to bolster their spin on the documents because any value of her views is "far outweighed by the danger that the jury would accord too much weight to such opinions because they come from the mouth of a [] professional." *Tchatat v. City of New York*, 315 F.R.D. 441, 447 (S.D.N.Y. 2016).

Finally, Plaintiffs fail to address, and therefore concede, that Dr. Netz's rebate foreclosure analysis is unreliable because it is based on a single anecdote prior to the Class Period, uses the wrong data set, and assumes facts. (*See* ECF No. 382-1 at PageID 8674.)

**CONCLUSION**

Dr. Netz's testimony should be excluded in its entirety.

[6] Plaintiffs' concession that the documents Dr. Netz relies upon here "speak plainly," renders their attempt to distinguish Dr. Netz's prior exclusion unconvincing. Indeed, Plaintiffs further demonstrate the acute danger that Dr. Netz's proffered testimony poses by running afoul of Rule 403. They argue that her narrative shows "Varsity and USASF colluded" and that Varsity's loyalty programs "are exclusive dealing arrangements." (ECF No. 425 at PageID 14292.)

Dated: April 28, 2023

Respectfully submitted,

/s Matthew S. Mulqueen

George S. Cary*
Steven J. Kaiser*
Linden Bernhardt*
CLEARY GOTTLIEB STEEN & HAMILTON LLP
2112 Pennsylvania Avenue, NW
Washington, DC 20037
Phone: (202) 974-1500
Fax: (202) 974-1999
gcary@cgsh.com
skaiser@cgsh.com
lbernhardt@cgsh.com

Jennifer Kennedy Park*
Heather Nyong'o*
CLEARY GOTTLIEB STEEN & HAMILTON LLP
1841 Page Mill Road, Suite 250
Palo Alto, CA 94304
Phone: (650) 815-4100
Fax: (202) 974-1999
jkpark@cgsh.com
hnyongo@cgsh.com

* Admitted *pro hac vice*

Matthew S. Mulqueen (TN #28418)
Adam S. Baldridge (TN #23488)
BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ
165 Madison Avenue, Suite 2000
Memphis, TN 38103
Phone: (901) 526-2000
Fax: (901) 577-0866
mmulqueen@bakerdonelson.com
abaldridge@bakerdonelson.com

*Attorneys for Defendants Varsity Brands, LLC, Varsity Spirit, LLC; Varsity Spirit Fashions & Supplies, LLC; Charlesbank Capital Partners, LLC; Bain Capital Private Equity LP*

s/ Nicole Berkowitz Riccio
Grady Garrison (TN #008097)
Nicole Berkowitz Riccio (TN #35046)
James Andrew Roach (TN #37934)
Karen Lott Glover (TN #38714)
BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ
165 Madison Avenue, Suite 2000
Memphis, TN 38103
Phone: (901) 526-2000
Fax: (901) 577-0866
ggarrison@bakerdonelson.com
nriccio@bakerdonelson.com
aroach@bakerdonelson.com
kglover@bakerdonelson.com

*Attorneys for U.S. All Star Federation, Inc. and USA Sport Cheering, d/b/a USA Cheer*

s/ Brendan P. Gaffney
Paul E. Coggins*
Brendan P. Gaffney*
LOCKE LORD LLP
2200 Ross Avenue, Suite 2800
Dallas, TX 75201
Phone: (214) 740-8000
Fax: (214) 740-8800
pcoggins@lockelord.com
bgaffney@lockelord.com

* Admitted *pro hac vice*

Edward L. Stanton III (TN #018904)
S. Keenan Carter (TN #023386)
BUTLER SNOW LLP
6075 Poplar Avenue, Suite 500
Memphis, Tennessee 38119
Phone: (901) 680-7336
Fax: (901) 680-7201
Edward.Stanton@butlersnow.com
Keenan.Carter@butlersnow.com

*Attorneys for Jeff Webb*