**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TENNESSEE**

JESSICA JONES et al.,

Plaintiffs,

v.

VARSITY BRANDS, LLC et al.,

Defendants.

**Civ. Action No. 2:20-cv-02892**

**DEFENDANTS' REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION TO EXCLUDE TESTIMONY OF PLAINTIFFS' PROFFERED EXPERT JEN MAKI, PHD**

**TABLE OF CONTENTS**


INTRODUCTION ........ 1

ARGUMENT ........ 1

I. Plaintiffs Concede Several Important Issues ........ 1

II. Plaintiffs Do Not Rehabilitate Dr. Maki's Analysis ........ 2

A. Dr. Maki Cannot Use Nationwide Overcharges in Regional Markets ........ 2

B. Dr. Maki's 100% Passthrough Rate Is Not a "Reasonable Estimate" ........ 3

III. Plaintiffs' Claim of Untimeliness Is Frivolous ........ 5

CONCLUSION ........ 5

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ill. Brick Co. v. Illinois*,
431 U.S. 720 (1977)........................................................................................................ 4

*In re Class 8 Transmission Indirect Purchaser Antitrust Litig.*,
679 Fed. App'x 135 (3d Cir. 2017) ...................................................................................... 5

*In re Graphics Processing Units Antitrust Litig.*,
253 F.R.D. 478 (N.D. Cal. 2008).....................................................................................4-5

*In re Processed Egg Prods. Antitrust Litig.*,
312 F.R.D. 124 (E.D. Pa. 2015) ......................................................................................4-5

## INTRODUCTION

Plaintiffs fail to provide a basis for the admission of Dr. Maki's flawed conclusions. They instead mistakenly argue that Defendants' arguments "hinge on" Defendants' critiques of Dr. Heeb or amount to mere factual disputes appropriately left to the jury. (ECF No. 247 at PageID 14325.) That is incorrect; Defendants' motion is based on Dr. Maki's unreliable methodology, incomplete analyses, and baseless assumptions. Nor can Plaintiffs escape their obligation of putting forth reliable testimony on the basis that Defendants do not provide alternative models. Were it even possible, constructing an admissible model to demonstrate harm or passthrough, or to ascertain damages on a class(es)-wide basis under the circumstances Plaintiffs propose would require extensive third-party discovery of gyms and schools that Plaintiffs chose not to pursue. That the task is difficult or impossible does not allow Plaintiffs to present expert opinion testimony that does not satisfy the rules of evidence.

## ARGUMENT

### I. PLAINTIFFS CONCEDE SEVERAL IMPORTANT ISSUES

Plaintiffs do not contest several of Defendants' points. First, they do not dispute that Dr. Maki's proposed damages assessment is utterly dependent on Dr. Heeb's overcharge calculations. (*See* ECF No. 427 at PageID 14329.) Thus, if Dr. Heeb's overcharge calculations are excluded—which they ought to be (*see* ECF No. 388-1 at PageID 10438-53)—Dr. Maki's damages assessment must also be excluded. Second, Plaintiffs do not dispute that, unless the Court allows Plaintiffs to proceed with a nationwide damages class under Tennessee law, which other courts have roundly rejected (*see* ECF No. 420 at PageID 13739-40), Dr. Maki's nationwide damages model is irrelevant. Third, Plaintiffs "wholly agree" that "no expert witness in this case," including Dr. Maki, "should be permitted to take the stand and regurgitate either side's factual narrative for sake of regurgitation." (ECF No. 427 at PageID 14343.)

## II. PLAINTIFFS DO NOT REHABILITATE DR. MAKI'S ANALYSIS

### A. Dr. Maki Cannot Use Nationwide Overcharges in Regional Markets

Defendants do not argue that Dr. Maki "should not have based her damages calculations 'using Dr. Heeb's regional overcharge numbers,'" as Plaintiffs claim. (ECF No. 427 at PageID 14329.) In fact, Defendants' point is the opposite. Dr. Maki's use of Dr. Heeb's *nationwide* overcharge to calculate damages for Plaintiffs' alleged Cheer Competitions and Cheer Camps markets is inadmissible because Plaintiffs' position (based on Dr. Heeb's work) is that there are *regional* geographic markets for both. (*See* ECF No. 391-1 at PageID 12792.) Dr. Maki's inclusion of a state-by-state damages analysis in her rebuttal does not fix this; that analysis is *itself* based on Dr. Heeb's nationwide overcharge percentages. (*See* ECF No. 427 at PageID 14329.) Thus, limiting Dr. Maki's damages numbers to those states that allow indirect purchaser causes of action (which by Dr. Maki's admission would reduce damages by 52%) would only partially solve this particular problem. (*See* ECF No. 391-1 at PageID 12795.)

Plaintiffs likewise do not seriously address the overinclusion of sales in Dr. Maki's analysis. (ECF No. 427 at PageID 14331 n.4.) Rather, they in essence concede that Dr. Maki assumed any sale that Varsity made resulted in an indirect purchase, and thus should be included in her total, unless she could "identify" that it was a sale to an end purchaser. (*See* ECF No. 391-3, Maki Dep. 76:23-24 ("To the extent I could identify direct purchasers, they were excluded.").) In other words, Dr. Maki agrees that she erred on the side of inclusion, which is to say she erred on the side of *increasing* the damages amount. That is overtly biased and improper.

Plaintiffs also fail to justify Dr. Maki's erroneous inclusion of camp registrations by sideline-only teams (*i.e.*, teams that did not attend a Varsity competition). Plaintiffs speculate that teams "attending Varsity camps likely have competed at non-Varsity competitions" and that "camp attendance is correlated with competitive cheer" (ECF No. 427 at PageID 14333), but

they provide no basis for either conclusion and fail to rebut the fact that many non-competing cheer teams attend Varsity camps. (*See* ECF No. 391-6, Murphy Rep. ¶ 247.) Nor do Plaintiffs properly address Dr. Maki's inclusion of sales where the gyms or schools recorded in Varsity's transaction data as the "customer" acted as purchasing agents for individuals. These sales are not indirect purchases by putative class members, but rather direct purchases improperly included in Dr. Maki's calculations. (*See* ECF No. 391-1 at PageID 12793-94.) Plaintiffs are wrong to argue that the inclusion of irrelevant purchases is a mere "disputed factual issue" best left for the jury. (ECF No. 427 at PageID 14332.) Dr. Maki's opinion is inadmissible *because* she included direct sales that should not have been assumed to have led to indirect purchases.

Plaintiffs also misconstrue Defendants' point about the cumulative impact of Dr. Maki's errors. Defendants' hypothetical 60% overstatement is illustrative, showing that four independent errors, each effecting only 20% of transactions, would compound to an overall error of 60%. (*See* ECF No. 391-1 at PageID 12795 ("Even *if* each error only affected, *for example*, 20% of all sales . . . .") (emphasis added).) It is true Defendants cannot know how many transactions were affected by the issues outlined, as that would require third-party data Plaintiffs chose not to gather. (*See infra* Section II.B.) But the implication for the unreliability of Dr. Maki's methodology remains.

**B. Dr. Maki's 100% Passthrough Rate Is Not a "Reasonable Estimate"**

Plaintiffs assert that Dr. Maki's passthrough rate is admissible as a "reasonable estimate." (ECF No. 427 at PageID 14337-38.) But if perfect passthrough based largely on a claimed lack of contradictory evidence were a "reasonable estimate," then the courts in the many cases Defendants cited previously (*see* ECF 391-1 at PageID 12796-803), including the Supreme Court in *Illinois Brick Co. v. Illinois*, 431 U.S. 720, 731-32, 737 (1977), would not have held otherwise. Further, Dr. Maki's "reasonable estimate" is based on misunderstandings or misstatements of the

record.[1] The testimony of several witnesses, including that of Janine Cherasaro, which Plaintiffs' indiscriminately regurgitate (ECF No. 427 at PageID 14336), demonstrates that passthrough is a complicated question that cannot be reduced to a single answer of 100% passthrough for all purchases. (*See* ECF No. 391-1 at PageID 12799-800.) Given that tens of thousands of gyms and schools sponsor competitive cheer teams, countless variations or purchase practices *beyond* those testified to would be expected among the hundreds of thousands of putative class members. Simply assuming otherwise is inappropriate for expert testimony.[2]

Rather than meaningfully dispute Defendants' critiques of Dr. Maki's passthrough analysis, Plaintiffs seek to excuse the flaws by referencing a lack of data. (ECF No. 427 at PageID 14335.) But, Plaintiffs had every opportunity to obtain the data necessary to substantiate their claims. Their decision not to does not save Dr. Maki's faulty analysis. *See GPU*, 253 F.R.D. at 506 (rejecting same argument and noting that plaintiffs "failed to timely raise the issue and had not filed any motions to compel on that issue"). And, contrary to Plaintiffs' assertions, the gaps in data do not "result wholly from" Varsity (ECF No. 427 at PageID 14340). In fact, Varsity produced the data it had. The *needed* data belongs to third parties—gyms and schools.

---

[1] Plaintiffs also attempt to simplify the passthrough analysis by inaccurately stating that Varsity's Network Agreements are "not the subject of individualized negotiations." (ECF No. 427 at PageID 14340.) That is plainly incorrect. (*See, e.g.*, Ex. A, LeTard Dep. Tr. 210:4-10; Ex. B, Newby Dep. Tr. 287:17-18.)

[2] Plaintiffs cannot avoid the mountain of precedent rejecting such passthrough assertions. Plaintiffs argue "[h]ere, the marketplace is f[a]r more simple" (ECF No. 427 at PageID 14339) than that in *In re Graphics Processing Units Antitrust Litigation*, 253 F.R.D. 478, 506 (N.D. Cal. 2008) ("*GPU*"). But, as in *GPU*, "the products themselves [are] highly heterogeneous," thanks to Plaintiffs' sprawling alleged markets, and indirect purchasers bought those products from "potentially thousands of direct purchasers." (ECF No. 427 at PageID 14339.) Plaintiffs also misconstrue *In re Processed Egg Products Antitrust Litigation*, 312 F.R.D. 124, 130 (E.D. Pa. 2015). *Egg Products* rejected the proffered extrapolated passthrough analysis. 312 F.R.D. at 159-60. Contrary to Plaintiffs' suggestion (ECF No. 427 at PageID 14339 n.10), it certainly did not require the opposing party to use "economic quantitative analysis" to disprove perfect passthrough when, as here, the movant had not provided such analysis in the first place.

Such data would show, among other things, whether the gym or school was reimbursed and whether it acted as a mere purchasing agent or was actually a direct purchaser. The fact that there are many players in the chain of distribution does not give Plaintiffs license to avoid their burden of providing evidence. It simply demonstrates the difficulty in sustaining the burden of showing predominance in the class certification process. *See, e.g.*, *Egg Prods.*, 312 F.R.D. at 159-60; *In re Class 8 Transmission Indirect Purchaser Antitrust Litig.*, 679 Fed. App'x 135, 141 (3d Cir. 2017). *Daubert* does not allow such assumption-based conclusions in the guise of expert testimony. Nor are Defendants required to create an "alternative" model, another excuse that Plaintiffs offer for Dr. Maki's inadequate work. (*See* ECF No. 427 at PageID 14342.)

## III. PLAINTIFFS' CLAIM OF UNTIMELINESS IS FRIVOLOUS

Plaintiffs' assertion that Defendants' motion was untimely filed because Plaintiffs did not receive the sealed version until 12:07 am (*see* Kaiser Decl., ¶ 4) on February 11 is frivolous. Plaintiffs already had all of the materials filed under seal, the relevant parts of which were identified by paragraph and line in the public version of Defendants' memorandum, which Plaintiffs do not dispute they received before the deadline.[3] Indeed, Plaintiffs used some of these materials in their briefs *filed the same day*. (Kaiser Decl., ¶ 3.)

## CONCLUSION

Dr. Maki's testimony should be excluded in its entirety.

[3] Plaintiffs did not even download the filing until February 14, *more than three days later*. (Kaiser Decl., ¶ 5.) There was therefore plainly no prejudice, nor do Plaintiffs claim there was. Moreover, Plaintiffs did not bring the seven-minute delay to Defendants' attention in the *two months* from service to the filing of their response, for example, to seek an equal extension on their deadline. (Kaiser Decl., ¶ 6.) Plaintiffs cite an instance in this litigation where they missed a filing deadline by a full day, filing the materials at 11 pm the following day. The Court excused Plaintiffs' tardiness (ECF No. 106), and there certainly is no call here for the Court to, as Plaintiffs would have it "only consider the redacted motion without any exhibits in support" (*see* ECF No. 427 at PageID 14326 n.2).

Dated: April 28, 2023

Respectfully submitted,

/s Matthew S. Mulqueen

George S. Cary*
Steven J. Kaiser*
Linden Bernhardt*
CLEARY GOTTLIEB STEEN & HAMILTON LLP
2112 Pennsylvania Avenue, NW
Washington, DC 20037
Phone: (202) 974-1500
Fax: (202) 974-1999
gcary@cgsh.com
skaiser@cgsh.com
lbernhardt@cgsh.com

Jennifer Kennedy Park*
Heather Nyong'o*
CLEARY GOTTLIEB STEEN & HAMILTON LLP
1841 Page Mill Road, Suite 250
Palo Alto, CA 94304
Phone: (650) 815-4100
Fax: (202) 974-1999
jkpark@cgsh.com
hnyongo@cgsh.com

* Admitted *pro hac vice*

Matthew S. Mulqueen (TN #28418)
Adam S. Baldridge (TN #23488)
BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ
165 Madison Avenue, Suite 2000
Memphis, TN 38103
Phone: (901) 526-2000
Fax: (901) 577-0866
mmulqueen@bakerdonelson.com
abaldridge@bakerdonelson.com

*Attorneys for Defendants Varsity Brands, LLC, Varsity Spirit, LLC; Varsity Spirit Fashions & Supplies, LLC; Charlesbank Capital Partners, LLC; Bain Capital Private Equity LP*

s/ Nicole Berkowitz Riccio
Grady Garrison (TN #008097)
Nicole Berkowitz Riccio (TN #35046)
James Andrew Roach (TN #37934)
Karen Lott Glover (TN #38714)
BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ
165 Madison Avenue, Suite 2000
Memphis, TN 38103
Phone: (901) 526-2000
Fax: (901) 577-0866
ggarrison@bakerdonelson.com
nriccio@bakerdonelson.com
aroach@bakerdonelson.com
kglover@bakerdonelson.com

*Attorneys for U.S. All Star Federation, Inc. and USA Sport Cheering, d/b/a USA Cheer*

s/ Brendan P. Gaffney
Paul E. Coggins*
Brendan P. Gaffney*
LOCKE LORD LLP
2200 Ross Avenue, Suite 2800
Dallas, TX 75201
Phone: (214) 740-8000
Fax: (214) 740-8800
pcoggins@lockelord.com
bgaffney@lockelord.com

* Admitted *pro hac vice*

Edward L. Stanton III (TN #018904)
S. Keenan Carter (TN #023386)
BUTLER SNOW LLP
6075 Poplar Avenue, Suite 500
Memphis, Tennessee 38119
Phone: (901) 680-7336
Fax: (901) 680-7201
Edward.Stanton@butlersnow.com
Keenan.Carter@butlersnow.com

*Attorneys for Jeff Webb*