# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| JESSICA JONES et al.,<br><br>        Plaintiffs,<br>    v.<br><br>VARSITY BRANDS, LLC et al.,<br><br>        Defendants. | **Civ. Action No. 2:20-cv-02892** |

**DEFENDANTS' REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION TO EXCLUDE TESTIMONY OF PLAINTIFFS' PROFFERED EXPERT RANDAL HEEB, PHD**

**TABLE OF CONTENTS**

INTRODUCTION ...............................................................................................................1

ARGUMENT ....................................................................................................................1

I.      Dr. Heeb Employs Unreliable Methodology to Define His Overbroad Product Market.....1

II.     Dr. Heeb Provided No Analysis For His Opinion That Varsity's Rebates Are Anticompetitive..............................................................................................................2

III.    Dr. Heeb's Overcharge Analysis Has No Connection to Alleged Conduct and No Basis in Fact...................................................................................................................3

IV.     Dr. Heeb's Increased Overcharge Figures Prejudice Defendants .......................................4

V.      Plaintiff's References to Dr. Heeb's Report Do Not Show His Testimony Is Reliable .......5

CONCLUSION...................................................................................................................5

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Brown Shoe Co. v. United States*,
    370 U.S. 294 (1962)............................................................................................................2

*Coleman Motor Co. v. Chrysler Corp.*,
    525 F.2d 1338 (3d Cir. 1975)............................................................................................4

*Collins Inkjet Corp. v. Eastman Kodak Co.*,
    781 F.3d 264 (6th Cir. 2015)............................................................................................2

*Comcast Corp. v. Behrend*,
    569 U.S. 27 (2013)........................................................................................................ 3-4

*Conwood Co., L.P. v. U.S. Tobacco Co.*,
    290 F.3d 768 (6th Cir. 2002)............................................................................................4

*Green Cnty. Food Mkt., Inc. v. Bottling Grp., LLC*,
    371 F.3d 1275 (10th Cir. 2004)........................................................................................2

*In re Live Concert Antitrust Litig.*,
    863 F.Supp.2d 966 (C.D. Cal. 2012)............................................................................ 1-2

*Kentucky Speedway, LLC v. Nat'l Ass'n of Stock Car Auto Racing, Inc.*,
    588 F.3d 908 (6th Cir. 2009)............................................................................................2

*New York v. Meta Platforms, Inc.*,
    No. 21-7078 (D.C. Cir. Apr. 27, 2023) ...........................................................................4

*Universal Surveillance Corp. v. Checkpoint Sys., Inc.*,
    No. 5:11-CV-1755, 2015 WL 6082122 (N.D. Ohio Sept. 30, 2015) ...............................3

*Watson v. Willow Enters., Inc.*,
    No. 14-14124, 2017 WL 3434088 (E.D. Mich. Aug. 10, 2017) ......................................5

*Z Techs. Corp. v. Lubrizol Corp.*,
    753 F.3d 594 (6th Cir. 2014)............................................................................................4

**Other Authorities**

Fed. R. Evid. 702 ....................................................................................................................1

**INTRODUCTION**

Dr. Heeb's opinions employ unreliable methodology and have no basis in fact and are therefore inadmissible.  *See* Fed. R. Evid. 702(b)-(c).  Plaintiffs concede that Dr. Heeb failed to correctly apply the Hypothetical Monopolist Test ("HMT") in defining his overly broad markets and did not provide any analysis capable of showing Varsity's rebate programs were anticompetitive or connecting his purported "overcharges" to the alleged conduct.  They attempt to rebut these challenges by quoting liberally from Dr. Heeb's report, but no part of his report overcomes his lack of reliable analysis.  Given these deficiencies, Plaintiffs resort to misstatements of law to claim incorrectly that Dr. Heeb's analysis is adequate as-is.

**ARGUMENT**

**I.      DR. HEEB EMPLOYS UNRELIABLE METHODOLOGY TO DEFINE HIS OVERBROAD PRODUCT MARKETS**

Plaintiffs do not dispute that Dr. Heeb failed to begin with the narrowest candidate market in applying the HMT.  (ECF No. 429 at PageID 14379.)  They claim that a reliable application of the HMT need not do so.  *Id.*  But this is wrong.  The Horizontal Merger Guidelines ("HMGs") plainly require such an analysis.  *See, e.g.*, *In re Live Concert Antitrust Litig.*, 863 F.Supp.2d 966, 988 (C.D. Cal. 2012) (concluding the HMGs "stress[] the importance of defining the relevant market as narrowly as possible") (citing HMGs at 8).  On this issue, Plaintiffs contradict their other expert, Dr. Netz,[1] who agreed that "[t]he [HMT] is iterative, *beginning with a narrowly defined candidate market that includes only the product of interest*."  (ECF No. 382-3 at 40) (emphasis added).  By starting with overly broad candidate markets, Dr. Heeb could not rule out

---

[1] This is not the only contradiction among Plaintiffs' experts.  Plaintiffs concede that Dr. Heeb and Dr. Netz did not even agree on the scope of the relevant geographic markets.  (ECF No. 425 at PageID 14287.)

markets that include fundamentally different products, such as All Star and scholastic

competitions or uniforms and shoes. *See* ECF No. 388-1 at PageID 10429-30; *see also Live*

*Concert*, 863 F. Supp. 2d at 987 (excluding expert's market definition as conclusory because

expert did not start with the narrowest candidate market).[2]

Plaintiffs likewise do not dispute that Dr. Heeb's "cheer apparel" market includes a

myriad of non-substitutable products such as pom poms and hair bows. They assert Dr. Heeb's

overbroad apparel market is reliable by reference to a "cluster market" for cheer apparel and rely

on his percentages of customers who buy from multiple Varsity apparel categories. (ECF No.

429 at PageID 14382-83.) But, again, Dr. Heeb's "evidence" is irrelevant to the legal definition

for a cluster market, rendering his testimony based on that legal definition unreliable, confusing,

and prejudicial. *See, e.g.*, *Green Cnty. Food Mkt., Inc. v. Bottling Grp., LLC*, 371 F.3d 1275,

1284 (10th Cir. 2004) ("[T]he cluster approach is only appropriate where the product package is

significantly different from, and appeals to buyers on a different basis from, the individual

products considered separately.") (internal quotation marks omitted); *see also* ECF No. 388-1 at

PageID 10432-33; ECF No. 73 at PageID 565-66; *Fusion Elite* ECF No. 96 at PageID 784-85.

## II.    DR. HEEB PROVIDED NO BASIS FOR HIS OPINION THAT VARSITY'S REBATES ARE ANTICOMPETITIVE

As to Varsity's rebate programs, Plaintiffs concede the discount attribution test must be

met for a bundled discount to be anticompetitive "[w]hen differential pricing is the only means"

of alleged coercion. *Collins Inkjet Corp. v. Eastman Kodak Co.*, 781 F.3d 264, 273 (6th Cir.

---

[2] *Brown Shoe* factors do not remedy Dr. Heeb's failure to reliably apply the HMT. (*See* ECF No. 429 at PageID 14380.) To satisfy *Brown Shoe*, Dr. Heeb must still demonstrate that products within each of his proposed product markets are reasonably interchangeable, which he did not. *See Brown Shoe Co. v. United States*, 370 U.S. 294, 325 (1962); *Kentucky Speedway, LLC v. Nat'l Ass'n of Stock Car Auto Racing, Inc.*, 588 F.3d 908, 918 (6th Cir. 2009) (excluding expert's market definition where expert referred to *Brown Shoe* factors but did not apply the HMT).

2015); ECF No. 429 at PageID 14386.  There is no dispute that Dr. Heeb did not analyze below-cost pricing.  As such, he provided no analysis that could show Varsity's rebates were anticompetitive.  Plaintiffs' citation to *Universal Surveillance Corp. v. Checkpoint Systems, Inc.*, 2015 WL 6082122 (N.D. Ohio Sept. 30, 2015) is inapposite.  The expert in that case concluded Checkpoint Systems' discounts "would result in below-cost prices." *Id.* at *10.  Checkpoint challenged *how* the expert found prices were below cost.  *Id.* at *12.  But Dr. Heeb made no attempt to do such an analysis in the first place.  His opinion that Varsity's rebates were anticompetitive does not comport to the legal test for anticompetitive conduct and is inadmissible.[3]

## III.   DR. HEEB'S OVERCHARGE ANALYSIS HAS NO CONNECTION TO ALLEGED CONDUCT AND NO BASIS IN FACT

Plaintiffs likewise essentially concede the fatal problem with Dr. Heeb's overcharge analysis, which is that it merely compared Varsity's event prices to certain competitors' prices in 2014 and Varsity shoe prices with Nfinity shoe prices.  (*See* ECF No. 383-1 at PageID 10440, 10444.)  Plaintiffs do not explain how Dr. Heeb connected his "overcharges" to alleged conduct but rather speculate, with no analysis by Dr. Heeb or anyone else, that Varsity maintained purported market power from the start of the statute of limitations period.  (ECF No. 429 at PageID 14389.)  Attempting to elevate this conjecture to admissible expert opinion, they claim to distinguish *Comcast Corp. v. Behrend*, 569 U.S. 27 (2013).  But Plaintiffs miss the unquestioned legal principle in *Comcast* and other cases that experts cannot opine on the extent of

---

[3] At the motion to dismiss stage, the Court accepted Plaintiffs' assertion, subject to confirmation in discovery, that the rebate programs somehow could be viewed as "exclusive dealing" arrangements.  (ECF No. 333 at PageID 7212-7213.)  Dr. Heeb provided no basis for such a conclusion.  (ECF No. 388-1 at PageID 10436 n.3.)  Plaintiffs otherwise point to other alleged conduct that they say is anticompetitive, but that is irrelevant to whether Varsity's rebates, which lower costs for its customers, are anticompetitive.

anticompetitive harm without showing alleged conduct caused that harm. *See Comcast*, 569 U.S. at 38 ("The first step in a damages study is the translation of the *legal theory of the harmful event* into an analysis of the economic impact *of that event*.") (internal quotations omitted); *Coleman Motor Co. v. Chrysler Corp.*, 525 F.2d 1338, 1353 (3d Cir. 1975) (excluding expert's damages so as to not "permit a jury to speculate concerning the amount of losses resulting from unlawful, as opposed to lawful, competition.").[4]  Allowing testimony about overcharges not based on illegal conduct—as Plaintiffs propose here—would turn the law on its head.

Plaintiffs misconstrue this Court's motion to dismiss ruling as a blanket license for Dr. Heeb to claim "overcharges" purely for market conditions at the start of the limitations period. (ECF No. 429 at PageID 14393-94.)  That, too, is incorrect.  (*See* ECF No. 333 at PageID 7235) (citing *Z Techs. Corp. v. Lubrizol Corp.*, 753 F.3d 594, 598-99 (6th Cir. 2014) ("None of the cited cases indicate that a price increase following a merger or acquisition, *by itself*, extends the statute of limitations.") (emphasis added)); *see also* Ex. A, *New York v. Meta Platforms, Inc.*, No. 21-7078, at 21-25 (D.C. Cir. Apr. 27, 2023) (upholding dismissal of claims based on series of out-of-period acquisitions).  For Dr. Heeb's "overcharges" to be relevant, much less reliable, he must at a minimum demonstrate anticompetitive effects of conduct within the statute of limitations.  (*Id.* at PageID 7235-36.)  Plaintiffs do not even claim he did that at all.

## IV.   DR. HEEB'S INCREASED OVERCHARGE FIGURES FIRST REVEALED IN HIS REBUTTAL REPORT PREJUDICE DEFENDANTS

Plaintiffs do not deny that Dr. Heeb augments his overcharge figures rather than rebut Professor Murphy.  They instead cite to cases discussing supplemental expert opinions and admit

---

[4] Plaintiffs cite *Conwood Co., L.P. v. U.S. Tobacco Co.*, 290 F.3d 768 (6th Cir. 2002), but there Plaintiffs' expert supported geography-specific damage estimates using affidavits about activity in those specific geographic areas.  *Id.* at 794.  This is a far cry from extrapolating "overcharges" from competitions to camps, as Dr. Heeb did here.  (See ECF No. 388-1 at 22-23.)

Dr. Heeb's overcharge figures were untimely disclosed.  (*See* ECF No. 429 at PageID 14401-02.)

Dr. Heeb's increased overcharges directly prejudiced Defendants by increasing estimated

damages through their other expert, Dr. Maki.[5]

## V.   PLAINTIFFS' REFERENCES TO DR. HEEB'S REPORT DO NOT SHOW HIS TESTIMONY IS RELIABLE

None of Plaintiffs' many citations to Dr. Heeb's report rehabilitate the fundamental

deficiencies in his testimony.  Plaintiffs frequently repeat purported analyses by Dr. Heeb which

Defendants have shown to be unreliable.  For example, Plaintiffs' assertion that Dr. Heeb

conducted reliable common impact analysis by showing Varsity had purported market power

nationwide (ECF No. 429 at PageID 14402) only reiterates the circular logic that renders Dr.

Heeb's "analysis" unreliable:  That is, by assuming "everyone was overcharged," he concluded

"everyone was overcharged."  (ECF No. 388-1 at PageID 10453.)  That is not proper analysis.

Elsewhere, Plaintiffs simply mischaracterize Dr. Heeb's report.  For instance, they assert that Dr.

Heeb examined the substitutability of different types of camps (ECF No. 429 at PageID 14384),

but he actually only provided registration figures at different types of camps.  (ECF No. 388-4, ¶

154-55.)  They assert that Dr. Heeb raised no new opinions in his rebuttal report (ECF No. 429 at

PageID 14401 n.19), but Dr. Heeb admitted that he raised many new opinions, such as his

discussion of Varsity's Stay Smart and State of Play programs (Ex. B, Heeb Dep. 272:11-13.)

### CONCLUSION

Dr. Heeb's testimony should be excluded.

---

[5] *Watson v. Willow Enterprises, Inc.*, 2017 WL 3434088 (E.D. Mich. Aug. 10, 2017) is
inapposite.  Where *Watson* involved a claim that an expert was improperly disclosed as a rebuttal
expert rather than a supplemental expert, *id*. at *2, the prejudice here involves Plaintiffs' claim
for increased damages in the rebuttal reports, which is improper.

Dated: April 28, 2023

Respectfully submitted,

/s Matthew S. Mulqueen

George S. Cary*
Steven J. Kaiser*
Linden Bernhardt*
CLEARY GOTTLIEB STEEN &
HAMILTON LLP
2112 Pennsylvania Avenue, NW
Washington, DC 20037
Phone: (202) 974-1500
Fax: (202) 974-1999
gcary@cgsh.com
skaiser@cgsh.com
lbernhardt@cgsh.com

Jennifer Kennedy Park*
Heather Nyong'o*
CLEARY GOTTLIEB STEEN &
HAMILTON LLP
1841 Page Mill Road, Suite 250
Palo Alto, CA 94304
Phone: (650) 815-4100
Fax: (202) 974-1999
jkpark@cgsh.com
hnyongo@cgsh.com

* Admitted *pro hac vice*

Matthew S. Mulqueen (TN #28418)
Adam S. Baldridge (TN #23488)
BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ
165 Madison Avenue, Suite 2000
Memphis, TN 38103
Phone: (901) 526-2000
Fax: (901) 577-0866
mmulqueen@bakerdonelson.com
abaldridge@bakerdonelson.com

*Attorneys for Defendants Varsity Brands, LLC, Varsity Spirit, LLC; Varsity Spirit Fashions & Supplies, LLC; Charlesbank Capital Partners, LLC; Bain Capital Private Equity LP*

6

s/ Nicole Berkowitz Riccio
Grady Garrison (TN #008097)
Nicole Berkowitz Riccio (TN #35046)
James Andrew Roach (TN #37934)
Karen Lott Glover (TN #38714)
BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ
165 Madison Avenue, Suite 2000
Memphis, TN 38103
Phone: (901) 526-2000
Fax: (901) 577-0866
ggarrison@bakerdonelson.com
nriccio@bakerdonelson.com
aroach@bakerdonelson.com
kglover@bakerdonelson.com

*Attorneys for U.S. All Star Federation, Inc.
and USA Sport Cheering, d/b/a USA Cheer*

s/ Brendan P. Gaffney
Paul E. Coggins*
Brendan P. Gaffney*
LOCKE LORD LLP
2200 Ross Avenue, Suite 2800
Dallas, TX 75201
Phone: (214) 740-8000
Fax: (214) 740-8800
pcoggins@lockelord.com
bgaffney@lockelord.com

* Admitted *pro hac vice*

Edward L. Stanton III (TN #018904)
S. Keenan Carter (TN #023386)
BUTLER SNOW LLP
6075 Poplar Avenue, Suite 500
Memphis, Tennessee 38119
Phone: (901) 680-7336
Fax: (901) 680-7201
Edward.Stanton@butlersnow.com
Keenan.Carter@butlersnow.com

*Attorneys for Jeff Webb*

7