IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

_____

JESSICA JONES, ET AL.          |
                               |
            Plaintiffs,        |
                               |
VS.                            | No. 2:20-CV-02892-SHL
                               |
BAIN CAPITAL PRIVATE EQUITY, ET AL.|
                               |
            Defendants.        |
_____


TRANSCRIPT OF ORAL ARGUMENTS

BEFORE THE

HON. SHERYL H. LIPMAN


APRIL 24, 2023


APRIL LASSITER-BENSON
OFFICIAL REPORTER
167 N. MAIN STREET – SUITE 408
MEMPHIS, TENNESSEE 38103


*UNREDACTED TRANSCRIPT*

```
 1                  - A-P-P-E-A-R-A-N-C-E-S -

 2


 3     For the Plaintiff, Jessica Jones:

 4                          MR. JOSEPH R. SAVERI
                            MR. DAVID SEIDEL
 5                          MS. RONNIE SEIDEL SPIEGEL
                            JOSEPH SAVERI LAW FIRM
 6                          601 CALIFORNIA STREET
                            SUITE 1000
 7                          SAN FRANCISCO, CA 94108

 8                          MR. DANIEL J. NORDIN
                            GUSTAFSON GLUEK, PLLC
 9                          120 SOUTH SIXTH STREET
                            SUITE 2600
10                          MINNEAPOLIS, MN 55402

11                          MR. JASON SCOTT HARTLEY
                            ATTORNEY AT LAW
12                          101 WEST BROADWAY
                            SUITE 820
13                          SAN DIEGO, CA 92101

14                          MR. RICHARD PAUL, III
                            PAUL, LLP
15                          601 WALNUT STREET
                            SUITE 300
16                          KANSAS CITY, MO 64106

17                          MR. VAN DAVIS TURNER, JR.
                            TURNER FEILD, PLLC
18                          2650 THOUSAND OAKS BOULEVARD
                            SUITE 2325
19                          MEMPHIS, TN 38118

20

21     For the Defendant, Michelle Velotta:

22                          MR. JOSEPH R. SAVERI
                            MS. RONNIE SEIDEL SPIEGEL
23                          JOSEPH SAVERI LAW FIRM
                            601 CALIFORNIA STREET
24                          SUITE 1000
                            SAN FRANCISCO, CA 94108
25
```

*UNREDACTED TRANSCRIPT*

```
1                    - A-P-P-E-A-R-A-N-C-E-S -

2

3     For the Defendant, Michelle Velotta (cont.):

4                         MR. VAN DAVIS TURNER, JR.
                          TURNER FEILD, PLLC
5                         2650 THOUSAND OAKS BOULEVARD
                          SUITE 2325
6                         MEMPHIS, TN 38118

7
      For the Defendant, Bain Capital Private Equity:
8
                          MS. HEATHER NYONG'O
9                         CLEARY GOTTLIEB STEEN &
                          HAMILTON, LLP
10                        650 CALIFORNIA STREET
                          SUITE 2000
11                        SAN FRANCISCO, CA 94108

12                        MR. MATTHEW SINON MULQUEEN
                          BAKER DONELSON BEARMAN CALDWELL &
13                        BERKOWITZ, PC-MEMPHIS
                          165 MADISON AVENUE
14                        SUITE 2000
                          MEMPHIS, TN 38103
15
                          MR. STEVEN KAISER
16                        CLEARY GOTTLIEB STEEN &
                          HAMILTON, LLP
17                        2112 PENNSYLVANIA AVENUE, NW
                          SUITE 1000
18                        WASHINGTON, DC 20037

19

20    For the Defendant, Jeff Webb:

21                        MR. BRENDAN P. GAFFNEY
                          LOCKE LORD
22                        2200 ROSS AVENUE
                          SUITE 2800
23                        DALLAS, TX 75201

24

25
```

*UNREDACTED TRANSCRIPT*

1                    **- A-P-P-E-A-R-A-N-C-E-S -**

2

3    For the Defendant, Jeff Webb (cont.):

4                              **MR. EDWARD L. STANTON, III**
                               BUTLER SNOW, LLP
5                              6075 POPLAR AVENUE
                               SUITE 500
6                              MEMPHIS, TN 38119

7

8    For the Defendant, U.S. All Star Federation, Inc.:

9
                               **MR. GRADY M. GARRISON**
10                             BAKER DONELSON BEARMAN CALDWELL &
                               BERKOWITZ, PC
11                             165 MADISON AVENUE
                               SUITE 2000
12                             MEMPHIS, TN 38103

13

14   For the Defendant, Varsity Brands, LLC:

15                             **MR. MATTHEW SINON MULQUEEN**
                               BAKER DONELSON BEARMAN CALDWELL &
16                             BERKOWITZ, PC-MEMPHIS
                               165 MADISON AVENUE
17                             SUITE 2000
                               MEMPHIS, TN 38103
18
                               **MS. HEATHER NYONG'O**
19                             CLEARY GOTTILEB STEEN &
                               HAMILTON, LLP
20                             650 CALIFORNIA STREET
                               SUITE 2000
21                             SAN FRANCISCO, CA 94108

22

23

24

25

*UNREDACTED TRANSCRIPT*

```
 1                   - A-P-P-E-A-R-A-N-C-E-S -

 2

 3    For the Defendant, Charlesbank Capital Partners, LLC:

 4                            MR. MATTHEW SINON MULQUEEN
                              BAKER DONELSON BEARMAN CALDWELL &
 5                            BERKOWITZ, PC-MEMPHIS
                              165 MADISON AVENUE
 6                            SUITE 2000
                              MEMPHIS, TN 38103
 7
                              MS. HEATHER NYONG'O
 8                            CLEARY GOTTILEB STEEN &
                              HAMILTON, LLP
 9                            650 CALIFORNIA STREET
                              SUITE 2000
10                            SAN FRANCISCO, CA 94108

11                            MR. STEVEN KAISER
                              CLEARY GOTTILEB STEEN &
12                            HAMILTON, LLP
                              2112 PENNSYLVANIA AVENUE, NW
13                            SUITE 1000
                              WASHINGTON, DC 20037
14

15    For the Defendant, Varsity Spirit Fashions & Supplies,
      Inc.:
16                            MR. MATTHEW SINON MULQUEEN
                              BAKER DONELSON BEARMAN CALDWELL &
17                            BERKOWITZ, PC-MEMPHIS
                              165 MADISON AVENUE
18                            SUITE 2000
                              MEMPHIS, TN 38103
19
                              MS. HEATHER NYONG'O
20                            CLEARY GOTTILEB STEEN &
                              HAMILTON, LLP
21                            650 CALIFORNIA STREET
                              SUITE 2000
22                            SAN FRANCISCO, CA 94108

23

24

25
```

*UNREDACTED TRANSCRIPT*

6

1                          – A-P-P-E-A-R-A-N-C-E-S –

2

For the Defendant, Varsity Spirit Fashions & Supplies,
3    Inc. (cont.):
                                 MR. STEVEN KAISER
4                                CLEARY GOTTILEB STEEN &
                                 HAMILTON, LLP
5                                2112 PENNSYLVANIA AVENUE, NW
                                 SUITE 1000
6                                WASHINGTON, DC 2003

7

For the Defendant, Varsity Brands, LLC:
8
                                 MR. MATTHEW SINON MULQUEEN
9                                BAKER DONELSON BEARMAN CALDWELL &
                                 BERKOWITZ, PC-MEMPHIS
10                               165 MADISON AVENUE
                                 SUITE 2000
11                               MEMPHIS, TN 38103

12                               MS. HEATHER NYONG'O
                                 CLEARY GOTTILEB STEEN &
13                               HAMILTON, LLP
                                 650 CALIFORNIA STREET
14                               SUITE 2000
                                 SAN FRANCISCO, CA 94108
15
                                 MR. STEVEN KAISER
16                               CLEARY GOTTILEB STEEN &
                                 HAMILTON, LLP
17                               2112 PENNSYLVANIA AVENUE, NW
                                 SUITE 1000
18                               WASHINGTON, DC 2003

19

20

21

22

23

24

25

*UNREDACTED TRANSCRIPT*

1          MONDAY

2        April 24, 2023

3

4

5

6          **THE COURT:**  Good afternoon.

7          **UNANIMOUS RESPONSE:**  Good afternoon.

8          **THE COURT:**  We are here for oral argument in

9    *Jones, et al. v. Bain Capital Private Equity, et al*,

10   20-2892.  We've got a little role call sheet.  Let's see

11   where everyone is.

12          So, for plaintiffs, I've got Daniel

13   Nordin.

14          **MR. NORDIN:**  Good afternoon, Your Honor.

15          **THE COURT:**  Good afternoon.

16          David Seidel.

17          **MR. SEIDEL:**  Good afternoon, Your Honor.

18          **THE COURT:**  Good afternoon.

19          J -- I guess these are -- well, I don't

20   know what order these are in.

21          Jason Scott Hartley.

22          **MR. HARTLEY:**  Good afternoon, Your Honor.

23          **THE COURT:**  Good afternoon.

24          Joseph Saveri.

25          **MR. SAVERI:**  Good afternoon, Your Honor.

*UNREDACTED TRANSCRIPT*

1          **THE COURT:**  Good afternoon.  And are you the

2     one who is primarily going to argue, sir?

3          **MR. SAVERI:**  Primarily, yes, depending on

4     which way it goes.  Also, my colleague, Mr. Seidel.

5          **THE COURT:**  Okay.  Got it.

6          Richard Paul, III.

7          **MR. PAUL:**  Good afternoon.

8          **THE COURT:**  Good afternoon.

9          Ronnie Seidel Spiegel.

10         **MS. SEIDEL-SPIEGEL:**  Good afternoon, Your

11    Honor.

12         **THE COURT:**  Good afternoon.

13         And Van Turner.

14         **MR. TURNER:**  Good afternoon, Your Honor.

15         **THE COURT:**  Hey, how are you, Mr. Turner?

16         **MR. TURNER:**  All right.

17         **THE COURT:**  Then we have defense counsel.

18         Heather Nyong'O.

19         **MS. NYONGO:**  Nyong'O, Your Honor.

20         **THE COURT:**  Thank you.

21         **MS. NYONGO:**  Good afternoon.

22         **THE COURT:**  Good afternoon.

23         Matthew Mulqueen.

24         **MR. MULQUEEN:**  Good afternoon, Your Honor.

25         **THE COURT:**  Good afternoon.

*UNREDACTED TRANSCRIPT*

```
1                    Steven Kaiser.
2            MR. KAISER:  Good afternoon.
3            THE COURT:  Are you primarily arguing or ...
4            MR. KAISER:  I believe I'll be speaking most
5    today, yes.
6            THE COURT:  Okay.  Then -- and that's all for
7    Varsity.
8              Then for Mr. Webb, Brendan Gaffney.
9            MR. GAFFNEY:  Good afternoon, Your Honor.
10           THE COURT:  Good afternoon.
11            Mr. Stanton.
12           MR. STANTON:  Mr. Webb.
13           THE COURT:  Yes.
14           MR. STANTON:  Good afternoon, Your Honor.
15           THE COURT:  How are you today?
16           MR. STANTON:  Well, thank you.
17           THE COURT:  Good.
18             Then, U.S. All Star Federation,
19   Mr. Garrison.
20           MR. GARRISON:  Good afternoon.
21           THE COURT:  Good afternoon.  How are you?
22           MR. GARRISON:  Fine.  And you?
23           THE COURT:  Good.
24            All right.  Let's get going.
25             So, hopefully, you-all read the order
```

*UNREDACTED TRANSCRIPT*

 1    that I issued and took me at my word, that those are

 2    the issues that we're really talking about today.

 3    If you just have some burning desire to bring

 4    something else up, I will certainly listen.  But I

 5    really set out the things that I want to know about.

 6              And let me just start by saying -- by

 7    indicating the issues that I did.  I'm essentially

 8    tipping my hand on the Motion for Reconsideration,

 9    because I do think we got some of that wrong.

10              So, the Motion to Strike the class

11    allegations, I think, brings back some of those

12    issues and will allow us to rule on those issues, on

13    the merits, particularly, those issues that we said

14    had been waived for various reasons.  So I'm not

15    saying I'm going to rule differently, meaning, I'm

16    not going -- yeah, I'm not saying I'm going to rule

17    differently.  Substantively, I'm just saying they're

18    back in the game.

19              So those issues in particular were the

20    dismissal of competitions and camps, based on this

21    concept of whether they were services instead of

22    products, as well as the issue related to whether

23    the Tennessee Class Action statute prevents a Rule

24    23 class action.  So those are issues back on the

25    table and are outlined in the questions to be

*UNREDACTED TRANSCRIPT*

1    addressed at this hearing.

2              Does that all make sense?

3              Anyone have a question about that?

4         **UNANIMOUS RESPONSE:**  No, Your Honor.

5         **THE COURT:**  Good.

6              So I want to just go through the list of

7    the questions that we outlined in the order that

8    sets out the issues to be addressed today.  I want

9    to get all my notes straight first, though.

10              And the first is the -- the first one on

11    my list is this issue related to competitions and

12    camps, whether there is a product somewhere in

13    there.  I think we all agree with the law that the

14    statute only covers products, not services.

15              Plaintiff agree with that?

16         **MR. SEIDEL:**  Yes, Your Honor.

17         **THE COURT:**  Okay.  So the question is, for

18    competitions and camps, where is the product?  And if I

19    conclude that it's somehow some mix of product and

20    service, what does that mean?

21              So let me -- I think I know what the

22    defense's position on this is.

23              Let me hear what the plaintiffs have to

24    say first on that issue.

25         **MR. SEIDEL:**  Yes, Your Honor.  Can I approach

*UNREDACTED TRANSCRIPT*

1     the podium or ...

2              **THE COURT:**  You can argue from wherever you're

3     most comfortable.

4              **MR. SEIDEL:**  Okay.  Good afternoon, Your

5     Honor.

6              **THE COURT:**  Okay.  Hang on one second.  If you

7     would, since there are lots of you lawyers in the room,

8     when you start your argument, please state your name

9     first, for the record.

10             **MR. SEIDEL:**  Yes, Your Honor.

11             Good afternoon.  David Seidel with

12    Joseph Saveri Law Firm on behalf of the plaintiffs.

13             So I think that you're correct, Your

14    Honor, that the distinction is between products and

15    services.  And there are a number of cases that have

16    held that services are not within the scope of the

17    TTPA.  And particularly, purely, service-based

18    contracts are not within the scope of the TTPA.

19             So the ultimate question, I think, that

20    Your Honor needs to address is whether camps and

21    competitions fall within the ambient of products or

22    whether they fall within the ambient of services.

23             And in this -- our position is that

24    camps and competitions are products.  They are

25    products that may be made up of some portion of some

*UNREDACTED TRANSCRIPT*

1    goods and some services.  But ultimately, they're
2    both products.
3                    And in particular, for example,
4    competitions, the cheer athletes pay one
5    registration fee for the product of competitions.
6    They're not paying for a higher service, for a
7    professional service, they're paying for product.
8    And that product includes a lot of different pieces,
9    but ultimately they pay one registration fee for a
10   product.
11                   For example, they are paying to get
12   bids.  If they win a competition they get bids for
13   other competitions.  They're paying for the use of
14   facilities.  And it's our position that real estate
15   is a product, not a service.  And they're also
16   getting tickets to Disneyland in some cases.  And
17   with respect to camps, they're also getting bids to
18   competitions.  They're also getting the use of
19   facilities and other -- receiving other goods.
20                   And also, I think it's important to keep
21   in mind as well that Varsity has tied camps to
22   competitions.  And so, a big reason why cheer
23   athletes are going to Varsity's camps is because
24   they're getting a certificate.  They're getting a
25   certificate that says they can participate in

*UNREDACTED TRANSCRIPT*

14

1    competitions.

2              THE COURT:  I guess what -- are you really

3    arguing there's a such thing as an intangible product?

4              MR. SEIDEL:  Yes, Your Honor, in the general

5    sense.  And I would point to _Sherwood v. Microsoft_.  And

6    that's a case under the TTPA, in which the product was

7    software, and the suite of all of the things that come

8    with an operating system in that case.  And so ...

9              THE COURT:  But an operating system, I mean, I

10   can -- or whether it's actually a physical disc.  It

11   probably isn't anymore.  Something gets sent to me that I

12   can maneuver on a computer, and I can see what's

13   happening.  It just doesn't feel as intangible as when

14   I -- if I were to go to a competition and cheer and be

15   evaluated or be taught.  Those just feel a lot more -- if

16   it's a product it's a lot more intangible of a product.

17              Can you get anything closer that you

18   would be able to point to to tell me why I consider

19   the competition in the camp's products?

20              MR. SEIDEL:  Yes, Your Honor.  I think we can.

21              And first, though, I would point out

22   that I don't think there's so much of a distinction

23   in the case law between tangible and intangible.  I

24   think the distinction is between products and

25   services.  And I think there are products that may

_UNREDACTED TRANSCRIPT_

1   be more or less tangible or intangible.

2           Now, in this case, for example, the use

3   of facilities.  So, if somebody were, for example,

4   to fix the price on real estate and people, you

5   know, use real estate, it isn't -- that is a

6   product.  It's not a service.  And so, here, for

7   example, a big part of camps and competitions are

8   the use of facilities, the use of real estate.  And

9   also, they receive goods as part of it.

10          So ...

11          **THE COURT:**  But really, okay, let's talk about

12  real estate.  Real estate, either you're buying a piece

13  of real estate or even renting and staying there for a

14  long time, as opposed to here, even looking at the

15  lodging and the meals.  And so, your equipment, people

16  are going, using those things for a specified period of

17  time and then leaving them.

18          **MR. SEIDEL:**  Yes.

19          **THE COURT:**  You don't take any of that with

20  you.  And you're right on the "intangible."  That was my

21  term.  It's my way of trying to get out, what is a

22  product and how do I fit that word to this set of things,

23  and what's a service.

24          **MR. SEIDEL:**  Yes, Your Honor.  And I think

25  that is exactly the right question.  But I would

*UNREDACTED TRANSCRIPT*

16

1    analogize renting real estate, whether it be for a year,

2    two years, or a month, to a similar situation that's

3    happening with competitions and camps.  You're renting it

4    for -- or you're paying to participate and use those

5    facilities, renting it for a shorter period of time.  But

6    I would analogize those two.

7              And I think one of the key -- I think

8    the key part in reading the cases is that things

9    that are services and purely services, are excluded.

10   But almost everything else is a product.  And I

11   think you can get that from the first Supreme Court

12   case, the first Tennessee Supreme Court case that

13   ruled on this issue, and that's *Standard Oil Co*.

14   And that's at 100 S.W.  And at Page 711 they say,

15   "Legislature clearly intended to prohibit trusts,

16   combinations, and agreements affecting all commerce

17   not covered by the federal statute, and upon which

18   it had a right to legislate.  It did not intend to

19   stop short of its power or to exceed it."

20             And now, there are subsequent cases that

21   have excluded, purely, service-based contracts.  But

22   I think everything else is a product.  And so, in

23   this case it seems clear that camps and competitions

24   are not service-based products, that they are, in

25   fact, products, whether they're bundled in the sense

*UNREDACTED TRANSCRIPT*

1    that there may be certain aspects that seem like

2    services.  But when somebody pays their registration

3    fee, they're not paying for the skill of labor that

4    is considered a service in the cases, for example:

5    Waste hauling; three trimming; insurance-based

6    contracts.

7              And I think in this case these are, when

8    added together, when looked at the whole,

9    ultimately, they are products under the TTPA.

10             **THE COURT:**  I assume the camps come with some

11   payment for the services of someone who is going to teach

12   the campers.

13             **MR. SEIDEL:**  That's right, Your Honor.

14             So I think camps have more of a portion

15   that can be looked at as services, in the case of

16   the camp instructor.  Certainly, that's not the case

17   with competitions.  And I think what's also key,

18   again, Your Honor, is time arrangement between camps

19   and competitions where ultimately, a lot of campers

20   were going to those camps to get a certificate to go

21   to competitions.

22             So we're not saying that there are no

23   aspects of camps or competitions that appear

24   service-based.  But I think the question is not

25   which aspects are more like services and which

*UNREDACTED TRANSCRIPT*

1    aspects are more like goods.  I think when you look

2    at it in the total- -- I think the right question is

3    to look at it in a totality of what's being offered,

4    that participants are paying one registration fee

5    for the entire product.  And I think you can

6    analogize this to other similar situations:  Going

7    to a movie, I think, buying a ticket to go to

8    Disneyland, which is also included.  Those may have

9    some services attached.  But I wouldn't qualify -- I

10   don't think it's proper to qualify them as services

11   and, therefore, exclude it under the TTPA.  I think,

12   ultimately, they're products.

13            Thank you, Your Honor.

14        **THE COURT:**  Anything else on that point?

15        **MR. SEIDEL:**  Nothing further, unless you have

16   any further questions, Your Honor.

17        **THE COURT:**  Let's hear from the defendants.

18        **MR. KAISER:**  Thank you, Your Honor.  I'm going

19   to stay over here, if that's okay.

20            So, cheer competitions and cheer camps

21   are not bundled visiting services in any sense it

22   matters.  And when a team goes to a cheer

23   competition, it depends on registration fees that

24   will be given a slot to compete.  It will be judged

25   and sported.  So that's the services that are

*UNREDACTED TRANSCRIPT*

19

1   provided.  Everything is a service.  Similarly, when

2   a cheerleader goes to cheer camp, he or she pays a

3   registration fee for the instruction that will be

4   provided.  It doesn't really sound like there's much

5   of a disagreement about that.

6              We've heard some things about some

7   ancillary things that come along with competitions,

8   for example, but those ancillary things themselves

9   are all services.  Access to the place where you do

10   the competition is completely ancillary, because

11   they need to be judged.  In that conception it would

12   seem that they would say, going to a hairdresser or

13   a barber would be a "good" because you get to sit in

14   the seat for the services performed.  Going to a

15   doctor's office is a "good" because you get to sit

16   in the waiting room for some period of time and

17   maybe you get to use the doctor's office's bathroom,

18   which is another example they used in their brief.

19              And I don't think anyone would say that

20   those things are goods.  Those are services.  The

21   services are provided.  Everything else is ancillary

22   to those services being provided.  And the Courts

23   have looked at this issue all the way back to the

24   Tennessee Supreme Court in that McAdoo case.  And

25   that case involves an indirect dependent conduct in

*UNREDACTED TRANSCRIPT*

1    the word of construction contracts.  And the

2    contracts, of course, had the management of

3    construction, which was considered a service.  And

4    that was really where the anticompetitive conduct

5    was alleged.  But, of course, whenever you build

6    something there's a whole lot of goods that go on

7    with that.  You've got drywall, and concrete, and

8    pipes, and all that sort of thing.

9              And the Court distinguished between

10   those two things and said, yeah, that's true, but

11   this is about the service.  This is about the

12   service of constructing and contracting, therefore,

13   the TTPA does not cover that.

14             **THE COURT:**  Well, here, isn't the plaintiff's

15   position all about the bid and what their allegations --

16   a big part of their allegations focus on that the bid

17   that comes out of these camps is part of what they find

18   the defendants have done wrong here, and that that is

19   the -- because that's the essence that comes out of the

20   camps, just like, the management of the construction

21   project was the essence of what they were challenging

22   there, that that's something that does lead to a product.

23             **MR. KAISER:**  Okay, so, let's talk about bids

24   for a second.

25             So they said that, well, at some

*UNREDACTED TRANSCRIPT*

21

1  competitions, some competitions, you know, we're of

2  class here.  Everything's in play, right.  But

3  they're focusing on little examples.

4          But in some competitions you can get a

5  bid to another competition.  And I'll talk about

6  camps in a second.  But that's kind of

7  terminological, right.  That's sort of circular

8  world.  But then if the registration fee to the

9  competition is a service in the beginning -- in the

10  first place, getting another registration fee paid,

11  if that's what the bid means, that's just getting a

12  service paid for.  So it's service on service.

13          **THE COURT:**  If the competition is a service.

14          **MR. KAISER:**  Right, right.  So it sort of

15  doesn't really change that dynamic.

16          Now, in camps, far be it for me to

17  characterize what they said about camps.  But I

18  believe what they're saying is that a few Varsity

19  competitions, and this is just a few, require you to

20  attend and receive a credential for safety and other

21  things at a Varsity camp.  So, in other words, if

22  you want to go to the competition you have to go to

23  the camp.  I think that's what they're saying.

24          But, again, that's not even receiving --

25  that's just receiving access to the competition.

*UNREDACTED TRANSCRIPT*

22

1    That's not receiving a bid for the competition or

2    getting your registration fee to the competition.

3    That's just a qualification you have to meet to be

4    eligible to compete in the competition.  And, again,

5    it's a very small sliver of competitions that have

6    this requirement, typically, very high-level

7    competitions.

8         **THE COURT:**  Well, some of that answer though

9    goes to one of my issues here.  You know, I realize a lot

10   more has happened in this case beyond the Motion to

11   Dismiss stage.  But this is a Motion to Dismiss.

12        **MR. KAISER:**  Right.

13        **THE COURT:**  So there may be a lot of

14   explanations for the details of what all this means,

15   ultimately, but at this stage I've got to treat it as a

16   Motion to Dismiss.

17        **MR. KAISER:**  Absolutely.

18        **THE COURT:**  So, what does

19   that -- should -- listening to plaintiff's position that

20   they contend these are products, you know,

21   shouldn't -- why shouldn't I let it go forward as to the

22   Motion to Dismiss to see what else is going to happen

23   probably tomorrow, as we start looking at the next stage

24   of the motions?

25        **MR. KAISER:**  Your Honor, there's several

*UNREDACTED TRANSCRIPT*

1   reasons.  First of all, of course, Quimbee requires it to

2   be plausibility to what they're saying.

3              **THE COURT:**  Sure.

4              **MR. KAISER:**  It's a narrative of facts behind

5   what they're saying.

6              **THE COURT:**  Sure.

7              **MR. KAISER:**  So they say, six paragraphs in

8   their complaint to you -- they sent you six paragraphs,

9   specifically, Paragraphs 47; 51; 63; 74; 184 and 213.

10             And I would absolutely urge the Court,

11  as I know it will, to go and look at those six

12  paragraphs.  They say those are the paragraphs in

13  the allegations that they want to go forward, based

14  on.

15             So, Paragraph 47 describes Varsity's

16  business.  It doesn't say anything about goods.  It

17  just talks about what Varsity does as a business.

18             Paragraph 51 sort of makes the point

19  we're trying to make as to competitions.  It says,

20  "Participants pay to complete, including fees for

21  events, USASF registration fees, music licensing and

22  insurance."  So that's -- every one of those seems

23  to us, anyway, is clearly a service.

24             And then they say, "Participants pay

25  substantial sums to Varsity for associated goods and

*UNREDACTED TRANSCRIPT*

24

1   services, as set forth herein."  And what they're

2   getting at there, I think, tends -- they talk about

3   associated goods and services tends to be apparel.

4   But, again, that's paid separately.  So it's not

5   part of the -- it's not part of the registration

6   fee.  It's a separate thing that they may or may not

7   purchase from Varsity and from someone else.

8           And it's sort of a little bit -- and,

9   you know, they talked a little before about Disney

10  tickets and I just want to touch on that for a

11  second.

12          A Disney ticket is access to the park.

13  You get to go into the facility and you get to ride

14  the rides and you can see the shows.  You don't get

15  to take anything home with you.  Believe me.  I was

16  just at a Disney park and I can assure you, you get

17  nothing, except access to the park.  If you want to

18  bring something home with you, you have to take out

19  your credit card and buy that something, whatever it

20  is, a T-shirt or Mickey ears, or whatever.

21          So, when they say, Disney tickets, when

22  they say associated goods are goods, they're talking

23  about things that were purchased separately from the

24  registration.  And they can bring a case based on

25  those things.  And they have.  They have an apparel

*UNREDACTED TRANSCRIPT*

1    claim, such as this.  And that's not at issue today.

2    But when they try to say there's some sort of good

3    that comes with the registration fee when they don't

4    point to anything that you actually have at the end

5    of it, other than the experience of having gone to

6    the competition, which is certainly not good, it

7    doesn't get there.  And, again, these are their

8    allegations.

9          Just to run through the rest of them, 63

10   sort of goes the same place with the camps.  It

11   says -- speaking of camps, it talks about, after you

12   get instructions, so forth, and all these services

13   that were mentioned before, it talks about,

14   "Varsity-promoted Cheer Camps operate as a showroom

15   and sales platform for Cheer Apparel and other

16   income streams."

17          So, again, by their own allegations

18   here, you can see that these are separate purchases.

19   You're not buying any of these things that might be

20   offered to camps, unless you choose to, like in this

21   showroom sales platform.

22          The other three -- 74 is, again, about

23   camps.  It doesn't say anything about goods being

24   put in the registration fees.

25          184 is about competitions and it talks

*UNREDACTED TRANSCRIPT*

26

1   about bids.  So we're back to that issue.

2                   And then, 213 talks about all the things

3   you need to run a camp, which isn't exactly the same

4   point.  But what -- it speaks of facilities;

5   instructors; coaches; assistants; choreographers;

6   support staff; medical staff; liability insurance;

7   and availability of equipment.

8                   So, again, none of these things suggest

9   tangible products.  And if "tangible" doesn't rub

10  people the right way, it doesn't suggest a physical

11  thing.  Instead --

12              **THE COURT:**  Does it -- I guess that's the

13  question.  Does it have to?  Does a product have to be a

14  physical thing?

15              **MR. KAISER:**  I think a product has to be

16  something that you take with you.  It can't just be a

17  memory or transitory access to something, because those

18  are quintessential services.  But I guess what the

19  Supreme Court had in mind when it talked about, for

20  example, in the Freeman Industries, which is a more

21  recent case from the Tennessee Supreme Court, it talked

22  about the purposes of the statute of the TTPA, were to

23  preserve free and fair competition from the sale of

24  merchandise that become a part of the massive property in

25  this thing.

*UNREDACTED TRANSCRIPT*

27

1          And also, the second thing it said, it

2     was to preserve free and fair competition in the

3     manufacturer and sale of articles of domestic growth

4     and domestic raw material.  That's the Supreme Court

5     of Tennessee speaking in 2005.

6          So I think that answers the question of,

7     what are we talking about here.  We're talking about

8     merchandise.  We're talking about the massive

9     property.  We're talking about articles.  We're

10    talking about raw material.  None of the things

11    they're talking about are any of those things.  And

12    all of the cases that are cited, including, I would

13    add, several cases that they say are all about, to

14    the extent there's an intangible or a good involved

15    or something involved, they all have said, no,

16    that's not -- that doesn't get you there.

17         So, for a case like Amodeo, which is a

18    case that they cite.  This is 2009 Westlaw 736656,

19    Tennessee Court of Appeals (2009).  This is a case

20    about chiropractors and chiropractor services.  And

21    the chiropractors came and said, well, wait a

22    second.  We sell these things with these services.

23    There's, it said, 43 different products, I think

24    they said:  Ankle support; cervical collars; and so

25    forth.

*UNREDACTED TRANSCRIPT*

1           And the Tennessee Court of Appeals

2    rejected that argument.  And it said, "To allow such

3    a claim, would expand the TTPA beyond the scope

4    intended by the general assembly and allow claims

5    under the TTPA whenever a primarily-serviced

6    industry provides a product ancillary such as

7    service."

8           And there they were talking about

9    physical things that the folks took home with them.

10   And there, truly, is another one that they cite

11   (2008) Westlaw 2510581, also from the Tennessee

12   Court of Appeals, 2008.  And this had to do with

13   tree services, you know, basically, landscaping.

14   And there the argument was, well, to do the

15   landscaping they have to apply herbicide and they

16   put the herbicide on the plants.  So that's a good.

17   And the Courts said, no, that's not right at all.

18   They said, that's just ancillary to the service

19   reference, so therefore it doesn't count.

20           **THE COURT:**  How do I fit the real estate

21   example into your outline of what it means, what a

22   product means?

23           **MR. KAISER:**  Yeah, so, I think real estate is

24   an interesting point.  If we're talking about fixing the

25   price of real estate to be sold, there might be a

*UNREDACTED TRANSCRIPT*

29

1    discussion, because you might argue that that's a raw

2    material.  But when we're talking about transitory

3    access, transitory short-term, not even a legal right to

4    access, facilities such as a venue, a performance venue,

5    or a Disney park, or the seat at the hairdresser, or the

6    barber where you get your haircut, I don't think that

7    would qualify as a good.  You don't get to take it with

8    you.  You don't have any rights in it.  You don't have

9    any legal claim to it, either in the short-term or

10   permanently.  You can't sell it to anybody else.  It's

11   just literally a brief time right of access to a space to

12   basically have services performed for you.

13            So, I mean, I think if you start going

14   down that road, like, sort of very short-term access

15   to real estate, then all these other cases just fall

16   away.  There's really nothing left at that point.

17   And I think the courts in Tennessee, at least, have

18   counseled not to go down that road.  That's not the

19   road that the TTPA is suppose to go down, or the

20   general assembly.

21            **THE COURT:**  So, to you, a good and a product

22   is the same thing, right?  A good -- something has to

23   be -- well, if something is a good it's a product.  A

24   physical thing.

25            **MR. KAISER:**  I think that's right.  I think it

*UNREDACTED TRANSCRIPT*

1   has to have some physicality or at least some permanence

2   there.  It can't just be some transitory access to a room

3   or to a facility or something like that.

4              I mean, one of the examples that caught

5   our eye was, they talked about going to a theater or

6   a concert.  They said, well, you get to go use the

7   bathroom, and that's a product.  Using the bathroom

8   is a product.  Well, I mean, it's not as if you get

9   to take the bathroom home with you.  You can't take

10  the sink and cart it out of there.  You have to

11  leave everything the way you found it.

12             And so -- and, again, in terms of bids

13  on the incident- -- incidentiality [sic] and the

14  fact that nothing they talk about has anything to do

15  with these ancillary things that they're calling

16  products.  They're not saying that we did something

17  to fix the price of venues, or to fix the cost of

18  going to the bathroom at some point.  They're not

19  saying that at all.  They're talking about the poor

20  service that was provided at the camps, and separate

21  the competitions.

22             **THE COURT**:  Thank you.

23             Mr. Seidel, first, the full side of that

24  Standard Oil case.  Do you have the full cite of

25  that?

*UNREDACTED TRANSCRIPT*

1

2        **MR. SEIDEL:**  Well, I apologize.  What -- which

3   case, Your Honor?

4        **THE COURT:**  The Standard Oil case that you

5   mentioned.

6

7        **MR. SEIDEL:**  Yes, Your Honor.  That's 100 S.W.

8   at 711 was the --

9        **THE COURT:**  Pinpoint.

10

11       **MR. SEIDEL:**  Well, yeah, it was pin cite from

12  the quote that I gave the Court.

13       **THE COURT:**  Okay.  And then, any response to

14  what Mr. Kaiser has said?

15

16       **MR. SEIDEL:**  Yes, Your Honor.

17            So, first of all, I think the discussion

18  from Varsity makes clear that this is a factual

19  issue that should be addressed, possibly, at summary

20  judgment.  For example, what is -- what cheer

21  athletes are paying for with a camp, with their

22  registration fee, for example, a registration fee

23  for competition, and all the things that they get,

24  and what they are ultimately getting from that fee,

25  that goes to the issue of whether it's a product or

*UNREDACTED TRANSCRIPT*

1    whether it's a service.

2              Now, I don't -- I haven't heard anything

3    from defendants saying that a competition is somehow

4    a service in line with the cases that they cite.

5    So, for example, in McAdoo, that was a case about a

6    construction service.  And the Court specifically

7    said that the reason that the plaintiff didn't get

8    the bid, it was because the defendants felt they

9    weren't skilled enough.  It had nothing to do with

10   building materials.  That was purely a service-based

11   contract.

12             Same thing with Amodeo, the chiropractor

13   services case.  So, the plaintiffs in that case

14   alleged a conspiracy in chiropractor services.  And

15   one of the defenses was, well, we also sell other

16   products, but that wasn't an issue in the case.  The

17   plaintiffs didn't bring a claim alleging that

18   products were increased.

19             And so, ultimately, defendant's position

20   is that, essentially, everything is a service unless

21   it's a raw material or good.  So, according to

22   defense -- I mean, and that goes far too far.  So,

23   for example, a ticket priced to an NBA game,

24   according to them, it's a service provided some

25   skill to you, consistent with these cases.  And we

*UNREDACTED TRANSCRIPT*

1    don't think it is.

2              **THE COURT:**  Well, we hope there's skill

3    involved on our part, but not always --

4              (Simultaneous, unreportable crosstalk.)

5              **MR. SEIDEL:**  Certainly some skill --

6              **THE COURT:**  -- that's a Saturday night thing.

7              **MR. SEIDEL:**  Certainly, some skill involved.

8    But I think when you look at going to an NBA game or a

9    sports game, it's not a service that's being provided.

10   It is a product.  Ultimately, the entire package that

11   you're getting is a product.  Again, according to

12   defendants, any use of real estate is a service, because

13   you're allowing somebody to have possession and use of

14   real estate.  And I don't think that's correct.  And I

15   don't think that's supported by the case law.

16             And the only other thing I think I would

17   say, Your Honor, is that I think defendant's

18   position takes far too narrow a view of what the

19   cases say, and essentially are asking Your Honor to

20   hold that the TTPA only cover goods and raw

21   materials, and everything else is a service.

22             I think it's a better read of the cases,

23   that there are products which are a combination of

24   multiple things, and then there are purely

25   service-based issues, and those service-based

*UNREDACTED TRANSCRIPT*

 1    contracts are not within the scope of the TTPA.  And

 2    I do think, though, that a factual record will help

 3    clarify whether this is a product or a service.  But

 4    I think it's clear it's not a service.

 5              **THE COURT:**  Is there case law support that an

 6    NBA game is a product?

 7

 8              **MR. SEIDEL:**  No, Your Honor.  That specific

 9    facts have never come up in the courts.

10              **THE COURT:**  Mr. Kaiser, I'm assuming you would

11    say, no, it's not a product.

12              **MR. KAISER:**  A ticket to an NBA game, no, I

13    don't think that's a product.  I think that's a service.

14    It's a license to go sit in there and see what

15    they're entertaining.  And the entertainment is a

16    service.

17              So I think you have to look at the --

18    what the customers are getting and what they're

19    getting -- why are they coming to a varsity

20    competition?  It's not something they can go inside

21    the Georgia Congress Center or in the arena in this

22    area to sit in the arena for the pleasure of doing

23    it.  They're there to be judged.  They're there to

24    perform.  They're there to have the opportunity to

25    sport, and perhaps, enter mid-southern competitions,

*UNREDACTED TRANSCRIPT*

35

1    for sure, which, again, are just further services.

2              So, yes, I would certainly say a ticket

3    to an NBA game is not a good, it's a right to

4    achieve a service.

5              I guess one thing I would -- there's

6    another case that I'll just touch on real briefly.

7    It's a case having to do with ATM cards.  And in

8    this case the issue had to do with how ATM card

9    transactions were processed.  And the Court said,

10   well, that's a service, earlier, at least their

11   argument was, that's a service.  And the Court said,

12   well, no, you're giving everyone an ATM card, so

13   that's a product (mumbling) -- physically, you get

14   to take it home with you.  And the Court said, well,

15   all the ATM card is a means to access the service

16   you get when you use an ATM machine.  And that's

17   exactly, essentially, what we're talking about here

18   with the NBA example if there are other examples.

19   And that case, by the way, is _Bennett vs. Visa_, 198

20   S.W.3rd 747.

21             And the only other thing I'd like to say

22   is the Serenelle (phonetic spelling) case that they

23   mentioned is a very old case and was very general,

24   and not really dealing with this issue.  By far, the

25   more on point cases are McAdoo, which Quimbee Court

*UNREDACTED TRANSCRIPT*

36

1    has looked at these issues, cites for these points.

2              And then, I would also argue Freeman, in

3    the light of dubious -- which is used to describe

4    the purpose of the statute that was passed before

5    the Court, which is really what the Tennessee

6    Supreme Court has ruled on.

7              **THE COURT:**  What about a response to

8    Mr. Seidel's point that, really, we should -- I should

9    let it go forward as a matter of a Motion to Dismiss,

10   because the actual record should be developed if they've

11   alleged that there are products involved in the various

12   markets.  And thus, I should let it go goin' forward at

13   this stage.

14             **MR. KAISER:**  Well, I think they've already

15   kind of indulged themselves on that, because in the

16   papers that they filed in August of this past year, after

17   discovery was closed with the fuller band and everything

18   that was ever going to come out of discovery, including

19   things that they said they learned in discovery.  So, for

20   them to now say, well, there's other things -- stuff we

21   can put forward, we've done away with not identifying,

22   other than the Disney thing, which we've talked about.

23   It seems to me that we just keep kicking the can down the

24   road, in a case that really, with all respect, we're

25   getting the part of the can -- we're kicking things down

*UNREDACTED TRANSCRIPT*

37

1    the road.

2             Things that can be decided, I would

3    submit, should be decided.  We read the allegations

4    in their complaint.  They had the full discovery

5    record.  They've brought up some other things in

6    their motion in this case.  If the Court wants to

7    consider them as a third in the complaint, I don't

8    think we'd have an issue with that.  But to say,

9    well, let's just, again, let this go, based on

10   something that they don't identify that may have

11   happened in discovery, I would assume that that's

12   not correct.  As a formal matter, it's certainly not

13   correct.  It's the Court's prompting, Quimbee, that

14   requires the allegations, again, in the complaint.

15        **THE COURT:**  Right.  I mean, the complaint has

16   to hold up, but I'm hesitant to not kick the can, if

17   kicking the can is appropriate.

18        **MR. KAISER:**  Yes, I understand.

19        **THE COURT:**  I've kicked enough cans in this

20   case.  I don't really -- you know, I don't relish kicking

21   more.  But I still have to respect the procedural posture

22   of where the Motion to Dismiss is.  And I understand your

23   position is to -- making sure I also apply the right law

24   at the Motion to Dismiss stage, because and I'm hesitant

25   to look ahead and say, well, they don't, you know, after

*UNREDACTED TRANSCRIPT*

1   all this has been briefed, they still didn't cite

2   anything.  I can't really look to that.

3           **MR. KAISER:**  Well, I suppose, you know, we

4   were asked to come here today to address this factual

5   point.  They do have the benefit of full discovery, and

6   the one viewpoint I think I brought up was the Disney

7   ticket point, and, obviously, you have our position on

8   that.  But I don't know that there's anything else that

9   they could bring up if they tried.

10          **THE COURT:**  Okay.

11          **MR. SEIDEL:**  So, a couple brief points, Your

12  Honor.

13          **THE COURT:**  Brief.

14          **MR. SEIDEL:**  First -- yes, it's not that we

15  need more discovery.  It's that we haven't had an

16  opportunity to brief this issue.  And so, when this issue

17  is ripe for us to brief and put in the facts that we have

18  in discovery, I think that's the most appropriate time.

19  So I wouldn't say it's, "Kicking the can down the road,"

20  I thinks it's putting it in the correct posture, which

21  is, it's a factual issue.  We need to be able to brief

22  the issue with the facts.

23          The other thing I would say, Your Honor,

24  it's not just us that say that this is a bundle of

25  goods and products.  They admitted it at ECF 56 at

*UNREDACTED TRANSCRIPT*

39

```
1    the end of their introduction.  This is page 2.
2    They talk about how it's a bundle of products and
3    services.  And so -- and that's all.
4              THE COURT:  But did they say that in the
5    context of all of these markets or just, if you, you
6    know -- because one market, we've said it's products.
7    We've said "apparel" or "product."
8              MR. SEIDEL:  Yeah.
9              THE COURT:  So, was that statement made in the
10   context of looking at all three of these markets?
11             MR. SEIDEL:  That's my understanding.  It's a
12   little bit vague, to be honest.  It's not specific to
13   apparel.  And so, I believe that, yes it was addressing
14   all three of the markets.  But it isn't clear.  It isn't
15   clear, one way or the other.
16             MR. KAISER:  If I may add one thing, Your
17   Honor?
18              That's just simply just not right off.
19   When we speak about bundling in this case, they're
20   talking about the allegation of the bundling of
21   competitions.  In other words, the rebate program
22   that gives people discounts if they purchase
23   multiple competitions.  This is a bundle of
24   competitions.  We do not speak in terms of bundling
25   of, you know -- if you buy a competition you get a
```

1   good along with the competition.  We would never

2   have said that, because it isn't true.

3                  The other scenario where bundling might

4   come up, is the fact that the gyms may bundle a

5   number of different things in their offerings to

6   their customers.  So, not our -- not us, but our

7   down -- our customers to the gym, they take our

8   competitions -- you know, when they go to a cheer

9   camp where they say, well, if you come to our gym

10  and pay us "X" hundred dollars a month, you'll get

11  training; you'll get weightlifting; you'll get a

12  uniform; you'll get -- we'll go to six competitions

13  or ten competitions, or whatever.  That is a bundle,

14  sure.  But that's with the -- gyms, not us, sell the

15  accounts, not -- that's not us bundling or anything,

16  that's what the gyms are selling.

17            **THE COURT:**  Well, is the -- are the

18  plaintiffs' allegations that, you have done something to

19  lead the gyms to bundle in this way?

20            **MR. KAISER:**  No.

21            **MR. SEIDEL:**  But, Your Honor, I think it's

22  important to just read into the record what they said.

23  And also, everything that Mr. Kaiser just said is a

24  factual issue, and so, we should be able to brief these

25  issues on a factual basis.  But I'll read -- this is

*UNREDACTED TRANSCRIPT*

41

1    ECF 56, page 1 from the introduction:

2                "This includes such disparate items as

3    the registration fees that All Star gyms pay to have

4    their teams participate in All Star competitions."

5    So we know they're talking about the market of

6    competitions.

7                "Apparel worn at such competitions,"

8    market for apparel, and, "Cheer camp registrations,

9    backpacks, spectator tickets, and USASF membership

10   dues."

11               So what they're talking about there is

12   all three markets.  And then they say, "As is

13   self-evident, such a broad combination of products

14   and services can not be encompassed within a single

15   class, especially an indirect purchaser class where

16   assorted combinations of the various products and

17   services are bundled by intermediaries with their

18   own products and services before being sold as

19   bundles to putative class members."

20               So I think there is a factual issue as

21   to whether these are products and services.  I think

22   a more developed factual record is appropriate and

23   we haven't had a chance to brief it on that basis.

24   And I think our complaint is certainly sufficient,

25   based on what we've alleged, as well as the

*UNREDACTED TRANSCRIPT*

42

1   inferences that Your Honor can draw, with respect to

2   these markets.

3              And so, ultimately, I think these are

4   products and not services.

5              **MR. KAISER:**  I would just note the key phrase,

6   they were just "intermediaries," which is exactly the

7   same.  An intermediary is not (mumbling) with Jones.

8              **THE COURT:**  Okay.  All right.  We're going to

9   leave it at that.

10             The next issue that I have relates to

11  the Shady Grove issue, the whether the Tennessee's

12  class action bar is substantive in procedure in how

13  it interacts with Rule 23.

14             Let me start with -- is this you, too,

15  Mr. Kaiser?

16             **MR. KAISER:**  Yes.

17             **THE COURT:**  Okay.  Let me start with

18  defendant.

19             How does Rule 23 -- Federal Rule 23

20  "abridge, enlarge or modify" a substantive right of

21  a -- under the Tennessee law.

22             **MR. KAISER:**  So, I would start, in response

23  and maybe make this a relatively short response by

24  commending the Court to its own decision in the Motion to

25  Dismiss ECF No. 333 --

*UNREDACTED TRANSCRIPT*

1      **THE COURT:**  Yeah, don't do that.

2          (Simultaneous, unreportable crosstalk.)

3          **MR. KAISER:**  At 57, 58, 59 -- well --

4      **THE COURT:**  I'm not sure I got it right there.

5      **MR. KAISER:**  Okay.  Well, we think you did,

6   quite correctly, and not just in the conclusion, but in

7   the analysis, which is why I really have a hard time

8   intruding on it, in a sense, because it's really exactly

9   what I would say.

10          In that decision the Court spoke about,

11   "Courts have looked to whether the state law in

12   question applies to all claims, or whether its reach

13   is limited to certain claims, as an indication of

14   whether it substantially impacts state substantive

15   rights."

16          So the issue in all these Shady Grove

17   cases is, is it a procedural rule, in which case,

18   federal rules apply, or is it a substantive rule, in

19   which case the state law applies over here.  And the

20   way this doctrine has come out across the board in

21   many different courts cases, has been questioning

22   whether it's -- whether the law in question is a bar

23   on class action on a particular subject matter,

24   irregardless of the source of law, or whether the

25   bar and practice is part of the remedies in the

*UNREDACTED TRANSCRIPT*

44

1    various statute at issue.

2              And here, under the TCPA, it absolutely

3    is the various statute at issue.  The TCPA

4    literally, in the section on remedies, it talks

5    about what remedies are available.  It says,

6    specifically, right there, no class action.

7              So, the state legislature has said, we

8    do not want this TCPA, which, after all, is a

9    statute warranty-designed to deal with, shall we

10   say, transactional issues in the market place, maybe

11   a warranty issue or a lemon car or something like

12   that, so that the consumer has some ability to --

13   some leverage against the counterpart, the vendor or

14   whatever.  But not -- but they specifically limited

15   that leverage, so they couldn't do what is attempted

16   when there's a class action, which is bring a bunch

17   of claims together, ruling out that kind of

18   leverage.  That was the whole remedial scheme that

19   the legislature adopted, quite deliberately.

20             And it doesn't apply to claims under

21   some other state's laws, or the federal claims or

22   anything else, which is quit different from that New

23   York statute in Shady Grove, because in Shady Grove,

24   the New York statute said, we're not going to have

25   class actions about wage issues.  I don't care if

*UNREDACTED TRANSCRIPT*

1   federal wage issues, or state -- or state of Vermont

2   or whatever.  We're not going to have class actions

3   about that in our courts.

4           And the Supreme Court said, well, that's

5   fine for the state of New York.  And their courts

6   can do whatever they want.  But in federal court, we

7   have Rule 23, and Rule 23 says we have class actions

8   when the requirements are met.

9           But Justice Stevens, who, of course, who

10  then supervised the 5th vote in that case, said,

11  well, I agree with that conclusion as to the New

12  York statute.  But that doesn't mean that applies

13  across the board, because oftentimes statutes,

14  specifically, when it remedies -- and it's really a

15  remedial scheme that the legislature adopted for the

16  statute at issue in the case that I'm going to be

17  looking at to determine whether it's a procedural

18  rule or a seven -- 8 Rule.

19          And the Court said, you know, there's

20  all sorts of cases.  They cite a bunch of cases, we

21  cite more cases.  The Courts have looked at this

22  issue and said, well, if that's the TT- -- I'm

23  sorry, the TCPA in particular, and also as to

24  similar laws in other states that have this internal

25  class action, or they've said, no, you can't --

*UNREDACTED TRANSCRIPT*

1    that's a substantive rule of the cause of action,

2    and therefore they can't be a class action.  And

3    that's what the Court -- you know, I won't go

4    through all the things that this Court said about

5    that, when you consider the Illinois class action

6    bar.  But it's exactly the same analysis and you end

7    up in the same place.  It's just the case of, you

8    know, Tenn. Code Ann. § 4718-109, which is the TCPA.

9    And the provision says, and I quote, "No class

10   action lawsuit may be brought to recover damages for

11   an unfair or deceptive act or practice declared to

12   be unlawful by this part."

13            So it's exactly the kind of scheme that

14   the Courts have said those class action bars are

15   enforced in federal court.

16            **THE COURT:**  What's the remedy that's available

17   under Rule 23 that's not available under the Tennessee

18   statute?

19            **MR. KAISER:**  Well, I think what the

20   legislature had in mind is that class ac- -- when you pas

21   a law that's basically to give individual consumers a

22   certain procedure for getting at consumer protection-type

23   claims, you have breach of warranty, deception, those

24   sorts of things, they need to be individual, because what

25   we don't want is a situation where these things can be

*UNREDACTED TRANSCRIPT*

1   amalgamated and turn into something that they're not,

2   inherently, which is the same grade, if I can say,

3   "Grade" in each claim, like this claim, which is, you

4   know, a quarter of $1 billion.

5          **THE COURT:**  So, what that means is that rather

6   than provide this procedure for those claims to be

7   brought together, we should say to these plaintiffs who

8   have suffered -- who have allegedly suffered harm, no,

9   you've got to go back and bring your claim individually,

10  and each pursue it individually, which we all know

11  is -- you know, begs the reason why 23 was passed,

12  because those people will never have the ability to

13  address their harm.  It's not -- it's not in their

14  economic interest to do it, even though they were harmed.

15  And I'm assuming that for the purposes of this argument.

16  I'm not assuming your client says weren't harmed.

17  Anyway.  But ...

18          So, it seems to me what you're coming

19  back to is that is a procedural rule.  It is -- it

20  was a way for the Courts to say, these individuals

21  are never going to have the economic power to be

22  able to bring their claim individually.  So we're

23  going to provide a procedure for them to recover the

24  same damages, but we're going to put it in a class

25  action.

*UNREDACTED TRANSCRIPT*

1        **MR. KAISER:**  Well, I think what I'll respond

2   to on that is that this is a judgment the legislature

3   made, which is no class action.  And the reason they did

4   it, I think, is pretty clear, which is that they know

5   that when a class action is brought it puts a different

6   kind of leverage against the defendants that has an

7   individual action or not.  And I would not necessarily

8   concede that they -- that someone in that position has no

9   right to bring a claim.  They certainly could bring a

10  claim.  They could bring -- you know, there's all sorts

11  of small claim options, there's also state court options.

12  It's not impossible to bring a claim as an individual.

13  But what the legislature clearly was trying to avoid is

14  exactly what's going on here.

15            Now, in state court, clearly, they

16  wouldn't be allowed to do it.  So the only question

17  is, can they do it in federal court.  And this is

18  creating this remedy -- limited remedy by more than

19  nothing, but limited.  They were very careful to

20  pack it this way.  And that's what the state

21  legislature decided.  And that's what the -- all

22  these cases have ruled -- have said, likewise.

23            So, I understand the Court's point,

24  which is that, in an idea world where, you know,

25  where leverage wasn't a thing and where attempting

*UNREDACTED TRANSCRIPT*

1    to enforce settlements, and so forth, out of people,

2    wasn't a thing.  And I'm not saying -- I'm saying

3    this in the abstract.  You might reach a different

4    judgment, but that's not what the Supreme Court

5    said.  That's not what Justice Stevens said.  That's

6    not what these earlier courts said.

7              It was for a reason, because this TCPA

8    is designed to keep disputes like this manageable,

9    small, resolvable.  They don't need to be federal

10   cases.  You can go in to small claims court if it's

11   that type of case.  You can go in to state court if

12   it's -- if you have jurisdiction, or otherwise, in

13   federal court.  You can come in to federal court and

14   do it, if it's a big enough claim.  There might even

15   be diversity jurisdiction.  But that's the limit.

16   You can't go any further than that, according to

17   legislature.

18             **THE COURT:**  So -- and if I felt a different

19   way I wouldn't -- the legislature in their infinite

20   wisdom in Tennessee, certainly has the right to say what

21   happens in state courts.  So, I'm not questioning that.

22   The question is, was that a procedural statement or was

23   it a substantive statement?

24             **MR. KAISER:**  I agree that that's the question.

25   I would submit to the Court that, as other courts have

*UNREDACTED TRANSCRIPT*

1    found, it was a substantive statement -- a limitation of

2    how much we're going to let complainants deal with these

3    types of claims under this very particular statutory

4    scheme.

5              You know, the other thing that TCPA -- a

6    bit of an academic purpose -- TCPA also does not

7    permit antitrust-based claims.  So, that has not

8    been an issue in this case.  At some point it will

9    be.  And I only bring it up to say -- to make

10   certain -- to illustrate the fact that this is not a

11   catchall statute for anything you don't like

12   happening.  It's a very specific thing you're

13   dealing with -- a very specific thing, in a very

14   specific way.

15             And therefore, it's in our judgment --

16   and we would submit it falls within what Justice

17   Stevens strongly advised as a substantive rule of

18   law under these, as opposed to a procedural rule --

19   of claims.  There just is no such thing as a class

20   action claim under the TCPA.

21             **THE COURT:**  So, from your perspective the -- I

22   started out by asking what is the remedy that Rule 23

23   provides that is beyond -- makes it substantive -- well,

24   that makes the bar by the legislature -- turns it into a

25   substantive bar.  And I think your answer is that a class

*UNREDACTED TRANSCRIPT*

1   action allows plaintiffs to band together and put

2   pressure on a defendant to sort of force a settlement.

3           Is that --

4           MR. KAISER:  I think there is forcing

5   settlement, but then there's also the fact that

6   inevitably in class actions, the details start becoming

7   less important and it becomes more of a mass, sort of

8   broad attack.  And the idea of the TCPA is to handle very

9   specific things that were not -- in relationship with

10  those one claims -- in other words, as opposed to this

11  broad, sort of brush approach of class actions often

12  take.

13          So I think that was what the legislature

14  had in mind.  They knew that was a problem.  In

15  other words, even if the case were to be litigated

16  to a judgment, you have that problem as well.

17          THE COURT:  So it's not necessarily something

18  we can point to that Rule 23 says, you know, there's

19  these type of damages.  It's really the overall effect of

20  Rule 23 and what it allows a case to become.

21          MR. KAISER:  I think that's a fair

22  characterization.

23          THE COURT:  Okay.  All right.

24          MR. SAVERI:  Thank you, Your Honor.  Joseph

25  Saveri on behalf of the plaintiffs.

*UNREDACTED TRANSCRIPT*

52

1          So, I guess I maybe should just touch

2    briefly on the last bit of dialogue you had with

3    Mr. Kaiser.

4          I don't think anything about what the

5    Tennessee statute thought about the kind of

6    hydraulic effect of class actions creating

7    settlement leverage is anywhere in the statute,

8    anywhere in the cases.  I think that is just made

9    out of the whole cloth.

10          Rule 23 is a statute -- is a federal

11    rule of procedure that addresses how claims can be

12    brought.

13          So, let me start with this.  I think at

14    a basic level, the question or the distinction

15    between what is substance and what is procedure is

16    relatively straightforward.  I mean if the rule is

17    about not what the substance of the claims are, but

18    how the claims are to be brought, then it is a rule

19    of procedure.  And that distinction is

20    straightforward.  It's common sense.  I think it

21    underlies both the opinion written by Justice

22    Stevens and Justice Scalia said in Shady Grove.

23          I would also say that -- and we'll come

24    to spend a little bit more time on this in a minute,

25    that the bar -- the New York class action bar that

*UNREDACTED TRANSCRIPT*

53

1    was at issue in Shady Grove is indistinguishable for

2    present purposes from the TCPA bar.  There's really

3    no daylight.

4              I would want to suggest to the Court

5    that there is additional new authority that we would

6    like to bring to the Court's attention that was not

7    addressed in the briefs.  There's a series of cases,

8    and I think the most recent Sixth Circuit case is a

9    case called *Albright vs. Christensen*.  It's a 2022

10   Sixth Circuit case, 24.F.4th 1039.  And that's a

11   case in which the Sixth Circuit, following a prior

12   Sixth Circuit case called *Gallivan vs. United States*

13   the 943.F.3rd 291.  That's a Sixth Circuit (2019)

14   case, essentially adopted and followed the Scalia

15   plurality decision in Shady Grove.

16             And that -- under that holding,

17   basically, what Justice Scalia said is that if there

18   is a federal rule on point, the Federal Rules of

19   Civil Procedure on point, the federal rule controls.

20   And among other things, he cited the fact that Rule

21   23 -- when Rule 23 was at issue in Shady Grove, it's

22   a rule of civil procedure.  It's been part of the

23   federal rules, I guess, since 1966.  There's never

24   been a rule of civil procedure that the Supreme

25   Court has struck down as a violation of the rules'

*UNREDACTED TRANSCRIPT*

1    Enabling Act.  So they have been -- and again, the

2    Rules Enabling Act allows the Supreme Court to

3    promulgate rules of procedure, and not rules of

4    substance.  So, under Scalia's view, that was

5    enough.

6             But that holding, which was part of the

7    decision in Albright, which reversed a trial court

8    decision that went the other way, has subsequently

9    been followed in a number of trial courts in the

10   Sixth Circuit.  This encourages a case called *Hinton*

11   *vs. United States*.  And I have the Westlaw site,

12   (2022) Westlaw 882157.  That was a Middle District

13   of Tennessee case, dated March 24, 2022.

14            There's another case called *Smith vs.*

15   *CoreCivic, Inc.*  That's (2022) Westlaw 3051226.

16   That's a Middle District of Tennessee case, dated

17   August 2, 2022, in which the Court says that

18   Albright is a published decision, as such binding

19   and controlling precedent for this court.

20            There's also a case called are *Gray vs.*

21   *United States*, 556 F.Supp.3d 832.  That's a Western

22   District of Tennessee case from (2021).

23            And most recently there was a Western

24   District of Tennessee case, dated April 4, 2023,

25   called *Goyer vs. Ash*.  And that's a (2023) Westlaw

*UNREDACTED TRANSCRIPT*

1      277-6732.  I have copies of all of those cases if

2      the Court wants them today.  The last --

3                 **THE COURT:**  That last one you mentioned, what

4      was -- Goyer versus -- "Goyer," is that what you said?

5                 **MR. SAVERI:**  Yeah, I wasn't there.  I mean,

6      not at the case.  And it's G-O-Y-E-R, v. Ashe, A-S-H-E.

7                 **THE COURT:**  Whose case was that?

8                 **MR. SAVERI:**  I -- JTF.

9                 **THE COURT:**  Judge Fowlkes.

10                **MR. SAVERI:**  And I'm revealing that I come

11     from a far-off district and I don't know -- I don't

12     have -- these aren't as apparent to me as they may be to

13     people who practice in this courthouse.  So I apologize

14     for that.

15                **THE COURT:**  No worries.  No worries.

16                 Yeah, I mean, well, certainly, if you

17     brought copies so you don't have to take them back

18     home, I'll certainly take them.  We can do that at

19     the end.

20                **MR. SAVERI:**  Yeah, so, I did.  And hopefully I

21     brought enough for everybody who wants to read them,

22     so ...

23                **THE COURT:**  We can just take one.  That's

24     fine.

25                **MR. SAVERI:**  So the point, Your Honor, is that

*UNREDACTED TRANSCRIPT*

56

1    they -- all of these cases basically follow these two

2    Sixth Circuit cases, Gallivan and Albright.  And

3    basically, if you read them they come up on -- they don't

4    come up under Rule 23.  They come up in slightly

5    different context.  They come up under the Federal Tort

6    Claims Act.  But not to go too far down this rabbit hole,

7    but cases under the Federal Tort Claims Act are treated

8    as diversity cases for purposes of essentially the same

9    thing we're talking.  So they're analogous.

10          Some of the cases have to do with

11   medical malpractice cases brought under state law

12   and there are state requirements about whether

13   affidavits need to be attached.

14          So, to be clear, I'm not suggesting

15   these are Rule 23 cases, but the point I'm trying to

16   get at is that the Scalia view of this issue, which

17   would say that if there is a federal rule in place

18   and it conflicts with the state procedural -- the

19   rule, then the federal rule controls.

20          So, that's -- and under that analysis

21   Rule 23 is the Federal Rules of Civil Procedure.  It

22   conflicts with the state class action bar.  And on

23   that basis, it doesn't apply.

24          **THE COURT:**  Let me -- your briefing appears to

25   suggest that you don't challenge our holding as to the

*UNREDACTED TRANSCRIPT*

57

```
1    Illinois statute.  What's your position on the Illinois

2    statute?

3              MR. SAVERI:  Well, Your Honor, I -- with all

4    due respect, and you know it's coming, the -- we disagree

5    with it and we think you got it wrong.  But we also don't

6    say that -- I mean, this came up in the other context of

7    whether the claims were broad or conceded.  We brought

8    that.  You ruled on it.  We think you got it wrong.  And

9    we think you got it wrong for these reasons.  But that's

10   our position.

11             I would note, Your Honor, that in the

12   context of Illinois, we did have the benefit of

13   these -- certainly, the most recent authorities

14   applying the Scalia decision.  But to answer your

15   question, you ruled on it.  You went the other way.

16   We think we're right.  We think you're wrong.  And

17   that's our position.

18             THE COURT:  Okay.  And what does any of that

19   mean?  The other two states -- I haven't asked Mr. Kaiser

20   this yet, but the other two states the defendants mention

21   that have similar statutes, I guess, as to Illinois, are

22   Colorado and Montana.  Do you have a position on those

23   two state statutes?

24             MR. SAVERI:  I don't.  So, Colorado and

25   Montana, I think to the extent that they have -- those
```

*UNREDACTED TRANSCRIPT*

58

1    are class action bars, they conflict with Rule 23.  And

2    so, my position is the same.

3              **THE COURT:**  Is the same?  Okay.

4              **MR. SAVERI:**  But again, this hasn't been the

5    focus of this particular briefing.  It's been on this

6    Tennessee statute.

7                   I would also suggest, Your Honor, maybe

8    this is a theme that's emerging, is that, on a

9    number of issues -- I mean, we're here on motions to

10   dismiss on pleadings that were -- the briefing was

11   completed sometime ago.  And I think that this

12   issue, too, along the lines of what we talked about

13   a few minutes ago, is perfectly appropriate for

14   summary judgment.  And we --

15             **THE COURT:**  Not that you're advocating for

16   summary judgment for them.

17             **MR. SAVERI:**  No, but this --

18             (Simultaneous, unreportable crosstalk.)

19             **THE COURT:**  You're saying, considering for

20   summary judgment.

21             **MR. SAVERI:**  No, Your Honor, I mean, to be

22   abundantly clear, I mean, we think this is a legal issue

23   and we think that to the extent there are Rule 5- -- this

24   could be dealt with under Rule 56.  And it would be

25   appropriate to do so.  That doesn't mean we think we're

*UNREDACTED TRANSCRIPT*

1    going to lose.  We think we're going to win.  But it may

2    be, in fact, we'll file the motion.

3              But a couple other things I would just

4    suggest quickly about this.  You know, we cite a

5    case called Restasis.  And Restasis was a reverse

6    payment case.  And that's a case that I handled, and

7    we handled the class certification.  That case was

8    in front of Judge Gershon in the Eastern District of

9    New York.  She was, in fact, the Shady Grove Judge.

10   She issued the trial court opinion and she was

11   reversed ultimately by the Supreme Court.

12             This Tennessee Class Action Bar was in

13   front of her in that case.  And she looked at it and

14   found it indistinguishable from the New York Class

15   Action Bar that she originally said was applicable

16   under -- the Supreme Court ultimately reversed.  But

17   we cite that case in our opinion.  We think her

18   logic on that is compelling.

19             So, Your Honor, just to come back to the

20   basic point, this statute, right, is not -- doesn't

21   change -- or this rule does not affect the

22   substantive rights of those who have claims under

23   Tennessee state law.  We just had a dialogue about

24   whether those claims could be in small claims court

25   or some other court.

*UNREDACTED TRANSCRIPT*

60

1           This statute or this rule is all about

2    how those claims are to be litigated.  And because

3    of that, even under the Stevens view of the world,

4    that shows that this is a rule of procedure.  And

5    Rule 23, which has been on the books, which has

6    provided how claims can be brought together since

7    the 1966 amendment to the federal rules, also

8    describes and shows how claims can be brought.

9           It's not a rule that changes substantive

10   rights.  People may think that it does, but that's

11   not what Rule 23 does.  It provides requirements and

12   standards and burdens for the plaintiffs and the

13   Court to examine in determining the appropriateness

14   of cases to proceed on a class action basis, as

15   opposed to an individual basis.

16           So, one other point I would make about

17   Shady Grove itself, that New York Class Action Bar,

18   depending on if you're in the Scalia camp or the

19   Stevens camp, they both agreed that it was -- the

20   Rule 23 should apply, and the state class action bar

21   should not.  They came to it in slightly different

22   paths.  I'd argue that Scalia here was correct.  He

23   got right to it.  But they ended up in exactly the

24   same place.

25           And so, that's the same place the Court

*UNREDACTED TRANSCRIPT*

61

1    should end up here, with respect to Tennessee.

2              **THE COURT:**  Thank you.

3              Mr. Kaiser, let me ask one quick

4    question, because I'll forget it.

5              **MR. KAISER:**  Sure.

6              **THE COURT:**  I think the defendant sort of

7    mentioned in passing, although you don't go into it in

8    detail:  Colorado and Montana.

9              Are you -- as Mr. Saveri said, really,

10   the focus is on this Tennessee statute.  Is that

11   what your focus is on?

12             **MR. KAISER:**  Yes, our focus has been on what

13   the Court is focused on, which is Tennessee.

14             **THE COURT:**  Okay.  All right.  Go ahead, and

15   whatever you want to respond to.

16             **MR. KAISER:**  Yeah, so I'll be brief as I can.

17             So, much of what we just heard from

18   Mr. Saveri is about cases that are not Rule 23

19   cases.  Of course, Shady Grove is specifically about

20   Rule 23.  I would submit that Rule 23 is, according

21   to our Supreme Court in Washington, that is treated

22   the way it says in Shady Grove.  The fact that in

23   other situations, diversity cases may be handled

24   differently, or different requirements may be

25   treated differently if it's state requirements.  It

*UNREDACTED TRANSCRIPT*

62

1   really isn't germane when you have a Supreme Court

2   case that's kind of right on point.

3              They also note that those cases that you

4   just cited, said -- I think that last point, were

5   all cases ever available to them when they filed

6   this motion for reconsideration that they chose not

7   to include.

8              In any event, there was some mention

9   about Justice Stevens and what he said.  And right

10  in the beginning of his opinion he says the New York

11  law at issue, the New York civil practices law,

12  annotated, CPLR, is a procedural rule that is not

13  part of New York's substantive law.

14             Accordingly, I agree with Justice

15  Scalia, that Rule 23 applies to facts of this

16  Court -- of this case.  Excuse me.  I'm paraphrasing

17  it.

18             But I also agree with Justice Ginsburg,

19  that there are some state procedural rules that

20  federal courts must apply in diversity cases,

21  because they function as a part of a state's

22  definition of substantive rights and remedies.

23             So, to say that Justice Scalia and

24  Justice Stevens felt about this -- this ain't

25  right -- I don't think is correct.  And I also think

*UNREDACTED TRANSCRIPT*

1    it's important to remember that that was the fifth

2    vote.  And every court that has looked at this, or

3    most every court, many courts have looked at this,

4    have said, you know, we have to follow Stevens

5    because he's the only reason the case came out the

6    way it did.  If stevens would have come out the

7    other way, you know, there would have been no class

8    actions, even under that New York civil practice

9    rule, which is totally different from what we're

10   dealing with here, which we've already talked about.

11   I won't reiterate.

12        I'd also note that some cases were cited.

13   There's no more cases that we cite in our brief,

14   other than pages 5 and 6.  I won't go through them

15   all, to save everybody's time.  But they all looked

16   at this issue, some of which are from other courts

17   in the Sixth Circuit of the District Court.  Some

18   of which are from courts in this state, federal

19   courts, including the Western District of

20   Tennessee, the Hamm case, for example.

21        And all these cases say just what we're

22   saying today.  Same thing this Court said before,

23   which is, this is a substantive rule and not a

24   procedural rule.

25        One other thing I just wanted to mention is

*UNREDACTED TRANSCRIPT*

1   that this issue of where the remedies are.

2   Bearden, which is a Middle District of Tennessee

3   case in (2010), Westlaw 323-9285 said in this

4   Court, "The class action limitation reflects the

5   policy that the proper remedy for violation

6   affecting classic consumers is prosecution by the

7   Attorney General or by the Tennessee Department of

8   Commerce and Insurance, not a private class

9   action."

10          So, you know, Middle District of Tennessee

11   at least in that case looked at this very issue and

12   came on out that way.

13          So, I would just submit that this is about

14   the nature of claims that the legislature has

15   authorized, and because that is a substantive rule,

16   and because of that, the class action bar applies

17   under the Shady Grove.

18          **THE COURT:**  Thank you, Mr. Kaiser.

19          **MR. SAVERI:**  Your Honor, excuse me.  You asked

20   me about Illinois and Montana.

21          **THE COURT:**  Yeah.

22          **MR. SAVERI:**  I've had an opportunity to have

23   my recollection refreshed and so --

24          **THE COURT:**  Okay.

25          **MR. SAVERI:**  -- you'll see we cite to cases on

*UNREDACTED TRANSCRIPT*

1   page 5 in the Footnote 5 of our brief.  With respect to

2   Montana we cite the Toyota RAV4 Hybrid Fuel Tank

3   Litigation.  That's 534 F.Supp.3d 1067.  It followed

4   Shady Grove and applied Rule 23 instead of the Montana

5   law that I think only applies to individual claims.  So

6   that's Footnote 5, Toyota RAV4 Hybrid Fuel Tank

7   Litigation.  Again, that's not an antitrust case.

8           With respect to Illinois, we also cite a

9   couple of cases.  The Broiler Chicken Antitrust

10  Litigation case, 290 F.Supp.3d 772, which relies on

11  a Northern California case, which we handled, called

12  In re:  Lithium-Ion Batteries Antitrust Litigation

13  (2014) Westlaw 495-5377.  That's the Northern

14  District of California, October 2, 2014.

15          So, again, our position in Illinois and

16  the Montana Class Action Bar says Rule 23 also

17  controls.  To the extent you rule inconsistently

18  with that, you know, you've heard our position.

19          **THE COURT:**  Okay.  Thank you.

20          **MR. SAVERI:**  Oh, I'm reminded that I did tell

21  you that was in our reply in support of the indirect

22  purchaser, plaintiff's motion for class certification.

23          Thank you.

24          **THE COURT:**  That's helpful, since I was just

25  looking at that.

*UNREDACTED TRANSCRIPT*

1      **MR. SAVERI:**  Yeah, which was filed May 25th of

2   2023 -- oh, excuse me.  I'm going too fast.

3          What I just read to you is a footnote in

4   a brief that we have not yet filed yet.  Which

5   doesn't change it, right, the facts that -- excuse

6   me, Your Honor -- that -- those are the cases to

7   answer your question.  And I think highlights kind

8   of, like, another piece of what -- these briefs were

9   filed sometime ago.  We're continuing to address

10  these issues as we go, including in our reply brief,

11  a class certification that's due in six weeks.  So,

12  I apologize.  I got ahead of myself.  I didn't

13  reveal anything confidential.  You'll see it in six

14  weeks, but I apologize.

15      **THE COURT:**  That helps, because I turned to

16  what I thought was Footnote 5 and I didn't see any of

17  that.  But the record has your cite, so ...

18      **MR. SAVERI:**  Thank you.  And, Your Honor, if

19  you have seen it already, we would have to have some

20  other kind of conversation about that.  I would --

21  nothing but kudos.

22      **THE COURT:**  I've not, so ...

23          All right.  Let's move on to the third

24  issue, which is predominance.  And let me say here

25  that, really, my focus on this issue is on counting

*UNREDACTED TRANSCRIPT*

67

```
1    questions of law, not fact.  We are, frankly,

2    struggling with the notion of 30-plus states,

3    however many -- how many states?  37 or 36.  A bunch

4    of states.  How many do we have all together?

5              MR. SAVERI:  I think you're right, Your Honor.

6    I think it's 37 or maybe it's -- I think it's --

7              THE COURT:  So, somewhere around there.

8              MR. SAVERI:  Yes.

9              THE COURT:  Let's say it's 37 states.  And --

10             MR. SAVERI:  And again -- excuse me.  Excuse

11   me.  I'm sorry.

12             THE COURT:  Yes.  Well, so the struggle is,

13   the law in these various states does seem to be different

14   among the states.  There certainly are some that, as you

15   argue, follow the federal statutes, but not all.  But

16   you've got them all in one class.  So how do we deal this

17   through this mechanism?

18             MR. SAVERI:  So, thank you, Your Honor.

19              So, I think when you consider the issues

20   that you're addressing in these -- in a multistate

21   class action, which asserts claims under the laws of

22   various states.  There are, in fact, kind of two

23   ways to think about it.  And you actually talked

24   about both of them.  One is the predominance issues

25   under Rule 23(b)(2), and then there's a different
```

*UNREDACTED TRANSCRIPT*

68

1    kind of set of considerations which have to do with

2    manageability.  And the manageability issue has more

3    to do, and I can talk about it in a minute, with how

4    the cases are going to be tried, and how the jury is

5    going to be instructed.

6            But taking your question that you just

7    asked, which was a predominance question, right,

8    which was about whether these claims involve

9    predominating common questions.  And again, under

10    Rule 23, and under the jurisprudence that's

11    developed under Rule 23 since 1966, including a

12    number of Supreme Court cases on this point, we do

13    not have to prove that all issues are common.  We

14    only have to show that common issues predominate.

15            And the -- as many courts have held,

16    particularly, well, cases in the area of antitrust

17    cases, there are literally dozens, if not hundreds,

18    probably not two hundred, but probably in the

19    hundreds of cases which held that common issues of

20    facts in law overwhelmingly predominate.  And that's

21    because, first of all, we start from the proposition

22    that common issues include a number of issues that

23    are going to be proved by common evidence.  And

24    that's the touchstone.  And the issues that are

25    going to be proved by common evidence include proof

*UNREDACTED TRANSCRIPT*

1  of the conduct in this case, what defendants did,

2  for example, in this case, proof of the

3  acquisitions, the mechanic effect of the

4  acquisitions.

5          THE COURT:  Let me stop you --

6          MR. SAVERI:  Yeah.

7          THE COURT:  -- only because, Mr. Saveri, I

8  think I get that part of it.

9          MR. SAVERI:  Right.

10          THE COURT:  And maybe conceptually, I was

11  phrasing it wrong, because to me, those are the issues

12  that -- I don't have as many questions about common

13  issues of fact.

14          MR. SAVERI:  Excuse me.

15          THE COURT:  So maybe it is really what -- the

16  way you've said it, it's the manageability of a situation

17  where the damages were coverable in one state and

18  completely different in another state.  Maybe it is the

19  manageability aspect of that that I'm -- that is really

20  what is nagging at me more than that.

21          MR. SAVERI:  So, let's talk about it.  I would

22  only say one more thing about the common issues.

23              So, with the cases held, when they

24  looked at these multistate cases, really the

25  question is, are there issues under state law that

*UNREDACTED TRANSCRIPT*

1    have to do with state claims, which somehow swamp

2    these otherwise overwhelmingly common issues.  And

3    so, there is some kind of analysis of how they go

4    together, right, and they're not separate.

5              But focusing from a purely predominance

6    issue, numerous cases have held that for a variety

7    of reasons, because the state antitrust claims

8    revolve -- the proof of those resolve around the

9    proof of conduct that is common to the defendant, as

10   well as the fact that the State claims, either are

11   directly modeled on the federal cases, they have

12   harmonization provisions, or they are by statute or

13   decisional law interpret in common with federal law

14   that the distinctions that may exist are minor.  And

15   we, in connection with our brief, we had submitted,

16   I think it's at Docket 70.1, a chart, which goes

17   through state by state and shows each of those

18   things.  So we're not only just saying it, we're

19   showing our work.  And so, that shows how and why

20   the federal cases have much more in common.

21             The same is true federal claims that

22   arise under state consumer protection statutes.  The

23   state consumer protection statutes generally require

24   proof of deceptive, unfair, or illegal conduct --

25   same reasons that the statutes are overwhelmingly

*UNREDACTED TRANSCRIPT*

1   common.  There are differences, but those

2   differences are entirely unmanageable.

3               So let's talk about how the cases are

4   managed.  And so, as a number of courts have held,

5   and we cite those in our briefs, the way

6   manageability is dealt with is through jury

7   instructions and through special verdict forms.

8   Because of the things that I just said, the law --

9   the state claims can be grouped in tranches and

10  presented to the jury through verdict sheets or

11  verdict forms that address each of the elements of

12  the claims.

13              And, in fact, Your Honor, again, you'll

14  see this in our reply brief.  We are going to

15  address this issue and show how this can be done

16  based, in fact, on the experience of other federal

17  judges with these types of situations.

18              There are cases like Nexium; Lidoderm;

19  Racana (phonetically spelled), which in the last few

20  years have all involved multistate law claims.  And

21  these issues after class certification, in

22  connection with trials, including trials to verdict,

23  were addressed by the special verdict forms.  We can

24  show those to you, Your Honor.  And this is going to

25  be part of our showing on the reply brief.

*UNREDACTED TRANSCRIPT*

1          I think it's important in that context

2     to know that when these -- we are going to rely on

3     the same body of evidence, with respect to all of

4     these claims.  When we put on our case we are not

5     going to put on a New York case or a California case

6     or a Wisconsin case.  We're going to put on a case

7     and we're going to put on evidence which is common

8     to the class, including evidence of the type I just

9     described, which is largely, the conduct of

10    defendants is going to be about the business records

11    of the defendants, it's going to be the testimony of

12    defendant's executives, it's going to be the

13    testimony of our experts, it's going to be testimony

14    of their experts -- all of that evidence.  Like,

15    we're going to rely on common evidence.  And we are

16    going to rely on that evidence with respect to each

17    of the state law claims.

18          And when we close, Your Honor, we're

19    going to ask the jury in a special verdict form to

20    analyze or answer special verdict questions about

21    whether we've established various elements.  Because

22    the claims can be grouped, the answers to the

23    questions will resolve claims under various state

24    laws.  To the extent there are additional claims,

25    which have additional elements, they can be -- there

*UNREDACTED TRANSCRIPT*

1    will be -- there can be additional special verdict

2    questions.

3              So, for example, if there is a state

4    claim consumer protection claim has some scienter

5    requirement that others don't.  There will be a

6    scienter question.  And if the jury answers that in

7    the affirmative, we have established the

8    claim -- those claims.

9              In the negative, we have -- we will have

10   failed.  We can address that on all the

11   additional -- to the extent there is variation, each

12   of those issues can be addressed.  And I would say,

13   Your Honor, that you don't have to necessarily

14   believe me on it.  You can look at what other

15   federal trial judges have done in this situation.

16   And the path is well-established.

17             Now, the other thing you should

18   understand is that we have, in our damage

19   methodology, we have calculated damages on a State

20   by state basis.  We have calculated them on an

21   aggregate basis for the entire 50 states.  We have

22   also done it state by state.  So we'll be able to

23   present and show the jury, damages, damage

24   calculations for each individual state.

25             So if, for example, the jury were to

*UNREDACTED TRANSCRIPT*

1   find, well, there are damages for those that reside

2   in California, but not those who live in Minnesota,

3   we're going to be presenting evidence to the jury,

4   which would allow them to determine damages on that

5   basis.

6               So, Your Honor, once again, you don't

7   have to believe me.  And I would commend -- what I

8   would recommend Your Honor do is, I think these are

9   reported questions, obviously.  And these are sticky

10  questions in these cases.  And we appreciate the

11  opportunity to ventilate these.  If there are other

12  particular issues along these lines, let's have that

13  dialogue.  We are going to address these in six

14  weeks.

15              **THE COURT:**  So, you're -- overall, you're

16  saying, look, this is an issue --

17              **MR. SAVERI:**  Absolutely, Your Honor.

18              **THE COURT:**  -- but it's an issue to be dealt

19  with at the trial.  It's not an issue that requires, say,

20  a different class definition.  It's not an issue that

21  requires subclasses.  It's something that really is done

22  as a matter of outlining the work of the jury and how

23  they are to carry out that work.

24              **MR. SAVERI:**  I want to be clear about this.  I

25  mean, at some level, that is the issue that is going to

*UNREDACTED TRANSCRIPT*

75

1    be presented to you for resolution in the Rule 23

2    motions.

3                **THE COURT:**  Okay.

4                **MR. SAVERI:**  And Your Honor should understand,

5    right.  So, one, we do not deny that there are

6    differences of variations of state law.  We don't have to

7    win it by proving that.  We certainly believe that they

8    are a lot more common than they're not.  And as far as I

9    understand, I think that's largely conceded by Varsity.

10               Now, you are going to be asked to

11   determine under the Rule 23 motion, with respect to

12   predominance, whether there's significant cohesion

13   amongst the class, or that we've satisfied you that

14   we are going to prove our claims, based on common

15   evidence, or that there are sufficiently

16   predominating questions over individual issues.

17   Those are the basic Rule 23 requirements.  It's our

18   burden to show that.

19               And this is case now -- there's been a

20   substantial amount of the discovery.  We're going to

21   submit a lot of the records from the case, including

22   the business records of the testimony.  We have the

23   testimony of four experts, which we're also going

24   rely on.  There are also -- I need to be fair.

25   There are Daubert motions by both sides, saying

*UNREDACTED TRANSCRIPT*

1    there are problems with those.  But all of that is

2    part of the Rule 23 analysis.  Manageability, which

3    is also a consideration of the trial plan, is also

4    one of those requirements, and we intend to do that.

5              But to answer your question, Your Honor,

6    we think that Rule 23 will be satisfied.  And once

7    you have determined that we're going proceed through

8    summary judgment at trial, the ultimate issue of

9    when we're going to address the manageability issues

10   will be at the time that we -- well, one of them

11   will be at the charging conference where we are

12   going to consider the jury instructions and we're

13   going to consider the special verdict form.

14             Now, among other things, that special

15   verdict form is not going to refer again to any of

16   the individual states.  It will ask them specific

17   questions about what our proof is.  And the jury

18   will be asked to make "yes" or "no" determinations,

19   and then, assuming that we've satisfied each element

20   of what the reasonable estimate of damages is.

21             So, again, Your Honor, I'll just say it

22   for the fourth time.  We have briefs coming in in

23   four or five weeks.  I am so eager about them, I

24   gave you a preview of it, unnecessarily a few

25   minutes ago, which I hope I don't regret.  But

*UNREDACTED TRANSCRIPT*

1    candidly, Your Honor, I do think it's better to

2    resolve and address that issue on a fully-developed

3    record.

4             Doing it on the pleadings, which is the

5    Motion to Strike, is an odd way of addressing this.

6    I mean, among other things, we're entitled under

7    Rule 12, to all the inferences, because we're the

8    plaintiff that is on the complaint.  We've alleged

9    that -- and made sufficient factual evidence to

10   support the findings of predominance, a finding of

11   manageability.

12            Look, from our perspective, we didn't --

13   we had a reasonable belief and we had facts we could

14   plead about what this case is.  Candidly, we think

15   this case has turned out, from a discovery record,

16   to be every -- all of that and more.  We think the

17   evidence in this case is going to be -- will be

18   demonstratively quite strong.  And it certainly

19   supports the class certification determinations.

20            So we would just suggest that we allow

21   the briefing to continue.  Frankly, I also benefit

22   from -- it's really good to be in court again on my

23   feet and having this kind of opportunity to talk,

24   because I think it provides for the kind of

25   ventilation of the issues that's required under Rule

*UNREDACTED TRANSCRIPT*

1   23 and the rigorous analysis that the Supreme Court

2   has required.  So I think the briefing should

3   continue.

4           I think the Motion to Strike should be

5   denied as moot, or denied outright, or reserved

6   until we have an opportunity to fully address these

7   issues.  And then, if Your Honor has read those, we

8   can come back.  And we welcome the opportunity to

9   argue the -- this as a matter -- as a hearing on a

10  motion, but also to present our -- excuse me

11  (banging noise).

12          We welcome the opportunity to have an

13  evidentiary hearing on those issues to bring our

14  experts here.  You will see when you get to the

15  class certification briefing that it is very

16  expert-intensive.  And so, we would be happy to

17  bring the experts here.  We can put them on direct.

18  We can cross-examine them.  Your Honor can ask

19  questions.  And in my experience, it turns out to be

20  a very -- it's a much more productive way of getting

21  to the bottom of these issues.

22          And certainly, the defendant's, I'm sure

23  I haven't convinced them of anything in the last 15

24  minutes.  But they're going to have their

25  opportunity.  And I think that's the best way to do

*UNREDACTED TRANSCRIPT*

79

1    it.

2              I would -- one thing I'll say and I'll

3    sit down, unless you have other questions.  We

4    recently addressed this issue in a federal cartel

5    case called the Capacitor case in front of Judge

6    Donato in San Francisco.  On this issue he had

7    something called a "hot tub" where he brought in --

8         **THE COURT:**  I heard Mr. Donato describe his

9    hot tub process at the MDL conference.

10        **MR. SAVERI:**  I -- he was very -- well, he was

11   enthusiastic on the way in.  And I think he was more

12   enthusiastic on the way out.  I think it's fair to say

13   that he found it to be a very productive thing for him

14   siting as a trial judge on a Rule 23 issue.

15        **THE COURT:**  I think -- yeah, I was at an MDL

16   conference and he described that, which seems odd to call

17   it a "hot tub" process, but that's another issue.  It

18   sounded incredibly interesting, and it sounded incredibly

19   helpful.

20             I don't know about -- I'm not saying in

21   this particular case, but just in general, as a

22   technique.

23        **MR. SAVERI:**  And -- but I'll just say that the

24   hot tub issue was largely on class cert issues and on

25   Daubert issues.  And so, we put that on -- my experience

*UNREDACTED TRANSCRIPT*

```
 1       was certainly anecdotal, because it was a thing to do.

 2                    Unless you have other questions, you

 3       know, I'll sit down.

 4              THE COURT:  Yeah, I think I'm good on this

 5       issue for now.  Thank you, sir.

 6              MR. SAVERI:  Okay.  Thank you.

 7              THE COURT:  All right, Mr. Kaiser, same focus.

 8       I mean, I cut Mr. Saveri off when he was getting into

 9       what the proof will show about what they think the

10       defendant's conduct was, because I see common issues

11       there.  To me, that's not the issue.  The issue is how to

12       deal with the fact that these states have different laws.

13              MR. KAISER:  Yes, I appreciate that.  I will

14       not talk about whether or not there are common issues.

15              THE COURT:  And let me say, I know you

16       disagree with that, but you've got to give it up on that,

17       for me, for now, under this motion.

18              MR. KAISER:  I understand.

19                    And I think, in fact, that's actually

20       the right way to think about it for purposes of this

21       motion.  What we're really talking about is, you-all

22       said 37.  I think we counted 33.  There may be some

23       of those jurisdictions that were part of the Motion

24       to Dismiss.  But anyway, it's more than 30.

25                    And one thing I just heard was what
```

*UNREDACTED TRANSCRIPT*

81

1  sounded to me, anyway, like a very complicated

2  process of jury instructions with, I guess, some

3  sort of flow chart that says, if you find this and

4  this, and you find this and this, then go to

5  California, you already know, advance to jail, don't

6  pass go -- don't -- I mean, it sounds like a very

7  complicated arrangement, from my ear.  Because when

8  you're dealing with 33 states -- and these are not

9  minor differences.

10            And the other thing to keep in mind is,

11  we're not talking about what I suspect is the case

12  in the case that he's talking about, which is one

13  market.  One market.  Here, we have 11 different

14  markets we.  Have apparel.  We have competitions,

15  and maybe we'll have camps.  So that's three.  But

16  then, as to camps and competitions, this is the way

17  they define the markets, not us.  They have five

18  regional geographical ones.

19            So right off the bat, as things stand,

20  the jury is going to have to think about 11 markets.

21  And so, when they consider conduct and how effective

22  prices in each of these markets, that's going to be

23  a factor that they're going to have to be

24  considering before they can get to the (mumbling).

25  I don't mean to bring that up as a common issue, I

*UNREDACTED TRANSCRIPT*

82

 1   just need to bring that up as a distinguishing

 2   feature that you don't often see in these antitrust

 3   cases.

 4              But moving on from there.  The other

 5   thing that I found interesting was that they say,

 6   well, they filed a reply on class certification and

 7   they will explain all of this to the Court.  Well, I

 8   would suggest to the Court, why didn't they explain

 9   this when they filed their motion for class

10   certification?  It seems like they've held this all

11   back so that we don't even have a chance to respond

12   to it, which I don't think they should be allowed to

13   raise any of this on their reply.  They should have

14   presented to the court whatever their plan was,

15   going in.  And instead, it just said, it's all the

16   same, don't worry about it.  That was essentially,

17   the sum and substance of what they said, when they

18   cited a few cases I didn't get to.

19              So, in response what we did was we

20   presented a chart that shows 10 pages of state law

21   references, which is ECF 420 (5-1) and Page ID 1376.

22   Start there.  And among these many differences are,

23   plaintiffs seek or pursue claims with a mix of

24   allegations of, you know I don't accommodate

25   conspiracy.  But the laws of New York, California,

*UNREDACTED TRANSCRIPT*

83

1    Tennessee, and Kansas, at least, did not provide a

2    cause of action for unilateral conduct.  If claims

3    under those statements under the laws, including the

4    claims on laws of states that do breach unilateral

5    conduct, how would that work, thrown into the mix

6    together.

7              The fact-finding for the jury would need

8    to parse the alleged conduct between unilateral and

9    non-unilateral, consider the case through both

10   lenses, simultaneously.  And I would submit that

11   this is hard enough for antitrust lawyers to do.

12   And I think, as a matter of fact, it would be

13   impossible for a jury to do.

14             And then, of course, they would need to

15   figure out, depending on where they came out on

16   that, what that meant to damages.  And there's other

17   differences.  For example, Mississippi law doesn't

18   allow for claims in a robbery, unless there's a

19   (mumbling) -- by transaction, only within the state

20   of Mississippi .

21             So the fact finders are going to have to

22   consider whether or not that's satisfied.  And if it

23   wasn't satisfied -- and you just heard he's not

24   going to present a Mississippi case, so they're

25   going to have to divide that with something.  And

*UNREDACTED TRANSCRIPT*

1    then they have to consider if it wasn't satisfied,

2    what does that mean for (mumbling) --

3                A number of the states that they brought

4    into play was 30-plus states:  Arkansas;

5    Connecticut; Florida; Idaho; Maryland; and

6    Washington state do not apply -- do not provide a

7    private antitrust cause of action for indirect

8    purchasers, which is what they are.  And so,

9    therefore, they're relying on consumer protection

10   statutes.  And there's a case in the Sixth Circuit

11   called Pilgrim 660 F.3d 943 from the Sixth Circuit

12   itself, where they struck class allegations where

13   the Court would need to apply the consumer

14   protection laws of many states.  So it's exactly the

15   situation we're in.

16               **THE COURT:**  Was this at the motion to dismiss

17   stage?

18               **MR. KAISER:**  It was a motion to strike, as I

19   understand.

20               Just another example, the Tennessee

21   Consumer Protection Law that we talked about a

22   little bit earlier, I mentioned in passing, does not

23   provide for antitrust-based claims at all.  So that

24   means that the Court's dismissal of those claims --

25   I mean, we suspect that means the Court will dismiss

*UNREDACTED TRANSCRIPT*

1    those claims.  But if it doesn't -- in other words,

2    if the Court allows these claim drafts or all

3    antitrust notes to go to the jury, the jury will

4    have to simultaneously consider whether there was an

5    antitrust violation for the other states, while at

6    the same time, for TCPA purposes, considering

7    whether there was some non-antitrust violation.  We

8    talked about deception and whatnot.

9              So those are two separate things that

10   could actually come about simultaneously.

11             **THE COURT:**  Let me stop you for a minute and

12   ask you to -- I think part of the essence of Mr. Saveri's

13   argument is this motion, although it's a Motion to

14   Strike, it was essentially at the Motion to Dismiss

15   stage, so it was filed -- I think it's -- the motion

16   itself was filed April 15 of 2021, so, embarrassingly,

17   two years ago, not on you-all's part, on my part, the

18   embarrassing part.  So it's a motion that's been hanging

19   around for two years.  It's essentially a motion based on

20   the pleadings.  Not essentially, it is.  So you're

21   pointing to positions and arguments that make it so that

22   presenting this to a good jury will be difficult.

23             Mr. Saveri says, hey, let's wait.  I'm

24   going to tell you how we can get it to the jury.

25   While it's not a completely satisfying answer,

*UNREDACTED TRANSCRIPT*

 1   because we're closer than we used to be.  When I

 2   look at the timing of when this motion was filed,

 3   should I really be deciding, again, based on this

 4   motion, not a motion that might be ripe for a

 5   decision tomorrow, but based on this motion, should

 6   I really be deciding it based on whether it will be

 7   confusing to the jury or not or whether we could

 8   work it out and figure out what actually, ultimately

 9   gets to the jury through Motion for Summary Judgment

10   and so forth.

11            MR. KAISER:  Well, I understand the Court's

12   point.  I would say, though, that on this particular

13   issue, just like in Pilgrim in the Sixth Circuit, there

14   are issues of class certification that were just

15   apparently the face of the complaint that do counsel for

16   decision on that basis.  And this is one of them.  This

17   is not a factual question.  We're not arguing deep into

18   the weeds of Daubert motions and different things that

19   experts said.  We're just talking about differences in

20   state law, that the jury's going to have to hear a, you

21   know, very long, apparently, charge on 33 different state

22   laws.  There are a bunch of issues that transcend

23   different laws and then try to keep that all on their

24   head and then deal with some sort of complicated jury

25   form.  Those are the realities.  I mean, that's not us

*UNREDACTED TRANSCRIPT*

```
 1   talking, that's what we heard from this side today.
 2               So that's what the Court's going to
 3   confront.  It's in front of you today.  It's going
 4   to confront whether the class certification briefing
 5   is done.  It's going to confront it the day the jury
 6   is charged.
 7               So the question is, wouldn't it make
 8   more sense if this is going to be a showstopper, as
 9   we certainly think it should be, as many courts have
10   stated is.
11               Shouldn't we get there now so we can
12   move on to whatever the next step in this case is,
13   rather than have this be hanging out there as an
14   issue that will have it's shadow of these
15   proceedings from -- forever, until it gets --
16         THE COURT:  I guess the question is, shall we
17   deal with it now as opposed to, you know, in another
18   round of briefing.  And part of the answer from my
19   perspective is whether -- when -- as litigators you look
20   at all the different places in which you raise issues.
21   Aren't some of these issues better raised at different
22   points in the process?
23               You're right.  It's purely -- well, part
24   of it is purely legal.  Some of the issues you
25   raised as to individual states are legal issues.
```

*UNREDACTED TRANSCRIPT*

88

```
 1   But that's not the motion you made.  You didn't say,

 2   let's spell out Mississippi because there's no proof

 3   as to anyone being harmed in Mississippi, or

 4   Mississippi doesn't allow purchasers, whatever the

 5   issue is.  You said, let's throw out this whole

 6   class, because there's this problem in Mississippi.

 7             So, help me get to -- and you're right.

 8   There are certain issues you do deal with -- that

 9   the Courts do deal with the stages.  Absolutely

10   appropriate to deal with at this stage.  Tell me why

11   this really is that kind of an issue.

12             MR. KAISER:  Well, again, I think what it

13   comes down to is that it is true, this was filed at the

14   outset of the case.  And the reason it was filed is

15   because we looked at this class as suggested, which,

16   again, involved at that point, three different products.

17   And plus, by the way, they dispute the distinction

18   between All Star and Scholastic, which I only bring up to

19   say that's a whole other thing the jury is going to be

20   thinking about.  Big dispute in that area.  So, if you

21   think those are separate, those are multiplied a number

22   of things, by two, which is All Star and Scholastic.

23             So, we looked at this and said there's

24   no way this could possibly satisfy Rule 23 by its

25   nature.  And that was the purpose of the motion, was
```

*UNREDACTED TRANSCRIPT*

 1   to essentially avoid some of what we've been through

 2   over the last year and a half or two years.

 3            Now, I understand what the Court is

 4   saying, which is, well, you've been through it, so

 5   that's a little bit of water under the bridge at

 6   this point.

 7            **THE COURT:**  No, no, no.

 8            **MR. KAISER:**  No, but I respect that kind of

 9   sense.

10            **THE COURT:**  Yeah, but I really am not -- I'm

11   not saying that.  If it's right to throw it out, I'm not

12   going to let it go in because you've done it anyway.

13   That -- I want to be clear.  That wouldn't be fair to

14   you --

15            (Simultaneous, unreportable crosstalk.)

16            **MR. KAISER:**  Okay.  I didn't mean to suggest

17   that -- I understand the point, though, when we're this

18   far along.  But we are where we were back then, which is,

19   they brought a claim under -- I think it was 37, in the

20   beginning.  We've pointed out a couple things today.  And

21   we point out more in our briefing, as to problems that

22   we'll make in this -- class.  Therefore, no amount of

23   discovery, no amount of fixing it can make it better.

24   We've now had discovery and so forth, but that's kind of

25   the best you can say, it's sort of a little bit beside

*UNREDACTED TRANSCRIPT*

90

1      the point.

2                     And now, they had their classification

3      briefing.  And even in that motion they filed, they

4      still didn't bring forward a plan.  All they said

5      was more -- a bunch of courts have allowed stuff

6      like this to go on.  We have, of coursed, cited a

7      bunch of other courts that have not allowed stuff

8      like this to go on.  And by the way, the cases we

9      set are a lot more on point than the ones they said.

10                    Now they say they're going to bring a

11     whole other bunch of cases.  And it just beg the

12     question, when is there going to be finality in

13     these things.

14                    You know, we've brought this motion.  We

15     brought it.  We think it's well-taken.  The issues

16     are not going to be any different on a class

17     certification prospect than they are -- in that

18     motion than they are in this motion.

19                    That having being said, of course, if

20     the Court is of the mind to say, I'd just rather do

21     this in the context of the class certification

22     decision, which I think we'll reach a more correct

23     result, then I would say to the Court, go ahead.

24     That should be what the Court does, as far as I'm

25     concerned, because that is -- that's what the Courts

*UNREDACTED TRANSCRIPT*

91

 1    are going to do, which is going to be the right

 2    answer.  I think it has what it needs before it to

 3    come to that right answer today.  And it would

 4    certainly change the trajectory of this case in a

 5    way that I think is going to end up one way or the

 6    other anyway.

 7              But as the decision maker, I have the

 8    utmost respect for your pride in deciding how --

 9    where the point is you want to make this decision

10    and what records you need.  But I would submit to

11    the Court that you have the records you've ever

12    going to have in this:  These differences, these

13    charts, and so forth.  They're going to submit

14    something in a few weeks.  But again, they've had

15    their opportunity to do that.  And here we are on

16    their reply and they're saying they're going to

17    raise all sorts of other things about how this could

18    be done.  Why didn't they do that on their initial

19    filing?  I don't understand that either.

20              So that would be my answer to that

21    question.

22              **THE COURT:**  And let -- I want to make sure I'm

23    clear.

24              My goal here is really to put blinders

25    on the fact that this case has had a whole lot more

*UNREDACTED TRANSCRIPT*

1   happen in it since these motions were filed, because

2   I think it's the defendant's right to have a

3   decision on the Motion to Dismiss that they've

4   filed, based on the way the law works as to motions

5   to dismiss.  So I'm not going to punt it because,

6   while I could deal with this in another -- at

7   another stage -- well, I'm only going to do that if

8   it's the right thing to do as to the Motion to

9   Dismiss.

10              Does that make sense?

11         **MR. KAISER:**  That makes perfect sense.  And I

12   appreciate that.  I'm very happy to hear that, because I

13   think that's exactly right.

14              I would just say, though, that there's

15   really nothing coming down the pike that's going to

16   change the fact that they have 30-plus state laws.

17   They have all these things that are really relevant

18   to the facts as they have alleged them.  And I don't

19   think they're moving off of this allegation,

20   unilateral versus bilateral, or unilateral versus

21   conspiracy.

22              The statute of limitations being

23   different for different states.  There's a lot of

24   statute of limitations issues, like the issue of

25   Mississippi that we brought up, as an example.

*UNREDACTED TRANSCRIPT*

93

```
 1              The state-specific standards for
 2    damages -- some have heightened standards.  Some
 3    have less-heightened, some are automatic.  All of
 4    these things are going to come into play.  And as
 5    the Court's sitting there just thinking ahead of,
 6    how am I going to manage a jury in this situation,
 7    how are we going to reach a fair result so the
 8    defendants have their right to defend themselves and
 9    don't get just swept along in a current, you know,
10    it's all the same, don't worry about it or, the
11    binary choice of, yes, they're bad, no, they're not
12    bad, and then everything else just falls from that.
13    That's why this shouldn't be allowed to go forward.
14              Rule 23 is not a default position.  It
15    is an exception to the rule as the Supreme Court has
16    recently emphasized.  And it's they're burden, of
17    course, to show that they meet those requirements,
18    that they didn't put forward in their complaint.
19    And I would submit what they've said today just
20    proves our point, which is, this is going to be
21    awfully complicated, extremely complicated,
22    unmanageable.  And therefore, it is the time to sort
23    of put a stop to this and move on to whatever's left
24    in the case at that point.
25              I think that would be the fair and
```

*UNREDACTED TRANSCRIPT*

1    applicable thing to do at this point.

2              **THE COURT:**  Thank you, Mr. Kaiser?

3              Any response?

4              **MR. SAVERI:**  So, just a couple of points.

5              I guess part of the -- what Mr. Kaiser

6    continues to reiterate, to put it, I guess,

7    charitably, is some version of a parade of horribles

8    about how unmanageable the case will be.

9              What I would suggest, Your Honor,

10   is -- and this will be shown in our brief.  That

11   multiple courts look at exactly these arguments and

12   these concerns about manageability.  And indeed,

13   based on the evidence that we've already talked

14   about, which is in the record in this case, found

15   them wanton and found that they, yes, there are

16   variations in state law.  And depending on what the

17   case is there could be 31 or 35 or 37 cases.  That

18   these issues can be appropriately and consistently

19   and efficiently managed, pursuant to Rule 23, and

20   that all parties can try this case to a jury in a

21   trial that is fair to everyone, that is fair to the

22   plaintiffs, that is fair to the defendants, and is

23   fair to the system of justice that we have under

24   Rule 23.

25              And I would just reiterate that the

*UNREDACTED TRANSCRIPT*

95

```
 1    opportunity to judge that is probably taken on a

 2    full record, based on the evidence in this case.

 3              THE COURT:  But what I just said to Mr. Kaiser

 4    is a little different than what you've just said.  What

 5    I've just said to him is, look, at this stage I have to

 6    look at this motion to dismiss as if nothing else has

 7    happened in the case.

 8              Surely you're not arguing that you

 9    didn't have some obligation to show this wasn't a

10    fatal flaw that would -- that wouldn't support a

11    Motion to Dismiss now, right?

12              MR. SAVERI:  So, I agree.  And I think your

13    question was an apt question, which was, the motion was

14    some version of, there was something so flawed, right?

15    That was so inherently faulty, with respect to our

16    complaint, with respect to the class action allegations,

17    that's based purely on the pleadings and on the

18    allegations that we made, and the reasonable inferences

19    to which we are entitled, that it was so faulty that the

20    Court can, at this juncture, or if we go back into a time

21    machine to two years ago, say, stop.  This is so flawed

22    that you can not reasonably proceed.  Okay?

23              So I accept that as the calculous.  And

24    I would say that they are showing in -- their

25    arguments are themselves, fatally deficient.
```

*UNREDACTED TRANSCRIPT*

96

```
 1              I would also say, though, Your Honor,
 2    that I don't think you should neglect at this
 3    juncture, the fact that we have filed a -- we have
 4    opposed the Motion to Strike, but we've also filed a
 5    class certification motion, which brings to bear the
 6    evidence in everything we've learned.  And so, I
 7    think that is instructive, and should be considered,
 8    don't think we need it.  But I think the fact that
 9    we -- once given the discovery, once we've had an
10    opportunity to develop our arguments, we're going to
11    be able to carry our burden under Rule 23.  And, you
12    know, Rule 23 also doesn't require itself, to have
13    these motions made, you know, at the end.  They
14    could be made earlier.  It's always our burden.  And
15    we have sustained it.
16              The other thing I would guess -- I just
17    want to point out, I didn't mean to say, and I don't
18    think I did say, that we have somehow -- we're going
19    to raise all of this stuff for the first time in the
20    reply brief.  We filed an opening brief.  They have
21    an opportunity to respond to it.  They've opposed it
22    and we have an opportunity to reply to that.  And to
23    the extent they've raised arguments, we're going to
24    respond to that.  I don't think that's a remarkable
25    proposition.  There's nothing unfair about that.
```

*UNREDACTED TRANSCRIPT*

97

```
 1    That's the way the rules work.  And so, that's what
 2    we intended to.
 3              The other thing I would say, Your Honor,
 4    is that a number of the arguments about particular
 5    state law that I heard from Mr. Kaiser a few minutes
 6    are basically their class certification opposition,
 7    I mean, it's basically a summary of the argument
 8    they're making in those briefs.  We think that most
 9    of those issues, if not all of them, well, either
10    they are not supported by the statute, or except
11    they have an argument can be raised under Rule 56.
12              And the other thing I would point out,
13    Your Honor, with respect to each of those issues,
14    those are common issues, right.  Those are common
15    issues.  They're saying there was some kind of legal
16    bar to particular claims.  We think it's a Rule 56
17    issue.  And the resolution is going to be common.
18    So, it just kind of adds another layer of
19    predominance on a type of claim which courts have
20    repeatedly found to be susceptible.  Look --
21         THE COURT:  So, well let me ask you.  So,
22    they're common as to certain -- of the states, right?
23         MR. SAVERI:  Yes.
24         THE COURT:  I guess that goes back to my
25    question of subclasses and ...
```

*UNREDACTED TRANSCRIPT*

1          **MR. SAVERI:**  And, Your Honor, excuse me.

2    If -- we believe there does not need to be a subclass.

3    We don't believe it.  We don't think that the proper

4    procedure under Rule 23 is to create a bunch of

5    subclasses, breaking this up into those pieces.  We're

6    intending on proceeding to prove all our claims, based on

7    a common body of evidence.

8               The Courts that have dealt with these

9    multistate claims ordinarily do not subclass.  They

10   make a decision under Rule 23, whether claims are up

11   or down.  Sometimes to be fair, courts will

12   determine that there are certain state claims that

13   won't go forward and could be kind of edited out or

14   cleaved out of class certification.  I really thing

15   that's going to be the way it's going to be

16   presented to Your Honor.

17              We don't think any of these claims will

18   go, but you may disagree with us.  And at that point

19   maybe it will be subclasses, but for whatever it's

20   worth, I've done dozens of these cases that we have

21   just not subclassed.  And that's just my experience.

22   And I think it's been effective and fair to all the

23   parties.

24              But, you know, ultimately, I'll maybe

25   perhaps close with this.  I think that the

*UNREDACTED TRANSCRIPT*

 1    defendant's argument is that instead of proceeding

 2    as a class, that we would have to proceed with a

 3    bunch of individual claims, perhaps, subclass

 4    claims.  And I just think that's incorrect.  I think

 5    it's inconsistent with Rule 23.  I think it's

 6    inconsistent with basic principles of efficiency.  I

 7    think a national class action where all these cases

 8    are tried at once.  And you'll save -- we'll provide

 9    substantial justice and provide the parties

10    resources.  I think it makes sense to concentrate

11    all of this in one proceeding.

12            So, unless the Court has additional

13    questions, I'm prepared to sit down.

14            **THE COURT:**  I think I am good.

15            Anything else, Mr. Kaiser?

16            **MR. KAISER:**  I would only say that courts have

17    looked at this argument that it's hard to -- it's

18    frustrating when the claims are not that big.  And the

19    temptation, perhaps, is to do -- well, class action is

20    the only way to go.  But Rule 23 has requirements and

21    those requirements have to be met.  And the reason they

22    have requirements is so that claims that don't belong

23    together don't end up together, because it's prejudicial

24    to defendants, as far as the due process rights.

25            So I would submit to the Court that just

*UNREDACTED TRANSCRIPT*

1    like an -- of products, which is like -- they

2    process their products, because we say, well, there

3    were 21 states at issue and the Court denied class

4    certification and indirect certification of class.

5    That's what you have in here, ultimately.  But for

6    right now, the fact is that they have not shown how

7    this is going to work.  They have their -- they've

8    had multiple opportunities to.  What we've heard

9    today is a very complicated scenario, I think, with

10   involving the laws of 37 states.  And what we

11   said -- the right answer is Defendant's Motion to

12   Strike and let the claims proceed however they

13   proceed from there.

14            Thank you.

15       **THE COURT:**  All right.  Thank you, Mr. Kaiser.

16            That is all I have.  I promise it won't

17   be another two years before we rule.  We'll rule as

18   promptly as possible, but we'll take it under

19   advisement.

20            Thank you-all -- yes, Mr. Saveri.

21       **MR. SAVERI:**  Oh, I thought you were standing

22   up, Your Honor.  I was going to stand up as well.

23       **THE COURT:**  Well, thank you.  Give me one more

24   minute.

25            I want to thank -- I guess -- I know

*UNREDACTED TRANSCRIPT*

```
1    several of you-all are here from out of town.  Thank

2    you for making the trip.  It really does help to

3    have you here in person for something like this, as

4    opposed to on Teams.  So I appreciate you-all making

5    the trip.  And we'll see what happens next and

6    whether we need this with some of the other

7    arguments, going forward.

8              So, thank you-all.  Have a good trip

9    home.  And we are in recess.

10             (WHEREUPON, the foregoing proceedings were

11             ADJOURNED at 3:31 p.m.)

12                  (Adjournment.)

13

14

15

16

17

18

19

20

21

22

23

24

25
```

*UNREDACTED TRANSCRIPT*

1

2                        C E R T I F I C A T E

3          I, April Lassiter-Benson, do hereby certify that the

4      foregoing 101 pages are, to the best of my knowledge,

5      skill and ability, a true and accurate transcript from my

6      stenotype notes in the matter of:

7

8      JESSICA JONES, ET AL.

9      vs.

10     BAIN CAPITAL PRIVATE EQUITY, ET AL.

11

12          Dated this 9th day of May, 2023.

13

14     S/APRIL LASSITER-BENSON
       Official Court Reporter
15     United States District Court
       Western District of Tennessee
16

17

18

19

20

21

22

23

24

25

*UNREDACTED TRANSCRIPT*