**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TENNESSEE**
**WESTERN DIVISION**

| | |
|---|---|
| **JESSICA JONES, et al.,** | Case No. 2:20-cv-02892-SHL-tmp |
| Plaintiffs, | |
| v. | |
| **VARSITY BRANDS, LLC, et al.,** | **JURY DEMAND** |
| Defendants. | |

**REPLY IN SUPPORT OF INDIRECT PURCHASER PLAINTIFFS' MOTION FOR**
**CLASS CERTIFICATION**

## <u>TABLE OF CONTENTS</u>

**Page**

I.     INTRODUCTION ..............................................................................................................1

II.    ARGUMENT ..................................................................................................................1

    A.    RULE 23 IS NOT PREEMPTED BY THE TCPA'S CLASS ACTION
          BAR .........................................................................................................................1

    B.    RULE 23(A)(2): COMMONALITY REQUIREMENT IS SATISFIED ...............3

    C.    RULE 23(A)(3): TYPICALITY REQUIREMENT IS SATISFIED ......................4

    D.    RULE 23(A)(4): ADEQUACY REQUIREMENT IS SATISFIED ......................6

    E.    RULE 23(B)(3): PREDOMINANCE REQUIREMENT IS SATISFIED ..............9

          1.    Overcharges can be Established by Common Proof..................................10

          2.    Passthrough can be Established by Common Proof ..................................11

          3.    Plaintiffs can Establish Aggregate Damages by Common Proof .............13

          4.    State Law Variations are Manageable .......................................................15

          5.    Determining Impact and Damages does not Require Mini-Trials.............19

    F.    THE INJUNCTIVE RELIEF CLASS MERITS CLASS
          CERTIFICATION ..................................................................................................20

III.   CONCLUSION...............................................................................................................20

## **TABLE OF AUTHORITIES**

**Page(s)**

**Federal Cases**

*Albright v. Christensen*, 24 F.4th 1039 (6th Cir. 2022) ...............................................................2

*Amchem Prod., Inc. v. Windsor*, 521 U.S. 591 (1997)...............................................................20

*Bearden v. Honeywell Int'l Inc.*, 2010 WL 3239285 (M.D. Tenn. Aug. 16, 2010) .......................3

*Bigelow v. RKO Radio Pictures, Inc.*, 327 U.S. 251 (1946)...........................................................19

*Bridging Communities Inc. v. top Flite Fin. Inc.*, 843 F.3d 1119 (6th Cir. 2016).........................10

*Cascade Health Solutions v. PeaceHealth*, 515 F.3d 883 (9th Cir. 2008) ................................7, 8

*Castro v. Sanofi Pasteur Inc.*, 134 F.Supp.3d 820 (D.N.J. 2015)..................................................11

*Coleman Motor Co. v. Chrysler Corp.*, 525 F.2d 1338 (3d Cir. 1975) ........................................10

*Comcast Corp. v. Behrend*, 569 U.S. 27 (2013) ....................................................................10, 12

*Eggleston v. Chicago Journeyman Plumbers' Local Union No. 130, U.A.*, 657
   F.2d 890 (7th Cir. 1981) ...........................................................................................................9

*Francis v. Gen. Motors, LLC*, 504 F.Supp.3d (E.D. Mich. 2020) ..................................................3

*Gallivan v. U.S.*, 943 F.3d 291 (6th Cir. 2019)..............................................................................2

*Gooch v. Life Investors Ins. Co. of America*, 672 F.3d 402 (6th Cir. 2012)..................................8

*Goyer v. Ashe*, 2023 WL 2776732 (W.D. Tenn. Apr. 4, 2023).....................................................2

*Gray v. U.S.*, 556 F.Supp.3d 832 (W.D. Tenn. 2021)....................................................................2

*Ham v. Swift Transp. Co., Inc.*, 2011 WL 13350069 (W.D. Tenn. Oct. 12, 2011) ........................3

*Hanover Shoe, Inc. v. United Shoe Mach. Corp.*, 392 U.S. 481 (1968) ........................................7

*Hinton v. U.S.*, 2022 WL 882157 (M.D. Tenn. Mar. 24, 2022)....................................................2

*Hosp. Auth. of Metro. Gov't of Nashville & Davidson Cnty., Tennessee v.
   Momenta Pharms, Inc.*, 333 F.R.D. 390 (M.D. Tenn. 2019).......................................... *passim*

*In re Aggrenox Antitrust Litig.*, 94 F.Supp.3d 224 (D. Conn. 2015).............................................17

*In re Air Cargo Shipping Servs. Antitrust Litig.*, 2010 WL 4916723 (E.D.N.Y., Nov. 24, 2010) ............................................................................................................7

*In re Air Cargo Shipping Servs. Antitrust Litig.*, 2014 WL 7882100 (E.D.N.Y. Oct. 15, 2014) ........................................................................................................9, 20

*In re Broiler Chicken Antitrust Litig.*, 2022 WL 1720468 (N.D. Ill. May, 27, 2022) ................................................................................................................ *passim*

*In re Broiler Chicken Antitrust Litig.,* 290 F.Supp.3d 772 (N.D. Ill. 2017) ....................................3

*In re Cardizem CD Antitrust Litig.*, 105 F.Supp.2d 618 (E.D. Mich. 2000) ................................17

*In re Cardizem CD Antitrust Litig.*, 200 F.R.D. 297 (E.D. Mich. 2001) ............................8, 14, 20

*In re Cast Iron Soil Pipe and Fittings Antitrust Litig.*, 2015 WL 5166014 (E.D. Tenn. Jun. 24, 2015) ................................................................................................18

*In re Catfish Antitrust Litig.*, 826 F.Supp. 1019 (N.D. Miss. 1993) ................................................8

*In re Cathode Ray Tube (CRT) Antitrust Litig.*, 2013 WL 5391159 (N.D. Cal., Sept. 24, 2013) .......................................................................................................12

*In re Delta/AirTran Baggage Fee Antitrust Litig.*, 317 F.R.D. 675 (N.D. Ga. 2016) .......................................................................................................................14

*In re Digital Music Antitrust Litig.*, 321 F.R.D. 64 (S.D.N.Y. 2017) ..................................7, 17, 18

*In re Disposable Contact Lens Antitrust Litig.*, 329 F.R.D. 336 (M.D. Fla. 2018) .....................14

*In re Domestic Air Transp. Antitrust Litig.*, 137 F.R.D. 677 (N.D. Ga. 1991) ............................13

*In re Domestic Drywall Antitrust Litigation*, 2017 WL 3700999 (E.D. Pa. Aug. 24, 2017) ...................................................................................................................16

*In re: EpiPen (Epinephrine Injection, USP) Mktg., Sales Pracs. & Antitrust Litig.*, 336 F. Supp. 3d 1256 (D. Kan. 2018) ..........................................................................3

*In re FCA US LLC Monostable Elec. Gearshift Litig.*, 355 F.Supp.3d 582 (E.D. Mich. 2018) ...........................................................................................................3

*In re FedEx Ground Package Sys., Inc. Emp. Pracs. Litig.*, 2010 WL 597997 (N.D. Ind. Feb. 17, 2010) ...........................................................................................2

*In re Flash Memory Antitrust Litig.*, 2010 WL 2332081 (N.D. Cal. June 9, 2010) .....................12

*In re Foundry Resins Antitrust Litig.*, 242 F.R.D. 393 (S.D. Ohio 2007) ..........................4, 5, 8, 12

*In re Graphics Processing Units Antitrust Litig.*, 253 F.R.D. 478 (N.D. Cal. 2008) ...................12

REPLY IN SUPPORT OF INDIRECT PURCHASER PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

*In re Hydroxycut Mktg. & Sales Practices Litig.*, 299 F.R.D. 648 (S.D. Cal. 2014).......................3

*In re Lidoderm Antitrust Litig.*, 2017 WL 679367 (N.D. Cal. Feb. 21, 2017)..................14, 15, 18

*In re Nexium Antitrust Litig.*, 777 F.3d 9 (1st Cir. 2015) .............................................................15

*In re Packaged Ice Antitrust Litig.*, 322 F.R.D. 276 (E.D. Mich. 2017) ......................................20

*In re Polyurethane Foam Antitrust Litig.*, 2015 WL 4459636 (N.D. Ohio July 21, 2015) .......................................................................................................................18, 19, 20

*In re Polyurethane Foam Antitrust Litig.*, 314 F.R.D. 226 (N.D. Ohio 2014) ..................... *passim*

*In re Pork Antitrust Litig.*, 2023 WL 2696497 (D. Minn. Mar. 29, 2023) .......................... *passim*

*In re Pre-Filled Propane Tank Anirust Litig.*, 2019 WL 4796528 (W.D. Mo. Aug. 21, 2019) ...................................................................................................................19

*In re Processed Egg Prod. Antitrust Litig.*, 312 F.R.D. 124 (E.D. Pa. 2015)................................16

*In re Relafen Antitrust Litig.*, 221 F.R.D. 260 (D. Mass. 2004) ...................................................16

*In re Restasis (Cyclosporine Ophthalmic Emulsion) Antitrust Litig.*, 335 F.R.D. 1 (E.D.N.Y. 2020).............................................................................................11, 15, 18, 19

*In re Restasis (Cyclosporine Ophthalmic Emulsion) Antitrust Litig.*, 355 F. Supp. 3d 145 (E.D.N.Y. 2018).......................................................................................3, 16

*In re Scrap Metal Antitrust Litig.*, 2004 WL 7340436 (N.D. Ohio Mar. 31, 2004) .....................12

*In re Scrap Metal Antitrust Litig.*, 2006 WL 2850453 (N.D. Ohio, Sept. 30, 2006)..............12, 19

*In re Scrap Metal Antitrust Litig.*, 527 F.3d 517 (6th Cir. 2008).........................................4, 9, 19

*In re Skelaxin (Metaxalone) Antitrust Litigation*, 299 F.R.D. 555 (E.D. Tenn. 2014) ....................................................................................................................6, 16

*In re Solodyn (Minocycline Hydrochloride) Antitrust Litig.*, 2017 WL 4621777 (D. Mass. Oct. 16, 2017)..........................................................................................15, 16

*In re Static Random Access Memory (SRAM) Antitrust Litig.*, 264 F.R.D. 603 (N.D. Cal., 2009)...................................................................................................13, 20

*In re Tableware Antitrust Litig.*, 241 F.R.D. 644 (N.D. Cal. 2007) ..............................................13

*In re Takata Airbag Prods. Liab. Litig.*, 462 F.Supp.3d 1304 (S.D. Fla. 2020)............................3

*In re Target Corp. Data Securities Breach Litigation,* 66 F. Supp. 3d 1154 (D. Minn. 2014).................................................................................................................3

*In re TFT-LCD (Flat Panel) Antitrust Litig.*, 267 F.R.D. 583 (N.D. Cal., 2010)..............12, 13, 20

*In re Toyota RAV4 Hybrid Fuel Tank Litig.*, 534 F.Supp.3d 1067 (N.D. Cal. 2021).....................3

*In re Whirlpool Corp. Front-Loading Washer Prod. Liab. Litig.*, 678 F.3d 409
    (6th Cir. 2012)..................................................................................................................15

*In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 722 F.3d 838
    (6th Cir. 2013)....................................................................................................................3

*In re Xyrem (Sodium Oxybate) Antitrust Litig.*, 2023 WL 3440399 (N.D. Cal. May
    12, 2023) ..................................................................................................................6, 15, 20

*In re Zetia (Ezetimibe) Antitrust Litig.*, 2020 WL 5778756 (E.D. Va. Aug. 14,
    2020) ..............................................................................................................................8, 19

*Kentucky v. Marathon Petroleum Co. LP*, 464 F.Supp.3d 880 (W.D. Ky. 2020) ........................10

*Klay v. Humana, Inc.*, 382 F.3d 1241 (11th Cir. 2004) ................................................................16

*Lessin v. Ford Motor Co.*, 2021 WL 3810584 (S.D. Cal. Aug. 25, 2021) ...................................3

*MCI Commc'ns Corp. v. Am. Tel. & Tel. Co.*, 708 F.2d 1081 (7th Cir. 1983) .............................10

*Pilgrim v. Universal Health Card, LLC*, 660 F.3d 943 (6th Cir. 2011) .......................................17

*Reynolds v. FCA US LLC*, 546 F.Supp.3d 635 (E.D. Mich. 2021)................................................3

*Schumacher v. State Auto. Mut. Ins. Co.*, 47 F. Supp. 3d 618 (S.D. Ohio 2014) .........................17

*Shady Grove Orth. Assocs. v. Allstate Ins. Co,* 559 U.S. 393 (2010)................................1, 2, 3, 19

*Smith v. CoreCivic, Inc.*, 2022 WL 3051226 (M.D. Tenn. Aug. 2, 2022).....................................2

*South-East Coal Co. v. Consol. Coal Co.*, 434 F.2d 767 (6th Cir. 1970)......................................19

*Sullivan v. DB Invs., Inc.*, 667 F.3d 273 (3d Cir. 2011)................................................................16

*Thorogood v. Sears*, *Roebuck & Co.*, 547 F.3d 742 (7th Cir. 2008) ...........................................1, 2

*Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442 (2016) ...............................................................15

*U.S. v. Grinnell Corp.*, 384 U.S. 563 (1966) .................................................................................5

*Valley Drug Co. v. Geneva Pharms., Inc.*, 350 F.3d 1181 (11th Cir. 2003)....................................7

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) ..................................................................16

*Walker v. Sunrise Pontiac-GMC Truck, Inc.*, 249 S.W.3d 301 (Tenn. 2008) ................................2

*Waste Mgmt. Holdings, Inc. v. Mowbray*, 208 F.3d 288 (1st Cir. 2000).........................................18

**Statutes**

15 U.S.C. § 1 (Sherman Act) ...........................................................................................15

28 U.S.C. § 2071-2077 (Rules Enabling Act) .............................................................2, 19

Ark. Code § 4-88-107 (Arkansas Deceptive Trade Practices Act)................................18

Tenn. Code Ann. §§ 47-18-101(g)...................................................................................1

**Federal Rules**

Fed. R. Civ. P. 12 ...........................................................................................................17

Fed. R. Civ. P. 23 ..................................................................................................... *passim*

**INDEX OF APPENDICES**

| Appendix | Description |
|----------|-------------|
| A | Multi-State Manageability Chart |
| B | Sample Special Verdict Forms |
| C | Sample Trial Plan |
| D | Sample Notice Plan |

## INDEX OF CITATIONS TO THE RECORD

| ECF No. | Description |
| --- | --- |
| 1 | Class Action Complaint |
| 333 | Defendants' Response in Opposition to Plaintiffs' Motion for Reconsideration on Motion to Dismiss for Failure to State a Claim |
| 380 | Plaintiffs' Motion to Appoint Lead Class Counsel |
| 387 | Indirect Purchaser Plaintiffs' Motion for Class Certification ("Motion") |
| 389 | Memorandum of Law in support of Indirect Purchaser Plaintiffs' Motion for Class Certification |
| 389-2 | Saveri Declaration in support of Motion, Ex. 1 (Expert Report of Janet Netz) |
| 389-4 | Saveri Declaration in support of Motion, Ex. 3 (Expert Report of Randal Heeb) |
| 389-5 | Saveri Declaration in support of Motion, Ex. 4 (Expert Rebuttal Report of Randal Heeb) |
| 407 | Reply in support of Plaintiffs' Motion to Appoint Lead Class Counsel |
| 414 | Plaintiffs' Opposition to Defendants' Motion for Sanctions |
| 415 | Saveri Declaration in support of Plaintiffs' Opposition to Defendants' Motion for Sanctions, Ex. B (Saveri Letter) |
| 416 | Plaintiffs' Cross-Motion for Sanctions Against all Defendants (Redacted) |
| 417 | Plaintiffs' Cross-Motion for Sanctions Against all Defendants (Filed Under Seal) |
| 420 | Defendants' Response in Opposition to Indirect Purchaser Plaintiffs' Motion for Class Certification |
| 437 | Plaintiffs' Motion for Leave to File Reply in support of Cross-Motion for Sanctions |

## I.   INTRODUCTION[1]

Defendants attempt to paint Plaintiffs' and potential class members' claims as infinitely complex and individualized. They are not. This case is no different than the many indirect purchaser cases that courts have readily certified. Plaintiffs satisfy each element of Rule 23(a) and predominance under Rule 23(b). Defendants attempt to mislead the Court down distracting, fractured paths, but the core commonality of Plaintiffs' and class members' claims remains. All seek to prove Defendants' exclusionary scheme, impact, and damages. All will require the ***same common proof*** to do so. As courts in this Circuit have repeatedly held, there are predominating common questions as to proof of the scheme. And once there is a showing of class-wide impact, as is shown here, predominance is satisfied, and any differences in calculating damages or variances in state laws do not make class certification unmanageable.[2]

## II.   ARGUMENT

### A.   RULE 23 IS NOT PREEMPTED BY THE TCPA'S CLASS ACTION BAR

Rule 23 is not preempted by the Tennessee Consumer Protection Act's ("TCPA") class action bar provision, Tenn. Code. Ann., §§47–18-101(g). Even before *Shady Grove*, Rule 23 was recognized as the governing standard for a diversity action, not Tennessee state law. *See, e.g.,* *Thorogood v. Sears*, *Roebuck & Co.*, 547 F.3d 742, 746 (7th Cir. 2008) (citing *Walker v. Sunrise Pontiac-GMC Truck, Inc.*, 249 S.W.3d 301 (Tenn. 2008)) ("Sears argues that the Tennessee rule precludes the maintenance of the present case as a class action. That is wrong. The procedure in

---

[1] Plaintiffs respectfully submit this reply, on behalf themselves and those similarly situated, in support of their motion for class certification, ECF No. 387 ("Motion") and memorandum of law in support, ECF No. 389, and in reply to Defendants' opposition, ECF No. 420 ("Opp."). Plaintiffs respectfully request a hearing on their Motion to address Defendants' many arguments and red herrings and to have a full opportunity to respond beyond the written papers.

[2] Plaintiffs' Motion is further supported by the Supplemental Declaration of Joseph R. Saveri ("SSD") and the Declaration of Jen Maki, Ph.D. ("Maki Decl."), filed herewith. For simplicity, Plaintiffs refer to putative class members as "class members." Unless noted, all ECF references herein are to the instant docket.

diversity suits is governed by federal law.").[3]

In 2010, in *Shady Grove Orth. Associate. v. Allstate Insurance. Co.*, the Supreme Court addressed the question of whether a state law class action bar must yield to Rule 23. 559 U.S. 393, 398–406 (2010). Justice Scalia's plurality opinion provides a two-step analysis. *Id.* First, the court should determine if the Federal Rule and the state law provision conflict and, second, if they do, the court should decide whether Congress exceeded its power under the Rules Enabling Act ("REA") in approving the Federal Rule. *Id.* To determine if the Federal Rule exceeded its power under the REA, the court must examine whether the federal rule "abridges, enlarges or modifies any substantive right" under the state law. *Id.* at 422. Justice Stevens' concurring opinion applied a slightly different test, but still found the New York state law at issue in *Shady Grove* was not so "interwoven with the scope of a substantive right or remedy" as to create "an Enabling Act problem." *Id.* at 429. In other words, both opinions found that allowing an action to proceed under Rule 23 where the underlying state law prohibits class action for a category of claims does not violate the REA. *Id.* at 396, 406–410; *see also id.* at 421–28 (Steven, J., concurring).[4] Likewise, here, Rule 23 controls how the claim is to be brought, not the substantive right under the TCPA. Nor is the TCPA's class action bar provision so interwoven with the right or remedy as to violate the REA. Therefore, under either *Shady Grove* opinion, Rule 23 applies here.[5] Sixth Circuit courts have repeatedly followed *Shady Grove* to hold that Rule 23 is

---

[3] Defendants' citation to *Walker* (Opp. at 5), a pre-*Shady Grove* case, misses the point because while it holds that the TCPA does not authorize class actions in Tennessee, it does not preclude them in diversity actions. *Thorogood*, 547 F.3d at 746 (citing *Walker*, 249 S.W.2d at 308-11); *see also In re FedEx Ground Package Sys., Inc. Emp. Pracs. Litig.*, 2010 WL 597997, at *3 (N.D. Ind. Feb. 17, 2010).

[4] Sixth Circuit courts have repeatedly found similar federal rules to be procedural and have applied the Scalia plurality opinion in *Shady Grove*. *See, e.g., Gallivan v. U.S.*, 943 F.3d 291 (6th Cir. 2019); *Albright v. Christensen*, 24 F.4th 1039, 1044 (6th Cir. 2022). Sixth Circuit courts continue to follow *Gallivan*. *See Hinton v. U.S.*, 2022 WL 882157, at *2 (M.D. Tenn. Mar. 24, 2022); *Smith v. CoreCivic, Inc.*, 2022 WL 3051226, at *6 (M.D. Tenn. Aug. 2, 2022); *Gray v. U.S.*, 556 F.Supp.3d 832, 864 (W.D. Tenn. 2021); *Goyer v. Ashe*, 2023 WL 2776732 (W.D. Tenn. Apr. 4, 2023).

[5] Defendants seem to argue the TCPA bar is effective under Justice Ginsburg's dissenting

procedural and does not affect any substantive right under the TCPA. *See, e.g., Reynolds v. FCA US LLC*, 546 F.Supp.3d 635, 656–657 (E.D. Mich. 2021); *In re FCA US LLC Monostable Elec. Gearshift Litig.*, 355 F.Supp.3d 582, 599–600 (E.D. Mich. 2018); *Francis v. Gen. Motors, LLC*, 504 F.Supp.3d at 659, 689 (E.D. Mich. 2020). The same is true for other state class action bars where courts sit in diversity.[6] There is no reason to find differently here.

## B.      RULE 23(A)(2): COMMONALITY REQUIREMENT IS SATISFIED

In antitrust cases, the commonality requirement is easily met. *Hosp. Auth. of Metro. Gov't of Nashville & Davidson Cnty., Tennessee v. Momenta Pharms, Inc*., 333 F.R.D. 390, 404 (M.D. Tenn. 2019). "Price-fixing conspiracy cases by their very nature deal with common legal and factual questions about the existence, scope, and extent of the alleged conspiracy." *Id.* (quoting *In re Foundry Resins Antitrust Litig.*, 242 F.R.D. 393, 404–05 (S.D. Ohio 2007)). One common question is all that is required. *See Fusion Elite All Stars, et al. v. Varsity Brands, LLC et al.*, No. 2:20-cv-02600-SHL-tmp (W.D. Tenn. Apr. 25, 2023) ("*Fusion*"), ECF No. 336 ("Fusion Order") at 4 (citing *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011)) ("Even a single common question will do."); *see also In re Whirlpool Corp. Front–Loading Washer Prods. Liab. Litig.*,

---

opinion in *Shady Grove*, citing the *Erie Doctrine*. Opp. at 5-6. This is not the controlling standard in the Sixth Circuit. *See supra*, fn. 4. Defendants cite cases that have been eroded by subsequent decisions. Opp. at 13. *In re Target Corp. Data Securities Breach Litigation* followed the Stevens approach, in part, because the plaintiffs' argument rested on "a single case that disagreed." 66 F. Supp. 3d 1154, 1165 (D. Minn. 2014) (citing *In re Hydroxycut Mktg. & Sales Practices Litig.*, 299 F.R.D. 648, 651 (S.D. Cal. 2014). *Hydroxycut* has since been relied upon in at least 15 decisions permitting class actions under various state consumer protection laws with bars, including the TCPA. *See, e.g.*, *In re Takata Airbag Prods. Liab. Litig.*, 462 F.Supp.3d 1304, 1322 (S.D. Fla. 2020); *In re: EpiPen (Epinephrine Injection, USP) Mktg., Sales Pracs. & Antitrust Litig.*, 336 F. Supp. 3d 1256, 1342-44 (D. Kan. 2018). Defendants' cases, *Bearden v. Honeywell Int'l Inc.*, 2010 WL 3239285 (M.D. Tenn. Aug. 16, 2010) and *Ham v. Swift Transp. Co., Inc.*, 2011 WL 13350069 (W.D. Tenn. Oct. 12, 2011), were decided shortly after *Shady Grove* and considered no cases where the Scalia opinion was considered, let alone applied.

[6] *See, e.g., Lessin v. Ford Motor Co.*, 2021 WL 3810584, at *13 (S.D. Cal. Aug. 25, 2021) (Colorado); *In re Restasis (Cyclosporine Ophthalmic Emulsion) Antitrust Litig.*, 355 F.Supp.3d 145, 156 (E.D.N.Y. 2018) (Hawaii); *In re Broiler Chicken Antitrust Litig.,* 290 F.Supp.3d 772, 817-18 (N.D. Ill. 2017) (internal citation omitted) (Illinois); *In re Toyota RAV4 Hybrid Fuel Tank Litig.*, 534 F.Supp.3d 1067 (N.D. Cal. 2021) (Montana).

722 F.3d 838, 853 (6th Cir. 2013) (same); *In re Polyurethane Foam Antitrust Litig.*, 314 F.R.D. 226, 237 (N.D. Ohio 2014) (same). Here, all class members' claims hinge on the same core question – whether Defendants formed and carried out an exclusionary scheme that caused them harm – the same question that this Court found to satisfy the requirement in the nearly identical *Fusion* action (Fusion Order at 4) and which Sixth Circuit courts repeatedly find to be sufficient. *See In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 535 (6th Cir. 2008) ("proof of the *conspiracy* is a common question that is thought to predominate over the other issues of the case") (emphasis in original); *Foundry Resins*, 242 F.R.D. at 405 ("Plaintiffs have a shared interest in attempting to prove that Defendants engaged in a conspiracy to fix, raise, and maintain the prices of foundry resins and to allocate customers and markets . . . Without proof of these common questions of law and fact, none of Plaintiffs recover"). As this Court held in *Fusion*, "Plaintiffs in both classes share many factual and legal issues, including whether Varsity had market power, whether Defendants conspired, and whether the challenged conduct violated the antitrust laws." Fusion Order at 4. The same common questions – and more – satisfy the commonality requirement. *See* ECF No. 1, ¶36(a)–(n).

## C.    RULE 23(A)(3): TYPICALITY REQUIREMENT IS SATISFIED

Typicality is satisfied where, as here, "the claim arises from the same event or course of conduct as the class claims and gives rise to the same legal or remedial theory. *Momenta*, 333 F.R.D. at 405. Typicality is established in the antirust context when, as here, named plaintiffs and all class members allege the same antitrust violations by defendants. *See* Fusion Order at 5 (finding typicality where claims of members of each settlement class are based on same challenged conduct and same antitrust theories and class representatives will seek the same overcharge damages as absent settlement class members).

Defendants argue Plaintiffs' claims are not typical because they involve "eleven different markets." Opp. at 8. Sixth Circuit courts routinely reject such assertions, even where much greater differences in products, markets, regions, or purchases exist. *See, e.g., Momenta*, 333

F.R.D. at 404 (rejecting defendants' challenges to typicality where class included many different kinds of hospitals, insurers, and end-users and where different billing, chargemasters, reimbursement and GMO contracts existed); *Foundry Resins*, 242 F.R.D. at 405 (rejecting defendants' challenges to typicality where plaintiffs bought in different quantities and by different methods, with some purchasing on a "spot basis" while others negotiated or bargained, and where some purchasers bought under long-term contracts subject to discounts or limited price adjustments, while some did not); *Polyurethane Foam*, 314 F.R.D. at 237 (quoting *In re Cardizem CD Antitrust Litig.*, 200 F.R.D. 297, 304 (E.D. Mich. 2001)) ("[C]laims in antitrust price-fixing cases generally satisfy Rule 23(a)(3)'s typicality requirement, even if members purchased different quantities and pay different prices.").[7]

Defendants argue Plaintiffs are not typical of class members who purchased camps. Opp. at 8. Yet, as Plaintiffs have explained in recent briefing, the three product markets at issue are intertwined, and Defendants' anticompetitive conduct raised prices across all products in Varsity's self-defined ecosystem (competitions, apparel, and camps). *See* ECF Nos. 414–417, 437; *see also* SSD, ¶6(f). Courts consistently certify classes where a plaintiff did not purchase identical products to other class members or purchased one product within a cluster of products. *See, e.g., Polyurethane Foam*, 314 F.R.D. at 237 (one plaintiff purchased a pillow, another a mattress); *see also U.S. v. Grinnell Corp.*, 384 U.S. 563, 572 (1966); *In re Pork Antitrust Litig.*, 2023 WL 2696497, *16 (D. Minn. Mar. 29, 2023). This Court has already recognized that plaintiffs have adequately alleged the three product markets and explained that "multiple product submarkets can make up a broader product market where they are related" and may constitute a "proper product market for purposes of alleging a monopoly." *See* ECF No. 333 at 22.

Defendants' argument that Plaintiffs are not typical of class members who purchased

---

[7] Courts routinely certify classes that are much more complex than those here. For example, in *Polyurethane Foam*, the court certified a class where plaintiffs purchased a far greater range of vastly different products (including slab stock, underlay, and fabricated foam), where the claims spanned many state jurisdictions, and where products were sold through complicated and attenuated supply chains. 314 F.R.D. at 229.

competitions in other geographic regions than where Plaintiffs reside, also fails. Opp. at 8. *See Polyurethane Foam*, 314 F.R.D. at 253–54 (rejecting argument that geographic markets were local and required individual analysis where defendants did not distinguish between local markets and themselves contended market was national); *In re Broiler Chicken Antitrust Litig.*, 2022 WL 1720468, at *5 (N.D. Ill. May, 27, 2022) (rejecting Defendants' arguments on typicality where purchases occurred through different purchasing mechanisms, plaintiffs had different negotiating abilities, and purchases had different geographic reach); *Pork*, 2023 WL 2696497, at *15 (rejecting commonality challenge where defendants operated on a national scale and, therefore, the "the entire United States is the appropriate geographic market"); *In re Xyrem (Sodium Oxybate) Antitrust Litig.*, 2023 WL 3440399, *11–12 (N.D. Cal. May 12, 2023) (rejecting argument that Plaintiffs could not represent class members in states other than where they reside and certifying classes including 31 states). Here, Plaintiffs allege a nationwide exclusionary scheme that raised prices illegally to all purchasers of all three products across the United States. ECF No. 1, ¶¶1–31, 117. ████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████ SSD, ¶6(c)–(d). Defendants' argument that Plaintiffs are not typical where they did not make purchases in Tennessee fails for the same reasons.[8] Opp. at 8. This Court has already found Plaintiffs' allegations that all three markets are national to be sufficient. *See* ECF No. 333 at 30.

## D.    RULE 23(A)(4): ADEQUACY REQUIREMENT IS SATISFIED

***There are no conflicts.*** The "conflicts" Defendants suggest between Plaintiffs and class members are hypothetical and speculative. *See Momenta*, 333 F.R.D. at 405 (citing *In re Solodyn (Minocycline Hydrochloride) Antitrust Litig.*, 2017 WL 4621777, at *13 (D. Mass. Oct. 16,

---

[8] *In re Skelaxin (Metaxalone) Antitrust Litigation*, 299 F.R.D. 555 (E.D. Tenn. 2014), is not applicable here. Opp. at 8. In *Skelaxin*, the nationwide class was "defined specifically to exclude any plaintiffs [from] Tennessee" and no plaintiffs were alleged to have been injured in Tennessee. *Id.* at 587-88. Here, Plaintiffs allege nationwide markets and conduct, and both Varsity and USASF are headquartered in Tennessee. *See* ECF No. 1, ¶241; SSD, ¶¶6(b)-(d).

2017)); *Polyurethane Foam*, 314 F.R.D. at 238–39. And even if Defendants' speculative conflicts in fact existed, they would still not be sufficient to defeat adequacy. As this Court held in *Fusion*, "to forestall class certification the intra-class conflict must be so substantial as to overbalance the common interests of the class members as a whole." Fusion Order at 6 (quoting *Polyurethane Foam*, 314 F.R.D. at 238–41). Defendants' speculative conflicts flunk this test.

There is no conflict between Plaintiffs and class members who may have benefitted from Varsity's Family Plan or Varsity's Network Agreement rebate programs. Opp. at 9–10. As an initial matter, Defendants do not explain, demonstrate, or quantify the nature of the purported "benefit" any Plaintiff or class member received. And, even if participation in these programs could be considered a benefit, that does not mean that those who participated in the programs were not also injured by the exclusionary scheme in the form of higher prices or other anticompetitive effects. *See Hanover Shoe, Inc. v. United Shoe Mach. Corp.*, 392 U.S. 481, 489 (1968) (rejecting conflicts arguments where plaintiff may have "benefitted" from the anticompetitive conduct they challenge); *Momenta*, 333 F.R.D. at 404–05 (no conflict where plaintiffs might be reimbursed and some class members may not have been reimbursed); *Polyurethane Foam*, 314 F.R.D. at 237 (rejecting argument that two plaintiffs who received rebates or discounts were not typical of class members who did not receive such rebates or discounts).[9] For the same reasons, there is also no conflict between Plaintiffs who may have received some benefit from bundled discounts and class members who did not. Opp. at 10.[10]

---

[9] Defendants' out-of-circuit cases are distinguishable. Opp. at 10-11. Unlike here, where rebates and discounts are part of the exclusionary conduct alleged, the rebates at issue in *Valley Drug Co. v. Geneva Pharms., Inc.*, 350 F.3d 1181, 1190 (11th Cir. 2003) were limited to the particular characteristics of the pharmaceutical industry. *Id.* at 1192. Here, Defendants have not made a "prima facie showing of potential conflicts within the class" or "demonstrat[ed] that the markets at issue here share any of the unique market characteristics the court in *Valley Drug* found significant to its decision." *In re Air Cargo Shipping Servs. Antitrust Litig.*, 2010 WL 4916723, at *3 (E.D.N.Y., Nov. 24, 2010). In *Digital Music* experts on both sides *agreed* on the evidence that some members benefitted from the alleged price-fixing conspiracy. *In re Digital Music Antitrust Litig.*, 321 F.R.D. 64, 92-3 (S.D.N.Y. 2017). The experts do not agree here.

[10] Defendants allude to *Cascade Health Solutions v. PeaceHealth*, 515 F.3d 883 (9th Cir. 2008). The *PeaceHealth* test evaluates whether bundled discounts are anticompetitive where they result

Nor is there any conflict between Plaintiffs and class members who live in different regions of the United States. Opp. at 9–11. Plaintiffs allege a nationwide exclusionary scheme with anticompetitive effects throughout. ECF No. 1, ¶¶1–31 117. Defendants' own documents show that Varsity's market power is ubiquitous and that Varsity's pricing policies were set at the national level for the relevant products. SSD, ¶6(c). Therefore, all purchasers in the United States would have been injured and would have the same interest in maximizing class-wide damages. *See Cardizem*, 200 F.R.D at 337. Where class members' claims all depend on proving the same alleged anticompetitive conduct by Defendants, resulting in the same injury – paying overcharges, as here – adequacy is satisfied. *See e.g., In re Zetia (Ezetimibe) Antitrust Litig.*, 2020 WL 5778756, \*7 (E.D. Va. Aug. 14, 2020).

***Plaintiffs are sufficiently knowledgeable and committed.*** Plaintiffs are honest and trustworthy and continue to fulfill their responsibilities. SSD, ¶¶8–9. Defendants' personal attacks on Plaintiffs are unwarranted. *See Gooch v. Life Investors Ins. Co. of America*, 672 F.3d 402, 431 (6th Cir. 2012) ("Only when attacks on the credibility of the representative party are so sharp as to jeopardize the interests of absent class members should such attacks render a putative class representative inadequate."). Defendants also seem to wrongly require that Plaintiffs must co-litigate as counsel. Opp. at 2. *See Foundry Resins*, 242 F.R.D. at 407 (class representative must only possess minimal degree of knowledge for adequacy and need not understand the finer points of antitrust law); *In re Catfish Antitrust Litig.*, 826 F.Supp. 1019, 1037 (N.D. Miss. 1993) (to expect class representatives to know what counsel knows after a great deal of discovery and investigation and to be "sophisticated and knowledgeable enough to help counsel in this quest would reduce the class action device, especially in complicated antitrust cases, to an impotent tool"). ██████████████████████████████████████████████████████ ███████████████████████████████ and no court has so found.

─────────────────────

in below cost pricing. *Id.* ██████████████████████████████████████████ ███████████████████████████████████████████ In any event, this is a question for the jury, not class certification.

***Counsel is Adequate.*** Plaintiffs' counsel includes some of the most experienced and qualified antitrust attorneys in the country. *See* ECF Nos. 380, 407.



It is also not Defendants' province to choose Plaintiffs' counsel. *Eggleston v. Chicago Journeyman Plumbers' Local Union No. 130, U.A.*, 657 F.2d 890, 895 (7th Cir. 1981) (defendant's attack on adequacy of counsel "is a bit like permitting a fox, … to take charge of the chicken house").

## E.      RULE 23(B)(3): PREDOMINANCE REQUIREMENT IS SATISFIED

Because of the presence of numerous overwhelming common questions, "[p]redominance is a test readily met in certain cases alleging . . . violations of antitrust laws." Fusion Order at 7 (citing *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 625 (1997); *see also In re Scrap Metal*, 527 F.3d at 535 (quoting *Amchem*, 521 U.S. at 625) (predominance test readily met in certain antitrust cases where plaintiffs allege violations of the antitrust laws and generally "proof of the conspiracy is a common question that is thought to predominate over the other issues of the case...."); *Momenta*, 333 F.R.D. at 407 (internal citations omitted) (same).

Here, all class members' claims hinge on resolving the same primary question – whether Defendants engaged in an exclusionary scheme that violated the antitrust laws, and common evidence will answer this question for all class members. *See* SSD, ¶6(a)–(o). Therefore, where the most important question, which will "drive the resolution" of the litigation, is whether Defendants violated the antitrust laws, that question is clearly and ubiquitously common to the class and ***on its own*** provides "a compelling reason to find that predominance is satisfied overall." *In re Air Cargo Shipping Servs. Antitrust Litig.*, 2014 WL 7882100, at *40 (E.D.N.Y. Oct. 15, 2014) (emphasis added). Further, "common issues may predominate when liability can

be determined on a class-wide basis, even when there are some individualized damage issues." Fusion Order at 7 (quoting *Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 564 (6th Cir. 2007); *Bridging Communities Inc. v. top Flite Fin. Inc.*, 843 F.3d 1119, 1124 (6th Cir. 2016) (plaintiffs need not prove that each element of a claim can be established by class-wide proof; the rule only requires that common questions predominate over any questions affecting only individual class members). None of Defendants' attempts to defeat predominance succeed:

### 1.    Overcharges can be Established by Common Proof

Defendants claim Dr. Heeb's estimated overcharge percentages do not sufficiently account for any lawful conduct by Defendants. Opp. at 16–17. This is not the standard. An expert need not fully disaggregate lawful and unlawful conduct in estimating or calculating overcharges. *See, e.g., In re Broilers*, 2022 WL 1720468, at *10 ("*Comcast* does not impose a requirement to 'disaggregate lawful and unlawful conduct.'"); *Pork*, 2023 WL 2696497, at *10 (rejecting defendants' contention that an expert must disaggregate between lawful and unlawful conduct, and noting this is especially true where expert accounted for lawful factors that could explain price or availability). Rather, the expert's theory of harm must simply match the plaintiff's theory. *Broiler*, 2022 WL 1720468, at *10 (citing *Comcast*, 569 U.S. at 35).[11] Here, Dr. Netz analyzes the anticompetitive conduct using common proof, largely based on business records, admissions and deposition testimony of Defendants and third parties. *See* ECF No. 389-2. Dr. Heeb similarly uses common proof for his analysis (regression analysis, yardstick method, before-and-after method) to estimate overcharges. ECF No. 389-4, ¶¶278-299. In his analysis,

---

[11] The cases cited by Defendants (Opp. at 16-17) miss the point of *Comcast*, which only requires that the methodology employed match the theory of harm alleged. *MCI Commc'ns Corp. v. Am. Tel. & Tel. Co.*, 708 F.2d 1081 (7th Cir. 1983) and *Coleman Motor Co. v. Chrysler Corp.*, 525 F.2d 1338, 1353 (3d Cir. 1975) did not reach the issues of class certification. *Kentucky v. Marathon Petroleum Co. LP*, 464 F.Supp.3d 880, 895-96 (W.D. Ky. 2020) found plaintiff's damages methodology insufficient because it "fail[ed] to establish a relevant market and did not account for procompetitive explanations. Here, Plaintiffs' experts analyzed the full relevant record and account for variables and explanations including any purported procompetitive justifications cited by Defendants' experts. *See* SSD, ¶¶4, 6(a)-(o).

Dr. Heeb accounts for any variables or alternative explanations for Defendants' conduct, including any lawful explanations. *Id.*, ¶¶283, 290 & Attachment 3, Table 26.  ECF No. 389-5, ¶¶11-14, 496-498, 523-576.

Defendants further miss the mark where they argue that overcharges cannot be estimated on a class-wide basis where some gyms or schools received rebates or discounts. Opp. at 17. ECF No. 389-2 at 104–113; SSD, ¶6(g). Such programs are just additional common proof of Defendants' anticompetitive conduct.

### 2. Passthrough can be Established by Common Proof

Antitrust ***injury occurs the moment a purchaser incurs an overcharge***. *Momenta*, 333 F.R.D. at 409 (emphasis added). As the court in *Momenta* explained:

> If a class member is overcharged, there is an injury, even if that class member suffers no damage. [citing *Hawaii v. Standard Oil Co. of Cal.*, 405 U.S. 251, 262 n.14 (1972)] Accordingly, in the hospital channel, the proper focus is on whether the hospital incurred an overcharge in the first instance. Even if individualized inquiry is required to see if the hospitals passed on that overcharge, as Defendants contend, such an inquiry is not necessary to determine if the putative hospital claimant suffered actual antitrust impact, which is all that is required in the predominance inquiry. *Id.*

Courts consistently affirm the method used by Dr. Maki as a reliable method for showing passthrough. *See, e.g., In re Restasis (Cyclosporine Ophthalmic Emulsion) Antitrust Litig.*, 335 F.R.D. 1, 15 (E.D.N.Y. 2020) (affirming reliability of same two-step method used by Dr. Maki to prove class-wide injury in fact); *Castro v. Sanofi*

*Pasteur Inc.*, 134 F.Supp.3d 820, 847–48 (D.N.J. 2015) (same); *see also* Maki Decl., ¶7. ███
███████████████████████████████████████████████████████████████████████████████
█████████████████ *See Comcast Corp. v. Behrend*, 569 U.S. 27, 34 (2013) (at class
certification, plaintiffs must only show that "damages are capable of measurement on a classwide
basis"); *In re Scrap Metal Antitrust Litig.*, 2006 WL 2850453, at *24 (N.D. Ohio, Sept. 30, 2006)
("Sixth Circuit has recognized that Plaintiffs need not establish their damages in a concrete
fashion [at class certification], reasonable estimations are permitted . . ."); *Polyurethane Foam*,
314 F.R.D. at 267 (rejecting Defendants' "extended assault, much of which reads as if it were
written on the understanding that Direct Purchasers must *prove* impact *now*") (emphasis in
original). Dr. Maki's calculations show that "damages are susceptible of measurement across the
entire class for purposes of Rule 23(b)(3)." *Comcast*, 569 U.S. at 35. Nothing more is required.

Defendants argue that calculation of damages passed through to class members will be
too individualized for class treatment where they paid different prices and purchased products
through different methods and channels.[12] Opp. at 18. Sixth Circuit courts (and others)
repeatedly reject this argument. *See, e.g., In re Scrap Metal Antitrust Litig.*, 2004 WL 7340436,
at *9 (N.D. Ohio Mar. 31, 2004) (citing *In re Vitamins Antitrust Litig.*, 209 F.R.D. 251, 264
(D.D.C. 2002)) ("Courts also have certified classes in cases where the industry, pricing structure,
products, and transactions between defendants and their customers are complex, varied,
fragmented, and diverse."); *Polyurethane Foam*, 314 F.R.D. at 293 (certifying class with varied
products and prices, and complicated supply chain); *Foundry Resins*, 242 F.R.D. at 409

---

[12] Defendants' citations to *In re Flash Memory Antitrust Litig.*, 2010 WL 2332081 (N.D. Cal.
June 9, 2010) and *In re Graphics Processing Units Antitrust Litig.*, 253 F.R.D. 478 (N.D. Cal.
2008) are distinguishable. Both involved thousands of different customizable products, each with
its own variation and pricing. *Id.* at 480-81; *Flash*, 2010 WL 2332081, at *11. Here, the relevant
products are "not so variable as flash memory or graphics processing units," and Plaintiffs have
proffered a damages model that accounts for the "small set of variables" in pricing. *In re
Cathode Ray Tube (CRT) Antitrust Litig.*, 2013 WL 5391159, *8 (N.D. Cal., Sept. 24, 2013)
(distinguishing *Flash* and *Graphics*); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 267 F.R.D.
583, 603-04 (N.D. Cal., 2010) (distinguishing *Graphics* and certifying class with many
"variations in products and complexities in a distribution chain").

(certifying class with many different products, prices, and buying mechanisms and rejecting Defendants' argument that damages would be too individualized).[13]

### 3. Plaintiffs can Establish Aggregate Damages by Common Proof

Defendants claim that Plaintiffs cannot show class-wide damages (*e.g.,* aggregate damages) via common proof. Opp. at 19–20.  Dr. Heeb uses widely accepted regression analysis and other reliable methods to estimate damages. *See Broilers*, 2022 WL1720468, at *10 ("If an expert witness uses regression analysis in estimating antitrust damages, one can hardly claim that the methodology is unreliable . . . ") (internal quotation to treatise omitted). Here, Defendants fail to offer their own alternative damage model or perform their own damage calculation. In any event, any dispute as to Dr. Heeb's conclusions are questions of fact for the jury. *See id.* ("Indeed, even challenges to an expert's choice of variables 'is normally a question that goes to the probative weight of the analysis rather than to its admissibility."). And while Plaintiffs' experts provide extensive analysis of the evidence of impact and passthrough, there is no indication that Defendants' experts analyzed any passthrough evidence at all. SSD, ¶11. Maki Decl., ¶3.

Defendants next speculate that Dr. Maki cannot establish passthrough on a class-wide basis because she overstates the sales included in her calculations. Opp. at 20–21.

---

[13] *See also In re Static Random Access Memory (SRAM) Antitrust Litig.*, 264 F.R.D. 603, 614 (N.D. Cal., 2009) (certifying class with many different sales and pricing practices); *TFT-LCD*, 267 F.R.D. at 603-04 (certifying class with many "variations in products and complexities in a distribution chain"); *In re Tableware Antitrust Litig.*, 241 F.R.D. 644 (N.D. Cal. 2007) (certifying class consisting of many products and with great geographic diversity); *In re Domestic Air Transp. Antitrust Litig.*, 137 F.R.D. 677, 699 (N.D. Ga. 1991) (class certified where named plaintiffs' claims stemmed from same legal theory as class claims notwithstanding fact that class purchased tickets at different prices according to different terms).

██████████ SSD, ¶10; Maki Decl., ¶¶3-5. Defendants' arguments fail. *See In re Lidoderm Antitrust Litig.*, 2017 WL 679367, at \*24 (N.D. Cal. Feb. 21, 2017) (rejecting similar over-inclusiveness arguments).[14]

*First*, Defendants argue, without any support, that where gyms and schools made purchases of the relevant products from Varsity, that does not mean that they always charged team members (or class members) for those purchases. Opp. at 20. █████████

*Second*, Defendants argue that some purchases may have been offset by fundraising or other subsidies and, therefore, should not be included. Opp. at 20. Yet, once the fact of damage has occurred, predominance is established, even if some damages may have been reduced or mitigated by other activity or from other sources.[15] *See, e.g., Momenta*, 333 F.R.D. at 409 (quoting *In re Nexium Antitrust Litig.*, 777 F.3d 9, 27 (1st Cir. 2015)) ("[A]ntitrust injury occurs the moment the purchaser incurs an overcharge, whether or not that injury is later offset."); *Cardizem*, 200 F.R.D. at 317 ("Defendants' . . . offsetting benefits arguments relate to the quantum of damages; not the fact of injury."). Even where a purchase may have been completely offset, injury still occurred in the first instance. *Id.* Further, courts do not require plaintiffs to demonstrate proof of impact on each class member for purposes of class certification. *Pork*, 2023

---

[14] █████████████████████████████████

[15] *See In re Disposable Contact Lens Antitrust Litig.*, 329 F.R.D. 336, 419 (M.D. Fla. 2018) ("Whether in some circumstances, a putative Plaintiff's contact lens purchase resulted in no out-of-pocket economic loss … be it from rebates, discounts, insurance payments, or a retailer who affirmatively did overruled the UPP requirement and priced below it – does not defeat class certification."); *In re Delta/AirTran Baggage Fee Antitrust Litig.*, 317 F.R.D. 675, 687 (N.D. Ga. 2016) ("Whether any class members were reimbursed for any part of a baggage fee – i.e., whether they were able to pass on some portion of the alleged antitrust overcharge – is legally irrelevant and therefore will not lead to a situation in which individual questions of antitrust injury will dominate over common ones.").

WL 2696497, at *21.

   ***Third***, Defendants incorrectly argue that some class members are direct purchasers where

they purchased products in the relevant markets but the gym or school itself only acted as a

middleman. Opp. at 20–21. *See, e.g., Lidoderm*, 2017 WL 679367, at *1 (rejecting Defendants'

argument that complex distribution chain would swamp ability to show injury or damages).

   ***Fourth***, Defendants claim that some schools may have only attended a competition or a

camp, but not both. Opp. at 21. ███████████████████████████████████████████

████████████████████   The claims administration process will verify which purchases occurred

and will provide a way to calculate and distribute payments accordingly. *See* Appendix D.

   In sum, to the extent Defendants contest which sales are included, this is a question for a

summary judgment or trial. ████████████████████████████████████████████

████████████████████████████████████████   SSD, ¶10. And, as the Supreme

Court and Sixth Circuit courts have held, the possibility of uninjured class members does not

defeat predominance. *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 1049–50 (2016); *In re

Whirlpool Corp. Front-Loading Washer Prod. Liab. Litig.*, 678 F.3d 409, 420 (6th Cir. 2012).

### 4.    State Law Variations are Manageable

   Courts routinely certify classes where indirect purchasers bring claims under the antitrust

laws of multiple states.[16] One reason is that most state antitrust statutes mirror the federal

antitrust laws and contain a federal harmonization provision. *See, e.g., Restasis*, 335 F.R.D. at

33; *Broilers*, 2022 WL 1720468, at *20 ("any state where the unjust enrichment claim is the

primary basis for recovery will be satisfied by proof of a Sherman Act violation"). Trial in this

case will focus on the elements of a federal antitrust claim – showing that there was an

exclusionary scheme, and the impact of that scheme on all class members – a showing that will

---

[16] *See, e.g., Xyrem*, 2023 WL 3440399, at 10-12 (31 states); *Momenta*, 333 F.R.D. at 413-14 (30 states); *Polyurethane Foam*, 314 F.R.D. at 231, 292 (29 states and D.C.); *Restasis (Cyclosporine Ophthalmic Emulsion) Antitrust Litig.*, 335 F.R.D. at 32-33 (31 states and D.C.); *Nexium*, 777 F.3d at 14 (24 states and D.C.); *Lidoderm*, 2017 WL 679367, at *27 (17 states); *Solodyn*, 2017 WL 4621777, at *19 (50 claims under the laws of 39 different jurisdictions).

"drive the resolution" of all state law claims. *See Wal-Mart*, 564 U.S. at 350; *Solodyn*, 2017 WL 4621777, at *20 ("proof of anticompetitive conduct establishes a violation of each's state's laws."). "When common questions of fact and law otherwise predominate, courts rarely deny certification simply because the class spans many states and asserts state-law claims." *Polyurethane Foam*, 314 F.R.D. at 292; *see also Pork*, 2023 WL 2696497, at *27 (finding variations in states' antitrust, consumer protection and unjust enrichment laws immaterial and did not "swamp any common issues").

State consumer protection statutes also model federal law.[17] Any differences in state consumer protection statutes outside of the general overlap can be managed. *See, e.g., Restasis*, 335 F.R.D. at 32–33 (certifying class where plaintiffs provided comparison charts and sample trial plan).[18] Here, Plaintiffs demonstrate how any variations in state law can be managed for trial. *See* Appendices A-D. Managing differences should also be balanced against the alternative:

> A national class action under state laws with similar standards is superior to the other option: dividing up this monster case, certifying thirty-plus separate class actions and forcing the same … plaintiffs, defendants, expert and fact witnesses and multiple courts to try this case over thirty times in states that have substantially similar standards. A national class action will save substantial judicial and party resources. In my view, it is desirable to concentrate the litigation of these claims in one forum.

*Polyurethane Foam*, 314 F.R.D. at 292 (internal citation omitted).[19] The differences cited by

---

[17] State consumer protection laws are generally modeled after the Federal Trade Commission Act or the Uniform Deceptive Trade Practices Act and/or the Uniform Consumer Sales Practices Act. *See In re Relafen Antitrust Litig.*, 221 F.R.D. 260, 278 (D. Mass. 2004).

[18] In addition, state laws can be addressed in clusters. *See, e.g., Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 302 (3d Cir. 2011); *Klay v. Humana, Inc.*, 382 F.3d 1241, 1262 (11th Cir. 2004). And most of the issues Defendants raise would be common for all class members within particular states. *See* Appendix A.

[19] Unlike here, the cases cited by Defendants did not provide analysis of state law differences, let alone a plan to address them as Plaintiffs do here in Appendices A-D. *See Skelaxin*, 299 F.R.D. at 589 (plaintiffs "made no attempt to … engage in an extensive conflict-of-law analysis"); *In re Domestic Drywall Antitrust Litigation*, 2017 WL 3700999, at *15 (E.D. Pa. Aug. 24, 2017) (plaintiffs' analysis was "overly-simple" and did not "engage with any potential differences"); *In re Processed Egg Prod. Antitrust Litig.*, 312 F.R.D. 124, 164 (E.D. Pa. 2015) (plaintiffs asked the court to assume "their evidence [would] be so overwhelming that any differences … [would]

Defendants are immaterial:

   ***Unilateral conduct:*** Defendants argue that some states do not provide a cause of action for "unilateral" conduct. Opp. at 22–23. Class certification is not the proper time for such an argument. *See* Fed. R. Civ. P. 12(b)(6), (h)(2) (failure to state a claim can be raised only in a motion to dismiss or for judgment on the pleadings, in a complaint or answer, or at trial). Whether a state does not have a unilateral conduct claim has little relevance where Plaintiffs allege concerted action. Plaintiffs will use pattern jury instructions to address common questions. To the extent there are differences in state law, these can be addressed through special verdict forms like those provided here at Appendix B. *See, e.g., Pork*, 2023 WL 2696497, at *27.

   ***In-State Transactions:*** It is immaterial that Mississippi's antitrust law requires Plaintiffs to allege that a monopoly was "accomplished in part at least by transactions lying wholly within the state." Opp. at 23. *See, e.g., Broilers*, 2022 WL 1720468, at *20 (finding it irrelevant that defendants pointed out variances that some states require intrastate activity in addition to interstate activity where purchases occurred throughout the United States). Here, the evidence shows that Defendants' anticompetitive scheme was directed at all purchasers nationwide. SSD, ¶¶6(b)-(j). It is well settled that nationwide antitrust allegations satisfy "intrastate" statutory requirements. *See In re Cardizem CD Antitrust Litig.*, 105 F.Supp.2d 618, 665–70 (E.D. Mich. 2000); *In re Aggrenox Antitrust Litig.*, 94 F.Supp.3d 224, 253 (D. Conn. 2015).

   ***Absence of private antitrust cause of action:*** That certain state antitrust laws do not provide a private right of action does not make the claims unmanageable. Opp. at 23 & fn. 11.[20]

---

pale in the process"); *Digital Music*, 321 F.R.D. at 99-100 (plaintiffs' arguments were "cursory" and amounted to "conclusory speculation," such that the court had "no basis to determine how the state law variances … would be managed").

[20] Defendants cite *Pilgrim v. Universal Health Card, LLC*, 660 F.3d 943 (6th Cir. 2011), which involved claims of deceptive advertising where ads were different in every state and the court found no common questions. *Id.* at 946-48. By contrast, Plaintiffs here allege a nationwide exclusionary scheme and many common questions exist. *See Broilers*, 2022 WL 1720468, at *20 (where nationwide price-fixing is alleged, "differences in consumer protection laws concerning reliance and intent are simply not relevant."); *see also Schumacher v. State Auto. Mut. Ins. Co.*, 47 F. Supp. 3d 618, 627 n. 11 (S.D. Ohio 2014) (distinguishing *Pilgrim* on the grounds that

Courts have repeatedly rejected this argument and find claims can be litigated under state consumer laws.[21]

   ***State-specific damage provisions:*** Defendants cite state-specific standards for damages to wrongly portray Plaintiffs' claims are unmanageable. Opp. at 23–24 & fn.12. It is well settled that potential differences in states' treatment of damages do not preclude predominance or class certification. *See, e.g., Polyurethane Foam,* 2015 WL 4459636, at *4 (N.D. Ohio Jul. 21, 2015) (differences in remedies available do not warrant decertification)*; Lidoderm*, 2017 WL 679367, at *27 (difference in the standards for impact and treble damages "do not appear to be material or even significant"). A heightened pleading standard in a state also does not weigh against class certification.[22] *See Restasis*, 335 F.R.D. at 38 (questions of individual state liability and damages did not cause individual issues to predominate or render the class unmanageable).

   ***Federal antitrust precedent:*** It is immaterial to the predominance inquiry that some states may or may not follow federal antitrust precedent. Opp. at 24 & fn.14. Defendants fail to show how variations in state law would make Plaintiffs' claims unmanageable. Any differences can be addressed through carefully crafted special verdict forms or verdict sheets. *See* Appendices A and B.

   ***Differences in limitations periods:*** That some states may have different limitations periods is also no barrier to manageability. Opp. at 24 & n. 15. *See, e.g., Broilers*, 2022 WL 1720468, at *20 (holding that "this is only relevant to the extent of damages and can be easily addressed by excluding sales outside the relevant periods"); *Waste Mgmt. Holdings, Inc. v.*

---

defendants' conduct "operate[d] in the same way in every state").

[21] For example, the Arkansas Deceptive Trade Practices Act ("ADTPA") encompasses price fixing claims and permits plaintiffs to bring such claims under the ADPTA where there is no private cause of action under the Arkansas antitrust statute. *See In re Cast Iron Soil Pipe and Fittings Antitrust Litig.*, 2015 WL 5166014 at *28 (E.D. Tenn. Jun. 24, 2015) (internal citations omitted) (allowing claims under ADPTA).

[22] Defendants cite *Digital Music*, 321 F.R.D. at 99-100. While that case noted a heightened standard under Arizona and Michigan consumer protection laws, it did not deny certification on that basis; certification was denied where plaintiffs did not provide a plan to address those differences (*id.*), as Plaintiffs do here. *See* Appendices A-D.

*Mowbray*, 208 F.3d 288, 296 (1st Cir. 2000) (acknowledging limitations differences but finding them "to be inconsequential").

    ***Continuing violations:*** It is immaterial that Florida and the District of Columbia do not recognize "continuing violations" and that such a claim is "unsettled" in Tennessee. Opp. at 28–29. This is a matter for summary judgment and only highlights that common questions of fact and law exist. In any event, Plaintiffs bring their injunctive relief claim entirely under federal law.[23]

    ***Different procedural requirements:*** The fact that some states, such as Hawaii, may impose their own procedural requirements is also unpersuasive. Opp. at 24 & fn.17. *See* Section II.A, *supra* at 2-3 (discussing *Shady Grove*). Rule 23 applies where no substantive right is affected and where the REA is not violated. *Id; see also*, *e.g.*, *Restasis*, 335 F.R.D. at 39 (rejecting same argument as to Hawaii).

    **5.    Determining Impact and Damages does not Require Mini-Trials**

    Plaintiffs are entitled to prove their damages through proof of aggregate damages. *See, e.g., Scrap Metal*, 527 F.3d at 535; *Bigelow v. RKO Radio Pictures, Inc.*, 327 U.S. 251, 264 (1946). And Courts routinely reject arguments that a plaintiff's ability to demonstrate only aggregate damages means that thousands of mini-trials are needed. *In re Polyurethane Foam Antitrust Litig.*, 2015 WL 4459636, at *8 (N.D. Ohio July 21, 2015); *In re Scrap Metal Antitrust Litig.*, 2006 WL 2850453, at *24; *see also Broilers*, 2022 WL 1720468, at *19 (finding it much more efficient to have a single trial on the alleged conspiracy rather than thousands of identical trials all alleging identical conspiracies based on identical evidence); *Zetia*, 2020 WL 5778756, at *8 (rejecting mini-trials argument).[24] If Defendants dispute the overcharge percentages or

---

[23] Moreover, Plaintiffs' "injunctive relief claim, as a claim in equity, [is] not governed by the statute of limitations and [is] instead governed by the doctrine of laches." *In re Pre-Filled Propane Tank Antitrust Litig.*, 2019 WL 4796528, at *1 (W.D. Mo. Aug. 21, 2019).

[24] "The most elementary conceptions of justice and public policy require that the wrongdoer shall bear the risk of the uncertainty which his own wrong has created." *Bigelow*, 327 U.S. at 265. "The antitrust cases are legion which reiterate the proposition that, if the fact of damages is proven, the actual computation of damages may suffer from minor imperfections." *South-East*

passthrough rates presented, they will have an opportunity to contest those facts at summary judgment and trial. *Polyurethane Foam*, 2015 WL 4459636, at *8. If any sales are excluded, overcharge rates can be applied to those that remain, yielding each class member's recovery. *Id.* A well-designed claims process will ensure each class member receives damage payments as appropriate. *Id.*; *see* Appendix D.

## F.   THE INJUNCTIVE RELIEF CLASS MERITS CLASS CERTIFICATION

Plaintiffs allege ongoing harm and the threat of future injury to all class members. SSD, ¶6(n). There is no evidence that Defendants have changed any of the anticompetitive conduct alleged. Therefore, the standards for certification of an injunctive relief class under Rule 23(b)(3) are met. *See, e.g., TFT-LCD*, 267 F.R.D. at 596–97 (certifying nationwide indirect purchaser injunctive relief class where plaintiffs alleged ongoing harm and there was no indication that the harm stopped at the end of the alleged class period); *SRAM*, 264 F.R.D. at 610–11 (certifying indirect purchaser injunctive relief class where plaintiffs alleged Defendants' conspiracy continued); *In re Packaged Ice Antitrust Litig.*, 322 F.R.D. 276, 287–88 (E.D. Mich. 2017) (certifying injunctive relief class where injunctive relief was likely to benefit class as whole); *Cardizem*, 200 F.R.D. at 351 (certifying injunctive relief class and state classes is more manageable than having multiple lawsuits brought by thousands of consumers in many different states, burdening the court system); *Xyrem*, 2023 WL 3440399, at *10–12 (certifying injunctive relief claims involving 31 states).

## III.   CONCLUSION

For the foregoing reasons, the Court should grant Plaintiffs' Motion.

---

*Coal Co. v. Consol. Coal Co.*, 434 F.2d 767, 794 (6th Cir. 1970). Predominance also does not require "bean counting." *See Air Cargo*, 2014 WL 7882100, at *35 (noting that predominance is qualitative and not simply mathematical accounting of whether common or individualized questions are more numerous). A predominance analysis must ask if it would "achieve economies of time, effort, and expense, and promote … uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Amchem*, 521 U.S. at 615.

Dated: May 25, 2023

Respectfully submitted,

By:      /s/ Joseph R. Saveri
                Joseph R. Saveri

Joseph R. Saveri*
Steven N. Williams*
Ronnie Seidel Spiegel*+
Kevin E. Rayhill*
Elissa A. Buchanan*
David Seidel*
JOSEPH SAVERI LAW FIRM, LLP
601 California Street, Suite 1000
San Francisco, California 94108
Telephone: (415) 500-6800
Facsimile: (415) 395-9940
jsaveri@saverilawfirm.com
swilliams@saverilawfirm.com
rspiegel@saverilawfirm.com
krayhill@saverilawfirm.com
eabuchanan@saverilawfirm.com
dseidel@saverilawfirm.com

Van Turner Jr. (TN Bar No. 22603)
TURNER FEILD, PLLC
2650 Thousand Oaks Blvd., Suite 2325
Memphis, Tennessee 38118
Telephone: (901) 290-6610
Facsimile: (901) 290-6611
vturner@turnerfeildlaw.com

Richard M. Paul III*
Ashlea Schwarz*
PAUL LLP
601 Walnut, Suite 300
Kansas City, Missouri 64106
Telephone: (816) 984-8100
rick@paulllp.com
ashlea@paulllp.com

Jason S. Hartley*
HARTLEY LLP
101 West Broadway, Suite 820

San Diego, CA 92101
Telephone: (619) 400-5822
hartley@hartleyllp.com

Daniel E. Gustafson*
Daniel C. Hedlund*
Daniel J. Nordin*  GUSTAFSON
GLUEK PLLC  Canadian Pacific
Plaza
120 South Sixth Street, Suite 2600
Minneapolis, MN 55402
Telephone: (612) 333-8844
Facsimile: (612) 339-6622
dgustafson@gustafsongluek.com
dhedlund@gustafsongluek.com
dnordin@gustafsongluek.com

* Admitted *pro hac vice*

+Located in Washington State

*Attorneys for Individual and
Representative Plaintiffs*