# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE
# WESTERN DIVISION

| | |
|---|---|
| **JESSICA JONES, et al.,**<br><br>Plaintiffs,<br><br>v.<br><br>**VARSITY BRANDS, LLC, et al.,**<br><br>Defendants. | Case No. 2:20-cv-02892-SHL-tmp<br><br><br><br>**JURY DEMAND** |

### INDIRECT PURCHASER PLAINTIFFS' [PROPOSED] TRIAL PLAN

## I.  INTRODUCTION

Indirect Purchaser Plaintiffs ("IPPs") have moved the Court for class certification of three proposed classes.[1] IPPs bring claims on behalf of all those who purchased cheer competitions, cheer camps, and cheer apparel during the relevant time period, as defined in Plaintiffs' Motion for Class Certification, ECF No. 387. IPPs submit this proposed Trial Plan outlining how they intend to prosecute the antitrust, consumer protection, and unjust enrichment claims of the proposed classes at trial against Defendants.[2]

IPPs propose a two-phase trial for establishing Defendants' liability and the damages

---

[1] An injunctive relief class under the federal antitrust laws; a damages class applying Tennessee law nationwide (where Defendant is headquartered); and a state law damages class alleging violations of state antitrust and consumer protection laws that follow federal interpretation. ECF No. 387 (Motion for Class Certification).

[2] Defendants are Varsity Brands, LLC; Varsity Spirit, LLC; Varsity Spirit Fashion & Supplies, LLC (collectively "Varsity"); U.S. All Star Federation, Inc. ("USASF"); Jeff Webb; Charlesbank Capital Partners LLC ("Charlesbank"); and Bain Capital Private Equity ("Bain") (together with Varsity, USASF, Jeff Webb, and Charlesbank, "Defendants").

owed to the IPPs. In Phase I, IPPs will present to the jury evidence common to all IPPs concerning Defendants' antitrust and consumer fraud violations. Assuming liability is established in Phase I, the jury will determine in Phase II: (1) whether injunctive relief is warranted under federal antitrust law for the Injunctive Relief Class; and (2) the amount of aggregate damages owed by Defendants' to IPPs. After trial, damages will be apportioned to individual members of the State Law and Nationwide Damages classes (together "Damages Classes") based on the amount of each claimant's actual purchases as determined through the claims administration process. Similar trial plans have been approved by number of courts in similar indirect purchaser cases.

## II.   DETAILS OF TRIAL PLAN

A.   **PHASE I: Proof of Liability with Common Evidence**

In Phase I, a single jury will hear common evidence on the core common issues that, once proven, will establish Defendants' violation of the antitrust laws and consumer protection laws under which IPPs have brought their claims. Because the state antitrust statutes are harmonized and interpreted in conformity with federal antitrust law, and because the same alleged conduct underlying those violations serves as the basis of state consumer protection violations, the claims of all three proposed classes can be prosecuted in a single trial.  The same common evidence will also be used to establish the IPPs' unjust enrichment claims.

Phase I will include:

1.   **Preliminary Instructions to the Jury**

At the commencement of Phase I, jurors will be provided with a summary of the key factual and legal issues that will be at issue during the trial. MANUAL FOR COMPLEX LITIGATION (FOURTH), § 12.432 (2004). Although the final instructions given to the jurors at the end of each phase will govern the jurors' deliberations, these preliminary instructions will

orient the jurors to the evidence they will see and hear throughout the trial.

### 2.   Opening Statements

The parties will present opening statements regarding the core liability issues that are common to all class members' claims.

### 3.   Presentation of Evidence of Antitrust Violations

Plaintiffs will offer common evidence proving that Varsity implemented a multifaceted scheme to monopolize the relevant product markets (Cheer Competitions, Cheer Camps, and Cheer Apparel). Plaintiffs' evidence will demonstrate, among other things:

- The relevant product and geographic;

- Varsity had market power in the relevant product markets throughout the alleged relevant time period;

- Defendants willfully engaged in an exclusionary scheme; to further Varsity's monopolies in the relevant product markets;

- Defendants' exclusionary scheme and anticompetitive conduct resulted in supra-competitive prices in the relevant product markets;

- Defendants' conduct is ongoing; and

- Defendants' exclusionary scheme harmed all purchasers in the relevant product markets.

All the evidence Plaintiffs will present to prove these elements of their antitrust claims will be common to all Plaintiffs and putative Class Members, including Defendants' documents and internal communications, publicly available documents, orders and evidence presented in related litigation, Defendants' testimony, testimony from third parties, and expert testimony.

The same common evidence will be used to prove IPPs' consumer protection and unjust enrichment claims.

4. **Closing Arguments**

The Parties will present closing arguments summarizing the evidence presented throughout trial and the main issues the jury will be asked to decide.

5. **Final Instructions and Special Verdict Forms**

Jurors will be provided with common jury instructions, as well as special verdict forms to address any instructions that may pertain to state issues. Plaintiffs propose the Court use model or form instructions approved by circuit courts. Any state issues can likely be grouped as they focus on the same common principles. Jurors can then make factual findings applicable to all proposed classes, by answering questions on the common set of instructions as well as on any needed special verdict forms. The special verdict forms will also ask a small number of questions concerning the elements of IPPs consumer protection claims that are not already encompassed by the IPPs' antitrust claims.

The following questions will likely be included on the special verdict forms:

1. Are the markets for cheer competitions, camps and/or apparel valid antitrust product markets?
2. Did Defendants wrongfully engage in a concerted anticompetitive scheme to restrain trade in those markets?
3. Did Defendants' scheme result in artificially inflated prices in those markets?
4. Were Plaintiffs injured in their business or property because of Defendants' anticompetitive conduct?
5. Did Defendants possess monopoly power in the relevant product markets?
6. Did Defendants willfully acquire or maintain monopoly power in the relevant markets by engaging in anticompetitive conduct?
7. Were Plaintiffs injured in their business or property because of Defendants' anticompetitive conduct?
8. Was the conduct that you found to violate the antitrust law(s) flagrant?
9. Was the conduct that you found to violate the antitrust law(s) willful?
10. Did the Defendants act knowingly in their conduct?

11. Was Defendants' conduct unfair?

12. Was Defendants' conduct deceptive?

13. Was Defendants' conduct unconscionable?

14. Would it be inequitable (unjust) for Defendants to keep the benefits that they obtained through their violation of the antitrust law(s) that you found?

**B.     PHASE II: Proof of Impact and Damages**

Based on the jury's answers to the special verdict questions in Phase I, the Court will determine under which states' laws Plaintiffs have established liability. In Phase II, jurors will be provided with the liability findings form Phase I. IPPs will then present class-wide proof of impact and aggregate damages for purchases in the relevant product markets in each of the states in which liability was established in Phase I. Phase II will include:

**1.     Opening Statements**

The parties will present opening statements regarding their methodologies for determining classwide impact on the Damages Classes and aggregate damages for the damages classes.

**2.     Presentation of Evidence Regarding Impact and Aggregate Damages**

*IMPACT:* IPPs will prove Defendants' exclusionary scheme impacted the IPPs by foreclosing competition, creating artificial barriers for rivals to enter the relevant markets, and then using Varsity's monopoly power to extract supra-competitive prices from IPPs. Plaintiffs evidence will demonstrate:

- IPPs paid significantly more for products in the relevant markets than they would have paid but for Defendants' anticompetitive conduct and exclusionary scheme;

- Defendants' exclusionary scheme successfully foreclosed competition through anticompetitive means, including raising artificial barriers to entry into the relevant product markets; and

- Defendants' exclusionary scheme was aimed at and impacted all purchasers of products in the relevant markets nationwide in the United States.

*DAMAGES:* IPPs will prove via documents, data and testimony, as well as through expert analysis the aggregate amount of class-wide damages. For example, IPPs' evidence will demonstrate:

- The price of Varsity Cheer Competition products that would have prevailed in the absence of Defendants' exclusionary scheme;

- The price of Varsity Cheer Apparel products that would have prevailed in the absence of Defendants' exclusionary scheme;

- The price of Varsity Cheer Camp products that would have prevailed in the absence of Defendants' exclusionary scheme;

- The aggregate amount of purchases by the IPPs in the relevant markets; and

- The pass-through rate of the supercompetitive overcharges to the IPPs.

All of the evidence the IPPs will present to prove impact and damages will come from sources common to all IPPs, including Defendants' own documents and data, data and other information from third-party sources, Defendant and third-party testimony, and expert testimony.

### 3. Closing Arguments

The parties will present closing arguments regarding the IPPs' methodologies for demonstrating impact on the IPPs and for measuring aggregate damages incurred by the Damages Classes.

### 4. Final Instructions and Special Verdict Forms

Jurors will be provided common jury instructions and special verdict forms in which they will provide the aggregate damages incurred by the Damages Classes. The following questions will likely be included on the special verdict forms:

1. Given Phase I findings, did Class Members pay some amount more for Varsity Cheer Competitions than they would have in the absence of Varsity's scheme ?

2. Given Phase I findings, did Class Members pay some amount more for Varsity Cheer Apparel than they would have paid in the absence of Defendants' scheme?

    3.    Given Phase I findings, did Class Members pay some amount more for Varsity Cheer Camps than they would have paid in the absence of Defendants' scheme?

In post-trial proceedings, the IPPs will present a proposed per state allocation of the aggregate damages awarded by the jury. Based on the Court's findings and application of multiple damages as allowed by law,[3] the Court will enter judgment on final damages.

### C. Individual Damages Allocation

Aggregate damages awarded by the jury during Phase II will be allocated through an administrative process and the submission of claims forms. The allocation of damages will not involve any issues related to Defendants' liability, but rather will only address issues that are internal to the IPPs and the Classes.

After the conclusion of Phase II, IPPs will submit a Claims Administration Protocol. The Protocol will request that Damages Class members submit information to verify their purchases in the three relevant product markets during the Class Period. IPPs may recommend the appointment of allocation counsel or other designees charged with reviewing the forms and information submitted by Damages Class members and resolving any individualized damages issues. IPPs will then submit an itemized report to the Court that recommends a specific damages allocation among Damages Class members. IPPs will have the opportunity to contest or comment upon the allocation recommendation prior to the Court entering final judgment.

### III. THE COURT MAY MODIFY THE TRIAL PLAN AS NEEDED

IPPs will be prepared to address any case management concerns the Court may have as they arise. To the extent events occur during the course of the litigation or trial that would require modification of the Trial Plan, the Court is authorized to implement management strategies tailored to the particularities of the case. In addition to modifying class definitions and issuing class-wide rulings, district courts can, for example, bifurcate the proceedings to focus on threshold class-wide inquiries; sever claims not properly adjudicated on a class-wide basis to

---

[3] Where applicable based on the jury's findings of "flagrant" or "willful" conduct.

isolate key common issues; or, certify subclasses that separate class members into smaller, more homogenous groups defined by common legal or factual questions. *In re Petrobras Sec.*, 862 F.3d 250, 274 (2d Cir. 2017); *see also In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 141 (2d Cir. 2001) ("There are a number of management tools available to a district court to address any individualized damages issues that might arise in a class action, including: (1) bifurcating liability and damage trials with the same or different juries; (2) appointing a magistrate judge or special master to preside over individual damages proceedings; (3) decertifying the class after the liability trial and providing notice to class members concerning how they may proceed to prove damages; (4) creating subclasses; or (5) altering or amending the class.") (citations omitted). Importantly, "these options need not necessarily be exercised or even planned for prior to class certification . . . " *Petrobras,* 862 F.3d at 274. IPPs also reserve the right to suggest changes to this Trial Plan in advance of trial as may become necessary

## IV.   CONCLUSION

IPPs' proposed Trial Plan will allow for the efficient trial and resolution of all Class Members' claims.