# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
## WESTERN DIVISION

JESSICA JONES and CHRISTINA
LORENZEN on Behalf of Themselves and
All Others Similarly Situated,

     Plaintiffs,

v.

VARSITY BRANDS, LLC, et al.,

    Defendants.

No. 2:20-cv-02892-SHL-tmp

---

## ORDER GRANTING INDIRECT PURCHASERS' MOTION TO RECONSIDER AND GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO STRIKE

Before the Court are two motions.  First is Defendants Varsity Brands, LLC; Varsity Spirit, LLC; Varsity Spirit Fashions & Supplies, LLC; U.S. All Star Federation; Charlesbank Capital Partners, LLC, Bain Capital Private Equity, LP; and Jeff Webb's (together, "Defendants") combined Motion to Strike Class Allegations, (ECF No. 55), and Memorandum of Law in Support, (ECF No. 56), filed March 12, 2021, Plaintiffs Jessica Jones and Christina Lorenzen's (together, "Indirect Purchasers") Response, (ECF No. 70), filed April 15, 2021, and Defendants' Reply, (ECF No. 76), filed April 29, 2021.  Second is the Indirect Purchasers' Motion to Reconsider Order Granting in Part and Denying in Part Defendants' Motion to Dismiss, (ECF No. 335), filed August 12, 2022, Defendants' Response, (ECF No. 345), filed August 26, 2022, and the Indirect Purchasers' Reply, (ECF No. 348), filed September 1, 2022. The Court held oral argument on both Motions on April 24, 2023.  (ECF No. 440.)

As described below, the Court **DENIES** Defendants' Motion to Strike the Indirect Purchasers' allegations supporting the Injunctive Relief Class.  As for the Nationwide Damages

Class and/or State Law Damages Class, as well the Indirect Purchasers' Motion to Reconsider, the Court:

- **GRANTS** Indirect Purchasers Motion to Reconsider the Tennessee Trade Practices Act ("TTPA") and Tennessee Consumer Protection Act ("TCPA") claims;

- upon reconsideration, **DISMISSES** Indirect Purchasers' TTPA claims relating to the Cheer Camp and Competition markets;

- **DENIES** Defendants' Motion to Strike as to class-based claims asserted under the consumer protection laws of Tennessee;

- **GRANTS** Defendants' Motion to Strike the Nationwide Damages Class proceeding under the TTPA; and

- **DENIES** Defendants' Motion to Strike the Statewide Damages Class due to predominance and manageability deficiencies.

## BACKGROUND[1]

Varsity[2] is a prominent host of competitive cheerleading competitions and camps.  The company advanced the modern style of cheer, in which the athletes performing cheer routines are

---

[1] The "facts" included in this section are based on the Indirect Purchasers' Complaint, (ECF No. 1), assumed to be true for the purposes of this Order.  The Court considers only the facts necessary to resolve this Motion, as the full facts were laid out in the Court's prior order Granting Defendants' Motions to Dismiss in Part and Denying in Part.  (See ECF No. 333 at PageID 7202-07.)

[2] The Indirect Purchasers define "Varsity" as the collective term to represent Varsity Brands, LLC, Varsity Spirit, LLC, and Varsity Fashion & Supplies, LLC.  (ECF No. 1 at PageID 4.)

the "main event" – requiring year-round training and summer camps for athletes to maintain their strength, flexibility, coordination and teamwork.  (ECF No. 1 at PageID 14.)

Plaintiffs Jessica Jones and Christina Lorenzen are the parents of Competitive Cheer Athletes who were members of either All-Star Gym teams or school cheer teams.  (Id. at PageID 6.)  They allege that they paid artificially inflated prices for goods and services, including enrollment in cheer competitions and apparel purchased indirectly from Varsity, and seek to represent a class of all indirect purchasers of Varsity products and all entrants into Varsity or All-Star Cheer Competitions.  (Id.)  Ms. Jones is a citizen and resident of Kansas, and Ms. Lorenzen is a citizen and resident of Colorado.  (Id. at PageID 6-7.)

In their Complaint, the Indirect Purchasers allege that Defendants engaged in an exclusionary scheme in three markets by: (1) creating a system of bids[3] for admission to national tournaments as a means to funnel athletes to their own local and regional tournaments, thereby preventing rivals from entering the industry; (2) creating and enforcing restrictive rules that favor Varsity and deny competitors a "foothold" in the industry; (3) using exclusive agreements with gyms and schools to limit access to the relevant markets; (4) limiting access to the Cheer Apparel and Cheer Camp markets by using its monopoly power; and (5) counter-programming rival competitions to deprive them of revenue streams.  (Id. at PageID 29-38.)  The Indirect Purchasers allege that Defendants' exclusionary schemes violate Sections 1, 2, and 3 of the Sherman Act, 15 U.S.C. §§ 1-3, and seek injunctive and declaratory relief for these violations. (ECF No. 1.)  They also allege that Defendants violated the antitrust and consumer protection

---

[3] The "Bid system" operates under rules "agreed to by Varsity and USASF," where Cheer teams must secure a Varsity Bid to attend "most of Varsity or USASF's Championship competitions."  (ECF No. 1 at PageID 29.)  Teams secure bids by attending and winning Varsity-owned and operated competitions.  (Id.)

laws of 31 states, and, alternatively, that Defendants benefitted from higher profits resulting from the Indirect Purchasers' overpayments to them and should be compelled to disgorge all proceeds that they unjustly derived from their anticompetitive scheme.  (Id. at PageID 56-59.)

Plaintiffs pursue these claims on a class-wide basis, proposing three classes, with one of the three proposed in the alternative.  (Id. at PageID 10-11.)  First, the Injunctive Relief Class, consists of all persons and entities in the United States that indirectly paid Varsity or any subsidiary or affiliate thereof from December, 10, 2016, until the end of the alleged exclusionary scheme for: (1) registration and other entry fees to Varsity Cheer Competitions and fees to the USASF, (2) apparel, (3) camp fees, or (4) accommodations at one or more cheer competitions. (Id.)  Second, the Nationwide Damages Class bears the same class definition as the Injunctive Relief Class but seeks damages for violations of the TTPA, Tenn. Code Ann. §§ 47-25-101, et seq., for all class members.  (Id.)  Last, the State Law Damages Class, identical to the Nationwide Damages Class in most respects, seeks damages for violations of each class member's respective state's antitrust and consumer protection laws, should the Indirect Purchasers be unable to certify the second class.[4]  (Id.)

---

[4] Class members come from 35 states, including:  Alaska, Arizona, Arkansas, California, Colorado, Connecticut, the District of Columbia, Florida, Hawaii, Idaho, Illinois, Iowa, Kansas, Maine, Massachusetts, Maryland, Michigan, Minnesota, Mississippi, Missouri, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, North Dakota, Oregon, Rhode Island, South Dakota, Tennessee, Utah, Vermont, Washington, West Virginia, and Wisconsin.  (Id.)

The Indirect Purchasers filed their Complaint on December 10, 2020.  (ECF No. 1.)
Defendants filed their combined Motion to Strike, as well as individual Motions to Dismiss[5] on
March 12, 2021.  (ECF Nos. 55, 57, 58, 59 & 60.)  The Court previously ruled on Defendants'
Motions to Dismiss which largely addressed alleged substantive infirmities in the Indirect
Purchasers' arguments.  (ECF No. 333.)  The Indirect Purchasers seek reconsideration of several
of the Court's rulings on Defendants' Motions to Dismiss.  (ECF No. 335.)

In the Motion to Strike, Defendants seek to strike the Indirect Purchasers' class
allegations.  They contend that the proposed classes cannot be certified because internal class
conflicts between class members (1) make it impossible for the representative parties' claims to
satisfy the typicality requirement; and (2) undermine their ability to adequately represent the
interests of the class.  For the same reasons, they argue that many class members do not have
standing.  According to Defendants, these internal conflicts between class members also prevent
them from seeking injunctive relief by means of the Injunctive Relief Class.  Finally, Defendants

---

[5] Defendants' Motions to Dismiss were independent to the extent that each defendant
filed a different Motion to Dismiss.  The Motions themselves overlapped significantly, and also
incorporated by reference certain parts of other Defendants' Motions in an obtuse and confusing
manner.  The relevant instances of incorporation by reference within the Motions to Dismiss
were: USASF's incorporation of all of Webb and Varsity's arguments in their Motions, and the
Motion to Strike, (ECF No. 57 at PageID 264), Webb's incorporation of Section III.A of
Varsity's Motion arguing that Plaintiffs failed to allege an antitrust violation, (ECF No. 58 at
PageID 292), and Varsity's incorporation of sections III.B, III.C, and IV of Webb's Motion,
which contained counterarguments related to alleged antitrust and consumer protection claims in
various states, (ECF No. 59 at PageID 341).  Regarding the incorporations in the Defendants'
respective Replies: USASF incorporated Webb's briefing regarding Counts 1 and 3-6 of the
Complaint, unjust enrichment, and consumer protection law, and Varsity's briefing, regarding
Counts 1 and 3-6 of the Complaint, unjust enrichment, consumer protection law, and market
definition, (ECF No. 74 at PageID 576, 578, 582, 585), and Varsity adopted Webb and USASF's
briefing relating to the additional reasons that Plaintiff's state law claims should be dismissed,
(ECF No. 73 at PageID 573).  The Court urges Defendants' counsel to consider an alternative
organizational tool that does not overshadow the complexity of the case's legal issues in this and
future cases.

also argue that questions of law or fact common to all class members will not predominate in either of the proposed (b)(3) classes and thus the harm cannot be shown by common proof.

In the Motion to Reconsider, Indirect Purchasers argue for reinstatement of their Tennessee antitrust and consumer protection claims against Varsity and Webb.  They contend that they did not waive those claims, as previously found.

## ANALYSIS

The Court first addresses the Indirect Purchasers' Motion to Reconsider the dismissal of two claims because the result there impacts the issues to be considered as to the Motion to Strike. The Court then turns to Defendants' Motion to Strike the class claims, considering the arguments in broad-to-narrow order, starting first with objections that impact all three putative classes, before turning to the issues related to each specific class.

### I.      Motion to Reconsider

Rule 54(b) of the Federal Rules of Civil Procedure allows a district court to revise an order adjudicating fewer than all the claims or rights and liabilities of all parties any time before final judgment.  Fed. R. Civ. P. 54(b).  District courts "have authority both under common law and Rule 54(b) to reconsider interlocutory orders and to reopen any part of a case before entry of final judgment."  Rodriguez v. Tenn. Laborers Health & Welfare Fund, 89 F. App'x 949, 959 (6th Cir. 2004).  Local Rule 7.3(b) requires a motion for revision of an interlocutory order to show:

> (1) a material difference in fact or law from that which was presented to the Court before entry of the interlocutory order for which revision is sought . . . ; (2) the occurrence of new material facts or a change of law occurring after the time of such order; or (3) a manifest failure by the Court to consider material facts or dispositive legal arguments that were presented to the Court before such interlocutory order.

LR 7.3(b).[6]

The Indirect Purchasers seek reconsideration of the determination that they conceded the argument that the TTPA is inapplicable to the Cheer Camp and Cheer Competition markets because it applies only to tangible goods, not intangible services.  (ECF No 335-1 at PageID 7285-6.)In the Order Granting in Part and Denying in Part Defendants' Motion to Dismiss, the Court stated:

> Webb first argues that the TTPA is inapplicable to the Cheer Camp and Cheer Competition markets because it applies only to tangible goods, not intangible services.  (ECF No. 58-1 at PageID 298 (citing Tenn. Code. Ann. § 47–25–101).)  Because the Indirect Purchasers do not respond to this argument, the Court finds that point conceded.  See 4th Leaf, LLC v. City of Grayson, 425 F. Supp. 3d 810, 823 (E.D. Ky. 2019) ("[A] plaintiff generally concedes a defense when they fail to respond to the defendant's argument.").  Thus, the Court **GRANTS** Defendants' Motion as to the applicability of the TTPA to the Cheer Camps and Cheer Competitions markets, leaving only the alleged Cheer Apparel market.

(ECF No. 333 at PageID 7239.)

The Indirect Purchasers now contend that this was in error because, while USASF raised the issue, neither Varsity nor Webb ever actually moved to dismiss on these grounds, nor did they incorporate USASF's arguments in their Motions.[7]  (ECF No. 335-1 at PageID 7285-86.)  Rather, they contend that Webb raised this argument for the first time in his Reply brief, improperly leaving no opportunity for response.  (Id.)  Defendants argue that dismissal by

---

[6] The Indirect Purchasers' Motion does not comply with the procedural requirements of Local Rule 7.2 as it did not include a proposed order.  LR 7.2(a)(1)(A)-(B).  Because no rule would prevent them from refiling a conforming motion, and because the Court prefers its own Order here, the Court will consider the Motion.  See In re Regions Morgan Keegan Sec., Derivative & Erisa Litig., No. 2:09-MD-2009-SHM, 2013 WL 2319271, at *1 (W.D. Tenn. May 28, 2013); McDonald v. City of Memphis, No. 12-2511, 2013 WL 3753628, at *1 (W.D. Tenn. July 15, 2013).

[7] See supra note 5.

concession was proper insofar as USASF raised the argument in its Motion to Dismiss, (ECF No. 57-1 at PageID 279), and the Indirect Purchasers conceded this issue by failing to respond to it in their Response, (ECF No. 74 at PageID 581).  (ECF No. 345 at PageID 7606-07.)

The Indirect Purchasers are correct that this argument is found neither on the page of Webb's Motion to Dismiss that the Court cited, nor on any page of his Motion.  The argument is only in USASF's Motion, and various Reply briefs, such that it could not be ruled on as to Defendants Varsity and Webb without their incorporation of that argument because "[i]t is well-settled that a movant cannot raise new issues for the first time in a reply brief because consideration of such issues deprives the non-moving party of its opportunity to address the new arguments."  Malin v. JPMorgan, 860 F. Supp. 2d 574, 577 (E.D. Tenn. 2012) (internal quotation marks omitted).  The Court will therefore **GRANT** the Indirect Purchasers' Motion to Reconsider the question of whether the TTPA bars the Indirect Purchaser's claims against Varsity and Webb relating to the Cheer Camp and Competition markets.  This issue is addressed in Section II below.

Second, the Indirect Purchasers seek reconsideration of the determination that they conceded the challenge to their ability to bring a class action under the TCPA.  (Id. at PageID 7294.)  In the Order, the Court stated:

> Finally, the Indirect Purchasers do not respond to Defendant USASF's challenge to their ability to bring a class action under Tennessee law. The relevant statute provides that "[n]o class action lawsuit may be brought to recover damages for an unfair or deceptive act or practice declared to be unlawful by this part." Tenn. Code Ann. § 47-18-109(g) (2020).  With the silent concession by Plaintiffs, see 4th Leaf, 425 F. Supp. 3d at 823, the Court therefore **GRANTS** Defendants' Motion to Dismiss the claim under Tennessee's consumer protection statute.

(ECF No. 333 at PageID 7253-54.)

The Indirect Purchasers argue that only USASF—not Webb or Varsity—raised the issue of the alleged class action bar, and USASF only did so in a single perfunctory sentence in its opening brief, such that the challenge was not raised in a manner that required a response.  (ECF No. 335-1 at PageID 7294.)  Defendants counter that this issue was raised in their Motion to Strike, (ECF No. 56 at PageID 252 n.5), and argue again that the Indirect Purchasers failed to respond to the argument in their Response to USASF's Motion to Dismiss, (ECF No. 345 at PageID 7608).

The Court agrees with the Indirect Purchasers that it improperly considered this challenge as conceded.  Neither Webb nor Varsity incorporated USASF's argument on this issue, so there could be no concession on this issue as to them.  Moreover, the one sentence offered by USASF was insufficient to put this question at issue.  The Court **GRANTS** the Motion to Reconsider this issue and will address the issue on the merits below, given that the issue was fully briefed as part of Defendants' Motion to Strike, as both Motions implicate similar issues.[8]

## II.      Tennessee Trade Practices Act ("TPPA")

"The law is well settled that the TTPA applies only to tangible goods, not intangible services."  Bennett v. Visa U.S.A., Inc., 198 S.W.3d 747, 751 (Tenn. Ct. App. 2006) (citing McAdoo Contractors, Inc. v. Harris, 439 S.W.2d 594 (Tenn. 1969)).  In their Response to the Indirect Purchasers' Motion for Reconsideration, Defendants argue that, as a threshold matter, Plaintiffs fail to allege a proper TTPA claim as to the alleged Cheer Competitions and Cheer Camps markets, which are intangible services.  (ECF No. 345 at PageID 7607.)  The Indirect Purchasers argue in their Motion that these markets are not *purely* intangible services, and that

---

[8] See Section III, A infra.

bundled services have never been held to be outside the scope of the TTPA. (ECF No. 335-1 at PageID 7290-94.) They also contend that camps are products under the TTPA insofar as they provide overnight lodging, meals, facilities, and equipment, and operate as a "showroom and sales platform" for apparel and other products. (Id. at PageID 7289.) Emphasizing that one of the primary reasons athletes attend Varsity's camps is to acquire "bids" (entrance tickets) to cheer competitions, they argue that those bids to compete in other events are themselves a product. (Id.) They also contend that, for similar reasons, purchasing tickets to competitions makes these competitions a product and a service. (Id.)

At oral argument, the Indirect Purchasers suggested that this question is more appropriate for summary judgment. However, this issue presents a threshold question law – whether the markets in question fall within the terms of the TTPA. The Indirect Purchasers' arguments as to the proper classification of the Camp and Competition markets on the products-services spectrum is creative, but nevertheless fails. First, the contention that camps are products because they provide overnight lodging, meals, facilities, and equipment fails to acknowledge that they are providing access to, or use of, these "products," not products themselves. The Indirect Purchasers do not contend that, by paying for admission to a camp, class members purchase the camp itself. Rather, it is akin to a rental or leasing service, not a product.

The argument that bids and tickets are products is similarly dubious, as their entire value is derived from their ability to give access to camps and competitions. The Indirect Purchasers do not argue that, when viewing a camp or competition in isolation, they constitute product, so it is unclear why predicating access to them on something physical, like a ticket, would somehow turn it into a product. To do so would read superfluity into the TTPA and subsequent jurisprudence, as it would be impossible for something to not fall under the "product" definition.

Finally, even if the Court held that the bids and tickets were products, it would not follow that the camp and competition markets are products; a purchaser of a ticket would merely be exchanging their product for access to a service, in this case camps.

As Defendants contend, the Indirect Purchasers fail to sufficiently allege facts in the Complaint that support any sale of goods or products as to the two markets. For example, as to the competitions, in Paragraph 47 of the Complaint, the Indirect Purchasers exclusively refer to Cheer Competitions as being "events." (See ECF No. 1 at PageID 15.) In Paragraph 51, they allege that "Participants pay to compete, including fees for events, USASF registration fees, music licensing and insurance. Participants pay substantial sums to Varsity for associated goods and services, as set forth herein." (Id. at PageID 16.) While this section refers to "associated goods," Indirect Purchasers do not make clear anywhere in the Complaint what these goods are. If this refers to apparel, then it is insufficient to confer product status to the entire Competition market.

As for the camps, the Complaint describes the Cheer Camp market as a "multi-day overnight 'camp[]' where Cheer Athletes practice Competitive Cheer skills, develop routines and purchase Cheer Apparel ("Cheer Camps")." (Id. at PageID 18.) These camps are alleged to "operate as a showroom and sales platform for Cheer Apparel." (Id.) Again, the only product that the Indirect Purchasers seem to be referring to is Cheer Apparel, which is a different market that is relevant to this action.

Thus, while the Court granted the Indirect Purchasers' Motion to Reconsider whether the TTPA claim as to the Camp and Competition markets should be dismissed, upon reconsideration, it again **DISMISSES** the claims as to both markets.

### III.     Motion to Strike

Defendants argue that the class allegations should be struck for several reasons.  The Court addresses each below, beginning with issues that affect all of the alleged classes before addressing issues individual to each class.

Rule 12(f) allows a court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f).  "Motions to strike are viewed with disfavor and are not frequently granted."  Operating Eng'rs Loc. 324 Health Care Plan v. G & W Const. Co., 783 F.3d 1045, 1050 (6th Cir. 2015) (citations omitted).  A court may strike class action allegations before a motion for class certification where the complaint itself demonstrates that the requirements for maintaining a class action cannot be met.  Pilgrim v. Universal Health Card, LLC, 660 F.3d 943, 945 (6th Cir. 2011).  A court may properly strike class allegations prior to discovery where discovery would not have "alter[ed] the central defect in th[e] class claim."  Id. at 949 (affirming the district court's judgment striking class allegations and dismissing a lawsuit prior to discovery, finding that the defect in the class action at issue involved "a largely legal determination" that "no proffered factual development offer[ed] any hope of altering").

Federal Rule of Civil Procedure 23 governs class actions brought in federal court.  "To obtain class certification, a claimant must satisfy two sets of requirements: (1) each of the four prerequisites under Rule 23(a), and (2) the prerequisites of one of the three types of class actions provided for by Rule 23(b)."  Pilgrim, 660 F.3d at 945-6.  The Court addresses first whether the Indirect Purchasers may pursue their state law claims as a class given the fact that certain state statutes contain private class action bars.  Concluding that Rule 23 preempts these state bars in

federal court, the Court then turns to Defendants' substantive challenges to the Indirect Purchasers' alleged classes under Rule 23.

A.   Permissibility of Pursuing State Law Claims as a Class

Plaintiffs seek to pursue violations of the consumer protections laws of over 30 states as a class action.[9]  Defendants point out that several of these state consumer protection acts—including Tennessee's, Montana's, and Colorado's—do not permit class actions.  (ECF No. 56 at PageID 252.)  Hence, they seek to have the putative class claims brought under these states' laws stricken.  (Id.)  Plaintiffs do not dispute the existence of these bars, but instead rely on the Supreme Court's decision in Shady Grove Orthopedic Assocs., P.A. v. Allstate Insurance Co., to argue that Federal Rule of Civil Procedure 23 displaces the state statutory provisions.  559 U.S. 393 (2010).

If cases predicated on these claims were pending in their respective state courts, the statutes would preclude pursuing relief through a class action.  However, the cases are in federal court, and Rule 23 allows class actions without making an exception for cases of this kind.  The rule provides that "[o]ne or more members of a class may sue or be sued as representative parties on behalf of all members," if specified conditions are met.  Fed. R. Civ. P. 23.  The complaint alleges, and for purposes of this argument, the Court may assume, that the conditions necessary to maintain a class action are met here.  Thus, there exists an unavoidable conflict between federal and state law.[10]

---

[9] See supra note 4.

[10] The Court treats the issue as a single conflict between class action bars embedded within consumer protections statutes and Rule 23, because the parties have not indicated that each state's variation warrants its own Erie analysis.

1.      *Erie Jurisprudence*

At issue is whether Rule 23 applies, which would permit Plaintiffs to proceed on these claims as a class, or whether it is displaced by the conflicting provisions embedded in several of the applicable state statutes.  Under Erie R.R. Co. v. Tompkins, 304 U.S. 64 (1938), "federal courts sitting in diversity jurisdiction apply state substantive law and federal procedural law." Gasperini v. Center for Humanities, Inc., 518 U.S. 415, 427 (1996).  A special case arises when the federal law is embodied in a Federal Rule of Civil Procedure.  In that situation, the federal rule must be applied if it does not "abridge, enlarge, or modify any substantive right" in violation of the Rules Enabling Act.  See 28 U.S.C. § 2072; see also Hanna v. Plumer, 380 U.S. 460, 471 (1965).

The Supreme Court addressed a nearly identical issue in Shady Grove, 559 U.S. 393. There, the Supreme Court examined a conflict between a New York statute that precluded class actions seeking penalties or statutory damages and Rule 23.  Id.  First finding that the New York procedural statute "flatly contradict[ed]" Rule 23, the Court moved to an analysis of the nature of the law.  Id. at 405.  Justice Stevens, who wrote the Court's controlling concurrence, stated that "[a] federal rule . . . cannot govern a particular case in which the rule would displace a state law that is procedural in the ordinary use of the term but is so intertwined with a state right or remedy that it functions to define the scope of the state-created right."  Id. at 424 (Stevens, J., concurring). [11]  There, the New York law applied to all class claims brought in New York courts, including those based on federal law or state law.  Thus, given its broad application, the Court

---

[11] "If a state law collides with a federal rule, we must determine whether the federal rule applies . . . per Justice Stevens's controlling concurrence in [Shady Grove]."  Albright v. Christensen, 24 F.4th 1039, 1044 (6th Cir. 2022).

found the law "procedural in the ordinary use of the term" and therefore procedural in form and function.  Id. at 422-23.

2. *Post-Shady Grove Decisions*

Plaintiffs submit a string of cases interpreting state class action bars as procedural.  See, e.g., Lisk v. Lumber One Wood Preserving, LLC, 792 F.3d 1331, 1336 (11th Cir. 2015) ("The Alabama statute restricting class actions, like the New York statute at issue in Shady Grove, does not apply in federal court."); Reynolds v. FCA US LLC, 546 F. Supp. 3d 635 (E.D. Mich. 2021) (construing TCPA class action bar as procedural); In re FCA US LLC Monostable Elec. Gearshift Litig., 355 F. Supp. 3d 582, 599 (E.D. Mich. 2018) (holding that the Georgia consumer protection statue's class action bar was procedural); In re Hydroxycut Mktg. & Sales Pracs. Litig., 299 F.R.D. 648, 652-654 (S.D. Cal. 2014) (refusing to apply Louisiana and Tennessee class action restrictions).

Defendants likewise offer several authorities categorizing class action bars as substantive. See, e.g., Delgado v. Ocwen Loan Serv., LLC, No. 13-cv-4427, 2017 WL 5201079, at *10 (E.D.N.Y. Nov. 9, 2017) (collecting cases); Bearden v. Honeywell Int'l Inc., No. 09-cv-1035, 2010 WL 3239285, at *10 (M.D. Tenn. Aug. 16, 2010) (same); In re Ford Motor Co. F-150 & Ranger Truck Fuel Econ. Mktg. & Sales Pracs. Litig., No. 19-md-2901, 2022 WL 551221, at *19 (E.D. Mich. Feb. 23, 2022), appeal docketed No. 22-1245 (6th Cir. Mar. 28, 2022); Chapman v. Gen. Motors LLC, 531 F. Supp. 3d 1257, 1301 (E.D. Mich. 2021).

A court in this district previously addressed the issue in Ham v. Swift Transp. Co., No. 09-cv-2145 (BBD), 2011 WL 13350069, at *3 (W.D. Tenn. Oct. 12, 2011).  However, the Order in that case suggests that the issue was not disputed.  The Sixth Circuit has stated in dicta that a similar class action bar was "so intertwined with a state right or remedy that it functions to define

15

the scope of the state-created right" and therefore would not be displaced by Rule 23.  See

Whitlock v. FSL Mgmt., LLC, 843 F.3d 1084, 1092 (6th Cir. 2016) (approving the continued

certification of a settlement class).  Otherwise, the Sixth Circuit lacks precedent on the matter.

### 3.   Application

The core issue is whether the class action bar is procedural, and is therefore displaced by

Rule 23, or rather is substantive and serves to bar these claims here.  At oral argument,

Defendants maintained that Shady Grove is distinguishable because the bar there was embedded

within New York's procedural code, unlike here where the bar is embedded within each state's

consumer protection statute.  Defendants also argued that the bar is substantive as it reflects the

state legislatures' policy choices to keep TCPA disputes small and manageable and to limit

prospective plaintiffs' leverage.

Indirect Purchasers argue that these class action bars are no different from the one in

Shady Grove, and so Rule 23 should control.  They contend that a class action bar is the same

regardless of where it appears within a state's legal framework and maintain that the only

relevant inquiry is whether the class action bar abridges or changes a right that one would

otherwise have.  They then argue that the class action bar does not enlarge or modify a right or a

remedy, so it cannot be held to be substantive.

The Court finds Defendants' position to be untenable.  First, Defendants conceded at oral

argument that the remedies are identical regardless of whether a plaintiff pursues her claim via a

class action or as an individual litigant.  They then later asserted that allowing a case like this to

proceed as a class action nevertheless magnifies the remedies available because it gives plaintiffs

more leverage.  Based on Defendants' positions, the Court surmises that the argument is that the

efficiencies of aggregation and class-wide proof make it possible to pursue so-called "negative-

value" claims that are not otherwise economically viable to litigate on a standalone basis,[12] thereby giving plaintiffs more leverage.  Assuming this is the argument, Defendants are *not* saying that class actions magnify remedies *de jure*, but do so *de facto* given the economic realities of litigation.

A divergence from the Federal Rules of Civil Procedure that makes it so economically onerous for a litigant to vindicate her rights that she elects to sleep on them does not create a substantive difference in remedies.  To conflate procedural laws that have practical effects on the ability to seek relief with substantive laws that alter the remedies themselves is to dissolve the procedural-substantive distinction altogether.  Moreover, Defendants' argument that the state law class action bars are substantive runs counter to Rule 23's central policy justification of providing for greater justice by establishing the procedures for a collective action vehicle for small plaintiffs lacking incentives to litigate on their own because the costs of litigation outweigh the potential value of their claims.[13]

_____

[12] See, e.g., Thorogood v. Sears, Roebuck & Co., 547 F.3d 742, 744 (7th Cir. 2008) ("If every small claim had to be litigated separately, the vindication of small claims would be rare. The fixed costs of litigation make it impossible to litigate a $50 claim . . . at a cost that would not exceed the value of the claim by many times."); In re Modafinil Antitrust Litig., 837 F.3d 238, 257 (3d Cir. 2016), as amended (Sept. 29, 2016) ("A negative value claim is a 'claim[ ] that could not be brought on an individual basis because the transaction costs of bringing an individual action exceed the potential relief.'").

[13] The Supreme Court recognized that this is a central policy goal of class action litigation.  See, e.g., Amchem Prods., Inc. v. Windsor, 521 US 591, 617 (1997):

> The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights. A class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor.

Finally, the state class action bars at issue here do not seem to be, in Justice Stevens'

words, "so intertwined with a state right or remedy that it functions to define the scope of the

state-created right." See Shady Grove, 559 U.S. at 424.  The provisions impose categorical bans

on maintaining class actions brought under certain statutes, but do not work a change to the

substantive law; indeed, one can comprehend the thrust of the statutes here with or without the

class action provisions whereas class action bars in other states do make substantive changes.

Compare Friedman v. Dollar Thrifty Auto. Grp., Inc., No. 12-cv-02432-WYD-KMT, 2015 WL

4036319, at *2 (D. Colo. July 1, 2015) (upholding a class action bar under Colo. Rev. Stat. § 6-

1-113(2), which provides that, "[e]xcept in a class action" a defendant who violates the statute is

liable for the greater of actual damages, $500, or treble damages; class actions are exempted

from the statute's primary remedies for consumers.)

The Court concludes that the class action bars before it unavoidably clash with Rule 23

and are therefore displaced to the extent that they conflict with the Rule because they cannot be

construed as substantive law.  In reaching this decision, the Court does not comment on the

status of other state law class action rules that are not the subject of this litigation.  Defendants'

Motion to Strike Indirect Purchasers' Consumer Protection claims as barred by state statutes is

**DENIED**.

      B.    Rule 23(a) Prerequisites for Certification[14]

---

[14] Defendants repeat the Article III standing argument from their Motion to Dismiss in their attempt to strike the allegations on Article III Standing grounds.  The Court **DENIES** the Motion as to Standing for the same reasons it denies it with respect to typicality and adequacy of representation.  When drawing all inferences in the Indirect Purchasers' favor, discovery could reveal that the rebates and discounts constitute a concrete and particularized injury given their role in Varsity's alleged scheme.

Rule 23(a) requires that: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(1)-(4).

In their Motion to Strike, Defendants argue that internal conflicts between class members in each proposed class undermine typicality and adequacy of representation, which are both necessary for a class action to be maintained. (ECF No. 56 at PageID 241.) They assert that the conflict occurs because the Indirect Purchasers allege that Varsity's rebate and discount program, Network Agreement, and Family Plan constitute anticompetitive conduct, despite the fact that those programs benefit certain members of the class. (Id. at PageID 242.) Under its Network Agreements, the most prominent All-Star Gyms received increasing rebate percentages based on the amount they spend on Varsity events. (Id.) Likewise, schools that agree to purchase uniforms, apparel, and equipment from Varsity and participate in their competitions allegedly are offered a suite of benefits, including branding, mascot costumes, and signs displaying the school's identity and logo. (Id.) Some schools in the putative classes received these alleged "benefits" while others did not. (Id.)

According to Defendants, customers of gyms that received discounts and students at schools that received free services under these plans benefitted from them, and therefore have antagonistic interests to putative class members who did not. (Id.) They extend this argument to gyms that received fully paid trips to the higher-level competitions and received the benefits from attending these events. (Id. at PageID 242-3.) Defendants conclude that, based on these conflicts, the claims of the representatives cannot be typical of all those who are swept into the

classes' parameters, and they likewise cannot adequately represent the interests of those whose claims are not similar to their own.  (Id. at PageID 240.)

The Indirect Purchasers respond that all plaintiffs have a common interest in seeking injunctive relief and damages because of Defendants' conduct.  (ECF No. 70 at PageID 484.) They maintain that all plaintiffs ultimately paid the price for Varsity's anticompetitive conduct in the form of higher downstream prices, stifled innovation, and lower quality products.  (Id.)  They also dispute Defendants' characterization of the rebates, discounts, and exclusive offers as "benefits" considering that the alleged purpose and effect of these practices was to exclude rivals and raise prices.  (Id.)

Whether a plaintiff can establish commonality, typicality, and Rule 23(a)'s other prerequisites is not a purely legal question, but rather one that "generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action."  Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 351 (2011).  Defendants have not shown that the Indirect Purchasers' class claims are facially defective. Although some schools and individuals may have received rebates and discounts through Defendants' various programs, Defendants do not make a sufficient showing that those class members received a net economic benefit from the allegedly anticompetitive practices to yield an intractable conflict between the haves and have-nots within the classes.  (See id.)   The Indirect Purchasers allege in detail numerous times within the Complaint that the purpose and effect of these practices—when taken together—was to secure monopoly power, exclude rivals and to raise prices.  (See ECF No. 1 at PageID 32-34, 36, 42, 46, 56.)  Assuming these allegations are true, it is not obvious that anyone benefitted from the challenged practices.  Whether these programs were truly "net economic benefits" to the recipients will require a fact-intensive inquiry that is inappropriate in the context of this Motion.

20

Therefore, Defendants' Motion to Strike Class Allegations based on the lack of typicality and inadequacy of representation is **DENIED**.

> C.     Rule 23(b) Class Action Categories

A class that satisfies Rule 23(a)'s requirements must also fall within one of three categories found in Rule 23(b).  Plaintiffs plead classes under Rule 23(b)(2) and Rule 23(b)(3). (See ECF No. 1 at PageID 10-11.)  Rule 23(b)(2) requires that:

> the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole;

Fed. R. Civ. P. 23(b)(2).  Rule 23(b)(3) requires that:

> the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:
>
>> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
>> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
>> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>> (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3)(A)-(D).  Defendants raise numerous objections to the Indirect Purchasers' proposed classes under Rules 23(b)(2) and (b)(3), each of which is addressed below.

> 1.     *Rule 23(b)(2) — Injunctive and Declaratory Relief Class*

As to the Indirect Purchasers' classes plead under Rule 23(b)(2), Defendants argue that the alleged economic benefits provided to class members under the various rebate and discount programs operate differently as to different members, which undermines any possibility of an injunctive relief class under Rule 23(b)(2).  (ECF No. 56 at PageID 252.)  They maintain that the "elimination of the rebates, discounts, and paid Worlds bids programs—would provide relief to

21

some class members but not others." (ECF No. 76 at PageID 612.) However, the factual record is insufficient at this stage to make this assessment. The Indirect Purchasers' argument in their complaint regarding these practices is plausible enough to withstand this Motion, just as it did in the context of the Rule 23(a) challenge. The Motion to Strike these class allegations is **DENIED**.

### 2.       *Rule 23(b)(3) — Damages Classes*

Indirect Purchasers propose two Rule 23(b)(3) classes, one with all claims litigated under Tennessee state law, and one with claims litigated under the laws of the states in which the injuries occurred. For the reasons stated below, the Court grants the Motion as to the Nationwide Damages Class proceeding under Tennessee state law, but denies the Motion as to the State Law Damages Class.

### a.       *The Nationwide Damages Class*

The Indirect Purchasers seek damages on behalf of a nationwide class under the antitrust laws of Tennessee. Defendants argue that these claims should be dismissed because Tennessee antitrust law cannot apply to out-of-state transactions, and because other states' laws would apply under Tennessee's choice of law analysis.

### i.       *The Extra-territorial Applicability of Tennessee Antitrust Law*

Defendants first contend that the Indirect Purchasers' Nationwide Damages Class fails as a matter of law because it applies Tennessee antitrust law to transactions occurring outside of the state. (ECF No. 56 at PageID 249.) See, e.g., In re Skelaxin (Metaxalone) Antitrust Litig., 299 F.R.D. 555, 586 (E.D. Tenn. 2014) (denying class certification of nationwide indirect purchaser class based on Tennessee law). They maintain that this is problematic in indirect purchaser actions because, while the purpose of antitrust law is generally to protect a state's trade or commerce affected by the anticompetitive conduct, the purpose of allowing indirect purchaser

actions is to protect and afford a remedy to consumers in the particular state.  (Id. at PageID 250.)

"[A]n indirect purchaser may bring an action under Tennessee Code Annotated section 47-25-106 for conduct in violation of the TTPA even though the indirect purchaser is a non-resident of this state."  Freeman Indus., LLC v. Eastman Chem. Co., 172 S.W.3d 512, 515-17 (Tenn. 2005).  Employing a "substantial effects" standard to determine whether a case falls within the scope of the TTPA, a court must decide "whether the alleged anticompetitive conduct affects Tennessee trade or commerce to a substantial degree."  Id. at 523.  Courts consider "the particular facts of the case" to determine the effects of the anticompetitive conduct, distinct from the conduct itself.  Id.  However, the alleged anticompetitive conduct "need not threaten the demise of Tennessee businesses or affect market prices to substantially affect intrastate commerce."  Id.

Neither party disputes that the question here is whether the substantial effects standard is satisfied.  The Indirect Purchasers contend that Defendants' anticompetitive conduct had a substantial effect on Tennessee intrastate commerce because: (1) the main defendants in this case have their principal place of business in Memphis, Tennessee, (2) the organization and management of cheer competitions, camps, and manufacturing operations, all of which are a subject of this litigation, occurred here, and (3) the alleged illegal scheme was conceived and implemented here.  (ECF No. 70 at PageID 494.)  Defendants maintain that this showing fails to satisfy the substantial effects test.  (ECF No. 76 at PageID 608.)  They insist that the Complaint's allegations that Varsity promotes and sells apparel at events "across the country," holds major events at Walt Disney World Resort, and that most class members' transactions in the three markets at issue were outside of Tennessee militates against a finding of substantial effects.  (Id.)

23

The Indirect Purchasers have the better argument.  The <u>Freeman</u> analysis is not stringent and does not require that the anticompetitive conduct in question *only* or even *primarily* affect Tennessee.  Based on the allegations in the Complaint, Varsity and USASF are both domiciled in Tennessee, conduct extensive business in Tennessee, and manage many of their interstate transactions here.  (<u>See</u> ECF No. 70 at PageID 494-96.)  Contrary to Defendants' arguments, the fact that many class members are non-residents, and that their disputed transactions occurred outside of the state cannot be fatal to a <u>Freeman</u> substantial effects analysis when that is the condition precedent for conducting that analysis.  In addition, in <u>In Re Wellbutrin</u>, the fact that plaintiffs alleged that they paid "overcharges on a substantial amount of [the drug at issue] across the United States, including [in] Tennessee," factored into the court's denial of the motion to dismiss the TTPA claims, despite the plaintiff's failure to allege the specific extent of any impact on the Tennessee economy.  <u>In re Wellbutrin XL Antitrust Litig.</u>, 260 F.R.D. 143, 166 (E.D. Pa. 2009).  The Court concludes that the named Indirect Purchasers' allegation of paying for Varsity Cheer Apparel in Tennessee and of generally being overcharged for their purchases because of Defendants' scheme creates an inference sufficient to plausibly conclude that discovery will reveal evidence of a substantial effect on Tennessee's economy, a result similar to the one reached on this issue in the context of the Motion to Dismiss.  (<u>See</u> ECF No. 333 at PageID 7242.)

### ii.    Choice of Law

However, Defendants also argue that, even if the out-of-state members of the putative Nationwide Damages Class's claims fall within the scope of the TTPA, the law would still be inapplicable to them for choice of law reasons.  (ECF No. 76 at PageID 609.)  "Although <u>Freeman</u> does establish the broad reach of the TTPA, that merely indicates a choice of law

analysis is required because multiple state laws are at issue, not that a choice-of-law analysis is unnecessary." In re Skelaxin (Metaxalone) Antitrust Litig., 299 F.R.D. at 585.

A court must ensure that the certification of a nationwide class under the laws of a single state comports with the Due Process Clause and the Full Faith and Credit Clause. Phillips Petroleum Co. v. Shutts, 472 U.S. 797, 818 (1985). "A federal court exercising supplemental jurisdiction is bound to apply the law of the forum state, including its choice of law rules." Menuskin v. Williams, 145 F.3d 755, 761 (6th Cir. 1998) (citations omitted); see also Pilgrim, 660 F.3d at 947 (same). Because this action was brought in Tennessee, Tennessee's choice of law rules apply.

Tennessee follows the Restatement (Second) of Conflict of Laws for choice of law determinations in tort cases. Hataway v. McKinley, 830 S.W.2d 53, 59 (Tenn. 1992). The Supreme Court observed that "antitrust violations are essentially tortious acts . . . ." Associated Gen. Contractors v. Cal. State Council of Carpenters, 459 U.S. 519, 547 (1983) (quotations omitted). Under the Restatement, the Court must first determine whether there is a conflict between the laws of two or more states. Burns v. Taurus Int'l Mfg., Inc., 826 F. App'x 496, 499 (6th Cir. 2020). If a conflict exists, the Court must then apply "the law of the state where the injury occurred . . . unless some other state has a more significant relationship to the litigation." Hataway, 830 S.W.2d at 59. Tennessee adopted this position "because generally the law of the state where the injury occurred will have the most significant relationship to the litigation." Id. Hence, the most significant relationship "provides a 'default' rule whereby trial courts can apply the law of the place where the injury occurred when each state has an almost equal relationship to the litigation." Id. Generally, courts should apply all of the Restatement considerations:

(a) the place where the injury occurred,
(b) the place where the conduct causing the injury occurred,

(c) the domicile, residence, nationality, place of incorporation and place of business of the parties,

(d) the place where the relationship, if any, between the parties is centered.

Id. (quoting Restatement § 145).

A brief survey of Defendants' chart listing the relevant states' TTPA-analogue statutes reflects that there exist several significant conflicts between Tennessee law and the laws in states where plaintiffs reside. (See ECF No. 76 at PageID 620-24.) There appears to be, for instance, differences in standing requirements, remedies available, and the length of statutes of limitation. (Id.) The Indirect Purchasers do not appear to dispute the existence of these conflicts of law because they offer no response to this point.

Defendants maintain that, under Tennessee's choice of law rules, Tennessee law is inapplicable to this class because, in most antitrust cases, the place of the injury has the most significant relationship to each indirect purchaser's claim. (Id.) Here, they insist that the place of injury for "the vast majority of the class" is not Tennessee, because the injury is "being overcharged," which would occur in whichever state the particular transaction occurred. (Id.) The Indirect Purchasers do not dispute that the injury for each individual plaintiff did not occur in Tennessee or offer any comment on this consideration.

Rather, the Indirect Purchasers repeat many of their arguments supporting the extra-territorial applicability of the TTPA to the choice of law question. (See ECF No. 70 at PageID 494-96.) They insist that Tennessee has the most significant relationship to the case because Defendants are all residents here, where they have allegedly conceived, implemented, and acted in furtherance of the purported illegal scheme that is the subject of this suit. (Id. at PageID 494.) They distinguish this proposed class from the one dismissed in In re Skelaxin (Metaxalone) Antitrust Litig., where the district court "denied the application of Tennessee law under []

26

Tennessee choice of law" because that class was "defined specifically to exclude any plaintiffs who operated a business in Tennessee; the only state the Indirect Purchasers do not represent is Tennessee," and only one of the conspirators was headquartered in Tennessee. 299 F.R.D. at 587; (Id. at PageID 494-95.)  Last, they argue that their allegations of Defendants' scheme demonstrate "considerable factual overlap" regardless of each class member's state, and Defendants' conduct was nationwide in scope without differentiation.  (Id.)  They conclude that this obviates the need to engage in the sort of state-by-state analysis that would have been required in Pilgrim, where the Sixth Circuit struck class allegations in a false advertising class action because the alleged improper program operated differently in each state, meaning class members in each state would have suffered different injuries.  (Id.)

The Restatement considerations point in different directions.  The first consideration—place where the injury occurred—was outside Tennessee where the overcharges on transactions were incurred due to Varsity's allegedly illicit practices.  (ECF No. 76 at PageID 609.)  The Indirect Purchasers do not contest this.

Assuming the Complaint's allegations are true, as the Court must for the purposes of this Motion, the next two Restatement considerations–(b) "the place where the conduct causing the injury occurred" and (c) "the domicile . . . and place of business of the parties"–favor the imposition of Tennessee law.  The alleged illegal scheme and conspiracy which is the purported conduct causing the injury was conceived and implemented in Tennessee.  (ECF No. 1 at PageID 52-53.)  Moreover, the Varsity Defendants and USASF, are all either domiciled or have their principal place of business in Tennessee.  (Id. at PageID 7-9.)  The final consideration, the place of the relationship between parties, favors the states in which the transactions occurred.  The Indirect Purchasers' arguments seem to conflate this consideration with the prior consideration

about the location of the conduct causing the injury.  (See ECF No. 70 at PageID 494.)

However, the relevant party-relationship is the one between the plaintiffs and defendants, not the

location of the relationship between defendants.  See, e.g., Hataway, 830 S.W.2d at 60.

Thus, two considerations favor the imposition of Tennessee law and two favor the

imposition of the law of the state where the injury occurred.  The Hataway Court did not provide

a procedure for resolving an even split of the factors, but noted the approach it adopted "provides

a default rule whereby trial courts can apply the law of the place where the injury occurred when

each state has an almost equal relationship to the litigation."  Id. at 59.  However, under the facts

in Hataway, the court held the state that was the site of the relationship between the parties had

the most significant interest in the proceedings because the location of the injury was "merely a

fortuitous circumstance." Id. at 60.

The same does not hold true for the Indirect Purchasers in this case.  The full interaction

between each individual plaintiff and Defendant, including where the injury arose, occurred in

the state where the transaction happened.  Unlike in Hataway, each plaintiff here did not form an

agreement with Varsity while residing in Tennessee, and then consummate the deal in a different

state.  Rather, all interactions between the actors occurred elsewhere.  Consequently, the Court

finds that Tennessee substantive law does not apply to out-of-state plaintiffs because the Indirect

Purchasers have not met their burden for justifying a departure from the default rule in the choice

of law inquiry.  Because the Nationwide Damages Class's only claim relies on the application of

Tennessee law to all plaintiffs, the class cannot be maintained.  Defendants' Motion to Strike

these class allegations is **GRANTED**.

b.      *State Law Damages Class*

The Indirect Purchasers alternatively seek damages on a class-wide basis for violations of various state antitrust and consumer protection laws.  Defendants argue that this alternative class should also be stricken at this stage because individualized issues would necessarily predominate insofar as it would require the analysis and application of over 30 states' laws.

Predominance is established by demonstrating that a common question "is at the heart of the litigation."  Powers v. Hamilton Cty. Pub. Def. Comm'n, 501 F.3d 592, 619 (6th Cir. 2007).  A question is common if it "can be proved through evidence common to the class."  Advanced Rehab & Med., P.C. v. Amedisys Holding, LLC, No. 1:17-cv-01149-JDB-jay, 2019 WL 4145239, at *8 (W.D. Tenn. Aug. 30, 2019) (citations omitted).  The "predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation."  Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 623 (1997).  "If more than a few of the laws of the fifty states differ [in the context of a nationwide class], the district judge would face an impossible task of instructing a jury on the relevant law, yet another reason why class certification would not be the appropriate course of action."  In re Am. Med. Sys., Inc., 75 F.3d at 1085.

Defendants argue that the state law class fails on predominance and manageability grounds because there are substantive differences between the state laws at issue.  (ECF No. 56 at PageID 251.)  They provide that some state antitrust statutes under which the Indirect Purchasers seek to recover do not permit indirect purchasers to bring antitrust actions.  (Id. at 251-2.)  Additionally, Arkansas does not have a private right of action for antitrust violations, and other states do not recognize antitrust claims based on unilateral conduct.  (Id. at PageID 252.)  Defendants maintain that similar issues exist as to the consumer protection laws that are

also the subject of the State Law Damages Class.  (Id.)  For example, various state consumer protection laws—including Tennessee's, Montana's, and Colorado's—do not permit class actions.  (Id.)  Lastly, Defendants argue that some state consumer protection acts relevant to the class allegations have restrictions on who can serve as a class representative and the type of relief that can be recovered.  (Id.)  Defendants conclude that the need to evaluate class claims on a state-by-state basis not only renders the State Law Damages Class unwieldly, it causes individualized issues to predominate.  (Id.)

The Indirect Purchasers respond that the state law differences do not undermine predominance, given that courts routinely certify classes alleging antitrust violations under the laws of individual states.  (ECF No. 70 at PageID 496).  They argue that the various state antitrust laws relevant to this class action do not defeat predominance because they mirror federal antitrust law, contain a harmonization provision, or have been interpreted in harmony with federal law.  (Id.)  They also contend that they do not need class representatives belonging to every state whose laws are relevant to this lawsuit.  (Id.)

The Court previously dismissed the state law antitrust claims arising under Alaska, Colorado, and Alabama law and thus need not consider those state laws here.  (See ECF No. 333 at PageID 7243, 7245.)  As for the other state laws, Defendants' concerns about the variation amongst the over 30 states' laws are well taken.  Based on both parties' representations at oral argument, there appears to be substantive differences in those states' laws.  These differences could ultimately preclude a finding that common questions of law and fact predominate. However, the Court must confine itself to the four corners of the complaint in ruling on this Motion and finds that Indirect Purchasers have made enough of a showing at this stage to withstand a Rule 12 challenge to predominance.

The Indirect Purchasers have shown that common questions of fact would predominate, given the allegations that all putative class members have suffered largely the same injury. Common questions at the heart of this litigation include: (1) whether Defendants engaged in a conspiracy in violation of the antitrust laws; (2) whether the Cheer Competitions, Cheer Apparel, and Cheer Camps are appropriate relevant markets; [15] (3) whether Defendants' Exclusionary Scheme maintained or enhanced Varsity's monopoly power in the Relevant Markets; (4) whether Defendants' actions alleged herein caused injury to Plaintiffs and the class members by causing them to pay artificially inflated prices in the Relevant Markets during the Class Period; and (5) the appropriate measure of damages.  (ECF No. 70 at PageID 487.)  The main predominance issues left to the class certification stage are whether common questions of law predominate and whether proceeding under the laws of over 30 states will make the class unmanageable.  Issues with inconsistent state laws could ultimately be addressed by either tranching and subclassing by states with similar laws, or by certifying a narrower set of legal issues, and the Indirect Purchasers could alleviate manageability concerns with the intricate jury verdict forms and instructions proposed at oral argument.  The viability of these matters is best left for certification.

Defendants' Motion to Strike Indirect Purchasers Rule 23(b)(3) damages classes is **DENIED.**

## CONCLUSION

As described above, the Court:

- **GRANTS** Indirect Purchasers Motion to Reconsider the TTPA and TCPA claims;

---

[15] The Court dismissed TTPA claims relating to the Cheer Camp and Competition markets but, at this stage, claims may proceed under the statutory scheme of the other states involved in this lawsuit.

- Upon reconsideration, **DISMISSES** Indirect Purchasers' TTPA claims relating to the Cheer Camp and Competition markets;

- **DENIES** the Motion to Strike as to class-based claims asserted under the consumer protection laws of Tennessee;

- **DENIES** Defendants' Motion to Strike the Indirect Purchasers' class allegations proceeding under the Injunctive Relief Class.

- **GRANTS** Defendants' Motion to Strike the Nationwide Damages Class proceeding under the Tennessee Trade Practices Act ("TTPA"); and

- **DENIES** the Defendants' Motion to Strike the Statewide Damages Class due to predominance and manageability deficiencies.

**IT IS SO ORDERED,** this 31st day of August, 2023.

s/ Sheryl H. Lipman
SHERYL H. LIPMAN
CHIEF UNITED STATES DISTRICT JUDGE