## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
## WESTERN DIVISION

| | |
|---|---|
| **JESSICA JONES, et al.,** | Case No. 2:20-cv-02892-SHL-tmp |
| Plaintiffs, | |
| v. | |
| **VARSITY BRANDS, LLC, et al.** | |
| Defendants. | |
| | **JURY DEMAND** |

## PLAINTIFFS' OPPOSITION TO JEFF WEBB'S MOTION FOR SUMMARY JUDGMENT

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ...................................................................................................................1

FACTS ...................................................................................................................................1

ARGUMENT ..........................................................................................................................2

I.      Plaintiffs' Claims Are Not Time Barred ...................................................................2

      A.      WEBB'S CONTINUING VIOLATIONS.........................................................2

      B.      WEBB IS JOINTLY AND SEVERALLY LIABLE FOR THE ACTS OF HIS CO-DEFENDANTS ...................................................................................3

      C.      CONSPIRACY EVIDENCE IS CONSIDERED AS A WHOLE...........................3

      D.      WEBB IS INDIVIDUALLY LIABLE.................................................................4

            1.      WEBB REMAINED DEEPLY INVOLVED IN VARSITY'S DAY-TO-DAY AFFAIRS .................................................................................5

            2.      WEBB CONTINUED TO EXERT INFLUENCE OVER ACQUISITIONS.................................................................................5

            3.      WEBB CONSPIRED WITH AND EXERTED INFLUENCE OVER USASF ...........................................................................................6

            4.      WEBB CONTINUED TO EXERT INFLUENCE OVER THE CHEER CAMPS MARKET .............................................................................7

CONCLUSION.......................................................................................................................7

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Black L. Enf't Officers Ass'n v. City of Akron*, 824 F.2d 475 (6th Cir. 1987) .................................4

*Consumer Fin. Prot. Bureau v. Borders & Borders, PLC*, 2015 WL 11675669
   (W.D. Ky. Apr. 28, 2015) ...........................................................................................................4

*In re Se. Milk Antitrust Litig.*, 801 F. Supp. 2d 705 (E.D. Tenn. 2011) .........................................3

*Jones v. Varsity Brands*, LLC, 618 F. Supp. 3d 713 (W.D. Tenn. 2022) ..................................2, 3

*LePage's Inc. v. 3M*, 324 F.3d 141 (3d Cir. 2003) ........................................................................4

*Potters Med. Ctr. v. City Hosp. Ass'n*, 800 F.2d 568 (6th Cir. 1986) ...........................................4

*United States v. Brown*, 332 F.3d 363 (6th Cir. 2003) ...................................................................3

*United States v. Garvin*, 565 F.2d 519 (8th Cir. 1977) ..................................................................4

*United States v. Socony-Vacuum Oil Co.*, 310 U.S. 150 (1940) ....................................................3

**PLAINTIFFS' OPP TO JEFF WEBB'S MTN FOR SUMMARY JUDGMENT**

## INTRODUCTION

Far from the mere "advisor" he claims to be, Jeff Webb ("Webb") overtly and intentionally participated in the alleged conspiracy before and after he left his position of CEO of Varsity on March 2, 2016.[1] The evidence shows Webb consistently and actively participated in anticompetitive conduct from March 2, 2016, regardless of his official title at any given time. Here, the evidence is explicit to Webb's anticompetitive acts and intentions, along with those of his Co-Defendants. There is no basis for summary judgment. Webb's Motion should be denied.[2]

## FACTS[3]

Webb acted as Varsity's CEO from 1974 until March 2, 2016. PSOF, ¶36. During that period, Webb drove Varsity's acquisitions and had operational authority over every aspect of Varsity, including its many acquisitions and its exclusionary contracts and rebate programs, such as the Varsity Family Plan ("VFP") and Varsity Network Agreements, as well as Varsity's other loyalty programs. *Id.*, ¶149. Webb had a hand in directing the number of events a gym should be required to attend to receive a rebate under the Family Plan. *Id.*, ¶149. Webb conspired with USASF while he was CEO to set its rules to favor Varsity, and to counterprogram events specifically to hurt Varsity's competitors. *Id.*, ¶148-163. Webb actively participated in and directed USASF's efforts to exclude non-Varsity Cheer Apparel vendors from USASF and Varsity-sanctioned events. *Id.*, ¶151. Jeff Webb was the architect of the Squad Credentialing Program, which had the purpose of binding camp athletes to the Varsity ecosystem by requiring that they be credentialed to be eligible for a bid to Varsity's national end-of-season event

---

[1] For the purposes of this memorandum, "Varsity" refers collectively to Varsity Brands, LLC ("Varsity Brands"), Varsity Spirit, LLC ("Varsity Spirit"), and Varsity Spirit Fashions & Supplies, LLC ("Varsity Fashion"). Other Defendants include Charlesbank Capital Partners, LLC ("Charlesbank") and Bain Capital Private Equity, LP ("Bain").

[2] Due to the complicated nature of this case and the many issues of material fact that are in dispute, Plaintiffs request oral argument on this Motion for Summary Judgment, ECF No. 467.

[3] As cited herein, "PSOF" refers to Plaintiffs' Additional Statement of Facts, filed herewith. Unless otherwise noted, all citations to exhibits herein ("Ex. __") are citations to the exhibits attached to the Declaration of Joseph R. Saveri, filed herewith.

("Nationals"). *Id.*, ¶152. In fact, Webb created and oversaw the entire Varsity ecosystem, including directing efforts to lock athletes into that ecosystem, and foreclose Varsity's rivals. *Id.*, ¶¶148-163.

On March 2, 2016, Webb exited his position as CEO of Varsity Brands, and assumed the new title of Chairman of the Board of Varsity Brands, which included a seat on its board. ECF No. 467 at 1-2. In 2018, Bain acquired a majority interest in Varsity Brands. After that acquisition, Webb was no longer a member of the Varsity Brands Board ("Varsity Board"), but he continued to hold the title of Chairman of Varsity Spirit until December 31, 2020. *Id.* Regardless of his official title at any given time, his influence and anticompetitive conduct is plain. *See* PSOF, ¶¶148-163. Webb conspired with his Co-Defendants (*id.*) and greatly profited from the common scheme. *Id.* at ¶¶194-201. In 2021, Jeff Webb published a book in which he essentially admits that he ran a monopoly at Varsity. Ex. 95.

## ARGUMENT

### I.    Plaintiffs' Claims Are Not Time Barred

#### A.    Webb's Continuing Violations

Webb's argument that Plaintiffs' claims are time-barred fails at the outset. *See* ECF No. 467 at 7-9. As this Court explained when ruling on Charlesbank and Bain's same argument at the motion-to-dismiss stage, claims brought under the Sherman Act are subject to a four-year statute of limitations beginning on the date that "the cause of action accrued." *Jones v. Varsity Brands*, LLC, 618 F. Supp. 3d 713, 720 (W.D. Tenn. 2022) (citing 15 U.S.C. §15b). However, "[a] cause of action accrues and the limitations period commences each time a defendant commits an act which injures the plaintiff's business." *Id*. (citing *Peck v. Gen. Motors Corp.*, 894 F.2d 844, 848 (6th Cir. 1990) (quoting *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 338 (1971))). And "just because a cause of action began outside the limitations period does not per se doom the claim." *Id*. Rather, parties may allege a "continuing antitrust" violation – that is, when a party's interests "are repeatedly invaded." *Id*. (citing *Peck*, 894 F.2d at 849).

"In the context of a continuing conspiracy, the statute of limitations runs from the commission of the act that causes the plaintiff's damage." *Id*. (citing *Z Techs. Corp. v. Lubrizol Corp.*, 753 F.3d 594, 599 (6th Cir. 2014)). "An overt act restarts the statutory period for continuing violations." *Id*. at 721 (citing *Peck*, 894 F.2d at 849). "In the Sixth Circuit, an overt act is defined as (1) 'a new and independent act that is not merely a reaffirmation of a previous act,' and (2) 'an act that inflict[s] a new and accumulating injury on the plaintiff.'" *Id*. (quoting *Z Techs. Corp.*, 753 F.3d at 600). In the monopolization context, continuing violations are considered where a plaintiff alleges not only acquisitions, but also various forms of anticompetitive conduct that inflict new and accumulating injuries on them. *Id*. Here, Plaintiffs allege both conspiracy and monopolization claims. This Court has already found that Plaintiffs sufficiently allege continuing violations, when assessed under either type of claim. *See id*. at 719. The evidence explicitly shows Webb conspired with his Co-Defendants long after March 2, 2016, triggering the applicable limitation periods anew with each act.

## B.   Webb Is Jointly and Severally Liable for the Acts of His Co-Defendants

In addition to his own acts, Webb is also liable for the acts of his Co-Defendants under joint and several liability. *See In re Se. Milk Antitrust Litig.*, 801 F. Supp. 2d 705, 742 (E.D. Tenn. 2011) (citing *United States v. Murphy*, 937 F.2d 1032, 1041 (6th Cir. 1991)) ("Each conspirator is liable for the overt acts committed by any member of the conspiracy, even if the defendant did not personally commit the acts"); *United States v. Socony-Vacuum Oil Co.*, 310 U.S. 150, 253–54 (1940) ("For a conspiracy is a partnership in crime; and an 'overt act of one partner may be the act of all without any new agreement specifically directed to that act'") (quoting *United States v. Kissel*, 218 U.S. 601, 607 (1910)). There is no evidence that Webb withdrew from the conspiracy here to relieve him from liability for the actions of his Co-Defendants. *See United States v. Brown*, 332 F.3d 363, 374 (6th Cir. 2003).

## C.   Conspiracy Evidence is Considered as a Whole

While a limitation period may limit the period during which damages are sought, it does

not preclude the consideration of evidence by a jury that falls outside of the limitation period. *See Black L. Enf't Officers Ass'n v. City of Akron*, 824 F.2d 475, 483 (6th Cir. 1987) ("The statute of limitations is a defense …, not a rule of evidence. Therefore, … [it] has no bearing on the admissibility of evidence.") (citation omitted); *United States v. Garvin*, 565 F.2d 519, 523 (8th Cir. 1977) (evidence outside the statute of limitations is admissible "to show motive, intent, a continuing scheme, and lack of inadvertent action"). In conspiracy cases, it is well-settled that conspiracy facts should be considered as a whole. *See LePage's Inc. v. 3M*, 324 F.3d 141, 162 (3d Cir. 2003); *Consumer Fin. Prot. Bureau v. Borders & Borders, PLC*, 2015 WL 11675669, *3 (W.D. Ky. Apr. 28, 2015) (citing *Hanover Shoe, Inc. v. United Shoe Machine Corp.*, 392 U.S. 481, 502 n.15 (1968) (when a continuing scheme is alleged "all conduct related to the scheme is actionable so long as any part of such conduct occurred within the statutory period of limitation"). Similarly, in monopolization claims, facts leading up to when monopoly power was acquired or explaining how a defendant acquired its illegal monopoly power become especially important to the conspiracy story, even where such facts pre-date the limitations period. *See Potters Med. Ctr. v. City Hosp. Ass'n*, 800 F.2d 568, 574 (6th Cir. 1986). When a continuing scheme is alleged, "all conduct related to the scheme is actionable so long as any part of such conduct occurred within the statutory period of limitation." *See Borders* 2015 WL 11675669, at *3. (internal citations omitted). Here, the evidence should be considered as a whole.

### D.  Webb Is Individually Liable

This Court has already explained that Webb can be held individually liable. *See* ECF No. 333 at 18 (it is "undisputed that a corporation's officers and agents may be held individually liable for corporate actions that violate the antitrust laws if they authorize or participate in the unlawful acts" and that a CEO "plausibly has the directional control in a company to 'shape corporate intentions.'") (quoting *Brown v. Donco Enterprises, Inc.*, 783 F.2d 644, 646 (6th Cir. 1986)). Here, Webb had directional control before, and long after, March 2, 2016.

### 1.    Webb Remained Deeply Involved in Varsity's Day-To-Day Affairs

The evidence is explicit that Webb remained heavily involved in Varsity's business affairs and decision-making after March 2, 2016. *See* PSOF, ¶¶154-155; *see also* Ex. 20 [Cota Dep.] at 310:24-311:7 ("Q: Do you recall working -- do you recall if Mr. Webb was involved in Varsity's affairs after 2016? A. Yes."); Ex. 34 [Lauchaire Dep.] at 189:9-16 ("Q: Are there other people who you consider as having been part of the Varsity Spirit leadership team in October of 2017 who are not included in the people you just named? A. Yes. Q. Who was that? A. Bill Seely, Jeff Webb."). Charlesbank also confirmed Webb's continuing involvement in Varsity's day-to-day affairs. See Ex. 211 (1/26/2017, internal Charlesbank email discussing Webb's role: "we can certainly underscore for Jeff that this does not change his role one iota").

### 2.    Webb Continued to Exert Influence Over Acquisitions

As early as 2010, Webb was executing his strategy to get rid of Varsity's rivals. For example, in 2010, Varsity acquired Just Briefs, a cheerleading apparel company. Soon thereafter, Varsity closed the company. The company's owner explained that "[b]asically he [i.e. Jeff Webb] wanted me out of the market." Ex. 275 at 2518. As one former competitor whose apparel business was acquired by Varsity—only to be subsequently shut down— put it in a February 22, 2016 Slate article:

> I just think Jeff [Webb] is very driven . . . . There is enough out there for all of us [i.e., Varsity competitors]. Why make it so difficult? It's like he has to have 100 percent. He can't be happy with just 95 percent. Ex. 102 at 7.

In 2013, Webb confirmed his acquisition strategy was to eliminate competitors. Ex. 189 ("[a]cquisitions are better viewed as tactical and used for roll ups … or to eliminate competitors"). Four years later, in 2017, Varsity noted that its acquisition strategy to "roll-up the All Star market" had been successful. Ex. 121 at 5396 ("we built national event coverage through aggressive organic growth and acquisitions to roll-up the All Star market" … "took millions of investment over 12 years to accomplish, but has eventually become a key driver of revenue and EBITDA growth over the last 5 five years.").

Webb continued to drive Varsity's acquisition strategy well after March 2, 2016. *See, e.g.,* Ex. 207 at 0939. Webb was also deeply involved in the effort to acquire EPIC Brands in 2018. In an April 24, 2017 email, Tres LeTard (Varsity) reports on a conversation with Webb:

> I had an interesting conversation with Jeff Webb on the way down to Orlando. We were discussing competitors and who is still relevant. I mentioned EPIC and he asked what we could do to apply pressure to them. I said we have Summit Bids and some events near them on similar weekends but could do more at ASC – Baltimore if needed (and explained the new bid strategy). He strongly recommended that we do all we can. Ex. 144 at 4423.

In addition, as Chairman of the Varsity Board and as a member of the Varsity Spirit Board, Webb continued to be a decision-maker and exert influence over Varsity's acquisitions. PSOF, ¶153-155. Indeed, Varsity Board approval was required for major acquisitions. Id., ¶155.

### 3. Webb Conspired with and Exerted Influence Over USASF

In August 2015, Brian Elza (Varsity) wrote to Webb confirming Varsity's control:

> The firestorm is coming. Obviously this is an effort to combat the Summit, and if I were in their shoes I would be trying to do something similar. Truth be known the Summit has destroyed our competitors and will continue to worsen with the D2 Summit. With our control of the BOD [Board of Directors] of the USASF we are clearly in the drivers [sic] seat. Ex. 139.

Webb conspired with USASF to hurt other event producers using Worlds bid rules and other rules. PSOF, ¶133-141. For example, as Jeff Fowlkes (Varsity) explained to others at Varsity in September 2017:

> He [Mr. Webb] believes, and I agree (for whatever that's worth), that in some cases the ability to give Worlds Bids is keeping these companies viable and certainly driving up their value if we decide to acquire them." Ex. 132 at 4139.

A September 22, 2017, email shows that Webb explicitly intended for the Worlds bid process to hurt Varsity's rivals:

> As you both know, Jeff W. [Webb] wants the USASF Worlds Bid process changed to prevent small competitors from being allowed to offer World Bids. Ex. 132 at 4139 (emphasis added)

Webb continued to conspire with USASF on penalties for event producers who did not adhere to USASF's apparel guidelines. *See, e.g.,* Ex. 178 at 0286-87 (3/3/2020, email from Chadwick

(USASF) to Webb explaining penalties for 2019-2020 season). *See also* Ex. 277 (September 2017 email from Webb stating that he would like "to start moving right away" on an initiative to "Protect [Varsity's] Largest competitions by Strategic placement of bid allocations to the summit and US Finals"). Webb also conspired with USASF to harm Varsity's rivals through counterprogramming of events, e.g., Varsity purposely putting its own event near or on top of rival event producers' events, to hurt them. PSOF, ¶¶142, 150-151. Webb continued to direct the banning of Varsity's rivals from showing their wares or soliciting at Varsity competitions, and even at the hotels where teams stayed. PSOF, ¶110, 114. For example, On February 25, 2019, Justin Carrier (Varsity) wrote:

> Jeff Webb is asking that we do what we can to get the owner of Nfinity, Tate Chalk (probably our biggest competitor/rival who is now launching a competition company) banned from the Omni Bar during the weekend. He wants to know if we have any pull with the Omni to make that happen. Ex. 214.

*See also* Ex. 278 (May 2019 email with Webb endorsing broader Varsity plan to "crush" Nfinity).

### 4.    Webb Continued to Exert Influence Over the Cheer Camps Market

Varsity uses its Squad Credentialing Program as a way to lock together Cheer Competitions and Cheer Camps. *Id.*, ¶152. Webb devised the program. *Id.*; Ex. 113 at 9874. As of November 2019, the Squad Credentialing Program was implemented at the majority of Varsity's camps and continues to cause harm. PSOF, ¶22, 85-89; Ex. 206.

### CONCLUSION

Here, Plaintiffs have shown the continuing nature of Webb's conduct and violations. The evidence speaks for itself. Webb's Summary Judgment Motion should be denied.

Dated: September 15, 2023                    Respectfully submitted,

                                             By:_____*/s/ Joseph R. Saveri*_____
                                                     Joseph R. Saveri

                                             Joseph R. Saveri*
                                             Steven N. Williams*
                                             Ronnie Seidel Spiegel*+
                                             Kevin E. Rayhill*
                                             Elissa A. Buchanan*
                                             David Seidel*
                                             **JOSEPH SAVERI LAW FIRM, LLP**
                                             601 California Street, Suite 1000
                                             San Francisco, California 94108
                                             Telephone: (415) 500-6800
                                             Facsimile: (415) 395-9940
                                             jsaveri@saverilawfirm.com
                                             swilliams@saverilawfirm.com
                                             rspiegel@saverilawfirm.com
                                             krayhill@saverilawfirm.com
                                             eabuchanan@saverilawfirm.com
                                             dseidel@saverilawfirm.com

                                             Van Turner Jr. (TN Bar No. 22603)
                                             **TURNER FEILD, PLLC**
                                             2650 Thousand Oaks Blvd., Suite 2325
                                             Memphis, Tennessee 38118
                                             Telephone: (901) 290-6610
                                             Facsimile: (901) 290-6611
                                             VTurner@TurnerFeildLaw.com

                                             Richard M. Paul III*
                                             Ashlea Schwarz*
                                             **PAUL LLP**
                                             601 Walnut, Suite 300
                                             Kansas City, Missouri 64106
                                             Telephone: (816) 984-8100
                                             rick@paulllp.com
                                             ashlea@paulllp.com

                                             Jason S. Hartley*
                                             **HARTLEY LLP**
                                             101 West Broadway, Suite 820
                                             San Diego, CA 92101
                                             Telephone: (619) 400-5822
                                             hartley@hartleyllp.com

Daniel E. Gustafson*
Daniel C. Hedlund*
Daniel J. Nordin*
**GUSTAFSON GLUEK PLLC**
Canadian Pacific Plaza
120 South Sixth Street, Suite 2600
Minneapolis, MN 55402
Telephone: (612) 333-8844
Facsimile: (612) 339-6622
dgustafson@gustafsongluek.com
dhedlund@gustafsongluek.com
dnordin@gustafsongluek.com

* Admitted *pro hac vice*

+Located in Washington State

*Attorneys for Individual and
Representative Plaintiffs*