# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| JESSICA JONES, ET Al., | |
| Plaintiffs, | Case No. 2:20-cv-02892-SHL-cgc |
| v. | |
| VARSITY BRANDS, LLC, ET AL., | |
| Defendants. | |

**REPLY IN SUPPORT OF JEFF WEBB'S MOTION FOR SUMMARY JUDGMENT**

Plaintiffs' Opposition to Jeff Webb's Motion for Summary Judgment ("Resp.") (ECF No. 477) makes clear that they lack evidence supporting their claims against Mr. Webb. They do not identify evidence showing Mr. Webb exerting his influence with respect to anticompetitive conduct. Instead, Plaintiffs mischaracterize emails through selective quotations, rely upon vague statements to draw strained and speculative inferences, and cite to evidence that does not support their claims at all. The Court should grant Mr. Webb summary judgment on all of Plaintiffs' claims.

A.  **Plaintiffs do not identify overt acts to support a continuing conspiracy.**

Plaintiffs incorrectly suggest that the Court's ruling on a prior motion to dismiss is grounds to find continuing antitrust violations and deny summary judgment. However, allegations in Plaintiffs' Complaint are not evidence. Plaintiffs must provide evidence that Mr. Webb committed an overt act to sustain their claim of a continuing violation and restart the statute of limitations. *Peck v. General Motors Corp.*, 894 F.2d 844, 849 (6th Cir. 1990) ("Thus, even when a plaintiff alleges a continuing violation, an overt act by the defendant is required to restart the statute of limitations and the statute runs from the last overt act.") (internal quotations and citations omitted). Plaintiffs have no evidence of an overt act by Mr. Webb within the limitations period.

B.  **Plaintiffs' claim that Mr. Webb remained involved in Varsity's day-to-day affairs does not support antitrust liability.**

Plaintiffs argue vaguely that Mr. Webb "remained heavily involved in Varsity's business affairs and decision-making after March 2, 2016," but do not cite evidence of Mr. Webb's involvement in any decisions. (Resp. at p. 5.) Instead, they rely upon a former employee's vague statement that Mr. Webb "was involved in Varsity's affairs after 2016" and another employee's view of Mr. Webb as among the "Varsity Spirit leadership team in October 2017." (*Id.*)

The standard for individual liability is not whether someone was merely "involved in the affairs" of the company or possessed a role that some viewed as "leadership." Instead, "the

1

evidence must show that the defendant exerted influence over corporate decisions to the point that his influence shaped corporate intentions." *In re Se. Milk Antitrust Litig.*, 801 F. Supp. 2d 705, 737 (E.D. Tenn. 2011) (relying on *Brown v. Donco Enters., Inc.*, 783 F.2d 644, 646 (6th Cir. 1986)). Even if one employee's perception that Mr. Webb was part of "Varsity Spirit's leadership team in October 2017" was correct, it is not a basis to impose individual antitrust liability. *See Id.* at 738-39 (granting motion for summary judgment for Chief Financial Officer of the company).

**C.    Plaintiffs do not have evidence that Mr. Webb shaped corporate intentions with respect to acquisitions.**

Plaintiffs do not identify evidence that Mr. Webb exerted his influence such that he shaped Varsity's intentions with respect to acquisitions. Instead, Plaintiffs either misrepresent evidence or rely upon strained inferences and speculation based on isolated documents.

Plaintiffs selectively quote only a portion of a 2013 email that Mr. Webb drafted *to himself* to try to argue that "his acquisition strategy was to eliminate competitors." (Resp. at p. 5) (citing Pls.' Ex. 189.) Contrary to Plaintiffs' interpretation of the email, it shows that Mr. Webb did *not* view growth through acquisition as a viable strategy.

> Growing by acquisition is not a strategy, and if it is it can be very precarious . . .. Acquisitions are better viewed as tactical and used for roll ups, to acquire new products, technologies or methods for our existing businesses, to create synergies with existing businesses, to capitalize on existing core competencies or to eliminate competitors.

(Pls.' Ex. 189.) Plaintiffs ignore that the email references other reasons for acquisitions, and that Mr. Webb explained he was discussing what "acquisitions kind of theoretically in business could be about." (Pls.' Ex. 10 at 162:10-162:17.). There is no evidence that Mr. Webb articulated the ideas in the email to anyone else at Varsity.

Plaintiffs' claim that Mr. Webb "continued to drive Varsity's acquisition strategy well after March 2, 2016" is not supported by the evidence. (Resp. at p. 6.) They point to one of eleven

2

responsibilities identified in Mr. Webb's employment agreement stating that he would "*help* locate, evaluate, and negotiate major acquisitions." (Pls.' Ex. 207 at 0939) (emphasis added.) Plaintiffs do not identify a single acquisition that Mr. Webb helped locate, evaluate, or negotiate after 2016.[1] Moreover, mere "participation" in acquisitions does not demonstrate that he "continued to drive" an acquisition strategy and is insufficient to support individual liability against Mr. Webb. *See In re Milktrust*, 801 F. Supp. 2d at 739 (granting summary judgment where Plaintiffs "simply" showed participation in challenged conduct).

Finally, Plaintiffs refer to Mr. Webb's role as a member of the Varsity Board, noting that Board approval was required for major acquisitions. (Resp. at p. 6.) Plaintiffs do not identify any acquisitions that came up for Board approval and over which Mr. Webb exercised his influence. Nor do they identify any authority supporting imposing personal liability on individual board members merely because they voted in favor of an acquisition.

Plaintiffs have not presented any evidence that Mr. Webb's "actions somehow influenced the corporate decisions that were made." Instead, they "argue inferences to be drawn from the evidence which are unfair and strained to the point of not being justified or reasonable," which is insufficient to defeat summary judgment. *See In re Milktrust*, 801 F. Supp. 2d at 739.

**D.      Plaintiffs have not identified material evidence to support a claim that Mr. Webb conspired with USASF.**

None of the evidence Plaintiffs rely upon supports a claim that Mr. Webb conspired with USASF or influenced Varsity to do so. Notably, Plaintiffs do not identify a single action that USASF took or a policy that it implemented, anticompetitive or otherwise, in connection with

---

[1] A single, vague, and recounting of a conversation in which Mr. Webb purportedly "recommended that we do all we can" in response to a colleague's reference to EPIC Brands does not suggest Mr. Webb's involvement in any acquisition, much less that he exerted his influence such that he shaped Varsity's intentions. (Resp. at p. 6.)

3

which Mr. Webb conspired with USASF or exerted his influence over USASF.

For example, Plaintiffs claim that Mr. Webb "conspired with USASF to hurt other event producers using Worlds bid rules and other rules." (Resp. at p. 6.) However, they do not identify any such rules, much less how Mr. Webb conspired with USASF or had any influence with respect to the purported rules. A single email in which another employee provides his opinion and his speculative belief that Mr. Webb wanted the "Worlds Bid process changed" does not support their claim. (*See* Pls.' Ex. 132.) Even if this was an accurate depiction of Mr. Webb's beliefs, and it is not,[2] Plaintiffs have not identified any actual changes to the "Worlds Bid process."

Without evidence, Plaintiffs also claim that Mr. Webb "conspired with USASF to harm Varsity's rivals through counterprogramming of events." (Resp. at p. 7.) None of the evidence Plaintiffs rely upon, shows that Mr. Webb was involved with or influenced counterprogramming, much less that he conspired with USASF in connection with the alleged practice.

While Plaintiffs point to an email from USASF President Jim Chadwick to Mr. Webb regarding a framework for potential penalties for violations of USASF's uniform requirements, they do not identify any anticompetitive conduct or explain how this communication could constitute conspiratorial conduct.[3] This is insufficient to support their claim. *See K&S Assocs., Inc. v. Amer. Ass'n of Physicists in Medicine*, 2013 WL 2177938, at *16 (M.D. Tenn. May 20, 2013) ("'[M]ere contacts and communications, or the mere opportunity to conspire, among antitrust defendants is insufficient evidence [of] an anticompetitive conspiracy.'") (quoting *Amer.*

---

[2] Both recipients of the email, Tres Letard and Brian Elza, deny ever hearing Mr. Webb express a view that he wanted the Worlds Bid process changed to prevent small competitors from being able to offer Worlds Bids. (Pls.' Ex. 13 at 353:3-25; Pls.' Ex. 12 at 182:18-183:11.)

[3] Nor can they do so. As Mr. Chadwick explained in his deposition, he was communicating to Mr. Webb, President of the ICU, in connection with "an initiative to improve the image for All Star athletes away from age-inappropriate attire . . . in an effort to do a better job of integrating All Star with the . . . Olympics both internationally dend in the U.S." (Pls.' Ex. 15 at 444:17-25.)

*Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 227 (4th Cir. 2004))

With respect to Plaintiffs' remaining evidence, at most, the emails show Mr. Webb's awareness of Varsity's business activities, not that Mr. Webb "'actively and knowingly participated in an anticompetitive scheme by *at a minimum*, demonstrating that he 'exerted his influence so as to shape corporate intentions.'" *In re Se. Milktrust*, 801 F. Supp. 2d at 739 (emphasis added).

**E.     Plaintiffs' claim regarding Varsity's Squad Credentialing Program is false.**

Plaintiffs' argument that Mr. Webb "continued to exert influence over the cheer camps market" exemplifies their improper practice of citing to evidence that does not support their assertion in any way.[4]  Plaintiffs argue the "Squad Credentialing Program" is anticompetitive and falsely claim "[Mr.] Webb devised the program." (Resp. at p. 7.)  The evidence Plaintiffs cite does not support this false claim or, for the most part, even mention Mr. Webb.  The only evidence they cite that does mention Mr. Webb is an email from Bill Seely regarding relevant points for an agreement between Varsity Spirit and the National Federation of High Schools in which Mr. Seely provides *his* "suggestions for deal points going forward…" (Pls.' Ex. 113.)  Plaintiffs have no evidence demonstrating that Mr. Webb "devised" the Squad Credentialing Program or that he "continued to exert influence over the cheer camps market."

**F.     Plaintiffs fail to respond to Mr. Webb's argument on unjust enrichment.**

Plaintiffs do not respond to Mr. Webb's Motion seeking summary judgment on Plaintiffs' unjust enrichment claim and, therefore, concede that Mr. Webb is entitled to summary judgment on that claim.  *See 4th Leaf, LLC v. City of Grayson*, 425 F. Supp. 3d 810, 823 (E.D. Ky. 2019).

---

[4] As another example, Plaintiffs claim that Mr. Webb "had a hand in directing the number of events a gym should be required to attend to receive a rebate under the Family Plan." (Resp. at p. 1.) However, the cited testimony does not relate to the number of events gyms were required to attend, much less that Mr. Webb was involved in directing that number. *See* (Pls.' Ex. 10 at 153:22-154:7) (Mr. Webb responding, "I don't really know" to question about Family Plan participation).

Dated: October 13, 2023

By: /s/ *Brendan P. Gaffney*

Paul E. Coggins*
Brendan P. Gaffney*
Kiprian E. Mendrygal*
Jennifer McCoy*
Katherine Wright*
LOCKE LORD LLP
2200 Ross Avenue, Suite 2800
Dallas, TX 75201
Phone: (214) 740-8000
Fax: (214) 740-8800
pcoggins@lockelord.com
bgaffney@lockelord.com
kmendrygal@lockelord.com
jennifer.mccoy@lockeord.com
katie.wright@lockelord.com

* Admitted pro hac vice

Edward L. Stanton III (TN #018904)
S. Keenan Carter (TN # 023386)
BUTLER SNOW LLP
6075 Poplar Avenue, Suite 500
Memphis, Tennessee 38119
Telephone: (901) 680-7336
Fax: (901) 680-7201
Edward.Stanton@butlersnow.com
Keenan.carter@butlersnow.com

**ATTORNEYS FOR JEFF WEBB**