UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| JESSICA JONES et al., <br><br>           Plaintiffs, <br>     v. <br><br> VARSITY BRANDS, LLC et al., <br><br>           Defendants. | **Civ. Action No. 2:20-cv-02892** |

**REPLY IN SUPPORT OF U.S. ALL STAR FEDERATION, INC.'S MOTION FOR SUMMARY JUDGMENT**

# **TABLE OF CONTENTS**

A. Plaintiffs Must Identify Competent Evidence Beyond Their Pleadings. ...................................1

B. Plaintiffs' Claims Are Time-Barred And They Cannot Satisfy Their Burden of Proof As To USASF.........................................................................................................................................1

C. Plaintiffs Fail To Rebut USASF's Procompetitive Justifications For Its Rules. ......................5

D. Plaintiffs Fail To Link The Alleged Harm To Any Of USASF's Actions. ..............................5

E. Plaintiffs Fail To Establish That USASF Is Liable For The Conduct Of Any Other Defendant. ...................................................................................................................................6

F. Plaintiffs Concede USASF's Non-Involvement In Apparel, Camps, And School Cheer. .........7

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Am. Steel Erectors v. Loc. Union No. 7, Int'l Ass'n of Bridge, Structural, Ornamental & Reinforcing Iron Workers*,
815 F.3d 43 (1st Cir. 2016) ................................................................................................... 2

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .............................................................................................................. 1

*Cap. Imaging Assocs., P.C. v. Mohawk Valley Med. Assocs.*,
996 F.2d 537, 545 (2d Cir. 1993) ......................................................................................... 6

*Invictus Recs., Inc. v. Am. Broad. Companies, Inc.*,
98 F.R.D. 419 (E.D. Mich. 1982) ........................................................................................ 2

*Nat'l Hockey League Players' Ass'n v. Plymouth Whalers Hockey Club*,
325 F.3d 712 (6th Cir. 2003) ............................................................................................... 5

*Netafim Irrigation, Inc. v. Jain Irrigation, Inc.*,
562 F. Supp. 3d 1073 (E.D. Cal. 2021) ............................................................................... 7

*Paladin Assocs., Inc. v. Montana Power Co.*,
328 F.3d 1145 (9th Cir. 2003) ..................................................................................... 2, 6, 7

*Richter Concrete Corp. v. Hilltop Basic Resources, Inc.*,
547 F. Supp. 893 (S.D. Ohio 1981) ..................................................................................... 6

*Riverview Investments, Inc. v. Ottawa Community Improvement Corp.*,
899 F.2d 474 (6th Cir. 1990) ............................................................................................... 7

*United States v. Yellow Cab Co.*,
332 U.S. 218 (1947) ............................................................................................................. 2

*Weber v. Nat'l Football League*,
112 F. Supp. 2d 667 (N.D. Ohio 2000) ............................................................................... 7

Plaintiffs lack sufficient evidence to survive summary judgment on their claims against USASF. At this stage, Plaintiffs cannot merely rely on their pleadings or point to unilateral conduct of Varsity. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554 (2007) ("at the summary judgment stage a § 1 plaintiff's offer of conspiracy evidence must tend to rule out the possibility that the defendants were acting independently"). Plaintiffs' failure to identify any overt act by USASF during the limitations period dooms their claims as time-barred and on the merits. Plaintiffs also fail to show that any of the challenged conduct by USASF *caused* any of their alleged antitrust injuries or that USASF is liable for the conduct of any other Defendant. Even more, Plaintiffs fatally concede USASF's lack of involvement in camps, apparel, and School cheer. Further, Plaintiffs rest on unsupported conjecture in the face of contemporaneous evidence regarding USASF's procompetitive justifications for the challenged conduct and fail to show that USASF's legitimate objectives could have been achieved in a substantially less restrictive manner. For all of these reasons, USASF is entitled to summary judgment on all of Plaintiffs' claims.

**A. Plaintiffs Must Identify Competent Evidence Beyond Their Pleadings.**

Plaintiffs rely on the Court's ruling on Bain and Charlesbank's motions to dismiss and claim that "[t]his Court has already rejected USASF's same limitation period argument at the motion to dismiss stage." (Pls.' Resp. to USASF Br. at 1). This is not accurate, and this Court has not addressed USASF's arguments. Further, at that stage, the Court was forced to accept as true numerous false allegations contained in Plaintiffs' Complaint. Now, at summary judgment, Plaintiffs cannot rest on their pleadings, but rather must adduce evidence to support their claims. Plaintiffs have failed to substantiate any of their allegations as to USASF.

**B. Plaintiffs' Claims Are Time-Barred And They Cannot Satisfy Their Burden of Proof As To USASF.**

Plaintiffs' claims as to USASF are time-barred and, in any event, Plaintiffs cannot satisfy their burden to prove the existence of any anticompetitive conspiracy or concerted action involving USASF. *See Invictus Recs., Inc. v. Am. Broad. Companies, Inc.*, 98 F.R.D. 419, 426 (E.D. Mich. 1982) (citation omitted) ("The party opposing the motion must place a material fact in issue by presenting facts of a substantial nature; it is not sufficient to rely on conclusions of law or mere suspicions."). Under Sherman Act § 1 or § 2, an overt act in furtherance of the conspiracy is required. *See Paladin Assocs., Inc. v. Montana Power Co.*, 328 F.3d 1145, 1158 (9th Cir. 2003) (citing *United States v. Yellow Cab Co.*, 332 U.S. 218, 224–225 (1947)) (Under Sherman Act § 2, Plaintiffs must show: "an overt act in furtherance of the conspiracy …"); *Am. Steel Erectors v. Loc. Union No. 7, Int'l Ass'n of Bridge, Structural, Ornamental & Reinforcing Iron Workers*, 815 F.3d 43, 65 (1st Cir. 2016) (citing *Am. Needle, Inc. v. Nat'l Football League*, 560 U.S. 183, 190 (2010) ("the plaintiffs' accusations of horizontal conspiracy among the signatory erectors ring hollow on this record, especially in light of the rigorously enforced Section 1 demands for sufficient proof of concerted conduct")). Outside of conclusory statements, Plaintiffs do not provide support for any concerted action to restrain trade between USASF, Varsity, or Jeff Webb.[1]

Moreover, the continuing violation doctrine requires an overt act to restart the limitations period. (*See* USASF's Br. at 8-9). Plaintiffs concede that USASF's bylaws did not change from 2006 through 2022 and that each of the challenged USASF rules were adopted by no later than 2014. (*See* Pls.' Resp. to Defs.' SUF Nos. 120, 132, 137, 140, 147, 153). USASF's application of preexisting rules does not constitute the requisite overt act needed to establish a continuing violation or any ongoing conspiracy involving USASF.

---

[1] *See* Webb's Reply in Support of Defs.' Mot. to Dismiss, addressing the paucity of evidence to support a claim that Webb conspired with USASF.

Each of the "actions" identified in Plaintiffs' Response either predate the relevant time period, constitute the application of preexisting rules, reflect unilateral action by Varsity, and/or had unrefuted procompetitive justifications.

First, Plaintiffs misleadingly suggest that USASF's 125-team minimum for Worlds bid events was a post-limitations act, even though Plaintiffs concede that this rule was adopted by a neutral Sanctioning Committee in August 2014. (Pls.' Resp. to Defs.' SUF Nos. 126, 140).

Second, Plaintiffs point to certain EPs placed on probation in 2019-2020 for failing to satisfy this criterion. (Pls.' Resp. to USASF Br. at 5-7). USASF's application of its preexisting rules, however, does not constitute a "new" overt act under Sixth Circuit precedent. (*See* USASF's Br. at 8-9). Further, Plaintiffs ignore that none of the EPs placed on probation actually lost their Worlds bids, so there is no evidence from which to infer any anticompetitive purpose or effect.

Third, Plaintiffs challenge USASF's date and proximity limitations for Worlds bids but concede that this policy was adopted in 2012. (Pls.' Resp. to USASF Br. at 8). Plaintiffs' reliance on *Topco* is also misplaced because USASF's rule (1) does not reflect a permanent territory allocation amongst competitors and (2) does not assign EPs to certain territories. Moreover, there is no evidence that USASF's objective in adopting this rule was to assist Varsity in obtaining and maintaining market power, as required to find an unlawful conspiracy or concerted action.

Fourth, Plaintiffs claim that "USASF also aided Varsity to kill at least three proposals from event producers in order to protect Varsity's Summit event." (*Id.* at 9). This claim is wholly unsupported by the evidence, which largely predates the limitations period and is irrelevant since Plaintiffs concede that any Board vote rejecting them included the consensus of the non-Varsity members of USASF's Board. (Defs.' Resp. to PSOF No. 137; Pls.' Resp. to Defs.' SUF No. 122). The cited evidence also does not rule out independent motivations of USASF. (*Id.*).

3

Fifth, Plaintiffs make the unsupported claim that USASF helped Varsity with counterprogramming. (Pls.' Resp. to USASF Br. at 9-10). Plaintiffs' only examples, however, are internal Varsity communications that did not involve USASF. (*Id.* (citing Pls.' Exs. 21, 143)).

Sixth, Plaintiffs' assertion that "USASF allows Varsity to have input into proposed rule changes, and also gives Varsity early access to any changes in the rules before non-Varsity apparel companies" is disingenuous and unsupported in light of Plaintiffs' numerous concessions as to the neutrality of USASF's Image Policy, that it was adopted via a collaborative process in 2012, and that it had legitimate procompetitive justifications. (Pls.' Resp. to Defs.' SUF Nos. 147-154).

Seventh, Plaintiffs' claim that "USASF and Varsity conspired on which Cheer Apparel vendors could display their apparel at USASF and Varsity Cheer Competitions" is unsupported. Plaintiffs misleadingly cite documents relating to USASF's National Meeting, which are irrelevant. (Pls.' Resp. to USASF Br. at 11-12; Defs.' Resp. to Pls.' SUF No. 142). Another email relied on by Plaintiffs is from 2012 and describes informing companies "that they may not participate and sell products at this Mall event *because it is on Disney property*." (Pls.' Ex. 151 (emphasis added)). Not only does this predate the relevant time, but USASF's enforcement of Disney's policy against external vendors is not evidence of a conspiracy with Varsity. The other materials cited by Plaintiffs are internal Varsity emails about its competitions, none of which reflect action by USASF. (Pls.' Resp. to USASF Br. at 11; Defs.' Resp. to PSOF Nos. 142)).

Eighth, Plaintiffs take issue with language in USASF's EP agreement, which dates back to at least 2012. (Ex. DJ, VAR00402524). Regardless, Plaintiffs do not explain how it is anticompetitive or indicative of a conspiracy with Varsity for USASF to require its event producer members to comply with certain safety standards and to support USASF's Worlds competition.

4

Ninth, Plaintiffs misconstrue USASF's "insurance program." USASF's athlete insurance program was rolled out in 2014. (Ex. DI, VAR00259924). USASF provides every athlete member with accident insurance applicable at USASF-sanctioned competitions. (*Id.*). Plaintiffs' claim that it "harm[ed] Varsity's rival event producers" is unsupported. (Defs.' Resp. to PSOF No. 144).

Tenth, Plaintiffs take issue with USASF's failure to adopt proposals in 2013 and 2015 (Pls.' Resp. to USASF Br. at 13-14). These proposals predate the limitations period, and as Plaintiffs concede, their rejection was supported by the non-Varsity members of USASF's Board and by the majority non-Varsity Sanctioning Committee. (Pls.' Resp. to Defs.' SUF Nos. 122, 126).

### C. Plaintiffs Fail To Rebut USASF's Procompetitive Justifications For Its Rules.

Under the rule of reason, "[i]f the defendant is able to demonstrate procompetitive effects, the plaintiff then must show that any legitimate objectives can be achieved in a substantially less restrictive manner." *Nat'l Hockey League Players' Ass'n v. Plymouth Whalers Hockey Club*, 325 F.3d 712, 718 (6th Cir. 2003). Plaintiffs concede or fail to refute the contemporaneous documentation of procompetitive justifications for USASF's rules. (Pls.' Resp. to Defs.' SUF Nos. 116, 119, 133, 135, 136, 138, 150, 154). Further, Plaintiffs fail to show that USASF's legitimate objectives could have been achieved in a substantially less restrictive manner. Plaintiffs' failure to parse effects is further grounds for finding that Plaintiffs fail to overcome USASF's legitimate objectives. *See Nat'l Hockey League Players' Ass'n.*, 325 F.3d at 718 (rule of reason requires a court to analyze "the [alleged] restraint's effect on competition").

### D. Plaintiffs Fail To Link The Alleged Harm To Any Of USASF's Actions.

Plaintiffs assert that they "are not required . . . to isolate the price effects that resulted from the conspiracy with USASF from other anticompetitive conduct by Varsity." (Pls.' Resp. to USASF Br. at 16). Causation, however, is an element under both Sherman Act § 1 and § 2. (*See*

5

USASF Br. at 14). If USASF's conduct did not *cause* any supracompetitive pricing, then its actions were not in furtherance of any alleged antitrust conspiracy. At a minimum, Plaintiffs must link the challenged USASF policies or conduct to the alleged antitrust injury. Instead, Plaintiffs concede that USASF did not participate in any of Varsity's acquisitions and did not have any communications with Varsity regarding setting prices for competitions. (Pls.' Resp. to Defs.' SUF Nos. 128, 145). Further, Plaintiffs do not refute that *none* of the challenged USASF rules or programs resulted in a net loss of Worlds bid events by non-Varsity EPs. (*Id.* at No. 142, citing an example of an event producer placed on probation that did not ultimately lose its Worlds bid event). Plaintiffs' contention that USASF's rules "caused harm" or "foreclose[d] competition" is mere conjecture unsupported by the record. The absence of evidence showing that *any* of the alleged harm was caused by USASF's actions is fatal to Plaintiffs' claims against USASF.

### E. Plaintiffs Fail To Establish That USASF Is Liable For The Conduct Of Any Other Defendant.

All but conceding that they have not produced any evidence of conduct by USASF during the limitations period, Plaintiffs argue that joint and several liability applies and that USASF is responsible for the overt acts of other Defendants. Before USASF could be found liable for the conduct of any other Defendant, however, Plaintiffs would need to show that USASF had the specific intent to engage in a conspiracy or deliberately engaged in concerted action with those Defendants to restrain trade in particular markets. *See Cap. Imaging Assocs., P.C. v. Mohawk Valley Med. Assocs.*, 996 F.2d 537, 545 (2d Cir. 1993) ("The plaintiff's evidence must prove the actors had an intent to adhere to an agreement that was designed to achieve an unlawful objective[.]"); *see also Richter Concrete Corp. v. Hilltop Basic Resources, Inc.*, 547 F. Supp. 893, 919 (S.D. Ohio 1981) (under Sherman Act § 1, Plaintiffs must show that there was "some sort of deliberately coordinated or agreed upon behavior."); *Paladin Assocs., Inc.*, 328 F.3d at 1158

6

(citation omitted) (under Sherman Act § 2, Plaintiffs must show "specific intent to monopolize")). The record is devoid of any such evidence.

### F. Plaintiffs Concede USASF's Non-Involvement In Apparel, Camps, And School Cheer.

Plaintiffs concede that USASF had no involvement in school competitions, USASF's rules do not apply to School cheer or camps, and USASF is not in the apparel industry. (Pls.' Resp. to Defs.' SUF Nos. 62, 64-65, 146, 156-159). There is no evidence of any agreement between USASF and any other Defendant with respect to any of these "markets." Further, Plaintiffs present no evidence—aside from their own speculation—that USASF had anything to gain from Varsity's alleged monopolization of "markets" in which USASF had no involvement. *See Weber v. Nat'l Football League*, 112 F. Supp. 2d 667, 671 (N.D. Ohio 2000) (quoting *Riverview Investments, Inc. v. Ottawa Community Improvement Corp.*, 899 F.2d 474, 483 (6th Cir. 1990)) ("The Sixth Circuit has ruled that a conspiracy may not be inferred under the Sherman Act 'if there is no economic motive to conspire and there is non-conspiratorial explanation for alleged conspiratorial conduct.'"). Plaintiffs are required to produce competent evidence of an antitrust conspiracy resulting in an antitrust injury in each of the challenged markets. *See, e.g.*, *Netafim Irrigation, Inc. v. Jain Irrigation, Inc.*, 562 F. Supp. 3d 1073, 1081 (E.D. Cal. 2021) (emphasis added) ("Setting the relevant market boundaries is a critical first step as it enables the court to assess issues regarding market share, the defendant's ability to lessen or destroy competition, and the alleged antitrust injury."). In the absence of any evidence of *any* conduct by USASF *at all* in these "markets," USASF is entitled to summary judgment.

Respectfully submitted,

<u>s/ Nicole Berkowitz Riccio</u>
Grady Garrison (TN #008097)
Nicole D. Berkowitz (TN #35046)
James Andrew Roach (TN #37934)
BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, PC
165 Madison Avenue, Suite 2000
Memphis, TN 38103
Phone: (901) 526-2000
Fax: (901) 577-0866
ggarrison@bakerdonelson.com
nriccio@bakerdonelson.com
aroach@bakerdonelson.com

*Attorneys for U.S. All Star Federation, Inc.*