# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
### WESTERN DIVISION

**JESSICA JONES, et al.,**

               Plaintiffs,

v.

**VARSITY BRANDS, LLC, et al.**

               Defendants.

Case No. 2:20-cv-02892-SHL-tmp

**JURY DEMAND**

---

## PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO REQUIRE ADHERENCE WITH FORMATTING REQUIREMENTS OF LOCAL RULE 7.1

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ................................................................................................................1

ARGUMENT ......................................................................................................................2

I.      PLAINTIFFS' SUMMARY JUDGEMENT OPPOSITION IS DOUBLE-SPACED..........2

        A.      Double-Spacing Means Line Spacing That Is Twice the Size of the Font. ..............2

        B.      Defendants' Interpretation Is Flawed. .......................................................................4

        C.      The Cases That Defendants Cite Are Not Persuasive. ...............................................7

II.     DEFENDANTS' MOTION APPEARS TO BE IMPROPERLY MOTIVATED ...............10

III.    DEFENDANTS' MOTION IS PETTIFOGGERY ...........................................................11

CONCLUSION ................................................................................................................12

## INTRODUCTION

Defendants' Motion to "Require Adherence with Formatting Requirements of Local Rule 7.1" ("Motion") accuses Plaintiffs of engaging in formatting mischief. Defendants say they were surprised to discover that Plaintiffs' Opposition to Defendants' Motion for Summary Judgment contained "approximately 27 lines on each page." Defendants cry foul, because they say that when they used Microsoft Word's automatic "double" line setting feature, Word provided Defendants with only 23 lines per page. They thus ask the Court to hold that the Local Rules' double-spacing requirement must be interpreted differently than that term has been understood and used by writers, printers, and typographers for generations. Instead, Defendants insist that term should be used to mean the settings determined by what the software programmers at Microsoft or other word-processing programs decide to use for their "double" line setting and regardless of how those programmers arbitrarily change those settings over time. But as Plaintiffs' typography expert explains, "double spacing" has an objective meaning, derived from the historical precedent of the typewriter: it means line spacing that is double the size of the typeface font. That interpretation makes common sense, finds historical support, and does not require litigants to purchase a license to specific commercial word-processing products or to be subject to the vagaries of the software over time. Plaintiffs' Opposition brief employed 12-point font and 24-point line spacing. That is double-spacing. Plaintiffs complied with the rule requirement as that requirement is widely and broadly understood.[1]

Defendants' interpretation, which Defendants put forward without any principled basis, is flawed for numerous reasons. It ignores the details and techniques of typography and historical practice. Microsoft's automatic "double" line setting feature was chosen to be more than twice the size of the font (roughly 233%) and is subject to the arbitrary decisions of Microsoft. Indeed,

---

[1] Plaintiffs submit that it is likely that many people assume that Microsoft Word's "double" line spacing setting provides precise double-spacing. Plaintiffs submit that many people would be surprised to learn that Microsoft Word's "double" line setting was actually intentionally designed to provide more line space than double-spacing.

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO REQUIRE ADHERENCE WITH FORMATTING REQUIREMENTS OF LOCAL RULE 7.1**

it was changed to provide more space before its 2007 version release. Nor is it even consistent between fonts. Following Defendants' strained interpretation of the Local Rules leads to absurd results and is not objectively applicable. Perhaps that is why Defendants do not put forward any principled reason why their interpretation of "double-spacing" is the correct interpretation.

Moreover, Defendants' motion insinuates that Plaintiffs have engaged in some form of formatting gamesmanship. But the facts prove just the opposite. Defendants never objected to Plaintiffs' use of 24-point spacing previously, which has been used throughout the duration of this case. In fact, the very first document ever filed in this case was filed in 24-point spacing, with up to 28 lines per page. *See* ECF No. 1 (Pls' Compl.). And Defendants conveniently omit from their paper that Defendants themselves have filed documents with the Court in 24-point spacing. *See* ECF No. 207.

Although courts in different jurisdictions have come to different conclusions about what their Local Rules' "double-spacing" means, the courts that have held that double-spacing means spacing that is twice the size of the font are far more persuasive. The courts that have required parties to use Microsoft Word's proprietary "double" line setting are not persuasive and do real damage to interpreting rules in a common-sense, objective, and fair manner. Courts should not interpret their Local Rules to require the use of Microsoft Word or other commercial products, particularly where the term "double-spacing" long predates word-processing software and has an objective meaning. Plaintiffs submit that the energy of the parties, and the Court, is far better spent on other endeavors.

**ARGUMENT**

**I.     PLAINTIFFS' SUMMARY JUDGEMENT OPPOSITION IS DOUBLE-SPACED**

**A.     Double-Spacing Means Line Spacing that Is Twice the Size of the Font.**

The Local Rules require that all papers filed with the Court be "double-spaced." *See* L.R. 7.1(b). Double-spacing means line spacing that is twice the size of the font. *See* M. Butterick, *Typography for Lawyers* at 137 (2d ed., 2015) (*available at*

---

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO REQUIRE ADHERENCE WITH FORMATTING REQUIREMENTS OF LOCAL RULE 7.1**

https://typographyforlawyers.com/line-spacing.html) (excerpts of which are attached as Exhibit A); *see also* Decl. of M. Butterick ¶¶ 10, 18. Thus, because the Local Rules require papers to use 12-point font, double-spacing means line-spacing that is 24-points. *Id.* Plaintiffs' Opposition to all of Defendants' Motions for Summary Judgment, ECF Nos. 477-485, 488-1, used exactly 24-point spacing. *See* Decl. of D. Seidel ¶ 10. Thus, there is no dispute that Plaintiffs' filing was double-spaced in compliance with Local Rule 7.1(b). Matthew Butterick, the author of *Typography for Lawyers*, has measured one of Plaintiffs' Opposition filings with a pica-scale Schaedler Precision ruler. Decl. of M. Butterick ¶¶ 11–12. He found Plaintiffs' filing to be double-spaced. *Id.*at 12.

The reason that double-spacing means twice the size of the font originates from the typewriter. "Most courts adopted their line-spacing standards in the typewriter era." *Typography for Lawyers* at 137. That's why most courts' local rules call for double-spaced lines. "On a typewriter, each line is the height of the font," and, with each carriage return, a typewriter could only move the paper in increments of one line at a time. *Id.*; *see also* Decl. of M. Butterick at 18. "[T]hus double spacing means twice the font size." *Typography for Lawyers* at 137. "So if you're required to use a 12-point font, double line spacing means 24 points." *Id.*

Several courts that have considered this issue are in accord. *See, e.g.*, *Sameer v. Khera*, No. 1:17-CV-01748-DAD-EPG, 2018 WL 3472557, at *1 (E.D.Cal. 2018) ("This means that the font of documents filed with the Court in this case must be drafted using Times New Roman with a minimum font size of 12-point, with footnotes a minimum of 11-point, and that line spacing of such documents . . . must be double-spaced meaning, at minimum, 24-point line spacing."); *Swenson v. Amtrak*, No. 2:14-CV-02629-KJM-CMK, 2015 WL 6447493, at *6 (E.D. Cal. 2015) ("An amended complaint shall be filed within twenty-one days. In the interest of an efficient resolution of this matter, it must be printed in typeface no smaller than twelve-point Times New Roman with a spacing twenty-four points or greater, i.e., double spacing."). Indeed, in addition to being consistent with the meaning of the term through decades of practice, it is common sense that double-spacing means line spacing that is "double" the font size. There is no other

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO REQUIRE ADHERENCE WITH
FORMATTING REQUIREMENTS OF LOCAL RULE 7.1

reasonable interpretation of "double-spaced" in this context because there is nothing other than the font size—which determines the height of the lines of text—to be doubled. Thus, arguing that Plaintiffs failed to double-space their brief despite acknowledging that Plaintiffs' line spacing is precisely double the font size is frivolous. At least one court has granted sanctions against a party for raising such an argument. *See Focally LLC v. Win Elements, LLC*, No. EDCV 21-2105 JGB (KKx), 2022 WL 19827474, at *6-8 (C.D. Cal. 2022) (holding that a defendant's motion to strike a plaintiffs' opposition for using 24-pt spacing rather than Microsoft Word's proprietary "double" line setting was subject to sanctions, because not only was it "objectively baseless" since 24-pt spacing is double-spacing, but also because "the real problem with Defendants' filing is . . . the sheer audacity of advancing such a meritless argument").

Interpreting the term "double-spaced" to mean line spacing that is double the font size is the common-sense interpretation, and comports with what it has always meant, dating to the era of the typewriter. It is also the superior interpretation from a practical perspective because it is objective, not subject to change or dispute, is readily verifiable, and does not require the use of any specific word-processing software.

### B.      Defendants' Interpretation Is Flawed.

Defendants' vague interpretation of what "double-spaced" means is flawed for numerous reasons. Defendants contend that "double-spaced" does not actually mean anything is doubled, but instead means using the arbitrary "double" line setting found in Microsoft Word, Google Docs, or Apple Pages, or, in the alternative, that it means using exactly 28-point spacing for 12-

point fonts.[2] There is no principled reason to adopt either interpretation and Defendants provide none. Requiring conformity with the arbitrary settings on specific word-processing software (1) is not objective; (2) would create real formatting mischief; and (3) would improperly require the use of specific commercial software for access to the courts.

First, interpreting the term "double-spaced" in the Local Rules to mean conforming to Microsoft Word or other commercial word-processing programs' proprietary "double" line setting is not objective. Microsoft Word and other commercial products have arbitrarily chosen to make their own "double" line setting to be roughly 233% line spacing, contrary to what its name suggests. *See* Ex. A, *Typography for Lawyers* at 138. In fact, Microsoft changed what its "single" and "double" line settings did around 2006. *See* Ex. B (Microsoft blog post). At the time, Microsoft stated that they decided to add "a bit of space between each line within the paragraph" because it looked better, increasing each "line" to roughly 115% of the font size (that's why the current "double" setting in Word is roughly 230%). And in that article, Microsoft acknowledged that they were not following what "double-spacing" actually meant, saying that "double-spaced would be 200%." *Id.* There is thus no dispute that Microsoft's "double" line setting is arbitrarily chosen by Microsoft, is greater than double-spacing, and can be changed by Microsoft at any time.

Moreover, Microsoft's "double" line setting is not even consistent from font to font. Although Microsoft's "double" line setting provides roughly 233% line spacing, the formula that Microsoft uses is partially dependent on metadata within each specific font, not just the font size.

---

[2] Of course, there is no reasonable interpretation of "double-spaced" to mean 28-point spacing with 12-point font. Defendants do not even make clear whether they believe "double-spacing" under the rules requires that a litigant must use the "double" line setting in Microsoft Word, Google Docs, or Apple Pages, or whether it actually means using exactly 28-point spacing, which is, of course, more than double spacing. Indeed, despite Defendants' un-cited assertions to the contrary, Defendants cannot dispute that MS Word's "double" line setting is close to, but is not the same as 28-point spacing. Thus, to ask the Court to hold that the Local Rules require exactly 28-point spacing, when that neither comports with the historical interpretation nor with MS Words' more complex "double" line setting formula finds no support at all. It also demonstrates why resorting to MS Word to interpret the Local Rules is highly problematic.

*See* Decl. of M. Butterick at ¶ 21. Thus, in Microsoft Word, two fonts set to 12-point size, both set to "double" line spacing, might still end up with different line spacing on the page. *Id.* And Microsoft may adjust its "double" line spacing formula without Courts and users even being aware of the change.

The same appears to be true of other word-processing programs. For example, the two other programs mentioned by Defendants—Google Docs and Apple Pages—do not even use the identical formula in setting the line spacing under their own proprietary "double" line spacing. For example, in Apple Pages, a document set to 1-inch margins, 12-point Times New Roman font, with Apple Pages' "double" line setting yields 22 lines per page. The identical settings in Microsoft Word, using Word's "double" line setting will yield 23 lines per page. *See* Decl. of D. Seidel ¶¶ 6–7; *Compare* Exs. E and F. Thus, Defendants are simply incorrect when they claim without citation that "all widely-used word processing programs, including Microsoft Word, Google Documents, and Apple Pages, use 28 'points' of spacing when set to double-space lines." *See* Defs' Mot., ECF No. 509 at 1. Not only are those three programs' "double" spacing settings not the same as exactly 28-point spacing, but they are not even the same with respect to each other.

Second, Defendants' interpretation of the rule would provide for significant formatting gamesmanship, because there are numerous word-processing programs, and each may (and often do) apply a different "double" line spacing formula.[3] If the rule were that litigants must use the "double" line spacing setting of whichever word-processing program they prefer, litigants could simply choose the word-processing program with the tightest "double" line spacing. Indeed, under such an interpretation, new word processing programs could be designed such that their own proprietary "double" spacing setting is less than 200%, perhaps specifically for lawyers to get more lines per page. And whether a litigant was in compliance or not would hinge merely on

---

[3] *See, e.g.*, Stacy Fischer, 12 Best Free Alternatives to MS Word (Feb. 2, 2023) (available at https://www.lifewire.com/free-word-processors-1356338).

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO REQUIRE ADHERENCE WITH
FORMATTING REQUIREMENTS OF LOCAL RULE 7.1

whether they could supply a declaration stating that they used the "double" spacing setting on their word-processor of choice.

Third, and perhaps must fundamentally, the Local Rules of courts should not require the use of any specific commercial product, such as Microsoft Word.[4] Access to courts is a fundamental right. And access to courts should never be conditioned on using a particular commercial product. If courts mandated line-spacing based on the behavior of any specific word-processing program, access to courts would be conditioned on purchasing a license to that program. Fortunately, the Local Rules do not require the use of Microsoft Word or any other specific program. Nor do the Local Rules state that "double-spacing" is defined by the behavior and arbitrary choices made by specific word-processing programs. The Local Rules simply state that papers filed with the Court must be "double-spaced." L.R. 7.1(b). Defendants invite the Court to issue an order holding that "double-spacing" under the Local Rules does not mean what it has always meant in plain English and must instead be interpreted consistent with the proprietary behavior of Microsoft Word or other programs. Defendants' invitation should be rejected.

### C.   The Cases that Defendants Cite Are Not Persuasive.

Defendants put forward no principled reason why their opportunistic interpretation should be adopted. Rather, Defendants merely cite several cases, which wrongly required the use of Microsoft Word in order to submit filings to the Court. But notably, Defendants do not put forward any rationale for why those courts were correct. Considering the above analysis, this Court should simply find those cases unpersuasive.

In the case that Defendants cite first, *P.G. ex rel. D.G. v. City Sch. Dist. of New York*, No. 14 CIV. 1207(KPF), 2015 WL 787008, at *1 (S.D.N.Y. Feb. 25, 2015), the Court held:

---

[4] Indeed, the Local Rules do not require the use of any commercial word processing software at all. Under the Local Rules, parties may submit typewritten materials. If a lawyer desires to submit typewritten papers, it would be impossible for them to use a commercial word-processing software's "double" line setting. They could only employ true "double-spacing," which would be exactly 24-point line spacing. Defendants' strained position does not take this into account at all.

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO REQUIRE ADHERENCE WITH FORMATTING REQUIREMENTS OF LOCAL RULE 7.1**

"Plaintiffs' counsel abused the page limit and violated the Local Rules by reducing the line spacing to slightly less than double-spaced." The Court did not state what spacing the Plaintiffs used. The court only held that it was "less than double-spaced." Thus, it is reasonable to assume that the plaintiffs in that case may have used line-spacing less that 24-point spacing.[5] Moreover, to the extent the Court in that case meant to hold, without any explanation or analysis, that "double-spaced" briefs requires litigants to use the "double" line spacing setting in Microsoft Word, the Court simply got it wrong. *See* Ex. A, *Typography for Lawyers* at 137–39. Notably, the court provided no analysis of the issues.

In *Doubleday Acquisitions*, however, the Northern District of Georgia court did perform an analysis of the relevant issues. *See Doubleday Acquisitions LLC v. Envirotainer AB*, No. 1:21-CV-03749-SCJ, 2022 WL 18777366, at *1–4 (N.D. Ga. July 1, 2022). But unfortunately, the court in *Doubleday* came to the wrong conclusion, ultimately holding that "[A] common sense understanding of 'double spaced' in the context of word processing along with the practical application of that understanding . . . quickly leads to the conclusion that 'double spaced' refers to the standard 'double' setting for spacing in [Word] rather than '[28] Point' spacing." *Id.* at *3 (quoting *Duke Energy Carolinas*, LLC, 2022 WL 1081850, at *2.). Thus, the Northern District of Georgia held that its Local Rules "require parties to use a word processor's default double-spacing option rather than exact spacing." *Id.*

But for the reasons explained above, that ruling is not persuasive and should not be followed. First, the court in *Doubleday* misunderstood the defendants' argument, believing that defendants were arguing that "[Microsoft] Word's default double spacing is an obsolete relic of the typewriter era." *Id.* at *2. The court got it exactly backwards. *See supra* Section I.A. Because with each carriage return typewriters advance the sheet of paper one line at a time, which was equivalent to the size of the font, double-spacing has historically always meant line spacing that is exactly twice the font size. The Court believed the opposite was true.

---

[5] The local rules in that case required, just like in this jurisdiction, that briefs be filed in 12-point font and be "double-spaced." *See* NY R USDCTS&ED Civ Rule 11.1(b).

Second, the court in *Doubleday* had ample reason to believe that the defendant in that case was not being genuine with the court, because the defendant had consistently used Microsoft Words' double line spacing setting until a brief in which its request for additional pages was denied. *See Doubleday,* 2022 WL 18777366, at *2. Although that should have been irrelevant—since the only question was whether the brief complied with the local rules—upon questioning, the lawyer apologized for his or her conduct rather than maintaining the principled interpretation of "double-spacing." *Id.* Here, Plaintiffs have been consistent, and in fact, Defendants themselves have submitted papers which Defendants now contend violated the Local Rules. *See infra* Section II.

Third, the *Doubleday* court simply failed to appreciate the perils of holding that its local rules should be interpreted to require litigants to use Microsoft Word or other word-processing software's proprietary "double" line spacing settings. To be sure, the Court was correctly concerned with interpreting the Local Rules in a manner that would "establish uniformity," and "fairness." *Id* at *3. But the court mistakenly came to the conclusion that would do the opposite. As explained above, holding that litigants must use the "double" setting of any word-processing program (as the Court in *Doubleday* ultimately held) destroys uniformity, because each word-processing program may use a different "double" setting formula, and may change its "single" and "double" line setting formulas from one version to the next, just as Microsoft did in 2006. *See* Ex C.

Similarly, requiring that litigants use Microsoft Word, or any specific word-processing program does not promote fairness because litigants should not have to acquire a license to any specific program for access to the courts. In order to promote uniformity and fairness, the court in *Doubleday* should have interpreted its local rules in a common sense and objective way: that double-spacing has long meant line-spacing twice the font size. That would have been the interpretation that ensures uniformity and fairness.

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO REQUIRE ADHERENCE WITH FORMATTING REQUIREMENTS OF LOCAL RULE 7.1**

## II.    DEFENDANTS' MOTION APPEARS TO BE IMPROPERLY MOTIVATED

Defendants' motion states that Defendants first discovered Plaintiffs' use of 24-point

spacing in the "process of preparing replies in support of Defendants' motion for summary

judgment." *See* Defs' Mot. at 1. But Plaintiffs have been using 24-point line spacing for many if

not most of the filings in this case. *See, e.g.*, ECF Nos. 375, 384-1, 394-1, 424, 426, 428, 430,

433, 454. In fact, the very first document ever filed in this case was filed with 24-point line

spacing. *See* ECF No. 1 (Pls' Compl.). It contained up to 28 lines per page.[6]

Moreover, Defendants themselves have filed documents with this Court in 24-point line

spacing. *See, e.g.*, ECF No. 207 (filed by Webb's counsel, Locke Lorde LLP).[7] Similarly,

Defendants have drafted numerous joint filings with Plaintiffs using 24-point line spacing. *See,*

*e.g.*, ECF Nos. 82, 91, 92, 93, 96, 209.

Defendants should have been well aware that Plaintiffs have used 24-point line spacing

since the very beginning of this case.[8] But Defendants only raised the issue for the first time after

Plaintiffs' opposed Defendants' motion for summary judgment. Plaintiffs' opposition provided

Defendants with a particularly opportunistic filing, because, since Defendants had requested and

were granted up to 100 pages of briefing, the parties' briefing on summary judgment was

voluminous. It therefore provided Defendants with the opportunity to insinuate that Plaintiffs had

unethically gained a substantial and unfair advantage over Defendants. But it was Defendants

---

[6] A page with 1-inch margins using 12-point font and 24-point line spacing should produce a document with at most 27 lines per page. *See* decl. of M. Butterick at ¶ 15. Plaintiffs' complaint has some but not all pages with 28 lines per page due to what appears to be margins that were less than 1-inch on all sides, and widow/orphan control engaged.

[7] ECF No. 207 employs 24-pont spacing for the first half of the document's text (until the line that begins "Wherefore" in bold text). The second half of the document employs line spacing that is more widely spaced than 24-point spacing.

[8] Plaintiffs have filed some documents using the "double" setting in Microsoft word, as a result of different drafters and litigation support personnel using different formatting options. But Plaintiffs' counsel has consistently maintained that 24-point line spacing with 12-point font documents is double-spacing and in full compliance with the Local Rules. Since Microsoft Word's "double" line setting is more than 24-point spacing, it too complies with the rules. *See* Decl. of D. Seidel at ¶¶ 9, 12, 13.

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO REQUIRE ADHERENCE WITH
FORMATTING REQUIREMENTS OF LOCAL RULE 7.1**

that sought to use the alleged line-spacing issue to receive an unfair advantage. Before filing their Summary Judgment Reply, Defendants raised Plaintiffs' use of 24-point spacing for the first time, and asked that Plaintiffs agree to jointly file a motion with Defendants that would have (1) forced Plaintiffs to refile their oppositions using Microsoft Word's "double" line spacing setting; and (2) would have given Defendants significantly more time to file their Reply. *See* Ex. D (Email from Defendants' counsel). Defendants threatened moving to strike Plaintiffs' opposition for allegedly not being properly double-spaced unless Plaintiffs agreed to refile and give Defendants significantly more time to reply. *Id.* It certainly appears to Plaintiffs' counsel that Defendants waited until they could use Plaintiffs' 24-point line spacing opportunistically and to try to extract more time to reply.

## III.   DEFENDANTS' MOTION IS PETTIFOGGERY

This is an important and complex case which raises many issues of civil procedure and substantive law. It implicates matters of broad social concern. Yet Plaintiffs are compelled to devote energy to petty quarrels drawing the parties' energy and attention from a resolution on the merits. Defendants cry foul because Plaintiffs used objective double-spacing, i.e., 24-point spacing, and had approximately 27 lines per page. Defendants on the other hand, relied on Microsoft Word to automatically format their papers using Word's "double" line setting, giving them approximately 23 lines per page.[9] But the Local Rules' formatting requirements do not mandate a certain number of lines per page. The Local Rules in fact allow some choices in formatting that necessarily alter the number of lines and words per page. Defendants' argument is premised on the idea that Defendants' 23-lines per page is somehow required under the local rules. Not so. For example, the Local Rules have no font requirement, as some jurisdictions do. But different fonts have different sizes even at the same 12-point size. And because Microsoft Word's "double" line setting is a formula that takes meta data from the font into account,

---

[9] Although Defendants assert that 23-lines per page is the required amount, even Defendants' briefing contains 24-lines per page. *See, e.g.*, Defs' Joint Motion For Summary Judgment, ECF No. 471 at 4.

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO REQUIRE ADHERENCE WITH
FORMATTING REQUIREMENTS OF LOCAL RULE 7.1**

different fonts will increase or decrease the number of lines and words per page. For example, had Defendants used Ariel narrow as their font and "double" as their line setting, they would have been able to fit far more text into their 100 pages of briefing. Similarly, whether a drafter employs widow and orphan control will also affect the number of lines of text per page.

The Local Rules provide requirements that must be followed. The Loal Rules do not, however, mandate the number of lines per page, or the number of words per page. And the Local Rules allow for some limited leeway in how litigants format their briefs that will ultimately have some effect on the total number of words allowed. The only question here is whether Plaintiffs' Opposition and other filings from the very beginning of this case using 24-point spacing complied with the Local Rules. As explained above, they did. Defendants' motion is pure pettifoggery. They cry foul at the slightest perceived injustice. If Defendants are truly so concerned with cramming every last word into their filings, they are free to use fonts, in compliance with the Local Rules, that maximize their briefing real estate. Plaintiffs will have no complaints.

## CONCLUSION

For the reasons stated above, the Court should deny Defendants' motion and hold that "double-spaced" in the Local Rules means line spacing that is at least double the font size. Under that interpretation, any line spacing that is at least 200% the font size would comply with the Local Rules, including Plaintiffs' 24-point spacing (200%) and Defendants' Microsoft Word "double" setting (approximately 233%).

Dated: November 2, 2023                        Respectfully submitted,

                                               By:_____/s/ Joseph R. Saveri_____
                                                        Joseph R. Saveri

                                               Joseph R. Saveri*
                                               Steven N. Williams*

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO REQUIRE ADHERENCE WITH FORMATTING REQUIREMENTS OF LOCAL RULE 7.1**

Ronnie Seidel Spiegel*+
Kevin E. Rayhill*
Elissa A. Buchanan*
David Seidel*
**JOSEPH SAVERI LAW FIRM, LLP**
601 California Street, Suite 1000
San Francisco, California 94108
Telephone: (415) 500-6800
Facsimile: (415) 395-9940
jsaveri@saverilawfirm.com
swilliams@saverilawfirm.com
rspiegel@saverilawfirm.com
krayhill@saverilawfirm.com
eabuchanan@saverilawfirm.com
dseidel@saverilawfirm.com

Van Turner Jr. (TN Bar No. 22603)
**TURNER FEILD, PLLC**
2650 Thousand Oaks Blvd., Suite 2325
Memphis, Tennessee 38118
Telephone: (901) 290-6610
Facsimile: (901) 290-6611
VTurner@TurnerFeildLaw.com

Richard M. Paul III*
Ashlea Schwarz*
**PAUL LLP**
601 Walnut, Suite 300
Kansas City, Missouri 64106
Telephone: (816) 984-8100
rick@paulllp.com
ashlea@paulllp.com

Jason S. Hartley*
**HARTLEY LLP**
101 West Broadway, Suite 820
San Diego, CA 92101
Telephone: (619) 400-5822
hartley@hartleyllp.com
Daniel E. Gustafson*
Daniel C. Hedlund*
Daniel J. Nordin*
**GUSTAFSON GLUEK PLLC**
Canadian Pacific Plaza
120 South Sixth Street, Suite 2600
Minneapolis, MN 55402

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO REQUIRE ADHERENCE WITH
FORMATTING REQUIREMENTS OF LOCAL RULE 7.1**

Telephone: (612) 333-8844
Facsimile: (612) 339-6622
dgustafson@gustafsongluek.com
dhedlund@gustafsongluek.com
dnordin@gustafsongluek.com

\* Admitted *pro hac vice*

+Located in Washington State

*Attorneys for Individual and
Representative Plaintiffs*

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO REQUIRE ADHERENCE WITH
FORMATTING REQUIREMENTS OF LOCAL RULE 7.1**