IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| JESSICA JONES and CHRISTINA LORENZEN on Behalf of Themselves and All Others Similarly Situated,<br><br>    Plaintiffs,<br><br>v.<br><br><br>VARSITY BRANDS, LLC, et al.,<br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)  No. 2:20-cv-02892-SHL-tmp<br>)<br>)<br>)<br>) |

**ORDER GRANTING IN PART AND DENYING IN PART MOTION
TO STRIKE SUPPLEMENTAL DECLARATION AND DENYING MOTION FOR
LEAVE TO FILE SURREPLY**

Before the Court is Defendants Varsity Brands, LLC; Varsity Spirit, LLC; Varsity Spirit Fashions & Supplies, LLC; U.S. All Star Federation; Charlesbank Capital Partners, LLC; Bain Capital Private Equity, LP; and Jeff Webb's (together, "Defendants") Motion to Strike the Supplemental Declaration of Jen Maki, PhD, and for Leave to File Surreply in Opposition to Plaintiffs' Motion for Class Certification, (ECF No. 458), filed June 1, 2023.  Plaintiffs Jessica Jones and Christina Lorenzen's (together, "Indirect Purchasers") filed an Opposition to the Motion, (ECF No. 460 (Sealed)), on June 15, 2023.  For the reasons stated below, the Motion to Strike is **GRANTED** in part and **DENIED** in part and the Motion for Leave to File Surreply is **DENIED**.

**BACKGROUND**

Varsity[1] is a prominent host of competitive cheerleading competitions and camps. Indirect Purchasers Jessica Jones and Christina Lorenzen are the parents of Competitive Cheer Athletes who were members of either All-Star Gym teams or school cheer teams. (ECF No. 1 at PageID 6.)  They allege that they paid artificially inflated prices for goods and services, including enrollment in cheer competitions and apparel purchased indirectly from Varsity, and seek to represent a class of all indirect purchasers of Varsity products and all entrants into Varsity or All-Star Cheer Competitions.  (Id.)

On April 7, 2021, the Court entered a Scheduling Order, which established March 18, 2022, as Indirect Purchasers' expert disclosure deadline.  (ECF No. 61.)  The Court later extended that deadline twice, first to May 18, 2022, and then to June 20, 2022.  (ECF Nos. 175, 294.)  The Court set deadlines of December 14, 2022, for Indirect Purchasers' rebuttal expert reports, and January 24, 2023, for all expert depositions to be completed.  (ECF No. 342.) Indirect Purchasers produced Dr. Maki's Expert Report on June 20, 2022, submitted her Rebuttal Report on December 14, 2022, and made her available for a deposition on January 23, 2023. (ECF No. 458 at PageID 18210–11.)

On February 10, 2023, Indirect Purchasers filed a Motion for Class Certification.  (ECF No. 387.)  Defendants filed a Response on March 31, 2023, and Indirect Purchasers filed a Reply

---

[1] The Indirect Purchasers define "Varsity" as the collective term to represent Varsity Brands, LLC; Varsity Spirit, LLC; and Varsity Fashion & Supplies, LLC.  (ECF No. 1 at PageID 4.)

2

on May 25, 2023.  (ECF Nos. 420, 453.)  In support of their Reply, Indirect Purchasers filed a declaration from Dr. Maki ("Maki Declaration").  (ECF No. 455 (Sealed).)

On June 1, 2023, Defendants filed the instant motion, requesting that the Court strike the Maki Declaration and seeking leave to file a surreply in opposition to Indirect Purchasers' Motion for Class Certification.  (ECF No. 458.)

## ANALYSIS

### I.    Motion to Strike

Rule 26 requires expert disclosures "at the times and in the sequence that the court orders." Fed. R. Civ. P. 26(a)(2)(D).  Under Rule 16, district courts have broad discretion to exclude untimely disclosed expert-witness testimony.  Boone v. Stieve, 642 F. Supp. 597, 602 (E.D. Mich. 2022) (citing Pride v. BIC Corp., 218 F.3d 566, 578–79 (6th Cir. 2000); Moore, Owen, Thomas & Co. v. Coffey, 992 F.2d 1439, 1446 (6th Cir. 1993)).

Dr. Maki complied with the Court's Scheduling Order in submitting her Expert Report and Rebuttal Report.  However, Defendants argue that the Maki Declaration is an additional Rule 26 disclosure, which should be stricken for being untimely.  (ECF No. 458 at PageID 18211.)

Indirect Purchasers assert that the Maki Declaration solely responds to Defendant's opposition to Indirect Purchasers' Class Certification motion and does not present any new opinions.  (ECF No. 460 (Sealed) at PageID 18231.)  "Reply affidavits that respond only to the opposing party's brief are properly filed with the reply brief." Key v. Shelby County, 551 F. App'x 262, 264 (6th Cir. 2014) (quoting Peters v. Lincoln Electric Co., 285 F.3d 456, 476 (6th Cir. 2002)).  A reply affidavit may respond to matters placed in issue by an opposition brief as long as it does not spring upon the opposing party new reasons to grant the motion.  See Memphis Pub. Co. v. Newspaper Guild of Memphis, Local 33091, No. 04-2620 B/P, 2005 WL

3263878, at *2 (W.D. Tenn. Nov. 30, 2005) (declining to strike reply affidavits that rebutted defenses raised in Plaintiff's Motion for Summary Judgment).

Defendants identify five "new opinions" from Dr. Maki that they contend are untimely under Rule 26. For each, the Court examines below whether the opinion is indeed "new."

First, they assert that "Dr. Maki offers a new opinion that there are no 'intermediate participants' in the chain of distribution that 'might have absorbed or not passed on any illegal overcharges . . .'" (ECF No. 458 at PageID 18211.) The portion of the Maki Declaration that Defendants object to states:

> Unlike other types of products where the products are sold through distributors or middlemen, the cheer families paid directly to the gyms, and the gyms paid directly to Varsity. There is no intermediate distributor and therefore no issue as to whether there are intermediate participants in a chain of distribution that might have absorbed or not passed on any illegal overcharges.

(ECF No. 455 (Sealed) at PageID 18176–77.)

To begin, this part of the Declaration is a direct response to the following argument made in Defendants' Response to the Motion for Class Certification:

> Plaintiffs have likewise not established that they can show passthrough to downstream purchasers (i.e. putative class members) through common proof. Dr. Maki's conclusion that 100% of any overcharged was always "passed on" to putative class members even though putative class members brought a variety of different products in a variety of different geographies <u>through a variety of different intermediaries</u> facing different competitive conditions, is not based on any economic principle or study and, thus, is essentially per se invalid.

(ECF No. 421 (Sealed) at PageID 13803–04) (emphasis added).

Further, this opinion is not new. The following statement was included in Dr. Maki's Rebuttal Report: "There is only one intermediary, the direct purchaser, separating Varsity from the indirect purchaser. The indirect purchaser is presented with a set of prices determined by Varsity for competitions, camps, and apparel. These prices are clear and straightforward and can

4

be observed by both the indirect and direct purchaser." (ECF No. 392-4 (Sealed) at PageID 12949.) Because this opinion was included in the Rebuttal Report and is in direct response to Defendants' Response brief, the Motion to Strike this opinion is **DENIED**.

Second, Defendants assert that Dr. Maki's opinion that "All Star gyms that bundle competition and apparel fees and costs 'typically increase their monthly membership fees in proportion to the increase in Varsity registration fees'" is not found in either her Expert Report or Rebuttal Report. (ECF No. 458 at PageID 18211.) This does appear to be a new opinion. Although Dr. Maki included opinions that there were markups for uniforms (ECF No. 392-3 (Sealed) at PageID 12929), competitions (ECF No. 392-4 (Sealed) at PageID 12950), and camps (Id.), neither her Expert Report nor Rebuttal Report include any information about All Star gyms increasing their monthly membership fees in proportion to Varsity's registration fees.

Indirect Purchasers argue that Dr. Maki's statement was made in direct response to Defendants' Response brief, which states "[a]lthough practices vary, gyms often bundle gym time, training, apparel, choreography, and competitions, with competitions being a relatively small portion of the total." (ECF No. 421 (Sealed) at PageID 13804.) This statement does not put the proportionality of the price increases of membership fees at issue. Because this opinion is untimely under Rule 26 and is not responding to Defendant's Response brief, the Motion to Strike this opinion is **GRANTED**.

Third, Defendants contend that "Dr. Maki brushes aside evidence of gyms absorbing increased costs as 'anecdotal' and not 'reliable,' while at the same time relying on different anecdotal evidence to support her opinions, despite having not previously opined on the relative 'reliability' of such evidence." (ECF No. 458 at PageID 18211.) This argument does not provide a basis for striking the Maki Declaration under Rule 26 because it does not pertain to a

previously undisclosed expert opinion. As a result, the Motion to Strike this opinion is **DENIED**.

Fourth, Defendants assert that Dr. Maki "makes comparisons, not found in her prior disclosures, between the supply and distribution chains in this case and in other industries." (ECF No. 458 at PageID 18211.) However, in her Rebuttal Report, Dr. Maki compares the "simple" supply chain in this case to the "long and convoluted supply chain" of the pharmaceutical industry where it is "difficult to observe pass-through." (ECF No. 392-4 (Sealed) at PageID 12949.) In the Maki Declaration, she similarly states, "The industry in question has a simple supply chain where pricing, price-setting, and pass-through occur in a straight-forward manner. This varies distinctly from other industries where there is a long complex supply chain." (ECF No. 455 (Sealed) at PageID 18180.) She then supports this opinion using the electrical wire and soda industries as illustrative examples of complex supply chains. (Id. at PageID 18181.)

Although Dr. Maki uses different industries to illustrate her point, her opinion on this issue is the same as the one included in her Rebuttal Report. Further, this portion of the Maki Declaration is in direct response to Defendant's challenge to her determination of the pass-through rate. Therefore, the Motion to Strike this opinion is **DENIED**.

Fifth, Defendants also contend that Maki "offers the new opinion that the pass through rate in this case is actually greater than the implausible 100% rate she previously testified to." (ECF No. 458 at PageID 18212.) However, in so arguing, Defendants mischaracterizes the following statement made in the Maki Declaration:

> Given that these rebates occurred after season's end and do not appear to have been passed on to cheer families, the pass-through rate appears to be greater than 100%. Despite significant evidence showing that these rebates were not passed on to parents, I used the more conservative estimate of a 100% pass-through rate.

(ECF No. 455 (Sealed) at PageID 18183.) Dr. Maki, thus, stands by the opinion in her Expert Report that "the alleged overcharges were passed through to Plaintiffs and The Class with a pass-on rate of 100%." (ECF No. 392-3 (Sealed) at PageID 12889.) Further, again, this statement was made in direct response to Defendant's assertion in their Response to Plaintiffs' Motion for Class Certification that Dr. Maki's "conclusion that 100% of any overcharge was always 'passed on' to putative class members . . . is not based on any economic principle or study and, thus, is essentially *per se* invalid." (ECF No. 420 at PageID 13751–52.) Because this is not a new opinion, the Motion to Strike this opinion is **DENIED**.

I. **Motion to File Surreply**

Defendants also request leave to file a twenty-page surreply "to address the substantial number of new arguments and material filed by Plaintiffs in connection with their reply in support of class certification." (ECF No. 458 at PageID 18215.) To support their position, Defendants point to appendices including a "Sample Proposed Special Verdict Form, a Proposed Trial Plan, and a Sample Notice Plan," as well as briefing and a chart on the issue of variations in state law. (Id.)

In general, "sur-replies are 'highly disfavored, as they usually are a strategic effort by the nonmoving party to have the last word on a matter.'" Loomis v. Unum Group Corp., 539 F. Supp. 898, 904–05 (E.D. Tenn. 2021) (citing Crenshaw v. Portfolio Recovery Assocs., LLC, 433 F. Supp. 3d 1057, 1063 (W.D. Ky. 2020)). "However, a surreply may be appropriate when the movant raises new issues in its reply brief, and the decision to permit a surreply is one within the Court's discretion." Id.

Indirect Purchasers correctly point out that the state law variation issue was raised by Defendants in their Response to Plaintiffs' Motion for Class Certification. (ECF No.

421 (Sealed) at PageID 13808–11.)  As for the other documents included in the appendices, none raise an issue not previously addressed.  Indeed, Defendants have not identified a single new argument that they did not raise in their Response.  As a result, the Motion for Leave to File a Surreply is **DENIED**.

## **CONCLUSION**

For the reasons stated above, Defendants' Motion to Strike is **GRANTED** in part and **DENIED** in part.  The Motion for Leave to File a Surreply is **DENIED**.

**IT IS SO ORDERED,** this 8th day of November, 2023.

s/ Sheryl H. Lipman<br>
SHERYL H. LIPMAN<br>
CHIEF UNITED STATES DISTRICT JUDGE