# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE
# WESTERN DIVISION

| | |
|---|---|
| JESSICA JONES and CHRISTINA LORENZEN, on Behalf of Themselves and All Others Similarly Situated,<br><br>    Plaintiffs,<br>v.<br><br><br>VARSITY BRANDS, LLC, et al.,<br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)   No. 2:20-cv-02892-SHL-tmp<br>)<br>)<br>)<br>) |

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO EXCLUDE THE TESTIMONY OF DR. JEN MAKI

Before the Court is Defendants Varsity Brands, LLC; Varsity Spirit, LLC; Varsity Spirit Fashions & Supplies, LLC; U.S. All Star Federation ("USASF"); USA Sport Cheering, d/b/a USA Cheer; Charlesbank Capital Partners, LLC; Bain Capital Private Equity, LP; and Jeff Webb's (together, "Defendants") Motion to Exclude the Testimony of Jen Maki, PhD, filed on February 10, 2023. (ECF No. 391.) Plaintiffs Jessica Jones and Christina Lorenzen (together, "Indirect Purchasers") filed a response on March 31, 2023. (ECF No. 427.) Defendants replied on April 28, 2023. (ECF No. 446.) In addition, on September 8, 2023, Defendants filed a notice of supplemental authority to further support their opposition to Indirect Purchasers' motion for class certification, Defendants' motion for summary judgment, and the instant motion. (ECF No. 476.) For the reasons stated below, the motion is **GRANTED** only as to her damages calculations for states in which Indirect Purchasers are not pursing damages. The remainder of the motion is **DENIED**.

## BACKGROUND

Varsity[1] is a prominent host of competitive cheerleading camps and competitions. The Indirect Purchasers are the parents of competitive cheer athletes who were members of either All Star Gym teams or school cheer teams. (ECF No. 1 at PageID 6.) They allege that they paid artificially inflated prices for goods and services, including enrollment in cheer competitions and apparel purchased indirectly from Varsity, and they seek to represent a class of all indirect purchasers of Varsity products and all entrants into Varsity or All Star Cheer Competitions. (Id.)

On June 20, 2022, Indirect Purchasers disclosed an expert report by Dr. Jen Maki, Managing Director at FTI Consulting Inc., where she leads the "Commercial Due Diligence offering for the Transactions practice." (ECF No. 392-3 (sealed) at PageID 12887.) On December 14, 2022, Indirect Purchasers also disclosed a rebuttal report from Dr. Maki that responded to arguments propounded by other experts. (ECF No. 392-4 (sealed).) On February 10, 2023, Defendants filed this motion, seeking to exclude Dr. Maki's testimony in its entirety.[2] (ECF No. 391.)

## LEGAL STANDARD

Courts are tasked with a gatekeeping function as to the admissibility of expert testimony. Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 597 (1993). Federal Rule of Evidence 702 requires that an expert witness be specially qualified before they can give opinion testimony:

---

[1] The Indirect Purchasers define "Varsity" as the collective term to represent Varsity Brands, LLC; Varsity Spirit, LLC; and Varsity Fashion & Supplies, LLC. (ECF No. 1 at PageID 4.)

[2] Although both Parties request oral argument on the motion (ECF No. 391 at PageID 12779, ECF No. 427 at PageID 14325), the Court finds oral argument unnecessary as the motion can be resolved on the briefs.

2

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:
>
> > (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> >
> > (b) the testimony is based on sufficient facts or data;
> >
> > (c) the testimony is the product of reliable principles and methods; and
> >
> > (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702. Thus, the opinion offered by the expert must satisfy three requirements to be admissible: "First, the witness must be qualified by 'knowledge, skill, experience, training, or education.' Second, the testimony must be relevant, meaning that it 'will assist the trier of fact to understand the evidence or to determine a fact in issue.' Third, the testimony must be reliable." In re Scrap Metal Antitrust Litig., 527 F.3d 517, 528–29 (6th Cir. 2008) (quoting Fed. R. Evid. 702); accord United States v. Rios, 830 F.3d 403, 413 (6th Cir. 2016), reh'g en banc denied.

Federal district courts have broad discretion to exclude proposed expert testimony. See Gen. Elec. Co. v. Joiner, 522 U.S. 136, 139 (1997); accord Lovelace v. Pediatric Anesthesiologists, P.A., No. 2:13-cv-02289-SHL-dkv, 2014 WL 8136184, at *1 (W.D. Tenn. Nov. 14, 2014). Once a litigant challenges the admissibility of proposed expert testimony, the proponent bears the burden of establishing, by a preponderance of the evidence, that it is admissible. Fed. R. Evid. 702 advisory committee's note to the 2023 amendments (citing Bourjaily v. United States, 483 U.S. 171 (1987)).

## ANALYSIS

Defendants' motion challenges the admissibility of Dr. Maki's opinions, offering several arguments: 1) Dr. Maki's damages calculations are based on improper methodology and use incorrect outputs; 2) her common proof opinion is without basis; and 3) the majority of her opinions are factual narratives that usurp the jury's role as factfinder. (See ECF No. 391-1.) As is explained further below, the motion is **DENIED**.

### I. Damages Calculations

Defendants first challenge Dr. Maki's damages calculations, arguing that, 1) Dr. Maki relies on "fatally flawed" overcharges put forth by Dr. Randal Heeb, 2) she overstates relevant sales, 3) her 100% pass through assumption is incorrect, and 4) she impermissibly increases her damages calculations in her rebuttal report. (See id.) Each argument is addressed below.

#### A. Use of Dr. Heeb's Overcharge Analysis

First, Defendants argue that Dr. Maki's damages calculations must be excluded because they rely on the "fatally flawed" overcharge percentages calculated by Dr. Heeb. (Id. at PageID 12792.) Defendants assert that if Dr. Heeb's overcharge opinion is excluded, then Dr. Maki's calculations and testimony based on them must be excluded as well. (Id.) However, the Court has found that Dr. Heeb's overcharge opinion is admissible. (See ECF No. 579.) Therefore, Dr. Maki's damages calculations are not excludable on that basis.

#### B. Overstating Sales

Next, Defendants argue that Dr. Maki's damages calculations should be reduced because: 1) schools do not always charge their cheerleaders, and gyms may "eat" the costs of competitions; 2) booster clubs or other fundraising efforts could assist cheerleader families in paying fees; 3) gyms might "pool" funds from families and remit the payments directly to Varsity (arguing that therefore the direct purchaser is merely a "conduit"); 4) some payments

4

included in Dr. Maki's calculations might have been from sideline cheer teams and not competitive cheer teams; and 5) Indirect Purchasers cannot recover damages from purchases made in states that have no indirect purchaser repealer statute. (ECF No. 391-1 at PageID 12793–96.)

First, Defendants challenge Dr. Maki's damages calculations because she assumes that every sale involving a gym or school's payment to Varsity was accompanied by an "indirect purchase" by a putative class member. (ECF No. 391-1 at PageID 12793.) They argue that she failed to consider that some schools did not charge their cheerleaders anything to participate on the team or charged only a flat activity fee that was not linked to what the school may pay Varsity. (Id.) Additionally, Varsity asserts that sometimes gyms would "eat" the costs of a competition when an athlete did not pay. (Id.) Indirect Purchasers counter that Dr. Maki excluded revenue from direct sales without an indirect purchase made to Varsity, reducing Varsity's sales revenue by $80 million. (ECF No. 428 (sealed) at PageID 14355–56.)

Defendants' attack on the data used by Dr. Maki to calculate relevant sales is a factual dispute suitable for cross-examination. See Best v. Lowe's Home Centers, Inc., 563 F.3d 171, 180 (6th Cir. 2009) (citing Daubert, 509 U.S. at 596). Where, as here, an expert has used a reliable method to conclude that the Indirect Purchasers has suffered an injury, potential issues such as those pointed out by Defendants do not warrant the exclusion of relevant testimony. (Id.)

Second, Defendants argue that Dr. Maki failed to account for instances where booster clubs or fundraising efforts covered costs for cheerleading families. (ECF No. 391-1 at PageID 12793.) Indirect Purchasers respond that whether an indirect purchaser engaged in fundraising from third-party sources is irrelevant. (ECF No. 428 (sealed) at PageID 14356.) They contend that "[f]undraising for cheer families for the purpose of those cheer families making an indirect purchase to Varsity does not absolve Varsity from anticompetitive overcharges or remove the

5

overcharge from class damages." (Id. at PageID 14357.)  Additionally, they argue that even if it did, this factual issue is not a basis to exclude Dr. Maki's testimony.

The Court agrees with the Indirect Purchasers.  Whether these transactions should be excluded is a factual contention that is properly addressed on cross-examination.  See Best, 563 F.3d at 180.

Third, Defendants argue that:

> Even in the case where parents or cheerleaders pay the gym or school in the first instance, the payment is often a direct purchase from Varsity and not part of Plaintiffs' case.  For example, when a school or gym pools money from a cheerleading team and then remits that money to Varsity, the team members, not the entity, are the direct purchasers[.]  When such an intermediary acts as a mere conduit for the sale, never acquires the product or service, and takes no risk in the transaction, the payer (here the cheerleader or parent) is a direct, not indirect, purchaser.

(ECF No. 391-1 at PageID 12793–94) (internal citations omitted).  Again, questions concerning whether these transactions should be included in Dr. Maki's damages calculations are factual disputes which can be addressed on cross-examination.

Fourth, Defendants contend that Dr. Maki employed an "invalid methodology for excluding sales related to sideline school cheerleading." (Id. at PageID 12794.)  Specifically, they object to her inclusion of all sales to a school if the school attended a single competition or camp during the putative class period.  (Id.)  Whether these sales should be a part of Dr. Maki's damages calculations, again, goes to the weight her opinion, not her methodology.  See Universal Surveillance Corp. v. Checkpoint Sys., Inc., No. 5:11-CV-1755, 2015 WL 6082122, at *8 (N.D. Ohio Sept. 30, 2015) (admitting expert opinion because the accuracy of data underlying a reliable methodology goes to the weight of the opinion, not its admissibility).  As stated above, this issue can be addressed on cross-examination.

6

Fifth, Defendants argue that Dr. Maki calculated damages for states where no indirect purchaser claims are permitted. (ECF No. 391-1 at PageID 12795.) In her initial report, Dr. Maki performed damages calculations for a nationwide damages class. (ECF No. 392-3 (sealed) at PageID 12893.) In her rebuttal report, Dr. Maki provided damages calculations for the states in which Indirect Purchasers have brought state antitrust claims, as well as calculations for all fifty states. (ECF No. 392-4 (sealed) at PageID 12967–73.)

The Court previously struck the Nationwide Damages Class. (ECF No. 475 at PageID 19527.) Further, in ruling on Defendants' original motion to dismiss, the Court dismissed "Plaintiffs' claims under the antitrust laws of Alaska, Colorado, Illinois, and Alabama, as well as the Tennessee claims related to the Cheer Camp and Cheer Competition markets" (ECF No. 333 at PageID 7251), and Plaintiffs' claims under the consumer protection laws of, inter alia, Colorado and Illinois on that basis (Id. at PageID 7252). Indirect Purchasers cannot recover for dismissed claims, and thus any related damages calculations are irrelevant. In re Scrap Metal Antitrust Litig., 527 F.3d at 528–29.

As a result, the motion to exclude the damages calculations for claims by Indirect Purchasers from states that have been dismissed is **GRANTED**. In addition, damages calculations related to states where there have never been any claims are not relevant and thus **EXCLUDED**. However, Defendants' motion to exclude damages calculations based on her misstatement of relevant sales is otherwise **DENIED**.

C.     Pass Through

In her initial report, Dr. Maki states, "[b]ased on review of qualitative data, the overcharge [pass through] rate is 100 percent." (ECF No. 392-3 (sealed) at PageID 12929.) Defendants argue that this opinion must be excluded because it was not based on any economic

7

principle or study. (ECF No. 392 (sealed) at PageID 12837.) Further, Defendants contend that Dr. Maki overlooks evidence that goes against her pass through opinion.

Dr. Maki explains that "[p]ass through is a term used by economists to indicate the amount of a price increase or overcharge that is passed on to the end customer." (ECF No. 392-4 (sealed) at PageID 12949.) She details her methodology in her rebuttal report:

> In the current context, the pass through rate is a measure of how much of the Varsity overcharge is passed onto parents vs. absorbed by All-Star gyms.
>
> The level of complexity related to determining pass through varies by industry and the relevant part of the supply chain being analyzed. If there is a very long supply chain with many steps separating the suppliers from the ultimate purchasers, it can be difficult to observe pass through. For example consider an industry like pharmaceuticals where there is a long and convoluted supply chain. Raw materials are sourced from many suppliers, manufactured by another, and then the final dosage form is sold to a wholesaler/distributor who then contracts with another intermediary (a pharmacy benefit manager) who then sells to a pharmacy. The consumer then faces a price that may be set by the insurer or reduced through the use of a coupon.
>
> Cheer, and in particular the very narrow part of the supply chain relevant to this case, is much less complex which makes it easier to evaluate pass through. There is only one intermediary, the direct purchaser, separating Varsity from the indirect purchaser. The indirect purchaser is presented with a set of prices determined by Varsity for competitions, camps, and apparel. These prices are clear and straightforward and can be observed by both the indirect and direct purchaser. These prices are presented to participants at the start of the season and participants are informed that they will face a set of explicit costs in order to participate. For example, parent information clearly indicates that competition attendance is required to participate in Competitive Cheer and All-Star registration packets inform potential participants of this expected cost. Participants agree to pay these costs as a term and condition of participation.
>
> Once the purchasing decisions have been made for a specific season, the prices for apparel, competitions, and camps are known and the direct purchaser would be well positioned to communicate these prices to the indirect buyer. This means that at the beginning of a season, the All-Star gym or school would be able to set the prices that parents pay at an amount to cover the direct, third party costs. Based on these dynamics, it is unreasonable to assume that pass through related to Varsity purchases is anything less than 100 percent.
>
> . . .

8

> I use the facts of the industry to confirm the full pass through rate of the anticompetitive overcharge for competitions, camps and apparel. The key factors I rely upon are as follows:
>
> a. Assertions of purchasers indicate full pass through: Review of All-Star gym registration forms and assertions by All-Star gym owners via deposition and response to subpoenas indicate that the price passed onto parents is the full cost of the item and may include an additional upcharge. This is the opposite of any form of cost sharing and suggests a pass through rate of 100 percent. ACE Cheer states that "we charge the athlete the registration fee for each event." Gymnastics Sports Center provided actual costs for competitions and the amount charged to parents which showed that parents were charged more than the actual competition costs while apparel was charged at "actual cost." Woodlands Elite's price list indicates that the competition fees are "estimated" at the beginning of the season which suggests that they are based on the actual competitions attended and their respective costs. Liberty Cheer also makes clear that competition fees are estimates stating "we reserve the right to modify dates, times and costs" throughout their Open Call package. They also note that an 'in-house credit' is provided if a competition is cancelled and not replaced with another event rather than issuing a refund. In relation to upcharges, CNY Cheer Company indicated that competition fees do not have an upcharge but camps do.
>
> b. Sustainable business practices and basic microeconomic theory suggest full pass through: Pricing below cost is an unsustainable practice. Many All-Star gyms are small businesses and would have little ability to absorb a portion of all the costs for competitions, camps, or apparel.
>
> c. Basic commercial practices suggest a minimum of full pass through. When a firm sells a product or service obtained from a third party, it is standard to apply a mark-up. Products sold at retailers are generally not sold at cost but at an amount that covers cost and provides a profit. Selling at cost would be unprofitable for a firm as the profit margin goes to cover costs related to selling that product.

(ECF No. 392-4 (sealed) at PageID 12949–51.)

Admittedly, Dr. Maki does not perform a quantitative analysis of pass through. Instead, she performs a qualitative analysis, applying economic theory to the evidence in this case. There are four factors to consider when analyzing the reliability of the reasoning or methodology underlying expert testimony: 1) whether a method has been tested, 2) whether it has been peer reviewed, 3) whether it has a high rate of error, and 4) whether it is generally accepted within the

9

relevant community. Daubert, 509 U.S. at 592–94. The use of qualitative analysis in determining pass through is an accepted methodology, particularly where the data is insufficient for quantitative analysis. See Hosp. Auth. of Metro. Gov. of Nashville & Davidson Cnty. Tenn. v. Momenta Pharm., Inc., 333 F.R.D. 390, 401 (M.D. Tenn. 2019) (finding that expert testimony on pass through that was based on economic theory that "pharmacies would pass through higher costs of generic enoxaparin to their customers, including uninsured patients" was sufficient); In re Blood Reagents Antitrust Litig., MDL No. 09-2081, 2015 WL 6123211, at *11 (E.D. Pa. Oct. 19, 2015) (finding that regression analysis was not required or appropriate in damages calculations when there is insufficient data).

In Momenta Pharmaceutical, Inc., the court found an expert's damages calculation admissible despite the fact that he performed no quantitative statistical analysis. 333 F.R.D. at 401. In his report, the expert performed a "back casting" analysis that purported to show that the overcharges to putative class members were incurred from Defendants' alleged anticompetitive conduct and generic enoxaparin prices that would have manifested in a "but for" world absent Defendants' activity. Id. He then supported this analysis with economic literature regarding the effects of inter-generic competition. Id. The court found the expert report reliable because 1) it was based on sufficient facts and data (wholesale pharmaceutical data, defendants' internal documents and the case record); 2) it was grounded in reliable principles and methods (back casting and deference to economic literature); and 3) it was applied reasonably to the facts of the case. Id.

That is the case here as well. Dr. Maki's opinion is based on sufficient facts and data (gym registration forms and assertions by All Star gym owners through deposition testimony and responses to subpoenas), is grounded in reliable principles and methods (qualitative analysis applying microeconomic theory and basic commercial practices), and is applied reasonably to

10

the facts of the case. See Babcock Power, Inc. v. Kapali's, 854 F. App'x 1, at *8–9 (6th Cir. 2021) (affirming district court's denial of a motion to exclude expert who used "recognized methods" with a "reasonable factual basis"). Although Defendants may disagree with the methodology Dr. Maki used to calculate the pass through rate and the data she used to reach that conclusion, they have not demonstrated that this opinion is inadmissible under Daubert.[3] Defendants' avenue for challenging this methodology, its application, and the underlying data is cross-examination. L.E. Cooke Co., 991 F.2d at 342 (citing 0.161 Acres of Land, 837 F.2d at 1040.)

The motion to exclude this opinion is **DENIED**.

D.  Increased Damages in Rebuttal Report

In her rebuttal report, Dr. Maki offers higher damages calculations than those included in her initial report. (ECF No. 392 (sealed) at PageID 12844.) Defendants argue that these new figures must be excluded because they are untimely. (ECF No. 391-1 at PageID 12803–04.)

In her rebuttal report, Dr. Maki updated her calculations based on revised overcharge figures from Dr. Heeb's rebuttal report. (ECF No. 392-4 (sealed) at PageID 12960.) Dr. Maki used the same methodology with the new data to arrive at the updated figures. (Id.)

Federal Rule of Civil Procedure 26(e)(2) provides that "the party's duty to supplement [an expert report] extends both to information included in the report and to information given during the expert's deposition. Any additions or changes to this information must be disclosed by the time the party's pretrial disclosures [ ] are due." Fed. R. Civ. P. 26(e)(2); see also Fed. R. Civ. P. 26(a)(2)(B) & (a)(3)(B). Parties must supplement or correct disclosures "in a timely manner if

---

[3] In ruling that this opinion is admissible under Daubert, the Court is not determining that this methodology is sufficient to prove damages for either class certification or at the merits stage.

11

the party learns that in some material respect the disclosure or response is incomplete or incorrect[.]" Fed. R. Civ. P. 26(e)(1)(A).

"Amended or supplemental expert reports are . . . permitted where the expert is correcting a damages calculation based on information that was not available when the expert prepared the initial report, as long as the expert does not rely on an entirely new legal theory in correcting his supplementation." ASC Engineered Sols., LLC v. Island Indus., Inc., No. 2:20-cv-02284-JPM-cgc, 2021 WL 2941989, at *2 (W.D. Tenn. July 13, 2021) (citing Antioch Co. Litig. Tr. v. McDermott Will & Emery, LLP, Case No. 3:09-cv-218, 2016 WL 8257680, at *2 (S.D. Ohio July 15, 2016)).

Here, Dr. Maki incorporates the new data and corrections from Dr. Heeb's rebuttal report, and then repeats her calculations to arrive at these numbers. This supplementation is proper under Rule 26(e)(1)(A). Id.

For the reasons stated above, Defendants' motion to exclude Dr. Maki's damages calculations is **DENIED**.

## II.     Common Proof Opinion

Defendants also challenge Dr. Maki's opinion that damages can be calculated using "common proof." (ECF No. 392 (sealed) at PageID 12845.) They argue that Dr. Maki's opinion is "merely the anodyne and circular observation that a method that multiplies a purported overcharge amount that applies to all purchasers by the total of those purchases is 'common.'" (Id.) Indirect Purchasers respond that Defendants appear to misread Dr. Maki's report as offering an opinion on the standards applicable to the predominance factor under Rule 23. (ECF No. 428 (sealed) at PageID 14366.) Instead, Dr. Maki explained that in calculating damages, she was able to run her calculation using "common evidence." (Id. at PageID 14367.)

Assuming that Dr. Maki's opinion impacts the analysis of the predominance factor under Rule 23, this issue can be addressed at class certification, not at the Daubert stage. Therefore, the motion to exclude this opinion is **DENIED**.

### III.   Use of Factual Narrative

Finally, Defendants assert that many of Dr. Maki's opinions are factual narratives that do not aid the trier of fact. (ECF No. 391-1 at PageID 12807.) They do not identify any specific sections of her report as suffering from this flaw except for the "Background" section. Otherwise, Defendants generally assert that Dr. Maki "simply makes factual assertions with footnotes to various deposition testimony or documents." (ECF No. 392 (sealed) at PageID 12847.)

"'[A]n expert cannot be presented to the jury solely for the purpose of constructing a factual narrative based upon record evidence.'" Shall v. Suzuki Motor of Am., Inc., No. 4:14-CV-00074-JHM, 2020 WL 1162193, at *5 (W.D. Ky. Mar. 10, 2020) (citing In re Fosamax Prods. Liab. Litig., 645 F. Supp. 2d 164, 192 (S.D.N.Y. 2009); Highland Cap. Mgmt., LP v. Schneider, 379 F. Supp. 2d 461, 469 (S.D.N.Y. 2005)). To the extent such evidence is admissible, it is "properly presented through percipient witnesses and documentary evidence." Id. (citing Tillman v. C.R. Bard, Inc., 96 F. Supp. 3d 1307, 1330 (M.D. Fla. 2015)). "However, as opposed to providing a mere factual narrative, [an] expert is allowed to articulate the 'factual underpinning' upon which [he or she] bases [his or her] opinion." Id. (quoting Pledger v. Reliance Tr. Co., No. 1:15-CV-4444-MHC, 2019 WL 4439606, at *12 (N.D. Ga. Feb. 25, 2019)).

Here, Indirect Purchasers confirm that they have no intention of using Dr. Maki to provide a factual narrative. (ECF No. 428 (sealed) at PageID 14368.) Instead, each of Dr. Maki's factual recitations were included to provide adequate disclosure of the facts on which she

13

relied to form her opinions. Because this sort of testimony is admissible, the motion to exclude this testimony is **DENIED**.

## **CONCLUSION**

For the reasons stated above, Defendants' Motion to Exclude the Testimony of Jen Maki, PhD is **GRANTED** only as to her damages calculations for states in which Indirect Purchasers are not pursing damages. The remainder of the motion is **DENIED**.

**IT IS SO ORDERED,** this 6th day of March, 2024.

                                                                                    s/ Sheryl H. Lipman
                                                                                     SHERYL H. LIPMAN
                                                                                     CHIEF UNITED STATES DISTRICT JUDGE