UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| JONES, et al., | |
| Plaintiffs, | Case No. 2:20-cv-02892-SHL-cgc |
| v. | |
| VARSITY BRANDS, LLC, et al., | |
| Defendants. | |

## DEFENDANT JEFF WEBB'S ANSWER TO PLAINTIFFS' SECOND AMENDED COMPLAINT CLASS ACTION

Defendant Jeff Webb ("Webb"), through his undersigned counsel, hereby files his Answer to Plaintiffs' Second Amended Complaint Class Action [ECF No. 489] (the "Second Amended Complaint"), and respectfully states as follows:

The Second Amended Complaint contains numerous headings and subheadings, to which no response is required. To the extent a response is required, Webb denies the allegations in each and every heading and subheading of the Second Amended Complaint.

With respect to all allegations in the Second Amended Complaint, Webb denies that he engaged in any conspiracy, scheme, enterprise, or other wrongdoing, or that he is liable to Plaintiffs for any damages they may claim. To the extent any allegation is not specifically admitted, it is denied.

In providing this Answer, Webb does not concede that he bears the burden of proof on any of the following issues for his defenses to the Second Amended Complaint.

## ANSWER

1.     Paragraph 1 states legal conclusions and consists of characterizations of Plaintiffs' case, to which no response is required.  To the extent a response is required, Webb denies the allegations in Paragraph 1.

2.     With respect to the allegations in the first three sentences of Paragraph 2, Webb admits solely that competitive cheer can involve teams of athletes that may be affiliated with private gyms or schools, and utilize tumbling, stunting, pyramids, and dance, in competitions against other teams of athletes.  With respect to the last sentence of Paragraph 2, Webb admits solely that some cheer competitions may operate under rules and regulations of rule-making organizations, and that the USASF is only one such rule-making organization.  Webb otherwise denies the allegations in Paragraph 2.

3.     Paragraph 3 states legal conclusions to which no response is required.  To the extent a response is required, Webb denies the allegations in Paragraph 3.

4.     With respect to the allegations in the first sentence of Paragraph 4, Webb admits that Varsity manufactures and sells apparel, accessories, and equipment that athletes may use in cheer competitions and cheer practices.  The second sentence of Paragraph 4 states a legal conclusion and Plaintiffs' characterization of the case, to which no response is required.  To the extent a response is required, Webb denies the allegations in the second sentence of Paragraph 4. Webb denies the remaining allegations in Paragraph 4.

5.     With respect to the allegations in the first sentence of Paragraph 5, Webb admits solely that some athletes may participate in cheer throughout most of the year.  With respect to the allegations in the second sentence of Paragraph 5, Webb admits solely that for many cheerleaders,

cheer competitions take place during the school year and that many cheer camps are held in the summer.  Webb denies the remaining allegations in paragraph 5.

6.     Webb denies the allegations in Paragraph 6.

7.     Paragraph 7 states a legal conclusion to which no response is required.  To the extent a response is required, Webb admits solely that Paragraph 7 identifies claims Plaintiffs assert in this action and that the Western District of Tennessee has jurisdiction over such claims.  Webb denies the remainder of the allegations in Paragraph 7.

8.     Paragraph 8 states a legal conclusion to which no response is required.  To the extent a response is required, Webb admits solely that he is subject to the jurisdiction of the Western District of Tennessee in this action.

9.     Paragraph 9 states a legal conclusion to which no response is required.  To the extent a response is required, Webb admits solely that venue is proper in the Western District of Tennessee.

10.    Webb denies the allegations in Paragraph 10.

11.    Paragraph 11 states a legal conclusion to which no response is required.  To the extent a response is required, Webb denies the allegations in Paragraph 11.

12.    Webb denies the allegations in Paragraph 12.

13.    Webb lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 13, which relate to a person other than Webb.  Webb otherwise denies the allegations asserted in Paragraph 13.

14.    Webb lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 14, which relate to a person other than Webb.  Webb otherwise denies the allegations asserted in Paragraph 14.

15.     Webb admits the allegations in Paragraph 15, except that Varsity Brands, LLC has a principal place of business in Dallas, Texas, not Memphis, Tennessee.

16.     Webb admits the allegations in Paragraph 16.

17.     Webb admits the allegations in Paragraph 17.

18.     Webb admits the allegations in the first sentence of Paragraph 18.  With respect to the remaining allegations in Paragraph 18 Webb admits solely that USASF promulgated and enforced rules that govern certain cheer competitions in the United States, and produces one cheer competition each year.  Webb otherwise denies the allegations in Paragraph 18.

19.     With respect to the allegations in Paragraph 19, Webb admits solely that he is a resident of Memphis, Tennessee and the founder of Varsity Brands, LLC.  Webb otherwise denies the allegations in Paragraph 19.

20.     Webb lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 20.

21.     Webb lacks knowledge or information sufficient to form a belief about the truth of the allegations in the first sentence of Paragraph 21.  Webb denies the remaining allegations in Paragraph 21.

22.     Webb lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 22.

23.     Webb lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 23.

24.     Webb lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 24.

25.     Webb lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 25.

26.     Webb lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 26.

27.     Paragraph 27 states legal conclusions to which no response is required.  To the extent a response is required, Webb denies the allegations in Paragraph 27.

28.     Webb lacks knowledge or information sufficient to form a belief about the truth of the allegations in the first sentence of Paragraph 28.  Webb denies the remaining allegations in Paragraph 28.

29.     Webb lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 29.

30.     With respect to the allegations Paragraph 30, Webb admits solely that Bain has had an interest in Varsity since 2018, but lacks knowledge or information sufficient to form a belief about the nature of such interest.  Webb otherwise lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 30.

31.     Webb lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 31.

32.     Webb lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 32.

33.     Webb lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 33.

34.     Webb lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 34.

35.     With respect to the allegations in Paragraph 35, Webb admits solely that some of the individuals named served as directors of Varsity.   Webb otherwise lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 35.

36.     Webb lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 36.

37.     Webb denies the allegations in Paragraph 37.

38.     Paragraph 38 states legal conclusions to which no response is required.   To the extent a response is required, Webb denies the allegations in Paragraph 38.

39.     Paragraph 39 states legal conclusions to which no response is required.   To the extent a response is required, Webb denies the allegations in Paragraph 39.

40.     Paragraph 40 states legal conclusions to which no response is required.   To the extent a response is required, Webb denies the allegations in Paragraph 40.

41.     Paragraph 41 characterizes Plaintiffs' complaint and states legal conclusions to which no response is required.   To the extent a response is required, Webb denies the allegations in Paragraph 41.

42.     The first, second, and third sentences of Paragraph 42 state legal conclusions and present Plaintiffs' characterization of the case, to which no response is required.   To the extent a response is required, Webb denies the allegations in the first, second, and third sentences of Paragraph 42.   The allegations in the last sentence of Paragraph 42 refer to a quote on a website. Webb lacks knowledge or information sufficient to form a belief about the truth of the allegations in the last sentence of Paragraph 42.   Webb otherwise denies the allegations in Paragraph 42.

43.     Paragraph 43 states a legal conclusion to which no response is required.   To the extent a response is required, Webb denies the allegations in Paragraph 43.

44.     Paragraph 44 characterizes Plaintiffs' action and states legal conclusions to which no response is required.  To the extent a response is required, Webb denies the allegations in Paragraph 44.

45.     Paragraph 45 characterizes Plaintiffs' action and states legal conclusions to which no response is required.  To the extent a response is required, Webb denies the allegations in Paragraph 45.

46.     Paragraph 46 characterizes Plaintiffs' action and states legal conclusions to which no response is required.  To the extent a response is required, Webb denies the existence of a class on behalf of whom Plaintiffs may bring this action.

47.      Paragraph 47 characterizes Plaintiffs' action and states legal conclusions to which no response is required.  To the extent a response is required, Webb denies the allegations in Paragraph 47.

48.     Paragraph 48 characterizes Plaintiffs' action and states legal conclusions to which no response is required.  To the extent a response is required, Webb denies the allegations in Paragraph 48.

49.     Paragraph 49 characterizes Plaintiffs' action and states legal conclusions to which no response is required.  To the extent a response is required, Webb denies the allegations in Paragraph 49.

50.     Paragraph 50 characterizes Plaintiffs' action and states legal conclusions to which no response is required.  To the extent a response is required, Webb denies the allegations in Paragraph 50.

51.     Paragraph 51 states legal conclusions to which no response is required.  To the extent a response is required, Webb denies the allegations in Paragraph 51.

52.     Paragraph 52 states legal conclusions to which no response is required.  To the extent a response is required, Webb denies the allegations in Paragraph 52.

53.     Webb lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 53, which refer to the knowledge of persons or entities other than Webb.  Webb otherwise denies the allegations in Paragraph 53.

54.     Paragraph 54 states legal conclusions to which no response is required.  To the extent a response is required, Webb denies the allegations in Paragraph 54.

55.     Webb denies the allegations in Paragraph 55.

56.     With respect to the allegations in the first sentence of Paragraph 56, Webb admits that some cheer competitions can involve routines that last 2 minutes and 30 seconds, are set to music, and incorporate elements of tumbling, stunting, pyramids, and synchronized dance, and that some competitive routines are set to music.  With respect to the allegations in the second sentence of Paragraph 56, Webb admits solely that cheer competitions can involve routines that integrate elements from school cheerleading, which might include fight songs and spirit cheers. With respect to the allegations in the third and fourth sentences of Paragraph 56, Webb admits that cheerleading can be athletically rigorous and technically challenging, requiring strength, flexibility, endurance, effort, coordination, focus, and cooperative teamwork, among other skills. Webb otherwise denies the allegations in Paragraph 56.

57.     With respect to the allegations in the first sentence of Paragraph 57, Webb admits solely that cheer routines during competitions are intended to be the focus of such competitions. With respect to the allegations in the second sentence of Paragraph 57, Webb admits solely that some athletes participate in cheer year-round, that competitions take place in the fall, winter, and

spring, and some camps are held in the summer.  Webb otherwise denies the allegations in Paragraph 57.

58.      Webb lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in Paragraph 58, which relate to individuals other than Webb.  Webb otherwise denies the allegations in Paragraph 58.

59.      With respect to the allegations in the first and second sentences of Paragraph 59, Webb admits solely that teams consisting of cheer athletes participate in cheer competitions, often compete against other teams, and that teams competing at these events may receive scores for their routines.  With respect to the third, fourth, and fifth sentences of Paragraph 59, Webb admits solely that cheer competitions can draw participants who live locally to the competition, in the same region as the competition, or who travel from various parts of the United States to attend a competition.  Webb admits further that participants at the UCA, NCA, and USA Championships competitions may come from various parts of the United States.  The allegations in the last sentence of Paragraph 59 are vague and ambiguous with respect to the phrase "conducted under the auspices of the USASF," and Webb admits solely that the referenced competitions are sanctioned by the USASF.  Webb otherwise denies the allegations in Paragraph 59.

60.      With respect to the allegations in the first sentence of Paragraph 60, Webb admits solely that cheer competitions can last one, two, three, four days, or more.  Webb lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations contained in Paragraph 60.

61.      With respect to the allegations in Paragraph 61, Webb admits solely that Varsity offers many popular events under a variety of brand names in various parts of the country, including events hosted at Walt Disney World Resort in Orlando, Florida, which has served as a

vendor hosting Varsity events for many years.  Webb lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations contained in Paragraph 61.

62.     With respect to the allegations in Paragraph 62, Webb admits solely that all-star cheer, school cheer, and recreation cheer are distinguishable categories of competitive cheerleading, and that all-star cheer teams are typically affiliated with private gyms, while school cheer teams are typically affiliated with educational institutions, including middle schools, high schools, or colleges.  Webb lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations contained in Paragraph 62.

63.     With respect to the allegations in the first sentence of Paragraph 63, Webb admits solely that all-star cheer athletes typically join teams affiliated with private gyms.  Webb lacks knowledge or information sufficient to form a belief about the truth of the allegations in the second sentence of Paragraph 63.  Webb otherwise denies the allegations contained in Paragraph 63.

64.     With respect to the allegations in the first five sentences of Paragraph 64, Webb admits solely that all-star cheer competition events may involve time-limited routines that are set to music and consist of a variety of elements, including tumbling, stunting, pyramids, and dance, and that those elements can involve various skills.  With respect to the last two sentences of Paragraph 64, Webb admits solely that all-star cheer events can involve teams from various locations and various age groups competing against one another.  Webb otherwise denies the allegations in Paragraph 64.

65.     Webb admits the allegations in the first two sentences of Paragraph 65.  Webb denies the allegations in the third sentence of Paragraph 65.  With respect to the allegations in the fourth sentence of Paragraph 65, Webb admits solely that divisions at competitions sanctioned by USASF are typically defined in accordance with USASF rules.  With respect to the remaining

allegations in Paragraph 65, Webb admits solely that participation in all-star cheer can involve various fees and expenses, but not all participants pay all fees identified in Paragraph 65.  Webb otherwise denies the allegations in Paragraph 65.

66.     With respect to the allegations in the first sentence of Paragraph 66, Webb admits solely that participants in school cheer typically join teams that are affiliated with educational institutions, including middle schools, high schools, or colleges.  With respect to the allegations in the second sentence of Paragraph 66, Webb admits solely that payment structures for school cheer can vary and that some athletes' families pay fees to the school, which in turn may pay Varsity for entry fees, uniforms, and equipment.  Webb otherwise lacks knowledge or information sufficient to form a belief about the truth of the allegations in the second sentence of Paragraph 66.  Webb otherwise denies the allegations in Paragraph 66.

67.     With respect to the allegations in Paragraph 67, Webb admits solely that some cheer competitions involve school cheer teams that perform cheers that they might also use when cheering at other sporting events or spirit events.  Webb otherwise lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 67.

68.     With respect to the allegations in the first sentence of Paragraph 68, Webb admits solely that the National Cheerleading Association and Universal Cheer Association are Varsity Spirit brands that produce school cheer competitions and cheer camps, and that both put on competitions that award national championships.  Webb lacks knowledge or information sufficient to form a belief about the truth of the allegations in the second and third sentences of Paragraph 68.  Webb otherwise denies the allegations contained in Paragraph 68.

69.     Webb lacks knowledge or information sufficient to form a belief about the truth of the allegations in the first and second sentences of Paragraph 69.  Webb otherwise denies the allegations contained in Paragraph 69.

70.     With respect to the allegations in the second sentence of Paragraph 70, Webb admits solely that Varsity helped found USA Cheer and has worked with the National Federation of State High School Associations ("NFHS") to provide opportunities for high school students to participate in competitive cheerleading.  Webb admits further that Varsity owns the NCA and UCA national championships at which school cheerleaders participate.  The last sentence of Paragraph 70 purports to contain a modified quote attributed Webb, but does not identify the source of the purported quote.  Therefore, Webb lacks knowledge or information sufficient to form a belief about the truth of the allegations in the last sentence of Paragraph 70.  Webb otherwise denies the allegations contained in Paragraph 70.

71.     With respect to the allegations in Paragraph 71, Webb admits solely that some students participate in both all-star cheer and school cheer, and that the time of year in which students participate in all-star cheer and school cheer can vary.  Webb lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 71.

72.     With respect to the allegations in Paragraph 72, Webb admits solely that through the Impact Program, Varsity works with schools to provide rebranding and other benefits to the schools.  Webb otherwise denies the allegations contained in Paragraph 72.

73.     With respect to the allegations in Paragraph 73, Webb admits solely that the USASF publishes rules governing all-star cheer, and that Varsity, among other companies, manufactures

and sells shoes that can be worn in cheer competitions.  Webb otherwise denies the allegations contained in Paragraph 73.

74.      With respect to the allegations in Paragraph 74, Webb admits solely that Varsity began to sell cheer apparel in or around 1980.  Webb otherwise denies the allegations contained in Paragraph 74.

75.      The allegations in Paragraph 75 refer to statements made by persons or entities other than Webb.  Webb admits solely that such statements appeared in publications.  Webb otherwise denies the allegations contained in Paragraph 75.

76.      With respect to the allegations in Paragraph 76, Webb admits solely that some cheer athletes participate in multi-day overnight camps, and that some such camps occur in the summer and are paid for by cheer athletes.  Webb otherwise lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 76.

77.      The phrases "integral part of" and "dominant player in the market" are vague and ambiguous.  Therefore, Webb admits solely that Varsity offers cheerleading camps but otherwise lacks knowledge or information sufficient to form a belief about the truth of the allegations in the first sentence of Paragraph 77.  Webb lacks knowledge or information sufficient to form a belief about the truth of the allegations in the second sentence of Paragraph 77.  Webb otherwise denies the allegations contained in Paragraph 77.

78.      With respect to the allegations in Paragraph 78, Webb admits solely that Varsity offers cheer camps to various age groups, many of which are high school and college-aged athletes.  Webb lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 78.

79.     With respect to the allegations in Paragraph 79, Webb admits solely that Varsity offers various cheerleading camps under various brands, including UCA, NCA, United Spirit Association, and V!ROC.  Webb otherwise lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 79.

80.     With respect to the allegations in the first sentence of Paragraph 80, Webb admits solely that Varsity produces high quality cheer camps in the United States.  The allegations in the second sentence of Paragraph 80 are vague and ambiguous in failing to identify whether "its portfolio" refers to NCA or UCA.  With respect to the allegations in the second sentence of Paragraph 80, Webb admits solely that that after he founded UCA, cheer camps and training were among the key offerings to UCA's customers.  Webb otherwise denies the allegations in Paragraph 80.

81.     With respect to the allegations in Paragraph 81, Webb admits solely that Varsity acquired United Spirit Association.  Webb otherwise lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 81.

82.     With respect to the allegations in Paragraph 82, Webb admits solely that Varsity acquired United Special Events.  Webb otherwise lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 82.

83.     With respect to the allegations in Paragraph 83, Webb admits solely that the Varsity and National Spirit Group businesses combined in 2004, and that NCA operated cheerleading camps.  Webb otherwise lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 83.

84.     Webb admits the allegations in Paragraph 84.

85.     With respect to the allegations in Paragraph 85, Webb admits solely that Varsity produces a large number of competitions that attract large numbers of athletes, and that Varsity also offers many cheer camps.  Webb otherwise lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 85.

86.     Webb denies the allegations in Paragraph 86.

87.     Webb admits the allegations in the first sentence of Paragraph 87.  Webb denies the remaining allegations in Paragraph 87.

88.     With respect to the allegations in Paragraph 88, Webb admits solely that Varsity organizes and operates cheer camps that many athletes choose to attend each year.  Webb denies the remaining allegations in Paragraph 88.

89.     Webb lacks knowledge or information sufficient to form a belief about the truth of the allegations in the first and second sentences of Paragraph 89.  Webb otherwise denies the allegations contained in Paragraph 89.

90.     Webb denies the allegations in Paragraph 90.

91.     Webb admits the allegations in the first, second, and third sentences of Paragraph 91.  Webb lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 91.

92.     Webb admits the allegations in the first sentence of Paragraph 92.  The second sentence of Paragraph 92 is vague and ambiguous with respect to the phrase "quickly rose the ranks," and, therefore, Webb denies the allegations in the second sentence of Paragraph 92.  The last sentence of Paragraph 92 refers to a statement made by individuals or entities other than Webb.  Webb admits solely that such statements appeared in a 1991 article in *Sports Illustrated*.  Webb otherwise denies the allegations contained in Paragraph 92.

93.     With respect to Paragraph 93 Webb admits solely that he stopped working at NCA and formed the Universal Cheerleaders Association ("UCA") in 1974.  Webb otherwise denies the allegations contained in Paragraph 93.

94.     With respect to the allegations in Paragraph 94, Webb admits solely that the company he founded eventually was named Varsity Spirit, and that UCA is a brand that is owned by Varsity Brands.  Webb otherwise denies the allegations in Paragraph 94.

95.     Webb admits the allegations in Paragraph 95.

96.     Webb admits the allegations in Paragraph 96.

97.     With respect to the allegations in Paragraph 97, Webb admits solely that at some point Varsity's name became Varsity Brands, and that in approximately 2003 Leonard Green & Partners acquired an ownership interest in Varsity.   Webb otherwise lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 97.

98.     With respect to the allegations in Paragraph 98, Webb admits solely that Charlesbank Capital Partners acquired an interest in Varsity in 2014.  Webb otherwise lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 98.

99.     Webb lacks knowledge or information sufficient to form a belief about the truth of the allegations in the first and second sentences of Paragraph 99.  The remaining allegations in Paragraph 99 references a written document.  With respect to those allegations, Webb admits solely that the quoted statements appear in the document.  Webb denies the remaining allegations in Paragraph 99.

100.    With respect to the last sentence of Paragraph 100, Webb admits solely that he received more than $30 million, some of which he co-invested back into Varsity, in compensation

for his participation in a long-term incentive plan and an employee stock ownership plan. Webb lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations Paragraph 100.

101.    With respect to the allegations in Paragraph 101, Webb admits solely that representatives from Charlesbank served on Varsity's Board of Directors after the 2014 transaction. Webb lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 101.

102.    Webb denies the allegations in Paragraph 102.

103.    Webb lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 103.

104.    Webb denies the allegations in the second sentence of Paragraph 104. The last two sentences of Paragraph 104 refer to a written document. With respect to those allegations, Webb admits solely that the quoted statements appear in the written document. Webb lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 104.

105.    Webb denies the allegations in the last sentence of Paragraph 105. Webb lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 105.

106.    Webb denies the allegations in the last sentence of Paragraph 106. Webb lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 106.

107.    With respect to the allegations in Paragraph 107, Webb admits solely that Bain Capital Private Equity acquired an interest in Varsity in July 2018. Webb otherwise lacks

knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 107.

108.    Webb lacks knowledge or information sufficient to form a belief about the truth of the allegations in the first sentence of Paragraph 108.  The allegations in the last sentence of Paragraph 108 refer to a written document.  Webb admits solely that a graphic with the quoted words appear in the document.  Webb otherwise denies the allegations in Paragraph 108.

109.    Webb lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 109.

110.    With respect to the allegations in Paragraph 110, Webb admits solely that he received compensation in connection with the 2018 transaction in which Bain acquired an interest in Varsity.  Webb otherwise lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 110.

111.    Webb lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 111.

112.    Webb lacks knowledge or information sufficient to form a belief about the truth of the allegations in the second and third sentences of Paragraph 112.  Webb denies the remaining allegations in Paragraph 112.

113.    Webb lacks knowledge or information sufficient to form a belief about the truth of the allegations in the second and third sentences of Paragraph 113.  Webb denies the remaining allegations in Paragraph 113.

114.    The allegations in the last sentence of Paragraph 114 refers to a written document. With respect to those allegations, Webb admits solely that the referenced document contains the

quoted words.  Webb otherwise lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 114.

115.    Webb denies the allegations in the first sentence of Paragraph 115.  Webb lacks knowledge or information sufficient to form a belief about the remaining allegations in Paragraph 115.

116.    With respect to the allegations in the first sentence of Paragraph 116, Webb admits solely that Varsity provided input to ESPN Wide World of Sports at Walt Disney World Resort in connection with the building of a multipurpose arena so the arena could effectively host cheerleading competitions.  With respect to the allegations in the second sentence of Paragraph 116, Webb admits solely that the referenced arena hosted the UCA and UDA College Cheerleading and Dance Team National Championship in 2018, and that it has hosted events for other sports and for cheerleading organizations other than Varsity.  The allegations in the last sentence of Paragraph 116 refer to a purported quote from Webb.  Webb admits solely that the referenced quote appeared in various publications.  Webb otherwise lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 116.

117.    The allegations in the last sentence of Paragraph 117 refer to statements made by persons or entities other than Webb.  Webb admits solely that such statements appear in a February 22, 2016 publication.  Webb otherwise denies the allegations in Paragraph 117.

118.    With respect to the allegations in Paragraph 118, Webb admits solely that the Varsity and National Spirit Group businesses combined in 2004, and that National Spirit Group had been the parent company of the National Cheerleading Association and the National Dance Association.  Webb lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 118.

119.     With respect to the allegations in Paragraph 119, Webb admits solely that Varsity acquired Spirit Festival in 2011.  Webb otherwise lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 119.

120.     With respect to the allegations in Paragraph 120, Webb admits solely that Varsity acquired Spirit Holdings, which owned CHEERSPORT, CheerLogistics, and Universal Spirit in or around 2012, and that CHEERSPORT hosted a large competition in Atlanta, Georgia.  Webb otherwise lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 120.

121.     With respect to the allegations in Paragraph 121, Webb admits solely that Varsity acquired Cheer Limited in 2014, and that Cheer Limited produced the CANAM event.  Webb otherwise lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 121.

122.     With respect to the allegations in Paragraph 122, Webb admits solely that Varsity acquired The JAM Brands in 2015.  The allegations in the last sentence of Paragraph 122 refer to statements made by persons or entities other than Webb.  Webb admits solely that such statements appear in a February 22, 2016 publication.  Webb otherwise denies the allegations in Paragraph 122.

123.     With respect to the allegations in Paragraph 123, Webb admits solely that The JAM Brands produced cheer competition events, involving various divisions, and that it owned various brands, including Cheerleaders of America and America's Best.  Webb otherwise lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 123.

124.     With respect to the allegations in the first sentence of Paragraph 124, Webb admits solely that The JAM Brands produced competitions, including The MAJORS, U.S. Finals, and

JAMFest Cheer Super Nationals.  With respect to the allegations in the last sentence of Paragraph 124, Webb admits solely that there were some events where The JAM Brands did not charge spectator admission.  Webb otherwise lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 124.

125.     Webb denies the allegations in Paragraph 125.

126.     The allegations in Paragraph 126 refers to the contents of written documents.  Webb admits solely that the referenced statement appeared in a letter.  Webb otherwise lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 126.

127.     With respect to the allegations in Paragraph 127, Webb admits solely that Varsity acquired Aloha Productions, Spirit Celebrations, Mardi Gras Spirit, and Epic Brands sometime after Varsity had acquired The JAM Brands.  Webb otherwise lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 127.

128.     With respect to the allegations in the first sentence of Paragraph 128, Webb admits solely that Varsity acquired Just Briefs in 2010.  The last sentence of Paragraph 128 refers to a statement made by individuals or entities other than Webb.  Webb admits solely that such statement appeared in a 2017 article in the *New York Post*.  Webb lacks knowledge or information to admit or deny the remaining allegations in Paragraph 128.

129.     Webb admits that Varsity acquired BSN in 2012 for approximately $460 million, and that BSN thereafter became a wholly owned subsidiary of Varsity.  Webb denies the allegations in the second sentence of Paragraph 129.  With respect to the third sentence of Paragraph 129, Webb admits solely that BSN had a direct sales force.  Webb lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 129.

130.     Webb admits that in 2015, Varsity Brands acquired Allgoods, LLC, which was an apparel company based in Texas that primarily sold team-branded apparel.  Webb otherwise lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 130.

131.     With respect to the allegations in Paragraph 131, Webb admits solely that Varsity typically does not provide space for other apparel producers to sell apparel inside venues hosting Varsity-owned competitions.  Webb otherwise denies the allegations in Paragraph 131.

132.     With respect to the allegations in Paragraph 132, Webb admits solely that Varsity has provided cheerleading rule-making and governing bodies with some funding, staff, and office space to help with the creation and development of those rule-making and governing bodies.  Webb otherwise denies the allegations in Paragraph 132.

133.     Webb lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 133.

134.     Webb admits solely that Varsity and other event producers helped create the USASF in 2003, and that Varsity provided financing for the USASF in the form of an interest free loan.  Webb otherwise denies the allegations in Paragraph 134.

135.     Webb denies the allegations in the first sentence of Paragraph 135.  With respect to the allegations in the second and third sentences of Paragraph 135, Webb admits solely that Varsity was the original holder of the "U.S. All Star Federation" and "USASF" trademarks, and that Varsity provided the USASF with office space and assisted the USASF with accounting and human resources functions, including payroll and telephone services.  With respect to the allegations in the last sentence of Paragraph 135, Webb admits solely that some costs for The Cheerleading Worlds were billed to Varsity.  Webb otherwise denies the allegations in Paragraph 135.

136.     Webb admits that certain trademarks were assigned to the USASF in 2017.  With respect to the allegations in the second sentence of Paragraph 136, Webb admits solely that the USASF has published uniform rules and judging guidelines for cheer competitions.   Webb otherwise denies the allegations in Paragraph 136.

137.     Webb lacks knowledge or information sufficient to form a belief about the truth of the allegations in the first two sentences of Paragraph 137.  Webb otherwise denies the allegations in Paragraph 137.

138.     With respect to the allegations in Paragraph 138, Webb admits solely that some USASF employees worked out of offices at Varsity's headquarters in Memphis, Tennessee for a number of years.  Webb otherwise denies the allegations in Paragraph 138.

139.     With respect to the allegations in Paragraph 139, Webb admits solely that UCA, CheerSport, NCA, USA, American Cheerleaders Association, Universal Dance Association, and JAMFest are all brands that are currently owned by Varsity.  Webb lacks knowledge or information sufficient to form a belief about the truth of the allegations in the first sentence of Paragraph 139. Webb otherwise denies the allegations in Paragraph 139.

140.     Webb lacks knowledge or information sufficient to form a belief about the truth of the allegations in the second and third sentences of Paragraph 140.  Webb denies the allegations in the first sentence of Paragraph 140.

141.     Webb lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 141.

142.     With respect to the allegations in Paragraph 142, Webb admits solely that it reflects the URL for the USASF's website.  Webb otherwise lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 142.

143.     With respect to the allegations in Paragraph 143, Webb admits solely that the NFHS writes rules for many high school sports in the United States and that Varsity entered into an agreement to be a corporate partner with the NFHS.  Webb otherwise lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 143.

144.     With respect to the first two sentences of Paragraph 144, Webb admits solely that Varsity helped create USA Cheer in 2007, and that USA Cheer provides services for all-star and school cheer programs.  The third sentence of Paragraph 144 refers to a statement by persons or entities other than Webb.  Webb admits solely that such statement appears on the USA Cheer website.  Webb otherwise lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 144.

145.     Webb denies the allegations in Paragraph 145.

146.     Webb lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 146.

147.     Webb denies the allegations in Paragraph 147.

148.     With respect to the allegations in Paragraph 148, Webb admits solely that he is the founder of Varsity and that he often represented Varsity at public events throughout his time with the company.  Webb otherwise denies the allegations in Paragraph 148.

149.     With respect to the allegations in the first sentence of Paragraph 149, Webb admits solely that Charlesbank acquired an interest in Varsity in 2014, but lacks knowledge or information sufficient to form a belief about the nature of such interest.  Webb denies the allegations in the second sentence of Paragraph 149.  Webb lacks information or knowledge sufficient to form a belief about the remaining allegations in Paragraph 149.

150.     With respect to the allegations in Paragraph 150, Webb admits solely that Bain acquired an interest in Varsity in 2018, but lacks knowledge or information sufficient to form a belief about the nature of that interest.  Webb otherwise denies the allegations in Paragraph 150.

151.     The allegations in the first sentence of Paragraph 151 are vague and ambiguous with respect to the phrase "Varsity's major Cheer Competitions."  With respect to the allegations in the first sentence of Paragraph 151, Webb admits solely that athletes must receive bids to participate in certain Varsity competitions.  With respect to the allegations in the second sentence of Paragraph 151, Webb admits solely that certain end-of-season cheer competitions are held at Walt Disney World.  Webb otherwise denies the allegations in Paragraph 151.

152.     Webb denies the allegations in Paragraph 152.

153.     With respect to the allegations in Paragraph 153, Webb admits solely that the USASF hosted The Cheerleading Worlds for the first time in 2004 and that teams received bids to attend the event, and financial support to attend the event.  Webb otherwise denies the allegations in Paragraph 153.

154.     With respect to the allegations in Paragraph 154, Webb admits solely that teams must receive bids to attend USASF's The Cheerleading Worlds and certain Varsity events, and that some bids can be earned at cheerleading competitions owned and produced by Varsity.  Webb otherwise denies the allegations in Paragraph 154.

155.     The allegations in Paragraph 155 are vague and ambiguous in referring to bids to competitions, but not identifying the specific competitions to which those referenced bids relate.  Consequently, Webb lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 155.  With respect to the allegations in Paragraph 155, Webb admits solely that bids can be fully paid, partially paid, or at-large, and that bids are typically awarded at

competitions by the producers of those competitions.  Webb otherwise denies the allegations in Paragraph 155.

156.    With respect to the allegations in Paragraph 156, Webb admits solely that the USASF allocates the bids for the USASF's The Cheerleading Worlds.  Webb otherwise denies the allegations in Paragraph 156.

157.    With respect to the allegations in Paragraph 157, Webb admits solely that Varsity holds The Summit at Walt Disney World, that teams earn bids to attend The Summit, and that, as the owner and producer of the Summit, Varsity determines which competitions have authority to award bids to The Summit.  Webb otherwise denies the allegations in Paragraph 157.

158.    With respect to the allegations in Paragraph 158, Webb admits solely that USA Cheer is a national governing body for cheerleading, and that the NFHS is involved with high school cheer.  Webb otherwise denies the allegations in the first sentence of Paragraph 158.   Webb admits further that, as the producer of the NCA and UCA competitions, Varsity determines which competitions have the authority to award bids to the NCA and UCA competitions.  Webb also admits that some members of teams competing at the NCA high school championships and UCA college championships must attend a cheer camp for safety and leadership purposes to be eligible to compete at those events.  Webb otherwise denies the allegations in Paragraph 158.

159.    Webb denies the allegations in Paragraph 159.

160.    Webb denies the allegations in Paragraph 160.

161.    With respect to the allegations in Paragraph 161 Webb admits solely that Varsity has created rules to govern its own competitions.  Webb otherwise denies the allegations in Paragraph 161.

162.     Webb lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 162.  Webb otherwise denies the allegations in Paragraph 162.

163.     With respect to the allegations in Paragraph 163, Webb admits solely that The Summit is an end-of-season competition available for teams at levels that do not attend USASF's The Cheerleading Worlds, and that, as the owner and producer of the Summit, Varsity determines which competitions have authority to award bids to The Summit.  Webb otherwise denies the allegations in Paragraph 163.

164.     Webb denies the allegations in the first sentence of Paragraph 164.  Webb lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 164.

165.     Webb lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 165.

166.     Webb lacks knowledge or information sufficient to form a belief about the truth of the allegations in the first sentence of Paragraph 166.  Webb otherwise denies the allegations in Paragraph 166.

167.     With respect to the allegations in the first sentence of Paragraph 167, Webb admits solely that all Varsity-produced all-star competitions are USASF-sanctioned.  Webb admits the allegations in the second sentence of Paragraph 167.  Webb otherwise denies the allegations in Paragraph 167.

168.     Webb lacks knowledge or information sufficient to form a belief about the truth of the allegations in the first sentence of Paragraph 168.  Webb denies the remaining allegations in Paragraph 168.

169.     Webb lacks knowledge or information sufficient to form a belief about the truth of the allegations in the second sentence of Paragraph 169.  Webb otherwise denies the allegations in Paragraph 169.

170.     Webb lacks knowledge or information sufficient to form a belief about the truth of the allegations in the first sentence of Paragraph 170.  Webb otherwise denies the allegations in Paragraph 170.

171.     With respect to the allegations in Paragraph 171, Webb admits solely that Varsity offers certain rebates that benefit its customer all-star gyms.  Webb otherwise denies the allegations in paragraph 171.

172.     With respect to the allegations in Paragraph 172, Webb admits solely that Varsity offers rebates to all-star gyms, and that for some gyms the rebate amounts are dependent upon the number of Varsity events the all-star gym attends and the all-star gym's purchase of Varsity cheer apparel.  Webb otherwise denies the allegations in Paragraph 172.

173.     Webb lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 173.

174.     Webb lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 174.

175.      Webb denies the allegations in Paragraph 175.

176.     With respect to the allegations in Paragraph 176, Webb admits solely that Varsity offers a rebate program called the Family Plan to any gym that chooses to participate and qualifies for participation.  Webb otherwise denies the allegations in Paragraph 176.

177.     With respect to the allegations in Paragraph 177, Webb admits solely that to qualify for a rebate under the Family Plan, gyms choosing to participate typically must attend a certain

number of Varsity-branded competitions each year.  Webb otherwise denies the allegations in Paragraph 177.

178.     With respect to the allegations in Paragraph 178, Webb admits solely that Varsity has provided Varsity Fashion Dollars that can be used for future purchase of apparel if the recipient chooses.  Webb otherwise denies the allegations in Paragraph 178.

179.     With respect to the allegations in Paragraph 179, Webb admits solely that the amount of rebate a gym receives under the Family Plan may be influenced by the amount of money a gym spends on Varsity events and products, and that the rebate can take the form of a monetary payment.  Webb otherwise denies the allegations in Paragraph 179.

180.     Webb denies the allegations in Paragraph 180.

181.     The second sentence of Paragraph 181 refers to a statement by persons or entities other than Webb.  Webb admits solely that such statement appears on the VIP Branding website. With respect to the allegations in Paragraph 181, Webb admits solely that through the Impact Program, Varsity works with schools to provide rebranding and other benefits to the schools.  Webb lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 181.

182.     Webb denies the allegations in Paragraph 182.

183.     The allegations in Paragraph 183 refer to statements made by persons and entities other than Webb.  Webb admits solely that such statements appeared in a publication.  With respect to the remaining allegations in Paragraph 183, Webb admits solely that, like all event producers, Varsity decides which vendors can sell products at its events.   Webb otherwise denies the allegations in Paragraph 183.

184.     Webb denies the allegations in Paragraph 184.

185.    Webb denies the allegations in Paragraph 185.

186.    With respect to Paragraph 186 Webb admits solely that Varsity's V!ROC program offers cheer choreography training.  Webb otherwise denies the allegations in Paragraph 186.

187.     Webb denies the allegations in Paragraph 187.

188.    With respect to the allegations in the first two sentences of Paragraph 188, Webb admits solely that a team's partial attendance at a camp is a requirement to compete in certain school cheer competitions, including the NCA High School National Championship and the UCA National High School Cheerleading Championship.  With respect to the allegations in the last two sentences of Paragraph 188, Webb admits solely that cheerleading camps are open to all high school cheerleaders, regardless of skill level or if the cheerleaders participate in competitions, and that camps have varying durations and schedules.  Webb otherwise denies the allegations in Paragraph 188.

189.    Webb lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 189.

190.    Webb admits the allegations in the first sentence of Paragraph 190.  Webb lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 190.

191.     Webb lacks knowledge or information sufficient to form a belief about the truth of the allegations Paragraph 191.

192.    Webb denies the allegations in Paragraph 192.

193.    Paragraph 193 states legal conclusions to which no response is required.  To the extent a response is required, Webb denies the allegations in Paragraph 193.

194.    Webb denies the allegations in Paragraph 194.

195.    Paragraph 195 states legal conclusions to which no response is required.  To the extent a response is required, Webb denies the allegations in Paragraph 195.

196.    Webb lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 196.

197.    Paragraph 197 states legal conclusions to which no response is required.  To the extent a response is required, Webb lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 197.

198.    Webb denies the allegations in Paragraph 198.

199.    With respect to the allegations in the first sentence of Paragraph 199, Webb admits solely that competitive cheer athletes engage in vigorous training and showcase unique talents at cheer competitions.  Webb lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 199.

200.    Webb lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 200.

201.    With respect to the allegations in Paragraph 201, Webb admits solely that participants and athletes in competitive cheer can have a variety of body types.  Webb lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 201.

202.    Paragraph 202 refers to statements made by persons or entities other than Webb.  Webb admits solely that such statements appear in a publication from the USA Cheer website.  Webb otherwise denies the allegations in Paragraph 202.

203.    Paragraph 203 states legal conclusions to which no response is required.  To the extent a response is required, Webb denies the allegations in Paragraph 203.

204.    With respect to the allegations in Paragraph 204, Webb admits solely that international competitions may be subject to different rules than U.S. competitions, or may adopt similar rules.  Webb lacks knowledge or information sufficient to form a belief about the remaining allegations in Paragraph 204.

205.    Webb lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 205.

206.    Webb denies the allegations in Paragraph 206.

207.    Webb denies the allegations in Paragraph 207.

208.    Webb denies the allegations in Paragraph 208.

209.    Webb denies the allegations in Paragraph 209.

210.    With respect to the allegations in Paragraph 210, Webb admits solely that cheer competition event producers must be able to pay for costs incurred in connection with putting on events.  Webb otherwise denies the allegations in Paragraph 210.

211.    Webb denies the allegations in Paragraph 211.

212.    The allegations in Paragraph 212 are vague and ambiguous with respect to the phrase "credible judges."  Therefore, Webb lacks knowledge or information sufficient to form a belief about the truth of those allegations.  Webb otherwise denies the allegations in Paragraph 212.

213.    Webb denies the allegations in Paragraph 213.

214.    Webb denies the allegations in Paragraph 214.

215.    Webb denies the allegations in Paragraph 215.

216.    Webb denies the allegations in Paragraph 216.

217.    The allegations in Paragraph 217 refer to purported USASF rules. Webb admits solely that USASF publishes various rules for all-star cheer.  Webb otherwise denies the allegations in Paragraph 217.

218.    Webb denies the allegations in Paragraph 218.

219.    Webb denies the allegations in Paragraph 219.

220.    Webb denies the allegations in Paragraph 220.

221.    Paragraph 221 states legal conclusions to which no response is required.  To the extent a response is required, Webb denies the allegations in Paragraph 221.

222.    Webb denies the allegations in Paragraph 222.

223.    With respect to the allegations in Paragraph 224, Webb admits solely that Varsity has attained legal copyrights for uniform designs, but Webb lacks knowledge or information sufficient to form a belief about the truth of the allegation that Varsity has 200 copyrights.  Webb otherwise denies the allegations in Paragraph 223.

224.    Webb denies the allegations in Paragraph 224.

225.    Webb denies the allegations in Paragraph 225.

226.    Webb lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 226.

227.    Webb denies the allegations in Paragraph 227.

228.    Paragraph 228 states legal conclusions to which no response is required.  To the extent a response is required, Webb denies the allegations in Paragraph 228.

229.    With respect to the allegations in Paragraph 229, Webb admits solely that, like all event producers, Varsity decides which vendors can sell products at its events.  Webb otherwise denies the allegations in Paragraph 229.

230.    Webb denies the allegations in Paragraph 230.

231.    Webb denies the allegations in Paragraph 231.

232.    Paragraph 232 states legal conclusions to which no response is required.  To the extent a response is required, Webb denies the allegations in Paragraph 232.

233.    Webb admits the allegations in the first sentence of Paragraph 233.  Webb denies the remaining allegations in Paragraph 233.

234.    With respect to the first sentence in Paragraph 234, Webb admits solely that Varsity produces the UCA and NCA cheerleading championships, but otherwise lacks knowledge or information sufficient to form a belief about the truth of the allegations in the first sentence of Paragraph 234.  With respect to the allegations in the second sentence of Paragraph 234, Webb admits solely that some members of certain school team competitors at the UCA and NCA National Championships must attend a cheer camp to be eligible to compete at those events.  Webb otherwise denies the allegations in Paragraph 234.

235.    Paragraph 235 states legal conclusions to which no response is required.  To the extent a response is required, Webb denies the allegations in Paragraph 235.

236.    Webb denies the allegations in Paragraph 236.

237.    Webb denies the allegations in Paragraph 237.

238.    Paragraph 238 states legal conclusions to which no response is required.  To the extent a response is required, Webb denies the allegations in Paragraph 238.

239.    Webb lacks knowledge or information sufficient to form a belief about the truth of the allegations in the first sentence of Paragraph 239. With respect to the allegations in the second sentence of Paragraph 239, Webb admits solely that Varsity contracts with schools to provide rebranding services.  Webb otherwise denies the allegations in Paragraph 239.

240.   Webb denies the allegations in Paragraph 240.

241.   With respect to the allegations in Paragraph 241, Webb admits solely that Varsity hosts many cheer camps in the United States and that Varsity's cheer camps are popular with cheer athletes.  Webb otherwise lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 241.

242.   Webb denies the allegations in Paragraph 242.

243.   Webb denies the allegations in Paragraph 243.

244.   Webb denies the allegations in Paragraph 244.

245.   With respect to the allegations in the first sentence of Paragraph 245, Webb admits solely that members of competing teams must attend a UCA or NCA camp to compete in certain school divisions at the UCA and NCA national championships.  Webb otherwise lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in the first sentence of Paragraph 245.   Webb otherwise denies the allegations in Paragraph 245.

246.   Webb lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 246.  Webb otherwise denies the allegations in Paragraph 246.

247.   Paragraph 247 states legal conclusions to which no response is required.  To the extent a response is required, Webb denies the allegations in Paragraph 247.

248.   Paragraph 248 states legal conclusions to which no response is required.  To the extent a response is required, Webb denies the allegations in Paragraph 248.

249.   Webb denies the allegations in Paragraph 249.

250.   With respect to the allegations in Paragraph 250, Webb admits solely that, like many youth sporting events, for some Varsity events, out-of-town athletes staying at hotels were required to stay at hotels in Varsity's housing program.   With respect to the various Varsity policies and

programs referenced in Paragraph 250, Webb lacks knowledge or information sufficient to form a belief as to the truth of the allegations with respect to such policies and programs. Webb otherwise denies the allegations in Paragraph 250.

251.    With respect to the allegations in Paragraph 251, Webb admits that, like other event producers, Varsity charges admission to many of its events. Webb otherwise denies the allegations in Paragraph 251.

252.    With respect to the allegations in Paragraph 252, Webb admits that Varsity TV provides a means for parents and families who cannot attend events in person to watch the events. Webb otherwise lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 252.

253.    Webb denies the allegations in Paragraph 253.

254.    The allegations in Paragraph 254 refers to statements from various unidentified studies and sources other than Webb. Webb lacks knowledge or information sufficient to form a belief about the truth of such statements. Webb otherwise denies the allegations in Paragraph 254.

255.    Webb denies the allegations in Paragraph 255.

256.    Webb denies the allegations in Paragraph 256.

257.    Webb denies the allegations in the first three sentences of Paragraph 257. Webb lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 257.

258.    Webb denies the allegations in the first two sentences of Paragraph 258. Webb lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 258.

259.     Webb denies the allegations in Paragraph 259.

260.     Paragraph 260 states legal conclusions to which no response is required.  To the extent a response is required, Webb denies the allegations in Paragraph 260.

261.     Webb incorporates by reference his answers to the preceding paragraphs as if fully stated herein.

262.     Paragraph 262 states legal conclusions to which no response is required.  To the extent a response is required, Webb denies the allegations in Paragraph 262.

263.     Webb denies the allegations in Paragraph 263.

264.     Paragraph 264 states legal conclusions to which no response is required.  To the extent a response is required, Webb denies the allegations in Paragraph 264.

265.     Paragraph 265 states legal conclusions to which no response is required.  To the extent a response is required, Webb denies the allegations in Paragraph 265.

266.     Paragraph 266 states legal conclusions to which no response is required.  To the extent a response is required, Webb denies the allegations in Paragraph 266.

267.     Webb denies the allegations in Paragraph 267.

268.     Paragraph 268 states legal conclusions and Plaintiffs' claim for damages, to which no response is required.  To the extent a response is required, Webb denies the allegations in Paragraph 268.

269.     Webb incorporates by reference his answers to the preceding paragraphs as if fully stated herein.

270.     Paragraph 270 states legal conclusions to which no response is required.  To the extent a response is required, Webb denies the allegations in Paragraph 270.

271.     Paragraph 271 states legal conclusions to which no response is required.  To the extent a response is required, Webb denies the allegations in Paragraph 271.

272.     Paragraph 272 states legal conclusions to which no response is required.  To the extent a response is required, Webb denies the allegations in Paragraph 272.

273.     Paragraph 273 states legal conclusions to which no response is required.  To the extent a response is required, Webb denies the allegations in Paragraph 273.

274.     Paragraph 274 states legal conclusions to which no response is required.  To the extent a response is required, Webb denies the allegations in Paragraph 274.

275.     Paragraph 275 states legal conclusions and Plaintiffs' claim for damages, to which no response is required.  To the extent a response is required, Webb denies the allegations in Paragraph 275.

276.     Webb incorporates by reference his answers to the preceding paragraphs as if fully stated herein.

277.     Paragraph 277 states legal conclusions to which no response is required.  To the extent a response is required, Webb denies the allegations in Paragraph 277.

278.     Paragraph 278 states legal conclusions to which no response is required.  To the extent a response is required, Webb denies the allegations in Paragraph 278.

279.     The allegations in Paragraph 279 state the damages Plaintiffs claim to have sustained and do not require a response.  To the extent a response is required, Webb denies the allegations in Paragraph 279.

280.     The allegations in Paragraph 280 state the damages Plaintiffs claim to have sustained and do not require a response.  To the extent a response is required, Webb denies the allegations in Paragraph 280.

281.     Webb incorporates by reference his answers to the preceding paragraphs as if fully stated herein.

282.     Paragraph 282 states legal conclusions to which no response is required.  To the extent a response is required, Webb denies the allegations in Paragraph 282.

283.     Paragraph 283 states legal conclusions to which no response is required.  To the extent a response is required, Webb denies the allegations in Paragraph 283.

284.     Paragraph 284 states legal conclusions to which no response is required.  To the extent a response is required, Webb denies the allegations in Paragraph 284.

285.     Paragraph 285 states legal conclusions to which no response is required.  To the extent a response is required, Webb denies the allegations in Paragraph 285.

286.     The allegations in Paragraph 286 state the relief Plaintiffs seek and do not require a response.  To the extent a response is required, Webb denies the allegations in Paragraph 286.

287.     Webb incorporates by reference his answers to the preceding paragraphs as if fully stated herein.

288.     The allegations in Paragraph 288 characterize the nature of Plaintiffs' action, to which no response is required.  To the extent a response is required, Webb denies the allegations in Paragraph 288.

289.     Webb denies the allegations in Paragraph 289.

290.     Webb denies the allegations in Paragraph 290.

291.     Paragraph 291 states legal conclusions to which no response is required.  To the extent a response is required, Webb denies the allegations in Paragraph 291.

292.     Paragraph 292 states legal conclusions to which no response is required.  To the extent a response is required, Webb denies the allegations in Paragraph 292.

293.     Paragraph 293 states legal conclusions to which no response is required.  To the extent a response is required, Webb denies the allegations in Paragraph 293.

294.    Paragraph 294 states legal conclusions to which no response is required.  To the extent a response is required, Webb denies the allegations in Paragraph 294.

295.    Paragraph 295 states legal conclusions to which no response is required.  To the extent a response is required, Webb denies the allegations in Paragraph 295.

296.    The allegations in Paragraph 296 state the relief Plaintiffs seek and do not require a response.  To the extent a response is required, Webb denies the allegations in Paragraph 296.

297.    Webb incorporates by reference his answers to the preceding paragraphs as if fully stated herein.

298.    The allegations in Paragraph 298 state the relief Plaintiffs seek and do not require a response.  To the extent a response is required, Webb denies the allegations in Paragraph 298.

## GENERAL DENIAL

299.    Webb denies all allegations contained in the Second Amended Complaint (including headings and captions) not specifically admitted in this Answer.

## AFFIRMATIVE AND OTHER DEFENSES

Without assuming the burden of proof where it otherwise rests with Plaintiffs, Webb pleads the following affirmative and other defenses to the Complaint:

1.    Plaintiffs' claims are barred, in whole or in part, due to Plaintiffs' failure to state a claim upon which the Court may grant relief.

2.    Webb is not liable to Plaintiffs because the statute of limitations bars Plaintiffs' claims.

3.    Plaintiffs' claims are barred in whole or in part by the doctrines of waiver, estoppel, ratification, and laches, and by their failure to exercise reasonable care and diligence to mitigate their alleged damages.

4.      Plaintiffs' antitrust claims are barred, in whole or in part, because Plaintiffs fail to properly allege or define a legally-sufficient market within which to assess any anticompetitive effects caused by Webb's alleged conduct.

5.      Plaintiffs' antitrust claims are barred, in whole or in part, because Plaintiffs fail to allege – and cannot allege – that they have sustained an injury-in-fact that was proximately caused by Webb's alleged conduct.

6.      Plaintiffs' antitrust claims are barred, in whole or in part, because Plaintiffs fail to allege – and cannot allege – that they have sustained an antitrust injury.  Thus, Plaintiffs lack antitrust standing to assert claims against Webb under the Clayton Act and Sherman Act.

7.      Plaintiffs' antitrust claims are barred, in whole or in part, under the doctrine of remoteness because Plaintiffs' alleged antitrust injuries are too far removed from the alleged violations to be redressed.

8.      Plaintiffs' claims for injunctive relief against Webb are barred, in whole or in part, because Plaintiffs fail to allege – and cannot allege – that they are in any danger of being harmed by Webb's continuing violation of the antitrust laws.

9.      Plaintiffs' claims are barred, in whole or in part, because Plaintiffs lack standing to bring their claims.

10.     Plaintiffs' claims are barred because alleged damages, if any, are the result of the acts or omissions of third parties not controlled by Webb, and those third parties are the sole cause of any such damage.

11.     Plaintiffs' claims are barred, in whole or in part, because any alleged damages were proximately caused by a new and independent, intervening, or superseding cause, separate from any act or omission on the part of Webb for which Webb is not responsible.

12.     Plaintiffs' claims are barred, in whole or in part, because Webb was not the proximate or legal cause of Plaintiffs' alleged injuries.

13.     Plaintiffs' claims are barred because any monopoly was thrust upon Defendants due to superior acumen and management, superior products, or services.

14.     Plaintiffs' claims are barred, in whole or in part, because Webb's alleged conduct has not unreasonably restrained trade and was based on independent and legitimate business conduct.

15.     Plaintiffs' claims are barred, in whole or in part, because Webb did not participate in, and had no knowledge of, any alleged agreement, contract, combination, or conspiracy.

16.     Plaintiffs' claims are barred, in whole or in part, because none of Webb's alleged actions or omissions substantially lessened competition within any properly defined market.

17.     Plaintiffs' claims are barred, in whole or in part, because Webb is not liable for any alleged actions or omissions, if any, of any parties other than Webb.

18.     Plaintiffs have failed to state an adequate basis for an award of treble damages.

19.     Plaintiffs are not entitled to interest, costs, disbursements, or attorneys' fees in connection with this action.

## **<u>RESERVATION OF RIGHTS</u>**

Webb has not knowingly or intentionally waived any applicable defenses, and he reserves the right to assert and rely upon other applicable defenses that may become available or apparent as this matter proceeds.  Webb reserves the right to amend or seek to amend his answers and/or his affirmative defenses.

## JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Webb demands a trial by jury of all claims and defenses upon which he is entitled to a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Defendant Jeff Webb respectfully prays as follows:

1.     That Plaintiffs' Second Amended Complaint be dismissed with prejudice as to Webb;

2.     That judgment be entered in favor of Webb and against Plaintiffs with respect to the causes of action asserted in the Second Amended Complaint;

3.     That Plaintiffs and the purported class take nothing by their Second Amended Complaint in this action;

4.     That the Court award Webb reasonable costs and expenses, including but not limited to attorneys' fees, costs and expenses of defense, and pre-judgment interest; and

5.     That the Court award such other and further relief to which Webb may be entitled.

Dated:  March 12, 2024

By: /s/ *Paul E. Coggins*

Paul E. Coggins*
Brendan P. Gaffney*
Kiprian E. Mendrygal*
Jennifer McCoy*
Katherine Wright*
LOCKE LORD LLP
2200 Ross Avenue, Suite 2800
Dallas, TX 75201
Phone: (214) 740-8000
Fax: (214) 740-8800
pcoggins@lockelord.com
bgaffney@lockelord.com
kmendrygal@lockelord.com
jennifer.mccoy@lockeord.com
katie.wright@lockelord.com

* Admitted pro hac vice

Edward L. Stanton III (TN #018904)
S. Keenan Carter (TN # 023386)
BUTLER SNOW LLP
6075 Poplar Avenue, Suite 500
Memphis, Tennessee 38119
Telephone: (901) 680-7336
Fax: (901) 680-7201
Edward.Stanton@butlersnow.com
Keenan.carter@butlersnow.com

**ATTORNEYS FOR JEFF WEBB**