# EXHIBIT 7

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| **JESSICA JONES, et al.,** | Case No. 2:20-cv-02892-SHL-tmp |
| Plaintiffs, | |
| v. | |
| **VARSITY BRANDS, LLC, et al.** | **JURY DEMAND** |
| Defendants. | |

## REPLY IN SUPPORT OF PLAINTIFFS' MOTION TO EXCLUDE JONATHAN M. ORSZAG AND DR. KEVIN MURPHY, IN PART

Plaintiffs respectfully submit this reply in further support of their Motion to Exclude Johnathan M. Orszag and Dr. Kevin Murphy, in Part ("Motion") (ECF No. 384) and in opposition to Defendants' Memorandum of law in Response to Motion ("Opp.") (ECF No. 422).

## I.     REPLY REGARDING MR. ORSZAG

***Mr. Orszag is not an econometrician.*** Defendants offer Mr. Orszag as an expert in applied microeconomics—as an econometrician. Yet, Mr. Orszag's education, training and experience are in macroeconomics, an entirely different discipline.[1] Mr. Orszag describes his expertise in classic macroeconomics topics such as "antitrust (competition) policy, industry structure, and fiscal policy." ECF No. 384-4 [Orszag Rep.] at ¶1. Defendants point to Mr. Orszag's master's degree from Oxford University in "economics," yet his degree is in "economic and social history," which is a social science degree, not a degree in microeconomics.[2] ECF No. 422 [Opp.] at 3. Defendants cite Mr. Orszag's testimony before the FCC and the Senate Judiciary Committee. *Id.* Yet, such general testimony also does not qualify him as an expert in applied microeconomics. As the Seventh Circuit cautioned:

> A scientist, however well credentialed he may be, is not permitted to be the mouthpiece of a scientist in a different specialty. That would not be responsible science. A theoretical economist, however able, would not be allowed to testify to the findings of an econometric study conducted by another economist if he lacked expertise in econometrics and the study raised questions that only an econometrician could answer.

---

[1] Mr. Orszag's also claims to be an expert in "sports economics" on the premise of his work in a few advertising lawsuit cases involving professional sports leagues. ECF 384-4 [Orszag Rep.] at ¶5. Mr. Orszag admittedly has no experience in the competitive cheer field. ECF 384-10 [Orszag Dep.] at 270.

[2] Oxford's MSc in economic and social history includes a single course in quantitative methods and computer applications, described as "a simple and very informal introduction to elementary quantitative methods covering some of the techniques most widely used in research in historical and social sciences and emphasizing the relevance of the historical issues." *See* https://www.ox.ac.uk/admissions/graduate/courses/msc-economic-and-social-history (last visited Apr. 19, 2023).

*Dura Auto. Sys. of Indiana, Inc. v. CTS Corp.*, 285 F.3d 609, 614 (7th Cir. 2002). Here, Mr. Orszag's background in macroeconomics does not cover for his lack of experience in applied economics. *See id.* It is also not a rubber stamp that Mr. Orszag is qualified here because he was deemed qualified as an expert in other antitrust cases. ECF No. 422 [Opp.] at 4-8.[3]

   **Mr. Orszag does not put forth any econometric modeling or analysis.** Plaintiffs' experts Drs. Netz and Heeb are both experienced econometricians. Each ran multi-variate regression analyses and then applied economic theory to either corroborate or fill in data gaps, all of which can be tested and numerically challenged. Mr. Orszag provides opinions to rebut their conclusions but did not run any economic modeling or analyses of his own to do so. Instead, he simply restates the defense view of the evidence to conclude that Plaintiffs' claims don't make sense from an "economics perspective." ECF 384-4 [Orszag Rep.] at ¶11. Defendants attempt to defend Mr. Orszag's unsupported opinions by citing cases where experts have offered policy opinions about whether the conduct of market participants was consistent with cartel behavior. ECF 422 [Opp.] at 4. Here, however, Mr. Orszag's opinions are being offered, without any applied economic methodology, to rebut monopoly claims, claims regarding the effect of Varsity and Defendants' anticompetitive conduct, and to rebut the econometric opinions and modeling of Plaintiffs' econometricians. *See In re Elec. Books Antitrust Litig.*, No. 11 MD 2293 DLC, 2014 WL 1282298, at *16 (S.D.N.Y. Mar. 28, 2014) (excluding "Orszag's chain of shaky inferences, without any modeling or analysis" because it would "invite[] the jury to speculate about any

---

[3] *See, e.g., Dreyer v. Ryder Auto. Carrier Grp., Inc.*, No. 98-CV-82A(F), 2005 WL 1074320, at *12 (W.D.N.Y. 2005) ("*Daubert* requires federal courts [to] evaluate … expert testimony … on a case-by-case basis, and directs district courts not to merely 'rubber-stamp' such evidence based solely upon the expert's resumé, including any testimonial history"); *Greater Hall Temple Church of God v. Southern Mutual Church Insurance Company*, 2019 WL 4147589 at *4 (S.D. Ga. 2019) ("the qualifications requirement is [not] a rubber stamp, and expertise in one field does not qualify a witness to testify about others") (citations and quotation marks omitted).

potential impact on a damages calculation").

***Mr. Orszag's omission of key evidence prior to the class period renders his conclusions unreliable.*** Defendants claim Mr. Orszag *did* consider evidence from outside of the class period, citing a few select documents. Opp. at 8–9. But Defendants fail to rebut Mr. Orszag's repeated statements throughout his report that he did not consider large swaths of evidence because it predated the statute of limitations, the omission of which makes his conclusions unreliable.[4]

## II.     REPLY REGARDING DR. MURPHY

***Dr. Murphy's Exhibit 45 does not consider key inputs and data, rendering the opinions that flow from it fatally flawed.*** Dr. Murphy uses Exhibit 45 to opine that increased participation at Varsity events provides a procompetitive justification for Varsity's acquisitions. ECF 384-3 [Murphy Rep.] at ¶¶292, 295. The problem is that participation did not increase—it substantially decreased. ECF No. 384-8 [Heeb Reb.] at ¶¶347–48 & Tables 14 and 15. Therefore, Dr. Murphy's opinion that the increase shows a procompetitive effect is not reliable where it omits the key inputs and data that show an actual decrease. Defendants also cannot explain away Dr. Murphy's failure to consider the monumental JAM Brands acquisition, which if considered, would shake the foundation of Dr. Murphy's "increase" conclusions as well. *Id.* at ¶¶350–51.

***Dr. Murphy's opinions on quality of product are unreliable.*** Dr. Murphy's opinion that Varsity's price increases on cheer competitions were the result of better quality, is also off track. ECF No. 422 [Opp.] at 13–14. Dr. Murphy is not an expert on the quality of competitive cheer events and should not be permitted to offer a speculative opinion on this topic. *See Elec. Books,*

---

[4] *See, e.g.*, *Sheehan v. Daily Racing Form, Inc.*, 104 F.3d 940, 942 (7th Cir. 1997) (holding expert testimony inadmissible because it arbitrarily excluded data); *Concord Boat Corp. v. Brunswick Corp.*, 207 F.3d 1039, 1056–57 (8th Cir. 2000) (affirming exclusion of expert testimony that "ignored inconvenient evidence" and "did not incorporate all aspects of the economic reality of the … market").

2014 WL 1282298, at *4 (trial court should exclude testimony if it is speculative). In fact, the evidentiary record shows quality decreased. *See, e.g.*, ECF No. 384-8 [Heeb Reb.] at ¶368.

**Dr. Murphy's opinion that the cheer market is local is unreliable.** Defendants try to frame Dr. Murphy's novel and arbitrary use of a 60% "catchment area" methodology as part of a hypothetical monopolist test ("HMT"), but Dr. Murphy admitted he did not perform an HMT.[5] In fact, Dr. Netz performed a regression to test Dr. Murphy's average prices within Dr. Murphy's "catchment areas" and found they do not explain the variation in event prices. ECF 384-6 [Netz Reb.] at 53. Dropping the catchment area price from the regression leaves the explanatory power of the regression unchanged. *Id.* Dr. Murphy failed to test his theory, but when tested by Dr. Netz, the data shows that his "catchment area" methodology is arbitrary and inconsequential. *See EEOC v. Kaplan Higher Educ. Corp.*, 748 F.3d 749, 751 (6th Cir. 2014) (rejecting novel methodology for purposes of litigation). As the Court found in *EEOC*:

> The EEOC brought this case on the basis of a homemade methodology, crafted by a witness with no particular expertise to craft it, administered by persons with no particular expertise to administer it, tested by no one, and accepted only by the witness himself. *Id.* at 754.

Here, like *EEOC*, Defendants offer no support (in case law, or in economic literature) for Dr. Murphy's novel catchment area methodology, and it should be excluded.

**Dr. Murphy's reliance on an online, defendant-sponsored "survey" lacks any indicia of reliability.**[6] In defense of the NFHS survey, Defendants cite articles by an orthopedic surgeon,

---

[5] ECF 384-9 [Murphy Dep.] at 105:18–24 ("I did not do the [HMT]"). By contrast, both Dr. Heeb and Dr. Netz performed the HMT as well as considered direct evidence to define the relevant geographic markets. Both found Varsity's market power to be ubiquitous across the United States, whether on a regional or national level. ECF No. 384-7 [Heeb Rep.] at ¶¶42, 112, 136; ECF No. 384-5 [Netz Rep.] at 43–45.

[6] Dr. Murphy cannot establish any points about the survey on cross-examination where the methodology behind the NFHS survey is unknown. Appendix D of Dr. Murphy's Report, citing the use of participant counts, sheds no light on whether proper survey methodology was used. ECF No. 384-3 [Murphy Rep.] at Appendix D.

and by Rebecca Boyce, whose credentials are not ascertainable, about cheerleading in the context of Title IX, neither of which appear to be peer tested or reviewed. Opp. at 18.[7] Defendants also argue that the NFHS is fully independent from Varsity, because "NFHS receives fees from dozens of participating entities." ECF No. 422 [Opp.] at 19. But Defendants fail to inform that NFHS is a strategic "partner" of Varsity.[8] In an email among Varsity's top executives, Varsity discusses the "███████████████████████████████████████████████████████████████████████████" in Varsity camps. ECF No. 384-17 [Saveri Declaration to Motion, Ex. 15]. The deal would require ███████████████████████," under the pretense of an independent safety organization to support Varsity's "credentialing program," which required all cheer families participating in certain end-of-year competitions to attend a Varsity camp. Id.[9] NFHS is not independent.

Defendants further argue that an unreliable control variable (such as the survey) is not reason to exclude a regression analysis that employs it. Id. But "any step that renders the analysis unreliable under the Daubert factors renders the expert's testimony inadmissible." Fed. Trade Comm'n v. Fleetcor Techs., Inc., No. 1:19-CV-5727-AT, 2022 WL 3350066, at *8 (N.D. Ga. Aug. 9, 2022). Thus, the regressions with a demand variable based on the NFHS survey, must be excluded.

Dated: April 28, 2023                     Respectfully submitted,

                                          By:    /s/ Joseph R. Saveri
                                                 Joseph R. Saveri

---

[7] Defendants also do not explain the anomalies in the survey data such as that Colorado has identical Boys and Girls "Competitive Spirit" Participation in both 2018–2019 and 2017–2018, or that West Virginia has identical Girls Participation in 2017–2018, 2016–2017 and 2015–2016. ECF No. 384-1 [Memorandum of Law ISO Motion] at 19.
[8] See https://www.nfhs.org/articles/nfhs-signs-corporate-partnership-renewal-with-varsity-spirit/ (last visited April 28, 2023).
[9] See also https://www.varsity.com/usa/wp-content/uploads/2020/07/NFHS.USA_.FAQ_.2021.02.pdf (last visited April 28, 2023).

Joseph R. Saveri*
Steven N. Williams*
Ronnie Seidel Spiegel*+
Kevin E. Rayhill*
Elissa A. Buchanan*
David Seidel*
JOSEPH SAVERI LAW FIRM, LLP
601 California Street, Suite 1000
San Francisco, California 94108
Telephone: (415) 500-6800
Facsimile: (415) 395-9940
jsaveri@saverilawfirm.com
swilliams@saverilawfirm.com
rspiegel@saverilawfirm.com
krayhill@saverilawfirm.com
eabuchanan@saverilawfirm.com
dseidel@saverilawfirm.com

Van Turner Jr. (TN Bar No. 22603)
TURNER FEILD, PLLC
2650 Thousand Oaks Blvd., Suite 2325
Memphis, Tennessee 38118
Telephone: (901) 290-6610
Facsimile: (901) 290-6611
vturner@turnerfeildlaw.com

Richard M. Paul III*
Ashlea Schwarz*
PAUL LLP
601 Walnut, Suite 300
Kansas City, Missouri 64106
Telephone: (816) 984-8100
rick@paulllp.com
ashlea@paulllp.com

Jason S. Hartley*
HARTLEY LLP
101 West Broadway, Suite 820
San Diego, CA 92101
Telephone: (619) 400-5822
hartley@hartleyllp.com

Daniel E. Gustafson*
Daniel C. Hedlund*
Daniel J. Nordin*

GUSTAFSON GLUEK PLLC
Canadian Pacific Plaza
120 South Sixth Street, Suite 2600
Minneapolis, MN 55402
Telephone: (612) 333-8844
Facsimile: (612) 339-6622
dgustafson@gustafsongluek.com
dhedlund@gustafsongluek.com
dnordin@gustafsongluek.com

* Admitted *pro hac vice*

+Located in Washington State

*Attorneys for Individual and Representative Plaintiffs*