# EXHIBIT 15

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| JESSICA JONES et al., <br><br> Plaintiffs, <br> v. <br><br> VARSITY BRANDS, LLC et al., <br><br> Defendants. | **Civ. Action No. 2:20-cv-02892** |

**BAIN'S AND CHARLESBANK'S INDIVIDUAL REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

# **TABLE OF CONTENTS**

INTRODUCTION ...........................................................................................................................1

ARGUMENT .................................................................................................................................1

    I.     THE ACTIONS OF INDIVIDUALS ACTING FOR VARSITY CANNOT BE IMPUTED TO BAIN OR CHARLESBANK AS A MATTER OF LAW ...................................................................................................................1

    II.    PLAINTIFFS FAIL TO SHOW DIRECT PARTICIPATION IN ANY ANTICOMPETITIVE ACT ...................................................................................3

          A.    There is No Evidence of "Direct Participation" by Bain or Charlesbank in the Alleged Varsity-USASF Conspiracy .............................4

          B.    There is No Evidence of "Direct Participation" by Bain in Any Other Allegedly Anticompetitive Conduct .....................................................5

          C.    There is No Evidence of "Direct Participation" by Charlesbank in Any Other Allegedly Anticompetitive Conduct .............................................8

    III.   PLAINTIFFS' NEW AGENCY THEORY FAILS .................................................11

CONCLUSION ..............................................................................................................................11

i

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Am. Soc'y of Mech. Eng'rs v. Hydrolevel Corp.*,
   456 U.S. 556 (1982) .................................................................................................................. 11

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986) .................................................................................................................... 7

*Arandell v. Centerpoint Energy Servs.*,
   900 F.3d 623 (9th Cir. 2018) ....................................................................................................... 2

*Baker v. Baptist Memorial Hosp.*,
   No. 2:08-cv-2619, 2013 WL 1405711 (W.D. Tenn. Apr. 5, 2013) ............................................ 11

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986) .................................................................................................................... 2

*Copperweld Corp. v. Indep. Tube Corp.*,
   467 U.S. 752 (1984) .................................................................................................................... 2

*Freeman v. San Diego Ass'n of Realtors*,
   322 F.3d 1133 (9th Cir 2003) ...................................................................................................... 2

*FTC v. On Point Glob. LLC*,
   No. 19-25046-Civ-Scola, 2021 WL 4892228 (S.D. Fla. Sept., 29, 2021) ................................... 2

*H.J., Inc. v. Int'l Tel. & Tel. Corp.*,
   867 F.2d 1531 (8th Cir. 1989) ..................................................................................................... 3

*Humphreys v. Bank of Am.*,
   No. 11-2514-STA-tmp, 2013 WL 1967955 (W.D. Tenn. May 13, 2013) ................................. 11

*In re Packaged Seafood Products Antitrust Litigation*,
   No. 15-MD-2670, 2022 WL 836951 (S.D. Cal. Mar. 21, 2022) ............................................ 3-4

*Lenox MacLaren Surgical Corp. v. Medtronic*,
   847 F.3d 1221 (10th Cir. 2017) ............................................................................................. 2-3

*Mitchael v. Intracorp, Inc.*,
   179 F.3d 847 (10th Cir. 1999) ............................................................................................... 3-4

*No Spill LLC v. Scepter Can., Inc.*,
　　No. 2:18-cv-2681, 2022 WL 1078435 (D. Kan. Apr. 6, 2022) ............................................ 9-10

*Trinity Indus., Inc. v. Greenlease Holding Co.*,
　　No. 08-cv-1498, 2014 WL 1766083 (W.D. Pa. May 2, 2014) ..............................................2, 8

*U.S. Anchor Mfg., Inc. v. Rule Indus. Inc.*,
　　7 F.3d 986 (11th Cir. 1993) ......................................................................................................4

*United States v. Bestfoods*,
　　524 U.S. 51 (1998).....................................................................................................................1

*Verizon Comms. Inc. v. Law Offices of Curtis V. Trinko, LLP*,
　　540 U.S. 398 (2004)...................................................................................................................6

**INTRODUCTION**

Plaintiffs fail to show any issue of material fact regarding the liability of Bain and Charlesbank for any claim. Plaintiffs seek to hold Bain and Charlesbank liable on an "enterprise" liability basis but have no evidence of "direct participation" by Bain and Charlesbank sufficient to support such a theory. As to Plaintiffs' claims based on an alleged conspiracy between Varsity and USASF, Plaintiffs cite no evidence that Bain and Charlesbank had any involvement with USASF *at all*. With respect to all other claims, Plaintiffs' futile attempt to make such a showing relies on legal arguments that this Court has already rejected and purported "evidence" that is no more than generic business activity. For these reasons, Bain and Charlesbank's motions should be granted.

**ARGUMENT**

**I.   THE ACTIONS OF INDIVIDUALS ACTING FOR VARSITY CANNOT BE IMPUTED TO BAIN OR CHARLESBANK AS A MATTER OF LAW**

The evidence identified by Plaintiffs that purportedly demonstrates Bain and Charlesbank's "direct participation" in an anticompetitive scheme is instead ordinary board activity of Varsity's holding company, members of which were, at various times, affiliated with Bain and Charlesbank. (*See generally* Pls.' Br. at 1-15.) There is a well-established "presumption that an act is taken on behalf of the corporation for whom the officer claims to act." *United States v. Bestfoods*, 524 U.S. 51, 70 n.13 (1998). To rebut the *Bestfoods* presumption, Plaintiffs must show the individuals affiliated with Bain and Charlesbank acted "plainly contrary to the interests of the subsidiary yet nonetheless advantageous to the parent." *Id.* Plaintiffs have not offered any evidence that occurred. (*See* Defs.' SUF ¶¶ 228, 240.)[1]

---

[1] Plaintiffs assert that Defendants' SUF ¶¶ 228, 240 are "not supported by evidence." But Bain and Charlesbank met their burden of "pointing out" "the absence of a genuine issue of material

1

Plaintiffs incorrectly assert that *Bestfoods* is the "wrong standard" because *Copperweld Corp. v. Independent Tube Corp.*, 467 U.S. 752 (1984), provides a special rule for "antitrust cases" that imputes liability to a parent considered to be a "single economic entity" with the alleged violator of antitrust laws. (Pls.' Br. at 11-12.) In rejecting this argument previously, this Court held that *Copperweld* did *not* alter the required showing that "each defendant independently participated in the [anticompetitive] enterprise's scheme" and noted that such involvement must be "more than mere ownership." (ECF No. 332 at PageID 7195.) Indeed, *Copperweld* said nothing about imputation of *liability* between different entities. It merely stated that there is no cause of action for *conspiracy* between affiliated entities. *See Copperweld,* 467 U.S. at 777.[2]

---

fact" on "an issue" on which the Plaintiffs bear the burden. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986).

[2] *See also Arandell v. Centerpoint Energy Services*, 900 F.3d 623, 633 (9th Cir. 2018) (*Copperweld* "does not supply a theory of unbounded vicarious liability" for "legally distinct entities" (citing *Lenox MacLaren Surgical Corp. v. Medtronic*, 847 F.3d 1221, 1237 (10th Cir. 2017)). Plaintiffs themselves rely on *Arandell* and *Lenox*. In *Lenox*, the court said its opinion should *not* "be read to suggest that a corporation can be held liable under § 2 for the anticompetitive conduct of one or more related entities, merely by virtue of its place in the same corporate family." 847 F.3d at 1237. And in *Freeman v. San Diego Ass'n of Realtors*, 322 F.3d 1133, 1147-51 (9th Cir 2003), the court held that real estate associations did not enjoy *Copperweld* immunity by virtue of their membership in a jointly owned multiple listing service because the associations were distinct legal entities (and competitors). The case does not hold that *Copperweld* set a rule that corporate parents are automatically liable for antitrust violations of their subsidiaries. Nor do Plaintiffs distinguish Defendants' authority. (*See* Defs.' Br. at 4-5.) Plaintiffs argue that *Trinity Indus., Inc. v. Greenlease Holding Co.*, 2014 WL 1766083 (W.D. Pa. May 2, 2014), is a "CERCLA case," not an antitrust case, but there is no special rule for antitrust cases that displaces bedrock principles of corporate law. Plaintiffs argue that *FTC v. On Point Glob. LLC*, 2021 WL 4892228 (S.D. Fla. Sept., 29, 2021) involved the FTC Act, which they say applies a different standard. (Pls.' Br. at 12 n.3.) But Plaintiffs do not explain how the standard differs or why that matters. They cannot distinguish the case on the facts because the very same arguments that Plaintiffs raise here were raised and rejected there. *See On Point Global*, 2021 WL 4892228, at *5-6, 15.

2

II. **PLAINTIFFS FAIL TO SHOW DIRECT PARTICIPATION IN ANY ANTICOMPETITIVE ACT**

To defeat summary judgment, Plaintiffs must do more than show that Bain and Charlesbank were involved in Varsity's *business*—they must show direct, "independent participation" by Bain or Charlesbank in the alleged *anticompetitive* activity. Courts are clear that an affiliated entity[3] is not exposed to liability based on "various facts, or circumstances" that "are typical of any parent and subsidiary" relationship. *Mitchael v. Intracorp, Inc.,* 179 F.3d 847, 857 n.12 (10th Cir. 1999); *see also Lenox*, 847 F.3d at 1237 (citing *Intracorp* with approval). Indeed, to hold otherwise would be to subject affiliated entities to liability simply based on routine information flow and feedback between them characteristic of their corporate relationship. Plaintiffs must show more; courts have suggested an approach requiring proof of a direct violation or alter-ego liability. *See, e.g.*, *Lenox,* 847 F.3d at 1237 (discussing potential definitions of "participation," drawing on case law and corporate imputation theories); *H.J., Inc. v. Int'l Tel. & Tel. Corp.*, 867 F.2d 1531, 1549 (8th Cir. 1989) (parent not liable absent proof "it performed acts sufficient to create liability, or actively influenced" the violations).

Plaintiffs therefore must show participation in unlawful conduct that exceeds the incidental connection that any affiliated entity might have, which Plaintiffs have failed to do here. *In re Packaged Seafood Products Antitrust Litigation* 2022 WL 836951 (S.D. Cal. Mar. 21,

---

[3] The Bain and Charlesbank entities on this motion are not owners of Varsity (Defs.' SUF ¶¶ 227, 238.) The funds that invested in Varsity's holding company contracted with the Bain and Charlesbank entities to provide advisory services. Plaintiffs say Bain and Charlesbank are judicially estopped from stating this fact. (Pls.' Br. at 13 & n.5.) That is incorrect; on a motion to dismiss, Bain and Charlesbank (and the Court) were required to accept as true the factual assertions in the complaint—including Plaintiffs' incorrect statement that Bain and Charlesbank "owned" the Varsity Defendants. Plaintiffs also incorrectly state that information about the "corporate makeup of the various board of directors was not provided in discovery." (Pls.' Br. at 12 n.4.) That was provided in an April 2022 supplement to Bain's and Charlesbank's interrogatory responses.

3

2022) ("*Packaged Seafood*"), on which Plaintiffs rely, illustrates this point.  In that case, tuna producers had entered guilty pleas and the CEO of one producer was convicted for his "leadership role in the conspiracy."  *Id.* at *1.  In the civil case that followed the criminal price-fixing investigation, the court allowed claims against a private equity sponsor to go forward because the sponsor allegedly *knew* the operating company was price fixing and *directly participated* in the conspiracy.  *Id.* at *10.  Specifically, the sponsor sent one of its executives to meet with other price-fixers *on behalf of the sponsor*—not the operating company—to ensure that a rival would continue to participate in the conspiracy.  *Id.* at *7.  The court held that this conduct—combined with the guilty pleas, a conviction, and other allegations of direct participation in price fixing—supported an inference that the sponsor *itself* "engaged in the policing and enforcement of the collusive arrangements."  *Id.* at *4-*5, *7; *see also id.* *10 (the sponsor undertook its "own acts in furtherance of the conspiracy").  The facts here are not remotely similar.

> **A. There is No Evidence of "Direct Participation" by Bain or Charlesbank in the Alleged Varsity-USASF Conspiracy**

To survive summary judgment on their claims related to a conspiracy between Varsity and USASF, Plaintiffs must provide evidence regarding Bain and Charlesbank's "direct participation" in the alleged conspiracy.  The alleged participation must be in the anticompetitive act itself—and *not* just evidence of general participation in *Varsity's* business, *see Intracorp, Inc.*, 179 F.3d at 857 n.12; *see also U.S. Anchor Mfg.*, 7 F.3d 986, 1001 (11th Cir. 1993) (in a conspiracy to monopolize case, the relevant conspiracy is one designed to achieve a "monopoly rather than a legitimate business purpose").  Here, USASF is not mentioned a *single* time in Plaintiffs' opposition, nor in the section of Plaintiffs' statement of undisputed facts purportedly detailing Charlesbank and Bain's "role[s] and acts in furtherance of the conspiracy."  (*See* Pls.'

4

SUF ¶¶ 164-193.) Plaintiffs have not provided evidence of direct participation in a Varsity-USASF conspiracy when they have not shown any connection between USASF and Bain or Charlesbank in *any way.*

### B. There is No Evidence of "Direct Participation" by Bain in Any Other Allegedly Anticompetitive Conduct

Moving beyond the allegations concerning USASF, Plaintiffs fail to produce any evidence that Bain directly participated in the other alleged anticompetitive conduct described in their Opposition. Plaintiffs do not dispute that "Bain has never conducted a cheer competition or a cheer camp or sold cheer apparel." (Defs.' SUF ¶ 220.) They do not dispute that "Bain had no involvement with USASF," "Varsity's Squad Credentialing Program," or "the scheduling of Varsity's cheer competitions." (Defs.' SUF ¶¶ 222, 224, 225.) And Plaintiffs do not dispute that Bain had no involvement with Varsity before August 2018. (*See* Defs.' SUF ¶ 219.) All of the evidence concerning Bain cited by Plaintiffs therefore has nothing to do with the so-called "anticompetitive scheme" at issue in this case.

*Acquisitions*. Plaintiffs purport to cite evidence that Bain-affiliated individuals advised Varsity's management on certain acquisitions. But Plaintiffs fail to connect Bain to acquisitions that they claim to be anticompetitive. (Defs.' SUF ¶ 221; Pls.' SUF ¶ 191.) *First*, Plaintiffs point to a potential acquisition *by Herff Jones* (Pls.' Br. at 9; Pls.' Ex. 235), which is a completely different business that has nothing to do with cheerleading. *Second*, Plaintiffs point to the ▮▮▮▮ acquisition of a small camp producer in Arkansas. (Pls.' Ex. 237 at -8670.) Plaintiffs present no evidence of Bain's involvement in that transaction, which was (far) too small to require board approval. (*See* Pls.' Br. at 9.) *Third*, Plaintiffs point to the *potential* acquisition of the assets of a Michigan camp company for ▮▮▮▮ (Pls.' Ex. 238 at -1154.) But that transaction was never consummated (and therefore had no impact on competition) and, once

5

again, Plaintiffs present no evidence of Bain involvement.[4]  Plaintiffs also baldly assert that Bain "secured financing to further fund anticompetitive acquisitions." (Pls.' Br. at 18.)  But Plaintiffs do not identify any.

    ***Knowledge of Varsity's Market Position***.  Plaintiffs fail to cite any case holding that "knowledge" about a company's market position (*i.e.*, Varsity's so-called "market power," "ability to eliminate and foreclose competition," "competitive moat," and "significant barriers to entry") makes a private equity sponsor liable for whatever the company did to put itself in that competitive position.  Plaintiffs argue that Bain is liable because, at most, Bain knew Varsity was a successful business.  That is no reason to impose liability on Bain, and there is zero legal support for such a theory.

    Even assuming Plaintiffs' incorrect premise that Varsity had monopoly power, the "mere possession of monopoly power, and the concomitant charging of monopoly prices, is not only not unlawful; it is an important element of the free-market system." *Verizon Comms. Inc. v. Law Offices of Curtis V. Trinko, LLP*, 540 U.S. 398, 407 (2004).  It necessarily follows that deciding to invest in or advise a business with market power cannot be unlawful.  Holding otherwise would set an untenable precedent: it would expose investors, lenders, or consultants to potential antitrust liability (and treble damages) any time they invested in, provided capital to, or advised businesses that enjoy competitive advantages.

    ***Day-to-Day Operations***.  None of the evidence cited by Plaintiffs suggests Bain was involved in "day-to-day operations" of Varsity, let alone directly involved in the alleged

---

[4] Plaintiffs say that Ex. 237 confirms that "Varsity viewed the acquisition … as an opportunity to foreclose a key competitor in the Cheer Apparel Market …."  In fact, the document simply says that the acquisition would allow Varsity to supply apparel to the acquired company, which represented a miniscule portion of the purported national cheer apparel market.  (*See* Pls.' Ex. 237, at VAR00268669.)  In any event, this provides no evidence of *Bain's* involvement.

6

anticompetitive scheme. For example, Plaintiffs cite deposition testimony related to crisis discussions concerning the Covid pandemic. (Pls.' Ex. 21 at 69). Plaintiffs assert that Bain "was active in … [pursuing] efforts to increase attendance at Varsity's camps and competitions" (Pls.' Br. at 18), but such efforts are not anticompetitive. In any event, the "evidence" that Plaintiffs cite in support of this assertion (Pls.' Br. at 10-11) does not even involve Bain—it is a consulting report prepared by an unaffiliated company with a similar-sounding name.[5] Plaintiffs likewise point to an instance where someone at Bain provided views on how to respond to a news article (Pls.' Br. at 10), but that response is not part of the alleged scheme. Finally, Plaintiffs assert that Bain helped to "arrang[e] the sale and leaseback of Varsity's headquarters" (*id.*), which has nothing to do with the case at all.

*Varsity Family Plan*. Plaintiffs allege that Bain was "active" in "[a]mending the terms for Varsity's Family Plan." (Pls.' Br. at 10, 18.) Plaintiffs' so-called evidence of this is inadmissible because the deponent admitted he had no first-hand knowledge of Bain's involvement and was therefore merely speculating (Ex. 12, at 68 ("I didn't talk to anybody at Bain")). Plaintiffs point to no other evidence to substantiate this speculation, and undisputed testimony further precludes Plaintiffs' assertion. (Defs.' SUF ¶ 223; Ex. CL, Cotton Dep. 123:12-23.) An inadmissible "scintilla" of inadmissible evidence is not sufficient to forestall summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). In any event, Plaintiffs do not explain how this unsupported "activity" amounted to direct participation in anticompetitive conduct, and Varsity's Family Plan is not anticompetitive (ECF No. 505 at 16-

---

[5] The consulting firm is Bain & Company, which is not Bain nor any entity in any way affiliated with Bain. (Pls.' Ex. 28 at 124:1-10) Even that third-party document does not suggest participation in an anticompetitive scheme; it relates to incentivizing sales representatives to cross-sell Varsity's offerings.

7

17), so even if Bain were "active" in amending it, it would not justify extending liability to Bain.

### C. There is No Evidence of "Direct Participation" by Charlesbank in Any Other Allegedly Anticompetitive Conduct

As with Bain, Plaintiffs do not dispute that Charlesbank had no direct involvement in any relevant cheerleading business and that Charlesbank did not interact with USASF. (Defs.' SUF ¶¶ 232, 233, 234, 235, 237; *see also supra* § II.B.) Plaintiffs' other assertions do not show direct participation in any allegedly unlawful act.

*Acquisitions.* Plaintiffs say the "most critical" thing is that Charlesbank supposedly "secured substantial financing for the anticompetitive acquisitions." (Pls.' Br. at 16.) To be sure, the Varsity Defendants made acquisitions during the time period of Charlesbank's majority on the board of the Varsity Defendants' parent. As members of the board, the Charlesbank-affiliated individuals participated in board review and approval of the allegedly anticompetitive Jam Brands acquisition in 2015. But under *Bestfoods*, Charlesbank cannot be held liable for those actions. *See supra* Section I.[6] Nor do Plaintiffs' assertions that Charlesbank assisted Varsity in securing third-party financing *after* the Jam Brands acquisition, and speculation that such financing was to "replenish the cash used to acquire Jam Brands" (Pls.' Br. at 4-5), support an inference that Charlesbank directly participated in an acquisition that occurred months earlier. And the record belies Plaintiffs' premise—Varsity did not need the assistance of Charlesbank or anyone else to obtain financing for the Jam Brands acquisition because ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (Pls.' Ex. 29 at 151:3-6).

---

[6] *See also Trinity Indus., Inc. v. Greenlease Holding Co.*, 2014 WL 1766083 (W.D. Pa. May 2, 2014). For similar reasons, Plaintiffs' efforts to hold Charlesbank liable for any improper conduct by Varsity during the time that Charlesbank allegedly controlled a majority of the seats on the Varsity Defendant's parent company's board of directors (*see, e.g.,* Pls.' Br. at 16) fails under *Bestfoods* and because control of a board is incidental to "mere ownership," which this Court has already held insufficient to show participation. (ECF No. 332, at PageID 7195.)

8

Plaintiffs further assert that Charlesbank was "actively involved in selecting the targets and approving the acquisitions" (Pls.' Br. at 4), but nearly all the evidence they cite in support of this statement are documents addressed to the board of directors of the Varsity Defendants' indirect parent and communications with the Charlesbank-associated individuals on that board that reflect legitimate, routine board activity. (*See, e.g.*, Pls.' Ex. 286 at -2247 (email to the Varsity Brands board entitled "Materials for Varsity Brands Board of Directors Meeting"); Pls.' Br. at 5, citing Pls.' Ex. 288 at -3480 (containing statement of a director to the effect that cash that had been raised could be used for acquisitions); Pls.' Br. at 4 (discussing director review and approval of a press release announcing a significant acquisition).)[7]

***Day-to-Day Operations***. Plaintiffs' assertion that Charlesbank was "actively involved in Varsity's day-to-day operations" (Pls.' Br. at 5), is not supported by the evidence, nor would it be evidence of participation in an "anticompetitive scheme." Plaintiffs point to the appointment of a new CEO to serve as interim CEO of the Varsity Defendants' parent company for a short period of time, but appointment of a CEO is a core board function. *See, e.g.*, *No Spill LLC v. Scepter Canada, Inc.*, 2022 WL 1078435, at *9 (D. Kan. Apr. 6, 2022). Plaintiffs say that this individual was "actively engaged in Varsity's exclusionary conduct aimed at rivals" (Pls.' Br. at 5), but the document they cite involves competition with a rival (Under Armour) for a license agreement, (*see* Pls.' Ex. 290), which Plaintiffs have not suggested was anticompetitive (nor could they).

***Knowledge of Varsity's Market Position***. Plaintiffs make similar assertions as to Charlesbank as they do as to Bain, which fail for the same reason. Plaintiffs likewise present no

---

[7] As to Charlesbank specifically, as contrasted with Varsity boards, Plaintiffs cite to one Charlesbank document that talks about three acquisitions "being completed." (Pls.' Br. at 5, citing Pls.' Ex. 282 at -7575.) Only one of those, the Jam Brands acquisition in 2015, is at issue in this case, and Plaintiffs do not explain how a post-hoc report that an allegedly improper acquisition has been completed constitutes "active involvement" in that acquisition.

actual evidence to support these allegations. The document that Plaintiffs cite (Pls.' Ex. 97 at -5882) says nothing about "monopoly power," "ability to maintain further monopoly power through addition acquisitions" or mention acquisitions of "major competitors." Plaintiffs also fail to support their assertion that Charlesbank was "aware of the anticompetitive nature of Defendants' activities." (Pls.' Br. at 6.) "[M]ere knowledge" cannot constitute direct participation in an antitrust violation. *Cf. No Spill LLC*, 2022 WL 1078435, at *9 (rejecting theory). Nor does the evidence Plaintiffs present reflect anticompetitive conduct or Charlesbank's participation in the same. Plaintiffs cite an email (Pls.' Ex. 293 at -4857) that notes that the payer and decision maker for some of Varsity's products are different (for example, a gym might choose a Varsity uniform, but the cheerleader then actually pays for the uniform). Plaintiffs also point to Pls.' Ex. 68 at -1628, which at most suggests an understanding that Varsity planned to increase prices in response to a price increase imposed by a third-party supplier. The same document (Pls.' Ex. 68 at -1617) reports that cheerleaders were spending more because they were "going to more competitions" and fashion has "become[] more important." Finally, Plaintiffs cite testimony that refers to raising capital, but nothing suggests the capital raise was in furtherance of the "anticompetitive scheme." (*See* Pls.' Br. at 5, citing Pls.' Ex. 29 at 150:9-151:19; 153:24-154:10.)

*Post August 2018 Events.* Plaintiffs try to impose liability on Charlesbank for Varsity's conduct *after* August 2018 when it no longer had a majority on the board of directors of the Varsity Defendants' parent. (Pls.' Br. at 7.) Plaintiffs present no evidence to support such liability; the evidence cited in support of this assertion (Pls.' Ex. 29, at 158:01-158:08, 185:11-185:15) simply summarizes the transaction and notes Charlesbank retained one board seat. (*See also* Defs.' SUF ¶ 231).

10

### III.   PLAINTIFFS' NEW AGENCY THEORY FAILS

Plaintiffs argue that Bain and Charlesbank are "vicariously" liable for the "acts of their agent, Varsity." (Pls.' Br. at 18.)[8]  To establish agency, Plaintiffs would have to present evidence that Bain (or Charlesbank) expressly or impliedly appointed Varsity to act on *its behalf* or took action that clothed Varsity with apparent authority to bind it.  *See, e.g., Baker v. Baptist Memorial Hosp.*, 2013 WL 1405711, *4 (W.D. Tenn. Apr. 5, 2013).  There is no such evidence.

Plaintiffs identify a single document as to each of Charlesbank and Bain.  As to Bain, the document (Pls.' Ex. 308, at CB0027831) is entitled "Varsity Brands: Investor Presentation June 2020," and states that "The Company [Varsity Brands] … is seeking to raise $100 million of Senior Secured Notes."  The purpose of this capital raise was to finance *Varsity* during the Covid-19 pandemic.  (*See* Pls.' Ex. 21, Cotton Dep. Tr. 46:23-47:24, 52:6-54:7.)  As to Charlesbank, the document (Pls.' Ex. 288) is a presentation regarding a possible dividend that the Varsity Defendants' parent might pay their shareholders in part from funds that Varsity would raise.  In both cases, Bain and Charlesbank were assisting *Varsity* in raising capital.  These documents provide no basis to conclude that Varsity was Bain's or Charlesbank's agent.[9]

### CONCLUSION

The claims against Bain and Charlesbank should be dismissed.

---

[8] Plaintiffs did not allege the Varsity was Bain or Charlesbank's agent and should be precluded from doing so now.  *See, e.g.*, *Humphreys v. Bank of America*, 2013 WL 1967955, at *9 (W.D. Tenn. May 13, 2013) (new theories cannot be raised "for the first time at summary judgment").  Plaintiffs argue that Bain and Charlesbank should not be allowed to address their new "agency" theory.  (*See* Pls.' Br. at 19 n.6.)  But a movant is certainly entitled to respond to whatever legal theories the nonmovant puts forward in opposition.

[9] *American Society of Mechanical Engineers v. Hydrolevel Corp.*, 456 U.S. 556 (1982) is not on point.  In *Hydrolevel*, an ASME subcommittee chairman, clothed by ASME with authority to issue responses on its behalf, issued guidance on a standard that was said to injure Hydrolevel's ability to compete.  The Court held that ASME could be held liable because it had permitted the subcommittee chairman to speak on its behalf.

Dated: October 13, 2023                     Respectfully submitted,

/s Matthew S. Mulqueen

George S. Cary*
Steven J. Kaiser*
CLEARY GOTTLIEB STEEN & HAMILTON LLP
2112 Pennsylvania Avenue, NW
Washington, DC 20037
Phone: (202) 974-1500
Fax: (202) 974-1999
gcary@cgsh.com
skaiser@cgsh.com

Jennifer Kennedy Park*
Heather Nyong'o*
CLEARY GOTTLIEB STEEN & HAMILTON LLP
1841 Page Mill Road, Suite 250
Palo Alto, CA 94304
Phone: (650) 815-4100
Fax: (202) 974-1999
jkpark@cgsh.com
hnyongo@cgsh.com

* Admitted *pro hac vice*

Matthew S. Mulqueen (TN #28418)
Adam S. Baldridge (TN #23488)
BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ
165 Madison Avenue, Suite 2000
Memphis, TN 38103
Phone: (901) 526-2000
Fax: (901) 577-0866
mmulqueen@bakerdonelson.com
abaldridge@bakerdonelson.com

*Attorneys for Bain Capital Private Equity, LP and Charlesbank Capital Partners, LLC*

12