# EXHIBIT 17

**U**NITED **S**TATES **D**ISTRICT **C**OURT
**W**ESTERN **D**ISTRICT OF **T**ENNESSEE

| | |
|---|---|
| JESSICA JONES et al., | |
| Plaintiffs, | |
| v. | **Civ. Action No. 2:20-cv-02892** |
| VARSITY BRANDS, LLC et al., | |
| Defendants. | |

**DEFENDANTS' RESPONSE TO PLAINTIFFS' ADDITIONAL STATEMENTS OF FACT**

**ADDITIONAL EXHIBITS TO DEFENDANTS' RESPONSE TO PLAINTIFFS' ADDITIONAL STATEMENTS OF FACT**

| EXHIBIT NO. | DESCRIPTION |
|---|---|
| DI | VAR00259924-VAR00259925 |
| DJ | VAR00402524-VAR402540 |

I, Steven J. Kaiser, swear under penalty of perjury that the exhibits submitted herewith are true and correct copies of the indicated documents.

Steven J. Kaiser

## PRELIMINARY STATEMENT

Pursuant to Federal Rule of Civil Procedure 56 and Local Rule 56.1, Defendants respectfully submit this response to Plaintiffs' Statement of Additional Undisputed Facts.[1]

Plaintiffs' Statement improperly includes 95 purported "facts" not cited anywhere in Plaintiffs' briefs.[2]  By definition, these "facts" plainly are not material as Plaintiffs have not even tried to explain how they relate to Defendants' Motion or Plaintiffs' Opposition.

The other 120 assertions in Plaintiffs' Statement also do not create any material dispute of fact preventing summary judgment for Defendants.  Defendants address each assertion below, but as a general matter, Plaintiffs' statements relate to immaterial issues or legal conclusions, and they are unsupported by admissible evidence—or any evidence at all.  Many of Plaintiffs' assertions are primarily or exclusively based on their experts' interpretation or recitation of documents and testimony, which is inadmissible, or other unreliable testimony that should be excluded.  *See* Fed. R. Evid. 702, 403; *Ask Chems., LP v. Comput. Packages, Inc.*, 593 F. App'x 510, 510 (6th Cir. 2014) ("Where an expert merely offers his client's opinion as his own, that opinion may be excluded."); *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 299 F. Supp. 3d 430, 584 (S.D.N.Y. 2018) (excluding testimony where economic expert "purport[ed] to interpret documents" because such "opinions are not the product of [his] expertise").  Plaintiffs' assertions do not create a genuine dispute of material fact.[3]

*        *        *

---

[1] Appendix A to this response sets forth evidentiary and admissibility objections to the materials cited by Plaintiffs in their Statement.

[2] *See* PSUF ¶¶ 1-14, 16-21, 23-35, 37-38, 49-59, 63, 65-69, 71-73, 75, 77, 79, 164-193, 202-03, 211-215.

[3] Defendants have reproduced Plaintiffs' Statement as stated by Plaintiffs, without correcting typographical or other errors that appear in the original.

1.      Millions of athletes participate in the sport of competitive cheerleading ("Competitive Cheer"), either through private gyms, commonly referred to as All Star gyms ("All Star Cheer") or through schools ("School Cheer"), or both. Ex. 2 [Netz Rebuttal] at 89 & n.72; Ex. 51 at 5544 (2/2018, Bain Presentation).

**Defendants' Response to 1:**  Plaintiffs have not produced any admissible evidence to support their assertion, as the cited materials do not indicate the number of participants in so-called "Competitive Cheer."

Additionally, Plaintiffs cite their expert's recitation and interpretation of documents, which is inadmissible.  Fed. R. Evid. 702, 403; *see also Ask Chems., LP v. Comput. Packages, Inc.*, 593 F. App'x 510, 510 (6th Cir. 2014).

However, Plaintiffs' assertion is undisputed for purposes of this Motion only.


2.      School Cheer consists of Competitive Cheer teams affiliated with middle schools, high schools, or colleges. Ex. 1 at 15-16 [Netz Rep.]; Ex. 52 at 8542 (5/2018, Varsity Presentation).

**Defendants' Response to 2:**  Plaintiffs' assertion is not material because it does not affect the outcome of Defendants' Motion, as Plaintiffs do not even cite it in their Opposition.

Additionally, Plaintiffs cite their expert's recitation and interpretation of documents, which is inadmissible.  Fed. R. Evid. 702, 403.

Furthermore, to the extent Plaintiffs suggest that "School Cheer" includes only teams that attend competitions, Plaintiffs' cited materials do not support the asserted fact.  *See* Pls.' Ex. 52 at 8542 (indicating that only "███ [of school teams] participate in competitions").

This statement does not create a material dispute of fact because, although the statement is not true and in that sense is "disputed," it is neither material nor supported by evidence and it accordingly should be disregarded.

3.  Regardless of whether an athlete competes on a gym team or a school team, both activities are essentially the same. Ex. 1 [Netz Rep.] at 5-13; Ex. 33 [Kennedy Dep.] at 302:12-308:7 ("All Competitive Cheer teams (gyms and schools) compete head-to-head against other teams in events with unique, choreographed, and highly acrobatic routines that last two and a half minutes.").

**Defendants' Response to 3:**  Plaintiffs' assertion is not material because it does not affect the outcome of Defendants' Motion, as Plaintiffs do not even cite it in their Opposition.

Additionally, Plaintiffs cite their expert's recitation and interpretation of documents, which is inadmissible.  Fed. R. Evid. 702, 403.

In addition, Plaintiffs' cited material does not support the asserted fact, including because Plaintiffs misquote Ms. Kennedy's testimony.  Indeed, Ms. Kennedy testified to the material differences between All Star and scholastic cheer, including distinct rules and different requisite skill levels.  *See* Pls.' Ex. 33 at 209:1-18, 211:15-212:6.

This statement does not create a material dispute of fact because, although the statement is not true and in that sense is "disputed," it is neither material nor supported by evidence and it accordingly should be disregarded.

4.  Competitive Cheer is a competitive sport distinct from sideline cheerleading.[4] Ex. 1 [Netz Rep.] at 11-12. Ex. 51 at 5546.

**Defendants' Response to 4:**  Plaintiffs' assertion is not material because it does not affect the outcome of Defendants' Motion, as Plaintiffs do not even cite it in their Opposition.

Additionally, Plaintiffs cite their expert's recitation and interpretation of documents, which is inadmissible.  Fed. R. Evid. 702, 403.

However, Plaintiffs' assertion is undisputed for purposes of this Motion only.

---

[4] Defendants incorrectly use the term "scholastic cheer" instead of Plaintiffs' term School Cheer, which encompasses sideline cheer and other activities that are not the subject of Plaintiffs' claims. This distinction is important because Defendants incorrectly posit and predicate their arguments and facts on "scholastic" cheer, and not School Cheer, as Plaintiffs define it.

4

5.      Competitive Cheer athletes and their families pay fees to their gyms and schools to participate in Competitive Cheer. Those gyms and schools then pay Varsity to attend its Cheer Competitions and Cheer Camps, and to purchase Cheer Apparel (collectively, "the relevant markets"), as well as a host of other fees required to participate in the sport, such as for travel, lodging, and to be a spectator at events. Ex. 1 [Netz Rep.] at 1-2.

**Defendants' Response to 5**:  Plaintiffs' assertion is not material because it does not affect the outcome of Defendants' Motion, as Plaintiffs do not even cite it in their Opposition.

In addition, Plaintiffs fail to support their asserted fact with admissible evidence; instead, they cite only their expert's recitation of Plaintiffs' allegations, provided in a section of Dr. Netz's report titled "Summary of Plaintiffs' Allegations."  An expert's recitation of allegations form a complaint is inadmissible.  Fed. R. Evid. 702, 403.  Plaintiffs likewise provide no evidence that Cheer Competitions, Cheer Camps, and Cheer Apparel are relevant markets under the antitrust laws.

This statement does not create a material dispute of fact because, although the statement is not true and in that sense is "disputed," it is neither material nor supported by evidence and it accordingly should be disregarded.

6.      Cheer Competitions, Cheer Apparel and Cheer Camps are the three main types of costs incurred by athletes and their families to participate in Competitive Cheer. Ex. 1 [Netz Rep.] at 13-14; Ex 3 [Heeb Rep.] at ¶ 36.

**Defendants' Response to 6**:  Plaintiffs' assertion is not material because it does not affect the outcome of Defendants' Motion, as Plaintiffs do not even cite it in their Opposition.

In addition, Plaintiffs fail to support their asserted fact with admissible evidence; instead, they cite only their expert's recitation and interpretation of documents, which is inadmissible. Fed. R. Evid. 702, 403.

This statement does not create a material dispute of fact because, although the statement is not true and in that sense is "disputed," it is neither material nor supported by evidence and it accordingly should be disregarded.

7.    The average cost per All Star Cheer season to a team member's family is approximately $4,000 including uniforms, apparel, travel, and camps. However, the total cost to families can exceed $10,000 when including lodging, spectator fees, and other related expenses. Ex. 1 [Netz Rep.] at 13; Ex. 53 at 4735 (██████████████████████████████████ ███████████████████████████████████████████████████████████.

**Defendants' Response to 7:** Plaintiffs' assertion is not material because it does not affect the outcome of Defendants' Motion, as Plaintiffs do not even cite it in their Opposition.

Additionally, Plaintiffs cite their expert's recitation and interpretation of documents, which is inadmissible. Fed. R. Evid. 702, 403.

Furthermore, Plaintiffs' cited material does not support the asserted fact and therefore should be disregarded. Plaintiffs' Exhibit 1 states that "Costs can exceed $10,000/season, *primarily driven by travel*" (emphasis added), and Plaintiffs' Exhibit 53 does not state how much it costs to participate in All Star Cheer.

For these reasons, Plaintiffs' asserted fact is immaterial and need not be decided to resolve Defendants' Motion, but it is undisputed for purposes of this Motion only.

8.    All Star and School Cheer teams participate in Cheer Camps. Ex. 51 at 5547-48.

**Defendants' Response to 8:** Plaintiffs' assertion is not material because it does not affect the outcome of Defendants' Motion, as Plaintiffs do not even cite it in their Opposition.

Plaintiffs ignore the undisputed fact that very few All Star teams attend camps, which are geared toward scholastic teams, including those that do not participate in competitions. *See* Defs.' SUF No. 4. In addition, the cited portion of Plaintiffs' Exhibit 51 does not support Plaintiffs' assertion, as it does not even mention camps.

This statement does not create a material dispute of fact because, although the statement is not true and in that sense is "disputed," it is neither material nor supported by evidence and it accordingly should be disregarded.

9.      The average cost for School Cheer is approximately ███ per athlete, including uniforms, apparel, competitions, camps, and travel. Ex. 1 [Netz Rep.] at 13-14; Ex. 53 at 4739.

**Defendants' Response to 9:** Plaintiffs' assertion is not material because it does not affect the outcome of Defendants' Motion, as Plaintiffs do not even cite it in their Opposition.

Additionally, Plaintiffs cite their expert's recitation and interpretation of documents, which is inadmissible. Fed. R. Evid. 702, 403.

Furthermore, Plaintiffs' cited material does not support the asserted fact and therefore should be disregarded. Plaintiffs' Exhibit 53 says "The *average cheerleader* spends ███ per year" (emphasis added), which reflects the weighted average of average spend for both school and All Star cheer—not the "average cost for School Cheer," as Plaintiffs claim.

This statement does not create a material dispute of fact because, although the statement is not true and in that sense is "disputed," it is neither material nor supported by evidence and it accordingly should be disregarded.

10. Over time, total participation costs have increased for both All Star Cheer and School Cheer athletes due to rising prices of Cheer Competitions, Cheer Camps, and Cheer Apparel. Ex. 1 [Netz Rep.] at 13-14; Ex. 3 [Heeb Rep.] at 198, 264-265.

**Defendants' Response to 10**: Plaintiffs' assertion is not material because it does not affect the outcome of Defendants' Motion, as Plaintiffs do not even cite it in their Opposition.

In addition, Plaintiffs fail to support their asserted fact with admissible evidence; instead, they cite only their expert's recitation and interpretation of documents, which is inadmissible. Fed. R. Evid. 702, 403.

This statement does not create a material dispute of fact because, although the statement is not true and in that sense is "disputed," it is neither material nor supported by evidence and it accordingly should be disregarded.

11. Competitive Cheer is essentially a year-round commitment for teams, athletes, and families. Ex. 1 [Netz Rep.] at 13, 5-17; Ex. 54 at 9324.

**Defendants' Response to 11**: Plaintiffs' assertion is not material because it does not affect the outcome of Defendants' Motion, including because Plaintiffs do not cite it in their Opposition.

Additionally, Plaintiffs cite their expert's recitation and interpretation of documents, which is inadmissible. Fed. R. Evid. 702, 403.

Furthermore, Plaintiffs' cited material does not support the asserted fact and therefore should be disregarded. Plaintiffs' Exhibit 54 speaks only to the length of the All Star cheer season and says nothing about the length of the scholastic cheer season (which Plaintiffs include in their definition of "Competitive Cheer":).

This statement does not create a material dispute of fact because, although the statement is not true and in that sense is "disputed," it is neither material nor supported by evidence and it accordingly should be disregarded.

12.     All Star teams attend an average of seven to nine cheer competitions each season. Ex. 1 [Netz Rep.] at 16. Ex. 51 at 5546 ("Top cheer gyms … will compete 7-9 times per year nationally.").

**Defendants' Response to 12:**  Plaintiffs' assertion is not material because it does not affect the outcome of Defendants' Motion, including because Plaintiffs do not cite it in their Opposition.

Additionally, Plaintiffs cite their expert's recitation and interpretation of documents, which is inadmissible.  Fed. R. Evid. 702, 403.

Of note, Plaintiffs' experts directly contradict themselves on this point. *See* Def.' Resp. to Pls.' SUF No. 13 (noting that Pls.' Ex. 3 [Heeb Rep.] at ¶ 130 claims that "All-Star cheer athletes frequently attend six or more competitions a year.")

However, Plaintiffs' assertion is undisputed for purposes of this Motion only.

13.     School Cheer teams attend an average of six competitions each season. Ex. 3 [Heeb Rep.] at ¶ 130.

**Defendants' Response to 13:**  Plaintiffs' assertion is not material because it does not affect the outcome of Defendants' Motion, as Plaintiffs do not even cite it in their Opposition.

Additionally, Plaintiffs cite their expert's recitation and interpretation of documents, which is inadmissible.  Fed. R. Evid. 702, 403.

In addition, Plaintiffs' cited material does not support the asserted fact and therefore should be disregarded.  Plaintiffs' Exhibit 3 at ¶ 130 says only that "*All-Star* cheer athletes

frequently attend six or more competitions a year." Pls.' Ex. 3 [Heeb Rep.] at ¶ 130 (emphasis added). It says nothing about how many competitions School Cheer teams attend.

In addition, Plaintiffs fail to support their asserted fact with admissible evidence; instead, they cite only their expert's recitation and interpretation of documents, which is inadmissible. Fed. R. Evid. 702, 403.

For these reasons, Plaintiffs' asserted fact is immaterial and need not be decided to resolve Defendants' Motion, but it is undisputed for purposes of this Motion only.


14.     Competitive Cheer athletes compete during the season with the goal of attending key end-of-season events. The Cheerleading Worlds ("Worlds"), hosted by the USASF, is the most prestigious end-of-season event for All Star Cheer teams. Ex. 1 [Netz Rep.] at 16-17; Ex. 2 [Netz Rebuttal] at 89-90 & n. 243 (Worlds bids and Summit bids are coveted events); Ex. 22 [Foster Dep.] at 170:23 – 171:5 (Q: Was that considered a significant accomplishment by a team to go to cheerleading Worlds? A: I would say so, yes.").

**Defendants' Response to 14:**  Plaintiffs' assertion is not material because it does not affect the outcome of Defendants' Motion, as Plaintiffs do not even cite it in their Opposition.

Additionally, Plaintiffs cite their expert's recitation and interpretation of documents, which is inadmissible.  Fed. R. Evid. 702, 403.

Furthermore, Plaintiffs' cited material does not support the asserted fact and therefore should be disregarded.  Ms. Foster's testimony does not support Plaintiffs' suggestion that *all* Competitive Cheer athletes compete with the goal of attending end-of-season events like Worlds. Ms. Foster testified that most All Star teams are not eligible to participate because only "your highest-level teams can go [to Worlds]. Like a Level 5 can go."

This statement does not create a material dispute of fact because, although the statement is not true and in that sense is "disputed," it is neither material nor supported by evidence and it accordingly should be disregarded.

15. Teams qualify for Worlds by performing well at other USASF-sanctioned competitions, held by one of the 42 event Tier 1 event producers. Ex. 1 at 16 [Netz Rep.] The 42 Tier 1 event producers also make up the composition of USASF's Sanctioning Committee ("USASF SC"). As of 2015 with Varsity's acquisition of JAM Brands, Varsity owned the majority of the 42 Tier 1 event producer seats, giving it control of the USASF SC. Ex. 55 at 0664 (Point 16.f re M&A strategy for All Star events: "Varsity now owns 32 of those Tier 1 companies ███████████████"). As of early 2020, Varsity owned 34 of the 42 Tier 1 Eps. Ex. 56 at 8761.

**Defendants' Response to 15:** Plaintiffs' assertions are not material because they do not affect the outcome of Defendants' Motion, particularly given that all of the rule changes that Plaintiffs take issue with occurred before November 2015 when Varsity acquired JAM Brands and allegedly gained "control of the USASF SC." Furthermore, USASF-sanctioned events represent only a small portion of events in Plaintiffs' alleged Cheer Competition market. *See* Defs.' SUF No. 62 (undisputed that USASF had no involvement in school competitions).

Additionally, Plaintiffs cite their expert's recitation and interpretation of documents, which is inadmissible. Fed. R. Evid. 702, 403.

Furthermore, Plaintiffs' cited material does not support the asserted fact and therefore should be disregarded. Plaintiffs; Exhibits 55 and 56 do not reference the Sanctioning Committee at all, let alone establish that Tier 1 event producers "make up the composition" of the Sanctioning Committee or that Varsity "owned the majority of the 42 Tier 1 event producer seats" following the JAM Brands acquisition.

This statement does not create a material dispute of fact because, although the statement is not true and in that sense is "disputed," it is neither material nor supported by evidence and it accordingly should be disregarded.

16.    Varsity owns three end-of-season events, The Summit, The D2 Summit, and the U.S. Finals, for which teams strive to obtain a bid and attend. Ex. 1 [Netz Rep.] at 17; Ex. 55 at 0631, 0664.

**Defendants' Response to 16:**  Plaintiffs' assertion is not material because it does not affect the outcome of Defendants' Motion, as Plaintiffs do not even cite it in their Opposition.

Additionally, Plaintiffs cite their expert's recitation and interpretation of documents, which is inadmissible.  Fed. R. Evid. 702, 403.

Furthermore, Plaintiffs' cited material does not support the asserted fact and therefore should be disregarded.  First, the cited material does not state that all teams strive to obtain a bid to and attend any of the referenced events.  In fact, Plaintiffs' Exhibit 55 states that the Summit and D2 Summit are specifically for *All Star* cheerleaders (as opposed to scholastic cheerleaders). *See* Pls.' Ex. 55 at -0631.  Second, the cited material does not state that any team must obtain a bid in order to attend U.S. Finals.  *Id.* at -0664.

For these reasons, Plaintiffs' asserted fact is immaterial and need not be decided to resolve Defendants' Motion, but it is disputed that "teams strive to obtain a bid and attend" the referenced events.  It is undisputed for the purposes of this Motion only that Varsity owns the referenced events.

17.    Teams strive to attend The Summit, which is held at Disney World in Orlando, Florida, and Varsity describes it as the "All Star cheerleading grand finale." Ex. 1 [Netz Rep.] at 17-18; Ex. 55 at 0631.

**Defendants' Response to 17:**  Plaintiffs' assertion is not material because it does not affect the outcome of Defendants' Motion, as Plaintiffs do not even cite it in their Opposition.

Additionally, Plaintiffs cite their expert's recitation and interpretation of documents, which is inadmissible.  Fed. R. Evid. 702, 403.

Furthermore, Plaintiffs' cited material does not support the asserted fact and therefore should be disregarded. Plaintiffs' Exhibit 55 states that the Summit was created as "*an* All Star Cheerleading grand finale," not that it is "the" All Star Cheerleading grand finale. Pls.' Ex. 55 at -0631 (emphasis added). Defendants also incorporate their response to Plaintiffs' SUF No. 16 with regard to Plaintiffs' suggestion that all teams "strive to attend the Summit."

For these reasons, Plaintiffs' asserted fact is immaterial and need not be decided to resolve Defendants' Motion, but it is disputed that all teams strive to attend the Summit, and that Varsity describes the Summit as "the All Star cheerleading grand finale." It is undisputed for the purposes of this Motion only that the Summit is held in Disney World in Orlando, Florida.

18. Varsity created The Summit to hinder competition. It did so by requiring that All Star teams could only earn a bid to The Summit by attending at least one regular season Varsity event. Ex. 1 [Netz Rep.] at 17-18; Ex. 57 at 2584 ( "█████████████████████ ███████████████████████████████████████████████████ ███████").

**Defendants' Response to 18:** Plaintiffs' assertion is not material because it does not affect the outcome of Defendants' Motion, as Plaintiffs do not even cite it in their Opposition.

Additionally, Plaintiffs cite their expert's recitation and interpretation of documents, which is inadmissible. Fed. R. Evid. 702, 403.

Furthermore, Plaintiffs' assertion is a legal conclusion, not a statement of fact, and thus Defendants need not respond. Regardless, Plaintiffs' cited material does not support their assertion and therefore should be disregarded. Creating The Summit pro-competitively expanded output and increased competition in the All Star space. Plaintiffs ignore that Exhibit 57 states that Varsity pro-competitively increased output to meet demand. *Id.* ("Once we were almost at capacity at The Summit we created the D2 Summit.").

13

This statement does not create a material dispute of fact because, although the statement is not true and in that sense is "disputed," it is neither material nor supported by evidence and it accordingly should be disregarded.

19.    Varsity also hosts the U.S. Finals end-of-year championship and assumed ownership of this event through its acquisitions of JAM Brands and EPIC Brands. Ex. 1 [Netz Rep.] at 16-18, 94-98; Ex. 58 at 5064, 5076.

**Defendants' Response to 19:**  Plaintiffs' assertion is not material because it does not affect the outcome of Defendants' Motion, as Plaintiffs do not even cite it in their Opposition.

Additionally, Plaintiffs cite their expert's recitation and interpretation of documents, which is inadmissible.  Fed. R. Evid. 702, 403.

However, Plaintiffs' assertion is undisputed for purposes of this Motion only.

20.    The School Cheer season culminates with a national championship event, the U.S. Nationals ("Nationals"), which is owned by Varsity. Ex. 1 [Netz Rep.] at 16-18 & Exhibit 2 (list of Varsity-owned brands).

**Defendants' Response to 20:**  Plaintiffs' assertion is not material because it does not affect the outcome of Defendants' Motion, as Plaintiffs do not even cite it in their Opposition.

In addition, Plaintiffs fail to support their asserted fact with admissible evidence; instead, they cite only their expert's recitation and interpretation of documents, which is inadmissible. Fed. R. Evid. 702, 403.  Further, Plaintiffs' cited material does not support their assertion and therefore should be disregarded.  None of the materials Plaintiffs cite mentions an event called "U.S. Nationals" or suggests that the so-called "School Cheer" season culminates in a single national championship event. *See, e.g.*, Pls.' Ex. 1 at 18 ("Varsity has three school competition

brands, UCA, NCA, and USA, all of which hold year-end championships for high school and college athletes."); Pls.' SUF No. 21.

This statement does not create a material dispute of fact because, although the statement is not true and in that sense is "disputed," it is neither material nor supported by evidence and it accordingly should be disregarded.

21.   Varsity also owns and controls three School Cheer competition brands, Universal Cheerleaders Association ("UCA"), National Cheerleaders Association ("NCA") and United Spirit Association ("USA"), all of which hold year-end championships for high school and college athletes. Ex. 1 [Netz Rep.] at 15.

**Defendants' Response to 21:**  Plaintiffs' assertion is not material because it does not affect the outcome of Defendants' Motion, as Plaintiffs do not even cite it in their Opposition.

Additionally, Plaintiffs cite their expert's recitation and interpretation of documents, which is inadmissible.  Fed. R. Evid. 702, 403.

However, Plaintiffs' assertion is undisputed for purposes of this Motion only.

22.   Under Varsity's Squad Credentialing Program, to qualify for Nationals, high school cheer teams first must qualify by performing well in a regional event, with only those who attend a Varsity owned camp being able to qualify for Nationals at such regional events. Ex. 59 (UCA website: teams that do not attend a Varsity Spirit camp can compete at a local UCA competition "but they will not be eligible to receive a bid to the NHSCC [National High School Cheerleading Championship]."); Ex. 1 [Netz Rep.] at 25, 61-62 (Varsity's Squad Credentialing Program is one way Varsity tied Cheer Competitions and Cheer Camps market).

**Defendants' Response to 22:**  The portions of Plaintiffs' assertion that are duplicative of Defendants SUF No. 8 are undisputed.

Additionally, Plaintiffs cite their expert's recitation and interpretation of documents, which is inadmissible.  Fed. R. Evid. 702, 403.

15

Plaintiffs' supplemental assertion—that high school cheer teams must qualify for "Nationals" by performing well in a regional event—is not material because it does not affect the outcome of Defendants' Motion.  Plaintiffs suggest that Varsity "tied school competitions to school camps" through the Squad Credentialing Program, ECF No. 488-1 at p. 17, but being able to qualify for end-of-season championship *events* by performing well at a regional event has nothing to do with the alleged tie involving camps.

In addition, Plaintiffs' cited material does not support their supplemental assertion and therefore should be disregarded.  Exhibit 59 states that credentialed teams are "eligible to compete and receive a bid at a 2020 UCA fall qualifying tournament," but it does not state that competing at a qualifying tournament is the only way to receive a bid.

Additionally,  Plaintiffs' Exhibit 59 speaks to only the UCA National High School Cheerleading Championship.  It says nothing about championship events hosted by, for example, USA, NCA, or Nfinity.

This statement does not create a material dispute of fact because, although the statement is not true and in that sense is "disputed," it is neither material nor supported by evidence and it accordingly should be disregarded.

23.     Over time, Varsity has obtained control over nearly all of the sanctioning bodies that govern All Star and School Cheer, including the AACCA, ICU, NACCC, USA Cheer, IASF, USASF, and NFHS. Ex. 1 [Netz Rep.] at 19 & n. 73-74; id. at Exhibit 3 (chart of sanctioning bodies controlled by Varsity); Ex. 4 [Heeb Rebuttal], at ¶ 376, n. 427; Ex. 54 at 9353-59; Ex. 60 at 7215.

**Defendants' Response to 23:**  Plaintiffs' assertion is not material because it does not affect the outcome of Defendants' Motion, as Plaintiffs do not even cite it in their Opposition.

Additionally, Plaintiffs cite their expert's recitation and interpretation of documents, which is inadmissible.  Fed. R. Evid. 702, 403.

Furthermore, Plaintiffs' cited materials do not support their assertion and therefore should be disregarded.  First, Plaintiffs' materials do not state that Varsity "controls" any of the referenced organizations.  Instead, they state only that Varsity "works closely with NFHS," Pls.' Ex. 54 at -9353, that AACCA, USASF, ICU, and USA Cheer were "established with the help of Varsity Spirit," *id.* at -9355, and that Varsity has "long-term relationships" with USA Cheer, NFHS, the NCAA, and ICU, Pls.' Ex. 60 at -7215.  Second, the cited materials do not make any mention of NACCC or IASF.  Finally, the cited materials do not support that the organizations Plaintiffs reference constitute "nearly all" of the sanctioning bodies that govern All Star and scholastic cheer.

This statement does not create a material dispute of fact because, although the statement is not true and in that sense is "disputed," it is neither material nor supported by evidence and it accordingly should be disregarded.

24.  Plaintiffs are parents, guardians, and families of athletes who participate in Competitive Cheer on teams run through All Star gyms, schools, or both. ECF No. 1 (Complaint, ¶¶ 13-15).

**Defendants' Response to 24:**  Plaintiffs' assertion is not material because it does not affect the outcome of Defendants' Motion, as Plaintiffs do not even cite it in their Opposition, but it is undisputed for purposes of this Motion only.

However, Defendants note that Plaintiffs' citation to ECF No. 1, ¶ 14 is inapposite, as Plaintiffs' cannot support their assertion by citing to allegations in their own complaint. *See Hansbrough v. Titlemax of Tennessee, Inc.*, 977 F. Supp. 2d 859, 868 (W.D. Tenn. 2013).

25.   Jessica Jones is the parent of two Competitive Cheer athletes who participated in the sport as members of All Star gym teams. Ms. Jones indirectly paid Varsity for enrollment and admission to Varsity Cheer Competitions and indirectly purchased Cheer Apparel manufactured and sold by Varsity. ECF No. 1 (Complaint, ¶13); Ex. 61 at ¶¶ 5-6.

**Defendants' Response to 25:**  Plaintiffs' assertion is not material because it does not affect the outcome of Defendants' Motion, as Plaintiffs do not even cite it in their Opposition.

Additionally, Plaintiffs cite their expert's recitation and interpretation of documents, which is inadmissible.  Fed. R. Evid. 702, 403.

Furthermore, Plaintiffs' cited materials do not support their assertion and therefore should be disregarded.  Plaintiffs suggest that Ms. Jones "indirectly" paid for "enrollment and admission" to Varsity cheer competitions and for apparel "manufactured and sold" by Varsity. However, Plaintiffs' Exhibit 61, a declaration from Ms. Jones, states only that Ms. Jones' daughters "competed in regular and end-of season events," not that she made any purchases directly or indirectly from Varsity.  Pls.' Ex. 61 at ¶¶ 5-6.  Ms. Jones' declaration also states that she "purchased cheerleading apparel Varsity," which does not support that she purchased apparel from Varsity *indirectly*.  Finally, Plaintiffs cannot support their assertion by citing to allegations in their own complaint. *See Hansbrough v. Titlemax of Tennessee, Inc.*, 977 F. Supp. 2d 859, 868 (W.D. Tenn. 2013).

This statement does not create a material dispute of fact because, although the statement is not true to the extent that Plaintiffs' assert that Ms. Jones indirectly paid Varsity for enrollment and admission to Varsity Cheer Competitions and Cheer Apparel and in that sense is "disputed," Defendants do not dispute, for purposes of this Motion only, that Ms. Jones made the purchases set forth in Ex. 61. However, the remainder of Plaintiffs' assertion is neither material nor supported by evidence and it accordingly should be disregarded.

18

26.     Christina Lorenzen is the parent of a Competitive Cheer athlete who participated in the sport on School Cheer teams. Ms. Lorenzen indirectly paid Varsity for registration in Varsity School Cheer Competitions and for Cheer Apparel. ECF No. 1 (Complaint, ¶ 15). As part of her participation on her School Cheer team, Ms. Lorenzen's daughter was required to attend a tumbling clinic each week at a gym, Cheer Central Suns, which she testified was mandatory and required by the team's coach, and for which she paid to have her daughter attend. Ex. 35 [Lorenzen Dep.] at 69:23-69:1.

**Defendants' Response to 26:**  Plaintiffs' assertion is not material because it does not affect the outcome of Defendants' Motion, as Plaintiffs do not even cite it in their Opposition.

Plaintiffs assert that Ms. Lorenzen paid Varsity indirectly for registration for cheer competitions and for apparel. Plaintiffs support this assertion by citing to allegations and nothing more, which is insufficient. Plaintiffs cannot support their assertion by citing to allegations in their own complaint. *See Hansbrough v. Titlemax of Tennessee, Inc.*, 977 F. Supp. 2d 859, 868 (W.D. Tenn. 2013).

Plaintiffs also assert that Ms. Lorenzen paid for her daughter to attend a "tumbling clinic each week at a gym, Cheer Central Suns," but Ms. Lorenzen did not pay for a "clinic."  Ms. Lorenzen testified that she paid for her daughter to attend "weekly tumbling lessons," and Plaintiffs do not even claim (much less support) that these tumbling lessons had any connection to Varsity.  *See* Pls.' Ex. 35 at 68:23-69:5; *see also* Defs.' SUF No. 6.

This statement does not create a material dispute of fact because, although the statement is not true to the extent that Plaintiffs' assert that Ms. Lorenzen indirectly paid Varsity for registration in Varsity School Cheer Competitions and for Cheer Apparel and in that sense is "disputed," Defendants do not dispute, for purposes of this Motion only, that Ms. Lorenzen made

the purchases set forth in ECF No. 1. ¶ 15. However, the remainder of Plaintiffs' assertion is

neither material nor supported by evidence and it accordingly should be disregarded.

27.    On February 2, 2023, Plaintiffs filed a motion to add Amy Coulson as a class
       representative. ECF No. 394. Ms. Coulson resides in the Memphis, Tennessee
       metropolitan area, where Varsity has its headquarters. She has paid Varsity indirectly for
       her three daughters to compete in Varsity Cheer Competitions and to attend Varsity
       Cheer Camps, and has indirectly purchased Varsity Cheer Apparel, including uniforms,
       other apparel, and accessories, continually since 2012. Her daughters have competed on
       All Star gym teams as well as for their middle school and high school cheerleading
       teams, and have attended Varsity competitions and camps, and purchased apparel in
       connection with both teams. ECF No. 394-2, ¶ 7.

       **Defendants' Response to 27:**  Plaintiffs' assertions are not material because they do not

affect the outcome of Defendants' Motion, as Plaintiffs do not even cite it in their Opposition.

       Plaintiffs' assertion is also not material because Plaintiffs' motion to add Ms. Coulson as

a class representative has not been granted.  In any event, Plaintiffs support this assertion by

citing to allegations and nothing more, which is insufficient.

       For these reasons, Plaintiffs' asserted fact is immaterial and need not be decided to

resolve Defendants' Motion, but it is undisputed for purposes of this Motion only.

28.    Families of cheer athletes struggle to keep up with the rising costs of Competitive Cheer.
       Ex. 30 [Jones Dep.] at 34:21-36:6, 36:2-36:6 (some families are so desperate they donate
       their plasma to fund cheer); Ex. 63 at 7474 ("Owners feel like they are constantly
       apologizing for pricing because it is so readily available for parents to see and they
       deconstruct cost of events and is SO expensive) (emphasis in original).

       **Defendants' Response to 28:**  Plaintiffs' assertions are not material because they do not

affect the outcome of Defendants' Motion, as Plaintiffs do not even cite it in their Opposition.

       In addition, Plaintiffs' cited materials do not support this asserted fact and therefore

should be disregarded.

First, the cited portion of Plaintiffs' Exhibit 30 is inadmissible hearsay, because Ms. Jones's testimony is not based on her personal knowledge, but instead speculates based on what she might have heard from others. Pls.' Ex. 30, Jones Dep. at 35:23-36:1 ("Q. Who's donated plasma to pay for cheerleading? A. I'm not at liberty to say, but it was not me."); Fed. R. Evid. 802. Second, Plaintiffs' Exhibit 63 does not reflect statements from parents of athletes, but rather reflects the notes from a meeting of gym owners and coaches.

This statement does not create a material dispute of fact because, although the statement is not true and in that sense is "disputed," it is neither material nor supported by evidence and it accordingly should be disregarded.

29.     Varsity was founded by Jeff Webb in 1974 to create a related, but distinct, sport from the traditional sport of sideline cheer, Ex. 1 [Netz Rep.] at 12-16; Ex. 64 at 4559; Ex. 12 [Elza Dep.] at 59:11-22.

**Defendants' Response to 29:** Plaintiffs' assertion is not material because it does not affect the outcome of Defendants' Motion, as Plaintiffs do not even cite it in their Opposition.

Additionally, Plaintiffs cite their expert's recitation and interpretation of documents, which is inadmissible. Fed. R. Evid. 702, 403.

However, Plaintiffs' assertion is undisputed for purposes of this Motion only.

30.     In 2014, Charlesbank acquired Varsity Brands for nearly $1.5 billion. Ex. 1 [Netz Rep.] at 63; Ex. 65 (Charlesbank, Portfolio/Consumer, Varsity Brands, https://www.charlesbank.com/portfolio/companies/varsity-brands/ (last visited Feb. 9, 2023)).

**Defendants' Response to 30:** Plaintiffs' assertion is not material because it does not affect the outcome of Defendants' Motion, as Plaintiffs do not even cite it in their Opposition.

Additionally, Plaintiffs cite their expert's recitation and interpretation of documents, which is inadmissible.  Fed. R. Evid. 702, 403.

However, Plaintiffs' assertion is undisputed for purposes of this Motion only.

31.   After Bain purchased Varsity in 2018, Charlesbank still retained a seat on Varsity's Board. Ex. 28 [Janower Dep.] at 158:01-158:08, 185:11-185:15; Ex. 29 [Charlesbank 30(b)(6) Dep.] at 185:11-186:7 (Charlesbank has continuously held one seat on Varsity's Board of Directors since the Bain transaction); Ex. 66 (list of officers and directors of Varsity entities as of 3/2/2018); Ex. 67 (list of officers and directors of Varsity entities as of 9/22/2016).

   **Defendants' Response to 31:**  Plaintiffs' assertion is not material because it does not affect the outcome of Defendants' Motion, as Plaintiffs do not even cite it in their Opposition, but it is undisputed for purposes of this Motion only.

32.   In 2018, Charlesbank sold Varsity to Bain for nearly $2.9 billion, securing significant profits from the sale. Ex. 68 at 1550 (6/23/2018, White (Charlesbank): "As you know, earlier this week we signed a transaction to sell Varsity to Bain Capital for $2.88 billion, a ~3.4x multiple of our original investment."); Ex. 21 [Bain Dep.] at 16:1-12) (confirming Varsity purchase price of $2.88 billion).

   **Defendants' Response to 32:**  Plaintiffs' assertion is not material because it does not affect the outcome of Defendants' Motion, as Plaintiffs do not even cite it in their Opposition, but it is undisputed for purposes of this Motion only.

33.   Charlesbank continued to hold a financial stake in Varsity after the company was sold to Bain. Ex. 1 [Netz Rep.] at 9; Ex. 68 at 1553 (6/23/2018, White (Charlesbank): "As part of the sale, we along with Partners Group have the right to purchase up to ~25% of the equity in the Bain transaction; … Over the last 6 months we have thoroughly re-underwritten the business and we recommend that Fund IX invest in the Bain transaction.").

**Defendants' Response to 33:** Plaintiffs' assertion is not material because it does not affect the outcome of Defendants' Motion, as Plaintiffs do not even cite it in their Opposition.

Additionally, Plaintiffs cite their expert's recitation and interpretation of documents, which is inadmissible. Fed. R. Evid. 702, 403.

Furthermore, Plaintiffs' cited materials do not support the asserted fact and therefore should be disregarded. Plaintiffs' Exhibit 68 makes clear that Charlesbank advised funds, not Charlesbank indirectly owned the parent corporation of the Varsity Defendants. Pls.' Ex. 68 at 1553. But, it is undisputed for purposes of this Motion only that Charlesbank advised funds held a financial stake in the indirect parent of the Varsity Defendants.

34.    After the sale to Bain, Charlesbank invested an additional ▮▮▮▮▮▮▮ in Varsity and continued to influence Varsity's business strategy. Ex. 1 [Netz Rep.] at 9; Ex. 3 [Heeb Rep.] at ¶ 89; Ex. 68 at 1550-1554; Ex. 29 [Charlesbank Dep.] at 167:4-169:24, 185:11-186:7.

**Defendants' Response to 34:** Plaintiffs' assertion is not material because it does not affect the outcome of Defendants' Motion, as Plaintiffs do not even cite it in their Opposition.

Additionally, Plaintiffs cite their expert's recitation and interpretation of documents, which is inadmissible. Fed. R. Evid. 702, 403.

Furthermore, Plaintiffs' cited materials do not support the asserted fact and therefore should be disregarded.  Plaintiffs' Exhibit 29 states that Charlesbank Funds, not Charlesbank, were invested in Varsity.  Pls.' Ex. 29 at 167:4-169:24.  Plaintiffs have also provided no evidence for the statement that "Charlesbank ... continued to influence Varsity's business strategy."  Plaintiffs' Exhibit 68 states that Charlesbank would have "no control."  Pls.' Ex. 68 at 1553.

This statement does not create a material dispute of fact because, although the statement is not true and in that sense is "disputed," it is neither material nor supported by evidence and it accordingly should be disregarded.

35.     Varsity Brands is governed by a Board of Directors ("Varsity Board"). Between December 2014 and July 2018, Charlesbank held a controlling majority on the Varsity Board. Ex. 69 at 7068 (Charlesbank held ▋▋▋ seats); Ex. 10 [Webb Dep.] at 343:3-6 ("Charlesbank . . . were in control of the board").

    **Defendants' Response to 35:**  Plaintiffs' assertion is not material because it does not affect the outcome of Defendants' Motion, as Plaintiffs do not even cite it in their Opposition, Plaintiffs' Exhibit 69 states that there were ▋▋▋▋▋▋▋▋▋▋▋▋ board seats out of seven total.  Otherwise, this statement is undisputed for purposes of this Motion only.

36.     On March 2, 2016, when Jeff Webb exited his position as CEO of Varsity Brands, he continued to serve on Varsity company boards. Ex. 21 [Bain Dep.] at 100:20-101:15 (Varsity Board); Ex. 70 at 1297-98 (Varsity Spirit Board); Ex. 10 [Webb Dep. 41:1-4]; Ex. 66 (list of officers and directors of Varsity entities as of 3/2/2018); Ex. 67 (list of officers and directors of Varsity entities as of 9/22/2016); Ex. 70 at 1297-98, 1300 [Webb Dep.]; Ex. 33.

    **Defendants' Response to 36:**  Plaintiffs' cited evidence does not support the asserted fact and therefore should be disregarded.  Plaintiffs' Exhibits 66, 67, and 70 merely show that Mr. Webb was on the board of Varsity Spirit in March 2018, September 2016, and December 2014.  Pls.' Ex. 66, 67, and 70 at 1297-98.  The other three exhibits are irrelevant, as Plaintiffs' Exhibit 33 is the deposition of Jackie Kennedy, Pls.' Ex. 33; the cited portion of Plaintiffs' Exhibit 10 is a discussion of how often Mr. Webb used his mobile phone to conduct Varsity business, Pls.' Ex. 10 at 41:1-4; and the cited portion of Plaintiffs' Exhibit 21 is a discussion of

how many board seats Bain had after its acquisition, not who is on the board, Pls.' Ex. 21 at
100:20-101:15.

This statement does not create a material dispute of fact because, although the statement
is not true and in that sense is "disputed," it is not supported by evidence and it accordingly
should be disregarded.

37.   On or around July 2018, Bain created a "new holding structure on top including a top
level partnership where the real substantive board is." Ex. 71 at 3840.

**Defendants' Response to 37:**  Plaintiffs' assertion is not material because it does not
affect the outcome of Defendants' Motion, as Plaintiffs do not even cite it in their Opposition,
but it is undisputed for purposes of this Motion only.

38.   Bain constructed the current Varsity Board so that Bain is entitled to four of six seats,
with the remainder reserved for Varsity's CEO and a Charlesbank representative. Ex. 1
[Netz Rep.] at 9-11.

**Defendants' Response to 38:**  Plaintiffs' assertion is not material because it does not
affect the outcome of Defendants' Motion, as Plaintiffs do not even cite it in their Opposition.

Plaintiffs also fail to support their asserted fact with admissible evidence; instead, they
cite only their expert's recitation and interpretation of documents, which is inadmissible. Fed. R.
Evid. 702, 403.  In addition, Plaintiffs' cited evidence does not support the asserted fact and
therefore should be disregarded.  The cited material states only that "Bain currently owns Varsity
and holds a board seat as well."  Pls.' Ex. 1 at 9.

This statement does not create a material dispute of fact because, although the statement
is not true and in that sense is "disputed," it is neither material nor supported by evidence and it
accordingly should be disregarded.

39.     Varsity created USASF in 2004 as a means to control the sport of Competitive Cheer. Ex. 1 [Netz Rep.] at 19-22 & Exhibit 2; Ex. 11 [Parrish Dep.] at 32:8-32:33 (USASF was also formed to neutralize the NACCC, a competing group); Ex. 73 (USASF website); Ex. 74 at 5399 (In Varsity's own words: "In the world of sports, he who makes the rules, rules.") (emphasis added); Ex. 75 at 9106 ("USASF was created as a Varsity strategy"); Ex. 76 at 7772-78 (6/28/2019, IEP Letter to Gym Owners: "One company runs our sport. One company runs our governing body." … Lord Acton of Great Britain said, "Absolute power corrupts absolutely.").

**Defendants' Response to 39:** Plaintiffs' assertion is a legal conclusion, not a statement of fact, and thus Defendants need not respond.

Additionally, Plaintiffs cite their expert's recitation and interpretation of documents, which is inadmissible. Fed. R. Evid. 702, 403.

Furthermore, Plaintiffs' cited evidence does not support the asserted fact and therefore should be disregarded. Plaintiffs' Exhibit 11 merely states that the USASF was born "as a response [to the NACCC]," not to "neutralize" it. Pls.' Ex. 11 at 33:2-3; Plaintiffs' Exhibit 74 does not contain a page 5399; and Plaintiffs' Exhibit 73 states that the USASF was founded in 2003, not 2004. Finally Plaintiffs' Exhibit 76 reflects one gym owner's opinion, and in any event, does not speak to why the USASF was created.

Additionally, Plaintiffs' Exhibit 76 is a letter from an IEP to a collection of gym owners and is thus inadmissible hearsay. Fed. R. Evid. 802.

This statement does not create a material dispute of fact because, although the statement is not true and in that sense is "disputed," it is neither material nor supported by evidence and it accordingly should be disregarded.

40.     USASF was operated by Varsity-paid employees since its inception until recently. Ex. 14 [Peterson Dep.] at 275:1-10 (Steve Peterson, USASF President of Events and Corporate

Alliances, has worked at the USASF since 2004, but was technically a Varsity employee until 2020); Ex. 15 [Chadwick Dep.] at 38:17-39:4, 41:1-41:19 (Jim Chadwick, USASF President and Chairman, worked for USASF from 2004 to 2021); Ex. 204 at 2897 (through 2015, USASF employees were employees of Varsity and were paid by Varsity, which was then reimbursed by USASF).

**Defendants' Response to 40:** Plaintiffs' cited evidence does not support this asserted fact and therefore should be disregarded. As Plaintiffs note, USASF reimbursed Varsity for payroll expenses, meaning that they were not Varsity-paid employees. Pls.' Ex. 204 at 2897.

In addition, Plaintiffs' assertion is not material because it does not affect the outcome of Defendants' Motion. Plaintiffs' assertion is not germane to the issue of whether USASF was important to the "success of the overall conspiracy," ECF No. 479 at 1 (Plaintiffs' sole citation to this fact in any of their briefing).

This statement does not create a material dispute of fact because, although the statement is not true as stated and in that sense is "disputed," it is neither material nor supported by evidence and it accordingly should be disregarded.


41.     Until 2015, USASF and Varsity shared the same office space at Varsity's offices. Ex. 1 [Netz Rep.] at 19-22; Ex. 77 at 0485.

**Defendants' Response to 41:** Plaintiffs' assertion is not material because it does not affect the outcome of Defendants' Motion. Plaintiffs' assertion is not germane to the issue of whether USASF was important to the "success of the overall conspiracy." *See* ECF No. 479 at 1.

Additionally, Plaintiffs cite their expert's recitation and interpretation of documents, which is inadmissible. Fed. R. Evid. 702, 403.

However, this assertion is undisputed for purposes of this Motion only.

42. USASF personnel were employees of Varsity and received incentives from Varsity, including participation in Varsity's profit-sharing plan. Ex. 1 [Netz Rep.] at 6-7, 21 & n. 7-8, 80, 82; Ex. 77 at 0485 (six USASF individuals included on Varsity email regarding ESOP distribution); Ex. 14 [Peterson Dep.] at 274:8-276:24, 281:22-282:14; Ex. 12 [Elza Dep.] at 152:7-156:3.

**Defendants' Response to 42:** Plaintiffs' cited evidence does not support the asserted fact and therefore should be disregarded. Plaintiffs offer no evidence for their general proposition. Plaintiffs' Exhibit 14 speaks only to Peterson participating in Varsity's Employee Stock Option Plan. Pls.' Ex. 14 at 281:22-282:4. Plaintiffs' Exhibit 77 is not an "email regarding ESOP distribution"—it is not an email at all—and it does not reflect what Plaintiffs assert in their parenthetical. Plaintiffs' Exhibits 12 is inadmissible because the witness lacked personal knowledge and testified without foundation. Fed. R. Evid. 602.

Additionally, Plaintiffs cite their expert's recitation and interpretation of documents, which is inadmissible. Fed. R. Evid. 702, 403.

Additionally, this fact is also immaterial because the USASF employees on the ESOP program were unaware of their participation until the distribution occurred, and thus, it necessarily did not motivate any USASF policy. Pls.' Ex. 14, Peterson Dep. at 281:8-12; Pls.' Ex. 15, Chadwick Dep. at 274:6-9.

Furthermore, Plaintiffs' assertion is not material because it does not affect the outcome of Defendants' Motion. Plaintiffs' assertion is not germane to the issue of whether USASF was important to the "success of the overall conspiracy." *See* ECF No. 479 at 1.

This statement does not create a material dispute of fact because, although the statement is not true and in that sense is "disputed," it is neither material nor supported by evidence and it accordingly should be disregarded.

43. Varsity also financed and funded USASF. See Ex. 12 [Elza Dep.] at 150:19-156:3; Ex. 78 at 2541 ("The [$1.8 million] no-interest start up loan, along with the necessary office support, provided by Varsity was the foundation that allowed the USASF to establish and develop our mission."); DX Ex. E at 1489 (Varsity provided rainy day fund to USASF).

**Defendants' Response to 43:** Plaintiffs' assertion is not material because it does not affect the outcome of Defendants' Motion. Plaintiffs' assertion is not germane to the issue of whether USASF was important to the "success of the overall conspiracy." See ECF No. 479 at 1.

Additionally, this fact is immaterial because it is undisputed that USASF repaid the start-up loan by November 2013. See Pls.' Ex. 15, Chadwick Dep. at 251:2-13.

However, this assertion is undisputed for purposes of this Motion only.

44. Varsity owned the USASF trademarks until 2017. Ex. 1 [Netz Rep.] at 19-20; Ex. 79 at 0555; Ex. 15 [Chadwick Dep.] at 154:4-156:5.

**Defendants' Response to 44:** Plaintiffs' assertion is not material because it does not affect the outcome of Defendants' Motion. Plaintiffs' assertion is not germane to the issue of whether USASF was important to the "success of the overall conspiracy." See ECF No. 479 at 1.

Additionally, as Plaintiffs' Exhibit 15 makes clear, all that was transferred was the trademark for "'U.S. All Star Federation,' 'USASF,' and design." Pls.' Ex. 15, Chadwick Dep. at 155:19-21

In addition, Plaintiffs cite their expert's recitation and interpretation of documents, which is inadmissible. Fed. R. Evid. 702, 403.

This statement does not create a material dispute of fact because it is not material and it accordingly should be disregarded. However, it is undisputed for purposes of this Motion only.

45.    Varsity controls the USASF Board of Directors ("USASF Board"). Ex. 1 [Netz Rep.] at
       21-22; Ex. 6 [Aronoff Rebuttal] at 80 & n. 86; Ex. 11 [Parrish Dep.] at 612:13-25
       (through USASF, Varsity controls USASF's rule changes and other decisions).

**Defendants' Response to 45:** Plaintiffs' assertion is a legal conclusion, not a statement

of fact, and thus Defendants need not respond.

In addition, Plaintiffs' cited material does not support the asserted fact and therefore

should be disregarded.  Plaintiffs' Exhibit 11 refers only to the creation of the USASF SC shortly

after the NACCC joined the USASF in 2005.  Pls.' Ex. 11 at 612:13-25. Otherwise, Plaintiffs'

cite only their expert's recitation and interpretation of documents, which is inadmissible. Fed. R.

Evid. 702, 403.

In addition, Plaintiffs' assertion is not material because it does not affect the outcome of

Defendants' Motion.  *See* Defs.' SUF No. 122 (undisputed that "there was never a case where

the Varsity representatives voted one way and the rest of the Board voted another"). Plaintiffs'

assertion is also not germane to the issue of whether USASF was important to the "success of the

overall conspiracy." *See* ECF No. 479 at 1.

For these reasons, Plaintiffs' asserted fact is immaterial and need not be decided to

resolve Defendants' Motion, but it is undisputed for purposes of this Motion only that Varsity

had a majority of seats on the USASF board of directors at some times. *See also* Defs.' SUF No.

121.


46.    In January 2005, the USASF Board increased its number of voting seats from nine to
       thirteen. Ex. _ [Aronoff Rebuttal] at 80 & n. 86; DX Ex. R at 1. Since 2005, Varsity has
       controlled the USASF Board with no fewer than seven out of 13 voting seats. Nine of the
       voting seats on the USASF Board are permanent: seven are reserved for representatives
       from proscribed event producers; two are reserved for USASF representatives. DX Ex. D
       at 2454. Varsity-paid employees, Jim Chadwick and Steve Peterson, occupied the
       permanent seats reserved for USASF representatives on the USASF Board: Jim
       Chadwick from 2004 to 2021 and Steve Peterson from 2004 to present. Ex. 15 [Chadwick

Dep.] at 38:9-19, 41:1-19]; Ex. 14 [Peterson Dep.] at 275:1-15, 392:17-21. In 2005, Varsity owned five of the seven event producers with permanent seats on the USASF Board. DX Ex. D at 2454. With its acquisition of CheerSport in 2012 and JAM Brands in November 2015, Varsity gained control of all seven permanent seats reserved for event producers. To gain the seats, Varsity simply kept the seats of those event producers it had acquired. Ex. 24 [Fowlkes Dep.] at 51:19-23 ("Q. When you -- when Cheer Sport was acquired by Varsity in approximately 2012, was there any discussion that you should give up your Board seat on the USASF? A. No, sir." ). The strategy of subsuming USASF Board seats was deliberate. Ex. 80 at 0282 ████████████████████████

████████████████████████████████████████████████████████████████

**Defendants' Response to 46:** Plaintiffs' assertion is not material because it does not affect the outcome of Defendants' Motion. Plaintiffs' assertion is not germane to the issue of whether USASF was important to the "success of the overall conspiracy." *See* ECF No. 479 at 1.

In addition, to the extent Plaintiffs claim that "Since 2005, Varsity has controlled the USASF Board with no fewer than seven out of 13 voting seats[,]" Plaintiffs' cited evidence does not support the asserted fact and therefore should be disregarded. Defendants' Exhibit D says nothing about board seats controlled by Varsity. Defs.' Ex. D.

For these reasons, Plaintiffs' asserted fact is immaterial and need not be decided to resolve Defendants' Motion, but it is disputed to the extent that Plaintiffs assert "[s]ince 2005, Varsity has controlled the USASF Board with no fewer than seven out of 13 voting seats" and "[t]he strategy of subsuming USASF Board seats was deliberate," but otherwise undisputed for purposes of this Motion only.

47.   Varsity controls the USASF Sanctioning Committee ("USASF SC"), at least since it acquired JAM Brands in November 2015, at which time Varsity then owned 32 of the 42 Tier 1 event producer seats on USASF's SC. Ex. 55 at 0664; Ex. 56 at 8761; Ex. 83 at 0227.

**Defendants' Response to 47:**  Plaintiffs' assertion is a legal conclusion, not a statement of fact, and thus Defendants need not respond.

Plaintiffs' assertion is also not material because it does not affect the outcome of Defendants' Motion.  Plaintiffs' assertion is not germane to the issue of whether USASF was important to the "success of the overall conspiracy." *See* ECF No. 479 at 1. Plaintiffs' assertion is not material because they have failed to identify any vote taken by the USASF SC during the limitations period.

In addition, Plaintiffs' cited materials do not support the asserted fact and therefore should be disregarded.  Plaintiffs' Exhibit 83 merely states that Varsity has "21 Tier 1 (Cheer Sanctioning Committee) Votes."  Pls.' Ex. 83 at 0227. It does not say anything about "control" of the USASF SC. *Id.*

For these reasons, Plaintiffs' asserted fact is immaterial and need not be decided to resolve Defendants' Motion, but it is undisputed for purposes of this motion only.

48.   Varsity intentionally sought to acquire rival Tier 1 event producers to gain control of the USASF SC and the Worlds bid system. Ex. 55 at 0644 ("We look to acquire all the Tier I event companies . . . that give bids to the cheerleading . . . Worlds. There are only 42 Tier I event companies. Varsity now owns 36 of those Tier I companies in all of the best markets."); Ex. 292 (Tier 1 producers have power to grant Worlds bids).

**Defendants' Response to 48:**  Plaintiffs' cited evidence does not support the asserted fact and therefore should be disregarded.  Neither exhibit references the USASF SC nor an intention to gain control of the Worlds bid system.  Pls.' Ex. 55 at 0664 (Defendants assume this is the intended citation, as it is the page containing the relevant language); Pls.' Ex. 292.

This statement does not create a material dispute of fact because, although the statement is not true and in that sense is "disputed," it is not supported by evidence and it accordingly should be disregarded.

49.     Cheer Competitions is a relevant and properly defined product market. Ex. 1 [Netz Rep. at 41-45]; Ex. 3 [Heeb Rep.] at ¶¶ 117-120.

**Defendants' Response to 49:**  Plaintiffs' assertion is a legal conclusion, not a statement of fact, and thus Defendants need not respond.  Additionally, the statement is material only in the sense that Plaintiffs have the burden of establishing the relevant markets. However, Plaintiffs' only evidence is their expert opinion, and this testimony is the subject to a Daubert challenge. *See* Netz Daubert Mot., ECF No. 382-1; Heeb Daubert Mot., ECF No. 388-1. If that challenge is successful, there will be no evidence of this statement, which should then be disregarded.

50.     All Star and School Cheer competitions are properly defined in the same relevant market for Cheer Competitions. Ex. 4 [Heeb Rebuttal] at ¶¶ 129-140; Ex. 2 [Netz Rebuttal] at 17-20.

**Defendants' Response to 50:**  Plaintiffs' assertion is a legal conclusion, not a statement of fact, and thus Defendants need not respond.  Additionally, the statement is material only in the sense that Plaintiffs have the burden of establishing the relevant markets. However, Plaintiffs' only evidence is their expert opinion, and this testimony is the subject to a Daubert challenge. *See* Netz Daubert Mot., ECF No. 382-1; Heeb Daubert Mot., ECF No. 388-1. If that challenge is successful, there will be no evidence of this statement, which should then be disregarded.

51.     Regular and end-of-season competitions are properly defined in the same relevant market. Ex. 2 [Netz Rebuttal] at 20-24; Ex. 4 [Heeb Rebuttal] at ¶¶ 141-142.

**Defendants' Response to 51:**  Plaintiffs' assertion is a legal conclusion, not a statement of fact, and thus Defendants need not respond.  Additionally, the statement is material in the sense that Plaintiffs have the burden of establishing the relevant markets. However, Plaintiffs'

only evidence is their expert opinion, and this testimony is the subject to a Daubert challenge. *See* Netz Daubert Mot., ECF No. 382-1; Heeb Daubert Mot., ECF No. 388-1. If that challenge is successful, there will be no evidence of this statement, which should then be disregarded.

52.　Regular season School Cheer Competitions and Post-season School Cheer competitions are properly defined in the same relevant market. Ex.4 [Heeb Rebuttal] at ¶¶ 143-145.

**Defendants' Response to 52:** Plaintiffs' assertion is a legal conclusion, not a statement of fact, and thus Defendants need not respond.　Additionally, the statement is material in the sense that Plaintiffs have the burden of establishing the relevant markets. However, Plaintiffs' only evidence is their expert opinion, and this testimony is the subject to a Daubert challenge. *See* Heeb Daubert Mot., ECF No. 388-1. If that challenge is successful, there will be no evidence of this statement, which should then be disregarded.

53.　The relevant geographic market for Cheer Competitions is national. Ex. 1 [Netz Rep.] at 41-45; see also Ex. 12 [Elza Dep.] at 304:23-305:24 ("Q. Some gyms travel across the country from various different … across states to go to events. I mean, Indianapolis and Atlantic City are pretty far apart, correct? [Objection Omitted] A. That's correct. Q. And so if you moved an event from Indianapolis to Atlantic City, you could still attract at least some of the same customers; is that fair? [Objection Omitted] A. Yes. … that's our sales strategy across the board.").

　　**Defendants' Response to 53:** Plaintiffs' assertion is a legal conclusion, not a statement of fact, and thus Defendants need not respond.　Additionally, the statement is material in the sense that Plaintiffs have the burden of establishing the relevant markets. However, Plaintiffs' only evidence is their expert opinion, and this testimony is the subject to a Daubert challenge. *See* Netz Daubert Mot., ECF No. 382-1. If that challenge is successful, there will be no other evidence of this statement, which should then be disregarded.

In addition, Plaintiffs other cited material does not support the asserted fact and therefore should be disregarded.  Plaintiffs' Exhibit 12 is discussing All Star cheer events only and merely indicates that some teams travel "across states" to go to some events.  Pls.' Ex. 12 at 305:12-17. Plaintiffs also cite the testimony of their expert, Dr. Netz; not only is Dr. Netz's testimony inadmissible, but Plaintiffs fail to note that her testimony contradicts that of their other expert, Dr. Heeb.  Pls.' Ex. 4 at ¶ 120 ("I very clearly and repeatedly state that the geographic market for cheer competitions and cheer camps is regional").

54.     Cheer Camps is a relevant and properly defined product market. Ex. 1 [Netz Rep.] at 60; Ex. 3 [Heeb Rep.] at ¶¶ 112-117.

**Defendants' Response to 54:**  Plaintiffs' assertion is a legal conclusion, not a statement of fact, and thus Defendants need not respond.  Additionally, the statement is material in the sense that Plaintiffs have the burden of establishing the relevant markets. However, Plaintiffs' only evidence is their expert opinion, and this testimony is the subject to a Daubert challenge. *See* Netz Daubert Mot., ECF No. 382-1; Heeb Daubert Mot., ECF No. 388-1. If that challenge is successful, there will be no evidence of this statement, which should then be disregarded.

55.     The relevant geographic market for Cheer Camps is national. Ex. 1 [Netz Rep.] at 60-62; Ex. 3 [Heeb Rep.] at ¶¶ 145-152.

**Defendants' Response to 55:**  Plaintiffs' assertion is a legal conclusion, not a statement of fact, and thus Defendants need not respond.  Additionally, the statement is material in the sense that Plaintiffs have the burden of establishing the relevant markets. However, Plaintiffs' only evidence is their expert opinion, and this testimony is the subject to a Daubert challenge. *See* Netz Daubert Mot., ECF No. 382-1; Heeb Daubert Mot., ECF No. 388-1. If that challenge is successful, there will be no evidence of this statement, which should then be disregarded.

56.   Cheer Apparel is a relevant and properly defined product market. Ex. 1 [Netz Rep. at 55-57; Ex. 3 [Heeb Rep.] at ¶¶ 112-117; 153-162.

**Defendants' Response to 56:**  Plaintiffs' assertion is a legal conclusion, not a statement of fact, and thus Defendants need not respond.  Additionally, the statement is material in the sense that Plaintiffs have the burden of establishing the relevant markets. However, Plaintiffs' only evidence is their expert opinion, and this testimony is the subject to a Daubert challenge. *See* Netz Daubert Mot., ECF No. 382-1; Heeb Daubert Mot., ECF No. 388-1. If that challenge is successful, there will be no evidence of this statement, which should then be disregarded.

57.   Varsity Cheer Apparel includes five apparel product categories: uniforms, shoes, accessories, warm-ups, and camp wear. Ex. 84 at 1952.

**Defendants' Response to 57:**  Plaintiffs' assertion is not material because it does not affect the outcome of Defendants' Motion, as Plaintiffs do not even cite it in their Opposition.

In addition, Plaintiffs' cited evidence does not support the asserted fact and therefore should be disregarded.  While Plaintiffs' Exhibit 84 does list these five product categories, the same page also lists six apparel categories under the heading "Apparel Sale Breakdown."  Pls.' Ex. 84 at 1952.  Neither purports to describe a cheer apparel market as Plaintiffs' have defined the term.  *Id*.

This statement does not create a material dispute of fact because, although the statement is not true and in that sense is "disputed," it is neither material nor supported by evidence and it accordingly should be disregarded.

58.   These five products generally form a kit that all athletes must purchase in order to compete in Cheer Competitions and to participate on All Star and School Cheer teams. Ex. 54 at 9305, 9309, 9320 (████████████████████████).

**Defendants' Response to 58:**  Plaintiffs' assertion is not material because it does not affect the outcome of Defendants' Motion, as Plaintiffs do not even cite it in their Opposition.

In addition, Plaintiffs' cited evidence does not support the asserted fact and therefore should be disregarded.  Plaintiffs' Exhibit 54 discusses manufacturing capacity (-9305), enhanced customization in footwear (-9320), and a ██████████████████████████ ██████████████ (-9309)  There is no discussion of a kit of apparel, what such a kit would contain, or whether such a kit is required to participate on an All Star or School Cheer team.  *See* Pls.' Ex. 54.

This statement does not create a material dispute of fact because, although the statement is not true and in that sense is "disputed," it is neither material nor supported by evidence and it accordingly should be disregarded.

59.   The relevant geographic market for Cheer Apparel is national. Ex. 1 [Netz Rep.] at 55-59; Ex. 3 [Heeb Rep.] at ¶¶ 165-168; Ex. 4 [Heeb Rebuttal] at ¶ 49.

**Defendants' Response to 59:**  Plaintiffs' assertion is a legal conclusion, not a statement of fact, and thus Defendants need not respond.  Additionally, the statement is material in the sense that Plaintiffs have the burden of establishing the relevant markets. However, Plaintiffs' only evidence is their expert opinion, and this testimony is the subject to a Daubert challenge. *See* Netz Daubert Mot., ECF No. 382-1; Heeb Daubert Mot., ECF No. 388-1. If that challenge is successful, there will be no evidence of this statement, which should then be disregarded.

60.   Varsity possesses market power in the Cheer Competitions market. Ex. 1 [Netz Rep.] at 45-61 (By 2016, Varsity had 75% market share of US Cheer Competitions); Ex. 3 [Heeb Rep.] at ¶¶ 169-181.

**Defendants' Response to 60:**  Plaintiffs' assertion is a legal conclusion, not a statement of fact, and thus Defendants need not respond. Further, Plaintiffs' assertion is not material, as Defendants' Motion does not assert lack of market power as a basis for summary judgment.

Additionally, Plaintiffs fail to support their asserted fact with admissible evidence; instead they rely upon inadmissible expert testimony.  *See* Netz Daubert Mot., ECF No. 382-1; Heeb Daubert Mot., ECF No. 388-1.

This statement does not create a material dispute of fact because, although the statement is not true and in that sense is "disputed," it is neither material nor supported by evidence and it accordingly should be disregarded.

61.     By eliminating nearly all of its major rivals, Varsity's market share in Cheer Competitions grew from 42% in 2013 to 80-85% in 2018. Ex. 1 [Netz Rep.] at 52; Ex. 20 [Cota Dep.] at 53:15–21; Ex. 85 at 6985; Ex. 86 at 5236.

**Defendants' Response to 61:**  Further, Plaintiffs' assertion is not material, as Defendants' Motion does not assert lack of market power as a basis for summary judgment.

Plaintiffs' cited materials do not support the asserted fact and therefore should be disregarded.  Plaintiffs' Exhibits 20, 85, and 86 refer exclusively to All Star Cheer Competitions, not Cheer Competitions as Plaintiffs have defined the term.  ("And do you know what the market share – Varsity's market share in competitive cheer market for All Star was in 2018, at the time you left?"  Pls.' Ex. 20, Cota Dep. at 53:15-18; Pls.' Ex. 85 at -6985 ("Summary of Competition in All Star Competition Market"); and Pls.' Ex. 86 at – 5236 ("All Star customer market....").

In addition, Plaintiffs cite their expert's recitation and interpretation of documents, which is inadmissible.  Fed. R. Evid. 702, 403.

Furthermore, Plaintiffs' Exhibit 20 is inadmissible because the witness lacked personal knowledge and testified without foundation.  Fed. R. Evid. 602.

This statement does not create a material dispute of fact because, although the statement is not true and in that sense is "disputed," it is neither material nor supported by evidence and it accordingly should be disregarded.

62.     Varsity possesses market power in the Cheer Camps market. Ex. 1 [Netz Rep.] at 60-62; Ex. 3 [Heeb Rep.] at ¶¶ 112-117.

**Defendants' Response to 62:**  Plaintiffs' assertion is a legal conclusion, not a statement of fact, and thus Defendants need not respond. Further, Plaintiffs' assertion is not material, as Defendants' Motion does not assert lack of market power as a basis for summary judgment.

Plaintiffs fail to support their asserted fact with admissible evidence; instead they rely upon inadmissible expert testimony.  *See* Netz Daubert Mot., ECF No. 382-1; Heeb Daubert Mot., ECF No. 388-1.

This statement does not create a material dispute of fact because, although the statement is not true and in that sense is "disputed," it is neither material nor supported by evidence and it accordingly should be disregarded.

63.     Varsity is the largest operator of Cheer Camps in the United States and controls over 80% of the market. Ex. 1 [Netz Rep.] at 33, 61; Ex. 3 [Heeb Rep.] at ¶¶ 38, 79, 147; Ex. 52 at 8545 (As of May 2018, Varsity operated more than 5,600 Cheer Camps each summer, which were attended by over 320,000 athletes.).

**Defendants' Response to 63:**  Plaintiffs' assertion is not material because it does not affect the outcome of Defendants' Motion, as Plaintiffs do not even cite it in their Opposition. Further, Plaintiffs' assertion is not material, as Defendants' Motion does not assert lack of market power as a basis for summary judgment.

In addition, Plaintiffs cite their expert's recitation and interpretation of documents, which is inadmissible.  Fed. R. Evid. 702, 403.

Furthermore, Plaintiffs' cited evidence does not support the asserted fact and therefore should be disregarded.  Plaintiffs' Exhibit 52 provides no information about market share nor whether Varsity is the largest operator of camps in the United States.  Pls.' Ex. 52 at 8545. Additionally, Plaintiffs' Exhibit 3 at ¶ 147 in fact states "Varsity is *one of* the largest operators of cheer camps." (emphasis added).  Pls.' Ex. 3 at ¶ 147.

This statement does not create a material dispute of fact because, although the statement is not true and in that sense is "disputed," it is neither material nor supported by evidence and it accordingly should be disregarded.

64.     Varsity possesses market power of the Cheer Apparel market. Ex. 1 [Netz Rep.] at 50-52; Ex. 3 [Heeb Rep.] at ¶¶ 185-193. Varsity controls approximately 80% of the Cheer Apparel market. Ex. 20 [Cota Dep.] at 53:9-54:2 (From 2012 to 2018, Varsity's market share increased up to 85% in the competitive cheer market and 80% in the All-Star apparel market); Ex. 1 [Netz Rep.] at 58 & n. 233; Ex. 88 at 0397.

**Defendants' Response to 64:**  To the extent that Plaintiffs assert Varsity possesses market power in the cheer apparel market, this is a legal conclusion, not a statement of fact, and thus Defendants need not respond. Further, Plaintiffs' assertion is not material, as Defendants' Motion does not assert lack of market power as a basis for summary judgment.

In addition, Plaintiffs' assertion exclusively rests on inadmissible expert testimony.  *See* Netz Daubert Mot., ECF No. 382-1; Heeb Daubert Mot., ECF No. 388-1.

In addition, Plaintiffs' cited evidence does not support the asserted fact and therefore should be disregarded.  Plaintiffs' Exhibit 88 applies only to apparel and indicates that Varsity Spirit had a market share far below 80%.  Pls. Ex. 88 at 0397.In addition, Plaintiffs Exhibit 20 is

because the witness lacked personal knowledge and testified without foundation.  Fed. R. Evid.

602.

This statement does not create a material dispute of fact because, although the statement

is not true and in that sense is "disputed," it is neither material nor supported by evidence and it

accordingly should be disregarded.

65.  Defendants admit Varsity dominated the relevant markets in their own documents. Ex. 1
[Netz Rep.] at 51; Ex. 3 [Heeb Rep.] at ¶¶ 196-200; Ex. 89 at 5574-75 (8/21/2017,
"Varsity Spirit has managed to become the total market leader in all things cheer." …
"The key is to maintain market share, avoid being viewed as a monopoly, and respond
directly and firmly to all competitors in the space." … slide titled "THE ELEPHANT
IN ROOM" reads: "The success of UCA, the subsequent acquisitions, and the general
practices of Varsity Spirit, have put the company in a very successful, dominant
position."); Ex. 64 at 4544 ("Varsity is the leading marketer and manufacturer of branded
products and services to the school spirit industry." … The Company's dominant market
platform allows it to continually expand the sector through Varsity's leading
organizations and brands within the cheerleading industry."); Ex. 90 at 2211 (Varsity has
"#1 Market position" in uniforms, camps, and competitions; Varsity has "dominant
market position in all segments") (emphasis added); Ex. 91 at 0158 (11/20/2014, Jefferies
presentation for investors in Varsity: "Varsity Spirit … remains the leading player in the
market. The business holds a number one position in uniforms, camps, and competitions
and its prominent brand name is synonymous with cheerleading. Varsity Spirit's next
largest competitor is less than one tenth the size of Varsity Spirit based on revenue.")
(emphasis added); Ex. 92 at 1205 (2018, "In terms of competitions overall, seems like
Varsity has monopoly").

**Defendants' Response to 65:**  Plaintiffs' assertion is not material because it does not

affect the outcome of Defendants' Motion, as Plaintiffs do not even cite it in their Opposition.

Further, Plaintiffs' assertion is not material, as Defendants' Motion does not assert lack of

market power as a basis for summary judgment.

In addition, Plaintiffs cite their expert's recitation and interpretation of documents, which

is inadmissible.  Fed. R. Evid. 702, 403.

Plaintiffs' assertion is not material because vague statements like "total market leader,"

"#1 Market Position," "very successful, dominant position," and "leading player in the market"

41

cannot establish monopoly power in the absence of barriers to entry.  Pls.' Ex. 89 at 5574-75, Pls.' Ex. 90 at 2211, and Pls.' Ex. 91 at 0158.

In addition, Plaintiffs' cited evidence does not support the asserted fact and therefore should be disregarded.  None of Plaintiffs' exhibits relate to the "relevant markets" as Plaintiffs have attempted to define them.

This statement does not create a material dispute of fact because, although the statement is not true and in that sense is "disputed," it is neither material nor supported by evidence and it accordingly should be disregarded.

66.     Varsity's dominance and market power is a well-known fact in the industry, as is the harm that it causes. Ex. 76 at 7774-78 (6/28/2019, letter from IEPs sent to gym owners: "As we have seen the power in our sport go to one company, the changes we have seen have not all been for the betterment of the sport but for the betterment of the company's bottom line. The governing body is controlled by them. We are dealing with a MI-fledged MONOPOLY and FEAR is their weapon of choice. Many of us … have been too afraid to voice our concerns for fear of retribution against our gyms and teams. Think about that. WE FEAR A COMPANY THAT WE PAY because of what they may do to our businesses." … "How do you believe this entity may have harmed competition?") (emphasis in original).

**Defendants' Response to 66**:  Plaintiffs' assertion is not material because it does not affect the outcome of Defendants' Motion, as Plaintiffs do not even cite it in their Opposition. Further, Plaintiffs' assertion is not material, as Defendants' Motion does not assert lack of market power as a basis for summary judgment.

In addition, Plaintiffs' cited evidence does not support the asserted fact and therefore should be disregarded.  Plaintiffs' Exhibit 76 merely indicates that one person felt that Varsity had "power in our sport."  Pls.' Ex. 76 at -7776.  One person's opinion is not evidence of a "well-known fact in the industry."  Pls.' SUF No. 66.

This statement does not create a material dispute of fact because, although the statement is not true and in that sense is "disputed," it is neither material nor supported by evidence and it accordingly should be disregarded.

67.   In 2021, Jeff Webb published a book in which he essentially admits that he ran a monopoly at Varsity. Ex. 94 ("I ran an exceptionally large company occupying a prominent space in my industry."). An email from his editor noted: "Jeff, I lead with you admitting you ran a near monopoly." Ex. 95.

**Defendants' Response to 67:**  Plaintiffs' assertion is not material because it does not affect the outcome of Defendants' Motion, as Plaintiffs do not even cite it in their Opposition. Further, Plaintiffs' assertion is not material, as Defendants' Motion does not assert lack of market power as a basis for summary judgment.

In addition, Plaintiffs' cited evidence does not support the asserted fact and therefore should be disregarded.  Plaintiffs' Exhibit 94 does not state that Varsity is a monopoly, only that it is a large company occupying a prominent space in [the] industry." Pls.' Ex. 94.  Exhibit 95 is likewise inapposite, as it is an email from Jeff's editor to which there is no response.  Pls.' Ex. 95. Furthermore, it also is inadmissible hearsay. Fed. R. Evid. 802.

This statement does not create a material dispute of fact because, although the statement is not true and in that sense is "disputed," it is neither material nor supported by evidence and it accordingly should be disregarded.

68.   Varsity's market power is ubiquitous throughout the United States. Ex. 1 [Netz Rep.] at 3, 41-62; Ex. 4 [Heeb Rebuttal] ¶¶ 8, 36, 126; Ex. 11 [Parrish Dep.] at 476:9-478:12 ( "Varsity has control over cheerleading at every level of the U.S. and abroad. There is no resistance." … Varsity is "in control over everything that happens in All Star Cheerleading in the country... [and] the entire high school competition space.") Ex. 284 at 5634 ("Varsity is the undisputed leader in cheerleading uniforms, competitions, and camps," and includes a chart illustrating that 100% of the U.S. market for School Cheer

competitions in 2013 belonged to UCA, NCA, and USA – all Varsity owned brands); Ex. 10 [Webb Dep.] at 95:13-16 ("Q. Varsity puts on some events that attract teams from all over the country, correct? A. Yes."); Ex. 14 [Peterson Dep.] at 33:18-34:2 ("Q. And to your knowledge, are the All Star gyms located around the country? A. Yes, sir. Q. And I just want to make sure I understand this. So All Star teams compete against other All Star teams at All Star competitions around the country, correct? [Objection Omitted] A. Yeah.").

**Defendants' Response to 68:**  Plaintiffs' assertion is not material because it does not affect the outcome of Defendants' Motion, as Plaintiffs do not even cite it in their Opposition. Further, Plaintiffs' assertion is not material, as Defendants' Motion does not assert lack of market power as a basis for summary judgment.

Plaintiffs' assertion is also a legal conclusion, not a statement of fact, and thus Defendants need not respond.

In addition, Plaintiffs' assertion rests on inadmissible expert testimony.  *See* Netz Daubert Mot., ECF No. 382-1; Heeb Daubert Mot., ECF No. 388-1.

In addition, Plaintiffs fail to support their assertion with admissible evidence, as Plaintiffs' Exhibit 11 at 476:9-478:12 is inadmissible because the witness purports to offer an expert opinion but is not qualified as an expert witness.  Fed. R. Evid. 701.  Plaintiffs' Exhibit 284 at -5634 does not have the quoted language, and having gyms and events around the country is irrelevant to the existence of market power.  Pls.' Ex. 10 at 95:13-16; Pls.' Ex. 14 at 33:18-34:2.

This statement does not create a material dispute of fact because, although the statement is not true and in that sense is "disputed," it is neither material nor supported by evidence and it accordingly should be disregarded.

69.   Varsity's pricing policies emanated from its headquarters in Memphis, Tennessee and were set on a national scale. Ex. 4 [Heeb Rebuttal] ¶¶ 138, 144, 275; Ex. 96 at 1126 (9/2018, document prepared in advance of Bain visit to Memphis shows that although

prices are set and implemented locally, Varsity's pricing strategy is determined, administered, and set at a national level "to ensure consistency across the business.") (emphasis added).

**Defendants' Response to 69:**  Plaintiffs' assertion is not material because it does not affect the outcome of Defendants' Motion, as Plaintiffs do not even cite it in their Opposition. Further, Plaintiffs' assertion is not material, as Defendants' Motion does not assert lack of market power as a basis for summary judgment.

In addition, Plaintiffs cite their expert's recitation and interpretation of documents, which is inadmissible.  Fed. R. Evid. 702, 403.

Furthermore, Plaintiffs' cited evidence does not support the asserted fact and therefore should be disregarded.  Plaintiffs' Exhibit 96 refers only to All Star Competition pricing.  Pls.' Ex. 96 at 1126.

This statement does not create a material dispute of fact because, although the statement is not true and in that sense is "disputed," it is neither material nor supported by evidence and it accordingly should be disregarded.

70.   Defendants' own documents acknowledge that each of the three relevant markets were national and operated on a national scale. Ex. 97 at 5865 (9/2014, due diligence presentation prepared by Jefferies in connection with Charlesbank's acquisition of Varsity: Varsity's "national base of customers" includes "████ athletes across ████ schools and ███ gyms."); id. (Varsity is "[t]he only company with field reps assigned to every customer in every state."); id. (Varsity's "███ field sales representatives" include "██ All-Star Event Sales Reps," "██ Nationwide Apparel Sales Reps," and "█ State Directors support[ing] the camps."); Ex. 33 [Kennedy Dep.] at 308:4-308:7 (Varsity owned and operated camps for school teams that are nationwide).

**Defendants' Response to 70:**  Plaintiffs' cited evidence does not support this asserted fact and therefore should be disregarded.  Plaintiffs' Exhibits 97 and 33 merely indicate that Varsity is a company that operates nationwide.  Pls.' Ex. 97 at 5865; Pls.' Ex. 33 at 308:4-7.

45

Plaintiffs provide no evidence that their defined markets are national or operated on a national scale.

In addition, Plaintiffs' assertion is not material because it does not affect the outcome of Defendants' Motion. *See* ECF No. 488-1 at 9. Plaintiffs' cite this assertion to argue that Varsity had high market shares in five distinct markets, ECF No. 488-1 at 9, but never explain how this fact relates to those markets.

This statement does not create a material dispute of fact because, although the statement is not true and in that sense is "disputed," it is neither material nor supported by evidence and it accordingly should be disregarded.

71.     Each of the three relevant markets is protected by significant barriers to entry, making it difficult for non-Varsity competitors to enter into and to participate in those markets. Ex. 1 [Netz Rep.] at 4; Ex. 3 [Heeb Rep.] at ¶¶ 169-184.

**Defendants' Response to 71:** Plaintiffs' assertion is a legal conclusion, not a statement of fact, and thus Defendants need not respond. Additionally, the statement is material in the sense that Plaintiffs have the burden of establishing harm to competition. However, Plaintiffs' only evidence is their expert opinion, and this testimony is the subject to a Daubert challenge. *See* Netz Daubert Mot., ECF No. 382-1; Heeb Daubert Mot., ECF No. 388-1. If that challenge is successful, there will be no evidence of this statement, which should then be disregarded.

72.     The Cheer Competitions market is protected by significant barriers to entry. Ex. 1 [Netz Rep.] at 4, 52; Ex. 98 at 4732; Ex. 99 at 9684 (11/20/2014, Jefferies presentation: describes these barriers to entry for potential investors: "███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████").

**Defendants' Response to 72:** Plaintiffs' assertion is a legal conclusion, not a statement of fact, and thus Defendants need not respond. Additionally, the statement is material in the sense that Plaintiffs have the burden of establishing harm to competition. However, Plaintiffs' only evidence is their expert opinion, and this testimony is the subject to a Daubert challenge. *See* Netz Daubert Mot., ECF No. 382-1; Heeb Daubert Mot., ECF No. 388-1. If that challenge is successful, there will be no evidence of this statement, which should then be disregarded.

73. The Cheer Apparel market is also protected by barriers to entry. Ex. 1 [Netz Rep.] at 4, 57-59 & n. 207; Ex. 3 [Heeb Rep.] at ¶¶ 185-193.

**Defendants' Response to 73:** Plaintiffs' assertion is a legal conclusion, not a statement of fact, and thus Defendants need not respond. Additionally, the statement is material in the sense that Plaintiffs have the burden of establishing harm to competition. However, Plaintiffs' only evidence is their expert opinion, and this testimony is the subject to a Daubert challenge. *See* Netz Daubert Mot., ECF No. 382-1; Heeb Daubert Mot., ECF No. 388-1. If that challenge is successful, there will be no evidence of this statement, which should then be disregarded.

74. Varsity's rebate plans, such as the Varsity Family Plan ("VFP"), function as barriers to entry for competing apparel manufacturers and suppliers. Ex. 2 [Netz Rebuttal] at 68-69, 91-92; Ex. 11 [Parrish Dep.] at 205:16-206:1 (explaining how Varsity could foreclose Nfinity because of its rebate programs).

**Defendants' Response to 74:** Plaintiffs' assertion is a legal conclusion, not a statement of fact, and thus Defendants need not respond.

In addition, Plaintiffs' assertion rests on inadmissible expert testimony. *See* Netz Daubert Mot., ECF No. 382-1.

This statement does not create a material dispute of fact because, although the statement is not true and in that sense is "disputed," it is not material and it accordingly should be disregarded.

75.     Varsity holds over 200 design copyrights for Cheer Apparel, creating an additional barrier to entry for any who might try to produce their own Cheer Apparel. Ex. 1 [Netz Rep.] at 63; Ex. 101.

**Defendants' Response to 75:**  Plaintiffs' assertion is not material because it does not affect the outcome of Defendants' Motion, as Plaintiffs do not even cite it in their Opposition.

In addition, Plaintiffs cite their expert's recitation and interpretation of documents, which is inadmissible.  Fed. R. Evid. 702, 403.

To the extent that Plaintiffs assert that holding design copyrights is a barrier to entry, this is a legal conclusion, not a statement of fact, and thus Defendants need not respond.  In addition, Plaintiffs' fail to support their asserted fact with admissible evidence, as Plaintiffs' Exhibit 101 is a newspaper article, and thus inadmissible hearsay.  Fed. R. Evid. 802.

This statement does not create a material dispute of fact because, although the statement that Varsity's design copyrights create a barrier to entry is not true and in that sense is "disputed," it is neither material nor supported by evidence and it accordingly should be disregarded. But Plaintiffs' assertion is otherwise undisputed for purposes of this Motion only.

76.     Another barrier to entry in the Cheer Apparel market is USASF's rules specifying which apparel can be worn by All Star athletes. Ex. 1 [Netz Rep.] at 59 & n. 114. These rules are established by the USASF, but Varsity personnel have input into proposed rules changes and are also given early access to any changes in the rules that are established compared to other non-Varsity cheer apparel. Id.

**Defendants' Response to 76:**  Plaintiffs' assertion is a legal conclusion, not a statement of fact, and thus Defendants need not respond.

In addition, Plaintiffs fail to support their asserted fact with admissible evidence; instead, they cite only their expert's recitation and interpretation of documents, which is inadmissible. Fed. R. Evid. 702, 403.  Plaintiffs' provide no evidence that USASF rules regarding All Star apparel serve as a barrier to entry, that Varsity personnel have input into proposed rule changes, or that they are given early access to rule changes.  Plaintiffs' Exhibit 1 at 59 shows only the existence of an email from the former USASF president to Jeff Webb "summarizing updated apparel and other guidelines..."  Pls.' Ex. 1 n. 239. *See also* Pls.' Resp. to SUF Nos. 147-157, 159 (discussing the USASF Image Policy's requirements, purpose, and scope.)

This statement does not create a material dispute of fact because, although the statement is not true and in that sense is "disputed," it is neither material nor supported by evidence and it accordingly should be disregarded.

77. Collectively, the barriers to entry in the Cheer Apparel market are so significant that "some small competitors just throw up their hands" and exit the Cheer Apparel market altogether. Ex. 102.

**Defendants' Response to 77:**  Plaintiffs' assertion is not material because it does not affect the outcome of Defendants' Motion, as Plaintiffs do not even cite it in their Opposition.

Plaintiffs' assertion is also a legal conclusion, not a statement of fact, and thus Defendants need not respond.

In addition, Plaintiffs fail to support their asserted fact with admissible evidence, as Plaintiffs' Exhibit 102 is a newspaper article, and the proffered quote is not the direct statement of a source, thus it is inadmissible hearsay which cannot be cured.  Fed. R. Evid. 802.

This statement does not create a material dispute of fact because, although the statement is not true and in that sense is "disputed," it is neither material nor supported by evidence and it accordingly should be disregarded.

78.     The Cheer Camps Market is also protected by barriers to entry. Ex. 1 [Netz Rep.] at 61-62; Ex. 3 [Heeb Rep.] at ¶¶ 182-185.

**Defendants' Response to 78:**  Plaintiffs' assertion is a legal conclusion, not a statement of fact, and thus Defendants need not respond.  Additionally, the statement is material in the sense that Plaintiffs have the burden of establishing harm to competition. However, Plaintiffs' only evidence is their expert opinion, and this testimony is the subject to a Daubert challenge. *See* Netz Daubert Mot., ECF No. 382-1; Heeb Daubert Mot., ECF No. 388-1. If that challenge is successful, there will be no evidence of this statement, which should then be disregarded.

79.     One main barrier is Varsity's policy of tying Cheer Camps and Cheer Competitions. Ex. 1 [Netz Rep.] at 54-55, 57-60, 61-63; Ex. 11 [Parrish Dep.] at 435:23- 437:3.

**Defendants' Response to 79:**  Plaintiffs' assertion is not material because it does not affect the outcome of Defendants' Motion, as Plaintiffs do not even cite it in their Opposition.

Plaintiffs' assertion is also a legal conclusion, not a statement of fact, and thus Defendants need not respond.

In addition, Plaintiffs' cited material does not support this asserted fact and therefore should be disregarded.  Plaintiffs' Exhibit 11 merely indicates that one way to receive a bid to specific Varsity events is at a camp.  This is not a tie, as teams have an alternative method to receive a bid—by being successful at competitions. *See Beard v. Parkview Hosp.*, 912 F.2d 138, 140 (6th Cir. 1990) (explaining that the "essential characteristic of an invalid tying arrangement lies in the seller's exploitation of its control over the tying product *to force the buyer into the purchase of a tied product...*"). (emphasis added)

50

This statement does not create a material dispute of fact because, although the statement is not true and in that sense is "disputed," it is neither material nor supported by evidence and it accordingly should be disregarded.

80.    The barriers to entry in the Competitive Cheer industry foreclose competition. Ex.1 [Netz Rep] at 4, 52; Ex. 64 at 4552 (Varsity PPT for investors describes "significant barriers to entry" and "the company's comprehensive products and services offering allows it to benefit from cross-selling." ); Ex. 105 at 9926 █████████████████████████████

**Defendants' Response to 80:**  Plaintiffs' assertion is a legal conclusion, not a statement of fact, and thus Defendants need not respond.

Plaintiffs' assertion rests on inadmissible expert testimony. *See* Netz Daubert Mot., ECF No. 382-1.

In addition, Plaintiffs' cited evidence does not support the asserted fact and therefore should be disregarded.  Both Plaintiffs' Exhibits 64 and 105 discuss cross-selling, and cross-selling does not necessitate foreclosure. Pls.' Ex. 64 at 4552, 105 at 9926.

This statement does not create a material dispute of fact because, although the statement is not true and in that sense is "disputed," it is neither material nor supported by evidence and it accordingly should be disregarded.

81.    Varsity has built what it calls a "competitive moat" to create barriers for its rivals and to lock consumers into its ecosystem. Ex. 2 [Netz Rebuttal] at 61-66; Ex. 52 at 8477; Ex. 106 at 6217 ("How can we create a sustainable business (deep moat)?").

**Defendants' Response to 81:**  Plaintiffs' cited evidence does not support the asserted fact and therefore should be disregarded.  Plaintiffs' Exhibit 106 has no page 6217, and

Plaintiffs' Exhibit 52 says nothing about "creating a barrier for [Varsity's] rivals" or locking consumers into an "ecosystem." Pls.' Ex. 106, 52 at 8477. To the extent Plaintiffs rely upon Plaintiffs' Exhibit 2 to establish that a "competitive moat" creates barriers for rivals and locks consumers into an "ecosystem," this is a legal conclusion, not a statement of fact, and thus Defendants need not respond. Further, the cited evidence also does not support this claim, as Plaintiffs' Exhibit 2 at 61-66 discusses only Cheer Competitions. Pls.' Ex. 2 at 61-66.

Plaintiffs' assertion rests on inadmissible expert testimony. *See* Netz Daubert Mot., ECF No. 382-1.

This statement does not create a material dispute of fact because, although the statement is not true and in that sense is "disputed," it is neither material nor supported by evidence and it accordingly should be disregarded.

82.   Varsity's conduct created an ecosystem that enabled it to acquire and maintain market power across all three relevant markets, and to lock purchasers into that ecosystem. Ex. 1 [Netz Rep.] at 4-5, 31, 36-37, 62-65; Ex. 52 at 9431 (2018, Varsity described itself as having created a "[f]ully-integrated ecosystem with apparel, camps and competitions.").

**Defendants' Response to 82:**  Plaintiffs' cited evidence does not support this asserted fact and therefore should be disregarded. The mere statement that there is an "ecosystem with apparel, camps and competitions" does not imply Varsity had market power across apparel, camps, and competitions, nor that Varsity locked in customers.

Plaintiffs' assertion rests on inadmissible expert testimony. *See* Netz Daubert Mot., ECF No. 382-1.

This statement does not create a material dispute of fact because, although the statement is not true and in that sense is "disputed," it is not supported by evidence and it accordingly should be disregarded.

83.    The Varsity ecosystem is protected by cheer governing bodies, safety organizations, and strategic partners. Ex. 1 [Netz Rep.] at 62-65; Ex. 52 at 8543; Ex. 107 at 4154; Ex. 86 at 5224; Ex. 108 at 7635, 7638; Ex. 107 at 4147; Ex. 109 (2018 quote from Webb in Chief Executive magazine: "We were really creating an industry as we went along and it became an ecosystem in that we were creating the concept, we were creating the industry, and then we were positioning ourselves to provide all the products and services … utilized [within that industry]. Not only did we have the number one position in [the camps, apparel, and competitions] segments, but then we developed a cross-marketing model where we could promote [the segments within each other] and to be honest with you, it took off.").

**Defendants' Response to 83:**  Plaintiffs' cited evidence does not support this asserted fact and therefore should be disregarded.  Much of Plaintiffs' cited evidence does not address governing bodies, strategic partners, or safety organizations at all.  To the extent it does, the cited evidence only shows that Varsity has relationships with these organizations, not that they "protect" Varsity's ecosystem.

Plaintiffs' assertion rests on inadmissible expert testimony.  *See* Netz Daubert Mot., ECF No. 382-1.

This statement does not create a material dispute of fact because, although the statement is not true and in that sense is "disputed," it is not supported by evidence and it accordingly should be disregarded.

84.    The Cheer Competitions and Cheer Camps markets were deeply intertwined. Ex. 1 [Netz Rep.] at 62; Ex. 3 [Heeb Rep.] at ¶¶ 182-184; Ex. 88 at 0366 ("███████████ ███████████); Ex. 89 at 5579 (On or about 2020, Varsity PPT, "Our school reps need to ENSURE the success of the All Star reps because All Star Cheer will drive the fashion trends for high school. It's all connected.") (emphasis in original).

**Defendants' Response to 84:**  Plaintiffs' cited evidence does not support this asserted fact and therefore should be disregarded.  An overlap in customers between different services does not mean those services are "deeply intertwined."  Plaintiffs also cite irrelevant evidence

discussing the connection between All Star and scholastic apparel, not between competitions and camps.

This statement does not create a material dispute of fact because, although the statement is not true and in that sense is "disputed," it is not supported by evidence and it accordingly should be disregarded.

85. Under Varsity's Squad Credentialing Program, to attend Nationals, teams are required to attend a Varsity camp. Ex. 110 at 4442 (4/2016, Bain document: "For UCA nationals, you have to attend a camp (beginning of season) and then have to get a bid from a regional competition. … In college, just need to attend a camp at the beginning of the season."); Ex. 20 [Cota Dep.] at 223:11-17 (testifying that Varsity leverages its market power in the Cheer Competitions market to enhance and maintain its market power in the Cheer Camps market); Ex. 59 (teams that do not attend a Varsity camp can compete at local UCA competitions "but they will not be eligible to receive a bid to the NHSCC [Nationals]"); Ex. 111 at 0803 (for a high school cheer team to qualify for Varsity's high school national championships, at least 75% of its members must have attended one of Varsity's cheer camps in the preceding 12 months).

**Defendants' Response to 85:** Plaintiffs' assertion is not material because it does not affect the outcome of Defendants' Motion. *See* Defs.' SUF No. 8. It is undisputed that Varsity's Squad Credentialing Program requires high school teams attending one of three national championship events to send some of its athletes to Varsity camps.

However, the Credentialing Program does not require that all team members attend Varsity camps, only 75%.

This statement does not create a material dispute of fact because, although the statement is not true and in that sense is "disputed," it is not material and it accordingly should be disregarded.

86. The Squad Credentialing Program is implemented at the majority of Varsity's camps. Ex. 206.

**Defendants' Response to 86:** Plaintiffs' assertion is not material because it does not affect the outcome of Defendants' Motion. *See* ECF No. 471 at 24-25. The portion of Varsity's camps that *offer* Squad Credentialing does not address what portion of athletes attend camps for the purpose of credentialing. It is undisputed that less than 10% of Varsity's camp customers attended the three championships at issue in the Squad Credentialing Program. Defs.' SUF No. 13. Thus, there cannot be substantial foreclosure necessary to show that the Squad Credentialing Program was anticompetitive.

This statement does not create a material dispute of fact because, although the statement is not true and in that sense is "disputed," it is not material and it accordingly should be disregarded.

87.   In 2015, Varsity negotiated a deal with NFHS whereby ███████████████████ ████████████████████████ Ex. 113 at 9874.

**Defendants' Response to 87:** Plaintiffs' assertion is not material because it does not affect the outcome of Defendants' Motion. Whether Varsity negotiated a deal with NFHS regarding the Squad Credentialing Program makes no difference as to whether the Program was anticompetitive.

This statement does not create a material dispute of fact because, although the statement is not true and in that sense is "disputed," it is not material and it accordingly should be disregarded.

88.   The Squad Credentialing Program forecloses Varsity's Cheer Camp competitors and leaves teams with few options other than Varsity camps. Ex. 1 [Netz Rep. at 92]; Ex. 114 at 0729 (discussing implementation of policy to force teams "going to gym camps" to instead go to Varsity camps and grow Varsity's camp business); Ex. 51 at 5565 ("Teams

must attend a Game Day Camps in order to compete in Game Day Regionals"); Ex. 115 at 8240 (blog complaint from anonymous: "it seemed that HS teams had to attend a Varsity camp or use [VROC!] as their choreographer in order to 'get certified' to attend Nationals. If that's not a monopolistic behavior …."").

**Defendants' Response to 88:**  Plaintiffs' assertion is not material because it does not affect the outcome of Defendants' Motion.  *See* ECF No. 471 at 24-25.  It is undisputed that less than 10% of Varsity's camp customers attended the three championships at issue in the Squad Credentialing Program.  Defs.' SUF No. 13.  Thus, there cannot be substantial foreclosure necessary to show that the Squad Credentialing Program was anticompetitive.

Plaintiffs' cited evidence does not support this asserted fact and therefore should be disregarded.  Plaintiffs' cited evidence merely repeats the terms of the Squad Credentialing Program and notes that the Program might lead additional teams to attend Varsity camps.  It does not establish the extent of any alleged foreclosure of cheer camp customers nor shows that teams had few camp options.  The cited excerpt to Plaintiffs' Exhibit 51 does not address the Credentialing Program at all.

Additionally, Plaintiffs' assertion rests on inadmissible expert testimony.  *See* Netz Daubert Mot., ECF No. 382-1. Furthermore, Pls.' Ex. 115 is inadmissible hearsay, as it is an anonymous blog post. Fed. R. Evid. 802.

This statement does not create a material dispute of fact because, although the statement is not true and in that sense is "disputed," it is neither material nor supported by evidence and it accordingly should be disregarded.

89.    Varsity intentionally tried to lock School Cheer teams into the Varsity ecosystem through Cheer Camps. Ex. 114 at 0727 (9/2019, Buffy Duhon (Varsity): "My guess is that we won't get a lot of push this fall because it's not required for 2020, but it will grow summer camp business and fall 2020 since it will be required."); Ex. 23 [Duhon Dep.] at 110:3-25 (Duhon explaining her email described in Ex. 114:  "That teams that had

wanted to come to nationals that may not have attended camps in the past, would learn about the programs because we would be reaching out to them to let them know about the credentialing program, that they would then sign up for camp, for the camp experience and the ability to come to nationals."); Ex. 54 ████████████████████████████ ████████████████████████████████████).

**Defendants' Response to 89:** Plaintiffs' cited evidence does not support this asserted fact and therefore should be disregarded. Purported evidence that Varsity's policy grew camp attendance fail to show how Varsity camps drove customers to the Varsity "ecosystem." The statement that " ████████████████████████ " simply describes how Varsity camp customers tend to also attend Varsity events and does not necessarily imply an intent to "lock in" customers.

This statement does not create a material dispute of fact because, although the statement is not true and in that sense is "disputed," it is not supported by evidence and it accordingly should be disregarded.

90. Because Varsity is the dominant producer of School Cheer competitions, virtually all competitive School Cheer teams participate in Varsity's School Cheer Competitions. See Ex. 1 [Netz Rep.] 92-104; Ex. 2 [Netz Rebuttal] at 84-85 & Exhibit 20 (Chart re Varsity Cheer Camp attendance).

**Defendants' Response to 90:** Plaintiffs fail to support their asserted fact with admissible evidence; instead, they cite only their expert's recitation and interpretation of documents, which is inadmissible. Fed. R. Evid. 702, 403.

This statement does not create a material dispute of fact because, although the statement is not true and in that sense is "disputed," it is not supported by evidence and it accordingly should be disregarded.

91.   Cheer Camps and Cheer Competitions are also intertwined at the college level. Ex. 1 [Netz Rep.] at 89–92; Ex. 2 [Netz Rebuttal] at 84–85; Ex. 20 [Cota Dep.] at 223:11-17; Ex. 111 at 0803; Ex. 114 at 0728; Ex. 116 at 1; Ex. 117 at 1.

**Defendants' Response to 91:**  Plaintiffs' cited material does not support this asserted fact and therefore should be disregarded. Plaintiffs' materials merely show that college teams earned bids to cheer competitions at cheer camps.

In addition, Plaintiffs cite their expert's recitation and interpretation of documents, which is inadmissible.  Fed. R. Evid. 702, 403.

This statement does not create a material dispute of fact because, although the statement is not true and in that sense is "disputed," it is not supported by evidence and it accordingly should be disregarded.

92.   In any given year, virtually all competitive School Cheer teams attend an event at which they can qualify to attend a Varsity end-of-season event. Ex. 2 [Netz Rebuttal] at 85 (80% of School Cheer teams that attended a Varsity competition also attended one or more of Varsity's cheer camps during the 2018/19 season, up from 70% in the 2015/16 season).

**Defendants' Response to 92:**  Plaintiffs fail to support their asserted fact with admissible evidence; instead, they cite only their expert's recitation and interpretation of documents, which is inadmissible.  Fed. R. Evid. 702, 403.

This statement does not create a material dispute of fact because, although the statement is not true and in that sense is "disputed," it is not supported by evidence and it accordingly should be disregarded.

93.   The Cheer Apparel and Cheer Competitions markets are also intertwined through Varsity's exclusionary contracts with All Star gyms, such as the VFP and Varsity Network Agreements. DX Ex. AW (collection of exclusionary Network Agreements over time).

**Defendants' Response to 93:**  Plaintiffs' cited evidence does not support this asserted

fact and therefore should be disregarded.  Plaintiffs' cited materials refer only to Varsity

Network Agreements and not the Varsity Family Plan (VFP).  Varsity Network Agreements have

sometimes required exclusivity as to certain apparel items, such as uniforms and shoes, but have

not required exclusivity as to all items in Plaintiffs' "Cheer Apparel" market.

This statement does not create a material dispute of fact because, although the statement

is not true and in that sense is "disputed," it is not supported by evidence and it accordingly

should be disregarded.

94.     Varsity, Bain, and Charlesbank stress the value of cross-selling between the markets as a
        way to increase revenue. Ex. 105 at 9926 ██████████████████████
        ████████████████████████"); Ex. 64 at 4544 ("All of the Company's
        marketing activities are designed to reinforce one another …"); Ex. 88 at 0495; Ex. 54 at
        9334.

**Defendants' Response to 94:**  Plaintiffs' assertion is not material because it does not

affect the outcome of Defendants' Motion.  Cross-selling is in no way anticompetitive.

For this reason, Plaintiffs' asserted fact is immaterial and need not be decided to resolve

Defendants' Motion, but it is undisputed for purposes of this Motion only.

95.     Varsity, supported by its Co-Defendants, sought to acquire and consolidate power in the
        relevant markets through an aggressive strategy of mergers and acquisitions. Ex. 1 [Netz
        Rep.] at 92-104; Ex. 3 [Heeb Rep.] at ¶¶ 93-94, 174-177; Ex. 5 [Aronoff Rep.] at ¶¶ 43-
        54 & Table 1 (Select Varsity Mergers and Acquisitions); Ex. 89 at 5580; Ex. 87 at 1580.

**Defendants' Response to 95**:  Plaintiffs' cited evidence does not support this asserted

fact and therefore should be disregarded.  The cited excerpts of Plaintiffs' Exhibits 87 and 89 do

not discuss a mergers and acquisitions strategy at all.

In addition, Plaintiffs' proposed expert testimony inadmissible  *See* ECF No. 382-1 at

PageID 8574; ECF No. 385-1 at 10110; ECF No. 388-1 at PageID 10456.  In particular,

paragraphs 93-94 of Dr. Heeb's report are merely Dr. Heeb's "Summary of Allegations," which recites what Plaintiffs allege in their complaint. *See* ECF No. 388-3 at ¶¶ 93-94. This is inadmissible, and Plaintiffs cannot rest on mere allegations at summary judgment.

This statement does not create a material dispute of fact because, although the statement is not true and in that sense is "disputed," it is not supported by evidence and it accordingly should be disregarded.

96.   Varsity completed 27 acquisitions between 1996 and 2018, nine of which were between 2015 and 2018. Ex. 2 [Netz Rebuttal] at 85 & Exhibit RR-7 (chart of Varsity acquisitions over time).

**Defendants' Response to 96:** Plaintiffs fail to support their asserted fact with admissible evidence; instead, they cite only their expert's recitation and interpretation of documents, which is inadmissible. Fed. R. Evid. 702, 403.

This statement does not create a material dispute of fact because, although the statement is not true and in that sense is "disputed," it is not supported by evidence and it accordingly should be disregarded.

97.   On at least three occasions, Varsity acquired its largest Cheer Competition competitor at the time: National Spirit Group in 2004, JAM Brands in 2015, and EPIC Brands in 2018. Ex. 1 [Netz Rep.] at 99.

**Defendants' Response to 97:** Plaintiffs fail to support their asserted fact with admissible evidence; instead, they cite only their expert's recitation and interpretation of documents, which is inadmissible. Fed. R. Evid. 702, 403.

This statement does not create a material dispute of fact because, although the statement is not true and in that sense is "disputed," it is not supported by evidence and it accordingly should be disregarded.

98.     Varsity acquired numerous Cheer Camp competitors between 2015 and 2018. Ex. 118 at
        9041 (JAM Brands (11/2/2015); Aloha Spirit Productions (12/15/2016); Spirit
        Celebration (2/28/2017); All Things Cheer (4/23/2017); JAM Spirit Group (11/15/2017);
        Mardi Gras Nationals (12/1/2017); International Cheer Alliance (12/20/2017); and EPIC
        Brands (1/19/2018); Ex. 1 [Netz Rep.] at Exhibit 2 (list of Varsity-owned brands); Ex. 3
        [Heeb Rep.] at ¶¶ 231-250; Ex. 7 [Maki Rep.] at ¶ 107.

        **Defendants' Response to 98:**  Plaintiffs' cited evidence does not support this asserted

fact and therefore should be disregarded.  Plaintiffs' Exhibit 118 does not demonstrate that the

named acquisitions were of cheer camp competitors.

        Additionally, Plaintiffs' proposed expert testimony is inadmissible.  *See* ECF No. 382-1

at PageID 8574; ECF No. 388-1 at PageID 10456; ECF No. 391-1 at PageID 12807.  In any case,

of the named acquisitions, the cited excerpt of Dr. Heeb's report only identifies All Things Cheer

and EPIC Brands as acquired companies that produced cheer camps.  *See* ECF No. 388-3 at

¶¶ 248-49.

        This statement does not create a material dispute of fact because, although the statement

is not true and in that sense is "disputed," it is not supported by evidence and it accordingly

should be disregarded.


99.     Varsity has acquired many of its Cheer Apparel competitors. Ex. 1 [Netz Rep.] at Exhibit
        2 (list of Varsity-owned brands); Ex. 2 [Netz Rebuttal] at Ex. RR-7.

        **Defendants' Response to 99:**  Plaintiffs fail to support their asserted fact with admissible

evidence; instead, they cite only their expert's recitation and interpretation of documents, which

is inadmissible.  Fed. R. Evid. 702, 403.

        In addition, Plaintiffs' cited materials do not support this asserted fact and therefore

should be disregarded.  Exhibit 2 in Dr. Netz's initial report does not clearly identify any

acquisition of an apparel competitor.  ECF No. 382-3 at Ex. 2.  Exhibit RR-7 in Dr. Netz's

rebuttal report only identifies one apparel acquisition, ECF No. 382-4 at Ex. RR-7, not "many."

This statement does not create a material dispute of fact because, although the statement

is not true and in that sense is "disputed," it is not supported by evidence and it accordingly

should be disregarded.

100.    Varsity's market share in the market for Cheer Competitions increased significantly, as a
        result of its acquisition strategy. After acquiring JAM Brands in November 2015,
        Varsity's market share increased from 40-50% to 70-80%. Ex. 1 [Netz Rep.] at 99 & n.
        404. Subsequent acquisitions of firms with individual market shares of 2-10% have
        maintained Varsity's market share in the 75-85% range. Id.; Ex. 12 [Elza Dep.] at 80:18-
        82 (Varsity bought its way to dominance in the All Star event market).

**Defendants' Response to 100:**  Further, Plaintiffs' assertion is not material, as

Defendants' Motion does not assert lack of market power as a basis for summary judgment.

In addition, Plaintiffs' assertion rests on inadmissible expert testimony.  *See* Netz Daubert

Mot., ECF No. 382-1.

This statement does not create a material dispute of fact because, although the statement

is not true and in that sense is "disputed," it is neither material nor supported by admissible

evidence and it accordingly should be disregarded.

101.    Between 2012 and 2018, Varsity's market share in the All Star Cheer Competitions
        market rose to 80-85%. Ex. 20 [Cota Dep.] at 51:3-53:21.

**Defendants' Response to 101:**  Plaintiffs' assertion is not material, as Defendants'

Motion does not assert lack of market power as a basis for summary judgment.

This statement does not create a material dispute of fact because, although the statement

is not true and in that sense is "disputed," it is not material and it accordingly should be

disregarded.

102.  Jeff Webb intended to dominate the cheer industry. Ex. 102 at 7 (2/24/2016 Inc./Slate article:  "Jeff [Webb] is very driven . . . There is enough out there for all of us [i.e., Varsity competitors]. Why make it so difficult? It's like he has to have 100 percent. He can't be happy with just 95 percent.").

**Defendants' Response to 102:**  The cited excerpt from Plaintiffs' Exhibit 102 is

inadmissible hearsay because it quotes an interview of a Varsity competitor from a news article

published online.  Fed. R. Evid. 802.

In addition, Plaintiffs' cited materials do not support this asserted fact and therefore

should be disregarded. Plaintiffs' Exhibit 102 is not a statement by Jeff Webb about his

intentions regarding anything, nor does it claim to be.  Pls.' Ex. 102.


This statement does not create a material dispute of fact because, although the statement

is not true and in that sense is "disputed," it is not supported by evidence and it accordingly

should be disregarded.

103.  Varsity's acquisition strategy was to "Dissolve and Conquer" and was for the specific purpose of closing out and eliminating competition. Ex. 89 at 5581 ("Dissolve and Conquer" …



Ex. 11 [Parrish Dep.] at 178:4-6: ("Q. And when you say "get rid of them," did you mean put them out of business? A. "Yes.") (emphasis added); Ex. 102 at 7 (2/24/2016, Inc./Slate article: "Varsity acquired Just Briefs in 2010 and closed it"). Ex. 189 (1/22/2013, Webb: "acquisitions are better viewed as tactical and used for roll ups … or to eliminate competitors."); Ex. 122 at 2197 (Varsity described the benefits its 2015 acquisition of JAM Brands as providing:

(emphasis added); Ex. 121 at 5396 (2017, Varsity noted its acquisition strategy to "roll up the All Star market" had been successful").

**Defendants' Response to 103:**  Undisputed for purposes of this Motion only that Varsity

sought to eliminate certain acquired events.

63

Plaintiffs' cited evidence does not otherwise support this asserted fact and therefore should be disregarded.  Plaintiffs' cited evidence either fails to address Varsity's acquisitions or fails to show Varsity has a strategy to eliminate competition through acquisitions.  Indeed, Plaintiffs' Exhibit 189 states that "[g]rowing by acquisition is not a strategy."  Pls.' Ex. 189.

For these reasons, Plaintiffs' asserted fact is undisputed only to the extent that Varsity sought to eliminate certain acquired events, for purposes of this Motion only.

104.   Varsity consistently acquired its Cheer Competition rivals and then cancelled their acquired competition events, thereby reducing output and raising registration prices. Ex. 12 [Elza Dep.] at 230:23-231:1 ("Q. And you're saying that after the JAM Brands acquisition, Varsity would likely cancel certain events; is that right? A. Yes. We did that often."); Ex. 58 at 5065; Ex. 123 at 1396; Ex. 124 at 5529 (5/23/2018, Email from J. Lomba (reflecting cancellation of JAMfest); Ex. 125 at 1435 (12/7/2017, Elza: "As you know we often put event on other events to hurt our competitors." … "Strategy worked, and now Mardi Gras is sitting around 60 ish teams and JAM at 70." … "If Mardi Gras doesn't hit 125 teams they lose their Tier 1 Status." … "Plan would be to cancel JAM and move all of those teams to MARDI GRAS.").

**Defendants' Response to 104:**  Undisputed for purposes of this Motion only that Varsity cancelled certain acquired events.

Plaintiffs' cited evidence does not otherwise support this asserted fact and therefore should be disregarded.  The cited evidence does not show that Varsity reduced output for cheer competitions generally, nor that the elimination of certain events led to higher registration prices.

For these reasons, Plaintiffs' asserted fact is undisputed only to the extent that Varsity cancelled certain acquired events for purposes of this Motion only.

105.   Through acquisitions, Varsity was also able to raise spectator admission fees to its events. Ex. 1 [Netz Rep.] at 46 & n. 184; Ex. 122 at 2197; Ex. 7 [Maki Rep.] at ¶¶ 98-101 (explaining how acquisition of JAM Brands and the ability to raise spectator fees would lead to ███████ in additional revenue). Varsity requires families that wish to see their athletes perform to pay as much as $40 per day to gain admission to Varsity events. Ex. 1 [Netz Rep.] at 45-47.

**Defendants' Response to 105:** Plaintiffs' assertion is not material because it does not affect the outcome of Defendants' Motion. Indirect purchasers cannot claim damages for alleged increases in spectator fees because spectator fees are paid directly to Varsity.

Undisputed, for purposes of this Motion only, to the extent Varsity introduced spectator fees at acquired JAM Brands events. Otherwise, Plaintiffs fail to support their asserted fact with admissible evidence; instead, they cite only their expert's recitation and interpretation of documents, which is inadmissible. Fed. R. Evid. 702, 403.

Plaintiffs' cited evidence also does not support their assertion that families must pay as much as $40 per day for admission to Varsity events and therefore should be disregarded. The cited excerpt from Dr. Netz's report does not refer at all to a $40 per day cost to gain admission to Varsity events. *See* ECF No. 382-3 at 45-47.

For these reasons, Plaintiffs' asserted fact is immaterial and need not be decided to resolve Defendants' Motion, but it is undisputed, for purposes of this Motion only, to the extent Varsity introduced spectator fees at acquired JAM Brands events.

106. Varsity's acquisition strategy hurt its rivals in the relevant markets. Ex. 1 [Netz Rep.] at 99-104; Ex. 3 [Heeb Rep.] at ¶¶ 251-266.

**Defendants' Response to 106:** Plaintiffs' assertion rests on inadmissible expert testimony. *See* Netz Daubert Mot., ECF No. 382-1; Heeb Daubert Mot., ECF No. 388-1. Acquisitions do not hurt competitors in any events. *See Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 488 (1977).

This statement does not create a material dispute of fact because, although the statement is not true and in that sense is "disputed," it is not supported by evidence and it accordingly should be disregarded.

107.   Varsity's control of the governing bodies for Competitive Cheer foreclosed its rivals in
       the relevant markets. Ex. 1 [Netz Rep.] at 65-89 & Exhibit 3.

**Defendants' Response to 107:**  Plaintiffs' assertion is a legal conclusion, not a statement

of fact, and thus Defendants need not respond.

Plaintiffs' assertion rests on inadmissible expert testimony.  *See* Netz Daubert Mot., ECF

No. 382-1; Heeb Daubert Mot., ECF No. 388-1.

This statement does not create a material dispute of fact because, although the statement

is not true and in that sense is "disputed," it is neither material nor supported by evidence and it

accordingly should be disregarded.

108.   Varsity controlled the USASF Board and USASF SC. Ex. 1 [Netz Rep.] at 64-65, 100-
       101; Ex. 3 [Heeb Rep.] at ¶¶ 84-87, 202-209. As of February 2018, Varsity controlled 33
       of the 42 total Tier 1 events approved to offer Worlds bids. Ex. 14 [Peterson Dep.] at
       242:21-24; Ex. 131 at 6147 (date, IEP: "Currently Tier 3 members rarely, if ever, are able
       to move up to Tier 1 status. As Varsity Brands continue to grow and acquire other
       companies, non UCA EP's [sic] continue to lose business. How can we ever hope to
       reach Worlds requirements when we are consistently losing business to the Varsity
       machine?"); Ex. 63 at 7474 (12/2018, notes from meeting of coaches and gym owners:
       there was a "lack of non-Varsity events in our area—big monopoly (JAMZ is the only
       event and its [sic] only a one day). Lack of competition is hindering the market and
       allowing rising prices"; "Summit is destroying our industry"; and "USASF is run by
       Varsity so its [sic] totally biased.") (emphasis added).

**Defendants' Response to 108:**  Undisputed, for purposes of this Motion only, that

Varsity owned the majority of EPs with seats on the USASF Sanctioning Committee after the

acquisition of JAM Brands in late 2015.  *See* Defs.' SUF No. 126.

However, Plaintiffs' cited materials do not support their assertion that Varsity controlled

the USASF Board and therefore should be disregarded to that extent.  The evidence cited simply

does not address the composition of the USASF Board.

For these reasons, Plaintiffs' asserted fact is undisputed, for purposes of this Motion only, only to the extent Varsity owned the majority of Eps with seats on the USASF Sanctioning Committee after the acquisition of JAM Brands. The assertion is otherwise not supported by evidence and it accordingly should be disregarded.

109.   Varsity intentionally attempted to kill or diminish events hosted by rival event producers by counterprogramming its own "attack" events nearby. Ex. 1 [Netz Rep.] at 73-81; Ex. 143 at 8899 (2/24/2020, Varsity Email: "If you recall, a few years ago we set out to 'put a hurting' on the JAMZ Worlds Bid event which had been growing at an unprecedented amount year after year. In order to achieve this, we added a new two-day event in Las Vegas market under the Encore brand." ... "Over the course of those two years we have stripped away nearly 100 of their teams ...") (emphasis added); Ex. 11 [Parrish Dep.] at 125:18-22 ("strategy would be to put a Family Plan event on either side of them on the weekend before and the weekend after, and then we would call our sales team and say, 'Hey, try to poach teams off of that – that event.'"); Ex. 144 at 4423 (2/24/2017, Tres LeTard (Varsity): "I had an interesting conversation with Jeff Webb on the way down to Orlando. We were discussing competitors ... I mentioned EPIC and he asked what we could do to apply pressure to them. I said we have Summit Bids and some events near them on similar weekends but could do more at ASC – Baltimore if needed (and explained the new bid strategy). He strongly recommended that we do all we can.").

**Defendants' Response to 109:**  Plaintiffs' assertion is not material because it does not affect the outcome of Defendants' Motion.  *See* ECF No. 471 at 44.  It is undisputed that to the extent Varsity engaged in "counterprogramming," it increased output, which means the alleged "counterprogramming" is not anticompetitive.  *Id.*; Defs.' SUF No. 60.

In addition, Plaintiffs cite their expert's recitation and interpretation of documents, which is inadmissible.  Fed. R. Evid. 702, 403.

For this reason, Plaintiffs' asserted fact is immaterial and need not be decided to resolve Defendants' Motion, but it is undisputed for purposes of this Motion only.

110.   Varsity also targeted nascent competitors, attempting to kill them off before they could even get started. Ex. 1 [Netz Rep.] at 78-84; Ex. 145 at 8910, 8913 (12/19/2019, re rival event producer, Varsity says "crush her" before "she really gets wings and creates more

issues for our other territories. "); Ex. 146 at 7691 (re Spirit Championships, Varsity says: "The goal for us is simple…We need to stop this train before it starts."); Ex. 147 at 8030 (re counterprogramming against Nfinity by putting Summit bid events near to Nfinity event and doing "[w]hatever we need to do to make sure they are not successful.").

**Defendants' Response to 110:** Plaintiffs' assertion is not material because it does not affect the outcome of Defendants' Motion. *See* ECF No. 471 at 44. It is undisputed that to the extent Varsity engaged in "counterprogramming," it increased output, which means the alleged "counterprogramming" is not anticompetitive. *Id.*; Defs.' SUF No. 60.

In addition, Plaintiffs cite their expert's recitation and interpretation of documents, which is inadmissible. Fed. R. Evid. 702, 403.

For this reason, Plaintiffs' asserted fact is immaterial and need not be decided to resolve Defendants' Motion, but it is undisputed for purposes of this Motion only.

111.  Varsity scheduled "attack" events explicitly for the purpose of hurting competitors. Ex. 1 [Netz Rep.] at 73-78; Ex. 125 (Varsity: "As you know we often put events on other events to hurt our competitors.") (emphasis added); Ex. 148 at 3800 (9/27/2016, internal Varsity email: "I am WAY ahead of you. I have downloaded ALL of our competitors['] World Bid events to see where they are in relation to our closest 2-Day Summit Bid Event. I want to see what dates we need to change to hurt our competition."); Ex. 149 at 2462 (12/2017, internal Varsity "competitor tracking" document: "[Varsity Spirit] has an incredible hold on the major markets of Texas and continues to apply pressure" on IEPs and non-sanctioned members, including strategically scheduling events and allocating Summit bids to "push[] out all IEP presence" in any given location. … Varsity adds: "We have officially pushed all competitors out of this market on this weekend" and "VAS [Varsity] owns this market on this weekend and continues to push out IEPs."); Ex. 27 [Hill Dep.] at 158:12-158:18 (Mardi Gras Worlds bid event "was, obviously, an event that we attacked … we put other events around it for the sole purpose of—of, you know, trying to attack it."); Ex. 143 at 8899.

**Defendants' Response to 111:** Plaintiffs' assertion is not material because it does not affect the outcome of Defendants' Motion. *See* ECF No. 471 at 44. It is undisputed that to the

extent Varsity engaged in "counterprogramming," it increased output, which means the alleged "counterprogramming" is not anticompetitive.  *Id.*; Defs.' SUF No. 60.

In addition, Plaintiffs cite their expert's recitation and interpretation of documents, which is inadmissible.  Fed. R. Evid. 702, 403.

For this reason, Plaintiffs' asserted fact is immaterial and need not be decided to resolve Defendants' Motion, but it is undisputed for purposes of this Motion only.

112.   Varsity's counterprogramming efforts not only foreclosed competition in the Cheer Competitions market, but also in the Cheer Apparel market. Ex. 1 [Netz Report] at 58-59

**Defendants' Response to 112:**  Plaintiffs fail to support their asserted fact with admissible evidence; instead, they cite only their expert's recitation and interpretation of documents, which is inadmissible.  Fed. R. Evid. 702, 403.

In any case, Plaintiffs' cited evidence does not support this asserted fact and therefore should be disregarded.  The cited excerpt of the Netz report does not refer to counterprogramming at all.  *See* ECF No. 382-3 at 58-59.

This statement does not create a material dispute of fact because, although the statement is not true and in that sense is "disputed," it is not supported by evidence and it accordingly should be disregarded.

113.   Varsity, USASF, and Jeff Webb coordinated to block Varsity's rivals from partnering with non-Varsity apparel companies. Ex. 150 at 5328-29 (when Varsity learned that Cheer Derby, an independent event producer ("IEP"), was partnering with the apparel company GK Elite, Varsity targeted multiple Cheer Derby events: "Will you make sure we have events on top of these Cheer Derby events."); Ex. 27 [Hill Dep.] at 149:14-151:13 ("You got Rebel, Nfinity, GK. And they would—they would partner with non-Varsity events to gain access to customers to try to expand their—their brand, the uniform, so to speak…obviously, we couldn't prevent them from partnering with Cheer Derby. But, you know, if customers aren't going to their [Cheer Derby's] event; you know, it kind of limit[s] their access…this has as much to do with maintaining fashion

69

business or affecting a fashion company competitor's business as much as it did event business.").

**Defendants' Response to 113:**  Plaintiffs' assertion is a legal conclusion, not a statement of fact, and thus Defendants need not respond.

In addition, Plaintiffs' cited evidence does not support this asserted fact and therefore should be disregarded.  The cited evidence does not indicate any coordination between Jeff Webb, USASF, and Varsity; the only reference to Mr. Webb or USASF in Plaintiffs' cited material is that Mr. Webb was copied on the email quoted from Plaintiffs' Exhibit 150.

This statement does not create a material dispute of fact because, although the statement is not true and in that sense is "disputed," it is neither material nor supported by evidence and it accordingly should be disregarded.

114.  Varsity and USASF also took actions to block Cheer Apparel competitors from showing their wares at competitions, blocking them from event venues as well as at the hotels where teams stayed. Ex. 1 [Netz Rep.] at 57 & n. 229; Ex. 151 at 1243 (2/1/2012, Peterson (USASF) to Chadwick (USASF) and Newby (Varsity) re blocking GK Elite and Nfinity from Disney cheer merchandising expo: "I will contact her and try to discourage her from having this Mall event or best case have her discontinue the use of 'Worlds.' I will also follow up with GK and Nfinity to let them know that they may not participate and sell products at this Mall event because it is on Disney property."); Ex. 102 at 6-7 (2/22/2016, Slate article re Rebel: "Varsity's hardball tactics are structured to keep … rivals off the playing field." … "rival apparel makers can't show their wares at [Varsity competitions], which are important showrooms for cheer merchandise." … Karen Noseff Aldridge, founder of Rebel Athletics: "Not partnering with an event company is one thing[.] But being locked out of partnering with an event company— knowing that a competitor is now going to be in your booth space showing its product— it's a double whammy."); Ex. 153 at 2613 (2/25/2019, Carrier (Varsity) to Waymire (Connections Housing, company who booked Stay-to-Play hotels) asking her to block Tate Chalk (Nfinity) from soliciting apparel sales in Omni Hotel Bar during event); Ex. 154 at 7155-56 (USASF communication with Varsity "GTM is on the list and they are apparel. Correct? We will also have to let some of these bow companies and other suppliers [know] the[y] can not [sic] promote campwear.").

**Defendants' Response to 114:**  Plaintiffs' assertion is not material because it does not affect the outcome of Defendants' Motion.  *See* ECF No. 471 at 31-32.  Given that apparel purchases are generally outside of cheer competitions, there is no basis to conclude that blocking apparel competitors from event venues and hotels is anticompetitive.

In addition, Plaintiffs cite their expert's recitation and interpretation of documents, which is inadmissible.  Fed. R. Evid. 702, 403.

This statement does not create a material dispute of fact because, although the statement is not true and in that sense is "disputed," it is not material and it accordingly should be disregarded.

115.    Varsity used its control over Varsity TV and other industry media to foreclose apparel vendors. Families that want to watch their children participate without physically attending events must pay $30 per month or $219 per year to watch the events on Varsity TV. Ex. 7 [Maki Rep.] at ¶¶ 102-103. Athletes and their families were not allowed to record or stream Varsity events, even for private usage. This ban left family members no choice but to pay Varsity's inflated prices to see their athletes compete. Varsity actively enforces this ban on private recording or streaming, leaving family members no choice but to pay Varsity's inflated prices. Ex. 155 at 3825 ("any program that isn't 100% in VASF uniforms, wouldn't get that icon" on JoinAllStar.com); Ex. 156 at 1196; Ex. 157 at 3300.

**Defendants' Response to 115:**  Plaintiffs' assertion is a legal conclusion, not a statement of fact, and thus Defendants need not respond.

Additionally, Plaintiffs' cited material does not support the assertion and therefore should be discarded.  None of Plaintiffs' cited material discusses foreclosing apparel vendors.  Nor do any of Plaintiffs' cited materials discuss or establish a relationship between Varsity TV or other media and ability to sell apparel.  *See* ECF No. 471 at 31-32.

Plaintiffs' assertion rests on inadmissible expert testimony.  *See* Maki Daubert Mot., ECF No. 391-1.

71

It is undisputed that athletes and their families were not allowed to record or stream Varsity events.  Regardless, this statement does not create a material dispute of fact because, although the statement is not true and in that sense is "disputed," it is not supported by evidence and it accordingly should be disregarded.

116.   Varsity also signed exclusive and non-compete agreements with various venues in an effort to block competing event producers from hosting events. Ex. 159 at 1443-1445 ("[h]e [the owner of Xtreme Spirit] is a competitor and somewhat of a jerk. We may be interested in running an event there. I have copied Kevin Brubaker as he can look into the venue to see what we could do to block him out."); Ex. 11 [Parrish Dep.] at 124:5-124:12 (Varsity using venue specifications to block competitors and booking up venues so competitors had no options to host events); Ex. 160 at 0891(12/10/2012, Varsity Email: ███████████████████████████████████████████████████.

**Defendants' Response to 116:**  Plaintiffs' assertion is immaterial as non-compete agreements are not inherently anticompetitive. Plaintiffs' have failed to demonstrate that any such agreements negatively impacted competition. Furthermore, booking certain venues so that a competitor cannot hold an event at the same time, or reach out to a location to try and assure that you have access to a venue is not a non-compete agreement. And Plaintiffs' Exhibit 159 explicitly states that its agreement is merely a right of first refusal, not an exclusive deal. Pls.' Ex. 159 at -1444.

This statement does not create a material dispute of fact because, although the statement is not true and in that sense is "disputed," it is not material and it accordingly should be disregarded.

117.   Varsity's rebate and other loyalty and discount programs were anticompetitive. They foreclosed competition and disadvantaged Varsity's rivals. Ex. 1 [Netz Rep.] at 5, 104-113; Ex. 2 [Netz Rebuttal] at 89; Ex. 3 [Heeb Rep.] at ¶¶ 219-225; Ex. 4 [Heeb Rebuttal] at ¶¶ 470-481].

**Defendants' Response to 117:**  Plaintiffs' assertion is a legal conclusion, not a statement of fact, and thus Defendants need not respond.

Plaintiffs' assertion rests on inadmissible expert testimony.  *See* Netz Daubert Mot., ECF No. 382-1; Heeb Daubert Mot., ECF No. 388-1.

This statement does not create a material dispute of fact because, although the statement is not true and in that sense is "disputed," it is neither material nor supported by evidence and it accordingly should be disregarded.

118.   The Varsity Family Plan ("VFP") was anticompetitive and foreclosed competition. The VFP foreclosed competitors by offering cash and credit for additional purchases of Varsity cheer apparel, and other benefits. Ex. 1 [Netz Rep.] at 105.

**Defendants' Response to 118:**  Plaintiffs' assertion is a legal conclusion, not a statement of fact, and thus Defendants need not respond.

Plaintiffs' assertion rests on inadmissible expert testimony.  *See* Netz Daubert Mot., ECF No. 382-1.

This statement does not create a material dispute of fact because, although the statement is not true and in that sense is "disputed," it is neither material nor supported by evidence and it accordingly should be disregarded.

119.   In order to qualify for the VFP, All Star gyms are required to attend a minimum number of Varsity's cheer competitions in a given season. Ex. 119; Ex. 161 at 7512-13; Ex. 12 [Elza Dep.] at 56:2-57:12. For example, in the 2018/2019 season the VFP required that teams attend at least six events per year to qualify, which left very little room for non-Varsity events since teams attend, on average, seven to nine events per year. Ex. 2 [Netz Rebuttal] at 30.

**Defendants' Response to 119:**  Plaintiffs' cited material does not support the assertion, as Plaintiffs' have failed to demonstrate that this applied to each season of the Varsity Family Plan.

120. The goal of the VFP was to eliminate competition. A summary of the "Varsity Family Plan 2.0" explains that the goal of the program was to: "Get rid of any competitors, make it so that teams couldn't go to IEP." Ex. 298 at 9570 (emphasis added); id at 9569 ("For every IEP they support, drop a % point" and "[o]nly allow programs to achieve the top level of VFP if they are exclusive to Varsity.") (emphasis added). Another purpose of the VFP was to addict athletes and their families to the VFP and Varsity ecosystem, like "crack cocaine." Ex. 257 at 2095-96 (Varsity suggest threatening parents to keep them locked into the ecosystem: "OPTION ONE – CASUALLY THREATEN VIA VERBAL CAMPAIGN" ... "[t]hat hits every corner of America in 24 hours.") (emphasis added).

**Defendants' Response to 120:** Plaintiffs' assertion regarding the purported "goal" of the VFP is immaterial, as Plaintiffs offer no evidence of anticompetitive effects, or that the result was for gyms to send all of their teams to the same competitions. *See* Defs.' Joint Reply Br. at 16-17. Indeed, for purposes of Defendants' Motion, Plaintiffs do not dispute that "certain gyms that chose to avail themselves of the Varsity Family Plan or a Varsity Network Agreements have also attended non-Varsity events during the same season." Defs.' SUF No. 106.

121. The Varsity Network Agreements were exclusive dealing contracts. Ex. 1 [Netz Rep.] at 104-113; Ex. 3 [Heeb Rep.] at ¶¶ 219-225. As Plaintiffs' expert Dr. Heeb testified, Varsity Network Agreements (agreements made between Varsity and high value All Star gyms), have a clause "that appears to be an exclusive purchasing requirement that the customer will exclusively purchase and wear Varsity uniforms and Varsity shoes, and it provides an additional discount related to apparel and accessories in exchange for this exclusive dealing arrangement." Ex. 26 [Heeb Dep.] at 316:2-316:7. DX Ex. AW (collection of Network Agreements).

**Defendants' Response to 121:** Plaintiffs' assertion is a legal conclusion, not a statement of fact, and thus Defendants need not respond.

In addition, Plaintiffs' cited evidence does not support this asserted fact and therefore should be disregarded. The cited evidence only shows that certain Network Agreements required

███████████████████████████████████████████████████████████████████████

████████  *See* Defs.' SUF No. 98. Network Agreements only cover a small proportion of Varsity's gym customers and are not anticompetitive. ECF No. 471 at 30-31.

Plaintiffs' assertion rests on inadmissible expert testimony. *See* Netz Daubert Mot., ECF No. 382-1; Heeb Daubert Mot., ECF No. 388-1.

This statement does not create a material dispute of fact because, although the statement is not true and in that sense is "disputed," it is neither material nor supported by evidence and it accordingly should be disregarded.

122.    Varsity's rebate plans leverage market power from one market to another through "first dollar discounts," which condition large rebates on marginal purchasing decisions—i.e., once the customer reaches the spending threshold for the discount, the rebate applies to all of the customer's spending retroactively. Ex. 2 [Netz Rebuttal] at 3; Ex. 3 [Heeb Rep.] at ¶ 97.

**Defendants' Response to 122:**  Plaintiffs fail to support their asserted fact with admissible evidence; instead, they cite only their expert's recitation and interpretation of documents, which is inadmissible.  Fed. R. Evid. 702, 403.

In addition, not only is Plaintiffs' proposed expert testimony inadmissible, paragraph 97 of Dr. Heeb's report are his "Summary of Allegations" and recite what Plaintiffs allege in their complaint. *See* ECF No. 388-3 at ¶ 97.  This is inadmissible, and Plaintiffs cannot rely on allegations at summary judgment.

This statement does not create a material dispute of fact because, although the statement is not true and in that sense is "disputed," it is not supported by evidence and it accordingly should be disregarded.

123.    Varsity's rebate programs create large incentives for customers to buy exclusively from Varsity. Ex. 2 [Netz Rebuttal] at 3; Ex. 3 [Heeb Rep.] at ¶ 97.

**Defendants' Response to 123:**  Plaintiffs fail to support their asserted fact with admissible evidence; instead, they cite only their expert's recitation and interpretation of documents, which is inadmissible.  Fed. R. Evid. 702, 403.

In addition, not only is Plaintiffs' proposed expert testimony inadmissible, paragraph 97 of Dr. Heeb's report, Plaintiffs' Exhibit 3, fall within his "Summary of Allegations" and recite what Plaintiffs allege in their complaint.  *See* ECF No. 388-3 at ¶ 97.

This statement does not create a material dispute of fact because, although the statement is not true beyond the fact that rebates make Varsity's competitions more attractive by making them less expensive, and in that sense is "disputed," it is not supported by evidence and it accordingly should be disregarded.

124.   Varsity's IMPACT Program required schools to enter into exclusionary contracts that gave financial incentives for exclusively purchasing Varsity Competitions, Camps, and Apparel. Ex. 162 at 5027 (IMPACT program specifically mandated that a school purchase only Varsity camps as a part of its commitment to spend $50,000 exclusively with Varsity or face invoices for up to $48,500 worth of otherwise "free" cheer resources paid directly the school). The contracts also contained penalty provisions, whereby Varsity reserved  " the right to invoice for all or a portion of realized products and services provided . . . . ]. "  Id. The effect on schools was pronounced, given that Varsity had acquired 100% of the School Cheer competitions that lead to Nationals. See Ex. 1 [Netz Rep.] at 11, 17.

**Defendants' Response to 124:**  Plaintiffs' cited evidence does not support their assertion that the IMPACT program required exclusionary contracts and therefore should be disregarded.

Plaintiffs' Exhibit 162 shows that █████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███ Pls.' Ex. 162 at -5027; *see also* Pls.' Ex. 40 at 643:7-644:8 (stating that all the Impact Program does is provide " ███████████████████████████████████████ ███████████ ")

Additionally, Plaintiffs' fail to demonstrate that Plaintiffs' Exhibit 162 is representative of IMPACT agreements generally, or that any IMPACT agreements beyond Plaintiffs' Exhibit 162 involve Varsity Competitions, Camps, or Apparel. *See* Pls.' Ex. 40 at 567:8-568:12 (stating that IMPACT provisions relating to camps are "few and far between" and that "for the most part" IMPACT agreements "wouldn't have anything to do … with … camps"); 637:7-638:4 (stating that "Varsity Spirit was rarely a part of an Impact agreement.").

Moreover, Plaintiffs fail to support their assertion that IMPACT Program had a significant effect on schools because Varsity had acquired 100% of the school competitions leading to Nationals with admissible evidence; instead, they cite only their expert's recitation and interpretation of documents, which is inadmissible. Fed. R. Evid. 702, 403.

In addition, Plaintiffs cite their expert's recitation and interpretation of documents, which is inadmissible. Fed. R. Evid. 702, 403.

This statement does not create a material dispute of fact because, although the statement is not true and in that sense is "disputed," it is not supported by evidence and it accordingly should be disregarded.

125. One of the stated goals of Varsity's IMPACT/VIP Branding Program was to monopolize the relevant markets. Ex. 163 at 4354 ("We can do more with VIP brand, and own the intellectual property of every high school in America."); Ex. 1640 at 3560 ████████ ████████████████████████████████████████████████████████ ████████████████████████████████████

**Defendants' Response to 125:** Plaintiffs' cited evidence does not support this asserted fact and therefore should be disregarded. The cited evidence only refers to winning business from schools, not any plan or desire to monopolize Plaintiffs' cheer competitions, cheer apparel, or cheer camps markets. Exhibit 163 only refers to winning business for customized products for schools through VIP branding.

This statement does not create a material dispute of fact because, although the statement is not true and in that sense is "disputed," it is not supported by evidence and it accordingly should be disregarded.

126.   Varsity offers inducements to schools to sign exclusive agreements with Varsity through its Game Day program. In exchange for these inducements, schools sign VIP Agreements under which they agree to purchase their uniforms, apparel, and equipment from Varsity and to compete in Varsity Cheer Competitions. Ex. 1 [Netz Rep.] at 104-105; Ex. 3 [Heeb Rep.] at ¶¶ 220-226.

**Defendants' Response to 126:** Plaintiffs fail to support their asserted fact with admissible evidence; instead, they cite only their expert's recitation and interpretation of documents, which is inadmissible. Fed. R. Evid. 702, 403.

In any case, Plaintiffs' cited evidence does not support this asserted fact and therefore should be disregarded. The cited evidence does not discuss the Game Day program. *See* ECF No. 382-3 at 104-05; ECF No. 388-3 at ¶¶ 220-26.

This statement does not create a material dispute of fact because, although the statement is not true and in that sense is "disputed," it is not supported by evidence and it accordingly should be disregarded.

127.   Varsity further abused its power by implementing a "Stay to Play" policy that requires teams participating in Varsity cheer competitions to stay at hotels pre-selected by Varsity

and more expensive than where they might otherwise choose to stay. Ex. 1 [Netz Rep.] at 48-50; Ex. 165 at 5259; Ex. 166 at 7600. If teams do not stay at the designated hotel, they risk disqualification from the competition. Ex. 167 at 0241.

**Defendants' Response to 127:**  Undisputed, for purposes of this Motion only, that there was a Stay to Play policy requiring teams participating at certain Varsity events to stay in pre-selected hotels, with the possibility of being disqualified if they did not.

However, this assertion is immaterial, as Stay to Play is not an element of harm that Plaintiffs are pursuing in this action.

Plaintiffs' assertion that Varsity "abused its power" by implementing the Stay to Play program is a legal conclusion, not a statement of fact, and thus Defendants need not respond to this assertion.

In addition, Plaintiffs' cited evidence does not support their assertion that Stay to Play constitute an abuse of Varsity's power by increasing prices for teams and therefore should be disregarded.  Plaintiffs only cite anecdotal evidence that hotel expenses were higher as a result of Stay to Play.  In particular, the cited excerpt of Plaintiffs' Exhibit 165 is inadmissible hearsay because it consists of comments posted online on Facebook or a similar social media website. Fed. R. Evid. 802.

In addition, Plaintiffs cite their expert's recitation and interpretation of documents, which is inadmissible.  Fed. R. Evid. 702, 403.

For these reasons, Plaintiffs' assertion that Varsity abused its power by raising hotel expenses through the Stay to Play program does not create a material dispute of fact because, although the statement is not true and in that sense is "disputed," it is not supported by evidence and it accordingly should be disregarded.

128.   Varsity receives undisclosed kickbacks from the hotels for rooms booked through the Stay to Play program. Ex. 168 at 9756; Ex. 169 at 3932; Ex. 170 at 8063.

**Defendants' Response to 128:**  Undisputed for Purposes of this Motion only that Varsity received compensation from hotels through the Stay to Play program.

However, Plaintiffs' cited evidence does not support their assertion that the compensation was undisclosed and therefore should be disregarded.  The cited evidence does not indicate that the compensation was undisclosed.

For these reasons, Plaintiffs' assertion is undisputed, for purposes of this Motion only, only to the extent that Varsity received compensation from hotels through the Stay to Play program.

129.   In 2018, Varsity rebranded the Stay to Play program as "Stay Smart," purportedly to alleviate customer complaints. In its own words, however, the new name simply "put lipstick on a pig." Ex. 171 at 6415 (emphasis added); Ex. 18 [Bray Dep.] at 99:20 - 100:16 ("Q. What is 'stay-to-play'? A. Stay-to-play was – in order to compete at a certain event, we were forced to use a hotel, … of Varsity's choosing. Q. And how did that affect your travel? A. Prices rose significantly."); Ex. 166 at 7600 (2/2019, gym owner writes to Varsity President Seely re complaints of roughly 100 parents from meeting of Parent Advisory Board about Stay to Play, quality and safety at events). Ex. 172 at 0794 ("I don't mind saying that this was my favorite competition, until this year. I've never had a wors[e] experience at a competition in my entire life, all because of the Stay to Play policy.").

**Defendants' Response to 129:**  Plaintiffs' assertion is not material because it does not affect the outcome of Defendants' Motion.  Whether Varsity rebranded the Stay to Play program has no impact on whether it is anticompetitive.

Undisputed, for purposes of this Motion only, that Varsity rebranded the Stay to Play program, at least partly in response to customer complaints.  The language quoted from Plaintiffs' Exhibit 171 appears in the document, but Plaintiffs' cited materials do not support the assertion that this represents Varsity's views and therefore should be disregarded to this extent.

For this reasons Plaintiffs' asserted fact is immaterial and need not be decided to resolve Defendants' Motion, but it is undisputed, for purposes of this Motion only, to the extent Varsity rebranded the Stay to Play program, at least partly in response to customer complaints.

130. Varsity also punished or threatened judges for judging non-Varsity competitions, and manipulating the judging system to favor Varsity. Ex. 1 [Netz Rep.] at 57-58; Ex. 19 [Cherasaro Dep.] at 58:5-60:17 (judges and score sheet at competitions favored teams that wore Varsity apparel); Ex. 173 at 8033 (9/16/2016, suggestion to block Rebel apparel company from being allowed to Judge at Varsity competitions and stating that "Jeff [Webb] is hot on taking down Rebel right now"); Ex. 11 [Parrish Dep.] at 110:3-111:11 ("A. … If you judge outside of Varsity, there's pushback; you get phone calls. Q. Pushbacks and phone calls from whom? A. Justin Carrier [Vice President at Varsity Spirit]. Q. Oh, Varsity pushes back? A. Yes." … "A. … And, you know, 'We put you in this business,' and, you know, 'You won't ever judge for us,' and blah, blah, blah. I mean, there were – there was [sic] some definite threats to Frank and Tanya and Amy Tyler.").

**Defendants' Response to 130:**  Undisputed, for purposes of this Motion only, that Mr. Parrish understood that certain judges of Varsity events received negative feedback for starting their own judging company.

Plaintiffs' cited evidence does not otherwise support this asserted fact and therefore should be disregarded. *See e.g.*, Pls.' Ex. 19 at 57:13-58:11 ("Q. So, can you name a single rule that has been set that…supposedly favors Varsity apparel? A. No… Q. Are you aware of any instance where a judge at a cheerleading competition awarded extra points to an All Star team, because it was wearing Varsity apparel? A. Am I aware of it factually? No…") The evidence also fails to establish that the views of Ms. Chesaro and Mr. Parrish cited in Plaintiffs' Exhibits 11 and 19 accurately reflect Varsity's policies and practices.  Plaintiffs' Exhibit 173 discusses representatives of Rebels who sought to judge at Varsity competitions, not Varsity judges who judged non-Varsity competitions.

In addition, Plaintiffs cite their expert's recitation and interpretation of documents, which is inadmissible.  Fed. R. Evid. 702, 403.

This statement does not create a material dispute of fact because, although the statement is not true and in that sense is "disputed," it is not supported by evidence and it accordingly should be disregarded.

131.   USASF forbids its member athletes, judges, gyms, and event producers from participating in or hosting events that could undermine Varsity's dominance, including any yearend competitions that purport to be a World championship. Ex. 1 [Netz Rep.] at 85-86 & n. 337, 338, 342; Ex. 2 [Netz Rebuttal] at 76 & n. 315-316; Ex. 133 (October 18, 2011, open letter from USASF to "USASF Members and Officials" stating that "no athlete, coach, judge, or official is permitted to participate in any way in any event that claims to be a World or International Championship, other than the ICU or World Championships for National teams, or the USASF/IASF Worlds for All Star or Club teams"); Ex. 142 at 2043-44 (USASF company membership agreement).

**Defendants' Response to 131:**  Plaintiffs' cited materials do not support the asserted fact, and should be disregarded.  Plaintiffs' Exhibit 133 is a 2011 letter that predates the relevant time period and is inadmissible.  In any event, USASF is the host of Worlds, and any rule USASF implemented prohibiting its members from participating in an unapproved "World" championship event is not evidence of USASF prohibiting its members from participating in or hosting events that could undermine Varsity's dominance.  *See* Pls.' Ex. 3.

Further, at Plaintiffs' Ex. 142, Plaintiffs cite to a USASF company membership agreement requiring all of its members to conduct competitions in accordance with USASF's sanctioning standards.  And again, the language that Plaintiffs take issue with long predates the relevant time period.  (CITE – VAR00402524.)

In addition, Plaintiffs cite their expert's recitation and interpretation of documents, which is inadmissible.  Fed. R. Evid. 702, 403.

This statement does not create a material dispute of fact because, although the statement is not true and in that sense is "disputed," it is neither material nor supported by evidence and it accordingly should be disregarded.

132.    USASF cedes to Varsity operational control over Worlds, the largest and most prestigious year-end event in the cheerleading industry. Ex. 198 (2/21/2020); Ex. 201 at 1298 (2/10/2020); Ex. 203 (2/16/2017).

**Defendants' Response to 132:**  Plaintiffs have not produced any evidence to support the assertion that USASF "cedes control" to "the largest and most prestigious year-end event in the cheerleading industry."  To the contrary, Plaintiffs' Exhibit 198 expressly states that "Varsity has no part in the officiating and judges selection at Worlds."  Plaintiffs' Exhibit 201 is the minutes from a gym owner meeting containing the hearsay complaint of one gym owner that "USASF is run by Varsity so it's totally biased."  *See* Fed. R. Evid. 802.  Not only is this hearsay, but it is irrelevant because it provides no information as to how Worlds actually is operated.  Plaintiffs' Exhibit 203 reflects that USASF "had Varsity enter and manage The Worlds registrations," which does not demonstrate that USASF "ceded control" to Varsity, but rather than USASF utilized Varsity for logistical assistance in managing registrations.

This statement does not create a material dispute of fact because, although the statement is not true and in that sense is "disputed," it is not supported by evidence and it accordingly should be disregarded.

133.    USASF conspired with Varsity and Webb to set Worlds Bid rules that favored Varsity and foreclosed Varsity's rivals. Ex. 1 [Netz Rep.] at 69-85; Ex. 2 [Netz Rebuttal] at 79 & n. 332; Ex. 3 [Heeb Rep.] at ¶¶ 203-218; Ex. 11 [Parrish Dep.] at 177:4-178:6 ("A. … at all costs, get rid of IEP's (sic). … Make it so teams can't go---make it physically, just absolutely, if you can't get a World Bid, and you 'an't get a Summit bid, and you—and it's going to cost you . . . It just makes it too hard for a competitor to offer a

83

competitive … good or service. Q. And when you say "get rid of them," did you mean put them out of business? A. Yes.) (emphasis added); Ex. 132 at 4139 (9/22/2017); Ex. 63 at 7475 (12/10/2018); Ex. 129 at 1339 (5/16/2016); Ex. 131 at 6147 (8/4/2017); Ex. 132 at 4139 (9/22/2017, Varsity Email: "As you both know, Jeff W. [Webb] wants the USASF Worlds Bid process changed to prevent small competitors from being allowed to offer World Bids.") (emphasis added). Ex. 134 at 5110, 5114 (3/11/2019); Ex. 136 at 4260 (12/21/2018); Ex. 137; Ex. 143 at 8899 (2/24/2020); Ex. 174 at 1219; Ex. 176 at (4/28/2020); Ex. 177 at 4960 (12/9/2015).

**Defendants' Response to 133:** Plaintiffs' assertion is a legal conclusion, not a statement of fact, and thus Defendants need not respond.

In addition, Plaintiffs' cited material does not support this assertion and therefore should be disregarded. *See* Pls.' Ex. 132 (citation to Varsity-to-Varsity conversation not including USASF); Pls.' Ex. 63 (citation to exhibit that is about the Summit, not Worlds); Pls.' Ex. 129 (citation to internal Varsity document that does not discuss the setting of Worlds bid rules outside of mentioning that rules are antiquated and need to be revamped); Pls.' Ex. 134 (unhelpful citation to document regarding USASF's mere application of preexisting rules and regarding EPs on probation that never lost their Worlds bids); Pls.' Ex. 136 (citation to hearsay email with cheer gym asking for clarification on Worlds bid rule and complaining about Varsity's unilateral conduct); Pls.' Ex. 137 (unhelpful citation to document regarding USASF's mere application of preexisting rules and containing hearsay complaint from EP regarding Varsity's unilateral conduct); Pls.' Ex. 143 (citation to Varsity-to-Varsity email not concerning coordination on rule); Pls.' Ex. 174 (citation to USASF membership guidelines not discussing any coordination with Varsity or rules that favored Varsity); Pls.' Ex. 176 (citation to email suggesting tension between Varsity and USASF inconsistent with the alleged conspiracy and unrelated to setting Worlds bid rules that favor Varsity); and Pls.' Ex. 177 (citation to meeting minutes that predate the relevant time period and do not show any conspiracy with Varsity, but rather constitute contemporaneous support for the procompetitive purpose behind Worlds bid

84

rule changes: "This change will create opportunity for some event producers that haven't previously awarded bids to possibly award bids.")

In addition, Plaintiffs cite their expert's recitation and interpretation of documents, which is inadmissible. Fed. R. Evid. 702, 403.

This statement does not create a material dispute of fact because, although the statement is not true and in that sense is "disputed," it is neither material nor supported by evidence and it accordingly should be disregarded.

134.    USASF, Varsity, and Webb conspired to set a "125 level-five team" rule to foreclose Varsity's rivals. For the 2016/2017 season, USASF introduced a rule that mandated event producers must have at least 125 level-five teams attend a competition to continue giving out Worlds bids in future years. Ex. 1 [Netz Rep.] at 72-73, 83-84; Ex. 131 at 6147 (8/4/2017, IEP letter to Peterson (USASF): "As Varsity Brands continue to grow and acquire other companies, non UCA EP's [sic] continue to lose business. How can we ever hope to reach Worlds requirements when we are consistently losing business to the Varsity machine?") (emphasis added); Ex. 132 at 4139 (9/22/2017, "He [Mr. Webb] believes, and I agree (for whatever that's worth), that in some cases the ability to give Worlds Bids is keeping these companies viable and certainly driving up their value if we decide to acquire them."). If the event producer is unable to attract 125 level-five teams in one year, it is put on probation; if it is unable to attract 125 level five teams for the next year, it loses its Worlds bids for that event, making it far less attractive to participants. Varsity initially proposed this 125-team rule, not the USASF. Ex. 1 [Netz Rep] at 71-72 & n. 338; Ex. 134 at 5110 (3/11/2019, Peterson (USASF) to LeTard (Varsity): "The only [IEP] on probation this season was Spirit Unlimited and they blew it out this year. So far, in 19-20 we have Cheer Tech and ASC on probation. If you guys [Varsity] can put the squeeze on them next season, that would be great.") (emphasis added); Ex. 135 (3/22/2019, Peterson (USASF) to LeTard (Varsity) re putting IEP WSA probation: "WSA did not make 125. That is 3! [thumbs up emoji]." LeTard responded that it is "[g]etting hard out there" and Peterson replied: "You guys are knocking them off! [smiley emoticon].") (emphasis added); Ex. 136 at 4260 (12/21/2016, Heather Petz, owner of IEP to Peterson (USASF) that 125 level-five team minimum was making it hard for her to have an event that would be able to give Worlds bids: "My numbers are down this year for our upcoming bid event due to mergers, small gyms going out of business, … Varsity putting a Summit Bid qualifier in the same building two weeks prior to my event."); Ex. 137 at 4153 (2/2018, "IEP explained how USASF's sanctioning and bid system makes it nearly impossible for non-Varsity event producers to obtain Worlds bids and that the result is that it puts them in jeopardy of having to close their doors).

**Defendants' Response to 134:**  Plaintiffs' assertion is a legal conclusion, not a statement of fact, and thus Defendants need not respond.

Plaintiffs' cited material does not support this assertion and therefore should be disregarded.  *See* Pls.' Ex. 131 (citing hearsay letter from IEP complaining of unilateral conduct by Varsity); Pls.' Ex. 132 (citing Varsity-to-Varsity conversation not including USASF).

Additionally, Plaintiffs' cited material does not support the asserted fact that an event producer's inability to offer Worlds bids "mak[es] it far less attractive to [all] participants" or that "Varsity initially proposed this 125-team rule, not the USASF."  Of note, there are numerous successful competitions that do not offer Worlds bids, including the Summit and the One, among others.  Indeed, Plaintiffs' Exhibit 136 actually reflects that a Worlds bid event struggled to compete against a Varsity event that offered Summit bids.  Further, Plaintiffs' Exhibits 136 and 137 both contain hearsay statements by third parties that merely complain about Varsity's unilateral conduct.

In addition, Plaintiffs cite their expert's recitation and interpretation of documents, which is inadmissible.  Fed. R. Evid. 702, 403.

This statement does not create a material dispute of fact because, although the statement is not true and in that sense is "disputed," it is neither material nor supported by evidence and it accordingly should be disregarded.  However, it is undisputed, for purposes of this Motion only, that there is such a rule, which was adopted in 2014 and only slightly modified a similar rule in place since 2008.

135.   USASF conspired with Varsity to protect Varsity's events and to restrict non- Varsity events by setting rules about the timing and location of events that favored Varsity and excluded its rivals. Ex. 1 [Netz Rep.] at 71 & n. 278; Ex. 3 [Heeb Rep.] at ¶ 205 & n.

238; Ex. 14 [Peterson Dep.] at 129:2-131:8; Ex. 140 at 0643 (6/1/2017); Ex. 141 at 3550 (4/4/2018).

**Defendants' Response to 135:**  Plaintiffs' assertion is a legal conclusion, not a statement of fact, and thus Defendants need not respond.

In addition, Plaintiffs' cited material does not support this assertion and therefore should be disregarded.  *See* Pls.' Ex. 140 (citation to exhibit that is a Varsity-to-Varsity conversation and  does not mention timing and location of events); Pls.' Ex. 14 (citation to excerpt from Steve Peterson deposition where Peterson is not discussing any coordination with Varsity and does not mention Varsity at all; and Pls.' Ex. 141 (citation to Varsity-to-Varsity communication that does not mention timing or location of events).

In addition, Plaintiffs cite their expert's recitation and interpretation of documents, which is inadmissible.  Fed. R. Evid. 702, 403.

This statement does not create a material dispute of fact because, although the statement is not true and in that sense is "disputed," it is neither material nor supported by evidence and it accordingly should be disregarded.


136.   USASF coordinated with Varsity to set a rule which mandated that there must be a four-week black out period on either side of a Tier 1 event during which another Tier 1 event may not take place within 200 miles. Ex. 14 [Peterson Dep.] at 129:2-131:8. The same rule expands the protective radius to 500 miles for Tier 1 events taking place on the same date. Id. An event producer wishing to obtain an exception to these rules must seek permission from the protected event producer and, if denied, may lodge an appeal with the USASF SC. Id. at 133:11- 134:2. The effect of these rules is to restrict new market entrants and foreclose competition from IEPs. Ex. 3 [Heeb Rep.] at ¶ 205 & n. 238; Ex. 14 [Peterson Dep.] at 129:14-130:24.

**Defendants' Response to 136:**  Plaintiffs' assertion is a legal conclusion, not a statement of fact, and thus Defendants need not respond.

Plaintiffs' cited material also does not support this asserted fact and therefore should be disregarded.  Specifically, Plaintiffs cited material does not mention anything about coordination between USASF and Varsity on this rule.  Pls.' Ex. 14 at 129:2-131:8.  The excerpt does not mention Varsity at all and instead explains the rule. *Id.*

In addition, Plaintiffs cite their expert's recitation and interpretation of documents, which is inadmissible.  Fed. R. Evid. 702, 403.

This statement does not create a material dispute of fact because, although the statement is not true and in that sense is "disputed," it is neither material nor supported by evidence and it accordingly should be disregarded.  However, it is undisputed only that USASF's Sanctioning Committee adopted the referenced rule by no later than 2012, prior to Varsity obtaining a majority of seats on that committee.  (*See* Pls.' Resp. to Defs.' SUF Nos. 126, 137)  And that an event producer wishing to obtain an exception to these rules must seek permission from the protected event producer and, if denied, may lodge an appeal with the USASF SC.

137.   Varsity and USASF actively coordinated to kill at least three proposals to protect Varsity's Summit event. Ex. 1 [Netz Rep. at 81 & n. 319; Ex. 139 at 3953 (8/2015, Varsity:  "The firestorm is coming. … Truth be known the Summit has destroyed our competitors and will continue to worsen with the D2 Summit. With our control of the BOD [Board of Directors] of the USASF we are clearly in the drivers [sic] seat.") (emphasis added); Ex. 140 [Chadwick Ex. 62] at 0643 (June 2018, Varsity:  "Today's USASF Board call should be uneventful. The only potential issue is Joelle's proposal to add Jr.s (sic) to Worlds. This is obviously not something we would want for a number of reasons including that it would negatively impact the Summit. Chadwick has agreed to have Peterson jump in after Joelle's presentation and state that he will add it to the World Advisory Committee meeting this summer. It will die there without us having to publicly oppose it.") (emphasis added); Ex. 141 at 3550 (4/2018).

**Defendants' Response to 137:**  Plaintiffs' cited material does not support this asserted fact and therefore should be disregarded.  *See* Pls.' Ex. 139 (citing Varsity-to-Varsity communication prior to the relevant time period that does not involve USASF); Pls.' Ex. 140

(citation to Varsity-to-Varsity communication that does not reflect that USASF coordinated with Varsity to protect the Summit); and Pls.' Ex. 141 (citation to Varsity-to-Varsity communication that does not reflect that USASF coordinated with Varsity to protect the Summits). The evidence cited by Plaintiffs, at best, shows that USASF had legitimate independent reasons for not wanting to offer Junior divisions or D2 divisions at Worlds. *See* Pls.' Ex. 15, Chadwick Dep. 221:12-19 (Our intent was to have the Super Bowl, not the junior Super Bowl . . . .).

In addition, Plaintiffs cite their expert's recitation and interpretation of documents, which is inadmissible. Fed. R. Evid. 702, 403.

This statement does not create a material dispute of fact because, although the statement is not true and in that sense is "disputed," it is not supported by evidence and it accordingly should be disregarded.

138.   USASF, Varsity, and Jeff Webb conspired to hurt Varsity's Cheer Apparel rivals. Ex. 178 at 0286-87 (3/3/2020).

**Defendants' Response to 138:** Plaintiffs' assertion is a legal conclusion, not a statement of fact, and thus Defendants need not respond.

In addition, Plaintiffs' cited material does not support this assertion and therefore should be disregarded. The only citation to the record is to an email between Jeff Webb and Jim Chadwick describing the penalties for violating preexisting apparel rules. *See* Pls.' Ex. 178. This is not evidence of any conspiracy, but merely reflects that USASF needed to explain what the penalties would be to the parties that would impose them, i.e., event producers like Varsity.

This statement does not create a material dispute of fact because, although the statement is not true and in that sense is "disputed," it is neither material nor supported by evidence and it accordingly should be disregarded.

139.   USASF set the rules regarding the cheer apparel that could be worn at All Star competitions to harm other apparel makers. Ex. 12 [Elza Dep.] at 112:8-14 ("Q: Is it fair to say that USASF rules govern what All Star cheerleaders may wear in USASF-sanctioned All Star competition? A: Yes, that's correct. Q: Varsity sells All Star apparel; is that right? A: Yes, that's correct.").

**Defendants' Response to 139:**  Plaintiffs' cited material does not support this asserted fact and therefore should be disregarded.  The excerpt cited does not mention the purpose behind USASF's apparel rules nor indicate that USASF's rules were set to "harm other apparel makers." *See* Pls.' Ex. 12.

Further, Plaintiffs concede that USASF's Image Policy (a) was adopted in 2012, (b) was developed through a collaborative process that included other cheerleading uniform companies, (c) is brand-agnostic, (d) was designed to help legitimize the sport and protect against athlete exploitation, and (e) provided adequate advance notice based on the purchase cycle for uniforms. (Pls.' Resp. to Defs.' SUF Nos. 147-154).

This statement does not create a material dispute of fact because, although the statement is not true and in that sense is "disputed," it is not supported by evidence and it accordingly should be disregarded.

140.   USASF allows Varsity personnel to have input into proposed apparel rule changes before non-Varsity apparel makers, giving Varsity a competitive advantage to make the required apparel in time for the new season's orders, while others did would not have time to get their compliant products to market in time for the event season. Ex. 1 [Netz Rep.] at 59 & n. 114. Ex. 175 at 7144 (11/27/2017); Ex. 190 at 9250 (2/24/2016); Ex. 191 at 6624-25 (6/22/2016); DX Ex. CS at 9789 (4/16/2019); Ex. 27 [Hill Dep.] at 177:2-177:21; Ex. 178 (3/3/2020); Ex. 200 at 9869 (02/25/2020).

**Defendants' Response to 140:**  Plaintiffs' cited material does not support this asserted fact and therefore should be disregarded.  *See*, Pls.' Ex. 175 (citing a communication regarding Worlds bids unrelated to apparel); Pls.' Ex. 190 (citing a Varsity-to-Varsity communication related to Worlds bids and not apparel from before the proposed class period); Pls.' Ex. 191

(citing a Varsity-to-Varsity communication regarding the process of selecting a non-voting seat on the Coaches' Committee of USASF and not apparel, from before the proposed class period); Pls.' Ex. 178 (citing an internal Varsity-to-Varsity communication commenting on USASF's explanation for penalties to be imposed on the Image Policy adopted in 2012); Pls.' Ex. 200 (citing a communication regarding requiring ambulances at sanctioned events and not apparel); Pls.' Ex. 27 (cited excerpt is entirely unrelated to apparel); Defs.' Ex. CS (cited communication is about adopting a policy unfavorable to Varsity for Worlds bids and not about apparel).

Plaintiffs also concede that USASF's Image Policy (a) was adopted in 2012, (b) was developed through a collaborative process that included other cheerleading uniform companies, (c) is brand-agnostic, (d) was designed to help legitimize the sport and protect against athlete exploitation, and (e) provided adequate advance notice based on the purchase cycle for uniforms. (Pls.' Resp. to Defs.' SUF Nos. 147-154).

In addition, Plaintiffs cite their expert's recitation and interpretation of documents, which is inadmissible.  Fed. R. Evid. 702, 403.

This statement does not create a material dispute of fact because, although the statement is not true and in that sense is "disputed," it is not supported by evidence and it accordingly should be disregarded.

141.    Varsity, Jeff Webb and USASF conspired to impose penalties on teams who did not adhere to its apparel guidelines. Ex. 1 [Netz Rep.] at 60-61; Ex. 178 at 0286-87.

**Defendants' Response to 141:**  Plaintiffs' assertion is a legal conclusion, not a statement of fact, and thus Defendants need not respond.

In addition, Plaintiffs' cited material does not support this assertion and therefore should be disregarded.  The only citation to the record is to an email between Jeff Webb and Jim

Chadwick describing the penalties for violating preexisting apparel rules. *See* Pls.' Ex. 178.

This is not evidence of any conspiracy but merely reflects that USASF needed to explain what

the penalties would be to the parties that would impose them, i.e., event producers like Varsity.

Plaintiffs' assertion rests on inadmissible expert testimony. *See* Netz Daubert Mot., ECF

No. 382-1.

This statement does not create a material dispute of fact because, although the statement

is not true and in that sense is "disputed," it is neither material nor supported by evidence and it

accordingly should be disregarded.

142. USASF conspired with Varsity and Webb to block Varsity's Cheer Apparel rivals from
displaying their apparel at competitions. Ex. 1 [Netz Rep.] at 57 & n. 229; Ex. 20 [Cota
Dep.] at 218:18-22; Ex. 151 at 1243 (2/1/2012); Ex. 152 at 4657-4658 (6/9/2020); Ex.
153 at 2613 (10/3/2018); Ex. 154 at 7155-56 (11/4/2019); Ex. 179 at 1873 (4/9/2013);
Ex. 180 at 0795 (6/24/2020); Ex. 181 at 1817-1818 (1/10/2017); Ex. 182 at 8422
(8/2/2017).

**Defendants' Response to 142:** Plaintiffs' assertion is a legal conclusion, not a statement

of fact, and thus Defendants need not respond.

Plaintiffs' assertion rests on inadmissible expert testimony. *See* Netz Daubert Mot., ECF

No. 382-1.

In addition, the other cited material does not support this assertion and therefore should

be disregarded. *See* Pls.' Ex. 20 (stating merely that she "d[id] not know [Varsity's] tactics" in

responding to Rebel in the apparel space and saying nothing regarding USASF); Pls.' Ex. 151

(pre-time period communication discussing Disney's rule against external vendors on its

property, not any policy of USASF or a "conspiracy to block apparel rivals" between USASF

and Varsity); Pls.' Ex.152 (inadmissible hearsay complaint from a gym owner about USASF's

prohibition against vendors (including Varsity) at its National Meeting (not a cheer

competition)); Pls.' Ex. 153 (Varsity-to-Varsity communication with no mention of USASF); Pls.' Ex. 154 (email regarding USASF's National Meeting (not a competition) at which USASF ultimately prohibited all vendors, including Varsity); Pls.' Ex. 179 (pre-time period Varsity-to-Varsity communication that does not reflect any conduct or knowledge of USASF or involve displaying apparel); Pls.' Ex. 180 ((inadmissible hearsay complaint from a gym owner about USASF's prohibition against vendors (including Varsity) at its National Meeting (not a cheer competition)); Pls.' Ex. 181 (Varsity-to-Varsity communication that does not reflect any action or knowledge of USASF or mention cheer competitions or cheer apparel); Pls.' Ex. 182 (Varsity-to-Varsity communication discussing Varsity's concerns with its lower contributing competitors exhibiting at regional meetings (not cheer competitions) and that does not reflect and conduct or knowledge of USASF).

This statement does not create a material dispute of fact because, although the statement is not true and in that sense is "disputed," it is neither material nor supported by evidence and it accordingly should be disregarded.

143. USASF conspired with Varsity to counterprogram Varsity events against non-Varsity events. See supra at ¶¶ 134-136; see also Ex. 1 [Netz Rep.] at 73-81; Ex. 27 [Hill Dep.] at 158:12-158:18; Ex. 143 at 8899 (2/24/2020).

**Defendants' Response to 143:** Plaintiffs' assertion is a legal conclusion, not a statement of fact, and thus Defendants need not respond.

In addition, Plaintiffs' cited material does not support this assertion and therefore should be disregarded. *See, e.g.*, Pls'. Ex. 143 (Varsity-to-Varsity communication regarding Varsity's unilateral strategy with no mention of USASF involvement in setting events or changing its rules

to assist Varsity); Pls.' Ex. 27 (excerpt discussing Varsity's unilateral strategy without reference to any conduct or participation of USASF).

Plaintiffs' assertion rests on inadmissible expert testimony. *See* Netz Daubert Mot., ECF No. 382-1.

This statement does not create a material dispute of fact because, although the statement is not true and in that sense is "disputed," it is neither material nor supported by evidence and it accordingly should be disregarded.

144.   USASF's insurance program harms non-Varsity event producers. Ex. 1 [Netz Rep.] at 53-54; Ex. 183; Ex. 184 at 8265; Ex. 185 at 0968.

**Defendants' Response to 144:**  Plaintiffs' cited material does not support this asserted fact and therefore should be disregarded. *See* Pls.' Ex. 183 (non-authenticated screenshot regarding an optional insurance policy offered by K&K Insurance to USASF member gyms); Pls.' Ex. 184 (minutes from before the proposed class period discussing the insurance provided to athletes as part of their USASF membership); Pls.' Ex. 185 (inadmissible hearsay merely discussing the existence of USASF's insurance provided to athletes as part of their membership).

Plaintiffs also appear to misunderstand USASF's "insurance program."  USASF's athlete insurance program was rolled out in 2014, before the relevant time period.  (CITE – VAR00259924).  For every athlete that paid to be a member of USASF, USASF would provide them accident insurance that applied at USASF-sanctioned competitions.  *Id.*  There is no evidentiary support for Plaintiffs' claim that USASF's athlete insurance program had anything to do with Varsity and harmed non-Varsity event producers.

In addition, Plaintiffs cite their expert's recitation and interpretation of documents, which is inadmissible.  Fed. R. Evid. 702, 403.

94

This statement does not create a material dispute of fact because, although the statement is not true and in that sense is "disputed," it is not supported by evidence and it accordingly should be disregarded.

145.   USASF and Varsity coordinated to kill proposals from IEPs that would have leveled the playing field for event producers to compete in the Cheer Competitions market. Ex. 1 [Netz Rep.] at 96; Ex. 2 [Netz Rebuttal] at 75; Ex. 139 at 3954 (8/7/2015); Ex. 187 at 3956-58 (7/25/2015); Ex. 188 at 0643 (6/1/2017).

**Defendants' Response to 145:**  "Level the playing field" is a speculative assertion by Plaintiffs, not a fact supported by evidence.  Additionally, Plaintiffs' cited material does not support this asserted fact and therefore should be disregarded.  *See* Pls.' Ex. 139 (pre-proposed class period communication not involving USASF); Pls.' Ex. 187 (pre-proposed class period communication not involving USASF); Pls.' Ex. 188 (Varsity-to-Varsity internal communication not involving USASF, which, at best, shows that USASF had legitimate independent reasons for not wanting to offer Junior divisions at Worlds and not that it "coordinated with Varsity to kill proposals from IEPs that would have leveled the playing field").  *Compare with* Pls.' Ex. 15, Chadwick Dep. 221:12-19 ("Our intent was to have the Super Bowl, not the junior Super Bowl . . . .").

In addition, Plaintiffs cite their expert's recitation and interpretation of documents, which is inadmissible.  Fed. R. Evid. 702, 403.

This statement does not create a material dispute of fact because, although the statement is not true and in that sense is "disputed," it is not supported by evidence and it accordingly should be disregarded.

146.    USASF rejected proposed rule changes that would have reduced Varsity's influence in the sanctioning body, failing to protect its members. Ex. 1 [Netz Rep.] at 96; Ex. 2 [Netz Rebuttal] at 75, 82-83; Ex. 14 [Peterson Dep.] at 345:174-346:6; Ex. 15 [Chadwick Dep.] at 125:12-126:18, 164:3-165:12, 235:22-236:9; Ex. 139 at 3954 (8/7/2015); Ex. 152 at 4656-60 (6/9/2020); Ex. 176 (4/28/2020); Ex. 186 (5/20/2013); Ex. 187 at 3956-58 (7/25/2015).

**Defendants' Response to 146:**  Plaintiffs statement is a speculative assertion, not a fact supported by evidence.  Further, Plaintiffs' cited material does not support this asserted fact and therefore should be disregarded.  *See* Pls.' Ex. 139 (pre-proposed class period communication not involving USASF); Pls.' Ex.152 (inadmissible hearsay complaint from a gym owner about USASF's prohibition against vendors (including Varsity) at its National Meeting); Pls.' Ex. 176 (citation to email suggesting tension between Varsity and USASF inconsistent with the alleged conspiracy and unrelated to setting rules that favor Varsity); Pls.' Ex. 187 (pre-proposed class period communication not involving USASF); Pls.' Ex. 14 (testifying that "there was never a proposal made" and not that USASF "rejected" proposed rule changes); Pls.' Ex. 15 (similarly testifying that "[i]t never came up" and not that USASF "rejected" proposed rule changes).

In addition, Plaintiffs cite their expert's recitation and interpretation of documents, which is inadmissible.  Fed. R. Evid. 702, 403.

This statement does not create a material dispute of fact because, although the statement is not true and in that sense is "disputed," it is not supported by evidence and it accordingly should be disregarded.

147.    USASF's participation in the conspiracy and anticompetitive acts in furtherance were overt and intentional. Ex 1 [Netz Rep.] at 65-89; Ex. 2 [Netz Rebuttal] at 73-85; Ex. 27 [Hill Dep.] at 177:2-177:21; Ex. 63 at 7472-76 (12/10/2018); Ex. 81 at 6147-48 (4/17/2014); Ex. 105 at 9924-25 (4/2018); Ex. 131 at 6147-48 (8/4/2017); Ex. 132 at 4139 (9/22/2017); Ex. 133; Ex. 134 at 5110 (3/11/2019); Ex. 135 at 6431 (3/22/2019); Ex. 137 at 4153 (2/13/2018); Ex. 142 (12/11/2017); Ex. 143 at 8899 (2/24/2020); Ex. 152 at 4656-58 (6/9/2020); Ex. 176 at 9027-29 (4/28/2020); Ex. 193 at 0022; Ex. 194 at 5124;

Ex. 195 at 7455 (4/19/2017). Ex. 196 at 2969 (5/15/2020); Ex. 197 at 2846-47
(9/8/2016); Ex. 198 (2/21/2020); Ex. 199 at 9034-35 (5/2/2020); DX Ex. CS (4/16/2019).

**Defendants' Response to 147:** Plaintiffs' assertion is a legal conclusion, not a statement

of fact, and thus Defendants need not respond.

Further, Plaintiffs' cited material does not support this assertion and therefore should be

disregarded.  *See* Pls.' Ex. 27 (cited excerpt merely shows that Varsity "knew where to go and

who to ask" if they had an initiative they wanted to raise to USASF but not that USASF

"conspired" or engaged in any overt act); Pls.' Ex. 63 (inadmissible hearsay complaints of

unidentified coaches and gym owners that do not reflect any actions taken by USASF); Pls.' Ex.

81 (pre-period document merely setting out USASF's tiers of EP membership); Pls.' Ex. 105

(internal Varsity documents not reflecting any involvement of USASF); Pls.' Ex. 131 (citing

hearsay letter from IEP complaining of unilateral conduct by Varsity); Pls.' Ex. 132 (citing

Varsity-to-Varsity conversation not including USASF); Pls.' Ex. 133 (2011 letter that predates

the relevant time period and is subject to evidentiary issues (*see* Defs.' Objs. to Pls.' Exhibits),

which at most shows a rule prohibiting USASF members from participating in an unapproved

"World" championship event without any coordination with Varsity); Pls.' Ex. 134 (unhelpful

citation to document regarding USASF's mere application of preexisting rules and regarding EPs

on probation that never lost their Worlds bids); Pls.' Ex. 135 (same); Pls.' Ex. 137 (unhelpful

citation to document regarding USASF's mere application of preexisting rules and containing

hearsay complaint from EP regarding Varsity's unilateral conduct); Pls.' Ex. 142 (USASF

company membership agreement containing language from at least 2012 requiring USASF's EP

members to conduct competitions in accordance with USASF's sanctioning standards); Pls.'

143 (citation to Varsity-to-Varsity email not concerning coordination on rule); Pls.' Ex. 152

((inadmissible hearsay complaint  from a gym owner about USASF's prohibition against vendors

(including Varsity) at its National Meeting); Pls.' Ex. 176 (email suggesting tension between Varsity and USASF inconsistent with the alleged conspiracy and unrelated to setting Worlds bid rules that favor Varsity); Pls.' Ex. 193 (internal Varsity presentation not involving USASF); Pls.' Ex. 194 (email merely acknowledging Varsity's acquisition, which does not reflect coordination with Varsity or any conspiracy); Pls.' Ex. 195 (internal Varsity-to-Varsity email regarding a proposal made to USASF, which was never adopted (of note, this proposal reflects Varsity requesting D2 divisions at Worlds, but elsewhere Plaintiffs' fault USASF for rejecting a proposal to have D2 divisions at Worlds)); Pls.' Ex. 196 (hearsay email from third-party event producer complaining about unilateral conduct by Varsity); Pls.' Ex. 197 (internal Varsity-to-Varsity communication predating the proposed class period that does not involve USASF); Pls.' Ex. 198 (expressly stating that "Varsity has no part in the officiating and judges selection at Worlds" and merely helps with "logistically manag[ing] the event at Disney"); Pls.' Ex. 199 (hearsay email from third-party complaining about USASF's application of its preexisting priority rules for Worlds bid events); and Defs.' Ex. CS (cited communication is about adopting a policy unfavorable to Varsity for Worlds bids).

Additionally, Plaintiffs' assertion rests on inadmissible expert testimony. *See* Netz Daubert Mot., ECF No. 382-1.

This statement does not create a material dispute of fact because, although the statement is not true and in that sense is "disputed," it is neither material nor supported by evidence and it accordingly should be disregarded.

148.    As CEO, Webb drove nearly all of Varsity's acquisitions, and its strategy to aggressively acquire rivals. See supra § V.A.; see also Ex. 94; Ex. 95; Ex. 121 at 5396; Ex. 212 (9/9/2017, Webb stating that he would tell Chadwick (USASF): "some things are going to have to be different in that we are tired of making our competitors successful and then having to overpay for them.").

**Defendants' Response to 148:**  Plaintiffs' cited material does not support this asserted fact and therefore should be disregarded.  The cited material does not relate to Mr. Webb's role with respect to acquisitions, much less support a claim that he "drove nearly all Varsity's acquisitions" or its strategy regarding acquisitions.  *See, e.g.*, Pls.' Ex. 94 (an excerpt from Mr. Webb's book that does not mention acquisitions); Pls.' Ex. 95 (a third-party's email about Mr. Webb's book that does not mention acquisitions); Pls.' Ex. 121 (Varsity Board meeting slide that does not reflect Mr. Webb's role in any acquisitions); and Pls.' Ex. 212 (email about potential conversation with the USASF President and does not reflect Mr. Webb's role in acquisitions).

This statement does not create a material dispute of fact because, although the statement is not true and in that sense is "disputed," it is not supported by evidence and it accordingly should be disregarded.

149.   While CEO, Webb had operational authority over every aspect of Varsity, including its exclusionary contracts and rebate programs, such as the Varsity Family Plan and Varsity Network Agreements, and Varsity's other loyalty programs. Ex. 1 [Netz Rep.] at 7 & n. 188, n. 234. Webb had a hand in directing the number of events a gym should be required to attend to receive a rebate under the Family Plan. Ex. 10 at 153:22-154:7.

**Defendants' Response to 149:**  Plaintiffs fail to support their asserted fact with admissible evidence; instead, they cite  their expert's recitation and interpretation of documents, which is inadmissible. Fed. R. Evid. 702, 403.

Moreover, Plaintiffs' cited material does not support this asserted fact and therefore should be disregarded.  The material Plaintiffs cite does not discuss Mr. Webb's "operational authority," if any, at Varsity, much less show operational authority over "every aspect of Varsity."  Nor does the cited evidence relate in any way to Webb's involvement in rebate or loyalty programs, such as the Varsity Family Plan or Varsity Network Agreements.  See Pls.' Ex.

1 at 7 & n. 188, n. 234 (reciting biographical background facts and otherwise citing evidence unrelated to Mr. Webb or his role).

The cited testimony also does not speak to the number of events a gym should be required to attend, much less that Mr. Webb was involved in directing the number of events any gym should be required to attend.  See Pls.' Ex. 10 at 153:22-154:7 (when asked if Varsity experienced an increase in participation as a result of the Varsity Family Plan, Mr. Webb responded, "I don't really know.").

In addition, Plaintiffs cite their expert's recitation and interpretation of documents, which is inadmissible.  Fed. R. Evid. 702, 403.

This statement does not create a material dispute of fact because, although the statement is not true and in that sense is "disputed," it is not supported by evidence and it accordingly should be disregarded.


150.   Webb conspired with USASF to set USASF's rules to favor Varsity, and to counterprogram events specifically to hurt Varsity's competitors. See supra at ¶¶ 133-134, 138, 141-142, 147.

**Defendants' Response to 150:**  Plaintiffs' assertion is a legal conclusion, not a statement of fact, and thus Defendants need not respond.

Plaintiffs' assertion rests on inadmissible expert testimony.  *See* Netz Daubert Mot., ECF No. 382-1; Heeb Daubert Mot., ECF No. 388-1.

In addition, Plaintiffs' cited evidence does not support this purported asserted fact and therefore should be disregarded.  *See supra* responses to Pls.' SUF Nos. 133-134, 138, 141-42, and 147.

100

Additionally, of the many exhibits Plaintiffs cite only seven mention Mr. Webb in any way, and none of those support Plaintiffs' purported assertion that Mr. Webb conspired with USASF with respect to rules and "to counterprogram events." *See* Pls.' Ex. 129 (reflecting a handful edits to a document suggesting changes to USASF, none of which were implemented) Pls.' Ex. 132 (an internal Varsity email, that does not include Mr. Webb, where an employee speculates as to Mr. Webb's belief about wanting the "USASF Worlds Bid process changed"); Pls.' Ex. 152 (Mr. Webb forwarding an email about a lawsuit filed against Varsity to Bill Seely and saying "let's discuss tomorrow."); Pls.' Ex. 178 (Mr. Webb saying "let's discuss" in reference to email stating penalties for uniform violations); Pls.' Ex. 179 (an internal Varsity email from 2013 unrelated to setting USASF rules or alleged counterprogramming); Pls.' Ex. 180 (stating only that Mr. Webb was copied on an email forwarding a recently filed lawsuit); Pls.' Ex. 197 (Mr. Webb merely responding "very thoughtful and very helpful" to a long, internal Varsity email); Defs.' Ex. CS (communication indicating Mr. Webb supporting non-Varsity event producers being added as "Worlds bid givers" would not "favor Varsity") .

With respect to the exhibits discussing changes to USASF (Plaintiffs' Exhibits 129), there is no evidence that any of the suggested changes were implemented. *See, e.g.*, Pls.' Ex. 24, Fowlkes Dep. 309:5-311:7 ("Some of the things that are in [Plaintiffs' Exhibit 129] they were to continue, continued. But in terms of major changes to what we were doing, . . . they were never implemented.").

Nor is there evidence that Jeff Fowlkes, the Varsity employee who drafted the email in Plaintiffs' Exhibit 132 was correct in his speculation about Mr. Webb's beliefs. *See, e.g.*, Pls.' Ex. 13, LeTard Dep. at 353:3-25 (denying ever hearing Mr. Webb say he wanted to "prevent small competitors from being allowed to offer Worlds Bids."); Pls.' Ex. 12, Elza Dep. at 182:18-

183:11 (denying ever hearing Mr. Webb say he wanted to "prevent small competitors from being allowed to offer Worlds Bids.").

This statement does not create a material dispute of fact because, although the statement is not true and in that sense is "disputed," it is neither material nor supported by evidence and it accordingly should be disregarded.

151.   Webb actively participated in and directed USASF's efforts to exclude non- Varsity Cheer Apparel vendors from USASF and Varsity-sanctioned events. See supra at ¶¶ 141-142.

**Defendants' Response to 151:**  Plaintiffs' cited evidence does not support this asserted fact and therefore should be disregarded.  Pls.' SUF Nos. 141-142 both assert legal conclusions, not statements of fact, and thus cannot support this assertion. *See supra* responses to Pls.' SUF Nos. 141-142.  In addition, Plaintiffs' additional cited evidence does not support this asserted fact and therefore should be disregarded.  None of the evidence cited in Pls.' SUF Nos. 141-142 shows that Mr. Webb actively participated in or directed efforts to exclude non-Varsity apparel vendors from USASF and Varsity-sanctioned events.

Plaintiffs' assertion rests on inadmissible expert testimony.  *See* Netz Daubert Mot., ECF No. 382-1.

This statement does not create a material dispute of fact because, although the statement is not true and in that sense is "disputed," it is not supported by evidence and it accordingly should be disregarded.

152.   Webb was the architect of Varsity's Squad Credentialing Program. Ex. 113 at 9874 (1/6/2015); Ex. 111 at (2/11/2019); Ex. 206 (11/13/2019).

**Defendants' Response to 152:**  Plaintiffs' cited evidence does not support this asserted

fact and therefore should be disregarded.  None of the evidence cited reflects Mr. Webb's

involvement in the Squad Credentialing Program, much less show him as the "architect."  Of the

evidence Plaintiffs cite, Mr. Webb is only even on or mentioned in one document, which does

not support a claim that Mr. Webb was the "architect" of the Program.  *See* Pls.' Ex. 113 (Mr.

Webb and others receives an email that says, among other things, that there will be a

credentialing requirement to participate in any national championship.)


This statement does not create a material dispute of fact because, although the statement

is not true and in that sense is "disputed," it is not supported by evidence and it accordingly

should be disregarded.

153.    After Webb left his CEO position at Varsity on or about March 2, 2016, Webb continued
        at Varsity with various titles, including as a consultant, Board Member, Founder and
        Chairman of Varsity Spirit. Ex. 207 at 0922 (3/2/2016); Ex. 208 at 0618-19 (12/1/2020).
        Ex. 67 at 4379-42 (9/22/2016); Ex. 66 at 5074-78 (3/2/2018).

    **Defendants' Response to 153:**  Undisputed for purposes of summary judgment only.

154.    After March 2, 2016, Webb continued to be deeply involved in the day-to-day operations
        of Varsity. Ex. 15 [Chadwick Dep.] at 386:12-25 (Webb was someone Chadwick called
        on for advice about how to run USASF's affairs, as often as weekly); Ex. 20 [Cota Dep.]
        at 310:24-311:7 (testified Webb was involved with Varsity affairs after 2016); Ex. 34
        [Lauchaire Dep.] at 189:9-16 (testified Webb was part of the leadership team as of
        October 2017); Ex. 211 at 5527 (1/26/2017, Charlesbank Email: "we can certainly
        underscore for Jeff that this does not change his role one iota").

    **Defendants' Response to 154:**  Plaintiffs' cited material does not support this asserted

fact and therefore should be disregarded.  See Pls.' Ex. 15 (merely states that USASF President

Jim Chadwick would talk to Mr. Webb "on an as-needed basis, maybe sometimes weekly,

maybe sometimes once a month or every six months" because Mr. Webb was "[v]ery

knowledgeable, a great advisor, seemed to be able to provide me insights that I was not able to
reach on my own." It does not say he called Mr. Webb for advice about how to run USASF's
affairs.) Far from supporting the statement, Plaintiffs' Exhibit 211 demonstrates Mr. Webb's
reduced authority and involvement in Varsity's operations. See Pls.' Ex. 211 (Andrew Janower
telling interim CEO Neil Kalvelage, "[Jeff] absolutely cannot operate around you, and whatever
ground rules he had with [CEO] Matt [Rubel] he needs to continue to abide by. That doesn't
preclude you from keeping him in the loop, but it does suggest that you need to be clear about
your expectations for his behavior and to call him out (politely) when he crosses the line.") See
also Pls.' Ex. 31 Kalvelage Dep. at 125:7-132:9.

This statement does not create a material dispute of fact because, although the statement
is not true and in that sense is "disputed," it is not supported by evidence and it accordingly
should be disregarded.

155.   After March 2, 2016, Webb actively participated in decision-making at Varsity through
       his seat and role as Chairman of the Varsity Board, and as a member of the Varsity Spirit
       Board. For example, as part of the Varsity Board, Webb had responsibility to approve or
       disprove all acquisitions over $5 million, and his further influence over the board's votes
       as Chairman of that Board further demonstrates his continued involvement and influence
       over Varsity's acquisitions. See supra at ¶ 153; see also Ex. 213 (approval matrix).

**Defendants' Response to 155:** Plaintiffs' cited material does not support this asserted

fact and therefore should be disregarded. None of the cited exhibits support Plaintiffs' claim that

Mr. Webb "actively participated in decision-making at Varsity" after March 2, 2016. Pls.' SUF

No. 153 merely recites Mr. Webb's titles at Varsity after March 2, 2016. There is no Varsity

Spirit Board. *See* Defs.' Ex. DD ("Founder and Chairman of Varsity Spirit [Obviously there is

no Spirit board, so a meaningless title, and he is the Founder of Spirit]") (alterations in original).

Plaintiffs' Exhibit 213 merely shows that Varsity Brands Board of Directors' approval, along

with several other individuals, is required for acquisitions over $5 million.  It does not show that Mr. Webb any "further influence over the board's votes as Chairman of that Board," and Plaintiffs do not have any evidence to support such a statement.

This statement does not create a material dispute of fact because, although the statement is not true and in that sense is "disputed," it is not supported by evidence and it accordingly should be disregarded.

156.   Webb's overt acts in furtherance of the conspiracy were constantly occurring between before and after March 2, 2016. See supra at ¶¶ 133-134, 138, 141-142, 147, 150-151, 154; see also Ex. 1 [Netz Rep.] at 60, 71-72 & n. 240; Ex. 121 at 5396 (2017); Ex. 102 at 7 (2/24/2016); Ex. 139 at 3953 (8/7/2015).

**Defendants' Response to 156:**  Plaintiffs' assertion is a legal conclusion, not a statement of fact, and thus Defendants need not respond.

In addition, Plaintiffs' additional cited material does not support this purported asserted fact and therefore should be disregarded.  *See supra* responses to Plfs.' SUF Nos. 133-134, 138, 141-42, 147, 150 - 151, and 154.  None of the cited evidence identifies any "overt act" by Mr. Webb, much less that they were "constantly occurring" "before and after March 2, 2016."

Plaintiffs' assertion rests on inadmissible expert testimony.  *See* Netz Daubert Mot., ECF No. 382-1.

This statement does not create a material dispute of fact because, although the statement is not true and in that sense is "disputed," it is neither material nor supported by evidence and it accordingly should be disregarded.

157.   After March 2, 2016, Webb continued to conspire with USASF to foreclose Varsity's Cheer Competition rivals. Ex. 1 [Netz Rep.] at 71-72; Ex. 132 at 4139; Ex. 178 at 0286-87.

**Defendants' Response to 157:**  Plaintiffs' assertion is a legal conclusion, not a statement of fact, and thus Defendants need not respond.

In addition, Plaintiffs' cited evidence does not support this purported asserted fact and therefore should be disregarded.  *See* Pls.' Ex. 132 (an internal Varsity email, that does not include Mr. Webb, where an employee speculates as to Mr. Webb's belief about wanting the "USASF Worlds Bid process changed," but no evidence that any such changes were made); Pls.' Ex. 178 (Mr. Webb merely saying "let's discuss" in response to an email relaying penalties for uniform violations, having nothing to do with cheer competitions).

Plaintiffs' assertion rests on inadmissible expert testimony.  *See Netz* Daubert Mot., ECF No. 382-1.

This statement does not create a material dispute of fact because, although the statement is not true and in that sense is "disputed," it is neither material nor supported by evidence and it accordingly should be disregarded.

158.   After March 2, 2016, Webb continued to conspire with USASF regarding setting Worlds bid rules and other USASF rules to favor Varsity and to foreclose or disadvantage Varsity's competitors. See supra at ¶¶ 133-134, 138, 141-142, 147, 150-151, 154.

**Defendants' Response to 158:**  Plaintiffs' assertion is a legal conclusion, not a statement of fact, and thus Defendants need not respond.

In addition, Plaintiffs' cited evidence does not support this purported asserted fact and therefore should be disregarded.  *See supra* Responses to Pls.' SUF Nos. 133-134, 138, 141-42, 147, 150 - 151, and 154.

Plaintiffs' assertion rests on inadmissible expert testimony.  *See Netz* Daubert Mot., ECF No. 382-1; Heeb Daubert Mot., ECF No. 388-1.

This statement does not create a material dispute of fact because, although the statement is not true and in that sense is "disputed," it is neither material nor supported by evidence and it accordingly should be disregarded.

159.   After March 2, 2016, Webb continued to be involved in counterprogramming of events with the specific intent to hurt Varsity's competitors' events. See supra at ¶¶ 109-113, 134; see also Ex. 144 at 4423 (4/24/2017).

**Defendants' Response to 159:**  Plaintiffs' assertion is a legal conclusion, not a statement of fact, and thus Defendants need not respond.

Plaintiffs' cited evidence does not support this asserted fact and therefore should be disregarded.  *See supra* responses to Pls.' SUF Nos. 109-113, 134.

Moreover, of the many exhibits Plaintiffs cite in the six paragraphs of their SUF, only three relate to Mr. Webb in any way, and none of those support Plaintiffs' purported assertion that Mr. Webb was "involved in counterprogramming of events."  *See* Pls.' Ex. 132 (having nothing to do with alleged "counterprogramming"); Pls.' Ex. 144 (recounting an informal conversation with Mr. Webb in which he allegedly vaguely recommended to a colleague to "do all we can" to apply pressure on another event producer); and Pls.' Ex. 150 (Mr. Webb merely copied on email along with ten other Varsity employees regarding the dates and locations of Varsity events and a competitors.  Mr. Webb does not respond to this email.).

This statement does not create a material dispute of fact because, although the statement is not true and in that sense is "disputed," it is neither material nor supported by evidence and it accordingly should be disregarded.

160.   Webb continues to participate in anticompetitive acts to foreclose Varsity's Cheer Apparel rivals. See supra at ¶¶ 113-114, 130, 141-142; see also Ex. 214 at 2438.

**Defendants' Response to 160:**  Plaintiffs' assertion is a legal conclusion, not a statement of fact, and thus Defendants need not respond.

In addition, Plaintiffs' cited material does not support the claim that Mr. Webb "continues to participate" in any "anticompetitive acts to foreclose Varsity's Cheer Apparel rivals" and therefore should be disregarded.  *See supra* Responses to Pls.' SUF Nos. 113-114, 130, and 141-142.

Moreover, of the many exhibits Plaintiffs cite in the five paragraphs of their SUF, only three relate to Mr. Webb in any way, and none of those support Plaintiffs' purported assertion that Mr. Webb "continues to participate in anticompetitive acts to foreclose Varsity's Cheer Apparel rivals."  *See, e.g.*, Pls.' Ex. 152, 180 (reflecting Mr. Webb receiving email relating to 2020 lawsuit filed against Varsity); Pls.' Ex. 173 (vague statement in email claiming that "Jeff is hot on taking down Rebel right now," but not showing any involvement by Mr. Webb); Pls.' Ex. 178 (Mr. Webb just saying "let's discuss" regarding penalties for uniform violations); Pls.' Ex. 179 (pre-time period email that does not discuss apparel business); and Pls.' Ex. 214 (reflecting an inquiry from Mr. Webb regarding another company soliciting at venues hosting Varsity events, without evidence that any competitor was excluded or foreclosed).

Plaintiffs' assertion rests on inadmissible expert testimony.  *See* Netz Daubert Mot., ECF No. 382-1.

This statement does not create a material dispute of fact because, although the statement is not true and in that sense is "disputed," it is neither material nor supported by evidence and it accordingly should be disregarded.

161.   Webb personally profited from Varsity's willful acquisition and abuse of monopoly power and continues to profit to this day. For example, when Charlesbank was sold to Bain, a list of Common Stock Value shows that Jeff Webb had a Common Stock total of

██████████ Ex. 215 (Varsity Cap Table Summary); Ex. 216 (re Phantom Unit Plan plan).

**Defendants' Response to 161:** Plaintiffs' assertion is a legal conclusion, not a statement of fact, and thus Defendants need not respond.

In addition, Plaintiffs' cited material does not support the purported assertion that Mr. Webb personally profited from alleged monopoly power. Rather the cited evidence is only proof that Mr. Webb held Varsity stock. *See* Pls.' Ex. 215 (Varsity Cap Table Summary); Pls.' Ex. 216 (showing Varsity Brands Phantom Units held by Varsity employees).

This statement does not create a material dispute of fact because, although the statement is not true and in that sense is "disputed," it is neither material nor supported by evidence and it accordingly should be disregarded.

162.   Jeff Webb is currently serving as President of the International Cheer Union ("ICU"), a title he has held since it was founded in 2007. Ex. 1 [Netz Report] at 23 & n. 89, 36.

**Defendants' Response to 162:** Undisputed for purposes of summary judgment only.

163.   Webb leveraged his role as President of ICU to establish Competitive Cheer as an Olympic sport to further his own, Varsity's and USASF's profits. Ex. 163 at 4354 ("Jeff was over in Switzerland and he was more hopeful that the IOC might recognize cheerleading. If that happens, then the countries will fund it. Money will flow to the sport and it could grow the business internationally."); Ex. 209 at 1327; Ex. 210 at 1172; Ex. 208 at 0656. Most of the ICU's annual revenue has come from hosting Worlds in conjunction with USASF, from which Webb profited. Ex. 1 [Netz Report] at 85-87 & n.143.

**Defendants' Response to 163:** Plaintiffs cited evidence does not support this asserted fact and therefore should be disregarded. *See, e.g.*, Pls.' Ex. 163 (email from Brandon White to himself giving his own thoughts on potential growth of the business due to IOC recognition); Pls.' Ex. 208 (Mr. Webb's Separation and Consulting Agreement) Pls.' Ex. 208 at 0656

(reflecting Mr. Webb would continue as President of the ICU after stepping down as Varsity's
CEO); Pls.' Ex. 209 (an email with a version of Mr. Webb's bio); Pls.' Ex. 210 (email about
political event with Mr. Webb's bio

Moreover, Plaintiffs cited material does not support this asserted fact and therefore
should be disregarded.  While the cited excerpt of the Netz Report discusses the ICU, it is silent
with respect to the ICU's annual revenue coming from hosting Worlds, and it says nothing about
Mr. Webb profiting from the event.

In addition, Plaintiffs' assertion rests on inadmissible expert testimony.  *See* Netz Daubert
Mot., ECF No. 382-1.

This statement does not create a material dispute of fact because, although the statement
is not true and in that sense is "disputed," it is not supported by evidence and it accordingly
should be disregarded.

164.   In December 2014, Charlesbank purchased Varsity for $1.5 billion, including both
       Varsity Brands, Inc. and Varsity Spirit, Inc., which Charlesbank subsequently converted
       to LLCs, owned and controlled by Charlesbank. Ex. 218.

**Defendants' Response to 164:**  Plaintiffs' assertion is not material because it does not
affect the outcome of Defendants' Motion, as Plaintiffs do not even cite it in their Opposition.

In addition, Plaintiffs' cited evidence does not support this asserted fact and therefore
should be disregarded.  Plaintiffs' Exhibit 218 does not state that Charlesbank purchased Varsity
for $1.5 billion and does not state that Charlesbank converted Varsity entities to LLCs owned
and controlled by Charlesbank.

This statement does not create a material dispute of fact because, although the statement is not true and in that sense is "disputed," it is neither material nor supported by evidence and it accordingly should be disregarded.

165.   After entering into a definitive purchase agreement with Varsity in November 2014, Charlesbank stated that the transaction represented the "culmination of a deliberate and comprehensive process overseen by the Board of Directors to help ensure that Varsity Brands has the capital structure, resources, and financial flexibility to build on its presence in these markets." Ex. 219 at 1.

**Defendants' Response to 165:**  Plaintiffs' assertion is not material because it does not affect the outcome of Defendants' Motion, as Plaintiffs do not even cite it in their Opposition. For completeness, the document states that the transaction represented the "culmination of a deliberate and comprehensive process overseen by the Board of Directors to help ensure that Varsity Brands has the capital structure, resources, and financial flexibility to build on its presence in these markets *while delivering on its mission to elevate school pride and student achievement*."  Pls.' Ex. 219 (emphasis added)

Plaintiffs' asserted fact is immaterial and need not be decided to resolve Defendants' Motion, but it is undisputed for purposes of this Motion only.

166.   Charlesbank purchased Varsity only after extensive due diligence into every aspect of its operations, including its divisions, its sales, its market shares, its structure, and its policies and programs. Ex. 1 [Netz Rep.] at 9 & n. 22; Ex. 97 at 5805-06, 5810, 5855-76, 5882; Ex. 29 [Charlesbank 30(b)(6) Dep.] at 20:10-23:24 (Charlesbank was "involved in the prior sale processes for Varsity in both 2002 and 2011" and had made an offer to purchase Varsity in 2011).

**Defendants' Response to 166:**  Plaintiffs' assertion is not material because it does not affect the outcome of Defendants' Motion, as Plaintiffs do not even cite it in their Opposition.

In addition, Plaintiffs' cited material does not support this asserted fact and therefore should be disregarded. The exhibits do not support that Charlesbank conducted extensive due diligence into "every aspect of [Varsity's] operations." The cited portions of Plaintiffs' Exhibit 1 simply assert without support that "Documents produced in this litigation show that both prior to and after purchasing Varsity, Charlesbank did due diligence regarding the entirety of Varsity's business." Plaintiffs' Exhibit 29 supports only that Charlesbank was involved in prior sales of Varsity. Plaintiffs' Exhibit 97 is a single document describing aspects of Varsity's business.

In addition, Plaintiffs cite their expert's recitation and interpretation of documents, which is inadmissible. Fed. R. Evid. 702, 403.

This statement does not create a material dispute of fact because, although the statement is not true and in that sense is "disputed," it is neither material nor supported by evidence and it accordingly should be disregarded.

167.   While owner of Varsity, Charlesbank maintained an "intense and regular involvement" in Varsity's day-to-day operations. Ex. 1 [Netz Rep.] at 9-10 & n. 16, 24-25; Ex. 5 [Aronoff Rep.] at ¶¶ 38-43; Ex. 224 at 4517 (Charlesbank maintained "intense and regular involvement in each portfolio company."); Ex. 225 at 1541 (Charlesbank believed that Webb was "uncomfortable and unhappy with the level of engagement [it] want[ed] in the business."). Charlesbank set board agendas, shaped strategy, interviewed key new hires, and interacted with operating executives on specific projects. Ex. 226 at 4258-59; Ex. 227.

**Defendants' Response to 167:**  Plaintiffs' assertion is not material because it does not affect the outcome of Defendants' Motion, as Plaintiffs do not even cite it in their Opposition.

In addition, Plaintiffs' cited material does not support this asserted fact and therefore should be disregarded. Plaintiffs' Exhibit 224 is a general due diligence questionnaire, and the quoted language does not refer to Varsity. Plaintiffs' Exhibit 225 does not identify any specific

"involvement" that Charlesbank purportedly had in Varsity's operations.  Plaintiffs' Exhibit 226 simply reflects Varsity board discussions of compensation issues.

In addition, Plaintiffs cite their expert's recitation and interpretation of documents, which is inadmissible.  Fed. R. Evid. 702, 403.

This statement does not create a material dispute of fact because, although the statement is not true and in that sense is "disputed," it is neither material nor supported by evidence and it accordingly should be disregarded.

168.   Charlesbank used its operational control to fire Webb as CEO and negotiate with him on his new position and title. Ex. 225 at 1541 (January 2016, Charlesbank personnel discussed meeting Mr. Webb in New York to terminate his position as CEO: "He [Mr. Webb] is going to be very on edge that we have summoned him to New York alone to fire him."); Ex. 10 [Webb Dep.] at 186:17-187:6.

**Defendants' Response to 168:**  Plaintiffs' assertion is not material because it does not affect the outcome of Defendants' Motion, as Plaintiffs do not even cite it in their Opposition. Further, Plaintiffs' assertion is not material because it reflects ordinary management activity.

This statement does not create a material dispute of fact because, although the statement is not true and in that sense is "disputed," it is not material and it accordingly should be disregarded.

169.   While at the helm of Varsity, Charlesbank controlled the Varsity Board. It held ███████ ███████ on Varsity's Board and had "significant influence" over a ████ "independent" seat. Ex. 28 [Janower Dep.] at 251:15-251:23. Ex. 69 at 7068; Ex. 10 [Webb Dep.] at 343:3-6 ("Charlesbank ... were in control of the board").

**Defendants' Response to 169:**  Plaintiffs' assertion is not material because it does not affect the outcome of Defendants' Motion, as Plaintiffs do not even cite it in their Opposition.

In addition, Plaintiffs' cited evidence does not support this asserted fact and therefore should be disregarded.  It is undisputed, for purposes of this Motion only, that "Charlesbank-affiliated individuals served on the board of managers of the Varsity Defendants' parent company beginning in 2014."  Defs.' SUF No. 231  (emphasis added).

This statement does not create a material dispute of fact because, although the statement is not true and in that sense is "disputed," it is neither material nor supported by evidence and it accordingly should be disregarded.


170.   Charlesbank has been involved in the exclusionary scheme since 2014 when it acquired Varsity and provided the necessary funding for Varsity "to enhance, extend, and ensure [its] monopoly power" as Varsity "acquired [its] biggest rivals. Ex. 1 [Netz Rep.] at 3; Ex. 29 [Charlesbank Dep.] at 54:20-55:3 (Charlesbank "owned the controlling interest in [Varsity] between 2014 and the Bain Capital transaction").

**Defendants' Response to 170:**  Plaintiffs' assertion is not material because it does not affect the outcome of Defendants' Motion, as Plaintiffs do not even cite it in their Opposition.

Plaintiffs' assertion is a legal conclusion, not a statement of fact, and thus Defendants need not respond.

Plaintiffs' assertion rests on inadmissible expert testimony.  *See* Netz Daubert Mot., ECF No. 382-1.

In addition, Plaintiffs' cited material does not support this asserted fact and therefore should be disregarded.  The cited portion of Plaintiffs' Exhibit 1 is an "Executive Summary" of an expert report that asserts without evidence that Charlesbank "acted cooperatively to acquire, enhance, and maintain Varsity's market power."  The quoted portions of Plaintiffs' Exhibit 29 support only that Charlesbank-advised funds owned a controlling interest in Varsity's parent company; this exhibit says nothing about providing funding for any purpose.

This statement does not create a material dispute of fact because, although the statement is not true and in that sense is "disputed," it is neither material nor supported by evidence and it accordingly should be disregarded.

171.    While owner of Varsity, Charlesbank approved and facilitated Varsity's acquisitions of nearly all of its largest rivals. Ex. 1 [Netz Rep.] at 10 & n. 24; Ex. 2 [Netz Rebuttal at RR-7 (chart of acquisitions over time); Ex. 222 at 0196; Ex. 223 at 1047.

**Defendants' Response to 171:**  Plaintiffs' assertion is not material because it does not affect the outcome of Defendants' Motion, as Plaintiffs do not even cite it in their Opposition. Further, Plaintiffs' assertion is immaterial, because it is typical for a corporate parent to review and approve significant expenditures and transactions.

In addition, Plaintiffs' cited material does not support this asserted fact and therefore should be disregarded.  None of the cited materials support that Charlesbank "approved and facilitated" any acquisition, much less an acquisition that Plaintiffs claim to be anticompetitive. Plaintiffs' Exhibits 1 and 2 simply list transactions.  Plaintiffs' Exhibit 222 shows that Charlesbank would approve transactions with a purchase price ranging from ▆ million to ▆ million; Varsity's board of directors would approve transactions with a purchase price greater than ▆ million; and neither Charlesbank nor board approval was required for transactions under ▆ million.  Plaintiffs' Exhibit 223 shows that Goldman Sachs helped Varsity raise funding.

In addition, Plaintiffs cite their expert's recitation and interpretation of documents, which is inadmissible.  Fed. R. Evid. 702, 403.

This statement does not create a material dispute of fact because, although the statement is not true and in that sense is "disputed," it is neither material nor supported by evidence and it accordingly should be disregarded.

172.    Charlesbank requested information from Varsity specifically on the acquisitions Varsity
        was contemplating, and that Charlesbank ultimately approved. Ex. 230 at 0255; Ex. 12
        [Elza Dep.] at 322:5-13. A Varsity presentation indicates that Charlesbank must approve
        any acquisition over ███ million. Ex. 222 at 0169 (2/162017, Presentation, "Growth
        Through Acquisition").

   **Defendants' Response to 172:**  Plaintiffs' assertion is not material because it does not

affect the outcome of Defendants' Motion, as Plaintiffs do not even cite it in their Opposition.

   In addition, Plaintiffs' cited material does not support this asserted fact and therefore

should be disregarded.  The cited testimony in Plaintiffs' Exhibit 12 does not address this topic at

all.  Plaintiffs' Exhibit 230 reflects a request for information regarding already-closed

transactions, not transactions that Varsity was "contemplating."

   This statement does not create a material dispute of fact because, although the statement

is not true and in that sense is "disputed," it is neither material nor supported by evidence and it

accordingly should be disregarded.


173.    Charlesbank's acquisition of Varsity provided funding that allowed Varsity to acquire
        and maintain its market power, among other things. Ex. 28 [Janower Dep.] at 137:25-
        138:03 ██████ ██ ███████████████████████████ Ex. 223 at 1047 (date, Beer (Charlesbank): "Well,
        we've got the dough for our acquisitions now…let's make it sweat!").

   **Defendants' Response to 173:**  Plaintiffs' assertion is not material because it does not

affect the outcome of Defendants' Motion, as Plaintiffs do not even cite it in their Opposition.

   Plaintiffs' assertion is a legal conclusion, not a statement of fact, and thus Defendants

need not respond.  In addition, Plaintiffs' cited material does not support this asserted fact and

therefore should be disregarded.  Plaintiffs' Exhibit 28 does not contain the cited testimony.

Plaintiffs meant to cite Exhibit 29, but they  mischaracterize the testimony.  The witness testified

that "none of the capital . . . was provided by Charlesbank."  Pls.' Ex. 29 at 137:23-138:3.

Regarding Plaintiffs' Exhibit 223, the same witness further testified that the referenced

acquisitions did not relate to cheerleading.  *Id.* 143:20-145:17.

This statement does not create a material dispute of fact because, although the statement

is not true and in that sense is "disputed," it is neither material nor supported by evidence and it

accordingly should be disregarded.

174.   While at the helm of Varsity, Charlesbank conspired with Varsity and Jeff Webb to
consolidate Varsity's market power by acquiring its biggest rivals, including ██ ███
to fund the acquisition of Project Cloth. Ex. 28 [Janower Dep.] at 154:8-154:10.

**Defendants' Response to 174:**  Plaintiffs' assertion is not material because it does not

affect the outcome of Defendants' Motion, as Plaintiffs do not even cite it in their Opposition.

In addition, Plaintiffs' cited material does not support this asserted fact and therefore

should be disregarded.  As the witness testified, "Project Cloth" was BSN's acquisition of Lids.

Pls.' Ex. 29 at 149:8-17, 151:8-11.  This acquisition had nothing to do with cheerleading, much

less consolidating market power, as the acquisition is unrelated to the alleged relevant markets.

This statement does not create a material dispute of fact because, although the statement

is not true and in that sense is "disputed," it is neither material nor supported by evidence and it

accordingly should be disregarded.

175.   Between 2014 and 2018, the period when Charlesbank owned Varsity, Varsity's market
power grew considerably through its many acquisitions. See supra ¶¶ 60-61, 64, 100,
101; see also Ex. 229 (Memo lists eight entities that were acquired from 2015 to 2018,
including JAM Brand and Epic); Ex. 92 at 2 (5/2018, Charlesbank document stating that
"[i]n terms of competitions overall, seems like Varsity has monopoly").

**Defendants' Response to 175:**  Further, Plaintiffs' assertion is not material, as Defendants' Motion does not assert lack of market power as a basis for summary judgment.

Plaintiffs' assertion is also a legal conclusion, not a statement of fact, and thus Defendants need not respond.  In addition, Plaintiffs' cited material does not support this asserted fact and therefore should be disregarded.  Plaintiffs' Exhibit 229 simply lists acquisitions, and the quoted portion of Plaintiffs' Exhibit 92 does not reflect economic analysis of market power in a properly defined relevant market.

Plaintiffs' assertion rests on inadmissible expert testimony.  *See* Netz Daubert Mot., ECF No. 382-1; Heeb Daubert Mot., ECF No. 388-1.

This statement does not create a material dispute of fact because, although the statement is not true and in that sense is "disputed," it is neither material nor supported by evidence and it accordingly should be disregarded.

176.   Varsity's acquisition of its most significant competitors occurred only with Charlesbank's approval. Ex. 222 at 0196 (showing that Charlesbank's approval was required for acquisitions with purchase prices of ██ million or greater); Ex. 12 [Elza Dep.] at 328:14-22 ("Q: And for acquisitions, mergers under Charlesbank, did you understand that they still had to ultimately approve those transactions. . . . A: That's – that's always been my understanding. . . .But, yes, there was presentations involved prior to any acquisitions that had to go all the way to the – to the ownership group.").

**Defendants' Response to 176:**  Plaintiffs' assertion is not material because it does not affect the outcome of Defendants' Motion, as Plaintiffs do not even cite it in their Opposition.

In addition, Plaintiffs' cited material does not support this asserted fact and therefore should be disregarded.  The cited sources do not speak to approval of any particular transaction, and Plaintiffs' Exhibit 222 shows that Charlesbank would approve transactions with a purchase price ranging from ██ million to █ million; Varsity's board of directors would approve

transactions with a purchase price greater than ▮ million; and neither Charlesbank nor board approval was required for transactions under ▮ million.

This statement does not create a material dispute of fact because, although the statement is not true and in that sense is "disputed," it is neither material nor supported by evidence and it accordingly should be disregarded.

177.   Charlesbank continued to provide funding and to invest in Varsity even after Charlesbank was sold to Bain in 2018. Ex. 220; Ex. 29 [Charlesbank 30(b)(6) Dep.] at 167:4-169:25, 185:11-186:7 (confirming the identities of the Charlesbank entities that acquired an ▮ ownership interest in Varsity in the Bain transaction and that Charlesbank has maintained one seat on Varsity's Board of Directors since then).

**Defendants' Response to 177:**  Plaintiffs' assertion is not material because it does not affect the outcome of Defendants' Motion, as Plaintiffs do not even cite it in their Opposition.

In addition, Plaintiffs' cited material does not support this asserted fact and therefore should be disregarded.  The cited materials do not support that Charlesbank provided funding. Further, it is undisputed for purposes of this Motion that only one Charlesbank-affiliated individual has been on the board of managers of the Varsity Defendants' parent company since July 30, 2018.  Defs.' SUF No. 231.

This statement does not create a material dispute of fact because, although the statement is not true and in that sense is "disputed," it is neither material nor supported by evidence and it accordingly should be disregarded.

178.   Charlesbank participated in anticompetitive acts in furtherance of the conspiracy from the time it acquired Varsity in 2014 to present. See, e.g., Ex. 21; Ex. 68 at 1612, 1622, 1628-29; Ex. 70 at 1300; Ex. 85 at 6985; Ex. 86 at 5236; Ex. 97 at 5805–06, 5810, 5855–76, 5882; Ex. 213 at 1305; Ex. 223 at 1045-47; Ex. 229 at 5991-93; Ex. 283 at 6147; Ex. 284 at 5631; Ex. 285 at 1040; Ex. 286 at 2247; Ex. 287 at 9470; Ex. 288 at 3480; Ex. 289 at

9041-42; Ex. 290 at 1179; Ex. 291; Ex. 293 at 4857; Ex. 297; Ex. 308 at 2926, 2929, 2931.

**Defendants' Response to 178:**  Plaintiffs' assertion is not material because it does not affect the outcome of Defendants' Motion, as Plaintiffs do not even cite it in their Opposition.

Plaintiffs' assertion is a legal conclusion, not a statement of fact, and thus Defendants need not respond.  *See also* Defendants' SUF Nos. 232, 234, 235, 237 (no Charlesbank involvement in cheer competitions, cheer camps, cheer apparel, Varsity's Squad Credentialing Program, or USASF).

This statement does not create a material dispute of fact because, although the statement is not true and in that sense is "disputed," it is not material and it accordingly should be disregarded.

179.   On June 19, 2018, a definitive agreement was reached for Bain to purchase Varsity from Charlesbank for approximately $2.9 billion. Ex. 68 at 1550 (June 23, 2018, email from Brandon White stating that "earlier this week we signed a transaction to sell Varsity to Bain Capital for $2.88 billion, a ~3.4x multiple of our original investment"); Ex. 21 [Bain 30(b0(6) Dep.] at 16:1-12 (confirming Varsity purchase price of $2.88 billion). Bain gained an approximate 67.5% ownership interest in Varsity and four of seven of the seats on Varsity's Board of Directors. Id. at 85:8-12, 90:22-91:01.

**Defendants' Response to 179:**  Plaintiffs' assertion is not material because it does not affect the outcome of Defendants' Motion, as Plaintiffs do not even cite it in their Opposition.

This statement does not create a material dispute of fact because, although the statement is not true and in that sense is "disputed" for the reasons discussed in Defendants' SUF Nos. #219 and 229, it is neither material and it accordingly should be disregarded. Additionally, it was funds advised by Bain, not Bain itself that acquired Varsity's parent company from funds advised by Charlesbank.

180. Bain actively participated in the anticompetitive scheme after it acquired Varsity in 2018 by making decisions on the Varsity Board of Directors. Ex. 12 [Elza Dep.] at 38:11-17, 43:14-44:19 (Bain participated in Varsity Board of Directors' meetings and provided strategic advice to Varsity including, for example, how to restructure its customer rebate programs). Ex. 239 at 7945.

**Defendants' Response to 180:** Plaintiffs' assertion is not material because it does not affect the outcome of Defendants' Motion, as Plaintiffs do not even cite it in their Opposition.

Plaintiffs' assertion is a legal conclusion, not a statement of fact, and thus Defendants need not respond. In addition, Plaintiffs' cited material does not support this asserted fact and therefore should be disregarded. As Plaintiffs note, the testimony in Plaintiffs' Exhibit 12 refers to actions of Varsity's Board of Directors, not actions attributable to "Bain." *See* ECF No. 472 at 3-5.

This statement does not create a material dispute of fact because, although the statement is not true and in that sense is "disputed," it is neither material nor supported by evidence and it accordingly should be disregarded.

181. Bain takes a "consulting-based approach to private equity investing, partnering closely with management teams to offer the insights that challenge conventional thinking, build great businesses and improve operations." Ex. 231.

**Defendants' Response to 181:** Plaintiffs' assertion is not material because it does not affect the outcome of Defendants' Motion, as Plaintiffs do not even cite it in their Opposition.

Plaintiffs' asserted fact is immaterial and need not be decided to resolve Defendants' Motion, but it is undisputed for purposes of this Motion only.

182. Prior to acquiring Varsity, Bain conducted a substantial amount of due diligence including extensive presentations where Varsity employees provided information and answered Bain's questions. For example, Mr. Elza testified that Bain "did a lot of due diligence prior to acquiring our company, and they hired companies to dig in and try to figure out all they could… they worked with the directors of strategy to try to come up with these numbers." Ex. 12 [Elza Dep.] at 104:6-10. Bain's due diligence confirmed that

it understood Varsity's strategy to maintain and increase its market power through anticompetitive acquisitions and the maintenance of Varsity's exclusionary practices, including control of end-of-season competitions, exclusionary rebate programs, and other anticompetitive practices. Ex. 1 [Netz Rep.] at 10-11 & n. 30-31, 33; Ex. 12 [Elza Dep.] at 102:19-104:10.

**Defendants' Response to 182:**  Plaintiffs' assertion is not material because it does not affect the outcome of Defendants' Motion, as Plaintiffs do not even cite it in their Opposition.

Plaintiffs' assertion is a legal conclusion, not a statement of fact, and thus Defendants need not respond.  In addition, Plaintiffs' cited material does not support this asserted fact and therefore should be disregarded.  The cited testimony in Plaintiffs' Exhibit 12 supports only that Bain conducted due diligence, which of itself is immaterial.  At the cited portions of Plaintiffs' Exhibit 1, Plaintiffs' expert simply recites the same and similar testimony, which is inadmissible. Fed. R. Evid. 702, 403.  Neither source speaks to Bain's purported understanding of alleged anticompetitive conduct.

This statement does not create a material dispute of fact because, although the statement is not true and in that sense is "disputed," it is neither material nor supported by evidence and it accordingly should be disregarded.

183.   Prior to the Bain acquisition, Varsity created a presentation titled "Varsity Brands, Elevating Student Experience, Varsity Spirit Divisional Presentation, May 2018" which provided a detailed overview of the company and was to be presented to high-level executives at Bain. Ex. 12 [Elza Dep.] at 281:23-282:10; Ex. 54. Bain was informed about the history of Varsity, including specifically its mergers and acquisitions strategy prior to purchasing the company. Id.

**Defendants' Response to 183:**  Plaintiffs' assertion is not material because it does not affect the outcome of Defendants' Motion, as Plaintiffs do not even cite it in their Opposition.

In addition, Plaintiffs' cited evidence does not support this asserted fact and therefore should be disregarded.  Plaintiffs assert that a presentation "was to be presented" to Bain, but the

cited sources do not support that this ever occurred.  Mr. Elza testified that someone else would have been responsible for the presentation, Pls.' Ex. 12, Elza Dep. at 282:4-13, and thus his testimony is inadmissible for lack of foundation and personal knowledge as to Plaintiffs' suggestion that the presentation was actually made to Bain.  Fed. R. Evid. 602.

This statement does not create a material dispute of fact because, although the statement is not true and in that sense is "disputed," it is neither material nor supported by evidence and it accordingly should be disregarded.

184.   When Bain acquired Varsity, it acquired the right to control and manage its affairs and operations. Ex. 10 [Webb Dep.] 342:23-344:5 (testifying that Bain owns the "controlling interest" in Varsity); Ex. 21 [Bain Dep.] at 28:16-29:7 (confirming that Bain acquired an ▓▓▓▓▓ ownership interest in Varsity); Ex. 71 at 3840 (stating Bain's intention to create a "top-level partnership where the real substantive board is" in contrast to the "lower boards" of Hercules VB Holdings, Inc. and Hercules Achievement Holdings, Inc.).

**Defendants' Response to 184:**  Plaintiffs' assertion is not material because it does not affect the outcome of Defendants' Motion, as Plaintiffs do not even cite it in their Opposition.

In addition, Plaintiffs' cited material does not support this asserted fact and therefore should be disregarded.  The cited materials support only that Bain acquired a controlling interest.

This statement does not create a material dispute of fact because, although the statement is not true and in that sense is "disputed," it is neither material nor supported by evidence and it accordingly should be disregarded.

185.   Bain was actively involved in Varsity's day-to-day operations, including changing Varsity's leadership. For example, Varsity replaced many Varsity employees who were former cheerleaders with Bain personnel. Ex. 12 [Elza Dep.] at 272: 3-12, 264:20-265:5. Bain would provide advice and input into hiring and firing at Varsity. Ex. 232 [Bain 30(b)(6) Dep.] at 138:10-138:11; Ex. 21 [Bain Dep.] at 91:7-23; Ex. 232 [Cotton Dep.] at 69:23-25 (regarding the COVID-19 pandemic, "[t]here were ongoing board-level discussions and day-to-day managerial discussions with [Varsity] about what situation are we in").

**Defendants' Response to 185:**  Plaintiffs' assertion is not material because it does not affect the outcome of Defendants' Motion, as Plaintiffs do not even cite it in their Opposition. Further, Plaintiffs' assertion is not material, because it is undisputed that Bain was not involved in any of the alleged anticompetitive conduct.  Defs.' SUF Nos. 220, 222, 224, 225 (no Bain involvement in cheer competitions, cheer camps, cheer apparel, Varsity's Squad Credentialing Program, or USASF).

In addition, Plaintiffs' cited evidence does not support this asserted fact and therefore should be disregarded.  For clarity, the quoted testimony is found in Plaintiffs' Exhibit 21, not Plaintiffs' Exhibit 232.  But that testimony establishes only that there were "board-level discussions" and "managerial discussions," not any direct participation by Bain, and as Plaintiffs acknowledge, this is in reference to navigating the extraordinary turbulence of the COVID-19 pandemic, not any alleged anticompetitive conduct.

This statement does not create a material dispute of fact because, although the statement is not true and in that sense is "disputed," it is neither material nor supported by evidence and it accordingly should be disregarded.

186.   Bain personnel are woven into Varsity's administration on every level. Ex. 12 [Elza Dep.] at 272:3-12 (testifying that Bain was "active" in the hiring and firing of key Varsity's employees, for example by replacing "[a]ll the cheerleaders" with "bigwigs from Bain").

**Defendants' Response to 186:**  Plaintiffs' assertion is not material because it does not affect the outcome of Defendants' Motion, as Plaintiffs do not even cite it in their Opposition.

In addition, Plaintiffs' cited evidence does not support this asserted fact and therefore should be disregarded.  The witness's exaggerated testimony does not state that "Bain personnel" were working at "every level" of Varsity.

This statement does not create a material dispute of fact because, although the statement is not true and in that sense is "disputed," it is neither material nor supported by evidence and it accordingly should be disregarded.

187. Bain acted cooperatively with its Co-Defendants to acquire, enhance, and maintain Varsity's market power. Ex. 1 [Netz Rep.] at 3.

**Defendants' Response to 187:** Plaintiffs' assertion is not material because it does not affect the outcome of Defendants' Motion, as Plaintiffs do not even cite it in their Opposition.

Plaintiffs' assertion is a legal conclusion, not a statement of fact, and thus Defendants need not respond. In addition, Plaintiffs fail to support their asserted fact with admissible evidence; instead, they cite only their expert's bare assertion that Bain "acted cooperatively" with the other Defendants, which is inadmissible. Fed. R. Evid. 702, 403

This statement does not create a material dispute of fact because, although the statement is not true and in that sense is "disputed," it is neither material nor supported by evidence and it accordingly should be disregarded.

188. Bain oversaw Varsity's monopolization of the relevant markets, and supported and furthered the abuse of that market power. Ex. [Elza Dep.] 57:2-17, 51:13-52:12, 272:3-12. Bain admits that "[b]y heritage, we approach investing as strategists with an 'operator's mindset.'" Ex. 233 at 5993.

**Defendants' Response to 188:** Plaintiffs' assertion is not material because it does not affect the outcome of Defendants' Motion, as Plaintiffs do not even cite it in their Opposition.

Plaintiffs' assertion is a legal conclusion, not a statement of fact, and thus Defendants need not respond.

In addition, Plaintiffs' cited evidence does not support this asserted fact and therefore should be disregarded. Defendants have addressed the cited portions of Plaintiffs' Exhibit 12

(Elza Dep.) elsewhere. *See* Resp. to Pls.' SUF Nos. 187, 189. Plaintiffs' Exhibit 233 reflects a generalized statement, not related to Varsity in particular.

This statement does not create a material dispute of fact because, although the statement is not true and in that sense is "disputed," it is neither material nor supported by evidence and it accordingly should be disregarded.

189.   Bain provided strategic advice regarding Varsity's Family Plan. Ex. 12 [Elza Dep.] at 57:2-17 (testifying that Bain provided strategic advice involved in key elements of the exclusionary scheme, including "changing, amending, or adapting the Varsity Family Plan . . . to eventually try to eliminate at least the cash portion of the Varsity Family Plan . . . to keep the dollars flowing to Varsity").

**Defendants' Response to 189:** Plaintiffs' cited evidence does not support this asserted fact and therefore should be disregarded. The cited portion of Plaintiffs' Exhibit 12 is inadmissible hearsay because Mr. Elza's testimony is not based on his personal knowledge but instead speculates based on what he might have heard from others. Ex. 12 at 57:13-17 ("Q. And some of that advice, you *understood*, came from higher-ups at Varsity and some came from Bain personnel; is that right? A. Yes.") (emphasis added) , 68:9-11 ("I didn't talk to anybody at Bain"); Fed. R. Evid. 802. *See* Defs.' SUF No. 223.

This statement does not create a material dispute of fact because, although the statement is not true and in that sense is "disputed," it is not supported by evidence and it accordingly should be disregarded.

190.   Bain was informed of any potential acquisitions of competing event producers by Varsity before the acquisition, and Bain had to approve these transactions. Ex. 12 [Elza Dep.] at 39:17-40:12 (Mr. Elza testified that presentations regarding each acquisition were shown to Bain for final approval.); Ex. 21 [Bain 30(b)(6) Dep.] at 109:17-109:21 ( "The management team is free to make acquisitions beneath certain thresholds without consulting the board. Above that threshold, they're required to obtain the approval of the board of directors.").

126

**Defendants' Response to 190:**  Plaintiffs' assertion is not material because it does not affect the outcome of Defendants' Motion, as Plaintiffs do not even cite it in their Opposition.

In addition, Plaintiffs' cited evidence does not support this asserted fact and therefore should be disregarded.  As shown by Plaintiffs' quotation of Exhibit 21, "The management team is free to make acquisitions beneath certain thresholds without consulting the board. Above that threshold, they're required to obtain the approval of the board of directors," Pls. Ex. 21 at 109:17-21, not "Bain."

This statement does not create a material dispute of fact because, although the statement is not true and in that sense is "disputed," it is neither material nor supported by evidence and it accordingly should be disregarded.

191.  Bain provided funding for Varsity to acquire rivals. Ex. 12 [Elza Dep.] at 51:13-52:12 ("During acquisitions, our strategy was we put together on paper what we wanted to go – companies we looking at, work with folks to get – prepare that, and that got presented to Bain and they ultimately approved those transactions. . . . They were – they were ultimately presented to Bain for final buy-off, yes."); Ex. 236 at 6944, 6960-61 (executed asset purchase agreement for Varsity's acquisition of B2 Cheer and Dance, dated January 9, 2019); Ex. 237 (confirming that Varsity viewed the acquisition of B2 Cheer and Dance, a competitor in the Cheer Camps Market, as an opportunity to foreclose a key competitor in the Cheer Apparel Market and increase participation at Varsity's national competitions in the School Cheer Market); Ex. 238 at 1156 ███████████████████ ████████████████████████████████████████████████ .

**Defendants' Response to 191:**  Plaintiffs' assertion is not material because it does not affect the outcome of Defendants' Motion, as Plaintiffs do not even cite it in their Opposition.

In addition, Plaintiffs' cited evidence does not support this asserted fact and therefore should be disregarded.  *See* Defs.' SUF No. 221 and related reply.  Plaintiffs' Exhibit 236 is an asset purchase agreement signed by a representative of Varsity Spirit; it does not reflect any

involvement by Bain whatsoever, much less funding.  Plaintiffs' Exhibit 237 does not reflect any

funding or other involvement by Bain, nor does it show that Varsity "viewed the acquisition …

as an opportunity to foreclose a key competitor in the Cheer Apparel Market," as Plaintiffs

claim.  The document simply says that the acquisition would allow Varsity to supply apparel to

the acquired company, which represented a miniscule portion of the purported national cheer

apparel market.  (*See* Pls.' Ex. 237, at VAR00268689.)  Plaintiffs' Exhibit 238 similarly does not

reflect any Bain involvement and does not demonstrate that Varsity did indeed acquire

Champion Cheerleading Co., which it did not.

This statement does not create a material dispute of fact because, although the statement

is not true and in that sense is "disputed," it is neither material nor supported by evidence and it

accordingly should be disregarded.

192. Bain advised Varsity on which companies it should acquire. Ex. 21 [Bain 30(b)(6) Dep.]
at 111:09-111:14 ("[T]he bulk of the advice was provided around adjacent space M&A,
what were adjacent markets such as band or dance that we could think about acquiring
through our shared platform, as well as occasionally advice on specific targets that the
management team had identified or was considering.*"* ); id. at 109:25 -110:2 ( *"* □ere is
also a regular dialogue about potential targets that [Varsity] management may want to
think about acquiring.").

**Defendants' Response to 192:**  Plaintiffs' assertion is not material because it does not

affect the outcome of Defendants' Motion, as Plaintiffs do not even cite it in their Opposition.

In addition, Plaintiffs' cited evidence does not support this asserted fact and therefore

should be disregarded.  The cited testimony refers to activity by Varsity's board of directors, not

activity of "Bain." *See, e.g.*, Pls.' Ex. 21, Bain 30(b)(6) Dep. Ex. at 108:18-111:14 ("*As*

*members of the board of directors*, Bain Capital employees and members of the Bain team

provided advice and counsel to the management team of Varsity Brands"; "There is also a

regular dialogue about potential targets that [Varsity] management may want to think about

acquiring.  And, of course, *the board* provides its perspectives") (emphasis added).  The witness also testified that "the bulk of the advice" related to "band or dance," not cheerleading, *id.* at 110:25-111:14, and even that advice was from the board, not "Bain," *id.* at 112:3-6 ("Of course, Bain does not issue orders or commands or instruct the business to do anything outside of the context of the board of representative[s] and its abilities there.").

This statement does not create a material dispute of fact because, although the statement is not true and in that sense is "disputed," it is neither material nor supported by evidence and it accordingly should be disregarded.

193.    Bain traveled to Memphis, Tennessee, on at least one occasion, for a meeting regarding setting prices for competitions, camps, and apparel. Ex. 240 at 1120 (9/4/2018) ("Bain will be live in Memphis on 10/1," and attaches Varsity Spirit Price Setting Overview).

**Defendants' Response to 193:**  Plaintiffs' assertion is not material because it does not affect the outcome of Defendants' Motion, as Plaintiffs do not even cite it in their Opposition.

In addition, Plaintiffs' cited evidence does not support this asserted fact and therefore should be disregarded.  The cited document reflects only that Varsity expected Bain-affiliated individuals to attend a meeting in Memphis.  Plaintiffs presented this document to Mr. Seely, but they misleadingly omit his testimony.  Mr. Seely attended the referenced meeting and testified that Varsity did not review pricing with Bain and that Bain was not involved in setting pricing for Varsity events.  *See* Pls.' Ex. 45, Seely Dep. at 443:19-445:12, 459:6-460:11.

This statement does not create a material dispute of fact because, although the statement is not true and in that sense is "disputed," it is neither material nor supported by evidence and it accordingly should be disregarded.

194.    Plaintiffs have paid illegal overcharges in the three relevant markets, and ancillary
        charges such as those incurred by Plaintiffs for Stay-to-Play and higher spectator fees.
        Ex. 1 [Netz Rep.] at 45-47 & n. 184; Ex. 122 at 2197; Ex. 7 [Maki Rep.] at ¶¶ 98-101;
        Ex. 3 [Heeb Rep.] at ¶¶ 198-199 & n. 226.

**Defendants' Response to 194:**  Plaintiffs' assertion is a legal conclusion, not a statement

of fact, and thus Defendants need not respond.

In addition, Plaintiffs' assertion exclusively rests on inadmissible expert testimony.  *See*

Netz Daubert Mot., ECF No. 382-1; Maki Daubert Mot., ECF No. 391-1; Heeb Daubert Mot.,

ECF No. 388-1.

This statement does not create a material dispute of fact because, although the statement

is not true and in that sense is "disputed," it is neither material nor supported by evidence and it

accordingly should be disregarded.

195.    Defendants have reaped and retained substantial benefits in the form of higher profits due
        to their unjust exclusionary scheme. Ex. 215 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
        ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮); Ex. 216 (Phantom Unit Plan).

**Defendants' Response to 195:**  Plaintiffs' assertion is not material because it does not

affect the outcome of Defendants' Motion.  *See* ECF No. 471 at 2-3.  It is undisputed that

Plaintiffs have failed to demonstrate anticompetitive harm.  Defs.' SUF Nos. 20, 49, 82.  Thus,

Plaintiffs cannot claim any profits earned by any Defendant by claiming they are attributable to

the alleged anticompetitive conduct.

Plaintiffs' assertion is a legal conclusion, not a statement of fact, and thus Defendants

need not respond.

In addition, Plaintiffs' cited evidence does not support this asserted fact and therefore

should be disregarded.  The cited evidence does not demonstrate that Defendants earned higher

profits as a result of the alleged anticompetitive conduct.

This statement does not create a material dispute of fact because, although the statement is not true and in that sense is "disputed," it is neither material nor supported by evidence and it accordingly should be disregarded.

196.   USASF staff participated in Varsity's employee stock option plan. Ex. 14 [Peterson Dep.] at 278-306 (Peterson was legally a Varsity employee for part of the period between 2004-2020 and received large payments each time Varsity was acquired: from the Charlesbank acquisition, he received between $250,000-$276,000 for his "phantom shares" in Varsity; from the Bain acquisition, he received $200,000 from an employee stock option plan) Ex. 14 [USASF 30(b)(6) Dep.] at 281:22-282:4; Ex. 205; Ex. 14 [Peterson Dep.] at 281:22-282:14, 286:22-288:8 (USASF Vice President of Events and Corporate Alliances that he received $250,000-$276,000 for his "phantom shares" in Varsity from the Charlesbank acquisition and $200,000 from a similar plan when Bain purchased Varsity); Ex. 205 (2015 email to "eligible ESOP participants," including six USASF individuals, who had become "100% vested" since "the transaction with Charlesbank is now complete).

**Defendants' Response to 196:** Plaintiffs' assertion is not material because it does not affect the outcome of Defendants' Motion. *See* ECF No. 471 at 2-3. It is undisputed that Plaintiffs have failed to demonstrate anticompetitive harm. *See* Defs.' SUF Nos. 20, 49, 82. Thus, Plaintiffs cannot claim any profits earned by any Defendant by claiming they are attributable to the alleged anticompetitive conduct.

Undisputed, for purposes of this Motion only, that certain USASF staff participated in Varsity's employee stock option plan. Plaintiffs' cited evidence does not support any stronger implication. The cited evidence does not show that all USASF staff participated in Varsity's employee stock option plan.

For these reasons, Plaintiffs' asserted fact is immaterial and need not be decided to resolve Defendants' Motion, but it is undisputed, for purposes of this Motion only, to the extent that certain USASF staff participated in Varsity's employee stock option plan.

197.    On or around December 12, 2014, Varsity employees received approximately $79.5 million in LTIP payouts and change-of-control bonuses in connection with the Charlesbank acquisition. Ex. 29 [Charlesbank 30(b)(6) Dep.] at 66:6-13. Webb received approximately $34.8 million. Ex. 29 [Charlesbank 30(b)(6) Dep.] at 67:4-7.

**Defendants' Response to 197:** Plaintiffs' assertion is not material because it does not affect the outcome of Defendants' Motion. *See* ECF No. 471 at 2-3. It is undisputed that Plaintiffs have failed to demonstrate anticompetitive harm. Defs.' SUF Nos. 20, 49, 82. Thus, Plaintiffs cannot claim any profits earned by any Defendant by claiming they are attributable to the alleged anticompetitive conduct.

For this reason, Plaintiffs' asserted fact is immaterial and need not be decided to resolve Defendants' Motion, but is undisputed for purposes of this Motion only.

198.    In or around November 2016, Varsity distributed a shareholder dividend of ▮▮▮▮ Ex. 29 [Charlesbank Dep.] at 84:21-25, 91:24-92:7. Charlesbank received approximately ▮▮▮▮. Ex. 29 [Charlesbank Dep.] at 92:8-93:23. Varsity employees received approximately ▮▮▮▮. Ex. 248 ("Investor Summary" at Rows 24-117, Column M). Jeff Webb received approximately ▮▮▮▮. Ex. 29 [Charlesbank Dep.] at 95:23-96:5.

**Defendants' Response to 198:** Plaintiffs' assertion is not material because it does not affect the outcome of Defendants' Motion. *See* ECF No. 471 at 2-3. It is undisputed that Plaintiffs have failed to demonstrate anticompetitive harm. Defs.' SUF Nos. 20, 49, 82. Thus, Plaintiffs cannot claim any profits earned by any Defendant by claiming they are attributable to the alleged anticompetitive conduct.

For this reason, Plaintiffs' asserted fact is immaterial and need not be decided to resolve Defendants' Motion, but is undisputed for purposes of this Motion only.

199.    In January 2018, Varsity distributed a shareholder dividend of approximately ▮▮▮▮. Ex. 29 [Charlesbank Dep.] at 114:18-20, 116:5-10, 120:10-19. Charlesbank received approximately ▮▮▮▮. Ex. 29 [Charlesbank Dep.] at 121:2-9. Varsity employees received approximately ▮▮▮▮ in dividend payments and phantom

distributions. Ex. 29 [Charlesbank Dep.] at 121:10-122:4; Ex. 228 ("Investor Summary" at Rows 26-240). Jeff Webb received approximately $4.4 million. Ex. 29 [Charlesbank Dep.] at 123:6-10.

**Defendants' Response to 199:**  Plaintiffs' assertion is not material because it does not

affect the outcome of Defendants' Motion.  *See* ECF No. 471 at 2-3.  It is undisputed that

Plaintiffs have failed to demonstrate anticompetitive harm.  Defs.' SUF Nos. 20, 49, 82.  Thus,

Plaintiffs cannot claim any profits earned by any Defendant by claiming they are attributable to

the alleged anticompetitive conduct.

For this reason, Plaintiffs' asserted fact is immaterial and need not be decided to resolve

Defendants' Motion, but is undisputed for purposes of this Motion only.

200.   On or around July 30, 2018, Charlesbank received ███████ as part of Bain's acquisition of Varsity. Ex. 29 [Charlesbank 30(b)(6) Dep.] at 191:8-192:15. Varsity employees received approximately $78 million. Ex. 21 [Bain 30(b)(6) Dep.] at 37:22-41:11.

**Defendants' Response to 200:**  Plaintiffs' assertion is not material because it does not

affect the outcome of Defendants' Motion.  *See* ECF No. 471 at 2-3.  It is undisputed that

Plaintiffs have failed to demonstrate anticompetitive harm.  Defs.' SUF Nos. 20, 49, 82.  Thus,

Plaintiffs cannot claim any profits earned by any Defendant by claiming they are attributable to

the alleged anticompetitive conduct.

For this reason, Plaintiffs' asserted fact is immaterial and need not be decided to resolve

Defendants' Motion, but is undisputed for purposes of this Motion only.

201.   Webb received ███████ as part of Bain's acquisition of Varsity from Charlesbank. Ex. 10 [Webb Dep.] at 397:18-398:6.

**Defendants' Response to 201:**  Plaintiffs' assertion is not material because it does not

affect the outcome of Defendants' Motion.  *See* ECF No. 471 at 2-3.  It is undisputed that

Plaintiffs have failed to demonstrate anticompetitive harm.  Defs.' SUF Nos. 20, 49, 82.  Thus, Plaintiffs cannot claim any profits earned by any Defendant by claiming they are attributable to the alleged anticompetitive conduct.

For this reason, Plaintiffs' asserted fact is immaterial and need not be decided to resolve Defendants' Motion, but is undisputed for purposes of this Motion only.

202.   Harm to all putative class members is ongoing. Plaintiffs sufficiently allege ongoing harm in their Complaint. ECF No. 1, Complaint, ¶¶ 6, 22, 163, 231-38, 240, 247.

**Defendants' Response to 202:**  Plaintiffs' assertion is not material because it does not affect the outcome of Defendants' Motion, as Plaintiffs do not even cite it in their Opposition.  In addition, the sufficiency of Plaintiffs' allegations is irrelevant.  At summary judgment, Plaintiffs may not rest upon mere allegations.  *Hansbrough v. Titlemax of Tennessee, Inc.*, 977 F. Supp. 2d 859, 868 (W.D. Tenn. 2013).

Further, Plaintiffs assert a legal conclusion, not a statement of fact, and Defendants need not respond.

This statement does not create a material dispute of fact because, although the statement is not true and in that sense is "disputed," it is neither material nor supported by evidence and it accordingly should be disregarded.

203.   There is no indication that Defendants have changed any of the anticompetitive practices and policies that Plaintiffs allege, or that their exclusionary scheme or conduct has ceased. For example, the anticompetitive practices that Plaintiffs allege are evidently still in place. Ex. 2 [Netz Rebuttal] at 79, 82, 90; Ex. 3 [Heeb Rep.] at ¶¶ 7, 91, 218, 269; Ex. 5 [Aronoff Rep.] at 35-41.

**Defendants' Response to 203:**  Plaintiffs' assertion is a legal conclusion, not a statement of fact, and thus Defendants need not respond.  In addition, Plaintiffs' assertion exclusively rests

on inadmissible expert testimony.  *See* Netz Daubert Mot., ECF No. 382-1; Heeb Daubert Mot.,

ECF No. 388-1; Aronoff Daubert Mot., ECF No. 385-1.

This statement does not create a material dispute of fact because, although the statement

is not supported by the evidence and in that sense is "disputed," it should be disregarded.


204.   Varsity's acquisitions did not lead to better event offerings, there were fewer events to
       choose from and higher prices to pay. Ex. 1 [Netz Rep.] at 102-104; Ex. 2 [Netz Rebuttal]
       at 92.

**Defendants' Response to 204:**  To the extent that Plaintiffs assert that "Varsity's

acquisitions did not lead to better event offerings," this assertion is a legal conclusion, not a

statement of fact, and thus Defendants need not respond.

Plaintiffs fail to support their asserted fact with admissible evidence; instead, they cite

only their expert's recitation and interpretation of documents, which is inadmissible.  Fed. R.

Evid. 702, 403.

In addition, Plaintiffs' assertion is not material because it does not affect the outcome of

Defendants' Motion.  Plaintiffs cite this assertion to argue that "USASF's acts in furtherance of

the conspiracy cannot be justified on any procompetitive grounds."  ECF No. 479 at 17.  But

Plaintiffs fail to explain how this fact evidences participation in a "conspiracy" with USASF or

the relation to any potential procompetitive justifications.

This statement does not create a material dispute of fact because, although the statement

is not true and in that sense is "disputed," it is neither material nor supported by evidence and it

accordingly should be disregarded.


205.   Varsity's acquisitions of competitors and higher prices did not translate to better quality
       of events. Rather, quality decreased. Ex. 1 [Netz Rep.] at 47 & n. 185, 102-103; Ex. 2

[Netz Rebuttal] at 87-89; Ex. 12 [Elza Dep.] at 203:23-231:9, 285:14–287:10; Ex. 13 [LeTard Dep.] at 263:1-264:7; Ex. 245 at 0926 (3/3/2015, complaint from All Star owner to USASF reporting that move from JAM Brands to Varsity event led to worse experience); Ex. 63 at 7474 (complaints from 23 gyms owners re lower quality of Varsity events).

**Defendants' Response to 205:**  Plaintiffs' assertion is not material because it does not affect the outcome of Defendants' Motion.  Plaintiffs cite this assertion to argue that "USASF's acts in furtherance of the conspiracy cannot be justified on any procompetitive grounds."  ECF No. 479 at 17.  But Plaintiffs fail to explain how this fact evidences participation in a "conspiracy" with USASF or the relation to any potential procompetitive justifications.

In addition, Plaintiffs' cited evidence does not support the asserted fact and therefore should be disregarded.  None of Plaintiffs' Exhibits demonstrate that Varsity had higher prices, either than their competitors or following an acquisition, nor that the quality of Varsity events decreased.  Plaintiffs' Exhibits 12 and 13 merely indicate that Varsity was engaged in an arms race with JAM Brands with respect to lights, backdrops, decorations, etc. and that this was "excess and not needed[.]" Pls.' Ex. 13 at 263:1-9.  Plaintiffs' Exhibit 245 is a complaint from a singular All Star gym owner that their perceived quality of Varsity events was lower than the JAM Brands events they had attended. Pls.' Ex. 245 at 0926.  Plaintiffs' Exhibit 63 does not contain complaints about the quality of Varsity events being lower than competitors. Pls.' Ex. 63 at 7474-77.

In addition, Plaintiffs cite their expert's recitation and interpretation of documents, which is inadmissible.  Fed. R. Evid. 702, 403.

This statement does not create a material dispute of fact because, although the statement is not true and in that sense is "disputed," it is neither material nor supported by evidence and it accordingly should be disregarded.

136

206.    Varsity's higher apparel prices did not translate into better quality products. Ex. 1 [Netz Rep.] at 57 & n. 228, 113-115 (noting numerous instances of Varsity apparel customers complaining about poor quality products and customer service); Ex. 2 [Netz Rebuttal] at 87-89 Ex. 246 at 2183-84.

   **Defendants' Response to 206:**  Plaintiffs' cited evidence does not support this asserted

fact and therefore should be disregarded.  Demonstrating the flaws in Plaintiffs' reliance on

inadmissible expert testimony, their cited experts have no first-hand knowledge of "cheer apparel

quality," nor do they purport to be experts on that subject.  Plaintiffs also cite a single customer

service email complaining of a poor experience (Pls.' Ex. 246, at -2184), but this is not evidence

Varsity apparel was generally considered to be lower-quality.

   This statement does not create a material dispute of fact because, although the statement

is not true and in that sense is "disputed," it is neither material nor supported by evidence and it

accordingly should be disregarded.

207.    Varsity's targeting of other non-Varsity events does not have a procompetitive justification. It is not a practice of healthy competition. Ex. 1 [Netz Rep.] at 98-101; Ex. 2 [Netz Rebuttal] at 79-83; Ex. 63 at 7475; Ex. 137 (2/13/2018, discussing impact of Varsity targeting events: "with their change in date, bids to Cheer and Dance WORLDS plus numerous bids to another end of year event, our registrations went from 88 teams last year to 30 this year!").

   **Defendants' Response to 207:**  Plaintiffs' cited evidence does not support the asserted

fact and therefore should be disregarded.  Plaintiffs' Exhibits 137 does not discuss

procompetitive justifications.  It merely notes that registration levels fell at a Tier 3 event when a

Tier 1 Event Producer moved their event to a time close to theirs. Pls.' Ex. 137 at 4153.

Plaintiffs' Exhibit 63 is likewise irrelevant, as it does not discuss targeting events at all. Pls.' Ex.

63 at 7475.

Plaintiffs' assertion is also not material because it is undisputed that prices for cheer competitions were not higher than they would have been in the absence of whatever conduct Plaintiffs assert is anticompetitive and procompetitive justifications are, thus, irrelevant. Defs.' SUF No. 82.

Plaintiffs' assertion also rests on inadmissible expert testimony. *See* Netz Daubert Mot., ECF No. 382-1.

This statement does not create a material dispute of fact because, although the statement is not true and in that sense is "disputed," it is neither material nor supported by evidence and it accordingly should be disregarded.

208.    USASF rules and policies cannot be justified as in the name of "safety." Varsity's Squad Credentialing Program was not to protect athlete safety; it was to grow Varsity's Cheer Camps and Cheer Competitions market power. Ex. 1 [Netz Rep.] at 89-92; Ex. 113; Ex. 114 at 0729 (discussing implementation of policy to force teams "going to gym camps" to instead go to Varsity camps and grow Varsity's camp business); Ex. 112; Ex. 247; Ex. 178; Ex. 200; Ex. 198; Ex. 63 at 7472; Ex. 199; Ex. 131 at 6147.

**Defendants' Response to 208:**  Plaintiffs' assertion is a legal conclusion, not a statement of fact, and thus Defendants need not respond.

In addition, Plaintiffs' assertion is not material because it does not affect the outcome of Defendants' Motion.  Plaintiffs cite this assertion to argue that "USASF's acts in furtherance of the conspiracy cannot be justified on any procompetitive grounds."  ECF No. 479 at 17.  But Plaintiffs fail to explain how this fact evidences participation in a "conspiracy" with USASF or the relation to any potential procompetitive justifications.

This statement does not create a material dispute of fact because, although the statement is not true and in that sense is "disputed," it is not material and it accordingly should be disregarded.

138

209.    USASF has extensive policies precluding event producers from competing with USASF. Yet, when Varsity told USAF it planned to allow levels 6 and 7 at Summit in 2020, in direct competition with Worlds, USASF did not express any concerns and instead expressed willingness to help. Ex. 176.

   **Defendants' Response to 209:**  Plaintiffs' assertion is not material because it does not affect the outcome of Defendants' Motion.  Plaintiffs cite this assertion to argue that "USASF's acts in furtherance of the conspiracy cannot be justified on any procompetitive grounds."  ECF No. 479 at 17.  But Plaintiffs fail to explain how this fact evidences participation in a "conspiracy" with USASF or the relation to any potential procompetitive justifications.

   In addition, Plaintiffs' cited evidence does not support the asserted fact and therefore should be disregarded.  USASF cancelled Worlds in 2020 because of COVID, and only after this occurred did Varsity decide to allow level 6 and 7 at the Summit.  The two events were not in direct competition as one was not occurring.  Pls. Ex. 176 at 9027. ("I knew you guys were going to offer the 6 & 7 divisions the moment we cancelled.") *Id.*

   For these reasons, Plaintiffs' asserted fact is immaterial and need not be decided to resolve Defendants' Motion, but it is disputed.

210.    Varsity designed rebate programs with the intent and effect of foreclosing Cheer Competition and Cheer Apparel rivals, not to benefit gyms and schools. Ex. 1 [Netz Rep.] at 104-108; Ex. 2 [Netz Rebuttal] at 2-3.

   **Defendants' Response to 210:**  Plaintiffs' assertion is a legal conclusion, not a statement of fact, and thus Defendants need not respond.

   Plaintiffs also fail to support their asserted fact with admissible evidence; instead they rely upon inadmissible expert testimony.  *See* Netz Daubert Mot., ECF No. 382-1.

In addition, Plaintiffs' assertion is not material because it does not affect the outcome of Defendants' Motion. Plaintiffs cite this assertion to argue that "USASF's acts in furtherance of the conspiracy cannot be justified on any procompetitive grounds." ECF No. 479 at 17. But Plaintiffs fail to explain how this fact evidences participation in a "conspiracy" with USASF or the relation to any potential procompetitive justifications.

This statement does not create a material dispute of fact because, although the statement is not true and in that sense is "disputed," it is neither material nor supported by evidence and it accordingly should be disregarded.

211.   Varsity's anticompetitive strategy to foreclose competitors was effective. Ex. 1 [Netz Rep.] at 81-84; Ex. 63 at 7475; Ex. 131 at 6147; Ex. 137 at 4153; Ex. 139.

**Defendants' Response to 211:**  Plaintiffs' assertion is not material because it does not affect the outcome of Defendants' Motion, as Plaintiffs do not even cite it in their Opposition.

Plaintiffs' assertion is a legal conclusion, not a statement of fact, and thus Defendants need not respond. In addition, Plaintiffs' cited evidence does not support this asserted fact and therefore should be disregarded. Plaintiffs' Exhibit 1 is their expert's recitation and interpretation of documents, which is inadmissible. Fed. R. Evid. 702, 403. Plaintiffs' Exhibit 63 does not say anything about foreclosing competitors. Plaintiffs' Exhibit 131 and 137 are emails from the same event producer alleging that its event was drawing fewer teams compared to previous years, which is not foreclosure. Plaintiffs' Exhibit 139 also does not identify any competitor that was foreclosed.

This statement does not create a material dispute of fact because, although the statement is not true and in that sense is "disputed," it is neither material nor supported by evidence and it accordingly should be disregarded.

212.   As a result of Defendants' exclusionary scheme, Varsity was able to charge supracompetitive prices in the three relevant markets, which Plaintiffs were forced to pay. Ex. 1 [Netz Rep.] at 38-39, 56-61; Ex. 3 [Heeb Rep.] at ¶¶ 293; Ex. 4 [Heeb Rebuttal] at ¶¶ 75-84, 649 & Tables 2, 24.

**Defendants' Response to 212:** Plaintiffs' assertion is not material because it does not affect the outcome of Defendants' Motion, as Plaintiffs do not even cite it in their Opposition.

In addition, Plaintiffs' assertion exclusively rests on inadmissible expert testimony. *See* Netz Daubert Mot., ECF No. 382-1; Heeb Daubert Mot., ECF No. 388-1.

This statement does not create a material dispute of fact because, although the statement is not true and in that sense is "disputed," it is neither material nor supported by evidence and it accordingly should be disregarded.

213.   Defendants' exclusionary scheme and acts of foreclosure allowed Varsity to charge higher prices to gyms and schools in the three relevant markets. As a result, Plaintiffs and putative class members suffered illegal overcharges of 27% on Cheer Competitions, 27% on Cheer Camps, and 11% on Cheer Apparel. Ex. 4 [Heeb Rebuttal] at ¶¶ 75-84, 649 & Tables 2, 24.

**Defendants' Response to 213:** Plaintiffs' assertion is not material because it does not affect the outcome of Defendants' Motion, as Plaintiffs do not even cite it in their Opposition.

Plaintiffs' assertion is a legal conclusion, not a statement of fact, and thus Defendants need not respond.  In addition, Plaintiffs' assertion exclusively rests on inadmissible expert testimony. *See* Heeb Daubert Mot., ECF No. 388-1.

For these reasons, Plaintiffs' asserted fact is immaterial and need not be decided to resolve Defendants' Motion, but it is disputed.

214.   ████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████

; Ex. 19 [Cherasaro Dep.] at 78:19 – 79:25 (the cheer families paid directly to the gyms, and the gyms paid directly to Varsity and gyms sell the uniforms at cost).

**Defendants' Response to 214:**  Plaintiffs' assertion is a legal conclusion, not a statement of fact, and thus Defendants need not respond.  In addition, Plaintiffs' cited evidence does not support this asserted fact and therefore should be disregarded.  Plaintiffs' proposed expert testimony is inadmissible.  *See* Maki Daubert Mot., ECF No. 391-1 at 9-16.  As to Plaintiffs' Exhibit 19, Plaintiffs seriously mischaracterize the testimony, which directly refutes Plaintiffs' claim of 100% passthrough.  The witness testified that her gym does not give her a refund if the price she paid to the gym for a competition was greater than the price the gym paid to Varsity.  Pls.' Ex. 19, Cherasero Dep. at 77:21-79:9.  The witness also testified that gyms get rebates from Varsity, and the gyms do not pass on those rebates to their customers, *id.* at 79:20-83:13, and that some gyms charge "a fee on top of the uniform cost"—not that "gyms sell the uniforms at cost," as Plaintiffs claim, *id.* at 82:13-19.  Plaintiffs claim that the testimony in Exhibit 37 shows Varsity's prices and Fusion Elite's prices trend in the same direction—but the cited testimony does not say anything of the sort.  Pls.' Ex. 37, Minzghor Dep. at 69:8-15.  Instead, the witness testified that Fusion Elite set its prices ███████████████ and that there was no "formula" to set prices.  *Id.* at 52:19-53:12.  Likewise, as to Plaintiffs' Exhibit 25, the witness testified that Fuel Athletics did not have a "formula" for its pricing: it took "a best guess."  Pls.' Ex. 25, Gurske Dep. at 95:14-19.  Finally, none of the cited testimony speaks to passthrough by schools.

This statement does not create a material dispute of fact because, although the statement is not true and in that sense is "disputed," it is neither material nor supported by evidence and it accordingly should be disregarded.

215.   Bain, USASF, and Varsity have been the focus of a number of news articles and media segments, as well as complaints from IEPs, gyms, and other industry participants, which have focused on Varsity's monopoly and abuse of its market power. For example, on August 24, 2021, HBO's Real Sports with Bryant Gumbel aired a program about allegations All Star Cheer participants regarding sexual abuse they were subjected to while competing with Varsity affiliated gyms. Ex. 20 [Cota Dep.] 257:9-260:24; Ex. 4 [Heeb Reb.] at ¶¶ 330-339 & n. 392 (citing Daniel Libit, "Varsity Cheerleading Faces Sex Abuse Claims Amid Antitrust Litigation," Sportico, Sep. 7, 2022); Ex. 76 at 7771-78 (6/28/2019).

**Defendants' Response to 215:**  Plaintiffs' assertion is not material because it does not affect the outcome of Defendants' Motion, as Plaintiffs do not even cite it in their Opposition.

Plaintiffs' cited materials are irrelevant and, even if deemed relevant, are substantially more prejudicial than probative, because Plaintiffs do not bring claims of abuse, and the assertion that certain media segments have covered Varsity is not probative of any relevant fact.  Fed. R. Evid. 401, 402, 403.  In any event, the cited testimony does not support the asserted facts.  At the cited testimony, Ms. Cota discusses certain statements she made on the Real Sports episode regarding Varsity and USASF, but none of the cited comments addresses complaints from IEPs, gyms, or other industry participants or address allegations of abuse.  In addition, the cited portion of Plaintiffs' Exhibit 4 is inadmissible hearsay, as Plaintiffs' expert merely recites media coverage and allegations from complaints in other actions.  *See*  Fed. R. Evid. 802.   Plaintiffs' Exhibit 76, which is a blast email complaint, is inadmissible for the same reason and because it lacks foundation.  Fed. R. Evid. 802, 602.

For these reasons, Plaintiffs' asserted fact is immaterial and need not be decided to resolve Defendants' Motion.

Dated: October 13, 2023

Respectfully submitted,

s/ Matthew S. Mulqueen

George S. Cary*
Steven J. Kaiser*
CLEARY GOTTLIEB STEEN & HAMILTON LLP
2112 Pennsylvania Avenue, NW
Washington, DC 20037
Phone: (202) 974-1500
Fax: (202) 974-1999
gcary@cgsh.com
skaiser@cgsh.com

Jennifer Kennedy Park*
Heather Nyong'o*
CLEARY GOTTLIEB STEEN & HAMILTON LLP
1841 Page Mill Road, Suite 250
Palo Alto, CA 94304
Phone: (650) 815-4100
Fax: (202) 974-1999
jkpark@cgsh.com
hnyongo@cgsh.com

* Admitted *pro hac vice*

Matthew S. Mulqueen (TN #28418)
Adam S. Baldridge (TN #23488)
BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ
165 Madison Avenue, Suite 2000
Memphis, TN 38103
Phone: (901) 526-2000
Fax: (901) 577-0866
mmulqueen@bakerdonelson.com
abaldridge@bakerdonelson.com

*Attorneys for Varsity Brands, LLC; Varsity Spirit, LLC; Varsity Spirit Fashions & Supplies, LLC; Charlesbank Capital Partners, LLC; Bain Capital Private Equity LP*

s/ Nicole Berkowitz Riccio

Grady Garrison (TN #008097)

144

Nicole Berkowitz Riccio (TN #35046)
James Andrew Roach (TN #37934)
BAKER, DONELSON, BEARMAN, CALDWELL
& BERKOWITZ
165 Madison Avenue, Suite 2000
Memphis, TN 38103
Phone: (901) 526-2000
Fax: (901) 577-0866
ggarrison@bakerdonelson.com
nriccio@bakerdonelson.com
aroach@bakerdonelson.com

*Attorneys for U.S. All Star Federation, Inc.*


s/ Brendan P. Gaffney

Paul E. Coggins*
Brendan P. Gaffney*
Kiprian E. Mendrygal*
Jennifer McCoy*
Katherine Wright
LOCKE LORD LLP
2200 Ross Avenue, Suite 2800
Dallas, TX 75201
Phone: (214) 740-8000
Fax: (214) 740-8800
pcoggins@lockelord.com
bgaffney@lockelord.com
kmendrygal@lockelord.com
jennifer.mccoy@lockeord.com
katie.wright@lockelord.com

* Admitted pro hac vice

Edward L. Stanton III (TN #018904)
S. Keenan Carter (TN # 023386)
BUTLER SNOW LLP
6075 Poplar Avenue, Suite 500
Memphis, Tennessee 38119
Telephone: (901) 680-7336
Fax: (901) 680-7201
Edward.Stanton@butlersnow.com
Keenan.carter@butlersnow.com

*Attorneys for Jeff Webb*

145

# APPENDIX A

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| JESSICA JONES et al., | |
| Plaintiffs, | |
| v. | Civ. Action No. 2:20-cv-02892 |
| VARSITY BRANDS, LLC et al., | |
| Defendants. | |

**DEFENDANTS' OBJECTIONS TO PLAINTIFFS' EVIDENCE**

Defendants Varsity Brands, LLC; Varsity Spirit, LLC; Varsity Spirit Fashions & Supplies, LLC (collectively, "Varsity"); U.S. All Star Federation, Inc. ("USASF"); Jeff Webb; Charlesbank Capital Partners LLC ("Charlesbank"); and Bain Capital Private Equity ("Bain") (together with Varsity, USASF, Jeff Webb, and Charlesbank, "Defendants") hereby submit the following objections to evidence submitted by Plaintiffs Jessica Jones and Christina Lorenzen ("Plaintiffs") in support of Plaintiffs' Opposition to Defendants' Joint Motion for Summary Judgment (ECF Nos. 477, 479-84, and 488-1; together, "Plaintiffs' Opposition").

As indicated below, Defendants summarily object to Plaintiffs' numerous citations to their proffered experts' testimony, including their interpretation or recitation of documents and testimony, as they are inadmissible. *See* Fed. R. Evid. 702, 403; ECF No. 382-1 (Netz Daubert Mot.); 388-1 (Heeb Daubert Mot.); ECF No. 391-1 (Maki Daubert Mot.); *see also Ask Chems., LP v. Comput. Packages, Inc.*, 593 F. App'x 510, 510 (6th Cir. 2014) ("Where an expert merely offers his client's opinion as his own, that opinion may be excluded."); *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 299 F. Supp. 3d 430, 584 (S.D.N.Y. 2018) (excluding testimony where economic expert "purport[ed] to interpret documents" because such "opinions are not the product of [his] expertise").

Defendants reserve all rights to object to all evidence submitted in connection with Plaintiffs' Opposition but not referenced in Plaintiffs' Opposition, including portions of transcripts not cited, and to object to evidence introduced at trial.

| No. | Pls.' SUF No. | Plaintiffs' Evidence | Objections |
|-----|---------------|----------------------|------------|
| 1 | 1, 2, 3, 4, 5 ,6, 7, 9, 10, 11, 12, 13, 14, 15, | Ex. 1 [Netz Rep.]; Ex. 2 [Netz Rebuttal Rep.]; Ex. 3 [Heeb Rep.]; Ex. | Inadmissible expert testimony. Fed. R. Evid. 702, 403; *see also Ask Chems., LP v. Comput. Packages, Inc.*, 593 F. App'x 510, 510 (6th Cir. 2014); *In re LIBOR-Based Fin. Instruments* |

| No. | Pls.' SUF No. | Plaintiffs' Evidence | Objections |
|---|---|---|---|
| | 16, 17, 18, 19, 20, 21, 22, 23, 29, 30, 33, 34, 38, 39, 41, 42, 44, 45, 46, 49, 50, 51, 52, 53, 54, 55, 56, 59, 60 61, 62, 63, 64, 65, 68, 69, 71, 72, 73, 74, 75, 76, 78, 79, 80, 81, 82, 83, 84, 88, 90, 91, 92, 95, 96, 97, 98 99, 100, 105, 106, 107, 108, 109, 110, 111, 112, 114, 115, 117, 118, 121, 122, 123, 126, 127, 130, 131, 133,134, 135, 137, 140, 141, 142, 143, 144, 145, 146, 147, 149, 150, 151, 156, 157, 158, 159, 160, 162, 163, 166, 167, 170, 171, 175, 182, | 4 [Heeb Rebuttal Rep.]; Ex. 5 [Aronoff Rep.]; Ex. 6 [Aronoff Rebuttal Rep.]; Ex. 7 [Maki Rep.]; Ex. 8 [Maki Rebuttal Report] | *Antitrust Litig.*, 299 F. Supp. 3d 430, 584 (S.D.N.Y. 2018). |

| No. | Pls.' SUF No. | Plaintiffs' Evidence | Objections |
|---|---|---|---|
| | 187, 194, 203, 204, 205, 206, 207, 208, 210, 211, 212, 213, 214 | | |
| 2 | 28 | Ex. 30 [Jones Dep.] at 34:21-36:6, 36:2-36:6. | The cited testimony is inadmissible hearsay. Fed. R. Evid. 802. |
| 3 | 42 | Ex. 12 [Elza Dep.] at 152:7-156:3. | The cited testimony is inadmissible for lack of foundation and personal knowledge.  Fed. R. Evid. 602. |
| 4 | 61 | Ex. 20 [Cota Dep.] at 53:15–21. | The cited testimony is inadmissible for lack of foundation and personal knowledge.  Fed. R. Evid. 602. |
| 5 | 64 | Ex. 20 [Cota Dep.] at 53:9-54:2. | The cited testimony is inadmissible for lack of foundation and personal knowledge.  Fed. R. Evid. 602. |
| 6 | 68 | Ex. 11 [Parrish Dep.] at 476:9-478:12. | The cited testimony purports to offer an expert opinion but the witness is not qualified as an expert witness.  Fed. R. Evid. 701, 702. |
| 7 | 75 | Ex. 101. | Contains inadmissible hearsay.  Fed. R. Evid. 802. |
| 8 | 77, 102, 103, 114, 156 | Ex. 102 | Contains inadmissible hearsay.  Fed. R. Evid. 802. Lack of personal knowledge. Fed. R. Evid. 602. Speculative.  *See Simmerman v. Ace Bayou Corp.*, 2016 WL 109944 at *3 (E.D. Ky. Jan. 8. 2016) ("Speculative testimony is inadmissible for lay and expert witnesses alike."). |
| 9 | 102 | Ex. 102 at 7. | The cited excerpt is inadmissible hearsay. Fed. R. Evid. 802. |
| 10 | 103 | Ex. 189 | Irrelevant as it predates the limitations period. Fed. R. Evid. 401. |
| 11 | 127 | Ex. 165 at 5259. | The cited testimony is inadmissible hearsay.  Fed. R. Evid. 802. |

| No. | Pls.' SUF No. | Plaintiffs' Evidence | Objections |
|---|---|---|---|
| 12 | 130 | Ex. 173. | Lack of personal knowledge Fed. R. Evid. 602. Speculative. *See Simmerman v. Ace Bayou Corp.*, 2016 WL 109944 at *3 (E.D. Ky. Jan. 8. 2016). |
| 13 | 131 | Ex. 133. | Contains inadmissible hearsay. Fed. R. Evid. 802. |
| 14 | 132 | Ex. 201 | Contains inadmissible hearsay. Fed. R. Evid. 802. |
| 15 | 133 | Ex. 136 | Contains inadmissible hearsay. Fed. R. Evid. 802. |
| 16 | 133, 134, 147, 157 | Ex. 132 | Lack of personal knowledge. Fed. R. Evid. 602. Speculative. *See Simmerman v. Ace Bayou Corp.*, 2016 WL 109944 at *3 (E.D. Ky. Jan. 8. 2016). |
| 17 | 137, 145, 146 | Ex. 139. | Contains inadmissible hearsay. Fed. R. Evid. 802. Irrelevant as it predates the limitations period. Fed. R. Evid. 401. |
| 18 | 140 | Ex. 190. | Irrelevant as it predates the limitations period. Fed. R. Evid. 401. |
| 19 | 140 | Ex. 191. | Irrelevant as it predates the limitations period. Fed. R. Evid. 401. Inadmissible under Fed. R. Evid. 401 and 403 as it relates to a non-voting seat on a USASF committee not at-issue in this case. |
| 20 | 140 | Ex. 200. | Irrelevant as it relates to emergency procedures not at issue in this case. Fed. R. Evid. 401. |
| 21 | 142 | Ex. 179. | Irrelevant as it predates the limitations period. Fed. R. Evid. 401. |
| 22 | 142 | Ex. 180. | Contains inadmissible hearsay. Fed. R. Evid. 802. |
| 23 | 142, 147 | Ex. 152. | Contains inadmissible hearsay. Fed. R. Evid. 802. |
| 24 | 148 | Ex. 95 | Contains inadmissible hearsay. Fed. R. Evid. 802. Violates the Best Evidence Rule. Fed. R. Evid. 1002. |
| 25 | 144 | Ex. 183. | Contains inadmissible hearsay under. Fed. R. Evid. 802. Irrelevant under Fed. R. Evid. 401. |

| No. | Pls.' SUF No. | Plaintiffs' Evidence | Objections |
|---|---|---|---|
| 26 | 144 | Ex. 184. | Contains inadmissible hearsay under. Fed. R. Evid. 802. |
| 27 | 144 | Ex. 185. | Contains inadmissible hearsay. Fed. R. Evid. 802. |
| 28 | 145, 146 | Ex. 187. | Contains inadmissible hearsay. Fed. R. Evid. 802. Irrelevant as it predates the limitations period. Fed. R. Evid. 401. |
| 29 | 146 | Ex. 186. | Contains inadmissible hearsay. Fed. R. Evid. 802. Irrelevant as it predates the limitations period. Fed. R. Evid. 401. |
| 30 | 147 | Ex. 63. | Contains inadmissible hearsay. Fed. R. Evid. 802. |
| 31 | 147 | Ex. 131. | Contains inadmissible hearsay. Fed. R. Evid. 802. |
| 32 | 147 | Ex. 137. | Contains inadmissible hearsay. Fed. R. Evid. 802. |
| 33 | 147 | Ex. 196. | Contains inadmissible hearsay. Fed. R. Evid. 802. |
| 34 | 147 | Ex. 199. | Contains inadmissible hearsay. Fed. R. Evid. 802. |
| 35 | 160 | Ex. 21 | Contains inadmissible hearsay.  Fed. R. Evid. 802. |
| 36 | 183 | Ex. 12 [Elza Dep.] at 281:23-282:10. | The cited testimony is inadmissible for lack of foundation and personal knowledge.  Fed. R. Evid. 602. |
| 37 | 189 | Ex. 12 [Elza Dep.] at 57:2-1. | The cited testimony is inadmissible hearsay.  Fed. R. Evid. 802. |
| 38 | 215 | Ex. 4 [Heeb Reb.] at ¶¶ 330-339 & n. 392. | The cited excerpt is inadmissible hearsay.  Fed. R. Evid. 802. |
| 39 | 215 | Ex. 76 at 7771-78. | Contains inadmissible hearsay and lacks foundation.  Fed. R. Evid. 802, 602. |