## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
## WESTERN DIVISION

**JESSICA JONES, et al.,**

        Plaintiffs,

v.

**VARSITY BRANDS, LLC, et al.**

        Defendants.

Case No. 2:20-cv-02892-SHL-tmp

---

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT

## TABLE OF CONTENTS

I.     INTRODUCTION ................................................................................1

II.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY ........................1

    A.    Factual Background ....................................................................1

        1.    Plaintiffs' Allegations .........................................................1

        2.    Defendants' Defenses.........................................................2

        3.    The *Fusion* Settlement.......................................................3

    B.    Litigation and Procedural History ...................................................3

III.   THE SETTLEMENT AGREEMENT ........................................................4

    A.    Settlement Classes .....................................................................5

    B.    Monetary Relief ........................................................................5

    C.    Prospective Relief ......................................................................6

        1.    Varsity's Squad Credentialling Program...................................6

        2.    Varsity's Rebate and Discount Programs ..................................7

        3.    Varsity's "Stay to Play" Program ...........................................7

        4.    USASF's Alleged Collusion with Varsity ..................................7

    D.    Release ...................................................................................8

    E.    Attorneys' Fees and Expenses; Service Awards....................................8

IV.    LEGAL STANDARDS AND ARGUMENT ................................................9

    A.    The Settlement Agreement Is Fair, Reasonable, and Adequate...................9

        1.    The Proposed Class was Adequately Represented, and the Proposed
Settlement is the Result of Arm's Length Negotiations...................10

        2.    The Proposed Settlement Provides Adequate Relief to Class Members ..........11

        3.    The Proposed Settlement Treats Settlement Class Members Equitably ..........13

        4.    The Proposed Settlement Satisfies the *UAW* Factors .......................14

    B.    Conditional Certification of the Settlement Classes Is Warranted.........................14

        1.    The Settlement Classes Meet the Requirements of Rule 23(a).......................15

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL OF SETTLEMENT**

2.      The Settlement Classes Meet the Requirements of Rule 23(b)........................17

C.      Appointment of Class Counsel and Class Representatives....................................19

D.      The Proposed Notice Plan is Adequate and Satisfies Rule 23(e) ..........................19

E.      Appointment of Settlement Administrator and Escrow Agent .............................20

F.      Final Approval Hearing and Proposed Schedule of Events ..................................20

V.      CONCLUSION...................................................................................................................20

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL OF SETTLEMENT**

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Amchem Prod., Inc. v. Windsor*, 521 U.S. 591 (1997)...................................................................17

*Beattie v. CenturyTel, Inc.*, 511 F.3d 554 (6th Cir. 2007) ...........................................................16

*Busby v. Bonner*, No. 2:20-CV-2359-SHL-ATC, 2021 WL 4127775
 (W.D. Tenn. Jan. 28, 2021)........................................................................................................9

*D.D. by Next Friend B.N. v. Mich. Dept. of Health and Human Servs.*,
 639 F. Supp. 3d 750 (E.D. Mich. 2022)...................................................................................18

*Does 1–2 v. Déjà*, 925 F.3d 886 (6th Cir. 2019)..........................................................................14

*Doster v. Kendall*, 342 F.R.D. 117 (S.D. Ohio 2022)..................................................................18

*Fitzgerald v. P.L. Mktg., Inc.*, No. 2:17-CV-02251-SHM-CGC,
 2020 WL 7764969 (W.D. Tenn. Feb. 13, 2020)......................................................12, 13, 16

*Fusion Elite All Stars, et al. v. Varsity Brands, LLC et al.*, No. 2:20-cv-02600-
 SHL-tmp (W.D. Tenn. Apr. 25, 2023)............................................................................. *passim*

*Fusion Elite All Stars v. Varsity Brands, LLC*, No. 2:20-cv-02600-SHL-tmp,
 2023 WL 6466398 (W.D. Tenn. Oct. 4, 2023) ..........................................................3, 12, 13

*Gokare v. Fed. Express Corp.*, No. 2:11-cv-2131, 2013 WL 12094887
 (W.D. Tenn. Nov. 22, 2013) ....................................................................................................12

*Gooch v. Life Invs. Ins. Co. of Am.*, 672 F.3d 402 (6th Cir. 2012) ..............................................19

*Hosp. Auth. of Metro. Gov't of Nashville & Davidson Cnty., Tenn. v. Momenta
 Pharms., Inc.*, 333 F.R.D. 390 (M.D. Tenn. 2019)...........................................................16, 18

*Hosp. Auth. of Metro. Gov't of Nashville v. Momenta Pharms., Inc.*, 2020 WL
 3053468 (M.D. Tenn. May 29, 2020).........................................................................................9

*In re Family Dollar Stores, Inc., Pest Infestation Litig.*, No. 2:22-MD-03032-
 SHL-TMP, 2023 WL 7112838 (W.D. Tenn. Oct. 27, 2023)......................................... *passim*

*In re Inter-Op Hip Prosthesis Liab. Litig.*, 204 F.R.D. 330 (N.D. Ohio 2001) ...........................15

*In re Packaged Ice Antitrust Litig.*, No. 08-MD-01952, 2010 WL 5638219
 (E.D. Mich. Sept. 2, 2010)........................................................................................................13

*In re Polyurethane Foam Antitrust Litig.*, 314 F.R.D. 226 (N.D. Ohio 2014) .............................16

*In re Seitel, Inc. Sec. Litig.*, 245 F.R.D. 263 (S.D. Tex. 2007) .......................................................16

*In re Skelaxin (Metaxalone) Antitrust Litig.*, No. 2:12-CV-83, 2014 WL 2946459
(E.D. Tenn. June 30, 2014) .........................................................................................................9

*In re Xyrem (Sodium Oxybate) Antitrust Litig.*, No. 20-MD-02966-RS,
2024 WL 1683640 (N.D. Cal. Apr. 17, 2024) ............................................................................5

*Int'l Union, United Auto., Aerospace, & Agr. Implement Workers of Am. v. Gen.
Motors Corp.*, 497 F.3d 615 (6th Cir. 2007)...........................................................................9, 10

*Leonhardt v. ArvinMeritor, Inc.*, 581 F. Supp. 2d 818 (E.D. Mich. 2008)...................................11

*Powers v. Hamilton Cty. Pub. Def. Comm'n*, 501 F.3d 592 (6th Cir. 2007) ................................17

*Sullivan v. DB Invs.,* 667 F.3d 273 (3d Cir. 2011)................................................................11, 18

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) .................................................................12

*Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532 (6th Cir. 2012*)* ..............................................16

**Federal Rules**

Fed. R. Civ. P. 12...............................................................................................................2, 14, 17

Fed. R. Civ. P. 23.................................................................................................................. *passim*

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL OF SETTLEMENT**

Pursuant to Fed. R. Civ. P. 23, Indirect Purchaser Plaintiffs Jessica Jones, Christina Lorenzen, and Amy Coulson ("Plaintiffs" or "Class Representatives"), on behalf of themselves and the proposed Settlement Classes, move as follows:

## I.    INTRODUCTION

On April 28, 2024, after nearly three-and-a-half years of intensely adversarial, hard-fought litigation, the Parties reached a settlement (the "Proposed Settlement"). In exchange for a release of Plaintiffs' claims, Defendants agreed to pay $82.5 million to the State Law Damages Class and, for the benefit of the Injunctive Relief Class, to implement important changes to business practices that Plaintiffs had challenged as anticompetitive. The Proposed Settlement is fair, reasonable, and adequate under Sixth Circuit standards, and the Settlement Classes meet Rule 23's requirements for provisional certification. For the reasons set forth below and in the supporting documents, Plaintiffs request, and Defendants do not oppose, that the Court enter the Proposed Order filed herewith (1) granting preliminary approval of the terms of the Proposed Settlement; (2) granting provisional certification of the proposed Settlement Classes; (3) appointing settlement class counsel and class representatives; (4) directing notice to the proposed State Law Damages Class; (5) appointing a claims administrator and escrow agent; and (6) scheduling a final approval hearing.[1] In connection with the Proposed Settlement, the Parties also seek appointment of Class Counsel pursuant to Rule 23(g).

## II.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### A.    Factual Background

#### 1.    Plaintiffs' Allegations

Plaintiffs alleged that Defendants violated federal antitrust laws and various state consumer protection laws by intentionally monopolizing, or conspiring to monopolize, the Cheer Competitions, Cheer Camps, and Cheer Apparel markets (the "Relevant Markets"). *See*

---

[1] Unless otherwise noted, all capitalized terms herein shall have the same meanings as in the Settlement Agreement. *See* Declaration of Joseph R. Saveri ("Saveri Decl."), Exhibit 1.

Plaintiffs' Second Amended Class Action Complaint, ECF No. 576. Plaintiffs alleged that

Defendants obtained and maintained Varsity's monopoly through an exclusionary scheme that

included the strategic acquisitions of Varsity's competitors, exclusive dealing agreements with

All Star Gyms and schools, and collusion with USASF, the governing body for All Star Cheer.

*Id*. Plaintiffs claimed that Defendants' alleged anticompetitive conduct foreclosed competition in

the Relevant Markets, enabling Varsity to charge artificially inflated prices for its products and

services in the Relevant Markets. *Id*. According to Plaintiffs, Defendants' conduct caused the

Settlement Classes antitrust injury when the overcharges paid by Varsity's direct purchasers—

i.*e.*, All Star Gyms and schools—were passed through to the Settlement Classes. *Id*.

## 2. Defendants' Defenses

Defendants consistently maintained that Plaintiffs' claims were factually and legally

deficient. *See, e.g.*, ECF Nos. 466–473 (Defendants' Joint Motion for Summary Judgment); ECF

No. 581 (Defendants' Joint Motion to Dismiss Second Amended Complaint); ECF Nos. 586

(Varsity's Answer to Second Amended Complaint). Defendants' arguments included (a)

challenges to the timeliness of Plaintiffs' claims and the legal theories they relied upon; (b)

challenges to Plaintiffs' market definitions, class allegations, and damages methodology; (c)

assertions that Defendants' alleged anticompetitive conduct, including Varsity's challenged

acquisitions and alleged exclusive dealing arrangements, was in fact procompetitive; and (d)

claims that Varsity and USASF acted independently of one another and in procompetitive ways.

Further, Defendants argued that Plaintiffs could not meet Rule 23's certification requirements.

*See* ECF No. 421. Plaintiffs were able to defeat many of Defendants' arguments in the context of

Defendants' various Rule 12 and *Daubert* motions.[2] But while Plaintiffs were confident in their

ability to prevail on class certification, summary judgment, and at trial, they understand that the

---

[2] Plaintiffs' claims under Tennessee's antitrust law are limited to Defendants' conduct in the
Cheer Apparel Market, and the Court dismissed Plaintiffs' claims on behalf of a nationwide
damages class. *See* ECF No. 333 at 43; ECF No. 475 at 32. Otherwise, virtually all of Plaintiffs'
state antitrust law and consumer protection law claims have survived. *See* ECF Nos. 332, 333,
475. In addition, the Court denied Defendants' motion to strike the Statewide Damages Class due
to alleged predominance and manageability deficiencies. *See* ECF No. 475 at 2.

risk of unfavorable outcomes and lengthy delays remained.

### 3.      The *Fusion* Settlement

On April 25, 2023, the Court preliminarily approved the settlement achieved by direct purchaser plaintiffs in the related case *Fusion Elite All Stars, et al. v. Varsity Brands, LLC et al.*, No. 2:20-cv-02600-SHL-tmp (W.D. Tenn. Apr. 25, 2023) ("*Fusion*" or "*Fusion* Action").[3] *See* ECF No. 336 ("*Fusion* Order"). Under the terms of the *Fusion* settlement, Varsity and USASF agreed to pay $43.5 million in installments to the settlement classes and implement reforms with respect to Varsity's discount and rebate programs and USASF's governance structure. *See Fusion* Action, ECF No. 329-1 ("*Fusion* Settlement"), ¶¶ 10, 30. The Court granted final approval of the *Fusion* Settlement on October 4, 2023. *See Fusion Elite All Stars v. Varsity Brands, LLC*, No. 2:20-cv-02600-SHL-tmp, 2023 WL 6466398 (W.D. Tenn. Oct. 4, 2023). There were no objections to the *Fusion* Settlement.

### B.      Litigation and Procedural History

Plaintiffs initiated this Action on December 10, 2020. *See* ECF No. 1. Over the next three-and-a-half years, Plaintiffs and proposed Class Counsel vigorously pursued Plaintiffs' claims on behalf of the Settlement Classes. On March 12, 2021, Defendants filed four motions to dismiss and one motion to strike. *See* ECF Nos. 55, 57–60. Plaintiffs' claims and class allegations on behalf of the Settlement Classes survived almost entirely intact. *See supra*, n.2. Discovery was extensive and hotly contested and featured significant motion practice before Magistrate Judge Pham. *See* Saveri Decl., ¶ 12. On many occasions, the Parties sought review of those rulings by the Court. *See, e.g.*, ECF No. 199. Fact discovery closed on April 18, 2022, and expert discovery closed on January 24, 2023.[4] *See* ECF Nos. 175, 342. Plaintiffs retained four experts:

---

[3] Because this Action and *Fusion* are based on the same set of underlying facts, the Court initially ordered discovery to be coordinated between them (along with a third related action). *See* ECF Nos. 45, 47, 159.

[4] During the discovery period, hundreds of thousands of documents were produced by Defendants, current and former employees of Defendants, and third parties. *See* Saveri Decl. ¶ 11. Forty-five depositions were conducted, including six expert depositions. *Id.,* ¶ 13, 15.

Dr. Janet S. Netz, Dr. Randal Heeb, Dr. Jen Maki, and James H. Aronoff; Defendants retained

two experts: Dr. Kevin Murphy and Jonathan Orszag. On February 10, 2023, Plaintiffs filed three

separate motions to (1) certify the classes, (2) appoint lead counsel, and (3) to exclude

Defendants' experts.[5] *See* ECF Nos. 380, 384, 387. Defendants filed four separate *Daubert*

motions on the same day. *See* ECF Nos. 382, 385, 388, 391. On February 23, 2023, Plaintiffs

filed a motion to add Amy Coulson as class representative. *See* ECF No. 394; *see also* ECF No.

591 (granting motion). On July 28, 2023, Defendants moved for summary judgment. *See* ECF

Nos. 466–473. The Court has adjudicated the Parties' *Daubert* motions. *See* ECF Nos. 568, 573,

577, 579, 580. On March 12, 2024, Defendants moved to dismiss virtually all the state law

claims in Plaintiffs' Second Amended Complaint other than those brought under Colorado and

Kansas law.[6] *See* ECF No. 581. Trial was scheduled for July 8, 2024. ECF No. 564. This

litigation has been hotly contested during the entirety of its pendency. *See* Saveri Decl., ¶¶ 4–29.

The Parties are represented by some of the leading law firms in the United States specializing in

the prosecution, and defense, of civil private antitrust class action litigation. *Id*. ¶ 37.

## III.    THE SETTLEMENT AGREEMENT

The Proposed Settlement contains the following key terms:

---

[5] Plaintiffs class certification and leadership motions are fully briefed and pending adjudication. *See* ECF Nos. 387, 420, 453; ECF Nos. 380, 398, 407. With respect to Rule 23(g), Plaintiffs submit the resumes of: (1) Joseph Saveri Law Firm, LLP; (2) Gustafson Gluek PLLC (3) Hartley LLP; (4) Paul LLP; and (5) Turner Feild, PLLC. *See* Saveri Decl. ISO Motion to Appoint Lead Counsel (ECF No. 380-2), Exhibits 1 – 5 (ECF Nos. 380-2 – 380-5). In addition, the Court can rely on its own experience regarding the performance of counsel to date.

[6] Plaintiffs dispute Defendants' arguments in the pending motion to dismiss, but they have not had the opportunity to respond because all litigation deadlines have been held in abeyance since April 1, 2024. *See* ECF No. 603.

## A.     Settlement Classes

The proposed Settlement Classes are:[7]

> <u>State Law Damages Class</u>: All natural persons and entities in
> Arizona, Arkansas, California, Connecticut, the District of
> Columbia, Florida, Hawaii, Idaho, Iowa, Kansas, Maine,
> Massachusetts, Maryland, Michigan, Minnesota, Mississippi,
> Missouri, Montana, Nebraska, Nevada, New Hampshire, New
> Mexico, New York, North Carolina, North Dakota, Oregon, Rhode
> Island, South Dakota, Tennessee, Utah, Vermont, Washington,
> West Virginia, and Wisconsin, that indirectly paid Varsity or any
> Varsity subsidiary or affiliate, from December 10, 2016, through
> March 31, 2024, for: (a) registration, entrance, or other fees and
> expenses associated with participation in one or more Varsity
> Cheer Competitions; (b) Varsity Cheer Apparel; (c) Varsity Cheer
> Camp Fees; or (d) accommodations at one or more Varsity Cheer
> Competitions.

> <u>Injunctive Relief Class</u>: All natural persons and entities in the
> United States that indirectly paid Varsity or any Varsity subsidiary
> or affiliate, from December 10, 2016, through March 31, 2024, for:
> (a) registration, entrance, or other fees and expenses associated
> with participation in one or more Varsity Cheer Competitions,
> including registration fees to USASF; (b) Varsity Cheer Apparel;
> (c) Varsity Cheer Camp Fees; or (d) accommodations at one or
> more Varsity Cheer Competitions, including registration fees to
> USASF.

Plaintiffs seek certification of the State Law Damages Class on an opt-out basis pursuant

to Fed. R. Civ. Pro 23(b)(3). Plaintiffs seek certification of the Injunctive Relief Class pursuant to

Fed. R. Civ. Pro. 23(b)(2).

## B.     Monetary Relief

Defendants agree to pay $82.5 million in two installments to create an all cash Settlement

---

[7] The class period in the operative complaint was "from December 10, 2016, until the continuing
Exclusionary Scheme alleged herein ends." *See* ECF No. 576, ¶¶ 44–45; *see also* ECF No. 387
(Plaintiffs' Motion for Class Certification) at 10. For settlement purposes, it is "appropriate and
necessary" to base the end date on when the Parties settled. *In re Xyrem (Sodium Oxybate)
Antitrust Litig.*, No. 20-MD-02966-RS, 2024 WL 1683640, at *2 (N.D. Cal. Apr. 17, 2024).
Here, Plaintiffs agreed to define the class period as ending on March 31, 2024, a date certain
prior to the Settlement Agreement execution date.

Fund for the benefit of the Settlement Classes. *See* SA at 6 ("Settlement Fund Amount"); *see also* SA, ¶ 16. The first installment is capped at $2.5 million and will cover the notice and settlement administration fees. *Id.*, ¶ 16(a). Defendants will pay the remainder within 30 days from the date the Court's Final Approval is no longer subject to appeal. *Id.*, ¶ 16(b). All State Law Damages Class members will receive payments from the Settlement Fund in accordance with Plaintiffs' proposed Plan of Allocation. *See infra*, § IV.A.3. If the Proposed Settlement is approved, Defendants shall have no reversionary interest in any monies remaining in the Settlement Fund. *See* SA, ¶¶ 16(a), 32.

### C.    Prospective Relief

The Proposed Settlement provides the following prospective relief to the Injunctive Relief Class, effective from April 28, 2024, through April 27, 2029. *Id.*, ¶ 33. The prospective relief mitigates certain aspects of the conduct that Plaintiffs challenged as anticompetitive in this Action. Defendants dispute that any such conduct, even if proved, was anticompetitive or a violation of law.

#### 1.    Varsity's Squad Credentialling Program

Plaintiffs allege, and Defendants dispute, that Varsity's Squad Credentialling Program foreclosed competition in the Cheer Camps market by requiring School Cheer athletes to attend a Varsity-run Cheer Camp to be eligible to compete at Varsity's year-end national championships. *See* ECF No. 480, Plaintiffs' Statement of Undisputed Facts ("PSOF"), ¶¶ 20–22, 85–89. Under the terms of the Proposed Settlement, Varsity agreed that it "will not condition a Competitive Cheer athlete or team's eligibility to compete at an end-of-season championship competition on prior participation at a Varsity-owned Cheer Camp." SA, ¶ 33(a). To the extent that Varsity continues to require completion of its Squad Credentialing Program for attendance at one of its events, Varsity will make such credentialing available "without requiring attendance at a camp" and at a "reasonable cost." *Id.*

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL OF SETTLEMENT**

### 2. Varsity's Rebate and Discount Programs

Plaintiffs claim, and Defendants dispute, that Varsity's alleged first-dollar rebate programs were de facto exclusive dealing arrangements that leveraged Varsity's market power to foreclose competition in the Relevant Markets. *See* PSOF ¶¶ 117–126. Under the terms of the Proposed Settlement, Varsity agreed that it "will not offer or require exclusive purchasing arrangements as a condition for participation in the Varsity Family Plan, Network Program, or any rebate or discount program relating to Cheer Competitions." SA ¶ 33(b). This provision builds on top of the *Fusion* Settlement, which bars Varsity from requiring "attendance at more than three All Star Events during a single regular season as a condition of receiving Varsity's lowest tier of rebates or discounts," by precluding exclusive dealing conduct in the School Cheer markets. *Fusion* Settlement, ¶ 30(a)(2).

### 3. Varsity's "Stay to Play" Program

Plaintiffs allege, and Defendants dispute, that Varsity abused its power in the Cheer Competitions market by implementing a "Stay to Play" (or "Stay Smart") policy that required teams participating in Varsity Cheer Competitions to stay at hotels that allegedly were pre-selected by Varsity and more expensive than where participants might otherwise choose to stay. *See* PSOF, ¶¶ 127–129. Plaintiffs further alleged that Varsity received undisclosed kickbacks from the hotels for rooms booked through the Stay to Play program. *Id.*, ¶ 128. Also, Plaintiffs claimed that Varsity allegedly exploited its Stay to Play policy to ban rival Cheer Apparel manufacturers from displaying their products at hotels. Under the terms of the Proposed Settlement, Varsity agreed that it "will not require participants in 35% or more of its Cheer Competitions to stay at Varsity-approved accommodations as a prerequisite to their participation in Varsity-owned Cheer Competitions, including, without limitation, through Varsity's Stay to Play or Stay Smart programs." SA, ¶ 33(b).

### 4. USASF's Alleged Collusion with Varsity

Plaintiffs allege, and Defendants dispute, that USASF successfully conspired with Varsity

by setting probationary attendance limits for competitions and then secretly sharing with Varsity confidential information provided by Varsity's rivals for the purpose of allowing Varsity to effectively "counterprogram" non-Varsity competitions to lower their attendance below the probationary threshold. *Id.*, ¶¶ 134–36, 143. According to Plaintiffs, Varsity employed its counterprogramming strategy to eliminate or diminish events owned by Varsity's competitors and foreclose competition in the Cheer Competitions and Cheer Apparel markets. *Id.*, ¶¶ 109–12. Under the terms of the Proposed Settlement, USASF agreed that it "will not disclose to any of its event producer members confidential information regarding cheer competition schedules or attendance records shared with USASF by another event producer that is affirmatively identified by that event producer member as "confidential" and either "not to be shared with any other USASF member" or other similar language." *Id.*, ¶ 33(d). Further, USASF agreed to provide notice to its event producer members of their ability to designate information shared with USASF as confidential (1) within 30 days of the Court's final approval of the Proposed Settlement and (2) when it circulates event producer membership applications each year. *Id.* This relief builds on the *Fusion* Settlement, which limits Varsity's participation on USASF's Board of Directors and Sanctioning Committees. *See Fusion* Settlement, ¶¶ 30(b)–(f).

### D.    Release

In exchange for the monetary and prospective relief set forth in the Settlement Agreement and described above, Defendants and related parties will receive a release of all claims that have been or could have been brought by the proposed Settlement Class Members based on the matters alleged or referred to in the Second Amended Complaint. *See* SA, ¶¶ 10–12.

### E.    Attorneys' Fees and Expenses; Service Awards

The Settlement Agreement provides that proposed Settlement Class Counsel may seek approval for attorneys' fees and costs and service awards for Class Representatives. *See Id.*, ¶¶ 26, 29. Settlement Class Counsel in due course intend to seek an award for attorneys' fees and costs equal to one-third (33 1/3%) of the Settlement Fund Amount plus reimbursable litigation

costs of $9,250,249.14. Settlement Class Counsel will also seek service awards for Class

Representatives to be paid from the Settlement Fund Amount, in the amount of $50,000 each for

Jessica Jones and Christina Lorenzen and $25,000 for Amy Coulson ($125,000 total).[8] The

proposed service awards are within the range of recent service awards in this Circuit. *See, e.g.*, *In

re Skelaxin (Metaxalone) Antitrust Litig.*, No. 2:12-CV-83, 2014 WL 2946459, at *4 (E.D. Tenn.

June 30, 2014) (awarding $50,000 each to the class representatives); *Hosp. Auth. of Metro. Gov't

of Nashville v. Momenta Pharms., Inc.*, 2020 WL 3053468, at *2 (M.D. Tenn. May 29, 2020)

(awarding $200,000 each to the class representatives).

## IV.    LEGAL STANDARDS AND ARGUMENT

### A.    The Settlement Agreement Is Fair, Reasonable, and Adequate

The Sixth Circuit "favor[s] settlement of class actions." *Int'l Union, United Auto.,

Aerospace, & Agr. Implement Workers of Am. v. Gen. Motors Corp.*, 497 F.3d 615, 632 (6th Cir.

2007) ("*UAW*"). At this stage, a court must determine whether it "will likely be able to . . .

approve the proposal under Rule 23(e)(2)." Fed. R. Civ. P. 23(e)(1)(B)(i). Under Rule 23(e)(2), a

court may approve a proposed settlement that "would bind class members" only on finding that it

is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). Consideration must be given to

whether "(A) the class representatives and class counsel have adequately represented the class;

(B) the proposal was negotiated at arm's length; (C) the relief provided for the class is

adequate . . .  and (D) the proposal treats class members equitably relative to each other." Fed. R.

Civ. P. 23(e)(2)(A)–(D); *Fusion* Order at 11; *Busby v. Bonner*, No. 2:20-CV-2359-SHL-ATC,

2021 WL 4127775, at *2–3 (W.D. Tenn. Jan. 28, 2021). The Sixth Circuit also considers the

seven partially overlapping factors articulated in *UAW* (the "*UAW* factors"). *See UAW*, 497 F.3d

at 631. The Proposed Settlement satisfies Rule 23(e)(2)'s requirements, as well as the *UAW*

---

[8] Class Counsel is not asking the Court to grant the proposed service awards at this time and will
seek approval of service awards in a subsequent motion.

factors, and should be preliminarily approved.[9]

## 1.    The Proposed Class was Adequately Represented, and the Proposed Settlement is the Result of Arm's Length Negotiations

In the *Fusion* Action, the Court determined that the first two factors for preliminary approval were met on account of (1) the length and intensity of the litigation in that action; (2) the parties' participation in a "series of negotiations before a mediator"; (3) and the demonstrated competence of the parties' counsel via "their discovery and motion practice"; and (4) because the "factual record was sufficiently developed for Counsel to make an informed decision as to settlement and settlement value." *Fusion* Order at 11. The Court found that the *Fusion* Settlement was negotiated at arm-length "for many of the same reasons." *Id.*

Here, the same factors have been satisfied, but even more so. First, this Action is more advanced than the *Fusion* Action was when it settled by almost one year. Whereas the *Fusion* Action came to a halt "mere days before the initial deadline for class certification and *Daubert* Motions," *see Fusion* Order at 12, this Action progressed well beyond that and settled shortly before trial with trial preparations significantly completed. *See* Saveri Decl., ¶¶ 29–32. Plaintiffs' motion for class certification and Defendants' summary judgment motions are fully briefed and pending before the Court, and the Court already ruled on the Plaintiffs' and Defendants' *Daubert* motions. Second, the Proposed Settlement is the culmination of a series of negotiations before a mediator, after two prior mediation efforts failed. *Id.*, ¶¶ 30, 31. Third, Settlement Class Counsel have demonstrated their competence through extensive discovery and intensely adversarial motion practice. *Id.*, ¶¶ 5–28. Fourth, the factual record was necessarily more developed in this Action than it was in the *Fusion* Action, and thus the Parties' counsel were better informed as to the Parties' respective prospects for success and the alleged value of Plaintiffs' claims. For these reasons, and since there is no evidence to the contrary, the Court may presume that the Proposed

---

[9] The *UAW* factors are "(1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest." *UAW*, 497 F.3d at 631 (citation omitted).

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT**

Settlement was the result of an adversarial, informed, and arms-length process. *Id.*; *see also*

*Leonhardt v. ArvinMeritor, Inc.*, 581 F. Supp. 2d 818, 838 (E.D. Mich. 2008).

### 2.    The Proposed Settlement Provides Adequate Relief to Class Members

Rule 23(e)(2)(C) requires a court to consider whether "the relief provided for the class is

adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the

effectiveness of any proposed method of distributing relief to the class, including the method of

processing class-member claims; (iii) the terms of any proposed award of attorney's fees,

including timing of payment; and (iv) any agreement required to be identified under Rule

23(e)(3)." Here, the Proposed Settlement provides more than adequate relief.

First, the relief provided by the Proposed Settlement is meaningful and substantial.

Standing alone, the monetary recovery of $82.5 million in cash for the State Law Damages Class

constitutes approximately 67% of the single damages computed by Plaintiffs' damages experts

through 2020, the period for which Plaintiffs' experts had data on which to calculate damages.

*See* Saveri Decl., ¶ 11; *compare Sullivan v. DB Invs.*, Inc., 667 F.3d 273, 324 (3d Cir. 2011)

(affirming finding of adequate relief where settlement provided indirect purchasers 10.93% of

single damages). Other than an initial payment to fund notice, there are no installment payments.

The Proposed Settlement also provides prospective relief to the Injunctive Relief Class, involving

important changes to certain of Varsity's and USASF's business practices that Plaintiffs had

challenged as anticompetitive. "Taken together, the [Proposed] Settlement remedies . . . past

harms while also enacting changes . . . that will prevent future harms." *Fusion* Order at 12.

Second, the Proposed Settlement "allows class members to avoid the significant risks and

uncertainties inherent in trials and appeals." *In re Family Dollar Stores, Inc., Pest Infestation*

*Litig.*, No. 2:22-MD-03032-SHL-TMP, 2023 WL 7112838, at *11 (W.D. Tenn. Oct. 27, 2023)

(Lipman, J.). Defendants consistently maintained that Plaintiffs' claims were factually and

legally deficient. *See supra*, § II.A.2. "While the Court denied [the majority of Defendants']

challenges within the context of . . . motion[s] to dismiss . . . these contentions would still

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL OF SETTLEMENT**

presumably be raised at trial" and expose the Settlement Classes to significant risk. *Fusion* Order at 13; *see also Fitzgerald v. P.L. Mktg., Inc.*, No. 2:17-CV-02251-SHM-CGC, 2020 WL 7764969, at *12 (W.D. Tenn. Feb. 13, 2020) ("[I]t is fair to say that there would have been an uncertain outcome, and significant risk on both sides, had this case gone to trial."). Accordingly, "[t]he uncertainty as to the outcome counsels in favor of [approval]." *Fusion* Order at 13.

Third, Plaintiffs' Notice Plan and Plan of Allocation will be effective. "[T]he goal of any distribution method is to get as much of the available damages remedy to class members as possible and in as simple and expedient a manner as possible." *Fitzgerald*, 2020 WL 7764969, at *12 (quotation marks and citation omitted). The Notice Plan is strategically designed to deliver an approximate 80% reach to the proposed State Law Damages Class with an estimated 20% claims rate.[10] *See* Declaration of Steven Weisbrot, Esq. ("Weisbrot Decl."), ¶¶ 21, 60. All State Law Damages Class members, who timely submit a valid claim, will receive their pro rata share of the Net Settlement Fund according to a simple calculation method.[11] *See infra*, § IV.A.3.

Fourth, argument with respect to attorneys' fees is "premature" and will be raised "after the close of the notice and claims period in the Court's consideration of final approval." *Family Dollar Stores*, 2023 WL 7112838, at *6. Still, the one-third currently contemplated by Settlement Class Counsel is "certainly within the range of fees often awarded in common fund cases, both nationwide and in the Sixth Circuit." *Fitzgerald,* 2020 WL 7764969, at *12 (quotation marks and citation omitted); *see also Gokare v. Fed. Express Corp.*, No. 2:11-cv-2131, 2013 WL 12094887, at *4 (W.D. Tenn. Nov. 22, 2013) (collecting cases in which Sixth Circuit courts have approved attorney's fee awards in common fund cases ranging from 30% to 33% of the total fund); *Fusion*,

---

[10] Due process does not require notice to the Injunctive Relief Class, because a class certified under Rule 23(b)(2) is "mandatory," providing no right to opt out. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 362 (2011). "The Rule provides no opportunity for . . . class members to opt out, and does not even oblige the District Court to afford them notice of the action." *Id.*

[11] The "Net Settlement Fund" is the Settlement Fund Amount after deductions for (a) the expenses of the Settlement Administrator and the costs of notice to the proposed Settlement Classes; (b) any tax obligation incurred as a result of interest earned on the Settlement Fund Amount; and (c) Settlement Class Counsel's Fee and Cost Amount and any Class Representative service awards.

2023 WL 6466398, at *8 (approving request for attorneys' fees of one-third plus reasonable interest). The request is also well supported by the fact that the case was settled close to trial.

Fifth, the Parties entered a Supplemental Agreement whereby Defendants may choose to rescind the Settlement Agreement "if a certain number of potential Settlement Members timely exclude themselves[.]" SA, ¶ 35. The Parties have agreed to keep the terms of the Supplemental Agreement confidential. *Id.* Pursuant to Rule 23(e)(3), Plaintiffs will bring the substantive content of the Supplemental Agreement to the attention of the Court in a confidential letter. *Id.*

### 3.    The Proposed Settlement Treats Settlement Class Members Equitably

Rule 23(e)(2)(D) requires a court to determine whether the "proposal treats class members equitably relative to each other." Fed. R. Civ. Pro. 23(e)(2)(D). For example, "whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief." Fed. R. Civ. P. 23(e)(2) advisory committee notes to 2018 amendment. Here, the Proposed Settlement "has no obvious deficiencies [and] does not improperly grant preferential treatment to Class Representatives[.]" *In re Packaged Ice Antitrust Litig.*, No. 08-MD-01952, 2010 WL 5638219, at*1 (E.D. Mich. Sept. 2, 2010).

First, all State Law Damages Class Members will receive payment from the Net Settlement Fund and will only be excluded from receiving payment if they timely and validly opt out of the Proposed Settlement. *See* SA, ¶ 22. Second, the Plan of Allocation takes appropriate proportional account of differences among Settlement Class members' claims. *See* Saveri Decl., ¶ 33; *see also Fitzgerald*, 2020 WL 7764969, at *13 (finding treatment of class members equitable where proposal used "point-based system" that weighted individual awards by the number of weeks class members worked without overtime compensation and accounted for other differences in value of claims). Third, the proposed service awards are commensurate with the time and effort each Class Representative expended in advancing this litigation, and the risks they took and courage they showed in pursuing claims against what Plaintiffs alleged was a powerful monopoly in an industry they deeply cared about, on behalf of hundreds of thousands

of absent cheer families who did not take on the risk.[12] Plaintiffs will set forth the bases for service awards to the Plaintiffs in a subsequent motion. Fourth, the Proposed Settlement's release applies equally to all Settlement Class members without exception. *See* SA, ¶¶ 10–14.

### 4.    The Proposed Settlement Satisfies the *UAW* Factors

The first four *UAW* factors directly overlap with the Rule 23(e)(2) requirements discussed above. Consideration of the sixth *UAW* factor is "premature" because "the reaction of the absent class members is currently unknown." *Family Dollar Stores*, 2023 WL 7112838, at *12. The Proposed Settlement satisfies the remaining two factors. Settlement Class Counsel believe that the Proposed Settlement has no deficiencies and treats all Settlement Class members equitably, and the Class Representatives considered and signed the Proposed Settlement. *See* Saveri Decl., ¶ 37. Further, there is a "[t]here is a strong public interest in encouraging settlement of complex litigation and class action suits because they are notoriously difficult and unpredictable and settlement conserves judicial resources." *Does 1–2 v. Déjà vu Servs., Inc.*, 925 F.3d 886, 899 (6th Cir. 2019). This Action "fits squarely into that description—complex and unpredictable." *Family Dollar Stores*, 2023 WL 7112838, at *13. The *UAW* factors are thus satisfied.

### B.    Conditional Certification of the Settlement Classes Is Warranted

The grounds for certification are well-established, including an extensively developed factual record, supported by the testimony of expert economists. Plaintiffs' motion for class certification showing the requirements of Rules 23(a) and (b) are satisfied is fully briefed and has been pending since May 25, 2023. *See supra*, n.5. Since then, the Court has issued a series of orders on various motions which favor certification of the Settlement Classes. For example, on August 31, 2023, in the context of Defendants' Rule 12(f) motion to strike class allegations, the Court held that Plaintiffs' claims satisfied the Rule 23(a) prerequisites for certification and Rule

---

[12] The total proposed service awards in this Action account for a maximum 0.145% of the Settlement Fund. In *Fusion*, the Court approved total service awards accounting for 0.172% of the settlement fund. *See Fusion* Order at 15.

23(b)'s predominance requirement.[13] *See* ECF No. 475 at 20, 31. Further, Plaintiffs' common

expert testimony with respect to liability and damages survived Defendants' *Daubert* challenges

virtually entirely. *See* ECF Nos. 577, 579, 580.

### 1.    The Settlement Classes Meet the Requirements of Rule 23(a)

#### a.    The Proposed Classes Are Numerous

A class must be "so numerous that joinder of all members is impractical." Fed. R. Civ. P.

23(a)(1). "The numerosity requirement is also satisfied more easily upon a showing that there is

wide geographical diversity of class members, which makes joinder . . . more impracticable." *In*

*re Inter-Op Hip Prosthesis Liab. Litig.*, 204 F.R.D. 330, 339 (N.D. Ohio 2001) (quotation marks

and citation omitted). Here, based on discovery in the case and Plaintiffs' expert testimony,

Settlement Class Counsel believe that the State Law Damages Class contains approximately

340,000 individuals across 34 states, while the Injunctive Relief Class is composed of millions of

members nationwide. *See* Saveri Decl. ¶ 27. Both classes are "indisputably so numerous . . . and

geographically dispersed" that joinder is impracticable. *Fusion* Order at 4.

#### b.    Common Questions of Law and Fact Predominate

Under Rule 23(a)(2), there must be "questions of law or fact common to the class."

"Even a single common question will do." *Id.* (quotation marks and citation omitted). Here,

Settlement Class Members "share many factual and legal issues, including whether Varsity had

market power, whether Defendants conspired, and whether the challenged conduct violated . . .

antitrust [and consumer protection] laws." *Id.* The commonality requirement is met.

#### c.    Class Representatives' Claims Are Typical

Rule 23(a)(3)'s typicality requirement is satisfied where, as here, class representatives'

"claim[s] arise[] from the same event or practice or course of conduct that gives rise to the

---

[13] The Court reserved the question of manageability for the class certification stage. *Id.* But Rule
23(b)(3)'s manageability requirement does not apply in the class settlement context. *See Fusion*
Order at 7, n.2 ("Confronted with a request for settlement-only class certification, a district court
need not inquire whether the case, if tried, would present intractable management problems . . .
for the proposal is that there be no trial.") (quotation marks and citation omitted).

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL OF SETTLEMENT**

claims of other class member." *Hosp. Auth. of Metro. Gov't of Nashville & Davidson Cnty., Tenn. v. Momenta Pharms., Inc.*, 333 F.R.D. 390, 404 (M.D. Tenn. 2019). In the antitrust context, typicality is established where class representatives and all class members allege the same antitrust violations by defendants and seek the same relief. *See Fusion* Order at 5. Here, "the claims of each Settlement Class are based on the same challenged conduct and same antitrust theories, and the Class Representatives . . . will seek the same overcharge damages [and injunctive relief] as the absent Settlement Class Members." *Id.* The typicality requirement is met.

### d.     Plaintiffs Are Adequate Representatives of the Classes

Rule 23(a)(4)'s adequacy requirement "serves to uncover conflicts of interest between named parties and the classes they seek to represent." *Fusion* Order at 5. "A class representative must be part of the class and possess the same interest and suffer the same injury as class members." *Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 562 (6th Cir. 2007) (quotation marks and citation omitted). Class members must not have "interests that are [] antagonistic to one another." *Id.* at 563 (quotation marks and citation omitted). Courts also "determine whether class counsel are qualified, experienced and generally able to conduct the litigation." *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 543 (6th Cir. 2012*)*. "Absent specific proof to the contrary, the adequacy of class counsel is presumed." *In re Seitel, Inc. Sec. Litig.*, 245 F.R.D. 263, 271 (S.D. Tex. 2007).

Settlement Class Counsel and Class Representatives are undoubtedly adequate here. First, there are no conflicts, let alone any "so substantial as to overbalance the common interests of the class members as a whole" and forestall certification. *In re Polyurethane Foam Antitrust Litig.*, 314 F.R.D. 226, 238–41 (N.D. Ohio 2014). The interests of Class Representatives and the proposed Settlement Classes are aligned because they "seek the same relief based on the same legal theory." *Fitzgerald*, 2020 WL 7764969, at *9. Second, Class Representatives are committed to vigorously pursuing the interests of the Settlement Classes through qualified class counsel. *See* ECF No. 389-15 (Declaration of Jessica Jones), ¶¶ 8–15; ECF No. 389-16 (Declaration of

Christina Lorenzen), ¶¶ 10–17; Declaration of Amy Coulson, submitted herewith, ¶¶ 16–21.
Third, Settlement Class Counsel "have demonstrated their experience and capability in
prosecuting antitrust class actions" and "dedicated millions of dollars and spent a significant
amount of time in and out of the courtroom litigating on behalf of the proposed Settlement
Classes for [over] three years." *Fusion* Order at 6; *see also* Saveri Decl., ¶¶ 5–29, 34.

### 2.    The Settlement Classes Meet the Requirements of Rule 23(b)

#### a.    Rule 23(b)(3): State Law Damages Class

Rule 23(b)(3), which requires that: (1) common questions predominate over individual
questions; and (2) a class action is superior to other methods of adjudication. "Predominance is a
test readily met in certain cases alleging . . . violations of the antitrust laws." *Fusion* Order at 7
(quoting *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 625 (1997)). The proposed Settlement
Classes meet both requirements.

Predominance is established where a common question "is at the heart of the litigation."
*Powers v. Hamilton Cty. Pub. Def. Comm'n*, 501 F.3d 592, 619 (6th Cir. 2007); *see also* Fusion
Order at 7. "[C]ommon issues may predominate when liability can be determined on a class-
wide basis, even when there are some individualized damage issues." *Id.* Here, just as in *Fusion*,
Plaintiffs' monopolization claims focus overwhelmingly on common issues, including "(1)
Defendants have monopoly power in a certain market, (2) obtained or maintained through willful
anticompetitive conduct, (3) that caused rising prices or lowering of output." *Id.* (quotation
marks and citation omitted).[14] Further, "[p]roof as to each claim in this action would necessarily
be common to all Settlement Class Members, insofar as the bulk of the issues relate to the
Defendants' alleged conduct that was directed at all members of the class." *Id.* at 7–8.

Certification is also supported by a showing of superiority. *See* Fed R. Civ. Pro. 23(b)(3).
With respect to superiority, courts generally consider (1) class members' interests in individually
controlling the prosecution; (2) the extent and nature of any litigation concerning the controversy

---

[14] The Court previously ruled in the context of Defendants' Rule 12(f) motion to strike class
allegations that Plaintiffs' claims satisfy the predominance requirement. *See* ECF No. 475 at 31.

already begun by class members; (3) the desirability of concentrating the claims in the forum; and (4) the likely difficulties in managing a class action. *See Momenta*, 333 F.R.D. at 414. Here, Plaintiffs' claims involve "multiple state legal frameworks and jurisdictions, and a complex web of Defendants' intermingled business entities; moreover, the remedy achievable by an individual plaintiff is wildly disproportionate to the costs of litigating to that end." *Family Dollar Stores*, 2023 WL 7112838, at *8. Second, there are no other lawsuits by proposed Settlement Class members. Third, concentration of claims in the Western District of Tennessee will make best use of the parties' resources. *See Momenta*, 333 F.R.D. at 414 (finding the third superiority factor met where "concentration of these claims in this Court is desirable, as it will streamline the resolution of the claims and conserve . . . resources"). Fourth, the manageability requirement does not apply in the class settlement context. *See Fusion* Order at 7, n.2.

### b.    Rule 23(b)(2): Injunctive Relief Class

Certification of an injunctive relief class under Rule 23(b)(2) is appropriate where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2); *see also D.D. by Next Friend B.N. v. Mich. Dept. of Health and Human Servs.*, 639 F. Supp. 3d 750 (E.D. Mich. 2022); *Doster v. Kendall*, 342 F.R.D. 117, 128 (S.D. Ohio 2022). Rule 23(b)(2)'s "general applicability" requirement is satisfied where the defendants' alleged conduct is "equally applicable to the class as a whole." *Sullivan v. DB Invs.*, Inc., 667 F.3d 273, 318 (3d Cir. 2011) (quotation marks omitted). Here, Plaintiffs, on behalf of themselves and the Injunctive Relief Class, sought "final relief" for conduct that allegedly "caused the entire membership of all classes to pay artificially inflated prices" and alleged that, "in the absence of injunctive relief, all classes would continue to pay artificial premiums." *Id.* (quotation marks and citation omitted); *see also* Second Amended Complaint, ¶¶ 267–68 (alleging continuing antitrust violations and seeking "equitable and injunctive relief . . . to correct for the anticompetitive market effects cause by Varsity's unlawful conduct, and to

assure that similar anticompetitive conduct and effects do not continue or reoccur in the future");
*see also id*., ¶¶ 297–98 (seeking declaratory relief). Plaintiffs' allegations demonstrate "shared
interests" between the Injunctive Relief Class members and thus "support injunctive relief
respecting the class as a whole." *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 318 (3d Cir. 2011).
Therefore, the requirements for certifying the Injunctive Relief Class are met.

### C.    Appointment of Class Counsel and Class Representatives

Plaintiffs previously filed a motion to appoint lead class counsel, which is fully briefed.
*See* ECF Nos. 380, 398, 407. For the same reasons, and pursuant to Rule 23(g), Plaintiffs request
that the Court appoint the Joseph Saveri Law Firm, LLP ("JSLF"), Paul LLP, Hartley LLP,
Gustafson Gluek PLLC, and Turner Feild, PLLC as Settlement Class Counsel. *See* ECF No. 380.

Appointment of Jessica Jones, Christina Lorenzen, and Amy Coulson as Settlement Class
Representatives is appropriate for the same reasons that they satisfy Rule 23(a)'s adequacy
requirement. *See supra*, § IV.B.1.d; *see also* ECF Nos. 380, 407; ECF Nos. 387, 453.

### D.    The Proposed Notice Plan is Adequate and Satisfies Rule 23(e)

Rule 23(e)(1) requires a court to "direct notice in a reasonable manner to all class
members who would be bound by the proposal." As the Sixth Circuit has described, "[a]ll that
the notice must do is fairly apprise . . .  prospective members of the class of the terms of the
proposed settlement so that class members may come to their own conclusions about whether the
settlement serves their interests." *Gooch v. Life Invs. Ins. Co. of Am.*, 672 F.3d 402, 423 (6th Cir.
2012) (quotation marks and citations omitted). Due process permits a variety of notice
mechanisms. "The notice may be by one or more of the following: United States mail, electronic
means, or other appropriate means." Fed. R. Civ. P. 23(c)(2)(B).

The Proposed Notice Plan satisfies the standards set by the Sixth Circuit, Rule 23, and
due process. Here, Plaintiffs' counsel have retained Angeion Group LLC ("Angeion") to serve as
Settlement Administrator. Angeion is a nationally recognized claims administration firm, and its
plans have been approved on numerous occasions, including by this Court in connection with the

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL OF SETTLEMENT**

resolution of *Fusion*. *See Fusion* Order at 15–17. In consultation with Plaintiffs' counsel, Angeion has carefully designed a multi-layered sophisticated plan using a combination of internet, email, publication, social media and other notice mechanisms. *See* Weisbrot Decl., ¶¶ 18-52. As a whole, the Notice Plan is strategically designed and tailored to the Settlement Classes. *Id.*, ¶ 19. The Notice Plan is designed to deliver an approximate 80% reach to the State Law Damages Class.[15] *Id.*, ¶ 21, 60. The proposed Notice Plan provides for long, email, and publication forms of notices ("Proposed Forms") to be disseminated to State Law Damages Class members through a combination of direct, publication, and posted notice. *Id.*, ¶¶ 18–52. To combat fraud, the Notice Plan requires each claimant to submit documentation showing proof of participation and the years in which the claimant purchased Varsity's products and services in the Relevant Markets. *Id.*, ¶¶ 57–58. The Court should therefore approve the proposed Notice Plan.

### E.    Appointment of Settlement Administrator and Escrow Agent

The Court should appoint Angeion as Settlement Administrator and Citibank N.A. as Escrow Agent. There are no tests governing these appointments, *Fusion* Order at 17, but Angeion is a highly experienced and well-regarded settlement and claims administration firm. *See* Weisbrot Decl., ¶¶ 8–12; *see also Fusion* Order at 17 (appointing Angeion as claims administrator); *Family Dollar Stores*, 2023 WL 7112838, at *13 (same). Likewise, Citibank N.A. is a national bank that can readily serve as Escrow Agent.

### F.    Final Approval Hearing and Proposed Schedule of Events

Deadlines for the settlement and claims administration process will be determined by the date the Court sets for a final approval hearing. Accordingly, Plaintiffs respectfully request that the Court schedule a final approval hearing pursuant to Rule 23(e)(2). The Proposed Order submitted with this filing proposes a schedule of events.

### V.    CONCLUSION

For the reasons set forth above, Plaintiffs' motion should be granted.

---

[15] Notice to the members of the Injunctive Relief Class is not required. *See supra*, n.10.

Dated: May 13, 2024

Respectfully submitted,

By: _____ */s/ Joseph R. Saveri* _____
                     Joseph R. Saveri

Joseph R. Saveri*
Ronnie Seidel Spiegel*+
David Seidel*
Kevin E. Rayhill*
Elissa A. Buchanan*
**JOSEPH SAVERI LAW FIRM, LLP**
601 California Street, Suite 1505
San Francisco, California 94108
Telephone: (415) 500-6800
Facsimile: (415) 395-9940
jsaveri@saverilawfirm.com
rspiegel@saverilawfirm.com
dseidel@saverilawfirm.com
krayhill@saverilawfirm.com
eabuchanan@saverilawfirm.com

Van Turner Jr. (TN Bar No. 22603)
**TURNER FEILD, PLLC**
2650 Thousand Oaks Boulevard, Suite 2325
Memphis, Tennessee 38118
Telephone: (901) 290-6610
Facsimile: (901) 290-6611
VTurner@TurnerFeildLaw.com

Richard M. Paul III*
Ashlea Schwarz*
**PAUL LLP**
601 Walnut, Suite 300
Kansas City, Missouri 64106
Telephone: (816) 984-8100
rick@paulllp.com
ashlea@paulllp.com

Jason S. Hartley*
**HARTLEY LLP**
101 West Broadway, Suite 820
San Diego, California 92101
Telephone: (619) 400-5822
hartley@hartleyllp.com

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL OF SETTLEMENT**

Daniel E. Gustafson*
Daniel C. Hedlund*
Daniel J. Nordin*
**GUSTAFSON GLUEK PLLC**
Canadian Pacific Plaza
120 South Sixth Street, Suite 2600
Minneapolis, Minnesota 55402
Telephone: (612) 333-8844
Facsimile: (612) 339-6622
dgustafson@gustafsongluek.com
dhedlund@gustafsongluek.com
dnordin@gustafsongluek.com

* Admitted *pro hac vice*

+Located in Washington State

*Attorneys for Individual and
Representative Plaintiffs*

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL OF SETTLEMENT**