## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
## WESTERN DIVISION

| | | |
|---|---|---|
| JESSICA JONES, et al., | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 2:20-cv-2892-SHL-tmp |
| | ) | |
| VARSITY BRANDS, LLC, et al., | ) | |
| Defendants. | ) | |

---

**ORDER GRANTING INDIRECT PURCHASER PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT, PROVISIONAL CERTIFICATION OF PROPOSED SETTLEMENT CLASSES, APPROVAL OF NOTICE PLAN, AND APPROVAL OF THE PROPOSED SCHEDULE FOR COMPLETING THE SETTLEMENT PROCESS AND SCHEDULING A FINAL APPROVAL HEARING**

---

Before the Court is Plaintiffs Jessica Jones, Christina Lorenzen, and Amy Coulson's (together, "Indirect Purchasers") Unopposed Motion for Preliminary Approval of Settlement, filed on May 13, 2024.  (ECF No. 606)  Defendants Bain Capital Private Equity, LP; Charlesbank Capital Partners, LLC; Jeff Webb; Varsity Spirit Fashions & Supplies, LLC; Varsity Brands, LLC; U.S. All Star Federation ("USASF"); Varsity Spirit, LLC; Charlesbank Equity Fund VII, Limited Partnership; Charlesbank Equity Fund VIII, Limited Partnership; Charlesbank Equity Fund IX, Limited Partnership; Bain Capital Fund XII, L.P.; Bain Capital Fund (DE) XII, L.P.; and Bain Capital Fund (Lux) XII, SCSp,  (together, "Defendants") do not oppose the motion.

Indirect Purchasers seek entry of an order: (1) granting preliminary approval of the Proposed Settlement; (2) provisionally certifying the Settlement Classes under Federal Rule of Civil Procedure 23; (3) approving Indirect Purchasers as representatives of the Settlement Class; (4) approving Joseph Saveri Law Firm, LLP, as Indirect Purchasers' lead class counsel, Paul

LLP, Hartley LLP, and Gustafson Gluek, PLLC, as Indirect Purchasers' executive committee counsel, and Turner Field, PLLC, as Indirect Purchasers' liaison counsel; (5) appointing Angeion Group LLC ("Angeion") as Settlement Administrator; (6) appointing Citibank N.A. ("Citibank") as Escrow Agent; (7) approving Indirect Purchasers' proposed Notice Plan and authorizing dissemination of the notice to the proposed Settlement Classes; and (8) approving the proposed schedule for completing the settlement process and setting a date for a final Fairness Hearing.

For the following reasons, the Motion is **GRANTED.**

<u>**BACKGROUND**</u>

## I.    Factual and Procedural History

Varsity[1] is a prominent host of competitive cheerleading competitions and camps.  The company advanced the modern style of cheer, in which the athletes performing cheer routines are the "main event" – requiring year-round training and summer camps for athletes to maintain their strength, flexibility, coordination, and teamwork.  (ECF No. 576 (sealed) at PageID 33695.)

Indirect Purchasers, the parents of competitive cheer athletes who were members of either All-Star Gym teams or School Cheer teams, filed their Complaint on December 10, 2020. (ECF No. 1; ECF No. 576 (sealed) at PageID 33682–83.)  They alleged that they paid artificially inflated prices for goods and services, including enrollment in cheer competitions and apparel purchased indirectly from Varsity, and sought to represent a class of all indirect purchasers of Varsity products and all entrants into Varsity or All-Star Cheer Competitions.  (Id. at PageID 33681.)  Indirect Purchasers asserted that Defendants' exclusionary schemes violate Sections 1,

---

[1] The Indirect Purchasers define "Varsity" as the collective term to represent Varsity Brands, LLC; Varsity Spirit, LLC; and Varsity Fashion & Supplies, LLC.  (ECF No. 576 (sealed) at PageID 33680.)

2, and 3 of the Sherman Act, 15 U.S.C. §§ 1–3, and sought injunctive and declaratory relief for these violations.  (Id. at PageID 33745.)  They also contended that Defendants violated the antitrust laws of twenty-seven states and consumer protection laws of twenty-nine states, and, alternatively, that Defendants benefitted from higher profits resulting from the Indirect Purchasers' overpayments to them and should be compelled to disgorge all proceeds that they unjustly derived from their anticompetitive scheme.  (Id. at PageID 33747–55.)

Plaintiffs pursued these claims on a class-wide basis, initially proposing three classes, with one of the three proposed in the alternative: 1) the Injunctive Relief Class; 2) the Nationwide Damages Class; 3) the State Law Damages Class if the Nationwide Damages Class were not certified.  (ECF No. 1 at PageID 10–11.)

Defendants filed their combined Motion to Strike Class Allegations, as well as individual Motions to Dismiss on March 12, 2021.  (ECF Nos. 55, 57, 58, 59, 60.)  On August 1, 2022, the Court dismissed Indirect Purchasers Tennessee Trade Practices Act ("TTPA") claims relating to Cheer Camp and Competition markets, as well as claims asserted under the state antitrust and consumer protection laws of Alaska, Colorado, Illinois, and Alabama, and the consumer protection laws of Tennessee ("TCPA").[2]  (ECF No. 333 at PageID 7201.)

Discovery was extensive and hotly contested, and featured significant motion practice before Chief Magistrate Judge Tu M. Pham.  (See, e.g., ECF Nos. 100–103, 214, 215, 265, 269, 270, 274, 275, 290.)  During the discovery period, hundreds of thousands of documents were

---

[2] On August 12, 2022, Indirect Purchasers filed a motion for reconsideration, arguing that their TTPA and TCPA claims against Varsity and Webb should be reinstated.  (ECF No. 335.)  On August 31, 2023, the Court entered an Order addressing both the Motion to Strike Class Allegations and the Motion for Reconsideration.  (ECF No. 475.)  In that Order, the Court again dismissed the TTPA claims relating to Cheer Camp and Competition markets, but denied the Motion to Strike class based claims under the TCPA.  (Id. at PageID 19497.)  The Court also granted Defendants' Motion to Strike the Nationwide Damages Class.  (Id.)

produced by Defendants, current and former employees of Defendants, and third parties.  (ECF No. 606-1 at PageID 35466.)  Forty-five depositions were conducted, including six expert depositions.  (Id.)

Fact discovery closed on April 18, 2022, and expert discovery closed on January 24, 2023.  (ECF Nos. 175, 342.)  Plaintiffs retained four experts and Defendants retained two.  (ECF No. 606-1 at PageID 35467–68.)

On February 10, 2023, Plaintiffs filed three separate motions to (1) certify the classes, (2) appoint lead counsel, and (3) to exclude Defendants' experts.  (ECF Nos. 380, 384, 387.)  Defendants also filed four separate motions to exclude experts on the same day.  (ECF Nos. 382, 385, 388, 391.)  The Court has ruled on the motions related to the experts.  (ECF Nos. 568, 573, 577, 579, 580.)

On February 23, 2023, Plaintiffs filed a motion to add Amy Coulson as class representative, which the Court granted.  (ECF Nos. 394, 591.)  On July 28, 2023, Defendants moved for summary judgment.  (ECF Nos. 466–73.)

On September 20, 2023, the Court granted Indirect Purchasers' motion to amend their complaint to add certain Bain and Charlesbank affiliated entities as Defendants.  (ECF No. 487.)  Indirect Purchasers filed their First Amended Complaint on September 27, 2023.  (ECF No. 489.)  At the Court's direction, Indirect Purchasers filed a Second Amended Complaint that removed claims that had previously been dismissed.  (ECF Nos. 574, 575.)  On March 12, 2024, Defendants filed a motion to dismiss all of the state law claims in Plaintiffs' Second Amended Complaint, other than those brought under Colorado and Kansas law.[3]  (ECF No. 581.)  On April

---

[3] Indirect Purchasers have not filed a response to the Motion to Dismiss, as all litigation deadlines have been held in abeyance since April 1, 2024.  (ECF No. 603.)

1, 2024, the Parties filed their Joint Notice of Settlement.[4]  (ECF No. 602.)

## II.     The Settlement Agreement

The Proposed Settlement contains the following key terms:

A.     <u>Settlement Classes</u>

Indirect Purchasers propose the following settlement classes:

**State Law Damages Class**: All natural persons and entities in Arizona, Arkansas, California, Connecticut, the District of Columbia, Florida, Hawaii, Idaho, Iowa, Kansas, Maine, Massachusetts, Maryland, Michigan, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, North Dakota, Oregon, Rhode Island, South Dakota, Tennessee, Utah, Vermont, Washington, West Virginia, and Wisconsin, that indirectly paid Varsity or any Varsity subsidiary or affiliate, from December 10, 2016, through March 31, 2024,[5] for: (a) registration, entrance, or other fees and expenses associated with participation in one or more Varsity Cheer Competitions; (b) Varsity Cheer Apparel; (c) Varsity Cheer Camp Fees; or (d) accommodations at one or more Varsity Cheer Competitions.

**Injunctive Relief Class**: All natural persons and entities in the United States that indirectly paid Varsity or any Varsity subsidiary or affiliate, from December 10, 2016, through March 31, 2024, for: (a) registration, entrance, or other fees and expenses associated with participation in one or more Varsity Cheer Competitions, including registration fees to USASF; (b) Varsity Cheer Apparel; (c) Varsity Cheer Camp Fees; or (d) accommodations at one or more Varsity Cheer Competitions, including registration fees to USASF.

(ECF No. 606-1 at PageID 35468.)

Indirect Purchasers seek certification of the State Law Damages Class on an opt-out basis

---

[4] Indirect Purchasers' Motion for Class Certification (ECF No. 387), Defendants' Motion for Summary Judgment (ECF No. 466), and Defendants' Motion to Dismiss (ECF No. 581) remain pending, but will be denied without prejudice as this order is entered.

[5] The class period in the operative complaint was "from December 10, 2016, until the continuing Exclusionary Scheme alleged herein ends." See ECF No. 576 (sealed) at PageID 33691.)  For settlement purposes, it is "appropriate and necessary" to base the end date on when the Parties settled. In re Xyrem (Sodium Oxybate) Antitrust Litig., No. 20-MD-02966-RS, 2024 WL 1683640, at *2 (N.D. Cal. Apr. 17, 2024).  Here, Indirect Purchasers agreed to define the class period as ending on March 31, 2024, a date certain prior to the Settlement Agreement execution date.  (ECF No. 606-1 at PageID 35468.)

pursuant to Fed. R. Civ. Pro 23(b)(3) and certification of the Injunctive Relief Class pursuant to Fed. R. Civ. Pro. 23(b)(2).  (Id.)

B.    Monetary Relief

Defendants agree to pay $82.5 million in two installments to create an all cash Settlement Fund for the benefit of the Settlement Classes.  (ECF No. 606-3 at PageID 35504, 35512.)  The first installment is capped at $2.5 million and will cover the notice and settlement administration fees.  (Id. at PageID 35512–13.)  Defendants will pay the second installment within thirty days of the Court's Final Approval being no longer subject to appeal.  (Id. at PageID 35513.)  All State Law Damages Class members will receive payments from the Settlement Fund in accordance with Plaintiffs' proposed Plan of Allocation.  (ECF No. 606-1 at PageID 35469.)  If the Proposed Settlement is approved, Defendants shall have no reversionary interest in any monies remaining in the Settlement Fund.  (ECF No. 606-3 at PageID 35512–13, 35517–18.)

C.    Prospective Relief

The Proposed Settlement provides prospective relief described below to the Injunctive Relief Class, and will be in place from April 28, 2024, through April 27, 2029.  (Id. at PageID 35518–20.)  The prospective relief mitigates certain aspects of the conduct that Indirect Purchasers challenged as anticompetitive in this Action.  (ECF No. 606-1 at PageID 3469.)  Defendants dispute that any such conduct, even if proved, was anticompetitive or a violation of law.  (Id.)

1.    *Varsity's Squad Credentialing Program*

Plaintiffs allege, and Defendants dispute, that Varsity's Squad Credentialling Program foreclosed competition in the Cheer Camps market by requiring School Cheer athletes to attend a Varsity-run Cheer Camp to be eligible to compete at Varsity's year-end national championships.

(ECF No. 480 (sealed) at PageID 19607.)  Under the terms of the Proposed Settlement, Varsity agreed that it "will not condition a Competitive Cheer athlete or team's eligibility to compete at an end-of-season championship competition on prior participation at a Varsity-owned Cheer Camp." (ECF No. 606-3 at PageID 35518.)  To the extent that Varsity continues to require completion of its Squad Credentialing Program for attendance at one of its events, Varsity will make such credentialing available "without requiring attendance at a camp" and at a "reasonable cost." (Id.)

### 2.    *Varsity's Rebate and Discount Program*

Plaintiffs assert, and Defendants dispute, that Varsity's first-dollar rebate programs were de facto exclusive dealing arrangements that leveraged Varsity's market power to foreclose competition in the Relevant Markets.  (ECF No. 480 at PageID 19629–32.)  Under the terms of the Proposed Settlement, Varsity agreed that it "will not offer or require exclusive purchasing arrangements as a condition for participation in the Varsity Family Plan, Network Program, or any rebate or discount program relating to Cheer Competitions." (ECF No. 606-3 at PageID 35518.)  This provision precludes exclusive dealing conduct in the School Cheer Markets and builds on the Fusion Settlement, which bars Varsity from requiring "attendance at more than three All Star Events during a single regular season as a condition of receiving Varsity's lowest tier of rebates or discounts."[6]  (ECF No. 606-1 at PageID 35470.)

---

[6] On April 25, 2023, the Court preliminarily approved the settlement achieved by direct purchaser plaintiffs in the related case Fusion Elite All Stars v. Varsity Brands, No. 2:20-cv-02600-SHL-tmp (W.D. Tenn. Apr. 25, 2023).  (See No. 20-cv-02600-SHL-tmp, ECF No. 336.) Under the terms of the Fusion settlement, Varsity and USASF agreed to pay $43.5 million in installments to the settlement classes and implement reforms with respect to Varsity's discount and rebate programs and USASF's governance structure.  (See id., ECF No. 329-1 ("Fusion Settlement").  The Court granted final approval of the Fusion Settlement on October 4, 2023. See Fusion Elite All Stars v. Varsity Brands, No. 2:20-cv-02600-SHL-tmp, 2023 WL 6466398 (W.D. Tenn. Oct. 4, 2023). There were no objections to the Settlement.

### 3.      Varsity's "Stay to Play" Program

Indirect Purchasers allege, and Defendants dispute, that Varsity abused its power in the

Cheer Competitions market by implementing a "Stay to Play" (or "Stay Smart") policy that

required teams participating in Varsity Cheer Competitions to stay at hotels that were pre-

selected by Varsity and more expensive than where participants might otherwise choose to stay.

(ECF No. 480 at PageID 19632.)  Indirect Purchasers further contend that Varsity received

undisclosed kickbacks from the hotels for rooms booked through the Stay to Play program.  (Id.)

Indirect Purchasers also assert that Varsity exploited its Stay to Play policy to ban rival Cheer

Apparel manufacturers from displaying their products at hotels.  (Id. at PageID 19628.)  Under

the terms of the Proposed Settlement, Varsity agreed that it "will not require participants in

thirty-five percent or more of its Cheer Competitions to stay at Varsity-approved

accommodations as a prerequisite to their participation in Varsity-owned Cheer Competitions,

including, without limitation, through Varsity's Stay to Play or Stay Smart programs."  (ECF No.

606-3 at PageID 35518.)

### 4.      USASF's Alleged Collusion with Varsity

Plaintiffs allege, and Defendants dispute, that USASF successfully conspired with

Varsity by setting probationary attendance limits for competitions and then secretly sharing with

Varsity confidential information provided by Varsity's rivals for the purpose of allowing Varsity

to effectively "counterprogram" non-Varsity competitions to lower their attendance below the

probationary threshold.  (ECF No. 480 (sealed) at PageID 19634–36, 19637.)   According to

Plaintiffs, Varsity employed its counterprogramming strategy to eliminate or diminish events

owned by Varsity's competitors and foreclose competition in the Cheer Competitions and Cheer

Apparel markets.  (Id. at PageID 19626–27.)  Under the terms of the Proposed Settlement,

USASF agreed that it "will not disclose to any of its event producer members confidential information regarding cheer competition schedules or attendance records shared with USASF by another event producer that is affirmatively identified by that event producer member as 'confidential' and either 'not to be shared with any other USASF member' or other similar language." (ECF No. 606-3 at PageID 35518–19.)  Further, USASF agreed to provide notice to its event producer members of their ability to designate information shared with USASF as confidential (1) within thirty days of the Court's final approval of the Proposed Settlement and (2) when it circulates event producer membership applications each year.  Id.  This relief builds on the Fusion Settlement, which limits Varsity's participation on USASF's Board of Directors and Sanctioning Committees.  (ECF No. 606-1 at PageID 35471.)

D.    Release

In exchange for the monetary and prospective relief set forth in the Settlement Agreement and described above, Defendants and related parties will receive a release of all claims that have been or could have been brought by the proposed Settlement Class Members based on the matters alleged or referred to in the Second Amended Complaint.  (ECF No. 606-3 at PageID 35510–11.)

E.    Supplemental Agreement

The Parties also reached a confidential Supplemental Settlement Agreement, providing that Defendants would be entitled to rescind the Proposed Settlement if class members comprising a certain share of the relevant sales during the Class Period timely and validly opted out of the Proposed Settlement.  (ECF No. 606-2 at PageID 35496.)

F.    Attorneys' Fees, Expenses, and Service Awards

The Settlement Agreement provides that proposed Settlement Class Counsel may seek

approval for attorneys' fees and costs and service awards for Class Representatives.  (ECF No. 606-3 at PageID 35516–17.)  Settlement Class Counsel intend to seek an award for attorneys' fees and costs equal to one-third of the Settlement Fund Amount plus reimbursable litigation costs of $9,250,249.14.  (ECF No. 606-1 at PageID 35471.)  Settlement Class Counsel will also seek service awards for Class Representatives to be paid from the Settlement Fund Amount, in the amount of $50,000 each for Jessica Jones and Christina Lorenzen and $25,000 for Amy Coulson ($125,000 total).  (Id.)  Because this motion is not yet before the Court, Attorneys' Fees, Expenses, and Service Awards are not discussed below.

## ANALYSIS

### I.     Conditional Certification

Indirect Purchasers seek conditional certification of the State Law Damages Class and the Injunctive Relief Class.  (ECF No. 606-1 at PageID 35477.)  Rule 23(e)(1)(B)(ii) directs a court to determine, at the preliminary approval stage, whether it "will likely be able to . . . certify the class for purposes of judgment on the proposal."  If the court determines that it will likely be able to certify the class, it conditionally certifies it pending final approval of the settlement.  Newberg on Class Actions ("Newberg") § 13:16 (5th ed. 2019).  Rule 23 requires a party seeking class certification to demonstrate that: (1) the proposed class and class representatives meet all of the requirements of Rule 23(a); (2) the case fits into one of the categories of Rule 23(b); and (3) class counsel meets the requirements of Rule 23(g).  See generally Fed. R. Civ. P. 23.  As described below, each of these requirements is met.

### A.     Rule 23(a) Prerequisites for Certification

Satisfying Rule 23(a) requires that: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the

claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(1)–(4).

### 1.    Rule 23(a)(1) — Numerosity

To begin, the Classes must be "so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  "While no strict numerical test exists, 'substantial' numbers of affected consumers are sufficient to satisfy this requirement."  Young v. Nationwide Mut. Ins. Co., 693 F.3d 532, 541 (6th Cir. 2012) (internal citations omitted).  "The numerosity requirement is also satisfied more easily upon a showing that there is wide geographical diversity of class members, which makes joinder of all the class members more impracticable."  In re Inter-Op Hip Prosthesis Liab. Litig., 204 F.R.D. 330, 339 (N.D. Ohio 2001) (quotation marks and citation omitted).

Indirect Purchasers submit that the State Law Damages Class contains approximately 340,000 individuals across thirty-four states, while the Injunctive Relief Class is composed of millions of members nationwide.  (ECF No. 606-1 at PageID 35478.)  Both classes have a substantial number of affected consumers and are indisputably so numerous that joinder is impracticable.  See Young, 693 F.3d at 541.  Both classes are also nationwide and geographically dispersed, further counseling against joinder and sufficiently demonstrating numerosity.

### 2.    Rule 23(a)(2) — Common Questions of Law and Fact

Each Class must have at least one common question of law or fact, and resolution of those questions must advance the litigation.  Fed. R. Civ. P. 23(a)(2); Alkire v. Irving, 330 F.3d 802, 821 (6th Cir. 2003) (citing Sprague v. Gen. Motors Corp., 133 F.3d 388, 397 (6th Cir.

1998)). "Even a single common question will do." <u>Wal-Mart Stores, Inc. v. Dukes</u>, 564 U.S. 338, 359 (2011) (cleaned up). "The threshold for commonality is not high." <u>Bradberry v. John Hancock Mut. Life Ins. Co.</u>, 217 F.R.D. 408, 413 (W.D. Tenn. 2003) (quotation marks and citation omitted).

Commonality here is straightforward. Indirect Purchasers in both classes share many factual and legal issues, including whether Varsity had market power, whether Defendants conspired, and whether the challenged conduct violated the antitrust and consumer protection laws. (ECF No. 606-1 at PageID 35478.)

### 3. Rule 23(a)(3) — Typicality

The Class Representatives' claims must be typical of the claims of the members of the Classes. Fed. R. Civ. P. 23(a)(3). "Typicality determines whether a sufficient relationship exists between the injury to the named plaintiff and the conduct affecting the class, so that the court may properly attribute a collective nature to the challenged conduct." <u>In re Am. Med. Sys., Inc.</u>, 75 F.3d 1069, 1082 (6th Cir. 1996) (quotation marks and citation omitted). "[A] plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory." <u>Id.</u> (quotation marks and citation omitted).

Both classes satisfy the typicality requirement. The claims of the members of each Settlement Class are based on the same challenged conduct and the same antitrust theories, and the Class Representatives for each Settlement Class seek the same overcharge damages and injunctive relief as the absent Settlement Class Members. (ECF No. 606-1 at PageID 35479.)

### 4. Rule 23(a)(4) — Adequacy of Representation

The Class Representatives must fairly and adequately protect class interests. Fed. R. Civ.

P. 23(a)(4).  The Rule 23(a)(4) inquiry serves to uncover conflicts of interest between named parties and the classes they seek to represent.  "'A class representative must be part of the class and possess the same interest and suffer the same injury as class members.'"  Beattie v. CenturyTel, Inc., 511 F.3d 554, 562 (6th Cir. 2007) (quoting Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 625–26 (1997)).  Class members must not have "interests that are [] antagonistic to one another."  Id. at 563 (quotation marks and citation omitted).  Courts "review[] the adequacy of class representation to determine whether class counsel are qualified, experienced and generally able to conduct the litigation."  Young, 693 F.3d at 543.

Proposed Settlement Class Counsel and Class Representatives for each of the Settlement Classes do not have conflicts of interest with the absent members of the Settlement Classes they seek to represent.  (ECF No. 606-1 at PageID 35479.)  First, although a conflict must be significant to create a potential issue, see In re Polyurethane Foam Antitrust Litig., 314 F.R.D. 226, 238–41 (N.D. Ohio 2014). no such conflicts exist here.  Second, the Class Representatives have incurred the same alleged injury suffered by the absent class members that is the basis of this litigation.  (ECF No. 606-1 at PageID 35479.)  Finally, the Representatives have fulfilled their duties throughout the litigation, including discovery and other obligations.  (ECF Id.)

Settlement Class Counsel have also demonstrated their experience and capability in prosecuting antitrust class actions; they have dedicated millions of dollars and spent a significant amount of time in and out of the courtroom litigating on behalf of the proposed Settlement Classes for more than three years.  (Id. at PageID 35480.)  Proposed Settlement Class Counsel and Class Representatives are undoubtedly adequate.

    B.    Rule 23(b) Class Action Categorization

A class that satisfies Rule 23(a)'s requirements must also fall within one of three

categories found in Rule 23(b).  The State Law Damages Class is pursued as a Rule 23(b)(3) classes, while the Injunctive Relief Class is pursued as a Rule 23(b)(2) class.

### 1.    State Law Damages Class

The State Law Damages class is characterized as a Rule 23(b)(3) class, which requires that "the court find[] that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  The factors to consider under Rule 23(b) are:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
>
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
>
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>
> (D) the likely difficulties in managing a class action.[7]

Fed. R. Civ. P. 23(b)(3)(A)–(D).

### a.    Predominance

"'The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation.'"  Beattie, 511 F.3d at 564 (quoting Amchem Prods., 521 U.S. at 632).  To satisfy the predominance requirement in Rule 23(b)(3), "a plaintiff must establish that the issues in the class action that are subject to generalized proof, and thus

---

[7] The last of the Rule 23(b)(3) factors—"the likely difficulties in managing a class action"—is not applicable in the class settlement context.  See Amchem Prods., 521 U.S. at 620 ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial."); see also Fitzgerald v. P.L. Mktg., Inc., No. 2:17-cv-02251-SHM-cgc, 2020 WL 7764969, at *9 (W.D. Tenn. Feb. 13, 2020) (same).

applicable to the class as a whole, . . . predominate over those issues that are subject only to individualized proof." Id. (quotation marks and citation omitted). "[C]ommon issues may predominate when liability can be determined on a class-wide basis, even when there are some individualized damage issues." Id. (quotation marks and citation omitted). "Predominance is a test readily met in certain cases alleging . . . violations of the antitrust laws." Amchem Prods., 521 U.S. at 625 (citation omitted).

Both Classes' common issues predominate over individual issues. Indirect Purchasers claims of monopolization require that "(1) Defendants have monopoly power in a certain market, (2) obtained or maintained through willful anticompetitive conduct, (3) that caused rising prices or lowering of output." (ECF No. 606-1 at PageID 35480.) Proof as to each claim would necessarily be common to all Settlement Class Members because the bulk of the issues relate to the Defendants' alleged conduct that was directed at all members of the class. Predominance is met here.

> b.      Superiority

Rule 23(b)(3) also requires that a class action be superior to other available methods of fairly adjudicating the controversy. Rule 23(b)(3) includes a non-exhaustive list of factors, including: the class members' interests in controlling the prosecution of individual actions; the extent and nature of any litigation concerning the controversy already begun by or against class members; the desirability of concentrating the litigation of various claims in the particular forum; and the likely difficulties in managing a class action. See Fed. R. Civ. P. 23(b)(3). In creating the Rule 23(b)(3) class, the Advisory Committee sought to "vindicate[] 'the rights of groups of people who individually would be without effective strength to bring their opponents into court at all.'" Amchem Prods., 521 U.S. at 617. "[Antitrust] litigation is complex, its prosecution is

costly, and the members with smaller damages claims likely have fewer resources with which to fund individual litigation."  In re Se. Milk Antitrust Litig., No. 2:07-CV-208, 2010 WL 3521747, at *12 (E.D. Tenn. Sept. 7, 2010), modified, No. 2:07-CV 208, 2012 WL 1981511 (E.D. Tenn. June 1, 2012), supplemented, No. 2:07-CV 208, 2012 WL 2885965 (E.D. Tenn. July 13, 2012) (holding that class litigation is the superior method for adjudicating antitrust cases).

Indirect Purchasers assert that a class action is superior to other available methods for adjudicating this controversy, and the Court agrees.  Indirect Purchasers' claims involve "multiple state legal frameworks and jurisdictions, and a complex web of Defendants' intermingled business entities; moreover, the remedy achievable by an individual plaintiff is wildly disproportionate to the costs of litigating to that end."  (ECF No. 606-1 at PageID 35481.) The interests of members of the proposed Settlement Class's individually controlling the prosecution of separate claims are outweighed by the efficiency of the class mechanism.  In re Cardizem CD Antitrust Litig., 200 F.R.D. 297, 325 (E.D. Mich. 2001) (finding that class action is superior because it ensures fair and efficient adjudication).  Finally, the concentration of claims in the Western District of Tennessee will make best use of the Parties' resources.  Hosp. Auth. of Metro. Gov't of Nashville & Davidson Cnty., Tenn. v. Momenta Pharms., Inc., 333 F.R.D. 390, 414 (M.D. Tenn. 2019) (finding the third superiority factor met where "concentration of these claims in this Court is desirable, as it will streamline the resolution of the claims and conserve . . . resources").

B.    *Injunctive Relief Class*

The Injunctive Relief class is characterized as a Rule 23(b)(2) class, which requires "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the

16

class as a whole." Fed. R. Civ. P. 23(b)(2). "The key to the (b)(2) class is 'the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or to none of them.'" Gooch v. Life Investors Ins. Co. of Am., 672 F. 3d 402, 428 (6th Cir. 2012).

Here, Indirect Purchasers, on behalf of themselves and the Injunctive Relief Class, sought "final relief" for conduct that allegedly "caused the entire membership of all classes to pay artificially inflated prices" and alleged that, "in the absence of injunctive relief, all classes would continue to pay artificial premiums." (ECF No. 606-1 at PageID 35481.) Indirect Purchasers allegations demonstrate shared interests between the Injunctive Relief Class members, and thus support injunctive relief for the class as a whole. Sullivan v. DB Invs., Inc., 667 F.3d 273, 318 (3d Cir. 2011). The requirements for certifying the Injunctive Relief Class are met.

**II.     Appointment of Class Counsel and Representatives**

      A.     Class Counsel

Plaintiffs seek appointment of Joseph Saveri Law Firm, LLP as Lead Class Counsel, Gustafson Gluek PLLC, Hartley LLP, and Paul LLP as the Indirect Purchasers' Executive Committee, and Turner Field PLLC as Plaintiffs' Liaison Counsel pursuant to Rules 23(c)(1)(B) and 23(g). (ECF No. 380, 606-1 at PageID 35482.)

The Court may appoint lawyers as class counsel only if they are adequate under Rule 23(g)(1) and (4). Fed. R. Civ. P. 23(g)(2). As stated above, Proposed Class Counsel meet the requirements of Rule 23(g)(4). (See supra Section I.A.4.)

Turning to Rule 23(g)(1), in appointing class counsel, the Court must consider the following factors:

      (i)     the work counsel has done in identifying or investigating potential claims

in the action;

(ii)     counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;

(iii)     counsel's knowledge of the applicable law; and

(iv)     the resources that counsel will commit to representing the class[.]

Fed. R. Civ. P. 23(g)(1)(A).  The Court may consider any other matter pertinent to counsel's ability to represent the interests of the class fairly and adequately.  Fed. R. Civ. P. 23(g)(1)(B).

Proposed class counsel has submitted supplementary briefing and declarations reflecting the extent of their involvement in the prosecution of this action.  (See ECF No. 610.)  This briefing details the work of proposed Lead Class Counsel, the proposed Executive Committee Firms, and proposed Liaison Counsel.  (Id.)  Proposed Counsels' representations reflect that each of the firms have been substantially involved in this litigation.

Turning to the Rule 23(g) factors, the Court first assesses counsels' identification and investigation of claims.  Fed. R. Civ. P. 23(g)(1)(A)(i).  Proposed Counsel performed substantial work investigating the merits of Indirect Purchasers' claims, including extensive investigation of the cheerleading industry.  (ECF No. 380-1 at PageID 8367.)  Proposed Lead Counsel also consulted with experts to make a preliminary assessment of the economics of the relevant markets, damages, and the viability of Plaintiffs' claims.  (Id.)  Counsel satisfied the requirements of the Federal Rules.

The Court next considers Proposed Counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action.  Fed. R. Civ. P. 23(g)(1)(A)(ii). Proposed Lead Counsel and the Executive Committee firms belong to established plaintiff-side class action firms.  Their experience in handling class actions, and antitrust class actions in

particular, is beyond dispute.  (ECF No. 380-1 at PageID 8365.)  Additionally, Turner Field, PLLC, is qualified to serve as Liaison Counsel based on Van Turner, Jr.'s years of practice in the Western District of Tennessee.  (Id. at PageID 8375.)   Relatedly, Proposed Counsel have demonstrated sufficient knowledge of the applicable law throughout the case and have successfully navigated this case to the settlement stage.  Thus, Rule 23(g)(1)(A)(iii) is satisfied.

Finally, the Court must consider the resources that Proposed Counsel will commit to representing the class.  Fed. R. Civ. P. 23(g)(1)(A)(iv).  Proposed Counsel has already invested a significant number of hours in this case, and the Court expects that they will continue to do so.

The Court finds that Proposed Class Counsel has satisfied the requirements of Rule 23(g), and accordingly **APPOINTS** them as Class Counsel.

B.      Class Representatives

As stated above, the proposed Class Representatives "fairly and adequately protect the interests of the class."  (See supra I.A.4.)  Further, they have fulfilled their duties throughout the litigation, including assisting in gathering discovery and sitting for depositions.  (ECF No. 389-15 at PageID 11727; ECF No. 389-16 at PageID 11732.)  The Court finds the Proposed Class Representatives are appropriate, and thus **APPOINTS** them.

III.    **Preliminary Settlement Approval**

The Parties seek preliminary approval of the Settlement Agreement under Rule 23.  See Fed. R. Civ. P. 23(e) ("The claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval.").  Rule 23(e)(1)(B)(i) requires a Court to determine at the preliminary approval stage whether it "will likely be able to . . . approve the proposal under Rule 23(e)(2)."  Under Rule 23(e)(2), a court must review whether the proposed settlement is "fair, reasonable, and adequate after considering" the

following four factors:

> (A)  the the class representatives and class counsel have adequately represented the class;
>
> (B)  the proposal was negotiated at arm's length;
>
> (C)  the relief provided for the class is adequate, taking into account:
>
>> (i) the costs, risks, and delay of trial and appeal;
>>
>> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>>
>> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>>
>> (iv) any agreement required to be identified under Rule 23(e)(3); and
>
> (D)  the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2)(A)–(D); Busby v. Bonner, No. 2:20-cv-02359-SHL-atc, 2021 WL 4127775, at *2–3 (W.D. Tenn. Jan. 28, 2021) (articulating the framework for preliminary settlement approval).

The Sixth Circuit also considers seven factors to determine whether a class action settlement is "fair, reasonable, and adequate," many of which overlap with the Rule 23(e) factors. UAW, 497 F.3d at 631. These factors are:

> 1. the risk of fraud or collusion;
>
> 2. the complexity, expense, and likely duration of the litigation;
>
> 3. the amount of discovery engaged in by the parties;
>
> 4. the likelihood of success on the merits;
>
> 5. the opinions of class counsel and class representatives;
>
> 6. the reaction of absent class members; and

7. the public interest.

(Id.)  These factors are considered below, grouped together where appropriate.

    A.    <u>Rule 23 Factors</u>

        *1.    Adequate Representation and Arm's Length Negotiation*

The first two Rule 23(e)(2) factors support preliminary approval.  First, Class Counsel has adequately represented the classes.  The Settlement Agreement is the culmination of more than three years of hard-fought litigation that yielded a record of nearly 45,000 pages.  Counsel for Plaintiffs and Defendants demonstrated their competence in antitrust class litigation via their discovery and motion practice.  Moreover, the factual record is sufficiently developed for Counsel to make an informed decision as to settlement and settlement value.

The Court also finds, for many of the same reasons, that the Settlement Agreement was negotiated at arms-length.  "Courts presume the absence of fraud or collusion in class action settlements unless there is evidence to the contrary."  <u>Leonhardt v. ArvinMeritor, Inc.</u>, 581 F. Supp. 2d 818, 838 (E.D. Mich. 2008).  The Court is aware of no evidence in the voluminous record to rebut this presumption.  The series of mediation sessions that ultimately resulted in this Settlement took place a few months before the July 8 trial date, after the close of expert and fact discovery, evidencing that this was the result of an adversarial process. (ECF No. 606-1 at PageID 35473.)  The Parties' Settlement Agreement is the product of a procedurally fair process.

        *2.    Adequate Relief*

Rule 23(e)(2)(C) requires a court to consider whether "the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees,

including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)."

First, the monetary recovery—$82.5 million total—grants each class member approximately 67% of the damages computed by Indirect Purchasers' damages experts through 2020—the period for which Plaintiffs' experts had data on which to calculate damages. (ECF No. 606-1 at PageID 35474.) The Settlement also provides prospective relief to the Injunctive Relief Class, involving important changes to certain Varsity and USASF business practices that Indirect Purchasers challenged as anticompetitive. (Id.) Taken together, the Settlement remedies the Indirect Purchasers' past harms while also enacting changes to Defendants' practices that will prevent future harms.

This outcome allows class members to avoid the significant risks and uncertainties inherent in trials and appeals. "[I]t is unnecessary to scrutinize the merits of the parties' positions, but it is fair to say that there would have been an uncertain outcome, and significant risk on both sides, had this case gone to trial." Fitzgerald, 2020 WL 7764969, at *12 (quotation marks and citation omitted). Antitrust class actions are "arguably the most complex action[s] to prosecute. The legal and factual issues involved are always numerous and uncertain in outcome." In re Packaged Ice Antitrust Litig., No. 08-MLD-01952, 2011 WL 6209188, at *19 (E.D. Mich. Dec. 13, 2011).

Throughout this litigation, Defendants have maintained that Plaintiffs' claims were factually and legally deficient. (See ECF Nos. 466–73, 581, 586.) Defendants' arguments include: (a) challenges to the timeliness of Plaintiffs' claims and the legal theories they relied upon; (b) challenges to Plaintiffs' market definitions, class allegations, and damages methodology; (c) assertions that Defendants' alleged anticompetitive conduct, including

Varsity's challenged acquisitions and alleged exclusive dealing arrangements, was in fact

procompetitive; and (d) claims that Varsity and USASF acted independently of one another and

in procompetitive ways. Further, Defendants argued that Plaintiffs could not meet Rule 23's

certification requirements. (See ECF No. 421.)

Although the Court denied some of these challenges in the context of motions to dismiss

and motions to exclude experts, some of these arguments were also included in other pretrial

motions and would also still presumably be raised at trial. Altogether, the Court cannot readily

determine what the outcome of this case would be if it were fully litigated. The uncertainty as to

the outcome favors approval of this settlement.

### 3.    *Equitable Treatment*

Rule 23(e)(2)(D) requires a court to determine whether the "proposal treats class

members equitably relative to each other." For this factor, "[m]atters of concern could include

whether the apportionment of relief among class members takes appropriate account of

differences among their claims, and whether the scope of the release may affect class members in

different ways that bear on the apportionment of relief." Fed. R. Civ. P. 23(e)(2) advisory

committee notes to 2018 amendment.

The proposed allocation appears to be fair and equitable. State Law Damages Class

Members will receive payment from the Net Settlement Fund and can potentially be excluded

from receiving payment if they timely and validly opt out of the Proposed Settlement. (ECF No.

606-3 at PageID 35515.) The Plan of Allocation also takes appropriate proportional account of

differences among Settlement Class members' claims. (Id.) This settlement treats all class

members equitably.[8]

---

[8] The Settlement Agreement allows Indirect Purchasers to seek service awards for each of

B.      UAW Factors

Several of the UAW Factors are discussed in connection with the Rule 23(e)(2) factors, including the risk of fraud or collusion, the amount of discovery engaged in by the Parties, and the likelihood of success on the merits.  The remaining four factors—the complexity, expense, and likely duration of litigation, the opinions of class counsel and class representatives, the reaction of absent class members, and the public interest are addressed below.

1.      *The Complexity, Expense, and Likely Duration of the Litigation*

Antitrust class actions are "arguably the most complex action[s] to prosecute. The legal and factual issues involved are always numerous and uncertain in outcome." In re Packaged Ice Antitrust Litig., 2011 WL 6209188, at *19.  That was certainly true of this case.  Additionally, the expenses allegedly incurred by Class Counsel in prosecuting the action were considerable: $9,250,249.14.  (ECF No. 606-1 at PageID 35472.)  This Settlement Agreement comes after more than a year of intense investigation and litigation.  (Id. at PageID 3029.)  Absent settlement, it would likely have continued for a considerable time.  The complexity, cost, and likely duration of the case support settlement approval.  If the litigation had continued to summary judgment and trial, these expenses would have increased significantly. Finally, this case is more than three years old. Absent settlement, it would likely have continued for considerably longer. The complexity, cost, and likely duration of this case also support approval.

2.      *The Opinions of Class Counsel and Class Representatives*

Class Counsel asserts that the Settlement has no deficiencies and treats all class members

---

the three named Plaintiffs.  (ECF No. 606-3 at PageID 35517.)  Indirect Purchasers intend to seek $50,000 for Jones and Lorenzen and $25,000 for Amy Coulson.  (ECF No. 606-1 at PageID 35472.)  However, they are not seeking that these proposed awards be approved at this time but will do so in a subsequent motion.  (Id.)

equitably.  (ECF No. 606-1 at PageID 35477.)  Further, all of the class representatives considered and signed the Settlement Agreement.  (Id.)  Because Co-Lead Class Counsel and the Class Representatives all support the settlement, this factor weighs in favor of approving it.

   3.   *The Reaction of Absent Class Members*

   The assessment of this factor is premature since the reaction of the absent class members is currently unknown.  The class action approval process includes notice to the class members and an opportunity for them to object at the final approval hearing.

   4.   *Public Interest*

   The prosecution of private antitrust actions helps ensure compliance with antitrust laws and performs an important societal function. See Pillsbury Co. v. Conboy, 459 U.S. 248, 262–63 (1983) ("This court has emphasized the importance of the private action as a means of furthering the policy goals of certain federal regulatory statutes, including the federal antitrust laws."); Reiter v. Sonotone Corp., 442 U.S. 330, 344 (1979) (private challenges to antitrust violations "provide a significant supplement to the limited resources available to the Department of Justice for enforcing the antitrust laws and deterring violations").  "[C]lass actions . . . have value to society more broadly, both as deterrents to unlawful behavior—particularly when the individual injuries are too small to justify the time and expense of litigation—and as private law enforcement regimes that free public sector resources." Gascho v. Glob. Fitness Holdings, LLC, 822 F.3d 269, 287 (6th Cir. 2016).  Because this settlement advances the public interest, this factor also weighs in favor of approval.

   *   *   *

   Having considered all the relevant factors, each of which supports preliminary approval, the Court **GRANTS** the Motion for Preliminary Approval.

### III.    Adequacy of Notice

Rule 23(b)(3) provides for an "opt out" class, with reasonable notice and the opportunity to decline to participate provided to all potential class members, as required by Rule 23(c)(2). Coleman v. Gen. Motors Acceptance Corp., 296 F.3d 443, 448 (6th Cir. 2002) (citing Fed. R. Civ. P. 23(c)(2)).  The notice and the opportunity to opt out requirements are necessary because claims for money damages implicate individual interests that are necessarily diverse.  Id. at 448. The class treatment of claims for money damages also implicates the Seventh Amendment and due process rights of individual class members.  Id.

When a class is conditionally certified under Rule 23(b)(3), the district court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort.  Fed. R. Civ. P. 23(c)(2)(B).  The notice may be by one or more of the following methods: United States mail, electronic means, or other appropriate means.  Id.  The notice must clearly and concisely state in plain, easily understood language:

(i)      the nature of the action;

(ii)     the definition of the class certified;

(iii)    the class claims, issues, or defenses;

(iv)    that a class member may enter an appearance through an attorney if the member so desires;

(v)     that the court will exclude from the class any member who requests exclusion;

(vi)    the time and manner for requesting exclusion; and

(vii)   the binding effect of a class judgment on members under Rule 23(c)(3).

Id.

Indirect Purchasers have retained Angeion to serve as Settlement Administrator.  (ECF No. 606-1 at PageID 35482.)  Angeion has designed a multi-layered sophisticated plan using a combination of Internet, email, publication, social media.  That plan includes: (1) direct notice via email to all reasonably identifiable Class Members; (2) direct notice via United States mail to all reasonably identifiable Class Members; (3) a digital and social media campaign; (4) trade-specific media and publication campaign; (5) posted notice in direct purchaser All Star Cheer gyms; and (6) the issuance of a press release.  (ECF No. 606-4 at PageID 35536.)  The Notice Plan will also include the creation of a case-specific Settlement Website, as well as a toll-free telephone line where Class Members can learn more about their rights and options pursuant to the Settlement.  (Id.)

The Notice Plan adequately apprises all potential class members of the terms of the Settlement Agreement, provides the opportunity to make informed decisions, and comports with due process.

**IV.     Appointment of Claims Administrator and Escrow**

Indirect Purchasers ask the Court to appoint Angeion to oversee the administration of the Settlement.  (ECF No. 606-1 at PageID 35483.)  They assert that Angeion is a highly experienced and well-regarded settlement and claims administration firm.  (Id.)  The Court has previously appointed Angeion in similar cases, and **GRANTS** the motion to appoint Angeion here, given its demonstrated experience.

Indirect Purchasers also seek the appointment of Citibank as the Escrow Agent.  (Id.)  Citibank is a nationwide bank that appears to have fulfilled this role in other similar cases.  See, e.g., Cook Children's Health Foundation v. Diamondback E&P, No. CIV-21-359-D, 2024 WL 24350, at *5 (W.D. Ok. Jan. 2, 2024) (granting preliminary approval motion and appointing

Citibank as escrow agent); In re Pool Products Distribution Market Antitrust Litig., MDL No. 2328, 2015 WL 4875464, *16 (E.D. La. Aug. 13, 2015) (same).  Given Citibank's experience, the Court grants the Motion to Appoint them as the escrow agent.

## CONCLUSION

For the reasons described above, Indirect Purchasers Unopposed Motion is **GRANTED**.

1. The proposed Settlement is conditionally **APPROVED** as fair, reasonable, and adequate as to the members of the State Law Damages Class and Injunctive Relief Class, subject to further consideration at the Final Settlement Fairness Hearing.

2. The Parties are **DIRECTED** to provide notice of the proposed Settlement as provided in this Order and the Settlement Agreement.

3. Pursuant to Fed. R. Civ. P. 23, the Court conditionally **CERTIFIES** the following Classes for settlement purposes only and subject to further consideration at the Final Settlement Fairness Hearing:

   a. State Law Damages Class: All natural persons and entities in Arizona, Arkansas, California, Connecticut, the District of Columbia, Florida, Hawaii, Idaho, Iowa, Kansas, Maine, Massachusetts, Maryland, Michigan, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, North Dakota, Oregon, Rhode Island, South Dakota, Tennessee, Utah, Vermont, Washington, West Virginia, and Wisconsin, that indirectly paid Varsity or any Varsity subsidiary or affiliate, from December 10, 2016, through March 31, 2024, for: (a) registration, entrance, or other fees and expenses associated with participation in one or more Varsity Cheer Competitions; (b) Varsity Cheer Apparel; (c) Varsity Cheer Camp Fees; or (d) accommodations at one or more Varsity Cheer Competitions.

   b. Injunctive Relief Class: All natural persons and entities in the United States that indirectly paid Varsity or any Varsity subsidiary or affiliate, from December 10, 2016, through March 31, 2024, for: (a) registration, entrance, or other fees and expenses associated with participation in one or more Varsity Cheer Competitions, including registration fees to USASF; (b) Varsity Cheer Apparel; (c) Varsity Cheer Camp Fees; or (d) accommodations at one or more Varsity Cheer Competitions, including registration fees to USASF.

   c. Excluded from the Settlement Classes are Defendants, their parent companies, subsidiaries and affiliates, officers, executives, and employees; Defendants' attorneys in this case, federal government entities and instrumentalities, states

or their subdivisions, and all judges and jurors assigned to this case.

4. The Court preliminarily **FINDS**, solely for settlement purposes that (a) the Classes are so numerous that joinder of members of the Classes is impracticable; (b) there are questions of law and fact common to the Classes that predominate over any individual questions; (c) the claims of the Class Representatives are typical of the claims of the Classes; (d) the Class Representatives have and will continue to fairly and adequately represent and protect the interests of the Classes; and (e) a class action is superior to all other available methods for the fair and efficient adjudication of the controversy.

5. Named Plaintiffs Jessica Jones and Christina Lorenzen, together with Amy Coulson, are conditionally **APPROVED** as representatives of the Classes.

6. Joseph Saveri Law Firm, LLP, is **APPROVED** as Plaintiffs' lead class counsel; PAUL LLP, Hartley LLP, and Gustafson Gluek PLLC, are **APPROVED** as Plaintiffs' executive committee counsel; and Turner Feild, PLLC is **APPROVED** as Plaintiffs' liaison counsel. The Court **FINDS** that all Class Counsel have and will fairly and adequately protect the interests of the Classes and are collectively **APPROVED** as Settlement Class Counsel.

7. Angeion Group LLC is **APPOINTED** as Settlement Administrator, and Citibank N.A. is **APPOINTED** as Escrow Agent.

8. The Court **FINDS** that the Notices fully satisfy the requirements of due process, provide the best notice practicable under the circumstances to the members of the Classes, and provide individual notice to all members of the Classes who can be identified through reasonable effort.

9. No later than **July 18, 2024** (30 days after entry of this Order), the Settlement Administrator shall: (a) provide direct notice via email and/or mail to all reasonably identifiable Settlement Class members; (b) commence the multi-tiered digital and social media notice campaign; (c) commence the multi-tiered trade-specific media and publication notice campaign; and (d) issue a press release.

10. No later than **September 2, 2024** (approximately 75 days after entry of this Order), Settlement Class Counsel shall file a motion for attorneys' fees, unreimbursed litigation costs and expenses, and service awards for the Class Representatives, pursuant to the terms of this Order and the Settlement Agreement.

11. No later than **September 26, 2024** (100 days after entry of this Order), any member of the State Law Damages Class who wishes to make an exclusion request shall mail a written request to the Settlement Administrator at the address provided in the Notices. The request for exclusion must include: (1) the name of the case (<u>Jones, et al. v. Varsity Brands, LLC, et al.</u>, No. 2:20-cv-02892-SHL-tmp); (2) the individual's

name, address, and telephone number; and (3) proof of membership in the State Law Damages Class, which may include a sworn statement with supporting details indicating that the individual is a member of one or both of the proposed Classes. The request for exclusion must be postmarked by **September 26, 2024**.

12. No later than **September 26, 2024** (100 days after entry of this Order), any member of the Classes who wishes to object to the proposed Settlement, Settlement Class Counsel's request for attorneys' fees, unreimbursed litigation costs and expenses, or service awards for the Class Representatives, shall mail a written request to the Clerk of the Court for the Western District of Tennessee, as well as Settlement Class Counsel and Counsel for Defendants at the addresses provided in the Notices. The request for objection must include: (a) the name of the case (Jones, et al. v. Varsity Brands, LLC, et al., No. 2:20-02892-SHL-tmp); (b) the individual's name and address and, if represented by counsel, the name, address, and telephone number of counsel; (c) proof of membership in one of the proposed Classes, which may include a sworn statement with supporting details indicating that the individual is a member of one or both of the proposed Classes; (d) a statement detailing all objections to the Settlement; and (e) a statement of whether the individual will appear at the Fairness Hearing, either with or without counsel. The request for objection must be received by the Clerk and Parties' Counsel by **September 26, 2024**.

13. Any member of the Classes who does not object in the manner prescribed above shall be deemed to have waived such objection and shall forever be foreclosed from making any objection to the fairness, reasonableness, and adequacy of the proposed Settlement or Settlement Class Counsel's requests for awards of attorneys' fees, expenses, and service awards.

14. Members of the State Law Damages Class who timely and validly request exclusion from the Class as set forth shall not be eligible to receive any payment out of the Settlement Fund as described in the Settlement Agreement, unless otherwise ordered by the Court.

15. Unless otherwise ordered by the Court, all members of the Classes (other than members who timely and validly request exclusion from the State Law Damages Class) shall be bound by all determinations and judgments in this action, whether favorable or unfavorable to the Classes.

16. No later than **October 17, 2024** (21 days after the expiration of the deadline for Class Members to request exclusion or object to the proposed Settlement and/or Settlement Class Counsel's request for attorneys' fees, costs and expenses, and services awards), Settlement Class Counsel shall file all briefs and materials in support of final approval of the proposed Settlement.

17. The Final Settlement Fairness Hearing shall be held by the Court on **November 22, 2024, at 10:00 a.m.**, which is not less than 35 days after Class Counsel's deadline to

file papers in support of final approval of the proposed Settlement, in Courtroom 1, at the United States District Court for the Western District of Tennessee, 167 North Main Street, Memphis, Tennessee 38103, to consider whether:

    a.  The proposed Settlement on the terms and conditions provided in the Settlement Agreement is fair, reasonable, and adequate, and should be approved by the Court;

    b.  The request for attorneys' fees and unreimbursed litigation costs and expenses should be approved;

    c.  The request for service awards to the Class Representatives should be approved; and

    d.  To rule on such other matters as the Court may deem appropriate.

**IT IS SO ORDERED,** this 18th day of June, 2024.

s/ Sheryl H. Lipman
SHERYL H. LIPMAN
CHIEF UNITED STATES DISTRICT JUDGE