# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
### WESTERN DIVISION

| | |
|---|---|
| **JESSICA JONES, et al.,** | Case No. 2:20-cv-02892-SHL-tmp |
| Plaintiffs, | |
| v. | |
| **VARSITY BRANDS, LLC, et al.** | |
| Defendants. | |
| | **JURY DEMAND** |

## INDIRECT PURCHASER PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR AN AWARD OF ATTORNEYS' FEES, FOR REIMBURSEMENT OF EXPENSES, AND FOR SERVICE AWARDS FOR THE CLASS REPRESENTATIVES

**INDIRECT PURCHASER PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR AN AWARD OF ATTORNEYS' FEES, FOR REIMBURSMENT OF EXPENSES, AND FOR SERVICE AWARDS FOR THE CLASS REPRESENTATIVES**

# <u>TABLE OF CONTENTS</u>

I.      INTRODUCTION ................................................................................................1

II.     HISTORY OF THE LITIGATION .....................................................................5

        A.      Investigation and Factual Development.................................................5

        B.      Pleadings and Motions to Dismiss.........................................................6

        C.      Fact Discovery .......................................................................................7

        D.      Expert Discovery ...................................................................................8

        E.      Dispositive Motions.............................................................................10

        F.      Negotiation and Settlement..................................................................10

        G.      Time and Expense ................................................................................11

III.    THE REQUESTED ATTORNEYS' FEES ARE REASONABLE.....................12

        A.      A Percentage-of-the-Fund Is the Appropriate Method Here.................12

        B.      One-Third of the Common Fund Is Within the Range of Fees Awarded in
                Similar Cases and Supported by the Lodestar.......................................13

        C.      The Ramey Factors Support the Fee Request .......................................14

                1.      The Value of the Benefit Rendered to the Settlement Classes. .........14

                2.      Society's Stake in Rewarding Class Counsel's Work. ....................16

                3.      The Contingency Fee Basis of Class Counsel's Work. ...................17

                4.      The Lodestar Cross-Check. ...........................................................18

                5.      The Complexity of the Litigation....................................................20

                6.      The Quality of the Representation...................................................21

IV.     CLASS COUNSEL'S REQUEST FOR REIMBURSEMENT OF LITIGATION
        EXPENSES IS REASONABLE...........................................................................22

V.      THE CLASS REPRESENTATIVES SHOULD RECEIVE SERVICE AWARDS...........23

VI.     CONCLUSION...................................................................................................25

**INDIRECT PURCHASER PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR
AN AWARD OF ATTORNEYS' FEES, FOR REIMBURSEMENT OF EXPENSES, AND FOR SERVICE
AWARDS FOR THE CLASS REPRESENTATIVES**

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ballatore v. Comm'r of Soc. Sec.*, No. 11-15335, 2015 WL 5830836
(E.D. Mich. Aug. 5, 2015) ................................................................................17

*Boeing Co. v. Van Gemert*, 444 U.S. 472 (1980) ..........................................................12

*Brown v. Pro Football, Inc.*, 839 F. Supp. 905 (D.D.C. 1993) ....................................23

*Communities for Equity v. Michigan High Sch. Athletic Ass'n*, No. 1:98-CV-479,
2008 WL 906031 (W.D. Mich. Mar. 31, 2008) ................................................23

*Daoust v. Maru Restaurant, LLC*, No. 17-CV-13879, 2019 WL 2866490
(E.D. Mich. July 3, 2019) ................................................................................13

*Dorn v. Eddington Sec., Inc.*, No. 08 CIV. 10271 LTS, 2011 WL 9380874
(S.D.N.Y. Sept. 21, 2011) ................................................................................24

*Duren v. Int'l Follies, Inc.*, No. 1:19-CV-01512-ELR, 2022 WL 3337249
(N.D. Ga. June 6, 2022) ....................................................................................15

*Fidel v. Farley*, 534 F.3d 508 (6th Cir. 2008) ............................................................14

*Fitzgerald v. P.L. Mktg., Inc.*, No. 2:17-cv-02251-SHM-cgc, 2020 WL 3621250
(W.D. Tenn. July 2, 2020) ................................................................................13

*Fusion Elite All Stars v. Varsity Brands, LLC*, No. 2:20-CV-02600-SHL-TMP,
2023 WL 6466398 (W.D. Tenn. Oct. 4, 2023) ................................................13

*Gascho v. Glob. Fitness Holdings, LLC*, 822 F.3d 269 (6th Cir. 2016) ....................12, 13, 14, 18

*Gokare, P.C. v. Fed. Express Corp.*, No. 2:11-CV-2131-JTF-CGC,
2013 WL 12094887 (W.D. Tenn. Nov. 22, 2013) ............................................14

*Gonter v. Hunt Valve Co.*, 510 F.3d 610 (6th Cir. 2007) ............................................19

*Hensley v. Eckerhart*, 461 U.S. 424 (1983) ................................................................14

*Hosp. Auth. of Metro. Gov't of Nashville v. Momenta Pharms., Inc.*,
No. 3:15-CV-01100, 2020 WL 3053468 (M.D. Tenn. May 29, 2020) ..............24

*In re Abrams & Abrams, P.A.*, 605 F.3d 238 (4th Cir. 2010) ......................................17

*In re: AT&T Corp. Sec. Litig.*, 455 F.3d 160 (3d Cir. 2006) ......................................21

*In re Brand Name Prescription Drugs Antitrust Litig.*, 2000 WL 204112
(N.D. Ill. Feb. 10, 2000) ..................................................................................................19

*In re Cardinal Health Inc. Sec. Litig.*, 528 F. Supp. 2d 752 (S.D. Ohio 2007) ......................14, 17

*In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508 (E.D. Mich. 2003) ................................12, 22

*In re Delphi Corp. Sec., Derivative & "ERISA" Litig.*, 248 F.R.D. 483
(E.D. Mich. 2008) ...........................................................................................................22

*In re Fam. Dollar Stores, Inc., Pest Infestation Litig.*,
No. 2:22-MD-3032-SHL-TMP, 2024 WL 2806477 (W.D. Tenn. May 31, 2024) .................16

*In re Linerboard Antitrust Litig.*, No. CIV.A. 98-5055, 2004 WL 1221350
(E.D. Pa. June 2, 2004) ...................................................................................................18

*In re Marsh ERISA Litig.,* 265 F.R.D. 128 (S.D.N.Y. 2010) ........................................................18

*In re Packaged Ice Antitrust Litig.*, No. 08-MDL-01952, 2011 WL 6209188
(E.D. Mich. Dec. 13, 2011) ..............................................................................................20

*In re Polyurethane Foam Antitrust Litig.*, 135 F. Supp. 3d 679 (N.D. Ohio 2015) .....................20

*In re Puerto Rican Cabotage Antitrust Litig.*, 815 F. Supp. 2d 448 (D.P.R. 2011) ......................18

*In re Regions Morgan Keegan Sec., Derivative & ERISA Litig.*,
No. 2:09-MD-2009-SMH, 2014 WL 12808031 (W.D. Tenn. Dec. 24, 2014) ......................18

*In re Se. Milk Antitrust Litig.*, No. 2:07-CV 208, 2013 WL 2155387 (E.D. Tenn.
May 17, 2013) ........................................................................................................ *passim*

*In re Skelaxin (Metaxalone) Antitrust Litig.*, 2014 WL 2946459 (E.D.Tenn.2014) .....................24

*In re Sonic Corp. Customer Data Sec. Breach Litig.*, No. 1:17-MD-2807,
2019 WL 3773737 (N.D. Ohio Aug. 12, 2019) ....................................................................13

*In re Trans Union Corp. Priv. Litig.*, 629 F.3d 741 (7th Cir. 2011) .............................................17

*Johnson v. W2007 Grace Acquisition I, Inc.*, 2015 WL 12001269
(W.D. Tenn. Dec. 4, 2015) ...............................................................................................23

*Jones v. H&J Restaurants, LLC*, 2020 WL 6877577 (W.D. Ky. Nov. 23, 2020) ...................7, 13

*Kirchoff v. Flynn*, 786 F.2d 320 (7th Cir. 1986) ......................................................................17

*Lonardo v. Travelers Indemnity Co.*, 706 F. Supp. 2d 766 (N.D. Ohio 2010) ...........................24

*Lowther v. AK Steel Corp.*, No. 1:11-CV-877, 2012 WL 6676131
(S.D. Ohio Dec. 21, 2012) ...............................................................................................19

**INDIRECT PURCHASER PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR
AN AWARD OF ATTORNEYS' FEES, FOR REIMBURSEMENT OF EXPENSES, AND FOR SERVICE
AWARDS FOR THE CLASS REPRESENTATIVES**

*Mills v. Electric Auto-Lite Co.*, 396 U.S. 375 (1970) ....................................................22

*Missouri v. Jenkins by Agyei*, 491 U.S. 274 (1989)......................................................19

*New England Health Care Emps. Pension Fund v. Fruit of the Loom, Inc.*,
    234 F.R.D. 627, 635 (W.D. Ky. 2006)..........................................................14

*Ohio Pub. Int. Campaign v. Fisher Foods, Inc.,* 546 F. Supp. 1 (N.D. Ohio 1982).....................15

Order Approving DPP's Motion for Fees and Costs, *Fusion Elite All Stars v. Varsity
    Brands, LLC*, No. 2:20-cv-02600-SHL-tmp (W.D. Tenn. October 4, 2023), ECF
    No. 350.....................................................................................5, 15

Order Approving DPP's Settlement, *Fusion Elite All Stars v. Varsity Brands, LLC*,
    No. 2:20-cv-02600-SHL-tmp (W.D. Tenn. April 25, 2023), ECF No. 336 ...........................3

*Ramah Navajo Chapter v. Babbitt*, 50 F. Supp. 2d 1091 (D.N.M. 1999)....................................15

*Ramey v. Cincinnati Enquirer, Inc.*, 508 F.2d 1188 (6th Cir. 1974) ...................................14

*Romero v. ABCZ Corp.*, No. 14 CIV. 3653 (HBP), 2017 WL 2560004
    (S.D.N.Y. June 12, 2017)...........................................................................15

*Slaughter v. 5 Star Pizza, LLC*, No. 2:19-CV-1456, 2019 WL 6526014
    (S.D. Ohio Dec. 4, 2019) .........................................................................15

*Smith v. Loc. Cantina, LLC*, No. 2:20-CV-03064, 2022 WL 1183325
    (S.D. Ohio Apr. 19, 2022).........................................................................24

*Sullivan v. DB Ines., Inc.*, 667 F.3d 273 (3d Cir. 2011)................................................15

*Trustees v. Greenough*,.105 U.S. 527 (1881) ...........................................................12

*Valspar Corp. v. E.I. Du Pont De Nemours & Co.*, 873 F.3d 185
    (3d Cir. 2017).....................................................................................18

*Walls v. J.P. Morgan Chase Bank, N.A.*, 2016 WL 6078297
    (W.D Ky. Oct. 14, 2016)...........................................................................20

*Zaller v. Fred's Inc., et al.*, No. 2:19-cv-02415 (W.D. Tenn. July 6, 2022),
    ECF No. 105 .......................................................................................13

**Federal Statutes**

15 U.S.C. § 15.............................................................................................23

Clayton Act ...............................................................................................22

**INDIRECT PURCHASER PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR
AN AWARD OF ATTORNEYS' FEES, FOR REIMBURSEMENT OF EXPENSES, AND FOR SERVICE
AWARDS FOR THE CLASS REPRESENTATIVES**

**State Statutes**

Tennessee Trade Practices Act, Tenn. Code Ann. §§ 47-25-101, *et seq.* .........................................1

**Federal Court Rules**

Fed R. Civ. P. 23 ........................................................................................................17, 22

Fed. R. Civ. P. 23(b)(2) ..............................................................................................1, 7

Fed. R. Civ. P. 23(h) ................................................................................................12, 23

Fed. R. Civ. P. 30(b)(6) ...................................................................................................7

Fed. R. Evid. 702 .............................................................................................................9

**Other Authorities**

Bnkr. D. Decl., *In re Canadian Nortel Debtors*, No.1:09-BK-10138
   (D.D.C. January 20, 2022), ECF No. 18931 ...........................................................19

DPP's Settlement Agreement, *Fusion Elite All Stars v. Varsity Brands, LLC*,
   No. 2:20-cv-02600-SHL-tmp (W.D. Tenn. March 24, 2023), ECF No. 329-2 ........................3

**INDIRECT PURCHASER PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR AN AWARD OF ATTORNEYS' FEES, FOR REIMBURSMENT OF EXPENSES, AND FOR SERVICE AWARDS FOR THE CLASS REPRESENTATIVES**

# I.    INTRODUCTION

Plaintiffs Jessica Jones, Christina Lorenzen, and Amy Coulson (collectively, "Plaintiffs," or "Class Representatives"), on behalf of themselves and the proposed Settlement Classes, hereby move the Court for reasonable attorneys' fees earned and costs incurred in prosecuting the above-captioned class action (the "Action"), as authorized by the terms of the Settlement Agreement, and Rules 23(h) and 54(d)(2) of the Federal Rules of Civil Procedure.

For more than three and a half years, Class Counsel[1] have engaged in complex adversarial litigation on behalf of Plaintiffs and the Settlement Classes in the Action. The Action involves complex claims and allegations that presented unique challenges, even by the standards of antitrust class actions, which are among the most complex cases to prosecute.

Plaintiffs brought claims on behalf of three classes,[2] alleging violations of federal antitrust law and the antitrust and consumer protection laws of more than 30 states, involving three distinct but related product markets, and two types of competitive cheer, by thirteen Defendants. Plaintiffs and the members of the Settlement Classes purchased Varsity's products indirectly through the All Star gyms and schools where their children participated in competitive cheer, which added another layer of complexity.

Despite the complex nature of Plaintiffs' claims, the many risks and pitfalls that face all plaintiffs in complex class actions such as this, and aggressive opposition from opposing counsel, Class Counsel have obtained a substantial settlement for the Settlement Classes, avoiding the risks and delays inherent in trial and appeal. The settlement provides Settlement Class members

---

[1] Class Counsel consists of: (1) Joseph Saveri Law Firm, LLP; (2) Gustafson Gluek PLLC; (3) Hartley LLP; (4) Paul LLP; and (5) Turner Feild, PLLC. ECF No. 612 at PageID 35672.

[2] Plaintiffs' Complaint brought claims on behalf of an injunctive relief class under Rule 23(b)(2), a nationwide damages class under the Tennessee Trade Practices Act ("TTPA"), Tenn. Code Ann. §§ 47-25-101, *et seq.* (the "Injunctive Relief Class"), and a state law damages class under various state antitrust and consumer protection laws (the "State Law Damages Class"). ECF No. 1 at PageID 10-11. The Court has conditionally approved the Injunctive Relief Class and the State Law Damages Class (together, the "Settlement Classes"). ECF No. 612 at PageID 345671. The Court dismissed the nationwide damages class under the TTPA. ECF No. 475 at PageID 19523.

with meaningful compensation for their injuries and provides substantive changes to Defendants'
business practices that will promote competition and benefit the Settlement Classes for years.

Bringing to bear their experience in antitrust cases and other complex class action
litigation, Class Counsel devoted substantial time and expertise at every stage of the litigation.
There was no prior government investigation. Class Counsel engaged in extensive pre-filing
investigation, drafted a detailed complaint, overcame challenges to the pleadings, served
comprehensive written discovery, reviewed hundreds of thousands of documents, deposed 40
percipient witnesses, developed expert testimony described in four separate expert reports, fully
briefed motions for class certification and summary judgment, prepared for trial, and engaged in
multiple arms-length mediation sessions facilitated by respected mediators. As a direct result of
Class Counsel's determined and skillful prosecution of Plaintiffs' claims, the Parties[3] have
agreed to settle their claims and defenses. The settlement represents a very positive outcome for
Plaintiffs and the Settlement Classes.

The Settlement Agreement has two main components. First, the Parties agreed to the
creation of a common fund, comprised of an all-cash settlement fund of $82.5 million (the
"Settlement Fund") for the benefit of the State Law Damages Class.[4] The Settlement Fund, to be

---

[3] The Parties are Plaintiffs and Defendants Varsity Brands, LLC; Varsity Spirit, LLC; Varsity
Spirit Fashion & Supplies, LLC (collectively with Varsity Brands, LLC and Varsity Spirit, LLC
"Varsity"); U.S. All Star Federation, Inc. ("USASF"); Jeff Webb ("Webb"); Charlesbank Capital
Partners LLC ("Charlesbank"); Charlesbank Equity Fund VII, Limited Partnership; Charlesbank
Equity Fund VIII, Limited Partnership; Charlesbank Equity Fund IX, Limited Partnership
(Collectively with Charlesbank Equity Fund VII and Charlesbank Equity Fund VIII, the
"Charlesbank Funds"); Bain Capital Private Equity, LP; Bain Capital Fund XII, L.P.; Bain
Capital Fund (DE) XII, L.P.; and Bain Capital Fund (LUX) XII, SCSp (together with Bain
Capital Fund XII and Bain Capital Fund (DE) XII, the "Bain Funds").

[4] The State Law Damages Class is defined as:
    All natural persons and entities in Arizona, Arkansas, California, Connecticut, the
    District of Columbia, Florida, Hawaii, Idaho, Iowa, Kansas, Maine,
    Massachusetts, Maryland, Michigan, Minnesota, Mississippi, Missouri, Montana,
    Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina,
    North Dakota, Oregon, Rhode Island, South Dakota, Tennessee, Utah, Vermont,
    Washington, West Virginia, and Wisconsin, that indirectly paid Varsity or any
    Varsity subsidiary or affiliate, from December 10, 2016, through March 31, 2024,

distributed to the members of the Settlement Class, amounts to approximately 67% of the single damages computed by Plaintiffs' damages experts through 2020 (the period for which Plaintiffs' experts had data from which to calculate damages), which is well within the range of settlements approved by courts in this Circuit and throughout the United States. The magnitude of the settlement fund means that every member of the state law damages class who submits a claim will receive meaningful compensation for the alleged overcharges they have already paid. The amount is nearly double the Direct Purchaser Plaintiffs' settlement, approved by the Court on October 4, 2023. *See Fusion Elite All Stars v. Varsity Brands, LLC*, Case No. 2:20-cv-02600-SHL-tmp (W.D. Tenn. April 25, 2023) ("*Fusion*"), ECF No. 336.

Second, the settlement agreement provides prospective relief for the benefit of the Injunctive Relief Class[5] in the form of changes to Varsity's business practices for 5 years. Pursuant to the settlement, Varsity will no longer be able to require cheer teams to attend a Varsity camp as a prerequisite for attending any of its competitions, or require teams to purchase Varsity apparel in order to participate in Varsity discount programs for competitions, among other injunctive relief. And USASF will no longer be able to share its members' confidential information with Varsity or other partners without consent. These steps will provide substantial relief to the Injunctive Relief Class for the foreseeable future, especially when viewed in combination with the prospective relief obtained by the Direct Purchaser Plaintiffs.[6]

---

for: (a) registration, entrance, or other fees and expenses associated with participation in one or more Varsity Cheer Competitions; (b) Varsity Cheer Apparel; (c) Varsity Cheer Camp Fees; or (d) accommodations at one or more Varsity Cheer Competitions.

[5] The Injunctive Relief Class is defined as:
All natural persons and entities in the United States that indirectly paid Varsity or any Varsity subsidiary or affiliate, from December 10, 2016, through March 31, 2024, for: (a) registration, entrance, or other fees and expenses associated with participation in one or more Varsity Cheer Competitions, including registration fees to USASF; (b) Varsity Cheer Apparel; (c) Varsity Cheer Camp Fees; or (d) accommodations at one or more Varsity Cheer Competitions, including registration fees to USASF.

[6] *See Fusion*, ECF No. 329-2, Settlement Agreement, at PageID 5804 (Varsity will not offer rebate or discount programs to All-Star gyms lasting more than one year or requiring attendance

**INDIRECT PURCHASER PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR AN AWARD OF ATTORNEYS' FEES, FOR REIMBURSEMENT OF EXPENSES, AND FOR SERVICE AWARDS FOR THE CLASS REPRESENTATIVES**

By achieving a settlement, Class Counsel have eliminated the risks inherent in taking a case to trial, and provided the Settlement Classes with an immediate benefit. The Settlement Agreement provides Plaintiffs and the Settlement Classes with certainty and tangible benefits that will be available to them much sooner than if the case went to trial (even assuming a positive outcome at trial and subsequently on appeal, which is never guaranteed).

Class Counsel are experienced class action attorneys with a long track record of successful outcomes in complex antitrust cases such as this. *See* Joint Declaration of Counsel ("Joint Decl."), ¶ 41, 42. The settlement achieved in this case is the result of Class Counsel's application of litigation skills, legal knowledge, and strategic acumen to the unique facts and challenges of this action. The combination of aggressive efficient prosecution of the case combined with adversarial negotiation resulted in a very positive result for Settlement Classes.

Class Counsel committed substantial time, effort, and resources to the Action on a contingent basis, with no guarantee of recovery. Indeed, Class Counsel spent 43,743.45 hours prosecuting the Action, amounting to a lodestar of $32,770,367 based on rates that are consistent with locally prevailing rates for complex litigation such as this. *See* Joint Decl., ¶ 5; *see also* Declaration of J. Gerard Stranch, IV (attesting that Class Counsel's fee is reasonable). Class Counsel's requested fee of $27,500,000 (one-third of the total Settlement Fund Amount of $82,500,000) represents a significant discount against their lodestar.

In addition, Class Counsel incurred $7,450,156.47 in out-of-pocket expenses, for which Class Counsel respectfully asks the Court for reimbursement from the fund, consistent with the Federal Rules of Civil Procedure and this Court's practice.

Class Counsel ask the Court for a reasonable fee of one-third of the total common benefit fund of $82.5 million. A one-third fee is consistent with fees approved in similar class actions

---

at more than 3 Varsity events during a single season). Formerly, Varsity contracts with the All-Star gyms led to teams attending a high number of Varsity events in order for the gym to receive a rebate. The members of the Settlement Classes bore the brunt of the alleged overcharges without receiving the benefit of the rebates.

**INDIRECT PURCHASER PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR AN AWARD OF ATTORNEYS' FEES, FOR REIMBURSEMENT OF EXPENSES, AND FOR SERVICE AWARDS FOR THE CLASS REPRESENTATIVES**

pursued on a contingent basis, including the related *Fusion* action, in which the Court approved a fee of one-third of the common fund on October 4, 2023. *See Fusion*, ECF No. 350. One-third of the $82.5 million settlement equals a fee of $27,500,000, roughly equivalent to applying a multiplier of .84 to Class Counsel's lodestar. The fee is reasonable when considered in light of the size and complexity of the action, the hard fought nature of this litigation, and the value of the benefit rendered to the classes, among other factors.

Plaintiffs also ask the Court for service awards of $50,000 each for Class Representatives Jessica Jones and Christina Lorenzen. Ms. Jones and Ms. Lorenzen had the courage to stand up to Varsity from the beginning. They were actively engaged throughout the litigation, reading and providing feedback on the complaint and other filings, providing responses to Defendants' written discovery, sitting for their depositions, and approving the Settlement Agreement negotiated by Class Counsel. In addition, Plaintiffs ask the Court for a service award of $25,000 for Class Representative Amy Coulson, who agreed to join the Action as a class representative after another class representative left the case. Because of the timing of the negotiated settlement, she was not required to sit for her deposition, but she was prepared to do so had it been required, and had collected and reviewed all of her relevant documents for production. Her addition strengthened Plaintiffs' claims and was a factor leading to the settlement.

For these reasons and those set forth below, Class Counsel respectfully ask the Court to approve this motion for fees and costs and service awards for the class representatives.

## II.    HISTORY OF THE LITIGATION

### A.  Investigation and Factual Development

Prior to filing the complaint in this action, Class Counsel devoted months to thoroughly investigate the factual underpinning of the claims, including Defendants' acquisition and exploitation of market power and the effect on Plaintiffs and the members of the Settlement Classes. Joint Decl., ¶ 10. In its months-long investigation, undertaken entirely during the COVID pandemic, Class Counsel interviewed industry participants and cheer families with first-

**INDIRECT PURCHASER PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR AN AWARD OF ATTORNEYS' FEES, FOR REIMBURSEMENT OF EXPENSES, AND FOR SERVICE AWARDS FOR THE CLASS REPRESENTATIVES**

hand knowledge of Varsity's alleged anticompetitive practices. These individuals provided

insight into Varsity's anticompetitive practices and how they affected the athletes and their

families. They also pointed Class Counsel to numerous other sources of factual information

where Class Counsel learned about the breadth and depth of Varsity's anticompetitive practices

and of the frustration and discontent of the parents, families, and caregivers of competitive cheer

athletes, many of whom would eventually become members of the Settlement Classes. Joint

Decl., ¶ 8.

Class Counsel also combed through publicly available sources, including news articles,

studies, online bulletin boards, and videos. *Id*. Through this research, Class Counsel learned of

the factual underpinnings of the allegations in the complaint concerning Varsity's history of

acquiring its competitors, its relationship with USASF, and the barriers to entry it created to

prevent would-be rivals from gaining a foothold in the relevant markets. Class Counsel also

researched Charlesbank's acquisition of Varsity in 2014 and subsequent sale to Bain in 2018, and

the roles those Defendants played in the alleged anticompetitive scheme. This research led to the

addition of Charlesbank and Bain entities as Defendants. Joint Decl., ¶ 13.

During its investigation, Class Counsel spoke to numerous potential class representatives,

and solicited inquiries from interested cheer athletes and families who might wish to serve as

class representatives or witnesses. Class Counsel received hundreds of inquiries from potential

class members and interviewed dozens of potential candidates to find suitable plaintiffs. Class

Counsel also used this process to confirm aspects of the claims and timeline developed through

factual investigation. Joint Decl., ¶ 10.

### B.  Pleadings and Motions to Dismiss

After months of factual investigation, Class Counsel filed a complaint on behalf of

indirect purchasers of Varsity competitions, camps, and apparel, commencing this Action, on

December 10, 2020. By way of contrast, the direct purchaser action only brought claims with

respect to competitions. The Complaint sought prospective relief on behalf of a nationwide

**INDIRECT PURCHASER PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR
AN AWARD OF ATTORNEYS' FEES, FOR REIMBURSEMENT OF EXPENSES, AND FOR SERVICE
AWARDS FOR THE CLASS REPRESENTATIVES**

injunctive relief class under Rule 23(b)(2) of the Federal Rules of Civil Procedure, and money damages on behalf of a nationwide class under Tennessee law as well as a state law class under the antitrust and consumer protections laws of over 30 states. ECF No. 1.

On March 12, 2021, Defendants USASF, Jeff Webb, and Varsity each filed individual motions to dismiss, and Bain and Charlesbank filed a joint motion to dismiss. ECF Nos. 57, 58, 59, 60. Defendants also collectively filed a motion to strike class allegations, ECF No. 56.

On April 15, 2021, Class Counsel filed oppositions to each of Defendants' motions to dismiss and the motion to strike (ECF Nos. 67, 68, 69, 70, 71), successfully defending Plaintiffs' claims regarding the Injunctive Relief Class and the State Law Damages Class for all but four states and the Nationwide Damages Class. *See* ECF No. 333 at PageID 7260; ECF No. 475 at PageID 19527.

### C. Fact Discovery

Early in the case, Plaintiffs sought a ruling that discovery in the *Jones* action could proceed on a simultaneous discovery track with the *Fusion* and *American Spirit* actions, despite being filed months after those actions, which made the sharing of discovery across the three cases practicable. Joint Decl., ¶ 14. Soon thereafter, the Court approved the sharing of discovery materials and coordination of depositions, which streamlined discovery in the three related cases, and enabled the conservation of the Court's and the parties' resources while facilitating the full prosecution of claims for all parties. ECF Nos. 45, 47, 159.

Beginning in March 2021, Class Counsel drafted written discovery, including requests for production ("RFPs"), interrogatories, and requests for admission ("RFAs"). Joint Decl., ¶ 20. Because of the complex nature of this action, Class Counsel had to craft five different sets of each, totaling 136 RFPs, 46 interrogatories, and hundreds of RFAs. Class Counsel engaged in intense negotiations with Defendants over the scope of Plaintiffs' discovery requests. Ultimately, Class Counsel had to file numerous motions to compel before Magistrate Judge Pham. *Id*. For example, Defendants repeatedly refused to provide any deposition testimony under Rule

**INDIRECT PURCHASER PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR AN AWARD OF ATTORNEYS' FEES, FOR REIMBURSEMENT OF EXPENSES, AND FOR SERVICE AWARDS FOR THE CLASS REPRESENTATIVES**

30(b)(6), and Plaintiffs were required to file multiple motions to compel such testimony. *See* ECF Nos. 304, 305, 308, 314, 318, 329. Judge Pham's numerous discovery orders documented Defendants' intransigence with respect to discovery, requiring substantial motion practice from Plaintiffs to compel discovery.

Class Counsel reviewed hundreds of thousands of documents produced by Defendants and third parties. This required significant dedication of hours and expense, but was highly productive, identifying numerous documents supporting Plaintiffs' claims. These documents were then used for depositions of dozens of percipient witnesses and were integral to Plaintiffs' expert reports and briefing for class certification and summary judgment.

Along with counsel for plaintiffs in the Related Actions, Class Counsel deposed over 40 fact witnesses and Defendants' two expert witnesses. Class Counsel also defended depositions of the class representatives, and Plaintiffs' four experts. Joint Decl., ¶¶ 25–26.

### D. Expert Discovery

Expert analysis and opinions were necessary to support Plaintiffs' claims and to establish and calculate damages across the three relevant markets and across the various states. With respect to impact and damages, Class Counsel devoted significant resources to developing proof of impact and damages to members of the indirect purchaser class they represent, including proof that damages were passed on through the distribution chain. To support their claims, Class Counsel retained four highly respected experts with specialized knowledge and extensive experience, including:

- Randall Heeb, Ph.D., an expert economist and econometrician specializing in antitrust, who was tasked with proving Defendants' anticompetitive activities harmed the Classes and quantifying the extent of damages;

- Jen Maki, Ph.D., an expert in microeconomics who specializes in modeling the demand factors within markets, who was asked to quantify damages within the submarkets and to estimate the amount of passthrough by the direct purchasers;

**INDIRECT PURCHASER PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR AN AWARD OF ATTORNEYS' FEES, FOR REIMBURSEMENT OF EXPENSES, AND FOR SERVICE AWARDS FOR THE CLASS REPRESENTATIVES**

- Janet Netz, Ph.D., an expert in the field of Industrial Organization who was asked to define the relevant markets and assess whether Varsity held market power within them; and

- James H. Aronoff, an expert in corporate structure with a focus on the finance industry, who was asked to recommend structural relief to support Plaintiffs' injunctive relief claims.

Joint Decl., ¶ 27.

The three economic experts employed widely accepted econometric methods of analysis, including multivariate regression analysis, to prove the existence of, and quantify, Defendants' alleged overcharges. Class Counsel devoted hundreds of hours to working with the experts to draft opening and rebuttal reports, and prepare them for their depositions, which Class Counsel defended. Joint Decl., ¶ 29. All four of Plaintiffs' experts produced their expert reports on June 20, 2022.

On September 23, 2022, Defendants produced reports from two experts, attacking Plaintiffs' experts' opinions. Dr. Kevin Murphy, Defendants' economic expert, produced a 351 page report that opined on virtually all of the relevant issues in the case, opining that Defendants' activities were not anticompetitive, that Plaintiffs' alleged markets were not cognizable, that no damages to the class was sustained, and that Plaintiffs' experts' reports were not reliable. USASF's expert Jonathan Orszag, an alleged expert in sports economics and antitrust, opined primarily that USASF and Varsity were not in an anticompetitive conspiracy. *See, e.g.*, Orszag Report at 6 (ECF No. 384-4).

On February 10, 2023, Class Counsel filed a motion to partially exclude the opinions of Dr. Murphy, and to exclude the opinions of Mr. Orszag in their entirety pursuant to Federal Rule of Evidence 702. The Court granted the motion with respect to Dr. Murphy in part, excluding his opinion that event prices increased due to rising demand. ECF No. 573 at PageID 33505. The Court granted in full Plaintiffs' motion with regard to Mr. Orszag, excluding his opinions in their

**INDIRECT PURCHASER PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR AN AWARD OF ATTORNEYS' FEES, FOR REIMBURSEMENT OF EXPENSES, AND FOR SERVICE AWARDS FOR THE CLASS REPRESENTATIVES**

entirety. *Id*.

Also on February 10, 2023, Defendants filed motions to exclude all of Plaintiffs' experts' opinions. On March 31, 2023, Class Counsel opposed Defendants' motions, successfully defeating three out of Defendants' four *Daubert* motions. Specifically, the Court excluded Mr. Aronoff's opinions, but did not exclude the core opinions of Plaintiffs' other three experts. ECF No. 568, 577, 579, 580. These were significant victories for Plaintiffs and the Settlement Classes and materially advanced the resolution of the case.

### E. Dispositive Motions

Plaintiffs filed their Motion for Class Certification, supported by eight expert reports (four merits reports and four rebuttal reports), as well as 59 exhibits, on February 10, 2023. On July 28, 2023, Defendants filed 4 separate motions for summary judgment. On September 15, 2023, Class Counsel filed oppositions to all four motions, including briefing totaling 99 pages, plus factual statements totaling 139 pages and 10 pages of objections to Defendants' statement of facts, as well as 309 exhibits. The motions for class certification and for summary judgment were fully briefed and pending before the Court when the settlement was reached. Joint Decl., ¶¶ 35–36.

### F. Negotiation and Settlement

While Plaintiffs have vigorously prosecuted this case at all times since its inception, Plaintiffs and Defendants have engaged in several mediated attempts to resolve this case before trial. The first mediation session was on July 27, 2021, when Plaintiffs and Defendants engaged in Court-ordered mediation conducted via Zoom by David Wade of Martin, Tate, Morrow & Marston, P.C. The mediation was unsuccessful. The Parties participated in a second mediation conducted by Randall Wolff on June 26, 2023. This mediation was also unsuccessful. Joint Decl., ¶¶ 37–38.

On March 9, 2024, the Parties participated in a third full-day mediation, this time before the Hon. Layn Phillips (ret.) of Phillips ADR. Though the Parties did not reach an agreement that

**INDIRECT PURCHASER PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR AN AWARD OF ATTORNEYS' FEES, FOR REIMBURSEMENT OF EXPENSES, AND FOR SERVICE AWARDS FOR THE CLASS REPRESENTATIVES**

day, they continued to negotiate in the weeks after the mediation with the assistance of Clay Cogman, Esq. of Phillips ADR, resulting in an agreement in-principle and negotiation of the terms sheet that led to the proposed settlement. Joint Decl., ¶ 39. Subsequent to reaching the proposed settlement, the parties drafted the settlement agreement, the proposed forms of notice and other settlement related documents. Plaintiffs also set up a bid process for settlement administrators, ultimately selected Angeion, the administrator with the winning bid. Plaintiffs have devoted substantial time organizing the claims process which will provide cash payments to class members.[7] Joint Decl., ¶ 40.

### G. Time and Expense

From its inception, Class Counsel have committed substantial amounts of attorney time and resources to the prosecution of the Action on a wholly contingent basis. Class Counsel made the commitment because given the complexities and anticompetitive theories involved, substantial time and expenses were necessary to achieve a successful outcome for Plaintiffs and the Settlement Classes. As is always the case in complex class actions of this size and complexity, success was never assured.

From inception to June 30, 2024, Class Counsel devoted 43,743.45 hours to the prosecution of the Action. At hourly rates consistent with local practice, which are lower than those ordinarily charged for similar matters, this equates to a total attorney-billable lodestar of $32,770,367. Plaintiffs also spent $7,450,156.47 in out-of-pocket costs to cover expenses that were necessary to the successful prosecution of the Action, including $6,743,955.31 to pay Plaintiffs' experts. Other critical elements of Class Counsel's efforts that have resulted in unreimbursed expenses include: the creation and maintenance of an electronic document database to house and review thousands of documents; court reporter, videographer, and transcripts fees incurred from depositions; computerized legal research fees; and copying.

---

[7] Most recently, Plaintiffs have communicated with the Attorney General of Illinois which has sought to intervene in these proceedings and ensure that Illinois indirect purchasers participate in the settlement. ECF Nos. 615, 618.

**INDIRECT PURCHASER PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR AN AWARD OF ATTORNEYS' FEES, FOR REIMBURSEMENT OF EXPENSES, AND FOR SERVICE AWARDS FOR THE CLASS REPRESENTATIVES**

## III. THE REQUESTED ATTORNEYS' FEES ARE REASONABLE

### A. A Percentage-of-the-Fund Is the Appropriate Method Here.

Class Counsel's request for their fee to be set as a percentage of the settlement fund is appropriate under controlling law. Under Fed. R. Civ. P. 23(h), "[i]n a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." As the Supreme Court has recognized, "[A] lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *see Trustees v. Greenough*,.105 U.S. 527, 529 (1881) (ordering payment to bond holder plaintiff for creation of common fund for benefit of all bond holders). "When awarding attorney's fees in a class action, a court must make sure that counsel is fairly compensated for the amount of work done as well as for the results achieved." *Gascho v. Glob. Fitness Holdings*, *LLC*, 822 F.3d 269, 279 (6th Cir. 2016) (quoting *Rawlings v. Prudential–Bache Properties, Inc*., 9 F.3d 513, 516 (6th Cir.1993) ("*Rawlings*")).

In the Sixth Circuit, courts may use either of two methods to calculate attorneys' fees: (1) the "lodestar" method (in which the court "multiplies the number of hours reasonably expended on the litigation by a reasonable hourly rate") or (2) the "percentage of the fund" method (in which the court "determines a percentage of the settlement to award to class counsel"). *Gascho*, 822 F.3d at 279 (internal quotation marks and citation omitted). However, "courts in the Sixth Circuit have indicated their preference for the percentage-of-the-fund method in common fund cases" such as this. *In re Cardizem CD Antitrust Litig*., 218 F.R.D. 508, 532 (E.D. Mich. 2003); *see also In re Se. Milk Antitrust Litig.*, No. 2:07-CV 208, 2013 WL 2155387, at *2 (E.D. Tenn. May 17, 2013) ("the trend in the Sixth Circuit is 'toward adoption of a percentage of the fund method' in common fund cases") (quoting *Stanley v. United States Steel Company*, 2009 WL 4646647 (E.D. Mich. Dec.8, 2009)).

The advantages of the percentage-of-the-fund method are that it "more accurately reflects

the results achieved," and that "it is easy to calculate; it establishes reasonable expectations on

the part of plaintiffs' attorneys as to their expected recovery; and it encourages early settlement,

which avoids protracted litigation." *Gascho*, 822 F.3d at 279 (quoting *Rawlings* 9 F.3d at 516).

This method directly "aligns the interests of the class and its counsel and provides a powerful

incentive" to maximize recovery as efficiently as possible. *Se. Milk*, 2013 WL 2155387, at *2

(internal quotation marks and citation omitted). By contrast, "the lodestar method is difficult to

apply, time-consuming to administer, inconsistent in result, and capable of manipulation" and

"creates inherent incentive to prolong the litigation." *Id*. (quoting Manual for Complex Litigation

Fourth §14.121).

**B.  One-Third of the Common Fund Is Within the Range of Fees Awarded in Similar Cases and Supported by the Lodestar.**

Class Counsel respectfully ask the Court for a fee of $27,500,000, equal to one-third of

the total settlement fund of $82,500,000. Courts in the Sixth Circuit routinely hold that a

percentage of the fund fee equaling one-third of the settlement amount is reasonable. *See e.g.*,

*Fusion Elite All Stars v. Varsity Brands, LLC*, No. 2:20-CV-02600-SHL-TMP, 2023 WL

6466398, at *8 (W.D. Tenn. Oct. 4, 2023) (finding attorneys' fees that equaled one-third of total

settlement amount was reasonable). *See also id*., at *6 ("the requested counsel fee of one third of

the settlement recovery is fair and reasonable and fully justified. The Court finds it is within the

range of fees ordinarily awarded.") (quoting *In re Se. Milk Antitrust Litig*., No. 2:07-CV 208,

2013 WL 2155387, at *3 (E.D. Tenn. May 17, 2013)).[8] Further, the one-third fee requested is

---

[8] *See also, Zaller v. Fred's Inc., et al*., No. 2:19-cv-02415 (W.D. Tenn. July 6, 2022), ECF No.
105) (awarding one-third of the gross amount of the $7.25 million settlement fund as attorneys'
fees); *Jones v. H&J Restaurants, LLC*, 2020 WL 6877577, at *5 (W.D. Ky. Nov. 23, 2020)
("[D]istrict courts in this Circuit have found a one-third fee award to be appropriate"); *Fitzgerald
v. P.L. Mktg., Inc*., No. 2:17-cv-02251-SHM-cgc 2020 WL 3621250, at *10 (W.D. Tenn. July 2,
2020) (awarding one-third of the gross amount of the settlement fund as attorneys' fees and
finding that it "accords with general practice in common fund class action settlements"); *In re
Sonic Corp. Customer Data Sec. Breach Litig*., No. 1:17-MD-2807, 2019 WL 3773737, at *11
(N.D. Ohio Aug. 12, 2019) (finding attorneys' fees of one-third of aggregate settlement amount
was reasonable and "typical" in class actions in the Sixth Circuit); *Daoust v. Maru Restaurant,
LLC*, No. 17-CV-13879, 2019 WL 2866490, at *5 (E.D. Mich. July 3, 2019) (citation omitted)

actually *less* than the lodestar of Class Counsel's time spent on this case, further supporting the requested fee. A more detailed analysis of the loadstar compared to the one-third requested fee is discussed below at Section II.C.4.

### C. The *Ramey* Factors Support the Fee Request.

Courts in the Sixth Circuit apply a six-factor test to determine the reasonableness of a common fund fee request:

> (1) the value of the benefit rendered to [the plaintiffs];
>
> (2) society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others;
>
> (3) whether the services were undertaken on a contingent fee basis;
>
> (4) the value of the services on an hourly basis [i.e., the lodestar cross-check];
>
> (5) the complexity of the litigation; and
>
> (6) the professional skill and standing of counsel involved on both sides.

*Ramey v. Cincinnati Enquirer, Inc.*, 508 F.2d 1188, 1196 (6th Cir. 1974); *see also Gascho,* 822 F.3d at 280. Each of the *Ramey* factors supports the reasonableness of the requested fee award.

### 1. The Value of the Benefit Rendered to the Settlement Classes.

"District courts in this Circuit widely regard the first *Ramey* factor as the most important." *In re Cardinal Health Inc. Sec. Litig.*, 528 F. Supp. 2d 752, 764 (S.D. Ohio 2007); *see also Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983) (explaining that "the most critical factor is the degree of success obtained"). Here, Class Counsel obtained an outstanding result for the Class, including an all-cash fund in the amount of $82.5 million. The Settlement Fund amounts to

---

(finding class counsels' request for attorneys' fees of one-third of settlement fund was "fair and reasonable using the 'percentage-of- recovery' method, [and] consistent with the 'trend in this Circuit'"); *Gokare, P.C. v. Fed. Express Corp.*, No. 2:11-CV-2131-JTF-CGC, 2013 WL 12094887, at *4 (W.D. Tenn. Nov. 22, 2013) (collecting cases in which courts in this Circuit have approved attorney's fee awards in common fund cases ranging from 30% to 33% of the total fund); *New England Health Care Emps. Pension Fund v. Fruit of the Loom, Inc.*, 234 F.R.D. 627, 635 (W.D. Ky. 2006) ("[A] one-third fee from a common fund case has been found to be typical by several courts[.]") (citations omitted), aff'd, *Fidel v. Farley*, 534 F.3d 508 (6th Cir. 2008).

**INDIRECT PURCHASER PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR AN AWARD OF ATTORNEYS' FEES, FOR REIMBURSEMENT OF EXPENSES, AND FOR SERVICE AWARDS FOR THE CLASS REPRESENTATIVES**

approximately 67% of the single damages computed by Plaintiffs' damages experts through 2020 (the period for which Plaintiffs' experts had data on which to calculate damages).[9] Joint Dec., ¶ 3. This is well within a range that courts routinely find to be "fair and reasonable." *See e.g.* *Ramah Navajo Chapter v. Babbitt*, 50 F. Supp. 2d 1091, 1100 (D.N.M. 1999) (common fund that "represents two-thirds of Class Counsel's reasonable estimate of provable damages . . . is a fair, reasonable, and adequate outcome"); *Romero v. ABCZ Corp.*, No. 14 CIV. 3653 (HBP), 2017 WL 2560004, at *2 (S.D.N.Y. June 12, 2017) (same); *Duren v. Int'l Follies, Inc.*, No. 1:19-CV-01512-ELR, 2022 WL 3337249, at *3 (N.D. Ga. June 6, 2022) (same); *Slaughter v. 5 Star Pizza, LLC*, No. 2:19-CV-1456, 2019 WL 6526014, at *3 (S.D. Ohio Dec. 4, 2019) (same). Further, the settlement amount is nearly double the Direct Purchasers' related settlement, which was approved by the Court on October 4, 2023. *Fusion*, ECF No. 350.

In addition, the prospective relief negotiated by Class Counsel will add significantly to the benefits achieved for the benefit of the Settlement Classes by ensuring that Defendants will no longer engage in much of the alleged anticompetitive conduct that harmed Plaintiffs and the Class in the first place. Specifically, for the next 5 years:

> (1) Varsity will cease requiring cheer teams to attend a Varsity camp as a prerequisite for attending any of its competitions, will ensure that squad credentialing, when required, is available at a reasonable cost and without requiring attendance at a Varsity camp;

> (2) Varsity will cease "requir[ing] exclusive purchasing arrangements as a condition for participation in the Varsity Family Plan, Network Program, or any rebate or discount program relating to Cheer Competitions";

> (3) Varsity will cease requiring families to stay at Varsity-approved hotels as a condition of participating in 35% or more of Varsity's competitions; and

> (4) USASF will cease sharing confidential information from any of its members with any other members, along with other protections for Injunctive Relief Class members' confidential information.

---

[9] *See Ohio Pub. Int. Campaign v. Fisher Foods, Inc.,* 546 F. Supp. 1, 9 (N.D. Ohio 1982) ("the sufficiency of an antitrust settlement may properly be evaluated by comparison to possible single damages."); *Sullivan v. DB Ines., Inc.*, 667 F.3d 273, 324 (3d Cir. 2011) (quoting *Lorazepam & Clorazepate Antitrust Litig.*, 205 F.R.D. 369, 376 (D.D.C.2002)) ("[T]he standard for evaluating settlement involves a comparison of the settlement amount with the estimated single damages.").

These injunctive conduct remedies are a significant benefit for the Class in addition to the substantial monetary settlement.

### 2. Society's Stake in Rewarding Class Counsel's Work.

"Consumer class actions . . . [provide] value to society . . . both as deterrents to unlawful behavior—particularly when the individual injuries are too small to justify the time and expense of litigation—and as private law enforcement regimes that free public sector resources." *In re Fam. Dollar Stores, Inc., Pest Infestation Litig.*, No. 2:22-MD-3032-SHL-TMP, 2024 WL 2806477, at *4 (W.D. Tenn. May 31, 2024) ("*Family Dollar*") (quoting *Gascho*, 822 F.3d at 287). Particularly with respect to the enforcement of the antitrust laws through private civil litigation, "[s]ociety's interests are clearly furthered by the private prosecution of civil cases which further important public policy goals, such as vigorous competition by marketplace competitors." *Se. Milk*, 2013 WL 2155387, at *5. "Awards of substantial attorneys' fees in cases like this are necessary to incentivize attorneys to shoulder the risk of nonpayment to expose violations of the law and to achieve compensation for injured parties." *Id.* "[F]ailing to fully compensate class counsel for the excellent work done and the various substantial risks taken would undermine society's interest in the private litigation of antitrust cases." *Id.*

Here, Class Counsel's enforcement of the antitrust laws have substantially advanced society's interests and important public policy goals. Varsity's alleged anticompetitive conduct will be significantly constrained by the prospective relief negotiated by Class Counsel, and will be further deterred in the future by the size of the settlement fund. The market will be more competitive as a result, and the families and caregivers of future cheer athletes will benefit from the increased competition. Indeed, payment of the fee requested will provide the right incentive to enforce the antitrust laws. But for Class Counsel's initiative in investigating the conduct and bringing the Action against Defendants, Plaintiffs and the members of the Settlement Classes would likely have received no remuneration and no relief from the status quo.

Class Counsel's prosecution of the Action has advanced society's goals, and benefitted

**INDIRECT PURCHASER PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR AN AWARD OF ATTORNEYS' FEES, FOR REIMBURSEMENT OF EXPENSES, AND FOR SERVICE AWARDS FOR THE CLASS REPRESENTATIVES**

the Settlement Classes. This factor supports granting Class Counsel's Motion for Fees.

### 3. The Contingency Fee Basis of Class Counsel's Work.

"This third Ramey factor stands as a proxy for the risk that attorneys will not recover compensation for the work they put into a case." *In re Cardinal Health Inc. Sec. Litigations*, 528 F. Supp. 2d at 766. The risks inherent in working on a contingent basis motivate attorneys to achieve excellent results and work as efficiently as possible. *See In re Abrams & Abrams, P.A.*, 605 F.3d 238, 246 (4th Cir. 2010) ("an attorney compensated on a contingency basis has a strong economic motivation to achieve results for his client"); *Kirchoff v. Flynn*, 786 F.2d 320, 325 (7th Cir. 1986) ("The contingent fee uses private incentives rather than careful monitoring to align the interests of lawyer and client. The lawyer gains only to the extent his client gains."). "[W]ithin the set of colorable legal claims, a higher risk of loss does argue for a higher fee." *In re Trans Union Corp. Priv. Litig.*, 629 F.3d 741, 746 (7th Cir. 2011); *see also Ballatore v. Comm'r of Soc. Sec.*, No. 11-15335, 2015 WL 5830836, at *5 (E.D. Mich. Aug. 5, 2015) ("[T]he contingent fee [] may be high because the risk of default (*i.e.*, losing the case) is high").

Here, the risks were real and substantial. It was Plaintiffs' burden to establish the existence of anticompetitive conduct, market power, a properly defined product market or geographic market, and damages to the class. At any stage of the litigation, Plaintiffs could have failed to meet that burden. Moreover, for class certification, Plaintiffs had to establish numerosity, commonality, typicality, adequacy, and classwide impact. In this indirect purchaser case, Plaintiffs had the additional burden of proving impact and damages were passed-on to the end-users, who constitute the damages class. Had Plaintiffs failed to satisfy Rule 23, all of the prior work may have been for nothing. Experienced counsel must weigh the risks inherent in prevailing on a complex antitrust class action against a settlement that forgoes the possibility of trebled damages but assures a positive result. Examples abound of litigants who pursued their own claims after opting out of a negotiated settlement only to then lose at trial, highlighting the risks that attorneys take in prosecuting cases on a contingent basis. For example, after class

counsel in *In Re Titanium Dioxide* negotiated settlements worth $163.5 million, a large plaintiff opted out of the settlements, but lost on summary judgment and came away empty handed. *See Valspar Corp. v. E.I. Du Pont De Nemours & Co.*, 873 F.3d 185, 202 (3d Cir. 2017).

The risks inherent in working on a contingent basis are even more pronounced where, as here, the Action was not based on a preceding government investigation. *See*, *e.g.*, *In re Puerto Rican Cabotage Antitrust Litig.*, 815 F. Supp. 2d 448, 460–61 (D.P.R. 2011) (noting that preceding DOJ investigation and FBI raids mitigated counsel's risk); *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 147 (S.D.N.Y. 2010) ("Risk is not uniform in all class actions" and for "certain antitrust class actions filed in the wake of a Department of Justice consent decree . . . the risk is limited."); *In re Linerboard Antitrust Litig.*, No. CIV.A. 98-5055, 2004 WL 1221350, at *11 (E.D. Pa. June 2, 2004) (recognizing there is a greater risk of nonpayment where an antitrust class action "did not benefit from the fruits of a prior government investigation").

Here, Class Counsel undertook this case on a wholly contingent basis, devoting thousands of hours of time from Class Counsel's attorneys and staff and advancing all costs incurred with no guarantee that they would be paid for their time or reimbursed for the costs. The risks taken by Class Counsel weigh in favor of approving the one-third fee Class Counsel seeks.

### 4. The Lodestar Cross-Check.

Courts often cross-check a percentage-of-fund fee by comparing it to the requesting counsel's lodestar. *See In re Regions Morgan Keegan Sec., Derivative & ERISA Litig.*, No. 2:09-MD-2009-SMH, 2014 WL 12808031, at *5 (W.D. Tenn. Dec. 24, 2014). "To determine the lodestar figure, the court multiplies the number of hours 'reasonably expended' on the litigation by a 'reasonable hourly rate.'" *Gascho*, 822 F.3d at 279 (quoting *Bldg. Serv. Local 47 Cleaning Contractors Pension Plan v. Grandview Raceway*, 46 F.3d 1392, 1401 (6th Cir. 1995)). "Unlike the situation when the Court employs the lodestar method in full, the hours documented by counsel need not be exhaustively scrutinized by the district court where a lodestar cross-check is used." *Se. Milk*, 2013 WL 2155387, at *2 n.3 (internal quotation marks and citation omitted).

"Court[s] may approve fees computed on current rates to adjust for the delay in compensation because the fees will be 'received several years after services were rendered.'" *Lowther v. AK Steel Corp.*, No. 1:11-CV-877, 2012 WL 6676131, at \*5 (S.D. Ohio Dec. 21, 2012) (quoting *Barnes v. City of Cincinnati*, 401 F.3d 729, 745 (6th Cir.2005) (upholding use of current rates to calculate lodestar where cases had gone on for several years)). "[C]urrent rates [can be] appropriate to counterbalance a delay in payment." *Gonter v. Hunt Valve Co*., 510 F.3d 610, 617 (6th Cir. 2007) (citing *Arthur S. Langenderfer, Inc. v. S.E. Johnson Co*., 684 F.Supp. 953, 958 (6th Cir.1988)). *See also Missouri v. Jenkins by Agyei*, 491 U.S. 274, 284 (1989) (quoting *Pennsylvania v. Delaware Valley Citizens' Council*, 483 U.S. 711, 716 (1987).

The lodestar cross-check supports the requested fee. Despite the risks and challenges posed by this litigation, including the risks posed by representing indirect purchasers, Class Counsel invested 43,743.45 hours of attorney and other professional time on behalf of the Settlement Classes. Joint Decl. ¶ 40. Class Counsel's work was non-duplicative, and has been audited and standardized to conform with ABA Litigation codes. *Id*. at ¶ 41.[10]

The hourly rates charged by Class Counsel are reasonable, based on each person's position, experience level, and location, and are consistent with rates charges by attorneys with similar experience in complex litigation in this District. *See* Joint Decl., Exhibit 40, Declaration of J. Gerard Stranch. These rates are comparable to the rates charged by other law firms with similar experience, expertise, and reputation, for similar services in this district.[11]

---

[10] Co-Lead Class Counsel made every effort to work the case efficiently and, in Co-Lead Class Counsel's considerable experience, the total reported lodestar is reasonable for a multi-defendant case of this nature. *See, e.g., Se. Milk*, 2013 WL 2155387, at \*5, 7 (lodestar over \$53 million after five years of litigation); *In re Brand Name Prescription Drugs Antitrust Litig.*, 2000 WL 204112, at \*3 (N.D. Ill. Feb. 10, 2000) (lodestar of \$84 million after approximately six years of litigation).

[11] Class Counsel's rates likely compare favorably with those of Varsity's lead counsel, global law firm Cleary Gottlieb Steen & Hamilton LLP based in Washington, DC. *See* Bnkr. D. Decl., *In re Canadian Nortel Debtors*, No.1:09-BK-10138 (D.D.C. January 20, 2022), ECF No. 18931 (listing hourly rates for Cleary Gottlieb in bankruptcy matter as \$1,535 per hour for work performed by a partner with 26 years of experience, \$1,185 per hour for work performed by a counsel with 23 years of experience, and \$890 per hour for work performed by an associate with

Class Counsel's requested percentage of the fund fee of $27,500,000 amounts to approximately 84% of Class Counsel's lodestar, a negative multiplier. Viewed through this lens, Class Counsel's proposed one-third fee is eminently reasonable.

Here, Class Counsel are not only foregoing a multiplier but are seeking to be paid an amount lower than their collective lodestar, despite the monetary and prospective relief achieved in the Settlement.[12] The lodestar cross-check weighs in favor of approving the Motion for Fees.

### 5. The Complexity of the Litigation.

"Antitrust class actions are inherently complex. The legal and factual issues are complicated and highly uncertain in outcome." *In re Polyurethane Foam Antitrust Litig.*, 135 F. Supp. 3d 679, 690 (N.D. Ohio 2015) (quoting *In re Skelaxin (Metaxalone) Antitrust Litig.*, 2014 WL 2946459, at *3 (E.D.Tenn.2014)).[13]

This case is no exception. Indeed, the Action was exceptionally complex even by the standards of antitrust class actions. Plaintiffs brought claims on behalf of 3 classes, against 13 Defendants, over 3 product markets. Plaintiffs alleged a multifaceted scheme to monopolize three distinct but interrelated markets (competitive cheer competitions, camps, and apparel), involving two separate branches of competitive cheer (school cheer and All-Star cheer). In order to assemble these disparate pieces into a coherent whole, Class Counsel devoted thousands of hours and retained four highly respected experts. Joint Dec., ¶¶ 5–7 .

The Action had an added layer of complexity because it is an indirect purchaser case, which required the development of evidence and expert opinions showing that the direct purchasers passed the alleged overcharges on to the indirect purchasers. And because federal

---

three years of experience, for the period of November 1, 2021 through December 9, 2021).

[12] Sixth Circuit courts have recognized that negative lodestar multipliers, such as the one here, are plainly reasonable. See, e.g., *Walls v. J.P. Morgan Chase Bank, N.A.*, 2016 WL 6078297, at *6 (W.D Ky. Oct. 14, 2016) (finding that the lodestar cross-check resulting in a 0.83 multiplier "indicates that the fee award sought by Class Counsel is reasonable").

[13] *See also In re Packaged Ice Antitrust Litig.*, No. 08-MDL-01952, 2011 WL 6209188, at *19 (E.D. Mich. Dec. 13, 2011) ("This antitrust litigation, like all litigation of its species, promises to be extremely complex and time intensive and there is no question that if settlement fails, the Defendants will mount a strong defense.").

antitrust law does not apply to indirect purchasers, Class Counsel had to develop claims under the antitrust laws of 27 states and the consumer protection laws of 29 states, which were the subject of extensive motion practice by the Defendants that was not required of the direct purchasers. Joint Dec., ¶¶ 13, 16–19.

Moreover, unlike many antitrust class actions, this action did not follow a government lawsuit bringing the same or related claims. When a class action follows a Department of Justice lawsuit, many complex issues get addressed in the government action, simplifying and clarifying the issues for the follow-on class action. Here, Class Counsel did not have the benefit of a prior government lawsuit. *See In re: AT&T Corp. Sec. Litig.*, 455 F.3d 160, 173 (3d Cir. 2006) (that "class counsel was not aided by the efforts of any governmental group, and the entire value of the benefits accruing to class members is properly attributable to the efforts of class counsel . . . strengthens the District Court's conclusion that the fee award was fair and reasonable").

That fact that Class Counsel was able to guide the Action to a successful resolution despite the complexity of the issues weighs in favor of granting the Motion for Fees.

### 6. The Quality of the Representation.

Class Counsel have prosecuted this Action with absolute commitment throughout the entirety of the litigation. Class Counsel conducted extensive pre-filing investigation, drafted a detailed complaint, drafted extensive written discovery, took or defended over forty depositions, engaged in highly adversarial motion practice, briefed motions to dismiss, to strike, for class certification, summary judgment, and began preparations for trial, including work with jury consultants. Joint Dec., ¶ 4.[14]

Class Counsel's briefing and arguments were well-researched, amply supported, and effective. The Action was hotly contested by experienced defense counsel. To prepare their

---

[14] Class Counsel were even required to defend themselves against a motion by Defendants accusing them of cheating the court's double-line spacing requirement *See* ECF No. 509. Class Counsel were also required to defend themselves against Defendants' multiple motions for sanctions. *See* ECF Nos. 296, 402. Notably, all of Defendants' multiple motions for sanctions and for allegedly violating the line-spacing requirements were denied.

defense, Defendants retained some of the most talented and experienced antitrust lawyers in the United States. At the same time, Class Counsel kept the lines of communication with Defendants open, seeking negotiation of a settlement on three separate occasions, each with a different highly-respected mediator. After the last mediation, Class Counsel continued one-on-one negotiations with Defendants until the terms of a settlement were hammered out, then drafted the Settlement Agreement and related settlement documentation. Plaintiffs then sought preliminary approval, which the Court granted on June 18, 2024. The creation of the $82.5 million Settlement Fund and agreement to provide significant injunctive relief is a testament to the quality of the work. Joint Dec., ¶ 3.

## IV. CLASS COUNSEL'S REQUEST FOR REIMBURSEMENT OF LITIGATION EXPENSES IS REASONABLE

Class Counsel's request for reimbursement of their expenses is reasonable and appropriate. Under the common fund doctrine, class counsel is customarily entitled to reimbursement of reasonable expenses incurred in the litigation to achieve the common fund. *See Mills v. Electric Auto-Lite Co.*, 396 U.S. 375, 392 (1970) (recognizing the right to reimbursement of expenses where a common fund has been produced or preserved for the benefit of a class); *see also Se. Milk*, 2013 WL 2155387, at *8 ("[e]xpense awards are customary" in common fund cases) (internal citation omitted).[15] "In determining whether the requested expenses are compensable in this common fund, the Court has considered whether the particular costs are the type routinely billed by attorneys to paying clients in similar cases." *Cardizem*, 218 F.R.D. at 535.[16] This is consistent with reimbursement of costs authorized by Rule 23 and the Clayton Act

---

[15] *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 535 (E.D. Mich. 2003) ("[C]lass counsel is entitled to reimbursement of all reasonable out-of-pocket litigation expenses and costs in the prosecution of claims and in obtaining settlement, including expenses incurred in connection with document productions, consulting with experts and consultants, travel and other litigation-related expenses.").

[16] *See also In re Delphi Corp. Sec., Derivative & "ERISA" Litig.*, 248 F.R.D. 483, 504-05 (E.D. Mich. 2008) (approving reimbursement of $1.3 million in costs and expenses for "such items as accounting and damages expert and consultant fees, management and photocopying of documents, on-line research, messenger service, postage, express mail and overnight delivery,

for a successful outcome. *See* Fed. R. Civ. P. 23(h); 15 U.S.C. § 15.

Here, as in other complex antitrust class actions, a large component of the expenses are fees paid to expert economists and other and consultants who were instrumental in, among other things, preparing expert reports for class certification and to prove the Settlement Classes' damages. Joint Decl. ¶ 40. Other expenses include costs relating to mediation; data and document hosting; court reporters; copying; and computerized legal research.[17] *Id.* at ¶ 40. All expenses are reasonable and were necessarily incurred in obtaining this result for the Settlement Classes. *See Johnson v. W2007 Grace Acquisition I, Inc.*, 2015 WL 12001269, at *14 (W.D. Tenn. Dec. 4, 2015) (awarding expenses in class action for "research costs, expert fees, and administrative costs").

Class Counsel's expenses total $7,450,156.47, and consist of charges incurred individually by each firm, and costs that have been invoiced but are as-yet unpaid relating to expert and consultant costs, database expenses, and class notice as directed by the Court. Joint Decl. ¶ 40. This total expenses number is lower than the number projected in the notice to the class. Accordingly, Plaintiffs respectfully request that the Court approve these expenses in their total amount of $7,450,156.47. The Court-appointed Settlement Administrator (Angeion Group) (ECF 336 at 19, ¶7) estimates that the costs for the notice plan and the claims administration process will be approximately $584,486.00. Under the terms of the Settlement Agreement, these costs are to be paid directly from the Settlement Fund. A request for those expenses to be paid from the Settlement Fund will be submitted. Joint Decl. ¶ 40.

## V. THE CLASS REPRESENTATIVES SHOULD RECEIVE SERVICE AWARDS

Class Counsel also request approval for service awards to be paid from the Settlement

---

long distance and facsimile expenses, transportation, meals, travel and other incidental expenses directly related to the prosecution of this action").

[17] *See*; *Communities for Equity v. Michigan High Sch. Athletic Ass'n*, No. 1:98-CV-479, 2008 WL 906031, at *23 (W.D. Mich. Mar. 31, 2008) (awarding photocopying, printing, postage, telephone, Westlaw and Lexis legal research fees); *Brown v. Pro Football, Inc.*, 839 F. Supp. 905, 916 (D.D.C. 1993) (citing *Missouri v. Jenkins*, 491 U.S. 274, 285 (1989) (same)).

Fund totaling $125,000: $50,000 each for Jessica Jones and Christina Lorenzen, who fought on behalf of the Classes from the very beginning; and $25,000 for Amy Coulson, who joined after one of the original named plaintiffs dropped out but was ready and willing to provide the same courageous leadership that Ms. Jones and Ms. Lorenzen did, and who, by agreeing to be a named plaintiff, opened herself and her children up to the same risks of retaliation and discrimination that Ms. Jones and Ms. Lorenzen did. Courts in the Sixth Circuit recognize that in common fund cases, class representatives "deserve compensation above and beyond amounts to which they are entitled to by virtue of class membership alone." *Lonardo v. Travelers Indemnity Co.*, 706 F. Supp. 2d 766, 787 (N.D. Ohio 2010). "Courts routinely approve incentive awards to compensate named plaintiffs for the services they provide and the risks they incurred during the course of the class action litigation." *Smith v. Loc. Cantina, LLC*, No. 2:20-CV-03064, 2022 WL 1183325, at *7 (S.D. Ohio Apr. 19, 2022) (quoting *In re Southern Ohio Correctional Facility*, 175 F.R.D. 270, 272 (S.D. Ohio 1997)). "[S]ervice awards are common in class action cases and are important to compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by plaintiffs." *Id.* at *7 (quoting *Dorn v. Eddington Sec., Inc.*, No. 08 CIV. 10271 LTS, 2011 WL 9380874, at *7 (S.D.N.Y. Sept. 21, 2011) ("*Dorn*")). The amount of the ultimate recovery can also be a factor. *Dorn* at *7.

The proposed service awards are within the range of recent service awards in this Circuit. *See, e.g., In re Skelaxin (Metaxalone) Antitrust Litig.*, 2014 WL 2946459, at *4 (awarding $50,000 each to the class representatives); *Hosp. Auth. of Metro. Gov't of Nashville v. Momenta Pharms., Inc.*, No. 3:15-CV-01100, 2020 WL 3053468, at *2 (M.D. Tenn. May 29, 2020) (awarding $200,000 each to the class representatives).

Here, all three Class Representatives took substantial risks by standing up to an organization that exercised significant control over an activity to which the Class Representatives and their families had devoted themselves. That took courage, and strength of character. Without

**INDIRECT PURCHASER PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR AN AWARD OF ATTORNEYS' FEES, FOR REIMBURSEMENT OF EXPENSES, AND FOR SERVICE AWARDS FOR THE CLASS REPRESENTATIVES**

their willingness to represent the thousands of other absent class member families, this case would not have been possible.

All three Class Representatives consented to the collection and production of their documents, reviewed case filings, and reviewed and approved the terms of the settlement agreement. In addition, Ms. Jones and Ms. Lorenzen dedicated a significant amount of time, energy, and focus to the prosecution of this case from its inception. They prepared for their depositions, at which they endured aggressive questioning from Defendants' counsel, responded to written discovery, and reviewed case filings. While Ms. Coulson also courageously agreed to stand up by name against the Defendants, and was ready and willing to provide the same effort and support to the case, because the settlement was reached so soon after she was added as a class representative—perhaps not coincidentally—she was not required to sit for her deposition. This is why Class Counsel are seeking higher service awards for Ms. Jones and Ms. Lorenzen.

As a direct result of the Class Representatives' courageous stand against Defendants, countless cheer athletes and their families will receive payments compensating them for the damages they incurred. And even more will benefit from the changes to Defendants' business practices going forward.

The Class Representatives devoted substantial time and energy to the prosecution of this case, and took substantial risks in doing so. Their courageous actions resulted in significant recompense for the members of the classes and meaningful changes to the way Varsity does business. The services awards sought are well within the range of services awards granted in the Sixth Circuit. The Court should approve the service awards for the Class Representatives.

## VI.  CONCLUSION

For the reasons stated above, Plaintiffs request that the Court grant their motion for fees in the amount of $27,500,000.00, as well as reimbursement of costs in the amount of $7,450,156.47. Plaintiffs also ask that the Court grant service awards totaling $125,000 for the three Class Representatives, whose courage and strength led to this excellent outcome.

Dated: September 3, 2024

Respectfully submitted,

By:      */s/ Joseph R. Saveri*
         Joseph R. Saveri

Joseph R. Saveri*
Ronnie Seidel Spiegel*+
David Seidel*
Kevin E. Rayhill*
Elissa A. Buchanan*
**JOSEPH SAVERI LAW FIRM, LLP**
601 California Street, Suite 1505
San Francisco, California 94108
Telephone: (415) 500-6800
Facsimile: (415) 395-9940
jsaveri@saverilawfirm.com
rspiegel@saverilawfirm.com
dseidel@saverilawfirm.com
krayhill@saverilawfirm.com
eabuchanan@saverilawfirm.com

Van Turner Jr. (TN Bar No. 22603)
**TURNER FEILD, PLLC**
2650 Thousand Oaks Blvd., Suite 2325
Memphis, Tennessee 38118
Telephone: (901) 290-6610
Facsimile: (901) 290-6611
VTurner@TurnerFeildLaw.com

Richard M. Paul III*
Ashlea Schwarz*
**PAUL LLP**
601 Walnut, Suite 300
Kansas City, Missouri 64106
Telephone: (816) 984-8100
rick@paulllp.com
ashlea@paulllp.com

Jason S. Hartley*
**HARTLEY LLP**
101 West Broadway, Suite 820
San Diego, CA 92101
Telephone: (619) 400-5822
hartley@hartleyllp.com

**INDIRECT PURCHASER PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR
AN AWARD OF ATTORNEYS' FEES, FOR REIMBURSEMENT OF EXPENSES, AND FOR SERVICE
AWARDS FOR THE CLASS REPRESENTATIVES**

Daniel E. Gustafson*
Daniel C. Hedlund*
Daniel J. Nordin*
**GUSTAFSON GLUEK PLLC**
Canadian Pacific Plaza
120 South Sixth Street, Suite 2600
Minneapolis, MN 55402
Telephone: (612) 333-8844
Facsimile: (612) 339-6622
dgustafson@gustafsongluek.com
dhedlund@gustafsongluek.com
dnordin@gustafsongluek.com

* Admitted *pro hac vice*

+Located in Washington State

*Attorneys for Individual and
Representative Plaintiffs*

**INDIRECT PURCHASER PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR AN AWARD OF ATTORNEYS' FEES, FOR REIMBURSEMENT OF EXPENSES, AND FOR SERVICE AWARDS FOR THE CLASS REPRESENTATIVES**