**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

| | |
|---|---|
| JESSICA JONES et al., | Case No. 2:20-cv-02892-SHL-tmp |
| Plaintiffs, | |
| v. | |
| VARSITY BRANDS, LLC, et al. | |
| Defendants. | |

**INDIRECT PURCHASER PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF
UNOPPOSED MOTION FOR FINAL APPROVAL OF SETTLEMENT**

# TABLE OF CONTENTS

I.      INTRODUCTION .................................................................................................1

II.     RELEVANT PROCEDURAL BACKGROUND............................................................2

III.    THE COURT SHOULD APPROVE FINAL CERTIFICATION OF THE CLASSES
        AND APPOINT THE CLASS REPRESENTATIVES .....................................................4

IV.     THE COURT SHOULD APPROVE THE SETTLEMENT ............................................4

        A.    The Settlement Is Procedurally Fair, Reasonable, and Adequate .......................... 5

        B.    The Settlement Is Substantively Fair, Reasonable, and Adequate......................... 6

        C.    The *UAW* Factors Are in Accord and Support Final Approval ............................. 8

              1.    *The Settlement Is Not the Product of Any Fraud or Collusion* ........................... 8

              2.    *The Complexity, Expense, and Likely Duration of Continued Litigation
                    Supports the Settlement*......................................................................... 9

              3.    *The Parties Had More than Ample Discovery to Adequately Assess the
                    Strengths and Weaknesses of Their Case* ................................................. 9

              4.    *The Uncertainty of Success on the Merits Supports the Settlement*.................. 10

              5.    *Class Counsel and The Class Representatives Support the Settlement* ............. 10

              6.    *The Reaction of Absent Class Members Supports the Settlement*..................... 11

              7.    *The Settlement Is In The Public Interest* ............................................... 11

V.      THE COURT SHOULD APPROVE THE PLAN OF ALLOCATION........................11

VI.     NOTICE WAS PROPER UNDER RULE 23 AND SATISFIED DUE PROCESS ......14

VII.    NOTICE WAS PROVIDED UNDER THE CLASS ACTION FAIRNESS ACT.........16

VIII.   CONCLUSION.................................................................................................16

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Fitzgerald v. P.L. Mktg., Inc.*, No. 2:17-cv-02251-SHM-CGC, 2020 WL 7764969
(W.D. Tenn. Feb. 13, 2020) ............................................................................................7

*Fusion Elite All Stars v. Varsity Brands, LLC*, No. 2:20-cv-02600-SHL-TMP,
2023 WL 6466398 (W.D. Tenn. Oct. 4, 2023) ...........................................................4, 7, 9

*Gascho v. Glob. Fitness Holdings, LLC*, 822 F.3d 269 (6th Cir. 2016) ........................................11

*Harsh v. Kalida Mfg., Inc.,* No. 3:18-cv-2239, 2021 WL 4145720
(N.D. Ohio Sept. 13, 2021) .........................................................................................8

*In re 3D Sys. Sec. Litig.*, No. 21-CV-1920 (NGG) (TAM), 2024 WL 50909
(E.D.N.Y. Jan. 4, 2024) ............................................................................................14

*In re Amazon.com, Inc., Fulfillment Ctr. Fair Lab. Standards Act (Flsa) & Wage
& Hour Litig.*, No. 3:14-CV-290-DJH, 2016 WL 9558953
W.D. Ky. Oct. 31, 2016) ..........................................................................................5, 9

*In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508 (E.D. Mich. 2003) ................................7, 12

*In re Fam. Dollar Stores, Inc., Pest Infestation Litig.*, No. 2:22-md-03032-SHL-TMP,
2023 WL 7112838 (W.D. Tenn. Oct. 27, 2023) ...........................................................6, 7

*In re Packaged Ice Antitrust Litig.*, No. 08-MDL-01952, 2011 WL 6209188
(E.D. Mich. Dec. 13, 2011) ........................................................................................12

*In re Se. Milk Antitrust Litig.*, No. 2:08–MD–1000, 2012 WL 2236692
(E.D. Tenn. June 15, 2012) ........................................................................................11

*Leonhardt v. ArvinMeritor, Inc.*, 581 F. Supp. 2d 818 (E.D. Mich. 2008) .....................................5

*Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306 (1950) ...............................................15

*New York State Teachers' Ret. Sys. v. Gen. Motors Co.*, 315 F.R.D. 226
(E.D. Mich. 2016) ....................................................................................................12

*Pillsbury Co. v. Conboy*, 459 U.S. 248 (1983) ...................................................................11

*Puddu v. 6D Glob. Techs., Inc.*, No. 15-CV-8061 (AJN), 2021 WL 1910656
(S.D.N.Y. May 12, 2021) ............................................................................................5

*UAW v. Gen. Motors Corp.*, 497 F.3d 615 (6th Cir. 2007) ......................................................5, 8

*United States v. Topco Associates, Inc.,* 405 U.S. 596 (1972)........................................................11

**Statutes**

28 U.S.C. § 1715(d) .................................................................................................................16

**Court Rules**

Fed. R. Civ. P. 23 ................................................................................................ *passim*

## I.    INTRODUCTION

Indirect Purchaser Plaintiffs Jessica Jones, Christina Lorenzen, and Amy Coulson ("Plaintiffs" or "Class Representatives"), on behalf of themselves and the provisionally-certified indirect purchaser classes, move the Court to grant final approval of Plaintiffs' settlement agreement with Defendants ("Settlement"), grant final certification of the provisionally-certified classes, appoint the conditionally approved class representatives, and approve the Plan of Allocation for equitable distribution of the settlement fund. The Settlement includes cash payments totaling $82.5 million in addition to injunctive relief.

On June 18, 2024, this Court preliminarily approved the Settlement and provisionally certified the indirect purchaser classes under the identical Rule 23 standards that now govern this motion for final approval. The Court found that the indirect purchaser classes met "each" of the requirements of Rule 23 for certification. *See* ECF No. 612 at 10. The Court preliminarily approved the Settlement under the Rule 23 and Sixth Circuit standards, finding that the Settlement was procedurally fair, *id.* at 21, provided adequate relief, *id.* at 21–23, and treated all class members equitably, *id.* at 23.

Following the Court's preliminary approval order, Class Counsel and the Court-appointed class administrator (Angeion), provided notice to the class members according to the Court-approved notice plan. As discussed in the accompanying declaration of Rebecca Evans, the notice plan was timely implemented and highly successful, including a successful online media notice campaign and poster notice to target class members that could not be directly noticed through mail or email.

As was provided in the Court's preliminary approval order, ECF No. 612, the deadline for any class members to object to the settlement or opt-out was September 26, 2024. Not a single objection or opt-out was lodged before or after the deadline, demonstrating that the class overwhelmingly supports the settlement. No member of the class objected to any portion of the Settlement, including the general terms of the plan of allocation provided in the notice that was

mailed to class members, or to Class Counsel's request for an award of attorneys' fees and costs
and for service awards to the Court-appointed Class Representatives.

Having already assessed all relevant Rule 23 and Sixth Circuit requirements and found
they were satisfied, and having received no objections after implementation of the Court-approved
notice plan, the Court should grant final approval. Thus, Plaintiffs respectfully request that the
Court: (a) grant final approval to the Settlement pursuant to Rule 23(e); (b) certify the
provisionally-certified Settlement Classes; (c) appoint the conditionally-approved Class
Representatives (d) approve the Plan of Allocation (attached as Exhibit 1), which provides a fair
and reasonable method of determining each Settlement Class Member's allocated share of the
settlement fund; and (e) enter a final judgment and order terminating the litigation between
Plaintiffs and Defendants.

## II.    RELEVANT PROCEDURAL BACKGROUND

Because of the Court's thorough familiarity with the facts of this litigation and Plaintiffs'
recent recitation of the relevant facts in support of their motion for preliminary approval, ECF
Nos. 606-1, 610, and in the accompanying declaration of Joseph Saveri in support, ECF No. 606-
2, Plaintiffs here provide only a short summary of the relevant facts and incorporate their prior
briefing and the Court's order granting preliminary approval by reference.

On April 28, 2024, Class Counsel[1] reached agreement with Defendants to settle this case
for $82.5 million and injunctive relief. On May 13, 2024, Plaintiffs submitted the signed
Settlement Agreement, ECF No. 606-3, Ex. 1, to the Court in connection with their Unopposed
Motion for Preliminary Approval of Settlement ("PA Motion"). *See* ECF No. 606. The Settlement
Agreement provides for a monetary payment of $82.5 million, and prospective injunctive relief.
*See* ECF No. 606-3 at 6 ¶ v, ¶ 16, ¶ 33. In exchange for the monetary and prospective relief,
Defendants and certain related parties identified in the Settlement will receive a class-wide release
of all claims that have been or could have been brought by the Settlement Class Members based

---

[1] "Class Counsel" refers to Joseph Saveri Law Firm, LLP; Gustafson Gluek PLLC; HARTLEY
LLP; PAUL LLP; and Turner Feild, PLLC.

on the matters alleged or referred to in the Second Amended Complaint through the execution
date of the Settlement. (*See* ECF No. 606-3, ¶¶ 10–12).

On June 18, 2024, following Plaintiffs' submission of supplemental briefing, ECF No.
610, the Court granted the Plaintiffs' PA Motion in its Preliminary Approval Order ("PA Order").
ECF No. 612. In its PA Order, the Court noted that the Agreement was "the culmination of more
than three years of hard-fought litigation." *Id.* at 21. The Court found that the Agreement "was
negotiated at arms-length" and was "the product of a procedurally fair process." *Id*. at 21. And the
Court further found that the cash and injunctive relief components, "[t]aken together, . . .
remed[y] the Indirect Purchasers' past harms while also enacting changes to Defendants'
practices that will prevent future harms." *Id.* at 22. Additionally, the Court ordered that notice of
the Settlement be provided to members of the Settlement Classes under Plaintiffs' notice plan. *Id*.
at 27.

The Court provisionally certified the classes under Federal Rule of Civil Procedure
23(b)(3). *See id.* On August 23, 2024, the Court ordered the addition of Illinois to the State Law
Damages Class, enabling Illinois indirect purchasers "to participate in the settlement on the same
basis as the other members of the State Law Damages Class." ECF No. 618 at 3. Thus, the
provisionally certified classes are as follows:

> **State Law Damages Class**: All natural persons and entities in Arizona, Arkansas,
> California, Connecticut, the District of Columbia, Florida, Hawaii, Idaho, Illinois,
> Iowa, Kansas, Maine, Massachusetts, Maryland, Michigan, Minnesota, Mississippi,
> Missouri, Montana, Nebraska, Nevada, New Hampshire, New Mexico, New York,
> North Carolina, North Dakota, Oregon, Rhode Island, South Dakota, Tennessee, Utah,
> Vermont, Washington, West Virginia, and Wisconsin, that indirectly paid Varsity or
> any Varsity subsidiary or affiliate, from December 10, 2016, through March 31, 2024,
> for: (a) registration, entrance, or other fees and expenses associated with participation
> in one or more Varsity Cheer Competitions; (b) Varsity Cheer Apparel; (c) Varsity
> Cheer Camp Fees; or (d) accommodations at one or more Varsity Cheer Competitions.

> **Injunctive Relief Class**: All natural persons and entities in the United States that
> indirectly paid Varsity or any Varsity subsidiary or affiliate, from December 10, 2016,
> through March 31, 2024, for: (a) registration, entrance, or other fees and expenses
> associated with participation in one or more Varsity Cheer Competitions, including
> registration fees to USASF; (b) Varsity Cheer Apparel; (c) Varsity Cheer Camp Fees;

3

or (d) accommodations at one or more Varsity Cheer Competitions, including registration fees to USASF.

In line with the PA Order, *see* ECF No. 612 at 29, ¶ 7, on or about July 18, 2024, the Court-appointed Settlement Administrator, Angeion Group LLC ("Angeion"), sent long- and short-form class notices to thousands of Class members, commenced publication notice through various media sources, and launched the Settlement website. *See* Declaration of Rebecca Evans ("Evans Decl.") ¶¶ 6–33. The notice provided information about the deadline for members of the Settlement Classes to opt out of the case, or to object to the Settlement, the Plan of Allocation, and/or Class Counsel's Fee Motion. That deadline passed on September 26, 2024. ECF No. 612 at 29, 30, ¶¶ 11, 12. No objections to the Settlement were received and not a single Settlement Class member requested that they be excluded. *See* Evans Decl. ¶¶ 34–35.

## III.    THE COURT SHOULD APPROVE FINAL CERTIFICATION OF THE CLASSES AND APPOINT THE CLASS REPRESENTATIVES

For the same reasons that the Court preliminarily certified the classes, the Court should approve final certification of the classes. In its PA Order, the Court provisionally certified the Classes after carefully analyzing the elements of Rules 23(a) and 23(b)(3), finding Plaintiffs satisfied them all. *See* ECF No. 612 at 10–17. There have been no objections to certification, and no new evidence or opposition has been presented. The Court should thus certify the class. *See Fusion Elite All Stars v. Varsity Brands, LLC*, No. 2:20-cv-02600-SHL-TMP, 2023 WL 6466398, at *3 (W.D. Tenn. Oct. 4, 2023) ("There has been no information presented to alter the Court's previous conclusions," and thus, "[f]or the same reasons the Court granted preliminary approval, the Court grants final certification to the Classes."). Similarly, having already conditionally-appointed Plaintiffs Jessica Jones, Christina Lorenzen, and Amy Coulson as class representatives, the Court should give final approval to their appointment as class representatives.

## IV.    THE COURT SHOULD APPROVE THE SETTLEMENT

For the same reasons that the Court preliminarily approved the Settlement—based on the same Rule 23(e)(2) factors and the *UAW* factors addressed in this motion—and in light of the fact that no objections to the Settlement have been raised, the Court should give final approval of the

Settlement. *See* ECF No. 612 at 28 ("The proposed Settlement is conditionally APPROVED as fair, reasonable, and adequate as to the members of the State Law Damages Class and Injunctive Relief Class[.]"); *see also* Evans Decl. at ¶ 35 ("Angeion is not aware of any objections to the Settlement."); ECF No. 624-1 at ¶¶ 5–7 ("Class counsel has received no objections . . .").

A.    **The Settlement Is Procedurally Fair, Reasonable, and Adequate**

The first two factors in Rule 23(e)(2) concern the procedural fairness of the Settlement. *See* Fed. R. Civ. P. 23(e)(2) advisory committee's note to 2018 amendment. Here, the Settlement was reached by arms-length negotiations through adequate representation. As the Court previously found, "[t]he Settlement Agreement is the culmination of more than three years of hard-fought litigation that yielded a record of nearly 45,000 pages. Counsel for Plaintiffs and Defendants demonstrated their competence in antitrust class litigation via their discovery and motion practice. Moreover, the factual record is sufficiently developed for Counsel to make an informed decision as to settlement and settlement value." ECF No. 612 at 21.

Moreover, there is a "presumption of fairness when a settlement is reached with the assistance of a mediator." *Puddu v. 6D Glob. Techs., Inc.*, No. 15-CV-8061 (AJN), 2021 WL 1910656, at *4 (S.D.N.Y. May 12, 2021); *see also In re Amazon.com, Inc., Fulfillment Ctr. Fair Lab. Standards Act (Flsa) & Wage & Hour Litig.*, No. 3:14-CV-290-DJH, 2016 WL 9558953, at *2 (W.D. Ky. Oct. 31, 2016) ("The involvement of a third-party mediator and adversarial litigation with substantial discovery are factors indicating an absence of collusion."). Further, "Courts presume the absence of fraud or collusion in class action settlements unless there is evidence to the contrary." *Leonhardt v. ArvinMeritor, Inc.*, 581 F. Supp. 2d 818, 838 (E.D. Mich. 2008).

Here, the Settlement was reached after numerous rounds of arms-length negotiations and multiple mediations. Ultimately, the Settlement was reached after a full day mediation with the Honorable Layn Phillips (ret), and subsequent negotiations between the parties with the assistance of third-party mediator Clay Cogman of Phillips ADR. There is no evidence to the contrary to

rebut this presumption. *See* ECF No. 612 at 21. "The Parties' Settlement Agreement is the product
of a procedurally fair process." *Id.*

### B.    The Settlement Is Substantively Fair, Reasonable, and Adequate

The second two factors under Rule 23(e)(2) concern the substantive fairness and adequacy
of the Settlement. *See* Fed. R. Civ. P. 23(e)(2) advisory committee's note to 2018 amendment.
These factors include firstly, whether the relief to the class is adequate taking into account "(i) the
costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of
distributing relief to the class, including the method of processing class-member claims; (iii) the
terms of any proposed award of attorney's fees, including timing of payment; and (iv) any
agreement required to be identified under Rule 23(e)(3)." Fed. R. Civ. P. 23(e)(2)(C).

Here, the relief to the class includes both a large monetary payment of $82.5 million, as
well as prospective injunctive relief. The monetary payment provides fair and adequate relief for
past damages because it amounts to "approximately 67% of the damages computed by Indirect
Purchasers' damages experts through 2020—the period for which Plaintiffs' experts had data on
which to calculate damages." ECF No. 612 at 22 (citing ECF No. 606-1 at 11). When viewed in
light of the "costs, risks, and delay of trial and appeal," the $82.5 million settlement fund is more
than adequate. It allows the class members to "avoid the significant risks and uncertainties
inherent in trials and appeals," while receiving substantial monetary relief. *In re Fam. Dollar
Stores, Inc., Pest Infestation Litig.*, No. 2:22-md-03032-SHL-TMP, 2023 WL 7112838, at *11
(W.D. Tenn. Oct. 27, 2023). The Court need not "scrutinize the merits of the parties' positions" in
order to find, particularly in an antitrust case such as this one, that the outcome was "uncertain,"
and contained "significant risk on both sides, had this case gone to trial." *Fitzgerald v. P.L. Mktg.,
Inc., No. 2:17-cv-02251-SHM-CGC*, 2020 WL 7764969, at *12 (W.D. Tenn. Feb. 13, 2020).

In this case, despite the extensive evidence that Plaintiffs had developed through fact and
expert discovery, the outcome of a jury trial remained uncertain. Defendants in this case had
asserted various arguments and defenses at class certification and summary judgment, which the

Court had not yet ruled on, and they would have done so at trial too. Thus, it is fair to say that a jury trial "might well turn on questions of proof, many of which would be the subject of dueling expert [and fact witness] testimony, particularly regarding causation and damages, making the outcome of such a trial uncertain for both Parties." *In re Fam. Dollar Stores*, 2023 WL 7112838, at *11; *see also In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 523 (E.D. Mich. 2003) (holding that "[t]he prospect of a trial necessarily involves the risk that Plaintiffs would obtain little or no recovery" and "no matter how confident trial counsel may be, they cannot predict with 100% accuracy a jury's favorable verdict").

Further, the Settlement provides significant prospective injunctive relief. *See* ECF No. 606-3 at ¶ 33. The injunctive relief (1) precludes Varsity from tying its competitions to participation at a Varsity camp; (2) mandates that Varsity will not "offer or require exclusive purchasing arrangements as a condition for participating in the Varsity Family Plan, Network Program, or any rebate or discount program relating to Cheer Competitions"; (3) limiting Varsity's ability to "require participants . . . of its Cheer Competitions to stay ay Varsity-approved accommodations as a prerequisite to their participation in Varsity-owned Cheer Competitions" to no more than 35%; and (4) prevents USASF from disclosing to Varsity or others confidential scheduling or attendance information from its member event producers. *See id*. Combined with the injunctive relief already approved in the related Direct Purchaser action, the injunctive relief is even more significant. *See Fusion Elite All Stars*, 2023 WL 6466398, at *2.

The Settlement also treats "class members equitable relative to each other." *See* Fed. R. Civ. P. 23(e)(2)(C)(iv). "Matters of concern could include whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief." Fed. R. Civ. P. 23(e)(2) advisory committee notes to 2018 amendment. Here, the Settlement treats all class members equitably. The Plan of Allocation, attached as Exhibit 1, is also fair, reasonable, and equitable, as it "takes appropriate proportional account of

differences among Settlement Class members' claims." ECF No. 612 at 23. Further discussion of the Plan of Allocation is provided at *infra* Section V.

The relief provided by the Settlement is substantively fair, reasonable and adequate. It provides substantial monetary relief for past damages of approximately 67% of single damages that Plaintiffs' experts were able to calculate, and also provides significant injunctive relief. "Taken together, the Settlement remedies the Indirect Purchasers' past harms while also enacting changes to Defendants' practices that will prevent future harms." ECF No. 612 at 22.

### C.    THE *UAW* FACTORS ARE IN ACCORD AND SUPPORT FINAL APPROVAL

In addition to the Rule 23 factors, the Sixth Circuit also analyzes class action settlements under the *UAW* factors to determine if it is fair, reasonable, and adequate. *See Harsh v. Kalida Mfg., Inc.,* No. 3:18-cv-2239, 2021 WL 4145720, at *3 (N.D. Ohio Sept. 13, 2021) (citing *UAW v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007)). Here, the Settlement meets the standard for final approval as to each factor.

1.    *The Settlement Is Not the Product of Any Fraud or Collusion*

The Settlement here was entered into after over three-and-a-half years of litigation by experienced counsel, following a series of arm's length mediations. The parties are represented on both sides by experienced counsel. Nothing during the negotiations or the terms of the Settlement itself presents any grounds to doubt its fairness. Indeed, this Court, after observing that "[c]ourts presume the absence of fraud or collusion in class action settlements unless there is evidence to the contrary," concluded that it "is aware of no evidence in the voluminous record to rebut this presumption." ECF No. 612 at 21 (internal quotation omitted). Moreover, the fact that the Settlement was reached after several mediations, and was reached with the help of a respected third-party mediator provides additional support for the lack of any fraud or collusion. *See In re Amazon.com, Inc.*, 2016 WL 9558953, at *2 ("The involvement of a third-party mediator and adversarial litigation with substantial discovery are factors indicating an absence of collusion.").

2.    *The Complexity, Expense, and Likely Duration of Continued Litigation Supports the Settlement*

"This Settlement Agreement comes after more than a year of intense investigation and litigation," and the case "is more than three years old." ECF No. 612 at 24. "Absent settlement, it would likely have continued for a considerable time," and "expenses would have increased significantly." *Id.* Indeed, the Court has already observed that "[a]ntitrust class actions are 'arguably the most complex action[s] to prosecute. The legal and factual issues involved are always numerous and uncertain in outcome.'" ECF No. 612 at 22 (quoting *In re Packaged Ice Antitrust Litig.*, No. 08-MDL-01952, 2011 WL 6209188, at *19 (E.D. Mich. Dec. 13, 2011)). This case was no different. Class Counsel devoted 43,743.45 hours to the prosecution of this action and incurred $7,450,156.47 in expenses, all on a fully contingent basis. *See* ECF No. 623-1 at 4. Trial and appeal would have added significant time, expense, and risk and would likely have delayed payment—if any—to the Settlement Classes by more than a year. This factor supports approval.

3.    *The Parties Had More than Ample Discovery to Adequately Assess the Strengths and Weaknesses of Their Case*

"To confirm that the [Plaintiffs] 'have had access to sufficient information to evaluate their case and to assess the adequacy of the proposed Settlement,' the Court must consider the amount of discovery engaged in by the parties." *Fusion Elite All Stars*, 2023 WL 6466398, at *4 (quoting *Harsh*, 2021 WL 4145720, at *5). Here, there is no question that the Settlement was reached at an advanced stage of litigation with more than adequate discovery to confirm that Plaintiffs had enough information to adequately evaluate their case and assess the Settlement.

The Settlement was reached only after the conclusion of substantial fact and expert discovery. Plaintiffs' discovery efforts included:

- Deposing over 40 fact witnesses. ECF No. 623-1, at 14;

- Serving over 100 subpoenas to third parties and reviewing approximately 330,000 documents produced by Defendants and third parties. ECF No. 623-2, ¶¶ 22, 24;

- Serving 136 requests for production, 46 interrogatories, and hundreds of requests for admission. ECF No. 623-2, ¶ 20;

9

- Reviewing hundreds of thousands of lines of transactional data reflecting payments by direct purchasers for products and services in the Relevant Markets during the relevant period. ECF No. 606-2, ¶ 11; and

- Developing reports and testimony from four expert witnesses and deposing Defendants' two expert witnesses.

Indeed, the Court has already found that "[d]iscovery was extensive and hotly contested and featured significant motion practice." (ECF No. 612 at 2). Based on the considerable amount of discovery and the advanced stage of the litigation, this factor weighs in favor of approval.

4.    *The Uncertainty of Success on the Merits Supports the Settlement*

In this challenging antitrust monopolization case, Plaintiffs' success was not certain. Defendants aggressively defended themselves throughout, and were represented by experienced antitrust litigators from large defense firms. As the Court found in granting preliminary approval:

> Throughout this litigation . . . Defendants argued that Plaintiffs could not meet Rule 23's certification requirements. Although the Court denied some of these challenges in the context of motions to dismiss and motions to exclude experts, some of these arguments were also included in other pretrial motions and would also still presumably be raised at trial. Altogether, the Court cannot readily determine what the outcome of this case would be if it were fully litigated. The uncertainty as to the outcome favors approval of this settlement.

ECF No. 612 at 22–23 (footnote omitted) (internal citations omitted). As discussed under the overlapping Rule 23(e)(2) factor above, despite Plaintiffs' substantial factual and expert evidence supporting their claims, the ultimate outcome at trial was uncertain. *See supra* Section IV.B. Losing at trial carried substantial risk to the class of receiving no relief at all. Under the Settlement, a monetary payment of roughly 67% of calculated single damages is more than fair and reasonable when compared to the uncertainty of success on the merits at trial and the risks associated with it. This factor thus supports approval.

5.    *Class Counsel and The Class Representatives Support the Settlement*

Class Counsel and the class representatives all support the Settlement. Class Counsel, in consultation with the class representatives, negotiated the terms of the Settlement to obtain a highly favorable result for the class. This factor thus supports approval.

6.      *The Reaction of Absent Class Members Supports the Settlement*

An "overwhelming positive class response highlights the fairness of the settlements to unnamed class members and weighs heavily in favor of approval of the settlements." *In re Se. Milk Antitrust Litig.*, No. 2:08–MD–1000, 2012 WL 2236692, at *4 (E.D. Tenn. June 15, 2012). Here, after service of notice through several channels designed to reach roughly 80% of the estimated 340,000 Class members, zero objections or exclusions were received. *See* Evans Decl. ¶¶ 25, 35. That the Settlement received no objections establishes a highly positive class response. This factor supports approval.

7.      *The Settlement Is In The Public Interest*

"[C]lass actions . . . have value to society more broadly, both as deterrents to unlawful behavior—particularly when the individual injuries are too small to justify the time and expense of litigation—and as private law enforcement regimes that free public sector resources." *Gascho v. Glob. Fitness Holdings, LLC*, 822 F.3d 269, 287 (6th Cir. 2016). *See also, Pillsbury Co. v. Conboy*, 459 U.S. 248, 262–63 (1983). In *United States v. Topco Associates, Inc.*, Justice Thurgood Marshall described the importance of the antitrust laws: "Antitrust laws in general, and the Sherman Act in particular, are the Magna Carta of free enterprise." 405 U.S. 596, 610 (1972). He went on to write that the antitrust laws "are as important to the preservation of economic freedom and our free-enterprise system as the Bill of Rights is to the protection of our fundamental personal freedoms." *Id.* "[T]he freedom guaranteed each and every business, no matter how small, is the freedom to compete—to assert with vigor, imagination, devotion, and ingenuity whatever economic muscle it can muster." *Id.* The Settlement in this case fulfills the public promise of the antitrust laws to protect competition and redress anticompetitive harms. Indeed, the Court already held the Settlement "advances the public interest." ECF No. 612 at 25.

## V.      THE COURT SHOULD APPROVE THE PLAN OF ALLOCATION

"The standards applicable to approval of a settlement also govern the Court's review of a plan of allocation of a settlement fund in a class action." *New York State Teachers' Ret. Sys. v. Gen. Motors Co.*, 315 F.R.D. 226, 235 (E.D. Mich. 2016). "The distribution plan must be fair,

reasonable and adequate." *In re Packaged Ice,* 2011 WL 6209188, at *15; *see also In re Cardizem CD Antitrust Litig.*, 218 F.R.D. at 531 (approving plan of allocation where it provided "a fair and reasonable method for determining each Class members' pro rata share of the Net Settlement Fund").

The Agreement provides that the $82.5 million settlement fund, plus any interest earned, and net of Court-awarded attorneys' fees and expenses, service awards for the Class Representatives, and settlement costs, including costs of notice to the class members and settlement and claims administration (the "Net Settlement Fund") shall be disbursed in accordance with a plan of allocation that Plaintiffs are submitting along with this motion ("Plan of Allocation"). *See* Exhibit 1 [Plan of Allocation].

The Plan of Allocation's general terms were distributed to members of the State Law Damages Class through the long-form notice that was mailed to class members. *See* Evans Decl. ¶ 18 and Exhibit B at 4–5 ["How can I get a payment?"]. Importantly, no class members objected to the general terms of the Plan of Allocation, which provides a fair, reasonable, and adequate distribution of the Net Settlement Fund. *See In re Cardizem CD Antitrust Litig.*, 218 F.R.D. at 531 (approving Plan of Allocation in part because there were only two objectors to the plan and the objections were "without merit").

As was described in the long-form notice mailed to class members, the Net Settlement Fund will be divided into three tranches: 53% for competitions, 26% for camps, and 21% for apparel, from which the proceeds of the Net Settlement Fund will be distributed. These relative numbers are based on litigation damages estimates by Plaintiffs' expert Jen Maki, Ph.D. *See* Expert Damages Report Of Jen Maki, Ph.D., June 20, 2022., ECF No. 432-5, ¶ 118. Under the proposed Plan of Allocation, members of the State Law Damages Class will be able to participate in the settlement distribution through a two-step process. First, they must provide documentation proving that they participated in competitive cheer through membership in an All Star gym or through a school team in one of the applicable State Law Damages States. *See* Exhibit 1 at ¶ 8. Second, they must fill out and sign a sworn declaration specifying which Varsity products

(competitions, camps, and/or apparel) they purchased in each year of the class period. *Id*. Once all claims have been received, the Settlement Administrator will divide each tranche into *pro-rata* "Annual Shares" by adding up the total number of years that Claimants made purchases in each tranche ("Claimant Years"), then dividing the funds in that tranche by the total Claimant Years to get the *pro rata* Annual Shares. *Id.*

To give an illustration using hypothetical numbers, if the Net Settlement Fund contains $1,000, then the portion in the Competitions tranche would be $530 (53% of $1,000). If there were ten Class members that each purchased Varsity competitions for 3 years, the total Claimant Years would be 30. The *pro rata* Annual Share would be $17.76 ($530 ÷ 30). Each claimant would receive the product of the number of years they purchased by the Annual Share. Using this same illustrative hypothetical, each Class member purchased competitions in three years thus resulting in a payment of $53 (3 * $17.76) for the Competitions tranche. The Competitions tranche payout would then be combined with class members' totals from the Camps tranche and the Apparel tranche to determine their total payout from the Net Settlement Fund.

This Plan of Allocation has several advantages that recommend its adoption by the Court. First, it eliminates the need for receipts, which is often an impediment to class participation and increases administrative expenses. The class period begins nearly a decade ago in 2016, making it unlikely that class members will have detailed receipts for the entire relevant period. Claimant Years provides a reasonable proxy for actual expenditures because cheer athletes typically participate for an entire year and expenses tend to follow similar trends on an annualized basis, so year-to-year class member costs are likely to be similar.

Similarly, class members who do not have receipts are unlikely to be able to remember their total costs, and class members' independent reporting of total costs may be highly inconsistent. Moreover, requiring such a detailed level of documentary support is unnecessary and may provide disincentives to participation in the Settlement. Conversely, all class members will be able to recall and swear to the years they participated with confidence, making participation in the Settlement considerably less onerous, while still deterring "unjustified claims." *See In re 3D*

13

*Sys. Sec. Litig.*, No. 21-CV-1920 (NGG) (TAM), 2024 WL 50909, at *13 (E.D.N.Y. Jan. 4, 2024) ("Furthermore, a proposed claims processing method "should deter or defeat unjustified claims, but the court should be alert to whether the claims process is unduly demanding" (quoting *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. at 40)).

Using Claimant Years as described in the Plan of Allocation will also greatly simplify administration of the Net Settlement Fund. Class Counsel estimates that there are approximately 340,000 individuals in the State law Damages Class, based on our experts' calculations. *See* ECF No. 606-2 ¶ 27. Verifying hundreds of thousands of receipts would be cost prohibitive, a cost that would come out of the Net Settlement Fund, reducing the amount available to class members.

The Plan of Allocation is fair and reasonable. It ensures an equitable distribution of the Net Settlement Fund and treats all class members equally. Using Claimant Years as a reasonable proxy for the amount of purchases—particularly where class members are unlikely to have itemized receipts from purchases made years ago—ensures the process is not prohibitively burdensome yet still deters unwarranted claims and treats all class members equitably.

## VI.    NOTICE WAS PROPER UNDER RULE 23 AND SATISFIED DUE PROCESS

The extensive and thorough notice program satisfies Rule 23 and requirements of due process. "[U]pon ordering notice under Rule 23(e)(1) to a class proposed to be certified for purposes of settlement under Rule 21(b)(3) [] the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Rule 23(c)(2)(B). Rule 23(e)(1) provides that a court must direct notice in a "reasonable manner" to all class members who would be bound by a proposed settlement. Rule 23(e) notice must contain a summary of the litigation sufficient "to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950). In addition, the "notice must clearly and concisely state in plain, easily understood language:" (1) the nature of the action; (2) the class definition; (3) the class claims, issues, or defenses; (4) that a

14

class member may enter an appearance through counsel; (5) that the court will exclude from the class any member who requests exclusion; (6) the time and manner for requesting exclusion; and (7) the binding effect of a class judgment on class members under Rule 23(c)(3). Fed. R. Civ. P. 23(c)(2)(B).

In its Preliminary Approval Order, the Court approved Angeion, a highly experienced, well-regarded, third-party administrator, to serve as the Settlement Administrator and to provide notice to the settlement classes. ECF No. 612 at 29, ¶ 7. The Court also approved the proposed notice plan that was described in the May 13, 2024 Declaration of Steven Weisbrot, Esq. of Angeion Group LLC Re: the Proposed Notice Plan. *See* ECF No. 612 at 28–29; ECF No. 606-4. As described in the declaration of Rebecca Evans, filed concurrently herewith, Angeion timely implemented the court-approved notice plan by the July 18, 2024 deadline. *See* Evans Decl. ¶¶ 11, 18, 22, 31, 32, 33. Angeion further provided the same notice to Illinois residents immediately following the Court's addition of Illinois residents to the damages class. *Id.* at ¶¶ 13–14, 19, 28.

For all the reasons set forth in the Court's PA Order, the notice program and forms of notice used by Plaintiffs satisfies the requirements. *See* ECF No. 612 at 26–27. The notice set forth all information required by Rule 23(c)(2)(B) and 23(e)(1) and informed the Classes about (1) the settlement terms; (2) the right to object and the manner for objecting to the settlement and Class Counsel's request for fees, expenses, and service awards; and (3) the requirements regarding the filing of a claim to share in the proceeds of the settlement fund in accordance with the Plan of Allocation. Class members were also advised that they could obtain a Claim Form by contacting the claims administrator or from the website dedicated to this litigation. *See* Evans Decl. ¶ 32.

Under the notice plan approved in the PA Order, Angeion undertook a multiple-pronged campaign:

- Angeion created and continues to maintain a dedicated Settlement Website (www.CheerAntitrustSettlement.com) where the notice was (and continues to be) posted. Evans Decl. ¶ 32.

15

- Angeion set up a toll-free telephone line to inform members of the Settlement Classes about their rights and options. Evans Decl. ¶ 33.

- Angeion sent direct notice via mail to all reasonably identifiable Class Members. Evans Decl. ¶¶ 15–21. Angeion also sent direct notice via email to all reasonably identifiable Class Members. Evans Decl. ¶¶ 9–14.

- Angeion also caused notice to be published in Inside Cheerleading and other cheerleading-focused websites, and also conducted a digital media campaign by placing banner ads on the following: (a) Facebook (b) Instagram (c) "X" formerly known as Twitter (d) TikTok and (e) Reddit. Evans Decl. ¶¶ 22–25.

- Angeion also sent a poster notice to over 2,500 gyms, requesting that they be displayed in a prominent location. Evans Decl. ¶¶ 26–30.

The content of and method for dissemination of notice fulfill the requirements of Rule 23 and due process.

## VII.    NOTICE WAS PROVIDED UNDER THE CLASS ACTION FAIRNESS ACT

The Class Action Fairness Act, 28 U.S.C. § 1715, *et seq.* ("CAFA") requires that Defendants notify appropriate state and federal officials of the proposed settlement and to allow 90 days to pass before final approval of the proposed settlement may be entered. *See* 28 U.S.C. §1715(d). Class Counsel was informed that such CAFA notification was sent by counsel for the Varsity Defendants on April 1, 2024. Accordingly, more than 90 days have already passed.

## VIII.   CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court (a) grant final approval to the Settlement under Rule 23(e); (b) certify the provisionally-certified settlement classes; (c) approve the Plan of Allocation, which provides a fair and reasonable method of determining each settlement class member's allocated share of the settlement fund; and (e) enter a final judgment and order terminating the litigation between Plaintiffs and Defendants.

Dated: October 17, 2024

By:_____*/s/ Joseph R. Saveri*_____
     Joseph R. Saveri

Joseph R. Saveri*
Ronnie Seidel Spiegel* +
David Seidel*
Kevin E. Rayhill*
Elissa A. Buchanan*
**JOSEPH SAVERI LAW FIRM, LLP**
601 California Street, Suite 1505
San Francisco, California 94108
Telephone: (415) 500-6800
Facsimile: (415) 395-9940
jsaveri@saverilawfirm.com
rspiegel@saverilawfirm.com
dseidel@saverilawfirm.com
krayhill@saverilawfirm.com
eabuchanan@saverilawfirm.com

Van Turner (TN Bar No. 22603)
**TURNER FEILD, PLLC**
2650 Thousand Oaks Boulevard, Suite 2325
Memphis, Tennessee 38118
Telephone: (901) 290-6610
Facsimile: (901) 290-6611
Vturner@bruceturnerlaw.net

Richard M. Paul III*
Ashlea Schwarz*
Paul LLP
601 Walnut Street, Suite 300
Kansas City, Missouri 64106
Telephone: (816) 984-8100
Fax: (816) 984-8101
Rick@PaulLLP.com
Ashlea@PaulLLP.com

Jason S. Hartley*
**HARTLEY LLP**
101 West Broadway, Suite 820
San Diego, California 92101
Telephone: (619) 400-5822
hartley@hartleyllp.com

Daniel E. Gustafson*
Daniel C. Hedlund*

Daniel J. Nordin*
**GUSTAFSON GLUEK PLLC**
Canadian Pacific Plaza
120 South Sixth Street, Suite 2600
Minneapolis, Minnesota 55402
Telephone: (612) 333-8844
Facsimile: (612) 339-6622
dgustafson@gustafsongluek.com
dhedlund@gustafsongluek.com
dnordin@gustafsongluek.com

* Admitted pro hac vice

+Located in Washington State

*Attorneys for Individual and
Representative Plaintiffs*