# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
## WESTERN DIVISION

| | | |
|---|---|---|
| JESSICA JONES, et al., | ) | |
|     Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 2:20-cv-02892-SHL-tmp |
| | ) | |
| VARSITY BRANDS, LLC, et al., | ) | |
|     Defendants. | ) | |
| | ) | |

## ORDER GRANTING INDIRECT PURCHASER PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF PROPOSED SETTLEMENT AND OTHER RELATED RELIEF AND GRANTING INDIRECT PURCHASER PLAINTIFFS' MOTION FOR AN AWARD OF ATTORNEYS' FEES, FOR REIMBURSEMENT OF EXPENSES, AND FOR SERVICE AWARDS FOR THE CLASS REPRESENTATIVES

Before the Court are two motions: Jessica Jones, Christina Lorenzen, and Amy Coulson's (together, "Indirect Purchasers") Unopposed Motion for Final Approval of Settlement, filed October 17, 2024 (ECF No. 625), and Indirect Purchasers' Motion for an Award of Attorney's Fees, for Reimbursement of Expenses and for Service Awards for the Class Representatives, filed September 3, 2024 (ECF No. 623).  Defendants Bain Capital Private Equity, LP; Charlesbank Capital Partners, LLC; Jeff Webb; Varsity Spirit Fashion & Supplies, LLC; Varsity Brands, LLC; U.S. All Star Federation Inc. ("USASF"); Varsity Spirit, LLC; Charlesbank Equity Fund VII, Limited Partnership; Charlesbank Equity Fund VIII, Limited Partnership; Charlesbank Equity Fund IX, Limited Partnership; Bain Capital Fund XII, L.P.; Bain Capital Fund (DE) XII, L.P.; and Bain Capital Fund (Lux) XII, SCSp, (together, "Defendants") do not oppose either motion.  For the following reasons, both motions are **GRANTED**.

# BACKGROUND

## I.    Factual and Procedural History

Varsity[1] is a prominent host of competitive cheerleading competitions and camps.  The company advanced the modern style of cheer, in which the athletes performing cheer routines are the "main event"—requiring year-round training and summer camps for athletes to maintain their strength, flexibility, coordination, and teamwork.  (ECF No. 576 (sealed) at PageID 33695.) Indirect Purchasers, the parents of competitive cheer athletes who were members of either All-Star Gym teams or School Cheer teams, filed their Complaint on December 10, 2020. (ECF No. 1; ECF No. 576 (sealed) at PageID 33682–83.)  They alleged that they paid artificially inflated prices for goods and services, including enrollment in cheer camps and competitions, and apparel purchased indirectly from Varsity, and sought to represent a class of all indirect purchasers of Varsity products and all entrants into Varsity or All-Star Cheer Competitions.  (Id. at PageID 33681.)  Indirect Purchasers asserted that Defendants' exclusionary schemes violate Sections 1, 2, and 3 of the Sherman Act, 15 U.S.C. §§ 1–3, and sought injunctive and declaratory relief for these violations.  (Id. at PageID 33745.)  They also contended that Defendants violated the antitrust laws of twenty-seven states and consumer protection laws of twenty-nine states, and, alternatively, that Defendants benefitted from higher profits resulting from the Indirect Purchasers' overpayments to them and should be compelled to disgorge all proceeds that they unjustly derived from their anticompetitive scheme.  (Id. at PageID 33747–55.) Plaintiffs pursued these claims on a class-wide basis, initially proposing three classes, with one of the three proposed in the alternative: 1) the Injunctive Relief Class; 2) the Nationwide

---

[1] The Indirect Purchasers define "Varsity" as the collective term to represent Varsity Brands, LLC; Varsity Spirit, LLC; and Varsity Fashion & Supplies, LLC.  (ECF No. 576 (sealed) at PageID 33680.)

2

Damages Class; 3) the State Law Damages Class if the Nationwide Damages Class were not certified.  (ECF No. 1 at PageID 10–11.)

Defendants filed their combined Motion to Strike Class Allegations, as well as individual Motions to Dismiss on March 12, 2021.  (ECF Nos. 55, 57–60.)  On August 1, 2022, the Court dismissed Indirect Purchasers' Tennessee Trade Practices Act ("TTPA") claims relating to Cheer Camp and Competition markets, as well as claims asserted under the state antitrust and consumer protection laws of Alaska, Colorado, Illinois, and Alabama, and the consumer protection laws of Tennessee ("TCPA").[2]  (ECF No. 333 at PageID 7201.)

Discovery was extensive and hotly contested, and featured significant motion practice before Chief Magistrate Judge Tu M. Pham.  (See, e.g., ECF Nos. 100–103, 214–15, 265, 269, 270, 274–75, 290.)  During the discovery period, hundreds of thousands of documents were produced by Defendants, current and former employees of Defendants, and third parties.  (ECF No. 606-1 at PageID 35466.)  The Parties conducted forty-five depositions, including six expert depositions.  (Id.)

Fact discovery closed on April 18, 2022, and expert discovery closed on January 24, 2023.  (ECF Nos. 175, 342.)  Plaintiffs retained four experts and Defendants retained two.  (ECF No. 606-1 at PageID 35467–68.)

On February 10, 2023, Plaintiffs filed three separate motions to (1) certify the classes, (2) appoint lead counsel, and (3) exclude Defendants' experts.  (ECF Nos. 380, 384, 387.)

---

[2] On August 12, 2022, Indirect Purchasers filed a motion for reconsideration, arguing that their TTPA and TCPA claims against Varsity and Webb should be reinstated.  (ECF No. 335.)  On August 31, 2023, the Court entered an Order addressing both the Motion to Strike Class Allegations and the Motion for Reconsideration.  (ECF No. 475.)  In that Order, the Court again dismissed the TTPA claims relating to Cheer Camp and Competition markets, but denied the Motion to Strike class-based claims under the TCPA.  (Id. at PageID 19497.)  The Court also granted Defendants' Motion to Strike the Nationwide Damages Class.  (Id.)

Defendants filed four separate motions to exclude experts on the same day.  (ECF Nos. 382, 385, 388, 391.)  The Court ruled on the motions related to the experts.  (ECF Nos. 568, 573, 577, 579–80.)

On February 23, 2023, Plaintiffs filed a motion to add Amy Coulson as class representative, which the Court granted.  (ECF Nos. 394, 591.)  On July 28, 2023, Defendants moved for summary judgment.  (ECF Nos. 466–73.)  On September 20, 2023, the Court granted Indirect Purchasers' motion to amend their complaint to add certain Bain and Charlesbank affiliated entities as Defendants.  (ECF No. 487.)  Indirect Purchasers filed their First Amended Complaint on September 27, 2023.  (ECF No. 489.)  At the Court's direction, Indirect Purchasers filed a Second Amended Complaint that removed claims that had previously been dismissed. (ECF Nos. 574, 575.)  On March 12, 2024, Defendants filed a motion to dismiss all of the state law claims in Plaintiffs' Second Amended Complaint, other than those brought under Colorado and Kansas law.  (ECF No. 581.)  Shortly thereafter, on April 1, 2024, the Parties filed their Joint Notice of Settlement, (ECF No. 602), leading to all deadlines being held in abeyance (ECF No. 603).

The Court granted Indirect Purchasers' Unopposed Motion for Preliminary Approval of Settlement, Provisional Certification of Proposed Settlement Classes, Approval of Notice Plan, and Approval of the Proposed Schedule for Completing the Settlement Process and Scheduling a Final Approval Hearing on June 18, 2024, provisionally certifying the classes under Federal Rule of Civil Procedure 23(b)(3).  (ECF No. 612 at PageID 35645.)[3]  After the provisional certification, Illinois indirect purchasers were added to the State Law Damages Class.  (ECF No.

---

[3] Indirect Purchasers' Motion for Class Certification (ECF No. 387), Defendants' Motion for Summary Judgment (ECF No. 466), and Defendants' Motion to Dismiss (ECF No. 581) were denied without prejudice after the provisional certification.

618.)

Since then, Indirect Purchasers filed their Motion for Attorney Fees on September 3,

2024 (ECF No. 623) and Unopposed Motion for Final Approval of Settlement on October 17.

2024 (ECF No. 625).[4]  A Final Settlement Fairness Hearing was conducted on November 22,

2024, at which no opposition appeared or were reported.  (ECF No. 627.)  Defense supports both

Motions.  (See id.)

**II.    Settlement Agreement**

The principal terms of the settlement are as follows:

**A.    Settlement Classes**

Indirect Purchasers propose the following settlement classes:

**State Law Damages Class**: All natural persons and entities in Arizona, Arkansas, California, Connecticut, the District of Columbia, Florida, Hawaii, Idaho, Illinois, Iowa, Kansas, Maine, Massachusetts, Maryland, Michigan, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, North Dakota, Oregon, Rhode Island, South Dakota, Tennessee, Utah, Vermont, Washington, West Virginia, and Wisconsin, that indirectly paid Varsity or any Varsity subsidiary or affiliate, from December 10, 2016, through March 31, 2024, for: (a) registration, entrance, or other fees and expenses associated with participation in one or more Varsity Cheer Competitions; (b) Varsity Cheer Apparel; (c) Varsity Cheer Camp Fees; or (d) accommodations at one or more Varsity Cheer Competitions.

**Injunctive Relief Class**: All natural persons and entities in the United States that indirectly paid Varsity or any Varsity subsidiary or affiliate, from December 10, 2016, through March 31, 2024, for: (a) registration, entrance, or other fees and expenses associated with participation in one or more Varsity Cheer Competitions, including registration fees to USASF; (b) Varsity Cheer Apparel; (c) Varsity Cheer Camp Fees; or (d) accommodations at one or more Varsity Cheer Competitions, including registration fees to USASF.

(ECF No. 625-1 at PageID 35858–59.)

---

[4] The Court also granted a joint motion allowing Illinois Indirect Purchaser Plaintiffs to participate in the proposed settlement on August 23, 2024.  (ECF No. 618.)

B.    **Monetary Relief**

Defendants agree to pay $82.5 million in cash payments to benefit the settlement classes. (ECF No. 625-1 at PageID 35856, 35867.)  The payments will be distributed in accordance with the Plan of Allocation.  (Id. at PageID 35867.)  The Net Settlement Fund includes three tranches—53% for competitions, 26% for camps, and 21% for apparel.  (Id.)  Members of the State Law Damages class can participate in settlement distribution via a two-step process.  (Id.)  First, they provide documentation that they participated in competitive cheer through being part of a school team or belonging to an All Star gym as a member.  (Id.)  Then, they must complete and sign a sworn declaration stating what Varsity products they purchase during the class period.  (Id. at PageID 35866–68.)  The Settlement Administrator will then "divide each tranche into pro-rata 'Annual Shares' by adding up the total number of years that Claimants made purchases in each tranche ('Claimant Years'), then dividing the funds in that tranche by the total Claimant Years to get the pro rata Annual Shares."  (Id. at PageID 35868.)

C.    **Prospective Relief**

The Proposed Settlement also provides prospective relief to the Injunctive Relief Class, which will be in place from April 28, 2024, through April 27, 2029.  (ECF No. 606-3 at PageID 35518–20.)  The prospective relief mitigates certain aspects of the conduct that Indirect Purchasers challenged as anticompetitive.  (ECF No. 625-1 at PageID 35862.)  This injunctive relief:

> (1) precludes Varsity from tying its competitions to participation at a Varsity camp; (2) mandates that Varsity will not "offer or require exclusive purchasing arrangements as a condition for participating in the Varsity Family Plan, Network Program, or any rebate or discount program relating to Cheer Competitions"; (3) limiting Varsity's ability to "require participants . . . of its Cheer Competitions to stay at Varsity-approved accommodations as a prerequisite to their participation in Varsity-owned Cheer Competitions" to no more than 35%; and (4) prevents USASF from disclosing to Varsity or others confidential scheduling or attendance

information from its member event producers.

(Id. at PageID 35862.)

**D.    Release**

In exchange for the monetary and prospective relief set forth in the Settlement

Agreement, Defendants and related parties will receive a release of all claims that would be

brought by the Settlement Class Members based on the matters alleged or referred to in the

Second Amended Complaint.  (ECF No. 625-1 at PageID 35857–58.)

**E.    Attorney's Fees, Expenses, and Service Awards**

The Settlement Agreement provides for attorneys' fees and costs for Class Counsel and

service awards for Class Representatives.  (ECF No. 625-2 at PageID 35875.)  Settlement Class

Counsel seek an award for attorneys' fees and costs equal to one-third of the Settlement Fund

Amount ($27,500,000) plus reimbursable litigation costs of $7,450,156.47.  (ECF No. 623-1 at

PageID 35727.)  Settlement Class Counsel also seek service awards for Class Representatives

which would be paid from the Settlement Fund Amount.  (Id. at PageID 35728.)  This includes

$50,000 each for Jessica Jones and Christina Lorenzen and $25,000 for Amy Coulson ($125,000

total).  (Id.)

**ANALYSIS**

**I.    Motion for Final Approval of Settlement**

Class action suits filed in federal court may only be settled with the court's

approval.  See Fed. R. Civ. P. 23(e).  Settlement approval consists of three steps:  "(1) the court

must preliminarily approve the proposed settlement, (2) members of the class must be given

notice of the proposed settlement, and (3) after holding a hearing, the court must give its final

approval of the settlement."  Bailey v. Verso Corp., 337 F.R.D. 500, 505 (S.D. Ohio 2021)

(citing In re Telectronics Pacing Sys., Inc., 137 F. Supp. 2d 985, 1026 (S.D. Ohio

2001); Williams v. Vukovich, 720 F.2d 909, 921 (6th Cir. 1983)).  The Court previously

preliminarily approved the proposed settlement.  (ECF No. 612.)  As described below, the

second and third steps have now also been satisfied.

### A.    Notice Was Successful

The Court-appointed administrator, Angeion Group, LLC ("Angeion"), distributed notice

to the provisionally certified Rule 23 class members using a multi-pronged campaign:

- Angeion created and continues to maintain a dedicated Settlement Website
  (Jones, et al. v. Varsity Brands, LLC, et al.,
  https://www.cheerantitrustsettlement.com/ (last visited Nov. 23, 2024)) where
  the notice was (and continues to be) posted.

- Angeion set up a toll-free telephone line to inform members of the Settlement
  Classes about their rights and options.

- Angeion sent direct notice via mail and email to all reasonably identifiable
  Class Members.

- With regard to the Gym Class, Angeion sent "direct notice via U.S Mail to all
  reasonably identifiable members of the Gym Class based on records Varsity
  produced in the litigation and pursuant to the Settlement Agreement."

- Angeion ensured that the Summary Notice would be published in Inside
  Cheerleading and "also conducted a digital media campaign," placing banner
  ads on Facebook, Instagram, TikTok, Reddit, and "X," formerly known as
  Twitter.

- Angeion sent poster notice to over 2,500 gyms and requested that the posters
  be displayed in a prominent location.

(ECF No. 625-1 at PageID 35870-71) (internal citations omitted).  The Court previously found in

its Preliminary Approval Order that the Notice Plan adequately apprised all potential class

members of the terms of the Settlement Agreement, provided individuals with the opportunity to

make informed decisions, and comported with due process.  (ECF No. 612 at PageID 35670.)

At the hearing, counsel for the Indirect Purchasers highlighted the success of the notice

program, stating that it is likely that more than the roughly 80% goal actually received notice.

Specifically, 93% of the emails were valid, and 85% of the mailings were not returned for bad

addresses.  Counsel estimates that the media reached close to 83% of its target, beyond its

estimate.  Importantly, there were no opt-outs, even after the deadline.  This high delivery rate

and lack of opt-outs demonstrate that the proposed notice plan was successful when executed,

making it adequate for the purposes of evaluating the settlement.

    **B.**    **Post-Hearing Final Consideration of Settlement**

        **1.**   **Final Certification of the Settlement Classes and Appointment of   Class Representatives**

In its Preliminary Approval Order, the Court conditionally certified the following two

classes:

> **State Law Damages Class**: All natural persons and entities in Arizona, Arkansas, California, Connecticut, the District of Columbia, Florida, Hawaii, Idaho, Iowa, Kansas, Maine, Massachusetts, Maryland, Michigan, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, North Dakota, Oregon, Rhode Island, South Dakota, Tennessee, Utah, Vermont, Washington, West Virginia, and Wisconsin, that indirectly paid Varsity or any Varsity subsidiary or affiliate, from December 10, 2016, through March 31, 2024,5 for: (a) registration, entrance, or other fees and expenses associated with participation in one or more Varsity Cheer Competitions; (b) Varsity Cheer Apparel; (c) Varsity Cheer Camp Fees; or (d) accommodations at one or more Varsity Cheer Competitions.

> **Injunctive Relief Class**: All natural persons and entities in the United States that indirectly paid Varsity or any Varsity subsidiary or affiliate, from December 10, 2016, through March 31, 2024, for: (a) registration, entrance, or other fees and expenses associated with participation in one or more Varsity Cheer Competitions, including registration fees to USASF; (b) Varsity Cheer Apparel; (c) Varsity Cheer Camp Fees; or (d) accommodations at one or more Varsity Cheer Competitions, including registration fees to USASF.

(ECF No. 612 at PageID 35671.)  Illinois indirect purchasers were subsequently added.  (ECF

No. 618.)  The Court also provisionally appointed Class Representatives.  (ECF No. 612 at

PageID 35672.)  There is no new information regarding these issues.  For the same reasons the

Court granted preliminary approval, the Court **GRANTS** final certification of the Classes and final approval of the appointment of the Class Representatives.

## 2. The Rule 23(e)(2) Factors Support Approval of the Settlement

Before a district court approves a settlement, it must find that the settlement satisfies the four factors under Rule 23(e)(2) for determining whether a settlement is "fair, reasonable, and adequate," namely that: (i) the class representatives and class counsel have adequately represented the class; (ii) the proposal was negotiated at arm's length; (iii) the relief provided for the class is adequate; and (iv) the proposal treats class members equitably relative to each other. Fed. R. Civ. P. 23(e)(2)(A)–(D). Here, the Court stands by its previous finding in the Preliminary Approval Order that the settlement meets the Rule 23 factors. (ECF No. 612 at PageID 35664–66.)

In addition to the Rule 23(e) factors, the Sixth Circuit also considers seven factors to determine whether a class action settlement is "fair, reasonable, and adequate." See Harsh v. Kalida Mfg., Inc., No. 3:18-cv-2239, 2021 WL 4145720, at *3 (N.D. Ohio Sept. 13, 2021) (citing UAW v. Gen. Motors Corp., 497 F.3d 615, 631 (6th Cir. 2007)). These factors are:

1. the risk of fraud or collusion;
2. the complexity, expense, and likely duration of the litigation;
3. the amount of discovery engaged in by the parties;
4. the likelihood of success on the merits;
5. the opinions of class counsel and class representatives;
6. the reaction of absent class members; and
7. the public interest.

Id. at *3–4 (citing UAW, 497 F.3d at 631). As set forth below, the settlement meets the standard for final approval as to each factor.

### a.    The Risk of Fraud or Collusion

"Courts presume the absence of fraud or collusion in class action settlements unless there is evidence to the contrary."    Leonhardt v. ArvinMeritor, Inc., 581 F. Supp. 2d 818, 838 (E.D. Mich. 2008).  The Court is aware of no evidence in the voluminous record to rebut this presumption.  The settlement was reached after the close of fact and expert discovery, mere months before the July 8 trial date.  (ECF No. 612 at PageID 35664.)  The agreement resulted from an adversarial process.  (See id.)  Because the Parties' settlement is the product of a procedurally fair process, this factor weighs in favor of approval.

### b.    The Complexity, Expense, and Likely Duration of Continued Litigation

Antitrust class actions are "arguably the most complex action[s] to prosecute.  The legal and factual issues involved are always numerous and uncertain in outcome."  In re Packaged Ice Antitrust Litig., No. 08-MLD-01952, 2011 WL 6209188, at *19 (E.D. Mich. Dec. 13, 2011). That was certainly true of this case.  Additionally, the expenses incurred by Class Counsel in prosecuting the action were considerable: $7,450,156.47.  (ECF No. 623-1 at PageID 35727.)  If the litigation had continued to summary judgment and trial, these expenses would have increased significantly.  Finally, this case is nearly four years old.  Absent settlement, it would likely have continued for a considerable duration.  The complexity, cost, and likely duration of this case also support approval.

### c.    The Amount of Discovery the Parties Undertook

To confirm that the Indirect Purchasers "have had access to sufficient information to evaluate their case and to assess the adequacy of the proposed Settlement," courts consider the amount of discovery engaged in by the parties.  Harsh, 2021 WL 4145720, at *5.  Here, the

11

settlement was reached after the conclusion of extensive fact and expert discovery, which featured significant motion practice and a multitude of discovery disputes.  (See No. 2:20-cv-02892-SHL-tmp.)  Based on the considerable amount of discovery here, the Court finds that this factor weighs in favor of approval.

### d.    The Likelihood of Success on the Merits

Both Parties were represented by highly experienced, skilled, and competent counsel who were well on their way to preparing for trial.  Because the Court cannot readily determine what the outcome of this case would have been if fully litigated, the uncertainty supports approving the settlement.

### e.    The Opinion of Class Counsel and Class Representatives

Class Counsel, in consultation with the Class Representatives, negotiated the terms of the Settlement Agreement to attain a result that satisfied all involved.  (ECF No. 625-1 at PageID 35865.)  Because Co-Lead Class Counsel and the Class Representatives all support the settlement, this unanimity weighs in favor of approving it.  (Id.)

### f.    The Reaction, if any, of Absent Class Members

An "overwhelming positive class response highlights the fairness of the settlements to unnamed class members and weighs heavily in favor of approval of the settlements."  In re Se. Milk Antitrust Litig., 2013 WL 2155387, at *5 (E.D. Tenn. May 17, 2013).  Here, no objections or exclusions were received, demonstrating "a highly positive class response."  (ECF No. 625-1 at PageID 35866.)  The lack of objections and positive reception further support approval of the settlement.

### g.    Public Interest

The prosecution of private antitrust actions helps ensure compliance with antitrust laws

and performs an important societal function.  See Pillsbury Co. v. Conboy, 459 U.S. 248, 262–63 (1983) ("This court has emphasized the importance of the private action as a means of furthering the policy goals of certain federal regulatory statutes, including the federal antitrust laws."); Reiter v. Sonotone Corp., 442 U.S. 330, 344 (1979) (private challenges to antitrust violations "provide a significant supplement to the limited resources available to the Department of Justice for enforcing the antitrust laws and deterring violations").  "[C]lass actions . . . have value to society more broadly, both as deterrents to unlawful behavior—particularly when the individual injuries are too small to justify the time and expense of litigation—and as private law enforcement regimes that free public sector resources."  Gascho v. Glob. Fitness Holdings, LLC, 822 F.3d 269, 287 (6th Cir. 2016).  Because this settlement advances the public interest, this factor also weighs in favor of approval.

Having considered all the relevant factors, each of which support final approval, the Court concludes that the settlement is fair, reasonable, and adequate and **GRANTS** final approval.

### 3.      The Proposed Allocation Plan

Purchaser Plaintiffs also seek approval of the Allocation Plan.  As discussed earlier, the plan consists of dividing the Net Settlement Fund into "three tranches: 53% for competitions, 26% for camps, and 21% for apparel, from which the proceeds of the Net Settlement Fund will be distributed."  (ECF No. 625-1 at PageID 35867.)  Members of the State Law Damages class can participate in settlement distribution via a two-step process.  (Id.)  First, they provide documentation that they participated in competitive cheer through a school team or belonging to an All Star gym as a member.  (Id.)  Second, they complete and sign a sworn declaration wherein they state what Varsity products they purchased during the class period.  (Id. at PageID 35866–

68.)  The Settlement Administrator must then "divide each tranche into pro-rata 'Annual Shares' by adding up the total number of years that Claimants made purchases in each tranche ('Claimant Years'), then dividing the funds in that tranche by the total Claimant Years to get the pro rata Annual Shares."  (Id. at PageID 35868.)  The plan does not involve receipts.  (Id.)

"'Approval of a plan of allocation of a settlement fund in a class action is governed by the same standards of review applicable to approval of the settlement as a whole; the distribution plan must be fair, reasonable and adequate.'"  Packaged Ice, 2011 WL 6209188, at *15 (quoting Meijer Inc. v. 3M, No. 04-5871, 2006 WL 2382718, at *17 (E.D. Pa. Aug.14, 2006)).  "'Courts generally consider plans of allocation that reimburse class members based on the type and extent of their injuries to be reasonable.'"  Id.  Here, eliminating the need for receipts facilitates greater participation in the plan.  (See ECF No. 625 at PageID 35868.)  Verifying all of the receipts would also be costly.  Critically, the Plan treats all class members fairly and equally.  (See id. at PageID 35869.)  By using "Claimant Years," the process is not "prohibitively burdensome" while "deter[ing] unwarranted claims."  (See id.)

Finding the allocation is fair and reasonable, the Court **APPROVES** the Allocation Plan.

## II.    Attorneys' Fees, Costs, and Service Awards

### A.    Attorneys' Fees

"The Sixth Circuit permits calculation of attorneys' fees under either the lodestar method (multiplying the number of hours spent on the litigation by certain attorneys by their hourly rate) or the percentage of the fund method (counsel receive a set percentage of the total settlement fund)."  Packaged Ice, 2011 WL 6209188, at *17.  "The percentage of the fund method has a number of advantages; it is easy to calculate; it establishes reasonable expectations on the part of plaintiffs' attorneys as to their expected recovery; and it encourages early settlement, which

14

avoids protracted litigation." Rawlings v. Prudential–Bache Properties, Inc., 9 F.3d 513, 516 (6th Cir. 1993).

The Purchaser Plaintiffs employ the percentage of the fund method but offer the lodestar calculation as a check on the reasonableness of their request. They seek an award of $27,500,000, which represents one-third of the $82,500,000 Settlement Fund. (ECF No. 623-1 at PageID 35736.) Purchaser Plaintiffs note that courts in the Sixth Circuit have routinely found that an award of one-third of a common fund is within the range of reasonable percentage awards for antitrust class action settlements. (Id. (referencing Fusion Elite All Stars v. Varsity Brands, LLC, No. 2:20-cv-02600-SHL-tmp, 2023 WL 6466398, at *8 (W.D. Tenn. Oct. 4, 2023); In re Se. Milk Antitrust Litig., No. 2:07-cv 208, 2013 WL 2155387, at *3 (E.D. Tenn. May 17, 2013)).)

An award of attorneys' fees in common fund cases must be "reasonable under the circumstances." Rawlings, 9 F.3d at 516. The Sixth Circuit has identified six factors to determine the reasonableness of a fee request:

> (1) the value of the benefit rendered to the [the plaintiffs], (2) society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others, (3) whether the services were undertaken on a contingent fee basis, (4) the value of the services on an hourly basis [i.e., the lodestar cross-check], (5) the complexity of the litigation, and (6) the professional skill and standing of counsel involved on both sides.

Ramey v. Cincinnati Enquirer, Inc., 508 F.2d 1188, 1196 (6th Cir. 1974). As discussed below, all factors weigh in favor of a finding of reasonableness.

## 1.    Value of the Benefit Rendered to the Settlement Class

"District courts in this Circuit widely regard the first Ramey factor as the most important." In re Cardinal Health Inc. Sec. Litig., 528 F. Supp. 2d 752, 764 (S.D. Ohio 2007). Here, this settlement's value to the class members is substantial. Indirect Purchasers assert that

the $82.5 million Settlement Fund represents approximately 67% of the damages that Plaintiffs'
damages experts computed through 2020. (ECF No. 623-1 at PageID 35737–38.)

Further, the relief is also not limited to monetary benefits. The injunctive relief confers
additional economic and practical benefits to the Settlement Classes. (See id. at PageID 35738.)
Additionally, the Settlement avoided the risks associated with bringing a case to trial. Thus, the
first factor weighs in favor of a finding of reasonableness.

### 2.    Society's Stake in Rewarding the Indirect Purchaser Counsel's Work

As stated above, the prosecution of private antitrust actions, and class actions generally,
serves an important societal function. See Pillsbury Co., 459 U.S. at 262–63; Gascho, 822 F.3d
at 287. Attorneys for plaintiffs in these cases often work on a contingent basis and risk not
receiving any compensation. Se. Milk, 2013 WL 2155387, at *8. "Awards of substantial
attorneys' fees in cases like this are necessary to incentivize attorneys to shoulder the risk of non-
payment to expose violations of the law and to achieve compensation for injured parties." Id.
Here, Class Counsel spent 43,743.45 hours on this matter, amounting to a lodestar of
$32,770,367 based on rates that are consistent with locally prevailing rates. (See ECF No. 623-1
at PageID 35727.) This hard work should be incentivized. Society's interest in the diligent
prosecution of antitrust cases supports a finding of reasonableness.

### 3.    Contingency Fee Basis of Class Counsel's Work

Attorneys who take on a massive task like this one with a significant risk of nonpayment
should be compensated "both for services rendered and for the risk of loss or nonpayment
assumed by accepting and prosecuting the case." Packaged Ice, 2011 WL 6209188, at *19
(quoting In re Automotive Refinishing Paint Antitrust Litig., MDL No. 1426, 2004 WL 1068807,
*5 (E.D. Pa. May 11, 2004)). Here, because Class Counsel undertook this case on a contingency

fee basis, they worked diligently while risking not being compensated for their efforts.  The contingent nature of Class Counsel's representation also weighs in favor of a finding of reasonableness.

### 4.    Lodestar Cross Check

Courts often supplement their analysis of the percentage of the fund method with the lodestar cross-check.  See In re Regions Morgan Keegan Sec., Derivative & ERISA Litig., No. 2:09-md-2009-SMH, 2014 WL 12808031, at *5 (W.D. Tenn. Dec. 24, 2014).  "To determine the lodestar figure, [courts multiply] the number of hours 'reasonably expended' on the litigation by a 'reasonable hourly rate.'"  Gascho, 822 F.3d at 279 (quoting Bldg. Serv. Local 47 Cleaning Contractors Pension Plan v. Grandview Raceway, 46 F.3d 1392, 1401 (6th Cir. 1995)).  "Unlike the situation when the Court employs the lodestar method in full, the hours documented by counsel need not be exhaustively scrutinized by the district court where a lodestar cross-check is used."  Se. Milk, 2013 WL 2155387, at *2 n.3 (internal quotation marks and citation omitted).

Here, from inception to June 30, 2024, Class Counsel devoted 43,743.45 hours of attorney and other professional time advocating for the Settlement Classes.  (ECF No. 623-1 at PageID 35742.).  Class Counsel also attached affidavits verifying that their rates are comparable to the rates charged by other law firms with similar experience, expertise, and reputation, for similar services in the nation's leading legal markets.  (See ECF Nos. 623-2, -3, -4, -5, -6, -7, -8.) The historical hourly rates charged by Class Counsel are reasonable, based on each person's position, experience level, and location, and have been approved by multiple courts, including this one, in similar antitrust class actions.  (See ECF No. 623-1 at PageID 35742.)

Class Counsel's requested percentage of the fund fee of $27,500,000 equates to approximately 84% of the Class Counsel's lodestar, a "negative multiplier."  (ECF No. 623-1 at

17

PageID 35743.)  Typically, courts award multipliers on lodestars in contingent fee cases ranging

from 1.3 to 4.0.  See, e.g., Se. Milk, 2013 WL 2155387, at *4 (using a lodestar crosscheck and

finding that a multiplier of 1.90 was "clearly within, but in the bottom half of, the range of

typical lodestar multipliers"); In re Cardizem CD Antitrust Litig., 218 F.R.D. 508, 533 (E.D.

Mich. 2003) (noting that direct purchaser class plaintiffs received a 30% fee award that equated

to lodestar multiplier of 3.7); In re Prandin Direct Purchaser Antitrust Litig., C.A. No. 2:10–cv–

12141–AC–DAS, 2015 WL 1396473, at *4 (awarding 3.01 multiplier); In re Skelaxin

(Metaxalone) Antitrust Litig., No. 2:12-CV-83, 2014 WL 2946459, at *2 (E.D. Tenn. June 30,

2014) (awarding one-third of the common fund which equated to a lodestar multiplier up to 2.5).

The fact that Class Counsel is seeking to be paid an amount lower than their lodestar weighs

heavily in favor of a finding of reasonableness.

### 5.    Complexity of the Litigation

As stated above, antitrust class actions are inherently complex.  Packaged Ice, 2011 WL

6209188, at *19.  This case is no exception, where "Plaintiffs brought claims on behalf of 3

classes, against 13 Defendants, over 3 product markets" and "alleged a multifaceted scheme to

monopolize three distinct but interrelated markets."  (ECF No. 623-1 at PageID 35743.)  The

focus on indirect purchasers adds additional layers of complexity.  (See id. at PageID 35743–44.)

Further, unlike many class actions, the case did not follow investigations and prosecutions by

any governmental entity.  (See id. at PageID 35744.)  Rather, this case came exclusively from

Class Counsel's own work.  The complexity of the case also supports a finding of

reasonableness.

### 6.    The Quality of the Representation

There is no question as to the skill and efficiency of Class Counsel.  Indirect Purchasers'

Counsel have demonstrated their experience and capability in prosecuting this action; they have dedicated millions of dollars and spent a significant amount of time in and out of the courtroom litigating on behalf of the proposed Settlement Classes for nearly four years. The attorneys for all parties, including Plaintiffs, have handled this matter with extreme professionalism, expediency, and competency. The Court has no hesitation concluding that this factor weighs in favor of approving the fee request.

Finding the Indirect Purchasers' request for attorneys' fees reasonable, the Court **AWARDS** $27,500,000 in fees.

**B.    Costs**

To determine whether the requested expenses are compensable, the Court considers whether the particular costs are the type routinely billed by attorneys to paying clients in similar cases. Cardizem, 218 F.R.D. at 535. The expenses must be reasonable. See id.

The Indirect Purchasers request reimbursement for $7,450,156.47 in out-of-pocket litigation expenses associated with the prosecution of the case. (ECF No. 623-1 at PageID 35727.) Of the amount spent, $6,743,955.31 was used to pay for expert witnesses vital to the case. (Id. at PageID 35734.) The remainder of the $7,450,156.47 sought includes "the creation and maintenance of an electronic document database; mediation; travel and lodging; court reporters and transcripts; computerized legal research; and copying, among other things." (ECF No. 623-2 at ¶ 41.)[5]

Finding these expenses to be routine and reasonable, the Court **AWARDS** $7,450,156.47

---

[5] The Court-appointed Settlement Administrator (Angeion) also estimates that the notice plan and the claims administration process will incur approximately $584,486.00 in costs. (ECF No. 623-1 at PageID 35746.) Per the Settlement Agreement, those costs will be paid directly from the Settlement Fund. (Id.) According to Class Counsel, a request for those expenses to be paid from the Settlement Fund will be submitted. (Id.)

in expenses.

C.    **Service Awards**

The Indirect Purchasers' counsel also requests the approval of service awards totaling $125,000. (ECF No. 623-1 at PageID 35747.)  Specifically, $50,000 is requested for Jessica Jones and Christina Lorenzen, and $25,000 for Amy Coulson, who readily joined when another Class Representative dropped out. (Id.)[6]

The Sixth Circuit has not defined the circumstances justifying service awards to class representatives. See Lonardo v. Travelers Indemnity Co., 706 F. Supp. 2d 766, 787 (N.D. Ohio 2010).  However, district courts have considered three factors when considering these requests: (1) the actions taken by Class Representatives to protect the interests of Class members and others and whether these actions resulted in substantial benefits to Class members; (2) whether the Class Representatives assumed substantial direct and indirect financial risk; and (3) the amount of time and effort spent by the Class Representatives in pursing the litigation. See Robles v. Comtrak Logistics, Inc., No. 15-cv-2228, 2022 WL 17672639, at *12 (W.D. Tenn. Dec. 14, 2022) (citing Ross v. Jack Rabbit Servs., LLC, No. 3:14-cv-44-DJH, 2016 WL 7320890, at *5 (W.D. Ky. Dec. 15, 2016)).

Here, all three factors weigh in favor of the requested service awards.  First, the Class Representatives were essential in ensuring that this case was brought because they, rather than a government agency, helped initiate the case. (ECF No.623-1 at PageID 35747–48.)  Second, by being named plaintiffs in a lawsuit, the Class Representatives assumed financial risk and retaliation for their participation, given the public nature of litigation. (Id.)  Their action "took

---

[6] Jones and Lorenzen were in the case longer and performed more work, including sitting for depositions. (See ECF No. 623-1 at PageID 35748.)

courage, and strength of character." (Id. at PageID 35747.)  Finally, each of the class representatives spent considerable time pursuing the litigation, gathering and producing documents, reviewing case filings, assessing the terms of the settlement agreement, and ultimately approving it.  (Id. at PageID 35748.)  Jones and Lorenzen also were deposed.  (Id.)  The Class Representatives' dedication and courage serves as a model for others who will serve in this capacity in other cases.

Accordingly, the Court **AWARDS** $125,000 in service awards, with Jones and Lorenzen receiving $50,000 each and Coulson receiving $25,000.

## <u>CONCLUSION</u>

The Court finds that the proposed settlement is fair, adequate, and reasonable and in the best interests of the Settlement Class Members.  Accordingly, **IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:**

1. The Settlement Agreement is **APPROVED** as fair, reasonable, and adequate as to the members of the State Law Damages Class and Injunctive Relief Class

2. Pursuant to Fed. R. Civ. P. 23, the Court **CERTIFIES** the following Classes for settlement purposes only:

    a. <u>State Law Damages Class</u>: All natural persons and entities in Arizona, Arkansas, California, Connecticut, the District of Columbia, Florida, Hawaii, Idaho, Illinois, Iowa, Kansas, Maine, Massachusetts, Maryland, Michigan, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, North Dakota, Oregon, Rhode Island, South Dakota, Tennessee, Utah, Vermont, Washington, West Virginia, and Wisconsin, that indirectly paid Varsity or any Varsity subsidiary

or affiliate, from December 10, 2016, through March 31, 2024, for: (a)
registration, entrance, or other fees and expenses associated with participation
in one or more Varsity Cheer Competitions; (b) Varsity Cheer Apparel; (c)
Varsity Cheer Camp Fees; or (d) accommodations at one or more Varsity
Cheer Competitions.

    b.  <u>Injunctive Relief Class</u>: All natural persons and entities in the United States
that indirectly paid Varsity or any Varsity subsidiary or affiliate, from
December 10, 2016, through March 31, 2024, for: (a) registration, entrance, or
other fees and expenses associated with participation in one or more Varsity
Cheer Competitions, including registration fees to USASF; (b) Varsity Cheer
Apparel; (c) Varsity Cheer Camp Fees; or (d) accommodations at one or more
Varsity Cheer Competitions, including registration fees to USASF.

    c.  Excluded from the Settlement Classes are Defendants, their parent companies,
subsidiaries and affiliates, officers, executives, and employees, Defendants'
attorneys in this case, federal government entities and instrumentalities, states
or their subdivisions, and all judges and jurors assigned to this case.

3. The Court **FINDS**, solely for settlement purposes, that (a) the Classes are so
numerous that joinder of members of the Classes is impracticable; (b) there are
questions of law and fact common to the Classes that predominate over any
individual questions; (c) the claims of the Class Representatives are typical of the
claims of the Classes; (d) the Class Representatives have and will continue to fairly
and adequately represent and protect the interests of the Classes; and (e) a class action
is superior to all other available methods for the fair and efficient adjudication of the

controversy.

4.  Named Plaintiffs and conditionally appointed class representatives Jessica Jones,
    Christina Lorenzen, and Amy Coulson are **APPROVED** as representatives of the
    Classes.

5.  The Court **FINDS** that the Notices fully satisfied the requirements of due process,
    provided the best notice practicable under the circumstances to the members of the
    Classes, and provided individual notice to all members of the Classes who can be
    identified through reasonable effort.

6.  The Court **APPROVES** the proposed Plan of Allocation as fair, reasonable, and
    adequate.

7.  The Court **DIRECTS** Angeion and Co-Lead Class Counsel to implement the Claims
    Form process as set forth in the Plan of Allocation.

8.  The Individual Purchaser Plaintiffs' Motion for an Award of Attorneys' Fees, for
    Reimbursement of Expenses, and for Service Awards for the Class Representatives is
    **GRANTED**.

**IT IS SO ORDERED,** this 6th day of December, 2024.

s/ Sheryl H. Lipman
SHERYL H. LIPMAN
CHIEF UNITED STATES DISTRICT JUDGE